UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUNCO TIMBER (KUNSHAN) CO., LTD.,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>LINDA SUN, *et al.,*<br><br>　　　　Defendants | Civ. A. No. 22-10833-ADB |

**MEMORANDUM IN SUPPORT OF MOTION OF LINDA SUN TO
DISMISS COUNTS 4, 5, 8, 9, 10, AND 11**

　　　　　　　　　　　　　　　　　　　Theodore J. Folkman (BBO No. 647642)
　　　　　　　　　　　　　　　　　　　FOLKMAN LLC
　　　　　　　　　　　　　　　　　　　53 State St., Suite 500
　　　　　　　　　　　　　　　　　　　Boston, MA 02109
　　　　　　　　　　　　　　　　　　　(617) 219-9664
　　　　　　　　　　　　　　　　　　　ted@folkman.law

　　　　　　　　　　　　　　　　　　　Attorney for Linda Sun

TABLE OF CONTENTS

Table of Authorities ................................................................................................................. ii
Background ............................................................................................................................. 1
Allegations .............................................................................................................................. 3
Argument ................................................................................................................................ 4
    A.   Standard of Decision. ................................................................................................ 4
    B.   Sunco Fails To State A Claim For Conversion. ........................................................ 4
        1.   Failure to Pay is Not Conversion. ......................................................................... 5
        2.   Only Infinity Could Be Liable For Conversion On The Facts Alleged. ............... 6
    C.   Sunco Fails To State A Claim For Money Had And Received. ................................ 6
    D.   Sunco Cannot Plead A Claim For Civil Conspiracy, Aiding and Abetting, or Tortious Interference. ........................................................................................................................ 7
        1.   Civil Conspiracy. ................................................................................................... 8
        2.   Aiding and Abetting. ............................................................................................. 9
        3.   Tortious Interference. .......................................................................................... 10
    E.   Sunco Cannot Pierce The Corporate Veil. .............................................................. 11
Conclusion ............................................................................................................................ 15

# TABLE OF AUTHORITIES

## CASES

*Aetna Cas. & Sur. Co. v. P&B Autobody,*
  43 F.3d 1546 (1st Cir. 1994) ............................................................................................8
*Antifun Ltd. v. Wayne Industries, LLC,*
  2022 U.S. Dist. LEXIS 130719 (S.D.N.Y. Jul. 22, 2022)..................................................14, 15
*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................................................10
*Att'y Gen. v. M.C.K., Inc.,*
  432 Mass. 546 (2000) .....................................................................................................12
*Blackstone v. Cashman,*
  448 Mass. 255 (2007) .....................................................................................................10
*Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.,*
  4 F.4th 63 (1st Cir. 2021) ..................................................................................................4
*Centurion Networking Serv. Partners, LLC v. Barker,*
  2018 U.S. Dist. LEXIS 70394 (D. Mass. Apr. 26, 2018).................................................15
*ERI/Integral Holdings, Inc. v. Integral Fund I Inv. LLC,*
  2021 Mass. Super. LEXIS 532 (Mass. Super. Ct. Dec. 21, 2021) ...................................9
*Evergreen Marine Corp. v. Six Consignments of Frozen Scallops,*
  4 F.3d 90 (1st Cir. 1993) ...............................................................................................4, 5
*Gossels v. Fleet Nat'l Bank,*
  453 Mass. 366 (2009) .......................................................................................................5
*Hagenah v. Berkshire County Arc, Inc.*
  2018 U.S. Dist. LEXIS 24696 (D. Mass. Feb. 15, 2018).............................................8, 9
*Hamann v. Carpenter,*
  937 F.3d 86 (1st Cir. 2019). ............................................................................................10
*J.B. Hunt Transp., Inc. v. Liverpool Trucking Co.,*
  2013 U.S. Dist. LEXIS 88363 (M.D. Pa. 2013).............................................................14
*Jelmoli Holding, Inc. v. Raymond James Fin. Servs.,*
  470 F.3d 14 (1st Cir. 2006) ...............................................................................................6
*Kraft Power Corp. v. Merrill,*
  464 Mass. 145 (2013) ...............................................................................................11, 12
*Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,*
  552 F.3d 47 (1st Cir. 2009) ...............................................................................................6
*McLaughlin v. J-PAC, LLC,*
  2011 Mass. Super. LEXIS 56 (Mass. Super. Ct. Apr. 13, 2011).....................................9
*McQuilly v. Belfi,*
  2021 Mass. App. Unpub. LEXIS 181 (Mass. App. Ct. Mar. 10, 2021) .........................9
*Medici v. Lifespan Corp.,*
  239 F. Supp. 3d 355 (D. Mass. 2017).............................................................................11
*Menard v. CSX Transp., Inc.,*
  698 F.3d 40 (1st Cir. 2012) .............................................................................................12
*My Bread Baking Co. v. Cumberland Farms, Inc.,*
  353 Mass. 614 (1968) .....................................................................................................12

