UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUNCO TIMBER (KUNSHAN) CO., LTD.,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>LINDA SUN, individually, DAVID SUN, individually SHILLOCK YUAN-SUN, individually, and INFINITY WOOD PRODUCTS, LLC.,<br><br>　　　　　　　Defendants. | C.A. No. 1:22-cv-10833-ADB |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS DAVID SUN, SHILLOCK YUAN-SUN, AND INFINITY WOOD PRODUCTS, LLC'S MOTION TO DISMISS**

Defendants David Sun ("David"), Shillock Yuan-Sun ("Shillock"), and Infinity Wood Products, LLC ("Infinity") (collectively, "Defendants") respectfully submit this memorandum of law in support of their Motion to Dismiss all Counts against David and Shillock (Counts V, VIII, IX, X, and XI) and Counts II, III, V, VIII, IX, and XI against Infinity for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).[1]  Defendants also join in Defendant Linda Sun's Motion to Dismiss Counts 4, 5, 8, 9, 10, and 11.  *See* Doc. No. 16.

## INTRODUCTION

Plaintiff Sunco Timber (Kunshan) Co., Ltd. ("Sunco China" or "Plaintiff") asserts claims against Infinity and against its two members,[2] David and Shillock, arising out of a series of

---

[1] While Count I for breach of contract against Infinity is without merit, Infinity does not challenge that claim in this Motion to Dismiss, and reserves its right to challenge that claim, and any remaining claims, at a later date.

[2] Although Plaintiff alleges that Defendant Linda Sun ("Linda") has an equity interest in Infinity (*see* Compl. ¶¶ 6, 26), David and Shillock are the sole members of that LLC.

1

purchase orders for the purchase of wood cabinetry.³  Compl. ¶¶ 26-75 .  According to the Complaint, Infinity was obligated to pay for those cabinets and failed to do so.  Compl. ¶¶ 30-35. Rather than simply sue Infinity for breach of contract, however, Plaintiff chose to assert a number of baseless claims not just against Infinity, but against its members as well.  Each of those counts must be dismissed for the following reasons, as set forth herein:

- Counts II (Promissory Estoppel), III (Quantum Meruit), and VIII (Money Had and Received) must be dismissed because the Complaint alleges an express contract in the form of purchase orders, and quasi-contractual claims cannot override an express contract, as set forth herein.

- Count V (Conversion) must be dismissed against Defendants because, as set forth herein, Plaintiff has not alleged any contractual requirement to return the cabinets. In addition, Plaintiff has not alleged any facts that support a claim that either David or Shillock is or ever was in possession of the cabinets.

- Counts IX (Conspiracy) and X (Aiding and Abetting) must be dismissed because, *inter alia*, as set forth herein, (1) Plaintiff has not adequately alleged the requisite underlying tort; (2) even if Plaintiff had adequately alleged a tort, Plaintiff has not adequately alleged facts supporting a claim for aiding and abetting or civil conspiracy against the Defendants; and (3) Plaintiff has alleged that all four Defendants acted as agents of Infinity, and agents of a corporation cannot conspire with each other when acting on behalf of the corporation.

- Count XI (Piercing the Corporate Veil) must be dismissed because, as set forth herein, (1) veil piercing is not a stand-alone claim under Massachusetts law; and (2) Plaintiff has not, in any event, alleged sufficient facts to support a veil piercing claim.

- Certain of Plaintiff's claims for Conversion (V), Conspiracy (IX), and Aiding and Abetting (X) are barred by the statute of limitations.

## BACKGROUND

According to the Complaint, Sunco China manufactures wood cabinetry, which it exports to the United States.  Compl. ¶ 9.  Sunco China sold custom cabinets to Infinity, which, until 2019,

---

³ In referencing the allegations in the Complaint herein, Defendants do not make any admission that such allegations are accurate, not misleading, or comprehensive.  Defendants reserve the right to challenge the factual allegations of the Complaint at the appropriate time.

was Sunco China's sole customer. *Id*. ¶ 24. The Complaint alleges that the equity holders of Infinity are Linda Sun, David Sun (Linda's son), and Shillock Yuan-Sun (David's wife). *Id*. ¶ 26. When Infinity wanted to purchase cabinets, it placed a purchase order with Sunco China, which then shipped Infinity the cabinets on credit and invoiced Infinity. *Id*. ¶¶ 30-34.

