UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SUNCO TIMBER (KUNSHAN) CO. LTD., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 22-cv-10833-ADB |
| LINDA SUN, individually, DAVID SUN, individually, SHILLOCK YUAN-SUN, individually, and INFINITY WOOD PRODUCTS, LLC, | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM & ORDER ON MOTIONS TO DISMISS**

BURROUGHS, D.J.

**I.    INTRODUCTION**

Sunco Timber (Kunshan) Co., Ltd. ("Sunco" or "Plaintiff") filed the instant lawsuit against Linda Sun, David Sun, Shillock Yuan-Sun, and Infinity Wood Products, LLC ("Infinity") bringing claims that all relate to a failure to pay for cabinets that Sunco manufactured and shipped to Infinity.  Pending before the Court are motions to dismiss filed by Linda,[1] [ECF No. 16], and, separately, by David, Shillock, and Infinity, [ECF No. 18].  For the reasons set forth below, the motions to dismiss, [ECF Nos. 16, 18], are <u>GRANTED</u> in part and <u>DENIED</u> in part.

---

[1] Because their last names are the same or similar, the individual defendants will be referred to by their first names.

## II. FACTUAL BACKGROUND

The following facts are taken from the complaint, [ECF No. 1 ("Compl.")], and assumed to be true when considering the motions to dismiss, Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

Sunco is a legal entity, that was established in 2003 by Linda and that has its principal place of business in Kunshan, China. [Compl. ¶¶ 1, 14]. The company has a board of directors that was formed in 2014. [Id. ¶ 21]. From at least 2014 until June 14, 2019, Linda was the President of Sunco and managed all aspects of the business and even lived on Sunco's premises. [Id. ¶¶ 16, 18, 19, 22]. During that time Linda resided primarily in China, travelling only occasionally to the United States and "always notified the other key management members of Sunco[] of her travel schedule." [Id. ¶¶ 22–23].

As of the filing of the complaint, Linda, David, and Shillock live in Sherborn, Massachusetts. [Compl. ¶¶ 2–5]. Infinity is a Delaware limited liability company registered to do business in Massachusetts, with its primary place of business in South Easton, Massachusetts. [Id.]. David and Shillock manage Infinity, [id. ¶ 25], and Linda, David, and Shillock are the company's only members and equity shareholders, [id. ¶¶ 6, 26]. Each of them is also alleged to have received distributions from Infinity. [Id. ¶ 28].[2]

Sunco manufactures cabinets in China and exports those products to the United States. [Compl. ¶¶ 1, 9, 15]. Up until July 2019, Infinity, which is in the business of importing, distributing and selling cabinets, was Sunco's sole customer. [Id. ¶¶ 10, 24]. Infinity would initiate a transaction by placing a purchase order with Sunco for custom cabinets. [Id. ¶¶ 17, 24, 30]. Sunco would then manufacture the cabinets, package them, and ship them to Infinity. [Id.

---

[2] The complaint further asserts that "[i]t is believed that [Linda] held and holds some kind of undisclosed financial interest in Infinity, as well as control over Infinity." [Compl. ¶ 66].

2

¶¶ 31–32]. Once that occurred, Sunco would issue an invoice to Infinity, [id. ¶ 33], and, up until the disputed transaction, Infinity would pay the invoice, [id. ¶¶ 34–35]. Infinity is "thinly capitalized" or undercapitalized, relying on the sale of the cabinets manufactured by Sunco to pay Sunco's invoices. [Id. ¶¶ 29, 178–79].

