### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUNCO TIMBER (KUNSHAN) CO., LTD.<br>    Plaintiff,<br><br>v.<br><br>LINDA SUN, individually, DAVID SUN, individually, SHILLOCK YUAN-SUN, individually, and INFINITY WOOD PRODUCTS, LLC,<br>    Defendants,<br><br>SUNCO, INC., EASTMAN ST. DISTRIBUTORS LLC, EASTMAN ST. WOODWORKS, INC., INFINITY REALTY COMPANY LLC, AND NEW SUN LIMITED PARTNERSHIP,<br>    Reach and Apply Defendants, and<br>    Fraudulent Conveyance Defendants. | **Civil Action No. 1:22-cv-10833** |

### AMENDED COMPLAINT AND REQUEST FOR TRIAL BY JURY

### PREFATORY ALLEGATIONS

1. Plaintiff Sunco Timber (Kunshan) Co., Ltd. ("Sunco") is a legal entity with its principal place of business located at Kunshan, China.

2. Defendant Linda Sun ("L. Sun") is an individual residing at 93 Goulding Street West, Sherborn, Massachusetts.

3. Defendant David Sun ("D. Sun") is an individual residing at 93 Goulding Street West, Sherborn, Massachusetts.

4. Defendant Shillock Yuan-Sun ("S. Sun") is an individual residing at 93 Goulding Street West, Sherborn, Massachusetts.

5.      Defendant Infinity Wood Products, LLC ("Infinity") is a Delaware limited liability company registered to do business in Massachusetts as a limited liability company, with its primary place of business located at 35 Eastman Street, South Easton, Massachusetts.

6.      The managers of Infinity are D. Sun and S. Sun and its members and equity shareholders are believed to be L. Sun, D. Sun and S. Sun.

7.      D. Sun, S. Sun, L. Sun and Infinity are collectively referred to herein as "Defendants".

8.      Defendants are the agents of one another such that one is liable for the wrongdoing of the other.

9.      Each of the defendants knowingly and substantially aided and assisted one another to perpetuate the wrongdoings asserted herein, and thus they are liable to their wrongdoings asserted herein.

10.     Reach and Apply Defendant/Fraudulent Conveyance Defendant Sunco, Inc. a//k/a Sun Trust a/k/a Sun Family Trust is a Massachusetts corporation with its primary place of business located at 163 Highland Avenue, #1052, Needham, Massachusetts 02494. Sunco, Inc. is believed to be a shell entity used by the Defendants to conceal their assets.

11.     Reach and Apply Defendant/Fraudulent Conveyance Defendant Eastman St. Distributors, LLC is a Delaware limited liability company with its place of business located at 163 Highland Avenue, #1052, Needham, Massachusetts 02494.  Eastman St. Distributors, LLC is believed to be a shell entity used by the Defendants to conceal their assets.

12.     Reach and Apply Defendant/Fraudulent Conveyance Defendant Eastman St. Woodworks, Inc. is a Nevada corporation with its place of business located at 93 Goulding Street West, Sherborn, Massachusetts 01770.  Eastman St. Woodworks, Inc. is believed to be a shell entity used by the Defendants to conceal their assets.

13.     Reach and Apply Defendant/Fraudulent Conveyance Defendant Infinity Realty Company, LLC is a Massachusetts limited liability company with its place of business located at 163 Highland Avenue, #1052, Needham, Massachusetts 02494.  Infinity Realty Company, LLC is believed to be a shell entity used by the Defendants to conceal their assets.

14.     Reach and Apply Defendant/Fraudulent Conveyance Defendant New Sun Limited Partnership is a Massachusetts limited partnership with its business address located at Sunco, Inc. c/o/ Jeffrey Schlossberg, Esq., Schlossberg & McLaughlin, PC, 35 Braintree Hill Office Park, Suite 303, Post Office Box 850699, Braintree, Massachusetts 02185. New Sun Limited Partnership is believed to be a shell entity used by the Defendants to conceal their assets.

