## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUNCO TIMBER (KUNSHAN) CO., LTD.<br>    Plaintiff,<br><br>v.<br><br>LINDA SUN, DAVID SUN, SHILLOCK YUAN-SUN, and INFINITY WOOD PRODUCTS, LLC,<br>    Defendants,<br><br>SUNCO, INC., EASTMAN ST. DISTRIBUTORS LLC, EASTMAN ST. WOODWORKS, INC., INFINITY REALTY COMPANY LLC, AND NEW SUN LIMITED PARTNERSHIP,<br>    Reach and Apply Defendants, and<br>    Fraudulent Conveyance Defendants. | **Civil Action No. 1:22-cv-10833 MJJ** |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Sunco Timber (Kunshan) Co., Ltd. ("Plaintiff") respectfully submits its opposition to defendants David Sun, Shillock Yuan-Sun, Infinity Wood Products, LLC, Sunco, Inc., Eastman St. Distributors LLC, Eastman St. Woodworks, Inc., and Infinity Realty Company LLC's, collectively hereinafter "Defendants", motion to dismiss.[1]

## I.     BACKGROUND

The present action was brought by Plaintiff to recover payment on the cabinets it manufactured and delivered to Infinity Wood Products, LLC ("Infinity"). While engaged in discovery in the present action, the affiliated and related entities were discovered -- the F.C. Defendants. Once the F. C. Defendants were discovered, entities who were operating

---

[1] Sunco, Inc., Eastman St. Distributors LLC, Eastman St. Woodworks, Inc., and Infinity Realty Company LLC shall be collectively referred to herein as the "F.C. Defendants" (Fraudulent Conveyance Defendants).

in concert with one another and the named defendants in the handling of the cabinets, Plaintiff filed an amended complaint adding twenty-eight detailed, factual allegations (¶¶85-112) and two causes of action for fraudulent conveyance, and reach and apply.[2] [**Docket #61**].

The underlying transaction was handled by Linda Sun ("L. Sun"), the mother of David Sun ("D. Sun"), manager and member of Infinity, and Shillock Yuan-Sun ("S. Sun"), her daughter-in-law, manager, member and chief financial controller of Infinity. [**Docket #61, ¶¶34-36**]. The cabinets were delivered to Infinity pursuant to Infinity's purchase orders. [**Docket #61, ¶¶39-42, 114-119**]. The cabinets were not defective. [**Docket #61, ¶54**]. Infinity acknowledged, in writing, that it owed Plaintiff $5,886,466.77 for the cabinets as of December 31, 2018.[3] [**Docket #61, ¶¶56, 123, 144**]. The cabinets were Infinity's only asset and upon the transfer of the cabinets without consideration, Infinity became insolvent. [**Docket #61, ¶¶81, 192-195**]. To date, no payment has been made on the cabinets and no explanation has been offered by defendants as to why the cabinets have not been paid for. [**Docket #61, ¶¶120-124, 134-136**].

The F.C. Defendants are owned, operated, and controlled by the individual defendants, as well as one another [**Docket #61, ¶¶35, 37, 75, 86, 98, 190**] and are the agents and/or alter egos of one another. [**Docket #61, ¶85**]. The F.C. Defendants and their assets are controlled and operated by Infinity and the individual defendants. [**Docket #61, ¶¶ 86, 88, 185-186**]. Infinity's assets were the cabinets and the revenues generated therefrom. [**Docket #61, ¶187**]. The F.C. Defendants are insiders who received cabinets

---

[2] Fed. R. Civ. P. 64 permits a Federal District Court to utilize the same legal remedies to recover assets that a Massachusetts State Court is permitted to enforce.
[3] Additional cabinets were manufactured and delivered after this date.

and/or the proceeds from the sale of the cabinets. [**Docket #61, ¶¶85, 87, 89-90, 93, 99-105, 108, 110-111, 185-186, 189-190**].

The Amended Complaint alleges that the cabinets and/or the resulting proceeds from the ultimate sale of the cabinets went in part or whole to the F.C. Defendants. [**Docket #61, ¶¶87-94, 109-112, 192-194, 196**]. The individual defendants and Infinity used the F.C. Defendants to conceal and obfuscate the proceeds from the sale of the cabinets. [**Docket #61, ¶93, 192-194**].

