UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUNCO TIMBER (KUNSHAN) CO., LTD.<br>    Plaintiff,<br><br>v.<br><br>LINDA SUN, DAVID SUN, SHILLOCK YUAN-SUN, and INFINITY WOOD PRODUCTS, LLC,<br>    Defendants,<br><br>SUNCO, INC., EASTMAN ST. DISTRIBUTORS LLC, EASTMAN ST. WOODWORKS, INC., INFINITY REALTY COMPANY LLC, AND NEW SUN LIMITED PARTNERSHIP,<br>    Reach and Apply Defendants, and Fraudulent Conveyance Defendants. | Civil Action No. 1:22-cv-10833 MJJ |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH COURT'S MAY 7, 2025 ORDER CONCERNING THE DEPOSITION OF GUOQING WU AND REQUEST FOR CLARIFICATION[1]**

Plaintiff Sunco Timber (Kunshan) Co., Ltd. ("Plaintiff") submits its Memorandum in Opposition to Defendants' Motion to Compel Compliance with Court's May 7, 2025 Order (ECF NO. 127) Concerning Deposition of Guoqing Wu ("Mr. Wu") and respectfully requests this honorable court for clarification on its May 7, 2025 order [**Docket 136**].

---

[1] Plaintiff was preparing its motion for clarification on the Court's May 7, 2025 order when Defendants filed the present motion. For the ease of the Court, Plaintiff has included herein its arguments for clarification in its Opposition brief.

1

I.    SUMMARY OF ARGUMENT

- Mr. Wu is a non-party who resides outside the United States and is beyond the Court's jurisdiction power and neither Defendants nor this Court have the legal authority to compel the deposition of Mr. Wu.

- The Court's May 7th Order does not require Plaintiff to produce Mr. Wu for a Rule 30(b)(6) deposition. Mr. Wu is not the designated corporate representative. Furthermore, Plaintiff has identified two appropriate Rule 30(b)(6) corporate designees who are prepared to testify in Hong Kong;

- The costs sought by Defendants by way of their Motion are unreasonable and cause undue burden and hardship on Plaintiff. Plaintiff believes that Defendants should bear certain costs and submits Plaintiff's Proposed Order together with this memorandum.

II.    THE COURT DOES NOT HAVE JURISDICTION TO COMPEL MR. WU'S DEPOSITION

If Defendants intend to depose an employee of Plaintiff who is not an officer, director, or shareholder of the plaintiff entity, they must issue a subpoena under Rule 45 of the Federal Rules of Civil Procedure. Contardo v. Merrill Lynch, Pierce, Fenner & Smith, 119 F.R.D. 622 (D. Mass. 1988). A Rule 30(b)(1), F.R. Civ. P deposition notice alone is insufficient as such employee is treated as nonparties for deposition purposes. Id.

Under 28 USCS 1783, a U.S. court may issue a subpoena to a U.S. national or resident located in a foreign country if the testimony or document production is necessary in the interest of justice and cannot be obtained otherwise. However, the subpoena must comply with the Federal Rules of Civil Procedure for service in a foreign country. Additionally, Rule 45(c) limits the geographical scope of subpoenas, generally restricting compliance to within 100 miles of where the person resides, is employed, or regularly transacts business. Thus, the court does not have jurisdiction to subpoena or otherwise

compel Plaintiff's employees in China for depositions who are neither U.S. national nor U.S. resident.

Contrary to Defendants' repeated allegations, Mr. Wu is not a named party, nor is he an officer, director or shareholder of Plaintiff. Plaintiff lacks the legal authority to compel his deposition testimony because Mr. Wu resides in mainland China and is not a U.S. national or resident— clearly outside the subpoena power of this Court.

Defendants' mischaracterization of Mr. Wu's relationship with Plaintiff improperly seeks to shift the burden of compliance onto Plaintiff, creating an undue and unlawful obligation. Since Mr. Wu is not a party to this litigation, Plaintiff respectfully requests that the Court deny Defendants' Motion to Compel Plaintiff to produce Mr. Wu individually for deposition. Further, Plaintiff respectfully requests that this Court clarify its May 7th order to specify "the witness" to Plaintiff's 30(b)(6) designees -- Mr. Zhao and Mr. Xiao. Plaintiff shall produce its 30(b)(6) deponents to appear for Defendants' depositions in Hong Kong.

