UNITED STATES District Court
DISTRICT OF MASSACHUSETTS


_____

SUNCO TIMBER (KUNSHAN) CO. LTD.,

                    Plaintiff,        Civil Action
                                      No. 22-CV-10833-MJJ
V.
                                      June 25, 2025
LINDA SUN, ET AL

                    Defendants.
_____



BEFORE THE HONORABLE MYONG J. JOUN

UNITED STATES District Court

JOHN J. MOAKLEY U.S. COURTHOUSE

1 COURTHOUSE WAY

BOSTON, MA   02210






JAMIE K. HALPIN, CRR, RMR, RPR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 7-204
Boston, MA   02210
jkhhalpin@gmail.com

APPEARANCES:

FOR THE PLAINTIFF:

Connie C. Dai
Lion's Law P.C
154 Wells Ave
Suite 1d
Newton, MA 02459
617-682-7101
Email: Connie@lionslawgroup.com

Timothy K. Cutler
Cutler PC
20 Walnut Street
Suite 1
Wellesley, MA 02481
617-232-7500
Fax: 617-232-7560
Email: Tim@cutlerlegal.com

FOR THE DEFENDANTS:

Theodore J. Folkman
Taylor Makson
Rubin & Rudman LLP
53 State Street, 15th Flr.
Boston, MA 02109
617-330-7135
Email: Tfolkman@rubinrudman.com

Michele E. Connolly
Malgorzata A. Mrozek
Peter E. Ball
Fitch Law Partners LLP
84 State Street
11th Floor
Boston, MA 02109
617-747-7809
Email: Mec@fitchlp.com

                          P-R-O-C-E-E-D-I-N-G-S


          THE CLERK:  The United States District Court for the

District of Massachusetts is now in session.  The Honorable

Myong J. Joun presiding and today is June 25, 2025.  We're on

the record in matter of *Sunoco Timber Company Limited v. Sun,

et al., Case 22-CV-10833*.  Will counsel please identify

themselves for the record starting with the plaintiff.

          MS. DAI:  Connie Dai for plaintiff.

          MR. CUTLER:  Timothy Cutler for plaintiff.

          MR. FOLKMAN:  And it's Ted Folkman for the Defendants

Linda Sun and New Sun Limited Partnership and my colleague,

Taylor Makson is with me.

          MS. MAKSON:  Good afternoon.

          MS. CONNOLLY:  Michele Connolly for the defendants

that Attorney Folkman did not just name.  With me is my

colleague, Malgorzata Mrozek.  Also joining us is Peter Ball.

He is travelling so he has his video and microphone off.  He is

not going to be participating today.

          THE COURT:  Try again.  Will somebody say something?

          MR. FOLKMAN:  Can you hear us, your Honor?

          THE COURT:  I can hear you now.  All right, welcome,

everyone.  So we have three motions on for today.  Why don't we

start with the earliest one, that's Docket Number 137.

          MR. FOLKMAN:  That is -- I just want to make sure

we're on the same page.  This is the order for the motion seeking an order for compliance with your earlier order regarding Mr. Wu's deposition, W-U.

Ted Folkman for Linda Sun and New Sun Limited Partnership.  It's a little bit puzzling to us why we should have to be doing this hearing.  We've made it clear for months that we wanted to take Mr. Wu's deposition and that we wanted to take it in Boston.  Initially what we heard was he is going to have trouble getting a visa.  We said, well, have you tried?  Well, no, we haven't.  We don't plan to.  They say his health prevents him from coming, and it's not just his health that makes it difficult for him to come, his health prevents him from coming.  That's Docket Number 135 on page 6.

We present an expert's declaration giving a view on that.  Your Honor makes a decision about it.  The decision is you're entitled to take his deposition in person.  The deposition is going to take place in Hong Kong with the expenses to be paid by the plaintiff, and if that's not okay with the plaintiff, then they can produce Mr. Wu in Boston.

