UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


_____

SUNCO TIMBER (KUNSHAN) CO. LTD.,

                    Plaintiff,        Civil Action
                                      No. 22-CV-10833-MJJ
V.
                                      September 25, 2025
LINDA SUN, ET AL

                    Defendants.
_____



BEFORE THE HONORABLE MYONG J. JOUN

UNITED STATES DISTRICT COURT

JOHN J. MOAKLEY U.S. COURTHOUSE

1 COURTHOUSE WAY

BOSTON, MA   02210




JAMIE K. HALPIN, CRR, RMR, RPR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way, Room 7-204
Boston, MA   02210
jkhhalpin@gmail.com

APPEARANCES:


FOR THE PLAINTIFF:

Yun Cheng
Lion's Law P.C
154 Wells Ave
Suite 1d
Newton, MA 02459
617-682-7101
Email: Yun@lionslawgroup.com



FOR THE DEFENDANTS:

Malgorzata A. Mrozek
Fitch Law Partners LLP
84 State Street
11th Floor
Boston, MA 02109
617-542-5542
Email: Mam@fitchlp.com

Taylor Makson
Rubin and Rudman LLP
53 State Street
Ste 15th Floor
Boston, MA 02109
617-330-7173
Email: Tmakson@rubinrudman.com

**Z-O-O-M P-R-O-C-E-E-D-I-N-G-S**

THE CLERK:  The United States District Court for the District of Massachusetts is now in session.  The Honorable Myong J. Joun presiding.  Today is September 25, 2025.  We're on the record in the matter of *Sunco Timber v. Sun, et al., Case Number is 22-CV-10833*.  Will counsel please identify themselves for the record.

MR. CHENG:  Good afternoon, your Honor.  Yun Cheng on behalf of Plaintiff Sunco Timber.

THE COURT:  Afternoon.

MS. MAKSON:  Good afternoon, your Honor.  Taylor Makson on behalf of Linda Sun and New Sun, PC.

THE COURT:  Good afternoon.

MS. MROZEK:  Good afternoon, your Honor.  Malgorzata Mrozek on behalf of David Sun, Infinity Wood Products, LLC, Sunco, Inc., Eastman Street Distributors, LLC, and Eastman Street Woodworks, Inc. and Infinity Realty Company, LLC.

THE COURT:  Good afternoon to you and will you be arguing the defendants' motion?

MS. MROZEK:  Yes, your Honor.

THE COURT:  All right.  So I will hear from you.

MS. MROZEK:  Thank you, your Honor.

To start off, to be clear, defendants are not seeking to preclude plaintiff from having a corporate representative

attend the depositions going forward in Bangkok starting on Monday. In fact, plaintiff has two corporate designees, Mr. Bing Zhao and Mr. Ruihua Xiao, and they're welcome to attend one another's depositions as well as Mr. Wu's deposition at the end of the week.

Defendants are seeking, however, to preclude the attendance of Mr. Wu at the depositions of Mr. Zhao and Mr. Xiao. Plaintiff has represented to this court multiple times in pleadings and hearings that Mr. Wu is not a party, officer, director, shareholder or managing agent of plaintiff; thus, he has no right to attend these depositions.

Plaintiff has designated two corporate representatives, Mr. Zhao and Mr. Xiao. They may attend the depositions next week.

The only purpose defendants conceive for plaintiff to have Mr. Wu attend the depositions of Mr. Zhao and Xiao is to impact the testimonies of those to deponents. Plaintiff has stated in his opposition to defendants' motion to compel, Docket Number 27 -- excuse me --127, that Bing Zhao stated he would resign rather than participate in a deposition. In that same brief, plaintiff stated that Mr. Ruihua Xiao has significant health issues preventing him from testifying at all. Also, Mr. Ruihua Xiao is the father-in-law of Mr. Wu. Thus, Mr. Wu's presence may impact the testimony of those two witnesses.

The other purpose for having Mr. Wu attend the deposition may be to conform his own testimony to those of Mr. Zhao and Mr. Xiao as Mr. Wu's deposition is being taken later in the week.  Plaintiff in other pleadings has stated that Mr. Wu's involvement was limited to government relations and that he had no direct involvement in ordering, manufacturing or shipping of cabinets.  Thus, he may not have any relevant information.  That comes from Docket 147.

