# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| Sunco Timber (Kunshan) Co., Ltd., | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | C.A. No. 1:22-cv-10833-MJJ |
| v. | ) | |
|  | ) | |
| Linda Sun, individually, David Sun, individually Shillock Yuan-Sun, individually, and Infinity Wood Products, LLC., | ) ) ) | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS** |
|  | ) | |
| Defendants, | ) | ***Leave to file granted October 30, 2025 (Doc. No. 200)*** |
| Sunco, Inc., Eastman St. Distributors LLC, Eastman St. Woodworks, Inc., Infinity Realty Company LLC, and New Sun Limited Partnership | ) ) ) ) | |
|  | ) | |
| Reach and Apply Defendants, and Fraudulent Conveyance Defendants | ) ) | |
|  | ) | |
| Linda Sun | ) | |
|  | ) | |
| Counterclaim Plaintiff, | ) | |
|  | ) | |
| v. | ) | |
|  | ) | |
| Sunco Timber (Kunshan) Co., Ltd. | ) | |
|  | ) | |
| Counterclaim Defendant. | ) | |
|  | ) | |
| Sunco, Inc. | ) | |
|  | ) | |
| Counterclaim Plaintiff, | ) | |
|  | ) | |
| v. | ) | |
|  | ) | |
| Sunco Timber (Kunshan) Co., Ltd. | ) | |
|  | ) | |
| Counterclaim Defendant. | ) | |
|  | ) | |

## INTRODUCTION

Throughout the course of this litigation, Plaintiff Sunco Timber (Kunshan) Co., Ltd. ("Sunco China") has refused to abide by its discovery obligations.  It took nearly a year and considerable motion practice for Defendants to procure Sunco China's witnesses for deposition, and when Defendants were finally able to take those depositions, Defendants were faced with witnesses who were unprepared, evasive, and obstructionist.  More than three years after this litigation began, Defendants still have not received most of the discovery to which they are entitled.  Plaintiff has been given multiple opportunities to fulfill its obligations and has consistently evaded those obligations, often on the back of misrepresentations to the Court that are now, after depositions, irrefutable.  Defendants have been deprived of the opportunity to collect the discovery to which they are entitled and which is necessary to defend against the claims brought against them and to prosecute their counterclaims.  Plaintiff has been warned by the Court, repeatedly, that failure to abide by its obligations could result in sanctions, yet Plaintiff has willfully failed to meet those obligations.  Accordingly, sanctions are warranted to prevent undue prejudice to Defendants as well as to deter future obstructive conduct.

## FACTUAL BACKGROUND

This case was filed in June of 2022, more than three years ago.  As the Court is aware, the process of getting to the recent depositions of Plaintiff's witnesses was long and arduous. Defendants do not repeat that full history here, but instead refer the Court to docket entries 128, 138, and 145, as well as the timeline attached hereto as Appendix A.  When in the spring of 2025, Plaintiff had yet to make a single one of its witnesses available for deposition, Defendants filed a motion to compel the deposition of Guoqing Wu.  At the motion hearing, the Court made clear to the parties that it would consider sanctions if the Plaintiff did not meet its obligations pursuant to

Fed. R. Civ. P. 30(b)(6): Plaintiff "get[s] the notice in advance of exactly what topics [the witnesses] are going to be examined on.  There are procedures, and if they're not prepared and everybody is wasting their time, then I will entertain motions for sanctions."  *See* <u>Ex.[1] 1</u> at 12:21-25.  In its written order issued the same day, the Court emphasized that "[g]oing forward, the Court will entertain motions for reasonable expenses under Rule 37 or some other sanctions as deemed necessary."  Doc. No. 151.  At the September 10, 2025 conference that Defendants requested after Plaintiff still had not made its witnesses available, the Court informed Plaintiff that if its witnesses were not made available the Court "will entertain whatever motions from the defendants…we have all been patient enough."  <u>Ex. 2</u> at 14:2-14.  Unfortunately, Plaintiff appears not to have heeded those warnings, and it has failed to make available adequately prepared witnesses for all but one of the 23 noticed topics.  In fact, for most of the topics, Plaintiff failed to produce a witness to answer a single question on the given topic.

Plaintiff's conduct and testimony at the depositions showed Plaintiff's discovery failures in four main categories: (1) lack of preparation of Plaintiff's Rule 30(b)(6) witnesses; (2) evasiveness; (3) improper invocation of the attorney-client privilege to block the defendants' access to facts; and (4) misrepresentations – to Defendants and to the Court.

## I.    LACK OF PREPARATION

Neither Mr. Zhao nor Mr. Xiao was adequately prepared to testify as to the topics identified in the Rule 30(b)(6) deposition notice.  <u>Ex. 4</u>.  Mr. Xiao was designated to testify as to one topic – the management of Sunco China.  Mr. Zhao was designated for the remaining topics.

---

[1] References herein to "Exhibit" are to the exhibits to the Declaration of Michele E. Connolly, filed concurrently herewith.

### A.  **Bing Zhao**

Mr. Zhao made clear that he prepared to testify concerning one thing and one thing only: the receivable Sunco China claims it is owed.  He was unprepared to testify concerning Defendants' defenses to that claim;[2] Plaintiff's veil-piercing, reach and apply, and fraudulent transfer claims; and the separate counterclaims of Linda Sun and of Sunco, Inc. (hereinafter "Sunco US").  Mr. Zhao seemed to believe that his job was to appear at deposition and tell Sunco China's story with respect to what he contended was an outstanding receivable owed to Sunco China and otherwise to evade or disclaim knowledge of any other topic.

Mr. Zhao explained that "I tried to gain knowledge about the receivables and the relevant purchase orders." Ex. 5 at 43:1-17.  When asked about other topics, he answered "Excuse me.  I'm here to testify today on the accounts receivables of Sunco China."  Ex. 6 at 189:16-23.  When pressed about Sunco China's accounts payable – which relates to Defendant Sunco US's counterclaim that it is owed repayment of a loan that Sunco US made to Sunco China – Mr. Zhao responded "I think your question is not directly related to this case.  Today, I'm here to testify on that [sic] payments for the goods owed at the amount of 6.7 US – 6.7 million US dollars."  Ex. 6 at 189:24-190:9.  When asked "So you're not prepared today to testify about the manner in which Sunco China tracked its accounts payable, correct?" Mr. Zhao responded, "[t]here's no way I can answer that.  I can only say that today I'm here to testify, and I'm prepared for that to testify on Sunco China's accounts receivables."  Ex. 6 at 190:10-18.

