### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUNCO TIMBER (KUNSHAN) CO., LTD.<br>    Plaintiff,<br><br>v.<br><br>LINDA SUN, DAVID SUN, SHILLOCK YUAN-SUN, and INFINITY WOOD PRODUCTS, LLC,<br>    Defendants,<br><br>SUNCO, INC., EASTMAN ST. DISTRIBUTORS LLC, EASTMAN ST. WOODWORKS, INC., INFINITY REALTY COMPANY LLC, AND NEW SUN LIMITED PARTNERSHIP,<br>    Reach and Apply Defendants, and<br>    Fraudulent Conveyance Defendants. | **Civil Action No. 1:22-cv-10833 MJJ** |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS

Plaintiff Sunco Timber (Kunshan) Co., Ltd. ("Plaintiff" or "Sunco China") respectfully submits this opposition to Defendants Motion for Sanctions (ECF No. 201).[1]

### I. INTRODUCTION

Defendants seek severe and trial-dispositive sanctions—including adverse inferences and evidence exclusion based on deposition answers undermine Defendants' arguments or they simply did not like. It is unsupported by the factual record and the legal standard for imposing sanctions.

---

[1] Plaintiff cites exhibits to Defendants' motion, except that Plaintiff has only one affidavit of counsel as Exhibit A.

Defendants continue their pattern of escalating every discovery disagreement into a judicial crisis. Since the early stages of discovery, they have brought at least four motions or emergency requests, often accompanied by overstated narratives and demands for extreme relief. Throughout discovery, Plaintiff has made reasonable effort to comply, often under challenging circumstances. Plaintiff produced voluminous records, and adequately prepared Rule 30(b)(6) witnesses. But Defendants still filed a motion for sanctions - a motion that relies more on rhetoric and exaggeration than substance, and cherry-picking portion of deposition transcripts that are not complete response to one question.

Defendants label every procedural disagreement as "obstruction" or "bad faith," seek the harshest possible remedy, and pressure Plaintiff to defend its every move. Plaintiff has been responding with transparency, diligence, and an earnest effort to move this case forward, given the overwhelming challenges resulting from their appreciation for drastic differences in two countries' legal systems and gradual adaptation to the American court procedures. [2]

### A. Plaintiff Produced Diligently Prepared Rule 30(b)(6) Witnesses

Defendants claim that Plaintiff's Rule 30(b)(6) witnesses—Mr. Zhao and Mr. Xiao—were unprepared or unable to answer questions. Plaintiff disagrees.

Courts have consistently held that while Rule 30(b)(6) imposes an obligation on corporations to prepare their designees to testify about information known or reasonably available

---

[2] Plaintiff does not expect the extensive scope and intrusiveness of discovery, and it has gone through great length and undertakings to adapt and comply. Discovery is a unique factfinding process in the heart of U.S. litigation. Discovery in Chinese litigation is rather simple. Each party provides what he considers relevant documents to the court, and each party may request the court to issue subpoenas for specific documents. Document request that "sought appears reasonably calculated to lead to the discovery of admissible evidence" is not in practice. Neither request for interrogatories nor deposition is a discovery method in Chinese litigation. See Plaintiff Counsel Affidavit, Ex. A Para 2.

to the organization, it does not require encyclopedic knowledge or perfection. For example, in *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, the court noted that a deposing party may not demand that a corporate designee be prepared to speak with "encyclopedic authority" . *In Spite Telecom LLC v. Rosciti Constr. Co. LLC*, 747 F. Supp. 3d 270. Similarly, the First Circuit emphasized that a Rule 30(b)(6) designee **must testify about information reasonably available to the organization but did not impose a standard of exhaustive knowledge.** *Baker v. St. Paul Travelers Ins. Co.*, 670 F.3d 119. The applicable standard is reasonableness—something Plaintiff has satisfied here. Defendants are attempting to retroactively convert testimony they found unsatisfying into a basis for Rule 37 sanctions. But courts do not allow sanctions absent a clear discovery violation. See *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 15 (1st Cir. 1991).

Mr. Zhao prepared for his 30(b)(6) deposition and answered most topics sufficiently. He met with counsel remotely five to ten times and each meeting lasted one to two hours, and sometimes longer. (Ex 5 at 47). At the hotel, counsel met three witnesses for about six hours. It is estimated that Mr. Zhao spent 10- 12 hours meeting counsel preparing for his deposition. [3]This does not include the time he spent on seeking information through other avenues, such as, review documents and work extensively with Sunco China's local counsel. Mr. Zhao tried to reach out to former employees, unfortunately with little success. Plaintiff had more than one hundred employees immediately before Defendant Linda Sun's abandoning the factory. Vast majority of employees were let go with severance mandated by government and paid by Plaintiff with a loan of $2.6 million. (Docket #61 Amended Complaint, 70, 71). A few individuals Mr. Zhao contacted chose to be silent and did not want to get involved with former employer's lawsuit. (Ex 6, 232 – 233).

