# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUNCO TIMBER (KUNSHAN) CO., LTD.<br>    Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>LINDA SUN, individually,<br>Defendant/Counterclaimant,<br><br>DAVID SUN, individually, SHILLOCK<br>YUAN-SUN, individually, and INFINITY<br>WOOD PRODUCTS, LLC,<br>    Defendants,<br><br>SUNCO, INC.,<br>    Reach and Apply Defendant, and<br>    Fraudulent Conveyance Defendant<br>    Counterclaimant<br><br>EASTMAN ST. DISTRIBUTORS LLC,<br>EASTMAN ST. WOODWORKS, INC.,<br>INFINITY REALTY COMPANY LLC, and<br>NEW SUN LIMITED PARTNERSHIP,<br>    Reach and Apply Defendants, and<br>    Fraudulent Conveyance Defendants. | Civil Action No. 1:22-cv-10833 |

## STATEMENT OF MATERIAL FACTS

**I.    Main Parties and Corporate Structure**

    **A.    Sunco Inc.**

1. In the 1980s, Defendant Linda Sun ("L. Sun") founded Sunco Inc. (also a Defendant in this case) with her ex-husband. The company initially operated in the gardening tools business and later transitioned, in the 1990s, to importing wooden kitchen cabinets from China for sale in the United States.  [L. Sun Dep. Vol. I (Ex. 1) at 20:11–24; 21:1–7; 33:3–5].

1

2.  From 2005 to 2010, L. Sun was the sole manager of Sunco Inc. and all the managers reported to her. [D. Sun Dep. Vol. I (Ex. 3) at 50:1-15].

3.  David Sun ("D. Sun"), L. Sun's son, began his employment with Sunco Inc. in the late 1990s and ultimately became the sole owner of Sunco Inc. by around 2011. [D. Sun Dep. Vol. I (Ex. 3) at 43:11–44:2; 70:1-6].

4.  D. Sun is the president, treasurer, secretary, and director of Sunco Inc. [*See* Massachusetts Secretary of the Commonwealth Business Entity Summary for Sunco Inc. (Ex. 8)].

### B.  Sunco China

5.  In 2003, Plaintiff Sunco Timber (Kunshan) Co., Ltd. ("Sunco China") was established in Kunshan, China, by Sunco Inc. for the manufacturing of cabinets. [L. Sun Dep. Vol. I (Ex. 1) at 34:24–37:5].

6.  From 2003 through approximately 2009, Sunco China was wholly owned by Sunco Inc. During this time, L. Sun was the president and sole owner of Sunco Inc. [L. Sun Dep. Vol. I (Ex. 1) at 37:17–24; 38:1–2, 23–24; 39:1].

7.  From 2003 through 2009, Sunco China's primary customer was Sunco Inc. From 2012 through 2015, Sunco China's sole customer was Sunco Inc. (through Defendant Infinity Wood Products LLC) and Sunco Inc.'s only supplier was Sunco China. [L. Sun Dep. Vol. I (Ex. 1) at 37:12–16; D. Sun Dep. Vol. I (Ex. 3) at 104:2-19; 220:23-24; C. Li Dep. (Ex. 6) at 43:5-7].

8.  From 2009 to 2019, L. Sun lived at Sunco China's factory because the company was losing money. [L. Sun Dep. Vol. I (Ex. 1) at 35:21–36:7].

9.  Since then, L. Sun controlled and managed Sunco China until her departure in 2019. [*See* Shillock Dep. (Ex. 5) at 256, where Shillock testified that she "always refer Sunco China as

2

Linda" because Linda "handled things for Sunco China" and "owned the company for many, many years."].

10. L. Sun was president and chairman of the board of directors of Sunco China from 2009 to at least 2019. [L. Sun Dep. Vol. II (Ex. 2) at 46:7-16. *See* also Linda's Power of Attorney documents (Ex. 9 and 10)].