*Norman v. Brown, Todd & Heyburn,*
    693 F. Supp. 1259 (D. Mass. 1988) ............................................................................... 10
*NuVvasive, Inc. v. Day,*
    2021 U.S. Dist. LEXIS 30165 (D. Mass. Feb. 18, 2021) .............................................. 11
*Platten v. HG Bermuda Exempted Ltd.,*
    437 F.3d 118 (1st Cir. 2006) ............................................................................................ 7
*Schatz v. Republican State Leadership Comm.,*
    669 F.3d 50 (1st Cir. 2012) ............................................................................................ 10
*Scott v. NG US 1, Inc.,* 450 Mass. 760 (2008) ................................................................... 12
*Sprayregen v. Mangiameli,*
    2016 U.S. Dist. LEXIS 7002 (E.D.N.Y. Jan. 21, 2016) ................................................ 14
*Storage Cap Leasing, LLC v. Woodnb, LLC,*
    2021 U.S. Dist. LEXIS 169520 (D. Mass. Aug. 30, 2021) .............................................. 9
*Tedeschi-Freji v. Percy Law Grp.,*
    99 Mass. App. Ct. 772 (2021) .......................................................................................... 7
*Young v. Wells Fargo Bank, N.A.,*
    717 F.3d 224 (1st Cir. 2013) ....................................................................................... 4, 6

## RULES

Fed. R. Civ. P. 9(b) ................................................................................................................ 10

BACKGROUND

There is more to this case than the Court will find in the complaint. The plaintiff ("Sunco") alleges that Linda Sun,[1] an elderly Chinese woman now living in Massachusetts, owned and had control of Infinity Wood Products, LLC ("Infinity") while she had control of Sunco, Infinity's Chinese supplier. Sunco claims that she schemed to cause Sunco to sell millions of dollars of special-order cabinetry to Infinity knowing that Infinity was not going to pay for it and intending to take the money from the proceeds of Infinity's sale of the cabinetry for her own benefit. Everything about Sunco's story, which is mostly alleged on information and belief in only the most conclusory way, is false. Linda was not and has never been an owner of Infinity, nor has she ever had any control over it, nor has she ever received any distributions from it. Linda *was* once, indirectly, the majority owner of Sunco (through her ownership of Sunco, Inc.), but long before the relevant times, she was conned out of her majority stake and management by Guoqing Wu, who falsely promised that by becoming majority owner of Sunco (through his Chinese corporation, Jiangsu Qiyi Investment Co., Ltd.), he could smooth the company's way with Chinese government officials, who now seeks to blame Sunco's problems on her. The complaint is silent about the lawsuit Sunco brought against Linda in the Suzhou Intermediate People's Court in Jiangsu Province, China, which resulted in a 2021 judgment rejecting the fiduciary duty claims Sunco brings now. And the complaint is silent about Linda's $2.5 million loan to Sunco, which has never been repaid. There will be counterclaims against Sunco and new counterclaim defendants, as well as a vigorous defense on the facts and the law.

But the case is before the Court on a motion to dismiss, and proof that the complaint's key allegations are false and that Sunco is not entitled to relief on the claims for breach of

---

[1] Because all the individual defendants have the same family name, this memorandum refers to them by their given names.