From July 2018 to July 2019, Sunco China shipped $6,712,182.11 worth of wood cabinetry to Infinity, which Infinity accepted without complaint. *Id*. ¶¶ 43 & 45. Infinity requested that its accounts payable terms be extended and on April 29, 2019, Infinity acknowledged it owed Sunco China $5,886,466.77. *Id*. ¶¶ 46-47. Sunco China continued to ship cabinetry to Infinity until July of 2019, when Infinity ceased doing business with Sunco China. *Id*. ¶¶ 48 & 56. The Complaint alleges that Infinity never paid for the $6,712,182.11 of wood cabinetry. *Id*. ¶ 54.

## ARGUMENT

### I. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the combined allegations of the complaint, "taken as true, must state a plausible, not a merely conceivable, case for relief. *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 29 (1st Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### II. THE COMPLAINT SUPPORTS NEITHER THE SUBSTANTIVE CLAIMS AGAINST DAVID AND SHILLOCK NOR THE VEIL-PIERCING CLAIM AGAINST THEM

#### A. There are no allegations that either David or Shillock has taken any action that would make them liable for any of the substantive claims against them.

The Complaint does not assert any allegations of conduct by either David or Shillock that support any of the claims against them. There is not a single allegation of an action taken by Shillock in the entirety of the Complaint. The only allegation of any conduct by David is the

3

allegation – "[b]ased on information and belief" – that David initiated a lawsuit in China against Sunco China to dissolve the company for an improper purpose. Compl. ¶ 74. Yet the Complaint also alleges that that lawsuit was initiated by Sunco, Inc. (U.S.A.), a "purported shareholder of Sunco" China. *Id*. ¶ 73. Further, Plaintiff does not allege the factual basis for its "belief" that David initiated a lawsuit against Sunco China. Allegations made on "information and belief" must nevertheless have a factual basis that is set forth in the complaint; such allegations cannot be mere speculation. *See, e.g.*, *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 (1st Cir. 2012) (explaining that "if [plaintiff] had any facts to support this assertion, they should have been set forth. 'Information and belief' does not mean pure speculation" and "'[u]pon information and belief' signifies that allegations are based on secondhand information that [the asserting party] believes to be true.") (internal citations and quotations omitted). Similarly, Plaintiff alleges that it "believes that L. Sun, D. Sun and S. Sun have ceased operations of Infinity and siphoned off all of its capital" (Compl. ¶ 72), but does not allege any facts to support this purported belief.

The remaining allegations that mention either David or Shillock do not allege *actions* taken by either, but rather are mere conclusory allegations that essentially restate the elements of the claims to which they relate. *See, e.g.*, *id*. ¶¶ 53, 127, 128, 152, 157-163, 166-171, 183. Such claims must be disregarded. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

      **B.**    <u>**The Complaint Does Not Support a Veil Piercing Claim**</u>**.**

Because Plaintiff has alleged no wrongful action taken by David or Shillock, it appears that Plaintiff intends to rely entirely on a veil-piercing theory in naming David and Shillock as defendants, but Plaintiff's complaint falls far short of the pleading requirements for obtaining such equitable relief. As a preliminary matter, veil-piercing is not a stand-alone claim in Massachusetts.

4

(*see, e.g., Kraft Power Corp. v. Merrill*, 464 Mass. 145, 148, 981 N.E.2d 671, 678 (2013) (piercing the veil "is not itself a cause of action but 'an equitable tool…' (quoting *Attorney Gen. v. M.C.K., Inc.,* 432 Mass. 546, 555, 736 N.E.2d 373 (2000)))), and Count XI should be dismissed for that reason alone.  In addition, the claims against David and Shillock should be dismissed because Plaintiff has not alleged facts sufficient to plead piercing the corporate veil such that liability can attach to David and Shillock as members of Infinity.

"The corporate veil 'may be pierced only with reluctance and in extreme circumstances when compelled by reasons of equity.'"  *Medici v. Lifespan Corp.*, 239 F. Supp. 3d 355, 372 (D. Mass. 2017) (Burroughs, J.) (quoting *Lothrop v. North American Air Charter, Inc.*, 95 F.Supp.3d 90, 100 (D. Mass. 2015); *see also Evans v. Multicon Constr. Corp.*, 30 Mass.App.Ct. 728, 574 N.E.2d 395, 398 (1991) ("In 'rare particular situations to prevent gross inequity,' disregard of separate corporate entities may be warranted, i.e., it is permissible to pierce the corporate veil.") (quoting *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 233 N.E.2d 748, 752 (1968)).  Massachusetts Courts consider twelve factors when deciding whether to pierce the corporate veil:

> They are as follows: "(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholders; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud."