Starting in 2018, the United States began imposing tariffs on Chinese goods, including wood products such as the cabinets at issue here. [Compl. ¶¶ 36–37]. As of September 24, 2018, the tariffs on wood products were 10%; they increased to 25% on January 1, 2019. [Id. ¶ 37]. In spring 2019, the United States imposed a 100% tax burden on Sunco's products. [Id. ¶ 38]. Despite concerns that these steep taxes would hinder the export of wood products from China into the United States, Infinity nevertheless continued to place purchase orders with Sunco, and between July 2, 2018 and July 7, 2019 Sunco shipped cabinets worth $6,712,182.11 to Infinity. [Id. ¶¶ 39, 41, 43]. Infinity accepted delivery of those cabinets without complaint. [Id. ¶ 45]. On several occasions, including on April 17, 2019, Infinity "requested that its accounts payable term be extended" and expressed that it would be able to pay approximately $500,000 per month. [Id. ¶ 46]. Subsequently, on April 29, 2019, Infinity executed a confirmation of accounts receivable, acknowledging that it owed Sunco $5,886,466.77 for the cabinets shipped as of December 31, 2018. [Id. ¶ 47]. Nonetheless, Infinity did not pay Sunco for the cabinets. See [id. ¶¶ 54, 65].

On June 14, 2019, Linda left Kushan, China for Massachusetts and has not returned to Kunshan since. [Compl. ¶ 49]. On July 24, 2019, Linda sent members of Sunco's board a formal letter explaining health issues that she was experiencing and stating that she would be undergoing treatment for the next six months. [Id. ¶ 52]. In the letter, however, she did not address any financial issues, including Infinity's non-payment of invoices. [Id.]. Linda also did

not disclose to the board that she and her family members had an interest in Infinity and thus an interest in Infinity's unpaid invoice. [Id. ¶¶ 64, 67]. As a result, some Sunco board members only learned that David and Shillock managed Infinity after Infinity failed to pay the outstanding invoice. [Id. ¶ 65]. Around the same time in Summer 2019, a new manager, Guoqing Wu, stepped in to run Sunco's factory. [Id. ¶ 57].

After receiving the last shipment of cabinets in July 2019, Infinity ceased doing business with Sunco. [Compl. ¶ 56]. After Linda's departure, Sunco was unable to pay, among other things, its workers' salaries, pollution disposal fees, taxes, or its vendor fees, which resulted in its workers going on strike. [Id. ¶¶ 58–59]. Because it failed to pay wages, Sunco was fined by the local government, [id. ¶ 61], and had to borrow money to cover unpaid salaries, fines, taxes, and other fees, [id. ¶ 62].

Later, in August 2020, an entity controlled by Linda, named "Sunco, Inc. (U.S.A.)," which holds shares in Sunco, filed suit in Suzhou, China seeking to dissolve Sunco. [Compl. ¶ 73]. That request, however, was denied. [Id.].

### III. PROCEDURAL HISTORY

Plaintiff initially filed this action on June 1, 2022, bringing counts for breach of contract, promissory estoppel, and quantum meruit against Infinity (Counts 1–3), counts for wrongful interference with business and contractual relations, breach of duty of loyalty, and breach of fiduciary duty against Linda (Counts 4, 6, and 7), a count of aiding and abetting against Linda, David, and Shillock (Count 10), counts for conversion, moneys had and received, and conspiracy against all Defendants (Counts 5, 8, and 9), and further requests that the Court pierce Infinity's corporate veil (Count 11). [Compl. ¶¶ 76–185]. On July 31, 2022, Linda moved to dismiss Counts 4, 5, 8, 9, 10, and 11 as against her. [ECF No. 16]. On August 1, 2022, David, Shillock,

and Infinity moved to dismiss Counts 5, 8, 9, 10, and 11 as against David and Shillock personally and Counts 2, 3, 5, 8, 9, and 11 against Infinity. [ECF No. 18]. Sunco opposed the motions on September 2, 2022. [ECF Nos. 23, 24]. The motions have been fully briefed and are ripe for resolution.

IV.    LEGAL STANDARD

Under the Federal Rules of Civil Procedure, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). This pleading standard requires "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

When evaluating the sufficiency of a complaint, the Court "first must 'distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Cardigan Mountain Sch., 787 F.3d at 84 (quoting García–Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013)) (further internal quotations and citation omitted). "Second, the court must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." García–Catalán, 734 F.3d at 103 (internal quotations and citation omitted). In conducting this analysis, the Court must accept all well-pled facts as true and analyze those facts in the light most favorable to the plaintiff's theory, drawing all reasonable inferences in favor of the plaintiff. U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).