15.     Reach and Apply Defendants/Fraudulent Conveyance Defendants Sunco, Inc., Eastman
        St. Distributors, LLC, Eastman St. Woodworks, Inc., Infinity Realty Company, LLC, Sun
        Trust, and New Sun Limited Partnership shall be collectively referred to herein as
        "Affiliated Entities".

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. Section 1332 and diversity of citizenship as the amount in controversy exceeds the sum or value specified in this Federal statute.

17.     Venue is proper in this District of Massachusetts pursuant to 28 U.S.C. Section 1391(b) (1) and (2), since the defendants are residents of this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District of Massachusetts.

## BACKGROUND

18.     Sunco is a manufacturer of wood cabinetry and exports its products to the United States.

19.     Infinity is in the business importing, distributing and selling wooden cabinetry in the United States.

20.     L. Sun was born in Taiwan and immigrated to the United States in the seventies.

21.     D. Sun is the son of L. Sun.

22.     S. Sun is the wife of D. Sun.

23.     In 2003, Sunco was founded in Kunshan, China by L. Sun.

24.     Sunco is in the business for manufacturing and exporting of cabinets and vanities to the United States.

25.     L. Sun was the President and Chief Executive Officer of Sunco, managing and overseeing all aspects of the business, including order placement and processing, sales, production, operation, shipping, finances, and after sales customer service.

26.     Each of the orders for cabinets placed by Infinity were custom orders.

27.     Until her abrupt departure from the Sunco on June 14, 2019, L. Sun remained the President of the company and single-handedly controlled the operation.

28.     Up until her departure from Sunco on June, 14, 2019, L. Sun lived on the second floor of a villa located on the Sunco factory compound.

29.     Commencing in 2014, L. Sun sold off equity interests in Sunco and brought in other shareholders.

30.     In 2014, a board of directors for Sunco was formed, that included Qiong Xiao ("Q. Xiao") and Ruihua Xiao ("R. Xiao").

31.     At least since 2014, L. Sun worked and lived at the Sunco factory and only traveled to the United States to renew her passport once in a while, usually for about a week for each trip.

32.     L. Sun always notified the other key management members of Sunco, of her travel schedule.

33.     Until July 2019, Infinity had been Sunco's sole customer. Infinity would provide Sunco with design models or custom requests of kitchen cabinet and bathroom vanity sets.

34.     D. Sun and S. Sun were and are the managers of Infinity according to the company's filings with the Massachusetts Secretary of State's Office.

35.     D. Sun, S. Sun and L. Sun are believed to be the sole equity holders of Infinity.

36.     S. Sun has been the chief financial controller of Infinity.

37.     Upon information and belief, at all relevant times, L. Sun, D. Sun and S. Sun received all of the distributions from Infinity.

38.     Infinity is believed to be thinly capitalized and relies on the sale of the cabinets it orders from Sunco before paying Sunco for those cabinets.

39.     Sunco's transactions with Infinity were initiated by Infinity submitting a purchase order to Sunco.

40.     The issuance of a purchase initiated the custom manufacturing of the requested models of cabinets and vanities (style, wood, stain, etc.).

41.     Once the cabinets were manufactured per Infinity's requirements, they were packaged and shipped to Infinity in the United States.

42.     An invoice for payment would then be issued to Infinity by Sunco.

43.     At some point in time after receipt of the cabinets, Infinity would pay the outstanding invoice.

44.     Infinity, however, failed to pay for the last shipments of cabinets that were shipped to it by Sunco commencing on or about July 2, 2018 and finished shipping on or about July 7, 2019 -- shipments at issue in the present action.

45.     In the spring of 2018, the United States Government commenced rolling out tariffs against China.

46.     As of September 24, 2018, tariffs on Chinese wood products were 10%. Starting January 1, 2019, the tariffs were increased to 25%.

47.     Then in the spring of 2019, the United States commenced proposing and subsequently implemented anti-dumping penalties that ultimately resulted in the placement of over a 100% duty burden on Sunco products. August 5, 2019, average countervailing duties were set at 16.41%. On October 4, 2019, anti-dumping tariffs were increased to 39.25%. On February 24, 2020, average countervailing duties were announced at 20.93% and average anti-dumping tariffs were 48.50%, and regular duties were 25%, which accounted to a total of 94.43%.