Plaintiff is the creditor of Infinity with respect to the non-payment of the cabinets [**Docket #61, ¶188**], and the individual defendants are insiders and partners of one another. [**Docket #61, ¶189**]. Infinity became insolvent upon the transfer of the cabinets and the proceeds from the sale of the cabinets [**Docket #61, ¶195**], and no consideration was paid by the F.C. Defendants for Infinity's assets. [**Docket #61, ¶196**]. In answering the Complaint, Infinity, D. Sun, and S. Sun admit that Infinity's business operations have ceased. [**Docket #35, ¶72**].

According to Defendants' sworn interrogatory answers (which have been filed with the court),[4] Infinity transferred the cabinets and received no consideration in return. [**Docket #65-1**]:

> **Interrogatory 9** Set forth the revenues, compensation, renumeration or financial benefits **INFINITY** received, directly or indirectly, from the sale, assignment or transfer of the **CABINETS**.

---

[4] The court can take judicial notice of matters on the docket of the court and consider said documents in denying defendant's motion to dismiss. *See Barron v. Reich*, 13 F.3d 1370, 1376 (9th Cir. 1994). ("[A]dditional facts considered by the court are contained in materials of which the court make take judicial notice"); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ("[T]he district court may also take judicial notice of matters of public record" (citation omitted)); *EEOC v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993) (on motion to dismiss, the district court may consider matters pled in district court record); and *Ala. Indep. Serv. Station Ass'n v. Shell Petrol. Corp.*, 28 F. Supp. 386 (Dist. Ct. 1939) (a court on a motion to dismiss may consider responses to interrogatories). In doing so, the motion to dismiss is not converted to a motion for summary judgment. *Id.*

**Answer:**
. . .
Subject to and without waiving these objections and their objections to the instructions and definitions, Infinity Defendants state that Infinity received no proceeds for the sale, assignment or transfer of the Cabinets. [**Response to Interrogatory 9, Docket #65-1**].

By way of Interrogatory 11, Plaintiff asked what cabinets Infinity has not yet sold, transferred or assigned. To which, Infinity responded that it no longer retains any of the cabinets:

**Interrogatory 11:**
**IDENTIFY** each and every **CABINET** manufactured by **SUNCO** at issue in the above-captioned action that **INFINITY** has not yet sold, transferred or assigned and set forth each and every reason why the **CABINETS** did not sell and **IDENTIFY** where the **CABINETS** are located.

**Answer:**
. . .
Subject to and without waiving these objections and their objections to the instructions and definitions, Infinity Defendants state that there are no Cabinets that Infinity has not yet sold, transferred or assigned. [**Docket #65-1**].

Then Plaintiff asked what the F.C. Defendants' involvement was with respect to cabinets. Instead of denying that the F.C. Defendants had no involvement with the cabinets, Defendants refused to answer the interrogatories:

**INTERROGATORY NO. 19**: For each of the following entities, **DESCRIBE** in specific detail each entity's involvement, role and/or participation in the importation, distribution, shipping, transporting, storage, alternation, modification, improvement, repair, staining or painting, installation, marketing, promoting, transfer, assignment and/or sales of the **CABINETS**:
    (a) **Eastman St. Distributors, LLC**;
    (b) **Eastman St. Woodworks, Inc.**;
    (c) **Sunco, Inc.**;
    (d) **Sunco Business Trust**;
    (e) **Infinity Wood Products, LLC**;
    (f) **Infinity Realty Company, LLC**;
    (g) **Sun Trust**; and
    (h) **New Sun Limited Partnership**.

**ANSWER NO. 19**:

Infinity Defendants object to Interrogatory No. 19 on the grounds that with the subparts it exceeds the permissible number of interrogatories permitted pursuant to Federal Rule of Civil Procedure 33(a)(1). Infinity Defendants further object to Interrogatory No. 19 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information.  Infinity Defendants further object to Interrogatory No. 19 on the grounds that it is premature as the parties have not yet briefed, and the Court has not yet decided, a motion to dismiss the Amended Complaint.

**INTERROGATORY NO. 20**:  For each of the following entities, **DESCRIBE** in specific detail what monies, compensation, renumeration or benefit each entity received from the sale, transfer or assignment of the **CABINETS**:
>    (a) **Eastman St. Distributors, LLC**;
>    (b) **Eastman St. Woodworks, Inc.;**
>    (c) **Sunco, Inc.;**
>    (d) **Sunco Business Trust;**
>    (e) **Infinity Wood Products, LLC;**
>    (f)  **Infinity Realty Company, LLC;**
>    (g) **Sun Trust;** and
>    (h) **New Sun Limited Partnership.**

**ANSWER NO. 20**:

Infinity Defendants object to Interrogatory No. 20 on the grounds that with the subparts it exceeds the permissible number of interrogatories permitted pursuant to Federal Rule of Civil Procedure 33(a)(1). Infinity Defendants further object to Interrogatory No. 20 on the grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible information. Infinity Defendants further object to Interrogatory No. 20 on the grounds that it is premature as the parties have not yet briefed, and the Court has not yet decided, a motion to dismiss the Amended Complaint.