Despite the lack of jurisdiction over non-party Mr. Wu, Plaintiff has earnestly sought to persuade and cajole Mr. Wu to appear for the taking of his deposition in Hong Kong, Mr. Wu, however, has refused to comply with Plaintiff's requests.[2]  Plaintiff is submitting two additional medical notes from Mr. Wu's physician, which confirm the seriousness of his medical condition. Plaintiff is without the legal authority or power to force Mr. Wu to travel to Hong Kong, which is a special administrative region outside Mainland, China.

---

[2] Mr. Wu maintains that his medical condition is serious and requests that we notify the court of his condition.  See **Exhibits A** which are true and correct copies of medical notes from Mr. Wu's physician.

3

### III. THE COURT'S MAY 7TH ORDER DOES NOT REQUIRE MR. WU TO APPEAR AS A 30(B)(6) WITNESS[3] AND PLAINTIFF HAS IDENTIFIED TWO PROPER DESIGNEES

#### (1) The May 7th Order Only Applies to Plaintiff's 30(b)(6) Designee

The Court's May 7th Order requires Plaintiff to make a witness available for deposition in Boston or in Hong Kong. [**Docket 136**]. If Plaintiff's designee(s) chooses to travel to Hong Kong for the deposition instead of the U.S., Plaintiff shall bear associated travel costs pertaining solely to the deposition of the Plaintiff's designated Fed. R. Civ. P. 30(b)(6) designee. The Order reads:

> "Plaintiff will make the witness available for an in-person deposition in Hong Kong; however, Plaintiff will bear all costs of travel incurred by Defendants in connection with the taking of the deposition in Hong Kong. In the alternative, Plaintiff may make the witness available for an in-person deposition in Boston." [**Docket 136**].

There is no mention of Mr. Wu in his personal capacity, nor does it require the deposition of a non-party under Rules 30(b)(6) or 45 in the Court's May 7th order. Any interpretation by Defendants that the Order compels Plaintiff to produce Mr. Wu individually goes beyond what the Court actually ordered.[4]

#### (2) Mr. Wu Is Not a Party or 30(b)(6) Designee

The named organization in a Rule 30(b)(6) deposition notice must designate one or more officers, directors, or managing agents, or designate other persons who consented to testify on its behalf; and it may set out the matters on which each person designated will testify. Fed. R. Civ. P. 30(b)(6).

---

[3] As discussed herein, a court should not identify who a company designated as its 30(b)(6) witness or witnesses.

[4] Defendants have issued deposition notice to Mr. Wu's in his personal capacity, but it is not within their authority and does not comply with any provisions in Fed. R. Civ. P. 45. Defendants have issued a separate deposition notice for Plaintiff's 30(b)(6) designee to whom Plaintiff may choose its designee(s).

Contrary to the Defendants' assertion that Mr. Wu is an officer and controlling shareholder of Plaintiff,[5] Mr. Wu does not hold a position as an officer, director, shareholder (let alone a controlling shareholder) or managing agent of Plaintiff. To the extent Mr. Wu could be considered an "other person" under Rule 30(b)(6), he does not consent to appear for deposition and nor does Plaintiff continue to feel he is an appropriate 30(b)(6) designee.[6]

Plaintiff initially believed Mr. Wu was a potential most knowledgeable designee to testify regarding the approximately $6.7 million owed by Defendants for the cabinets Defendants ordered and failed and refused to pay for. However, from the time Jiangsu Qiyi Investment Co., Ltd. became a shareholder in 2014 until the final shipment arrived in the U.S. in or around July 2019, Mr. Wu's involvement with Plaintiff was limited to government relations. Mr. Wu had no direct involvement in the ordering, manufacturing, and shipment of the cabinets to Defendants, nor did he have direct involvement in Defendants' non-payment of the cabinets. At Defendant Linda Sun's directives, Mr. Wu's involvement was limited to the handling of administrative tasks such as business filings, regulatory updates, and responses to government inquiries related to employment, safety, environmental, and security issues.[7] Mr. Wu has no background in kitchen cabinet manufacturing and never sought to gain such expertise. This was confirmed by Defendant Linda Sun in her own deposition. During that same period, it was Defendant

---

[5] *See* Defendants' Memo in Support of Motion to Compel on April 11, 2025, **Docket 128**.