Then we had more than a month of discussions about this and it's a little -- we don't really understand why that should be.  The plaintiff's view was he can't come to Boston, his health prevents it, but instead what's happened is that the plaintiffs have been trying to use ambiguity about whether Mr. Wu wants to come to Boston, doesn't want to come to Boston,

wants to testify at all as some kind of leverage to talk about the costs of the trip to Hong Kong, and frankly, the irony of this is that we don't want to go to Hong gong.  We want him to come to Boston, and if he's saying, well, maybe I will come to Boston, I am going to decide whether I want to come to Boston, then he should come to Boston.  If he can't come to Boston, then he should tell us that so that we can make firm plans to go to Hong Kong without having the negotiation about where it's going to be.  That's the fundamental problem of what's going on here.  The notion that he's making some sort of decision about where he wants to or decides to appear or even whether he wants to appear is not really acceptable, and I am going to come back to the question of, you know, should he appear at all.

There is a new argument in front of you which is Mr. Wu's or rather Sunco China's position is that Mr. Wu is not within your power to compel his appearance and that is simply incorrect.  The other side has said --

THE COURT:  So my understanding was that the plaintiff had designated him as the 30(b)(6) witness.

MR. FOLKMAN:  They had and then they have undesignated him.  Initially, they designated him as the 30(b)(6) witness and the other two gentlemen, Mr. Zhao, Z-H-A-O, and Mr. Xiao, X-I-A-O, and I apologize if I'm saying incorrectly, neither of them is willing to testify.  One of them supposedly was too sick to testify even remotely.  The other one had threatened to

quit if he was made to testify.

Now everything has been turned around.  Now Mr. Wu is no longer the 30(b)(6) designation and says, I shouldn't have to show up at all, and the new 30(b)(6) designees are the two gentlemen who formerly said I am too sick to testify, I am too old to testify, and I really don't want to testify, and if you make me, I am going to quit.

Games are being played here and it's not okay.  We don't care who is designated as the 30(b)(6) witnesses, but we are, just talking about Mr. Wu now, we want to depose him whether he's the 30(b)(6) witness or not, and he is not some stranger to the company.  He is the General Manager.  He's on the board.  He's the top manager.  These are all quotes from them in their interrogatory answers or in the initial disclosures.  He is the former 30(b)(6) designee.  He is the person who signed interrogatory answers.

The thought that they are, as they say, trying to cajole him to testify is ridiculous because he is the owner of Qiyi Investments, Q-I-Y-I Investments, which is the company that is the majority owner of Sunco China.  So the thought that there is someone cajoling him from the company is obviously not correct.  Now, maybe the lawyers are trying to cajole him. Maybe he doesn't understand because he sued someone in Massachusetts that he was going to have to come here, but that's where we are and it shouldn't be our problem to fix.

It's their problem to get their witnesses to show up.

THE COURT:  Well, let me hear from plaintiff's counsel.

MR. FOLKMAN:  Sure.  I am happy to yield the floor but I have some more stuff I'd like to say if you want to come back to me.

MS. DAI:  Good afternoon, your Honor.  Connie Dai for the plaintiff.  As we understand the Court's -- your Honor's May 7 order does not compel the plaintiff to produce Mr. Wu. It's contrary to the defendants' statement.  Mr. Wu is not a 30(b)(6) designee and has never been.  Part is, I do admit, parties had a lot of discussions about the possibility potentially for adding Mr. Wu to be the 30(b)(6) designee but there was no formal designation of him.  Just to the extent that, you know, to Mr. Folkman's argument that we have changed the --

THE COURT:  Ms. Dai, I am just going to interrupt you because that's not my memory of what happened before I ordered his deposition, and in your filings to the court, I went back and looked at it, and Mr. Folkman is accurate in that there were two other individuals and they had -- well, I don't know who signed that pleading but there was a representation that those two individuals were not available.  One could not testify at all because of his health and the other person was going to resign rather than submit to a deposition, and we

talked about Mr. Wu and I ordered his deposition.