In that same brief, plaintiff stated that Mr. Zhao is the Vice President of plaintiff and has knowledge on orders, shipment and building and general affairs.  They also stated Mr. Xiao is the director of plaintiff and registered representative.  Thus, that is the reason that those two witnesses are the corporate designees and not Mr. Wu as he has no knowledge as to those topics.  Thus, his presence at the deposition of Mr. Wu and -- excuse me, Mr. Zhao and Xiao may be to learn information in order to conform his own testimony. Both of these purposes frustrate the truth seeking process of depositions and should not be consonance.  Thus, Mr. Wu should be precluded from attending the depositions with Mr. Zhao and Mr. Xiao as such good cause exists for precluding Mr. Wu's attendance.

Plaintiff has demonstrated a willingness to bend facts to -- when it believes that it has a strategic advantage and defendants are concerned plaintiff will do so again with these

depositions.

Permitting Mr. Wu's attendance may impact his testimony and the testimony of Mr. Zhao and Mr. Xiao.  As such, defendants request that his presence be precluded.

I can discuss more the timing of issues and communications that have been going on if that would be of assistance but to also point out that no courts -- courts have precluded the attendance of corporate representatives when the representatives have been changing over time.  In both the *Maryland Physician's Edge* case, the Court precluded designees who were attending depositions where they had been changed from one to the other and even in the *Shell Oil* case referenced in plaintiff's opposition to our motion filed earlier today, the Court precluded the attendance of a corporate representative where the corporation was changing the deposition -- the corporate representative from deposition to deposition as it frustrated the purpose of the depositions and gives the party an unfair advantage.  That is a --

THE COURT:  Let me ask you a question.  Given all of these representations that Mr. Wu is not a director, he's not an officer, he's not a shareholder, he's not a managing agent, he's not -- he was never involved in the production or the operations, and it sounds like, and correct me if I'm wrong, that the plaintiff had withdrawn the prior designation as a 30(b)(6) witness, right?

MS. MROZEK:  That's correct, yes.

THE COURT:  So why is he being deposed?

MS. MROZEK:  We still believe that he has relevant information and actually knows a significant amount about issues about this case.  Those are the representations that plaintiff has made but we would like to probe those representations and Mr. Wu's knowledge in his deposition. While plaintiff says that Mr. Wu may know knowing, defendants believe that is not the case and would like the opportunity to depose him.

THE COURT:  All right.  Mr. Cheng or is Ms. Makson going to argue?

MS. MAKSON:  No.  I would just echo Attorney Mrozek's argument and I would just emphasize again that this seems to be a point of convenience as to what Mr. Wu knows.  It's convenient at certain times for the plaintiff to say he doesn't have much information and then it's convenient in other times that he has so much information that he must be the corporate representative.

THE COURT:  So given the sort of conflicting representations about what Mr. Wu may or may not know but given their most recent position that he really has nothing to offer, why don't I just preclude him from -- preclude plaintiff from -- I'm sorry -- yeah, the plaintiff from calling him as a witness at trial?

MS. MAKSON: Your Honor, we have actually suggested that as a solution to these issues in the past, that we had proposed to plaintiff's counsel that if they'd like to stipulate that there will absolutely not be testimony or an affidavit presented by Mr. Wu, that we could put aside this whole deposition issue. They have been unwilling to agree to that.

THE COURT: Mr. Cheng.

MR. CHENG: Yes, your Honor. Thank you. I really appreciate your time and attention on this. So, actually, we are the ones who requested this hearing even though they filed this motion. We requested this hearing because we are frustrated. It feels like defendants are using this court as a clearinghouse for every disagreement because they seem to believe that if they raise the issue and they will get their way every time, and, frankly, they have done a remarkable job painting us in a negative light.

THE COURT: Mr. Cheng, I don't want to go down that road just yet. Are you disputing the facts here? I mean, it is true that initially plaintiff designated Mr. Wu as a 30(b)(6), did say that the other two gentlemen, Mr. Xiao, X-I-A-O, and Mr. Zhao, Z-H-A-O, would not cooperate and then it flip-flopped, right?

MR. CHENG: Correct because if you step back and look at the bigger picture, actually, the real reason behind it is

straight and simple is because Mr. Wu cannot come to the U.S. and it's because of both his medical condition and his genuine fear of coming to the U.S. especially considering the current climate, you know, political climate and immigration policies and even the gun shootings that happened for this couple of years.