---

[2]  As has been discussed in previous pleadings, Defendants contend that no money is owed to Sunco China for the kitchen cabinets that Sunco China supplied because those cabinets were to be payment for shares of stock in Sunco China that were acquired from Sunco US by QiYi, the company owned by Mr. Wu.

When asked about the transfer of shares of Sunco China from Sunco US to QiYi Investments ("QiYi") – an issue directly related to Defendants' defenses in this case[3] – Mr. Zhao responded "…this is a transfer of shares among the shareholders, and that is not relevant to this case.  This case is about the outstanding account receivables."  Ex. 6 at 221:14-17.  When asked about a signature on an agreement, Mr. Zhao again testified "What does this signature has [sic] anything to do with this case?  Because this case is about the account receivables, and this is not related to that…I think we should focus on the key points of this agreement, and we can have an exchange on that."  Ex. 6 at 226:1-18.

When asked what he did to prepare for his deposition, Mr. Zhao testified that he spoke with counsel and reviewed documents relating to "the receivables and the relevant purchase orders," and could not identify anyone else with whom he spoke with or any other documents he reviewed.  Ex. 5 at 43:10-53:9.  Mr. Zhao testified that he believed his only responsibility was to testify as to what he personally knew, and he seemed unaware of his obligation to learn what the company knew about the topics for which he was appearing as the company's designee.  *See* Ex. 5 at 59:5-63:24.

Of the 22 topics for which Mr. Zhao was designated by the company, Mr. Zhao appeared to have prepared to testify to only two:  Topic No. 1 (the allegations of the Amended Complaint)[4] and Topic No. 3 (cabinet orders from, and shipments to, Infinity Wood Products, LLC ("Infinity") from Sunco China in 2018 and 2019).

As to Sunco US's Counterclaim (Topic Nos. 2 and 19), Mr. Zhao testified that "I do not need to investigate this payable.  I don't think we need to pay it."  Ex. 6 at 186:20-187:3.  He made clear that he did not believe the payment was "relevant to us."  Ex. 6 at 187:4-13.; *see generally* Ex. 6 at 181-189.

---

[3] *See* footnote 1 supra

[4] As set forth herein, Mr. Zhao's preparation for even this topic was inadequate.

With respect to Sunco China's knowledge of the relationship among the Defendants (Topic No. 6), Mr. Zhao either refused to answer – insisting repeatedly that "you can communicate with our counsel" – or professed lack of understanding.  Ex. 6 at 270:8-277:17; Ex. 5 at 82:1-84:20. When asked about Topic No. 5, the business relations between Sunco China and Infinity, Mr. Zhao said he could not testify about things prior to 2018 because he was not with the company at that time.  Ex. 5 at 91:2-24.  When asked about Topic No. 4, the business relations between Sunco China and Sunco US, Mr. Zhao asserted that he only needed "to know the payment for the goods between Sunco China and Infinity."  Ex. 5 at 118:17-22.  When asked questions about the affiliated entities – covered by Topic No. 7 – Mr. Zhao insisted that we speak to counsel, and he otherwise refused to answer.  Ex. 6 at 270:23-277:17.]

On Plaintiff's veil-piercing claim, Mr. Zhao was unable to provide any information.  Ex. 5 at 146:21-158:3.  Mr. Zhao was no more prepared for the fraudulent transfer or reach-and-apply claims (Topic Nos. 10 and 11), as well as the allegations that the Affiliated Entities were "shell entities" (Topic No. 9), attempting in his testimony to defer to counsel.  Ex. 5 at 132:24-146:20. Mr. Zhao also implied that he could not answer because, despite the fact that the case is at the end of the discovery period, "there's still investigation underway."  Ex. 5 at 132:24-133:5.  Mr. Zhao could not identify any asset belonging to Infinity held by any of the remaining Defendants or any fraudulent transfer made by Sunco US to any of the other Defendants.  Ex. 5 at 132:24-146:20. Instead, Plaintiff attempted to rely upon the same generalized allegation that transfers were nebulously made, but with no indication of any specific company to which any transfer was made at any specific time or in any specific amount.  Ex. 5 at 133:10-144:11.[5]

---

[5] Plaintiff has used this same tactic throughout this litigation.  Defendants attempted to circumvent it by serving individual interrogatories on behalf of each individual "Affiliated Entity" in the hopes that Plaintiff would answer as to each specific entity.  Exs. 12-15.  The interrogatories of all but Sunco US went entirely

The following day, when Mr. Zhao's deposition continued, counsel for Plaintiff attempted to retroactively assert the attorney-client privilege over the factual basis for Plaintiff's veil-piercing, fraudulent transfer, and reach-and-apply claims. Ex. 6 at 167:20-171:17. Defendants' Attorney Connolly sought clarification, asking Plaintiff's counsel: "[Y]ou're asserting the attorney-client privilege over the facts that form the basis for these claims?" to which counsel responded "Yes." Ex. 6 at 171:14-17. Counsel for Plaintiff also claimed that Mr. Zhao could not answer because of "ongoing discovery, that we're doing right now. We haven't even finished the discovery," and then informed counsel for Defendants that they could expect to get the factual basis for certain of Plaintiff's claims only *after* fact discovery closed, in Plaintiff's expert report. Ex. 6 at 169:5-17. (As the Court is aware, at the time of the Thailand depositions, discovery was complete except for those depositions.)

On Topic No. 12, the acquisition of shares of Sunco China by QiYi from Sunco US – which relates directly to Defendants' defense that when QiYi was unable to pay the purchase price for those shares, Mr. Wu proposed to forgive receivables for cabinets in an equivalent amount of money instead – Mr. Zhao refused to answer questions he did not view as relevant. He testified that his "focus is on reviewing a particular clause" in the share-transfer agreement, insisting that "we should have a direct communication exchange about a particular clause here." Ex. 6 at 222:11-224:1. When asked if there were any amendments to the share-transfer agreement – Topic No. 12.e in the Rule 30(b)(6) – Mr. Zhao testified "I'm not sure about that." Ex. 6 at 301:8-12; *see also* Ex. 6 at 298:4-301:7.

With respect to the remaining topics:

---

unanswered. The responses to Sunco US's interrogatories were evasive and grouped all the entities together. *See, e.g.*, Ex. 16 at 6. Rather than press for answers to the other entities' interrogatories or for more adequate answers to Sunco US's interrogatories, Defendants chose to attempt to obtain answers at Plaintiff's deposition.