---

[3] Plaintiff Ex. A Para 3.

Defendants cited and quoted a portion of deposition testimonies out of context and distorted what deponents stated, which sometimes scatter across multiple pages. Defendants alleged that Mr. Zhao was not prepared to testify about topics other than Sunco China's receivables. Mr. Zhao not only understood corporate designee's obligation is to "learn about the knowledge of the company" and that he would testify for the company (Ex5, 60; 83, 20-24), but he testified most topics to the best of his knowledge and search effort [4].  From 2003 to 2019, Plaintiff is essentially a factory managed and controlled EXCLUSIVLY by Defendant Linda Sun, as a one man show. Linda Sun and Yueyun Gao primarily used email to communicate with Defendant Infinity or Sunco Inc. The other workers, including department heads, usually communicated in person rather than e-mails. Furthermore, Linda instructed an employee destroy documents before her fateful flee in July of 2019.  Mr. Zhao searched and read documents to his best ability. (Ex 5, 58:12-14; 198:3-8; 281:21-282:22; Ex 6, 309:2).

In addition to Topic 1 and Topic 3 that Mr. Zhao responded to, he also testified, among others, payables in the audit reports and accounting practice (Topic 17), Qiyi's equity acquisition in Plaintiff (Topic 12, 14, 18), Plaintiff's communication with government (Topic 16), Plaintiff's current and former employees (Topic 23), intercompany financials, and parties' communications. He further testified document storage (Topic 22), Plaintiff and defendants 'relationships (Topic 4,5,6), knowledge of existence of Affiliated Entities (Topic 7), Defendants entities' money transfers, and his handling document productions. (Ex.5, 52:17-53:9; 97:13-98:1; and Ex.6, 182:15-183:20; 203:15-207:12; 272:11-279:18; 289:1-291:24; 302:19-24; 305:2-309:10).

---

[4] Yueyun Gao assisted Defendant Linda Sun with shipment and finance. Mr. Zhao called the IT contractor based on the information provided by Gao upon her separation and searched Gao's mailbox and server for documents. (Ex 6, 196:13-197:13; 305:5-10; 307:18-22.)

Defendants should not complain about Mr. Zhao's not being able to answer questions they never asked. E.g, Linda's living in the factory (Topic 14), and her breach of fiduciary duty (Topic 15).

Defendants also alleged that Mr. Zhao used irrelevancy as responses to their questions about the Qiyi equity transfer, while Mr. Zhao responded, including Qiyi's ownership percentage and the timing and transactions where Qiyi became a shareholder. (Ex.6, 203:15-19; 203:23-204: 2; 204: 6-10; 204:15-207:12). Because the transaction occurred between Linda Sun/Sunco Inc. and Mr. Wu, principal of Jiangsu Qiyi, Defendants subsequently obtained testimonies from Mr. Wu.

Defendants also alleged that Mr. Zhao could not identify people with whom he spoke or documents he reviewed in preparation for this deposition. Mr. Zhao pointed out that he talked with the sales personnel of the server to get emails retrieved, and reviewed email box of finance, monthly filings, amounts concerning payables, inquiry letter of David Sun. (Ex. 5, 52:17-53:9; 55:18-24; 57:23-58:1). Mr. Zhao even went beyond the reasonable effort that "[I] have not stopped the searching for this case. I kept doing the search." (Ex 5, 196:21-23; 197:6-8).

Mr. Zhao did not refuse to answer or profess lack of understanding about Plaintiff's knowledge of relationship among Plaintiff and all defendants. Despite Plaintiff counsel's objection to attorney client privilege, Mr. Zhao provided that prior to 2018, Linda Sun exclusively controlled Plaintiff, would have known the relationship between David Sun and Infinity Wood Products. (Ex.5 at 97:13-98:1). Mr. Zhao also testified he knows the goods and funds were transferred among the affiliated entities, which were controlled and operated by David Sun, Shillock Yuan, with Linda Sun behind them. (Ex.6, 272:11-273:4). He also said Infinity is the only customer of Sunco China, and it is owned and controlled by David and Shillock. (Ex.6, 279:13-18). In the end, Defendant

counsel alleged that Mr. Zhao knows nothing about topics No. 21 and No. 22, Mr. Zhao answered to the best of his knowledge. (Ex.6, 305:2-10; 308:9-309:10).