11. A few days before L. Sun's flee from Sunco China on June 14th, 2019, she shredded voluminous documents and packed them into trash bags. For two to three evenings, she asked an employee Wu Shaohua to drive to her place and pick these trash bags. L. Sun further instructed this employee to throw these bags away in separate garbage bins. [Bin Zhao Dep. Vol. II (Ex. 7) at 197:14-22; 282:4-22].

   **C.    Infinity Wood Products**

12. Defendant Infinity Wood Products, LLC ("Infinity") was founded in 2008 by D. Sun and his wife, defendant Shillock Yuan-Sun ("Shillock"), who held approximately 60% and 40% ownership interests, respectively. [D. Sun Dep. Vol. I (Ex. 3) at 65:21–66:15].

13. Infinity functioned as an intermediary entity through which cabinetry products were ordered from Sunco China by Infinity who would then transfer the product to Sunco Inc. [D. Sun Dep. Vol. I (Ex. 3) at 66:16–67:13].

14. Infinity would place orders with Sunco China, and Sunco China would then ship the product (wooden cabinetry) to the U.S. Following the order fulfillment, Sunco China would invoice Infinity for the products. [D. Sun Dep. Vol. I (Ex. 3) at 104:20–105:7].

15. Historically, Infinity would pay Sunco China for the cabinetry it ordered, although payments were sometimes delayed and made on a rolling basis. Despite such delays, Infinity consistently

3

paid outstanding invoices in the ordinary course of business prior to the events at issue here. [D. Sun Dep. Vol. I (Ex. 3) at 107:12–22; 115:3-7; C. Li Dep. (Ex. 6) at 80:12-81:10].

II.     **The Transactions at Issue and Infinity's Nonpayment**

16. Between July 2, 2018 and July 7, 2019, pursuing to Infinity's purchase orders, Sunco China shipped cabinetry products to Infinity with a total value of approximately $6,712,182.11, and issued corresponding invoices for those shipments. [D. Sun Dep. Vol. II (Ex. 4) at 40:23-41:6; C. Li Dep. (Ex. 6) at 31:23–32:2; Shillock Dep. (Ex. 5) at 258:15-259:2].

17. Infinity accepted delivery of the cabinets in the ordinary course of business and received the corresponding invoices. [C. Li Dep. (Ex. 6) at 31:23–33:7; Invoices from Sunco China (Ex. 28)].

18. Neither Infinity nor Sunco Inc. paid for those cabinets, and Sunco China was never informed that the invoices would not be paid. [D. Sun Dep. Vol. I (Ex. 3) at 192:11-24; 193:21-194:2; D. Sun Dep. Vol. II (Ex. 4) at 40:23-41: 20; Shillock Dep. (Ex. 5) at 263:14-264:11].

19. Infinity admits that upon receiving the cabinets, they were transferred to Sunco Inc. to be sold. Infinity received no proceeds from the sale or transfer of the cabinets. [Infinity Defs. 'Ans. to Interrog. No. 9 and No. 11(Doc No. 116-8); Infinity Defs. 'Suppl Ans. to Interrog. No. 19 (Ex. 11) at (c)].

20. Sunco Inc. received those cabinets through Infinity without consideration, and subsequently, sold the cabinets to various vendors and/or customers for approximately $8 million. [Infinity Defs. 'Suppl Ans. to Interrog. No. 20 (Ex. 11) at (c)].

21. On April 29, 2019, D. Sun executed an "account confirmation letter" admitting that Infinity owes Sunco China $5,886,466.77 as of December 31, 2018. [See "Account Confirmation Letter." (Ex. 12)].

22. The 2021 email record between Shillock and Scott Olssen, the former accountant of Infinity, shows that Infinity has account payable to Sunco China which reflects the total amount of $6,712,182.11 worth of cabinets in issue. [Shillock Dep. (Ex. 5) at 188-191; *See* E-mail dated February 18, 2021 with attachment (Ex. 13)].