1

fiduciary duty must await a later stage. For now, while the Court need not accept threadbare recitals of the elements of the claims for relief, it must accept the complaint's allegations of fact. Sunco pleads claims against Linda for tortious interference (count 4), conversion (count 5), breach of fiduciary duty (counts 6 and 7), money had and received (count 8), civil conspiracy (count 9), aiding and abetting (count 10), and veil piercing (count 11). Even given the liberal "plausibility" pleading standard, most of Sunco's claims against Linda cannot succeed.

- The claim for conversion fails because when a seller sells goods on credit and the buyer fails to pay, the seller has a right to payment but not a possessory right to the goods. And if anyone converted the goods, it was Infinity, not Linda.

- The claim for money had and received fails because Sunco has a remedy at law under the contract, and because if anyone is liable for unjust enrichment, it is Infinity, not Linda.

- The claim for civil conspiracy fails because the complaint alleges that Linda, David, and Shillock are the sole owners and controlling persons of Infinity, and Infinity's decisionmakers cannot be liable for conspiring with themselves.

- The claim for aiding and abetting fails because there is no underlying tort Linda could have aided someone else to commit.

- The claim for tortious interference fails because Sunco has pleaded no facts that could support an inference that Linda acted with actual malice.

- The claim for veil-piercing fails because Sunco pleads conclusions but no facts that could support veil-piercing.

The Court should dismiss counts 4-5 and 8-11.

ALLEGATIONS

Sunco manufactures wood cabinetry for export to the United States (Compl. ¶ 9). It sold custom-made cabinets to Infinity, a distributor and its sole customer. (Id. ¶¶ 10, 17, 24). Sunco claims it had no idea that Infinity was owned and managed by Linda's son David and his wife, Shillock, until after the events that led to this lawsuit. (Compl. ¶¶ 64-65). The transactions between Infinity and Sunco were typical sales of goods: Infinity submitted a purchase order to Sunco; Sunco manufactured the cabinets ordered and ship them to Infinity along with an invoice; and Infinity paid the invoice later. (Id. ¶¶ 30-34). In other words, the transactions were not present sales or even COD sales: they were sales on credit.

Beginning in 2018, the United States imposed tariffs on Chinese origin goods, including a tariff on wood products that began at 10% and later rose to 25%. The United States also imposed a 100% duty on Sunco products under the anti-dumping laws. (Compl. ¶¶ 36-38). The complaint alleges that at the time, Linda was the president of Sunco and "single-handedly controlled the operation." (Compl. ¶ 18). It also alleges that she was an "equity holder" (presumably a member) of Infinity (Compl. ¶ 26) that she "direct[ed]" Infinity not to pay for cabinets shipped from July 2, 2018, to July 7, 2019 (Compl. ¶¶ 43, 55), and that she "direct[ed]" Sunco to continue to fulfil Infinity's orders despite her concerns about the tariffs and duties (Compl. ¶ 41). In June 2019, the complaint alleges, Linda "left her home in Kunshan, China, abruptly and unannounced, for Massachusetts," and that she has not returned to Kunshan. (Compl. ¶ 49). Her departure, and a subsequent letter from her to the chair and a director of Sunco concerning her health problems, were part of a "ruse" by the defendants to complete the shipment of cabinets to Infinity and to "allow Sunco to fall into insolvency and be in violation of Chinese labor and other laws." (Compl. ¶ 53). The complaint alleges that Mr. Wu took over

3

management of Sunco in the summer of 2019, at which time Sunco's workers went on strike and complained to the government that their salaries had not been paid. (Compl. ¶¶ 57-60). Sunco, according to the complaint, had to borrow more than $2 million to satisfy a local government order to pay unpaid salaries and fines. (Compl. ¶¶ 61-63).

## ARGUMENT

A. Standard of Decision.

"To survive a Rule 12(b)(6) motion to dismiss, the facts alleged in the complaint, taken as true by the court, which also draws all inferences in the pleader's favor, must state a plausible, not merely conceivable, case for relief." *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.,* 4 F.4th 63, 69 (1st Cir. 2021) (citation and internal quotation marks omitted). The Court must "disregard all conclusory allegations that merely parrot the relevant legal standard" and instead "inquire whether the remaining factual allegations state a plausible … assertion of defendants' liability." *Young v. Wells Fargo Bank, N.A.,* 717 F.3d 224, 231 (1st Cir. 2013).