*Lipsitt v. Plaud*, 466 Mass. 240, 253, 994 N.E.2d 777, 788 (2013) (quoting *M.C.K., Inc., supra* at 555 & n. 19).

Plaintiff has alleged no *facts* supporting any of the twelve factors, except that Plaintiff alleges David and Shillock own Infinity (factor 1).  Indeed, the Complaint says nothing about intermingling (3), corporate formalities (5), corporate records (6), dividends (7), insolvency of

*Infinity* (8),[4] nonfunctioning of officers and directors (10), use of corporation for transactions of the shareholders (11), or use of the corporation in promoting fraud (12).  For the remaining factors – control (2), thin capitalization (4), and siphoning of corporate funds (9), Plaintiff merely asserts conclusory allegations that simply re-state factors (*see* Compl. ¶¶ 26, 29, 66, 72, 176, 178-179, & 182-183), or cites to personal beliefs without alleging the facts supporting such belief.  For example, according to the Complaint, "Sunco believes that L. Sun, D. Sun and S. Sun have ceased operations of Infinity and siphoned off all of its capital."  Compl. ¶ 72.  Sunco China does not allege any facts supporting that belief.  Plaintiff then uses that factually unsupported belief in an attempt to support another belief, alleging that "Infinity ***is believed*** to be undercapitalized because L. Sun, D. Sun, and S. Sun disbursed all monies received by Infinity from the sale of cabinets…."  Compl. ¶ 179 (emphasis added).  Without any factual allegations supporting those beliefs, such speculative allegations must be disregarded.  *See, e.g.*, *Menard* 698 F.3d at 44.  Thus, Plaintiff has failed to sufficiently plead a claim that funds were disbursed by Infinity to David and Shillock.

    Even if Plaintiff had adequately alleged factual support for a claim that Infinity's funds were disbursed to its members, that would be plainly insufficient to support a veil-piercing claim.  Indeed, if that were all that were required for a veil-piercing claim, then virtually every company that has ever paid dividends to its shareholders or members would be subject to veil-piercing.  Such a standard is not a "rare particular situation to prevent gross inequity…," (*Evans*, 574 N.E.2d at 398) nor is it the type of "extreme circumstance" to which veil piercing must be limited (*Medici*, 239 F. Supp. 3d at 372).  In analyzing a complaint, courts are "mindful that there is a 'presumption of corporate separateness that must be overcome by clear evidence.'"  *Scallop Imaging, LLC v. Vision Techs., Inc.*, No. 17-CV-10092-ADB, 2021 WL 3561213, at *6 (D. Mass. Aug. 12, 2021)

---

[4] The only insolvency allegations in the Complaint relate to Sunco China.  *See* Compl. ¶¶ 53, 65.

(Burroughs, J.) (quoting *Concepts NREC, LLC v. SoftInway, Inc.*, No. 19-cv-12033, 2021 WL 916259 at *3 (D. Mass. Mar. 10, 2021)).

Complaints containing far more factual allegations than this complaint have been dismissed for failure to adequately allege veil-piercing. For example, in *Hoffman v. Optima Systems, Inc.*, the Court (Young, J.) dismissed a plaintiff's claims against individual defendants notwithstanding that the plaintiff in that case alleged "1) the [defendants] disregarded [the company]'s corporate entity and used the corporation as their own []; 2) [the company] failed to follow routine corporate formalities in both its internal governance and in the conduct of its business []; and, 3) the [defendants] 'falsely and fraudulently [sic] ... [induced] plaintiff to resign his position ... with Polaroid Corporation ... and to enter into a contract of employment with [the company]...." *Hoffman v. Optima Sys., Inc.*, 683 F. Supp. 865, 870 (D. Mass. 1988).