V.      DISCUSSION

    A.      **Promissory Estoppel, Quantum Meruit, and Moneys Had and Received (Counts 2, 3, and 8)**

Promissory estoppel, quantum meruit, and moneys had and received are all quasi-contract equitable claims. See Rail World Locomotive Leasing, LLC v. Mass. Bay Transp. Auth., No. 16-cv-11541, 2017 WL 1902147, at *3; see also Jelmoli Holding, Inc v. Raymond James Fin. Servs., Inc., 470 F.3d 14, 17 n.2 (1st Cir. 2006) ("Unjust enrichment is an equitable claim with the same elements [as moneys had and received] save that it is not limited to enrichment by money, or its equivalent."). While under Massachusetts law recovery for breach of contract and such quasi-contract claims are mutually exclusive, "it is accepted practice to pursue both theories at the pleading stage . . . ." Lass v. Bank of Am., N.A., 695 F.3d 129, 140 (1st Cir. 2012). Therefore, the alleged or even admitted existence of a contractual relationship "does not warrant the dismissal of [quasi-contract claims] at this point in the litigation."[3] Szulik v. State St. Bank & Tr. Co., 935 F. Supp. 2d 240, 275 (D. Mass. 2013). Defendants David, Shillock, and Infinity nonetheless argue that because Plaintiff has "allege[d] the existence of an express contract in the form of a purchase order by Infinity that was accepted by Plaintiff[,]" dismissal of the equitable claims is proper. [ECF No. 30 at 2]. That argument is contrary to well established law. Accordingly, David, Shillock, and Infinity's motion to dismiss Counts 2, 3, and 8 in their entirety is DENIED.

---

[3] Linda argues in her motion to dismiss that "the existence and validity of the contract between Sunco and Infinity is undisputed" because "the other defendants' motion to dismiss makes it clear that Infinity is not seeking to dismiss the breach of contract claim." [ECF No. 17 at 11]. Although the Court accepts that Linda is willing to concede the existence of a contract, it is not clear that the other Defendants agree. That they did not move to dismiss the breach of contract claim, however, is not conclusive evidence that they will not contest the existence of the contract at a later stage of litigation. The Court further notes that it would create a perverse incentive if defendants, faced with claims for breach of contract and unjust enrichment, could defeat the equitable claims merely by not moving to dismiss the contract claims at the pleading stage.

Linda additionally argues that Sunco's claim for moneys had and received (Count 8) should be dismissed to the extent it is pled against her. To recover for either unjust enrichment or moneys had and received, "the plaintiff must allege '(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value.'" Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 82 (1st Cir. 2020) (quoting Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009)); see also Jelmoli Holding, Inc., 470 F.3d at 21 (noting that courts have treated claims for unjust enrichment and moneys had and received as "for practical purposes identical" and further stating that the claims "are very close in character—one rooted in common law [moneys had and received] and the other equity jurisprudence [unjust enrichment]").

Linda argues that even if the claim for moneys had and received is properly brought against Infinity, it fails as alleged against her because Sunco conferred a benefit only on Infinity. [ECF No. 17 at 11]. In support, she points to the complaint's allegations that throughout the relationship between the two companies, Infinity issued purchase orders to Sunco, paid Sunco's invoices, and accepted shipments of cabinets from Sunco. [Compl. ¶¶ 30 (Infinity submitted purchase orders), 34 (Infinity would pay the invoices for cabinets), 45 (Infinity accepted delivery of the cabinets at issue), 55 (Infinity has not paid invoice for the cabinets at issue)]. She relatedly argues that the complaint does not allege that Sunco directly conferred a benefit on her, but only that she received a benefit from Infinity (in the form of distributions). [Id. ¶¶ 28, 177; ECF No. 17 at 11].