48.     It was anticipated that these steep duties would cripple the export of wood-based products from China to the United States.

49.     L. Sun expressed concern that these tariffs, countervailing duties and anti-dumping tariffs would have an adverse economic impact on Sunco.

50.     Sunco, under the direction of L. Sun, continued filling Infinity's orders and shipping cabinets to Infinity.

51.     Infinity was and is a wholesaler of cabinetry products and marks-up the products from 25% to 50%, or more, for sale to retailers.

52.     From July 2, 2018 to July 7, 2019, Sunco shipped $6,712,182.11 worth of wood cabinetry to Infinity with a resale mark-up value to Infinity of $8,375,000 to $10,050,000 or greater.

53.     The resale value to Infinity of the goods at issue is believed to be $8,375,000 to $10,050,000 or greater.

54.     Infinity accepted the delivery of all products delivered by Sunco and expressed no issues with the quality, timeliness or correctness of Sunco's products.

55.     On a number of occasions, including on April 17, 2019, Infinity staff requested that its accounts payable term be extended and that Infinity would be able to pay approximately $500,000 per month.

56.     On April 29, 2019, Infinity executed a confirmation of accounts receivable acknowledging it owed Sunco $5,886,466.77 for the cabinetry shipped as of December 31, 2018.

57.     In reliance on these payment assurances, Sunco continued to fulfill orders.

58.     On June 14, 2019, L. Sun left her home in Kunshan, China, abruptly and unannounced, for Massachusetts.  To date L. Sun has not returned to Kunshan, China.

59.     Immediately following her sudden and unannounced departure for Massachusetts, Sunco's board members reached out to L. Sun requesting she disclose her knowledge of and assistance with solving significant financial problems occurring at the Sunco factory.

60.     At first, L. Sun ignored these communications.

61.     Then on July 24, 2019, L. Sun sent Q. Xiao a member of the board of Sunco and R. Xiao the Chairman of the Board of Sunco a formal letter listing a litany of purported health issues she was encountering and repeatedly stating she would be going through medical treatment for the next 6 months.  She did not address any of the financial issues, including Infinity's non-payment of goods.  L. Sun concluded the letter by stating that R. Xiao and Q. Xiao could simply take over the management of Sunco, without any explanation as to why Infinity had not paid its invoices or when it would pay its invoices.

62.     This was all a ruse by L. Sun, D. Sun, S. Sun and Infinity to buy time to complete the shipment of the cabinets and allow Sunco to fall into insolvency and be in violation of Chinese labor and other laws; thus, being unable to bring suit to recover the value of the cabinets through any kind of legal process.

63.     At the same time the last shipment to Infinity was made and the sending of the letter by L. Sun representing that she was unable to participate in the management of Sunco, while refusing and failing to answer questions about the non-payment by Infinity of the $6,712,182.11.

64.     The non-payment of cabinets by Infinity, at the direction of L. Sun, was a form of an illegal self-help.

65.     After the last shipment of cabinets in July of 2019, Infinity ceased doing any further business with Sunco.

66.     In the summer of 2019, Guoqing Wu took over the management of the Sunco factory.

67.    It soon became evident that L. Sun had permanently left the company, leaving Sunco unable to pay, among other things, the salaries of its workers, pollution disposal fees, tax or its vendors.

68.    In July of 2019, Sunco's workers commenced going on strike.

69.    On August 9, 2019, the Sunco's workers went to the local government complaining of Sunco's non-payment of salaries.

70.    The local government ordered Sunco to pay unpaid salaries of June 2019 by August 14, 2019 and pay remaining unpaid salaries and fines by October 25, 2019.

71.    Sunco was forced to borrow approximately $2.68 million to pay the unpaid salaries and fines of its approximately 120 workers, pollution disposal, fire prevention, tax, as well its vendors and suppliers.