These responses present Infinity as a shell entity that transferred the cabinets, without consideration, to the F.C. Defendants.

By way of document requests, Plaintiff sought documents tracking the whereabouts of the cabinets. Defendants refused to produce responsive documents. For example, Defendants refused to produced documents concerning: where the cabinets were stored (#62), the marketing of the cabinets (#63), the sale of the cabinets to

customers, purchases, distributors, affiliates, and subsidiaries, resellers (#64), financial records of the revenues received from the sale of the cabinets (#65), the cabinets in general (#66); monies that Infinity received, directly or indirectly, from the sale of cabinets (#67), and customers, resellers, distributors and subsidiaries regarding the sale of the cabinets (#69 & 73). [**Docket #65**].

With respect to documents regarding the F.C. Defendants, Defendants again refused to produce any documents (#76-158). [**Docket #65**].

## II.   LEGAL ANALYSIS

### A.   <u>Standard Of Review For Motion To Dismiss</u>

In applying the standards for a motion to dismiss, Defendants' present motion should be found to be without legal basis. Fed. R. Civ. P. 12(b)(6) a court is to assume that all pleaded facts and reasonable inferences drawn from those facts are deemed true. *Cesar Castillo, Inc. v. Sanofi-Aventis U.S., LLC (In re Lantus Direct Purchaser Antitrust Litigation)*, 950 F.3d 1, 5 (1st Cir. 2020) (The Court of Appeals reversed the lower court's granting of a motion to dismiss). All that is required is that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 67 L. Ed. 2d 929 (2007). It is not for the court "to decide whether the plaintiff ultimately will prevail but, rather, whether he is entitled to undertake discovery in furtherance of the pleaded claim." *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 13 (1st Cir. 2004). As such, "'[t]he purpose of Rule(b) is to provide notice, not to test the factual allegation of the claim.'" *In re Wellnx Marketing & Sales Practices Litigation*, 673 F.Supp. 2d 43, 51 (D. Mass. 2009) (*quoting Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.,* 331 F.3d 406, 414 (3rd Cir. 2003). To survive a motion to

dismiss, the complaint must simply allege a plausible entitlement to relief. *Wellnx*, 673 F. Supp. 2d at 49 ("To survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007)); and *Bryan Corporation v. Chemwerth, Inc.*, 911 F.Supp.2d 103, 108 (D. Mass. 2012). A court is only to "uphold a dismissal on this ground 'only if the plaintiff's averments hold out no hope of recovery on any theory adumbrated in [his] complaint.'" *Rodi v. Southern New England School of Law*, 389 F.3d 5, 13 (2004) (quoting *In re Colonial Mortg. Bankers Corp.,* 324 F.3d 12, 15, (1st Cir. 2003).

### B.    Plaintiff Exceeded The Pleading Requirements Of Rule 8(a)

Fed. R. Civ. P. 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998), *cert. denied*, 525 U.S. 973, 142 L. Ed. 2d 347, 119 S. Ct. 426 (1996) ("Fed. R. Civ. P. 8 established a system of notice pleading, and a complaint may not be dismissed at the pleading stage unless no relief could be granted under any set of facts that could be proved consistent with the allegations"); *Hartford Acci. Indem. Co. v. Mitchell Buick-Pontiac & Equip. Co.*, 479 F. Supp. 345, 347 (N.D. Miss. 1979) ("The court's analysis is limited to a determination of the sufficiency of the complaint under Rule 8(a), Fed. R. Civ. P., and if the liberal requirements of the rule are met, the motion should be denied.").

Each of the F.C. Defendants are alleged to have participated in the same misconduct individually and combined as a single cabinet enterprise to receive Infinity's assets and to hinder, delay or defraud Plaintiff. Infinity transferred its assets to each of the F.C. Defendants, who are insiders and controlled by the same persons who control Infinity. The individual defendants are married, the parent/child and/or partners of one

another, and control Infinity and the F.C. Defendants. L. Sun concealed her relationship with D. Sun, S. Sun and Infinity and abruptly left Plaintiff and failed and refused to communicate with Plaintiff with respect to payment for the cabinets. [**Docket #61, ¶¶58-63**]. The Amended Complaint further alleges that Infinity transferred the cabinets and/or proceeds to the F.C. Defendants for no consideration, leaving Infinity insolvent. Facts confirmed by Defendants' responses to interrogatories.