[6] A party may change their 30(b)(6) designee prior to the taking of a deposition. Defendants in fact changed their 30(b)(6) designees on the day of their respective depositions.

[7] Mr. Wu has been an entrepreneur running an information technology company throughout all relevant times.

5

Linda Sun who directed and oversaw Plaintiff's operations, including procurement, production, quality control, invoicing, shipping, and payment collection.[8]

Since the Court's Order was issued, Plaintiff has engaged in good faith communications with Defendants regarding the legal requirements of Rule 30(b)(6) designations and the costs associated with depositions in Hong Kong. Following further internal review, Plaintiff determined that other employees are better suited to serve as Rule 30(b)(6) designees than Mr. Wu. Accordingly, Plaintiff has designated Mr. Bing Zhao ("Mr. Zhao") and Mr. Ruihua Xiao ("Mr. Xiao") as its corporate representatives. Mr. Zhao is the vice president of Plaintiff and has knowledge of orders, shipments and billing of goods in dispute, and general affairs of the company and warehouse manager. Mr. Xiao, an elderly individual with health issues as previously disclosed to Defendants, has served as a director of Plaintiff and the company's registered legal representative[9]. Prior to 2019, Mr. Xiao acted at the request of Defendant Linda Sun and followed her instructions regarding the factory's operations. Plaintiff has agreed to make both Mr. Xiao and Mr. Zhao available in Hong Kong for depositions, which Defendants may conduct remotely or in person. Although, Defendants have agreed to take these individual's depositions remotely, Plaintiff has agreed to make Mr. Xiao and Mr. Zhao, individually and as 30(b)(6) designees, available for in person depositions in Hong Kong in early July.

This update in corporate designation for the Rule 30(b)(6) deposition reflects Plaintiff's ongoing commitment to comply with discovery obligations and ensure knowl-

---

[8] Plaintiff and Defendants have produced voluminous (hundreds of) e-mails and documents concerning purchase orders, invoicing, shipment and non-payment about the products in question between Plaintiff and Defendants. Defendant Linda Sun was on almost every single of these emails, whereas Mr. Wu was on none of these e-mails.

[9] A Chinese corporate law concept, every corporation needs to register a legal representative of the company with the Industry and Commerce Bureau in China.

edgeable and appropriate representatives are produced for deposition. Notably, these designations will resolve Defendants' stated concerns regarding the availability of corporate witnesses. Mr. Zhao and Mr. Xiao, as designated representatives, will be prepared to address the 30(b)(6) questions reasonably known to the corporation within the scope of the deposition notice that have not been objected to by Plaintiff.

### IV. DEFENDANT'S REQUESTS FOR COSTS ARE UNREASONABLE AND OUTSIDE TO SCOPE OF THE COURT'S ORDER

Defendants appear to be seeking to turn the Court's order into a fortuitous opportunity to travel to Hong Kong with a significant portion of their office in what they would like to amount to an all-expense paid excursion.  Plaintiff is of the understanding that this something the Court is neither encouraging nor suggesting.

This case is a $6,712,182.11 collection case for the non-payment of cabinets. Plaintiff is already struggling with the financial burden of Defendants' lack of payment for the cabinets. As such, Plaintiff thus respectfully requests that the Court impose a reasonable limit on the costs associated with Defendants conducting the depositions. Plaintiff's proposal on costs is as follows:

1. As a result of Plaintiff designating multiple persons for the 30(b)(6) deposition, Plaintiff agrees to the deposition trip to be held over five (5) days.

    a. Defendants can take a direct Cathay Pacific flight and arrive in Hong Kong mid-afternoon, with the deposition beginning the following morning.

    b. Plaintiff suggests the depositions for the two witnesses should be completed in three days.

    c. This schedule complies with the Court's prior order limiting interpreted depositions to 12 hours. It also allows Defendants sufficient time to depart Hong Kong on the fifth day.[10]

2. In light of the financial hardship caused by Defendants' failure to pay for the kitchen cabinets—which directly led to this lawsuit and the related discovery dispute—Plaintiff is willing to cover the cost of economy-class airfare for Defendants' counsel. Should Defendants wish to upgrade to premium economy or business class, they may do so at their own expense.