MS. DAI:  Right, your Honor.  I mean, if the parties -- I understand what you saying, but the parties can change the 30(b)(6) designee and there have been some misunderstandings between Mr. Wu and us as to whether he is the suitable person for the 30(b)(6), as the 30(b)(6) designee, and we have to come to an understanding that Mr. Zhao and then Mr. Xiao, right now they would be much more suitable to attend to this 30(b)(6) deposition, and if we look at the schedules of the questions, they will be able to answer the questions.

THE COURT:  So Mr. Zhao's health condition, whatever that was a month ago, changed now so that he can testify?

MS. DAI:  No, your Honor.  We are not talking about his flying.  We hope -- we willing to produce them, Mr. Zhao and Mr. Xiao, to go into Hong Kong.  Hong Kong is much more closer, much more shorter distance between their city as to the United States, and like I said, your Honor, I am admitting there has been misunderstanding of, our misunderstanding, Mr. Wu's role in the company and he is not a party to this case and Mr. Wu's role has been limited to government affairs and handling government registrations on behalf of the plaintiff. He had not been, which is actually admitted by Ms. Linda Sun in her depo, he had not been involved in the operation of the shipment, procurement, manufacturing of the cabinets at issue, and he does not have the knowledge in the subject matter, the

core subject matter of the case, and Mr. Zhao is a much more suitable person to testify on that point, and so it is our position that right now we would like to change the 30(b)(6) designees to Mr. Zhao and Mr. Xiao.

Hopefully, if your Honor is ordering these two individuals to be deposed in Hong Kong, we would because of the financial distress, you know, caused by the defendants of owing $6.7 million to plaintiff, we would love -- I mean, we can pay but a reasonable costs as the Court order. I don't want to dive into the argument as to reasonable costs. If your Honor thinks it is proper at this time --

THE COURT: Okay. On this motion, the motion is allowed. I don't care who the designee is but this is not going to go back and forth. You can't designate somebody and then un-designate somebody for somebody new. The stories keep changing. So I don't care who the person is, but that person or persons they need to immediately apply for a visa to the United States if they're going to do it here or apply for the exit-entry permit to Hong Kong. I want a status report in seven days detailing exactly what steps have been taken towards securing either a visa or a permit. As soon as you learn where and when the deposition will be taking place, I want counsel to meet, agree on a date, file another status report; and going forward on this case, I am going to require the parties to file a status report, even if nothing happens, every two weeks.

And I am going to reaffirm what I said last time. Plaintiff has a choice. You can produce the witness here in Boston or bear the cost of the defendants going to Hong Kong.

With regard to the number of attorneys, I am going to allow three attorneys; one for Linda Sun and two for the remaining defendants.

The plaintiff is going to reimburse up to $35,000 in reasonable expenses for airfare and hotel.

And reasonable travel time for the attorneys are to be compensated at 50 percent of their standard hourly rate, no more than five hours each way per attorney.

They asked for advance payment. I think it makes sense. I want the plaintiff to place $35,000 in trust with its counsel. Defense counsel will present the receipts to plaintiff's counsel. Plaintiff's counsel will then disperse funds within seven days of receiving those receipts. If there is any disputes regarding the disbursement, file motions.

MR. FOLKMAN: Your Honor, if I may? The only point I want to make sure we're clear on, they can designate whoever they want for 30(b)(6)'s. We want to depose Mr. Wu regardless of whether he's their designee or not their designee. He is an officer of the company. We have made that point in the proposed reply brief that we have filed, and I take it that what you just said is not inconsistent with what I just said but I want to make sure that whoever they designate is up to

them but we want to take Mr. Wu's deposition and we're entitled to.

THE COURT:  That's fine, but as to Mr. Wu, if he's not the 30(b)(6) designated witness, then this cost allegation thing does not apply to Mr. Wu.  You're going to have to pay your own way to Hong Kong for him.

MS. DAI:  Your Honor, if I may?  I'm sorry.  Go ahead, Ted.