THE COURT:  Mr. Cheng, I seem to have a memory, it's not in any of the papers that were recently filed, but I seem to have a memory of maybe over the winter or in the spring Mr. Wu had supplied some medical documentation.  We didn't really get to the merits of that because I didn't want to at the time. I just accepted at face value that he had some health conditions and that he was not able to come to the United States for a deposition even though he had filed the action here and so I gave him a choice.  I said, you know, he could either come here or he could do it in Hong Kong.  My memory is that at some point he had offered to come to the U.S.

MR. CHENG:  No.

THE COURT:  Okay.

MR. CHENG:  That's not true, your Honor.  It's Mr. Zhao and Mr. Xiao.  So what happened was that you're absolutely right that we initially offered Mr. Wu to be 30(b)(6) deponent and then we never objected to producing him for depositions but all we have been saying is that he should be deposed remotely, and, you know, because of the reason I

just mentioned, and I mean, the Court ruled that Mr. Wu has to be testified in person at a hearing either in Hong Kong or in Boston and even had been prepared to pay expenses and that's a huge burden to a company that has already suffered significant financial harm, over $6 million from the defendants' schemes. So, you know, for the practical reasons, we re-designated Mr. Zhao and Mr. Xiao as new 30(b)(6) deponents which is completely comprised with the civil procedure rules and we offer them to come to the U.S. and the opposing counsel were actually thrilled when they first heard that oh, Mr. Zhao and Mr. Xiao actually will come over to the U.S. so nobody has to go to Hong Kong to do depositions.  So that's why we have been waiting for the visa applications and eventually the visa applications failed and they came back to accuse us for delaying the whole process and the requests for status conference and push this court to order the --

THE COURT:  So I understand that the visa and all of that, that's beyond anyone's control, things happen and we have to adjust.  What I am trying to figure out is, with regard to Mr. Wu, is it still your position that he doesn't have any personal knowledge with regard to any issues in this case, that he's not a shareholder, he not a director?  Are you still maintaining that?

MR. CHENG:  It's still our position.  It's always been our position that he is not a shareholder.  He's not an

officer.  He's not the director of Sunco China, but he is the owner of the company named QiYi who is a major shareholder of Sunco China and he has some role in Sunco --

THE COURT:  What is his current role?  I am trying to figure out how is he a corporate representative if he's not none of these things?  What is his current role?

MR. CHENG:  I don't think he has an official role like to be named right now in the Sunco China.  I don't know if we have mentioned this to you but Sunco China only has a couple people left and business barely survives right now and have a minimal income and you know --

THE COURT:  He's not currently employed by plaintiff?

MR. CHENG:  Not employed, no.  Not employed, but right, as I said, his relationship would be that he's the owner of QiYi who is a major shareholder of Sunco China so Sunco China has the right to appoint him of the corporate representative.

And also, your Honor, I don't see the real harm and the extraordinary circumstances which is required by the Court in order to issue this kind of protective order.  So, essentially, they're asking the Court to exclude the corporate representative and to switch it to another one from observing a 30(b)(6) deposition and this is something the court has repeatedly said is extraordinary relief, and to get it, they have to show specific harm, not vague speculations or fear of

what might happen and they haven't done that.  Their arguments boil down to that we think Mr. Wu might tailor his testimony but the courts have held that this kind of generic concern and conclusive statement is not enough.

In fact, the one case I cited is a Puerto Rico case. It is *Rodriguez v. American Airlines*, which is quoting our own circuit, made it clear that unless you show real harm, you don't get to exclude a party from observing their own deposition.  That's a due process.  So we're not asking for special treatment.  We're asking for fairness, your Honor, and it's consistent.

And also I need to point out, talking about fairness, I want to point out that when I was doing the deposition for one of the witnesses, Catherine Li who is the employee of Infinity and Sunco, Inc., her employer, David Sun, was sitting there in the same room during the whole time and it was definitely intimidating to her and we had no problem and we made no objection on that and we have been accommodating on all of this kind of minor issues so yeah.

THE COURT:  So let me turn to your sisters.  So is that your understanding about Mr. Wu, that he owns this other company who is a major shareholder in Sunco China?

MS. MAKSON:  Yes.

MS. MROZEK:  Yes, your Honor.

THE COURT:  So why wouldn't he be able to attend?

MS. MAKSON:  Your Honor, it's more that this is a situation where they have two corporate representatives who will be testifying and who will be present and can be present for each other's.  This mixed bag of communication is very confusing and poses a lot of concern as to what impact he will have on the two witnesses that will be present.