- on No. 16 (communications with the Chinese government), Mr. Zhao was "not familiar with it" (Ex. 6 at 302:19-303:10);

- on No. 17 (Sunco China's accounting), Mr. Zhao was incapable of testifying because "[r]egarding this, I don't have the accounting professional background" (Ex. 6 at 189:2-15);

- on No. 18 (litigation or arbitration between or among the parties), Mr. Zhao would not even answer if he knew what arbitration was (Ex. 6 at 301:17-302:18);

- on No. 20 (Sunco China's interrogatory responses), Mr. Zhao was evasive and unprepared (see, e.g., Ex. 6 at 241:19-261:23);

- on No. 21 (Plaintiff's responses, objections, and production in response to Defendants' document requests), Mr. Zhao appeared to not even know that Defendants had requested documents (see Ex. 6 at 305:11-308:14);

- on No. 22 (Sunco China's storage and maintenance of documents), Mr. Zhao knew nothing Ex. 6 at 303:11-305:1;

- on No. 23 (current and former employees of Sunco China, including their availability to testify), Mr. Zhao testified that he had not even attempted to contact any former employees, simply assuming it would be futile Ex. 5 at 45:1-46:7.

As set forth above, of the 22 topics for which Mr. Zhao was designated, he was completely unprepared to testify concerning 20 of them. With respect to the remaining two, Mr. Zhao was only fully prepared to testify concerning the cabinet orders by and shipments to Infinity from Sunco China in 2018 and 2019 (Topic No. 3). With respect to Topic No. 1, the allegations of the Amended Complaint, Mr. Zhao's preparation went only so far as the allegations concerning accounts receivable.

**B. Ruihua Xiao**

Mr. Xiao was designated to testify concerning Sunco China's knowledge of Topic No. 13, the management of Sunco China. When asked whether he understood that he had been so designated, Mr. Xiao responded "In fact, I don't think I have that capability because my education level is low. I do not have much formal education. And since I was being asked to come, and that's why I came, regarding certain questions, I may not be able to know them or know how to answer

them…." <u>Ex. 7</u> at 19:5-16.  Mr. Xiao further explained that his reading comprehension was low and "I can write a few words.  At least, I can write my own name." <u>Ex. 7</u> at 20:13-21:4.  Mr. Xiao did not seem to understand the concept of a corporate designee or what he was expected to be prepared to testify about. <u>Ex. 7</u> at 21:5-25:2.  After counsel for Defendants had gone through Topic No. 13, Mr. Xiao was asked: "Do you think that you're the best person at Sunco China to be able to give testimony about Topic 13?" <u>Ex. 7</u> at 38:14-16.  Mr. Xiao answered, "I don't think I'm the best person among those who are sent by our company to do so.  As I mentioned earlier, my educational level is not high, and I am not eloquent.  What I'm trying to express is that since I came here already, I'm just going to tell you what I know." <u>Ex. 7</u> at 38:18-23.

Mr. Xiao grew up in a rural village and reached only the fourth of fifth year of primary schooling. <u>Ex. 7</u> at 77:19-78:3.  He clearly was not the right individual to testify as a Rule 30(b)(6) designee concerning the management of Sunco China.  Mr. Xiao was unable to identify the most basic information, including what the job of "legal representative" – the title he held for Sunco China – entailed. <u>Ex. 7</u> at 86:9-20.  He was unaware of whether there even was a legal representative before him and, if so, who that individual was. <u>Ex. 7</u> at 88:24-89:4.  He was unable to answer questions about whether management structure changed, whether Mr. Wu held certain roles at the company, and other basic information. <u>Ex. 8</u> at 173:1-179:7.  Defendants do not fault Mr. Xiao for this; he clearly was an inappropriate designee.  It was Plaintiff's responsibility to designate a suitable individual to testify concerning this topic, and Plaintiff failed to do so.

## II.    <u>EVASIVENESS</u>

Throughout the four days of Mr. Zhao's and Mr. Wu's deposition testimony, the witnesses were evasive and argumentative, making it impossible for defense counsel to get straightforward

answers to basic questions.[6]  Mr. Zhao repeatedly refused to answer clear questions, instead

instructing counsel for Defendants to ask Plaintiff's counsel instead.  *See, e.g.* Ex. 5 135:1-16;

136:15-21; 137:18-139:21; 153:9-158:3; Ex. 6 at 177:23-178:5; 210:13-17; 224:24-225:3; 225:20-

24; 269:21-273:13.  Mr. Zhao also kept answering questions with unrelated statements about what

*he* would prefer to discuss.  *See, e.g.*, Ex. 6 at 182:9-184:3; 186:20-187:13; 217:3-15; 221:5-225:3;

226:1-18.  Mr. Zhao attempted to filibuster, answering simple questions with drawn-out answers.

*See, e.g.*, Ex. 6 at 177:23-180:12; 222:11-224:1.

   Likewise, Mr. Wu filibustered, giving either evasive or long, irrelevant answers to simple

questions.  *See, e.g.*, Ex. 10 at 42:4-50:6; 73:10-77:19; 77:20-81:18; 86:19-87:4104:13-105:18;

106:18-24;  Ex. 11 at 132:5-133:16; 148:19-149:24; 170:23-175:17; 181:17-185:8; 186:22-190:4;

192:9-193:7-194:6.[7]

## III.   IMPROPER ASSERTIONS OF ATTORNEY-CLIENT PRIVILEGE TO BLOCK DEFENDANTS' ACCESS TO FACTS

   Throughout the depositions, Plaintiff's counsel asserted the attorney-client privilege over

*factual* matters. Plaintiff's counsel instructed the witnesses not to provide the *factual* information

they possessed concerning the *factual* bases for Plaintiff's claims.  During Mr. Zhao's deposition,

with respect to all questions concerning the factual bases for Plaintiff's veil-piercing, fraudulent

transfer, and reach and apply claims, counsel for Plaintiff attempted to retroactively assert an

attorney client privilege. Ex. 6 at 167:20-171:17.  Counsel for Plaintiff continued to assert that

privilege and to instruct Mr. Zhao not to answer.  Ex. 6 at 274:3-277:17.  Counsel continued that

practice at Mr. Xiao's deposition, when counsel for Plaintiff objected to a question about whether

---

[6] Mr. Xiao's deposition testimony was no more straightforward than Mr. Zhao's or Mr. Wu's, but Mr. Xiao's failure to answer questions in a straightforward manner appears to have been primarily due to a lack of understanding, rather than evasiveness or filibustering, and is simply further proof that he was not an appropriate Rule 30(b)(6) designee.
[7] Mr. Wu's evasiveness crossed over to the absurd, as he refused to even give a straight answer as to whether he was in a room and was sitting at a table. [Ex. 11 at 133:23-171:6.]