### B. There Was No Evasive or Obstructive Deposition Conduct by Plaintiff Witnesses

**Mr. Zhao.** Defendants' accusations of evasiveness, filibustering, or obstructive conduct are unsupported by the transcripts. Mr. Zhao testified about information reasonably available to Plaintiff, without exhaustive knowledge. Defendants did not point out a single statement that he engaged in delayed tactics or refused to answer. Plaintiff's counsel made appropriate and limited objections, which never interrupted the flow of questioning.

Defendants alleged Mr. Zhao repeatedly refused to answer questions, or answers are evasive or drawn out. However, the transcript reflects that he had, in fact, already provided the answers—either just before or after the selectively quoted excerpts that Defendants highlighted only to support their argument. Answers are to be considered in the context which is not Defendants were doing. For example, he testified that all cabinets were possibly sold to all defendant companies (Ex.5, 134:13–135:6; 135:21–24); described Sunco China's financial records (Ex. 6,174:22–176:2); explained three 2014 agreements for Plaintiff's equity transfer (Ex.6, 204:16–206:9), key for Defendants' counterclaims/affirmative defenses. He also testified about payables (Ex. 6 at 289:1–4; 291:16–24); validity of certain agreements (Ex. 6 at 207:10–12; 301:4–7); and Sunco China's search for a loan related to the counterclaims (Ex. 6 at 174:10–176:8).

**Mr. Xiao.** Mr. Xiao has a fifth-grade elementary education and has been Plaintiff's legal representative and board member since 2018. Why an illiterate person was put in the position has a heart-wrenching reason. Linda Sun feared Mr. Wu being the legal rep being thrown into jail if Sunco China violated environment law again, after Mr. Wu's resurrecting company into

compliance in 2016 after 13 years of incompliance. An honest and naïve person should be the legal rep who may take the blame if things go wrong. Mr. Xiao was chosen. (Ex.11 at 257:7 – 260:19). Mr. Xiao entrusted most work to Mr. Zhao, and if any decision is necessary, he largely relied upon Chinese counsel's advice. (Ex7, 19:19-24; 21:11-13; 107:14-18; 107:24-106:2). Sunco China was forced into financial crisis after Linda's abandonment. Few management level staff remain at Sunco China now. Opposite to Defendants' assertion, it is Plaintiff's opinion that no person is more suitable than Mr. Xiao to testify Topic 13. (Ex 7, 40:3-15, 43:14-17).

In addition, Mr. Xiao provided reasonable and sufficient testimony on Topic 13, which contains 9 subtopics (the only topic assigned to him), after sufficient preparation with both Plaintiff counsel and Chinese counsel. (Ex 7, 34:14-18; Ex 8, 189:16-190:7; Ex 7, 112-122). Mr. Xiao's inability to answer certain questions is due to Linda's previous exclusive control. Product shipment (Topic 5) is not within Mr. Xiao's designated topic and was answered by Mr. Zhao. Mr. Xiao said "when Linda Sun was around, when she had to make filings and handling purchase orders or customs clearance, she never told me about it. She would not let me know" (Ex 9, 267:21-24). For some questions, Mr. Xiao showed genuine confusion even with counsel's preparation, which could happen to any witness. For instance, he stated he did not know whether "director" is considered "management" and definition of "top manager". (Ex 8, 170:19-23).

**Mr. Wu.** Defendants again mischaracterized Mr. Wu's long or detailed answers as evasive. Indeed, many of Mr. Wu's extended responses were invited by counsel or natural response to open-ended questions. For example, when Mr. Wu offered, "[w]hy don't I just give you a general idea?", counsel explicitly responded: "[t]hat would be great, let's start there." (Ex.10 at 77:20–24).

Mr. Wu was repeatedly condemned by counsel for giving non-responsive answers. Although it is counsel's job to corner witness for a simple answer, so it can hit the point for summary judgment, response in the way counsel wants to hear does not disclose the facts. Mr. Wu was compelled to offer reasonable and thoughtful explanations, otherwise truth could not be exposed. For example, in response to a question raised in the motion - "how could it bought shares from Sunco US but Sunco US didn't own them?", Mr. Wu provided necessary explanation, unfortunately a bit long (Ex. 10 at 104:17–105:18). Mr. Wu attempted to offer underlying facts rather than a blunt yes or no. When asked about decisions regarding board appointments, he did not avoid the fact that he and Linda discussed about it, and Linda Sun made the final decision after discussion (Ex. 10 at 75:10–76:2). When asked about Sunco China's current shareholders, he also gave a straightforward answer (Ex. 10 at 88:22–89:3).