23. Catherine Li, as an employee of Sunco Inc and/or Infinity, was heavily involved in the business transactions between Sunco China and Infinity, and her duties included daily communication with Sunco China about purchase order processing, shipping, and delivery, as well as other purchasing duties. [C. Li Dep. (Ex. 6) at 78:7-18; Infinity Defs. 'Ans. to Interrog. No. 12 (Doc No. 116-8)].

24. Facing Sunco China's requests of the payment, Ms. Li testified that, despite repeated inquiries to D. Sun and others regarding unpaid invoices from Sunco China, no explanation was ever provided for the nonpayment, and she did not know why the invoices were not paid, invoices she believed should have been paid. [C. Li Dep. (Ex. 6) at 60:6-18; 61:7-62:15; Email from Sunco China to Infinity requesting payments (Ex. 29)].

## III.    The 2014 Share Transfer Related to Defendants' Affirmative Defense

25. In or around September 2014, an agreement was executed for the transfer of a 52% ownership interest in Sunco China to Jiangsu Qiyi, for a total purchase price of RMB 20 million.  [*See* 2014 share transfer agreement (both original Chinese version and the translated English version) (Ex. 14)].

26. The transferor under the agreement was Sunco Inc. and Linda Sun, and both Linda Sun and David Sun executed the agreement. [Id (Ex. 14). at Page 1 and 4].

27. The purchase price for the shares was to be paid to Sunco Inc., but in reality, the first payment of RMB 5 million was deposited to L. Sun's personal bank account. [L. Sun Dep. Vol. II (Ex. 2) at 33:16-21; 40:12-41:16; See also Ex. 14 at Page 1].

28. In the spring of 2015, Qiyi discovered that Sunco China had been engaging in illegal manufacturing without a permit from the governmental environment department since 2003.[1] [Wu Dep. Vol. II (Doc No. 199-12) at 250:3–6; 251:4–253:3; 130:9–24; 131:1–3, 16–23; 153:10–154:1; 168:16–169:11; 283:2–11].

29. On March 18, 2015, Mr. Wu, L. Sun, and Qiyi signed an agreement providing that if Mr. Wu would bring Sunco China to environmental compliance for six (6) production lines prior to December 31, 2016, then Qiyi could offset the payment of RMB 10 million against its purchase price for Sunco China's equity. [*See* Ex. 15, Arbitration Decision translated English version at P33; P38, 4-7; P. 39].

30. On March 10, 2016, Mr. Wu, L. Sun, and Qiyi signed another agreement providing that if Mr. Wu would bring Sunco China to environmental compliance for eight (8) production lines prior to December 31, 2016, then Qiyi could offset the payment of RMB 15 million against its purchase price for Sunco China's equity. [Id. at P33 second last paragraph, and P38: 4-15].

31. During 2015 through 2016, Mr. Wu successfully resolved Sunco China's environmental violations, and in July of 2016, Sunco China received an environmental permit to use eight production lines.[2] [Wu Dep. Vol. II (Doc No. 199-12) at 258:24–259:11; *See* also Arbitration Decision (Ex. 15) at P38-39].

---

[1] Sunco China did not have any external environmental protection equipment to treat the 340 tons of paint, which was directly discharged into the surrounding neighborhood causing toxic gas production, air pollution, and noise.

[2] On July 30, 2016, Kunshan Municipal Environmental Protection Bureau approved a total "annual production of 2.5 million wood mouldings and pieces, and 1,184,000 sets of furniture" and approved commencement of production; and the relevant application registration from recorded main raw and auxiliary materials including paint 340 tons/year"

32. Accordingly, the conditions for the two offset agreements have been fulfilled, and Mr. Wu or Qiyi no longer has a payment obligation to L. Sun or Sunco Inc. for the share transfer price of RMB 15 million. [Arbitration Decision (Ex. 15) at P. 39-40].