B. Sunco Fails To State A Claim For Conversion.

Conversion is (1) the defendant's intentional and wrongful exercise of control or dominion over personal property (2) in which the plaintiff had an ownership or possessory interest at the time of the conversion, where (3) the plaintiff was damaged by the defendant's conduct, and where, (4) if the defendant legitimately acquired possession of the property under a good-faith claim of right, the plaintiff's demand for its return was refused. *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops,* 4 F.3d 90, 95 (1st Cir. 1993). Sunco cannot prove Linda is liable for conversion for two reasons. First, the main allegation is simply that Infinity failed to pay for the cabinetry, and failure to pay under a contract is a breach of contract, not a conversion. Second, it was Infinity, not any of its alleged owners or controlling persons, that failed to pay or that converted the goods.

4

1. <u>Failure to Pay is Not Conversion.</u>

According to the complaint, the transactions between Infinity and Sunco were typical sales of goods. Infinity began a transaction by issuing a purchase order to Sunco, which specified the details of the cabinets Infinity was ordering. (Compl. ¶¶ 30-31). Sunco then manufactured the cabinets, packaged them, and shipped them to Infinity. (Compl. ¶ 32). Sunco issued an invoice to Infinity, and Infinity later paid the invoice. (Compl. ¶¶ 33-34). The complaint alleges that "Infinity … failed to pay for the last shipments of cabinets," between July 2018 and July 2019 (Compl. ¶ 35), even though Infinity accepted the goods (Compl. ¶ 45).

A claim against Infinity for breach of a sales contract jumps out of these allegations. Sunco sold the goods in return for a promise to pay, and its claim is for breach of contract.

But to prove conversion, Sunco would have to prove that it had a right to possession of the cabinets *at the time of the conversion. See Evergreen Marine,* 4 F.3d at 95. The time of the conversion cannot be the time of the delivery to Infinity, since as Sunco has alleged, Infinity was to pay Sunco at some time after it took possession of goods it had ordered. (Compl. ¶¶ 33-34). The claim isn't that Infinity wrongfully got hold of the cabinets, but that it failed to pay for them later. *See Gossels v. Fleet Nat'l Bank,* 453 Mass. 366, 372-73 (2009) (failure to pay money due is not conversion). Infinity had rightful possession of the cabinets, because Sunco had sold them to it on credit. There is no allegation that Sunco had a security interest in the goods that might entitle Sunco to possession after nonpayment and thus support a claim for conversion.

Sunco alleges that it made a demand on Infinity and Infinity failed to respond. (Compl. ¶ 131). But Sunco demanded *payment,* not return of the cabinets. (Id.). When a defendant gets possession rightfully, a demand for return of the goods is an element of the claim. *See Evergreen Marine,* 4 F.3d at 95. Sunco does not allege such a demand. And in any event, for the reasons

5

already given, a demand for return of the goods would have been baseless. What Sunco had a right to demand was what it says it did demand (Compl. ¶ 131): payment for the goods it sold on credit.

In short, Sunco alleges that Infinity purchased goods and failed to pay for them. That allegation supports a claim for breach of contract, not conversion, because once Sunco delivered the goods, it no longer owned them and had no right to possession.

2. Only Infinity Could Be Liable For Conversion On The Facts Alleged.

Assuming there was a conversion, who converted the goods? The complaint's allegations allow only one answer: Infinity. It ordered the cabinets (Compl. ¶¶ 29, 30, 41, 78, 81), it received them (Compl. ¶¶ 32, 34, 41, 43, 45, 80, 82), and it failed to pay for them (Compl. ¶¶ 55, 85). There is a conclusory allegation that each of the defendants "intentionally and wrongfully took possession and exerted control and dominion over" the cabinets Infinity received but did not pay for (Compl. ¶ 127), and an even more conclusory allegation that each of the defendants "converted the cabinetry." (Compl. ¶ 128). But these are precisely the kinds of boilerplate recitations of the legal standard that the Court must disregard. *Young,* 717 F.3d at 231. On these allegations, if anyone is liable for conversion, it is Infinity.