In *Centurion Networking Service Partners, LLC v. Barker*, the Court (Burroughs, J.) dismissed the plaintiff's claims against the individual shareholder defendant notwithstanding that the plaintiff alleged that the company "has not observed corporate formalities," that the shareholder installed an unqualified employee with whom he had a personal relationship, that the shareholder "siphoned away funds from [the company] either to pay for exotic vacations to the Bahamas on a private jet, to purchase a vacation home in the Bahamas, or to support other businesses in which [the shareholder] had an ownership stake or other interest," that the company "maintain[ed] thin capitalization," that there was an "absence of corporate records," and "pervasive control" over multiple entities. *Centurion Networking Serv. Partners, LLC v. Dr. Wade N. Barker, P.A.*, No. 17-CV-11304-ADB, 2018 WL 1972789, at *4 (D. Mass. Apr. 26, 2018). Further, the complaint was supplemented by an affidavit that alleged the shareholder installed his personal bookkeeper as the CFO of the company, that the shareholder "was indicted for improper business practices," and the

7

shareholder billed some personal computing servicing to the company. *Id*. Though the Court acknowledged the plaintiff "attempted to check the box on each of the relevant factors under Massachusetts' veil piercing analysis," the Court nevertheless found that "the evidence in these affidavits, and the credible allegations of the Amended Complaint, fall short of the high threshold for piercing the corporate veil," which the Court described as an "extraordinary measure." *Id*. at *5.

The First Circuit affirmed a dismissal of a veil-piercing claim where plaintiffs "never alleged that *they* were confused about the identity of the legal entity with which they were contracting" "despite their allegations of intermingling," including allegations that "surplus profits…are siphoned upward…." *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 129 (1st Cir. 2006) (emphasis in original). Here, Plaintiff alleges no confusion about the identity of the entity with which it contracted. The First Circuit emphasized that "[u]ltimately, plaintiffs do not allege, and the circumstances do not lead to an inference of, any gross inequity that would argue in favor of overriding the presumption of corporate separateness." *Id*.

A Massachusetts Superior Court dismissed a complaint against shareholders notwithstanding that "virtually all of the factors" courts consider were "abundantly present in this case. The [shareholders] have treated [the company] as if it were their own personal property, disregarding corporate formalities along the way. The [shareholders] have back-dated corporate transactions and purported to ratify their own self-dealing by their own majority vote as directors; they have commingled funds, including depositing [company] monies in their own joint personal account; they have used [company] funds for a variety of personal expenses." *Henderson v. Axiam, Inc.*, No. 962572D, 1999 WL 33587312, at *60 (Mass. Super. June 22, 1999), aff'd, 59 Mass. App. Ct. 1107, 797 N.E.2d 502 (2003). The Court in that case dismissed the plaintiff's claims against the shareholders because "disregard for the corporate form is not warranted except to defeat fraud or

wrong or to prevent gross inequity." *Id*.  Courts in this District have agreed, finding that the standard for veil-piercing "require[s] a showing 'that piercing the corporate veil is necessary to defeat fraud or wrong or gross inequity.'"  *Cullen v. Darvin*, 132 B.R. 211, 215 (D. Mass. 1991) (quoting *Hoffman*, 683 F. Supp. at 871) (Caffrey, S.J.).

Plaintiff has not sufficiently pled facts supporting a claim for piercing the corporate veil of Infinity and, therefore, Plaintiff's claims against David and Shillock must be dismissed in their entirety.

### III. PLAINTIFF'S PROMISSORY ESTOPPEL (II), QUANTUM MERUIT (III), AND MONEY HAD AND RECEIVED (VIII) CLAIMS MUST BE DISMISSED

Plaintiff alleges an express contract between Infinity and Sunco China in the form of purchase orders.  Compl. ¶¶ 30-34, 77-86.  Promissory Estoppel (Count II), Quantum Meruit (III), and Money Had and Received (Count VIII) are all quasi-contractual claims.  "Unjust enrichment, quantum meruit and promissory estoppel all constitute claims in equity" and, as such, "each of the three claims is unavailable where the conduct at issue is the subject of an express contract between the parties."  *Rail World Locomotive Leasing, LLC v. Massachusetts Bay Transportation Auth.*, No. CV 16-11541, 2017 WL 1902147, at *3 (D. Mass. May 9, 2017) (Stearns, J.); *see also Boswell v. Zephyr Lines, Inc.*, 414 Mass. 241, 250, 606 N.E.2d 1336, 1342 (1993) ("Recovery in quantum meruit presupposes that no valid contract covers the subject matter of a dispute.").  That is because "[t]he law will not imply a contract where there is an existing express contract covering the same subject matter." *Zarum v. Brass Mill Materials Corp.*, 334 Mass. 81, 85, 134 N.E.2d 141, 143 (1956); *see also Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017) ("Massachusetts law does not permit litigants to override an express contract by arguing unjust enrichment." (internal quotations omitted)); *Reed v. Zipcar, Inc.*, 527 F. App'x 20, 24 (1st Cir. 2013) (upholding dismissal of unjust enrichment and money had and received claims because the law "precludes equitable