In opposition, Sunco argues that the claim should withstand the motion to dismiss because "Infinity was paid by its wholesalers for the cabinets" and Linda "intercepted" and "is

holding monies" which should have been used to pay Sunco. [ECF No. 24 at 4]. The Court disagrees. In its complaint, Sunco details the relationship between itself and Infinity, including that Infinity would submit purchase orders to Sunco for custom cabinets, Sunco would manufacture and ship the cabinets to Infinity, Infinity would accept the cabinets and resell them, Sunco would invoice Infinity for the cabinets, and Infinity would pay the invoice. [Compl. ¶¶ 17, 30–34]. In other words, the complaint expressly states that it was Infinity that received the cabinets, not any of the individual Defendants. The complaint further alleges that David and Shillock, not Linda, manage Infinity. [Id. ¶¶ 25, 27, 64]. While the complaint does charge that Linda "took and converted the final cabinet shipments," [id. ¶ 70], and that she "wrongfully converted and prevented the payment for the cabinets," [id. ¶ 118], these allegations are conclusory and the Court need not, and does not, credit them. See Twombly, 550 U.S. at 555. Because the complaint does not plausibly make out a claim against Linda for moneys had and received, that count is DISMISSED to the extent it is alleged against her.

  **B.**  **Conversion (Count 5)**

"Conversion is the wrongful exercise of ownership, control and dominion over the property of another." Wollaston Indus., LLC v. Ciccone, No. 19-cv-10678, 2019 WL 6841987, at *2 (D. Mass. Dec. 16, 2019) (citing Struzziero v. Lifetouch Nat'l Sch. Studios, Inc., 677 F. Supp. 2d 350, 354 (D. Mass. 2009)). "A plaintiff asserting a conversion claim under Massachusetts law must show that: (1) the defendant intentionally and wrongfully exercised control or dominion over the personal property; (2) the plaintiff had an ownership or possessory interest in the property at the time of the alleged conversion; (3) the plaintiff was damaged by the defendant's conduct; and (4) if the defendant legitimately acquired possession of the property

under a good-faith claim of right, the plaintiff's demand for its return was refused." Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 4 F.3d 90, 95 (1st Cir. 1993).

Sunco's complaint alleges that Defendants are liable for conversion because they "intentionally and wrongfully took possession and exerted control and dominion over the $6,712,182.11 worth of cabinetry manufactured by Sunco and delivered to Infinity." [Compl. ¶ 127]; see also [id. ¶ 128 ("At the time [Defendants] converted the cabinetry, Sunco owned the cabinetry.")]. It further states that Defendants "disposed of the goods" and that Sunco "has demanded payment for the cabinets." [Id. ¶¶ 130–31]. Notwithstanding these allegations, Sunco's claim for conversion fails. Sunco implicitly concedes that Infinity took possession of the cabinets legitimately, see [ECF No. 23 at 7–8 (Sunco stating that "Defendants obtained possession of the cabinets pursuant to the proviso that they would pay Sunco for the cabinets following the delivery and invoicing of the cabinets.")]; [ECF No. 24 at 8 (same)]; see also [Compl. ¶ 45 ("Infinity accepted the delivery of all products delivered by Sunco and expressed no issues with the quality, timeliness or correctness of Sunco's products."), and therefore Sunco was required to demand the items be returned. See In re Halmar Distributors, Inc., 968 F.2d 121, 129 (1st Cir. 1992) ("Where a defendant's possession is not wrongful in its inception, demand and refusal are prerequisites to an action for conversion." (citation omitted)). Sunco, however, has not pled that it demanded return of the cabinets, only that it "demanded payment for the cabinets." [Compl. ¶ 131]. Perhaps recognizing this flaw, Sunco, in its opposition papers, attempts to recast its claim for conversion as alleging the conversion of the proceeds from Infinity's purported sale of the cabinets and, as such, that Sunco's demand for payment of the value of the cabinets satisfies the demand requirement. See [ECF No. 23 at 7–8; ECF No. 24 at 8–9]. That argument, however, is not supported by the complaint, which alleges only that

9

Defendants converted the cabinetry.  [Compl. ¶ 127 (Defendants "wrongfully took possession and exerted control and dominion of the $6,712,182.11 worth of cabinetry"); id. ¶ 128 (Defendants "converted the cabinetry")].  Accordingly, Sunco's claim for conversion fails to plead the necessary elements because it does not allege that it demanded the return of the cabinets.