72.    Sunco was required to pay fines, penalties and fees in the amount of $938,843 as a direct result of L. Sun's abandonment's the factory, and interest on the monies it had to borrow in the amount of $577,455 as a result of Infinity's not paying its invoices.

73.    L. Sun had not disclosed to the Board of Sunco or the other top managers of Sunco that her son, D. Sun, and her daughter-in-law, S. Sun were the managers and owners of Infinity.

74.    Other board members only learned of the true nature of the roles that D. Sun and S. Sun played in Infinity after Infinity failed to pay for Sunco's outstanding invoices amounting to $6,712182.11 in cabinetry and the company slipped into insolvency.

75.    It is believed that L. Sun held and holds some kind of undisclosed financial interest in Infinity, as well as control over Infinity.

76.    L. Sun had not disclosed that she and her direct family members had a vested interest in the $6,712,182.11 sale of cabinets.

77.    L. Sun did not disclose her interest in Infinity or the financial benefit she received from Infinity to Sunco's Board or other top managers.

78.    It is apparent that L. Sun believed that the duties, countervailing duties, and anti-dumping tariffs being imposed would be crippling to Sunco's ability to export to the United States.

79.    L. Sun took and converted the final cabinet shipments of $6,712182.11, with a wholesale value of $8,375,000 to $10,050,000 or more for her own personal benefit and the benefit of her son D. Sun and her daughter-in-law S. Sun.

80.   L. Sun drained Sunco of its accounts receivable and abandoned the company for her other home in Massachusetts, leaving workers unpaid, vendors unpaid, polluted material unprocessed, and Chinese regulatory agencies potentially holding the remaining managers liable for these unpaid liabilities.

81.   Sunco believes that L. Sun, D. Sun and S. Sun have ceased operations of Infinity and siphoned off all of its capital.

82.   In August of 2020, Sunco, Inc. (U.S.A.), a purported shareholder of Sunco controlled by L. Sun filed suit in Suzhou, China seeking to dissolve Sunco.   The court in Suzhou denied the request to dissolve Sunco and entered judgment in favor of Sunco in November of 2021.

83.   Based on information and belief, the Suzhou lawsuit to dissolve Sunco was initiated by D. Sun pursuant to the instructions of L. Sun in an apparent, wrongful attempt to prevent Sunco from asserting its right and being able to pursue the claims alleged herein against her, as well as against her son, her daughter-in-law and Infinity, arising from her wrongful conversion of the $6,712182.11 in cabinets manufactured by Sunco for Infinity.

84.   Sunco will prove its damages at the time of trial.

## AFFILIATED ENTITIES

85.   As set forth above, the following entities have been identified as Affiliated Entities of Infinity: Sunco, Inc.; Eastman St. Distributors LLC; Eastman St. Woodworks, Inc.; Infinity Realty Company LLC; Sun Trust f/k/a Sun Family Trust; and New Sun Limited Partnership (the "Affiliated Entities").

86.   Each of the Affiliated Entities is owned in part or whole of one another as well as by L. Sun, D. Sun and/or S. Sun.

87.   Each of the Affiliated Entities was involved in part of or whole, of the incorporation, distribution and/or sale of the cabinets and/or were in receipt of and/or the beneficiary of the proceeds from the sale of the cabinets.

88.   The Affiliated Entities operated under the management of L. Sun, D. Sun and S. Sun and are agents as the alter ego of one another.

89.   Upon information and belief, the Affiliated Entities have commingled their assets and monies, as well as their operations, resulting in their operations as a single cabinet enterprise.

90.   The Affiliated Entities are organized for the importation and the sale of a single product – cabinets.

91.   During the period of time from about July 2014 through 2018 the sole source of cabinets for the Affiliated Entities to import, distribute and/or resell were Sunco's cabinets.

92.   Each of the Affiliated Entities received and benefited directly or indirectly from the importation and sale of the cabinets without paying any consideration.

93.   The Affiliated Entities were used by D. Sun, L. Sun, S. Sun and Infinity to conceal and obfuscate the proceeds from the sale of the cabinets.