A motion to dismiss survives where there are allegations of wrongdoing concerning each defendant. In the present action, Plaintiff identified the wrongdoing -- receiving assets without consideration, leaving Infinity insolvent and concealing the receipt of those assets. The Amended Complaint alleges that each entity was involved in the receipt and sale of the cabinets, and that the F.C. Defendants commingled their assets and operations resulting in operating as a single entity. The Amended Complaint further alleged that the only products that the F.C. Defendants possessed were the cabinets and that each defendant was used to conceal and obfuscate the proceeds from the sale of the cabinets. As such, Plaintiff has sufficiently alleged the wrongful conduct engaged in by each of the defendants under Chapter 109A of the Massachusetts General Laws, the Uniform Fraudulent Transfer Act ("UFTA").

C.   <u>**Plaintiff Complied With The Pleading Requirements Of Rule 9(b)**</u>

UTFA is not a common law fraud claim, but rather a statutory claim. Under the UFTA, there are four distinct and separate sections under which a court can find a fraudulent conveyance, and only one of those sections requires the *indicia* of fraud;[5] thus,

---

[5] Section 5(a)(1) is the section that has *indicia* of fraud.

potentially requiring a heightened pleading requirement under Rule 9(b) as to that section. *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 49 (1st Cir. 2020).

Irrespective, Plaintiff has met and exceeded the pleading requirements of Rule 9(b), which requires the alleging of circumstances giving rise to fraud. Intent and knowledge and other conditions of a person's mind may be alleged generally. In the present action, the who, what, when and where involve whether the elements under any one of the four sections of the UFTA are met. Plaintiff has alleged specific facts with respect to the elements of a fraudulent conveyance as to sections: 5(a)(1); 5(a)(2); 6(a); and 6(b).

Defendants disproportionally focus on a few paragraphs in the Amended Complaint that are based on information and belief. The bulk of Plaintiff's allegations are not based on information and belief. Irrespective, the case relied on by Defendants, *Specialty Mktg. Grp., Inc. v. Katz*, No. CIV.A. 13-12636-LTS, 2014 WL 2453105, at *7 (D. Mass. May 30, 2014), specifically states that fraudulent conveyance may be pled on information and belief where the facts are within the perpetrators' (defendants') knowledge, as long as supporting facts are provided. That is exactly how the Amended Complaint is pled. The Court in *Katz* stated:

> Plaintiffs attempt to support this claim with conclusory allegations resting upon information and belief. Complaint ¶¶ 24-26. While **Plaintiffs may plead fraudulent conveyance upon information and belief where facts of alleged fraud "are peculiarly within the perpetrator's knowledge[,]"** they must still provide supporting facts and not mere conclusions. See In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig., 618 F. Supp. 2d 96, 107-08 (D. Mass. 2009) (quoting Gublo v. NovaCare, Inc., 62 F. Supp. 2d 347, 356 (D. Mass. 1999)). [emph. added]. *Id.*

The UFTA "confers jurisdiction to set aside conveyances made without fair consideration, or with actual intent 'to hinder, delay, or defraud either present or further

creditors' MFCA, §§ 4, 5 & 7". *Yankee Microwave, Inc. v. Petricca Commc'ns Sys.*, 53 Mass. App. Ct. 497, 513 (2002) ("It provides a method by which the frustration of [creditors] claims by a conveyance may be avoided."); *also see Utica Mut. Ins. Co. v. Cohen*, 2014 Mass. Super LEXIS 112 (a statute designed to prevent debtors from effecting collusive or otherwise fraudulent conveyances of their assets to third parties with the intent of hindering, delaying, defrauding or otherwise thwarting the rights of creditors by placing such assets beyond their reach); *First Fed. S&L Ass'n v. Napoleon*, 428 Mass. 371, 378 (1998) ("The purpose of the statute is to preserve a debtor's assets so that creditors may look to them in the event that the debtor ceases payments or is declared bankrupt").

In analyzing any one of the four sections of the UFTA, section 11 of the UFTA provides that the law of equity shall supplement the provisions of the Chapter.