3. Defendants should bear the cost of their counsel's travel time, not Plaintiff. Given that Defendants' nonpayment forced Plaintiff to bring this lawsuit and incur related discovery expenses, it is reasonable for Defendants to cover at least a portion of those costs. Additionally, many attorneys charge reduced rates for travel time, recognizing that international flights—particularly those taken during overnight hours—do not allow for the same level of focus and productivity as regular office work. Plaintiff should not be required to pay for counsel's full billing rates under such conditions.

4. Plaintiff believes it is reasonable to limit attendance to one attorney per group of Defendants, resulting in no more than two attorneys present in total. Any additional attorneys present shall be a cost borne by Defendants.

5. Based on Hong Kong's consumption level, the meal cost shall be $50 per person per day, hotel shall be $120 per room per day, and the meeting room rental can be $150 per day.

---

[10] If Defendants' counsels elect to stay an additional more nights before returning to Boston, they shall bear their own costs for those additional nights.

6. Plaintiff will be designating the depositions as "Confidential" under the Protective Order—consistent with the confidentiality designations previously made by Defendants in their depositions Individual Defendants.  Defendants thus will not be permitted in the room during the deposition testimony. As such, Defendants should not travel to Hong Kong for a deposition that they will not attend. If Defendants wish to be present in Hong Kong with their attorney, that costs should be their personal financial burden.

7. The total reimbursable costs should be capped at $20,000, which is fair and sufficient under the circumstances.[11] Any expenses beyond that amount, incurred at Defendants' discretion, should be borne by Defendants themselves.

This request is consistent with equitable principles of proportionality and judicial efficiency, particularly given the commercial nature of the dispute and the sensitive financial burden international litigation places on parties.

---

[11] See attached Exhibit B for the breakdowns of the estimated costs. Plaintiff's proposed $20,000 cap is more than sufficient to cover reasonable travel costs—even if Defendants were to send four individuals. Based on conservative estimates using economy airfare, standard hotel accommodations, daily meals, and modest conference room rental, the total cost for two attendees over four nights and five days is approximately $7,760. Doubling that for four individuals results in a total of $15,520, still well under the proposed cap. The $20,000 limit thus provides ample flexibility while ensuring costs remain reasonable and proportionate.

## V.   CONCLUSION

Plaintiff respectfully requests that the Court DENY Defendants' motion to compel and requests that the Court:

1. Acknowledge that Mr. Wu is a non-party and cannot be compelled to appear in his individual capacity;

2. Confirm that the Court's May 7th Order applies solely to the Rule 30(b)(6) deposition and not to Mr. Wu individually;

3. Accept Plaintiff's designation of Mr. Bing Zhao and Mr. Ruihua Xiao as its 30(b)(6) witnesses for deposition in Hong Kong;

4. Limit Plaintiff's financial obligation to cover travel costs to a reasonable amount not to exceed $20,000, and that only two defense attorneys may attend the deposition in person.

**DATED: June 18, 2025**

**PLAINTIFF,**
By its attorney,

_____/s/ Connie Dai_____
Connie C. Dai (BBO#683330)
Yun Cheng (BBO# 707028)
Lions Law, P.C.
154 Wells Ave
Newton, Massachusetts 02459
(617) 682-7111 Telephone
connie@lionslawgroup.com
yun@lionslawgroup.com


_____/s/ Timothy K. Cutler_____
Timothy K. Cutler (BBO#636124)
CUTLER & WILENSKY LLP
20 Walnut Street, Suite 1
Wellesley, Massachusetts 02481
(617) 232-7500 Telephone
tim@cutlerlegal.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this Wednesday, June 18, 2025.