MR. FOLKMAN:  Sorry, Connie.  I was just going to say I hear what you're saying, your Honor.  I assume if we are going to Hong Kong, we're only going to Hong Kong once and so I assume that that means --

THE COURT:  That means all of you need to meet and confer and agree on a plan.  If there is any disagreements, file a motion.

MR. FOLKMAN:  Okay.

MS. DAI:  Your Honor, if I may?  To Mr. Folkman's point here, Mr. Wu is not a party to this case.  So they issued a 30(b)(6) -- 30(b)(1) depo notice --

THE COURT:  Right.  I think she's frozen.

MR. FOLKMAN:  Connie?

MS. DAI:  -- at that location within 100 miles of deponent's residence.  We just -- I mean, this is the point I want to make.

THE COURT:  All right, meet and confer.  If you're not

able to come to an agreement, file a motion.  Going forward, again, every two weeks I want a status report.  Every motion that's filed, I am going to award reasonable costs to the other side that wins.

Now, in terms of David Sun and his wife attending as parties to the depositions, it's their right but it's at their own expense.

The plaintiff may not preemptively bar their presence through some highly confidential designation or some other basis.  They're entitled to go and they can attend as long as they pay their own way.

So the next motion is about David Sun's deposition.

MS. CONNOLLY:  Your Honor, may I just say one thing about the 30(b)(6) deposition?  Plaintiffs sort of slipped in their opposition that they will make these witnesses prepared to testify as to 30(b)(6) topics they didn't object to, but we just want to make sure that we're clear that they're going to have the witnesses prepared to testify as to every topic unless they get a protective order saying they don't have to on any particular topic.

THE COURT:  They get the notice in advance of exactly what topics they're going to be examined on.  There are procedures, and if they're not prepared and everybody is wasting their time, then I will entertain motions for sanctions.

MS. CONNOLLY:  Thank you, your Honor.

THE COURT:  All right.  David Sun's deposition.

MR. CUTLER:  Your Honor, Timothy Cutler on behalf of the plaintiff.  I will handle that motion if that's okay.

THE COURT:  Sure.

MR. CUTLER:  We noticed David Sun's deposition.  He's a main party during this litigation.  We brought in the other defendants.  All of a sudden, we heard about this loan, which putting aside the difficulty identifying what the dickens it is, to the production of all documents supporting this 2011 purported loan and nothing was produced.  We took David Sun's deposition and I asked David Sun what documents he reviewed and he said, oh, I went back and reviewed bank records and other documents, and as so to whether they contained the purported loan, instead of stopping the deposition, I really wanted to keep it going, because as you can tell, we also had incredible difficulty getting depositions and we had to suspend at the end because we didn't have those documents.

THE COURT:  So you're asking for two hours.  The defendants say that's fine.  You can take it for two hours.  So what's the disagreement?

MR. CUTLER:  Well, they told me first they refused to give me the two hours.  Now, after I filed the motion, they forced me to file the motion, they said, sure, we will give you the two hours but we want to limit it to the documents and I am

saying, no, I have two hours left.  We're just going to get in more fights as to what concerns the documents or not.  I just want two hours to finish up this deposition.

THE COURT:  So the motion is granted and David Sun will be deposed for an additional two hours, maximum of two hours.        MS. CONNOLLY:  And your Honor, will that be -- so first of all, I will address Attorney Cutler saying that we never agreed to the two hours.  We were never asked for the two hours.  That was never presented to us.  But the reason they base their request for additional time is these newly produced documents.  It seems to me only logical that's the reason they want to continue his deposition is they should get to ask him questions about these documents but not go on a fishing expedition.

THE COURT:  Understood.  Obviously, if it's a fishing expedition, I am sure you will object, but two hours.

MS. CONNOLLY:  Understood.

THE COURT:  I am not limiting it to the documents.

All right, last one, the ESI.