THE COURT:  So here is the part that I am not -- so I didn't understand why Mr. Wu would even have standing as a corporate representative, but given what I have just learned, it's up to the party to send whoever the representative is, and as the opposing side, I am not sure that you have sort of the unilateral authority to say, well, you've got one so we're going to exclude this other representative unless you have some specific information that leads you to believe that there is going to be some collusion between the witnesses, that somehow Mr. Wu's testimony is going to change.

Now, I understand this history over discovery and not being able to agree on the timing and the location of these depositions and I get that and that's frustrating and I have been dealing with it too, but what does that have to do with whether or not Mr. Wu's presence is somehow going to affect the testimony of the other two gentlemen?

MS. MROZEK:  Well, your Honor, if I may, I even point to representations made by plaintiffs in their own pleadings where they said that Mr. Bing Zhao was threatening to quit over

having to be deposed, and you know, this contrast in the *Rodriguez* case which my brother counsel referenced, in that case the court found that the representatives who were appointed by the corporation were no longer in a supervisory role against the witness who would be testifying.  As Mr. Cheng just testified, he is a majority owner of Sunco so Mr. Wu does still have supervisory authority over Mr. Bing Zhao and, as mentioned, he is the father-in-law of Ruihua Xiao and so there are particularized facts here that show there could be influence.

THE COURT:  So I too am troubled by the fact that Mr. Wu was initially designated as a 30(b)(6) and then substituted with these two other gentlemen.  I also am troubled by the fact that Mr. --  one of these gentlemen had said, look, I would rather quit than submit to a deposition.  However, where in that statement do I get to find that he was somehow pressured or threatened by Mr. Wu?  All I got from it was that he really didn't want to be bothered by it and I am not going to sit for a deposition so I'd rather quit.  Where does it show -- I mean, do you have something else to show that he's been somehow pressured by the plaintiff or somebody else, whether it's Mr. Wu or someone else in the organization?

MS. MROZEK:  No, I have nothing specific, your Honor. I mean, he is now willing to testify, it appears, so something has changed.

THE COURT:  I agree with that and I think I've mentioned this before that I don't appreciate sort of the flip-flopping by the plaintiff here, and I think I have said that it seemed fishy and there is a bit of gamesmanship and I am not blaming counsel here.  I think it's your client, but it's not fair to the defendants and I think I have made that known, but on this issue, unless there is something more specific as to whether or not Mr. Wu being there for these depositions will have any impact on their testimony or somehow that they're going to collude to concoct a story that's not true, just off of what you have given me, I don't think I can grant your motion.

But I want to get back to Mr. Cheng.  If Mr. Wu is not the right person to be deposed is what I've read, if he had no involvement with the professional operations and he's got no firsthand knowledge, I am just trying to understand what his role is.

MR. CHENG:  Well, he has some firsthand knowledge on certain issues.

THE COURT:  Let me just get to the point.  Do you plan on calling him as a witness at trial?

MR. CHENG:  Well, it's not our plan for now but we reserve the right.  That's all I want to say.  That's the reason that we denied to stipulate with the opposing counsels' proposal earlier, maybe a month earlier, is because we reserve

our right but that's not our plan for now.

THE COURT:  All right, and if it comes to that, he's willing to travel here to testify at trial?

MR. CHENG:  I'm sorry, your Honor.  Can you say it again?

THE COURT:  And if it comes to a trial, he's willing to come to the United States to testify?

MR. CHENG:  Is he willing to?

THE COURT:  I assume he's going to come here to testify, right, if you call him as a witness?

MR. CHENG:  You mean Mr. Wu, correct?

THE COURT:  Yeah.

MR. CHENG:  He doesn't want to.  All I can say for now is that he doesn't want to.  He doesn't want to but we still reserve the right.  Maybe one day we can convince him, maybe, if we found him useful.

THE COURT:  All right.  I am going to punt it down the road.  We will deal with this issue as we get closer to trial, but for now the motion is denied.  Mr. Wu can be present for those depositions.  I hope there won't be any more issues, that these three depositions will be completed by the October 6 deadline.

MR. CHENG:  I hope so now.

THE COURT:  Thank you.

**A-D-J-O-U-R-N-E-D**

- - - - - - - - - - - -

CERTIFICATION

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter to the best of my skill and ability.

/s/Jamie K. Halpin_____    September 30, 2025_____
Jamie K. Halpin, CRR, RMR, RPR        Date
Official Court Reporter