Mr. Xiao was informed that he was designated as a Rule 30(b)(6) witness.  Ex. 7 at 29:13-34:8; 45:13-48:5.

At Mr. Wu's deposition, counsel for Plaintiff completely shut down any inquiry into the factual bases for Plaintiff's interrogatory responses on the basis of attorney-client privilege.  When Mr. Wu – who signed all the interrogatory responses on Sunco China's behalf – was asked about the factual bases for the assertions in the interrogatory responses, Plaintiff's counsel objected and instructed the witness not to provide those facts.  Ex. 11 at 263:11-268:23; 271:3-17; 272:9-274:22; 274:23-280:4.  In an attempt to avoid motion practice about this topic, counsel for Defendants read to Plaintiff's counsel from the *Upjohn* case, which holds that

> [t]he protection of the privilege extends only to communications, and not to facts.  A fact is one thing, and a communication concerning that fact is an entirely different thing.  The client cannot be compelled to answer the question:  What did you say or write to the attorney, but ***may not refuse to disclose*** any relevant fact within his knowledge, merely because he incorporated a statement of fact into communications with his attorney.

*Upjohn v. United States*, 449 U.S. 383, 395-96 (1981)(emphasis added) Ex. 11 at 272:21-273:12 (emphasis added).  Plaintiff's counsel nevertheless stood by the objection, thwarting Defendants' attempts to get any information about the bases for Plaintiff's claims.

## IV.  MISREPRESENTATIONS

While the depositions of Plaintiff's witnesses were short on substance, they did reveal that Plaintiff[8] made multiple, blatant misrepresentations to the Court and to Defendants.

### A.  The Witnesses' Visa Status

Plaintiff's representation to the Court and Defendants about its witnesses' visa applications were false.  It turns out Mr. Xiao had a visa to come to the United States all along, and Mr. Zhao

---

[8] Defendants want to be clear that they are not accusing Plaintiff's counsel of complicity in these misrepresentations.

never submitted a good-faith application for a visa. As the Court will likely recall, Plaintiff initially designated Mr. Wu as its Rule 30(b)(6) designee but then pulled a switch when the Court ordered his in-person deposition. When Plaintiff identified Messrs. Zhao and Xiao as their designees, it informed the Court it would make them available in Hong Kong. *See* Doc. No. 146 at 6. Plaintiff then changed its mind and told Defendants and the Court that Messrs. Zhao and Xiao would purportedly be applying for visas to come to the United States instead. Doc. No. 153 at 2. Plaintiff maintained that position throughout the summer, refusing to discuss scheduling the depositions of Messrs. Zhao and Xiao, even after their visas were purportedly denied, representing that both Messrs. Zhao and Xiao would purportedly be reapplying for visas. *See* Doc. Nos. 158 at 2, 160 at 2-3, 162 at 2, 165 at 2-5. This representation was reiterated at both the September 10, 2025 status conference (Ex. 2 at 14:19-24) and the September 25, 2025 hearing on Defendants' motion for a protective order (Ex. 3 at 10:12-16).

At Mr. Xiao's deposition, however, he revealed that not only was he already in possession of a valid U.S. visa, but that he had informed Mr. Zhao – the individual at Sunco China who purportedly has been overseeing this litigation – of that fact. Ex. 7 at 52:18-53:5; 58:9-59:6.

At Mr. Zhao's deposition, he revealed that he withheld the purpose of his visit to the United States when he was applying for his visa and, even after the application was rejected the first time, he withheld that information when reapplying. Rather than inform consular officials that he was being asked to testify in connection with a court proceeding in the United States – which presumably would have had a higher chance of leading to an approval -- Mr. Zhao explained that the purpose of his visit was "business exchange." Ex. 5 at 13:5-14:17.

### B. The Witnesses' Availability

At the depositions, Defendants learned that Plaintiff had made multiple misrepresentations concerning the availability of multiple persons affiliated with Sunco China.

By way of background, Defendants had served notices of deposition of several high-ranking members of Sunco China, including Mr. Zhao, Mr. Xiao, and Ms. Qiong Xiao, a Sunco China director, in December of 2024.  Plaintiff initially told Defendants and then represented to the Court that "most of the individuals Defendants sought to depose were no longer employed by Sunco China and are not under the company's control.  Of the remaining two, one (Bing Zhao) has stated that he would resign rather than participate in a deposition, and the other (Ruihua Xiao) has significant health issues that prevent him from testifying at all."  Doc. No. 135 at 2-3.  Plaintiff also represented to both Defendants and the Court that it "does not intend to rely on these individuals for testimony or affidavits."  *Id*. at 3.

At his deposition, however, Mr. Zhao testified that he *never* informed anyone that he would resign rather than testify in this case.  Ex. 5 at 36:20-37:19.  Mr. Xiao said that he was not too sick or too old to travel for any deposition.  Ex. 7 at 63:2-65:1.  Messrs. Xiao and Wu testified that – contrary to what had represented to Defendants' counsel (Ex. 23) and implicitly represented to the Court (when it represented that of the witnesses whose depositions Defendants sought, only Messrs. Wu, Xiao, and Zhao remained affiliated with Plaintiff (Doc. No. 135 at 2-3) – Ms. Qiong Xiao is *still* a member of Sunco China's Board of Directors.  Ex. 8 at 171:13-24; Ex. 10 at 73:10-14.  Given that Ms. Qiong Xiao is Mr. Wu's wife, Mr. Xiao's daughter, and Mr. Zhao's sister-in-law, this clearly could not have been an innocent mistake.  The only explanation is that Plaintiff sought to shield Ms. Xiao from being deposed, a tactic that worked, as Defendants did not pursue Ms. Xiao's deposition after Plaintiff falsely represented that she was no longer a director of the company.

Plaintiff also misrepresented the status of another key witness, Ms. Wenjing Sun, Plaintiff's Finance Manager.  Plaintiff initially told Defendants on February 24, 2025, that Ms. Wenjing Sun

was no longer employed by the company, having resigned to avoid testimony (*see* Ex. 24), but Ms. Sun was still employed at that time.