The transcript does not support the accusation of obstruction. If anything, it confirms that Defendants 'complaints are tactical, not substantive. They were not deprived of meaningful discovery. They asked all the questions they wanted to ask and the deposition proceeded without unnecessary interruption or request to adjourn. Plaintiff has participated in this process with good faith, fairness and its best ability. Defendants' effort to recast deposition conduct as sanctionable behavior is a stretch—and it undercuts the seriousness with which the Court should treat discovery sanctions.[5]

---

4. It is hypocritical for Defendants to seek sanctions when their own conducts during discovery have been far more obstructive. In contrast, Defendant Linda and David's deposition was far more evasive and lack of preparation than that of Plaintiff's. A sophisticated businessman as Linda refused to answer simple questions. On multiple occasions, her counsel had to intervene and instruct her to answer directly. David, with a degree from University of Chicago and has international business experience for almost two decades, evaded many straightforward questions. For example, he did not understand the meaning of "in writing" and argued with Plaintiff counsel on the definition.

### C. Plaintiff Invoked Attorney-Client Privilege Properly in Limited Scope

The attorney-client privilege is a well-established legal principle that protects confidential communications between a client and their attorney when made for the purpose of obtaining or providing legal advice. It covers both the giving of legal advice and the information provided by the client to enable the attorney to give sound and informed advice. *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867 (1995).

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) cited by Defendants involved the question of whether communications from lower-level employees to corporate counsel were privileged, and it reaffirmed that while attorney-client privilege protects confidential communications made for the purpose of obtaining legal advice, it does not shield the underlying facts. But here, Defendants are not seeking to compel facts told to counsel by employees—they are demanding Plaintiff disclose information provided by counsel to the client from discovery. That is a fundamentally different inquiry and may implicate not only the attorney-client privilege but also the attorney's mental impressions, strategy, and legal theories—material squarely protected under the work product doctrine. See *Hickman v. Taylor*, 329 U.S. 495 (1947).

Plaintiff counsel raised objections primarily to Defendants' seeking facts to support allegations on Defendant Linda, David and Ms. Yuan's control of defendant entities, pierce corporate veil, fraudulent transfer, reach and apply. These facts are derived from reading and analysis of hundreds of pages of financial documents of multiple Defendant entities by a CPA. Plaintiff witnesses were told the basic conclusion by counsel. Plaintiff counsel objected and advised Defendant counsel the above. Ex 6, 169;13-17. In fact, despite of objection, Mr. Zhao testified basic findings communicated by counsel to him. Ex 6, 272:17-273:13. Defendants are not prejudiced or deprived of their right to learn of such facts. The detailed facts and analysis can only

and will, be provided by an expert CPA. Moreover, lay witnesses are not lawyers. Expecting them to understand the distinction between underlying facts and privileged legal analysis and advice, especially when asked about how they came to know something — is unrealistic and unfair.[6] Defendants should not corner lay witnesses during deposition, particularly after counsel's statement that it would be provided by expert witness.

Contrary to Defendants' assertions, Plaintiff did not misuse the attorney-client privilege. Privilege was invoked only when questions sought legal strategy and attorney client communications. During Mr. Xiao's deposition, when asked what specific things Plaintiff's counsel told him, counsel timely objected with specific instruction to Mr. Xiao. Mr. Xiao struggled to understand the nuances between what question solicited attorney client privilege and what is not, due to his low education level and the added layer of difficulty from interpretation. Plaintiff had to be on the more wary side to protect the privileged information under the circumstances. Xiao, Ex 7, 30-38; 46-47; Ex 8, 181-182; Ex 9, 241-244. Zhao, Ex 6, 167-168; 241.

**D. Defendants' Accusations of Misrepresentation Are Baseless**

Defendants accuse Plaintiff of engaging in "gamesmanship" and making misrepresentations to both the Court and opposing counsel. But this accusation is yet another example of their tendency to escalate disagreements and miscast context as misconduct.

Plaintiff has never objected to producing Mr. Wu for deposition. From the outset, Plaintiff proposed remote testimony due to his documented medical conditions and fear for traveling to U.S. The fears—though perhaps not fully appreciated by Defendants or the Court—are genuine

---

[6] It is particularly more difficult considering that all witnesses required interpreters to understand the questions and express their answers. The inherent differences between the Chinese and English languages make it nearly impossible for translation to be spot-on or precise, further complicating deposition clarity and comprehension.

for a Chinese citizen navigating the current U.S. geopolitical climate. Nonetheless, this Court denied Plaintiff's request for remote testimony and ordered Mr. Wu to appear in person in either Boston or Hong Kong, placing additional cost burden on Plaintiff, a party already harmed for over $6.7 million in losses by Defendants.