33. Despite this, Sunco Inc. later asserted that Qiyi had paid only RMB 5 million and failed to make the remaining payments. In or around July 2019, Sunco Inc. initiated arbitration proceedings requesting that Qiyi pay the remaining purchase proceeds before the Shanghai Arbitration Commission. [Id. at Page 5-6].

34. On April 29, 2021, after substantial evidentiary hearing, the arbitral tribunal ruled that the RMB 15 million obligation was extinguished through the binding offset agreements.[3] [*See* the Arbitration Decision (Ex. 15), Page 24-46].

35. The tribunal, however, ruled that Qiyi should pay Sunco Inc RMB 3 million as the penalty for the late payment of the first installment for the purchase price.[4] [Id. at Page 40-46].

36. Both L. Sun and D. Sun acknowledged the existence of that arbitral decision. [L. Sun Dep. Vol. I (Ex. 1) at 99:10-100:14; D. Sun Dep. Vol. I (Ex. 3) at 157:5-158:10].

37. The arbitral award was subsequently enforced by the Kunshan City People's Court, which confirmed that the award had been fully executed and the matter closed. As a result, no outstanding payment remains unpaid by Qiyi with respect to the 2014 share transfer. [*See*

---

[3] The arbitral tribunal determined that the RMB 15 million obligation was extinguished through binding written offset agreements under which Linda Sun's payment obligation to Mr. Wu—arising from his work in enabling the project to obtain environmental acceptance and commence production—would be set off against the share transfer price. The tribunal found that these conditions had been satisfied and that the offset was completed by July 30, 2016, thereby eliminating any remaining payment obligation. Accordingly, the tribunal rejected the claim for the RMB 15 million as already discharged

[4] The tribunal awarded RMB 3 million in liquidated damages because the Respondent failed to timely pay the earlier installment(s) due under the agreement—specifically, the payment due by December 31, 2015—constituting a breach before the subsequent offset was completed. Although the later offset agreements extinguished the remaining RMB 15 million obligation, they did not cure the prior delay, and the tribunal therefore enforced the contractual penalty (as adjusted) for that breach

Kunshan City People's Court's Notice of Case Conclusion (Ex. 16); Wu Dep. Vol. II (Doc No. 199-12) at 289:11-290:1].

IV.    **Defendants' Alleged Offset**

38.  Despite the aforementioned events and arbitration judgment, Defendants contend that the nonpayment of the cabinets in question was based solely on an alleged offset agreement made by L. Sun and Mr. Wu/Jiangsu Qiyi in connection with the 2014 share transfer. [D. Sun Dep. Vol. I (Ex. 3) at 157:5-11; 221:13-222:1; D. Sun Dep. Vol. II (Ex. 4) at 43:1-17].

39. Particularly, D. Sun testified that in 2016 or 17, L. Sun and Mr. Wu agreed that Infinity's payables would be used to offset Mr. Wu's unpaid obligation for the 52% share purchase. [D. Sun Dep.Vol. I (Ex. 3) at 157:5-11; D. Sun Dep. Vol. II (Ex. 4) at 41-43].

40. D. Sun, as the owner of Infinity and Sunco Inc., testified that he only heard about such alleged offset agreement from Linda, and never confirmed with Mr. Wu or anyone at Sunco China about the existence of this agreement. [D. Sun Dep. Vol. II (Ex. 4) at 41:23-42:20].

41. D. Sun further testified that the alleged offset agreement was not tied to any specific cabinets, did not identify the cabinets at issue, and could purportedly apply to "any cabinets" ordered at any time. He further admitted that the agreement did not reference the cabinets at issue in this case and could have been applied arbitrarily to cabinets ordered in 2017, 2018, or later. [D. Sun Dep. Vol. II (Ex. 4) at 42-47].

42. There is no documentation of such alleged offset agreement between Mr. Wu/Jiangsu Qiyi and L. Sun. Nor is there any offset agreement between Infinity and Sunco China. [D. Sun Dep. Vol. I (Ex. 3) at 158:11-17].