C. Sunco Fails To State A Claim For Money Had And Received.

A claim for money had and received is just a claim for unjust enrichment; the only distinction is that a claim for money had and received lies only when the benefit the defendant unjustly received was money. *See Jelmoli Holding, Inc. v. Raymond James Fin. Servs.,* 470 F.3d 14, 16 n.2 (1st Cir. 2006). To recover for unjust enrichment, a plaintiff must prove (1) that it conferred a benefit on the defendant; (2) that the defendant knew of the benefit; and (3) that retention of the benefit would be inequitable without payment for its value. *See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,* 552 F.3d 47, 57 (1st Cir. 2009). But a plaintiff cannot

"override an express contract by arguing unjust enrichment." *Platten v. HG Bermuda Exempted Ltd.,* 437 F.3d 118, 130 (1st Cir. 2006).

The claim fails for two reasons. First, the existence and validity of the contract between Sunco and Infinity is undisputed. Courts will often allow an unjust enrichment claim to survive a motion to dismiss as an alternative to a questionable contract claim. But the other defendants' motion to dismiss makes it clear that Infinity is not seeking to dismiss the breach of contract claim. Thus unlike in cases when the validity of the contract is at issue, there is no basis for ignoring the ordinary rule that an adequate remedy at law (a claim for breach of contract, for instance) defeats an unjust enrichment claim, *see Tedeschi-Freji v. Percy Law Grp.,* 99 Mass. App. Ct. 772, 780 (2021).

Second, even if Sunco has stated a claim for unjust enrichment against Infinity, its claim fails against Linda. Sunco conferred a benefit *on Infinity* by shipping the cabinets to Infinity. Sunco reasonably expected compensation *from Infinity,* as Infinity was the party that issued the purchase orders and paid the invoices. The cabinets were accepted *by Infinity,* which, on the allegations of the complaint, had reason to know that Sunco expected to be paid. Sunco conferred *no* benefit on Linda. The complaint alleges (falsely, but the Court should assume its truth) that *Infinity* conferred a benefit on her by paying her a distribution. Sunco could have had no reasonable expectation that *Linda* would pay for the cabinets. The complaint alleges that Infinity was to pay. There is no allegation that *Linda* knew or had any reason to know that Sunco was expecting her, personally, to pay.

D.  <u>Sunco Cannot Plead A Claim For Civil Conspiracy, Aiding and Abetting, or Tortious Interference.</u>

One main flaw underlies Sunco's claim for civil conspiracy. The complaint alleges that Linda, David, and Shillock owned and controlled Infinity. The basic wrong alleged was the

failure to pay for the cabinets, and Sunco is thus left with the untenable argument that Infinity and its controlling persons were conspiring with themselves The aiding and abetting claim fails for a similar reason: after putting aside the torts Linda herself is accused of committing, and the tort claims that fail for reasons given in this memorandum, there is no tort committed by another defendant that could underlie the claim. The tortious interference claim fails for a similar reason. Since Sunco alleges that Linda owned and controlled Infinity, it has to prove that she acted with actual malice, but it is impossible to infer actual malice from the facts alleged in the complaint.

      1.      <u>Civil Conspiracy.</u>

Civil conspiracy requires (1) a common design or agreement between two or more persons to do a wrongful act, and (2) a tortious act in furtherance of the agreement. *Aetna Cas. & Sur. Co. v. P&B Autobody,* 43 F.3d 1546, 1564 (1st Cir. 1994). The claim fails because Sunco has not pleaded facts that plausibly suggest an agreement "between two or more persons." The supposed agreement was an agreement among the people alleged to be the sole owners and controllers of Infinity, and the law does not recognize civil conspiracies between a corporation and its officers.