claims arising from contract" and noting that "the claim of money had and received is simply a narrower form of unjust enrichment"); *HG Bermuda Exempted Ltd.*, 437 F.3d at 130 ("Massachusetts law does not allow litigants to override an express contract by arguing unjust enrichment."). Because Plaintiff alleges an express contract in the form of purchase orders, Counts II (Promissory Estoppel), III (Quantum Meruit), and VIII (Money Had and Received) must be dismissed.

### IV.  PLAINTIFF'S CONVERSION CLAIM (COUNT V) MUST BE DISMISSED

To state a claim for conversion, a plaintiff must plausibly allege that the defendant "intentionally or wrongfully exercised acts of ownership, control or dominion over personal property to which [it] has no right of possession at the time." *Abington Natl. Bank v. Ashwood Homes, Inc.,* 19 Mass.App.Ct. 503, 507, 475 N.E.2d 1230 (1985). The Complaint, however, makes clear that Infinity did, in fact, have a right to possession when it took possession of the cabinets. According to the Complaint, Sunco China shipped the cabinets to Infinity pursuant to purchase orders. *See, e.g.*, Compl. ¶¶ 30-32, 43, 45, 48, 54. Plaintiff does not allege any contractual obligation for Infinity to return the cabinets. "In order to recover for conversion, plaintiffs must show that at the time of the alleged conversion they had either actual possession or the right to immediate possession or control of the property in question." *In re 604 Columbus Ave. Realty Tr.*, 968 F.2d 1332, 1358 (1st Cir. 1992). Because Plaintiff had no right to the cabinets at the time of the alleged conversion, Plaintiff's conversion claim fails. *Id.*; *see also Eleazu v. JP Morgan Chase*, No. 20-CV-11913-DJC, 2021 WL 2419606, at *4 (D. Mass. June 14, 2021) (dismissing plaintiff's conversion claim for payments that "were not made with the expectation that they would be returned to them," notwithstanding the plaintiff's claim that such payments were misused) (Casper, J.). What Plaintiff complains of is a failure to pay a debt, but "failure to repay a debt cannot

constitute a conversion." *Devaney Contracting Corp. v. Devaney*, 78 Mass. App. Ct. 1117, 939 N.E.2d 135 (2010).

Moreover, "[w]here a defendant's possession is not wrongful in its inception, demand and refusal are prerequisites to an action for conversion." *In re Halmar Distributors, Inc.*, 968 F.2d 121, 129 (1st Cir. 1992), opinion corrected (July 16, 1992) (citing *Atlantic Fin. Corp. v. Galvam*, 311 Mass. 49, 50-51, 39 N.E.2d 951 (1942)); *see also*, *Yoon v. Shin*, 90 Mass. App. Ct. 1104, 57 N.E.3d 1066 (2016) ("A demand is a necessary preliminary to an action for conversion where the defendant's possession is not wrongful in its inception and demand and refusal are required to put him in the position of a wrongdoer." (internal citations and quotations omitted)). Plaintiff has not alleged a demand that the cabinetry be returned. Even if Plaintiff had a right to return of the cabinets, therefore, Plaintiff's claim for conversion still fails.

### V. PLAINTIFF'S CONSPIRACY (COUNT IX) AND AIDING AND ABETTING (COUNT X) CLAIMS MUST BE DISMISSED

Plaintiff's Conspiracy (Count IX) and Aiding and Abetting (Count X) claims (collectively, the "Conspiracy Counts") sound in fraud and therefore must be pled with particularity pursuant to Rule 9(b). *See, e.g.*, Compl. ¶¶ 159-161, 167-169. The Complaint, however, fails to meet even the more-lax standard of Rule 8.