Moreover, even if the Court read into the complaint a claim for conversion of the proceeds from the sale of the cabinets, that claim would also fail because it is, in essence, a claim for failure to repay a debt, which cannot constitute conversion.  Gossels v. Fleet Nat'l Bank, 902 N.E.2d 370, 372 (Mass. 2009) ("Conversion occurs only when a defendant exercises wrongful control over specific personal property, not a debt . . . .").  Lastly, the Court notes that Sunco argues that any demand to return the cabinets would have been futile and therefore the Court should excuse this omission, but Sunco has not pointed to any applicable case law to support that point nor is the Court aware of any.  Accordingly, the Court DISMISSES the claim for conversion as to all Defendants.

### C. Wrongful Interference with Business and Contractual Relations Against Linda (Count 4)

To state a claim for intentional interference with a contractual relationship as against Linda, "[Sunco] must show (1) that [it] had a contract with a third party, (2) that [Linda Sun] knowingly induced the third party to break that contract, (3) that [her] interference was improper in means or motive, and (4) that [Sunco] was harmed by the interference." Cachopa v. Town of Stoughton, 893 N.E.2d 407, 411 (Mass. App. Ct. 2008).  "Massachusetts courts will find the improper motive element met when a defendant exhibits 'actual malice or a spiteful, malignant purpose, unrelated to a legitimate corporate interest.'  On the other hand, the mere desire to benefit oneself or one's principal will not suffice." Hamann v. Carpenter, 937 F.3d 86, 90 (1st

10

Cir. 2019) (first sentence quoting Tuli v. Brigham & Women's Hosp., 656 F.3d 33, 43 (1st Cir. 2011) (internal quotation marks and brackets omitted); second sentence citing United Truck Leasing Corp. v. Geltman, 551 N.E.2d 20, 24 (Mass. 1990)) (further citation omitted).

Sunco's complaint alleges that Linda took actions herself, or "encouraged" Infinity to take actions, "with actual malice[,]" and that a lawsuit "initiated by D[avid] pursuant to the instructions of L[inda]" that sought to dissolve Sunco, [Compl. ¶¶ 73–74, 116–17, 121], reflected Linda's "animus towards Sunco's shareholders[,]" [id. ¶ 123], but the Court finds that these allegations are "too cursory and too conclusory to cross the plausibility threshold[,]" Hamann, 937 F.3d at 90. At most, the allegations in the complaint permit the inference that Linda, assuming, as is alleged, that she has a financial interest in Infinity, took a series of actions to benefit herself and her family financially. The complaint is lacking, however, in sufficient non-conclusory allegations that she bore ill will towards Sunco, its shareholders, or its employees. Sunco itself even seems to acknowledge that Linda was spurred by self-interest when it alleges, in support of its claim for breach of duty of loyalty, that she breached her duty by taking actions that benefitted her but also had the effect of harming Sunco. [Compl. ¶ 137]. Other allegations, including that Linda "arrang[ed] for Sunco to manufacture . . . cabinetry for Infinity and then assisted and directed Infinity not [to] pay for the cabinetry" while "knowing workers would not get paid, vendors would not get paid and that Sunco would be in violation of Chinese regulators," [Id. ¶¶ 148–49], do not, on their face, suggest that she bore ill will towards Sunco or its affiliates, and there are no additional facts that nudge Sunco's contention from possible to plausible.

The Court therefore GRANTS Linda's motion to dismiss Sunco's claim for wrongful interference with contractual relations.