94.   Upon information and belief, the Affiliated Entities transferred the cabinets from one entity to the next for no consideration.

95.   Sunco, Inc.'s business is to import, distribute and sell wood cabinetry.

96.   Eastman St. Distributors LLC's scope of business is defined as retail sale of cabinetry.

97.   Eastman St. Woodworks, Inc. is in the business of importation and distribution of kitchen and bathroom cabinets.

98.    All of the Affiliated Entities were formed by L. Sun, D. Sun, and/or S. Sun, who have ownership, are officers or directors, and/or control.

99.    Sunco, Inc., previously known as Sunco Business Trust was an entity created and managed by L. Sun.

100.   L. Sun converted Sunco Business Trust into Sunco, Inc., wherein she remained as a director and/or officer.

101.   At some point in or about 2010, L. Sun brought D. Sun into Sunco, Inc. and according to public records at the Commonwealth of Massachusetts Secretary of State's office, appointed D. Sun as a director and officer.

102.   According to the Commonwealth of Massachusetts, Secretary of State's office, D. Sun is Sunco Inc.'s current director and officer.

103.   S. Sun is the manager and D. Sun is the person authorized to sign real estate instrument for Eastman St. Distributors LLC.

104.   D. Sun is a director and officer of Eastman St. Woodworks, Inc., which was incorporated in March, 2022.

105.   Sunco, Inc. and Eastman St. Woodworks, Inc. hold themselves out as doing business as one another.

106.   D. Sun is manager of Infinity Realty Company LLC whose business scope is defined as real estate investment.

107.   On information and belief, the monies obtained from the sale of the cabinets were invested in real estate held by Infinity Realty Company LLC.

108.   Sunco, Inc. is the general partner of New Sun Limited Partnership whose business is primarily in real property transactions and investments.

109.   On information and belief, the monies obtained from the sale of the cabinets were invested in real estate held by New Sun Limited Partnership.

110.   L. Sun, D. Sun, and S. Sun would use Infinity to order cabinets from Sunco and then transfer the cabinets to one or more of its Affiliated Entities who in turn transferred the cabinets between themselves: Sunco Inc., Eastman St. Distributors LLC, and/or Eastman St. Woodworks, Inc.  The Affiliated Entities would then resell or distribute the cabinetry to retailers or sell the cabinetry directly to consumers. The cabinets manufactured by

Sunco were the sole source of the wooden cabinet products manufactured and sold by these entities.

111.   L. Sun, D. Sun, and S. Sun would invest the proceeds from the sale and/or resale of the cabinets to Infinity Realty Company LLC, New Sun Limited Partnership and/or Sun Trust f/k/a Sun Family Trust for investment in real properties.

112.   Based on information and belief, L. Sun, D. Sun, and S. Sun transferred all of Sunco's cabinets and/or the proceeds from the sale of the cabinets into the Affiliated Entities with the purpose of concealing them from any potential judgment.

## CAUSES OF ACTION

### COUNT I
### Breach of Contract
### (Against Infinity)

113.   Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

114.   A contract was formed between Sunco and Infinity.

115.   The contract was for Sunco to manufacture custom ordered cabinetry for Infinity.

116.   Infinity requested that Sunco manufacture the cabinetry.

117.   The unpaid cabinets were manufactured and delivered in accordance with Sunco and Infinity's business practices dating back about 6 to 7 years.

118.   Sunco manufactured the cabinetry per Infinity's purchase orders.

119.   Sunco delivered the cabinets to Infinity and Infinity accepted the cabinets.

120.   Infinity never raised any issue as to the quality of the cabinets, corrections of the cabinets, or timeliness of the delivery of the cabinets.

121.   Infinity accepted the cabinets and resold the cabinets making a profit estimated to be between $1,675,000 and $3,350,000, or greater, above the $6,712,182.11 contract price.

122.   Infinity breached the parties' contract by not paying Sunco for the cabinets.

123.   In April of 2019, Infinity affirmed in writing that it owed Sunco $5,886,466.77 for the cabinets manufactured and delivered as of December 31, 2018.