### i.      Chapter 109A, § 5(a)(1)

A transfer made by a debtor is fraudulent if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor. With respect to intent to hinder, delay or defraud a creditor (Plaintiff), subsection (b) of Section 5 sets forth eleven considerations for finding intent: transfer was to an insider; debtor retained control of the cabinets; transfer was concealed; Infinity absconded; debtor was insolvent or became insolvent; transfer occurred shortly before or after the debt was incurred; and Infinity transferred essential assets of its business. No factor is controlling and the court can consider other factors. *Id*. A finding of a majority of the factors is not required for a finding of fraudulent conveyance. *AngioDynamics, Inc. v. Biolitec AG*, 711 F.3d 248252 (1st Cir. 2013) ("Not all, or even a majority, of the [eleven factors] must exist to find actual fraud

under Uniform Fraudulent Transfer Act"). Actual intent is proven "circumstantially and inferentially". *Logistics Info. Sys. v. Braunstein* (*In re Logistics Info. Sys.*), 432 B.R. 1 (D. Mass. 2010) (quoting *Rodriguez v. Montalvo, 37 F. Supp. Ed* 3, 5 (D. Mass. 2005)). In *Rodriguez*, the court granted a preliminary injunction where several of the factors listed in Section 5(b) were alleged. *Id*. at 7.

Plaintiff pled the existence of all eleven considerations. Plaintiff is the creditor and Infinity is the debtor and Defendants retained control of the cabinets, the transfer was to an insider, the transfer was concealed, Infinity and the individual defendants retained control of the cabinets, Infinity became insolvent, Infinity absconded with the cabinets, transfer occurred after the delivery of the cabinets and Infinity transferred all of its assets. As such, Defendants, by transferring the cabinets to the F.C. Defendants, sought to hinder, delay or defraud Plaintiff. As we sit here today, Infinity claims it does not have the cabinets, nor the proceeds from the sale of the cabinets, will not disclose the involvement of the F.C. Defendants in the receipt, handling and sale of the cabinets, and has ceased business operations.

### ii.    Chapter 109A, § 5(a)(2)

A transfer made by a debtor is fraudulent if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor was **either**: engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; **or** intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

As alleged, Infinity transferred the cabinets or the proceeds therefrom without fair value, subsequently acknowledged by Infinity in responses to interrogatories. As further alleged, Plaintiff was Infinity's only source of cabinets and therefore its only asset and source of revenue. Infinity did not have the funds to pay Plaintiff for the cabinets when it transferred them to the F.C. Defendants subsequently ceased operations.

### iii.     Chapter 109A, § 6(a)

A transfer made is fraudulent if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer. As pled, there was not equivalent consideration exchanged with respect to the transfer of the cabinets or the proceeds therefrom. It is further alleged that the cabinets were Infinity's only asset and thus Infinity became insolvent upon its transfer of the cabinets. Defendants confirmed that Infinity ceased operations.

### iv.     Chapter 109A, § 6(b)

A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

As alleged, the debt arose when the cabinets were ordered, and certainly at the time of the delivery of the cabinets to Infinity. Defendants have refused to explain whether this transfer was for an antecedent debt. The transfer was to an insider. The F.C. Defendants were and are owned and controlled by the individual defendants, which by the definition of Section 2 of the UFTA are insiders.

12

### D.   <u>Statute Of Limitations</u>

### i.   **The Statute Of Limitations Did Not Expire**

No specific date was pled in the Amended Complaint as to when the fraudulent conveyance occurred because that date is unknown to Plaintiff. Defendants have refused to provide information or documents regarding the transfer of Infinity's assets to the F.C. Defendants. Defendants' reading between the lines of Plaintiff's Amended Complaint to speculate on an undisclosed fraudulent transfer date is self-serving conjecture. As such, there is nothing on the face of the Complaint that states that the filing of the Amended Complaint was four years after the fraudulent transfer.

Alternatively, the statute of limitation period did not commence to run as to Plaintiff's fraudulent conveyance claim until the combination of Defendants filing their answer and responded to interrogatories[6] because Plaintiff did not discover the fraudulent conveyance claims until such time. *Bowen v. Eli Lilly & Co.*, 408 Mass. 204 (1990) (the limitations period begins to run "when a plaintiff discovers, or any earlier date when she should reasonable have discovered, that she has been harmed or may have been harmed by defendant's conduct"). A federal court is to apply state law with regards to the statute of limitations "discovery rule". *See Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 187 (1st Cir. 2006).