                                     */s/ Timothy K. Cutler*
                                        Timothy K. Cutler

**EXHIBIT A**



# 九江市第三人民医院 九江市肿瘤医院

## 彩色超声检查报告单

| | | | | | |
|---|---|---|---|---|---|
| 姓　　名： | 吴国庆 | 检查时间： | 2025-04-16 | 超 声 号： | USF12501774 |
| 性　　别： | 男 | 临床科室： | 心血管内科门诊 | 门 诊 号： | 101150535 |
| 年　　龄： | 52岁 | 申请医生： | 周元风 | 住 院 号： | |
| 检查项目： | 心脏 | | | 检查设备： | 超声1室 |

 

**超声所见：**

（一）测值：
　　RV前壁 4mm， RV径 26mm， RA径43 mm×34mm，AO瓣环内径23 mm， AO窦部内径37 mm， AAO内径36 mm， LA前后径 31mm，主肺动脉内径20 mm， IVO内径13 mm， LVDd 49 mm， LVDs 33 mm， EF 60 %， FS 32 %， SV 67 ml， HR 74 bpm， CO 4.97 L/min，二尖瓣前瓣曲线：双峰，与后壁逆向运动， IVSDd 11 mm， LVPWDd 10 mm。
　　血流频谱速度（cm/s）：主动脉瓣口111，二尖瓣E 54，A 69，A>E，肺动脉瓣口75。

（二）描述：
　　各房室大小正常，室壁未见明显节段性运动失常，室间隔厚度正常值上限，左室后壁厚度及活动幅度正常，各瓣膜回声均匀，开闭可，主动脉窦部内径增宽，升主动脉内径稍宽，肺动脉不增宽，心包腔未见明显液性暗区，CDFI：探及主动脉瓣少-中量、三尖瓣少量反流血流信号，主动脉瓣反流束宽3.9mm，主动脉瓣反流速度334cm/s，压差45mmHg。
　　TDI：A > E；左室室间隔、后壁、前壁、下壁、前间隔及侧壁组织运动速度正常。

**超声提示：**

1、主动脉窦部、室间隔厚度正常值上限，升主动脉内径稍宽，注意监测血压
2、主动脉瓣轻-中度反流　　三尖瓣轻度反流
3、左室顺应性减低、收缩功能正常范围

　　　　　　　　　　　　　　　　　　　　　　　　　　检查医师：　　　　　审核医师：

报告时间：　　2025-04-16
全心全意为人民健康服务 联系电话：0792-8227041

## Jiujiang Third People's Hospital / Jiujiang Tumor Hospital

## Color Doppler Ultrasound Report

**Name:** Guoqing Wu; **Date of Examination:** April 16, 2025; **Ultrasound ID:** USF12501774

**Gender:** Male; **Department:** Cardiovascular Outpatient; **Outpatient No.:** 101150535

**Age:** 52; **Referring Physician:** Yuanfeng Zhou; **Inpatient No.:**

**Exam Item:** Heart; **Exam Room:** Ultrasound Room 1

(Images: see the original report in Chinese.)

**Ultrasound Findings:**

**(1) Measurements:**

Right ventricular (RV) anterior wall: 4 mm; RV diameter: 26 mm; Right atrium (RA) diameter: 43 mm × 34 mm; Aortic valve annulus diameter: 23 mm; Aortic sinus diameter: 37 mm; Ascending aorta (AAO) diameter: 36 mm; Left atrium (LA) anteroposterior diameter: 31 mm; Main pulmonary artery diameter: 20 mm; IVO diameter: 13 mm; Left ventricular end-diastolic diameter (LVDd): 49 mm; Left ventricular end-systolic diameter (LVDs): 33 mm; Ejection fraction (EF): 60%; Fractional shortening (FS): 32%; Stroke volume (SV): 67 ml; Heart rate (HR): 74 bpm; Cardiac output (CO): 4.97 L/min; Anterior mitral valve leaflet shows a double-peak motion pattern, moving in opposite direction to the posterior wall; Interventricular septum in diastole (IVSDd): 11 mm; Left ventricular posterior wall in diastole (LVPWDd): 10 mm

Blood Flow Velocities (cm/s): Aortic valve: 111; Mitral valve: E 54, A 69 (A > E); Pulmonary valve: 75

**(2) Description:**

Normal chamber sizes; No obvious segmental wall motion abnormalities; Interventricular septum thickness at the upper limit of normal; Normal left ventricular posterior wall thickness and motion; Uniform echogenicity and normal movement of all valves; Aortic sinus diameter widened; ascending aorta slightly widened; Pulmonary artery not widened; No obvious pericardial effusion observed; Color Doppler Flow Imaging (CDFI); Mild-to-moderate aortic regurgitation; Mild tricuspid regurgitation; Aortic regurgitant jet width: 3.9 mm; Aortic regurgitant velocity: 334 cm/s; Pressure gradient: 45 mmHg.