MS. CONNOLLY:  Yes, your Honor.  I think this motion is pretty straightforward.  Your Honor ordered the plaintiff to produce the electronically stored information.  We finally got an update last Friday but it's not, you know, without a hard and fast timeline.  We were told they expect to get it to us early this week.  We don't have this now on Wednesday afternoon

and we don't have the documents yet.  So that's where things stand.

MR. CUTLER:  May I, Judge?

THE COURT:  Sure.  No opposition has been filed, right?

MR. CUTLER:  That's not correct.  The opposition was due today and it was filed right before this hearing.

THE COURT:  Okay.

MR. CUTLER:  We have been in complete communication with counsel.  We put all of our communications with counsel on this as well as our communications with our vendor handling it.  The minute, the day or day after this Court entered its order, we had the vendor online doing -- putting this --converting these e-mails so they comply with your order.

The vendor did it.  They returned the documents to us.  Oh, it's going great.  We forwarded them over and working with Connie's office, Connie's office is considered Chinese, to go through them to make sure that -- these e-mails had already been produced.  We redacted the same e-mails and they couldn't open the e-mails to see them.  Went back to the vendor.  The vendor said, oh, wow, there has been a problem because there are Chinese symbols and stuff and the way they were given to us.  There is some -- I can't even explain it -- electronic glitch.  The vendor went back and forth, back and forth.  Said we can fix it, we can fix it.  A week later he said he

couldn't.  You're going to have to reproduce them.  We went and reproduced them, and now we have them and we will have them on Monday, if not earlier.  The vendor has gone through them and is able to have them for purposes of complying with the court order.

We have been telling counsel this and we haven't been giving a vague timeline, and we said, look, this is the problem we have been having with the vendor and we expect to have it next week.  Every time they write us we get back to them and do it, and so we have very good faith and been trying to get this done and we are successfully getting it done.  We said we will have it by Monday, we expect to have it earlier, but God forbid anything happens at this point, we don't want to give ourselves too short of a timeline, but my understanding right now is it's all been done.  It's in Connie's office.  They have reviewed them and identified the documents and we hope to have them out in the next couple of days.  We just wanted to set the date for the 30th just in case something bizarre happens, and if counsel is -- they know that we were doing this.  We told them at the last depo of Linda Sun.  We gave another update.

THE COURT:  All right.  Mr. Cutler, I get it.

MR. CUTLER:  Sorry for babbling on.

THE COURT:  That's fine.  So it sounds like this motion is going to be moot, but if it's going to be produced next week, hopefully that will resolve the issue but if it's

not, in that biweekly status report, I would want an update on all of the issues that we talked about today.

MR. CUTLER:  Yes, sir.

THE COURT:  The fact discovery deadline is supposed to be over July 11.  Clearly, that's not going to work.  How much time do you need to complete all of this discovery that's outstanding?

MR. FOLKMAN:  Your Honor, I can address the Hong Kong issue.  We will, collectively, defendants' counsel, will speak with plaintiff's counsel and work on dates.  I think that there is a couple logistical things that are going to have to happen.  One, as you know, these Chinese witnesses are going to need to get permission to go to China.  We will, I think, also need to have you sign a commission and obtain permission from the Hong Kong Central Authority under the Evidence Convention.  So I will,  we will, get those papers in process, but I think we need to have dates first so that we can do the rest of it so we will get on that, and I suggest that we should no later than two weeks from today, when we file the status update, we should let you know that we have dates, I hope, and perhaps have papers ready for you to sign.

THE COURT:  Great.  Anything else?

MR. CUTLER:  Just on the discovery, I believe we're done with discovery outside of finishing this last deposition of David Sun, your Honor, and hopefully, we don't see anything

new that brings us back in front of you.

THE COURT:  All right.  If there is nothing else, we will take recess.  I will summarize what we talked about and make an entry into the docket.

**A-D-J-O-U-R-N-E-D**

- - - - - - - - - - - - -

CERTIFICATION

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter to the best of my skill and ability.


/s/Jamie K. Halpin_____          September 26, 2025_____
Jamie K. Halpin, CRR, RMR, RPR          Date
Official Court Reporter