### C.  Existence of Documents

Plaintiff falsely represented to the Court and to Defendants that it had no documents concerning a loan from Linda Sun to Sunco China.  By way of background, Defendant Sunco US, has asserted a counterclaim for a loan it made to Sunco China.  Doc. No. 104.  As Sunco US has informed Plaintiff and the Court, it believed that the loan was incorrectly reflected on Sunco China's books as a loan from Linda Sun.  Doc. No 113 at 12-15.  Accordingly, Defendants requested all documents concerning a loan from either Sunco US or Linda Sun.  When Plaintiff refused to produce any documents evidencing a loan from Linda Sun, Defendants filed a motion to compel.  Doc. No. 113.  In response, Plaintiff represented to the Court that "Plaintiff has looked for any unidentified and undocumented loans by Linda Sun to Plaintiff and have found that no such loans existed and that there are no documents referring to any such loans."  Doc. No. 132 at 3.  Accordingly, the Court denied that portion of Defendants' motion to compel "as Plaintiff has represented that it conducted a thorough search for any loans by Linda Sun and have not found any."  Doc. No. 136.

Mr. Zhao was the 30(b)(6) designee for, *inter alia*, the topics of the loan identified in the Counterclaim as well Sunco China's accounting, including its financial audits.  Ex. 52.  At his deposition, he was given a copy of Sunco China's 2018 audited financial statements which reflect a payable to Linda Sun in the amount of roughly 20 million RMB.  Mr. Zhao testified that he believed the payable was on its books since at least prior to 2015.  Ex. 6 at 182:15-186:2.  When asked if the payable would be reflected on any other financial statements of Sunco China, Mr. Zhao responded "it should be" and further explained that "it should be in the audit report every year."  Ex. 6 at 188:13-19. When asked what the payable was for, he responded "[t]his is some kind of professional

matter in finance and I don't know about it." Ex. 6 at 185:12-13. He was unable to answer whether there would be ledger or other accounting entries relating to the payable. Ex. 6 at 188:16-189:23. Mr. Zhao explained that he did not view it as something he needed to investigate because it was his view that it did not need to be paid and it was therefore not "relevant." Ex. 6 at 186:20-187:13.

The fact that Mr. Zhao made the seemingly unilateral decision to neither look for nor produce documents concerning Sunco US's Counterclaim because he viewed it as "irrelevant" raises serious questions about whether Mr. Zhao – who purportedly was in charge of the litigation at Sunco China and was the company's Rule 30(b)(6) designee on the topic of the company's response to document requests – took seriously any of Defendants' document requests. In fact, Mr. Zhao seemed to claim not to know that Defendants had ever even requested any documents. *See* Ex. 6 at 305:11-308:14. It appears that the only thing that Plaintiff did was look for documents that *it* viewed as "relevant" – i.e., documents that relate solely to the purchase orders and invoices in this case. Ex. 6 at 305:19-306:2. Further, it appears that Plaintiff searched the emails of only one individual – a Ms. Gao – and reviewed only her inbox and not any emails she had sent. Ex. 6 at 105:14-106:4.

### D.  **Plaintiff's Knowledge of the Existence of Sunco US**

Plaintiff filed its complaint in June of 2022. A year and a half later, it sought to amend its complaint to bring claims against a new set of defendants, under new theories (fraudulent conveyance and reach-and-apply). Doc. No. 52. In so doing, Plaintiff claimed to have just learned for the first time that Linda Sun, David Sun, and Shillock Yuan-Sun "were involved with" Sunco US, which "appear[s] to conduct similar, if not identical, business[] – selling wooden cabinetry – cabinets that Sunco [China] manufactured and delivered to Infinity [Wood Products]." *Id.* at 2. However, Mr. Wu, the "principal" of Sunco China (Doc. No. 135-1 at p. 1), knew at least as of *2015* that Sunco China was shipping cabinets to Sunco US to be sold in the United States and that

Sunco US was owned by a member of Linda Sun's family.  Ex. 11 at 179:2-7; Ex. 10 108:16-110:21.[9]  Plaintiff obtained leave to amend its complaint based on false statements to the Court about what it knew and when it knew it.

### E.   Plaintiff's Interrogatory Responses were Laden with Misrepresentations

In Plaintiff's interrogatory responses, Plaintiff claimed that Messrs. Wu and Xiao and Ms. Qiong Xiao were Sunco China's "top managers."  Ex. 17 at 3.  At his deposition, however, Mr. Wu – who signed Plaintiff's interrogatory responses on behalf of the company – testified that those three were never top managers.  Ex. 10 at 31:24-32:20.  When shown the contradictory interrogatory response Mr. Wu himself signed under oath, Mr. Wu refused to answer whether the statement that he, Mr. Xiao, and Ms. Qiong Xiao were "top managers" was true or false.  Ex. 10 at 32:24-37:3.  In those same interrogatory responses, Plaintiff claimed that Mr. Wu was a member of Sunco China's Board, a fact that Mr. Wu also disclaimed at his deposition.  Ex. 10 at 23:9-28:5.  Faced with these contradictions, Mr. Wu explained that he actually did not really understand the interrogatories when he signed them under pains and penalties of perjury.  Ex. 10 at 28:6-31:23.

Mr. Wu was asked to identify the shareholders of Sunco China, and he testified that they were QiYi and Sunco US, without any doubt.  Ex. 10 at 94:4-22.  When shown that Plaintiff had responded to an interrogatory requesting that Plaintiff identify its shareholders with the sworn statement that "QiYi Investments owns 52% of Sunco China's shares and *Linda Sun* owns 48%" (emphasis added), Mr. Wu tried to explain that he viewed Linda Sun and Sunco US as "combined together."  Ex. 10 at 94:23-101:14.  However, Mr. Wu was then shown the interrogatory response he signed under penalty of perjury claiming that "Sunco [US] does not actually own any shares of Sunco China since 2012 because Defendant Linda Sun is the actual shareholder."  Ex. 10 at 101:15-

---

[9] Mr. Wu claims he believed Linda Sun owned Sunco US at that time, and not David Sun, but in any event, Mr. Wu was aware that Sunco US was owned by the Sun family and was aware that it sold cabinets in the United States.

102:5.  In an attempt to explain away the contradiction, Mr. Wu again claimed that he did not understand what he was signing under penalties of perjury.  Ex. 10 at 102:7-103:19.

## ARGUMENT

### I.    LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 37, sanctions are warranted where a party fails to comply with a discovery order or fails to attend its own deposition or produce documents.  "For purposes of" Rule 37, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  "[R]ule 30(b)(6) places the burden upon the deponent to make a conscientious good-faith endeavor to prepare its designee(s) in order that they can answer fully, completely, unevasively.  This duty of preparation goes beyond matters personally known to that designee or to matters in which that designee was personally involved." *Briddell v. Saint Gobain Abrasives Inc.*, 233 F.R.D. 57, 60 (D. Mass. 2005) (internal citations and quotations omitted) (Swartwood, C.M.J.).