To comply, Plaintiff re-designated Mr. Zhao and Mr. Xiao as 30(b)(6) witnesses and expeditiously initiated their visa applications.[7] The effort was prompt and diligent, but the visas were denied through no fault of Plaintiff. Still, Plaintiff pivoted quickly and agreed to proceed with depositions in Hong Kong. Defendants failed to secure timely permission from Hong Kong authorities despite assuring the Court their commissioner would do so. On September 18, 2025, only about a week before scheduled depositions in Hong Kong, Defendants notified Plaintiff depositions in Hong Kong is canceled. Plaintiff then not only swiftly agreed to switch to Bangkok proposed by Defendants, but Mr. Wu used additional effort to secure a renewed passport within just a few days, in order to comply with the court order. [8]

Throughout this logistical process, Plaintiff repeatedly explained its position in good faith, cleared its own counsel's calendar by dropping off key activities for multiple cases, to comply with Court deadlines, and made every reasonable effort to accommodate Defendants' constantly shifting demands. Meanwhile, Defendants insisted on a compressed schedule based on one attorney's surgery, ignored Plaintiff and its counsel's scheduling conflicts, and then failed to deliver on their own assurances. Plaintiff's three witnesses had to give up their family time for

---

[7] Plaintiff did not commit a fraud on Xiao's visa issue. Mr. Xiao explained that it is a miscommunication between Mr. Xiao and Mr. Zhao. Mr. Zhao asked Mr. Xiao to apply for US visa, Mr. Xiao answered yes thinking he needed a US visa. Later Mr. Xiao discovered he had a valid US visa. Mr. Zhao may have communicated to counsel that both needed visas before Mr. Xiao clarified to him that he already had a valid visa. And when Zhao's visa applications are rejected and he notified counsel of such, he may not have made it clear that only his visa was involved, not both Mr. Xiao and his. Plaintiff Ex.7, Para 8.
[8] Plaintiff Ex A, Para 4.

most of the National Day holidays (October 1 to 7 each year). The six-day deposition finished at 7:18 PM on October 4. This is equivalent to ask an American not to spend time with families on Thanksgiving. Three witnesses were stopped and questioned for more than three hours at Bangkok airport and were almost denied entry. [9]Notwithstanding all these setbacks, all witnesses appeared for the deposition on time in Bangkok.

Before the depositions, Plaintiff informed Defendants that Mr. Wu intended to observe the 30(b)(6) depositions as Sunco China's corporate representative. Defendants rejected this reasonable and lawful request and defaulted once again to their familiar tactic: labeling Plaintiff's conduct as "games" and filing an emergency motion based entirely on speculation rather than real harm being shown or solid legal support. This Court denied Defendants' motion and explicitly stated in the hearing that it does not want to see any further disputes concerning the depositions. Defendants nevertheless disregarded the Court's warning and filed this motion for sanctions without good basis and with a goal to oppress Plaintiff, drain their resources and waste the Court's precious time.

As to Defendants' complaints on document access, Plaintiff has repeatedly explained the limits of its recordkeeping and has produced voluminous records to the best of their effort. There is no evidence that responsive documents were withheld or that any representations were made in bad faith. See Page 4, second paragraph of this motion.

### E. No Discovery Order Was Violated

Absent a prior discovery order, Rule 37(b) is inapplicable. See *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 15 (1st Cir. 1991) ("A prerequisite to the imposition of sanctions under

---

[9] Plaintiff Ex. A, Para 5.

Rule 37(b) is the entry of a court order compelling discovery."). Their motion fails on this threshold requirement alone. Defendants 'motion proceeds as if Plaintiff disobeyed a court order. The Court never compelled any specific content for Plaintiff's interrogatory responses, nor did it find Plaintiff's Rule 30(b)(6) preparation inadequate. Defendants filed no motion to compel regarding the responses they now challenge. Additionally, Plaintiff has responded to every written discovery request within the allotted time. Plaintiff also responded to Defendants' complaint about insufficient responses - proposing revisions, clarifications, and further information. As for this court's order (docket #151) regarding depositions. Plaintiff has complied with all their obligations. On or about September 16, 2025, $35,000 was paid by Plaintiff into Plaintiff counsel's IOLTA account. Defendants have not asked for reimbursement. Three witnesses appeared at their depositions in Bangkok in time. Despite objecting to Defendants' noticing 30(b)(1) depositions on Mr. Zhao and Mr. Xiao in addition to their 30(b)(6) capacity, Plaintiff allowed Defendants to continue such depositions. [10]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 37(b) authorizes sanctions only when a party violates a discovery order. Sanctions under Rule 37(d) are similarly limited to serious failures, such as failing to appear or respond entirely. Neither rule permits severe sanctions based on alleged inadequacies in deposition testimony, especially absent a prior motion to compel or court directive.