43. L. Sun couldn't explain or describe details about this alleged offset agreement at her deposition. [L. Sun Dep. Vol. I (Ex. 1) at 95:5-99:4; 137:15-139:19; L. Sun Dep. Vol. II (Ex. 2) at 53-60].

44. She testified that she has no knowledge or understanding of the "financial arrangement" between Infinity and Sunco China with regard to the cabinets. [L. Sun Dep. Vol. I (Ex. 1) at 137:15-139:19].

45. L. Sun never had any ownership interests in Infinity. [L. Sun Dep. Vol. I (Ex. 1) at 130:13-16].

46. D. Sun never authorized Linda to enter such alleged offset agreement. [D. Sun Dep. Vol. II (Ex. 4) at 43: 12-15].

47. After D. Sun's acquisition of 100% ownership of Sunco, Inc., L. Sun had no role in the company and was not authorized to act on behalf of it. [D. Sun Dep. Vol. I (Ex. 3) at 78:6–9; 78:23-79:6].

## V.    <u>Affiliated Entities and Interrelationships</u>

### A.  Common Ownership and Management

48. Defendant Eastman St. Distributors, LLC ("Eastman Distributors") is a Delaware limited liability company formed on February 17, 2012, and registered to do business in Massachusetts on March 9, 2012.  [*See* Ex. 17: Massachusetts Secretary of the Commonwealth, Business Entity Summary for Eastman St. Distributors, LLC; Application for Registration dated March 9, 2012; Annual report for 2021].

49. From 2012 to 2021 Eastman Distributors principal place of business was located at 35 Eastman Street, S. Easton, MA. [Id.]

50. Eastman Distributors filed its Certificate of Withdrawal in 2023 and updated its principal office location to 163 Highland Avenue, #1052, Needham, Massachusetts, and listed as "care of Sunco, Inc." [Id.].

51. D. Sun serves as Eastman Distributors' resident agent and is authorized to execute instruments affecting real property on its behalf, while Shillock is identified as manager. [Id.].

52. Defendant Eastman St. Woodworks, Inc. ("Eastman Woodworks") is a Nevada corporation formed on August 6, 2021, and registered to do business in Massachusetts on March 10, 2022. From 2022 to March of 2025, Eastman Woodworks principal place of business was located at 93 Goulding Street West Sherborn, MA, which was the personal residence of defendants D. Sun and Shillock. [*See* Ex. 18: Massachusetts Secretary of the Commonwealth, Business Entity Summary for Eastman St. Woodworks, Inc; Foreign Corp. Certificate of Registration; also, Statement of Change of Registered Agent/Registered Office].

53. In March of 2025, Eastman Woodworks updated its principal office is located at 675 S. Green Valley Parkway, #1068, Henderson, Nevada. [Id.].

54. D. Sun serves as President, Treasurer, Secretary, and Director of Eastman Woodworks. [Id.].

55. Defendant Infinity Realty Company, LLC ("Infinity Realty") is a Massachusetts limited liability company organized on June 24, 2013.  From its inception until 2022 its principal place of business was located at 35 Eastman Street, S. Easton, MA. [*See* Ex. 19: Massachusetts Secretary of the Commonwealth, Business Entity Summary for Infinity Realty Company, LLC; Certificate of Organization; also, Annual Report of 2021].

56. In 2022, Infinity Realty updated its principal place of business to Sunco, Inc. 163 Highland Avenue, #1062, Needham, Massachusetts, where its records are maintained. D. Sun is Infinity

Realty's resident agent and manager, using both the Needham business address and an address at 35 Eastman Street, South Easton, Massachusetts. [Id.].