For example, in *Hagenah v. Berkshire County Arc, Inc.* 2018 U.S. Dist. LEXIS 24696 (D. Mass. Feb. 15, 2018), an adult family daycare provider had a contract with a nonprofit that served disabled adults. She claimed that the nonprofit had wrongfully retaliated against her after she advocated for the rights of two disabled persons in her care, and she sought to amend her complaint to add a claim of civil conspiracy against the nonprofit and its officers, who, she alleged, "acted in concert with or substantially assisted one another or unidentified third parties." *Id.* at *20-21 (internal quotation marks omitted). The Court refused leave to amend because the

provider could not state a claim for relief on a civil conspiracy theory: a business entity cannot conspire with its own officers. *Id.* at *22-24.

The case is not like *Storage Cap Leasing, LLC v. Woodnb, LLC,* 2021 U.S. Dist. LEXIS 169520 (D. Mass. Aug. 30, 2021), when the Court refused to dismiss a civil conspiracy claim because there were several entity defendants and "the information about the organization of the defendant entities and the individual defendant's role in each at this early stage of the case is still limited." *Id.* at *2; *see also ERI/Integral Holdings, Inc. v. Integral Fund I Inv. LLC,* 2021 Mass. Super. LEXIS 532, at *14 (Mass. Super. Ct. Dec. 21, 2021) (motion to dismiss denied where conspiracy involved more than one business entity). Here, the allegation is that a single entity, Infinity, caused the injury by failing to pay, and that David, Shillock, and Linda are Infinity's sole owners (Compl. ¶ 26) and controlling persons (Compl. ¶ 176).

2. <u>Aiding and Abetting.</u>

On the claim for civil conspiracy, one conspirator can be liable for conspiracy if that conspirator personally committed the underlying tort. But on a claim for aiding and abetting, the defendant can only be liable if she aided or abetted a wrong committed by someone else. So Linda cannot be liable for aiding and abetting a breach of fiduciary duty to Sunco or tortious interference, since she is the only defendant accused of those torts. She cannot be liable for aiding and abetting conversion or unjust enrichment, since for the reasons given earlier those claims cannot succeed. The only underlying wrong that remains is the alleged breach of contract. But a claim for aiding and abetting requires an underlying tort. *See McQuilly v. Belfi,* 2021 Mass. App. Unpub. LEXIS 181, at *13 (Mass. App. Ct. Mar. 10, 2021). *See also McLaughlin v. J-PAC, LLC,* 2011 Mass. Super. LEXIS 56, at *4 (Mass. Super. Ct. Apr. 13, 2011) (aiding and abetting requires "an underlying tort by a third party"); *Norman v. Brown, Todd & Heyburn,* 693 F. Supp.

1259, 1264 (D. Mass. 1988) (aiding and abetting is a form of "joint tort liability"). All that is left is the claim for breach of contract, which is not a tort and cannot support the claim. To the extent Sunco has a claim that Linda is liable because Infinity breached the contract, its claim is for tortious interference. But that claim, as shown below, fails, too.

3. <u>Tortious Interference.</u>

Tortious interference requires proof that (1) the plaintiff had an advantageous relationship such as a contract with a third party; (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference in the contract was intentional and improper in motive and means; and (4) the plaintiff was injured. *See Blackstone v. Cashman,* 448 Mass. 255, 260 (2007). And when the defendant is in control of the third party, as Sunco alleges Linda was in control of Infinity here (Compl. ¶ 66), the plaintiff must plead that the defendant acted out of actual malice. *Id.* at 260-61. "Actual malice" means "a spiteful, malignant purpose, unrelated to [a] legitimate corporate interest," and "the mere desire to benefit oneself or one's principal will not suffice." *Hamann v. Carpenter,* 937 F.3d 86, 90 (1st Cir. 2019).

The complaint alleges "actual malice" in the most conclusory way possible: "All of these acts taken by L. Sun were with actual malice." (Compl. ¶ 121). But although malice "may be alleged generally," Fed. R. Civ. P. 9(b), intoning the words "actual malice" is the kind of pleading that no longer suffices after *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009): "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." To plead malice, "a plaintiff must still lay out facts from which malice might reasonably be inferred." *See Schatz v. Republican State Leadership Comm.,* 669 F.3d 50, 58 (1st Cir. 2012).