First, Plaintiff's Conspiracy Counts are based on (1) breach of contract; (2) conversion; (3) wrongful interference with business and contractual relations; and (4) breach of fiduciary duty and duty of loyalty. Compl. ¶¶ 163, 167-171. In Massachusetts, however, a claim for conspiracy or aiding and abetting must be supported by an adequately alleged tort. *See, e.g.*, *McLaughlin v. J-PAC, LLC*, No. 10-2594-BLS1, 2011 WL 1758945, at *2 (Mass. Super. Apr. 14, 2011) ("Civil claims for aiding and abetting ... are a form of civil conspiracy, and therefore require an underlying tort by a third party.") Breach of contract cannot, therefore, establish a basis for conspiracy. And,

11

as set forth above, Plaintiff has not adequately alleged conversion.  Further, as set forth below and in the Memorandum in Support of Motion of Linda Sun to Dismiss Counts 4, 5, 8, 9, 10, and 11 ("Linda's Motion to Dismiss Memorandum"), Plaintiff has also failed to adequately allege wrongful interference.

Plaintiff's Conspiracy Counts against Infinity cannot be based on Plaintiff's claim for wrongful interference by Linda because (a) Plaintiff has not adequately alleged a claim for wrongful interference upon which a conspiracy count can be based, as set forth in Linda's Motion to Dismiss Memorandum (*see* Doc. No. 17 at 4-6, 10-11); and (b) a wrongful interference claim must be based on the interference with a *third party*.  *See, e.g.*, *G.S. Enterprises, Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272, 571 N.E.2d 1363, 1369 (1991) ("In an action for intentional interference with contractual relations, the plaintiff must prove that: (1) he had a contract with a *third party*; (2) the defendant knowingly induced the *third party* to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.") (emphasis added).  Infinity is not a third party to the relevant contractual relationship and so cannot be held liable for wrongful interference.  *See, e.g.*, *Harrison v. NetCentric Corp.*, 433 Mass. 465, 477, 744 N.E.2d 622, 632 (2001) ("A party to the contract cannot be held liable for intentional interference."); *Pierce v. Cotuit Fire Dist.*, 741 F.3d 295, 304 (1st Cir. 2014) ("a defendant may tortiously interfere only with a plaintiff's contract with a third party").  Moreover, because Plaintiff does not allege any actionable conduct by David or Shillock, and instead appears to rely entirely on a theory that Infinity's actions should be imputed to David and Shillock, David and Shillock cannot be considered a third party to the relevant contract.[5]

---

[5] Similarly, as set forth in Linda's Motion to Dismiss Memorandum, Plaintiff's theory is that there was a lack of corporate separateness between Linda and Infinity such that this Court should allow Plaintiff to pierce the corporate veil and treat Linda as one entity.  *See* Doc. No. 17 at 7-9.  As such,

Second, even if Plaintiff had adequately alleged a tort that could form the basis of a conspiracy, the Complaint fails to allege facts to support the Conspiracy Counts.  "A person may be liable for conspiracy if he knows that another person's conduct 'constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.  [] Key to this cause of action is a defendant's substantial assistance, with the knowledge that such assistance is contributing to a common tortious plan.'"  *Tomaselli v. Beaulieu*, No. 1:08-CV-10666, 2010 WL 2105347, at *9 (D. Mass. May 7, 2010) (Saris, J.) (quoting *Kurker v. Hill,* 44 Mass.App.Ct. 184, 189, 689 N.E.2d 833, 837 (1998), internal citations omitted).  Plaintiff has not alleged any facts that support a claim that David, Shillock, or Infinity provided "substantial assistance" to a tortious scheme with knowledge of such scheme.

"A plaintiff does not adequately plead a conspiracy claim when the complaint contains 'mere allegations of ... corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes[, which] are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated.'"  *Gov't Emps. Ins. Co. v. Barron Chiropractic & Rehab., P.C.*, No. 1:16-CV-10642-ADB, 2017 WL 3526255, at *14 (D. Mass. Aug. 16, 2017) (Burroughs, J.) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)).  Yet that is exactly what Plaintiff has pled here – a simple recitation of the elements of conspiracy and averments as to state of mind.  In *Barron Chiropractic*, the Court dismissed plaintiff's conspiracy claims even though the plaintiff there alleged "individual fraudulent acts perpetuated simultaneously." *Id*.  Here, Plaintiff does not allege *any* action by David or Shillock.

---

Plaintiff cannot also argue that Linda/Infinity somehow tortiously interfered with Infinity's own contract with Plaintiff, and if Linda did not tortiously interfere with the contract, there cannot have been a conspiracy to commit tortious interference.