## D. Civil Conspiracy (Count 9)

To make out a claim for civil conspiracy based on tort, Sunco must plead that there existed "(1) 'a common design or an agreement . . . between two or more persons to do a wrongful act' and (2) 'proof of some tortious act in furtherance of the agreement.'" Bassett v. Jensen, 459 F. Supp. 3d 293, 312 (D. Mass. 2020) (quoting Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994), abrogated on other grounds by United States v. Velazquez-Fontanez, 6 F.4th 205 (1st Cir. 2021)) (alteration in original). "To establish civil conspiracy, a plaintiff must provide evidence that the defendants agreed together to commit an underlying tort." Id. (internal quotations and citation omitted).

The complaint repeatedly alleges that Linda, David, and Shillock are Infinity's sole members and that they each manage or otherwise exert control over the company, see [Compl. ¶¶ 26, 28, 66, 72], therefore "[a]ny claim of civil conspiracy between [Infinity] and its officers [Linda, David, and Shillock] is moot because 'an entity cannot conspire with itself.'" Boston Carriage, Inc. v. Boston Suburban Coach, Inc., No. 21-cv-10688, 2022 WL 4626918, at *14 (D. Mass. Sep. 30, 2022) (quoting Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 131 (1st Cir. 2006)); see also Wentworth Precious Metals, LLC v. City of Everett, No. 11-cv-10909, 2013 WL 441094, at *14 (D. Mass. Feb. 4, 2013) ("Even joining officers of a corporation . . . in their individual capacities 'is not enough to make them persons separate from the corporation in legal contemplation' . . . ."). Accordingly, the claim for civil conspiracy is DISMISSED.

## E. Aiding & Abetting (Count 10)

"Under Massachusetts law, a defendant may be liable for aiding and abetting a tort where '(1) a third-party committed the relevant tort; (2) the defendant knew the third-party was committing the tort; and (3) the defendant actively participated in or substantially assisted in the

12

commission of the tort.'" MacCausland v. Uber Techs., Inc., No. 17-cv-10253, 2019 WL 13234782, at *13 (D. Mass. Aug. 30, 2019) (quoting Malden Transp., Inc. v. Uber Techs., Inc., 286 F. Supp. 3d 264, 280 (D. Mass. 2017)) (further internal quotation marks omitted). Read broadly, Sunco's complaint alleges aiding and abetting against each of the individual Defendants related to conversion, [Compl. ¶¶ 169, 171], wrongful interference with contractual relations, see [id. ¶¶ 166–72], and against David and Shillock for aiding and abetting Linda's alleged breach of her fiduciary duties and duty of loyalty to Sunco, [id. ¶ 170].[4]

Starting with the claim for aiding and abetting against Linda, the Court finds that is must be dismissed because, for the reasons discussed above, the underlying counts for conversion and wrongful interference both fail. With respect to the wrongful interference claim, Linda cannot be liable for aiding and abetting the wrongful interference because she is the only defendant accused of committing the tort. In other words, she cannot be said to have assisted a third party's commission of wrongful interference because there is no third party alleged.

As to David and Shillock, because the counts for conversion and wrongful interference are subject to dismissal, the only possible claim relates to Linda's alleged breach of her fiduciary duty and her duty of loyalty. To successfully state a claim against David and Shillock, the complaint must include factual allegations that they knew that Linda was breaching a duty owed to Sunco and actively participated in or substantially assisted in that breach. Having closely considered the complaint, the Court cannot discern sufficient specific, non-conclusory allegations to support a claim of aiding and abetting against either David or Shillock. With

---

[4] To the extent Plaintiff may argue that the complaint included a count for aiding and abetting related to the claim for unjust enrichment, that argument is rejected because unjust enrichment sounds in equity not tort. See Caposella v. Comm'r Of Revenue, 527 N.E.2d 744, 746 n.8 (Mass. App. Ct. 1988) ("[The plaintiff's] rights to a refund are not founded on a tort of the defendant but rather on rights equitable in nature to avoid unjust enrichment by the defendant at his expense." (citing Nichols v. Comm'r Of Corps. & Tax'n., 50 N.E.2d 76, 83 (Mass. 1943)).