124.   Sunco performed all of its duties and responsibilities under the parties' contract.

125.   Sunco will prove its damages at the time of trial.

## COUNT II
### Promissory Estoppel
### (Against Infinity)

126.    Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

127.    Infinity represented to Sunco that it would pay for the cabinetry to be manufactured by Sunco.

128.    It was reasonable for Sunco rely of the promises of payment from Infinity to move forward to manufacture the goods for Infinity.

129.    Sunco relied on this promise from Infinity to pay for the cabinetry.

130.    Infinity's promises of payment were substantial in character.

131.    Based on Infinity' promises, Sunco employed a factory workforce and purchased raw materials from suppliers.

132.    Sunco manufactured the cabinets in reliance on the promises of payment by Infinity.

133.    Sunco delivered the cabinets in accordance with Infinity's promises.

134.    Infinity accepted the delivery of the cabinets from Sunco.

135.    Infinity expressed no issues with regards to Sunco failing to fulfill its obligations regarding the manufacturing and delivery of the cabinets.

136.    Infinity breached its promises by not paying for the manufactured and delivered cabinets.

137.    Injustice can only be avoided by enforcement of Infinity's promises.

138.    Infinity has acknowledged owing monies to Sunco for the cabinets.

139.    Sunco will prove its damages at the time of trial.

## COUNT III
### Quantum Meruit
### (Against Infinity)

**140.** If Defendants deny the existence of a contract between the parties, then Sunco pleads Quantum Meruit in the alternative.

141. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

142. Infinity received $6,712182.11 in cabinets from Sunco.

143. Infinity accepted delivery of the $6,712182.11 in cabinets from Sunco.

144. Infinity has acknowledged in writing that it owes $5,886,466.77 as of the end of December 2018 for cabinets manufactured by Sunco.

145. Infinity had a reasonable expectation that Sunco expected to get paid for the cabinets.

146. Infinity knew or reasonably understood it was responsible for paying for the cabinets.

147. The value of the cabinets is $6,712182.11.

148. Sunco will prove its damages at the time of trial.

**COUNT IV**
**Wrongful Interference with Business and Contractual Relations**
**(Against L. Sun)**

This Cause of Action Has Been Dismissed
Pursuant To The Court's Order of March 13, 2023, Docket No. 32.

**COUNT V**
**Conversion**
**(Against All Defendants)**

This Cause of Action Has Been Dismissed
Pursuant To The Court's Order of March 13, 2023, Docket No. 32.

**COUNT VI**
**Breach of Duty of Loyalty**
**(Against L. Sun)**

149. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

150.    L. Sun was the President and on the Board of Directors of Sunco and is still on the Board of Directors.

151.    L. Sun owed a duty of loyalty to Sunco not to compete or put her own financial interests ahead of the interests of Sunco.

152.    L. Sun owed a duty of loyalty to Sunco not to place the interests of Infinity or herself ahead of the interests of Sunco or pursue interests adverse to Sunco including competing with Sunco and diverting payments due Sunco for her own benefit.

153.    L. Sun breached her duty of loyalty by holding and concealing interest in Infinity by taking action that harmed Sunco and benefited her.

154.    L. Sun breached her duty of loyalty by shipping Sunco goods to Infinity, a company she had a personal interest in and/or received a personal benefit from, either directly or indirectly and preventing Infinity from paying for the cabinets.

155.    L. Sun further breached her duty of loyalty by abandoning Sunco and having Infinity not pay $6,712182.11 in outstanding invoices, and leaving no monies in the company to pay its workers or vendors.

156.    Sunco has been damaged as a result of L. Sun's breaches of her duty of loyalty.

157.    Sunco will prove its damages at the time of trial.

<u>**COUNT VII**</u>
**Breach of Fiduciary Duty**
**(Against L. Sun)**

158.    Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

159.    L. Sun as director, shareholder and President owed a fiduciary duty to Sunco and the other Shareholders.

160.    Officers and directors owe a duty of utmost good faith and loyalty to the corporation itself, to protect the interests of the corporation they serve.  They are required to act in complete good faith toward their corporation, its shareholders, and to exercise reasonable intelligence in the performance of their duties.

161.    L. Sun not only owed a fiduciary duty to Sunco as a result of her position as a shareholder, director and officer, she also owed the duty because she held special

16

knowledge and information relied upon by Sunco and its Board members regarding sales to Infinity.

162.    Sunco relied upon the special knowledge possessed by L. Sun in in the manufacturing and sale of goods to Infinity.

163.    L. Sun acted in bad faith and not in the best interest of Sunco or its shareholders.

164.    L. Sun breached this fiduciary duty by arranging for Sunco to manufacture $6,712182.11 in cabinetry for Infinity and then assisted and directed Infinity not pay for the cabinetry.

165.    L. Sun did all these knowing workers would not get paid, vendors would not get paid and that Sunco would be in violation of Chinese regulators.

166.    Sunco has been damaged by L. Sun's breaches of her fiduciary duties, damages which will be proven at trial.

## COUNT VIII
### Moneys Had and Received
### (Against Infinity, D. Sun and S. Sun)[1]

167.    Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

168.    D. Sun, S. Sun and Infinity obtained monies through the sale of goods they received from Sunco.

169.    D. Sun, S. Sun and Infinity retained these monies and did not pay Sunco for the goods.

170.    Under the circumstances, in equity and good conscience, it would be wrong and unfair for D. Sun, S. Sun and Infinity to retain the monies they received from the sale of the goods and not pay Sunco.

171.    Sunco will prove its damages at time of trial.

## COUNT IX
### Conspiracy
### (Against All Defendants)

This Cause of Action Has Been Dismissed
Pursuant To The Court's Order of March 13, 2023, Docket No. 32.

---

[1] L. Sun was dismissed pursuant to the Court's Order of March 13, 2023, Docket No. 32.

**COUNT X**
**Aiding and Abetting**
**(Against L. Sun, D. Sun and S. Sun)**

This Cause of Action Has Been Dismissed
Pursuant To The Court's Order of March 13, 2023, Docket No. 32.

**COUNT XI**
**Piercing of the Corporate Veil of Infinity**
**(Against All Defendants)**

172.   Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

173.   Sunco seeks to pierce the corporate veil of Infinity and hold L. Sun, D. Sun and S. Sun for the non-payment of $6,712,182.11 under the legal theories of breach of contract, promissory estoppel, quantum meruit, and monies had and received as alleged herein.

174.   Infinity is controlled by L. Sun, her son D. Sun and her daughter-in-law S. Sun.

175.   L. Sun, D. Sun and S. Sun receive all the distributions from Infinity.

176.   Infinity is believed to have been undercapitalized at all times.

177.   Infinity is believed to be undercapitalized because L. Sun, D. Sun and S. Sun disbursed all monies received by Infinity from the sale of cabinets, leaving insufficient capital to pay its creditors, specifically Sunco.

178.   When Infinity ordered the cabinets from Sunco, it did not have the capital on hand or adequate account receivables to pay for the cabinets.

179.   Infinity relied on its sale of the cabinets in order to pay Sunco to manufacture the cabinets.

180.   When Infinity sold the cabinets at issue in this case, it did not use the proceeds from those sales to pay Sunco. Rather, Infinity, at the direction of L. Sun, D. Sun and S. Sun distributed the proceeds from the sales to themselves.

181.   L. Sun, D. Sun and S. Sun used Infinity to convert the cabinets for their own personal gain and to avoid paying Sunco the cost of manufacturing the cabinets.

182.   The corporate veil of Infinity should be pierced and L. Sun, D. Sun and S. Sun, as equity requires, should pay Sunco the $6,712,182.11 that is due and owing for the cabinets specially manufactured for Infinity because D. Sun, L. Sun and S. Sun sold and kept all the proceeds and did not pay Sunco on any of its outstanding invoices.

183.   Sunco will prove its damages at the time of trial.

**COUNT XII**
**Fraudulent Transfer**
**(Against All Defendants and All Affiliated Entities)**

184.   Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

185.   The Affiliated Entities' respective assets are substantially controlled by L. Sun, S. Sun, D. Sun and Infinity.

186.   The Affiliated Entities are controlled and operated by L. Sun, S. Sun, D. Sun and Infinity.

187.   The assets at issue are the cabinets and the revenues generated from the sale of the cabinets.

188.   Sunco is the creditor of D. Sun, L. Sun, S. Sun and Infinity; and L. Sun, D. Sun, S. Sun and Infinity are the debtors of Sunco with respect to the non-payment of the cabinets.

189.   L. Sun, D. Sun and S. Sun are insiders to Infinity and partners of one another in the business operations described herein, as well as being officers, managers, directors of Infinity and the Affiliated Entities.

190.   L. Sun, D. Sun and S. Sun control and operate Infinity.

191.   L. Sun, D. Sun and S. Sun are related as mother and son, mother-in-law and daughter-in-law, and husband and wife.  Each is deemed to be a relative of one another.

192.   Infinity transferred its assets, including monies and cabinets, to L. Sun, D. Sun and the Affiliated Entities to hinder, delay, conceal and defraud Sunco.

193.   The transfer of assets, including monies and cabinets, to the Affiliated Entities was without value.

194.   The transfer of the revenues from the sales of the cabinets and the transfer of the cabinets to the Affiliated Entities, as well as to L. Sun, D. Sun and S. Sun -- insiders -- was to

conceal the revenues and cabinets from Sunco.  The transfer constituted substantial, if not all, of Infinity's assets.  The transfer was performed to conceal Defendants' assets.

195.   Infinity became insolvent upon the transfer of the assets.

196.   There was no consideration paid by the Affiliated Entities to Infinity for the assets.

197.   The transfer occurred after Infinity incurred the debt.

198.   Plaintiff seeks the return of the assets to Infinity and to void any such transfers of assets of Infinity to L. Sun, D. Sun, S. Sun and the Affiliated Entities.

199.   Sunco will prove its damages at the time of trial.

## <u>COUNT XIII</u>
### Reach and Apply
### (Against All Affiliated Entities)

200.   Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

201.   Reach and Apply Defendants are legal entities created under the laws of the Commonwealth of Massachusetts, or doing business in the Commonwealth of Massachusetts, or individuals residing in the Commonwealth of Massachusetts.

202.   L. Sun, D. Sun, S. Sun and the Affiliated Entities owe Sunco for the cabinets sold and delivered by Sunco, together with statutory interest of 12% from the date of delivery.

203.   The purchase price of the cabinets was $6,712,182.

204.   Sunco is the creditor of Infinity, and therefore avers that the monies owed due Infinity or being held for the benefit of Infinity by L. Sun, D. Sun, S. Sun and the Affiliated Entities are held in trust for Sunco and should be paid to Infinity, Sunco believes those monies are currently owed to Infinity.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

   a.   Judgment against Defendants and the Affiliated Entities;

   b.   Damages, including compensatory, liquidated, and trebled damages to Plaintiff, as authorized and mandated by applicable law, in an amount to be proven at trial;

c.  Pre-judgment and post-judgment interest;

d.  Attorneys' fees and costs;

e.  Appropriate injunctive, declaratory and other equitable relief; and

f.  Grant such other and further relief as this Court deems just and proper against defendants and reach and apply defendants.

## REQUEST FOR TRIAL BY JURY

Plaintiff hereby requests that this action to be tried by jury.

**DATED: January 23, 2024**                    **PLAINTIFF,**
                                                By its attorney,

 

_____
Connie C. Dai (BBO#683330)
Lions Law, P.C.
154 Wells Ave
Newton, Massachusetts 02459
(617) 232-7503 Telephone
(781) 207-8574 Fax
connie@lionslawgroup.com

 

_____
Timothy K. Cutler (BBO#636124)
CUTLER & WILENSKY LLP
20 Walnut Street, Suite 1
Wellesley, Massachusetts 02481
(617) 232-7500 Telephone
tim@cutlerlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this Tuesday, January 23, 2024.

_____
Timothy K. Cutler