In the present action, Plaintiff did not discover the existence of the fraudulent conveyance claims until receiving Defendants answer and responses to discovery, as well as responding to Defendants' interrogatories. Defendants acknowledge that Infinity transferred the cabinets and received no compensation for the cabinets and has ceased

---

[6] Defendants' answer was filed on April 25, 2023; and their responses to interrogatories was served on February 1, 2024.

operations. Defendants, however, will not provide information as to the whereabouts of the cabinets or the proceeds therefrom or any information regarding the F.C. Defendants involvement in the transfer, holding or sale of the cabinets.

### ii.     The Statute Of Limitations Was Tolled

Assuming, *arguendo*, the fraudulent transfer occurred four years prior to the filing of the Amended Complaint, the statute was tolled because Defendants concealed the transfer, and continue to conceal the transfer and location of the cabinets and/or proceeds from the sale of the cabinets. A federal court can apply Massachusetts tolling doctrine codified in M.G.L.c. 260, §12. *Epstein*, 460 F.3d at 189; *Bourassa v. La. Fortune*, 711 F. Supp. 43, 45-47 (D. Mass. 1989). Under the Massachusetts tolling statute, a statute of limitation may be tolled if there is a fiduciary duty **or** if the wrongdoer concealed the existence of the cause of action. *Id.; Abdallah v. Bain Capital LLC*, 752 F.3d 114, 119 (1st Cir. 2014). In the present case, L. Sun, who is alleged to control the F.C. Defendants is also alleged to have owed a fiduciary duty to Plaintiff. It is further alleged that when L. Sun, who controlled Plaintiff's relationship with Infinity, abruptly left China and refused to communicate with Plaintiff as to the whereabouts of the cabinets and payment for the cabinets. It is further alleged that Defendants used the F.C. Defendants to conceal the whereabouts of the cabinets and proceeds therefrom and concealed their involvement with the F.C. Defendants.

Alternatively, the statute of limitations is equitably tolled. *Figouero v. Cactus Mexican Grill, LLC*, 575 F. Supp. 3d 200 (D. Mass. 2021). Equitable tolling is applicable where plaintiff did not have and could not have had with due diligence the information essential to bring suit. *Abdallah*, 752 F. 3d at 121. Equitable tolling is for circumstances

beyond the plaintiff's control. *Hudson v. United States*, 2023 U.S. Dist. LEXIS 76803 (2023).

In the present case, Section 11 of the UFTA, specifically directs a court to invoke equity in its application of the provisions of the Act. The entity that Plaintiff was dealing with is Infinity and Defendants concealed their relationship within Infinity, as well as the F.C. Defendants. Infinity had provided documents confirming that it owed Plaintiff $5,886,466.77 for the shipment of cabinets. There was no indication that Infinity was transferring the cabinets to the F.C. Defendants. On the contrary, it suggested that it was in possession of the cabinets and/or proceeds by representing in writing that it owed Plaintiff $5,886,466.77 as of December 31, 2018 for the cabinets.

### iii.     The Amended Complaint Related Back To The Date Of The Filing Of The Original Complaint

Defendants incorrectly rely on Fed. R. Civ. P, 15(c)(1)(B) and (C) for the relation back rule instead of Mass. R. Civ. P. 15(c). *Trindade v. Grove Servs.*, 91 F.4th 486, 495 (1st Cir. 2024). In diversity cases, a federal district court is to apply the less restrictive state law with respect to principals of relation back. *Id.* The First Circuit has held:

> We have explained that this provision 'cements in place a one-way ratchet; less restrictive state relation-back rules will displace federal relation-back rules, …
> …
> …Massachusetts law governing relation back is less restrictive than federal law; as such, a plaintiff in a diversity case can invoke Massachusetts law as part of the 'one way ratchet'. [citations omitted]. *Id.*

The court in *Cayo v. Fitzpatrick*, 95 F. Supp. 3d 8, 14 (D. Mass. 2015) held "[I]f Massachusetts law provides for a more liberal relation back rule than afforded by Rule 15(c)(1)(c), then the Massachusetts relation back rule must be applied to determine

whether Cayo's claims against these defendants are time-barred." The court in *Sigros v. Walt Disney World, Co.*, 190 F. Supp. 2d 165, 167 (D. Mass. 2002) held that:

> Where a plaintiff asserts claims against a new defendant beyond the statute of limitations period, such claims are not time-barred if they relate back to the original complaint so as to place the added defendants in the same position as the original defendants. [cite omitted]. To determine whether a claim relates back to the original claim, the court must apply the relation back rules of the state provides the statute of limitations.

As such, Mass. R. Civ. P. 15(c) controls whether adding a cause of action and/or additional parties relates back to the date of the filing of the complaint. *Trindade*, 91 F.4th at 494-496. Mass. Rule 15(c) is intended "to avoid depriving plaintiffs of a valued claim." *Id*.

> Mass. R. Civ. P. 15(c) provides:
>
> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment (including an amendment changing a party) relates back to the original pleading.

Under Mass. R. Civ. P. 15(c), an amendment relates back if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading." *Trindade* 91 F.4th at 495. "Factors considered are 'whether the facts are related in time, space, origin or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties expectations.'" [citations omitted]. *Id*. at 495. The underpinnings of the liberal approach of the Massachusetts' relation back rule is that if the action was timely brought in the outset, then every consideration shall be given to granting the amendment. *Id*. at 495. A major consideration is whether the newly added party will be afforded the opportunity to conduct adequate discovery. *Id.* at 497.

16

As stated by the Court in *Sigros*:

> The liberal rule in Massachusetts reflects a substantive policy of allowing plaintiff to add transaction-related defendants allegedly liable for the injury giving rise to the original cause of action, even though the claims against those plaintiffs would be time-barred but for relation back. *Id*. 165.

The court in *Cayo* held:

> The more liberal Massachusetts relation-back principles for adding new parties looks at the following factors: (1) whether a honest mistake had; (2) whether joinder of the real party in interest had been requested within a reasonable time after the mistake was discovered; (3) whether joinder is necessary to avoid an injunction; and (4) whether joinder would prejudice the non-moving party. *Cayo*, 95 F. Supp. 3d at 13.

Additionally, the court in *Cayo*, at footnote 4, stated that when a plaintiff seeks to add a party in a federal action, the court is to look at M.G.L.c. 231, §51, which provides:

> In all civil proceedings, the court may at any time, allow amendments adding a party, discontinuing as to a party or changing the form of the action, and may allow any other amendment in matter of form or substance in any process, pleading or proceeding, which may enable the plaintiff to sustain the action for the cause or for recovery for the injury for which the action was intended to be brought, or enable the defendant to make a legal defense. Any amendment allowed pursuant to this section or pursuant to the Massachusetts Rules of Civil Procedure shall relate to the original pleading.

In the present action, the Amended Complaint was promptly filed when it became apparent that Defendants had engaged in fraudulent conveyances using the F.C. Defendants. The Amended Complaint was sought within the timeframe of the scheduling order for amending the complaint. The parties are at the beginning of discovery, and the F.C. Defendants are using the same counsel as the other defendants. There is adequate time to conduct discovery. There would be no prejudice, and Defendants have articulated no prejudice if the Amended Complaint is permitted to move forward.

Even under the more restrictive Federal Rules, Plaintiff's fraudulent conveyance claim relates back to the date of the filing of the original Complaint, a time which Defendants concede is within the four-year statute of limitations period. The additional claims asserted by Plaintiff in its Amended Complaint arise from the conduct, transaction and occurrence set forth its original Complaint. The common thread in both complaints is the non-payment of the cabinets and the whereabouts of the proceeds from the sale of the cabinets. At their core, is the concealment by Defendants of the cabinets and sales proceeds.

In fact, in Defendants' opposition to Plaintiff's motion for leave to amend the complaint [**Docket #56**], Defendants acknowledge that the F.C. Defendants are related to Infinity and should have been named early in the action (pp. 6-8). In seeking to preclude Plaintiff's motion for leave, Defendants represented that the F.C. Defendants are related to the other defendants with respect to and liable for the alleged wrongdoings.

Plaintiff also meets the requirements under Fed. R. Civ. P. 15(c)(1)(C) to add a new party. Relation back under Rule 15(c) is to be liberally allowed. *Dutka v. Southern R. Co.*, 92 F.R.D. 375, 376 (N.D. Georgia 1981). The issue under Rule 15(c)(1)(C) is whether the added parties had sufficient notice of the initiation of the action or should have known they could be named as a party. *Id*. The courts have held that if there is an identity of interests between the already named defendants and the newly added defendants to lead the newly named defendants to know of their connection to the lawsuit, then the requirements of Rule 15(c)(1)(C) are met. *Holden v. R.J. Reynolds Industries, Inc.*, 82 F.R.D. 157, 160 (M.D.N.C. 1979):

> Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action

against one serves to provide notice of the litigation to the other. As is true of other aspects of Rule 15(c), the objective is to avoid the application of the statute of limitations when no prejudice would result to the party sought to be added by the amendment.

If the already named defendants and the newly named defendants have the same officers or controlling members, then the newly named defendants are deemed to have notice. *Id.*; *Dutka,* 92 F.R.D. at 377; *G. F. Co. v. Pan Ocean Shipping Co.,* 23 F.3d 1498, 1502 (9th Cir. 1994) ("Cases from other circuits confirm that <u>Rule 15(c)</u> notice is satisfied when 'the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice to the litigation to the other'. *6A Charles Miller, et. al.*, *Federal Practice and Procedure* § 1499 at 146 (2d Ed. 1990)"). Actual notice is not required. *Dutka*, 92 F.R.D. at 377.

In the present action, the officers and managers of Infinity and the F.C. Defendants are the individually named defendants. All the entities are operating as a single entity under the control and direction of the individual defendants. As such, the F. C. Defendants became aware of the present action when Infinity and the individual defendants were served and knew of their liability as a result of their involvement with the cabinets.

### E.     <u>Reach And Apply</u>

Defendants focus on the wrong subsection of M.G.L.c. 214. The applicable subsection, § 3(8), concerns fraudulent conveyance:[7]

> Actions to reach and apply in payment of a debt any property, right, title or interest, real or personal, of a debtor, liable to be attached or taken on execution in a civil action against him and fraudulently conveyed by him with intent to defeat, delay or defraud his creditors, or purchased, or directly or indirectly paid for, by him, the record or other title to which is retained in the vendor or is conveyed to a third person with intent to defeat, delay or defraud the creditors of the debtor.[8]

---

[7] Defendants incorrectly focus on subsection, §3(6).
[8] The UFTA defines creditor and debtor.  *Foise*, 967 F.3d at 45.

Plaintiff does not need to have a final judgment in order to maintain a reach and apply claim concerning fraudulent conveyance. *See Barishefsky v. Cohen*, 299 Mass. 360, 363-64 (1938).

A reach and apply under section 7, 8 or 9 "merely provides means for the application of assets of a debtor to the satisfaction of claims whose origin is elsewhere". *Blumenthal v. Blumenthal*, 303 Mass. 275, 279 (1939). The statute provides a convenient and expeditious method by which a creditor may satisfy its claim. *Id.* In other words:

> A bill to reach and apply property fraudulently conveyed combines in one proceeding matters both of law and equity. The first is the establishment of an indebtedness by the defendants to the plaintiff. The second is equitable process for collecting this debt out of the property fraudulently conveyer. In short "a bill to reach and apply is essentially a proceeding at law supplemented by an equitable attachment. [citations omitted]. *Id.* at 662.

Alternatively, Plaintiff has a reach and apply claim in common law, creating a constructive trust to recover fraudulently conveyed assets. *Cavadi v. DeYeso,* 458 Mass. 615 (2011).

As discussed in the cases cited herein, fraudulent conveyance claims and reach and apply claims under section 3(8) are asserted together. Reach and apply provides a mechanism for the court to enjoin and hold assets fraudulently conveyed to avoid further dissipation of said assets.

## III.   CONCLUSION

Based on the foregoing, Plaintiff requests that this honorable court DENY Defendants' motion to dismiss. A picture has clearly emerged that Defendants have transferred the cabinets out of Infinity without receiving any payment or due consideration.

Defendants have concealed and are hiding the proceeds from the sale of the cabinets to avoid paying Plaintiff the $6,712,182.11 they owe for the cabinets.

**DATED: March 29, 2024**                          **PLAINTIFF,**
                                                    By its attorney,


                                                    */s/ Connie C. Dai*
                                                    Connie C. Dai (BBO#683330)
                                                    Yun Cheng (BBO# 707028)
                                                    Lions Law, P.C.
                                                    154 Wells Ave
                                                    Newton, Massachusetts 02459
                                                    (617) 232-7503 Telephone
                                                    (781) 207-8574 Fax
                                                    connie@lionslawgroup.com
                                                    yun@lionslawgroup.com


                                                    */s/ Timothy K. Cutler*
                                                    Timothy K. Cutler (BBO#636124)
                                                    CUTLER & WILENSKY LLP
                                                    20 Walnut Street, Suite 1
                                                    Wellesley, Massachusetts 02481
                                                    (617) 232-7500 Telephone
                                                    tim@cutlerlegal.com


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this Friday, March 29, 2024.


                              */s/ Timothy K. Cutler*
                              Timothy K. Cutler