1

Tissue Doppler Imaging (TDI): A > E; Normal myocardial tissue motion velocities in the interventricular septum, posterior wall, anterior wall, inferior wall, anterior septum, and lateral wall

Ultrasound Impression:

1. Aortic sinus diameter and interventricular septum thickness at upper normal limit; slightly widened ascending aorta — blood pressure monitoring is recommended
2. Mild-to-moderate aortic regurgitation, mild tricuspid regurgitation
3. Decreased left ventricular compliance, normal systolic function

**Examining Physician:** Yunhui Guo (signature);

**Reviewing Physician:** Yunhui Guo (signature)

---

**Report Date:** April 16, 2025
Wholeheartedly serving the people; **Contact Number:** 0792-8227041

2



# 九江市第三人民医院门诊诊断证明书

门诊号码：101150535

姓　　名：吴国庆　　性别：男　　年龄：52岁　科室：心血管内科门诊
身份证号：34082819721231511X　联系电话：15951118888
工作单位：

**疾病诊断：** 1.可疑冠心病观察 2.高血压3级

**建　　议：** 建议长期口服高血压药物，作息时间规律，避免剧烈运动，不适宜长途奔波。



医生：周元凤　　　记录时间：2025-04-18

1、手写、涂改，未盖医院公章无效。
2、就诊当日请到导诊处盖章，过期不盖章。
3、修改后须经医生盖章。

**Jiujiang Third People's Hospital – Outpatient Medical Certificate**

**Outpatient Number:** 101150535

---

**Name:** Guoqing Wu; **Gender:** Male; **Age:** 52; **Department:** Cardiovascular Outpatient Clinic

**ID Number:** 34082819721231511X; **Contact Number:** 15951118888

**Workplace:**

---

**Diagnosis:**

1. Suspected Coronary Heart Disease (under observation)
2. Hypertension, Grade 3

---

**Recommendations:**

Long-term use of antihypertensive medication is advised; Maintain a regular daily routine; Avoid strenuous physical activity; Not suitable for long-distance travel

---

**Stamp:** *Jiujiang Third People's Hospital – Official Disease Certification Seal (1)*
**Physician:** Yuanfeng Zhou (with signature); **Record Date:** April 18, 2025

---

**Notes:**

1. Handwritten alternations, alternations in other forms, or alternations without a stamp of this hospital are not valid
2. Please obtain a stamp at the information desk on the day of the visit; no stamp will be provided afterward
3. Any alternations must be re-stamped by the physician

CERTIFICATE OF TRANSLATION

      I, Siqi Han, am fluent in both English and Chinese, and certify that the translations, from Chinese to English, to the documents "Color Doppler Ultrasound Report" and "Outpatient Medical Certificate" are true and accurate to the best of my ability.

_____

Siqi Han

Signed on ___June 12, 2025_____

**EXHIBIT B**

**EXHIBIT B**

## Estimated Cost Breakdown for Deposition Attendance in Hong Kong

This estimate reflects expected costs for two individuals attending a deposition in Hong Kong over a period of 5 days and 4 nights.

| Item | Unit Cost (USD) | Quantity | Total (USD) | Notes |
| --- | --- | --- | --- | --- |
| Airfare | $3,000 | 2 round-trip tickets | $6,000 | Economy class round-trip for 2 people |
| Hotel | $120 | 4 nights × 2 people | $960 | $120 per night per person |
| Meals | $50 | 5 days × 2 people | $500 | $50 per day per person (3 meals/day) |
| Conference Room Rental | $150 | 2 days | $300 | Shared cost for two-day deposition |
|  |  |  | Total: $7,760 |  |