The First Circuit has explained that "[u]nder Rule 37, the district court maintains a variety of tools at its disposal to sanction a party who violates discovery orders, from staying the proceedings to entering default judgment against the disobedient party." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 429, 435 (1st Cir. 2015).  When considering motions for sanctions, the First Circuit has:

> called on district courts to weigh the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions.  On the procedural side, we consider whether the district court gave the offending party notice of the possibility of sanctions and the opportunity to explain its misconduct and argue against the imposition of such a penalty.

*Id*. (internal citations omitted).  The purpose of sanctions is "to penalize the particular noncompliance and to deter others from engaging in the same tactics." *Id*.

## II.    <u>Plaintiff Should be Sanctioned</u>

Defendants have been seeking discovery from Plaintiff for years and have been consistently thwarted. It took multiple Court orders for Plaintiff to make its witnesses available. *See* Doc. Nos. 136, 151, 167. Plaintiff misrepresented key facts that deprived Defendants of the opportunity to depose Ms. Qiong Xiao, a member of Sunco China's Board. Page 12 *infra*.[10] Plaintiff misrepresented key facts that led to the Court's denial of Defendants' motion to compel documents related to the loan alleged in Sunco US's counterclaim. Page 13 *infra*. It appears Plaintiff made no effort to search for and produce documents responsive to Defendants' document requests unless such documents were, in Plaintiff's view, "relevant," i.e., related directly to the purportedly outstanding accounts receivable. More than three years after this litigation began, Defendants still do not know the factual bases for most of Plaintiff's claims, and Plaintiff is asserting attorney-client privilege over them. "In effect, the defendants [are] only marginally farther along in the discovery process than they had been as of" when discovery in this case began. *Big Top USA, Inc. v. Wittern Grp.*, 183 F.R.D. 331, 337 (D. Mass. 1998) (Saris, J.). With respect to the depositions in this case, "[n]early a year has been spent in a largely fruitless effort to discover materials crucial to [Defendants'] case. The record before the Court compels the conclusion that [Plaintiff's] conduct has been a deliberate, and thus-far highly successful, effort to frustrate [Defendants in their] legitimate discovery." *Kozlowski v. Sears, Roebuck & Co.*, 71 F.R.D. 594, 597 (D. Mass. 1976) (Julian, S.J.). If Plaintiff's conduct goes unsanctioned, Defendants will be hampered in presenting their defenses and asserting their counterclaims, and Plaintiff will be rewarded for its intransigence.

Defendants believe that the Court would be well within its rights to enter default judgment against Plaintiff on all its claims and the counterclaims. Courts have issued this sanction for less

---

[10] As set forth above, Defendants are not accusing Plaintiff's counsel of misconduct, but rather Plaintiff itself.

egregious conduct. *See, e.g.*, *Kozlowski*, 71 F.R.D. at 597 (entering default judgment for failure to produce documents); *United States v. 2008 33′ Contender Model Tournament Vessel*, No. CV 12-01721 (ADC), 2017 WL 3084899, at *8 (D.P.R. July 20, 2017), *aff'd,* 990 F.3d 725 (1st Cir. 2021) (default judgment for failure to answer interrogatories upheld); *Ganapolsky v. Keltron Corp.,* 823 F.2d 700 (1st Cir. 1987) (upholding dismissal for failure to provide adequate interrogatory responses); *Damiani v. Rhode Island Hosp.*, 704 F.2d 12, 15 (1st Cir. 1983) (same); *Atl. Cape Fisheries v. Hartford Fire Ins. Co.*, 509 F.2d 577 (1st Cir. 1975) (upholding dismissal for failure to appear at deposition).  Defendants do not seek that ultimate sanction, even though it would be warranted. Instead, they seek more targeted sanctions that relate directly to the misconduct.

## A. Plaintiff Should be Precluded from Introducing Evidence of Any Factual Basis not Disclosed by its Rule 30(b)(6) Witnesses

Among the sanctions permitted by Rule 37 is an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters into evidence."  Fed. R. Civ. P. 37(b)(2)(A)(ii).  Plaintiff should be precluded from introducing any evidence concerning any fact it argues forms the basis of its claims unless such fact was disclosed by its Rule 30(b)(6) witness at deposition.  To allow otherwise would be to permit Plaintiff to ambush Defendants at trial with their actual claims.[11]

---

[11] Even if it is Plaintiff's intent to reveal certain aspects of its actual claims through its expert reports, that is also inappropriate. Courts have routinely prohibited parties from waiting until expert discovery to supply the *factual* bases for claims. *See, e.g., Hamelin v. Kinder Morgan, Inc.*, No. 3:21-CV-30054-MGM, 2022 WL 17752133, at *6 (D. Mass. Dec. 19, 2022) (Robertson, M.J.) ("The problem with the plaintiffs' position in the instant case is that they seek to withhold the factual references on which their experts will rely until the expert phase of discovery. In the court's view, Defendants are entitled to discovery concerning the factual bases of the plaintiffs' claims at this time."); *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012) (finding that the defendant could not wait until expert discovery to disclose the factual bases for its claims); *MLC Intell. Prop., LLC v. Micron Tech., Inc.,* No. 14-CV-03657-SI, 2019 WL 2863585, at *15 (N.D. Cal. July 2, 2019), *aff'd,* 10 F.4th 1358 (Fed. Cir. 2021) (precluding evidence that was not disclosed during fact discovery and finding that "while [plaintiff] was not required to disclose its expert opinions during fact discovery, [plaintiff] was still required to disclose the factual basis for its" claim); *Xinuos, Inc. v. IBM Corp.,* No. 22-CV-09777-CS-VR, 2025 WL 663064, at *1–

With respect to the factual bases for Plaintiff's claims against Defendants for Count VIII (Money Had and Received); Count XI (Piercing the Corporate Veil of Infinity); Count XII (Fraudulent Transfer); and Count XIII (Reach and Apply), as well as the factual bases for Plaintiff's opposition to Linda Sun's counterclaim, Mr. Zhao was unable to disclose a single fact to support such claims.  *See* Ex. 5 at 134:18-144:11; 146:21-158:3; Ex. 6 at 269:21-279:4.  Accordingly, Plaintiff should be precluded from offering evidence on those claims and Linda's counterclaim.

The logical consequence of such a ruling is that Counts VIII, XI, XII, and XIII of the Amended Complaint will need to be dismissed and judgment will need to be entered for Linda Sun on her counterclaim.  This harsh consequence, however, should not deter the Court from making this appropriate ruling. *See United States v. 2008 33′ Contender Model Tournament Vessel*, 990 F.3d 725 (1st Cir. 2021).  As the District Court judge explained in the *2008 33′ Contender Model Tournament Vessel* case that was upheld by the First Circuit, that the logical consequence of a given, lesser sanction is that a case is ultimately dismissed does not mean that the Court is awarding dismissal as a sanction.  In deeming certain matters from interrogatories admitted, Judge Lomba-Ortiz in the District of Puerto Rico noted that "default judgment must be entered accordingly," explaining that "the striking of claimants' answer and claims, along with default judgment against them, are not the sanctions now imposed by the Court, but merely the natural consequences that flowed from the Court's imposition of the Rule 37(b)[] sanction."  *United States v. 2008 33′ Contender Model Tournament Vessel*, No. CV 12-01721 (ADC), 2017 WL 3084899, at *8 (D.P.R. July 20, 2017), *aff'd*, 990 F.3d 725 (1st Cir. 2021).

---

2 (S.D.N.Y. Feb. 28, 2025) (finding that the factual basis of plaintiff's claims could not be withheld until expert discovery even if the theory would be presented through expert testimony).

Likewise, Plaintiff should be prohibited from introducing any fact that it argues rebuts Defendants' defenses in this case unless such fact was disclosed during Rule 30(b)(6) deposition testimony. For example, as set forth above, Defendants assert as a defense to Plaintiff's breach-of-contract claim that when Mr. Wu's company, QiYi, failed to pay the purchase price for its shares in Sunco China, Mr. Wu proposed to use forgiveness of receivables on cabinets supplied by Sunco China as an alternative form of payment for the Sunco China shares acquired by QiYi. Accordingly, the share-transfer agreement between Sunco US and QiYi was one of the topics of Defendants' Rule 30(b)(6) notice, including the topic of the payment of the acquisition price and any amendments to the terms of the acquisition. Ex. 4. Mr. Zhao, the designee for this topic, was unprepared to answer any questions regarding amendments to the agreement, notwithstanding that Sunco China was itself a party to the agreement. Ex. 6 at 300:1-301:16. Plaintiff should not now be permitted to introduce evidence it did not previously disclose.

## B. Mr. Wu Should be Precluded from Contradicting or Supplementing Plaintiff's Rule 30(b)(6) Testimony

As the Court is well aware, Plaintiff has played games with its Rule 30(b)(6) designations, a fact made even more clear by the inadequacy of Plaintiff's preparation of Mr. Zhao and the inappropriateness of Mr. Xiao as a Rule 30(b)(6) witness. It appears that Plaintiff may be hoping to have Mr. Wu testify on the company's behalf at trial and provide the factual information that Plaintiff's Rule 30(b)(6) witnesses were unprepared or unwilling to provide. Indeed, that is exactly what Plaintiff tried to do at the end of Mr. Wu's deposition, having him testify about Plaintiff's theory of why the counterclaim loan does not need to be repaid while Plaintiff's Rule 30(b)(6) designee, Mr. Zhao, had made no effort to investigate the counterclaim loan. Ex. 11 at 295:3-298:11. If Mr. Wu has knowledge about any of Plaintiff's claims, Defendants' defenses thereto, or to the counterclaims, Plaintiff was obligated to obtain that information from Mr. Wu in preparation

for its Rule 30(b)(6) deposition.  Instead, Plaintiff chose willful ignorance and made no effort to prepare its Rule 30(b)(6) witnesses to testify about Mr. Wu's knowledge, as Mr. Zhao and Mr. Xiao made clear that they did not talk to Mr. Wu in preparation for their depositions.[12]  Ex. 5 at 44:22-24; Ex. 7 34:11-23.

### C.  Sunco US is Entitled to an Adverse-Inference Jury Instruction on its Counterclaim

It is indisputable that Plaintiff is in possession of documents relevant to Sunco US's counterclaim, that such documents were called for by Defendants' document requests, that Plaintiff failed to produce them, and that Plaintiff misrepresented to this Court that no such documents existed.  Pages 13-14 *infra*.  According to Plaintiff's Rule 30(b)(6) designee, there exist on Sunco China's books and records repeated references to a payable due to Linda Sun.  *Id.*  Plaintiff refused to produce those documents.  Accordingly, the Court should instruct the jury at trial that Plaintiff's failure to produce its financial records justifies an inference that the financial records would be unfavorable to Plaintiff if they had been produced.  *See, e.g.*, *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 20 (1st Cir. 2009) ("an adverse inference instruction may be allowed when a party fails to produce a document that exists or should exist and is within its control.")

### D.  Defendants are Entitled to an Adverse Inference Jury Instruction on Other Documents Not Produced

Mr. Zhao was the Rule 30(b)(6) designee on Plaintiff's response to Defendants' document requests, its production of documents, and its document preservation and management practices.  As set out above, he was either unwilling or unable to answer questions about any aspect of those topics other than to testify that Plaintiff searched for and produced purchase orders and invoices and reviewed the e-mail inbox of its former Finance Manager, Ms. Gao.  Pages 13-14 *infra*.  Defendants

---

[12] While Plaintiff's description of the role played by Mr. Wu at Sunco China has flip-flopped throughout this litigation, Plaintiff's most recent insistence that Mr. Wu be permitted to attend the depositions as a representative of Sunco China should put to rest any argument that Mr. Wu's knowledge is not part of what constitutes Sunco China's knowledge.

still do not know what, if anything, Plaintiff did to collect documents beyond that. Defendants do not even know who was in charge of document collection and production. What Defendants do know is that there are a number of emails responsive to Defendants' document requests that Defendants produced, but Plaintiff did not. <u>Ex. 57</u>. That alone shows failures in Plaintiff's obligations. Plaintiff should not be able to shield itself from further scrutiny by ignoring its obligation to produce a witness prepared to testify about what Plaintiff did to collect and produce documents. Accordingly, Defendants seek a jury instruction that Plaintiff failed to meet its document-production obligations and that the jury can infer from that failure that the documents Plaintiff failed to produce would be harmful to Plaintiff.

### E. Defendants are Entitled to a Jury Instruction that Plaintiff Controls Ms. Qiong Xiao and that the Jury Can Infer from Plaintiff's Failure to Call Her as a Witness that her Testimony would be Harmful to Plaintiff

Plaintiff falsely claimed that Ms. Qiong Xiao was no longer a director of Sunco China. Ms. Xiao is Mr. Wu's wife, Mr. Zhao's sister-in-law, and Mr. Xiao's daughter. Plaintiff has therefore made Ms. Xiao unavailable to Defendants in this case. Accordingly, the Court should give the jury a "Missing-Witness Instruction" that Ms. Qiong Xiao is in the Control of Plaintiff and that the Jury can infer from Plaintiff's failure to make her available to testify that her testimony would be harmful to Plaintiff.

"The rationale behind the missing witness instruction has been stated as follows: 'the failure of a party to produce available evidence that would help decide an issue may justify an inference that the evidence would be unfavorable to the party to whom it is available or whom it would ordinarily be expected to favor.'" *United States v. St. Michael's Credit Union*, 880 F.2d 579, 597 (1st Cir. 1989). Here, there can be no question that Ms. Xiao is "favorably disposed" to Plaintiff, is "peculiarly available" to Plaintiff and is, in fact, under the "exclusive control" of Plaintiff because she cannot be subpoenaed in this case. *See id*.

### F.  Plaintiff should be Precluded from Introducing any Documents not Produced prior to September, 2025

Plaintiff should not be permitted to produce any further documents.  In addition, just minutes prior to the start of Mr. Zhao's deposition, counsel for Plaintiff attempted to produce two documents it had previously refused to produce.  Such documents were part of the arbitration between Sunco US and Sunco China in Shanghai, China, and despite Defendants' efforts, Plaintiff steadfastly refused to produce any documents relating to that dispute.  Ex. 55. Plaintiff should not be permitted to rely on such documents now, particularly as they are cherry-picked out of the many documents that Plaintiff has not produced.

### G.  A Continued Deposition Pursuant to Rule 30(b)(6) would be Inadequate

A common sanction when a party fails to make an adequately prepared witness available pursuant to Rule 30(b)(6) is for a court to order such party to go back and do it again, either by making another individual available or by ordering that the initial witness(es) do a better job of preparing.  See e.g. Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., 201 F.R.D. 33, 41 (D. Mass. 2001) ("An inadequate Rule 30(b)(6) designation amounts to a refusal or failure to answer a deposition question. Among the other remedies, the Court can require the corporation to re-designate its witnesses and mandate their preparation for re-deposition at the corporation's expense."); see also Wager v. G4S Secure Integration, LLC, No. 19CV3547MKVKNF, 2021 WL 5304321, at *8 (S.D.N.Y. Nov. 15, 2021) ("The Court finds that the sanctions requested by the plaintiff are warranted under the circumstances, namely, the defendant shall: (1) pay the plaintiff's attorney's fees associated with the failure to provide an adequate 30(b)(6) witness; (2) provide properly prepared Rule 30(b)(6) witness to be examined no later than 30 days from the date of this order; (3) not present at the deposition documents it has not produced to the plaintiff; and (4) pay the costs associated with the deposition of the properly

prepared Rule 30(b)(6) deponent. . . . Under the circumstances of this case, the Court finds that awarding reasonable attorney's fees and costs in connection with the plaintiff instant motion is warranted."). Such remedy would be inadequate here. As a preliminary matter, it was an enormous undertaking to fly halfway around the world to depose Messrs. Zhao and Xiao, and Defendants should not have to pay their counsel to do that again, to say nothing of the burden it placed on counsel themselves and the Defendant who traveled there.

But more importantly, there is no reason to believe a second bite at the apple will do any good. This is not a case where there was a good-faith disagreement over the scope of the Rule 30(b)(6) notice or over whether the witness was adequately prepared with respect to a specific topic or subtopic. Rather, Plaintiff simply ignored those aspects of the Rule 30(b)(6) notice it did not like and produced one witness who was prepared to discuss only what *he* believed to be relevant to the case, and another witness who was not capable of being adequately prepared. That, coupled with Plaintiff's misrepresentations to the Court about the availability of Messrs. Zhao and Xiao, the status of Mr. Xiao's visa, the continued service of Ms. Qiong Xiao on Sunco China's Board of Directors, and the existence of documents supporting the counterclaim loan, as well as Plaintiff's failure to respond to interrogatories from all but one of the Affiliated Entities make it abundantly clear that further attempts at discovery would be a waste of time. Moreover, re-deposing Plaintiff's Rule 30(b)(6) designees would not cure Plaintiff's failure to meet its document-production obligations.

## **CONCLUSION**

For the foregoing reasons, the Defendants respectfully request that the Court:

(a) Preclude Plaintiff from introducing any evidence at trial or summary judgment that Plaintiff failed to disclose in its Rule 30(b)(6) testimony;

(b) Preclude Mr. Wu from at trial or summary judgment from contradicting or supplementing Plaintiff's Rule 30(b)(6) testimony;

(c) Instruct the jury that Plaintiff failed to produce certain of its financial documents and that the jury can infer that such documents would have supported Defendants' claims and defenses and Sunco US's counterclaim;

(d) Instruct the jury that Ms. Qiong Xiao is in the Plaintiff's exclusive control and that the jury can infer from Plaintiff's failure to make her available to testify that her testimony would have been harmful to Plaintiff; and

(e) Preclude Plaintiff from relying on any document not produced prior to September of 2025; and

(f) Provide such further relief as the Court determines is appropriate.


Respectfully submitted,


DEFENDANTS DAVID SUN, SHILLOCK YUAN-SUN, INFINITY WOOD PRODUCTS, LLC, SUNCO, INC., EASTMAN ST. DISTRIBUTORS, LLC, EASTMAN ST. WOODWORKS, INC., and INFINITY REALTY CO. LLC

By their attorneys:

/s/ Michele E. Connolly
Peter E. Ball (BBO No. 546031)
Michele E. Connolly (BBO No. 680946)
Malgorzata Mrózek (BBO No. 699035)
FITCH LAW PARTNERS LLP
84 State St.
Boston, MA 02109
(617) 542-5542
peb@fitchlp.com
mec@fitchlp.com
mam@fitchlp.com


DEFENDANTS LINDA SUN and NEW SUN LIMITED PARTNERSHIP

By their attorneys:

/s/ Theodore J. Folkman
Theodore J. Folkman (BBO No. 647642)
Taylor M. Makson (BBO No. 697476)
RUBIN & RUDMAN, LLP
53 State Street
Boston, MA 02109
(617) 330-7000
tfolkman@rubinrudman.com
tmakson@rubinrudman.com


Dated: October 29, 2025

**<u>Certificate of Service</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 30, 2025.

*/s/ Michele E. Connolly*
Michele E. Connolly