Severe sanctions such as deeming facts established, excluding evidence, or dismissing claims, are available only under Rules 37(b), 37(c)(1), and 37(d) in defined circumstances. Rule 37(b) requires a failure to obey a discovery order; Rule 37(c)(1) applies when a party fails to

---

[10] Plaintiff Ex. A, Para 6.

provide information or identify a witness as required by Rule 26(a) or (e), and makes preclusion of that information or witness the default sanction unless the failure was substantially justified or harmless; and Rule 37(d) addresses a party's failure, after proper notice, to appear for its own deposition. The First Circuit construes 'failure to appear' strictly, such that Rule 37(d) sanctions apply only when a deponent literally fails to show up to their deposition. See R.W. Int'l Corp. v. Welch Foods, Inc., 937 F.2d 11, 15 n.2 (1st Cir. 1991) (quoting Salahuddin v. Harris, 782 F.2d 1127, 1131 (2d Cir. 1986)).

The First Circuit has emphasized that harsh sanctions such as evidence preclusion, dismissal, or default are "a grave step, not to be undertaken lightly," and are reserved for extreme cases involving an egregious breach, serious prejudice, and the inadequacy of lesser sanctions. Thibeault v. Square D Co., 960 F.2d 239, 243-47 (1st Cir. 1992).

### III. ARGUMENT

#### A. Plaintiff Should Not be Precluded from Introducing Evidence of Any Factual Basis not Disclosed by its Rule 30(b)(6) Witnesses

When a Rule 30(b)(6) witness is inadequately prepared, courts required the corporation to produce a properly prepared witness for re-deposition on the noticed topics and have considered ordering the corporation to bear the costs of that additional discovery. Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., 201 F.R.D. 33, 38–40 (D. Mass. 2001). Consistent with that approach, courts in this Circuit have characterized complete evidentiary preclusion based on alleged deficiencies in 30(b)(6) testimony as a "very severe" sanction and have declined to impose it where a designee has substantially testified and any gaps can be addressed through additional discovery. Neponset Landing Corp. v. Nw. Mut. Life Ins. Co., 279 F.R.D. 59, 61–62 (D. Mass. 2011).

Defendants are seeking far more than the law allows. They are not requesting clarification, supplementation or costs, but asking court to gut Plaintiff's claims through adverse inferences and evidence exclusion. This is not only legally unsupported, but a profound departure from established practice.

Moreover, courts have consistently held that Rule 30(b)(6) deposition testimony constitutes an evidentiary admission—not a binding judicial admission. That is, it may be introduced at trial, but it can also be rebutted or clarified by other evidence. See United States v. Belculfine, 527 F.2d 941, 944 (1st Cir. 1975) (distinguishing between evidentiary and judicial admissions). Following that reasoning, numerous courts have refused to treat 30(b)(6) testimony as conclusively binding. See Vehicle Mkt. Rsch., Inc. v. Mitchell Int'l, Inc., 839 F.3d 1251, 1261 (10th Cir. 2016) (explaining that Rule 30(b)(6) statements are not judicial admissions).

Defendants now ask this Court to preclude any evidence supporting factual positions not specifically disclosed by Plaintiff's 30(b)(6) designees. But even if those witnesses failed to recall or miscommunicated certain facts—which Plaintiff does not concede—such a sanction would be extreme. Plaintiff has already produced substantial documentary evidence supporting its factual contentions. That production was made available to Defendants through the normal course of discovery. There is no basis to erase those materials from the case merely because they were not recited by a deposition witness.

In effect, Defendants are trying to convert deposition testimony into a trap—a way to foreclose evidence and trial presentation. But discovery is not a game of "gotcha." It is a process of gathering information, not silencing litigants. The Court should reject any invitation to transform standard deposition testimony into a basis for punishing Plaintiff.

Further, such broad sanctions would unfairly prejudice Plaintiff, which has complied in good faith and provided witnesses who prepared extensively and testified in detail to the best of their effort and capabilities given the excessive challenges posed by language differences. Even if there were perceived deficiencies (which Plaintiff disputes), there is no showing of willfulness or bad faith—the prerequisites for the type of extreme sanctions Defendants now seek.

## B. Mr. Wu Should Not be Precluded from Contradicting or Supplementing Plaintiff's Rule 30(b)(6) Testimony

Defendants 'request to preclude Mr. Wu from offering any testimony that contradicts or supplements the 30(b)(6) deposition is unfounded and legally unsupported. Rule 30(b)(6) testimony is not conclusive—it is simply an evidentiary admission, and any perceived inconsistencies may be addressed at trial through cross-examination or impeachment.

Mr. Wu should not be barred from testifying to facts within his personal knowledge, even if those facts expand upon or differ from what the 30(b)(6) designees recalled. Especially in this case, Mr. Wu is more familiar with certain topics such as the 2014 shares transaction, since his company Jiangsu Qiyi was the buyer for the transaction. Mr. Wu also has the most knowledge on Plaintiff's and Jiangsu Qiyi/his defense to Defendants' counterclaim, as to why the $6.7 million owed by Defendants shall not be offset by Jiangsu Qiyi's money for 52% equity purchase. Courts routinely allow witnesses to supplement or clarify corporate testimony at trial, provided there is no undue prejudice. If Defendants believe Mr. Wu's trial testimony conflicts with the Rule 30(b)(6) record, they are free to impeach him using that record. But there is no basis to categorically silence him in advance of trial. Defendants may also use summary judgment motion to resolve some of their concerns.

In fact, barring Mr. Wu's testimony would deprive the jury from hearing direct evidence given by Sunco China's one key witness and severely hamper Plaintiff's ability to present its case. Such a restriction is inconsistent with fundamental trial fairness and should be denied.

### C. Sunco US is not Entitled to Adverse-Inference Jury Instruction on its Counterclaim

An adverse-inference or "spoliation" instruction generally requires a threshold showing that (1) the party had notice of the litigation and of the evidence's potential relevance; (2) the evidence was destroyed or not preserved; and (3) the circumstances support an inference that the evidence would have been unfavorable to the destroying party. See Testa v. Wal-Mart Stores, Inc., 144 F.3d 173, 177 (1st Cir. 1998). Courts have since reaffirmed that a spoliation-based adverse inference is permissive rather than mandatory and that a trial court may properly refuse a spoliation instruction where the proponent fails to show that the opposing party destroyed evidence while on notice of the claim and of the evidence's potential relevance. See Booker v. Mass. Dep't of Pub. Health, 612 F.3d 34, 45–46 (1st Cir. 2010).

Here, Plaintiff never destroyed any evidence. In fact, Defendant Linda Sun is the one who premediated the scheme and destroyed many corporate documents upon her flee for avoiding paying for $6.7 million of goods. Plaintiff has since made every good faith effort to locate, collect, and produce the remaining responsive documents.

Defendants' request for an adverse inference is not only unsupported by law but also completely inconsistent with the factual record. They are asking the Court to punish Plaintiff for alleged spoliation committed by Defendants themselves. To date, Plaintiff has produced hundreds of documents supporting its claims and defenses and has supplemented those productions in response to evolving discovery demands. There is no basis for concluding that Plaintiff engaged

in destruction, let alone that any alleged loss of material justifies the extraordinary remedy of an adverse-inference instruction.

Moreover, Defendants offer no evidence showing that any relevant document was destroyed after litigation was reasonably anticipated or commenced. Nor do they demonstrate that any missing information would have been unfavorable to Plaintiff. Without those foundational showings, their request for a jury instruction must be denied.

### D. Sunco US is Not Entitled to an Adverse-Inference Jury Instruction on Other Documents Not Produced

Defendants' request for an adverse-inference instruction based on other allegedly missing documents fails for the same reasons addressed above. The First Circuit requires a clear showing that the opposing party destroyed or failed to preserve documents while on notice of their relevance to the litigation. See *Testa*, 144 F.3d at 177; *Booker*, 612 F.3d at 45–46. Defendants again offer no such showing.

Plaintiff has not destroyed or concealed documents. Rather, it has engaged in reasonable document search and production —despite facing unique challenges of internal operational disruption resulting from Linda's destructive action, cross-border logistics, and technology gaps caused by Defendants' conduct. Defendants' allegation is unsupported by concrete evidence. Importantly, any gaps in production are not the result of bad faith but of practical limitations caused in part by the very parties now seeking sanctions. Linda Sun removed or destroyed corporate files when she exited the company. Plaintiff has been cooperative even under these constraints and has supplemented its responses as more information became available. Defendants' proposed inference would unfairly punish Plaintiff for circumstances largely outside its control and distort

trial record. Courts are clear that such instructions should be reserved for clear and egregious misconduct. Nothing Defendants provided here meets that standard.

### E. Defendants are Not Entitled to a Jury Instruction that Plaintiff Controls Ms. Qiong Xiao and that the Jury Can Infer from Plaintiff's Failure to Call Her as a Witness that her Testimony would be Harmful to Plaintiff

A "missing-witness" instruction permits, in limited circumstances, a jury to infer that the testimony of a witness not called by a party would have been unfavorable to that party. Such an instruction is permissible when the proponent shows that the witness is either "favorably disposed" to the opposing party or "peculiarly available" to that party, such as being within its exclusive control. Grajales-Romero v. Am. Airlines, Inc., 194 F.3d 288, 298 (1st Cir. 1999). The rationale is that "the failure of a party to produce available evidence that would help decide an issue may justify an inference that the evidence would be unfavorable to the party to whom it is available or whom it would ordinarily be expected to favor." United States v. St. Michael's Credit Union, 880 F.2d 579, 597 (1st Cir. 1989) (quoting 2 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 489 (1982)). Even when those predicates are met, whether to give a missing-witness instruction, and in what form, is a matter of trial-court discretion rather than entitlement. Latin Am. Music Co. v. Am. Soc'y of Composers, Authors & Publishers, 593 F.3d 95, 101–02 (1st Cir. 2010).

Defendants devote substantial attention to Ms. Qiong Xiao, despite never having filed a motion to compel her deposition or shown that Plaintiff controls her availability. Ms. Xiao is not an employee of Plaintiff nor was she designed as a Rule 30(b)(6) witness. Defendants took no formal action to compel her testimony. Courts do not impose sanctions for the absence of non-

party witnesses unless a party has actively suppressed that testimony or is shown to have control. See *In re New England Compounding Pharmacy, Inc.*, 2016 WL 1320757, at *3 (D. Mass. 2016). Defendants have made no such showing here.

### F.  Plaintiff should Not be Precluded from Introducing any Documents not Produced prior to September of 2025

Plaintiff concedes that it will not seek to introduce any documents that were not produced before the conclusion of the depositions. This is a fair and reasonable limit. However, Defendants' request extends beyond this boundary and seeks to exclude even documents that were produced during deposition, including two key documents Plaintiff disclosed at deposition.

The documents in question are agreements between Linda Sun and Mr. Wu, which was direct evidence to support that Jiangsu Qiyi's consideration for 52% equity in Sunco China is offset by Mr. Wu's invaluable effort in bringing company back to compliance with environment law. They were produced on the second day of six-day deposition. [11] Defendants had full and fair opportunity to address the documents and question witnesses. Their current attempt to preclude these documents is not based on actual prejudice, but rather on the fact that the documents are unfavorable to their position. Accordingly, Plaintiff respectfully submits that appropriate and equitable standard is to allow the use of any documents produced before close of depositions. Defendants' overly broad request for exclusion should be denied.

### G.  No Prejudice Justifies the Requested Sanctions

Even if the Court were to find certain discovery responses lacking, the remedy is not exclusion or adverse inference. As the First Circuit has made clear, the least severe remedy must

---

[11] Plaintiff Ex.A, Para 7.

always be considered first. See *Young v. Gordon*, 330 F.3d 76, 81 (1st Cir. 2003). In this case, Defendants have suffered no material prejudice. They obtained a dozen hours of 30(b)(6) testimony for each witness, extensive written discovery, and full access to Plaintiff's key documents. Any gaps they identify relate to minor clarifications—not critical omissions. Follow-up discovery could easily resolve them.

## IV. CONCLUSION

This is not a case of bad faith or discovery misconduct. It is a case where Plaintiff made a good-faith effort to comply, and Defendants once again demanded the harshest possible penalty. Their motion should be denied in full. Alternatively, if the Court identifies any specific gaps, Plaintiff is willing to address them through appropriate and narrowly tailored solutions.

**DATED: November 28, 2025**

PLAINTIFF,
By its attorney,

_____/s/ Connie Dai_____
Connie C. Dai (BBO#683330)
Yun Cheng (BBO# 707028)
Lions Law, P.C.
154 Wells Ave, Newton, MA 02459
(617) 682-7111 Telephone
yun@lionslawgroup.com
connie@lionslawgroup.com

_____/s/ Timothy K. Cutler_____
Timothy K. Cutler (BBO#636124)
CUTLER & WILENSKY LLP
20 Walnut Street, Suite 1
Wellesley, Massachusetts 02481
(617) 232-7500 Telephone
tim@cutlerlegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served on all counsel of record by Federal Court's electronic filing system on this 28th day of November 2025.

_____/s/ Connie Dai_____
Connie C. Dai