57. D. Sun is also Infinity Realty's sole owner. [*See* D. Sun Dep. Vol. I (Ex. 3) at 166:1-9].

58. Defendant New Sun Limited Partnership ("NST") is a Massachusetts limited partnership organized on December 31, 2002. Its business address is located at 275 Washington Street, Suite 400, Newton, Massachusetts, where its records are maintained. Sunco, Inc. is identified as NST's general partner, and L. Sun is limited partner. [*See* Ex. 20: Massachusetts Secretary of the Commonwealth, Business Entity Summary for New Sun Limited Partnership; *See* also Shillock Dep (Ex. 5) at 219:13-20].

59. All affiliated entities are in common ownership and under common management. [Shillock Dep. (Ex. 5) at 169:12–170:2].

## B.  Lack of Corporate Separateness in Operations

60. Both Infinity, Sunco Inc., Eastman Distributors, and Eastman Woodworks' revenues came from the sale of cabinets that manufactured by Sunco China. [D. Sun Dep. Vol. I (Ex. 3) at 112; 155; 212].

61. Infinity Realty's revenues came from renting the warehouse to Sunco Inc. [Shillock Dep. (Ex. 5) at 125–127].

62. Sunco Inc., as the general manager of NST, would receive management fee each month. [Shillock Dep. (Ex. 5) at 220].

63. Sunco Inc. and its affiliated entities—including NST, Infinity, Eastman Distributors, and Infinity Realty—are under common ownership and their financials are consolidated. [D. Sun Dep. Vol. I (Ex. 3) at 174:18-176:11; *See* also Sunco, Inc. and Affiliates Consolidated Financial Statements and Supplementary Information Years Ended December 21, 2019 and

2018 (Ex. 21); Sunco, Inc. and Affiliates Consolidated Financial Statements and Supplementary Information Year Ended December 31, 2018 (Ex. 22); Sunco, Inc. and Affiliates Consolidates Financial Statements and Supplementary Information Years Ended December 31, 2020 and 2019 (Ex. 23); Sunco, Inc. Consolidated Financial Statements and Supplemental Schedules December 31, 2012 and 2011 (Ex. 24)].

64. Infinity has no employees and no assets of its own, and its role was limited to serving as an intermediary for transactions between Sunco China and Sunco Inc. [D. Sun Dep. Vol. I (Ex. 3) at 33: 13-16; 112:3-19; 107:12–22].

65. Prior to the event in dispute, Infinity would pay for Sunco China's invoices through receiving money from Sunco Inc. since Infinity on its own doesn't have money. [D. Sun Dep. Vol. I (Ex. 3) at 112:3-19].

66. Infinity and Sunco Inc. operated out of the same office and shared the same business address at 35 Eastman Street. [C. Li Dep. (Ex. 6) at 56:4–22; 67:9-15].

67. Eastman Street Distributors, LLC did not maintain its own employees. Instead, all services for Eastman—including accounting, customer service, and warehouse functions—were performed by employees of Sunco, Inc. [Shillock Dep. (Ex. 5) at 64:22-65:15].

68. Employees did not distinguish between these entities in practice. [C. Li Dep. (Ex. 6) at 56:23–57:12].

69. Catherine Li testified that she works for Sunco Inc. and then the company changed the name to Eastman Woodworks, Inc., but D. Sun testified that Sunco Inc. and Eastman are different entities. [C. Li Dep. (Ex. 6) at 7:20-8:20; D. Sun Dep. Vol. I (Ex. 3) at 20:18-21:8].

70. Shillock's email signature indicates that Eastman St. Woodworks is Sunco Inc's DBA. [See E-mail dated June 25, 2018 (Ex. 25)].

71. Catherine Li testified that although she understood herself to work for Sunco Inc., she worked in an office prominently labeled "Infinity Wood Products, LLC." [C. Li Dep. (Ex. 6) at 56:4–57:12].

72. She further testified that invoicing, communications, and operational work were handled without distinction between Sunco Inc. and Infinity. [C. Li Dep. (Ex. 6) at 31:3–33:2]

73. Catherine Li also testified that she reported directly to David Sun. [C. Li Dep. (Ex. 6) at 39:23–24].

74. Infinity and Sunco Inc. were both under the ownership and control of David Sun. [D. Sun Dep. Vol. I (Ex. 3) at 70:1-6; 66:16–67:13; C. Li Dep. (Ex. 6) at 49:3–14; Infinity Defs. 'Ans. to Interrog. No. 12 and 13 (Doc No. 116-8)].

75. L. Sun considered herself as a representative of the board member of Sunco Inc. [L. Sun Dep. Vol. I (Ex. 3) at 82:14-83:6].

76. Through at least 2020, all affiliated entities—Sunco Inc., Infinity, Eastman Distributors, NST, and Infinity Realty—used the same accountant and the same attorney. [Shillock Dep. (Ex. 5) at 58:19–60:11].

77. Through at least 2022, Eastman Distributors, Sunco Inc., Infinity, and Infinity Realty all maintained the same offices at 35 Eastman St. S. Easton, MA. [*See* Ex. 8, 17, and 19; *See* also C. Li Dep. (Ex. 5) at 56:4–22; 67:9-15].

### C. Commingling of Funds and Intercompany Transfers

78. Infinity Realty leased warehouse space to Sunco, Inc., which paid approximately $28,000 in monthly rent. [Shillock Dep. (Ex. 5) at 124:10-23].

79. Although a written lease agreement existed (entered into around 2011 or 2012), Sunco Inc. did not consistently deposit rent payments into Infinity Realty's accounts. Instead, the entities'

13

finances were centrally managed by a shared accountant, who would offset amounts "back and forth" among affiliated entities and issue only a net payment each month reflecting intercompany balances, rather than separate, discrete payments between entities. [Shillock Dep. (Ex. 5) at 125–127].

80. Sunco, Inc. routinely made payments on behalf of Infinity Realty to third parties, including directly paying Infinity Realty's mortgage lender and making payments to the New Sun Limited Partnership for obligations owed by Infinity Realty. [Shillock Dep. (Ex. 5) at 130–131].

81. Following Infinity Realty sold the warehouse (nominally owned by the Sun Family Trust, whose beneficiary was Infinity Realty) in 2021, the sale proceeds ($17 millions) were not retained by Infinity Realty or distributed in accordance with any formal corporate structure. Instead, proceeds were used to satisfy obligations of multiple affiliated entities, including paying severance to SUNCO, Inc.'s employees and other liabilities reflected on SUNCO, Inc.'s books. [Shillock Dep. (Ex. 5) at 154–156; D. Sun Dep. Vol. I (Ex. 3) at 163-166].

82. D. Sun and Shillock's condominium in Huntington Ave was purchased using the distributions that D. Sun received from Infinity Realty, after Infinity Realty sold the warehouse. [Shillock Dep. (Ex. 5) at 187:10-188:9].

83. L. Sun, as NST's limited partner, would make contributions to NST. [*See* E-mail dated August 13, 2018(Ex. 26)].

84. Sunco Inc, acting as general partner of NST, used NST funds to pay personal expenses on behalf of L. Sun. Although such payments were recorded as distributions to L. Sun, they were simultaneously treated on Sunco Inc's books as offsets against a purported "management fee

receivable," reflecting the internal recharacterization of funds across entities rather than discrete, arm's-length transactions.  [Shillock Dep. at (Ex. 5) 277: 1-11].

85. Sunco, Inc. wrote numerous checks totaling hundreds of thousands of dollars to L. Sun personally, the Sun Family Trust, and to tax authorities (IRS and Massachusetts DOR) on her behalf — all between roughly 2018 and 2021. The checks include large lump-sum payments to the Sun Family Trust ($50,000, $30,000, $20,000, $15,000, and multiple $10,000 payments), a direct $10,000 payment to Linda Sun, and several tax payments using her Social Security number. [L. Sun Dep. Vol. I (Ex. 1) at 106-127; *See* also various checks written to L. Sun (Ex. 27)].

86. In the deposition, L. Sun's blanket response to every single check was that she had "never seen" it, had "no idea" why the payment was made, and claimed this was the "first time" she had ever laid eyes on any of them. She offered no legitimate business purpose, salary arrangement, or consideration for any of these transfers. [L. Sun Dep. Vol. I (Ex. 1) at 106-127].

87. Sunco Inc maintained five checking accounts and one savings account at North Easton Savings Bank, and additional checking accounts at Bank of America. Eastman Woodworks maintained four checking accounts at Bank of America. Shillock managed all of these accounts across entities. [Shillock Dep. (Ex. 5) at 313:9–316:6].

88. Between 2021 and 2022, Sunco Inc and Eastman Woodworks engaged in a series of large intercompany transfers, including transfers of $84,388.39, $169,734.13, $155,000, and $88,000 from Sunco Inc to Eastman Woodworks, purportedly for attorneys' fees. Eastman Woodworks in turn transferred approximately $316,000 and $250,000 back to Sunco Inc in September 2022. When asked about a million-dollar transfer from Eastman Woodworks to

Sunco Inc, Shillock testified: "I don't know what it is for." [Shillock Dep. (Ex. 5) at 301:17–312:13].

## VI.   Sunco Inc.'s Alleged Loan

89. Defendants failed to disclose about Sunco Inc's substantial involvement in this case, and after Plaintiff counsel discovered about Sunco Inc., Defendants refused to answer questions about it in the interrogatories. [*See* Doc No. 116-8].

90. After Plaintiff successfully amended the complaint to add Sunco Inc. and other affiliated entities as fraudulent conveyance and reach & apply defendants, Defendants filed a Motion to Dismiss attempting to dismiss Sunco Inc. from this case. [See Doc No. 52, 61, 63, and 64].

91. After Defendants' Motion to Dismiss failed, Sunco Inc. finally responded to the complaint and raised counterclaims based on an alleged loan to Sunco China, more than two years after the initial pleading of this case. [See Doc No. 93 and 104].

92. There is no loan agreement or any specific terms for the purported loan from Sunco Inc. to Sunco China in 2011. [Shillock Dep. (Ex. 5) at 99:12-22].

93. There is no specific terms on when and how the loan should be repaid or what was the interest rate, and it was never reflected on the tax returns. [Shillock Dep. (Ex. 5) at 101:9-22].

94. No demand was made for the repayment of the purported loan. [Shillock Dep. (Ex. 5) at 185:20-21].

95. Under the 2014 Share Transfer Agreement, the transferor (Sunco Inc. and/or Linda) expressly agreed to bear responsibility for all liabilities arising prior to the completion of the share transfer, including any undisclosed debts, taxes, or obligations, and to indemnify transferee (Qiyi) for any resulting losses. [*See* 2014 Share transfer agreement (Ex. 14) at section 3.07].

16

96. The agreement further provides that all pre-transfer liabilities remain solely with the transferor (Sunco Inc. and/or Linda) and must be satisfied by transferor, regardless of whether third parties later seek payment from the company (Sunco China) or transferee (Qiyi). [Id. at section 3.12].

DATED:  April 17, 2026          PLAINTIFF,
Sunco Timber (Kunshan) Co., Ltd.
By its attorneys,


*/s/Yun Cheng*
Connie C. Dai (BBO#683330)
Yun Cheng (BBO# 707028)
Lion's Law, P.C.
154 Wells Ave
Newton, Massachusetts 02459
(617) 232-7503 Telephone
(781) 207-8574 Fax
connie@lionslawgroup.com
yun@lionslawgroup.com



*/s/Timothy K. Cutler*
Timothy K. Cutler (BBO#636124)
CUTLER & WILENSKY LLP
20 Walnut Street, Suite 1
Wellesley, Massachusetts 02481
(617) 232-7500 Telephone
tim@cutlerlegal.com


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this April 17, 2026.


*/s/Yun Cheng*
Yun Cheng

18