Sunco's complaint can support several plausible inferences. Assuming everything it alleges is true, one could infer that Linda acted in Infinity's financial interest, since it was clearly in Infinity's financial interest to obtain cabinets without paying for them. Or one could infer that Linda acted in her own financial interest or her family's, since the complaint alleges that the individual defendants took as distributions the money that should have been used to pay Sunco. And one can infer, from the allegations of breach of the fiduciary duty of loyalty, that Linda was putting the interests of herself, her family, or Infinity ahead of Sunco's. But nothing in the complaint, no matter how broadly read, supports an inference that Sun did what she is alleged to have done out of spite toward Sunco. The allegations of Linda's sudden departure from Sunco—the alleged "ruse" (Compl. ¶ 53)—cannot support an inference of actual malice. *See NuVvasive, Inc. v. Day*, 2021 U.S. Dist. LEXIS 30165, at *22 (D. Mass. Feb. 18, 2021) (where principal of plaintiff's distributor dissolved the distributor and started competing with plaintiff with one day's notice; held evidence could not show actual malice).

E. Sunco Cannot Pierce The Corporate Veil.

Veil-piercing is "not itself a cause of action but an equitable tool that authorizes courts, in rare situations, to ignore corporate formalities, where such disregard is necessary to provide a meaningful remedy for injuries and to avoid injustice." *Kraft Power Corp. v. Merrill,* 464 Mass. 145, 148 (2013) (citation and internal quotation marks omitted). The standard is "demanding," and courts should pierce the veil "only with reluctance and in extreme circumstances when compelled by reasons of equity." *Medici v. Lifespan Corp.,* 239 F. Supp. 3d 355, 372 (D. Mass. 2017) (citation and internal quotation marks omitted). When a court pierces the corporate veil, it holds a corporation's owners liable for a claim against the corporation. The complaint does not plead a plausible veil-piercing claim.

Start with the fact crucial to every veil-piercing claim: the defendant must be a shareholder. Sunco alleges, on information and belief, that Linda is a member of the limited liability company. (Compl. ¶ 6). "Information and belief" means that the allegations are "based on secondhand information that [the asserting party] believes to be true." *Menard v. CSX Transp., Inc.,* 698 F.3d 40, 44 n.5 (1st Cir. 2012) (citation and internal quotation marks omitted). But the complaint gives no firsthand or secondhand reasons to suppose that this belief is true or that it is based on anything more than speculation.

Next, turn to the factors the Court should consider when deciding whether Linda exercised "some form of pervasive control" over the activities of Infinity, and that there was a "fraudulent or injurious consequence" as a result. *Kraft,* 464 Mass. at 152. They are:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

*Scott v. NG US 1, Inc.,* 450 Mass. 760, 768 (2008) (quoting *Att'y Gen. v. M.C.K., Inc.*, 432 Mass. 546, 555 n.19 (2000)).

The complaint is silent about many of the factors. It says nothing about "confused intermingling," corporate formalities, corporate records, lack of dividends, nonfunctioning of officers and directors, the use of Infinity for personal transactions, or fraud. And while the complaint does allege insolvency, it alleges that *Sunco* was or became insolvent, not that Infinity was insolvent (Compl. ¶¶ 53, 65).[2] The gist of the claim is that Linda controlled Infinity (Compl.

---

[2] One of the factors, "common ownership" is not relevant on the facts alleged. Common ownership is useful to consider when a person owns two corporations, A Corp. and B Corp., and a plaintiff with a claim against A Corp. wants to hold B Corp. liable on the grounds that the two are owned by the same person and are not truly separate. *See, e.g., My Bread Baking Co. v. Cumberland Farms, Inc.,* 353 Mass. 614, 618-19 (1968) (common ownership of

¶¶ 66, 176), that Infinity was thinly capitalized (Compl. ¶ 29) or undercapitalized (Compl. ¶¶ 178-180), and that Linda and the other defendants "siphoned off" Infinity's capital (Compl. ¶ 72) by taking distributions rather than paying Sunco (Compl. ¶ 182).

The allegations about Infinity's capitalization are conclusory:

- "Infinity is believed to be thinly capitalized and relies on the sale of the cabinets it orders from Sunco before paying Sunco for those cabinets." (Compl. ¶ 29).

- "Infinity is believed to have been undercapitalized at all times." (Compl. ¶ 178).

- "Infinity is believed to be undercapitalized because L. Sun, D. Sun, and S. Sun disbursed all moneys received by Infinity from the sale of cabinets, leaving insufficient capital to pay its creditors, specifically Sunco." (Compl. ¶ 179).

If Sunco had any facts to support its belief, it would allege them. The only real fact alleged is that Infinity failed to pay amounts due on the contract, and that fact cannot be enough to support an inference of thin capitalization, since otherwise any breach of contract claim against a business could be a veil piercing claim. The same is true of the allegation of siphoning off funds:

- "Sunco believes that L. Sun, D. Sun and S. Sun have ceased operations of Infinity and siphoned off all of its capital." (Compl. ¶ 72).

No alleged facts support this conclusory allegation. The only fact that arguably supports it is, again, the fact of nonpayment. The allegations about control are no more specific or non-conclusory:

- "It is believed that L. Sun held and holds some kind of undisclosed financial interest in Infinity, as well as control over infinity." (Compl. ¶ 66).

---

two corporations can give rise to liability of one corporation for the acts of another when "additional facts" are present).

13

- "Infinity is controlled by L. Sun, her son D. Sun and her daughter-in-law S. Sun." (Compl. ¶ 176).

Courts dismiss cases with allegations this scanty. For example, in *Sprayregen v. Mangiameli,* 2016 U.S. Dist. LEXIS 7002, at *22-23 (E.D.N.Y. Jan. 21, 2016), the plaintiff alleged, on information and belief, that the defendant did not observe corporate formalities, that he used the corporation for personal purposes, including for paying personal debts, that he "shuttled" funds between personal and corporate accounts, that he used a corporate car for personal reasons, that he used the corporation's phone number as his personal number, that he used corporate office space for personal purposes, and that the operated the corporation as his alter ego. The court held these allegations "insufficient to state a plausible claim." *Id.* at *23. *See also J.B. Hunt Transp., Inc. v. Liverpool Trucking Co.,* 2013 U.S. Dist. LEXIS 88363, at *12-13 (M.D. Pa. 2013) (conclusory allegations of the veil-piercing actors, not supported by facts but not made on information and belief, held insufficient).

Contrast such cases with cases that meet the pleading standard. In *Antifun Ltd. v. Wayne Industries, LLC,* 2022 U.S. Dist. LEXIS 130719 (S.D.N.Y. Jul. 22, 2022), for example, a purchaser pleaded that its supplier, which had stopped fulfilling orders, was undercapitalized by pleading specific "irregularities" that supported the conclusion, for example, payments of more than $100,000 to a Chinese bank to which the corporation owed money when the corporation had stopped shipping goods. The purchaser pleaded intermingling by pleading that it had made some payments directly to the seller's shareholder, and that the shareholder had personally promised to repay the buyer for its losses. And the purchaser pleaded that the shareholder was using the corporation as a mere shell for his own transactions by pleading that the shareholder had held

himself out as conducting business with his distributors directly and that the early invoices in the relationship had come from the shareholder, not the corporation. *Id.* at *16-20.

In summary, Sunco's efforts to "check the box on [some of] the relevant factors" is not enough to state a claim, since the "conclusory allegations … even when taken at face value, fail to plausibly justify the extraordinary measure of piercing the corporate veil." *Centurion Networking Serv. Partners, LLC v. Barker,* 2018 U.S. Dist. LEXIS 70394, at *11-13 (D. Mass. Apr. 26, 2018) (granting motion to dismiss).

## CONCLUSION

For these reasons, the Court should dismiss Counts 4, 5, 8, 9, 10, and 11 for failure to state a claim on which relief can be granted.

Respectfully submitted,

LINDA SUN

By her attorney:

*/s/ Theodore J. Folkman*

Theodore J. Folkman (BBO No. 647642)
FOLKMAN LLC
53 State St., Suite 500
Boston, MA 02109
(617) 219-9664
ted@folkman.law

Dated: August 1, 2022

15