Finally, the Complaint alleges that David, Shillock, and Linda all acted as agents of Infinity. *See, e.g.*, Compl. ¶¶ 6, 25, 26, 28, 53, 55, 66. Accordingly, there can be no conspiracy among the Defendants because "there is no unlawful conspiracy when officers within a single corporate entity consult among themselves and then adopt a policy for the entity. Under this principle—sometimes called the intracorporate-conspiracy doctrine—an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1867, 198 L. Ed. 2d 290 (2017) (internal citations omitted). That is because "[c]onspiracy requires an agreement—and in particular an agreement to do an unlawful act—between or among two or more separate persons. When two agents of the same legal entity make an agreement in the course of their official duties, however, as a practical and legal matter their acts are attributed to their principal. And it then follows that there has not been an agreement between two or more separate people." *Id*. Indeed, because, as set forth above, Plaintiff has not alleged any conduct by David or Shillock and appears instead to base its theory of liability against David and Shillock on a claim for corporate veil-piercing – i.e., a lack of corporate separateness – Plaintiff cannot then turn around and claim that David, Shillock, Infinity, and another alleged agent of Infinity (Linda) entered into a conspiracy with each other.

## VI. MANY OF PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

The Complaint was filed on June 1, 2022. The statute of limitations for claims of conversion, intentional interference with contractual relations, breach of fiduciary duty, breach of loyalty,[6] conspiracy, and aiding and abetting in Massachusetts is three years. *See* Mass. Gen. Laws

---

[6] Though Plaintiff does not assert claims of intentional interference, breach of fiduciary duty, or breach of loyalty against Infinity, David, or Shillock, to the extent those torts underly Plaintiff's claims for conspiracy and aiding and abetting against Infinity, David or Shillock, the applicable limitations period for those alleged torts are relevant.

Ann. ch. 260, § 2A; *Cahill v. Silva*, 101 Mass. App. Ct. 1106, 188 N.E.3d 984 (2022) ("A claim for civil conspiracy is subject to a three-year statute of limitations."); *Cohen v. State St. Bank & Tr. Co.*, 72 Mass. App. Ct. 627, 630, 893 N.E.2d 425, 428 (2008) (finding the three year limitations period applicable to breach of fiduciary duty claims); *Pure Distributors, Inc. v. Baker*, 285 F.3d 150, 154–55 (1st Cir. 2002) ("A claim for intentional interference with contractual relations is one sounding in tort.  As such, it is subject to a three-year statute of limitations under Massachusetts law." (internal citations omitted)).  Taking into account the Massachusetts Supreme Judicial Court's June 24, 2020 order, which tolled the statute of limitations from March 17, 2020 until June 30, 2020 due to the COVID-19 pandemic,[7] any claim for the aforementioned torts that accrued before February 15, 2019 is barred by the statute of limitations.  According to the Complaint, Infinity ceased paying for cabinets beginning on July 2, 2018, Compl. ¶ 35, and, therefore, Plaintiff's tort-based claims are barred by the statute of limitations.

## CONCLUSION

For the foregoing reasons, pursuant to Fed.R.Civ.P 12(b)(6), Defendants David Sun, Shillock Yuan-Sun, and Infinity Wood Products, LLC respectfully request that the Court dismiss all claims against David Sun and Shillock Yuan-Sun and dismiss Counts II (Promissory Estoppel), III (Quantum Meruit), V (Conversion), VIII (Money Had and Received), IX (Conspiracy), and XI (Piercing the Corporate Veil of Infinity) against Infinity Wood Products, LLC for failure to state a claim on which relief can be granted.

---

[7] *See* Third Updated Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 (Coronavirus) Pandemic, Massachusetts Supreme Judicial Court (June 24, 2020), https://www.mass.gov/doc/sjc-third-updated-order-regarding-court-operations-under-the-exigent-circumstances-created-by/download.

Dated: August 1, 2022

> DAVID SUN, SHILLOCK YUAN-SUN, and INFINITY WOOD PRODUCTS, LLC
>
> By their attorneys,
>
> */s/ Michele E. Connolly*
> Peter E. Ball, BBO #546031
> Michele E. Connolly, BBO #680946
> Rebekah Glickman-Simon, BBO #708043
> FITCH LAW PARTNERS LLP
> 84 State Street
> Boston, MA 02109
> 617-542-5542
> *peb@fitchlp.com*
> *mec@fitchlp.com*
> *rgs@fitchlp.com*

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 1, 2022.

> */s/Michele E. Connolly*
> Michele E. Connolly