respect to David, the only specific factual allegation regarding an action he took is that he initiated a lawsuit in Suzhou to dissolve Sunco. [Compl. ¶ 74]. But in the preceding paragraph, the complaint alleges that the lawsuit was instead filed by "Sunco, Inc. (U.S.A.), a purported shareholder of Sunco controlled by L[inda]. . . ." [Id. ¶ 73]. In any event, David's alleged assistance in filing a lawsuit more than a year after Linda's tenure as president of Sunco ended and a new manager took over, [id. ¶¶ 18, 57], is not enough to show that David knew or should have known that the filing of a lawsuit constituted a breach of a duty Linda owed to Sunco. As for Shillock, there are no non-conclusory allegations against her in the complaint, other than the allegation that she is Infinity's chief financial controller, [id. ¶ 27], which by itself cannot sustain a claim for aiding and abetting.

Accordingly, Sunco's claim for aiding and abetting is DISMISSED in its entirety.

### F.  Piercing the Corporate Veil (Count 11)

"Under Massachusetts common law, disregarding the corporate form is permissible only in rare situations." United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1091 (1st Cir. 1992). Massachusetts courts consider the following factors in determining whether to pierce the corporate veil: "(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud." Malden Transp., Inc., 286 F. Supp. 3d at 271–72 (quoting Att'y Gen. v. M.C.K., Inc., 736 N.E.2d 373, 380 n.19 (Mass. 2000)) (further citation omitted).

Relevant here, Sunco alleges that Infinity was owned controlled by the individual Defendants, [Compl. ¶¶ 25–26, 64, 66]; that Linda, David, and Shillock "received all of the distributions from Infinity[,]" [id. ¶ 28]; Infinity was "thinly capitalized[,]" [id. ¶ 29], or undercapitalized, [id. ¶¶ 178–79]; and that the individual Defendants "siphoned off" Infinity's capital, [id. ¶ 72], which the Court assumes was accomplished through receiving the alleged "distributions." The Court finds these allegations, taken together, plausibly support piercing the veil in that they plausibly make out common ownership and pervasive control; thin capitalization; and siphoning away of corporation's funds. The complaint does not allege, however, that Infinity lacked adequate corporate records, such as records or minutes, disregarded corporate formalities, intermingled business assets, or that Infinity was insolvent. Moreover, that Infinity is alleged to have paid out distributions to its members would seem to weigh against veil piercing. Nonetheless, and while acknowledging that Sunco has not alleged facts that support every factor relevant to the analysis, the Court finds that it has plausibly pled that the individual Defendants used Infinity as their alter ego and that the corporate veil should therefore be considered pierced. See Zimmerman v. Puccio, 613 F.3d 60, 74. n.17 (1st Cir. 2010) (the list of factors "is not exhaustive, nor does every factor have to be present in every veil piercing case"); cf. Malden Transp., 286 F. Supp. 3d at 272 (granting motion to dismiss where "complaint does not allege facts in support of a single factor relevant to piercing the corporate veil.").

Accordingly, the motions to dismiss the claim for veil piercing are DENIED.

## VI. CONCLUSION

For the foregoing reasons, the motions to dismiss, [ECF Nos. 16 and 18], are GRANTED in part and DENIED in part. In particular, the motion to dismiss the counts for promissory estoppel and quantum meruit against Infinity (Counts 2 and 3) is DENIED; the motion to dismiss

the count for wrongful interference with business and contractual relations against Linda (Count 4) is GRANTED; the motions to dismiss the count for conversion against all Defendants (Count 5) are GRANTED; the motions to dismiss the count for moneys had and received (Count 8) are GRANTED with respect to Linda but DENIED as to all other Defendants; the motions to dismiss the counts for conspiracy and aiding and abetting as to all Defendants (Counts 9 and 10) are GRANTED; and, finally, the motions to dismiss the veil piercing claim (Count 11) are DENIED.

**SO ORDERED.**

March 13, 2023

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE