# EXHIBIT 40

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

## Expert Report

*Title of the action*

**SUNCO TIMBER (KUNSHAN) CO., LTD. V LINDA SUN, DAVID SUN, SHILLOCK YUAN-SUN, AND INFINITY WOOD PRODUCTS, LLC**

**United States District Court District of Massachusetts**

**Report of** *Jie (Jeanne) Huang* **for** *the United States District Court of Massachusetts*

| | |
|---|---|
| **Dated** | 22 December 2025 |
| **Specialist field** | Chinese private international law |
| **On behalf of** | Defendants (Linda Sun and New Sun Limited Partnership) |
| **On the instructions of** | Rubin and Rudman LLP |
| **Subject matter** | Recognition of Chinese judgments in the US |

**Dr. Jie (Jeanne) Huang** | Associate Professor

The University of Sydney Law School

Rm 641, The New Law Building F10 | The University of Sydney | NSW | 2006
+61 0451 060 221
**jeanne.huang@sydney.edu.au**

4684673_1

1

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

**Table of Contents**

**A. INTRODUCTION**..................................................................................................**3**

**B. INSTRUCTION**.....................................................................................................**6**

**C. CHINESE LAW RELIED UPON** ........................................................................**7**

**D. SPECIFIC ANSWERS** .......................................................................................**10**

D1. Does the Chinese system provide impartial tribunals and procedures compatible with the requirements of due process of law?...............................................10

    Part One  The Due Process Requirements of Chinese CPL.............................................10

    Part Two  The increasing alignment of the Chinese system with international conventions for judgment recognition and enforcement ..................................................12

    Part Three  Evidence that Chinese civil and commercial money-judgments recognized and enforced abroad........................................................................................14

D2. Is there reciprocity in the recognition of judgments between China and the United States? ...................................................................................................................16

D3. Would the Chinese judgment preclude litigation in China of the claim Sunco has brought against Mrs. Sun in the United States? By way of background, the general rule in the US is that a foreign judgment does not have a greater preclusive effect than it would have in the state where it was rendered. .............................................20

    Part One  China's Trial Proceedings...............................................................................20

    Part Two  China's Procedure for Trial Supervision.......................................................27

    Part Three   Application to this case ...............................................................................31

**E. SUMMARY**.........................................................................................................**35**

**F. QUALIFICATION**..............................................................................................**35**

**Annexures** ................................................................................................................**36**

***Declaration of*** **Dr. Jie (Jeanne) Huang**

***Specialist field:*** Chinese Private International Law

Single Expert

## A. INTRODUCTION

1. I am an associate professor and Associate Dean (postgraduate coursework) at the University of Sydney Law School (hereinafter "Usyd"). [1] I specialize in private international law, Chinese law, and dispute resolution.

2. In 2004, I started my academic career as an assistant professor of law at the Shanghai University of International Business and Economics.

3. My academic writing has appeared in more than sixty prominent Chinese or English language law journals, such as the American Journal of International Law, the European Journal of International Law, and the Chinese Journal of International Law.

4. I have written extensively on the enforceability of Mainland Chinese judgments in common-law jurisdictions and vice versa. For example, my sole-authored research monograph, *Interregional Recognition and Enforcement of Civil and Commercial Judgments: Lessons for China from US and EU Laws*, was published by Hart Publishing in the UK in its distinguished private international law series in 2014. It has been positively cited by many private international law scholars around the world. My journal papers on recognition and enforcement of foreign judgments include:

   i    Jie (Jeanne) Huang, *Developing Chinese Private International Law for Foreign Judgments*, 57 The International Lawyer 89-120 (March 2024).

   ii   Jie (Jeanne) Huang, *Consensus and Compulsion: Extra-territorial Effects of Chinese Judicial and Specially-Invited Mediation in Common Law Countries*, 1 Chinese Journal of Transnational Law 1-27 (January 2024).

---

[1] I am submitting this declaration in my personal capacity, and the views expressed herein do not necessarily represent those of my current and former employers.

***Declaration of*** **Dr. Jie (Jeanne) Huang**

***Specialist field:*** Chinese Private International Law

Single Expert

---

iii Jie (Jeanne) Huang, *Developing Chinese Private International Law for Transnational Civil Litigation: the New Chinese Civil Procedure Law*, 70 Netherlands International Law Journal 205-249 (2023).

iv Jie (Jeanne) Huang, *Reciprocal Recognition and Enforcement of Foreign Judgments in China: Promising Developments, Prospective Challenges, and Proposed Solutions*, 88 Nordic Journal of International Law 1-30 (2019).

v Jie (Jeanne) Huang, *Reciprocal Recognition and Enforcement of Foreign Judgments in China: The Proposal of a Registration System*, in Michael Douglas, Vivienne Bath, Mary Keyes, and Andrew Dickinson (Eds), Commercial Issues in Private International Law: A Common Law Perspective, (pp. 129-150), Oxford: Hart Publishing (2019).

vi Jie (Jeanne) Huang, *Enforcing Foreign Monetary Judgments in China: Breakthroughs, Challenges, and Solutions in the Context of "One Belt One Road"*, 51 George Washington International Law Review 105-144 (December 2018).

vii Jie (Jeanne) Huang, *Conflicts between Civil Law and Common Law in Judgment Recognition and Enforcement: When is the Finality Dispute Final?,* 29 Wisconsin International Law Journal 70-109, (Spring, 2011).

viii Jie (Jeanne) Huang, *Interregional Recognition and Enforcement of Civil and Commercial Judgments: Lessons for China from US and EU Laws,* 6 Journal of Private International Law 109-154 (April 2010).

ix Jie (Jeanne) Huang, *Overturning a Final Judgment Tainted by Fraud: A Comparison Between Mainland China and Hong Kong*, 15 Willamette Journal of International Law & Dispute Resolution 47-74 (2007).

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

---

5.    A full list of my academic publications is attached as **Annexure One**.

6.    I have provided expert reports on Chinese law to the Superior Court of the State of California, the County of Santa Clara, the U.S. District Court for the District of Columbia, and various courts in Australia and Hong Kong.

7.    I serve as an Arbitrator at the Hong Kong International Arbitration Center, a leading global arbitral center, the Shanghai International Economic and Trade Arbitration Commission (Shanghai International Arbitration Center), and the Beijing Arbitration Commission.  I also serve as a Director of the China Society of Private International Law.  The Society is a non-governmental organization consisting of scholars interested in private international law issues. It is the largest organization of its kind in China. The Society organizes academic conferences, publishes law journals, and makes legislative suggestions to the Chinese Government.  I have also served as co-chair of the American Society of International Law (**ASIL**) Private International Law Interest Group since 2022. ASIL is a nonprofit, nonpartisan, educational membership organization founded in 1906 and chartered by U.S. Congress in 1950. ASIL holds Special Consultative Status to the Economic and Social Council of the United Nations and is a constituent society of the American Council of Learned Societies.

8.    I received my legal education in China, the United States, and Europe.  I obtained a Doctor of Juridical Science (S.J.D.) degree from Duke University School of Law in the United States. in 2010. I also obtained an L.L.M. degree in international law and a Bachelor of Law degree from the Shanghai University of International Business and Economics School of Law in China in 2004 and 2001, respectively.  I also studied private international law at the Hague Academy of International Law, the Max Planck

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

---

Institute for Comparative and International Private Law in Germany, and the Academy of International Arbitration Law in Paris.

9.      I passed the Chinese national bar examination in 2003 and obtained my legal professional qualification certificate in 2004.  I did not renew my certificate after 2021 when I became an Australian citizen because Chinese law does not allow foreigners to hold lawyer certificates.

10.     My full profile can be found here:   https://www.sydney.edu.au/law/about/our-people/academic-staff/jeanne-huang.html

## B. INSTRUCTION

11.     I have been engaged as an independent expert witness by Rubin and Rudman LLP acting for two of the Defendants, Linda Sun (hereinafter "Mrs. Sun") and New Sun Limited Partnership, in this proceeding.[2]

12.     I am instructed that the plaintiff, Sunco Timber (Kunshan) Co. Ltd (hereinafter "Sunco Kunshan") brought an action against Mrs. Sun in China, and the Chinese court entered a judgment in Mrs. Sun's favor.[3] Sunco then brought an action against Mrs. Sun and others in Massachusetts.[4]

13.     I have been provided with the following documents:

i     Sunco Kunshan's amended complaint;

ii    Sun - Certificate of Enforceability;

iii   Sun - Fully Authenticated Judgment; and

---

[2] Letter to Jeanne Huang, dated August 29, 2024.
[3] *Id.*
[4] *Id.*

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

---

iv   E1390-2 Civil Complaint, Evidence 1_EN_Certified.

14.   I am asked to provide a declaration, as an expert on Chinese private international law, to three questions:

i   Does the Chinese system provide impartial tribunals and procedures compatible with the requirements of due process of law? By way of background, one of the defenses available to the recognition of a foreign judgment under US law is that the foreign court does not provide impartial tribunals or does not provide due process.

ii   Is there reciprocity in the recognition of judgments between China and the United States?

iii   Would the Chinese judgment preclude litigation in China of the claim Sunco has brought against Mrs. Sun in the United States? By way of background, the general rule in the US is that a foreign judgment does not have greater preclusive effect than it would have in the state where it was rendered.  Thus it is necessary to understand the preclusive effect the Chinese judgment would have in China.

15.   I am not aware of any conflict of interest, or other matter, that may affect my ability to act as an independent expert witness in this proceeding. In relation to preparing this declaration, I have had no communications with any person from the Defendant or any other company or person associated with them, other than the lawyers acting on behalf of them.

16.   I have not previously worked for or consulted with, either Plaintiff or Defendant. Although I have been asked to prepare this declaration by the lawyer for the Defendant, I consider it my professional and personal duty to offer an independent opinion to this Court. In other words, I am not acting as an advocate for any party in this declaration. Each of my opinions is wholly or substantially based on my specialized knowledge.

## C. CHINESE LAW RELIED UPON

17.   China is ***not a federal country***.  According to the Chinese Constitution, China's highest organ of state power is the ***National People's Congress*** (hereinafter "NPC") of the

4684673_1                                                                                                                      7

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

---

People's Republic of China.[5] The ***NPC Standing Committee*** is the NPC's permanent body.[6] The NPC and its Standing Committee exercise the highest legislative power of the state.[7] The NPC has powers to amend the Constitution, supervise its enforcement, and enact and amend basic laws governing criminal offenses, civil affairs, state organs, and other matters.[8] The NPC Standing Committee has the power to amend laws.[9] The Civil Procedural Law (hereinafter "CPL"), which is the most important law for civil and commercial litigation in China, was promulgated by the NPC in 1991 and most recently amended by the NPC Standing Committee in 2023.[10] It provides that foreign judgment recognition and enforcement (hereinafter "JRE") in China can be conducted either under a treaty or according to reciprocity.[11]

18.    As China's highest judicial organ, the Supreme People's Court can issue judicial interpretations to assist with the application of laws and decrees in court proceedings.[12] The judicial interpretations are legally effective.[13] and can be cited as a basis for a

---

[5] Article 57 of the Chinese Constitution, promulgated on 4 December 1982 by NPC and most recently amended on 11 March 2018.

[6] *Id*.

[7] *Id*., Article 58.

[8] *Id*., Article 62.

[9] Article 67.1.2.3.4.7.8 of the Chinese Constitution.

[10] Decision of the Standing Committee of the National People's Congress on Revising the Civil Procedure Law of the People's Republic of China (promulgated by the Standing Comm. Nat'l People's Cong., Sept. 9, 2023, effective Jan. 1, 2024) Standing Comm. Nat'l People's Cong. Gaz. (China). Civil Procedure Law of China [中华人民共和国民事诉讼法, Zhōnghuá Rénmín Gònghéguó Mínshì Sùsòng Fǎ] (promulgated by the Standing Comm. Nat'l People's Cong., Apr. 9, 1991, effective Jan. 1, 2024) [hereinafter "the CPL"], a Chinese-English bilingual version downloaded from the PKULaw database is attached hereto as **Item One of Annexure Three**. Without specification, the CPL referred in this Declaration is the 2024 CPL.

[11] Articles 298 and 299 of the CPL.

[12] Resolution of the Standing Committee of the National People's Congress Providing an Improved Interpretation of the Law (promulgated by the Standing Comm. of the Nat'l People's Cong. Gaz., June 10, 1981) Standing Comm. Nat'l People's Cong. Gaz., at 1, 1 (China).

[13] Provisions of Supreme People's Court on the Work Concerning Judicial Interpretation, Judicial Interpretation No. 20 [2021], (promulgated by the Jud. Comm. Sup. People's Ct., Dec. 11, 2006, effective June 16, 2021) Sup. People's Ct. Gaz., June 8, 2021, at art. 5 (China).

---

***Declaration of*** **Dr. Jie (Jeanne) Huang**

***Specialist field:*** Chinese Private International Law

Single Expert

judgment.[14] According to Article 546 of the Judicial Interpretations of CPL issued by the Supreme People's Court, there are two steps to judgment recognition and enforcement.[15] A foreign judgment creditor must first seek recognition and after the foreign judgment is recognized, the judgment creditor can apply to enforce it according to the same procedure which would apply for the enforcement of a domestic Chinese judgment pursuant to Part 3 (Execution Procedure) of the CPL.[16]

19.     The Supreme People's Court also issued the *Minutes of the National Court's Symposium on Foreign-related Commercial and Maritime Trials* (hereinafter "Minutes") in January 2022.[17] Minutes are judicial documents created by the Supreme People's Court to guide lower courts.[18] The Supreme People's Court allows lower courts to invoke conference minutes only in their reasoning and not as a basis of a judgment.[19] The CPL does not define reciprocity, it is widely accepted that the meaning of reciprocity in the CPL should be interpreted according to the Minutes.[20]

---

[14] *Id.,* at art.27.

[15] Judicial Interpretations of the Supreme People's Court on the Application of the Civil Procedure Law of the People's Republic of China China [最高人民法院关于适用《中华人民共和国民事诉讼法》的解释, Zuìgāo Rénmín Fǎyuàn guānyú shìyòng] (promulgated by the Judicial Comm. Sup. People's Ct., Dec. 18, 2014, amended on Dec. 23, 2020 and Mar. 33, 2022, effective Apr. 10, 2022) (China). A Chinese version downloaded from the PKULaw database is attached hereto as **Item Two of Annexure Three**.

[16] *Id.*

[17] National Court Symposium on Foreign-Related Commercial and Maritime Trial Work Meeting Minutes [全国法院涉外商事海事审判工作座谈会纪要, Quánguó Fǎyuàn Shèwài Shāngshì Hǎishì Shěnpàn Gōngzuò Zuòtánhuì Jìyào] (promulgated by the Judicial Comm. Sup. People's Ct., Dec. 31, 2021) https://cicc.court.gov.cn/html/1/218/62/409/2172.html [hereinafter "Minutes"]. A Chinese-English bilingual version downloaded from the PKULaw database is attached hereto as **Item Three of Annexure Three**.

[18] Measures for Handling Official Documents of The People's Court, Judicial Interpretation No. 22 [2012] (promulgated by the Sup. People's Ct., effective Nov. 16, 2012) Sup. People's Ct. Gaz., Nov. 16, 2012, art. 9 (China).

[19] Hou Meng, How Court Minutes Affect Trials, China Civ. Bus. L. Network (Nov. 9, 2020), http://www.fxcxw.org.cn/dyna/content.php?id=15276.

[20] Article 44 of the Minutes.

***Declaration of*** **Dr. Jie (Jeanne) Huang**

***Specialist field:*** Chinese Private International Law

Single Expert

---

## D. SPECIFIC ANSWERS

### D1. Does the Chinese system provide impartial tribunals and procedures compatible with the requirements of due process of law?

20.     The Chinese system provides impartial tribunals and procedures compatible with the requirements of due process of law in civil and commercial cases that do not involve politically sensitive matters. This is demonstrated by the requirements of Chinese CPL and evidenced from the alignment between the Chinese system and international conventions, as well as the fact that Chinese money-judgments have been recognized and enforced in the United States and other countries which have not concluded a JRE treaty with China.

### Part One  The Due Process Requirements of Chinese CPL

21.     The CPL requires that civil and commercial litigation must be heard by impartial tribunals, and parties' rights to due process of law must be fully protected.

22.     ***Firstly,*** the CPL requires impartial tribunals. Chapter Three of the CPL regulates trial organizations and Chapter Four provides conditions to disqualify judges. When deliberating on a case, a collegial bench shall adhere to the rule of majority. [21] Accordingly, deliberation transcripts shall be prepared and signed by the members of the collegial bench.[22] The dissenting opinions during deliberations shall be truthfully included in the transcripts.[23] Article 46 of the CPL explicitly indicates that judges shall handle cases impartially and shall not accept any entertainment or gifts from the parties

---

[21] Article 45 of the CPL.
[22] *Id.*
[23] *Id.*

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

---

or their litigation representatives.[24] Judges who commit embezzlement, accept bribes, practice favoritism for personal gains, or adjudicate by bending the law shall be subject to legal liability; and those suspected of any crime shall be subject to criminal liability in accordance with law.[25] The CPL also provides that under any of the following circumstances, a judge shall voluntarily disqualify himself or herself, and a party shall be entitled to request disqualification of such a judge verbally or in writing:[26]

> (1) The judge is a party to a case or is a close relative of a party to a case or a litigation representative thereof.
>
> (2) The judge is an interested party to a case.
>
> (3) The judge has any other relationship with a party to a case or a litigation representative thereof, which may affect the impartial trial of the case.
>
> (4) Where a judge accepts any treat or gift from a party to a case or a litigation representative thereof or meets with a party to a case in violation of legal provisions, a party shall be entitled to require disqualification of such a judge.

23. To request disqualification, a party shall state reasons and file a request at the beginning of the trial of a case; and a request may also be filed before the end of court debate if a party becomes aware of a reason for disqualification after the trial of a case begins.[27] Before the people's court decides whether to grant the request for disqualification, the person whose disqualification is requested shall be suspended from participating in the case, unless the case requires that emergency measures be taken.[28]

---

[24] *Id,* article 46.

[25] *Id.*

[26] *Id,* article 47. This provision applies to judges' assistants, court clerks, judicial technicians, interpreters, identification experts, and surveyors.

[27] *Id, a*rticle 48.

[28] *Id.*

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

24.     ***Secondly,*** service of process and representation of parties in a trial are critical aspects of due process of law. The Sunco Judgment was rendered in 2021 according to the 2017 CPL.[29] Both the 2024 CPL and the 2017 CPL provide detailed rules for the service of process and representation of parties.[30] Especially, the process shall be served directly on the person to be served.[31] With the consent of the person on whom a litigation document is to be served, a people's court may serve the litigation document by electronic means through which the receipt of the document can be confirmed.[32] With respect to a judgment, ruling, or consent judgment served by electronic means, if the person on whom it is served requests a paper document, the people's court shall provide such paper document.[33] Where a litigation document is served in the manner set out in the preceding paragraph, the date when the information to be served reaches the system designated by the person on whom it is served shall be the date of service.[34]

Part Two  The increasing alignment of the Chinese system with international conventions for judgment recognition and enforcement

25.     The two most important conventions for international judgment recognition and enforcement in civil and commercial cases are the Hague Convention of 30 June 2005

---

[29] Civil Procedure Law of the People's Republic of China, Order No. 71 of the President of China, the Decision of the Standing Committee of the National People's Congress on Revising the "Civil Procedure Law of the People's Republic of China" and the "Administrative Procedure Law of the People's Republic of China", adopted at the 28th Session of the Standing Committee of the 12th National People's Congress of the People's Republic of China on June 27, 2017, promulgated and effect on July 1, 2017, (hereinafter "2017 CPL"). The 2017 CPL was amended on December 24, 2021 and most recently on September 1, 2023, which became the 2024 CPL. Without specification, the CPL in this declaration refers to 2024 CPL.

[30] Section Two of Chapter Seven of the 2024 CPL and 2017 CPL apply to service of process; section Two of Chapter Five of the 2024 CPL and 2017 CPL apply to representation of parties in trials.

[31] Article 88 of the CPL (which was Article 85 of the 2017 CPL)

[32] Article 90 of the CPL (the 2017 CPL did not allow service of judgment, ruling or mediation agreement by facsimile and e-mail. For details, see article 87 of the 2017 CPL).

[33] Article 90 of the CPL.

[34] *Id*.

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

on Choice of Court Agreements (hereinafter "the Choice of Court Convention")[35] and the Convention of 2 July 2019 on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters (hereinafter "the Judgments Convention").[36] Scholarship has widely agreed on the increasing alignment of the Chinese system in civil and commercial litigations with the two conventions. These alignments demonstrate that the Chinese system in civil and commercial litigations without involving sensitive political issues complies with the requirements of due process of law.

26.    For example, Professor Guangjian Tu at Macao University published at the distinguished American Journal of Comparative Law, indicating that "[a] survey of Chinese law pertaining to the key issues raised by the [Choice of Court] Convention has demonstrated that there are no unresolvable conflicts between Chinese law and the Convention." [37] Another example is that when negotiating the Hague Judgments Convention, the Chinese delegation emphasized that State-owned enterprises should be

---

[35] Convention on Choice of Court Agreements, effective on October 1, 2015. For its text, see https://www.hcch.net/en/instruments/conventions/full-text/?cid=98. There are 37 member states up to February 3, 2025, see https://www.hcch.net/en/instruments/conventions/status-table/?cid=98. Both China and the United States have signed but not ratified the Convention. The Convention aims to ensure the effectiveness of exclusive choice of court agreements in civil and commercial matters and to ensure recognition and enforcement of judgments resulting from proceedings based on such an agreement. It only applies to civil or commercial cases involving an exclusive choice of court agreement. For comments generally, see RONALD BRAND & PAUL HERRUP, THE 2005 HAGUE CONVENTION ON CHOICE OF COURT AGREEMENTS COMMENTARY AND DOCUMENTS (2008).

[36] Convention of 2 July 2019 on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters, effective on September 1, 2023. For its text, see https://www.hcch.net/en/instruments/conventions/full-text/?cid=137. There are 30 member states up to February 3, 2025, see https://www.hcch.net/en/instruments/conventions/status-table/?cid=137. The Judgments Convention has a broader scope compared with the Choice of Court Convention and provides for the recognition and enforcement of judgments from other member states that meet the requirements set out in its Article 5 in a list of bases of jurisdiction. For comments generally, see Peter Arnt Nielsen, *The Hague 2019 Judgments Convention - from Failure to Success?*, 16 JOURNAL OF PRIVATE INTERNATIONAL LAW 205, 206–245 (2020).

[37] Guangjian Tu, *The Hague Choice of Court Convention: A Chinese Perspective*, 55 THE AMERICAN JOURNAL OF COMPARATIVE LAW 347, 365 (2007). A copy of the paper is attached as **Item Four of Annexure Three.**

---

4684673_1

13

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

equally treated with other kinds of legal persons in civil and commercial litigations, especially the judgment recognition and enforcement process.[38] This shows China's determination to provide impartial tribunals even when a party is a State-owned enterprise in civil and commercial cases. Furthermore, China designed the judgment recognition and enforcement arrangement between Mainland China and Hong Kong by modelling on the Judgments Convention. This has been considered as evidence of the Judgments Convention "to be able to influence judgments recognition instruments targeting territorial units within a country and show its model effect."[39] This also proves that China is improving its system for civil and commercial litigation by referring to due process of law under international standards.

Part Three  Evidence that Chinese civil and commercial money-judgments recognized and enforced abroad

27.    The website www.Chinajusticeobserver.com monitors the recognition and enforcement of Chinese civil and commercial judgments internationally. According to its statistics, 39 Chinese judgments have been recognized and enforced in countries such as the United States, Australia, and the United Kingdom, which do not have a JRE treaty with China.[40] This number is growing, which indicates that an increasing number of foreign courts acknowledge that the Chinese legal system provides impartial tribunals and

---

[38] Jin Sun & Qiong Wu, *The Hague Judgments Convention and How We Negotiated It*, 19 CHINESE JOURNAL OF INTERNATIONAL LAW 481, 500 (2020). A copy of the paper is attached as **Item Five of Annexure Three.**

[39] Wenliang Zhang & Guangjian Tu, *The Hague Judgments Convention and Mainland China-Hong Kong SAR Judgments Arrangement: Comparison and Prospects for Implementation*, 20 CHINESE JOURNAL OF INTERNATIONAL LAW 101, 102 (2021). A copy of the paper is attached as **Item Six of Annexure Three.**

[40] https://www.chinajusticeobserver.com/a/september-2024-update-list-of-china-s-cases-on-recognition-of-foreign-judgments (access on February 3, 2025)

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

procedures that meet the due process requirements when trying civil and commercial cases not involving sensitive political issues.

**Table: the Number of Chinese Judgments Recognized and Enforced in Non-Treaty-Jurisdictions[41]**

**Disposition of Cases on Recognition of Foreign Judgments**
**- China and Non-Treaty-Jurisdictions -**

| No. | State (Region) | Total Cases | China as the Requested State | | | | China as the State of Origin | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | Total | Granted | Dismissed | Other | Total | Granted | Dismissed | Other |
| 1 | America (USA) | 22 | 12 | 6 | 4 | 2 | 10 | 6 | 2 | 2 |
| 2 | Australia | 9 | 3 | 0 | 2 | 1 | 6 | 5 | 1 | 0 |
| 3 | British Virgin Islands(BVI) | 1 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 |
| 4 | Canada | 5 | 0 | 0 | 0 | 0 | 5 | 2 | 0 | 3 |
| 5 | Chad | 1 | 1 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| 6 | Germany | 6 | 4 | 2 | 2 | 0 | 2 | 1 | 1 | 0 |
| 7 | Israel | 2 | 1 | 0 | 1 | 0 | 1 | 1 | 0 | 0 |
| 8 | Japan | 7 | 3 | 1 | 2 | 0 | 4 | 2 | 2 | 0 |
| 9 | Kenya | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 |
| 10 | Malaysia | 2 | 1 | 0 | 1 | 0 | 1 | 0 | 1 | 0 |
| 11 | Myanmar | 1 | 1 | 0 | 0 | 1 | 0 | 0 | 0 | 0 |
| 12 | Netherlands | 1 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 |
| 13 | New Zealand | 3 | 1 | 0 | 1 | 0 | 2 | 2 | 0 | 0 |
| 14 | Singapore | 8 | 6 | 5 | 1 | 0 | 2 | 1 | 0 | 1 |
| 15 | South Korea | 11 | 9 | 3 | 5 | 1 | 2 | 2 | 0 | 0 |
| 16 | Thailand | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| 17 | UK | 4 | 2 | 1 | 1 | 0 | 2 | 2 | 0 | 0 |
| | **Total** | **85** | **46** | **19** | **21** | **6** | **39** | **26** | **7** | **6** |

Last updated: September 2024                                          © China Justice Observer

28.    Especially, in *Shanghai Yongrun Inv. Mgt. Co., Ltd. v Maodong Xu, et al*, the Appellate Division of the Supreme Court of the State of New York rejected the argument that the Chinese system did provide impartial tribunals and procedures.[42] The Court held that:

---

[41] *Id.*

[42] *Shanghai Yongrun Inv. Mgt. Co., Ltd. v Maodong Xu, et al*, the Appellate Division of the Supreme Court of the State of New York, 2022 NY Slip Op 01523 [203 AD3d 495], https://nycourts.gov/reporter//3dseries/2022/2022_01523.htm.

4684673_1                                                                           15

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

---

The allegations that defendants had an opportunity to be heard, were represented by counsel, and had a right to appeal in the underlying proceeding in the People's Republic of China (PRC) sufficiently pleaded that the basic requisites of due process were met… In any event, the reports, which primarily discuss the lack of judicial independence in proceedings involving politically sensitive matters, do not utterly refute plaintiff's allegation that the civil law system governing this breach of contract business dispute was fair.[43]

29. A similar case is *Liu v Guan*, the Hon. Justice Denis J. Butler held that "the Chinese legal system comports with the due process requirements and the public policy of New York."[44]

30. In conclusion, the Chinese system provides impartial tribunals and procedures compatible with the requirements of due process of law in civil and commercial cases without political sensitivity. The dispute between Sunco and Mrs. Sun is a commercial case and has no politically sensitive issues.

### D2. Is there reciprocity in the recognition of judgments between China and the United States?

31. There is no JRE treaty existing between China and the United States. Therefore, JRE between these two countries has to be conducted according to reciprocity under the CPL.[45] There are two types of reciprocity: *de facto* and *de jure*. *De facto* reciprocity

---

[43] *Id.*

[44] *Liu v Guan*, Index No. 71374/2019, 2020 WL 1066677 (NY Sup Ct 2020).

[45] Article 298 of the CPL.

***Declaration of*** **Dr. Jie (Jeanne) Huang**

***Specialist field:*** Chinese Private International Law

Single Expert

---

requires "actual precedents" that Chinese judgments have been recognized and enforced in a foreign country in the past.[46] Not requiring "actual precedents" where Chinese judgments have been recognized and enforced in a foreign country, *de jure* reciprocity requires showing the law of a foreign country provides a possibility to recognize and enforce a Chinese judgment.[47] Therefore, *de jure* reciprocity is often considered more JRE-friendly than *de facto* reciprocity.[48]

32.    Reciprocity of JRE has been established between China and the United States including the state of Massachusetts for the following four main reasons.

33.    Firstly, the Minutes provide that, if according to the law of the judgment-rendering country, Chinese civil and commercial judgments can be recognized and enforced in that country, people's courts can consider *de jure* reciprocity exists between China and that country.[49] Importantly, the Minutes do not require there is a precedent that a Chinese judgment has been recognized and enforced in that foreign country. According to Chapter 235, Section 23A of the Massachusetts General Laws, foreign money-judgments can be recognized and enforced in Massachusetts.[50] This law applies to Chinese money-judgments, meaning that they can be recognized and enforced in Massachusetts if satisfying the requirements under this law. Therefore, Chinese courts

---

[46] *De facto* reciprocity was formally adopted by the Supreme People's Court in *Gomi Akira v. Dalian Fari Seafood Ltd.* The recognition and enforcement of a Japanese judgment in this case was rejected by the Court because neither a treaty nor reciprocity existed between China and Japan. The Court understood reciprocity as requiring actual precedents that Chinese judgments were recognized and enforced by the Japanese courts. *Gomi Akira v. Dalian Fari Seafood Ltd. (Application of Gomi Akira (a Japanese Citizen) to Chinese Court for Recognition and Enforcement of Japanese Judicial Decision)*, (1996) 1 SPC Gazette 29.

[47] Zheng Sophia Tang, Yongping Xiao & Zhengxin Huo, Conflict of Laws in the People's Republic of China 162 (2016).

[48] Jie (Jeanne) Huang, *Developing Chinese Private International Law for Foreign Judgments: A Substitute or a Preliminary Step to Ratify the Two HCCH Conventions?*, 97 The International Lawyer, 98–99 (2024).

[49] *Id*, article 44.1.

[50] Section 23A, Chapter 235, Massachusetts General Law, https://malegislature.gov/Laws/GeneralLaws/PartIII/TitleII/Chapter235/Section23A.

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

will consider the law of Massachusetts allows the recognition and enforcement of Chinese judgments, which establishes *de jure* reciprocity with China.

34. Secondly, I note Chapter 235, Section 23A of the Massachusetts General Laws provides that a foreign judgment shall not be recognized if "judgments of this state are not recognized in the courts of the foreign state". Neither the Chinese CPL nor the Minutes forbids Chinese courts to recognize and enforce judgments rendered in Massachusetts. Therefore, Section 23A should not be applied to bar recognition and enforcement of Chinese judgments in the state of Massachusetts.

35. Thirdly, the judgment that will be rendered by the United States District Court District of Massachusetts is a federal court judgment rather than a Massachusetts state court judgment. This is important because at least three U.S. federal court money-judgments have been recognized and enforced in China, establishing not only *de jur*e but also *de facto* reciprocity between China and the United States.

    i   In 2017, *Liu Li v. Tao Li and Tong Wu,* became the first case where a Chinese court recognized and enforced a US money-judgment, which was issued by the Superior Court of California, County of Los Angeles.[51]

---

[51] 申请人刘利与被申请人陶莉、童武申请承认和执行外国法院民事判决[*Liu Li v. Tao Li and Tong Wu],* （2015）鄂武汉中民商外初字第 00026 号[(2015) Yue Wuhan Zhong Min Shang Wai Chu Zi No. 00026], 湖北省武汉市中级人民法院[the Intermediate People's Court of Wuhan City, Hubei Province]. In this case, Liu Li (Liu) concluded a Share Transfer Agreement with Tao Li (Tao) on September 22, 2013, in the US, under which Tao was to transfer 50% of the shares of Jia Jia Management Inc., a company registered in California, to Liu in return for USD 125,000, which Liu paid on September 22 and 25, 2013. Tao is Tong Wu's (Tong) wife. After receiving the money, Tao and Tong disappeared. On July 17, 2014, Liu brought an action against Tao and Tong at the Los Angeles Superior Court in California, alleging that Tao and Tong had fabricated the Share Transfer Agreement and defrauded him. The judge made a judgment for Liu. On October 19, 2015, Liu applied to the Intermediate People's Court of Wuhan City to recognize and enforce the U.S. judgment against Tao and Tong. The Wuhan court found that Tao and Tong owned real estate in Wuhan and their habitual residence was also in Wuhan, so it had jurisdiction according to Article 281 of the Chinese CPL. Because the US and China had not concluded or jointly participated in any JRE international agreements, the doctrine of reciprocity was applied to Liu's JRE application. Liu relied on *Hubei Gezhouba Sanlian* to establish *de facto* reciprocity between China and the US. The court agreed and held that reciprocity was established between the two countries. Recognition and enforcement of the U.S. judgment did not harm the fundamental legal principles of sovereignty, security, and

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

---

ii    In 2018, a second U.S. money-judgment was recognized and enforced in China, and the U.S. judgment was issued by the United States District Court for the Northern District of Illinois.[52]

iii    During the years of 2018 and 2019, in three cases, Guangzhou Intermediate People's Court recognized the compensational damages awarded by the U.S. District Court for the Central District of California or the Superior Court of California, County of Los Angeles.[53]

36.    Fourthly, Chinese courts hold that both *de jure* and *de facto* reciprocity has been established between China and the United States without requiring every U.S. state court to recognize and enforce Chinese judgments. For example, in *Hubei Gezhouba Sanlian Industrial Co., Ltd et al v. Robinson Helicopter Company, Inc*., the U.S. District Court for the Central District of California recognized and enforced a Chinese money-judgment.[54] In *Liu Li v. Tao Li and Tong Wu,* a Chinese court recognized and enforced a US money-judgment rendered by the Los Angeles Superior Court based upon *de facto*

---

social public interest in China. The court concluded that the US judgment was recognized and enforced according to Article 282 of the Chinese CPL. Chinese copies of the judgments are attached hereto as **Item Seven of Annexure Three.** *Hubei Gezhouba Sanlian Industrial Co., Ltd et. al. v. Robinson Helicopter Co., Inc*., U.S. District Court Central District of California, 2009 WL 2190187 (C. D. Cal).

[52] The U.S. judgment that the No.1 Intermediate People's Court in Shanghai decided to enforce was more than 230,000,000 RMB (33,571,950.00 USD). The Chinese judgement has not been made publicly available, but it was reported at Ming Wu, After Concluding the Judgments Convention, How Would Foreign Courts Recognize and Enforce Chinese Judgments, https://www.zhonglun.com/research/articles/7408.html; see also https://www.fangdalaw.com/practices/dispute-resolution/?lang=zh-hans, both accessed on February 2, 2025.

[53] 王安勤、曾芳申请承认与执行法院判决、仲裁裁决案件承认与执行申请审查国际司法协助裁定书[*Anqi Wang v Fang Zheng*], (2019)粤 01 协外认 3 号[(2019) Yue 01 Xie Wai Ren 3 Hao]; 夏叶青、曾芳申请承认和执行外国法院民事判决、裁定承认与执行申请审查国际司法协助裁定书[*Yeqing Xia v Fang Zheng*], (2019)粤 01 协外认 22 号[(2019) Yue 01 Xie Wai Ren 22 Hao]; Hui Jiang, Jun Huang, et al. v Fang Zeng (2018) Yue 01 Xie Wai Ren No. 21, No. 26, No. 27, No. 28, No. 32, (2019) Yue 01 Xie Wai Ren 58 Hao (((2018)粤 01 协外认 21, 26, 27, 28, 32 号,((2019)粤 01 协外认 58 号)). Chinese copies of the judgments of *Anqi Wang v Fang Zheng* and *Yeqing Xia v Fang Zheng* are attached hereto as **Item Eight of Annexure Three**.

[54] *Hubei Gezhouba Sanlian Industrial Co., Ltd et. al. v. Robinson Helicopter Co., Inc*., U.S. District Court Central District of California, 2009 WL 2190187 (C. D. Cal).

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

---

reciprocity established by *Hubei Gezhouba*.[55] Notably, the U.S. District Court for the Central District of California is a federal court and the Los Angeles Superior Court is a state court. Therefore, although Massachusetts state courts have not recognized and enforced Chinese money-judgment, Chinese courts will still consider reciprocity has been established between China and the United States. (including the State of Massachusetts).

37.    In conclusion, *de jure* and *de facto* reciprocity in JRE has been established between China and the United States (including the State of Massachusetts).

D3. Would the Chinese judgment preclude litigation in China of the claim Sunco has brought against Mrs. Sun in the United States? By way of background, the general rule in the US is that a foreign judgment does not have a greater preclusive effect than it would have in the state where it was rendered.

38.    The preclusive effect of the Chinese judgment will be analyzed in three parts: China's trial proceedings, retrial proceedings, and the circumstances of this case.

Part One  China's Trial Proceedings

39.    China's court system is characterized by "four levels and two instances of trials". The four-level court system refers to:

(1) Basic people's courts: at the level of autonomous counties, towns, and municipal districts;

(2) Intermediate people's courts: at the level of prefectures, autonomous prefectures, and municipalities;

(3) Higher people's courts: at the level of the provinces, autonomous regions, and special municipalities;

---

[55] *Liu Li v. Tao Li and Tong Wu,* (2015) Yue Wuhan Zhong Min Shang Wai Chu Zi No. 00026, the Intermediate People's Court of Wuhan City, Hubei Province.

***Declaration of*** **Dr. Jie (Jeanne) Huang**

***Specialist field:*** Chinese Private International Law

Single Expert

---

(4) The Supreme People's Court: it is the court of last resort for the whole People's Republic of China except for Macao and Hong Kong Special Administrative Regions.

In the administration of adjudication, people's courts adopt the system whereby a case should be finally decided after two trials:

(1) A judgment of a first instance usually comes from a local people's court, and a party may only bring an appeal once to the people's court at the next higher level.[56]

(2) First-instance judgments of the local people's court become legally effective, namely "final," if, within the prescribed period for appeal (typically 15 days for a party domiciled in China and 30 days for a party domiciled abroad), no party makes an appeal.[57]

(3) Judgments and orders of the court of the second instance are legally effective decisions. However, cases involving capital punishment shall be reviewed and confirmed by the Supreme People's Court before a defendant is executed.

(4) Any judgments rendered by the Supreme People's Courts as the court of the first instance shall immediately become legally effective.

40. Second-instance judgments, as well as first-instance judgments that have not been appealed within the prescribed statute of limitations, become legally binding and prevent the parties from re-litigating the same issues.

41. Article 127 of the CPL and Article 247 of the Judicial Interpretations of the CPL constitute the *res judicata* rule in China which preclude parties from bringing a subsequent lawsuit when a prior lawsuit is ongoing or has produced a legally effective judgment.

42. Article 127 of the CPL indicates that:

---

[56] Articles 182 of the CPL.
[57] *Id,* articles 171 and 286.

4684673_1

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

---

民事诉讼法 第 127 条

人民法院对下列起诉，分别情形，予以处理：

……

（五）对判决、裁定、调解书已经发生法律效力的案件，当事人又起诉的，告知原告申请再审，但人民法院准许撤诉的裁定除外；

Article 127 of the CPL

A people's court shall handle the following actions according to different circumstances:

……

(5) notifying the plaintiff to petition for retrial when a party institutes an action again for a case for which a judgment, ruling or judicial-mediation judgment has come into force, except for a ruling of a people's court which allows withdrawal of an action.

43.    Article 127 of the CPL precludes parties from relitigating a case when the prior litigation has led to an effective judgment. The remedy for the parties is to seek retrial[58] rather than bringing a subsequent lawsuit on the same subject matter between the same parties. However, parties can bring a subsequent lawsuit when, in the prior lawsuit, a people's court issued a ruling allowing the plaintiff to withdraw their action. This is because withdrawal of an action is to dispose of the plaintiff's litigation right rather than their substantive right, parties should be allowed to bring an action on the same subject matter. The policies underlying Article 127 of the CPL include avoiding duplicate litigation, creating *res judicata* of legally effective judgments, enhancing consistency of judgments, and achieving judicial economy.

---

[58] See *infra* Part Two Procedures for Trial Supervision.

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

___

44.    Details to implement Article 127 of the CPL in trial practice can be found in Article 247 of the Judicial Interpretations of the CPL, which defines duplicate litigation. Besides cases where a prior lawsuit has produced a legally effective judgment, Article 247 of the Judicial Interpretations of the CPL also precludes parties from initiating duplicate litigation in cases where a prior lawsuit is ongoing although a judgment has not been issued. The contents of Article 247 of the Judicial Interpretation of the CPL are below:

民事诉讼法司法解释 第247条
当事人就已经提起诉讼的事项在诉讼过程中或者裁判生效后再次起诉，同时符合下列条件的，构成重复起诉：
    （一）后诉与前诉的当事人相同；
    （二）后诉与前诉的诉讼标的相同；
    （三）后诉与前诉的诉讼请求相同，或者后诉的诉讼请求实质上否定前诉裁判结果。
    当事人重复起诉的，裁定不予受理；已经受理的，裁定驳回起诉，但法律、司法解释另有规定的除外。


Article 247 of the Judicial Interpretations of CPL

Where a party initiates a new lawsuit during the course of litigation or after a judgment has become effective, concerning a matter that has already been litigated, and the following conditions are all met, such action shall constitute duplicate litigation:

1. The parties in the subsequent lawsuit are the same as those in the prior lawsuit;
2. The subject matter of the subsequent lawsuit is the same as that of the prior lawsuit;
3. The claims in the subsequent lawsuit are the same as those in the prior lawsuit, or the claims in the subsequent lawsuit substantially contradict or negate the outcome of the prior judgment.

Where a party engages in duplicate litigation, the court shall issue a ruling not to accept the case. If the case has already been accepted, the court shall issue a ruling to dismiss the lawsuit, unless otherwise provided by law or judicial interpretation.

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

---

45.    Accordingly, courts are precluded from accepting a subsequent lawsuit which involves the same parties, the same subject matter, and the same claims as a prior lawsuit which is either ongoing or has produced a legally effective judgment. This rule also applies to a subsequent litigation which involves the same parties and the same subject matter where the claim contradicts or negates the outcome of a prior effective judgment. Article 247 of the Judicial Interpretations of the CPL contains three components.

46.    *Firstly,* the parties to the subsequent lawsuit must be the same as those in the prior lawsuit.[59] Even if the plaintiff and defendant positions are completely reversed, the parties should still be regarded as identical.[60] The requirement of identical parties applies to plaintiffs and defendants, their representatives and agents, and parties who succeed with rights from the prior plaintiffs and defendants.[61] It also includes the third party who has been joined in the prior litigation and has made claims independent from the plaintiff and defendant in the prior litigation.[62] This *res judicata* rule also applies to a third party who did not bring an independent claim regarding the subject matter of the prior litigation between the plaintiff and defendant but is an interested party in law to the outcome of the prior litigation, on the condition that the third party has participated in the prior litigation and assumed civil liability according to the judgment resulted from the prior litigation.[63] When the prior judgment has erga omnes effect, meaning

---

[59] Article 247 of the Judicial Interpretations of the CPL.

[60] QIANG ZHOU ed., *Understanding and Application of the Judicial Interpretation of the Civil Procedure Law of the People's Republic of China* (Leading Group of the Supreme People's Court for the Implementation of the Amended Civil Procedure Law comp., Sup. People's Ct. of the P.R.C. People's Court Press, 2022), Pages 518-21, attached hereto as Item 9 of Annexure 3.

[61] *Id.*

[62] Article 59 of the CPL.

[63] *Id.*

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

___

that when the plaintiff wins, no one may file the same lawsuit again, the *res judicata* rule precludes anyone from re-litigation.

47.    *Secondly*, the subject matter in Article 247 of the Judicial Interpretations of CPL refers to the substantive rights and obligations between the parties or their legal relationship determined in the prior lawsuit.[64] The subject matter in the subsequent lawsuit must be the same as the prior lawsuit.[65]

48.    Thirdly, claims brought by the parties in the subsequent lawsuit is the same as the claim brought in the prior lawsuit or contradict or negate with the outcome of the judgment issued in the prior litigation.[66]

49.    Exceptions to the *res judicata* rule refer to the following three circumstances:

50.    The first is the occurrence of new facts.[67] According to Article 248 of the Judicial Interpretations of the CPL, when new facts occur after a judgment has taken legal effect, and a party files a new lawsuit, the people's court shall accept the case in accordance with the law.[68] The term "new facts" refers to facts that occur after the prior judgment became legally effective.[69] It does not include facts that were not discovered or addressed in the prior judgment, nor facts that the parties failed to raise during the prior

___

[64] QIANG ZHOU ed., *Understanding and Application of the Judicial Interpretation of the Civil Procedure Law of the People's Republic of China* (Leading Group of the Supreme People's Court for the Implementation of the Amended Civil Procedure Law comp., Sup. People's Ct. of the P.R.C. People's Court Press, 2022), pages 518-21.

[65] Article 247 of the Judicial Interpretations of the CPL.

[66] *Id.*

[67] *Id*, article 248 of the Judicial Interpretations of the CPL.

[68] *Id.*

[69] QIANG ZHOU ed., *Understanding and Application of the Judicial Interpretation of the Civil Procedure Law of the People's Republic of China* (Leading Group of the Supreme People's Court for the Implementation of the Amended Civil Procedure Law comp., Sup. People's Ct. of the P.R.C. People's Court Press, 2022), pages 521-23.

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

---

lawsuit.[70] Facts that already existed before the conclusion of the prior lawsuit, but were not asserted by the parties, also do not qualify as new facts.[71]

51.　The second exception is refiling after withdrawal of the prior lawsuit.[72] In judicial practice, a plaintiff may withdraw a lawsuit and later refile it. Often, the parties, subject matter, and claims are identical to those in the original case, thus meeting the formal criteria for duplicate litigation. However, because the court did not conduct a substantive trial of the claims in the first lawsuit—due to the plaintiff's voluntary withdrawal—the second filing does not constitute duplicate litigation. Therefore, it does not violate the rule of *res judicata* under Article 127 of the CPL and Article 247 of the Judicial Interpretations of the CPL. Notably, this exception does not apply to plaintiff's withdraw in the second-instance proceedings and the procedure for trial supervision, because the court has conducted substantive trial of plaintiff's claims.[73]

> (1) In the second-instance proceedings, if the original plaintiff applies to withdraw the lawsuit, and the other parties consent, and such withdrawal does not harm the interests of the State, the public interest, or the lawful rights and interests of others, the people's court may permit the withdrawal.[74] If the withdrawal is permitted, the people's court shall concurrently rule to revoke the judgment rendered in the first instance.[75] Where the original plaintiff withdraws the action during the second-

---

[70] *Id.*
[71] *Id.*
[72] Article 336 of the Judicial Interpretations of the CPL.
[73] *Id.*
[74] *Id.*
[75] *Id.*

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

instance proceedings and subsequently files the same action again, the people's court shall not accept the case.[76]

(2) In the proceedings of trial supervision, if the first-instance plaintiff applies to withdraw the action, and the other parties consent, and such withdrawal does not harm the interests of the State, the public interest, or the lawful rights and interests of others, the people's court may permit the withdrawal.[77] If the withdrawal is permitted, the people's court shall concurrently revoke the original judgment.[78] Where the first-instance plaintiff withdraws the action during the retrial proceedings and subsequently files the same action again, the people's court shall not accept the case.[79]

52.    The third exception is retrial under the procedure for trial supervision which will be addressed below.

## Part Two  China's Procedure for Trial Supervision

53.    Chapter 16 of the CPL establishes the Procedure for Trial Supervision (retrial procedure) to retry cases that have had legally effective judgments rendered in the trial proceedings.[80] This procedure allows a party to reopen a legally effective judgment in the following circumstances according to Article 211 of the CPL:[81]

> (1) There is any new evidence that suffices to overturn the original judgment or ruling.

---

[76] *Id.*
[77] *Id*, Article 408.
[78] *Id*.
[79] *Id*
[80] Chapter 16 of the CPL.
[81] *Id*, article 211.

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

(2) The basic facts found in the original judgment or ruling are not evidenced.

(3) The primary evidence admitted in the original judgment or ruling for finding facts is forged.

(4) The primary evidence admitted in the original judgment or ruling for finding facts has not been cross-examined.

(5) For objective reasons, a party is unable to gather any primary evidence necessary for the trial of a case and applies in writing for the people's court to investigate and gather the evidence, but the people's court has not investigated and gathered the evidence.

(6) There is any erroneous application of law in the original judgment or ruling.

(7) The composition of the trial organization is illegal or any judge who shall be disqualified in accordance with law fails to be disqualified.

(8) The legal representative of a person without competency to participate in the action fails to participate in the action on behalf of the person or a party which shall participate in the action fails to participate in the action, which is not attributable to the fault of the party or the litigation representative thereof.

(9) A party's right to debate is illegally denied.

(10) A default judgment is entered against a party that has not been summonsed.

(11) The original judgment or ruling has omitted any claims or exceeded the claims of the parties.

(12) The legal instrument on which the original judgment or ruling is based has been revoked or modified.

(13) When trying the case, a judge commits embezzlement, accepts bribes, practices favoritism for personal gains, or adjudicates by bending the law.

54. The retrial brought by a party is typically conducted by a court at or above the level of an intermediate people's court.[82] A retrial can also be conducted by the court that rendered the original judgment or a court designated by the Supreme People's Court or

---

[82] *Id*, article 215.

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

---

a high people's court.[83] Notably, when a court with competent jurisdiction orders the commencement of the procedure for trial supervision, the enforcement proceedings of the original judgment will be stayed.[84] In other words, the enforcement of the original judgment shall not be stayed when a party submits a retrial application but the retrial has not been commenced by a court.[85] A retrial can be commenced in three ways.

55.    *Firstly*, a court can initiate a retrial *sua sponte* without a party's motion, when the judicial committee of that court discovers an error in a final judgment rendered by the court and deems a retrial necessary.[86] If a people's court discovers an error in a final judgment of a lower people's court, it can retry the case itself or direct a competent people's court to conduct a retrial.[87] There is no statute of limitations for a court to initiate a retrial *sua sponte*.[88]

56.    *Secondly*, the Supreme People's Prosecutor ("procuratorate" in China) or a people's procuratorate at a higher level than the court rendering the original judgment shall file a protest if the original judgment falls within one of the circumstances outlined in Article 211 of the CPL.[89] When a local people's procuratorate discovers that an effective judgment of a people's court on the same level falls under Article 211 of the CPL, the people's procuratorate may offer a procuratorial recommendation to that court and file a report with the people's procuratorate on the next level.[90] It may also request the people's procuratorate on the next level to file a protest with the corresponding

---

[83] *Id*, articles 209 and 204.
[84] *Id*, articles 217.
[85] *Id*, article 210.
[86] *Id*, article 209.
[87] *Id*.
[88] *Id*.
[89] *Id*, article 219.
[90] *Id*.

4684673_1                                                                                    29

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

people's court.[91] There is no statute of limitations for a procuratorate to offer a procuratorial recommendation or lodge a protest against an effective judgment.[92]

57. ***Thirdly***, a party to a judgment can apply to the court to commence a retrial if any of the conditions under Article 211 of the CPL occurred.[93] However, the party shall file an application within six months from the effective date of the original judgment; or under the circumstances of item (1), (3), (12), or (13) of Article 211 of the CPL, apply for retrial within six months from the day when the party knows or should have known.[94] If the court dismisses a party's petition for retrial or if a party claims that there is a clear error in the judgment rendered after retrial, the party can apply to a procuratorate for a procuratorial recommendation or to lodge a protest.[95] The people's procuratorate shall, within three months, examine the party's application and make a decision to offer or not to offer procuratorial recommendations or a decision to file or not to file a protest to the retrial court.[96] The party shall not apply again to the people's procuratorate for offering procuratorial recommendations or filing a protest.[97]

58. If the original judgment was entered by a court of the first instance, the retrial court shall conduct the retrial under the procedure of the first instance and the retrial judgment is appealable.[98] If the original judgment was entered by a court of second instance, the retrial court shall conduct the retrial under the procedure of the second instance, and the judgment entered by the retrial court shall be immediately effective.[99] If the retrial

---

[91] *Id.*
[92] *Id.*
[93] *Id*, article 211.
[94] *Id*, article 220.
[95] *Id*, article 209.
[96] *Id.*
[97] *Id.*
[98] *Id*, article 218.
[99] *Id.*

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

---

is conducted by a people's court at a higher level, the retrial shall be conducted under the procedure of the second instance, and the retrial judgment shall be immediately effective.[100]

Part Three    Application to this case

59.    The Chinese judgment of the Suzhou Intermediate People's Court of Jiangsu Province (hereinafter 'Jiangsu Judgment') would preclude litigation in China of Count VI (breach of Duty of Loyalty) and Count VII (breach of Fiduciary Duty) brought by Sunco Kunshan[101] against Mrs. Sun in the United States. This is based on four main reasons.

60.    ***Firstly,*** the Jiangsu Judgment is final, legally effective, and creates preclusive effects (namely *res judicata*) evidenced by the certificate issued by the Jiangsu Court on December 21, 2023. The Judgment was rendered under the procedure of the first instance on November 29, 2021. Sunco has 15 days to appeal because it is a party domiciled in China and Ms. Sun has 30 days to appeal as a party domiciled overseas.[102] Neither party has ever appealed, so the Jiangsu Judgment has become effective and enforceable, creating preclusive effects.[103]

61.    ***Secondly,*** I have reviewed the complaint submitted by Sunco to the District Court of Massachusetts and the Jiangsu Judgment, and compared the two documents carefully. I concluded that the Jiangsu Judgment precludes Sunco from relitigating Count VI and Count VII in China. This is because the Jiangsu Judgment and the Counts VI and VII

---

[100] *Id.*

[101] I note that the English translation of the Jiangsu Judgment translated Sunco Kunshan as "Cinke Wood Industry (Kunshan) Co., Ltd".

[102] Page 15 of the Jiangsu Judgment.

[103] The certificate was issued by the Jiangsu Court on December 21, 2023.

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

are between the same parties on the same subject matter about the same claim according to Article 127 of the CPL and Article 247 of the Judicial Interpretations of the CPL.

62.    The Jiangsu Judgment and Counts VI and VII are between the same parties: Sunco Kunshan and Mrs. Sun.

63.    The Jiangsu Judgment and Counts VI and VII address the same subject matter: the trade relationship between Sunco Kunshan as a seller and Infinity as a buyer, and the related outstanding payment (USD 6,712,182.11) as well as interest owned by Sunco Kunshan to Infinity.

64.    The Jiangsu Judgment and Counts VI and VII address the same claims brought by Sunco Kunshan against Mrs. Sun, namely (1) whether Mrs. Sun is director, shareholder, and/or President of Sunco Kunshan and (2) whether Mrs. Sun, as director, shareholder, and/or President of Sunco Kunshan, has harmed the interests of Sunco Kunshan when selling goods to Infinity which has a special relationship with her.

i    the Jiangsu Judgment resolved the dispute over the alleged liabilities of Mrs. Sun for infringing on the interests of Sunco Kunshan.[104] The preclusive effect covers the fact findings[105] and the two issues decided by the Jiangsu Judgment, namely: (1) whether or not Mrs. Sun is a shareholder of Sunco, and (2) whether or not Mrs. Sun has conducted related-party transactions and harmed the interest of Sunco Kunshan due to her special relationship with Infinity.[106] Regarding the first issue, the Jiangsu Court held that Mrs. Sun was a director instead of a shareholder of Sunco Kunshan and should assume compensation liabilities for any conduct of

---

[104] Page 1 of the Jiangsu Judgment.
[105] *Id*, pages 10-12.
[106] *Id*, page 12.

4684673_1                                                                                          32

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

related-party transactions in infringing on the interests of the company. [107] Regarding the second issue, the Jiangsu Court found that Infinity is the only customer of Sunco Kunshan, and the representative of Infinity (David Sun) is Mrs. Sun's son. Therefore, the trade between Infinity and Sunco Kunshan is related-party transactions. Nevertheless, the Jiangsu Court completely rejected Sunco's claim for lack of evidence. The Court held that[108]

"Whether a related-party transaction infringes on interests of the company depends on whether consideration is fair and whether procedures are in compliance with regulations in the related-party transaction. In this case, Cinke Wood Company [Sunco Kunshan] has no evidence to prove that there is anything unreasonable in the transactions between the company and INFINNITY [Infinity] Company; during the trial, Cinke Wood Company has also been explicit that it is unable to tell whether the transaction prices are fair. From the perspective of the transaction process, Cinke Wood Company has not been able to adduce evidence to prove any concealment by director Sun Linda of transactions between Cinke Wood Company and INFINNITY Company, nor is there any evidence to prove that the transactions are in violation of decision-making procedures set out in laws and regulations or Articles of Association of the company."

"Considering the long-term business relationship and debt-owning practice between Cinke Wood Company and INFINNITY Company, it is impossible to

---

[107] *Id*, pages 13-14.
[108] *Id*, page 14.

33

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

decide that Cinke Wood Company has sustained losses due to its failure in recovering the payment of the overdue goods as it has not taken remedial measures other than sending Payment Reminder Letter; also, it is impossible to decide that Sun Linda has infringed on interests of the company in her capacity as director."

ii    Therefore, the Jiangsu Judgment precludes litigation in China of any claims brought by Sunco against Mrs. Sun regarding issues it has determined: namely, Mrs. Sun is not a shareholder of Sunco and Mrs. Sun has not taken advantage of the relationship between Sunco and Infinity in infringing on interests of Sunco Kunshan, for which compensation is being pursued. Counts VI and VII are about (1) whether at Sunco Kunshan, Mrs. Sun allegedly served as President, director, and/or shareholder and (2) whether Mrs. Sun infringed the duties (e.g. the duty of loyalty and fiduciary duty) arising from taking these roles at Sunco Kunshan when conducting trade with Infinity.

iii   In conclusion, the claims addressed by Jiangsu Judgment covers the breach of duty of loyalty and breach of fiduciary duty brought under Counts VI and VII.

65.   Thirdly, none of the three exceptions to the *res judicata* rule exist in the Sunco case. There is no occurrence of new facts. The Jiangsu Judgment does not involve voluntary withdrawal of a lawsuit by the plaintiff. Moreover, the Jiangsu Judgment cannot be challenged by the Chinese Procedure for Trial Supervision under items (2), (4)-(11) of Article 211 of the CPL, because Sunco Kunshan has not applied for retrial within six months from the effective date of the original judgment and the statute of limitations has expired. Sunco Kunshan may apply for retrial within six months from the day when

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

---

it knows or should have known the existence of any circumstance under items (1), (3), (12), or (13) of Article 211 of the CPL.[109] However, before a Chinese retrial court decides that the enforcement of Jiangsu Judgment should be suspended and a retrial should be commenced, the Judgment's preclusive effect is intact.

66.    Therefore, the Jiangsu Judgment precludes Counts VI and VII of Sunco's complaint (USD 6,712182.11).[110]

## E. SUMMARY

67.    The Chinese system provides impartial tribunals and procedures compatible with the requirements of due process of law in civil and commercial cases without political sensitivity.

68.    There is reciprocity in the recognition and enforcement of money-judgments between China and the United States.

69.    The Jiangsu Judgment would preclude litigation in China of Counts VI and VII that Sunco Kunshan has brought against Mrs. Sun in the United States.

## F. QUALIFICATION

70.    This declaration is issued based on the best of my knowledge of the current Chinese laws and regulations. For matters not explicitly provided under the current Chinese laws and regulations, the interpretation, implementation, and application of the specific requirements under the Chinese laws and regulations are subject to the final discretion of competent Chinese legislative, administrative, and judicial authorities, and there can

---

[109] Article 220 of the CPL.

[110] This amount is claimed by Sunco in the Chinese and the U.S. proceedings, see paragraph 139 of Sunco's complaint and page 1 of the Jiangsu Judgment.

*Declaration of* **Dr. Jie (Jeanne) Huang**

*Specialist field:* Chinese Private International Law

Single Expert

be no assurance that China will not ultimately take a view that is contrary to my opinions stated above.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on 22 December 2025 in Sydney, New South Wales, Australia

*Jie Huang*

_____

Associate Professor Jie (Jeanne) Huang

## Annexures

Annexure One: Huang C.V.

Annexure Two:

1. Letter to Jeanne Huang, dated August 29, 2024
2. Sunco amended complaint;
3. Sun - Certificate of Enforceability;
4. Sun - Fully Authenticated Judgment; and
5. E1390-2 Civil Complaint, Evidence 1_EN_Certified.

Annexure Three:

1. Civil Procedure Law of China, promulgated by the Standing Comm. Nat'l People's Cong., Apr. 9, 1991, effective Jan. 1, 2024.
2. Judicial Interpretations of the Supreme People's Court on the Application of the Civil Procedure Law of the People's Republic of China, promulgated by the Judicial Comm. Sup. People's Ct., Dec. 18, 2014, amended on Dec. 23, 2020 and Mar. 22, 2022, effective Apr. 10, 2022.

4684673_1

36

***Declaration of*** **Dr. Jie (Jeanne) Huang**

***Specialist field:*** Chinese Private International Law

Single Expert

3. National Court Symposium on Foreign-Related Commercial and Maritime Trial Work Meeting Minutes, promulgated by the Judicial Comm. Sup. People's Ct., Dec. 31, 2021.

4. Guangjian Tu, *The Hague Choice of Court Convention: A Chinese Perspective*, 55 THE AMERICAN JOURNAL OF COMPARATIVE LAW 347, 365 (2007).

5. Jin Sun & Qiong Wu, *The Hague Judgments Convention and How We Negotiated It*, 19 CHINESE JOURNAL OF INTERNATIONAL LAW 481, 500 (2020).

6. Wenliang Zhang & Guangjian Tu, *The Hague Judgments Convention and Mainland China-Hong Kong SAR Judgments Arrangement: Comparison and Prospects for Implementation*, 20 CHINESE JOURNAL OF INTERNATIONAL LAW 101, 102 (2021)

7. *Liu Li v. Tao Li and Tong Wu,* (2015) Yue Wuhan Zhong Min Shang Wai Chu Zi No. 00026, the Intermediate People's Court of Wuhan City, Hubei Province.

8. Anqi Wang v Fang Zheng (2019) Yue 01 Xie Wai Ren 3 Hao; Yeqing Xia v Fang Zheng (2019) Yue 01 Xie Wai Ren 22 Hao.

9. QIANG ZHOU ed., *Understanding and Application of the Judicial Interpretation of the Civil Procedure Law of the People's Republic of China* (Leading Group of the Supreme People's Court for the Implementation of the Amended Civil Procedure Law comp., Sup. People's Ct. of the P.R.C. People's Court Press, 2022) pages 518-23.

4684673_1

37

# CURRICULUM VITAE

## Dr. Jie (Jeanne) Huang
### Associate Dean
### Sydney University Law School
### UN/CEFACT Regional Rapporteur for the Pacific
MP: +61 0451 060 221
Email: jeanne.huang@sydney.edu.au
https://www.sydney.edu.au/law/about/our-people/academic-staff/jeanne-huang.html
https://papers.ssrn.com/sol3/cf_dev/AbsByAuth.cfm?per_id=3148636

---

## Table of Contents

1. EDUCATION ..................................................................................................2

2. EMPLOYMENT ............................................................................................2

3. OTHER APPOINTMENTS ..........................................................................3

4. AWARDS & PRIZES .....................................................................................4

5. GRANTS ........................................................................................................5

6. PUBLICATIONS ...........................................................................................7

- *Books* ...........................................................................................................7

- *United Nations Contributions* .................................................................8

- *Peer-reviewed Journal Articles* ...............................................................9

- *Articles in US Student-run Journals and Editorship* ...........................13

- *Peer-Reviewed Book Chapters* ..............................................................14

- *Book Review* ............................................................................................16

7. TEACHING AWARDS ................................................................................16

8. COURSES TAUGHT ...................................................................................17

9. SUPERVISION ............................................................................................19

10. MANAGEMENT ........................................................................................20

10.1. Research Center Leadership .................................................................20

10.2. Administrative Committee Membership ..............................................21

10.3. Academic Associations, executive positions .......................................22

10.4. Editorial Boards of Academic Publications and Reviewers ................22

11. OTHER ACTIVITIES ................................................................................23

12. LANGUAGES ............................................................................................24

13. QUALIFICATIONS ...................................................................................24

14. INTERRUPTIONS TO CAREER ..............................................................24

# 1. EDUCATION

2012: International Academy of Arbitration Law, Paris, France
   *International Arbitration Certificate*
   - Merit-based tuition waiver

2007-2010: **Duke University School of Law,** Durham, North Carolina, USA (**Top 4th Law School in the US by the US News Ranking 2024**)
   *Doctor of Juridical Science (S.J.D.)*
   - Supervisors: Arthur Larson Professor Ralf Michaels (currently director of Max Planck Institute of Private International Law), Professor Paul Haagen, and Professor Paul Carrington
   - Dissertation: *Interregional Recognition and Enforcement of Civil and Commercial Judgments: Lessons for China from the US and EU Laws* (available at http://scholarship.law.duke.edu/etd/1/)
   - Merit-based tuition waiver

2008 and 2009: Hague Academy of International Law, the Hague, the Netherlands
   *Private International Law Certificate*
   - Merit-based tuition waiver in 2009
   - Assistant to Peter Trooboff, former president of the American Society of International Law

2001-2004: Shanghai University of International Business and Economics, Shanghai, China
   *LL.M.* in International Law, *summa cum laude*
   - Award for excellent academic achievements in the LL.M. program (awarded to the top three graduates)
   - Thesis (under the supervision of Professor Zhidong Chen): *An In-depth Analysis of Foreign Capital Mergers and Acquisitions of State-Owned Enterprises in China: Protecting Small and Medium Investors as a Fundamental Policy in Legislation*

1999-2001: SIFT-RMIT University International Business School, Shanghai, China
   Advanced Diploma in International Trade, *cum laude*

1997-2001: Shanghai University of International Business and Economics, Shanghai, China
   *LL.B.* in International Economic Law (J.D. equivalent), *magna cum laude*
   - Award for excellent academic achievements in the LL.B. program (awarded to the top three graduates)
   - Deputy Chief Editor, *Law School People Law Review*

# 2. EMPLOYMENT

| | |
|---|---|
| January 2026- | **Chair Professor of Comparative and Private International Law,** University of Sydney Law School |
| December 2025-January 2026 | **Interim Deputy Head of School,** University of Sydney Law School |
| 2025-present | **Associate Dean** (Postgraduate coursework in charge of one flagship general LLM program+9 specialized LLM programs), University of Sydney Law School |
| 2024-2025 | Academic Plan co-lead (Disability, 147 students), University of Sydney Law School |
| 2021-2025 | **Co-director of the University Centre for Asian and Pacific Law**, University of Sydney Law School |
| 2021-present | Inaugural Director of LLM Program, University of Sydney Law School |
| 2021-2022 | Deputy Director of the China Studies Centre, Faculty of Arts and Social Sciences, the University of Sydney |
| 2021-2022 | **Acting Associate Dean** (Higher Degree Research), the University of Sydney Law School |
| 2018-present | Associate Professor, the University of Sydney Law School |
| 2016-2018 | Senior Lecturer, University of New South Wales Faculty of Law, Sydney |
| 2013-2015 | **Associate Dean** (undergraduate teaching and learning), Shanghai University of International Business and Economics School of Law, China |
| 2011-2016 | Associate Professor and Supervisor of LLM, Shanghai University of International Business and Economics School of Law, China Titles of *Pu River Scholar (Pujiang Rencai)* since 2011 and *Dawn Scholar (Shuguang Xuezhe)* since 2013 |
| 2010-2011 | Lecturer, Shanghai University of International Business and Economics School of Law, China |
| 2004-2006 | Assistant professor, Shanghai University of International Business and Economics School of Law, China |

# 3. OTHER APPOINTMENTS

| | |
|---|---|
| 2025- | **Regional Rapporteur for the Pacific** (2025-2028) at the United Nations Centre for Trade Facilitation and Electronic Business (UN/CEFACT) under the United Nations Economic Commission for Europe |
| 2024-present | Research affiliate of the Program on Science, Technology, and Society (STS) at the **Harvard Kennedy School**, Boston, USA |
| 2024-present | Arbitrator, Beijing Arbitration Commission, China |
| 2023-present | Non-resident associate in research, **Harvard University Fairbank Centre for Chinese Studies**, Boston, USA |
| 2023 | East Asia Legal Studies Visiting Scholar at the **Harvard Law School**, Boston, USA (merit-based fee waiver) |

| | |
|---|---|
| 2023 | Visiting Professor, Faculty of Law University of Warsaw (with housing and flight stipend), Poland |
| 2022 | Senior Academic Visitor at the Commercial Law Centre, Harris Manchester College, **Oxford University**, the UK |
| 2022-present | **Co-chair**, American Society of International Law Private International Law Interest Group |
| 2022-present | **Australian expert on mission to the United Nations Centre for Trade Facilitation and Electronic Business (UN/CEFACT) under the United Nations Commission for Europe** |
| 2022 | Visiting Scholar, Max Planck Institute for Comparative and International Private Law, Hamburg, Germany |
| 2019-present | Arbitrator, Hong Kong International Arbitration Centre |
| 2016-present | Arbitrator, Shanghai International Economic and Trade Arbitration Commission (Shanghai International Arbitration Centre) |
| 2016-2019 | Arbitrator, Nanjing Arbitration Commission, China |
| 2015-present | Director of China Society of Private International Law |
| 2014-2015 | Director of Shanghai Society of Free Trade Zone |
| 2010 | Lecturing Fellow, Duke University School of Law |
| 2009 | Visiting Fellow from Abroad with a stipend, Max Planck Institute for Comparative and International Private Law, Hamburg, Germany |
| 2006-2007 | Visiting Scholar, Duke University Department of Political Science, Durham, NC |

# 4. AWARDS & PRIZES

| | |
|---|---|
| 2022-2024 | **SOAR Prize,** University of Sydney |
| 2021 | **The highest prize** of Excellent Scholarship of Private International Law in China, the Chinese Society of Private International Law- Article *Chinese Private International Law and Data Protection* (15 Journal of Private International Law 186-209, June 2019) |
| 2015 | **The highest prize** of Excellent Scholarship of Private International Law in China, the Chinese Society of Private International Law- Monograph *Interregional Recognition and Enforcement of Civil and Commercial Judgments* (Hart, 2014) |
| 2015 | Shortlist for Dong Biwu Youth Legal Achievement Award, the China Law Society- Monograph *Interregional Recognition and Enforcement of Civil and Commercial Judgments* (Hart, 2014) |
| 2014 | The third prize awarded in the Yangtze River Delta Legal Forum of the China Law Society Article- Article *The Development of Dispute Resolution Mechanism in Shanghai FTZ and the Innovation of Relevant National Legal System* |
| 2013 | The First Prize of Excellent Research Award, the Shanghai University of International Business and Economics School of Law |
| 2013 | The Second Prize of Higher Education Achievement, the Shanghai Education Commission- Project *Combination of Law and Business Knowledge in Educating International Legal Professionals* |

2013    "National 100 Excellent Management Cases for Teaching at Business Schools", China National MBA Education Instruction Committee- Teaching case design- *Employment Disputes with Foreign Employees*

2012    The First Prize of Excellent Research Award, the Shanghai University of International Business and Economics School of Law

2012    The Third Prize of Excellent Research, Shanghai Law Society- Article *Protecting and Promoting Mainland Capital Investing in Taiwan*

2010    The Second Prize of Excellent Research Award, the Shanghai University of International Business and Economics School of Law

2006    Outstanding Teacher Award, the Shanghai University of International Business and Economics School of Law

2005    Outstanding Teacher Award, the Shanghai University of International Business and Economics School of Law

2005    Award for Excellent Teaching of International Business Law, Shanghai Education Bureau

2004    The 11th T. K. Ann International Trade Award for Young Scholars, China Ministry of Commerce

# 5. GRANTS

- Jie (Jeanne) Huang (Co-CI Ping Jiang), *Rule-based International Traceability of Critical Raw Materials Supply Chains: Climate and Environmental Justice between China, Australia, and Other Selected Countries*, the University of Sydney and the Fudan University Ignition Fund 2024-2025 (AU$78,320)
- Jie (Jeanne) Huang, University of Sydney Law School Legal Scholarship Support Scheme, 2018-2025, (total AU$19,000)

  - o Conflict of laws and Cross-border Data Flow (AU$5000), 2025
  - o Develop industrial standards to achieve data interoperability between environmentally critical mineral traceability digital reporting tools (AU$4500), 2024
  - o Transparency and Security: Protecting Australia's Data in Investment Dispute Settlement (AU$3000), 2023
  - o The Future of Data Protection (AU$3000), 2022
  - o Service by Agreement: Private Contracting and Judicial Sovereignty (AU$2000), 2021
  - o The Tension between Substituted Service and the Hague Service Convention in Australia: A Proposed Solution (AU$1500), 2020

- Jie (Jeanne) Huang, SOAR Prize 2022-2023, University of Sydney (AU$150,000)
- Jie (Jeanne) Huang, Digital Citizen Foundation, research and travel grant 2023 (USD 8,500), report can be found here.
- Jie (Jeanne) Huang (Co-CI Sai Ramani Garimella), *Open Banking in a Fragmented Data World: The Complexity of Jurisdiction*, Indian Development Fund Award 2020-2021 (AU$10,000 finished)
- Jie (Jeanne) Huang (Co-CI Jiaxiang Hu), *Exporting Australian Agricultural Products to China: Upgrading the China-Australian Free Trade Agreement*, Usyd-SJTU Partnership Award 2019-2021 (AU$20,000)

- Jie (Jeanne) Huang (Co-CI Josiah Poon), *China and New Data Technologies: Cooperation and Cross-fertilization between Law, Media and Science*, The Sydney University China Studies Center Cluster Grant 2019-2021 (AU$20,000)
- Jie (Jeanne) Huang, two conference travel grants from the Sydney University China Studies Center 2019-2020 (roughly AU$2,500). (Finished)
- Jie (Jeanne) Huang (Co-CI Jiaxiang Hu), UNSW-SJTU Seed Fund, *China, Australia and FTAAP*, 2018-2019 (AU$20,000). (Finished)
- Weihuan Zhou and Jie (Jeanne) Huang, UNSW 2018 Inspiring Learning Initiative grant (AU$30,000) to develop blended learning approaches in the course of *International Business Transactions*. (Finished)
- Jie (Jeanne) Huang and Alexandra George, UNSW Law 2018 Workshop Support Scheme (WSS) grant (AU$9,130) for organizing *Private International Law and Intellectual Property: An International Guideline for Jurisdiction, Choice of Laws, and Judgment/Arbitral Award Recognition and Enforcement* workshop.
- Jie (Jeanne) Huang, UNSW Law 2017 Law Research Support Program scheme grant (AU$5,600). (Finished)
- Jie (Jeanne) Huang, UNSW Vice-Chancellor's Childcare Support Award for female researchers to present their research at prestigious national/ international conferences, 2017. (Finished)
- Jie (Jeanne) Huang, Research Grant (AU$43,197), *The Operation of E-commerce Regulations in Trans Pacific Partnership*, supported by China National Social Science Fund, general project (16BFX202) (Chinese equivalent to Australia ARC discovery project), 2016-2021. (Finished)
- Jie (Jeanne) Huang, Research Grant (USD 6,500), *Dispute Resolution Mechanism in China (Shanghai) Free Trade Zone*, supported by Shanghai Institute of International Financial Center, 2014. (Finished)
- Jie (Jeanne) Huang, Research Grant (USD 43,717), *Developing Legal Framework at China (Shanghai) Free Trade Zone*, supported by Shanghai University of International Business and Economics, 2013-2014. (Finished)
- Jie (Jeanne) Huang, Research Grant (USD 43,717), *TPP's Impacts upon Asian-Pacific Regional Economic Integration and China's Strategies*, supported by the China Ministry of Education and Shanghai University of International Business and Economics, 2013-2015. (Finished)
- Jie (Jeanne) Huang, Scholarship, Academy of International Arbitration Law, Paris, France, 2012.
- Jie (Jeanne) Huang, Research Grant (USD 6,200), *The Development of the TPP and China's Strategies*, supported by the China Law Society Fund, 2012-2013. (Finished)
- Jie (Jeanne) Huang, Research Grant (USD 2,600), *The Impacts of the TPP upon Shanghai as an International Trade Center*, supported by Shanghai Government Development and Research Center Fund, 2012-2013. (Finished with excellence).
- Jie (Jeanne) Huang, Research Grant (USD 6,200), *The Impacts of the TPP upon the ECFA and China's Strategies*, supported by Shanghai Philosophy and Social Science Fund, 2012-2013. (Finished with excellence).
- Jie (Jeanne) Huang, Research Grant (USD 7,720), *International Arbitration of Intellectual Property Disputes: The Lessons for China from the WTO and WIPO*, supported by the Key Project of Innovation Program of Shanghai Municipal Education Commission, 2011-2013.

- Jie (Jeanne) Huang, Research Grant (USD 12,858), *Shanghai and Taiwan Judicial Assistance and Economic Cooperation*, supported by Shanghai Pujiang Rencai Plan (Pu River Scholar Plan), October 2011- October 2013. (Finished)
- Jie (Jeanne) Huang, Research Grant (USD 1,160), *Analysis of Mainland Capital Investing in Taiwan—From the Perspective of Economic Cooperation Framework Agreement between Mainland China and Taiwan,* supported by Shanghai Law Society Junior Professor Program, April 2011- December 2011. (Finished with 3rd prize award)
- Scholarship, The Hague Academy of International Law, The Netherlands, July 2009.
- Summer Research Grant at The Hague Academy of International Law, the US Friends of the Hague Academy, July 2008.
- O'Melveny & Myers LLP Shanghai Legal Scholarship, 1st level prize, 2003 (Awarded to only three young scholars in Shanghai that year).
- Konrad-Adenauer-Foundation Scholarship for Excellent Thesis, 2002-2003.

# 6. PUBLICATIONS

(13 SJR Q1 journal papers, 6 Q2 papers, and 18 SSCI papers)
Although I currently publish under my English name ('Jie (Jeanne) Huang'), some early works were published under my Chinese name ('Jie Huang', '黄洁'). Subsequent citations use both attributions.

- *Books*

    #6    Jie (Jeanne) Huang, *Conflicts in Regulating Cross-border Data Flow: A Comparative Study between China and the West*, (forthcoming 2025, Bloomsbury Hart Publishing, 130,000 words)

    #5    Jie (Jeanne) Huang, *China and the International E-commerce and Digital Trade Law: the case* of *the Comprehensive and Progressive Trans-Pacific Partnership 中国应对《全面与进步跨太平洋伙伴关系协定》电子商务和数字贸易运行规则的研究* (University of International Business and Economics Press, August 2022, Beijing China, ISBN：9787566323989, 262,000 words)
    - This monograph was cited in the UN/CEFACT Bureau Minutes under the external liaison segment at the October 2022 Bureau Meeting.
    - Reviewed at https://ilareporter.org.au/2023/04/book-review-china-and-the-international-e-commerce-and-digital-trade-law-david-markus/.
    - Reviewed at Qirui Chi, 'Book Review: Zhongguo Yingdui "Quanmian Yu Jinbu Kuataipingyang Huoban Guanxi Xieding" Dianzi Shangwu He Shuzi Maoyi Yunxing Guize de Yanjiu [中国应对《全面与进步跨太平洋 伙伴关系协定》电子商务和 数字贸易运行规则的研究][China and International E-Commerce and Digital Trade Law: The Case of CPTPP] by Jeanne (Jie) Huang' (2024) 1 Chinese Journal of Transnational Law 80.

- Reviewed at Shanghai University of Foreign Trade and Economics Law School website: https://www.suibe.edu.cn/fxy/2024/1106/c4679a178047/page.htm

#4    Jie (Jeanne) Huang, China's Free Trade Agreement Strategy: a Critical Study in the Context of the Trans-Pacific Partnership Agreement *TPP 视野下的中国自由贸易区战略研究*(Shanghai People's Press, January 2016, ISBN 978-7-208-13469-0/D·2778, 300,000 words and 401 pages).
- I was interviewed for this monograph by Channel News Asia.

#3    Jie (Jeanne) Huang (ed.), *International Business Transactions: Chinese and Comparative Perspectives 国际商法研究*(October 2017 the Foreign Language Teaching and Research Press China, which is the largest foreign language publisher in China, ISBN 9787513595339, 389 pages, 380,000 words)

#2    Jie (Jeanne) Huang, *Interregional Recognition and Enforcement of Civil and Commercial Judgments: Lessons for China from US and EU Laws* (Bloomsbury Hart Publishing of the United Kingdom in February 2014, 331 pages)
- Reviewed by Armenopoulos (the Thessaloniki Bar Review) in May 2014, Rabels Zeitschrift (The Rabel Journal of Comparative and International Private Law) in April 2015, and Asian Journal of Comparative Law in May 2015

#1    Jie (Jeanne) Huang, *Legal Theory of International Commercial Arbitration and Its Practical Implications 国际仲裁的法理思考和实践指导*(Peking University Press, May 2010).(Translation of Emmanuel Gaillard, Aspects philosophiques du droit de l'arbitrage international [Martinus Nijhoff Publishers 2008]).

- *United Nations Contributions*

  UN Economic Council for Europe (UNECE), UN Centre for E-commerce and Trade Facilitation (UN/CEFACT)

  ---Co-Lead editor of the UNECE, UN/CEFACT Critical Minerals Traceability and Sustainability project (2025-2027), lead of the legal stream (2023-2027).

  ---Project lead of the UNECE, UN/CEFACT White Paper on Digital Product Passports & Critical Raw Materials for Batteries: Legal Conflicts and Principles for Cross-Border Cooperation (2025).

  ---Contributor to the UNECE, UN/CEFACT White Paper on Digital Product Conformity Certificate Exchange (2023).

  ---Contributor to the UNECE, UN/CEFACT White Paper on Transfer of Model Law on Electronic Transferable Records – Compliant Titles (2023).

  UN Commission for International Trade Law

---Presentation at the UNCITRAL National Coordination Committee for Australia (UNCCA) May Seminar 2025 on *International Sales in the Digital Age: Celebrating 20 years of the Electronic Communications Convention and 45 years of the CISG*

---Presentations at the UNCITRAL Asia-Pacific Day (China Wuhan University 2019, (Sydney University 2024).

---I was selected by the American Society of International Law as an official observer to attend the United Nations Commission on International Trade Law (UNCITRAL) Working Group II (dispute resolution). I provided consultations on technology-related arbitration to UNCITRAL at its 77th session, February 2023, in New York.

---Jie (Jeanne) Huang, *Vietnam's E-commerce Regulations: Free Flow of Information and Implications for UNCITRAL Works on E-commerce,* published at the UNCITRAL website and presented this research at the 50th Anniversary Congress of United Nations Commission on International Trade Law, 2017, Vienna.

- *Peer-reviewed Journal Articles*

#48   Jie (Jeanne) Huang, Ronald A. Brand, Sarah Prosser, and Carlos M.Vázquez, Developments in Private International Law in the Year of 2023: the U.S. and Beyond, 118 Proceedings of the ASIL Annual Meeting (2024), pp. 375-386. SSCI.

#47   Yue Zhang, Zhengxin Huo, Yue Zhang, Jie (Jeanne) Huang, and Xuemei Yang, *China's Looted Cultural Property: Historical Injustice and Current Dilemma*, 118 Proceedings of the ASIL Annual Meeting (2024), pp. 109-124. SSCI.

#46   Jie (Jeanne) Huang, *The Rise of Data Property Rights in China: How Does It Compare with the EU Data Act and What Does It Mean for Digital Trade with China?* 27 Journal of International Economic Law 462-479 (September 2024), **Q1, SSCI. ABDC-A Journal.**

#45   Jie (Jeanne) Huang, *Can Private Parties Contract Out of the Hague Service Convention? Journal of Private International Law* (August 2024). Cited by Hague Conference on Private International Law ([here](here) and [here](here)), the major intergovernmental organization for private international law conventions.

#44   Jie (Jeanne) Huang, *The Indian Satellite Saga and Retaliation: Recognizing the Supreme Court of India's Judgment Abroad*?, American Society of International Law Insights, Volume 28, Issue 6 (June 2024).

#43   Jie (Jeanne) Huang, *Consensus and Compulsion: Extra-territorial Effects of Chinese Judicial and Specially-Invited Mediation in Common Law Countries*, 1 Chinese Journal of Transnational Law 1-27 (January 2024)

#42   Jie (Jeanne) Huang, *Developing Chinese Private International Law for Transnational Civil Litigation: the New Chinese Civil Procedure Law*, 70 Netherlands International Law Review 205-249 (2023). **Q1**. (Statistical methods)

#41   Jie (Jeanne) Huang, *Conflicting Declarations under the Hague Service Convention amid the Russo-Ukrainian War: Dilemmas and Preliminary Solutions*, 116 (4) **American Journal of International Law** 752-763 (October 2022). **SSCI. Q1**.

#40   Jie (Jeanne) Huang, Enforcing Judgments in China: Comparing the Conference Minutes of the Supreme People's Court with the Hague 2019 Judgments Convention, American Society of International Law Insights, Volume 26, Issue 11, 12 October 2022.

#39   Jie (Jeanne) Huang, *Substituted Service in Australia: Problem, Tension, and Proposed Solution,* 18 (1) Journal of Private International Law 113-145 (2022).

#38   Jie (Jeanne) Huang, *Conflicts and Tentative Solutions to Protecting Personal Data in Investment Arbitration*, 32 (4) **European Journal of International Law** 1191–1220 (2021). **Q1. SSCI**. **ABDC-A Journal.**

#37   Jie (Jeanne) Huang & May Fong Cheong, *Marriage Transmitted Debts in the Chinese Civil Code: the Beginning of a Solution Rather Than the End*, Feminist Legal Studies (2021). **Q1. SSCI**. (Statistical methods)

#36   Jie (Jeanne) Huang & Dan Xie, *Data Protection Law in Investment Arbitration: Applicable or Not*, 37(1) Arbitration International 167-196 (2021). **Q2.**

#35   Jie (Jeanne) Huang, *The Latest Generation of SEZs: Consumer-Oriented Unilateralism in China's E-commerce Trade*, 24 Journal of International Economic Law 299-320 (June 2021). **Q1. SSCI**. **ABDC-A Journal.**

#34   Jie (Jeanne) Huang, *Applicable Law for Transnational Data Protection: Trends and Dynamics*, 21(6) German Law Journal 1283-1308 (2020). **Q1.**

#33   Jie (Jeanne) Huang, *Internet (Un)immunity: Where does China Stand?*, 7 Asian Journal of Law and Society 345-368 (2020). **Q2.**

#32   Jie (Jeanne) Huang, *Can Trade Dispute Resolution Mechanisms Enhance State Compliance with International Health Regulations? Insights from MARPOL 73/78*, American Society of International Law Insight, Volume 24, Issue 8, 2020

#31   Jie (Jeanne) Huang, *Chinese Private International Law and Data Protection*, 15 Journal of Private International Law 186-209 (June 2019).

#30   Jie (Jeanne) Huang, *Reciprocal Recognition and Enforcement of Foreign Judgments in China: Promising Developments, Prospective Challenges, and Proposed Solutions*, 88 Nordic Journal of International Law 1-30 (2019). Q3

#29   Haifeng Deng and Jie (Jeanne) Huang, *What Should China Learn from the CPTPP Environmental Provisions?* 13 Asian Journal of WTO and International Health Law 511-550 (September 2018) **SSCI**, ISSN: 1819-5164.

#28    Jiaxiang Hu and Jie (Jeanne) Huang, *Dispute Resolution Mechanisms and Organizations in the Implementation of "One Belt, One Road" Initiative: Whence and Whither*, 52 Journal of World Trade (August 2018) 815-838, **SSCI**, **Q2**.

#27    Jie (Jeanne) Huang, *Procedural Models to Upgrade BITs: China's Experience,* 31 Leiden Journal of International Law 93-115 (March 2018), **Q1. SSCI**. (Statistical methods)

#26    Jie (Jeanne) Huang, *Partially Modernized Chinese Conflicts System: Achievements and Challenges,* 13 Journal of Private International Law 633-654 (December 2017).

#25    Jie (Jeanne) Huang, *Comparison of E-commerce Regulations in Chinese and American FTAs: Converging Approaches, Diverging Contents, and Polycentric Directions?,* 64 Netherlands International Law Review 309, 309-337 (July 2017), **Q1**.

#24    Jie (Jeanne) Huang, *Silk Road Economic Belt: Can Old BITs Fulfill China's New Initiative?*, 50 Journal of World Trade 734, 734-754 (August 2016), **SSCI, Q2.**

#23    Jie (Jeanne) Huang, *Protecting Non-indigenous Human Remains under Cultural Heritage Law,* 14 Chinese Journal of International Law 709, 709-733 (2015), **SSCI, Q1**.

#22    Jie (Jeanne) Huang, *Challenges and Solutions for the China-US BIT Negotiations: Insights from the Recent Development of FTZs in China,* 18 Journal of International Economic Law 307, 307-339 (June 2015) **SSCI, Q1. ABDC-A Journal**.

#21    Jie (Jeanne) Huang, *Maritime Archaeology and Identification of Historic Shipwrecks: A Legal Perspective,* 44 Marine Policy 256, 256-264 (February 2014) **SSCI, Q1. ABDC-A Journal.**

#20    黄洁，《中国知识产权仲裁的挑战和机遇——以中国（上海）自由贸易试验区仲裁新规的视角》，《两岸区际经贸法律议题》，台湾国立政治大学法学院出版，2014 年［Jie (Jeanne) Huang, "*Challenges and Opportunities for Intellectual Property Arbitration in China—A Perspective on the New Arbitration Rules in China (Shanghai) Free Trade Zone*s," in Cross-Strait Interregional Economic and Trade Legal Issues, published by the College of Law, National Chengchi University, Taiwan, 2014].

#19    黄洁，《上海自贸区争端解决机构的建立与相关国内法制度创新》，《中山大学学报（哲学社会科学版）》［Jie (Jeanne) Huang, *The Development of Dispute Resolution Mechanism in Shanghai FTZ and the Innovation of Relevant National Legal System,* Zhongshang University Journal (Philosophy and Social Science edition)］(**CSSCI**) 176-184 (September 2014).

#18    黄洁，《仲裁新规助推自贸区知识产权仲裁》，《文汇报》2014 年 4 月 20 日第 6 版（4420 字）［Jie (Jeanne) Huang, *The New Arbitration Rule Promoting Intellectual Property Arbitration in China (Shanghai) Pilot Free Trade Zone,* Wenhui Daily］April 20, 2014.

#17    2014 年 3 月 7 日，黄洁的《建议完善自贸试验区投资争端解决机制》的决咨成果的主要观点，在上海市委办公厅《动态反映》第 44 期上刊出［On March 7, 2014, the main points of Jie Huang's policy advisory report titled "*Suggestions for Improving the Investment Dispute Resolution Mechanism in Free Trade Zones*" were published in the 44th issue of the Shanghai Municipal Party Committee General Office's *Dynamic Reflections*］.

#16    Jie (Jeanne) Huang, *Chasing Provenance: Protecting States with a Verifiable Link to Underwater Cultural Heritage,* 84 Ocean and Coastal Management 220, 220-25(November 2013) **SSCI, Q1**.

#15    Jie (Jeanne) Huang, *Odyssey's Treasure Ship: Salvor, Owner, or Sovereign Immunity,* 44 Ocean Development and International Law 170, 170-84 (Spring 2013) **SSCI, Q2.**

#14    Jie (Jeanne) Huang, *Range Far Your Eye Over Long Vistas: An Assessment of The Cross-Strait Bilateral Investment Protection and Promotion Agreement, 8* Asian Journal of WTO and International Health Law 179, 179-216 (March 2013) **SSCI**.

#13    黄洁，《从美国 2012BIT 范本看 TPP 投资章节对中国的启示及应对》,载《环球法律评论》［Jie (Jeanne) Huang, *2012 US Model BIT and TPP Investment Chapter: Challenges or Opportunities for China?,* Global Law Review］(August 2013) **CSSCI**.

#12    Jie (Jeanne) Huang, *Negotiating The First Bilateral Investment Agreement between Mainland China and Taiwan*, 42 Hong Kong Law Journal 971, 971-1000 (December 2012) **SSCI**. **ABDC-A Journal.**

#11    Jie (Jeanne) Huang, *TPP v. ECFA: Similarities, Differences, and China's Strategies*, 12 The China Review: An Interdisciplinary Journal on Greater China 85, 85-111 (Fall 2012) **SSCI**.

#10    黄洁，《美国推行 TPP 对两岸 ECFA 的影响和对策》，《国际贸易问题》［Jie (Jeanne) Huang, *The Impact of TPP upon ECFA and China's Strategies,* Journal of International Trade］40-48 (August 2012) **CSSCI**.

#9    Jie (Jeanne) Huang, *Implement the ECFA: Prospects of a Bilateral Investment Agreement between Mainland China and Taiwan,* 5 Journal of Chinese Economic and Foreign Trade Studies 127-56 (June 2012) Emerald indexed.

#8    黄洁，《陆资赴台法律保障问题研究——从<海峡两岸经济合作框架协议>的双边视角》,《河北法学》［Jie (Jeanne) Huang, *Analysis of Mainland Capital*

*Investing in Taiwan—From the Perspective of ECFA,* Hebei Law Review］(2011, No.3). **CSSCI**.

#7    Jie (Jeanne) Huang, *Interregional Recognition and Enforcement of Civil and Commercial Judgments: Lessons for China from US and EU Laws,* 6 Journal of Private International Law 109-154 (April, 2010).

#6    黄洁，《中国多边区际民商事判决承认和执行安排——对解决四大难题的建议》，《国际商务研究》［Jie (Jeanne) Huang, *Chinese Multilateral Recognition and Enforcement Arrangement for Civil and Commercial Judgments: Proposed Solutions for Four Critical Challenges*, Journal of International Business Research］(2010, No.6). **CSSCI.**

#5    Jie (Jeanne) Huang, *Direct Application of International Business Law in Chinese Courts: Intellectual Property, Trade, and International Transportation*, 5 Manchester Journal of International Economic Law 105-42 (2008). **Q2.**

#4    黄洁，《论美国联邦地方法院标的管辖权的晚近发展——兼论中国涉外企业在美国诉讼的实践问题》，《国际商务研究》［Jie (Jeanne) Huang, *Suing Your American Business Partners in Their Home: An Analysis of Subject Matter Jurisdiction in U.S. Federal District Courts*, Journal of International Business Research］, 45-52 (2008, No.2). **CSSCI.**

#3    黄洁，《浅析<联合国国际货物销售合同公约>中对货物的保全义务》，《国际贸易法评论》［Jie (Jeanne) Huang, *An Analysis of the Obligation of Preservation of Goods in the United Nations Convention on Contracts for the International Sale of Goods (1980),* Journal of International Trade Law］104-114 (2006, No.1).

#2    黄洁，《浅析<联合国国际货物销售合同公约>第 79 条》，《国际商务研究》［Jie (Jeanne) Huang, *An Analysis of Article 79 of the United Nations Convention on Contracts for the International Sale of Goods (1980)*, Journal of International Business Research］62-65 (2002, No.5). **CSSCI.**

#1    黄洁，《评三资企业法的修订》，《北方经贸》［Jie (Jeanne) Huang, *The First Step to Reforming Chinese Law for Foreign Commerce and Trade after China's Accession to the World Trade Organization: the Revised Chinese Joint Venture Law*, China Northern Economy and Trade Journal］45-46 (2002, No. 12).

- *Articles in US Student-run Journals and Editorship*

#13    Jie (Jeanne) Huang & Tianqi Gu (eds), Special Issue on *Business Compliance in the Asia Pacific*, Chinese Journal of Transnational Law (2025).

#12    Jie (Jeanne) Huang, *Developing Chinese Private International Law for Foreign Judgments*, 57 The International Lawyer 89-120 (2024) **SSCI**. (Statistical methods.

A Triannual Publication of the American Bar Association International Law Section)

#11    Jie (Jeanne) Huang & George Tian (eds.), American Society of International Law Private International Law Commentaries and Newsletter Summer 2024 (Vol 7, Issue 1)

#10    Jie (Jeanne) Huang & Carrie Shang (eds.), American Society of International Law Private International Law Commentaries and Newsletter Summer 2023 (Vol 6, Issue 1)

#9    Carrie Shang & Jie (Jeanne) Huang (eds.), American Society of International Law Private International Law Commentaries and Newsletter Winter 2022 (Vol 5, Issue 2)

#8    Jie (Jeanne) Huang & Carrie Shang (eds.), American Society of International Law Private International Law Commentaries and Newsletter Summer 2022 (Vol 5, Issue 1).

#7    Jie (Jeanne) Huang, et al. (eds), the Oceania and China Report of American Society of International Law Private International Law Commentaries and Newsletter 2021 (Vol 4, Issue 1).

#6    Jie (Jeanne) Huang and Jiaxiang Hu, *Can Free Trade Agreement Enhance MARPOL 73/78 Compliance?* 43 Tulane Maritime Law Journal 59-91 (Winter 2018). **ABDC-A Journal.**

#5    Jie (Jeanne) Huang, *Personal Jurisdiction Based on the Location of a Server: Chinese Territorialism in the Internet Era?,* 36 Wisconsin International Law Journal 87-121 (2018).

#4    Jie (Jeanne) Huang, *Enforcing Foreign Monetary Judgments in China: Breakthroughs, Challenges, and Solutions in the Context of "One Belt One Road"*, 51 George Washington International Law Review 105-144 (December 2018).

#3    Jie (Jeanne) Huang (ed), the Oceania Report of American Society of International Law Private International Law Commentaries and Newsletter October 2017 (Vol 3, Issue 1).

#2    Jie (Jeanne) Huang, *Conflicts between Civil Law and Common Law in Judgment Recognition and Enforcement: When is the Finality Dispute Final?,* 29 Wisconsin International Law Journal 70-109, (Spring, 2011). (Statistical methods)

#1    Jie (Jeanne) Huang, *Overturning a Final Judgment Tainted by Fraud: A Comparison Between Mainland China and Hong Kong*, 15 Willamette Journal of International Law & Dispute Resolution 47-74 (2007).

- *Peer-Reviewed Book Chapters*

#12    Jie (Jeanne) Huang (forthcoming 2026), *Data Protection in Foreign-related Commercial Arbitration Under the 2025 Arbitration Law*, Richard A. Bales & Dan Xie (eds.), Arbitration in China: Building Global Influence in Dispute Resolution (Cambridge Univ. Press)

#11    Jie (Jeanne) Huang (2025), *Recognition and Enforcement of Chinese Judicially Confirmed Mediation Decisions Abroad: The Challenges of Finality*, in Poomintr Sooksripaisarnkit and Sai Raman Garimella (Eds), Legal Challenges of China's One Belt One Road Initiative: Private International Law Considerations, Recognition and Enforcement (Taylor & Francis)

#10    Jie (Jeanne) Huang (2023), *Digitalization of Special Economic Zones in China*, in Julien Chaisse and Cristián Hernan (Eds.), The Elgar Companion to the WTO, (pp.186-206)
- Book Launch at the Harvard Law School, April 2024

#9    Jie (Jeanne) Huang and Jiaxiang Hu (2021), *FTA Dispute Resolution to Protect Health and the Maritime Environment*, in Luke Nottage & et al. (Eds), New Frontiers in Asia-Pacific International Arbitration and Dispute Resolution, (pp. 313-337), Wolters Kluwer.

#8    Jie (Jeanne) Huang (2019), *Recent Developments of Institutional Arbitration in China: Specialization, Digitalization and Internationalization*, in Julien Chaisse & Jiaxiang Hu (Eds), International Economic Law and the Challenges of the Free Zones, (pp. 251-275), Wolters Kluwer.

#7    Jie (Jeanne) Huang (2019), *Reciprocal Recognition and Enforcement of Foreign Judgments in China: The Proposal of a Registration System*, in Michael Douglas, Vivienne Bath, Mary Keyes, and Andrew Dickinson (Eds), Commercial Issues in Private International Law: A Common Law Perspective, (pp. 129-150), Oxford: **Hart Publishing**.

#6    Jie (Jeanne) Huang (2019), *Nationwide Regulatory Reform Starting from China's Free Trade Zones: The Case of Negative List of Non-Conforming Measures*, in Julien Chaisse (Eds), China's International Investment Strategy-- Bilateral, Regional, and Global Law and Policy (pp. 87-99). **Oxford University Press**.

#5    Jie (Jeanne) Huang (2018), *Expanding the E-Commerce Chapter in ChAFTA: A Green Box, Orange Box and Red Box Approach*, in Colin Picker, Heng Wang, and Weihuan Zhou (Eds), *The China-Australia Free Trade Agreement: A 21ˢᵗ-Century Model*, (pp. 305-328), Oxford: **Hart Publishing**.

#4    叶兴国和黄洁"OECS" －"Shanghai Accord"部分，2006，《WTO 术语辞典》，法律出版社, ISBN：9787503667718。［Xingguo Ye and Jie (Jeanne) Huang, Entries from "OECS" to "Shanghai Accord," in *WTO Law Dictionary* (Law Press China, 2006).］

#3    黄洁，"涉外经济活动的管理"，《涉外经济法总论》，210－289 页，法律出版社 2005 年第二版, ISBN 7503657480［Jie (Jeanne) Huang, Regulations of Foreign Economic Activities, in *General Introduction to Chinese Law for Foreign Commerce* 210-89(Law Press China, 2005)］.

#2    黄洁，"外商投资新规则"，《他山之石——WTO 成员应对入世的实践和经验》，347－425 页，上海人民出版社 2003 年第一版［Jie (Jeanne) Huang, New Regulations of Foreign Investment in China, in *Harmonization with WTO Laws: The New Chinese Legal System for Foreign Economy and Trade,* 347-425 (People's Press Shanghai China, 2003)］

#1    黄洁，"GATT/WTO 规则与美国国内法的关系"，《与 WTO 规则的融合——中国外经贸法律新制度》，67－76 页，上海人民出版社 2003 年第一版［Jie (Jeanne) Huang, The Relationship between the GATT/WTO Laws and American Domestic Laws*, in *WTO Members' Reforms after Their Accession to the WTO,* 67-76 (People's Press Shanghai China, 2003)］.

- *Book Review*

  Jie (Jeanne) Huang, *Book Review Comparative Commercial Contracts: Law, Culture and Economic Development* (Hornbook Series) by BORIS KOZOLCHYK, International & Comparative Law Quarterly (2015), SSCI, ISSN: 0020-5893.

# 7. TEACHING AWARDS

2024       Senior Fellow of the Advance High Education (SHEA)

2021       Fellow of the Advance High Education (FHEA)

2017-2018   The UNSW 2018 Inspiring Learning Initiative grant (AU$30,000)
- I re-designed the International Business Transactions curriculum by cooperating with professors at the Universidad Carlos III in Spain and lawyers at the Sydney and Madrid offices of King & Wood Mallesons. Students at UNSW and Carlos III were taught separately in each university in the first three weeks of the semester. Starting from Week Four, I assigned roles to students in which they represented an Australian mining company, a Spanish shipping company, or a Hong Kong bank. Based on the legal issues designed in the course, UNSW students worked with students at Carlos III by email, skype, and more professional video conferencing software.
- The case questions were jointly designed with Lawyers from King & Wood Mallesons, who also coached students via Zoom.
- This course design simulated real international business transactions effectively. It provided valuable opportunities for Australian students who were familiar with common law to work with Spanish students who were from a civil law tradition.
- The course received very positive feedback from students because it established a close link between law teaching across continents and between law schools and law firms.

| 2013 | Teaching Project, "Combination of Law and Business Knowledge in Educating International Legal Professionals" won the Second Prize of Higher Education Achievement awarded by the Shanghai Education Commission, China |
| 2012 | My course, *International Business Transactions,* was awarded Model English Teaching Course by the Shanghai Education Commission, China |
| 2006 | Outstanding Teacher Award at the Shanghai University of International Business and Economics School of Law |
| 2005 | Outstanding Teacher Award at the Shanghai University of International Business and Economics School of Law |

# 8. COURSES TAUGHT

| Dates | Course | Number of Students | Weekly Teaching Hours | Total Teaching Hours | Remarks |
|---|---|---|---|---|---|
| Teaching at the Sydney University Law School | | | | | |
| 2018.7-2018.12 | Private International Law A | 74 | 8 | 80 | 2 groups (LLBs and JDs) |
| 2019.2-2019.6 | Private International Law A | 100 | 8 | 80 | I taught 2 groups and served as convenor to coordinate 4 groups (a total 200 students) |
| 2019.7-2019.12 | Private International Law A | 100 | 8 | 80 | I taught 2 groups and served as convenor to coordinate 3 groups (a total of 146 students) |
| 2020.2-2020.6 | Private International Law A | 160 | 12 | 120 | 3 groups (LLBs and JDs) |
| 2020.7-2020.12 | Legal Issues in Digital Trade | 57 | 7 | 28 | Postgraduates |
| 2021.2-2021.6 | Private International Law A | 122 | 12 | 120 | 3 groups (LLBs and JDs) |
| 2021.2-2021.6 | Dispute Resolution in Asia | 55 | 7 | 14 | Co-taught with Prof. Luke Nottage |
| 2021.7-2021.12 | Legal Research 3 | 5 | 5 | 10 | Taught research methodology for advanced PhD students |
| 2021.7-2021.12 | Legal Issues in Digital Trade | 66 | 7 | 28 | Postgraduates |
| 2022.2-2022.6 | Private International Law A | 89 | 4 | 40 | I taught 2 groups and was the convenor for 8 groups (a total of 439 students) |
| 2023.7-2023.12 | Class Action Litigation in Australia | 40 | - | - | Convenor. The course was taught by |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Mr. Jason Bett, Partner HSF. |
| 2023.7-2023.12 | Legal Issues in Digital Trade | 28 | 7 | 28 | Postgraduates |
| 2024.2-2024.7 | Legal Issues in Digital Trade | 124 | 14 | 56 | 2 groups ( Postgraduates) |
| 2024.7-2024.12 | Private International Law A | 100 | 12 | 120 | 3 groups (LLBs and JDs) |
| 2024.7-2024.12 | Class Action Litigation in Australia | 48 | - | - | Convenor. The course was taught by Mr. Jason Bett, Partner HSF. |
| 2024.7-2024.12 | International Contract Law | 14 | - | - | Convenor. The course was taught by Adjunct Professor Donald Robertson |
| **Teaching at the University of New South Wales Faculty of Law** | | | | | |
| Semester 2, 2016 | International Business Transactions | 40 | 3 | 30 | Postgraduates |
| Semester 2, 2016 | International Commercial Arbitration | 41 | 3 | 30 | Postgraduates |
| Summer, 2017 | Contracts | 35 | 4 | 40 | LLB and JD |
| Semester 1, 2017 | Law in the Global Context | 40 | 4 | 40 | LLB and JD |
| Semester 1, 2017 | Globalisation & Commercial Law | 35 | 3 | 30 | Postgraduates |
| Semester 2, 2017 | International Commercial Arbitration | 25 | 3 | 25 | Postgraduates |
| Semester 2, 2017 | International Business Transactions | 43 | 3 | 25 | Postgraduates |
| Semester 1, 2018 | International Business Transactions | 33 | 3 | 30 | Postgraduates |
| **Teaching at the Shanghai University of International Business and Economics (all in English)** | | | | | |
| 2010.9-2011.1 | World Legal System | 38 | 2 | 36 | LLB |
| 2011.2-2011.7 | International Business Law | 145 | 3 | 108 | 2 groups (LLB) |
| 2011.2-2011.7 | Legal English: Contract Drafting | 42 | 2 | 36 | Chinese postgraduates. |
| 2011.9-2012.1 | International Business Law | 301 | 3 | 162 | 3 groups (LLB) |
| 2011.9-2012.1 | International Business Law | 22 | 2 | 24 | International postgraduate students. |
| 2011.9-2012.1 | Legal English: Contract Drafting | 35 | 2 | 36 | Chinese postgraduates. |
| 2012.2-2012.7 | International Business Law | 15 | 2 | 24 | International postgraduate students. |
| 2012.2-2012.7 | Legal English: Contract Drafting | 30 | 2 | 36 | Chinese postgraduates. |
| 2012.2-2012.7 | Reading of Classic Legal Literature | 25 | 2 | 36 | LLB |
| 2012.2-2012.7 | World Legal System | 35 | 2 | 36 | LLB |

| | | | | | |
|---|---|---|---|---|---|
| 2012.9-2013.1 | International Business Law | 193 | 3 | 108 | 2 groups (LLB) |
| 2012.9-2013.1 | International Business Law | 10 | 2 | 24 | International postgraduate students |
| 2013.2-2013.7 | Reading of Classic Legal Literature | 25 | 2 | 36 | LLB |
| 2013.2-2013.7 | Legal English: Contract Drafting | 30 | 2 | 36 | Chinese postgraduates |
| 2013.2-2013.7 | International Business Law | 20 | 2 | 24 | International postgraduate students |
| 2013.9-2014.1 | Legal English: Contract Drafting | 29 | 2 | 36 | Chinese postgraduates |
| 2013.9-2014.1 | International Business Law | 45 | 3 | 18 | International postgraduate students |
| 2013.9-2014.1 | Chinese Contract Law | 36 | 3 | 54 | International postgraduate students. |
| 2013.9-2014.1 | International Investment Law | 25 | 3 | 15 | International MBA students. |
| 2013.9-2014.1 | Introduction to Common Law System | 44 | 2 | 36 | LLB |
| 2014.2-2014.7 | Reading of Classic Legal Literature | 105 | 2 | 72 | 2 groups (LLB) |
| 2014.2-2014.7 | International Investment Law | 25 | 3 | 15 | International MBA students. |
| 2014.2-2014.7 | Legal English | 26 | 2 | 36 | LLB |
| 2014.9-2015.1 | International Business Law | 50 | 3 | 54 | LLB |
| **Other Teaching** | | | | | |
| 2019 | Taught at the Young Leader Program organized by the Global Engagement Department, Sydney University: *Sustainable Developments in Free Trade Agreements*; *Sustainability and Cross-border Litigation* | | | | |
| 2004-2006, 2014 | Taught at Shanghai Jiao Tong University: *International Business Law* (several groups) and *Contract Law* (one group) | | | | |
| 2010.3 | *Guest Speaker* of the International Litigation in US Courts course taught by Professor Paul Carrington, Duke University School of Law: teaching *International Cooperation in Securing Evidence* | | | | |
| 2010. 1-4 | *Lecturing Fellow* at Duke University School of Law: Teaching *Chinese for Legal Studies* to J.D. students | | | | |
| 2006.11 | *Guest Speaker* of the *Conflict of Laws* course taught by Arthur Larson Professor Ralf Michaels at Duke University School of Law: teaching *Chinese Interregional Conflict of Laws*. | | | | |
| 2004-2006 | Shanghai University of International Business and Economics Law School (in Chinese): *Law of Negotiable Instruments, International Business Transactions*, etc. | | | | |

# 9. SUPERVISION

- PhD supervision:
    - Graduation: Dan Xie, *Due Process Defence to Recognition and Enforcement of Foreign Arbitral Awards under the New York Convention: A Global Perspective in Theory and Practice*
    - Ongoing:

- Ravi Prakash Vyas, *International Legal Order with Rising China and India: Implications for future of International Law*;
- Yuexin Huang, *Probing Transparency in the Changing International Arbitration: Through the Lens of Amicus Curiae in ISDS*

My students' achievements are substantial. Ravi Prakash Vyas won a highly competitive full scholarship to join an exchange program at the Harvard Law School and was hired by USYD as a permanent-track lecturer in 2024. Dr. Danny Xie was appointed as an Associate Professor at the East China University of Political Science and Law, which is among the top 10 law schools in China. With my recommendation, she collaborated with Professor Rick Bales (Ohio University) and secured a book contract from Cambridge. These outcomes underscore my high-quality supervision.

- PhD progressive reviews:
  - Chaired or participated in more than 35 panels (2018-2024)
- Honors thesis supervision:
  - Wenkai Lyu, *Coordination of the Fraud Exception in Interregional Judgment Recognition and Enforcement Between Mainland China and Hong Kong* (June 2020). She was admitted into the Cambridge Law School LLM program upon my recommendation in 2021.
- Master of Laws/Jurist Master thesis supervision:
  - Approximately 15 students (2010-2016)
- Bachelor of Law thesis supervision:
  - Approximately 20 students (2010-2016)
  - One of the LLB students I supervised was Ms. Judy Zhou. I served as one of her referees for her successful application for the Lawyers Weekly 30 under 30 Legal Award in Australia in 2021.

# 10. MANAGEMENT

## 10.1. Research Center Leadership

2021-
January
2025

**Co-director of the Sydney University Centre for Asian and Pacific Law (CAPLUS)**
The CAPLUS was founded by the esteemed late Professor Alice Tay in 1994. Its members have legal expertise in a wide variety of Asian jurisdictions, including China, Japan, Indonesia and Malaysia. I take care of daily operations, board meetings, budgeting and spending, mentor student interns, apply for funding, and hold conferences, workshops, and seminars.

- **Events**
I initiated the annual-themed event series, including 'Covid in Asia and the Pacific' (2021), 'Comparative Law in the Asia Pacific' (2022), and 'Early-Career and PhD Researcher Presentations' (2024), contributing to the legal discourse in both virtual and physical settings, consistently attracted over 1,000 attendees from home and abroad annually. These events have showcased the CAPLUS members' scholarship and created an important platform for knowledge exchange.

I organised the 30th Anniversary Celebration of CAPLUS and Shanghai Winter School in February 2024. This event comprised a main conference on Business Compliance in Asia Pacific, an alumni reception, a pre-conference panel, and a post-conference seminar. With approximately 40 speakers/chairs and over 200 attendees from 13

countries, including scholars, judges, practitioners, and industry experts, the Celebration provided a robust platform for CAPLUS to strengthen collaborations with our Chinese partner institutions, enhance international reputation, and foster new research and teaching partnerships worldwide.

- **External engagements**

I represented CAPLUS in meetings with senior leadership delegations from various prestigious institutions, including Peking University; East China University of Political Science and Law; Shanghai Jiao Tong University Law School; the Taiwan Judges Academy; Fudan University, China Ministry of Foreign Affairs; Vietnam Ministry of Foreign Affairs; Korean Ministry of Trade, Industry, and Energy; Korean Legislative Institute. These engagements resulted in the signing of joint degree agreements, the establishment of research collaborations, and bolstering the Law School's global reputation.

Through joint events, I have facilitated dynamic academic collaborations between CAPLUS members and the Hague Conference on Private International Law, UN/CEFACT, and UNCITRAL, as well as researchers from prestigious institutions such as Harvard University, Oxford University, Georgetown University Law Center, and Wharton Business School. These events have also brought together judges, arbitrators, and practitioners, resulting in joint publications, visitor exchanges, and collaborative funding applications.

- **Funding applications:** I led CAPLUS members to successfully obtain the USYD-SJTU grant (2019, AUD 20,000) and the USYD-Fudan Ignition grant (2024, AUD 80,000), as well as applications for ARC Discovery (2021, 2022, and 2023). I also decide on funding for PhD students to organize events.

- **Student Interns:** The Centre provides paid intern positions for approximately 4 students (each 50 hours) annually. I am responsible for student interviews and daily supervision.

- **Visiting scholars:** I review at least 30 visiting scholars' applications annually and host visiting scholars and students to promote academic exchanges.

- **Off-shore study programs**: Shanghai Winter School, Kyoto and Tokyo Seminars, and Southeast Asia Field School.

- **Course offering**: Dispute Resolution in Asia, Law and Investment in Asia, China and International Law, etc.

2021-2022    Deputy Director of the Sydney University China Studies Centre

- I took charge of the China Studies Centre working paper series, initiated the roundtable panel discussion series on cutting-edge issues related to China, and chaired three of them. I also significantly contributed to the drafting of the Centre Protocols and Procedures for Interactions with China.

2019-2020    Co-lead of the political science and law cluster at the China Studies Centre

## 10.2. Administrative Committee Membership

2025    Chair, Postgraduate Course Work Committee, the Sydney Law School

2025    Chair, Unit of Study Sub-Committee for Postgraduate Course Work, the Sydney Law School

2025    Chair, Postgraduate Scholarship Committee, the Sydney Law School

2025    Member, Education Committee and Student-Staff Consultation Forum,

| | |
|---|---|
| 2025 | Member, the University Graduate Study Committee |
| 2024-present | Member, Academic Excellence Framework - Co-Design Group- Collegiality, the Sydney Law School |
| 2024-present | Member, the University Academic Promotion Committee: Level D- Associate Professor |
| 2023-present | Member, the central Academic Quality Committee in the University |
| 2023 | Recruitment Committee at the Sydney Business School- Recruitment IBUS EF B/C ref 0106110 - two senior lecturers/lecturer positions |
| 2019-2024 | Member, Postgraduate Course Work Committee, the Sydney Law School |
| 2021 | Chair, the HDR Committee, the Sydney Law School |
| 2021 | Recruitment Committee at the central university-Recruit the Director of the China Studies Centre - one full professor position |
| 2020-2024 | Member, the HDR Committee, the Sydney Law School |
| 2020 | Member, the LLB Assessment Committee, the Sydney Law School |
| 2019-2021 | Member, Workplace Health and Safety Working Group, the Sydney Law School |

## 10.3. Academic Associations, executive positions

| | |
|---|---|
| April 2022- April 2025 | Co-chair of the Private International Law Interest Group of the American Society of International Law (ASIL) in 2022. |
| | • ASIL, founded in 1906, holds Special Consultative Status with the Economic and Social Council of the United Nations. |
| | • I am the first co-chair based in Asia and Oceania. |
| 2021-2025 | Member, International Law Association (Australian Branch) Executive Committee |
| | • Chair the Nygh's Best Students' Essay selection committee (2022) |
| | • Member of the selection committee for the Nygh's Intern for the Hague Conference on Private International Law (2023, 2024) |
| 2020-2022 | Member, the International Law Association International Committee on Cultural Heritage Protection |
| 2019 | Member, the International Law Association International Committee on Intellectual Property and Private International Law (Kyoto Guidelines) |

## 10.4. Editorial Boards of Academic Publications and Reviewers

| | |
|---|---|
| 2024-present | Inaugural editor for *the Chinese Journal of Transnational Law* (Sage) |
| 2022-2025 | Co-chief editor for American Society of International Law Private International Law Commentaries and Newsletter. The 2024 editorial board comprises 20 academics and practitioners from around the world. |
| 2022-2025 | Co-chief editor for https://conflictoflaws.net/, the largest private international law blog. I am also the first non-European to serve as its co-chief editor since its inception in Germany two decades ago. The editorial board comprises 28 academics and practitioners from around the world. |
| 2020-present | Book editor for the *Asian Journal of Law and Society* (Oxford University Press) |
| 2016-present | Reviewer: Journal of International Economic Law, Asian Journal of Comparative Law, UNSW Law Review, Journal of Private International |

Law, Leiden Journal of International Law, Ocean and Coastal Management (SCI), China Economic Review (SSCI), Asia-Pacific Law Review (SSCI), Maritime Policy & Management, Oxford, Cambridge, Hart Publishing, Edward Elgar, Springer, Brill, Routledge, etc.

# 11. OTHER ACTIVITIES

- **Major invited addresses**:
  - *Governmental organizations*: presentations at the UN/CEFACT plenary and forum (Geneva and UN facility in Thailand and Italy, 2022, 2023, and 2024), the WTO Public Forum (Geneva, 2023), the 50th Anniversary Congress of United Nations Commission on International Trade Law (Vienna, 2017).

  - *Leading research universities*: the Harvard Law School (2024, 2023) and the Harvard Kennedy School (2024), the Oxford University Faculty of Law (2023) and the Commercial Law Centre (2023), Renmin University (2018), Fudan University (2019), Shanghai Jiaotong University (2019), and many other famous universities in the US, UK, EU, China (Mainland, Hong Kong, and Macao), South Korea, Singapore, Qatar, etc.

  - *Major academic organizations*: the American Society of International Law Annual Meeting (2023, 2024), the International Law Association Biennial Conference (2018, 2023), the South American Private International Law Association Annual Conference (2023), the Comparative Law Congress (2019), etc.

- **Expert reports were cited by the Supreme Court of New South Wales and the Court of Appeal**:
  - *Zhou v Jing* [2023] NSWSC 214 (Elkaim AJ),
  - *Yolarno Pty Ltd v Shandong Delisi Food Co Ltd* [2022] NSWCA 30 (Macfarlan JA),
  - *Bank of China Limited v Chen (No. 2)* [2022] NSWSC 1168 (Wright J), and
  - *Xinfeng Australia International Investment v GR Capital Group* [2021] NSWSC 614 (Parker J).

- Frequently blogs on CAPLUS, Conflictoflaws.net, Australia Outlook, and LexisNexis Privacy Law Bulletin
  'Living in the Fast Lane: How Australia Can Return Its International Students' is **the most read of 2020 published by Australian Outlook**.

- Submission to the Australian Attorney-General's Department for the Hague Judgments Project, May 2018

- I have been interviewed by Bloomberg TV, Channel News Asia, ABC News Australia (here, here, here), CAAMA (Australia's largest aboriginal media organisation), Foxtel, IEEE Spectrum, The Register, South China Morning Post (here, here, here, here), NSW Law Society Journal, Gizmodo, Jiefang Daily

（解放日报）, [Wenhui Daily](#) （文汇报）, [UNCITRAL](#), Renmin Daily (人民日报), New York Times, Wall Street Journal, etc.

## 12. LANGUAGES

- Chinese Mandarin (native), Fuzhou dialect.
- English (fluent, certified simultaneous English interpreter by Shanghai Municipal Government. Certification No: D12092).
- French (basic).

## 13. QUALIFICATIONS

- Chinese Bar admission, 2003-2022.
- Qualification of Advanced English-Chinese Simultaneous Interpreter (Registration No. D2092), Shanghai Municipal Government, 2002.
- Qualification of International Trade Practitioner, Shanghai Municipal Government, 2001.

## 14. INTERRUPTIONS TO CAREER

- 24 months on maternity and parental leave for two children from 2015 to 2018.
- 4 months for homeschooling from 2020-2021 amid the COVID-19 pandemic.



53 STATE STREET | BOSTON, MA 02109 | P:617-330-7000
500 UNICORN PARK DRIVE, SUITE 502 | WOBURN, MA 01801 | P:781-933-5505

Theodore J. Folkman
Direct Dial: 617-330-7135
E-mail: tfolkman@rubinrudman.com
Return Address: Boston

August 29, 2024

BY EMAIL

Prof. Jeanne Huang
University of Sydney Law School
NSW 2006
Australia
jeanne.huang@sydney.edu.au

  Re: Sunco v. Sun

Dear Jeanne:

This is to confirm that Rubin and Rudman LLP has retained you to prepare a declaration on relevant points of Chinese law and relevant points concerning the Chinese judiciary for use in *Sunco Timber (Kunshan) Co. Ltd. v. Sun,* a case pending in the U.S. District Court for the District of Massachusetts in which we represent one of the defendants, Linda Sun. The plaintiff, Sunco Timber (Kunshan) Co. Ltd. brought an action against Mrs. Sun in China, and the Chinese court entered a judgment in Mrs. Sun's favor. Sunco Timber then brought an action against Mrs. Sun and others in Massachusetts. Our intention is to ask the US court to recognize the Chinese judgment and to hold that the Chinese judgment is res judicata and that one of the claims against Mrs. Sun must therefore be dismissed. I anticipate that we will want you to address the following questions in your declaration:

1. Does the Chinese system provide impartial tribunals and procedures compatible with the requirements of due process of law? By way of background, one of the defenses available to recognition of a foreign judgment under US law is that the foreign court does not provide impartial tribunals or does not provide due process.

2. Is there reciprocity in the recognition of judgments between China and the United States?

3. Would the Chinese judgment preclude litigation in China of the claim Sunco has brought against Mrs. Sun in the United States? By way of background, the general rule in the US is that a foreign judgment does not have greater preclusive effect than it would have in

3995330_1

Prof. Jeanne Huang
August 29, 2024
Page 2

the state where it was rendered. Thus it is necessary to understand the preclusive effect the Chinese judgment would have in China.

We will pay you for your time at the rate of AUD $700 per hour. We will make all payments by wire within thirty days of receipt of your invoice detailing the time you have spent and the work your have performed. We do not anticipate that you will incur any out-of-pocket expenses, but if you anticipate that you will, please let me know in advance so that we can discuss the matter.

We expect that once you have prepared a draft of the declaration, you will share it with us so that we may comment on it before you finalize it. We will advise you on the proper format for the declaration for use in the US court.

I am enclosing the basic materials that I think will be relevant to your work. They are:

1. The Chinese judgment and certificate of enforceability.

2. Sunco's complaint in the US (we are seeking dismissal of counts VI and VII)

3. Papers from the Chinese case including Sunco's civil complaint.

Once you have had a chance to review the papers, let's have a discussion to make sure we are on the same page about the questions we are asking you to address.

I look forward to working with you on this to help the American judge understand the relevant points of Chinese law and practice.

Sincerely,

Theodore J. Folkman

enclosures

3995330_1

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUNCO TIMBER (KUNSHAN) CO., LTD.<br>    Plaintiff,<br><br>v.<br><br>LINDA SUN, individually, DAVID SUN, individually, SHILLOCK YUAN-SUN, individually, and INFINITY WOOD PRODUCTS, LLC,<br>    Defendants,<br><br>SUNCO, INC., EASTMAN ST. DISTRIBUTORS LLC, EASTMAN ST. WOODWORKS, INC., INFINITY REALTY COMPANY LLC, AND NEW SUN LIMITED PARTNERSHIP,<br>    Reach and Apply Defendants, and<br>    Fraudulent Conveyance Defendants. | **Civil Action No. 1:22-cv-10833** |

## AMENDED COMPLAINT AND REQUEST FOR TRIAL BY JURY

### PREFATORY ALLEGATIONS

1.  Plaintiff Sunco Timber (Kunshan) Co., Ltd. ("Sunco") is a legal entity with its principal place of business located at Kunshan, China.

2.  Defendant Linda Sun ("L. Sun") is an individual residing at 93 Goulding Street West, Sherborn, Massachusetts.

3.  Defendant David Sun ("D. Sun") is an individual residing at 93 Goulding Street West, Sherborn, Massachusetts.

4.  Defendant Shillock Yuan-Sun ("S. Sun") is an individual residing at 93 Goulding Street West, Sherborn, Massachusetts.

1

5.    Defendant Infinity Wood Products, LLC ("Infinity") is a Delaware limited liability company registered to do business in Massachusetts as a limited liability company, with its primary place of business located at 35 Eastman Street, South Easton, Massachusetts.

6.    The managers of Infinity are D. Sun and S. Sun and its members and equity shareholders are believed to be L. Sun, D. Sun and S. Sun.

7.    D. Sun, S. Sun, L. Sun and Infinity are collectively referred to herein as "Defendants".

8.    Defendants are the agents of one another such that one is liable for the wrongdoing of the other.

9.    Each of the defendants knowingly and substantially aided and assisted one another to perpetuate the wrongdoings asserted herein, and thus they are liable to their wrongdoings asserted herein.

10.    Reach and Apply Defendant/Fraudulent Conveyance Defendant Sunco, Inc. a//k/a Sun Trust a/k/a Sun Family Trust is a Massachusetts corporation with its primary place of business located at 163 Highland Avenue, #1052, Needham, Massachusetts 02494. Sunco, Inc. is believed to be a shell entity used by the Defendants to conceal their assets.

11.    Reach and Apply Defendant/Fraudulent Conveyance Defendant Eastman St. Distributors, LLC is a Delaware limited liability company with its place of business located at 163 Highland Avenue, #1052, Needham, Massachusetts 02494.  Eastman St. Distributors, LLC is believed to be a shell entity used by the Defendants to conceal their assets.

12.    Reach and Apply Defendant/Fraudulent Conveyance Defendant Eastman St. Woodworks, Inc. is a Nevada corporation with its place of business located at 93 Goulding Street West, Sherborn, Massachusetts 01770.  Eastman St. Woodworks, Inc. is believed to be a shell entity used by the Defendants to conceal their assets.

13.    Reach and Apply Defendant/Fraudulent Conveyance Defendant Infinity Realty Company, LLC is a Massachusetts limited liability company with its place of business located at 163 Highland Avenue, #1052, Needham, Massachusetts 02494.  Infinity Realty Company, LLC is believed to be a shell entity used by the Defendants to conceal their assets.

14.    Reach and Apply Defendant/Fraudulent Conveyance Defendant New Sun Limited Partnership is a Massachusetts limited partnership with its business address located at Sunco, Inc. c/o/ Jeffrey Schlossberg, Esq., Schlossberg & McLaughlin, PC, 35 Braintree Hill Office Park, Suite 303, Post Office Box 850699, Braintree, Massachusetts 02185. New Sun Limited Partnership is believed to be a shell entity used by the Defendants to conceal their assets.

2

15.    Reach and Apply Defendants/Fraudulent Conveyance Defendants Sunco, Inc., Eastman St. Distributors, LLC, Eastman St. Woodworks, Inc., Infinity Realty Company, LLC, Sun Trust, and New Sun Limited Partnership shall be collectively referred to herein as "Affiliated Entities".

**JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. Section 1332 and diversity of citizenship as the amount in controversy exceeds the sum or value specified in this Federal statute.

17. Venue is proper in this District of Massachusetts pursuant to 28 U.S.C. Section 1391(b)(1) and (2), since the defendants are residents of this District, and a substantial part of the events or omissions giving rise to the claim occurred in this District of Massachusetts.

**BACKGROUND**

18. Sunco is a manufacturer of wood cabinetry and exports its products to the United States.

19. Infinity is in the business importing, distributing and selling wooden cabinetry in the United States.

20. L. Sun was born in Taiwan and immigrated to the United States in the seventies.

21. D. Sun is the son of L. Sun.

22. S. Sun is the wife of D. Sun.

23. In 2003, Sunco was founded in Kunshan, China by L. Sun.

24. Sunco is in the business for manufacturing and exporting of cabinets and vanities to the United States.

25. L. Sun was the President and Chief Executive Officer of Sunco, managing and overseeing all aspects of the business, including order placement and processing, sales, production, operation, shipping, finances, and after sales customer service.

26. Each of the orders for cabinets placed by Infinity were custom orders.

27. Until her abrupt departure from the Sunco on June 14, 2019, L. Sun remained the President of the company and single-handedly controlled the operation.

28. Up until her departure from Sunco on June, 14, 2019, L. Sun lived on the second floor of a villa located on the Sunco factory compound.

29. Commencing in 2014, L. Sun sold off equity interests in Sunco and brought in other shareholders.

30.    In 2014, a board of directors for Sunco was formed, that included Qiong Xiao ("Q. Xiao") and Ruihua Xiao ("R. Xiao").

31.    At least since 2014, L. Sun worked and lived at the Sunco factory and only traveled to the United States to renew her passport once in a while, usually for about a week for each trip.

32.    L. Sun always notified the other key management members of Sunco, of her travel schedule.

33.    Until July 2019, Infinity had been Sunco's sole customer. Infinity would provide Sunco with design models or custom requests of kitchen cabinet and bathroom vanity sets.

34.    D. Sun and S. Sun were and are the managers of Infinity according to the company's filings with the Massachusetts Secretary of State's Office.

35.    D. Sun, S. Sun and L. Sun are believed to be the sole equity holders of Infinity.

36.    S. Sun has been the chief financial controller of Infinity.

37.    Upon information and belief, at all relevant times, L. Sun, D. Sun and S. Sun received all of the distributions from Infinity.

38.    Infinity is believed to be thinly capitalized and relies on the sale of the cabinets it orders from Sunco before paying Sunco for those cabinets.

39.    Sunco's transactions with Infinity were initiated by Infinity submitting a purchase order to Sunco.

40.    The issuance of a purchase initiated the custom manufacturing of the requested models of cabinets and vanities (style, wood, stain, etc.).

41.    Once the cabinets were manufactured per Infinity's requirements, they were packaged and shipped to Infinity in the United States.

42.    An invoice for payment would then be issued to Infinity by Sunco.

43.    At some point in time after receipt of the cabinets, Infinity would pay the outstanding invoice.

44.    Infinity, however, failed to pay for the last shipments of cabinets that were shipped to it by Sunco commencing on or about July 2, 2018 and finished shipping on or about July 7, 2019 -- shipments at issue in the present action.

45.    In the spring of 2018, the United States Government commenced rolling out tariffs against China.

46.    As of September 24, 2018, tariffs on Chinese wood products were 10%. Starting January 1, 2019, the tariffs were increased to 25%.

47.    Then in the spring of 2019, the United States commenced proposing and subsequently implemented anti-dumping penalties that ultimately resulted in the placement of over a 100% duty burden on Sunco products. August 5, 2019, average countervailing duties were set at 16.41%. On October 4, 2019, anti-dumping tariffs were increased to 39.25%. On February 24, 2020, average countervailing duties were announced at 20.93% and average anti-dumping tariffs were 48.50%, and regular duties were 25%, which accounted to a total of 94.43%.

48.    It was anticipated that these steep duties would cripple the export of wood-based products from China to the United States.

49.    L. Sun expressed concern that these tariffs, countervailing duties and anti-dumping tariffs would have an adverse economic impact on Sunco.

50.    Sunco, under the direction of L. Sun, continued filling Infinity's orders and shipping cabinets to Infinity.

51.    Infinity was and is a wholesaler of cabinetry products and marks-up the products from 25% to 50%, or more, for sale to retailers.

52.    From July 2, 2018 to July 7, 2019, Sunco shipped $6,712,182.11 worth of wood cabinetry to Infinity with a resale mark-up value to Infinity of $8,375,000 to $10,050,000 or greater.

53.    The resale value to Infinity of the goods at issue is believed to be $8,375,000 to $10,050,000 or greater.

54.    Infinity accepted the delivery of all products delivered by Sunco and expressed no issues with the quality, timeliness or correctness of Sunco's products.

55.    On a number of occasions, including on April 17, 2019, Infinity staff requested that its accounts payable term be extended and that Infinity would be able to pay approximately $500,000 per month.

56.     On April 29, 2019, Infinity executed a confirmation of accounts receivable acknowledging it owed Sunco $5,886,466.77 for the cabinetry shipped as of December 31, 2018.

57.     In reliance on these payment assurances, Sunco continued to fulfill orders.

58.     On June 14, 2019, L. Sun left her home in Kunshan, China, abruptly and unannounced, for Massachusetts.  To date L. Sun has not returned to Kunshan, China.

59.     Immediately following her sudden and unannounced departure for Massachusetts, Sunco's board members reached out to L. Sun requesting she disclose her knowledge of and assistance with solving significant financial problems occurring at the Sunco factory.

60.     At first, L. Sun ignored these communications.

61.     Then on July 24, 2019, L. Sun sent Q. Xiao a member of the board of Sunco and R. Xiao the Chairman of the Board of Sunco a formal letter listing a litany of purported health issues she was encountering and repeatedly stating she would be going through medical treatment for the next 6 months.  She did not address any of the financial issues, including Infinity's non-payment of goods.  L. Sun concluded the letter by stating that R. Xiao and Q. Xiao could simply take over the management of Sunco, without any explanation as to why Infinity had not paid its invoices or when it would pay its invoices.

62.     This was all a ruse by L. Sun, D. Sun, S. Sun and Infinity to buy time to complete the shipment of the cabinets and allow Sunco to fall into insolvency and be in violation of Chinese labor and other laws; thus, being unable to bring suit to recover the value of the cabinets through any kind of legal process.

63.     At the same time the last shipment to Infinity was made and the sending of the letter by L. Sun representing that she was unable to participate in the management of Sunco, while refusing and failing to answer questions about the non-payment by Infinity of the $6,712,182.11.

64.     The non-payment of cabinets by Infinity, at the direction of L. Sun, was a form of an illegal self-help.

65.     After the last shipment of cabinets in July of 2019, Infinity ceased doing any further business with Sunco.

66.     In the summer of 2019, Guoqing Wu took over the management of the Sunco factory.

7

67. It soon became evident that L. Sun had permanently left the company, leaving Sunco unable to pay, among other things, the salaries of its workers, pollution disposal fees, tax or its vendors.

68. In July of 2019, Sunco's workers commenced going on strike.

69. On August 9, 2019, the Sunco's workers went to the local government complaining of Sunco's non-payment of salaries.

70. The local government ordered Sunco to pay unpaid salaries of June 2019 by August 14, 2019 and pay remaining unpaid salaries and fines by October 25, 2019.

71. Sunco was forced to borrow approximately $2.68 million to pay the unpaid salaries and fines of its approximately 120 workers, pollution disposal, fire prevention, tax, as well its vendors and suppliers.

72. Sunco was required to pay fines, penalties and fees in the amount of $938,843 as a direct result of L. Sun's abandonment's the factory, and interest on the monies it had to borrow in the amount of $577,455 as a result of Infinity's not paying its invoices.

73. L. Sun had not disclosed to the Board of Sunco or the other top managers of Sunco that her son, D. Sun, and her daughter-in-law, S. Sun were the managers and owners of Infinity.

74. Other board members only learned of the true nature of the roles that D. Sun and S. Sun played in Infinity after Infinity failed to pay for Sunco's outstanding invoices amounting to $6,712182.11 in cabinetry and the company slipped into insolvency.

75. It is believed that L. Sun held and holds some kind of undisclosed financial interest in Infinity, as well as control over Infinity.

76. L. Sun had not disclosed that she and her direct family members had a vested interest in the $6,712,182.11 sale of cabinets.

77. L. Sun did not disclose her interest in Infinity or the financial benefit she received from Infinity to Sunco's Board or other top managers.

78. It is apparent that L. Sun believed that the duties, countervailing duties, and anti-dumping tariffs being imposed would be crippling to Sunco's ability to export to the United States.

79. L. Sun took and converted the final cabinet shipments of $6,712182.11, with a wholesale value of $8,375,000 to $10,050,000 or more for her own personal benefit and the benefit of her son D. Sun and her daughter-in-law S. Sun.

80.    L. Sun drained Sunco of its accounts receivable and abandoned the company for her other home in Massachusetts, leaving workers unpaid, vendors unpaid, polluted material unprocessed, and Chinese regulatory agencies potentially holding the remaining managers liable for these unpaid liabilities.

81.    Sunco believes that L. Sun, D. Sun and S. Sun have ceased operations of Infinity and siphoned off all of its capital.

82.    In August of 2020, Sunco, Inc. (U.S.A.), a purported shareholder of Sunco controlled by L. Sun filed suit in Suzhou, China seeking to dissolve Sunco.  The court in Suzhou denied the request to dissolve Sunco and entered judgment in favor of Sunco in November of 2021.

83.    Based on information and belief, the Suzhou lawsuit to dissolve Sunco was initiated by D. Sun pursuant to the instructions of L. Sun in an apparent, wrongful attempt to prevent Sunco from asserting its right and being able to pursue the claims alleged herein against her, as well as against her son, her daughter-in-law and Infinity, arising from her wrongful conversion of the $6,712182.11 in cabinets manufactured by Sunco for Infinity.

84.    Sunco will prove its damages at the time of trial.

9

**AFFILIATED ENTITIES**

85.    As set forth above, the following entities have been identified as Affiliated Entities of Infinity: Sunco, Inc.; Eastman St. Distributors LLC; Eastman St. Woodworks, Inc.; Infinity Realty Company LLC; Sun Trust f/k/a Sun Family Trust; and New Sun Limited Partnership (the "Affiliated Entities").

86.    Each of the Affiliated Entities is owned in part or whole of one another as well as by L. Sun, D. Sun and/or S. Sun.

87.    Each of the Affiliated Entities was involved in part of or whole, of the incorporation, distribution and/or sale of the cabinets and/or were in receipt of and/or the beneficiary of the proceeds from the sale of the cabinets.

88.    The Affiliated Entities operated under the management of L. Sun, D. Sun and S. Sun and are agents as the alter ego of one another.

89.    Upon information and belief, the Affiliated Entities have commingled their assets and monies, as well as their operations, resulting in their operations as a single cabinet enterprise.

90.    The Affiliated Entities are organized for the importation and the sale of a single product – cabinets.

91.    During the period of time from about July 2014 through 2018 the sole source of cabinets for the Affiliated Entities to import, distribute and/or resell were Sunco's cabinets.

92.    Each of the Affiliated Entities received and benefited directly or indirectly from the importation and sale of the cabinets without paying any consideration.

93.    The Affiliated Entities were used by D. Sun, L. Sun, S. Sun and Infinity to conceal and obfuscate the proceeds from the sale of the cabinets.

94.    Upon information and belief, the Affiliated Entities transferred the cabinets from one entity to the next for no consideration.

95.    Sunco, Inc.'s business is to import, distribute and sell wood cabinetry.

96.    Eastman St. Distributors LLC's scope of business is defined as retail sale of cabinetry.

97.    Eastman St. Woodworks, Inc. is in the business of importation and distribution of kitchen and bathroom cabinets.

98.   All of the Affiliated Entities were formed by L. Sun, D. Sun, and/or S. Sun, who have ownership, are officers or directors, and/or control.

99.   Sunco, Inc., previously known as Sunco Business Trust was an entity created and managed by L. Sun.

100.   L. Sun converted Sunco Business Trust into Sunco, Inc., wherein she remained as a director and/or officer.

101.   At some point in or about 2010, L. Sun brought D. Sun into Sunco, Inc. and according to public records at the Commonwealth of Massachusetts Secretary of State's office, appointed D. Sun as a director and officer.

102.   According to the Commonwealth of Massachusetts, Secretary of State's office, D. Sun is Sunco Inc.'s current director and officer.

103.   S. Sun is the manager and D. Sun is the person authorized to sign real estate instrument for Eastman St. Distributors LLC.

104.   D. Sun is a director and officer of Eastman St. Woodworks, Inc., which was incorporated in March, 2022.

105.   Sunco, Inc. and Eastman St. Woodworks, Inc. hold themselves out as doing business as one another.

106.   D. Sun is manager of Infinity Realty Company LLC whose business scope is defined as real estate investment.

107.   On information and belief, the monies obtained from the sale of the cabinets were invested in real estate held by Infinity Realty Company LLC.

108.   Sunco, Inc. is the general partner of New Sun Limited Partnership whose business is primarily in real property transactions and investments.

109.   On information and belief, the monies obtained from the sale of the cabinets were invested in real estate held by New Sun Limited Partnership.

110.   L. Sun, D. Sun, and S. Sun would use Infinity to order cabinets from Sunco and then transfer the cabinets to one or more of its Affiliated Entities who in turn transferred the cabinets between themselves: Sunco Inc., Eastman St. Distributors LLC, and/or Eastman St. Woodworks, Inc.  The Affiliated Entities would then resell or distribute the cabinetry to retailers or sell the cabinetry directly to consumers. The cabinets manufactured by

11

Sunco were the sole source of the wooden cabinet products manufactured and sold by these entities.

111. L. Sun, D. Sun, and S. Sun would invest the proceeds from the sale and/or resale of the cabinets to Infinity Realty Company LLC, New Sun Limited Partnership and/or Sun Trust f/k/a Sun Family Trust for investment in real properties.

112. Based on information and belief, L. Sun, D. Sun, and S. Sun transferred all of Sunco's cabinets and/or the proceeds from the sale of the cabinets into the Affiliated Entities with the purpose of concealing them from any potential judgment.

## CAUSES OF ACTION

### <u>COUNT I</u>
**Breach of Contract**
**(Against Infinity)**

113. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

114. A contract was formed between Sunco and Infinity.

115. The contract was for Sunco to manufacture custom ordered cabinetry for Infinity.

116. Infinity requested that Sunco manufacture the cabinetry.

117. The unpaid cabinets were manufactured and delivered in accordance with Sunco and Infinity's business practices dating back about 6 to 7 years.

118. Sunco manufactured the cabinetry per Infinity's purchase orders.

119. Sunco delivered the cabinets to Infinity and Infinity accepted the cabinets.

120. Infinity never raised any issue as to the quality of the cabinets, corrections of the cabinets, or timeliness of the delivery of the cabinets.

121. Infinity accepted the cabinets and resold the cabinets making a profit estimated to be between $1,675,000 and $3,350,000, or greater, above the $6,712,182.11 contract price.

122. Infinity breached the parties' contract by not paying Sunco for the cabinets.

123. In April of 2019, Infinity affirmed in writing that it owed Sunco $5,886,466.77 for the cabinets manufactured and delivered as of December 31, 2018.

12

124.    Sunco performed all of its duties and responsibilities under the parties' contract.

125.    Sunco will prove its damages at the time of trial.

**COUNT II**
**Promissory Estoppel**
**(Against Infinity)**

126. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

127. Infinity represented to Sunco that it would pay for the cabinetry to be manufactured by Sunco.

128. It was reasonable for Sunco rely of the promises of payment from Infinity to move forward to manufacture the goods for Infinity.

129. Sunco relied on this promise from Infinity to pay for the cabinetry.

130. Infinity's promises of payment were substantial in character.

131. Based on Infinity' promises, Sunco employed a factory workforce and purchased raw materials from suppliers.

132. Sunco manufactured the cabinets in reliance on the promises of payment by Infinity.

133. Sunco delivered the cabinets in accordance with Infinity's promises.

134. Infinity accepted the delivery of the cabinets from Sunco.

135. Infinity expressed no issues with regards to Sunco failing to fulfill its obligations regarding the manufacturing and delivery of the cabinets.

136. Infinity breached its promises by not paying for the manufactured and delivered cabinets.

137. Injustice can only be avoided by enforcement of Infinity's promises.

138. Infinity has acknowledged owing monies to Sunco for the cabinets.

139. Sunco will prove its damages at the time of trial.

**COUNT III**
**Quantum Meruit**
**(Against Infinity)**

**140.** If Defendants deny the existence of a contract between the parties, then Sunco pleads Quantum Meruit in the alternative.

141. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

142. Infinity received $6,712182.11 in cabinets from Sunco.

143. Infinity accepted delivery of the $6,712182.11 in cabinets from Sunco.

144. Infinity has acknowledged in writing that it owes $5,886,466.77 as of the end of December 2018 for cabinets manufactured by Sunco.

145. Infinity had a reasonable expectation that Sunco expected to get paid for the cabinets.

146. Infinity knew or reasonably understood it was responsible for paying for the cabinets.

147. The value of the cabinets is $6,712182.11.

148. Sunco will prove its damages at the time of trial.

**COUNT IV**
**Wrongful Interference with Business and Contractual Relations**
**(Against L. Sun)**

This Cause of Action Has Been Dismissed
Pursuant To The Court's Order of March 13, 2023, Docket No. 32.

**COUNT V**
**Conversion**
**(Against All Defendants)**

This Cause of Action Has Been Dismissed
Pursuant To The Court's Order of March 13, 2023, Docket No. 32.

**COUNT VI**
**Breach of Duty of Loyalty**
**(Against L. Sun)**

149. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

15

150. L. Sun was the President and on the Board of Directors of Sunco and is still on the Board of Directors.

151. L. Sun owed a duty of loyalty to Sunco not to compete or put her own financial interests ahead of the interests of Sunco.

152. L. Sun owed a duty of loyalty to Sunco not to place the interests of Infinity or herself ahead of the interests of Sunco or pursue interests adverse to Sunco including competing with Sunco and diverting payments due Sunco for her own benefit.

153. L. Sun breached her duty of loyalty by holding and concealing interest in Infinity by taking action that harmed Sunco and benefited her.

154. L. Sun breached her duty of loyalty by shipping Sunco goods to Infinity, a company she had a personal interest in and/or received a personal benefit from, either directly or indirectly and preventing Infinity from paying for the cabinets.

155. L. Sun further breached her duty of loyalty by abandoning Sunco and having Infinity not pay $6,712182.11 in outstanding invoices, and leaving no monies in the company to pay its workers or vendors.

156. Sunco has been damaged as a result of L. Sun's breaches of her duty of loyalty.

157. Sunco will prove its damages at the time of trial.

**COUNT VII**
**Breach of Fiduciary Duty**
**(Against L. Sun)**

158. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

159. L. Sun as director, shareholder and President owed a fiduciary duty to Sunco and the other Shareholders.

160. Officers and directors owe a duty of utmost good faith and loyalty to the corporation itself, to protect the interests of the corporation they serve. They are required to act in complete good faith toward their corporation, its shareholders, and to exercise reasonable intelligence in the performance of their duties.

161. L. Sun not only owed a fiduciary duty to Sunco as a result of her position as a shareholder, director and officer, she also owed the duty because she held special

16

knowledge and information relied upon by Sunco and its Board members regarding sales to Infinity.

162. Sunco relied upon the special knowledge possessed by L. Sun in in the manufacturing and sale of goods to Infinity.

163. L. Sun acted in bad faith and not in the best interest of Sunco or its shareholders.

164. L. Sun breached this fiduciary duty by arranging for Sunco to manufacture $6,712182.11 in cabinetry for Infinity and then assisted and directed Infinity not pay for the cabinetry.

165. L. Sun did all these knowing workers would not get paid, vendors would not get paid and that Sunco would be in violation of Chinese regulators.

166. Sunco has been damaged by L. Sun's breaches of her fiduciary duties, damages which will be proven at trial.

## COUNT VIII
### Moneys Had and Received
### (Against Infinity, D. Sun and S. Sun)[1]

167. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

168. D. Sun, S. Sun and Infinity obtained monies through the sale of goods they received from Sunco.

169. D. Sun, S. Sun and Infinity retained these monies and did not pay Sunco for the goods.

170. Under the circumstances, in equity and good conscience, it would be wrong and unfair for D. Sun, S. Sun and Infinity to retain the monies they received from the sale of the goods and not pay Sunco.

171. Sunco will prove its damages at time of trial.

## COUNT IX
### Conspiracy
### (Against All Defendants)

This Cause of Action Has Been Dismissed
Pursuant To The Court's Order of March 13, 2023, Docket No. 32.

---

[1] L. Sun was dismissed pursuant to the Court's Order of March 13, 2023, Docket No. 32.

17

## COUNT X
### Aiding and Abetting
### (Against L. Sun, D. Sun and S. Sun)

This Cause of Action Has Been Dismissed
Pursuant To The Court's Order of March 13, 2023, Docket No. 32.

## COUNT XI
### Piercing of the Corporate Veil of Infinity
### (Against All Defendants)

172. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

173. Sunco seeks to pierce the corporate veil of Infinity and hold L. Sun, D. Sun and S. Sun for the non-payment of $6,712,182.11 under the legal theories of breach of contract, promissory estoppel, quantum meruit, and monies had and received as alleged herein.

174. Infinity is controlled by L. Sun, her son D. Sun and her daughter-in-law S. Sun.

175. L. Sun, D. Sun and S. Sun receive all the distributions from Infinity.

176. Infinity is believed to have been undercapitalized at all times.

177. Infinity is believed to be undercapitalized because L. Sun, D. Sun and S. Sun disbursed all monies received by Infinity from the sale of cabinets, leaving insufficient capital to pay its creditors, specifically Sunco.

178. When Infinity ordered the cabinets from Sunco, it did not have the capital on hand or adequate account receivables to pay for the cabinets.

179. Infinity relied on its sale of the cabinets in order to pay Sunco to manufacture the cabinets.

180. When Infinity sold the cabinets at issue in this case, it did not use the proceeds from those sales to pay Sunco. Rather, Infinity, at the direction of L. Sun, D. Sun and S. Sun distributed the proceeds from the sales to themselves.

181. L. Sun, D. Sun and S. Sun used Infinity to convert the cabinets for their own personal gain and to avoid paying Sunco the cost of manufacturing the cabinets.

18

182. The corporate veil of Infinity should be pierced and L. Sun, D. Sun and S. Sun, as equity requires, should pay Sunco the $6,712,182.11 that is due and owing for the cabinets specially manufactured for Infinity because D. Sun, L. Sun and S. Sun sold and kept all the proceeds and did not pay Sunco on any of its outstanding invoices.

183. Sunco will prove its damages at the time of trial.

## COUNT XII
### Fraudulent Transfer
### (Against All Defendants and All Affiliated Entities)

184. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

185. The Affiliated Entities' respective assets are substantially controlled by L. Sun, S. Sun, D. Sun and Infinity.

186. The Affiliated Entities are controlled and operated by L. Sun, S. Sun, D. Sun and Infinity.

187. The assets at issue are the cabinets and the revenues generated from the sale of the cabinets.

188. Sunco is the creditor of D. Sun, L. Sun, S. Sun and Infinity; and L. Sun, D. Sun, S. Sun and Infinity are the debtors of Sunco with respect to the non-payment of the cabinets.

189. L. Sun, D. Sun and S. Sun are insiders to Infinity and partners of one another in the business operations described herein, as well as being officers, managers, directors of Infinity and the Affiliated Entities.

190. L. Sun, D. Sun and S. Sun control and operate Infinity.

191. L. Sun, D. Sun and S. Sun are related as mother and son, mother-in-law and daughter-in-law, and husband and wife. Each is deemed to be a relative of one another.

192. Infinity transferred its assets, including monies and cabinets, to L. Sun, D. Sun and the Affiliated Entities to hinder, delay, conceal and defraud Sunco.

193. The transfer of assets, including monies and cabinets, to the Affiliated Entities was without value.

194. The transfer of the revenues from the sales of the cabinets and the transfer of the cabinets to the Affiliated Entities, as well as to L. Sun, D. Sun and S. Sun -- insiders -- was to

19

conceal the revenues and cabinets from Sunco. The transfer constituted substantial, if not all, of Infinity's assets. The transfer was performed to conceal Defendants' assets.

195. Infinity became insolvent upon the transfer of the assets.

196. There was no consideration paid by the Affiliated Entities to Infinity for the assets.

197. The transfer occurred after Infinity incurred the debt.

198. Plaintiff seeks the return of the assets to Infinity and to void any such transfers of assets of Infinity to L. Sun, D. Sun, S. Sun and the Affiliated Entities.

199. Sunco will prove its damages at the time of trial.

### COUNT XIII
### Reach and Apply
### (Against All Affiliated Entities)

200. Plaintiff repeats and re-alleges each and every allegation as though each were separately and specifically set forth herein.

201. Reach and Apply Defendants are legal entities created under the laws of the Commonwealth of Massachusetts, or doing business in the Commonwealth of Massachusetts, or individuals residing in the Commonwealth of Massachusetts.

202. L. Sun, D. Sun, S. Sun and the Affiliated Entities owe Sunco for the cabinets sold and delivered by Sunco, together with statutory interest of 12% from the date of delivery.

203. The purchase price of the cabinets was $6,712,182.

204. Sunco is the creditor of Infinity, and therefore avers that the monies owed due Infinity or being held for the benefit of Infinity by L. Sun, D. Sun, S. Sun and the Affiliated Entities are held in trust for Sunco and should be paid to Infinity, Sunco believes those monies are currently owed to Infinity.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

a. Judgment against Defendants and the Affiliated Entities;

b. Damages, including compensatory, liquidated, and trebled damages to Plaintiff, as authorized and mandated by applicable law, in an amount to be proven at trial;

20

c. Pre-judgment and post-judgment interest;

d. Attorneys' fees and costs;

e. Appropriate injunctive, declaratory and other equitable relief; and

f. Grant such other and further relief as this Court deems just and proper against defendants and reach and apply defendants.

**REQUEST FOR TRIAL BY JURY**

Plaintiff hereby requests that this action to be tried by jury.

**DATED: January 23, 2024**                              **PLAINTIFF,**
By its attorney,


_____
Connie C. Dai (BBO#683330)
Lions Law, P.C.
154 Wells Ave
Newton, Massachusetts 02459
(617) 232-7503 Telephone
(781) 207-8574 Fax
connie@lionslawgroup.com



_____
Timothy K. Cutler (BBO#636124)
CUTLER & WILENSKY LLP
20 Walnut Street, Suite 1
Wellesley, Massachusetts 02481
(617) 232-7500 Telephone
tim@cutlerlegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this Tuesday, January 23, 2024.

21

Case 1:21-cv-10833-JMJ Document 26-1 Filed 01/24/26 Page 86 of 629

---

Timothy K. Cutler

# 公　证　书

中华人民共和国江苏省苏州市苏州公证处

# 证明书

原告森科木业（昆山）有限公司与被告孙琳达（Linda Sun）损害公司利益责任纠纷一案，本院于 2021 年 11 月 29 日作出（2021）苏 05 民初 90 号民事判决书，于 2021 年 12 月 2 日向森科木业（昆山）有限公司、孙琳达（Linda Sun）送达。各方当事人均未在上诉期内提出上诉，该民事判决书已发生法律效力。根据孙琳达（Linda Sun）的申请，本院特出具此证明书。



江苏省苏州市中级人民法院
二〇二二年某三月三十一日

附民事判决书送达凭证：

1. 送达回证；
2. 邮寄送达登记表及邮单；

# 江苏省苏州市中级人民法院

| 案号 | (2021)苏05民初90号 | |
|---|---|---|
| 承办部门 | 国际商事法庭 | |
| 承办法官 | 俞水娟 | |
| 书记员 | 李维娜 | |
| 送达模式 | 文书送达 | 20211201A 5056608 |
| 受送达人1 | 诉讼代理人龚炯(被告孙琳达（LindaSun）) | |
| 法官建议地址 | 龚炯:昆山市前进东路757号隆棋丽景国际C栋10楼(15250235520)(普通地址) | |

| | 材料名称 | 材料类型 | 份数 |
|---|---|---|---|
| 送达文书 | 送达回证判决书-孙琳达 | 电子 | 1 |
| | （2021）苏05民初90号民事判决书（森科昆山公司、孙琳达 损害公司利益纠纷案）(5)(已签章版) | 电子 | 1 |
| | | 合计 | 2 |

| 备注 | （电子送达优先，电子送达不成转邮寄送达，电子送达成功不再邮寄送达） | |
|---|---|---|
| 受送达人2 | 诉讼代理人:吴景贵(原告 森科木业（昆山）有限公司) | |
| 法官建议地址 | 吴景贵:昆山市前进西路曼哈顿国际商务楼15楼1503室(15062626261)(普通地址) | |

| | 材料名称 | 材料类型 | 份数 |
|---|---|---|---|
| 送达文书 | 送达回证判决书-森科木业 | 电子 | 1 |
| | （2021）苏05民初90号民事判决书（森科昆山公司、孙琳达 损害公司利益纠纷案）(5)(已签章版) | 电子 | 1 |
| | | 合计 | 2 |

| 备注 | （电子送达优先，电子送达不成转邮寄送达，电子送达成功不再邮寄送达） |
|---|---|

| 提交人签名 | 李维娜<br><br>2021年12月1日 | 接收人签名/盖章 | |
|---|---|---|---|
| | 说明：本收据一式两份，提交人留存一份，接收人留存一份 | | |

# 江苏省苏州市中级人民法院送达过程报告（龚炯）

| 送达编号 | 20211201A 5056608 | | | 案号： | (2021)苏05民初90号 | |
|---|---|---|---|---|---|---|
| 部门： | 国际商事法庭 | 承办人： | 俞水娟 | | 书记员： | 李维娜 |
| 受送达人： | 龚炯 | | | 受送达人身份： | 诉讼代理人 | |
| 联系电话： | | | | 送达员： | 王君怡 | |
| 送达地址： | 【普通地址】龚炯,昆山市前进东路757号隆祺丽景国际C栋10楼,15250235520 | | | | | |
| 文书清单： | 送达回证判决书-孙琳达,（2021）苏05民初90号民事判决书（森科昆山公司、孙琳达 损害公司利益纠纷案）(5)(已签章版) | | | | | |
| 送达记录(1) | | | | | | |
| 送达方式： | 短信送达 | | | 启动时间： | 2021-12-01 09:53:07 | |
| 发送时间： | 2021-12-01 09:54:06 | | | 短链接签收时间： | 2021-12-01 09:58:48 | |
| 送达结果： | 确定送达 | | | 送达日期： | 2021-12-01 | |
| 结束时间： | 2021-12-01 | | | | | |
| 送达凭据： | 送达回证(龚炯) | | | | | |
| 备注： | | | | | | |
| 送达结果说明： | | | | | | |

# 江苏省苏州市中级人民法院送达过程报告（吴景贵）

| 送达编号 | 20211201A 5056608 | | 案号： | (2021)苏05民初90号 | |
|---|---|---|---|---|---|
| 部门： | 国际商事法庭 | 承办人： 俞水娟 | | 书记员： | 李维娜 |
| 受送达人： | 吴景贵 | | 受送达人身份： | 诉讼代理人 | |
| 联系电话： | | | 送达员： | 王君恰 | |
| 送达地址： | 【普通地址】吴景贵,昆山市前进西路曼哈顿国际商务楼15楼1503室,15062626261 | | | | |
| 文书清单： | 送达回证判决书-森科木业,（2021）苏05民初90号民事判决书（森科昆山公司、孙琳达 损害公司利益纠纷案）(5)(已签章版) | | | | |
| 送达记录(1) | | | | | |
| 送达方式： | 短信送达 | | 启动时间： | 2021-12-01 09:53:15 | |
| 发送时间： | 2021-12-01 09:54:06 | | 短链接签收时间： | 2021-12-01 12:33:29 | |
| 送达结果： | 确定送达 | | 送达日期： | 2021-12-01 | |
| 结束时间： | 2021-12-01 | | | | |
| 送达凭据： | 送达回证(吴景贵) | | | | |
| 备注： | | | | | |
| 送达结果说明： | | | | | |

# 公 证 书

(2024)苏苏苏州证字第 3743 号

申请人：LINDA SUN，女，1946 年 7 月 16 日出生，国籍：美国，护照号码：577710121。

公证事项：证明书

兹证明苏州市中级人民法院于 2023 年 12 月 21 日出具给 LINDA SUN的《证明书》的原件与前面的复印件相符，原件属实。

中华人民共和国江苏省苏州市苏州公证处

公证员 黎长鸿



2024 年 3 月 4 日

LI30867473

# Certificate

This court made the Civil Judgment Paper (2021) S. 05 M. C. No. 90 on November 29, 2021 regarding the case of dispute over liabilities for infringement of interests of the company between the Plaintiff Cinke Wood Industry (Kunshan) Co., Ltd. and the Defendant Sun Linda (Linda Sun), and served the judgment paper to the two parties on December 2, 2021. The parties concerned have not proposed to appeal the judgments within the time limit for appeal, and the Civil Judgment Paper has taken legal effect. This Certificate is hereby issued by this court based on application of Sun Linda (Linda Sun).

Suzhou Intermediate People's Court of Jiangsu Province (seal)

December 21, 2023

Attach Proof of Service of Civil Judgment Paper:

1. Proof of Service;

2. Mail Service Registration Form and Post Receipt;

# Suzhou Intermediate People's Court of Jiangsu Province

| Case No. | (2021) S. 05 M. C. No. 90 | | |
|---|---|---|---|
| Handling department | China International Commercial Court | (QR Code) | |
| Handling judge | Yu Shuijuan | | |
| Clerk | Li Weina | | |
| Service method | Instrument service | 20211201A5056608 | |
| Receiver 1 | Agent ad Litem Gong Jiong (Defendant: Sun Linda (Linda Sun)) | | |
| Address recommended by judge | Gong Jiong: 10/F, Building C, Longqi Lijing International, No. 757, East Qianjin Road, Kunshan City (15250235520) (common address) | | |
| Served instruments | Materials Name | Materials Type | Quantity |
| | Proof of Service Judgment Paper-Sun Linda | Electronic | 1 |
| | Civil Judgment Paper (2021) S. 05 M. C. No. 90 (case of dispute over infringement of interests of company between Cinke Wood Industry (Kunshan) Co., Ltd. and Sun Linda) (5) (edition bearing signatures and seals) | Electronic | 1 |
| | | Total | 2 |
| Remarks | (Service by electronic means shall be prioritized; where service by electronic means fails, mail service will be adopted; where service by electronic means is successful, mail service will not be adopted) | | |
| Receiver 2 | Agent ad Litem: Wu Jinggui (Plaintiff: Cinke Wood Industry (Kunshan) Co., Ltd.) | | |
| Address recommended by judge | Wu Jinggui: Room 1503, 15/F, Manhattan International Commercial Building, West Qianjin Road, Kunshan City (15062626261) (common address) | | |
| Served instruments | Materials Name | Materials Type | Quantity |
| | Proof of Service Judgment Paper-Cinke Wood Company | Electronic | 1 |
| | Civil Judgment Paper (2021) S. 05 M. C. No. 90 (case of dispute over infringement of interests of company between Cinke Wood Industry (Kunshan) Co., Ltd. and Sun Linda) (5) (edition bearing signatures and seals) | Electronic | 1 |
| | | Total | 2 |
| Remarks | (Service by electronic means shall be prioritized; where service by electronic means fails, mail service will be adopted; where service by electronic means is successful, mail service will not be adopted) | | |
| Signature of submitter | Li Weina December 01, 2021 | Signature/seal of receiver | |

Note: This receipt is made in duplicate, with the submitter keeping one copy and the receiver keeping one copy.

## Service Process Report (Gong Jiong) of Suzhou Intermediate People's Court of Jiangsu Province

| Service SN | 20211201A5056608 | | Case No. | (2021) S. 05 M. C. No. 90 | |
|---|---|---|---|---|---|
| Department: | China International Commercial Court | Handler: | Yu Shuijuan | Clerk: | Li Weina |
| Receiver: | Gong Jiong | | Receiver's position: | Agent ad Litem | |
| Tel.: | | | Service clerk: | Wang Junyi | |
| Service address: | [common address] Gong Jiong, 10/F, Building C, Longqi Lijing International, No. 757, East Qianjin Road, Kunshan City, 15250235520 | | | | |
| List of instruments: | Proof of Service Judgment Paper-Sun Linda, (2021) S. 05 M. C. No. 90 (case of dispute over infringement of interests of company between Cinke Wood Industry (Kunshan) Co., Ltd. and Sun Linda) (5) (edition bearing signatures and seals) | | | | |
| Service record (1) | | | | | |
| Service method: | Text message service | | Initiation time: | 2021-12-01 09:53:07 | |
| Sending time: | 2021-12-01 09:54:06 | | Text message link receiving time: | 2021-12-01 09:58:48 | |
| Service result: | Service confirmation | | Service date: | December 01, 2021 | |
| Ending time: | December 01, 2021 | | | | |
| Service voucher: | Proof of Service (Gong Jiong) | | | | |
| Remarks: | | | | | |
| Service result remarks: | | | | | |

## Service Process Report (Wu Jinggui) of Suzhou Intermediate People's Court of Jiangsu Province

| Service SN: | 20211201A5056608 | | Case No. | (2021) S. 05 M. C. No. 90 | |
|---|---|---|---|---|---|
| Department: | China International Commercial Court | Handler: | Yu Shuijuan | Clerk: | Li Weina |
| Receiver: | Wu Jinggui | | Receiver's position: | Agent ad Litem | |
| Tel.: | | | Service clerk: | Wang Junyi | |
| Service address: | (common address) Wu Jinggui: Room 1503, 15/F, Manhattan International Commercial Building, West Qianjin Road, Kunshan City, 15062626261 | | | | |
| List of instruments: | Proof of Service Judgment Paper-Cinke Wood Company, (2021) S. 05 M. C. No. 90 (case of dispute over infringement of interests of company between Cinke Wood Industry (Kunshan) Co., Ltd. and Sun Linda) (5) (edition bearing signatures and seals) | | | | |
| Service record (1) | | | | | |
| Service method: | Text message service | | Initiation time: | 2021-12-01 09:53:15 | |
| Sending time: | 2021-12-01 09:54:06 | | Text message link receiving time: | 2021-12-01 12:33:29 | |
| Service result: | Service confirmation | | Service date: | December 01, 2021 | |
| Ending time: | December 01, 2021 | | | | |
| Service voucher: | Proof of Service (Wu Jinggui) | | | | |
| Remarks: | | | | | |
| Service result remarks: | | | | | |

# NOTARIAL CERTIFICATE

(2024) S. S. S. Z. Z. Zi, No. 3743

Applicant: LINDA SUN, female, born on July 16, 1946, Nationality: USA, Passport No. 577710121.

Issue under notarization: Certificate

This is to certify that the foregoing copy of *Certificate* issued to LINDA SUN by Suzhou Intermediate People's Court on December 21, 2023, conforms to the original document, and the original document is authentic.

Suzhou Suzhou Notary Public Office, Jiangsu Province

The People's Republic of China

Notary: Li Changhong

March 4, 2024

L I 30868494

公 证 书

(2024) 苏苏苏州证字第 3744 号

申请人：LINDA SUN，女，1946 年 7 月 16 日出生，国籍：
国，护照号码：577710121。

公证事项：译本内容与原本内容相符

兹证明前面的 (2024) 苏苏苏州证字第 3743 号《公证书》的
英文译本内容与该公证书中文原本内容相符。

中华人民共和国江苏省苏州市苏州公证处

公证员

L I 30867474

# NOTARIAL CERTIFICATE

(2024) S. S. S. Z. Z. Zi, No. 3744

Applicant: LINDA SUN, female, born on July 16, 1946, Nationality: USA, Passport No. 577710121.

Issue under notarization: true and exact translation

This is to certify that the foregoing English translation of (2024) S. S. S. Z. Z. Zi, No. 3743 *Notarial Certificate* conforms to the original Chinese version of the Notarial Certificate.

Suzhou Suzhou Notary Public Office, Jiangsu Province

The People's Republic of China

Notary: Li Changhong

March 4, 2024

L I 30868497

本附加证明书仅证明 公文书上的签名、签署人签名时的身份，需要时可证明 公文书上的印章属实。附加证明书不对公文书内容予 以证明。
This Apostille only certifies the authenticity of the signature, the capacity of the person who has signed the public document and, where appropriate, the identity of the seal or stamp which the public document bears. This Apostille does not certify the content of the document for which it was issued.
Visit https://consular.mfa.gov.cn/VERIFY/ and scan the QR code to verify the issuance of this Apostille.

**10365504**



## 附加证明书
## APOSTILLE

(1961年10月5日海牙公约)
(Convention de La Haye du 5 octobre 1961)

1. 文书出具国: 　中华人民共和国
   Country: 　　People's Republic of China

　　　　　　本公文书 This public document

2. 签署人　　　黎长鸿
   has been 　　Li Changhong
   signed by

3. 签署人身份　公证员
   acting in the　Notary Public
   capacity of

4. 印鉴名称　　江苏省苏州市苏州公证处
   bears the 　　Suzhou Suzhou Notary Public Office, Jiangsu Province
   seal/stamp of

　　　　　　　证明 Certified

5. 签发地　南京　　　　　　　　　6. 签发日期　2024年03月15日
   at 　　　Nanjing　　　　　　　　　the　　　March 15, 2024

7. 签发人　张君/Zhang Jun
   by 　　　江苏省外事办公室
   　　　　　Foreign Affairs Office of Jiangsu Province



8. 附加证明书编号　认字第243200019193号
   No

9. 签发机关印鉴:　　　　　10. 签名:
   Seal/Stamp:　　　　　　　Signature:

# 公 证 书

中华人民共和国江苏省苏州市苏州公证处

# 中华人民共和国
# 江苏省苏州市中级人民法院
# 民 事 判 决 书

（2021）苏05民初90号

原告：森科木业（昆山）有限公司，住所地中华人民共和国江苏省昆山市锦溪镇锦商路 327 号。

法定代表人：肖瑞华，该公司董事长。

委托诉讼代理人：吴景贵，上海合鸿律师事务所律师。

被告：孙琳达（Linda Sun），女，美利坚合众国国籍，1946 年 7 月 16 日出生，护照号码 577710121

委托诉讼代理人：龚炯，江苏海联海律师事务所律师。

委托诉讼代理人：张霄南，江苏海联海律师事务所律师。

原告森科木业（昆山）有限公司（以下简称森科木业公司）因与被告孙琳达（Linda Sun）损害公司利益责任纠纷一案，向本院起诉，本院于 2021 年 1 月 11 日立案后，依法适用普通程序于 2021 年 10 月 28 日公开开庭进行了审理，原告森科木业公司委托诉讼代理人吴景贵、被告孙琳达委托诉讼代理人龚炯到庭参加诉讼。本案现已审理终结。

森科木业公司向本院提出诉讼请求：1.判令孙琳达赔偿森科木业公司货款损失 6712182.11 美元（折合人民币 46730580.43 元）及利息

1

损失 200000 元( 以 46730580.43 元为基数,自 2019 年 4 月 30 日计算

暂算至 2020 年 12 月 31 日,计算至实际支付之日止,按照全国银行间

同业拆借中心公布的贷款市场报价利率的两倍计算 ); 2. 判令本案诉讼

费由孙琳达承担。事实和理由: 孙琳达原为森科木业公司独资股东,

2014 年将 52% 的股权转让给江苏奇意投资有限公司（以下简称奇意公

司), 孙琳达继续为董事长, 实际控制公司, 负责对外销售的一切事宜

且森科木业公司的所有业务均是外销, 且仅有一家客户, 截至 2019 年

4 月 29 日, 美国盈枫利责任有限公司（INFINNITY WOOD PRODUCTS, LLC

（以下简称盈枫利公司）结欠森科木业公司货款 6712182.11 美元,

2019 年 6 月 14 日孙琳达突然销声匿迹, 森科木业公司向盈枫利公司

追要货款, 该公司置之不理。森科木业公司经查询得知, 盈枫利公司

为孙琳达儿子孙福君（David Sun）的公司, 孙琳达作为森科木业公司

的股东之一、任董事长职务, 利用上述地位进行关联交易导致公司无

法索要上述款项, 其已经违反公司法的相关规定, 依法应当承担赔偿

责任。

被告孙琳达辩称: 一、森科木业公司恶意歪曲基本事实。孙琳达

并非森科木业公司股东, 森科木业公司设立时的股东是森科公司

（Sunco, Inc), 后森科公司将 52% 股权转让给奇意公司, 森科木业公

司的股东为森科公司及奇意公司。二、孙琳达仅是森科公司委派到森

科木业公司处的董事, 2015 年森科公司与奇意公司完成股权转让后,

森科木业公司的法定代表人、董事长及总经理均变更为吴国庆, 另一

董事为奇意公司委派的肖琼。吴国庆和肖琼是奇意公司股东, 共同持

有百分之百股权。股权转让完成后, 森科木业公司一直由吴国庆控制

并负责经营管理。三、森科木业公司与盈枫利公司的交易长达十余年

2

少，反而增加很明显，其利用了这种特殊的关系，将森科木业公司的利益输送到其儿子实际控制的关联公司，盈枫利公司恶意行为相当明显。从 2019 年的 6 月份，孙琳达突然离开公司，导致自此以后森科木业公司款项没有收回来，可以看出孙琳达的主观恶意明显严重损害了森科木业公司的利益，依法应当承担法律责任；

证据 3.使领馆认证的股权售让协议书，证明孙琳达属于森科木业公司的股东之一，使领馆的认证书签发当时，即股权交易完成日期是 2013 年 4 月份，孙琳达就取得了在森科木业公司的股东地位；

证据 4.委派书、昆劳人仲案字（2019）1208 号裁决书，证明孙琳达是公司的董事之一，实际履行董事长职务，负责公司所有经营事宜；

证据 5.盈枫利公司的工商登记资料及相关的认证资料，证明盈枫利公司实际所有人是孙琳达的儿子孙福君、儿媳袁希乐；

证据 6.孙福君与袁希乐的结婚证、财产约定书，证明孙福君、袁希乐是夫妻关系；

证据 7.售房委托书，证明孙福君和孙琳达是母子关系，孙琳达利用董事长身份将森科木业公司的货物全部销售给盈枫利公司；

证据 8.催款邮件、催款函以及对应的快递单，证明 2019 年 6 月 14 日孙琳达突然消失导致森科木业公司的 4670 多万元货款无法收回，其应当承担法律责任；

证据 9.共 18 册，系出口订单、报关单、发票和装箱单，是对审计报告中确认盈枫利公司结欠款项的补强，进一步证明盈枫利公司欠森科木业公司金额的补强证据；

证据 10.2019 年 8 月份的会议记录，证明森科木业公司实际上一直是由孙琳达实际控制的，系对孙琳达认为吴国庆控制公司进行驳斥；

4

股权转让前均是正常支付货款。吴国庆接管森科木业公司后是由其 负责与盈枫利公司的外销交易事宜，森科木业公司的客户也并非只有 枫利公司一家。四、森科木业公司与盈枫利公司的交易都是正当交易 价格公允。双方之间的交易未造成森科木业公司任何损失，反而给 科木业公司创造了巨大的利益，孙琳达也从未恶意控制森科木业公 与盈枫利公司发生不正当交易。五、虽然目前森科木业公司的审计 告体现盈枫利公司尚有货款未予结清，但这是属于正常的交易风险 森科木业公司应当通过正常途径主张货款或依法起诉主张货款。奇 公司作为实际控制森科木业公司的股东，吴国庆作为森科木业公司 实际控制人，恶意以森科木业公司名义起诉孙琳达，而不通过正常 径主张货款，维护森科木业公司权益，因此可能造成森科木业公司 另一股东森科公司的损失。综上，森科木业公司起诉无事实与法律 据，请求驳回其诉讼请求

为支持其诉讼请求，原告森科木业公司向本院提交以下证据：

证据 1. 苏华专审（2019）第 5116 号审计报告、企业询证函， 明截止 2018 年底盈枫利公司结欠森科木业公司的货款为 5886466. 美元，在证据的第 18 页可以看出森科木业公司仅有一个客户，也就 盈枫利公司，并且销售额巨大，到 2018 年结欠的款项也很大。证据 第 20 页询证函，是盈枫利公司的负责人孙福君，即孙琳达的儿子签 确认截止到 2018 年结欠森科木业公司的货款五百多万美元；

证据 2. 苏华专审（2020）第 5098 号审计报告，证明截止到 20 年底盈枫利公司结欠货款的情况，也就是本案的诉讼主张金额。特 提醒法庭注意，2018 年底到 2019 年以后外部环境特别差，但在这 情况下孙琳达作为公司的实际控制人负责销售，赊账金额不但没有

3

证据 11. 相关的政府文件，进一步证明在 2019 年 6 月 14 日孙琳达离开公司前，其是完全掌控公司的；

证据 12. 2019 年 7 月 24 日孙琳达寄回来的一个文件，当时其授权由肖瑞华和肖琼来处理公司的一切事宜，证明在孙琳达离开昆山之前所有的事务都是由其经手，公司由其掌控，也进一步证明实际上公司是能够高效运转的；

证据 13. 2018 年 7 月至 2019 年 6 月公司日常支付的单据，这些报销单据基本上都是由孙琳达签字，进一步证明公司所有的事宜均是由其控制的；

证据 14. 2019 年 4、5、6 月份的邮件，系员工花名册以及食堂费用的邮件，证明公司日常经营活动实际上都是抄送给董事长即孙琳达的，其邮箱地址也证明公司是孙琳达控制的，这说明对方在庭审中陈述公司是由吴国庆控制与事实是不相符的；

证据 15. 2018 年 6 月至 2019 年 7 月份的生产装箱、出口付款等往来的邮件，证明孙琳达在实际控制公司期间将所有的产品发给其儿子的公司，这个邮件也没有抄送给吴国庆，都是其一人在掌控。同时这些邮件中的单据和证据 13 也是相互印证的；

证据 16. 邮件一组，证明孙琳达和其儿子孙福君共同损害公司利益的行为，吴国庆对经营或者外贸的应收账款不知情；

证据 17. 股权转让协议，在 3.1 条中已经明确表明孙琳达必须保证累计的应收账款不超过 2000 万，同时确保在 2019 年底全部收回；

证据 18. 函件，证明自 2020 年 1 月份起森科木业公司就不断发函催款，但孙琳达均不予以回复；

证据 19. 森科木业公司多次催款，在催款过程中孙琳达以及盈枫

利公司不但不回复，还把森科木业公司的邮件全部拉黑，导致无法正常地催款，证明孙琳达损害公司利益的行为相当明显；

证据20.公司解散纠纷案件的起诉状，证明盈枫利公司以及孙琳达、孙福君不配合支付货款，还发起一个解散公司的诉讼，这也证明孙琳达侵害公司的行为是相当明显的。

孙琳达经质证认为：

关于证据1，真实性认可，但是孙琳达及森科公司均未参与审计过程，对于审计报告的内容不予认可，盈枫利公司是否还有货款未支付以及尚有多少货款未予支付，孙琳达并不清楚，且从审计报告中可以看出，森科木业公司尚有对孙琳达的其他应付款20957013.74元未予以支付，孙琳达也将保留依法主张的权利。对于证据一中企业征询函的真实性孙琳达无法确认；

关于证据2，真实性认可，但是孙琳达及森科公司均未参与审计过程，对于审计报告的内容不予认可，盈枫利公司是否还有货款未支付以及尚有多少货款未予支付，孙琳达并不清楚，因为股权转让后实际负责森科木业公司经营的是吴国庆并非是孙琳达，森科木业公司的业务均是出口业务，出口业务中均需要使用公章等材料，这些材料均是在吴国庆控制中，孙琳达不可能在该时间段与盈枫利公司进行任何交易；

关于证据3，真实性无法确认，孙琳达从未签过该份资料。从森科木业公司提供的该份证据的原件也可以看出孙琳达签名处实际是他人签字的。即使该份证据是真实的，该份协议事实上未发生法律效力，也不能起到变更森科木业公司股权的法律后果。森科木业公司股东目前是森科公司及奇意公司；

6

关于证据 4，对委派书真实性认可，该证据也证明孙琳达仅是森科公司委派到森科木业公司的董事。对于裁决书的真实性认可，但证明目的不认可。孙琳达仅是森科木业公司的董事，孙琳达是否履行董事长职务应当是由森科木业公司的股东及董事确认，而不应当由森科木业公司的某一个员工来认为孙琳达是否是董事长。而在该份裁决书中作为被申请人的森科木业公司在质证时已经明确表示孙琳达并不是其董事长，这是森科木业公司所陈述的事实，而从客观来说，自 2015 年股权转让后，孙琳达也从未担任森科木业公司董事长；

关于证据 5，对于该组证据的真实性认可，但与本案没有关联性；

关于证据 6，对于该组证据的真实性认可，但与本案没有关联性；

关于证据 7，对于该组证据真实性认可，但对于证明目的不认可。森科木业公司与盈枫利公司交易均是正当合法，股权转让后系吴国庆负责与盈枫利公司之间的交易；

关于证据 8，对于该组证据中森科木业公司寄给盈枫利公司的催款函，孙琳达无法确认真实性。对于寄给孙琳达的催款函，孙琳达并未收到，且对于催款函的内容不予认可。孙琳达并非森科木业公司股东，也未转移森科木业公司利益，孙琳达也没有义务清偿货款；

关于证据 9，真实性无法确认，即使都是真实的，也都是森科木业公司正常经营过程中的资料，都是森科木业公司员工在正常处理经营事宜，并不能以此证明孙琳达损害公司利益。森科木业公司的实际控制人依然是吴国庆，在森科木业公司的对外出口业务中均需用到公司公章，而在此期间公章一直由吴国庆掌控，孙琳达不可能一个人控制公司完成出口业务；

关于证据 10，真实性、合法性、关联性均不认可，证明目的也不

认可。孙琳达并未参与该次会议，是否真实存在均不知情，会议内容也不认可。2015 年 4 月森科木业公司股权变更后，吴国庆担任公司法定代表人、持有公司公章并负责森科木业公司的经营管理，至今吴国庆都是森科木业公司的实际控制人；

关于证据 11，真实性、合法性认可，关联性不认可，该证据与本案没有关联性，证明目的也不认可，2015 年 4 月森科木业公司股权变更后，吴国庆担任公司法定代表人、持有公司公章并负责森科木业公司的经营管理，至今吴国庆都是森科木业公司的实际控制人；

关于证据 12，真实性、合法性、关联性均不认可，孙琳达有在空白处签字的白纸留存在森科木业公司处，该文件可能是后被森科木业公司打印上去的；

关于证据 13，真实性无法确认且与本案没有关联性，即使都是真实的，2018 年 2 月 2 日起，孙琳达作为森科木业公司的总经理，在财务制度中要求其在财务支出流程中签字也是正当的，但是并不能以此证明孙琳达是森科木业公司的实际控制人，森科木业公司的实际控制人依然是吴国庆；

关于证据 14，真实性无法确认且与本案没有关联性，即使都是真实的，2018 年 2 月起，肖瑞华才是森科木业公司的董事长及法定代表人，该邮件中的董事长只是发件人的备注且只是抄送给所谓的"董事长"，并不能以此证明森科木业公司的日常所有经营活动必须由孙琳达审批及孙琳达是森科木业公司的实际控制人，收件人高经理是吴国庆聘用的财务经理，其负责具体事务，森科木业公司的实际控制人依然是吴国庆；

关于证据 15，真实性无法确认，即使都是真实的，也都是森科

8

业公司正常经营过程中的邮件往来，是森科木业公司的员工在正常处理经营事宜，也都只是抄送给孙琳达，并不能以此证明孙琳达完全控制森科木业公司，森科木业公司的实际控制人依然是吴国庆。在森科木业公司的对外出口业务中均需用到公司公章，而在此期间公章一直由吴国庆掌控，孙琳达不可能控制公司一个人完成出口业务；

关于证据 16，真实性无法确认，即使都是真实的，也都是森科木业公司正常经营过程中的邮件往来，都是森科木业公司的员工在正常处理经营事宜，也都只是抄送给孙琳达，并不能以此证明孙琳达完全控制森科木业公司，损害公司利益，森科木业公司的实际控制人依然是吴国庆。在森科木业公司的对外出口业务中均需用到公司公章，而在此期间公章一直由吴国庆掌控，孙琳达不可能控制公司一个人完成出口业务。相关邮件中森科木业公司的处理人员都是高经理，其是吴国庆聘用的财务经理，其负责具体事务；

关于证据 17，真实性不认可，孙琳达从未签署过该份《股权转让协议书》，该《股权转让协议书》明显是伪造的。该份《股权转让协议书》与 2014 年 9 月 8 日的《股权转让协议书》第 1、2，4，5，6 页内容完全一致，但却仅有第 4 页有孙琳达签字。内容仅有第 3 页进行了变动，主要条款变动为第 3.11 条及第五条。3.11 条增加的内容就是针对结欠的应收款，第五条无故减少了相关内容，最终目的就是保证《股权转让协议》第三页的整页内容不变，使得第四页孙琳达签字页内容与 2014 年 9 月 8 日的《股权转让协议书》内容完全一致。孙琳达认为这份《股权转让协议》是森科木业公司及其控制人吴国庆处心积虑伪造的证据，可能伪造签名或者在孙琳达签订的空白页上打印内容后添加第 1、2、3、5、6，企图恶意制造孙琳达及森科公司的义务；

另在森科公司与奇意公司的仲裁案件中作为股权转让主体的双方均[
提出过签订有该份《股权转让协议书》，明显有违常理。该份《股权[
让协议书》第 6.8 条也作了排他性的约定，如果双方真实的签订的[
份《股权转让协议书》，那在仲裁案件中就不可能均不予提供；

关于证据 18，孙琳达从未收到过函件，对于函件所述内容不予[
可。孙琳达从未损害公司利益，与盈枫利公司的交易都是森科木业[
司的正常销售经营行为，如森科木业公司认为盈枫利公司结欠款项[
当依法诉讼；

关于证据 19，真实性无法确认，与盈枫利公司的交易都是森科[
业公司的正常销售经营行为，如森科木业公司认为盈枫利公司结欠[
项应当依法诉讼；

关于证据 20，真实性认可，但不能证明孙琳达损害公司利益。

经本院要求，孙琳达向本院提交了上海国际经济贸易仲裁委员[
（上海国际仲裁中心）于 2021 年 4 月 29 日作出的（2021）沪贸仲[
字第 0349 号裁决书，各方明确对于裁决书的真实性没有异议。

本院认证意见：对当事人无异议的证据，本院予以确认并在卷[
证；对有争议的证据，本院将结合其他证据及案件事实综合予以认定[

根据当事人陈述和经审查确认的证据，本院认定事实如下：

森科木业公司是 2003 年 4 月 8 日成立的外商独资企业，森科公[
原持有森科木业公司 100%的股权。2015 年 4 月 28 日，森科木业公[
办理工商变更登记，公司类型由有限责任公司(外国法人独资)变更[
有限责任公司(中外合资)，法定代表人由孙琳达变更为吴国庆，股[
由森科公司 100%持股变更为森科公司持股 48%、奇意公司持股 52%[
2018 年 2 月 11 日，森科木业公司法定代表人由吴国庆变更为肖瑞[

10

目前森科木业公司的董事分别为肖瑞华、肖琼、孙琳达，其中肖瑞华任董事长。

森科木业公司的经营范围是生产木质建筑装潢用制品，木质家具及配件，销售自产产品，自有厂房出租。森科木业公司自成立伊始，长期为盈枫利公司供货，双方存在多年合作关系。森科木业公司2018年度财务审计报告显示森科木业公司盈枫利公司的应收账款是40399998.74元，对孙琳达的应付款是20957013.74元。森科木业公司2019年度财务审计报告显示森科木业公司对盈枫利公司的应收账款是46730580.43元，对孙琳达的应付款是20957013.74元。

盈枫利公司是一家依据特拉华州法律成立的公司，该公司在马萨诸塞州开展与家居装饰有关的产品和服务的销售和分销业务，公司管理人员为袁希乐（Shillock YUAN-SUN）和孙福君（David SUN），孙福君系本案被告孙琳达的儿子。

森科木业公司举证的2013年4月29日的《股份售让协议书》，系由森科公司作为卖方、孙琳达作为买方签订，约定森科公司将其持有的森科木业公司100%的股权转让给孙琳达，转让价格为250万美元，在交割时以一次性现金支付方式结算，森科公司应将代表标的股份的股份证书交付给孙琳达。

本院另查明，2019年7月，森科公司作为申请人，以奇意公司为被申请人，向上海国际经济贸易仲裁委员会（上海国际仲裁中心）提交2014年9月8日的《股权转让协议书》，要求奇意公司支付股权转让款1500万元以及利息、违约金300万元，上海国际经济贸易仲裁委员会（上海国际仲裁中心）于2021年4月29日作出（2021）沪贸仲裁字第0349号裁决书，就该案所涉争议相关事实作出如下认定："1.

11

关于系争《转让协议》签订时的森科木业公司股东 ……上述事实可以认定孙琳达并未根据《股份售让协议书》获得股东资质，系争《转让协议》签订时森科木业公司的股东为申请人森科公司。……因此仲裁庭认定，折抵协议产生了债务抵销的效果，奇意公司于 2016 年 7 月 30 日完成债务抵销，自此不再向孙琳达负有支付义务，亦不再负有向森科公司支付 1500 万元股权转让款的义务。……仲裁庭根据双方的事先约定，支持第三项仲裁请求，认定奇意公司应当向森科公司就其迟延支付股权转让款项的违约行为支付违约金 300 万元。……"，据此仲裁庭裁决奇意公司向森科公司支付违约金 300 万元，对于森科公司的其余仲裁请求不予支持。

本案主要争议焦点在于：一、孙琳达是否为森科木业公司的股东，进而其作为本案被告是否适格？二、森科木业公司主张孙琳达存在利用关联关系损害公司利益的行为进而要求赔偿能否成立？

本院认为：

一、关于本案的法律适用。本案被告孙琳达系美利坚合众国自然人，故本案纠纷属于涉外民商事案件。本案系损害公司利益责任纠纷，属于因侵权行为提起的诉讼，《中华人民共和国涉外民事关系法律适用法》第四十四条规定："侵权责任，适用侵权行为地法律，但当事人有共同经常居所地的，适用共同经常居所地法律。侵权行为发生后，当事人协议选择适用法律的，按照其协议。"本案中，森科木业公司主张的侵权行为地系江苏省昆山市，且在庭审中双方当事人均选择适用中华人民共和国法律，故本院确定中华人民共和国法律为解决本案纠纷的准据法。

二、关于本案的实体处理

上述事实可以
系争《转让
……因此仲裁
2016 年 7 月
亦不再负有向
根据双方的事
科公司就其延
……", 据此仲
于森科公司的

业公司的股东
孙琳达存在利

合众国自然
益责任纠纷,
系法律适用
但当事人有
发生后, 当
业公司主张
选择适用中
决本案纠纷

（一）孙琳达是否为森科木业公司的股东进而其作为被告是否适格

森科木业公司成立时持股 100% 的股东是森科公司, 而森科木业公司当前的工商登记信息和章程均显示, 经股权转让后森科公司持有森科木业公司 48% 的股权, 奇意公司持有森科木业公司 52% 的股权。所以, 从森科木业公司设立至本案纠纷发生, 孙琳达从未成为森科木业公司工商登记的股东。现森科木业公司以 2013 年 4 月 29 日《股份售让协议书》主张孙琳达系其股东, 但《股份售让协议书》的签署并不代表受让方已获得股东资格, 森科木业公司在本案中并未进一步提供证据证明孙琳达和森科公司对《股份售让协议书》存在实际履约行为, 亦未有证据证明森科木业公司的章程、股东名册、工商部门登记、出资证明书等文件将森科公司的股东身份变更为孙琳达; 且《股份售让协议书》签订时外资企业注册资本的增加、转让, 须经审批机关批准, 并向工商行政管理机关办理变更登记手续。案涉《股份售让协议书》约定的外商独资企业森科木业的股份转让并未经过审批机关的批准; 而在 2014 年奇意公司成为森科木业公司股东时, 亦是基于森科公司作为转让方签订的《股权转让协议书》办理的工商变更登记。综合上述事实, 本院认为, 森科木业公司提出 2013 年孙琳达依据《股份售让协议书》取得森科木业公司全部股份的主张, 不能成立。

虽然孙琳达并非森科木业公司的股东, 但其系森科木业公司的董事,《中华人民共和国公司法》第二十一条规定的利用关联关系损害公司利益应当承担赔偿责任的主体为"公司的控股股东、实际控制人、董事、监事、高级管理人员", 所以孙琳达作为森科木业公司的董事, 如存在利用关联关系损害公司利益的行为, 仍应该承担赔偿责任, 据

此孙琳达作为本案被告主体适格。

（三）孙琳达是否存在利用关联关系损害公司利益的行为

森科木业公司 2018 年度和 2019 年度财务审计报告显示盈枫利公司是其唯一客户，而盈枫利公司的代表人孙福君（David SUN）系本案孙琳达的儿子。因此，可以认定森科木业公司和盈枫利公司之间存在关联关系，两者之间的家具出口外销交易系关联交易。对于关联交易行为是否损害公司利益，应当审查关联交易对价是否公允、关联交易的程序是否合规。本案中，森科木业公司并无证据证明其与盈枫利公司之间的交易存在不合理，审理中森科木业公司也明确其无法确认交易价格是否公允。而从交易过程来看，森科木业公司未能提供证据证明董事孙琳达对公司董事会隐瞒了森科木业公司和盈枫利公司之间的交易，也未能提供证据证明森科木业公司和盈枫利公司之间的交易不符合法律法规或公司章程规定的决策程序。

现森科木业公司主张的损害行为主要为其对盈枫利公司应收账款经其催收尚未收回，但这不能被直接定性为损害公司利益的行为。关联交易的相对方盈枫利公司在 2019 年 4 月 29 日回复森科木业公司的企业询证函中对欠款的事实和金额予以了确认，结合森科木业公司和盈枫利公司之间存在长期交易和赊账的实际情况，在森科木业公司未采取除发送催款函之外的其他救济手段的情况下，尚无法确认拖欠的货款无法收回而给森科木业公司造成损失，亦无法认定孙琳达作为公司董事存在损害公司利益的行为。

综上所述，森科木业公司的诉讼请求，因缺乏依据，本院不予支持。依据《中华人民共和国涉外民事关系法律适用法》第四十四条《中华人民共和国民事诉讼法》第六十四条、第一百四十二条的规定

14

判决如下：

　　驳回原告森科木业（昆山）有限公司的诉讼请求。

　　案件受理费 276453 元，由原告森科木业（昆山）有限公司负担。

　　如不服本判决，森科木业（昆山）有限公司可在判决书送达之日起十五日内，孙琳达（Linda Sun）可在判决书送达之日起三十日内，向本院递交上诉状，并按照对方当事人的人数提交副本，上诉于江苏省高级人民法院。同时根据《诉讼费用交纳办法》的有关规定，向该院预交上诉案件受理费。



审　判　长　　俞水娟

审　判　员　　蔡燕芳

审　判　员　　李　诚

本件与原本核对无异

二〇二一年十一月二十九日

书　记　员　　田思思

15

# 附录法律条文

## 《中华人民共和国涉外民事关系法律适用法》

**第四十四条** 侵权责任, 适用侵权行为地法律, 但当事人有共[同]经常居所地的, 适用共同经常居所地法律。侵权行为发生后, 当事[人]协议选择适用法律的, 按照其协议。

## 《中华人民共和国民事诉讼法》

**第六十四条** 当事人对自己提出的主张, 有责任提供证据。

当事人及其诉讼代理人因客观原因不能自行收集的证据, 或者[人]民法院认为审理案件需要的证据, 人民法院应当调查收集。

人民法院应当按照法定程序, 全面地、客观地审查核实证据。

**第一百四十二条** 法庭辩论终结, 应当依法作出判决。判决前[能]够调解的, 还可以进行调解, 调解不成的, 应当及时判决。

公 证 书

当事人有共同

生后，当事人

证据。

据，或者人

实证据。

判决前能

(2024)苏苏苏州证字第 3741 号

申请人：LINDA SUN，女，1946 年 7 月 16 日出生，国籍：美国，护照号码：577710121。

公证事项：判决书

兹证明苏州市中级人民法院于 2021 年 11 月 29 日出具的编号为（2021）苏 05 民初 90 号的《中华人民共和国江苏省苏州市中级人民法院民事判决书》的原件与前面的复印件相符，原件属实。

中华人民共和国江苏省苏州市苏州公证处

公证员 綦长鸿



2024 年 3 月 4 日

LI30867468

# The People's Republic of China

## Suzhou Intermediate People's Court of Jiangsu Province

## Civil Judgment Paper

(2021) S. 05 M. C. No. 90

Plaintiff: Cinke Wood Industry (Kunshan) Co., Ltd., domicile: 327 Jinshang Road, Jinxi own, Kunshan City, Jiangsu Province, The People's Republic of China.

Legal Representative: Xiao Ruihua, Chairman of the Board of Directors of the company.

Agent ad Litem: Wu Jinggui, lawyer of Shanghai Hehong Law Firm.

Defendant: Sun Linda (Linda Sun), female, a US national, born on July 16, 1946, Passport o. 577710121.

Agent ad Litem: Gong Jiong, lawyer of Jiangsu Hailianhai Law Firm.

Agent ad Litem: Zhang Xiaonan, lawyer of Jiangsu Hailianhai Law Firm.

The Plaintiff Cinke Wood Industry (Kunshan) Co., Ltd. (hereinafter referred to as Cinke Wood Company) filed this lawsuit with this court, aiming to resolve this case of dispute over abilities on the part of the Defendant Sun Linda (Linda Sun) for infringing on interests of the ompany. Upon accepting this case on January 11, 2021, this court adopted general procedure in ccordance with the law and tried this case in an open session on October 28, 2021. Wu Jinggui, gent ad litem of the Plaintiff Cinke Wood Company, and Gong Jiong, Agent ad litem of the efendant Sun Linda, attended the trial. This case is now closed.

Cinke Wood Company has made the following claims to this court: 1. An order should be ade to request Sun Linda to compensate Cinke Wood Company USD6712182.11 (equivalent of MB46730580.43) for losses in goods payment and RMB200000 (take the amount of MB46730580.43 as base number, calculated from April 30, 2019 to temporarily set date of ecember 31, 2020, but the actual end of calculation should be the day when actual payment is ade, at twice the loan market quotation interest rate published by National Interbank Funding enter); 2. An order should be made to request Sun Linda to bear costs for this case. Facts and asons: Sun Linda used to be sole shareholder of Cinke Wood Company before she transferred 2% equity to Jiangsu Qiyi Investment Co., Ltd. (hereinafter referred to as Qiyi Company) in 014, with Sun Linda continuing her service as Chairman of the Board of Directors, exerting de cto control over the company and being responsible for everything relating to external sales. he only business Cinke Wood Company engages in is selling products to one client. As of April 9, 2019, INFINNITY WOOD PRODUCTS, LLC (hereinafter referred to as INFINNITY ompany) in USA had owed Cinke Wood Company goods payment in the amount of SD6712182.11. On June 14, 2019, Sun Linda suddenly disappeared, and when Cinke Wood ompany urged goods payment from INFINNITY Company, the latter did not heed the call. inke Wood Company learned from investigation that INFINNITY Company belongs to Sun ujun (David Sun), son of Sun Linda. As one of the shareholders and the Chairman of the Board f Directors of Cinke Wood Company, Sun Linda took advantage of her positions for elated-party transactions, because of which the company is unable to recover the above money. he conducts of Sun Linda are in violation of relevant provisions in the Company Law, for which he should assume compensation liabilities in accordance with the law.

The Defendant Sun Linda has made the following arguments: I. Cinke Wood Company is istorting basic facts with malignant intent. Sun Linda is not a shareholder of Cinke Wood ompany. At the time of establishment of Cinke Wood Company, the shareholder was Sunco, Inc,

who later transferred 52% equity to Qiyi Company. Therefore, the shareholders of Cinke Wood Company are Sunco, Inc and Qiyi Company. II. Sun Linda was merely a director dispatched from Sunco, Inc to Cinke Wood Company. In 2015 when Sunco, Inc had completed the transfer of equity to Qiyi Company, the Legal Representative, Chairman of the Board of Directors and General Manager of Cinke Wood Company were altered into Wu Guoqing, with another director being Xiao Qiong, dispatched from Qiyi Company. Wu Guoqing and Xiao Qiong are shareholders jointly holding 100% equity of Qiyi Company. Since completion of the equity transfer, Wu Guoqing has been controlling and overseeing business management of Cinke Wood Company. III. Cinke Wood Company and INFINNITY Company have been trading with each other for more than ten years, and goods payments had always been made as scheduled prior to the equity transfer. Wu Guoqing has been overseeing foreign trade to INFINNITY Company since taking over control of Cinke Wood Company, and clients of Cinke Wood Company are not limited to INFINNITY Company. IV. Cinke Wood Company and INFINNITY Company have been trading with each other in legally allowed manner and at fair prices. None of the transactions made between the two parties has brought about any losses to Cinke Wood Company, but rather they have created huge interests for Cinke Wood Company. Neither has Sun Linda manipulated Cinke Wood Company and INFINNITY Company with malignant intent into engaging in inappropriate transactions. V. Although there are outstanding goods payments to be settled by INFINNITY Company according to Audit Report of Cinke Wood Company, the payables should be deemed normal transaction risks, and Cinke Wood Company should seek goods payments through conventional routes or lawsuits. Qiyi Company, being shareholder exerting de facto control over Cinke Wood Company, and Wu Guoqing, being de facto controller of Cinke Wood Company, are suing Sun Linda in the name of Cinke Wood Company with malignant intent instead of seeking goods payment and protecting rights and interests of Cinke Wood Company through conventional routes, because of which losses could be sustained by Cinke Wood Company and Sunco, Inc which is another shareholder. Based on the foregoing, the argument is made that the claims of Cinke Wood Company should be dismissed on the grounds of lack of factual and legal basis.

To support its claims, the Plaintiff Cinke Wood Company has provided this court with the following evidence:

Evidence 1. Audit Report S. H. Z. S. (2019) No. 5116 and Enterprise Confirmation Letter, which aim to prove that as of the end of 2018, the balance due owed by INFINNITY Company to Cinke Wood Company in the form of goods payment was USD5886466.77; from the 18th page of the evidence, it is evident that Cinke Wood Company had only one client, viz. INFINNITY Company and the trade volume with it was huge. The balance due as of 2018 was also a huge amount. The 20th page of the evidence, being the Confirmation Letter, shows signature of Sun Lijun, who is principal of INFINNITY Company and son of Sun Linda, confirming the balance due of more than USD5,000,000 in the form of goods payment owed to Cinke Wood Company as of 2018;

Evidence 2. Audit Report S. H. Z. S. (2020) No. 5098, which aims to prove balance due in the form of goods payment owed by INFINNITY Company as of the end of 2019, the amount being claimed in this case. It is especially pointed out for the court's attention that external environment deteriorated precipitously from the end of 2018 through periods after 2019. Against this background, Sun Linda, as de facto controller of the company overseeing sales, not only did not decrease the amount of payments on credit, but instead significantly increased it. The malignant intent of INFINNITY Company is obvious in that Sun Linda took advantage of her special relationship in channeling interests of Cinke Wood Company into the related-party company under de facto control of her son. In June 2019, Sun Linda suddenly left the company, which has led to failure in efforts of Cinke Wood Company for recovering goods payment, and

from which it can be seen that the malignant intent on the part of Sun Linda has obviously and seriously infringed on interests of Cinke Wood Company. Sun Linda should be assuming legal liabilities for it;

Evidence 3. Equity Sales and Transfer Agreement authenticated by the embassy or the consulate, which aims to prove that Sun Linda is one of the shareholders of Cinke Wood Company, and that Sun Linda had become a shareholder of Cinke Wood Company by April 2013 when the equity transaction was completed and the authentication letter was issued from the embassy or the consulate;

Evidence 4. Dispatch Letter and Arbitral Award K. L. R. Z. A. Zi. (2019) No. 1208, which aim to prove that Sun Linda was one of the directors of the company, fulfilling actual duties of Chairman of the Board of Directors and overseeing all business-related matters of the company;

Evidence 5. Business Registration Materials and Relevant Authentication Materials of INFINNITY Company, which aim to prove that the de facto owners of INFINNITY Company are Sun Linda's son Sun Fujun and daughter-in-law Yuan Xile;

Evidence 6. Certificate of Marriage and Property Covenant of Sun Fujun and Yuan Xile, which aim to prove that Sun Fujun and Yuan Xile are husband and wife;

Evidence 7. Letter of Entrustment for House Sales, which aims to prove that Sun Fujun and Sun Linda are son and mother, and that Sun Linda sold all goods of Cinke Wood Company to INFINNITY Company by taking advantage of her position as Chairman of the Board of Directors;

Evidence 8. Payment Reminder Emails, Payment Reminder Letters and corresponding Courier Receipts, which aim to prove that Sun Linda suddenly disappeared on June 14, 2019, because of which Cinke Wood Company has been unable to recover goods payment of more than RMB46,700,000 and for which Sun Linda should assume legal liabilities;

Evidence 9. Eighteen volumes in all consisting of Export Orders, Customs Declaration Forms, Invoices and Packing Lists, being corroboration for balance due owed by INFINNITY Company as confirmed in the Audit Report, and serving as corroborative evidence for the amount owed by INFINNITY Company to Cinke Wood Company;

Evidence 10. Meeting Minutes in August 2019, which aims to prove that Sun Linda had been exerting de facto control over Cinke Wood Company, and the evidence is a rebuttal to Sun Linda's claim that Wu Guoqing has been controlling the company;

Evidence 11. Relevant government documents, which further proves that Sun Linda had been taking charge of the company prior to June 14, 2019 when she left the company;

Evidence 12. A document sent back from Sun Linda on July 24, 2019 authorizing Xiao Ruihua and Xiao Qiong to deal with all company affairs, which aims to prove that Sun Linda had been overseeing everything and taking charge of the company prior to her leaving Kunshan, and that the company was highly efficient in operation;

Evidence 13. Documents on routine payments of the company from July 2018 to June 2019. Most of these reimbursement documents were signed by Sun Linda, further proving that Sun Linda was controlling everything of the company;

Evidence 14. Emails in April, May and June of 2019, being emails on list of employees and canteen expenses, which proves that copies of documents on routine business activities of the company would be served to Sun Linda who was the Chairman of the Board of Directors; Sun Linda's email address also proves that the company was under her control, which is inconsistent with Sun Linda's representation during court trial that Wu Guoqing was controlling the company;

Evidence 15. Emails from June 2018 to July 2019 on production, packing, export and payment, which aim to prove that Sun Linda sent all products of the company to her son's company during the period when she was in de facto control over the company, and that being the one in control, she did not send copies of those emails to Wu Guoqing. In addition, documents in these emails corroborate with Evidence 13;

Evidence 16. A series of emails, which aim to prove that Sun Linda and her son Sun Fujun have jointly infringed on interests of the company, and that Wu Guoqing had no idea about accounts receivable incurred in business operation or foreign trade;

Evidence 17. Equity Transfer Agreement, Article 3.1 of which is explicit that Sun Linda shall make sure that accumulated accounts receivable do not exceed RMB20,000,000 and that they should be recovered in full by the end of 2019;

Evidence 18. Letters, which aim to prove that Cinke Wood Company has been repeatedly sending payment reminders since January 2020, but Sun Linda has not made a reply;

Evidence 19. Despite Cinke Wood Company having sent a number of payment reminders, Sun Linda and INFINNITY Company not only have not made a reply, but have also consigned emails from Cinke Wood Company into blacklist, hindering the calls for payment, which proves that Sun Linda's conducts are obviously conducts infringing on interests of the company;

Evidence 20. Complaint for the case of dispute over dissolution of the company, which aims to prove that INFINNITY Company, Sun Linda and Sun Fujun have not only refused to cooperate in goods payment, but have also instituted a lawsuit for dissolving the company, proof that Sun Linda's conducts are obviously conducts infringing on interests of the company.

Sun Linda's reply after cross-examination:

Sun Linda acknowledges authenticity of Evidence 1, but argues that neither Sun Linda nor Sunco, Inc took part in the audit process, which is the why they would not recognize contents in the Audit Report; Sun Linda has no idea whether there is goods payment to be made by INFINNITY Company or the amount of outstanding goods payment; it can be seen from the Audit Report that Cinke Wood Company owes Sun Linda RMB20957013.74 in the form of other payables which Sun Linda reserves her rights to claim. Sun Linda is unable to confirm authenticity of Enterprise Confirmation Letter in Evidence 1;

Sun Linda acknowledges authenticity of Evidence 2, but argues that neither Sun Linda nor Sunco, Inc took part in the audit process, which is the why they would not recognize contents in the Audit Report; Sun Linda has no idea whether there is goods payment to be made by INFINNITY Company or the amount of outstanding goods payment, because it has been Wu Guoqing, not Sun Linda, who has been overseeing business of Cinke Wood Company since the equity transfer; Wu Guoqing has been the person managing official seal and other materials needed for export, which is the sole type of business of Cinke Wood Company, and that is why it was impossible for Sun Linda to make any transactions with INFINNITY Company during that period of time;

Sun Linda is unable to acknowledge authenticity of Evidence 3 as she has never signed the materials. From the original of the evidence provided by Cinke Wood Company it can be seen that there is no signature of Sun Linda subscribed to the space reserved for her signature. Even if that piece of evidence were authentic, the agreement has not taken legal effect, and could not bring about the legal consequence of altering equity of Cinke Wood Company. The shareholders of Cinke Wood Company are currently Sunco, Inc and Qiyi Company;

Sun Linda acknowledges authenticity of Dispatch Letter in Evidence 4 which should prove that Sun Linda was merely a director dispatched from Sunco, Inc to Cinke Wood Company. Sun

Linda acknowledges authenticity of the Arbitral Award but not purpose of proof. Sun Linda was merely a director of Cinke Wood Company, and it should be up to shareholders and directors of Cinke Wood Company to decide whether Sun Linda was serving as Chairman of the Board of Directors, instead of letting a given staffer of Cinke Wood Company decide whether it was the case. In the Arbitral Award, Cinke Wood Company, being the Respondent, has been explicit during cross-examination that Sun Linda was not Chairman of the Board of Directors. The very fact has been represented by Cinke Wood Company. As a matter of fact, Sun Linda has never been Chairman of the Board of Directors of Cinke Wood Company since 2015 when the equity transfer took place;

Sun Linda acknowledges authenticity of Evidence 5, but denies relevance with this case;

Sun Linda acknowledges authenticity of Evidence 6, but denies relevance with this case;

Sun Linda acknowledges authenticity of Evidence 7 but not the purpose of proof. Cinke Wood Company and INFINNITY Company have been trading with each other in legally allowed manner, and it has been Wu Guoqing overseeing transactions with INFINNITY Company since the equity transfer;

Sun Linda is unable to acknowledge authenticity of the Payment Reminder Letter sent from Cinke Wood Company to INFINNITY Company in Evidence 8. Sun Linda claims that she has not received the Payment Reminder Letter sent to her, and that she does not recognize contents therein. Sun Linda should not have the obligation to settle the goods payment as she is not a shareholder of Cinke Wood Company, nor has she transferred interests of Cinke Wood Company;

Sun Linda is unable to acknowledge authenticity of Evidence 9 because even if that piece of evidence is entirely authentic, it merely comprises materials formed in normal business operation of Cinke Wood Company and only reflects the fact that employees of Cinke Wood Company were dealing with business as usual since there is nothing indicating the alleged infringement of company interests on the part of Sun Linda. Wu Guoqing has been de facto controller of Cinke Wood Company, managing official seal for export business during the period. It is impossible for Sun Linda to attend to all export business of the company by herself.

Sun Linda does not acknowledge authenticity, legality, relevance or purpose of proof of Evidence 10. Sun Linda has not taken part in the meeting which is why she has no idea whether the meeting really took place, and she does not recognize contents of the meeting. Since April 2015 when Cinke Wood Company completed equity alteration, Wu Guoqing has been Legal Representative and de facto controller of Cinke Wood Company, keeping official seal and overseeing business management of the company;

Sun Linda acknowledges authenticity and legality but not relevance or purpose of proof of Evidence 11, arguing that the evidence is not relevant to this case. Since April 2015 when Cinke Wood Company completed equity alteration, Wu Guoqing has been Legal Representative and de facto controller of Cinke Wood Company, keeping official seal and overseeing business management of the company;

Sun Linda does not acknowledge authenticity, legality or relevance of Evidence 12, arguing that Sun Linda had left a blank paper containing only her signature in Cinke Wood Company, and that the document text might have been printed onto the paper by the company;

Sun Linda is unable to acknowledge authenticity and does not acknowledge relevance to this case of Evidence 13, arguing that even if what the evidence contains were all authentic, it is normal for Sun Linda, who had been General Manager of Cinke Wood Company since February 2, 2018, to have subscribed her signatures in the process of expenditures according to accounting system, but the act of signing should not be seen as proof that Sun Linda was de facto controller

of Cinke Wood Company as Wu Guoqing has been de facto controller of the company;

Sun Linda is unable to acknowledge authenticity and does not acknowledge relevance to this case of Evidence 14, arguing that even if what the evidence contains were all authentic, Xiao Ruihua has been Chairman of the Board of Directors and Legal Representative of Cinke Wood Company since February 2018; the wording "Chairman of the Board of Directors" in the email is merely remarks made by the sender, and the email was sent to the so-called "Chairman of the Board of Directors" in the form of a copy, which is unable to prove that all routine business activities were subject to Sun Linda's approval, or that Sun Linda was de facto controller of Cinke Wood Company. The receiver Manager Gao is financial manager employed by Wu Guoqing to oversee business details, and Wu Guoqing has been de facto controller of the company;

Sun Linda is unable to acknowledge authenticity of Evidence 15, arguing that even if that piece of evidence were entirely authentic, it merely comprises correspondences formed in normal business operation of Cinke Wood Company and only reflects the fact that employees of Cinke Wood Company were dealing with business as usual; the emails therein were sent to Sun Linda in the form of copies, which is unable to prove that Sun Linda was in total control over Cinke Wood Company as Wu Guoqing has been de facto controller of the company. Wu Guoqing has been managing official seal necessary for export business of Cinke Wood Company during the period. It is impossible for Sun Linda to attend to all export business of the company by herself.

Sun Linda is unable to acknowledge authenticity of Evidence 16, arguing that even if that piece of evidence were entirely authentic, it merely comprises correspondences formed in normal business operation of Cinke Wood Company and only reflects the fact that employees of Cinke Wood Company were dealing with business as usual; the emails therein were sent to Sun Linda in the form of copies, which is unable to prove that Sun Linda was in total control over Cinke Wood Company or has infringed on interests of the company as Wu Guoqing has been de facto controller of the company. Wu Guoqing has been managing official seal necessary for export business of Cinke Wood Company during the period. It is impossible for Sun Linda to attend to all export business of the company by herself. According to relevant emails, Manager Gao, financial manager employed by Wu Guoqing to oversee business details, has been the one dealing with business for Cinke Wood Company;

Sun Linda does not acknowledge authenticity of Evidence 17, arguing that she has never executed the *Equity Transfer Agreement*, and that the agreement must have been forged. The said *Equity Transfer Agreement* is identical to the *Equity Transfer Agreement* dated September 8, 2014 in terms of page 1, 2, 4, 5 and 6, but Sun Linda's signature is contained only on page 4. There are modifications to contents only on page 3, and the modifications to major terms are made to Article 3.11 and Article V. The added contents to Article 3.11 address the balance due receivables; relevant contents in Article V have been removed for the ultimate purpose of ensuring that contents across page 3 of the *Equity Transfer Agreement* remain unchanged, and that contents on page 4 of Sun Linda's signature are identical to corresponding contents in the *Equity Transfer Agreement* dated September 8, 2014. Sun Linda argues that the said *Equity Transfer Agreement* is a piece of evidence intentionally forged by Cinke Wood Company and its controller Wu Guoqing by means of fabricating signature or adding printed contents onto a blank paper containing Sun Linda's signature before adding 1, 2, 4, 5 and 6 for the malignant intent of creating obligations of Sun Linda and Sunco, Inc out of thin air; besides, Sunco, Inc and Qiyi Company, as subjects of equity transfer, have never mentioned the execution of the *Equity Transfer Agreement* in arbitration case, which is obviously against common sense. The *Equity Transfer Agreement* contains covenants of exclusivity in Article 6.8, which is why it is impossible for the two parties not to provide it in arbitration case if they have really executed the agreement;

With regard to Evidence 18, Sun Linda claims that she has not received the Letter sent to her,

and that she does not recognize contents therein. Sun Linda has never infringed on interests of the company, and transactions with INFINNITY Company are all normal sales and business activities of Cinke Wood Company. The so-called balance due owed by INFINNITY Company, if any, should be recovered by Cinke Wood Company by filing a lawsuit;

Sun Linda is unable to acknowledge authenticity of Evidence 19, arguing that transactions with INFINNITY Company are all normal sales and business activities of Cinke Wood Company. The so-called balance due owed by INFINNITY Company, if any, should be recovered by Cinke Wood Company by filing a lawsuit;

Sun Linda acknowledges authenticity of Evidence 20, but argues that it is unable to prove that Sun Linda has infringed on interests of the company.

At the request of this court, Sun Linda has submitted to this court the Arbitral Award (2021) H. M. Z. C. Zi. No. 0349 issued on April 29, 2021 by Shanghai International Economic and Trade Arbitration Commission (Shanghai International Arbitration Center), and the parties are explicit that they have no objections to authenticity of the Arbitral Award.

This court expresses the following opinion on authentication: As for evidence to which the parties concerned have no objections, this court will confirm and file it as authenticated evidence; as for evidence over which the parties concerned dispute, this court will make determinations comprehensively by combining it with other evidence and facts surrounding this case.

This court has ascertained the following facts in accordance with representations of the parties concerned and evidence established in investigation:

Cinke Wood Company is an enterprise established on April 8, 2003 and solely owned by a foreign investor, and Sunco, Inc used to hold 100% equity of Cinke Wood Company. On April 28, 2015, Cinke Wood Company handled alteration registration with the administration for industry and commerce, transforming the company from limited liability company (solely owned by a foreign investor) into limited liability company (Sino-foreign joint venture), altering Legal Representative from Sun Linda into Wu Guoqing, and altering shareholding structure from Sunco, Inc holding 100% shares into Sunco, Inc holding 48% shares and Qiyi Company holding 52% shares. On February 11, 2018, Cinke Wood Company altered its Legal Representative from Wu Guoqing to Xiao Ruihua. At present, the directors of Cinke Wood Company are Xiao Ruihua, Xiao Qiong and Sun Linda; Xiao Ruihua is also Chairman of the Board of Directors.

The business scope of Cinke Wood Company comprises the production of wooden building decoration products, wooden furniture and components, sales of products made by the company, and leasing of plants owned by the company. Since its establishment, Cinke Wood Company has become a long-term supplier of INFINNITY Company, having cooperated with it for many years. The Audit Report of Year 2018 for Cinke Wood Company shows that there was the amount of RMB40399998.74 in the form of accounts receivable to be collected by Cinke Wood Company from INFINNITY Company, and there was the amount of RMB20957013.74 in the form of payables to be paid to Sun Linda. The Audit Report of Year 2019 for Cinke Wood Company shows that there was the amount of RMB46730580.43 in the form of accounts receivable to be collected by Cinke Wood Company from INFINNITY Company, and there was the amount of RMB20957013.74 in the form of payables to be paid to Sun Linda.

INFINNITY Company is a company incorporated in accordance with laws of the State of Delaware selling products and services relating to furniture and decoration in the State of Massachusetts. The executives of the company are Yuan Xile (Shillock YUAN-SUN) and Sun Fujun (David Sun), the latter being the son of the Defendant Sun Linda.

The *Agreement on Selling and Transferring Shares* adduced on April 29, 2013 by Cinke

Vood Company is entered into by and between the seller Sunco, Inc and the buyer Sun Linda
hereby Sunco, Inc is to transfer 100% equity held by it in Cinke Wood Company to Sun Linda
t the price of USD2,500,000 to be settled in monetary form upon transfer; Sunco, Inc is to hand
un Linda the Shares Certificate representing object shares.

The investigation by this court also finds that in July 2019, Petitioner Sunco, Inc and
Respondent Qiyi Company submitted the *Equity Transfer Agreement* dated September 8, 2014 to
Shanghai International Economic and Trade Arbitration Commission (Shanghai International
Arbitration Center). The agreement requires Qiyi Company to pay equity transfer fund of
RMB15,000,000, interest thereon and liquidated damages of RMB3,000,000. Shanghai
International Economic and Trade Arbitration Commission (Shanghai International Arbitration
Center) made the Arbitral Award (2021) H. M. Z. C. Zi. No. 0349 on April 29, 2021, making the
following ascertainments regarding facts relating to disputes involved in that case: "1. With
regard to shareholders of Cinke Wood Company at the time of execution of the *Transfer
Agreement* involved in dispute...the above facts can be relied on to made the ascertainment that
Sun Linda has not obtained qualifications for being a shareholder in accordance with the
*Agreement on Selling and Transferring Shares*, and the shareholder of Cinke Wood Company was
Petitioner Sunco, Inc at the time of execution of the *Transfer Agreement*... Therefore, the
arbitration tribunal decides that the offset agreement has took effect in that the debt has been
offset. Qiyi Company has offset its debt on July 30, 2016, and is no longer under the obligation to
pay Sun Linda or to pay RMB15,000,000 in the form of equity transfer fund to Sunco, Inc... The
arbitration tribunal supports the third arbitration claim in accordance with prior covenants of the
two parties, deciding that Qiyi Company shall pay Sunco, Inc RMB3,000,000 as liquidated
damages for the delay in paying equity transfer fund..." Based on the foregoing, the arbitration
tribunal rules that Qiyi Company shall pay Sunco, Inc RMB3,000,000 as liquidated damages, and
that the rest arbitration claims of Sunco, Inc will not be supported.

Central issues of dispute in this case: I. Whether or not Sun Linda is a shareholder of Cinke
Wood Company, the answer to that will determine whether she is qualified to be defendant of this
case. II. Whether or not the allegation of Cinke Wood Company can be established that Sun Linda
has taken advantage of relationship in infringing on interests of the company, for which
compensation is being pursued.

This court holds that:

I. Law Application in this Case. The Defendant Sun Linda is a natural person of the US, and
therefore, this case is a foreign-related civil-commercial case. This case involves a lawsuit filed to
address the conduct of infringement of rights and interests of a company, and to resolve disputes
over liabilities therefor. Article 44 of the *Law on Application of Law to Foreign-related Civil
Relationship of the People's Republic of China* stipulates: "The laws of the place where the
conduct of infringement has taken place shall be applicable for determining infringement
liabilities; however, where the parties concerned have a common perpetual domicile, the laws of
the place where the common perpetual domicile is located shall be applicable. Where the parties
concerned choose applicable law by agreement after the conduct of infringement has taken place,
the agreement shall be observed." In this case, the infringement conduct alleged by Cinke Wood
Company took place in Kunshan City, Jiangsu Province, and the parties concerned both chose the
law of the People's Republic of China as applicable law during court trial, and therefore, this
court determines that the law of the People's Republic of China shall be proper law for resolving
dispute in this case.

II. Entities of this Case

(I) Whether or not Sun Linda is a shareholder of Cinke Wood Company, and whether she is

alified to be Defendant of this case

At the time of establishment of Cinke Wood Company, the shareholder holding 100% equity is Sunco, Inc. In accordance with current information registered with the administration for dustry and commerce and Articles of Association of Cinke Wood Company, after the equity nsfer, Sunco, Inc holds 48% equity in Cinke Wood Company, and Qiyi Company holds 52% uity in Cinke Wood Company. Therefore, Sun Linda has never been a shareholder of Cinke ood Company registered with the administration for industry and commerce from the tablishment of the company to the occurrence of dispute in this case. Cinke Wood Company w claims that Sun Linda is a shareholder of the company based on the *Agreement on Selling d Transferring Shares* dated April 29, 2013. But the execution of the *Agreement on Selling and ansferring Shares* does not mean that the transferee has obtained qualifications of shareholder. nke Wood Company has not provided further evidence in this case to prove that Sun Linda and nco, Inc have actually performed obligations in the *Agreement on Selling and Transferring ares*. And there is no evidence to prove that Cinke Wood Company has altered its shareholder om Sunco, Inc to Sun Linda by modifying its Articles of Association, Register of Shareholders, gistration with the Administration for Industry and Commerce or Certificate of Investment; oreover, any increase to or transfer of registered capital of foreign-invested enterprise at the me of execution of the *Agreement on Selling and Transferring Shares* requires approval of the pproving organ and alteration registration at the administrative organ of the administration for dustry and commerce. The equity transfer set out in the *Agreement on Selling and Transferring ares* of Cinke Wood Company, an exclusively foreign-owned enterprise, has not been approved y the approving organ; and in 2014 when Qiyi Company became a shareholder of Cinke Wood ompany, the relevant alteration registration with the Administration for Industry and Commerce as also handled based on the *Agreement on Selling and Transferring Shares* signed by Sunco, nc as transferor. Based on the foregoing, this court decides to dismiss the claim made by Cinke ood Company that Sun Linda obtained all shares of Cinke Wood Company in 2013 based on e *Agreement on Selling and Transferring Shares.*

Although Sun Linda is not a shareholder of Cinke Wood Company, she is a director of the ompany. In accordance with Article 21 of the *Company Law of the People's Republic of China,* he subjects who can assume liabilities for taking advantage of relationship in infringing on terests of a company are "controlling shareholders, de facto controllers, directors, supervisors nd senior executives of the company", and therefore, Sun Linda, being director of Cinke Wood ompany should assume compensation liabilities for any conduct of taking advantage of lationship in infringing on interests of the company. Based on the foregoing, Sun Linda is a roper defendant in this case.

(III) Whether or not Sun Linda has taken advantage of relationship in infringing on interests f the company

The Audit Reports of Year 2018 and Year 2019 for Cinke Wood Company show that NFINNITY Company is the sole client of the company, and Sun Fujun (David Sun), the epresentative of INFINNITY Company, is the son of Sun Linda. Therefore, it can be ascertained hat there is relationship between Cinke Wood Company and INFINNITY Company, and that the foreign trade of furniture between them is related-party transaction. Whether a related-party transaction infringes on interests of the company depends on whether consideration is fair and whether procedures are in compliance with regulations in the related-party transaction. In this case, Cinke Wood Company has no evidence to prove that there is anything unreasonable in the ransactions between the company and INFINNITY Company; during the trial, Cinke Wood ompany has also been explicit that it is unable to tell whether the transaction prices are fair rices. From the perspective of transaction process, Cinke Wood Company has not been able to

adduce evidence to prove any concealment by director Sun Linda of transactions between Cinke Wood Company and INFINNITY Company, nor is there any evidence to prove that the transactions are in violation of decision-making procedures set out in laws and regulations or Articles of Association of the company.

The infringement conduct alleged by Cinke Wood Company centers around its failed efforts to recover accounts receivable from INFINNITY Company, but that fact should not be directly defined as conduct infringing on interests of the company. INFINNITY Company, the reciprocal party to the related-party transactions, confirmed the fact and the amount of debt in the Enterprise Confirmation Letter sent as reply to Cinke Wood Company on April 29, 2019. Considering the long-term business relationship and debt owing practice between Cinke Wood Company and INFINNITY Company, it is impossible to decide that Cinke Wood Company has sustained losses due to its failure in recovering the overdue goods payment as it has not taken remedial measures other than sending Payment Reminder Letter; also, it is impossible to decide that Sun Linda has infringed on interests of the company in her capacity as director.

Based on the foregoing, this court will not support the claims of Cinke Wood Company on the grounds of a lack of evidence. In accordance with Article 44 of the *Law on Application of Law to Foreign-related Civil Relationship of the People's Republic of China*, Article 64 and Article 142 of the *Civil Procedure Law of the People's Republic of China*, the judgments are made as follows:

The claims of the Plaintiff Cinke Wood Industry (Kunshan) Co., Ltd. shall be dismissed.

The case acceptance fee of RMB276453 shall be borne by the Plaintiff Cinke Wood Industry (Kunshan) Co., Ltd.

Where Cinke Wood Industry (Kunshan) Co., Ltd. is dissatisfied with the judgments herein, it may submit a petition for appeal to this court within fifteen days from the day of service of this judgment paper; where Sun Linda is dissatisfied with the judgments herein, she may submit a petition for appeal to this court within thirty days from the day of service of this judgment paper; and whichever the case may be, the appealing party shall prepare duplicates equal in number to the persons of the other party for appealing to the Higher People's Court of Jiangsu Province. At the same time, the appealing party shall make an advance payment of acceptance fee for case of appeal to that court in accordance with the relevant provisions on the *Measures for Payment of Lawsuit Costs*.

Presiding Judge: Yu Shuijuan

Judge: Cai Yanfang

Judge: Li Cheng

(With the seal of Suzhou Intermediate People's Court of Jiangsu Province)

November 29, 2021

Clerk: Tian Sisi

[This document is in conformity with the original upon verification]

**Attachment: Legal Provisions**

*Law on Application of Law to Foreign-related Civil Relationship of the People's Republic of China*

Article 44 The laws of the place where the conduct of infringement has taken place shall be applicable for determining infringement liabilities; however, where the parties concerned have a common perpetual domicile, the laws of the place where the common perpetual domicile is located shall be applicable. Where the parties concerned choose applicable law by agreement after the conduct of infringement has taken place, the agreement shall be observed.

*Civil Procedure Law of the People's Republic of China*

Article 64 The parties concerned shall be responsible for providing evidence for their respective allegations.

Where a party concerned and the agent ad litem of the party are unable to collect evidence themselves due to objective causes or where the people's court believes that the evidence is necessary for the trial of the case concerned, the people's court shall investigate and collect the evidence.

A people's court shall examine and verify evidence comprehensively and objectively in accordance with statutory procedures.

Article 142 When the court debate is closed, a ruling shall be made in accordance with the law. When mediation is possible before the ruling is made, mediation may be conducted, and a ruling shall be made immediately if the mediation fails.

# NOTARIAL CERTIFICATE

(2024) S. S. S. Z. Z. Zi, No. 3741

Applicant: LINDA SUN, female, born on July 16, 1946, Nationality: USA, Passport No. 577710121.

Issue under notarization: Judgement Paper

This is to certify that the foregoing copy of *The People's Republic of China Suzhou Intermediate People's Court of Jiangsu Province Civil Judgment Paper* with No. (2021) S. 05 M. C. No. 90 issued by Suzhou Intermediate People's Court on November 29, 2021, conforms to the original document, and the original document is authentic.

Suzhou Suzhou Notary Public Office, Jiangsu Province

The People's Republic of China

Notary: Li Changhong

March 4, 2024

30868476

# 公 证 书

(2024)苏苏苏州证字第 3742 号

申请人：LINDA SUN，女，1946 年 7 月 16 日出生，国籍：美国，护照号码：577710121。

公证事项：译本内容与原本内容相符

兹证明前面的(2024)苏苏苏州证字第 3741 号《公证书》的英文译本内容与该公证书中文原本内容相符。

中华人民共和国江苏省苏州市苏州公证处

公证员



2024 年 3 月 4 日

# NOTARIAL CERTIFICATE

(2024) S. S. S. Z. Z. Zi, No. 3742

Applicant: LINDA SUN, female, born on July 16, 1946, Nationality: USA, Passport No. 577710121.

Issue under notarization: true and exact translation

This is to certify that the foregoing English translation of (2024) S. S. S. Z. Z. Zi, No. 3741 *Notarial Certificate* conforms to the original Chinese version of the Notarial Certificate.

Suzhou Suzhou Notary Public Office, Jiangsu Province

The People's Republic of China

Notary: Li Changhong

March 4, 2024

L I 30868493



本 "加证" 书仅证明 "文书上的签名、签署人平名时的身份"，或签时
罗 "明公文书上的印章 真实。附加证明 书不对公文书内容予以证明。
This Apostille only certifies the authenticity of the signature, the capacity of
the person who has signed the public document and, where appropriate,
the identity of the seal or stamp which the public document bears. This Apostille does not certify the content of the
document for which it was issued.
Visit https://consular.mfa.gov.cn/VERIFY and scan the QR code to verify the issuance of this Apostille.

10365503

### 附加证明书
### APOSTILLE
(1961年10月5日海牙公约)
(Convention de La Haye du 5 octobre 1961)



1. 文书出具国: 中华人民共和国
   Country:     People's Republic of China

本公文书 This public document

2. 签署人       黎长鸿
   has been     Li Changhong
   signed by

3. 签署人身份   公证员
   acting in the  Notary Public
   capacity of

4. 印鉴名称     江苏省苏州市苏州公证处
   bears the    Suzhou Suzhou Notary Public Office, Jiangsu Province
   seal/stamp of

证明 Certified

5. 签发地  南京            6. 签发日期  2024年03月15日
   at     Nanjing            the       March 15, 2024

7. 签发人  张君/Zhang Jun
   by     江苏省外事办公室
          Foreign Affairs Office of Jiangsu Province

8. 附加证明书编号  认字第243200019192号
   No

9. 签署机关印鉴:          10. 签名:
   Seal/Stamp:              Signature:



STATE OF NEW YORK

                )
                )
                )

COUNTY OF NEW YORK    )    ss

## CERTIFICATION

This is to certify that the attached translation is to the best of my knowledge and belief a true and accurate

translation from Chinese into English of the attached Notice of Composition of Collegial Panel dated January 12,

2021.

Michael Stypa
Divergent Language Solutions, LLC

State of New York
County of New York
Subscribed to and sworn before me this _28_ day of ___May___, 20_24_,
by Michael Stypa.

_____
Notary Public

MATTHEW C. ZELAK
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01ZE6350239
Qualified in Kings County
Commission Expires    November 7, 2024



600 California Street, 11ᵗʰ Floor | San Francisco, CA 94108 | p 415.400.4538 | f 415.525.4313
divergent@divergentls.com | www.divergentls.com



Thank you for scanning the
QR code
Suzhou Smart Court

# People's Republic of China
# Suzhou Intermediate People's Court of Jiangsu Province
# Notice of composition of collegial panel

(2021) *Su* 05 *Minchu* No. 90

Linda Sun:

This court has accepted the case between Sunco Timber Kun Shan Co., Ltd. and you regarding liability for damages of the company's interests. It was decided that Yu Shuijuan will serve as the presiding judge, and will form a panel with Judges Cai Yanfang and Li Cheng to hear the case. The case was presided over by Judge Yu Shuijuan, and clerk Li Weina was responsible for taking notes.

The above is hereby notified.

[stamp: Suzhou Intermediate People's Court of Jiangsu Province]

Suzhou Intermediate People's
Court of Jiangsu Province
January 12, 2021

1

# People's Republic of China
# Suzhou Intermediate People's Court of Jiangsu Province
## Notice of Evidence

(2021) *Su* 05 *Minchu* No. 90

Linda Sun:

Regarding the case of the dispute over liability for damaging the company's interests between the plaintiff, Sunco Timber Kun Shan Co., Ltd. and the defendant, you, this court has notified you to participate in the litigation as a party to this case. In accordance with the Civil Procedure Law of the People's Republic of China and the Several Provisions of the Supreme People's Court on Evidence in Civil Litigation, the relevant matters concerning the production of evidence are hereby notified as follows:

1. The parties shall bear the burden of proof for the facts on which their own claim is based or for the facts on which the other party's claim is based. If a party has no evidence or the evidence is insufficient to prove its factual claims, the party with the burden of proof shall bear the adverse consequences resulting therefrom.

2. When providing evidence to the People's Court, one must provide the original document or item, or a copy or reproduction that has been verified by the People's Court to be identical. The submitted evidentiary materials should be classified and numbered one by one, and a brief description should be made of the source, object of proof and content of the evidentiary materials, and copies should be submitted according to the number of persons of the other party.

3. An application for appraisal, addition or change of claims or filing of a counterclaim shall be made before the expiration of the time limit for submission of evidence.

4. If applying for a witness to testify, application should be submitted to this court ten days before the expiration of the evidence submission period.

5. Application for preservation of evidence shall be submitted to this court seven days before the expiration of the evidence submission period.

6. After receiving this notice, you may negotiate with the other party to determine the time limit for submitting evidence and then apply to this court for approval. If you and the other party fail to reach an agreement, or fail to apply for this court's approval, or this court does not approve it, you shall submit evidence to this court within thirty days from the date of receipt of this notice.

7. If you have real difficulties in submitting evidence within the evidence submission period, you may apply to this court for an extension of the evidence submission period in accordance with Article 36 of the Supreme People's Court's "Several Provisions on Evidence in Civil Litigation".

8. If the evidence you submitted after the expiration of the evidence submission period does not comply with the provisions of Article 41, Article 43, paragraph 2, and Article 44 of the Supreme People's Court's Several Provisions on Evidence in Civil Litigation, new evidence will be deemed as your waiver of the right to present evidence, unless otherwise the other party agrees to cross-examination.

9. If you meet one of the conditions stipulated in Article 17 of the Supreme People's Court's "Several Provisions on Evidence in Civil Litigation", you may apply in writing to this court to investigate and collect evidence seven days before the expiration of the evidence submission period.

[stamp: Suzhou Intermediate People's Court of Jiangsu Province]

January 12, 2021

[handwritten: illegible]

## Civil Complaint

**Plaintiff: Sunco Timber Kun Shan Co., Ltd., unified social credit code: 9132058374733835XW, legal representative Xiao Ruihua, chairman of the board of directors of the company, Address: No. 327, Jinshang Road, Jinxi Town, Kunshan City, Jiangsu Province**

**Defendant: Linda Sun, Date of Birth: July 16, 1946, Passport No.: 577710121.**

**Request:**

1. The defendant is ordered to compensate the plaintiff for the loss of payment for goods equaling to US$ 6,712,182.11 (equivalent to RMB 46,730,580.43) and interest loss of RMB 200,000, totaling RMB 46,930,580.43 (the interest loss is based on RMB 46,930,580.43, calculated from April 30, 2019, temporarily calculated to December 31, 2020, and finally calculated to the date of actual payment); calculated at twice the quoted market rate for loans announced by the National Interbank Funding Center);

2. All litigation costs in this case shall be borne by the defendant.

**Facts and Reasons:**

The defendant was originally the sole shareholder of the plaintiff and transferred 52% of its shares to Jiangsu Qiyi Investment Co., Ltd. in 2014. The defendant continued to be the chairman of the board, substantially controlled the company, and was responsible for all matters related to external sales. Moreover, all of the plaintiff's business was foreign sales and had only one customer. As of April 29, 2019, INFINNITY WOOD PRODUCTS, LLC owed the plaintiff US$ 6,712,182.11 for goods. On June 14, 2019, the defendant suddenly disappeared. The plaintiff demanded payment from INFINNITY WOOD PRODUCTS, LLC, but the company ignored the request. The plaintiff learned through inquiry that US Yingfengli Co., Ltd. was the company of his son David Sun. As one of the plaintiff's shareholders and serving as chairman, the defendant used his position to conduct related transactions, which resulted in the company being unable to claim the above-mentioned funds. The defendant has violated the relevant provisions of the Company Law and should bear liability for compensation according to law.

In summary, in order to protect my legitimate rights and interests, the plaintiff has filed a lawsuit with your court and hopes that the court will rule as requested.

Sincerely,

Suzhou Intermediate People's Court

The person who filed the complaint: [stamp: SUNCO TIMBER (KUNSHAN) CO., LTD. 3205830511361]

December 24, 2020

# List of Evidence

| Serial number | Evidence Name | Pages | Content | Remark |
|---|---|---|---|---|
| 1 | Suhua Zhuan Shen [2019] No. 5116 Audit Report and Enterprise Confirmation Letter | 1-20 | As of the end of 2018, the amount of money owed to the plaintiff by US Yingfengli Co., Ltd. was RMB 40,399,998.74. | Copy |
| 2 | Suhua Zhuan Shen [2020] Audit Report No. 5098 | 21-48 | As of the end of 2019, the amount of money owed to the plaintiff by US Yingfengli Co., Ltd. was RMB 46,730,580.43. | Copy |
| 3 | Share Sale Agreement authenticated by the embassy or consulate | 49-59 | The defendant is one of the plaintiff's shareholders | Copy |
|  | Letter of Appointment, Kunming Labor Arbitration Award Case No. [2019] 1208 | 60-65 | The defendant is one of the company's directors and actually performs the duties of chairman and is responsible for all business matters of the company. | Copy |
| 3 | INFINNITY WOOD PRODUCTS, LLC Business registration information and related certification information | 66-98 | The actual owners of INFINNITY WOOD PRODUCTS, LLC are Linda Sun's daughter-in-law Sun Fujun and Yuan Xile. | Copy |

[half stamp: SUNCO TIMBER (KUNSHAN) CO., LTD. 3205830511361]

| 4 | Marriage Certificate And Property Agreement between Sun Fujun and Yuan Xile | 99-109 | Sun Fujun and Yuan Xile are husband and wife | Copy |
|---|---|---|---|---|
| 5 | House Sale Authorization Letter | 110-112 | The defendant and Sun Fujun are mother and son. The defendant used his position as chairman to sell all of the plaintiff's goods to US Yingfengli Co., Ltd. | Copy |
| 6 | Collection emails, collection letters, and express delivery notes | 113-116 | On June 14, 2019, the defendant suddenly disappeared, resulting in the plaintiff being unable to recover RMB 46,730,580.43. The defendant sold the goods to an affiliated company under his control and should bear legal liability. | Copy |

**Evidence provided by:**

[half stamp: SUNCO TIMBER (KUNSHAN) CO., LTD. 3205830511361]

[stamp: SUNCO TIMBER (KUNSHAN) CO., LTD. 3205830511361]

1

# Suzhou Hua Ming United Certified Public Accountants

Suzhou Hua Ming United Certified Public Accountants



# REPORT

## REPORT



Scan and follow us

Address: MP Modern Plaza, 18th Floor, Block A, No. 18 Weiye Road, Kunshan City, Jiangsu Province
TEL: 0512-57553988
FAX: 0512-57593538
Website: www.szhmcpa.com
E-mail: hm@szhmcpa.com**Error! Bookmark not defined.**



05122019060044416979

Report number: Suhua Special Audit [2019] No. 5116

# Sunco Timber Kun Shan Co., Ltd.

# Audit Report

Suzhou Hua Ming United Certified Public Accountants

Address: MP Modern Plaza, 18th Floor, Block A, No. 18, Weiye Road, Kunshan

Post Code: 215301

TEL: 0512-57553988

Fax: 0512-57593538

Website: www.szhmcpa.com

3



**SUZHOU HUA MING UNITED
CERTIFIED PUBLIC ACCOUNTANTS**
SUZHOU HUA MING UNITED CERTIFIED PUBLIC ACCOUNTANTS



Honesty and
dedication to service

# Audit Report

Suhua Special Audit [2019] No. 5116

**The Board of Directors of Sunco Timber Kun Shan Co., Ltd.:**

### I. Audit Opinion

We have audited the financial statements of Sunco Timber Kun Shan Co., Ltd. (hereinafter referred to as "Company"), including the balance sheet as of December 31, 2018, the income statement, cash flow statement, statement of changes in owners' equity and related notes to the financial statements for 2018.

We believe that the attached financial statements have been prepared in accordance with the provisions of the Accounting Standards for Enterprises in all material respects and fairly reflect the financial position of the Company as of December 31, 2018 and the operating results and cash flows for 2018.

### II. Basis for Audit Opinion

We performed the audit in accordance with the Chinese Certified Public Accountant Auditing Standards. Our responsibilities under these standards are further described in the "Responsibilities of the CPA for the Audit of Financial Statements" section of the auditor's report. In accordance with the Code of Professional Ethics for Certified Public Accountants in China, we are independent of the Company and have fulfilled other responsibilities in terms of professional ethics. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### III. Responsibilities Of Management And Those Charged With Governance For The Financial Statements

The management of the Company (hereinafter referred to as "Management") is responsible for  the preparation of the financial statements to achieve fair presentation in accordance with Accounting Standards for Enterprises, and for the design, implementation and maintenance of such internal control as management determine is necessary to enable the preparation of the financial statements that are free from material misstatement, whether due to fraud or error.

In preparing the financial statements, management is responsible for assessing the Company's ability to continue as a going concern, disclosing, as applicable, matters related to going concern and using the going concern basis of accounting unless management either intend to liquidate the Company or to cease operations, or have no realistic alternative but to do so.

Those charged with governance are responsible for overseeing the Company's financial reporting process.

### IV. Auditor's Responsibilities for the Audit of the Financial Statements

Our objectives are to obtain reasonable assurance about whether the financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an audit report that includes an audit opinion. Reasonable assurance is a high level of assurance, but is not a guarantee that an audit conducted in accordance with auditing standards will always detect a material misstatement when it exists. Misstatements

4

can arise from fraud or error and are considered material if, individually or in the aggregate, they could reasonably be expected to influence the economic decisions of users taken on the basis of these financial statements.

As part of an audit in accordance with auditing standards, we exercise professional judgment and maintain professional skepticism throughout the audit. We also:

(1) Identify and assess the risks of material misstatement of the financial statements, whether due to fraud or error, design and perform audit procedures responsive to those risks, and obtain audit evidence that is sufficient and appropriate to provide a basis for our opinion. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control.

(2) Gain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the internal control.

(3) Evaluate the appropriateness of accounting policies used and the reasonableness of accounting estimates and related disclosures made by management.

(4) Draw conclusions on the appropriateness of the management's use of the going concern basis of accounting and, based on the audit evidence obtained, whether a material uncertainty exists related to events or conditions that may cast significant doubt on the Company's ability to continue as a going concern. If we conclude that a material uncertainty exists, the auditing standards require us to draw attention to users of the financial statements in our auditor's report to the related disclosures in the financial statements or, if such disclosures are inadequate, to modify our opinion. Our conclusions are based on the audit evidence obtained up to the date of our auditor's report. However, future events or conditions may cause the Company to cease to continue as a going concern.

(5) Evaluate the overall presentation, structure and content of the financial statements (including the disclosures), and whether the financial statements represent the underlying transactions and events in a manner that achieves fair presentation.

We communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit and significant audit findings, including any significant deficiencies in internal control that we identify during our audit.

| | |
|---|---|
| SUZHOU HUA MING UNITED CERTIFIED PUBLIC ACCOUNTANTS<br>[stamp: SUZHOU HUA MING UNITED CERTIFIED PUBLIC ACCOUNTANTS 3205839982394] | Chinese Certified Public Accountant: [stamp: Chinese Certified Public Accountant Lu Huaming 302508030003]<br>Chief Accountant (signature and seal) [handwritten: Lu Huaming ] |
| | Chinese Certified Public Accountant: [stamp: Chinese Certified Public Accountant Zhang Jingwen 302506060003]<br>Project Leader (signature and seal) [handwritten: Zhang Jingwen ] |
| Kunshan City, China | June 5, 2019 |

5

# Balance Sheet

Table 01  Annual financial statement for non-financial enterprises with foreign investment

Compiled by: Sunco Timber Kun Shan Co., Ltd.                    December 31, 2018                    Unit: RMB Yuan

| Item | Row | Ending balance | Beginning balance | Item | Row | Ending balance | Beginning balance |
|---|---|---|---|---|---|---|---|
| Current assets: | 1 | —— | —— | Current liabilities: | 66 | —— | —— |
| Money funds | 2 | 3,290,564.00 | 3,255,207.81 | Short-term loan | 67 | - | - |
| Settlement provisions | 3 | | | Borrowings from the Central Bank | 68 | | |
| Funds withdrawn | 4 | | | Deposits from customers and interbank | 69 | | |
| Trading financial assets | 5 | - | - | Deposit funds | 70 | | |
| Notes receivable | 6 | - | - | Trading financial liabilities | 71 | | |
| Accounts receivable | 7 | 40,693,207.89 | 37,471,505.54 | Notes Payable | 72 | - | - |
| Prepayments | 8 | 863,103.77 | 2,788,476.55 | Accounts payable | 73 | 6,184,447.14 | 8,573,817.25 |
| Premiums receivable | 9 | | | Advance payment | 74 | - | - |
| Reinsurance receivables | 10 | | | Selling and repurchasing financial assets | 75 | | |
| Reinsurance contract reserves receivable | 11 | | | Fees and commissions | 76 | | |
| Interest receivable | 12 | - | - | Employee wages payable | 77 | 989,853.89 | 922,088.82 |
| Dividends receivable | 13 | - | - | of which: Wages payable | 78 | 661,693.18 | 668,295.45 |
| Other receivables | 14 | 314,978.99 | 40,220.26 | Benefits payable | 79 | 328,160.71 | 253,793.37 |
| Financial assets purchased under resale agreements | 15 | | | of which: Employee Reward and Welfare Fund | 80 | - | - |
| Stock | 16 | 10,900,560.00 | 13,357,134.45 | Taxes payable | 81 | -273,005.86 | -501,649.77 |
| of which: Raw materials | 17 | 6,012,193.29 | 8,127,679.54 | of which: Taxes payable | 82 | -273,005.86 | -501,649.77 |
| Inventory | 18 | - | 495,568.92 | Interest payable | 83 | - | - |
| Non-current assets due within one year | 19 | - | - | Dividends payable | 84 | - | - |
| Other current assets | 20 | 36,244.72 | 42,602.60 | Other payables | 85 | 23,351,373.84 | 23,305,603.34 |
| Total current assets | 21 | 56,098,659.37 | 56,955,147.21 | Reinsurance accounts payable | 86 | | |
| Non-current assets: | 22 | —— | —— | Insurance contract reserve | 87 | | |
| Payment and advance payment | 23 | | | Securities trading agency | 88 | | |
| Available for sale financial assets | 24 | | | Securities underwriting agency | 89 | | |
| Held to maturity investments | 25 | - | | Non-current liabilities due within one year | 90 | - | - |
| Long-term receivables | 26 | | | Other current liabilities | 91 | 479,112.29 | 461,917.97 |
| Long-term equity investment | 27 | - | - | Total current liabilities | 92 | 30,731,781.30 | 32,761,777.61 |
| Investment Properties | 28 | | | Non-current liabilities: | 93 | —— | —— |
| Fixed Assets | 29 | 68,537,558.97 | 67,682,452.39 | Long term loan | 94 | - | - |
| Less: Accumulated depreciation | 30 | 38,077,506.28 | 34,943,740.76 | Bonds payable | 95 | - | - |
| Net fixed assets | 31 | 30,460,052.69 | 32,738,711.63 | Long-term payables | 96 | - | - |
| Less: Provision for impairment of fixed assets | 32 | - | - | Special payables | 97 | - | - |
| Net fixed assets | 33 | 30,460,052.69 | 32,738,711.63 | Estimated liabilities | 98 | - | - |
| Work in Progress | 34 | - | 10,539.06 | Deferred tax liabilities | 99 | - | - |
| Engineering supplies | 35 | - | - | Other non-current liabilities | 100 | - | - |
| Fixed assets liquidation | 36 | - | - | of which: Special Reserve Fund | 101 | | |
| Productive biological assets | 37 | | | Total non-current liabilities | 102 | - | - |
| Oil and gas assets | 38 | | | Total Liabilities | 103 | 30,731,781.30 | 32,761,777.61 |
| Intangible assets | 39 | 2,967,492.78 | 3,049,713.54 | Owners' Equity (or Shareholders' Equity): | 104 | —— | —— |
| Development expenditure | 40 | | | Paid-in capital (share capital) | 105 | 82,377,944.48 | 82,377,944.48 |
| Goodwill | 41 | | | State Capital | 106 | | |
| Long-term prepaid expenses | 42 | 6,310,960.53 | 2,683,639.16 | Collective capital | 107 | | |
| Deferred tax assets | 43 | - | - | Corporate capital | 108 | | |
| Other non-current assets | 44 | - | - | of which: State-owned corporate capital | 109 | | |
| of which: Authorized reserve materials | 45 | | | Collective corporate capital | 110 | | |
| Total non-current assets | 46 | 39,738,506.00 | 38,482,603.39 | Personal Capital | 111 | | |
| | 47 | | | Foreign Capital | 112 | 39,541,413.35 | 39,541,413.35 |
| | 48 | | | Less: Investment returned | 113 | - | - |
| | 49 | | | Net paid-in capital (or share capital) | 114 | 82,377,944.48 | 82,377,944.48 |
| | 50 | | | Capital reserve | 115 | 30.65 | 30.65 |
| | 51 | | | Less: Treasury stock | 116 | | |
| | 52 | | | Special reserves | 117 | | |
| | 53 | | | Surplus reserve | 118 | - | - |
| | 54 | | | of which: Statutory provident fund | 119 | - | - |
| | 55 | | | Discretionary provident fund | 120 | - | - |
| | 56 | | | Reserve Fund | 121 | - | - |
| | 57 | | | Business development fund | 122 | - | - |
| | 58 | | | Profit return for investment | 123 | - | - |
| | 59 | | | general risk preparation | 124 | | |
| | 60 | | | Undistributed profit | 125 | -17,272,591.06 | -19,702,002.14 |
| | 61 | | | Foreign currency translation difference | 126 | - | - |
| | 62 | | | Total equity attributable to the parent company | 127 | 65,105,384.07 | 62,675,972.99 |
| | 63 | | | Minority interests | 128 | | |
| | 64 | | | Total owners' equity | 129 | 65,105,384.07 | 62,675,972.99 |
| [illegible] | 65 | 95,837,165.37 | 95,437,750.60 | Total Debt and Owner's Equity | 130 | 95,837,165.37 | 95,437,750.60 |

6

# Income Statement

Table 02 Annual financial statement for non-financial enterprises with foreign investment

Compiled by: Sunco Timber Kun Shan Co., Ltd.                FY2018                Unit: RMB Yuan

| Item | Row | Current Annuity | Balance as of last year | Item | Row | Current year balance | Balance as of last year |
|---|---|---|---|---|---|---|---|
| **1. Total operating income** | 1 | 56,322,334.13 | 54,891,593.57 | other | 29 | | |
| of which: Operating income | 2 | 56,322,334.13 | 54,891,593.57 | Plus: Gains from changes in fair value (losses are indicated by a "-" sign) | 30 | | |
| of which: Main business income | 3 | 56,322,334.13 | 54,891,593.57 | Investment income (loss is indicated by "-") | 31 | - | - |
| Other business income | 4 | - | - | of which: Investment income in associates and joint ventures | 32 | - | - |
| Interest income | 5 | | | Exchange gains (losses are indicated by a "-") | 33 | | |
| Premiums earned | 6 | | | **3. Operating Profit (loss is indicated by "-")** | 34 | 2,430,675.38 | 708,434.67 |
| Fee and commission income | 7 | | | Plus: Non-operating income | 35 | 21,757.37 | 13,477.17 |
| **2. Total operating costs** | 8 | 53,891,658.75 | 54,183,158.90 | of which: Gains from disposal of non-current assets | 36 | | |
| of which: Operating cost | 9 | 50,484,804.32 | 46,985,488.07 | Gains from non-monetary asset exchanges | 37 | | |
| of which: Main business cost | 10 | 50,484,804.32 | 46,985,488.07 | Government subsidy | 38 | | |
| Other operating costs | 11 | - | - | Debt restructuring gains | 39 | | |
| Interest expense | 12 | | | Less: Non-operating support | 40 | 53,000.00 | - |
| Fees and commissions | 13 | | | of which: Loss on disposal of non-current assets | 41 | - | - |
| Surrender benefit | 14 | | | Loss on exchange of non-monetary assets | 42 | | |
| Net compensation expense | 15 | | | Losses from debt restructuring | 43 | | |
| Net amount of insurance contract reserves | 16 | | | **4. Total Profit (Total Loss is indicated by "1")** | 44 | 2,399,432.75 | 721,911.84 |
| Dividend payment policy | 17 | | | Less: Income tax expense | 45 | - | 29,978.33 |
| Reinsurance costs | 18 | | | **5. Net profit (net loss is indicated by "1")** | 46 | 2,399,432.75 | 691,933.51 |
| Taxes and surcharges | 19 | 257,546.33 | 364,393.26 | Retained earnings belonging to the parent company's owner | 47 | 2,399,432.75 | 691,933.51 |
| Sales expense | 20 | 1,524,715.17 | 978,113.02 | Minority interests profit and loss | 48 | - | - |
| Management costs | 21 | 3,638,802.91 | 3,665,833.61 | **6. Earnings per share:** | 49 | | |
| of which: Business hospitality fee | 22 | - | 4,405.00 | Basic earnings per share | 50 | | |
| Research and development expenses | 23 | - | - | Diluted EPS | 51 | | |
| Financial expenses | 24 | -2,014,209.98 | 2,189,330.94 | **7. Other comprehensive income** | 52 | 29,978.33 | - |
| of which: Interest expense | 25 | - | - | **8. Total comprehensive income** | 53 | 2,429,411.08 | 691,933.51 |
| Interest income | 26 | 2,832.11 | 2,583.96 | Total comprehensive income attributable to owners of the parent company | 54 | 2,429,411.08 | 691,933.51 |
| Net exchange loss (net gain is indicated by "-") | 27 | -2,022,360.80 | 2,182,136.21 | Total comprehensive income attributable to shareholders with minority interests | 55 | | |
| Asset impairment losses | 28 | - | - | | | | |

# Cash Flow Statement

Table 03 Annual financial statement for non-financial enterprises with foreign investment

Compiled by: Sunco Timber Kun Shan Co., Ltd.　　　　　FY2018　　　　　Unit: RMB Yuan

| Item | Row | Current year balance | Balance as of last year | Item | Row | Current year balance | Balance as of last year |
|---|---|---|---|---|---|---|---|
| **1. Cash flows from operating activities:** | 1 | —— | —— | Net cash received from disposal of fixed assets, intangible assets and other long-term assets | 30 | - | - |
| Cash received from sales of goods and provision of services | 2 | 52,819,003.99 | 46,655,967.42 | Net cash received from disposal of subsidiaries and other business units | 31 | | - |
| Net increase in customer deposits and interbank deposits | 3 | | - | Other cash received relating to investing activities | 32 | - | - |
| Net increase in borrowing from the central bank | 4 | | - | **Subtotal of cash inflows from investing activities** | 33 | - | - |
| Net increase in funds borrowed from other financial institutions | 5 | | - | Cash paid for the purchase and construction of fixed assets, intangible assets and other long-term assets | 34 | 5,207,289.68 | 1,087,313.99 |
| Cash received from premiums of original insurance contracts | 6 | | - | Cash Investment | 35 | - | - |
| Net cash received from reinsurance business | 7 | | - | Net increase in collateral loans | 36 | | - |
| Net increase in policyholders' deposits and investments | 8 | | - | Net cash paid to acquire subsidiaries and other business units | 37 | | - |
| Net increase from disposal of trading financial assets | 9 | | - | Other cash paid relating to investing activities | 38 | - | - |
| Cash received for interest, fees and commissions | 10 | | - | **Subtotal of cash outflows from investing activities** | 39 | 5,207,289.68 | 1,087,313.99 |
| Net increase in borrowings | 11 | | - | **Net cash flows from investing activities** | 40 | -5,207,289.68 | -1,087,313.99 |
| Net increase in funds from repurchasing business | 12 | | - | **3. Cash flows from financing activities:** | 41 | —— | —— |
| Tax Refund | 13 | 5,879,634.90 | 4,723,907.24 | Cash received from investment | 42 | - | - |
| Other cash received related to operating activities | 14 | 70,359.98 | 2,292,881.94 | of which: Cash received from minority shareholders' investment | 43 | | - |
| **Subtotal of cash inflow from operating activities** | 15 | 58,768,998.87 | 53,672,756.60 | Cash received from borrowing | 44 | - | - |
| Cash payment for purchasing goods and receiving services | 16 | 41,861,408.52 | 40,891,876.40 | Cash received from issued bonds | 45 | - | - |
| Net increase in loans and advances to customers | 17 | | - | Other cash received related to financing activities | 46 | - | - |
| Net increase in deposits with the central bank and other banks | 18 | | - | **Subtotal of cash inflows from financing activities** | 47 | - | - |
| Cash payment for the original insurance contract compensation | 19 | | - | Cash paid to repay debt | 48 | - | - |
| Cash payments for interest, fees and commissions | 20 | | - | Cash paid as dividends, profits or interest payments | 49 | - | - |
| Cash paid as policy dividends | 21 | | - | of which: Dividends and profits paid by subsidiaries to minority shareholders | 50 | - | - |
| Cash payments to and for employees | 22 | 8,076,282.17 | 8,380,653.84 | Other cash payments related to financing activities | 51 | - | - |
| Taxes and fees paid | 23 | 906,410.05 | 1,041,820.11 | **Subtotal of cash outflows from financing activities** | 52 | - | - |
| Other cash payments related to operating activities | 24 | 2,682,252.26 | 1,867,622.80 | **Net cash flow from financing activities** | 53 | - | - |
| **Subtotal of cash outflows from operating activities** | 25 | 53,526,353.00 | 52,181,973.15 | **4. Impact of Exchange Rate Changes on Cash and Cash Equivalents** | 54 | - | - |
| **Net cash flow from operating activities** | 26 | 5,242,645.87 | 1,490,783.45 | **5. Net increase in cash and cash equivalents** | 55 | 35,356.19 | 403,469.46 |
| **2. Cash flows from investing activities:** | 27 | —— | —— | **Plus: Cash and cash equivalents at the beginning of the period** | 56 | 3,255,207.81 | 2,851,738.35 |
| Cash received from investment recovery | 28 | - | - | **6. Balance of cash and cash equivalents at the end of the period** | 57 | 3,290,564.00 | 3,255,207.81 |
| Cash received from investment income | 29 | - | - | | | | |

8

# Statement of Changes in Owners' Equity (1)

FY2018

Table 04 Annual financial statement for non-financial enterprises with foreign investment

Compiled by: Sunco Timber Kun Shan Co., Ltd.

Unit: RMB Yuan

| Item | Row | Current year balance | | | | | | | | | Minority interests | Total owners' equity |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Equity attributable to equity holders | | | | | | | | | | |
| | | Paid-in capital (or share capital) | Capital reserve | Less: Treasury stock | Special reserves | Surplus reserve | general risk preparation | Undistributed Profits | other | Subtotal | | |
| Column | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 1. Balance at the end of the previous year | 1 | 82,377,944.48 | 30.65 | | | | | -19,702,002.14 | | 62,675,972.99 | | 62,675,972.99 |
| Plus: Changes in accounting policies | 2 | | | | | | | | | | | |
| Correction of prior period errors | 3 | | | | | | | | | | | |
| 2. Balance at the beginning of this year | 4 | 82,377,944.48 | 30.65 | | | | | -19,702,002.14 | | 62,675,972.99 | | 62,675,972.99 |
| 3. Increase/decrease amount in this year (decrease is indicated by "-") | 5 | | | | | | | 2,429,411.08 | | 2,429,411.08 | | 2,429,411.08 |
| 1. Net profit | 6 | | | | | | | 2,399,432.75 | | 2,399,432.75 | | 2,399,432.75 |
| 2. Other comprehensive income | 7 | | | | | | | 29,978.33 | | 29,978.33 | | 29,978.33 |
| Subtotal of comprehensive income | 8 | | | | | | | 2,429,411.08 | | 2,429,411.08 | | 2,429,411.08 |
| 3. Owners' capital contribution and capital decrease | 9 | | | | | | | | | | | |
| 1. Owner's capital contribution | 10 | | | | | | | | | | | |
| 2. Amount of share-based payment recorded in owners' equity | 11 | | | | | | | | | | | |
| 3. Others | 12 | | | | | | | | | | | |
| (IV) Withdrawal and use of special reserves | 13 | | | | | | | | | | | |
| 1. Withdrawal of special reserves | 14 | | | | | | | | | | | |
| 2. Use of special reserves | 15 | | | | | | | | | | | |
| 5. Profit distribution | 16 | | | | | | | | | | | |
| 1. Withdrawal of surplus reserves | 17 | | | | | | | | | | | |
| of which: Statutory provident fund | 18 | | | | | | | | | | | |
| Discretionary provident fund | 19 | | | | | | | | | | | |
| Reserve Fund | 20 | | | | | | | | | | | |
| Business development fund | 21 | | | | | | | | | | | |
| Profit return for investment | 22 | | | | | | | | | | | |
| 2. Withdrawal of general risk reserves | 23 | | | | | | | | | | | |
| 3. Distribution to owners (or shareholders) | 24 | | | | | | | | | | | |
| 4. Others | 25 | | | | | | | | | | | |
| 6. Internal transfer of equity | 26 | | | | | | | | | | | |
| 1. Capital reserve converted into capital (or share capital) | 27 | | | | | | | | | | | |
| 2. Capital (or share capital) increased by converting surplus reserves | 28 | | | | | | | | | | | |
| 3. Surplus reserves to make up for losses | 29 | | | | | | | | | | | |
| 4. Others | 30 | | | | | | | | | | | |
| IV. Balance at the end of this year | 31 | 82,377,944.48 | 30.65 | | | | | -17,272,591.06 | | 65,105,384.07 | | 65,105,384.07 |

9

# Statement of Changes in Owners' Equity (2)
FY2018

Table 04 Annual financial statement for non-financial enterprises with foreign investment

Compiled by: Sunco Timber Kun Shan Co., Ltd.

Unit: RMB Yuan

| Item | Row | Balance as of last year | | | | | | | | | Minority interests | Total owners' equity |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Equity attributable to equity holders | | | | | | | | | | |
| | | Paid-in capital (or share capital) | Capital reserve | Less: Treasury stock | Special reserves | Surplus reserve | general risk preparation | Undistributed Profits | other | Subtotal | | |
| Column | | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 1. Balance at the end of the previous year | 1 | 82,377,944.48 | 30.65 | | | | | -20,393,935.65 | | 61,984,039.48 | | 61,984,039.48 |
| Plus: Changes in accounting policies | 2 | | | | | | | | | | | |
| Correction of prior period errors | 3 | | | | | | | | | | | |
| 2. Balance at the beginning of this year | 4 | 82,377,944.48 | 30.65 | | | | | -20,393,935.65 | | 61,984,039.48 | | 61,984,039.48 |
| 3. Increase/decrease amount in this year (decrease is indicated by "-") | 5 | | | | | | | 691,933.51 | | 691,933.51 | | 691,933.51 |
| 1. Net profit | 6 | | | | | | | 691,933.51 | | 691,933.51 | | 691,933.51 |
| 2. Other comprehensive income | 7 | | | | | | | | | | | |
| Subtotal of comprehensive income | 8 | | | | | | | 691,933.51 | | 691,933.51 | | 691,933.51 |
| 3. Owners' capital contribution and capital decrease | 9 | | | | | | | | | | | |
| 1. Owner's capital contribution | 10 | | | | | | | | | | | |
| 2. Amount of share-based payment recorded in owners' equity | 11 | | | | | | | | | | | |
| 3. Others | 12 | | | | | | | | | | | |
| (IV) Withdrawal and use of special reserves | 13 | | | | | | | | | | | |
| 1. Withdrawal of special reserves | 14 | | | | | | | | | | | |
| 2. Use of special reserves | 15 | | | | | | | | | | | |
| 5. Profit distribution | 16 | | | | | | | | | | | |
| 1. Withdrawal of surplus reserves | 17 | | | | | | | | | | | |
| of which: Statutory provident fund | 18 | | | | | | | | | | | |
| Discretionary provident fund | 19 | | | | | | | | | | | |
| Reserve Fund | 20 | | | | | | | | | | | |
| Business development fund | 21 | | | | | | | | | | | |
| Profit return for investment | 22 | | | | | | | | | | | |
| 2. Withdrawal of general risk reserves | 23 | | | | | | | | | | | |
| 3. Distribution to owners (or shareholders) | 24 | | | | | | | | | | | |
| 4. Others | 25 | | | | | | | | | | | |
| 6. Internal transfer of equity | 26 | | | | | | | | | | | |
| 1. Capital reserve converted into capital (or share capital) | 27 | | | | | | | | | | | |
| 2. Capital (or share capital) increased by converting surplus reserves | 28 | | | | | | | | | | | |
| 3. Surplus reserves to make up for losses | 29 | | | | | | | | | | | |
| 4. Others | 30 | | | | | | | | | | | |
| IV. Balance at the end of this year | 31 | 82,377,944.48 | 30.65 | | | | | -19,702,002.14 | | 62,675,972.99 | | 62,675,972.99 |

10

**Sunco Timber Kun Shan Co., Ltd.**

**Financial Statement Footnotes**

**FY2018**

(Unit: Unless otherwise specified, all are in RMB.)

### 1. Company Overview

Sunco Timber Kun Shan Co., Ltd. (hereinafter referred to as the "Company") is a wholly foreign-owned enterprise invested and established by Sunco, Inc. It was established in 2003 with the Certificate of Approval for foreign investment in business (*Su Fu Zi No.* [2003] 45674), and on April 8, 2003, it obtained the business license of the Enterprise Legal Person of the People's Republic of China with registration number 320583400005235. The company's original total investment was US$17.5 million and its registered capital was US$7.5 million.

On February 15, 2008, with the approval of Kunshan Foreign Economic and Trade Cooperation Bureau's "Reply on Approval of 'Sunco Timber Kun Shan Co., Ltd.' Capital Increase and Amendment of Articles of Association' (*Kunjing Maozi* [2008] No. 96)", the Company's total investment increased from US$17.5 million to US$19.64 million, and its registered capital increased from US$7.5 million to US$9 million, of which Sunco, Inc. contributed US$9 million, accounting for 100% of the registered capital.

On June 1, 2010, with the approval of Kunshan Municipal Bureau of Commerce's "Reply on Approval on Sunco Timber Kun Shan Co., Ltd. Capital Increase and Amendment of Articles of Association" (*Kunshangzi* [2010] No. 277), the company's total investment remained at US$19.64 million, and its registered capital increased from US$9 million to US$10 million, of which Sunco, Inc. contributed US$10 million, accounting for 100% of the registered capital.

On June 13, 2011, with the Kunshan Municipal Bureau of Commerce approval of the "Reply on Approval on Sunco Timber Kun Shan Co., Ltd. Capital Increase, Investment Method Change, and Amendment of Articles of Association" (*Kunshangzi* [2011] No. 407)", the company's total investment increased from US$ 19.64 million to US$ 20.78 million, and its registered capital increased from US$ 10 million to US$ 10.8 million, of which Sunco, Inc. contributed US$ 10.8 million, accounting for 100% of the registered capital (RMB 10,107,389,250 using spot rate and US$ 692,610,750 in equipment). Currently, the registered capital has been fully in place and has been verified and confirmed by a Chinese certified public accountant.

On April 20, 2015, with the approval of Kunshan Municipal Bureau of Commerce's "Reply on Approval on the Transfer of Shares, Change of Company Nature and Formulation of New Contracts and Articles of Association of Sunco Timber Kun Shan Co., Ltd." (*Kunshangzi* [2015] No. 226), the company's original investor, Sunco, Inc. of the United States, transferred its 52% equity interest in the company (totaling US$5.616 million) to Jiangsu Qiyi Investment Co., Ltd. After the transfer, Sunco, Inc. of the United States holds 48% of the company's shares (total US$5.184 million); Jiangsu Qiyi Investment Co., Ltd. holds 52% of the company's shares (total US$5.616 million). The nature of the company was changed from a wholly foreign-owned enterprise to a Sino-foreign joint venture. The legal representative was changed from Linda Sun to Wu Guoqing.

On December 28, 2015, the company obtained a business license with a unified social credit code of 9132058374733835XW.

Company Registration Address: No. 327, Jinshang Road, Jinxi Town, Kunshan City, Jiangsu Province.

Scope of Business: Manufacture of wooden building and decoration products, wooden furniture and accessories; sale of self-manufactured products. (Projects that require approval according to the law may only carry out business activities after approval by relevant departments)

### II. The Company's Major Accounting Policies and Accounting Estimates

1. Accounting system: Implements the "Accounting Standards for Enterprises".

2. Fiscal Year: From January 1 to December 31 of the Gregorian calendar.

3. Accounting currency: The RMB is used as the accounting currency.

4. Accounting basis and pricing principles

Accrual basis of accounting. When an enterprise acquires its assets, they are measured at actual cost. Subsequently, if any asset is impaired, corresponding impairment provisions are made.

5. Accounting methods for foreign currency business

For foreign currency economic transactions, the foreign currency base price on the 1st of the month shall be used to convert the foreign currency into RMB for accounting purposes. The ending balances of foreign currency in various foreign currency accounts shall be adjusted according to the foreign currency base price at the end of the period.

6. Bad debt accounting method

The Company adopts the allowance method to account for bad debt losses. At the end of the period, no bad debt provision is made for accounts receivable that are confidently recoverable in full. Bad debt provision is made for accounts receivable that there is evidence to indicate that they are difficult to recover or the full amount is provided.

7. Inventory accounting method

Inventories are classified into raw materials, packaging materials, low-value consumables, stock goods, work-in-progress, self-manufactured semi-finished products, etc.

At the end of the period, the Company values inventories at the lower of cost and net realizable value, and makes provisions for inventory impairment based on the difference between the net realizable value of each inventory item and the cost, which is included in the current period's profit and loss.

Inventories are measured at actual cost when acquired.

When inventory is shipped, raw materials are valued using the weighted average method and inventory goods are valued using the weighted average method.

Low-value consumables are accounted for using the amortization method.

Inventory is kept on a perpetual inventory system.

8. Fixed asset valuation and depreciation methods

Fixed assets are valued at actual cost.

At the end of the period, the Company values fixed assets at the lower of cost and recoverable amount, and makes provision for impairment of fixed assets based on the difference between the recoverable amount of each fixed asset and the cost, and is included the current profit and loss.

Depreciation of fixed assets is calculated using the average life method, and the depreciation rate is determined based on the estimated economic useful life of the fixed asset category and the estimated net residual value rate (10%) as follows:

| Category | Depreciation period | Annual depreciation rate |
|---|---|---|
| Houses and buildings | 20 | 4.50% |
| Mechanical equipment | 10 | 9.00% |
| Tools and equipment | 5 | 18.00% |
| Office equipment | 3 | 30.00% |
| Transportation equipment | 4 | 22.50% |
| Electronics and other equipment | 5 | 18.00% |

9. Accounting method for projects under construction

Projects under construction is valued at the actual cost incurred and at the end of the period at the lower of the book value and the recoverable amount. For the difference between the recoverable amount and the book value, an impairment provision for projects under construction is made.

10. Valuation and amortization methods of intangible assets

Intangible assets are valued at actual cost when acquired. It is amortized in equal installments over its estimated useful life starting from the month of acquisition and recognized in profit and loss; at the end of the period, it is valued at the lower of the book value and the recoverable amount, and an impairment provision for intangible assets is made for the difference between the recoverable amount and the book value.

11. Amortization method for long-term deferred expenses

Expenses incurred during the company's preparation period (except for the purchase and construction of fixed assets) are first classified as long-term deferred expenses and then included in profit and loss once from the month when operations begin.

12. Revenue recognition principles

Product sales: The company recognizes the realization of operating income when it has transferred the important risks and rewards of ownership of the goods to the buyer, the company no longer exercises continuing management and actual control over the goods, the related revenue has been received or evidence of collection has been obtained, and the costs related to the sale of the goods can be reliably measured.

13. Accounting treatment of income tax: The tax payable method is used.

**III. Taxes**

1. Value Added Tax: The output tax is calculated at 17% of the taxable sales amount less the deductible input tax; in accordance with the Notice of the Ministry of Finance and the State Administration of Taxation on Adjusting the Value-Added Tax Rate (*Caishui* [2018] No. 32), the value-added tax rate will be adjusted to 16% from May 1, 2018.

2. Local education surcharge: It is calculated at 2% of the turnover tax payable.

3. Educational surcharge: The tax rate is 3% of the turnover tax payable.

4. Urban maintenance and construction tax: Calculated at 5% of the turnover tax payable

5. Corporate income tax: The income tax rate is 25%.

6. Personal income tax: Employees' personal income tax is withheld and paid by the company.

**IV. Notes to major items in the financial statements**

Unless otherwise noted, the monetary unit of this item is RMB and the notes to the balance sheet items are the notes to the balance as of December 31, 2018.

**(I) Notes to major items of the balance sheet**

**1. Monetary Funds**

| Item | 2017/12/31 | 2018/12/31 |
|---|---|---|
| Cash | 7,519.91 | 5,308.69 |
| Bank savings | 3,247,687.90 | 3,285,255.31 |
| Total | 3,255,207.81 | 3,290,564.00 |

**2. Accounts receivable**

| Aging | 2017/12/31 | | 2018/12/31 | |
| | Amount | Ratio | Amount | Ratio |
|---|---|---|---|---|
| Within 1 year | 37,471,505.54 | 100.00% | 40,421,475.13 | 99.33% |
| 1-2 years | - | 0.00% | 271,732.76 | 0.67% |
| Total | 37,471,505.54 | 100.00% | 40,693,207.89 | 100.00% |

13

**3. Prepayment**

| Aging | 2017/12/31 | | 2018/12/31 | |
|---|---|---|---|---|
| | Amount | Ratio | Amount | Ratio |
| Within 1 year | 2,308,617.69 | 82.79% | 350,011.34 | 40.55% |
| 1-2 years | 226,566.86 | 8.13% | 12,500.00 | 1.45% |
| 2-3 years | 253,292.00 | 9.08% | 248,916.43 | 28.84% |
| Over 3 years | - | 0.00% | 251,676.00 | 29.16% |
| Total | 2,788,476.55 | 100.00% | 863,103.77 | 100.00% |

Note: The balance for the current year includes provision for bad debts of RMB 500,000.00.

**4. Other receivables**

| Aging | 2017/12/31 | | 2018/12/31 | |
|---|---|---|---|---|
| | Amount | Ratio | Amount | Ratio |
| Within 1 year | 36,220.26 | 90.05% | 290,978.99 | 92.38% |
| 1-2 years | - | 0.00% | 20,000.00 | 6.35% |
| 2-3 years | 4,000.00 | 9.95% | - | 0.00% |
| Over 3 years | - | 0.00% | 4,000.00 | 1.27% |
| Total | 40,220.26 | 100.00% | 314,978.99 | 100.00% |

Note: The balance for this year includes bad debt provision of RMB 4,204,082.91.

**5. Inventory**

| Item | 2017/12/31 | 2018/12/31 |
|---|---|---|
| Raw materials | 8,127,679.54 | 6,012,193.29 |
| Low-value consumables | 1,057,847.93 | 101,910.87 |
| Work in process | 3,676,038.06 | 4,786,455.84 |
| Inventory | 495,568.92 | - |
| Total | 13,357,134.45 | 10,900,560.00 |

**6. Other current assets**

of which: Prepaid expenses

| Item | 2017/12/31 | Increase in this period | Amortization for the current period | 2018/12/31 |
|---|---|---|---|---|
| Software service fee | 622.64 | 1,867.92 | 1,867.92 | 622.64 |
| Employers' liability insurance | 14,841.51 | 44,524.53 | 44,524.55 | 14,841.49 |
| Risk assessment service fee | - | 31,698.12 | 13,207.53 | 18,490.59 |
| Garbage removal fee | 1,768.39 | 13,740.00 | 13,218.39 | 2,290.00 |
| Electrical fire inspection fee | 10,655.33 | 27,184.47 | 37,839.80 | - |
| Fire maintenance fee | 14,714.73 | 36,363.64 | 51,078.37 | - |
| Total | 42,602.60 | 155,378.68 | 161,736.56 | 36,244.72 |

14

**7. Fixed assets and accumulated depreciation**

**Fixed Assets**

| Item | 2017/12/31 | Increase in this period | Decrease in this period | 2018/12/31 |
|---|---|---|---|---|
| House and building | 40,859,301.39 | - | - | 40,859,301.39 |
| Mechanical equipment | 23,178,169.20 | 844,072.10 | - | 24,022,241.30 |
| Tools and equipment | 933,903.39 | - | - | 933,903.39 |
| Office equipment | 769,321.93 | 11,034.48 | - | 780,356.41 |
| Transportation equipment | 494,042.58 | - | - | 494,042.58 |
| Other devices | 1,447,713.90 | - | - | 1,447,713.90 |
| Total | 67,682,452.39 | 855,106.58 | - | 68,537,558.97 |

**Accumulated depreciation**

| Item | 2017/1.2/31 | Increase in this period | Decrease in this period | 2018/12/31' |
|---|---|---|---|---|
| House and building | 15,350,498.13 | 2,113,719.95 | - | 17,464,218.08 |
| Mechanical equipment | 16,447,626.16 | 913,673.11 | - | 17,361,299.27 |
| Tools and equipment | 738,645.23 | 80,975.53 | - | 819,620.76 |
| Office equipment | 677,023.12 | 11,597.56 | - | 688,620.68 |
| Transportation equipment | 427,005.61 | 13,799.37 | - | 440,804.98 |
| Other equipment | 1,302,942.51 | - | - | 1,302,942.51 |
| Total | 34,943,740.76 | 3,133,765.52 | - | 38,077,506.28 |

**8. Projects under construction**

| Item | 2017/12/31 | 2018/12/31 |
|---|---|---|
| Vacuum renovation project | 10,539.06 | - |
| Total | 10,539.06 | - |

**9. Intangible assets**

| Item | 2017/12/31 | Increase in this period | Amortization for the current period | 2018/12/31 |
|---|---|---|---|---|
| Land use rights | 2,002,758.10 | - | 55,375.80 | 1,947,382.30 |
| Land use rights | 1,046,955.44 | - | 26,844.96 | 1,020,110.48 |
| Total | 3,049,713.54 | - | 82,220.76 | 2,967,492.78 |

**10. Long-term deferred expenses**

| Item | 2017/12/31 | Increase in this period | Amortization for the current period | 2018/12/31 |
|---|---|---|---|---|
| Workshop line transformation | 439,102.74 | 229,059.84 | 76,091.40 | 592,071.18 |
| Fire protection renovation project | 665,425.29 | 98,864.08 | 120,994.38 | 643,294.99 |
| Factory maintenance costs | 276,179.18 | 131,034.48 | 68,606.28 | 338,607.38 |
| Floor engineering | 613,515.33 | - | 78,769.54 | 534,745.79 |
| Pipeline installation engineering | 194,500.79 | 193,693.69 | 30,414.09 | 357,780.39 |
| Boiler maintenance costs | 60,285.23 | - | 13,488.17 | 46,797.06 |
| Wastewater treatment renovation project | 25,301.71 | - | 14,475.74 | 10,825.97 |
| Dust collection and exhaust gas rectification project | 57,783.80 | 10,539.06 | 15,051.93 | 53,270.93 |
| Odd projects | 346,924.17 | 114,625.34 | 104,096.72 | 357,452.79 |
| Company gate | 4,620.92 | - | 4,293.05 | 327.87 |
| Environmental consulting services | - | 3,584,905.67 | 209,119.49 | 3,375,786.18 |
| Total | 2,683,639.16 | 4,362,722.16 | 735,400.79 | 6,310,960.53 |

**11. Accounts Payable**

| Aging | 2017/12/31 | | 2018/12/31 | |
|---|---|---|---|---|
| | Amount | Ratio | Amount | Ratio |
| Within 1 year | 7,989,647.71 | 93.19% | 5,568,736.34 | 90.04% |
| 1-2 years | 43,167.93 | 0.50% | 73,635.52 | 1.19% |
| 2-3 years | 159,913.45 | 1.87% | 38,984.54 | 0.63% |
| Over 3 years | 381,088.16 | 4.44% | 503,090.74 | 8.14% |
| Total | 8,573,817.25 | 100.00% | 6,184,447.14 | 100.00% |

**12. Wages and salaries payable to employees**

| Item | 2017/12/31 | 2018/12/31 |
|---|---|---|
| Chinese wages | 668,295.45 | 661,693.18 |
| Employee food expenses | 129,461.00 | 109,399.48 |
| Union dues | 62,249.53 | 120,154.68 |
| Pension | 41,553.00 | 67,934.02 |
| Medical insurance | 15,450.00 | 23,464.86 |
| Injury insurance | 2,770.20 | 2,740.44 |
| Unemployment insurance | 1,539.76 | 2,901.03 |
| Maternity insurance | 769.88 | 1,566.20 |
| Total | 922,088.82 | 989,853.89 |

**13. Taxes payable**

| Item | 2017/12/31 | 2018/12/31 |
|---|---|---|
| Property tax | 102,028.27 | 102,028.23 |
| Land holding tax | 56,646.94 | 56,646.90 |
| Personal income tax | 8,223.18 | -149.84 |
| VAT | -668,548.16 | -431,531.15 |
| Total | -501,649.77 | -273,005.86 |

**14. Other payables**

| Aging | 2017/12/31 | | 2018/12/31 | |
|---|---|---|---|---|
| | Amount | Ratio | Amount | Ratio |
| Within 1 year | 2,280,620.81 | 9.79% | 45,770.50 | 0.20% |
| 1-2 years | 2,251,319.15 | 9.66% | 2,280,620.81 | 9.77% |
| 2-3 years | 10,325,000.00 | 44.30% | 2,251,319.15 | 9.63% |
| Over 3 years | 8,448,663.38 | 36.25% | 18,773,663.38 | 80.40% |
| Total | 23,305,603.34 | 100.00% | 23,351,373.84 | 100.00% |

**15. Accrued expenses**

| Item | 2017/12/31 | 2018/12/31 |
|---|---|---|
| Electricity | 461,917.97 | 479,112.29 |
| Total | 461,917.97 | 479,112.29 |

16

## 16. Paid-in capital

| Name of investor | Currency | 2017/12/31 | Increase in this period | Decrease in this period | 2018/12/31 |
|---|---|---|---|---|---|
| Sunco, Inc. | USD | 5,184,000.00 | - | - | 5,184,000.00 |
| | CNY | 39,541,413.35 | - | - | 39,541,413.35 |
| Jiangsu Qiyi Investment Co., Ltd. | USD | 5,616,000.00 | - | - | 5,616,000.00 |
| | CNY | 42,836,531.13 | - | - | 42,836,531.13 |
| Total | USD | 10,800,000.00 | - | - | 10,800,000.00 |
| | CNY | 82,377,944.48 | - | - | 82,377,944.48 |

Note: As of December 31, 2018, the registered capital has been fully paid in and verified by a Chinese certified public accountant.

### (II) Notes on major items in the income statement

#### 1. Main business income

| Item | FY2018 |
|---|---|
| Sales abroad | 56,322,334.13 |
| Total | 56,322,334.13 |

#### 2. Main business cost

| Item | FY2018 |
|---|---|
| Sales abroad | 50,484,804.32 |
| Total | 50,484,804.32 |

#### 3. Taxes and surcharges

| Item | FY2018 |
|---|---|
| Building tax | 128,773.16 |
| Educational surcharge | 77,263.90 |
| Local education surcharge | 51,509.27 |
| Total | 257,546.33 |

#### 4. Operating expenses

The total operating expenses for the whole year amounted to RMB 1,524,715.17, of which the main detailed items are as follows:

| Item | FY2018 |
|---|---|
| Export Fees | 989,224.75 |
| Shipping fee | 535,490.42 |

#### 5. Management expenses

The total amount of administrative expenses incurred throughout the year was RMB 3,638,802.91, of which the main detailed items are as follows:

| Item | FY2018 |
|---|---|
| Depreciation | 1,074,580.69 |
| Taxes | 648,863.64 |
| Basic wage | 591,927.00 |
| Environmental protection fee | 436,811.16 |
| Union expenses | 180,534.37 |
| Utilities | 131,976.41 |

17

**6. Financial expenses**

| Item | FY2018 |
|---|---|
| Fees | 10,982.93 |
| Interest income | -2,832.11 |
| Exchange gains | -2,303,988.59 |
| Exchange losses | 281,627.79 |
| Total | -2,014,209.98 |

**7. Non-operating income**

| Item | FY2018 |
|---|---|
| Employee fines | 11,757.37 |
| Bonus | 10,000.00 |
| Total | 21,757.37 |

**8. Non-operating expenses**

| Item | FY2018 |
|---|---|
| fine | 53,000.00 |
| Total | 53,000.00 |

**(III) Notes to items in the cash flow statement**

| Item | FY2018 |
|---|---|
| Net Profit | 2,399,432.75 |
| Plus: *Minority interests | - |
| less: Unrecognized investment losses | - |
| Plus: Provision for asset impairment | - |
| Depreciation of fixed assets | 3,133,765.52 |
| Amortization of intangible assets | 82,220.76 |
| Amortization of long-term deferred expenses | 735,400.79 |
| Decrease in deferred expenses (less: Increase) | 6,357.88 |
| Increase in accrued expenses (less: decrease) | 17,194.32 |
| Losses on disposal of fixed assets, intangible assets and other long-term assets (less: Income) | - |
| Loss from scrapping of fixed assets | - |
| Financial expenses | - |
| Investment losses (less: Income) | - |
| Deferred tax credits (less: Debit | - |
| Decrease in inventories (less: Increase) | 2,456,574.45 |
| Decrease in operating receivables (less: Increase) | -1,571,088.30 |
| Increase in operating payables (less: decrease) | -2,047,190.63 |
| Other | 29,978.33 |
| Net cash flow from operating activities | 5,242,645.87 |

18

**V. Related parties and their transactions:**

(I) Related party relationships

| Company (individual) name | Relationship with this company |
|---|---|
| Sunco, Inc. | investor |
| Jiangsu Qiyi Investment Co., Ltd. | investor |
| Yingfengli Co., Ltd. | Only Customer |
| Linda Sun | General manager |

(II) Related-party transactions

1. Pricing Policy: The pricing of related-party transactions is based on market prices.

2. Related-party transactions:

The details of the Company's transactions with related parties this year are as follows (Unit: RMB Yuan):

| Company (individual) name | Transaction Details | Amount (RMB) | Amount (USD) |
|---|---|---|---|
| Yingfengli Co., Ltd. | Sale | 58,601,373.08 | 8,517,036.78 |

(III) Amounts due from related parties

| Accounting subjects | Company (individual) name | Balance (RMB) | Balance (USD) |
|---|---|---|---|
| Accounts Receivable | Yingfengli Co., Ltd. | 40,399,998.74 | 5,886,466.77 |
| Other payables | Linda Sun | 20,957,013.74 | |

**VI. Subsequent Events**

The Company did not have any major debt restructuring or other important matters that may affect the reading and understanding of the users of this financial statement during the reporting period.

**VII. Other important matters**

1. The Company has won the case against former general manager Chen Yuankang. There is still RMB 3,204,082.91 that has not been recovered. The court is in the process of executing the judgment and the bad debt loss has been fully accrued.

2. The Company has won the case against Jilin Mingshan Wood Industry, but there is still RMB 1,000,000.00 that has not been recovered. The court is in the process of executing the judgment, and the bad debt loss has been fully accrued.

3. The Company has won the case against Shanghai Lanfeng Wood Industry Co., Ltd. The receivables of 500,000.00 have passed the retrospective period and bad debt loss has been fully accrued.

Sunco Timber Kun Shan Co., Ltd.

June 5, 2019

No. 320583000201805040802



# Business License

## (Copy)

Unified social credit code 91320583746819717R (1/4)

| | |
|---|---|
| Name | SUZHOU HUA MING UNITED CERTIFIED PUBLIC ACCOUNTANTS |
| Type | General Partnership |
| Principal place of business | No. 18, Weiye Road, Development Zone (Modern Plaza),Suite 1801, |
| Executive Partner | Lu Huaming |
| Date of establishment | February 18, 2003 |
| Term of Partnership | February 18, 2003 - February 18, 2023 |
| Business Scope | Review corporate accounting statements and issue audit reports; verify corporate capital and issue capital verification reports; handle audit business in corporate mergers, divisions, and liquidations, and issue relevant reports; audit annual financial statements of capital construction; agency accounting; accounting consulting, tax consulting, management consulting, accounting training; and other businesses required by laws and regulations. (Projects that require approval according to the law can only carry out business activities after approval by relevant departments) |

[stamp: SUZHOU HUA MING UNITED CERTIFIED PUBLIC ACCOUNTANTS 3205839982394]



Registration Authority[stamp: Kunshan Market Supervision and Administration Bureau: 3205337986778]

**Please fulfill the requirement to publish annual reports from January 1 to June 30 each year**

July 11, 2016

Created by the State Administration for Industry and Commerce of the People's Republic of China

20

# Enterprise Confirmation Letter

Serial number: 0001

To: Yingfengli Co., Ltd.

    Suzhou Hua Ming United Certified Public Accountants have been hired to audit our 2018 financial statements. According to the requirements of the Chinese Certified Public Accountant Auditing Standards. We need to verify the accounts receivable and payable between our company and your company. The following information is from our company's account books. If it is consistent with your company's records, please sign and seal at the bottom of this letter in the "Information Verified" section. If there is any discrepancy, please list the discrepant items in the "Information Discrepancies" column. If there are other items related to our company that are not included in this letter, please also list the amounts and details of these items in the "Information Discrepancies" section. Please send your reply directly to Weng Zhe, Audit Department 5, Suzhou Hua Ming United Certified Public Accountants.

    Contact Address: MP Modern Plaza, 18th Floor, Block A,  No. 18 Weiye Road, Kunshan City, Jiangsu Province

    Post code:  215300 Tel:        57553988 Fax:        57593538

1. The current accounts between our company and your company are listed as follows:

Expiration date: December 31, 2018              Unit:  RMB Yuan

| Currency | Amount owed by your company | Amount owed to your company | Accounting items |
|---|---|---|---|
| USD | 5,886,466.77 | | Accounts receivable |
| | | | |
| | | | |
| | | | |

2. Other matters

This letter is only for reviewing the accounts, not for collection and settlement. If the payment has been made after the above date, please reply promptly.

Sunco Timber Kun Shan Co., Ltd.

(Company Seal)

[stamp: SUNCO TIMBER (KUNSHAN) CO., LTD. 3205830511361]

In conclusion:

| 1. The information is proven to be correct | 2. The information is inconsistent. Please list the details of the discrepancy. |
|---|---|
| (Company Seal) | (Company Seal) |
| April 29, 2019 | YYMMDD |
| Person in charge: [handwritten: Sun Fujun ] | Person in charge: |

21

# Suzhou Hua Ming United Certified Public Accountants

Suzhou Hua Ming United Certified Public Accountants



# REPORT

## REPORT



Scan and follow us

Address: MP Modern Plaza, 18th Floor, Block A, No. 18 Weiye Road, Kunshan City, Jiangsu Province
TEL: 0512-57553988
FAX: 0512-57593538
Website: www.szhmcpa.com
E-mail: hm@szhmcpa.com**Error! Bookmark not defined.**

22



05122020060098679874

Report number: *Su Huashen* [2020] No. 5098

# Sunco Timber Kun Shan Co., Ltd.

# Audit Report



Suzhou Hua Ming United Certified Public Accountants (General Partnership)

Address: MP Modern Plaza, 18th Floor, Block A, No. 18 Weiye Road, Kunshan

Post Code: 215301

TEL: 0512-57553988

Fax: 0512-57593538

Website: www.szhmcpa.com

23



**SUZHOU HUA MING UNITED
CERTIFIED PUBLIC ACCOUNTANTS**
SUZHOU HUA MING UNITED CERTIFIED PUBLIC ACCOUNTANTS



Honesty and
dedication to service

# Audit Report

*Su Huashen* [2020] No. 5098

To the Board of Directors of Sunco Timber Kun Shan Co., Ltd.:

## 1. Audit Opinions

We have audited the financial statements of Sunco Timber Kun Shan Co., Ltd. (hereinafter referred to as "Company"), including the balance sheet as of December 31, 2019, the income statement, cash flow statement, statement of changes in owners' equity and related notes to the financial statements for FY2019.

We believe that, except for the impact of the matters described in the "Basis for Qualified Opinion" section, the attached financial statements are prepared in accordance with the provisions of the Accounting Standards for Enterprises in all material respects and fairly reflect your company's financial position as of December 31, 2019 and its operating results and cash flows for FY2019.

## II. Basis for Forming a Qualified Opinion

The company books of Sunco Timber Kun Shan Co., Ltd. on December 31, 2019 show that the registered investors are Sunco, inc. and Jiangsu Qiyi Investment Co., Ltd., which own 48% and 52% of the shares of your company, respectively. At the same time, we noticed that the share transfer agreement and other documents provided by your company showed that the foreign investor Sunco, Inc. had transferred all of its 100% shares in your company to Linda Sun in 2013. However, no relevant industrial and commercial change registration procedures were found. The foreign investor Sunco, Inc. transferred 52% of your company's shares to the transferee Jiangsu Qiyi Investment Co., Ltd. in 2015 and completed the relevant industrial and commercial change registration procedures.

24

We performed the audit in accordance with the Chinese Certified Public Accountant Auditing Standards. Our responsibilities under these standards are further described in the "Responsibilities of the CPA for the Audit of Financial Statements" section of the auditor's report. In accordance with the Code of Professional Ethics for Certified Public Accountants in China, we are independent of your company and have fulfilled other responsibilities in terms of professional ethics. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion

**III. Responsibilities Of Management And Those Charged With Governance For The Financial Statements**

The management of the Company (hereinafter referred to as "Management") is responsible for the preparation of the financial statements to achieve fair presentation in accordance with Accounting Standards for Business Enterprises, and for the design, implementation and maintenance of such internal control as management determine is necessary to enable the preparation of the financial statements that are free from material misstatement, whether due to fraud or error.

In preparing the financial statements, management is responsible for assessing the Company's ability to continue as a going concern, disclosing, as applicable, matters related to going concern and using the going concern basis of accounting unless management either intend to liquidate the Company or to cease operations, or have no realistic alternative but to do so.

Those charged with governance are responsible for overseeing the Company's financial reporting process.

**IV. Auditor's Responsibilities for the Audit of the Financial Statements**

Our objectives are to obtain reasonable assurance about whether the financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an audit report that includes an audit opinion. Reasonable assurance is a high level of assurance, but is not a guarantee that an audit conducted in accordance with auditing standards will always detect a material misstatement when it exists. Misstatements can arise from fraud or error and are generally considered material if, individually or in the aggregate, they could reasonably be expected to influence the economic decisions of users taken on the basis of these financial statements.

As part of an audit in accordance with auditing standards, we exercise professional judgment and maintain professional skepticism throughout the audit.

We also:

25

(1) Identify and assess the risks of material misstatement in the financial statements due to fraud or error, design and implement audit procedures to address those risks, and obtain sufficient appropriate audit evidence as the basis for expressing the audit opinion. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control.

(2) Gain an understanding of the internal controls relevant to the audit in order to design appropriate audit procedures, but the purpose is not to express an opinion on the effectiveness of internal controls.

(3) Evaluate the appropriateness of accounting policies selected by management and the reasonableness of accounting estimates and related disclosures.

(4) Draw conclusions on the appropriateness of management's use of the going concern assumption. and, based on the audit evidence obtained, whether a material uncertainty exists related to events or conditions that may cast significant doubt on the Bank's ability to continue as a going concern. If we conclude that a material uncertainty exists, the auditing standards require us to draw attention to users of the financial statements in our auditor's report to the related disclosures in the financial statements or, if such disclosures are inadequate, to modify our opinion. Our conclusions are based on the audit evidence obtained up to the date of our auditor's report. However, future events or conditions may cause your company to cease to continue as a going concern.

(5) Evaluate the overall presentation, structure and content (including disclosures) of the financial statements and whether the financial statements fairly reflect the relevant transactions and events.

We communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit and significant audit findings, including any significant deficiencies in internal control that we identify during our audit.

26

SUZHOU HUA MING UNITED CERTIFIED
PUBLIC ACCOUNTANTS
[stamp: SUZHOU HUA MING UNITED
CERTIFIED PUBLIC ACCOUNTANTS
3205839982394

Kunshan City, China

Chinese Certified Public Accountant: [stamp: Chinese Certified Public Accountant Lu Huaming 302508030003]

Chief Accountant (signature and seal) [handwritten: Lu Huaming ]

Chinese Certified Public Accountant: [stamp: Chinese Certified Public Accountant Zhang Jingwen 302506060003]

Project Leader (signature and seal) [handwritten: Zhang Jingwen ]

June 2, 2020

27

# Balance Sheet

Table 01  Annual financial statement for non-financial enterprises with foreign investment

Compiled by: Sunco Timber Kun Shan Co., Ltd.                         December 31, 2019

Unit: RBM Yuan

| Item | Row | Ending balance | Beginning balance | Item | Row | Ending balance | Beginning balance |
|---|---|---|---|---|---|---|---|
| Current assets: | 1 | —— | —— | Current liabilities: | 66 | —— | —— |
| Money funds | 2 | 483,565.44 | 3.290,564.00 | Short-term loan | 67 | - | - |
| Settlement provisions | 3 | | | Borrowings from the Central Bank | 68 | | |
| Funds withdrawn | 4 | | | Deposits from customers and interbank | 69 | | |
| Trading financial assets | 5 | - | - | Deposit funds | 70 | | |
| Notes receivable | 6 | | | Trading financial liabilities | 71 | | |
| Accounts receivable | 7 | 47,028.617.16 | 40,693,207.89 | Notes Payable | 72 | - | - |
| Prepayments | 8 | 835,506.24 | 863,103.77 | Accounts payable | 73 | 3.869,079.00 | 6,184,447.14. |
| Premiums receivable | 9 | | | Advance payment | 74 | | - |
| Reinsurance receivables | 10 | | | Selling and repurchasing financial assets | 75 | | |
| Reinsurance contract reserves receivable | 11 | | | Fees and commissions | 76 | | |
| Interest receivable | 12 | - | - | Employee wages payable | 77 | 178.103.61 | 989,853.89 |
| Dividends receivable | 13 | | | of which: Wages payable | 78 | 43,064.91 | 661,693.18 |
| Other receivables | 14 | 133,829.79 | 314,978.99 | Benefits payable | 79 | 135,038.70 | 328,160.71 |
| Financial assets purchased under resale agreements | 15 | | | of which: Employee Reward and Welfare Fund | 80 | | - |
| Stock | 16 | 8023,997.73 | 10,900,560.00 | Taxes payable | 81 | 116,676.25 | -273.005.86 |
| of which: Raw materials | 17 | 6,148,109.04 | 6,012,193.29 | of which: Taxes payable | 82 | 116,676.25 | -273.005.86 |
| Inventory | 18 | - | - | Interest payable | 83 | - | - |
| Non-current assets due within one year | 19 | - | - | Dividends payable | 84 | - | - |
| Other current assets | 20 | 79,508.72 | 36,244.72 | Other payables | 85 | 30,331,373.84 | 23,351,373.84 |
| Total current assets | 21 | 56,585,025.08 | 56,098,659.37 | Reinsurance accounts payable | 86 | | |
| Non-current assets: | 22 | —— | —— | Insurance contract reserve | 87 | | |
| Payment and advance payment | 23 | | | Securities trading agency | 88 | | |
| Available for sale financial assets | 24 | | | Securities underwriting agency | 89 | | |
| Held to maturity investments | 25 | - | - | Non-current liabilities due within one year | 90 | - | - |
| Long-term receivables | 26 | | | Other current liabilities | 91 | - | 479.112.29 |
| Long-term equity investment | 27 | - | - | Total current liabilities | 92 | 34,495,232.70 | 30,731,781.30 |
| Investment Properties | 28 | | | Non-current liabilities: | 93 | —— | —— |
| Fixed Assets | 29 | 68,537,558.97 | 68,537,558.97 | Long term loan | 94 | - | - |
| less: Accumulated depreciation | 30 | 41,080,473.27 | 38,077,506.28 | Bonds payable | 95 | - | - |
| Net fixed assets | 31 | 27,457,085.70 | 30,460,052.69 | Long-term payables | 96 | - | - |
| less: Provision for impairment of fixed assets | 32 | | | Special payables | 97 | | - |
| Net fixed assets | 33 | 27,457,085.70 | 30.460,052.69 | Estimated liabilities | 98 | - | - |
| Work in Progress | 34 | - | - | Deferred tax liabilities | 99 | - | - |
| Engineering supplies | 35 | - | - | Other non-current liabilities | 100 | - | - |
| Fixed assets liquidation | 36 | - | - | of which: Special Reserve Fund | 101 | | |
| Productive biological assets | 37 | | | Total non-current liabilities | 102 | - | - |
| Oil and gas assets | 38 | | | Total Liabilities | 103 | 34,495,232.70 | 30,731,781.30 |
| Intangible assets | 39 | 2,885,270.02 | 2,967,492.78 | Owners' Equity (or Shareholders' Equity): | 104 | - | - |
| Development expenditure | 40 | | | Paid-in capital (share capital) | 105 | 82,377,944.48 | 82,377,944.48 |
| Goodwill | 41 | | | State Capital | 106 | | |
| Long-term prepaid expenses | 42 | 6,830,746:03 | 6,310,960.53 | Collective capital | 107 | | |
| Deferred tax assets | 43 | - | - | Corporate capital | 108 | | |
| Other non-current assets | 44 | - | - | of which: State-owned corporate capital | 109 | | |
| of which: Authorized reserve materials | 45 | | | Collective corporate capital | 110 | | |
| Total non-current assets | 46 | 37,173,101.75 | 39.738,506.00 | Personal Capital | 111 | | |
| | 47 | | | Foreign Capital | 112 | 39,541,413.35 | 39,541,413.35 |
| | 48 | | | less: Investment returned | 113 | - | - |
| | 49 | | | Net paid-in capital (or share capital) | 114 | 82.377,944.48 | 82,377,944.48 |
| | 50 | | | Capital reserve | 115 | 30.65 | 30.65 |
| | 51 | | | less: Treasury stock | 116 | | |
| | 52 | | | Special reserves | 117 | | |
| | 53 | | | Surplus reserve | 118 | - | - |
| | 54 | | | of which: Statutory provident fund | 119 | - | - |
| | 55 | | | Discretionary provident fund | 120 | - | - |
| | 56 | | | Reserve Fund | 121 | - | - |
| | 57 | | | Business development fund | 122 | - | - |
| | 58 | | | Profit return for investment | 123 | - | - |
| | 59 | | | general risk preparation | 124 | - | - |
| | 60 | | | Undistributed profit | 125 | -23,115,081.00 | -17,272,591.06 |
| | 61 | | | Foreign currency translation difference | 126 | - | - |
| | 62 | | | Total equity attributable to the parent company | 127 | 59,262,894.13 | 65.105,384.07 |
| | 63 | | | Minority interests | 128 | | |
| | 64 | | | Total owners' equity | 129 | 59,262,894.13 | 65.105,384.07 |
| [illegible] | 65 | 93,758.126.83 | 95,837,165.37 | Total Debt and Equity | 130 | 93,758.126.83 | 95,837,165.37 |

# Income Statement

Table 02  Annual financial statement for non-financial enterprises with foreign investment

Compiled by: Sunco Timber Kun Shan Co., Ltd.                                FY2019

Unit: RBM Yuan

| Item | Row | Current Annuity | Balance as of last year | Item | Row | Current year balance | Balance as of last year |
|---|---|---|---|---|---|---|---|
| **I. Total operating income** | 1 | 27,976,284.76 | 56,322,334.13 | other | 29 | | |
| of which: Operating income | 2 | 27,976,284.76 | 56,322,334.13 | Plus: Gains from changes in fair value (losses are indicated by a "-" sign) | 30 | | |
| of which: Main business income | 3 | 27,976,284.76 | 56,322,334.13 | Investment income (loss is indicated by "-") | 31 | - | - |
| Other business income | 4 | - | - | of which: Investment income in associates and joint ventures | 32 | - | - |
| Interest income | 5 | | | Exchange gains (losses are indicated by a "-") | 33 | | |
| Premiums earned | 6 | | | **3. Operating Profit (loss is indicated by "-")** | 34 | -5,784,335.29 | 2,430,675.38 |
| Fee and commission income | 7 | | | Plus: Non-operating income | 35 | 450.97 | 21,757.37 |
| **2. Total operating costs** | 8 | 33,760,620.05 | 53,891,658.75 | of which: Gains from disposal of non-current assets | 36 | | |
| of which: Operating cost | 9 | 26,251,334.06 | 50,484,804.32 | Gains from non-monetary asset exchanges | 37 | | |
| of which: Main business cost | 10 | 26,251,334.06 | 50,484,804.32 | government subsidy | 38 | | |
| Other operating costs | 11 | - | - | Debt restructuring gains | 39 | | |
| Interest expense | 12 | | | less: Non-operating support | 40 | - | 53,000.00 |
| Fees and commissions | 13 | | | of which: Loss on disposal of non-current assets | 41 | - | - |
| Surrender benefit | 14 | | | Loss on exchange of non-monetary assets | 42 | | |
| Net compensation expense | 15 | | | Losses from debt restructuring | 43 | | |
| Net amount of insurance contract reserves | 16 | | | **4. Total Profit (Total Loss is indicated by "1")** | 44 | -5,783,884.32 | 2,399,432.75 |
| dividend payment policy | 17 | | | less: Income tax expense | 45 | - | - |
| Reinsurance costs | 18 | | | **5. Net profit (net loss is indicated by "1")** | 46 | -5,783,884.32 | 2,399,432.75 |
| Taxes and surcharges | 19 | 369,984.78 | 257,546.33 | Retained earnings belonging to the parent company's owner | 47 | -5,783,884.32 | 2,399,432.75 |
| sales expense | 20 | 944,611.49 | 1,524,715.17 | Minority interests profit and loss | 48 | - | - |
| Management costs | 21 | 7,048,317.71 | 3,638,802.91 | **6. Earnings per share:** | 49 | | |
| of which: Business hospitality fee | 22 | 1,000.00 | - | Basic earnings per share | 50 | | |
| Research and development expenses | 23 | - | - | Diluted EPS | 51 | | |
| Financial expenses | 24 | -853,627.99 | -2,014,209.98 | **VII. Other comprehensive income** | 52 | -58,605.62 | 29,978.33 |
| of which: Interest expense | 25 | - | - | **8. Total comprehensive income** | 53 | -5,842,489.94 | 2,429,411.08 |
| Interest income | 26 | 2,521.82 | 2,832.11 | Total comprehensive income attributable to owners of the parent company | 54 | -5,842,489.94 | 2,429,411.08 |
| Net exchange loss (net gain is indicated by "-") | 27 | -856,009.00 | -2,022,360.80 | Total comprehensive income attributable to shareholders with minority interests | 55 | | |
| Asset impairment losses | 28 | - | - | | | | |

# Cash Flow Statement

Table 03  Annual financial statement for non-financial enterprises with foreign investment

Compiled by: Sunco Timber Kun Shan Co., Ltd.                    FY2019                    Unit: RBM Yuan

| Item | Row | Current year balance | Balance as of last year | Item | Row | Current year balance | Balance as of last year |
|---|---|---|---|---|---|---|---|
| **1. Cash flows from operating activities:** | 1 | —— | —— | Net cash received from disposal of fixed assets, intangible assets and other long-term assets | 30 | | - |
| Cash received from sales of goods and provision of services | 2 | 21,057,332.19 | 52,819,003.99 | Net cash received from disposal of subsidiaries and other business units | 31 | | - |
| Net increase in customer deposits and interbank deposits | 3 | | - | Other cash received relating to investing activities | 32 | - | - |
| Net increase in borrowing from the central bank | 4 | | - | **Subtotal of cash inflows from investing activities** | 33 | - | -- |
| Net increase in funds borrowed from other financial institutions | 5 | | - | Cash paid for the purchase and construction of fixed assets, intangible assets and other long-term assets | 34 | 1,600,931.61 | 5,207,289.68 |
| Cash received from premiums of original insurance contracts | 6 | | - | Cash Investment | 35 | - | - |
| Net cash received from reinsurance business | 7 | | - | Net increase in collateral loans | 36 | | - |
| Net increase in policyholders' deposits and investments | 8 | | - | Net cash paid to acquire subsidiaries and other business units | 37 | | - |
| Net increase from disposal of trading financial assets | 9 | | - | Other cash paid relating to investing activities | 38 | - | - |
| Cash received for interest, fees and commissions | 10 | | - | **Subtotal of cash outflows from investing activities** | 39 | 1,600,931.61 | 5,207,289.68 |
| Net increase in borrowings | 11 | | - | **Net cash flows from investing activities** | 40 | -1,600,931.61 | -5,207,289.68 |
| Net increase in funds from repurchasing business | 12 | | - | **3. Cash flows from financing activities:** | 41 | —— | —— |
| Tax Refund | 13 | 3,328,119.87 | 5,879,634.90 | Cash received from investment | 42 | - | - |
| Other cash received related to operating activities | 14 | 6,982,972.79 | 70,359.98 | of which: Cash received from minority shareholders' investment | 43 | | - |
| **Subtotal of cash inflow from operating activities** | 15 | 31,368,424.85 | 58,768,998.87 | Cash received from borrowing | 44 | - | - |
| Cash payment for purchasing goods and receiving services | 16 | 19,673,196.54 | 41,861,408.52 | Cash received from issued bonds | 45 | | - |
| Net increase in loans and advances to customers | 17 | | - | Other cash received related to financing activities | 46 | - | - |
| Net increase in deposits with the central bank and other banks | 18 | | - | **Subtotal of cash inflows from financing activities** | 47 | - | - |
| Cash payment for the original insurance contract compensation | 19 | | - | Cash paid to repay debt | 48 | - | - |
| Cash payments for interest, fees and commissions | 20 | | - | Cash paid as dividends, profits or interest payments | 49 | - | - |
| Cash paid as policy dividends | 21 | | - | of which: Dividends and profits paid by subsidiaries to minority shareholders | 50 | | - |
| Cash payments to and for employees | 22 | 9,948,740.15 | 8,076,282.17 | Other cash payments related to financing activities | 51 | - | - |
| Taxes and fees paid | 23 | 1,422,645.03 | 906,410.05 | **Subtotal of cash outflows from financing activities** | 52 | - | - |
| Other cash payments related to operating activities | 24 | 1,529,910.08 | 2,682,252.26 | **Net cash flow from financing activities** | 53 | - | - |
| **Subtotal of cash outflows from operating activities** | 25 | 32,574,491.80 | 53,526,353.00 | **4. Impact of Exchange Rate Changes on Cash and Cash Equivalents** | 54 | - | - |
| **Net cash flow from operating activities** | 26 | -1,206,066.95 | 5,242,645.87 | **5. Net increase in cash and cash equivalents** | 55 | -2,806,998.56 | 35,356.19 |
| **2. Cash flows from investing activities:** | 27 | —— | —— | **Plus: Cash and cash equivalents at the beginning of the period** | 56 | 3,290,564.00 | 3,255,207.81 |
| Cash received from investment recovery | 28 | - | - | **6. Balance of cash and cash equivalents at the end of the period** | 57 | 483,565.44 | 3,290,564.00 |
| Cash received from investment income | 29 | - | - | | | | |

30

# Statement of Changes in Owners' Equity (1)

FY2019

Table 04  Annual financial statement for non-financial enterprises with foreign investment

Compiled by: Sunco Timber Kun Shan Co., Ltd.

Unit: RBM Yuan

| Item | Row | Current year balance | | | | | | | | | Minority interests | Total owners' equity |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Equity attributable to equity holders | | | | | | | | | | |
| | | Paid-in capital (or share capital) | Capital reserve | less: Treasury stock | Special reserves | Surplus reserve | general risk preparation | Undistributed Profits | other | Subtotal | | |
| Column | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 1. Balance at the end of the previous year | 1 | 82,377,944.48 | 30.65 | | | | | -17,272,591.06 | | 65,105,384.07 | | 65,105,384,07 |
| Plus: Changes in accounting policies | 2 | | | | | | | | | | | |
| Correction of prior period errors | 3 | | | | | | | | | | | |
| 2. Balance at the beginning of this year | 4 | 82,377,944.48 | 30.65 | | | | | -17,272,591.06 | | 65,105,384.07 | | 65,105,384.07 |
| 3. Increase/decrease amount in this year (decrease is indicated by "-") | 5 | | | | | | | -5,842,489.94 | | -5,842,489.94 | | -5,842,489.94 |
| 1. Net profit | 6 | | | | | | | -5,783,884.32 | | -5,783,884.32 | | -5,783,884.32 |
| 2. Other comprehensive income | 7 | | | | | | | -58,605.62 | | -58,605.62 | | -58,605.62 |
| Subtotal of comprehensive income | 8 | | | | | | | -5,842,489.94 | | -5,842,489.94 | | -5,842,489.94 |
| 3. Owners' capital contribution and capital decrease | 9 | | | | | | | | | | | |
| 1. Owner's capital contribution | 10 | | | | | | | | | | | |
| 2. Amount of share-based payment recorded in owners' equity | 11 | | | | | | | | | | | |
| 3. Others | 12 | | | | | | | | | | | |
| (IV) Withdrawal and use of special reserves | 13 | | | | | | | | | | | |
| 1. Withdrawal of special reserves | 14 | | | | | | | | | | | |
| 2. Use of special reserves | 15 | | | | | | | | | | | |
| 5. Profit distribution | 16 | | | | | | | | | | | |
| 1. Withdrawal of surplus reserves | 17 | | | | | | | | | | | |
| of which: Statutory provident fund | 18 | | | | | | | | | | | |
| Discretionary provident fund | 19 | | | | | | | | | | | |
| Reserve Fund | 20 | | | | | | | | | | | |
| Business development fund | 21 | | | | | | | | | | | |
| Profit return for investment | 22 | | | | | | | | | | | |
| 2. Withdrawal of general risk reserves | 23 | | | | | | | | | | | |
| 3. Distribution to owners (or shareholders) | 24 | | | | | | | | | | | |
| 4. Others | 25 | | | | | | | | | | | |
| 6. Internal transfer of equity | 26 | | | | | | | | | | | |
| 1. Capital reserve converted into capital (or share capital) | 27 | | | | | | | | | | | |
| 2. Capital (or share capital) increased by converting surplus reserves | 28 | | | | | | | | | | | |
| 3. Surplus reserves to make up for losses | 29 | | | | | | | | | | | |
| 4. Others | 30 | | | | | | | | | | | |
| IV. Balance at the end of this year | 31 | 82,377,944.48 | 30.65 | | | | | -23,115,081.00 | | 59,262,894.13 | | 59,262,894.13 |

31

# Statement of Changes in Owners' Equity (II)

FY2019

Table 04  Annual financial statement for non-financial enterprises with foreign investment

Compiled by: Sunco Timber Kun Shan Co., Ltd.

Unit: RBM Yuan

| Item | Row | Balance as of last year | | | | | | | | | Minority interests | Total owners' equity |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Equity attributable to equity holders | | | | | | | | | | |
| | | Paid-in capital (or share capital) | Capital reserve | less: Treasury stock | Special reserves | Surplus reserve | general risk preparation | Undistributed Profits | other | Subtotal | | |
| Column | | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 1. Balance at the end of the previous year | 1 | 82,377,944.48 | 30.65 | | | | | -19,702,002.14 | | 62,675,972.99 | | 62,675,972.99 |
| Plus: Changes in accounting policies | 2 | | | | | | | | | | | |
| Correction of prior period errors | 3 | | | | | | | | | | | |
| 2. Balance at the beginning of this year | 4 | 82,377,944.48 | 30.65 | | | | | -19,702,002.14 | | 62,675,972.99 | | 62,675,972.99 |
| 3. Increase/decrease amount in this year (decrease is indicated by "-") | 5 | | | | | | | 2,429,411.08 | | 2,429,411.08 | | 2,429,411.08 |
| 1. Net profit | 6 | | | | | | | 2,399,432.75 | | 2,399,432.75 | | 2,399,432.75 |
| 2. Other comprehensive income | 7 | | | | | | | 29,978.33 | | 29,978.33 | | 29,978.33 |
| Subtotal of comprehensive income | 8 | | | | | | | 2,429,411.08 | | 2,429,411.08 | | 2,429,411.08 |
| 3. Owners' capital contribution and capital decrease | 9 | | | | | | | | | | | |
| 1. Owner's capital contribution | 10 | | | | | | | | | | | |
| 2. Amount of share-based payment recorded in owners' equity | 11 | | | | | | | | | | | |
| 3. Others | 12 | | | | | | | | | | | |
| (IV) Withdrawal and use of special reserves | 13 | | | | | | | | | | | |
| 1. Withdrawal of special reserves | 14 | | | | | | | | | | | |
| 2. Use of special reserves | 15 | | | | | | | | | | | |
| 5. Profit distribution | 16 | | | | | | | | | | | |
| 1. Withdrawal of surplus reserves | 17 | | | | | | | | | | | |
| of which: Statutory provident fund | 18 | | | | | | | | | | | |
| Discretionary provident fund | 19 | | | | | | | | | | | |
| Reserve Fund | 20 | | | | | | | | | | | |
| Business development fund | 21 | | | | | | | | | | | |
| Profit return for investment | 22 | | | | | | | | | | | |
| 2. Withdrawal of general risk reserves | 23 | | | | | | | | | | | |
| 3. Distribution to owners (or shareholders) | 24 | | | | | | | | | | | |
| 4. Others | 25 | | | | | | | | | | | |
| 6. Internal transfer of equity | 26 | | | | | | | | | | | |
| 1. Capital reserve converted into capital (or share capital) | 27 | | | | | | | | | | | |
| 2. Capital (or share capital) increased by converting surplus reserves | 28 | | | | | | | | | | | |
| 3. Surplus reserves to make up for losses | 29 | | | | | | | | | | | |
| 4. Others | 30 | | | | | | | | | | | |
| IV. Balance at the end of this year | 31 | 82,377,944.48 | 30.65 | | | | | -17,272,591.06 | | 65,105,384.07 | | 65,105,384.07 |

32

**Sunco Timber Kun Shan Co., Ltd.**

**Financial Statement Footnotes**

**FY2019**

(Currency: Unless otherwise specified, all are in RMB.)

### 1. Company Overview

Sunco Timber Kun Shan Co., Ltd. (hereinafter referred to as the "Company") is a wholly foreign-owned enterprise invested and established by Sunco, Inc. It was established in 2003 with the approval certificate for foreign investment in business No. *Su Fu Zi* [2003] 45674, and on April 8, 2003, it obtained the business license of the Enterprise Legal Person of the People's Republic of China with registration number 320583400005235. The company's original total investment was US$17.5 million, with a registered capital of US$7.5 million.

On February 15, 2008, with the approval of Kunshan Foreign Economic and Trade Cooperation Bureau's "Reply on Approval of 'Sunco Timber Kun Shan Co., Ltd.' Capital Increase and Amendment of Articles of Association' (*Kunjing Maozi* [2008] No. 96)", the Company's total investment increased from US$17.5 million to US$19.64 million, and its registered capital increased from US$7.5 million to US$9 million, of which Sunco, Inc. contributed US$9 million, accounting for 100% of the registered capital.

On June 1, 2010, with the approval of Kunshan Municipal Bureau of Commerce's "Reply on Approval on Sunco Timber Kun Shan Co., Ltd. Capital Increase and Amendment of Articles of Association" (*Kunshangzi* [2010] No. 277), the company's total investment remained at US$19.64 million, and its registered capital increased from US$9 million to US$10 million, of which Sunco, Inc. contributed US$10 million, accounting for 100% of the registered capital.

On June 13, 2011, with the Kunshan Municipal Bureau of Commerce approval of the "Reply on Approval on Sunco Timber Kun Shan Co., Ltd. Capital Increase, Investment Method Change, and Amendment of Articles of Association" (*Kunshangzi* [2011] No. 407)",  the company's total investment increased from US$ 19.64 million to US$ 20.78 million, and its registered capital increased from US$ 10 million to US$ 10.8 million, of which Sunco, Inc. contributed US$ 10.8 million, accounting for 100% of the registered capital (RMB 10,107,389,250 using spot rate  and US$ 692,610,750 in equipment). Currently, the registered capital has been fully in place and has been verified and confirmed by a Chinese certified public accountant.

On April 20, 2015, with the approval of Kunshan Municipal Bureau of Commerce's "Reply on Approval on the Transfer of Shares, Change of Company Nature and Formulation of New Contracts and Articles of Association of Sunco Timber Kun Shan Co., Ltd." (*Kunshangzi* [2015] No. 226), the company's original investor, Sunco, Inc. of the United States, transferred its 52% equity interest in the company (totaling US$5.616 million) to Jiangsu Qiyi Investment Co., Ltd. After the transfer, Sunco, Inc. of the United States holds 48% of the company's shares (total US$5.184 million); Jiangsu Qiyi Investment Co., Ltd. holds 52% of the company's shares (total US$5.616 million). The nature of the company was changed from a wholly foreign-owned enterprise to a Sino-foreign joint venture. The legal representative was changed from Linda Sun to Wu Guoqing.

On December 28, 2015, the company replaced its business license with a unified social credit code of 9132058374733835XW.

On February 11, 2018, the company's legal representative was changed from Wu Guoqing to Xiao Ruihua.

---

Notes to the 2019 Financial Statements of Sunco Timber Kun Shan Co., Ltd.

Company Registration Address: No. 327, Jinshang Road, Jinxi Town, Kunshan City, Jiangsu Province. Scope of Business: Manufacture wooden building and decoration products, wooden furniture and accessories, and sell self-manufactured products. Own factory for rent. (Projects that require approval according to the law can only carry out business activities after approval by relevant departments)

**II. The Company's Major Accounting Policies and Accounting Estimates**

1. Accounting system: Implements the "Accounting Standards for Enterprises".

2. Fiscal Year: From January 1 to December 31 of the Gregorian calendar.

3. Accounting currency: The RMB is used as the accounting currency.

4. Accounting basis and pricing principles

Accrual basis of accounting. When an enterprise acquires its assets, they are measured at actual cost. Subsequently, if any asset is impaired, corresponding impairment provisions are made.

5. The boundary between revenue expenditure and capital expenditure

Any expenditure whose benefits only apply to the current year (or one operating cycle) is treated as revenue expenditure; any expenditure whose benefits apply to several accounting years (or several operating cycles) is treated as capital expenditure.

6. Accounting methods for foreign currency business

For foreign currency economic transactions, the foreign currency base price on the 1st of the month shall be used to convert the foreign currency into RMB for accounting purposes. The ending balances of foreign currency in various foreign currency accounts shall be adjusted according to the foreign currency base price at the end of the period.

7. Criteria for determining cash equivalents

The Company recognizes as cash equivalents investments that are short-term, highly liquid, easily convertible to known amounts of cash and subject to a very low risk of changes in value.

8. Accounting method for short-term investments

Short-term investment refers to investments that can be converted into cash at any time and are not intended to be held for more than 1 year (inclusive), including stocks, bonds, funds, etc. Short-term investments are accounted for in accordance with the following principles:

Short-term investments are measured at investment cost when acquired. The investment cost of short-term investments when acquired is determined as follows:

(1) For short-term investments purchased with cash, the total price actually paid is included in the amount of taxes, handling fees and other related expenses. The actual price paid includes cash dividends that have been declared but not yet received, or bond interest that has matured but not yet received, which are accounted for separately and do not constitute short-term investment costs.

Cash that has been deposited in a securities company but has not yet been used for short-term investment will first be treated as other monetary funds. When it is actually invested, the actual payment price or the actual payment price Less the cash dividend that has been declared but not yet received or the bond interest that has matured but not yet received will be used as the cost of the short-term investment.

---

Notes to the 2019 Financial Statements of Sunco Timber Kun Shan Co., Ltd.

(2) The short-term investment made by investors shall be treated as short-term investment cost based on the value confirmed by the investing parties.

(3) The cost of short-term investments received by an enterprise from a debtor in the form of non-cash assets to offset debts, or short-term investments acquired in exchange for accounts receivable, shall be the book value of the accounts receivable plus any relevant taxes and fees payable. If the short-term investments received include cash dividends that have been declared but not yet received, or bond interest that has matured but not yet received, the cost of the short-term investment shall be the balance after deducting the dividends or interest receivable from the book value of the accounts receivable, plus the relevant taxes and fees payable.

At the end of the period, an enterprise measures short-term investments at the lower of cost and market price, and makes a provision for impairment of short-term investments based on the difference between the market price of each investment and the cost.

When disposing of short-term investments, the difference between the book value of the short-term investment and the actual price obtained should be treated as current investment profit or loss.

An enterprise's entrusted loans should be accounted for as short-term investments. However, interest on entrusted loans should be accrued on schedule and included in profit and loss. If the interest accrued by the enterprise on schedule cannot be recovered when the interest payment period comes, the enterprise shall stop accruing interest and offset the interest originally accrued. At the end of the period, the enterprise's entrusted loans should make corresponding impairment provisions in accordance with the requirements for asset impairment.

The Company did not incur any event that caused impairment of short-term investments during the year, so no provision for impairment of short-term investments was made.

9. Bad debt accounting method

The Company adopts the allowance method to account for bad debt losses. At the end of the period, no bad debt provision is made for accounts receivable that are confidently recoverable in full. Bad debt provision is made for accounts receivable that there is evidence to indicate that they are difficult to recover or the full amount is provided.

The recognition criteria for bad debts are:

(1) Accounts receivable that cannot be recovered after the debtor's bankruptcy or death has been liquidated with his bankruptcy property or estate;

(2) Accounts receivable that cannot be recovered because it is clear that the debtor will fail to perform its repayment obligations within the prescribed time limit.

Receivables that are truly unrecoverable will be written off as bad debts after approval.

10. Inventory accounting method

Inventories are classified into raw materials, packaging materials, low-value consumables, stock goods, work-in-progress goods, self-manufactured semi-finished products, etc.

At the end of the period, the Company values inventories at the lower of cost and net realizable value, and makes provisions for inventory impairment based on the difference between the net realizable value of each inventory item and the cost, which is included in the current period's profit and loss.

Inventories are measured at actual cost when acquired.

When inventory is shipped, raw materials are valued using the weighted average method and inventory goods are valued using the weighted average method.

Low-value consumables are accounted for using the one-time amortization method when they are used.

Inventory is kept on a perpetual inventory system.

11. Long-term investment accounting method

Long-term investment refers to investment other than short-term investment, including various equity investments with a holding period of more than one year (not including one year), bonds that cannot be converted into cash or are not prepared to be converted into cash at any time, long-term debt investment and other long-term investments.

An enterprise's long-term equity investment is accounted for using the cost method or the equity method, depending on the circumstances.

If an enterprise has no control, joint control or significant influence over the invested unit, the cost method shall be used to account for long-term equity investments. If an enterprise has control, joint control or significant influence over the invested unit, the long-term equity investment shall be accounted for using the equity method. Normally, an enterprise shall adopt the equity method of accounting if its investment in other entities accounts for 20% or more of the total voting capital of the entity, or if its investment is less than 20% but has a significant influence. If an enterprise's investment in other units accounts for less than 20% of the total voting capital of the unit, or if the enterprise's investment in other units accounts for 20% or more of the total voting capital of the unit but does not have a significant influence, the cost method shall be used for accounting.

When the cost method is used for accounting, the book value of long-term equity investment generally remains unchanged, except for additional investment, conversion of cash dividends or profits into investment or recovery of investment. The profit or cash dividend declared by the invested unit shall be regarded as the investment income of the current period. The investment income recognized by an enterprise is limited to the distribution of the cumulative net profit generated by the invested unit after accepting the investment. The part of the profit or cash dividend declared for distribution by the invested unit that exceeds the above amount shall be regarded as the recovery of the initial investment cost and offset against the book value of the investment.

When the equity method is used for accounting, the investment is initially measured at the initial investment cost. The difference between the initial investment cost of the investing enterprise and the share of the owner's equity of the invested unit that it should enjoy is treated as the equity investment difference, amortized evenly over a certain period of time, and included in the profit and loss statement.

When an enterprise adjusts the carrying value of an investment and recognizes investment gains and losses based on the net gains and losses of the invested unit, it does so based on the net gains and losses incurred after acquiring the equity interests in the invested unit.

When an enterprise changes its accounting of long-term equity investment from the cost method to the equity method due to additional investment or other reasons, the book value of the equity investment shall be used as the initial investment cost from the time when it actually obtains control, joint control or significant influence over the invested unit.

When an enterprise no longer has control, joint control or significant influence over an invested unit due to reasons such as decrease in investment, it shall cease to use the equity method for accounting and switch to the cost method, with the book value of the investment as the new investment cost. Thereafter, when the invested unit declares profit distribution or cash victory, the portion already recorded in the book value of the investment is treated as the recovery of new investment costs and is used to reduce the book value of the investment.

When disposing of an equity investment, the difference between the book value of the investment and the actual price obtained should be treated as the current investment profit or loss.

When long-term debt investments are acquired, the initial investment cost is the actual cost at the time of acquisition.

Interest income from long-term debt investments is recognized on a regular basis based on the par value and coupon rate.

Notes to the 2019 Financial Statements of Sunco Timber Kun Shan Co., Ltd.

The company's long-term investments are measured at the lower of their carrying value and recoverable amount at the end of the period. At the end of the period, if the recoverable amount of long-term investments is lower than their book value due to reasons such as continued decline in market prices or deterioration in the operating conditions of the invested units, the long-term investment impairment provision shall be made based on the difference between the recoverable amount of individual investments and the book value of long-term investments.

The Company did not have any event in which the recoverable amount of the invested unit was lower than the book value of the long-term equity investment this year, so no provision for impairment of long-term investments is made.

12. Fixed asset valuation and depreciation methods

Fixed assets are valued at actual cost.

The cost of fixed assets when they are acquired shall be determined according to the specific circumstances:

(1) For fixed assets purchased that can be used without going through the construction process, the actual purchase price, packaging fees, transportation fees, installation costs, and relevant taxes paid shall be recorded as the value.

(2) For self-constructed fixed assets, the carrying amount is the total expenditure incurred before the asset reaches the intended usable condition.

(3) The fixed assets invested by investors shall be recorded at the value confirmed by the investors.

(4) Fixed assets acquired under finance leases are recorded at the lower of the original carrying amount of the leased assets on the start date of the lease and the present value of the minimum lease payments. If the proportion of financial lease assets to the total assets of the enterprise is equal to or less than 30%, on the start date of the lease, the enterprise may also use the minimum lease payment as the book value of the fixed assets.

At the end of the period, the Company values fixed assets at the lower of cost and recoverable amount, and makes provision for impairment of fixed assets based on the difference between the recoverable amount of each fixed asset and the cost, and is included the current profit and loss.

Depreciation of fixed assets is calculated using the average life method, and the depreciation rate is determined based on the estimated economic useful life of the fixed asset category and the estimated net residual value rate (10%) as follows:

| Category | Depreciation period | Annual depreciation rate |
|---|---|---|
| Houses and buildings | 20 | 4.50% |
| Mechanical equipment | 10 | 9.00% |
| Tools and Equipment | 5 | 18.00% |
| Office equipment | 3 | 30.00% |
| Transportation Equipment | 4 | 22.50% |
| Electronics and other equipment | 5 | 18.00% |

The Company did not incur any event that caused impairment of fixed assets this year, so no provision for impairment of fixed assets was made.

13. Accounting method for projects under construction

The construction cost of a project under construction is determined based on actual cost incurred and is accounted for separately.

Projects under construction is valued at the actual cost incurred and at the end of the period at the lower of the book value and the recoverable amount. For the difference between the recoverable amount and the book value, an impairment provision for projects under construction is made. At the end of each year, a comprehensive inspection is conducted on projects under construction. If there is evidence that the projects under construction have one or more of

Case 1:22-cv-10833-MJJ    Document 232-4    Filed 05/27/26    Page 179 of 629

37

Notes to the 2019 Financial Statements of Sunco Timber Kun Shan Co., Ltd.

the following conditions, the difference between the recoverable amount of the individual asset and the book value of the projects under construction shall be used to make an impairment provision for the projects under construction and included in the current period's profit and loss:

(1) Projects under construction that have been suspended for a long time and are not expected to resume within the next three years;

(2) The project is outdated in terms of performance and technology, and the economic benefits it will bring to the enterprise are highly uncertain;

(3) Other circumstances that are sufficient to prove that the projects under construction have been impaired.

The Company did not incur any event that caused impairment of projects under construction this year, so no provision for impairment of projects under construction was made.

14. Calculation method of borrowing costs

(1) Principles for recognizing borrowing costs

Interest, amortization of discounts or premiums and exchange differences incurred on special loans for the purchase or construction of fixed assets shall be capitalized and included in the cost of the asset if the capitalization period and capitalization amount are met. Other borrowing interest, amortization of discounts or premiums and exchange differences are recognized as expenses in the period in which they are incurred. Ancillary expenses incurred in arranging special loans, which occur before the purchased or constructed fixed assets reach the predetermined usable state, shall be capitalized when they occur. Other ancillary expenses shall be recognized as expenses in the period in which they are incurred. If the amount of auxiliary expenses is small, they are recognized as expenses in the period in which they are incurred.

(2) Period of capitalization of borrowing costs

a) Interest, amortization of discounts or premiums and exchange differences on special borrowings are capitalized when all three of the following conditions are met: asset expenditure has been incurred; borrowing costs have been incurred; and the purchase and construction activities necessary to bring the asset to its intended usable state have begun.

b) If the purchase and construction of fixed assets is abnormally interrupted and the interruption lasts for more than three consecutive months, the capitalization of borrowing costs shall be suspended and recognized as current expenses until the purchase and construction of the assets resumes.

c) When the purchased fixed assets reach the intended usable state, the capitalization of their borrowing costs shall be stopped.

(3) Capitalized amount of borrowing costs

In each accounting period for capitalization, the capitalized amount of interest is the product of the weighted average of the cumulative expenditures on the purchase and construction of fixed assets up to the end of the current period and the capitalization rate.

15. Valuation and amortization methods of intangible assets

Intangible assets refer to non-monetary long-term assets without physical form that are held by an enterprise for the purpose of producing goods or providing services, renting to others, or for management purposes. Intangible assets are divided into identifiable intangible assets and unidentifiable intangible assets. Identifiable intangible assets include patents, non-patented technologies, trademarks, copyrights, land use rights, etc. Unidentifiable intangible assets refer to goodwill. Goodwill created by an enterprise itself and other items that do not meet the conditions for recognition as intangible assets cannot be treated as intangible assets.

Intangible assets are valued at actual cost when acquired. It is amortized in equal installments over its estimated useful life starting from the month of acquisition and recognized in profit and loss. At the end of the period, it is valued at the lower of the book value and the recoverable amount, and an impairment provision for intangible assets is made for the difference between the recoverable amount and the book value.

Expenditure on self-developed intangible assets can be recognized as intangible assets only if the following conditions are met:

(1) It is technically feasible to complete the intangible asset so that it can be used or sold;

(2) Has the intention to complete the intangible asset and use or sell it;

(3) It can be proved that there is a market for the product produced by using the intangible asset or that there is a market for the intangible asset itself, and that the intangible asset will be used internally, and its usefulness;

(4) Having sufficient technical, financial and other resources to complete the development of the intangible asset and being able to use or sell the intangible asset;

(5) Expenditure attributable to the development phase of the intangible asset can be measured reliably.

At the end of the year, each intangible asset is checked. If it is expected to bring future economic benefits to the enterprise, and the estimated recoverable amount is lower than its book value, the impairment provision is made for each intangible asset and included in the current profit and loss. If it is estimated that an intangible asset can no longer bring future economic benefits to the enterprise, the book value of the intangible asset shall be transferred to the current management expenses.

The Company did not incur any event that caused impairment of intangible assets during the year, so no provision for impairment of intangible assets was made.

16. Amortization method for long-term deferred expenses

Long-term deferred expenses refer to expenses that have already been incurred by the enterprise but have an amortization period of more than one year (excluding one year), including major repair expenses of fixed assets, improvements to leased fixed assets, etc. The loan interest, rent, etc. borne in this period shall not be treated as long-term deferred expenses.

Long-term deferred expenses are accounted for separately and amortized evenly over the benefit period of the expense item. If the major repair costs are deferred, the incurred major repair costs shall be amortized evenly before the next major repair. Expenses for improvements to leased fixed assets are amortized evenly over the shorter of the lease term and the remaining useful life of the leased asset. Other long-term deferred expenses are amortized evenly over the benefit period.

If a long-term deferred expense item cannot benefit future accounting periods, the remaining value of the item that has not yet been amortized shall be transferred to the current period's profit and loss.

17. Revenue recognition principles

(1) Product sales

The company recognizes the realization of operating income when it has transferred the important risks and rewards of ownership of the goods to the buyer, the company no longer exercises continuing management and actual

39

Notes to the 2019 Financial Statements of Sunco Timber Kun Shan Co., Ltd.

control over the goods, the related revenue has been received or evidence of collection has been obtained, and the costs related to the sale of the goods can be reliably measured.

If the goods sold for which the enterprise has recognized revenue are returned, the revenue of the period in which the return occurs shall be reduced. Any merchandise sold on or before the annual balance sheet date that is returned between the balance sheet date and the date the financial accounting report is approved for issuance shall be treated as a post-balance sheet adjustment and the figures for related income, expenses, assets, liabilities, owners' equity and other items in the accounting statements prepared on the balance sheet date shall be adjusted.

(2) Provision of services

For services that have started and completed within the same fiscal year, revenue is recognized when the services are completed. If the start and completion of the service belong to different accounting years, and the results of the service transaction can be reliably estimated, the enterprise shall recognize the related service income using the percentage of completion method on the balance sheet date. The percentage of completion method refers to a method of recognizing revenue and expenses based on the degree of completion of the services.

The outcome of a transaction involving labor can be reliably estimated when all of the following conditions are met:

(a) the total revenue and total cost of services provided can be measured reliably;

(b) the economic benefits associated with the transaction can flow to the enterprise;

(c) the extent of performance of the services can be reliably determined.

The degree of completion of services shall be determined in the following manner:

(a) measurement of work completed;

(b) the proportion of services rendered to the total amount of services to be rendered;

(c) the proportion of the estimated total costs that have been incurred.

When the results of a service transaction cannot be estimated reliably, the revenue is recognized and measured on the balance sheet date in the following ways:

(a) If the labor costs incurred are expected to be reimbursed, revenue should be recognized at the amount of labor costs incurred and the same amount should be carry-forward costs;

(b) If the labor costs incurred are not expected to be fully reimbursed, the amount of labor costs that can be reimbursed should be recognized as income, and the labor costs incurred should be treated as current expenses. The difference between the amount recognized and the labor costs incurred is treated as a loss for the current period.

(c) If all the labor costs incurred cannot be compensated, the labor costs incurred should be treated as current expenses and no revenue should be recognized.

(3) Transfer of the right to use assets

The royalty income generated from the transfer of the right to use intangible assets (such as trademark rights, patent rights, franchise rights, software, copyright, etc.) and other non-cash assets shall be calculated and determined

Notes to the 2019 Financial Statements of Sunco Timber Kun Shan Co., Ltd.

according to the charging time and method stipulated in the relevant contract or agreement. The determination of the above income shall also meet the following requirements: the economic benefits associated with the transaction can go to the Company and the amount of revenue can be measured reliably.

18. Accounting treatment of income tax: The tax payable method is used.

**3. Taxes**

| Tax category | Tax basis | tax rate |
|---|---|---|
| VAT | Added value from the sale of goods and provision of services | 16%/13% |
| Corporate income tax | Taxable income | 25% |
| Urban maintenance and construction tax | Actual turnover tax paid | 5% |
| Educational surcharge | Actual turnover tax paid | 3% |
| Local Education Surcharge | Actual turnover tax paid | 2% |
| Personal Income Tax | Employees' personal income tax is withheld and paid by the company | |
| Other taxes | According to the relevant national regulations | |

**IV. Description of changes in accounting policies and accounting estimates**

None.

**V. Notes to major items in the financial statements**

**(I) Notes on major items in the balance sheet**

**1. Monetary Funds**

| Item | Beginning Balance | Ending balance |
|---|---|---|
| Cash on hand | 5,308.69 | 2,678.09 |
| Bank savings | 3,285,255.31 | 480,887.35 |
| Total | 3,290,564.00 | 483,565.44 |

**2. Accounts receivable**

| Aging | Beginning balance | | Ending balance | |
|---|---|---|---|---|
| | Book balance | Ratio (%) | Book balance | Ratio (%) |
| Within 1 year | 40,421,475.13 | 99.33% | 29,985,937.80 | 63.76% |
| 1 to 2 years | 271,732.76 | 0.67% | 16,782,219.00 | 35.69% |
| 2 to 3 years | 0.00 | 0.00% | 260,460.36 | 0.55% |
| Total | 40,693,207.89 | 100.00% | 47,028,617.16 | 100.00% |

Note: There is no provision for bad debts to be made at the end of the period.

**3. Other receivables**

| Aging | Ending balance | | | |
|---|---|---|---|---|
| | Book balance | Ratio (%) | Bad debt provision | Book value |
| Within 1 year | 9,829.79 | 0.23% | 0.00 | 9,829.79 |
| 1 to 2 years | 100,000.00 | 2.31% | 0.00 | 100,000.00 |
| 2 to 3 years | 20,000.00 | 0.46% | 0.00 | 20,000.00 |
| Over 3 years | 4,208,082.91 | 97.00% | 4,204,082.91 | 4,000.00 |
| Total | 4,337,912.70 | 100.00% | 4,204,082.91 | 133,829.79 |

The notes to these financial statements form an integral part of the financial statements.                    9

Notes to the 2019 Financial Statements of Sunco Timber Kun Shan Co., Ltd.

| Aging | Beginning balance | | | |
|---|---|---|---|---|
| | Book balance | Ratio (%) | Bad debt provision | Book value |
| Within 1 year | 290,978.99 | 6.44% | 0.00 | 290,978.99 |
| 1 to 2 years | 20,000.00 | 0.44% | 0.00 | 20,000.00 |
| 2 to 3 years | 0.00 | 0.00% | 0.00 | 0.00 |
| Over 3 years | 4,208,082.91 | 93.12% | 4,204,082.91 | 4,000.00 |
| Total | 4,519,061.90 | 100.00% | 4,204,082.91 | 314,978.99 |

### 4. Prepayment

| Aging | Ending balance | | | |
|---|---|---|---|---|
| | Book balance | Ratio (%) | Bad debt provision | Book value |
| Within 1 year | 291,174.55 | 21.80% | 0.00 | 291,174.55 |
| 1 to 2 years | 292,655.69 | 21.91% | 0.00 | 292,655.69 |
| 2 to 3 years | 0.00 | 0.00% | 0.00 | 0.00 |
| Over 3 years | 751,676.00 | 56.29% | 500,000.00 | 251,676.00 |
| Total | 1,335,506.24 | 100.00% | 500,000.00 | 835,506.24 |

| Aging | Beginning balance | | | |
|---|---|---|---|---|
| | Book balance | Ratio (%) | Bad debt provision | Book value |
| Within 1 year | 350,011.34 | 25.68% | 0.00 | 350,011.34 |
| 1 to 2 years | 12,500.00 | 0.92% | 0.00 | 12,500.00 |
| 2 to 3 years | 248,916.43 | 18.26% | 0.00 | 248,916.43 |
| Over 3 years | 751,676.00 | 55.14% | 500,000.00 | 251,676.00 |
| Total | 1,363,103.77 | 100.00% | 500,000.00 | 863,103.77 |

### 5. Inventory

| Item | Beginning balance | | | Ending balance | | |
|---|---|---|---|---|---|---|
| | Book balance | Provision for price impairment | Book value | Book balance | Provision for price impairment | Book value |
| Raw materials | 6,012,193.29 | 0.00 | 6,012,193.29 | 6,148,109.04 | 0.00 | 6,148,109.04 |
| Low-value consumables | 101,910.87 | 0.00 | 101,910.87 | 101,459.72 | 0.00 | 101,459.72 |
| Cost of production | 4,786,455.84 | 0.00 | 4,786,455.84 | 1,774,428.97 | 0.00 | 1,774,428.97 |
| Total | 10,900,560.00 | 0.00 | 10,900,560.00 | 8,023,997.73 | 0.00 | 8,023,997.73 |

### 6. Other current assets

| Item | Beginning Balance | Ending balance |
|---|---|---|
| Qing Tian service fee | 622.64 | 622.64 |
| Employers Liability Insurance | 14,841.49 | 0.00 |
| Risk assessment service fee and safety liability insurance | 18,490.59 | 0.00 |
| Garbage removal fee | 2,290.00 | 2,290.00 |
| Yiwei software service fee | 0.00 | 67,961.16 |
| Fire maintenance fee | 0.00 | 8,634.92 |
| Total | 36,244.72 | 79,508.72 |

The notes to these financial statements form an integral part of the financial statements.          10

42

Notes to the 2019 Financial Statements of Sunco Timber Kun Shan Co., Ltd.

## 7. Fixed assets and accumulated depreciation

### Fixed Assets

| Item | Beginning Balance | Increase in this period | Decrease in this period | Ending balance |
|---|---|---|---|---|
| House and Building | 40,859,301.39 | 0.00 | 0.00 | 40,859,301.39 |
| Mechanical equipment | 24,022,241.30 | 0.00 | 0.00 | 24,022,241.30 |
| Tools and Equipment | 933,903.39 | 0.00 | 0.00 | 933,903.39 |
| Office equipment | 780,356.41 | 0.00 | 0.00 | 780,356.41 |
| Transportation Equipment | 494,042.58 | 0.00 | 0.00 | 494,042.58 |
| Other equipment | 1,447,713.90 | 0.00 | 0.00 | 1,447,713.90 |
| Total | 68,537,558.97 | 0.00 | 0.00 | 68,537,558.97 |

### Accumulated depreciation

| Item | Beginning Balance | Increase in this period | Decrease in this period | Ending balance |
|---|---|---|---|---|
| House and Building | 17,464,218.08 | 2,113,719.95 | 0.00 | 19,577,938.03 |
| Mechanical equipment | 17,361,299.27 | 861,949.39 | 0.00 | 18,223,248.66 |
| Tools and Equipment | 819,620.76 | 14,810.90 | 0.00 | 834,431.66 |
| Office equipment | 688,620.68 | 8,653.41 | 0.00 | 697,274.09 |
| Transportation Equipment | 440,804.98 | 3,833.34 | 0.00 | 444,638.32 |
| Other equipment | 1,302,942.51 | 0.00 | 0.00 | 1,302,942.51 |
| Total | 38,077,506.28 | 3,002,966.99 | 0.00 | 41,080,473.27 |

Note: There is no provision for impairment of fixed assets to be made at the end of the period.

## 8. Intangible assets

| Item | Beginning Balance | Increase in this period | Amortization for the current period | Ending balance |
|---|---|---|---|---|
| Land use rights 1 | 1,947,382.30 | 0.00 | 55,375.80 | 1,892,006.50 |
| Land use rights 2 | 1,020,110.48 | 0.00 | 26,846.96 | 993,263.52 |
| Total | 2,967,492.78 | 0.00 | 82,222.76 | 2,885,270.02 |

Note: There is no provision for impairment of intangible assets to be made at the end of the period.

## 9. Long-term deferred expenses

| Item | Beginning Balance | Increase in this period | Amortization for the current period | Ending balance |
|---|---|---|---|---|
| Environmental consulting services | 3,375,786.18 | 50,000.00 | 366,823.71 | 3,058,962.47 |
| Odd projects | 357,452.79 | 991,379.66 | 230,071.84 | 1,118,760.61 |
| Fire protection renovation project | 643,294.99 | 485,436.90 | 150,253.74 | 978,478.15 |
| Workshop line transformation | 592,071.18 | 40,000.00 | 86,984.32 | 545,086.86 |
| Floor Engineering | 534,745.79 | 34,115.05 | 81,338.36 | 487,522.48 |
| Pipeline installation engineering | 357,780.39 | 0.00 | 35,256.36 | 322,524.03 |
| Factory maintenance costs | 338,607.38 | 0.00 | 89,353.36 | 249,254.02 |
| Dust collection and exhaust gas rectification project | 53,270.93 | 0.00 | 16,422.24 | 36,848.69 |
| Boiler maintenance costs | 46,797.06 | 0.00 | 13,488.34 | 33,308.72 |
| Automatic Collapsible door | 327.87 | 0.00 | 327.87 | 0.00 |
| Wastewater treatment renovation project | 10,825.97 | 0.00 | 10,825.97 | 0.00 |
| Total | 6,310,960.53 | 1,600,931.61 | 1,081,146.11 | 6,830,746.03 |

The notes to these financial statements form an integral part of the financial statements.    11

43

Notes to the 2019 Financial Statements of Sunco Timber Kun Shan Co., Ltd.

**10. Accounts Payable**

| Aging | Beginning balance | | Ending balance | |
|---|---|---|---|---|
| | Book balance | Ratio (%) | Book balance | Ratio (%) |
| Within 1 year | 5,568,736.34 | 90.04% | 1,307,467.63 | 33.79% |
| 1 to 2 years | 73,635.52 | 1.19% | 2,015,223.15 | 52.09% |
| 2 to 3 years | 38,984.54 | 0.63% | 26,720.85 | 0.69% |
| Over 3 years | 503,090.74 | 8.14% | 519,667.37 | 13.43% |
| Total | 6,184,447.14 | 100.00% | 3,869,079.00 | 100.00% |

**11. Wages and salaries payable to employees**

| Item | Beginning Balance | Ending balance |
|---|---|---|
| Chinese wages | 661,693.18 | 43,064.91 |
| Total | 661,693.18 | 43,064.91 |

**12. Welfare expenses payable**

| Item | Beginning Balance | Ending balance |
|---|---|---|
| Union dues | 120,154.68 | 136,391.54 |
| Medical insurance | 23,464.86 | 3,524.66 |
| Injury insurance | 2,740.44 | -123.48 |
| Maternity Insurance | 1,566.20 | -141.12 |
| Unemployment Insurance | 2,901.03 | -188.34 |
| Pension | 67,934.02 | -4,424.56 |
| Employee food expense | 109,399.48 | 0.00 |
| Total | 328,160.71 | 135,038.70 |

**13. Taxes payable**

| Item | Beginning Balance | Ending balance |
|---|---|---|
| Property tax payable | 102,028.23 | 102,028.19 |
| Land use tax payable | 56,646.90 | 42,485.14 |
| Individual income tax payable | -149.84 | -1,816.48 |
| VAT | -431,531.15 | -26,020.60 |
| Total | -273,005.86 | 116,676.25 |

**14. Other payables**

| Aging | Beginning balance | | Ending balance | |
|---|---|---|---|---|
| | Book balance | Ratio (%) | Book balance | Ratio (%) |
| Within 1 year | 45,770.50 | 0.20% | 6,980,000.00 | 23.01% |
| 1 to 2 years | 2,280,620.81 | 9.77% | 45,770.50 | 0.15% |
| 2 to 3 years | 2,251,319.15 | 9.63% | 2,280,620.81 | 7.52% |
| Over 3 years | 18,773,663.38 | 80.40% | 21,024,982.53 | 69.32% |
| Total | 23,351,373.84 | 100.00% | 30,331,373.84 | 100.00% |

**15. Other current liabilities**

| Item | Beginning Balance | Ending balance |
|---|---|---|
| Electricity | 479,112.29 | 0.00 |
| Total | 479,112.29 | 0.00 |

The notes to these financial statements form an integral part of the financial statements.    12

44

Notes to the 2019 Financial Statements of Sunco Timber Kun Shan Co., Ltd.

### 16. Paid-in capital (share capital)

| Item | Beginning Balance | Increase in this period | Decrease in this period | Ending balance |
|---|---|---|---|---|
| Sunco, Inc. | 39,541,413.35 | 0.00 | 0.00 | 39,541,413.35 |
| Jiangsu Qiyi Investment Co., Ltd. | 42,836,531.13 | 0.00 | 0.00 | 42,836,531.13 |
| Total | 82,377,944.48 | 0.00 | 0.00 | 82,377,944.48 |

Note: According to the company's share transfer agreement and other information, the foreign investor Sunco, Inc. has transferred all of its 100% shares in the Company to Linda Sun (SUNLINDA) in 2013 without completing the relevant industrial and commercial change registration procedures. In 2015, the foreign investor Sunco, Inc. transferred 52% of your company's shares to the transferee Jiangsu Qiyi Investment Co., Ltd. and completed the relevant industrial and commercial change registration procedures.

### 17. Capital reserve

| Item | Beginning Balance | Increase in this period | Decrease in this period | Ending balance |
|---|---|---|---|---|
| Other capital reserves | 30.65 | 0.00 | 0.00 | 30.65 |
| Total | 30.65 | 0.00 | 0.00 | 30.65 |

### 18. Retained earnings

| Item | Amount | Remark |
|---|---|---|
| Beginning balance | -17,272,591.06 | |
| Retrospective adjustment of prior year profit and loss | 0.00 | |
| Retained earnings at the beginning of the year after retrospective adjustment | -17,272,591.06 | |
| Plus: Increase in this period | 0.00 | |
| 1. Net profit for the year | -5,783,884.32 | |
| 2. Other transfers | -58,605.62 | |
| Less: Decrease in this period | 0.00 | |
| 1. Withdrawal of statutory surplus reserves | 0.00 | |
| 2. Withdrawal of statutory public welfare funds | 0.00 | |
| 3. Withdrawal of employee reward and welfare funds | 0.00 | |
| 4. Withdrawal of reserve funds | 0.00 | |
| 5. Withdrawal of enterprise development funds | 0.00 | |
| 6. Return of profits to investment | 0.00 | |
| 7. Dividend distribution | 0.00 | |
| Ending balance | -23,115,081.00 | |

### (II) Notes on major items in the income statement

### 1. Main business income

| Item | Current period balance | Balance as of same period last year |
|---|---|---|
| Sales abroad | 27,976,284.76 | 56,322,334.13 |
| Total | 27,976,284.76 | 56,322,334.13 |

### 2. Main business cost

| Item | Current period balance | Balance as of same period last year |
|---|---|---|
| Sales abroad | 26,251,334.06 | 50,484,804.32 |
| Total | 26,251,334.06 | 50,484,804.32 |

The notes to these financial statements form an integral part of the financial statements.    13

45

Notes to the 2019 Financial Statements of Sunco Timber Kun Shan Co., Ltd.

## 3. Taxes and surcharges

| Item | Current period balance | Balance as of same period last year |
|---|---|---|
| Building tax | 184,427.49 | 128,773.16 |
| Educational surcharge | 110,656.50 | 77,263.90 |
| Local education surcharge | 73,770.99 | 51,509.27 |
| Stamp Duty | 1,129.80 | 0.00 |
| Total | 369,984.78 | 257,546.33 |

## 4. Sales expenses

| Item | Current period balance | Balance as of same period last year |
|---|---|---|
| Export Fees | 667,572.50 | 989,224.75 |
| Shipping fee | 258,009.86 | 535,490.42 |
| Office Expenses | 19,029.13 | 0.00 |
| Total | 944,611.49 | 1,524,715.17 |

## 5. Management expenses

| Item | Current period balance | Balance as of same period last year |
|---|---|---|
| Severance pay | 3,557,138.63 | 0.00 |
| Depreciation | 1,072,494.56 | 1,074,580.69 |
| Basic wage | 681,759.43 | 591,927.00 |
| Taxes | 583,836.77 | 648,863.64 |
| Environmental protection fee | 457,310.38 | 436,811.16 |
| Utilities | 163,325.90 | 131,976.41 |
| Office Expenses | 99,974.39 | 46,946.7.1 |
| Amortization of land use rights | 82,222.76 | 82,220.76 |
| Union expenses | 76,247.89 | 180,534.37 |
| Insurance | 68,951.69 | 57,732.09 |
| Social Security | 52,571.15 | 57,436.06 |
| Security Fee | 49,864.14 | 6,841.94 |
| Postage fee | 44,134.02 | 38,618.36 |
| Lawyer fee | 20,000.00 | 0.00 |
| Audit fee | 15,094.34 | 15,094.34 |
| Other fee | 13,909.95 | 66,897.80 |
| Transportation fee | 4,820.10 | 7,714.00 |
| Membership fee | 2,000.00 | 2,000.00 |
| Network service fee | 1,867.92 | 73,486.69 |
| Entertainment fee | 1,000.00 | 0.00 |
| Environmental impact assessment consulting fee | 0.02 | 69,182.38 |
| Employee welfare fee | 0.00 | 300.00 |
| Personnel service fee | 0.00 | 1,900.00 |
| Training fee | 0.00 | 920.00 |
| Repair expense | 0.00 | 19,827.59 |
| Meal expense | -206.33 | 26,990.92 |
| Total | 7,048,317.71 | 3,638,802.91 |

The notes to these financial statements form an integral part of the financial statements.    14

Notes to the 2019 Financial Statements of Sunco Timber Kun Shan Co., Ltd.

### 6. Financial expenses

| Item | Current period balance | Balance as of same period last year |
|---|---|---|
| Fees | 4,902.83 | 10,982.93 |
| Interest income | -2,521.82 | -2,832.11 |
| Exchange gains | -1,439,552.30 | -2,303,988.59 |
| Exchange losses | 583,543.30 | 281,627.79 |
| Total | -853,627.99 | -2,014,209.98 |

### 7. Non-operating income

| Item | Current period balance | Balance as of same period last year |
|---|---|---|
| Fine | 450.97 | 11,757.37 |
| Bonus | 0.00 | 10,000.00 |
| Total | 450.97 | 21,757.37 |

### 8. Non-operating expense

| Item | Current period balance | Balance as of same period last year |
|---|---|---|
| Fine | 0.00 | 53,000.00 |
| Total | 0.00 | 53,000.00 |

### (III) Notes to items in the cash flow statement

| Item | Current period balance |
|---|---|
| Net Profit | -5,783,884.32 |
| Plus: *Minority interests | 0.00 |
| Less: Unrecognized investment losses | 0.00 |
| Plus: Provision for asset impairment | 0.00 |
| Depreciation of fixed assets | 3,002,966.99 |
| Amortization of intangible assets | 82,222.76 |
| Amortization of long-term deferred expenses | 1,081,146.11 |
| Decrease in deferred expenses (less: Increase) | -43,264.00 |
| Increase in accrued expenses (less: decrease) | -479,112.29 |
| Losses on disposal of fixed assets, intangible assets and other long-term assets (less: Income) | 0.00 |
| Loss from scrapping of fixed assets | 0.00 |
| Financial expenses | 0.00 |
| Investment losses (less: Income) | 0.00 |
| Deferred tax credits (less: Debit | 0.00 |
| Decrease in inventories (less: Increase) | 2,876,562.27 |
| Decrease in operating receivables (less: Increase) | -6,126,662.54 |
| Increase in operating payables (less: decrease) | 4,242,563.69 |
| Other | -58,605.62 |
| Net cash flow from operating activities | -1,206,066.95 |

### 7. Contingencies:

None.

### 8. Related parties and their transactions:

---

The notes to these financial statements form an integral part of the financial statements.    15

Notes to the 2019 Financial Statements of Sunco Timber Kun Shan Co., Ltd.

(I) Related party relationships

| Company (individual) name | Relationship with the Company |
|---|---|
| Sunco, Inc. | Investor |
| Jiangsu Qiyi Investment Co., Ltd. | Investor |
| Yingfengli Co., Ltd. | The only customer that is directly controlled by a family member who is closely related to a key executive |
| SUNLINDA | General Manager and Director |

(II) Related-party transactions

1. Related-party transactions:

The details of the Company's transactions with related parties in this year and last year are as follows (Unit: RMB Yuan):

| Company (individual) name | Nature of transaction | Transaction volume this year | Last year's transaction volume |
|---|---|---|---|
| Yingfengli Co., Ltd. | Sales | 27,976,284.76 | 56,322,334.13 |
| Total | | 27,976,284.76 | 56,322,334.13 |

(III) Amounts due from related parties:

| Company (individual) name | Accounting items | Amount in accounting currency | |
|---|---|---|---|
| | | Ending balance | Beginning balance |
| Yingfengli Co., Ltd. | Accounts receivable | 46,730,580.43 | 40,399,998.74 |
| Total | | 46,730,580.43 | 40,399,998.74 |

| Company (individual) name | Accounting items | Amount in accounting currency | |
|---|---|---|---|
| | | Ending balance | Beginning balance |
| SUNLINDA | Other payables | 20,957,013.74 | 20,957,013.74 |
| Total | | 20,957,013.74 | 20,957,013.74 |

**9. Subsequent events:**

During the reporting period, the Company did not experience any major debt restructuring or other important matters that would affect the reading and understanding of the users of these financial statements.

**10. Other Important Matters**

1. The company has won the case against Chen Yuankang, the former general manager of the company. There is still RMB 3,204,082.91 that has not been recovered and the court is in the process of executing the judgment. Full provision for bad debt losses has been made.

2. The company has won the case against Jilin Mingshan Wood Industry, but there is still RMB 1,000,000.00 that has not been recovered and the court is in the process of executing the case. Full provision for bad debt losses has been made.

3. The company has won the case against Shanghai Lanfeng Wood Industry Co., Ltd., and the receivables of RMB500,000.00 have not been recovered, and the provision for bad debt loss has been fully made.

Sunco Timber Kun Shan Co., Ltd.

June 2, 2020

The notes to these financial statements form an integral part of the financial statements.                    16

48

No. 320583000201805040802



# Business License

## (Copy)

Unified social credit code 91320583746819717R (1/4)

| | |
|---|---|
| Name | SUZHOU HUA MING UNITED CERTIFIED PUBLIC ACCOUNTANTS |
| Type | General Partnership |
| Principal place of business | Room 1801, No. 18, Weiye Road, Development Zone (Modern Plaza) |
| Executive Partner | Lu Huaming |
| Date of establishment | February 18, 2003 |
| Term of Partnership | February 18, 2003–February 18, 2023 |
| Business Scope | Review corporate accounting statements and issue audit reports; verify corporate capital and issue capital verification reports; handle audit business in corporate mergers, divisions, and liquidations, and issue relevant reports; audit annual financial statements of capital construction; agency accounting; accounting consulting, tax consulting, management consulting, accounting training; and other businesses required by laws and regulations. (Projects that require approval according to the law can only carry out business activities after approval by relevant departments) |

[stamp: SUZHOU HUA MING UNITED CERTIFIED PUBLIC ACCOUNTANTS 3205839982394]



Registration Authority[stamp: Kunshan Market Supervision and Administration Bureau: 3205337986778]

**Please fulfill the obligation to publish annual reports from January 1 to June 30 each year**

July 11, 2016

Created by the State Administration for Industry and Commerce of the People's Republic of China



感谢扫码关注
苏州智慧法院

# 中华人民共和国

# 江苏省苏州市中级人民法院

## 合议庭组成人员通知书

(2021)苏 05 民初 90 号

孙琳达（Linda Sun）：

本院受理森科木业（昆山）有限公司与你损害公司利益责任纠纷一案，决定由俞水娟担任审判长，与审判员蔡燕芳、审判员李诚组成合议庭进行审理。由审判员俞水娟主审本案，书记员李维娜担任记录。

特此通知。



江苏省苏州市中级人民法院

二○二一年一月十二日

# 中华人民共和国
# 江苏省苏州市中级人民法院
# 举证通知书

(2021) 苏 05 民初 90 号

孙琳达 (Linda Sun)：

　　本院在审理原告森科木业（昆山）有限公司与被告你损害公司利益责任纠纷一案中，已通知你作为本案当事人参加诉讼。现根据《中华人民共和国民事诉讼法》和最高人民法院《关于民事诉讼证据的若干规定》，将有关举证事项通知如下：

　　一、当事人对自己提出的诉讼请求所依据的事实或者反驳对方诉讼请求所依据的事实承担举证责任。当事人没有证据或者证据不足以证明其事实主张的，由负有举证责任的当事人承担不利后果。

　　二、向人民法院提供证据，应当提供原件或者原物，或经人民法院核对无异的复制件或者复制品。并应对提交的证据材料逐一分类编号，对证据材料的来源、证明对象和内容作简要说明，依照对方当事人人数提出副本。

　　三、申请鉴定，增加、变更诉讼请求或者提出反诉，应当在举证期限届满前提出。

　　四、你方申请证人作证，应当在举证期限届满的十日前向本院提出申请。

　　五、申请证据保全，应当在举证期限届满七日前向本院提出申请。

　　六、你方在收到本通知书后，可以与对方当事人协商确定举证期限后，向本院申请认可。你方与对方当事人未能协商一致，或者未申请本院认可，或本院不予认可的，你方应当于收到本通知书之日起三十日内向本院提交证据。

　　七、你方在举证期限内提交证据材料确有困难的，可以依照最高人民法院《关于民事诉讼证据的若干规定》第三十六条的规定，向本院申请延期举证。

　　八、你方在举证期限届满后提交的证据不符合最高人民法院《关于民事诉讼证据的若干规定》第四十一条、第四十三条第二款、第四十四条规定的"新的证据"的规定的，视为你方放弃举证权利。但对方当事人同意质证的除外。

　　九、符合最高人民法院《关于民事诉讼证据的若干规定》第十七条规定的案件的，你方可以在举证期限届满的七日前书面申请本院调查收集证据。

二〇二一年一月十五日

# 民 事 诉 状

原告：森科木业（昆山）有限公司，统一社会信用代码：9132058374733835XW，法定代表人肖瑞华，该公司董事长，住所江苏省昆山市锦溪镇锦商路 327 号

被告：孙琳达（Linda Sun），出生日期：1946 年 7 月 16 日，护照号码：577710121.

请求事项：

1、判令被告赔偿原告货款损失 6712182.11 美元（折合人民币 46730580.43 元）及利息损失 200000 元，两项合计 46930580.43 元（利息损失以 46930580.43 元为基数，自 2019 年 4 月 30 日计算，暂算至 2020 年 12 月 31 日，终计至实际支付之日止；按照全国银行间同业拆借中心公布的贷款市场报价利率的两倍计算）；

2、本案全部诉讼费用由被告承担。

事实与理由：

被告原为原告独资股东，2014 年将 52% 的股权转让给江苏奇意投资有限公司，被告继续为董事长，实际控制公司，负责对外销售的一切事宜，而且原告的所有业务均是外销，且仅有一家客户，截止 2019 年 4 月 29 日，INFINNITY WOOD PRODUCTS, LLC（美国盈枫利责任有限公司）结欠原告货款 6712182.11 美元，2019 年 6 月 14 日被告突然销声匿迹，原告向美国盈枫利责任有限公司追要货款，该公司置之不理。原告经查询得知，美国盈枫利责任有限公司为其儿子孙福君（David Sun）的公司，被告作为原告的股东之一、任董事长职务，利用上述地位进行关联交易导致公司无法索要上述款项，被告已经违反公司法的相关规定，依法应当承担赔偿责任。

综上，原告为维护自身合法权益，特向贵院起诉，望判如所请。

此致

苏州中级人民法院

具状人：

2020 年 12 月 24 日

# 证据清单

| 序号 | 证据名称 | 页数 | 证明内容 | 备注 |
|---|---|---|---|---|
| 1 | 苏华专审【2019】第 5116 号审计报告、企业询证函 | 1-20 | 截止 2018 年底，美国盈枫利责任有限公司结欠原告货款为 40399998.74 元。 | 复印件 |
| 2 | 苏华专审【2020】第 5098 号审计报告 | 21-48 | 截止 2019 年底，美国盈枫利责任有限公司结欠原告货款为 46730580.43 元。 | 复印件 |
| 3 | 使领馆认证的股份售让协议书 | 49-59 | 被告属于原告的股东之一 | 复印件 |
|  | 委派书、昆劳人仲案字【2019】1208 号裁决书 | 60-65 | 被告是公司董事之一，实际履行董事长职务，负责公司所有经营事宜 | 复印件 |
| 3 | INFINNITY WOOD PRODUCTS, LLC 美国盈枫利责任有限公司工商登记资料及相关认证资料 | 66-98 | INFINNITY WOOD PRODUCTS, LLC 美国盈枫利责任有限公司实际所有人为 Linda Sun 的儿媳孙福君及袁希乐。 | 复印件 |



| 4 | 孙福君与袁希乐的结婚证、财产约定书 | 99-109 | 孙福君、袁希乐为夫妻 | 复印件 |
|---|---|---|---|---|
| 5 | 售房委托书 | 110-112 | 被告与孙福君是母子关系。被告利用董事长身份将原告的货物全部销售给美国盈枫利责任有限公司 | 复印件 |
| 6 | 催款邮件、催款函、快递单 | 113-116 | 2019年6月14日被告突然消失，致使原告46730580.43元无法收回，被告将货物出售给其自己控制的关联公司，依法应当承担责任。 | 复印件 |

证据提供人：

2018
·|

# 苏州华明联合会计师事务所(普通合伙)

## Suzhou Hua Ming United Certified Public Accountants



# 报告书

## REPORT



地址：江苏省昆山市伟业路18号MP现代广场A座18楼
电话：0512-57553988
传真：0512-57593538
网址：www.szhmcpa.com
扫一扫，加关注  E-mail：hm@szhmcpa.com



05122019060044416979
报告文号：苏华专审[2019]第5116号

# 森科木业（昆山）有限公司

# 审　计　报　告

苏州华明联合会计师事务所（普通合伙）

地址：昆山市伟业路18号MP现代广场A座18楼

邮编：215301

电话：0512-57553988

传真：0512-57593538

网址：www. szhmcpa. com



苏州华明联合会计师事务所
SUZHOU HUA MING UNITED CERTIFIED PUBLIC ACCOUNTANTS

诚信做人 用心服务



# 审 计 报 告

苏华专审[2019]第 5116 号

**森科木业（昆山）有限公司董事会：**

### 一、审计意见

我们审计了森科木业（昆山）有限公司（以下简称贵公司）财务报表，包括 2018 年 12 月 31 日的资产负债表，2018 年度的利润表、现金流量表、所有者权益变动表以及相关财务报表附注。

我们认为，后附的财务报表在所有重大方面按照《企业会计制度》的规定编制，公允反映了贵公司 2018 年 12 月 31 日的财务状况以及 2018 年度的经营成果和现金流量。

### 二、形成审计意见的基础

我们按照中国注册会计师审计准则的规定执行了审计工作。审计报告的"注册会计师对财务报表审计的责任"部分进一步阐述了我们在这些准则下的责任。按照中国注册会计师职业道德守则，我们独立于贵公司，并履行了职业道德方面的其他责任。我们相信，我们获取的审计证据是充分、适当的，为发表审计意见提供了基础。

### 三、管理层和治理层对财务报表的责任

贵公司管理层（以下简称管理层）负责按照《企业会计制度》的规定编制财务报表，使其实现公允反映，并设计、执行和维护必要的内部控制，以使财务报表不存在由于舞弊或错误导致的重大错报。

在编制财务报表时，管理层负责评估贵公司的持续经营能力，披露与持续经营相关的事项，并运用持续经营假设，除非管理层计划清算贵公司、终止运营或别无其他现实的选择。

治理层负责监督贵公司的财务报告过程。

### 四、注册会计师对财务报表审计的责任

我们的目标是对财务报表整体是否不存在由于舞弊或错误导致的重大错报获取合理保证，并出具包含审计意见的审计报告。合理保证是高水平的保证，

4.

但并不能保证按照审计准则执行的审计在某一重大错报存在时总能发现。错报可能由于舞弊或错误导致，如果合理预期错报单独或汇总起来可能影响财务报表使用者依据财务报表作出的经济决策，则通常认为错报是重大的。

在按照审计准则执行审计工作的过程中，我们运用职业判断，并保持职业怀疑。同时，我们也执行以下工作：

（1）识别和评估由于舞弊或错误导致的财务报表重大错报风险，设计和实施审计程序以应对这些风险，并获取充分、适当的审计证据，作为发表审计意见的基础。由于舞弊可能涉及串通、伪造、故意遗漏、虚假陈述或凌驾于内部控制之上，未能发现由于舞弊导致的重大错报的风险高于未能发现由于错误导致的重大错报的风险。

（2）了解与审计相关的内部控制，以设计恰当的审计程序，但目的并非对内部控制的有效性发表意见。

（3）评价管理层选用会计政策的恰当性和作出会计估计及相关披露的合理性。

（4）对管理层使用持续经营假设的恰当性得出结论。同时，根据获取的审计证据，就可能导致对贵公司持续经营能力产生重大疑虑的事项或情况是否存在重大不确定性得出结论。如果我们得出结论认为存在重大不确定性，审计准则要求我们在审计报告中提请报表使用者注意财务报表中的相关披露；如果披露不充分，我们应当发表非无保留意见。我们的结论基于截至审计报告日可获得的信息。然而，未来的事项或情况可能导致贵公司不能持续经营。

（5）评价财务报表的总体列报、结构和内容（包括披露），并评价财务报表是否公允反映相关交易和事项。

我们与治理层就计划的审计范围、时间安排和重大审计发现等事项进行沟通，包括沟通我们在审计中识别出的值得关注的内部控制缺陷。



苏州华明联合会计师事务所（普通合伙）　　中国注册会计师：

（盖章）　　　　　　　　　　　　　　　主任会计师（签名并盖章）

　　　　　　　　　　　　　　　　　　　中国注册会计师：

　　　　　　　　　　　　　　　　　　　项目负责人（签名并盖章）

中国·昆山市　　　　　　　　　　　　　二〇一九年六月五日

# 资产负债表

会外年企01表
金额单位：元

编制单位：森科木业（昆山）有限公司　　　2018年12月31日

| 项目 | 行次 | 期末余额 | 年初余额 | 项目 | 行次 | 期末余额 | 年初余额 |
|---|---|---|---|---|---|---|---|
| 流动资产： | 1 | — | — | 流动负债： | 66 | — | — |
| 货币资金 | 2 | 3,290,564.00 | 3,255,207.81 | 短期借款 | 67 | - | - |
| 结算备付金 | 3 | | | 向中央银行借款 | 68 | | |
| 拆出资金 | 4 | | | 吸收存款及同业存放 | 69 | | |
| 交易性金融资产 | 5 | - | - | 拆入资金 | 70 | | |
| 应收票据 | 6 | - | - | 交易性金融负债 | 71 | | |
| 应收账款 | 7 | 40,693,207.89 | 37,471,505.54 | 应付票据 | 72 | - | - |
| 预付款项 | 8 | 863,103.77 | 2,788,476.55 | 应付账款 | 73 | 6,184,447.14 | 8,573,817.25 |
| 应收保费 | 9 | | | 预收款项 | 74 | - | - |
| 应收分保账款 | 10 | | | 卖出回购金融资产款 | 75 | | |
| 应收分保合同准备金 | 11 | | | 应付手续费及佣金 | 76 | | |
| 应收利息 | 12 | - | - | 应付职工薪酬 | 77 | 989,853.89 | 922,088.82 |
| 应收股利 | 13 | - | - | 其中：应付工资 | 78 | 661,693.18 | 668,295.45 |
| 其他应收款 | 14 | 314,978.99 | 40,220.26 | 应付福利费 | 79 | 328,160.71 | 253,793.37 |
| 买入返售金融资产 | 15 | | | 其中：职工奖励及福利基金 | 80 | - | - |
| 存货 | 16 | 10,900,560.00 | 13,357,134.45 | 应交税费 | 81 | -273,005.86 | -501,649.77 |
| 其中：原材料 | 17 | 6,012,193.29 | 8,127,679.54 | 其中：应交税金 | 82 | -273,005.86 | -501,649.77 |
| 库存商品 | 18 | - | 495,568.92 | 应付利息 | 83 | - | - |
| 一年内到期的非流动资产 | 19 | - | - | 应付股利 | 84 | - | - |
| 其他流动资产 | 20 | 36,244.72 | 42,602.60 | 其他应付款 | 85 | 23,351,373.84 | 23,305,603.34 |
| 流动资产合计 | 21 | 56,098,659.37 | 56,955,147.21 | 应付分保账款 | 86 | | |
| 非流动资产： | 22 | — | — | 保险合同准备金 | 87 | | |
| 发放贷款及垫款 | 23 | | | 代理买卖证券款 | 88 | | |
| 可供出售的资产 | 24 | | | 代理承销证券款 | 89 | | |
| 持有至到期投资 | 25 | - | - | 一年内到期的非流动负债 | 90 | - | - |
| 长期应收款 | 26 | | | 其他流动负债 | 91 | 479,112.29 | 461,917.97 |
| 长期股权投资 | 27 | - | - | 流动负债合计 | 92 | 30,731,781.30 | 32,761,777.61 |
| 投资性房地产 | 28 | | | 非流动负债： | 93 | — | — |
| 固定资产原价 | 29 | 68,537,558.97 | 67,682,452.39 | 长期借款 | 94 | - | - |
| 减：累计折旧 | 30 | 38,077,506.28 | 34,943,740.76 | 应付债券 | 95 | - | - |
| 固定资产净值 | 31 | 30,460,052.69 | 32,738,711.63 | 长期应付款 | 96 | - | - |
| 减：固定资产减值准备 | 32 | - | - | 专项应付款 | 97 | - | - |
| 固定资产净额 | 33 | 30,460,052.69 | 32,738,711.63 | 预计负债 | 98 | | |
| 在建工程 | 34 | - | 10,539.06 | 递延所得税负债 | 99 | - | - |
| 工程物资 | 35 | - | - | 其他非流动负债 | 100 | - | - |
| 固定资产清理 | 36 | - | - | 其中：特准储备基金 | 101 | | |
| 生产性生物资产 | 37 | | | 非流动负债合计 | 102 | - | - |
| 油气资产 | 38 | | | 负债合计 | 103 | 30,731,781.30 | 32,761,777.61 |
| 无形资产 | 39 | 2,967,492.78 | 3,049,713.54 | 所有者权益（或股东权益）： | 104 | — | — |
| 开发支出 | 40 | | | 实收资本（股本） | 105 | 82,377,944.48 | 82,377,944.48 |
| 商誉 | 41 | | | 国家资本 | 106 | | |
| 长期待摊费用 | 42 | 6,310,960.53 | 2,683,639.16 | 集体资本 | 107 | | |
| 递延所得税资产 | 43 | - | - | 法人资本 | 108 | | |
| 其他非流动资产 | 44 | - | - | 其中：国有法人资本 | 109 | | |
| 其中：特准储备物资 | 45 | | | 集体法人资本 | 110 | | |
| 非流动资产合计 | 46 | 39,738,506.00 | 38,482,603.39 | 个人资本 | 111 | | |
| | 47 | | | 外商资本 | 112 | 39,541,413.35 | 39,541,413.35 |
| | 48 | | | 减：已归还投资 | 113 | - | - |
| | 49 | | | 实收资本（或股本）净额 | 114 | 82,377,944.48 | 82,377,944.48 |
| | 50 | | | 资本公积 | 115 | 30.65 | 30.65 |
| | 51 | | | 减：库存股 | 116 | | |
| | 52 | | | 专项储备 | 117 | | |
| | 53 | | | 盈余公积 | 118 | - | - |
| | 54 | | | 其中：法定公积金 | 119 | - | - |
| | 55 | | | 任意公积金 | 120 | - | - |
| | 56 | | | 储备基金 | 121 | - | - |
| | 57 | | | 企业发展基金 | 122 | - | - |
| | 58 | | | 利润归还投资 | 123 | - | - |
| | 59 | | | 一般风险准备 | 124 | - | - |
| | 60 | | | 未分配利润 | 125 | -17,272,591.06 | -19,702,002.14 |
| | 61 | | | 外币报表折算差额 | 126 | - | - |
| | 62 | | | 归属于母公司所有者权益合计 | 127 | 65,105,384.07 | 62,675,972.99 |
| | 63 | | | 少数股东权益 | 128 | | |
| | 64 | | | 所有者权益合计 | 129 | 65,105,384.07 | 62,675,972.99 |
| 资产总计 | 65 | 95,837,165.37 | 95,437,750.60 | 负债及所有者权益总计 | 130 | 95,837,165.37 | 95,437,750.60 |



# 利润表

编制单位：森科木业（昆山）有限公司　　　　　　　2018年度　　　　　　　　　　　金额单位：元

| 项目 | 行次 | 本年金额 | 上年金额 | 项目 | 行次 | 本年金额 | 上年金额 |
|---|---|---|---|---|---|---|---|
| 一、营业总收入 | 1 | 56,322,334.13 | 54,891,593.57 | 其他 | 29 | | |
| 其中：营业收入 | 2 | 56,322,334.13 | 54,891,593.57 | 加：公允价值变动收益（损失以"－"号填列） | 30 | | |
| 其中：主营业务收入 | 3 | 56,322,334.13 | 54,891,593.57 | 投资收益（损失以"－"号填列） | 31 | | － |
| 其他业务收入 | 4 | － | － | 其中：对联营企业和合营企业的投资收益 | 32 | | － |
| 利息收入 | 5 | | | 汇兑收益（损失以"－"号填列） | 33 | | |
| 已赚保费 | 6 | | | 三、营业利润（亏损以"－"号填列） | 34 | 2,430,675.38 | 708,434.67 |
| 手续费及佣金收入 | 7 | | | 加：营业外收入 | 35 | 21,757.37 | 13,477.17 |
| 二、营业总成本 | 8 | 53,891,658.75 | 54,183,158.90 | 其中：非流动资产处置利得 | 36 | | |
| 其中：营业成本 | 9 | 50,484,804.32 | 46,985,488.07 | 非货币性资产交换利得 | 37 | | |
| 其中：主营业务成本 | 10 | 50,484,804.32 | 46,985,488.07 | 政府补助 | 38 | | |
| 其他业务成本 | 11 | － | － | 债务重组利得 | 39 | | |
| 利息支出 | 12 | | | 减：营业外支出 | 40 | 53,000.00 | － |
| 手续费及佣金支出 | 13 | | | 其中：非流动资产处置损失 | 41 | | － |
| 退保金 | 14 | | | 非货币性资产交换损失 | 42 | | |
| 赔付支出净额 | 15 | | | 债务重组损失 | 43 | | |
| 提取保险合同准备金净额 | 16 | | | 四、利润总额（亏损总额以"－"号填列） | 44 | 2,399,432.75 | 721,911.84 |
| 保单红利支出 | 17 | | | 减：所得税费用 | 45 | | 29,978.33 |
| 分保费用 | 18 | | | 五、净利润（净亏损以"－"号填列） | 46 | 2,399,432.75 | 691,933.51 |
| 税金及附加 | 19 | 257,546.33 | 364,393.26 | 归属于母公司所有者的净利润 | 47 | 2,399,432.75 | 691,933.51 |
| 销售费用 | 20 | 1,524,715.17 | 978,113.02 | 少数股东损益 | 48 | － | － |
| 管理费用 | 21 | 3,638,802.91 | 3,665,833.61 | 六、每股收益： | 49 | | |
| 其中：业务招待费 | 22 | － | 4,405.00 | 基本每股收益 | 50 | | |
| 研究与开发费 | 23 | － | － | 稀释每股收益 | 51 | | |
| 财务费用 | 24 | -2,014,209.98 | 2,189,330.94 | 七、其他综合收益 | 52 | 29,978.33 | － |
| 其中：利息支出 | 25 | － | － | 八、综合收益总额 | 53 | 2,429,411.08 | 691,933.51 |
| 利息收入 | 26 | 2,832.11 | 2,583.96 | 归属于母公司所有者的综合收益总额 | 54 | 2,429,411.08 | 691,933.51 |
| 汇兑净损失（净收益以"－"号填列） | 27 | -2,022,360.80 | 2,182,136.21 | 归属于少数股东的综合收益总额 | 55 | | |
| 资产减值损失 | 28 | | | | | | |

编制单位：森科木业（昆山）有限公司　　　　2018年度　　　　金额单位：元

| 项目 | 行次 | 本年金额 | 上年金额 | 项目 | 行次 | 本年金额 | 上年金额 |
|---|---|---|---|---|---|---|---|
| 一、经营活动产生的现金流量： | 1 | — | — | 处置固定资产、无形资产和其他长期资产所收回的现金净额 | 30 | | — |
| 销售商品、提供劳务收到的现金 | 2 | 52,819,003.99 | 46,655,967.42 | 处置子公司及其他营业单位收回的现金净额 | 31 | | — |
| 客户存款和同业存放款项净增加额 | 3 | | — | 收到其他与投资活动有关的现金 | 32 | | — |
| 向中央银行借款净增加额 | 4 | | | 投资活动现金流入小计 | 33 | | — |
| 向其他金融机构拆入资金净增加额 | 5 | | | 购建固定资产、无形资产和其他长期资产所支付的现金 | 34 | 5,207,289.68 | 1,087,313.99 |
| 收到原保险合同保费取得的现金 | 6 | | — | 投资支付的现金 | 35 | | — |
| 收到再保险业务现金净额 | 7 | | — | 质押贷款净增加额 | 36 | | |
| 保户储金及投资款净增加额 | 8 | | — | 取得子公司及其他营业单位支付的现金净额 | 37 | | |
| 处置交易性金融资产净增加额 | 9 | | — | 支付其他与投资活动有关的现金 | 38 | | — |
| 收取利息、手续费及佣金的现金 | 10 | | — | 投资活动现金流出小计 | 39 | 5,207,289.68 | 1,087,313.99 |
| 拆入资金净增加额 | 11 | | — | 投资活动产生的现金流量净额 | 40 | -5,207,289.68 | -1,087,313.99 |
| 回购业务资金净增加额 | 12 | | — | 三、筹资活动产生的现金流量： | 41 | — | — |
| 收到的税费返还 | 13 | 5,879,634.90 | 4,723,907.24 | 吸收投资收到的现金 | 42 | | |
| 收到其他与经营活动有关的现金 | 14 | 70,359.98 | 2,292,881.94 | 其中：子公司吸收少数股东投资收到的现金 | 43 | | |
| 经营活动现金流入小计 | 15 | 58,768,998.87 | 53,672,756.60 | 取得借款所收到的现金 | 44 | | — |
| 购买商品、接收劳务支付的现金 | 16 | 41,861,408.52 | 40,891,876.40 | 发行债券收到的现金 | 45 | | |
| 客户贷款及垫款净增加额 | 17 | | | 收到其他与筹资活动有关的现金 | 46 | | |
| 存放中央银行和同业款项净增加额 | 18 | | — | 筹资活动现金流入小计 | 47 | | — |
| 支付原保险合同赔付款项的现金 | 19 | | — | 偿还债务所支付的现金 | 48 | | — |
| 支付利息、手续费及佣金的现金 | 20 | | — | 分配股利、利润或偿付利息所支付的现金 | 49 | | — |
| 支付保单红利的现金 | 21 | | — | 其中：子公司支付给少数股东的股利、利润 | 50 | | |
| 支付给职工以及为职工支付的现金 | 22 | 8,076,282.17 | 8,380,653.84 | 支付其他与筹资活动有关的现金 | 51 | | — |
| 支付的各项税费 | 23 | 906,410.05 | 1,041,820.11 | 筹资活动现金流出小计 | 52 | | — |
| 支付其他与经营活动有关的现金 | 24 | 2,682,252.26 | 1,867,622.80 | 筹资活动产生的现金流量净额 | 53 | | — |
| 经营活动现金流出小计 | 25 | 53,526,353.00 | 52,181,973.15 | 四、汇率变动对现金及现金等价物的影响 | 54 | | — |
| 经营活动产生的现金流量净额 | 26 | 5,242,645.87 | 1,490,783.45 | 五、现金及现金等价物净增加额 | 55 | 35,356.19 | 403,469.46 |
| 二、投资活动产生的现金流量： | 27 | — | — | 加：期初现金及现金等价物余额 | 56 | 3,255,207.81 | 2,851,738.35 |
| 收回投资收到的现金 | 28 | | — | 六、期末现金及现金等价物余额 | 57 | 3,290,564.00 | 3,255,207.81 |
| 取得投资收益收到的现金 | 29 | | — | | | | |

# 所有者权益变动表（一）

2018年度

会存年度决余表

编制单位：森科木业（昆山）有限公司

金额单位：元

| 项　目 | 行次 | 归属于母公司所有者权益 | | | | | | | | | 少数股东权益 | 所有者权益合计 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 实收资本（或股本） | 资本公积 | 减:库存股 | 专项储备 | 盈余公积 | 一般风险准备 | 未分配利润 | 其他 | 小计 | | |
| 档次 | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 一、上年年末余额 | 1 | 82,377,944.48 | 30.65 | | | | | -19,702,002.14 | | 62,675,972.99 | | 62,675,972.99 |
| 加：会计政策变更 | 2 | | | | | | | | | | | |
| 前期差错更正 | 3 | | | | | | | | | | | |
| 二、本年年初余额 | 4 | 82,377,944.48 | 30.65 | | | | | -19,702,002.14 | | 62,675,972.99 | | 62,675,972.99 |
| 三、本年增减变动金额（减少以"-"号填列） | 5 | | | | | | | 2,429,411.08 | | 2,429,411.08 | | 2,429,411.08 |
| （一）净利润 | 6 | | | | | | | 2,399,432.75 | | 2,399,432.75 | | 2,399,432.75 |
| （二）其他综合收益 | 7 | | | | | | | 29,978.33 | | 29,978.33 | | 29,978.33 |
| 综合收益小计 | 8 | | | | | | | 2,429,411.08 | | 2,429,411.08 | | 2,429,411.08 |
| （三）所有者投入和减少资本 | 9 | | | | | | | | | | | |
| 1.所有者投入资本 | 10 | | | | | | | | | | | |
| 2.股份支付计入所有者权益的金额 | 11 | | | | | | | | | | | |
| 3.其他 | 12 | | | | | | | | | | | |
| （四）专项储备提取和使用 | 13 | | | | | | | | | | | |
| 1.提取专项储备 | 14 | | | | | | | | | | | |
| 2.使用专项储备 | 15 | | | | | | | | | | | |
| （五）利润分配 | 16 | | | | | | | | | | | |
| 1.提取盈余公积 | 17 | | | | | | | | | | | |
| 其中：法定公积金 | 18 | | | | | | | | | | | |
| 任意公积金 | 19 | | | | | | | | | | | |
| 储备基金 | 20 | | | | | | | | | | | |
| 企业发展基金 | 21 | | | | | | | | | | | |
| 利润归还投资 | 22 | | | | | | | | | | | |
| 2.提取一般风险准备 | 23 | | | | | | | | | | | |
| 3.对所有者（或股东）的分配 | 24 | | | | | | | | | | | |
| 4.其他 | 25 | | | | | | | | | | | |
| （六）所有者权益内部结转 | 26 | | | | | | | | | | | |
| 1.资本公积转增资本（或股本） | 27 | | | | | | | | | | | |
| 2.盈余公积转增资本（或股本） | 28 | | | | | | | | | | | |
| 3.盈余公积弥补亏损 | 29 | | | | | | | | | | | |
| 4.其他 | 30 | | | | | | | | | | | |
| 四、本年年末余额 | 31 | 82,377,944.48 | 30.65 | | | | | -17,272,591.06 | | 65,105,384.07 | | 65,105,384.07 |



# 所有者权益变动表(二)

2018年度

编制单位：森科木业(昆山)有限公司

会企04表

金额单位：元

| 项　目 | 行次 | 上　年　金　额 | | | | | | | | | 少数股东权益 | 所有者权益合计 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 归属于母公司所有者权益 | | | | | | | | | | |
| | | 实收资本(或股本) | 资本公积 | 减：库存股 | 专项储备 | 盈余公积 | 一般风险准备 | 未分配利润 | 其他 | 小计 | | |
| 档次 | | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 一、上年年末余额 | 1 | 82,377,944.48 | 30.65 | | | | | -20,393,935.65 | | 61,984,039.48 | | 61,984,039.48 |
| 加：会计政策变更 | 2 | | | | | | | | | | | |
| 前期差错更正 | 3 | | | | | | | | | | | |
| 二、本年年初余额 | 4 | 82,377,944.48 | 30.65 | | | | | -20,393,935.65 | | 61,984,039.48 | | 61,984,039.48 |
| 三、本年增减变动金额(减少以"-"号填列) | 5 | | | | | | | 691,933.51 | | 691,933.51 | | 691,933.51 |
| (一)净利润 | 6 | | | | | | | 691,933.51 | | 691,933.51 | | 691,933.51 |
| (二)其他综合收益 | 7 | | | | | | | | | | | |
| 综合收益小计 | 8 | | | | | | | 691,933.51 | | 691,933.51 | | 691,933.51 |
| (三)所有者投入和减少资本 | 9 | | | | | | | | | | | |
| 1.所有者投入资本 | 10 | | | | | | | | | | | |
| 2.股份支付计入所有者权益的金额 | 11 | | | | | | | | | | | |
| 3.其他 | 12 | | | | | | | | | | | |
| (四)专项储备提取和使用 | 13 | | | | | | | | | | | |
| 1.提取专项储备 | 14 | | | | | | | | | | | |
| 2.使用专项储备 | 15 | | | | | | | | | | | |
| (五)利润分配 | 16 | | | | | | | | | | | |
| 1.提取盈余公积 | 17 | | | | | | | | | | | |
| 其中：法定公积金 | 18 | | | | | | | | | | | |
| 任意公积金 | 19 | | | | | | | | | | | |
| 储备基金 | 20 | | | | | | | | | | | |
| 企业发展基金 | 21 | | | | | | | | | | | |
| 利润归还投资 | 22 | | | | | | | | | | | |
| 2.提取一般风险准备 | 23 | | | | | | | | | | | |
| 3.对所有者(或股东)的分配 | 24 | | | | | | | | | | | |
| 4.其他 | 25 | | | | | | | | | | | |
| (六)所有者权益内部结转 | 26 | | | | | | | | | | | |
| 1.资本公积转增资本(或股本) | 27 | | | | | | | | | | | |
| 2.盈余公积转增资本(或股本) | 28 | | | | | | | | | | | |
| 3.盈余公积弥补亏损 | 29 | | | | | | | | | | | |
| 4.其他 | 30 | | | | | | | | | | | |
| 四、本年年末余额 | 31 | 82,377,944.48 | 30.65 | | | | | -19,702,002.14 | | 62,675,972.99 | | 62,675,972.99 |

森科木业（昆山）有限公司

财务报表附注

二〇一八年度

（货币单位：除特别注明外均为人民币元）

一、 公司概况

森科木业（昆山）有限公司（以下简称"公司"），系由 Sunco, Inc. 投资兴办的外商独资企业。2003 年经商外资苏府资字[2003]45674 号批准证书批准成立，并于 2003 年 4 月 8 日领取了注册号为 320583400005235 的中华人民共和国企业法人营业执照。公司原投资总额 1750 万美元，注册资本 750 万美元。

2008 年 2 月 15 日，经昆山市对外经济贸易合作局昆经贸资[2008]字 96 号"关于同意'森科木业（昆山）有限公司'增资及修改章程的批复"批准，公司投资总额由 1750 万美元增加到 1964 万美元，注册资本由 750 万美元增加到 900 万美元，其中 Sunco, Inc. 出资 900 万美元，占注册资本的 100%。

2010 年 6 月 1 日，经昆山市商务局昆商资[2010]字 277 号"关于同意'森科木业（昆山）有限公司'增资及修改公司章程的批复"批准，公司投资总额仍为 1964 万美元，注册资本由 900 万美元增加到 1000 万美元，其中 Sunco, Inc. 出资 1000 万美元，占注册资本的 100%。

2011 年 6 月 13 日，经昆山市商务局昆商资[2011]字 407 号"关于同意'森科木业（昆山）有限公司'增资、变更出资方式及修改公司章程的批复"批准，公司投资总额由 1964 万美元增加到 2078 万美元，注册资本由 1000 万美元增加到 1080 万美元，其中 Sunco, Inc. 出资 1080 万美元，占注册资本的 100%，以 1010.738925 万元现汇与 69.261075 万美元设备作为出资。目前注册资本已全部到位，并经中国注册会计师验证确认。

2015 年 4 月 20 日，经昆山市商务局昆商资[2015]226 号"关于同意森科木业（昆山）有限公司转股、变更公司性质及制订公司新合同、章程的批复"批准，公司原投资方美国 Sunco, Inc. 将其占公司 52% 的股权（计 561.6 万美元）转让给江苏奇意投资有限公司。转股后，美国 Sunco, Inc. 占公司 48% 的股权（计 518.4 万美元）；江苏奇意投资有限公司占公司 52% 的股权（计 561.6 万美元）。公司性质由外商独资企业变更为中外合资企业。法定代表人由孙琳达变更为吴国庆。

2015 年 12 月 28 日，公司换领了统一社会信用代码为 9132058374733835XW 的营业执照。

公司注册地址：江苏省昆山市锦溪镇锦商路 327 号。经营范围：生产木质建筑装潢用制品，木质家具及配件；销售自产产品。（依法须经批准的项目，经相关部分批准后方可开展经营活动）

二、 公司主要会计政策和会计估计

1、 会计制度：执行《企业会计制度》。

2、会计年度：自公历1月1日至12月31日止。

3、记账本位币：采用人民币为记账本位币。

4、记账基础及计价原则

以权责发生制为记账基础。企业的各项资产在取得时按照实际成本计量，其后，各项资产如果发生减值，则计提相应的减值准备。

5、外币业务核算方法

对发生的外币经济业务，采用当月1日外币基准价折合人民币记账。对各种外币账户的外币期末余额，按期末的外币基准价进行调整。

6、坏账核算方法

本公司对坏账损失采用备抵法核算，期末对确信可以完全收回的应收款项不计提坏账准备，对有证据表明已难以收回的应收款项计提或全额计提坏账准备。

7、存货核算方法

存货分类为原材料、包装物、低值易耗品、库存商品、在产品、自制半成品等。

期末本公司对存货按成本与可变现净值孰低法计价，按单个存货项目的可变现净值低于成本的差额，分别计提存货跌价准备，并计入当期损益。

存货取得时均按实际成本核算。

存货发出时原材料按加权平均法、库存商品按加权平均法计价。

低值易耗品采用分期摊销法核算。

存货采用永续盘存制。

8、固定资产计价和折旧方法

固定资产按实际成本计价。

期末本公司对固定资产按成本与可收回金额孰低计价，按单个固定资产的可收回金额低于成本的差额，分别计提固定资产减值准备，并计入当期损益。

固定资产折旧采用平均年限法计算，并按固定资产类别的预计经济使用年限和预计净残值率（10%），确定其折旧率如下：

| 类别 | 折旧年限 | 年折旧率 |
| --- | --- | --- |
| 房屋及建筑物 | 20 | 4.50% |
| 机器设备 | 10 | 9.00% |
| 工具器具 | 5 | 18.00% |
| 办公设备 | 3 | 30.00% |
| 运输设备 | 4 | 22.50% |
| 电子及其他设备 | 5 | 18.00% |

9、在建工程核算方法

在建工程按实际发生的成本计价，期末按账面价值与可收回金额孰低计价，对可收回金额低于账面价值的差额，分别计提在建工程减值准备。

12

10、 无形资产计价和摊销方法

无形资产按取得时的实际成本计价。自取得当月起在预计使用年限内分期平均摊销，计入损益；期末按账面价值与可收回金额孰低计价，对可收回金额低于账面价值的差额，分别计提无形资产减值准备。

11、 长期待摊费用摊销方法

公司筹建期间发生的费用（除购建固定资产外），先在长期待摊费用中归集，自开始经营的当月起一次计入损益。

12、 收入确认原则

商品销售：公司已将商品所有权上的重要风险和报酬转移给买方，公司不再对该商品实施继续管理权和实际控制权，相关的收入已经收到或取得了收款的证据，并且与销售该商品有关的成本能够可靠地计量时确认营业收入的实现。

13、 所得税的会计处理方法：采用应付税款法。

## 三、 税项

1、 增值税：按应税销售额的 17%计算销项税额减去可抵扣的进项税额缴纳；依据财税[2018]32 号《财政部 国家税务总局关于调整增值税税率的通知》，增值税税率从 2018 年 5 月 1 日起税率调整为 16%。

2、 地方教育附加费：按应缴流转税额的 2%计缴。

3、 教育费附加：按应缴流转税额的 3%计缴。

4、 城市维护建设税：按应缴流转税额的 5%计缴

5、 企业所得税：所得税税率为 25%。

6、 个人所得税：员工个人所得税由公司代扣代缴。

## 四、 会计报表主要项目注释

本项目除单独标注外，金额单位均为人民币元，资产负债表项目注释均为 2018 年 12 月 31 日余额注释。

### (一)资产负债表主要项目注释

1、 货币资金

| 项目 | 2017/12/31 | 2018/12/31 |
| --- | --- | --- |
| 现金 | 7,519.91 | 5,308.69 |
| 银行存款 | 3,247,687.90 | 3,285,255.31 |
| 合计 | 3,255,207.81 | 3,290,564.00 |

2、 应收账款

| 账龄 | 2017/12/31 | | 2018/12/31 | |
| --- | --- | --- | --- | --- |
| | 金额 | 比例 | 金额 | 比例 |
| 1年以内 | 37,471,505.54 | 100.00% | 40,421,475.13 | 99.33% |
| 1-2年 | - | 0.00% | 271,732.76 | 0.67% |
| 合计 | 37,471,505.54 | 100.00% | 40,693,207.89 | 100.00% |

13

### 3、 预付款项

| 账龄 | 2017/12/31 | | 2018/12/31 | |
|---|---|---|---|---|
| | 金额 | 比例 | 金额 | 比例 |
| 1年以内 | 2,308,617.69 | 82.79% | 350,011.34 | 40.55% |
| 1-2年 | 226,566.86 | 8.13% | 12,500.00 | 1.45% |
| 2-3年 | 253,292.00 | 9.08% | 248,916.43 | 28.84% |
| 3年以上 | – | 0.00% | 251,676.00 | 29.16% |
| 合计 | 2,788,476.55 | 100.00% | 863,103.77 | 100.00% |

注：本年余额中含计提的坏账准备 500,000.00 元。

### 4、 其他应收款

| 账龄 | 2017/12/31 | | 2018/12/31 | |
|---|---|---|---|---|
| | 金额 | 比例 | 金额 | 比例 |
| 1年以内 | 36,220.26 | 90.05% | 290,978.99 | 92.38% |
| 1-2年 | – | 0.00% | 20,000.00 | 6.35% |
| 2-3年 | 4,000.00 | 9.95% | – | 0.00% |
| 3年以上 | – | 0.00% | 4,000.00 | 1.27% |
| 合计 | 40,220.26 | 100.00% | 314,978.99 | 100.00% |

注：本年余额中含计提的坏账准备 4,204,082.91 元。

### 5、 存货

| 项目 | 2017/12/31 | 2018/12/31 |
|---|---|---|
| 原材料 | 8,127,679.54 | 6,012,193.29 |
| 低值易耗品 | 1,057,847.93 | 101,910.87 |
| 在产品 | 3,676,038.06 | 4,786,455.84 |
| 库存商品 | 495,568.92 | – |
| 合计 | 13,357,134.45 | 10,900,560.00 |

### 6、 其他流动资产

其中：待摊费用

| 项目 | 2017/12/31 | 本期增加 | 本期摊销 | 2018/12/31 |
|---|---|---|---|---|
| 软件服务费 | 622.64 | 1,867.92 | 1,867.92 | 622.64 |
| 雇主责任险 | 14,841.51 | 44,524.53 | 44,524.55 | 14,841.49 |
| 风险评估服务费 | – | 31,698.12 | 13,207.53 | 18,490.59 |
| 垃圾清运费 | 1,768.39 | 13,740.00 | 13,218.39 | 2,290.00 |
| 电气消防检测费 | 10,655.33 | 27,184.47 | 37,839.80 | – |
| 消防维护费 | 14,714.73 | 36,363.64 | 51,078.37 | – |
| 合计 | 42,602.60 | 155,378.68 | 161,736.56 | 36,244.72 |

14

### 7、 固定资产及累计折旧

**固定资产原价**

| 项目 | 2017/12/31 | 本期增加 | 本期减少 | 2018/12/31 |
|---|---|---|---|---|
| 房屋建筑物 | 40,859,301.39 | - | - | 40,859,301.39 |
| 机器设备 | 23,178,169.20 | 844,072.10 | - | 24,022,241.30 |
| 工具器具 | 933,903.39 | - | - | 933,903.39 |
| 办公设备 | 769,321.93 | 11,034.48 | - | 780,356.41 |
| 运输设备 | 494,042.58 | - | - | 494,042.58 |
| 其他设备 | 1,447,713.90 | - | - | 1,447,713.90 |
| 合　计 | 67,682,452.39 | 855,106.58 | - | 68,537,558.97 |

**累计折旧**

| 项目 | 2017/12/31 | 本期增加 | 本期减少 | 2018/12/31 |
|---|---|---|---|---|
| 房屋建筑物 | 15,350,498.13 | 2,113,719.95 | - | 17,464,218.08 |
| 机器设备 | 16,447,626.16 | 913,673.11 | - | 17,361,299.27 |
| 工具器具 | 738,645.23 | 80,975.53 | - | 819,620.76 |
| 办公设备 | 677,023.12 | 11,597.56 | - | 688,620.68 |
| 运输设备 | 427,005.61 | 13,799.37 | - | 440,804.98 |
| 其他设备 | 1,302,942.51 | - | - | 1,302,942.51 |
| 合　计 | 34,943,740.76 | 3,133,765.52 | - | 38,077,506.28 |

### 8、 在建工程

| 项目 | 2017/12/31 | 2018/12/31 |
|---|---|---|
| 吸尘改造工程 | 10,539.06 | - |
| 合计 | 10,539.06 | - |

### 9、 无形资产

| 项目 | 2017/12/31 | 本期增加 | 本期摊销 | 2018/12/31 |
|---|---|---|---|---|
| 土地使用权 | 2,002,758.10 | - | 55,375.80 | 1,947,382.30 |
| 土地使用权 | 1,046,955.44 | - | 26,844.96 | 1,020,110.48 |
| 合计 | 3,049,713.54 | - | 82,220.76 | 2,967,492.78 |

### 10、长期待摊费用

| 项目 | 2017/12/31 | 本期增加 | 本期摊销 | 2018/12/31 |
|---|---|---|---|---|
| 车间线路改造 | 439,102.74 | 229,059.84 | 76,091.40 | 592,071.18 |
| 消防改造工程 | 665,425.29 | 98,864.08 | 120,994.38 | 643,294.99 |
| 厂房维修费 | 276,179.18 | 131,034.48 | 68,606.28 | 338,607.38 |
| 地坪工程 | 613,515.33 | - | 78,769.54 | 534,745.79 |
| 管道安装工程 | 194,500.79 | 193,693.69 | 30,414.09 | 357,780.39 |
| 锅炉维修费 | 60,285.23 | - | 13,488.17 | 46,797.06 |
| 废水处理改造工程 | 25,301.71 | - | 14,475.74 | 10,825.97 |
| 集尘及废气整改工程 | 57,783.80 | 10,539.06 | 15,051.93 | 53,270.93 |
| 零星工程 | 346,924.17 | 114,625.34 | 104,096.72 | 357,452.79 |
| 公司大门 | 4,620.92 | - | 4,293.05 | 327.87 |
| 环保咨询服务 | - | 3,584,905.67 | 209,119.49 | 3,375,786.18 |
| 合计 | 2,683,639.16 | 4,362,722.16 | 735,400.79 | 6,310,960.53 |

15

### 11、应付账款

| 账龄 | 2017/12/31 | | 2018/12/31 | |
|---|---|---|---|---|
| | 金额 | 比例 | 金额 | 比例 |
| 1年以内 | 7,989,647.71 | 93.19% | 5,568,736.34 | 90.04% |
| 1-2年 | 43,167.93 | 0.50% | 73,635.52 | 1.19% |
| 2-3年 | 159,913.45 | 1.87% | 38,984.54 | 0.63% |
| 3年以上 | 381,088.16 | 4.44% | 503,090.74 | 8.14% |
| 合计 | 8,573,817.25 | 100.00% | 6,184,447.14 | 100.00% |

### 12、应付职工薪酬

| 项目 | 2017/12/31 | 2018/12/31 |
|---|---|---|
| 中方工资 | 668,295.45 | 661,693.18 |
| 职工伙食费 | 129,461.00 | 109,399.48 |
| 工会会费 | 62,249.53 | 120,154.68 |
| 养老保险 | 41,553.00 | 67,934.02 |
| 医疗保险 | 15,450.00 | 23,464.86 |
| 工伤保险 | 2,770.20 | 2,740.44 |
| 失业保险 | 1,539.76 | 2,901.03 |
| 生育保险 | 769.88 | 1,566.20 |
| 合计 | 922,088.82 | 989,853.89 |

### 13、应交税金

| 项目 | 2017/12/31 | 2018/12/31 |
|---|---|---|
| 房产税 | 102,028.27 | 102,028.23 |
| 土地使用税 | 56,646.94 | 56,646.90 |
| 个人所得税 | 8,223.18 | -149.84 |
| 增值税 | -668,548.16 | -431,531.15 |
| 合计 | -501,649.77 | -273,005.86 |

### 14、其他应付款

| 账龄 | 2017/12/31 | | 2018/12/31 | |
|---|---|---|---|---|
| | 金额 | 比例 | 金额 | 比例 |
| 1年以内 | 2,280,620.81 | 9.79% | 45,770.50 | 0.20% |
| 1-2年 | 2,251,319.15 | 9.66% | 2,280,620.81 | 9.77% |
| 2-3年 | 10,325,000.00 | 44.30% | 2,251,319.15 | 9.63% |
| 3年以上 | 8,448,663.38 | 36.25% | 18,773,663.38 | 80.40% |
| 合计 | 23,305,603.34 | 100.00% | 23,351,373.84 | 100.00% |

### 15、预提费用

| 项目 | 2017/12/31 | 2018/12/31 |
|---|---|---|
| 电费 | 461,917.97 | 479,112.29 |
| 合计 | 461,917.97 | 479,112.29 |

16

### 16、实收资本

| 出资者名称 | 币别 | 2017/12/31 | 本期增加 | 本期减少 | 2018/12/31 |
|---|---|---|---|---|---|
| Sunco, Inc. | USD | 5,184,000.00 | - | - | 5,184,000.00 |
| | CNY | 39,541,413.35 | - | - | 39,541,413.35 |
| 江苏奇意投资有限公司 | USD | 5,616,000.00 | - | - | 5,616,000.00 |
| | CNY | 42,836,531.13 | - | - | 42,836,531.13 |
| 合　计 | USD | 10,800,000.00 | - | - | 10,800,000.00 |
| | CNY | 82,377,944.48 | - | - | 82,377,944.48 |

注：截止 2018 年 12 月 31 日，注册资本已全部到位，并经中国注册会计师验证确认。

### (二)利润表主要项目注释

#### 1、 主营业务收入

| 项目 | 2018年度 |
|---|---|
| 外销 | 56,322,334.13 |
| 合计 | 56,322,334.13 |

#### 2、 主营业务成本

| 项目 | 2018年度 |
|---|---|
| 外销 | 50,484,804.32 |
| 合计 | 50,484,804.32 |

#### 3、 税金及附加

| 项目 | 2018年度 |
|---|---|
| 城建税 | 128,773.16 |
| 教育费附加 | 77,263.90 |
| 地方教育费附加 | 51,509.27 |
| 合计 | 257,546.33 |

#### 4、 营业费用

营业费用全年累计发生总额 1,524,715.17 元，其中主要明细项目如下列示：

| 项目 | 2018年度 |
|---|---|
| 出口费用 | 989,224.75 |
| 运输费 | 535,490.42 |

#### 5、 管理费用

管理费用全年累计发生总额 3,638,802.91 元，其中主要明细项目如下列示：

| 项目 | 2018年度 |
|---|---|
| 折旧费 | 1,074,580.69 |
| 税金 | 648,863.64 |
| 基本工资 | 591,927.00 |
| 环境保护费 | 436,811.16 |
| 工会经费 | 180,534.37 |
| 水电费 | 131,976.41 |

## 6、 财务费用

| 项目 | 2018年度 |
|---|---|
| 手续费 | 10,982.93 |
| 利息收入 | -2,832.11 |
| 汇兑收益 | -2,303,988.59 |
| 汇兑损失 | 281,627.79 |
| 合计 | -2,014,209.98 |

## 7、 营业外收入

| 项目 | 2018年度 |
|---|---|
| 员工罚款 | 11,757.37 |
| 奖励金 | 10,000.00 |
| 合计 | 21,757.37 |

## 8、 营业外支出

| 项目 | 2018年度 |
|---|---|
| 罚款 | 53,000.00 |
| 合计 | 53,000.00 |

## (三)现金流量表项目注释

| 项目 | 2018年度 |
|---|---|
| 净利润 | 2,399,432.75 |
| 加：*少数股东权益 | - |
| 减：未确认的投资损失 | - |
| 加：计提的资产减值准备 | - |
| 固定资产折旧 | 3,133,765.52 |
| 无形资产摊销 | 82,220.76 |
| 长期待摊费用摊销 | 735,400.79 |
| 待摊费用减少（减：增加） | 6,357.88 |
| 预提费用增加（减：减少） | 17,194.32 |
| 处置固定资产、无形资产和其他长期资产的损失（减：收益） | - |
| 固定资产报废损失 | - |
| 财务费用 | - |
| 投资损失（减：收益） | - |
| 递延税款贷项（减：借项） | - |
| 存货的减少（减：增加） | 2,456,574.45 |
| 经营性应收项目的减少（减：增加） | -1,571,088.30 |
| 经营性应付项目的增加（减：减少） | -2,047,190.63 |
| 其他 | 29,978.33 |
| 经营活动产生的现金流量净额 | 5,242,645.87 |

五、关联方及其交易:

(一) 关联方关系

| 企业(个人)名称 | 与本企业的关系 |
|---|---|
| Sunco, Inc. | 投资方 |
| 江苏奇意投资有限公司 | 投资方 |
| 盈枫利责任有限公司 | 唯一客户 |
| 孙琳达 | 总经理 |

(二) 关联方交易

1. 定价政策: 关联方交易的定价采用市场价格为基础。

2. 关联交易情况:

本公司本年度向关联方交易有关明细资料如下(单位:元):

| 企业(个人)名称 | 交易内容 | 金额(RMB) | 金额(USD) |
|---|---|---|---|
| 盈枫利责任有限公司 | 销售 | 58,601,373.08 | 8,517,036.78 |

(三) 关联方往来款项

| 会计科目 | 企业(个人)名称 | 余额(RMB) | 余额(USD) |
|---|---|---|---|
| 应收帐款 | 盈枫利责任有限公司 | 40,399,998.74 | 5,886,466.77 |
| 其他应付款 | 孙琳达 | 20,957,013.74 | |

六、 期后事项

本公司在报告期内未发生重大的债务重组等其他影响本会计报表使用者阅读和理解的重要事项。

七、 其他重要事项

1、公司诉原公司总经理陈源康一案,目前已胜诉,尚有 3,204,082.91 元未追回,法院正在执行中。已全额计提坏账损失。

2、公司诉吉林鸣山木业一案,目前已胜诉,尚有 1,000,000.00 元未追回,法院正在执行中。已全额计提坏账损失。

3、公司诉上海兰丰木业有限公司一案,目前已胜诉,应收款项 500,000.00 已过追溯期,已全额计提坏账损失。

森科木业(昆山)有限公司

2019 年 6 月 5 日

编 号 3205830002018050400802



# 营业执照

## （副 本）

统一社会信用代码 91320583746819717R  （1/4）

| | |
|---|---|
| 名　　　称 | 苏州华明联合会计师事务所（普通合伙） |
| 类　　　型 | 普通合伙企业 |
| 主要经营场所 | 开发区伟业路18号1801号房（现代广场） |
| 执行事务合伙人 | 陆华明 |
| 成 立 日 期 | 2003年02月18日 |
| 合 伙 期 限 | 2003年02月18日至2023年02月18日 |
| 经 营 范 围 | 审查企业会计报表，出具审计报告；验证企业资本，出具验资报告；办理企业合并、分立、清算事宜中的审计业务，出具有关的报告；基本建设年度财务决算审计；代理记帐；会计咨询、税务咨询、管理咨询、会计培训；法律、法规规定的其他业务。（依法须经批准的项目，经相关部门批准后方可开展经营活动） |



登 记 机 关



请于每年1月1日至6月30日履行年报公示义务　　2016 年 0 月 11 日

企业信用信息公示系统网址：www.jsgsj.gov.cn:58888/province　　中华人民共和国国家工商行政管理总局监制

20

# 企 业 询 证 函

编号：　　0001

致：　盈枫利责任有限公司

　　本单位聘请的苏州华明联合会计师事务所正在对本单位 2018年度财务报表进行审计，按照中国注册会计师审计准则的要求，应当询证本公司与贵公司的往来账项等事项。下列信息出自本公司账簿记录，如与贵公司记录相符，请在本函下端"信息证明无误"处签章证明；如有不符，请在"信息不符"处列明不符项目。如存在与本公司有关的未列入本函的其他项目，也请在"信息不符"处列出这些项目的金额及详细资料。回函请直接寄至苏州华明联合会计师事务所审计五部翁哲会计师收。

　　通信地址：　江苏省昆山市伟业路18号MP现代广场A座18楼

　　邮编：215300　　电话：57553988　　传真：57593538

1. 本单位与贵单位的往来账项列示如下：

截止日期：2018年12月31日　　　　　　　单位：元

| 币种 | 贵单位欠 | 欠贵单位 | 会计科目 |
|---|---|---|---|
| 美元 | 5,886,466.77 | | 应收账款 |
| | | | |
| | | | |
| | | | |

2. 其他事项

本函仅为复核账目之用，并非催款结算。若款项在上述日期之后已经付清，仍请及时函复为盼。

结论：

| 1.信息证明无误 | 2.信息不符，请列明不符的详细情况 |
|---|---|
| （公司盖章） | （公司盖章） |
| 2019年4月29日 | 年　月　日 |
| 经办人： | 经办人： |

2019 리

# 苏州华明联合会计师事务所(普通合伙)

## Suzhou Hua Ming United Certified Public Accountants



# 报告书

## REPORT



地址：江苏省昆山市伟业路18号MP现代广场A座18楼
电话：0512-57553988
传真：0512-57593538
网址：www.szhmcpa.com
E-mail：hm@szhmcpa.com
扫一扫，加关注

22



05122020060098679874

报告文号：苏华审[2020]第5098号

# 森科木业（昆山）有限公司

# 审 计 报 告



 苏州华明联合会计师事务所（普通合伙）

地址：昆山市伟业路18号MP现代广场A座18楼

邮编：215301

电话：0512-57553988

传真：0512-57593538

网址：www.szhmcpa.com

 苏州华明联合会计师事务所
**诚信做人 用心服务** SUZHOU HUAMING UNITED CERTIFIED PUBLIC ACCOUNTANTS

 **Prime**Global

# 审 计 报 告

苏华审［2020］第 5098 号

森科木业（昆山）有限公司董事会：

## 一、保留意见

我们审计了森科木业（昆山）有限公司（以下简称贵公司）财务报表，包括 2019 年 12 月 31 日的资产负债表，2019 年度的利润表、现金流量表、所有者权益变动表以及相关财务报表附注。

我们认为，除"形成保留意见的基础"部分所述事项产生的影响外，后附的财务报表在所有重大方面按照《企业会计制度》的规定编制，公允反映了贵公司 2019 年 12 月 31 日的财务状况以及 2019 年度的经营成果和现金流量。

## 二、形成保留意见的基础

森科木业（昆山）有限公司 2019 年 12 月 31 日公司账簿显示登记的投资方为 Sunco, inc. 和江苏奇意投资有限公司，分别拥有贵公司 48%和 52%的股权。同时我们注意到贵公司提供的股份受让协议书等资料显示，外方投资者 Sunco, Inc. 已于 2013 年将其在贵本公司的 100%股份全部转让给了孙琳达（SUN LINDA），但未见相关的工商变更登记手续；而外方投资者 Sunco, Inc. 又于 2015 年转让了贵公司的 52%股份给受让方江苏奇意投资有限公司并办理了相关的工商变

24

更登记手续。

我们按照中国注册会计师审计准则的规定执行了审计工作。审计报告的"注册会计师对财务报表审计的责任"部分进一步阐述了我们在这些准则下的责任。按照中国注册会计师职业道德守则，我们独立于贵公司，并履行了职业道德方面的其他责任。我们相信，我们获取的审计证据是充分、适当的，为发表保留意见提供了基础。

## 三、管理层和治理层对财务报表的责任

贵公司管理层（以下简称管理层）负责按照《企业会计制度》的规定编制财务报表，使其实现公允反映，并设计、执行和维护必要的内部控制，以使财务报表不存在由于舞弊或错误导致的重大错报。

在编制财务报表时，管理层负责评估贵公司的持续经营能力，披露与持续经营相关的事项，并运用持续经营假设，除非管理层计划清算贵公司、终止运营或别无其他现实的选择。

治理层负责监督贵公司的财务报告过程。

## 四、注册会计师对财务报表审计的责任

我们的目标是对财务报表整体是否不存在由于舞弊或错误导致的重大错报获取合理保证，并出具包含审计意见的审计报告。合理保证是高水平的保证，但并不能保证按照审计准则执行的审计在某一重大错报存在时总能发现。错报可能由于舞弊或错误导致，如果合理预期错报单独或汇总起来可能影响财务报表使用者依据财务报表作出的经济决策，则通常认为错报是重大的。

在按照审计准则执行审计工作的过程中，我们运用职业判断，并

25

保持职业怀疑。同时，我们也执行以下工作：

（1）识别和评估由于舞弊或错误导致的财务报表重大错报风险，设计和实施审计程序以应对这些风险，并获取充分、适当的审计证据，作为发表审计意见的基础。由于舞弊可能涉及串通、伪造、故意遗漏、虚假陈述或凌驾于内部控制之上，未能发现由于舞弊导致的重大错报的风险高于未能发现由于错误导致的重大错报的风险。

（2）了解与审计相关的内部控制，以设计恰当的审计程序，但目的并非对内部控制的有效性发表意见。

（3）评价管理层选用会计政策的恰当性和作出会计估计及相关披露的合理性。

（4）对管理层使用持续经营假设的恰当性得出结论。同时，根据获取的审计证据，就可能导致对贵公司持续经营能力产生重大疑虑的事项或情况是否存在重大不确定性得出结论。如果我们得出结论认为存在重大不确定性，审计准则要求我们在审计报告中提请报表使用者注意财务报表中的相关披露；如果披露不充分，我们应当发表非无保留意见。我们的结论基于截至审计报告日可获得的信息。然而，未来的事项或情况可能导致贵公司不能持续经营。

（5）评价财务报表的总体列报、结构和内容（包括披露），并评价财务报表是否公允反映相关交易和事项。

我们与治理层就计划的审计范围、时间安排和重大审计发现等事项进行沟通，包括沟通我们在审计中识别出的值得关注的内部控制缺

26

陷。



苏州华明联合会计师事务所（普通合伙）　中国注册会计师：

中国·昆山市

中国注册会计师：

主任会计师（签名并盖章）

中国注册会计师：

项目负责人（签名并盖章）

二〇二〇年六月二日

# 资产负债表

编制单位：森科木业（昆山）有限公司　　　　　　2019年12月31日

会外年金01表　金额单位：元

| 项目 | 行次 | 期末余额 | 年初余额 | 项目 | 行次 | 期末余额 | 年初余额 |
|---|---|---|---|---|---|---|---|
| 流动资产： | 1 | — | — | 流动负债： | 66 | — | — |
| 货币资金 | 2 | 483,565.44 | 3,290,564.00 | 短期借款 | 67 | - | - |
| 结算备付金 | 3 | | | 向中央银行借款 | 68 | | |
| 拆出资金 | 4 | | | 吸收存款及同业存放 | 69 | | |
| 交易性金融资产 | 5 | - | - | 拆入资金 | 70 | | |
| 应收票据 | 6 | - | - | 交易性金融负债 | 71 | | |
| 应收账款 | 7 | 47,028,617.16 | 40,693,207.89 | 应付票据 | 72 | - | - |
| 预付款项 | 8 | 835,506.24 | 863,103.77 | 应付账款 | 73 | 3,869,079.00 | 6,184,447.14 |
| 应收保费 | 9 | | | 预收款项 | 74 | | |
| 应收分保账款 | 10 | | | 卖出回购金融资产款 | 75 | | |
| 应收分保合同准备金 | 11 | | | 应付手续费及佣金 | 76 | | |
| 应收利息 | 12 | - | - | 应付职工薪酬 | 77 | 178,103.61 | 989,853.89 |
| 应收股利 | 13 | - | - | 其中：应付工资 | 78 | 43,064.91 | 661,693.18 |
| 其他应收款 | 14 | 133,829.79 | 314,978.99 | 应付福利费 | 79 | 135,038.70 | 328,160.71 |
| 买入返售金融资产 | 15 | | | 其中：职工奖励及福利基金 | 80 | - | - |
| 存货 | 16 | 8,023,997.73 | 10,900,560.00 | 应交税费 | 81 | 116,676.25 | -273,005.86 |
| 其中：原材料 | 17 | 6,148,109.04 | 6,012,193.29 | 其中：应交税金 | 82 | 116,676.25 | -273,005.86 |
| 库存商品 | 18 | - | - | 应付利息 | 83 | - | - |
| 一年内到期的非流动资产 | 19 | - | - | 应付股利 | 84 | - | - |
| 其他流动资产 | 20 | 79,508.72 | 36,244.72 | 其他应付款 | 85 | 30,331,373.84 | 23,351,373.84 |
| 流动资产合计 | 21 | 56,585,025.08 | 56,098,659.37 | 应付分保账款 | 86 | | |
| 非流动资产： | 22 | — | — | 保险合同准备金 | 87 | | |
| 发放贷款及垫款 | 23 | | | 代理买卖证券款 | 88 | | |
| 可供出售金融资产 | 24 | | | 代理承销证券款 | 89 | | |
| 持有至到期投资 | 25 | - | - | 一年内到期的非流动负债 | 90 | - | - |
| 长期应收款 | 26 | | | 其他流动负债 | 91 | - | 479,112.29 |
| 长期股权投资 | 27 | - | - | 流动负债合计 | 92 | 34,495,232.70 | 30,731,781.30 |
| 投资性房地产 | 28 | | | 非流动负债： | 93 | — | — |
| 固定资产原价 | 29 | 68,537,558.97 | 68,537,558.97 | 长期借款 | 94 | - | - |
| 减：累计折旧 | 30 | 41,080,473.27 | 38,077,506.28 | 应付债券 | 95 | - | - |
| 固定资产净值 | 31 | 27,457,085.70 | 30,460,052.69 | 长期应付款 | 96 | - | - |
| 减：固定资产减值准备 | 32 | - | - | 专项应付款 | 97 | - | - |
| 固定资产净额 | 33 | 27,457,085.70 | 30,460,052.69 | 预计负债 | 98 | | |
| 在建工程 | 34 | - | - | 递延所得税负债 | 99 | - | - |
| 工程物资 | 35 | - | - | 其他非流动负债 | 100 | - | - |
| 固定资产清理 | 36 | - | - | 其中：特准储备基金 | 101 | | |
| 生产性生物资产 | 37 | | | 非流动负债合计 | 102 | - | - |
| 油气资产 | 38 | | | 负债合计 | 103 | 34,495,232.70 | 30,731,781.30 |
| 无形资产 | 39 | 2,885,270.02 | 2,967,492.78 | 所有者权益（或股东权益）： | 104 | — | — |
| 开发支出 | 40 | | | 实收资本（股本） | 105 | 82,377,944.48 | 82,377,944.48 |
| 商誉 | 41 | | | 国家资本 | 106 | | |
| 长期待摊费用 | 42 | 6,830,746.03 | 6,310,960.53 | 集体资本 | 107 | | |
| 递延所得税资产 | 43 | - | - | 法人资本 | 108 | | |
| 其他非流动资产 | 44 | - | - | 其中：国有法人资本 | 109 | | |
| 其中：特准储备物资 | 45 | | | 集体法人资本 | 110 | | |
| 非流动资产合计 | 46 | 37,173,101.75 | 39,738,506.00 | 个人资本 | 111 | | |
| | 47 | | | 外商资本 | 112 | 39,541,413.35 | 39,541,413.35 |
| | 48 | | | 减：已归还投资 | 113 | - | - |
| | 49 | | | 实收资本（或股本）净额 | 114 | 82,377,944.48 | 82,377,944.48 |
| | 50 | | | 资本公积 | 115 | 30.65 | 30.65 |
| | 51 | | | 减：库存股 | 116 | | |
| | 52 | | | 专项储备 | 117 | | |
| | 53 | | | 盈余公积 | 118 | - | - |
| | 54 | | | 其中：法定公积金 | 119 | - | - |
| | 55 | | | 任意公积金 | 120 | - | - |
| | 56 | | | 储备基金 | 121 | - | - |
| | 57 | | | 企业发展基金 | 122 | - | - |
| | 58 | | | 利润归还投资 | 123 | - | - |
| | 59 | | | 一般风险准备 | 124 | - | - |
| | 60 | | | 未分配利润 | 125 | -23,115,081.00 | -17,272,591.06 |
| | 61 | | | 外币报表折算差额 | 126 | - | - |
| | 62 | | | 归属于母公司所有者权益合计 | 127 | 59,262,894.13 | 65,105,384.07 |
| | 63 | | | 少数股东权益 | 128 | | |
| | 64 | | | 所有者权益合计 | 129 | 59,262,894.13 | 65,105,384.07 |
| 资产总计 | 65 | 93,758,126.83 | 95,837,165.37 | 负债及所有者权益总计 | 130 | 93,758,126.83 | 95,837,165.37 |

# 利润表

编制单位：森科木业（昆山）有限公司　　　　　　2019年度　　　　　　　　　　　　　　　　　会外年企02表　　金额单位：元

| 项目 | 行次 | 本年金额 | 上年金额 | 项目 | 行次 | 本年金额 | 上年金额 |
|---|---|---|---|---|---|---|---|
| 一、营业总收入 | 1 | 27,976,284.76 | 56,322,334.13 | 其他 | 29 | | |
| 其中：营业收入 | 2 | 27,976,284.76 | 56,322,334.13 | 加：公允价值变动收益（损失以"-"号填列） | 30 | | |
| 其中：主营业务收入 | 3 | 27,976,284.76 | 56,322,334.13 | 投资收益（损失以"-"号填列） | 31 | - | - |
| 其他业务收入 | 4 | - | - | 其中：对联营企业和合营企业的投资收益 | 32 | - | - |
| 利息收入 | 5 | | | 汇兑收益（损失以"-"号填列） | 33 | | |
| 已赚保费 | 6 | | | 三、营业利润（亏损以"-"号填列） | 34 | -5,784,335.29 | 2,430,675.38 |
| 手续费及佣金收入 | 7 | | | 加：营业外收入 | 35 | 450.97 | 21,757.37 |
| 二、营业总成本 | 8 | 33,760,620.05 | 53,891,658.75 | 其中：非流动资产处置利得 | 36 | | |
| 其中：营业成本 | 9 | 26,251,334.06 | 50,484,804.32 | 非货币性资产交换利得 | 37 | | |
| 其中：主营业务成本 | 10 | 26,251,334.06 | 50,484,804.32 | 政府补助 | 38 | | |
| 其他业务成本 | 11 | - | - | 债务重组利得 | 39 | | |
| 利息支出 | 12 | | | 减：营业外支出 | 40 | - | 53,000.00 |
| 手续费及佣金支出 | 13 | | | 其中：非流动资产处置损失 | 41 | - | - |
| 退保金 | 14 | | | 非货币性资产交换损失 | 42 | | |
| 赔付支出净额 | 15 | | | 债务重组损失 | 43 | | |
| 提取保险合同准备金净额 | 16 | | | 四、利润总额（亏损总额以"-"号填列） | 44 | -5,783,884.32 | 2,399,432.75 |
| 保单红利支出 | 17 | | | 减：所得税费用 | 45 | - | - |
| 分保费用 | 18 | | | 五、净利润（净亏损以"-"号填列） | 46 | -5,783,884.32 | 2,399,432.75 |
| 税金及附加 | 19 | 369,984.78 | 257,546.33 | 归属于母公司所有者的净利润 | 47 | -5,783,884.32 | 2,399,432.75 |
| 销售费用 | 20 | 944,611.49 | 1,524,715.17 | 少数股东损益 | 48 | - | - |
| 管理费用 | 21 | 7,048,317.71 | 3,638,802.91 | 六、每股收益： | 49 | | |
| 其中：业务招待费 | 22 | 1,000.00 | - | 基本每股收益 | 50 | | |
| 研究与开发费 | 23 | - | - | 稀释每股收益 | 51 | | |
| 财务费用 | 24 | -853,627.99 | -2,014,209.98 | 七、其他综合收益 | 52 | -58,605.62 | 29,978.33 |
| 其中：利息支出 | 25 | - | - | 八、综合收益总额 | 53 | -5,842,489.94 | 2,429,411.08 |
| 利息收入 | 26 | 2,521.82 | 2,832.11 | 归属于母公司所有者的综合收益总额 | 54 | -5,842,489.94 | 2,429,411.08 |
| 汇兑净损失（净收益以"-"号填列） | 27 | -856,009.00 | -2,022,360.80 | 归属于少数股东的综合收益总额 | 55 | | |
| 资产减值损失 | 28 | - | - | | | | |

28

# 现金流量表

会外会03表

编制单位：森科木业（昆山）有限公司　　　　　　　2019年度　　　　　　　金额单位：元

| 项　目 | 行次 | 本年金额 | 上年金额 | 项　目 | 行次 | 本年金额 | 上年金额 |
|---|---|---|---|---|---|---|---|
| 一、经营活动产生的现金流量： | 1 | — | — | 处置固定资产、无形资产和其他长期资产所收回的现金净额 | 30 | | — |
| 销售商品、提供劳务收到的现金 | 2 | 21,057,332.19 | 52,819,003.99 | 处置子公司及其他营业单位收回的现金净额 | 31 | | |
| 客户存款和同业存放款项净增加额 | 3 | | | 收到其他与投资活动有关的现金 | 32 | | — |
| 向中央银行借款净增加额 | 4 | | | 投资活动现金流入小计 | 33 | | — |
| 向其他金融机构拆入资金净增加额 | 5 | | — | 购建固定资产、无形资产和其他长期资产所支付的现金 | 34 | 1,600,931.61 | 5,207,289.68 |
| 收到原保险合同保费取得的现金 | 6 | | — | 投资支付的现金 | 35 | | — |
| 收到再保险业务现金净额 | 7 | | — | 质押贷款净增加额 | 36 | | |
| 保户储金及投资款净增加额 | 8 | | | 取得子公司及其他营业单位支付的现金净额 | 37 | | |
| 处置交易性金融资产净增加额 | 9 | | — | 支付其他与投资活动有关的现金 | 38 | | — |
| 收取利息、手续费及佣金的现金 | 10 | | — | 投资活动现金流出小计 | 39 | 1,600,931.61 | 5,207,289.68 |
| 拆入资金净增加额 | 11 | | — | 投资活动产生的现金流量净额 | 40 | -1,600,931.61 | -5,207,289.68 |
| 回购业务资金净增加额 | 12 | | — | 三、筹资活动产生的现金流量： | 41 | — | — |
| 收到的税费返还 | 13 | 3,328,119.87 | 5,879,634.90 | 吸收投资收到的现金 | 42 | | — |
| 收到其他与经营活动有关的现金 | 14 | 6,982,972.79 | 70,359.98 | 其中：子公司吸收少数股东投资收到的现金 | 43 | | |
| 经营活动现金流入小计 | 15 | 31,368,424.85 | 58,768,998.87 | 取得借款所收到的现金 | 44 | | — |
| 购买商品、接受劳务支付的现金 | 16 | 19,673,196.54 | 41,861,408.52 | 发行债券收到的现金 | 45 | | |
| 客户贷款及垫款净增加额 | 17 | | — | 收到其他与筹资活动有关的现金 | 46 | | |
| 存放中央银行和同业款项净增加额 | 18 | | — | 筹资活动现金流入小计 | 47 | | — |
| 支付原保险合同赔付款项的现金 | 19 | | — | 偿还债务所支付的现金 | 48 | | |
| 支付利息、手续费及佣金的现金 | 20 | | — | 分配股利、利润或偿付利息所支付的现金 | 49 | | — |
| 支付保单红利的现金 | 21 | | — | 其中：子公司支付给少数股东的股利、利润 | 50 | | |
| 支付给职工以及为职工支付的现金 | 22 | 9,948,740.15 | 8,076,282.17 | 支付其他与筹资活动有关的现金 | 51 | | — |
| 支付的各项税费 | 23 | 1,422,645.03 | 906,410.05 | 筹资活动现金流出小计 | 52 | | — |
| 支付其他与经营活动有关的现金 | 24 | 1,529,910.08 | 2,682,252.26 | 筹资活动产生的现金流量净额 | 53 | | — |
| 经营活动现金流出小计 | 25 | 32,574,491.80 | 53,526,353.00 | 四、汇率变动对现金及现金等价物的影响 | 54 | | |
| 经营活动产生的现金流量净额 | 26 | -1,206,066.95 | 5,242,645.87 | 五、现金及现金等价物净增加额 | 55 | -2,806,998.56 | 35,356.19 |
| 二、投资活动产生的现金流量： | 27 | | | 加：期初现金及现金等价物余额 | 56 | 3,290,564.00 | 3,255,207.81 |
| 收回投资收到的现金 | 28 | — | — | 六、期末现金及现金等价物余额 | 57 | 483,565.44 | 3,290,564.00 |
| 取得投资收益收到的现金 | 29 | — | | | | | |

29

# 所有者权益变动表（一）

2019年度

编制单位：森科木业（昆山）有限公司

会外年金04表

金额单位：元

| 项　目 | 行次 | 本年金额 归属于母公司所有者权益 | | | | | | | | | 少数股东权益 | 所有者权益合计 |
| | | 实收资本（或股本） | 资本公积 | 减：库存股 | 专项储备 | 盈余公积 | 一般风险准备 | 未分配利润 | 其他 | 小计 | | |
| 栏次 | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 一、上年年末余额 | 1 | 82,377,944.48 | 30.65 | | | | | -17,272,591.06 | | 65,105,384.07 | | 65,105,384.07 |
| 加：会计政策变更 | 2 | | | | | | | | | | | |
| 前期差错更正 | 3 | | | | | | | | | | | |
| 二、本年年初余额 | 4 | 82,377,944.48 | 30.65 | | | | | -17,272,591.06 | | 65,105,384.07 | | 65,105,384.07 |
| 三、本年增减变动金额（减少以"-"号填列） | 5 | | | | | | | -5,842,489.94 | | -5,842,489.94 | | -5,842,489.94 |
| （一）净利润 | 6 | | | | | | | -5,783,884.32 | | -5,783,884.32 | | -5,783,884.32 |
| （二）其他综合收益 | 7 | | | | | | | -58,605.62 | | -58,605.62 | | -58,605.62 |
| 综合收益小计 | 8 | | | | | | | -5,842,489.94 | | -5,842,489.94 | | -5,842,489.94 |
| （三）所有者投入和减少资本 | 9 | | | | | | | | | | | |
| 1.所有者投入资本 | 10 | | | | | | | | | | | |
| 2.股份支付计入所有者权益的金额 | 11 | | | | | | | | | | | |
| 3.其他 | 12 | | | | | | | | | | | |
| （四）专项储备提取和使用 | 13 | | | | | | | | | | | |
| 1.提取专项储备 | 14 | | | | | | | | | | | |
| 2.使用专项储备 | 15 | | | | | | | | | | | |
| （五）利润分配 | 16 | | | | | | | | | | | |
| 1.提取盈余公积 | 17 | | | | | | | | | | | |
| 其中：法定公积金 | 18 | | | | | | | | | | | |
| 任意公积金 | 19 | | | | | | | | | | | |
| 储备基金 | 20 | | | | | | | | | | | |
| 企业发展基金 | 21 | | | | | | | | | | | |
| 利润归还投资 | 22 | | | | | | | | | | | |
| 2.提取一般风险准备 | 23 | | | | | | | | | | | |
| 3.对所有者（或股东）的分配 | 24 | | | | | | | | | | | |
| 4.其他 | 25 | | | | | | | | | | | |
| （六）所有者权益内部结转 | 26 | | | | | | | | | | | |
| 1.资本公积转增资本（或股本） | 27 | | | | | | | | | | | |
| 2.盈余公积转增资本（或股本） | 28 | | | | | | | | | | | |
| 3.盈余公积弥补亏损 | 29 | | | | | | | | | | | |
| 4.其他 | 30 | | | | | | | | | | | |
| 四、本年年末余额 | 31 | 82,377,944.48 | 30.65 | | | | | -23,115,081.00 | | 59,262,894.13 | | 59,262,894.13 |

# 所有者权益变动表(二)

2019年度

会外年金04表

编制单位: 森科木业(昆山)有限公司

金额单位: 元

| 项目 | 行次 | 上 年 金 额 | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 归属于母公司所有者权益 | | | | | | | | | 少数股东权益 | 所有者权益合计 |
| | | 实收资本(或股本) | 资本公积 | 减:库存股 | 专项储备 | 盈余公积 | 一般风险准备 | 未分配利润 | 其他 | 小计 | | |
| 栏次 | | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 一、上年年末余额 | 1 | 82,377,944.48 | 30.65 | | | | | -19,702,002.14 | | 62,675,972.99 | | 62,675,972.99 |
| 加: 会计政策变更 | 2 | | | | | | | | | | | |
| 前期差错更正 | 3 | | | | | | | | | | | |
| 二、本年初余额 | 4 | 82,377,944.48 | 30.65 | | | | | -19,702,002.14 | | 62,675,972.99 | | 62,675,972.99 |
| 三、本年增减变动金额(减少以"-"号填列) | 5 | | | | | | | 2,429,411.08 | | 2,429,411.08 | | 2,429,411.08 |
| (一)净利润 | 6 | | | | | | | 2,399,432.75 | | 2,399,432.75 | | 2,399,432.75 |
| (二)其他综合收益 | 7 | | | | | | | 29,978.33 | | 29,978.33 | | 29,978.33 |
| 综合收益小计 | 8 | | | | | | | 2,429,411.08 | | 2,429,411.08 | | 2,429,411.08 |
| (三)所有者投入和减少资本 | 9 | | | | | | | | | | | |
| 1.所有者投入资本 | 10 | | | | | | | | | | | |
| 2.股份支付计入所有者权益的金额 | 11 | | | | | | | | | | | |
| 3.其他 | 12 | | | | | | | | | | | |
| (四)专项储备提取和使用 | 13 | | | | | | | | | | | |
| 1.提取专项储备 | 14 | | | | | | | | | | | |
| 2.使用专项储备 | 15 | | | | | | | | | | | |
| (五)利润分配 | 16 | | | | | | | | | | | |
| 1.提取盈余公积 | 17 | | | | | | | | | | | |
| 其中: 法定公积金 | 18 | | | | | | | | | | | |
| 任意公积金 | 19 | | | | | | | | | | | |
| 储备基金 | 20 | | | | | | | | | | | |
| 企业发展基金 | 21 | | | | | | | | | | | |
| 利润归还投资 | 22 | | | | | | | | | | | |
| 2.提取一般风险准备 | 23 | | | | | | | | | | | |
| 3.对所有者(或股东)的分配 | 24 | | | | | | | | | | | |
| 4.其他 | 25 | | | | | | | | | | | |
| (六)所有者权益内部结转 | 26 | | | | | | | | | | | |
| 1.资本公积转增资本(或股本) | 27 | | | | | | | | | | | |
| 2.盈余公积转增资本(或股本) | 28 | | | | | | | | | | | |
| 3.盈余公积弥补亏损 | 29 | | | | | | | | | | | |
| 4.其他 | 30 | | | | | | | | | | | |
| 四、本年年末余额 | 31 | 82,377,944.48 | 30.65 | | | | | -17,272,591.06 | | 65,105,384.07 | | 65,105,384.07 |

森科木业（昆山)有限公司 2019 年度财务报表附注

32

森科木业（昆山)有限公司
财务报表附注
二〇一九年度
（货币单位：除特别注明外均为人民币元）

## 一、公司概况

森科木业（昆山）有限公司（以下简称"公司"），系由 Sunco, Inc. 投资兴办的外商独资企业。2003 年经商外资苏府资字[2003]45674 号批准证书批准成立，并于 2003 年 4 月 8 日领取了注册号为 320583400005235 的中华人民共和国企业法人营业执照。公司原投资总额 1750 万美元，注册资本 750 万美元。

2008 年 2 月 15 日，经昆山市对外经济贸易合作局昆经贸资[2008]字 96 号"关于同意'森科木业（昆山）有限公司'增资及修改章程的批复"批准，公司投资总额由 1750 万美元增加到 1964 万美元，注册资本由 750 万美元增加到 900 万美元，其中 Sunco, Inc. 出资 900 万美元，占注册资本的 100%。

2010 年 6 月 1 日，经昆山市商务局昆商资[2010]字 277 号"关于同意'森科木业（昆山）有限公司'增资及修改公司章程的批复"批准，公司投资总额仍为 1964 万美元，注册资本由 900 万美元增加到 1000 万美元，其中 Sunco, Inc. 出资 1000 万美元，占注册资本的 100%。

2011 年 6 月 13 日，经昆山市商务局昆商资[2011]字 407 号"关于同意'森科木业（昆山）有限公司'增资、变更出资方式及修改公司章程的批复"批准，公司投资总额由 1964 万美元增加到 2078 万美元，注册资本由 1000 万美元增加到 1080 万美元，其中 Sunco, Inc. 出资 1080 万美元，占注册资本的 100%，以 1010.738925 万元现汇与 69.261075 万美元设备作为出资。目前注册资本已全部到位，并经中国注册会计师验证确认。

2015 年 4 月 20 日，经昆山市商务局昆商资[2015]226 号"关于同意森科木业（昆山）有限公司转股、变更公司性质及制订公司新合同、章程的批复"批准，公司原投资方美国 Sunco, Inc. 将其占公司 52% 的股权（计 561.6 万美元）转让给江苏奇意投资有限公司。转股后，美国 Sunco, Inc. 占公司 48% 的股权（计 518.4 万美元）；江苏奇意投资有限公司占公司 52% 的股权（计 561.6 万美元）。公司性质由外商独资企业变更为中外合资企业。法定代表人由孙琳达变更为吴国庆。

2015 年 12 月 28 日，公司换领了统一社会信用代码为 9132058374733835XW 的营业执照。

2018 年 02 月 11 日，公司法定代表人由吴国庆变更为肖瑞华。

本财务报表附注为财务报表的组成部分                                                              1

森科木业（昆山)有限公司 2019 年度财务报表附注

公司注册地址：江苏省昆山市锦溪镇锦商路 327 号。经营范围：生产木质建筑装潢用制品，木质家具及配件，销售自产产品。自有厂房出租。（依法须经批准的项目，经相关部门批准后方可开展经营活动）

二、公司主要会计政策和会计估计

1、会计制度：执行《企业会计制度》。

2、会计年度：自公历 1 月 1 日至 12 月 31 日止。

3、记账本位币：采用人民币为记账本位币。

4、记账基础及计价原则

以权责发生制为记账基础。企业的各项资产在取得时按照实际成本计量，其后，各项资产如果发生减值，则计提相应的减值准备。

5、收益性支出与资本性支出的界限

凡支出的效益仅及于本年度(或一个营业周期)的，作为收益性支出；凡支出的效益及于几个会计年度(或几个营业周期)的，作为资本性支出。

6、外币业务核算方法

对发生的外币经济业务，采用当月 1 日外币基准价折合人民币记账。对各种外币账户的外币期末余额，按期末的外币基准价进行调整。

7、现金等价物的确定标准

本公司持有的期限短、流动性强、易于转换为已知金额现金，价值变动风险很小的投资，确认为现金等价物。

8、短期投资核算方法

短期投资，是指能够随时变现并且持有时间不准备超过 1 年(含 1 年)的投资，包括股票、债券、基金等。短期投资按照以下原则核算：

短期投资在取得时按照投资成本计量。短期投资取得时的投资成本按以下方法确定：

(1) 以现金购入的短期投资，按实际支付的全部价款，包括税金、手续费等相关费用。实际支付的价款中包含的已宣告但尚未领取的现金股利、或已到付息期但尚未领取的债券利息，单独核算，不构成短期投资成本。

已存入证券公司但尚未进行短期投资的现金，先作为其他货币资金处理，待实际投资时，按实际支付的价款或实际支付的价款减去已宣告但尚未领取的现金股利或已到付息期但尚未领取的债券利息，作为短期投资的成本。

34

森科木业（昆山)有限公司 2019 年度财务报表附注

(2) 投资者投入的短期投资，按投资各方确认的价值，作为短期投资成本。

(3) 企业接受的债务人以非现金资产抵偿债务方式取得的短期投资，或以应收债权换入的短期投资，按应收债权的账面价值加上应支付的相关税费，作为短期投资成本。如果所接受的短期投资中含有已宣告但尚未领取的现金股利，或已到付息期但尚未领取的债券利息，按应收债权的账面价值减去应收股利或应收利息，加上应支付的相关税费后的余额，作为短期投资成本。

企业在期末时对短期投资按成本与市价孰低计量，并按单项投资对市价低于成本的差额，计提短期投资跌价准备。

处置短期投资时，应将短期投资的账面价值与实际取得价款的差额，作为当期投资损益。

企业的委托贷款，应视同短期投资进行核算。但是，委托贷款应按期计提利息，计入损益；企业按期计提的利息到付息期不能收回的，停止计提利息，并冲回原已计提的利息。期末时，企业的委托贷款应按资产减值的要求，计提相应的减值准备。

本公司本年未发生引起短期投资减值的事项，故未计提短期投资减值准备。

9、坏账核算方法

本公司对坏账损失采用备抵法核算，期末对确信可以完全收回的应收款项不计提坏账准备，对有证据表明已难以收回的应收款项计提或全额计提坏账准备。

坏账的确认标准为：

(1) 因债务人破产或者死亡，以其破产财产或者遗产清偿后，仍然无法收回的应收款项；

(2) 因债务人逾期未履行其清偿义务，且具有明显特征表明无法收回的应收款项。

对确实无法收回的应收款项，经批准后作为坏账转销。

10、存货核算方法

存货分类为原材料、包装物、低值易耗品、库存商品、在产品、自制半成品等。

期末本公司对存货按成本与可变现净值孰低法计价，按单个存货项目的可变现净值低于成本的差额，分别计提存货跌价准备，并计入当期损益。

存货取得时均按实际成本核算。

存货发出时原材料按加权平均法、库存商品按加权平均法计价。

低值易耗品采用领用时一次性摊销法核算。

存货采用永续盘存制。

森科木业（昆山）有限公司 2019 年度财务报表附注

35

11、 长期投资核算方法

长期投资，是指除短期投资以外的投资，包括持有时间准备超过 1 年(不含 1 年)的各种股权性质的投资、不能变现或不准备随时变现的债券、长期债权投资和其他长期投资。

企业的长期股权投资，根据不同情况，分别采用成本法或权益法核算。

企业对被投资单位无控制、无共同控制且无重大影响的，长期股权投资采用成本法核算；企业对被投资单位具有控制、共同控制或重大影响的，长期股权投资采用权益法核算。通常情况下，企业对其他单位的投资占该单位有表决权资本总额 20%或 20%以上，或虽投资不足 20%但具有重大影响的，采用权益法核算。企业对其他单位的投资占该单位有表决权资本总额 20%以下，或对其他单位的投资虽占该单位有表决权资本总额 20%或 20%以上，但不具有重大影响的，采用成本法核算。

采用成本法核算时，除追加投资、将应分得的现金股利或利润转为投资或收回投资外，长期股权投资的账面价值一般保持不变。被投资单位宣告分派的利润或现金股利，作为当期投资收益。企业确认的投资收益，仅限于所获得的被投资单位在接受投资后产生的累积净利润的分配额，所获得的被投资单位宣告分派的利润或现金股利超过上述数额的部分，作为初始投资成本的收回，冲减投资的账面价值。

采用权益法核算时，投资最初以初始投资成本计量，投资企业的初始投资成本与应享有被投资单位所有者权益份额之间的差额，作为股权投资差额处理，按一定期限平均摊销，计入损益。

企业按被投资单位净损益计算调整投资的账面价值和确认投资损益时，以取得被投资单位股权后发生的净损益为基础。

企业因追加投资等原因对长期股权投资的核算从成本法改为权益法，自实际取得对被投资单位控制、共同控制或对被投资单位实施重大影响时，按股权投资的账面价值作为初始投资成本，

企业因减少投资等原因对被投资单位不再具有控制、共同控制或重大影响时，中止采用权益法核算，改按成本法核算，并按投资的账面价值作为新的投资成本。其后，被投资单位宣告分派利润或现金胜利时，属于已记入投资账面价值的部分，作为新的投资成本的收回，冲减投资的账面价值。

处置股权投资时，应将投资的账面价值与实际取得价款的差额，作为当期投资损益。

长期债权投资在取得时，按取得时的实际成本作为初始投资成本。

长期债权投资按照票面价值与票面利率按期计算确认利息收入。

36

森科木业（昆山)有限公司 2019 年度财务报表附注

企业的长期投资在期末时按照其账面价值与可收回金额孰低计量，期末时，由于市价持续下跌或被投资单位经营状况恶化等原因，导致长期投资可收回金额低于账面价值，按单项投资可收回金额低于长期投资账面价值的差额提取长期投资减值准备。

本公司本年未发生被投资单位可收回金额低于长期股权投资账面价值的事项，故未计提长期投资减值准备。

12、固定资产计价和折旧方法

固定资产按实际成本计价。

固定资产取得时的成本根据具体情况分别确定：

(1) 购置的不需要经过建造过程即可使用的固定资产，技实际支付的买价、包装费、运输费、安装成本、交纳的有关税金等，作为入账价值。

(2) 自行建造的固定资产，按建造该项资产达到预定可使用状态前所发生的全部支出，作为入账价值。

(3) 投资者投入的固定资产，按投资各方确认的价值，作为入账价值。

(4) 融资租入的固定资产，按租赁开始日租赁资产的原账面价值与最低租赁付款额的现值两者中较低者，作为入账价值。如果融资租赁资产占企业资产总额比例等于或低于 30%的，在租赁开始日，企业也可按最低租赁付款额，作为固定资产的入账价值。

期末本公司对固定资产按成本与可收回金额孰低计价，按单个固定资产的可收回金额低于成本的差额，分别计提固定资产减值准备，并计入当期损益。

固定资产折旧采用平均年限法计算，并按固定资产类别的预计经济使用年限和预计净残值率（10%），确定其折旧率如下：

| 类别 | 折旧年限 | 年折旧率 |
|---|---|---|
| 房屋及建筑物 | 20 | 4.50% |
| 机器设备 | 10 | 9.00% |
| 工具器具 | 5 | 18.00% |
| 办公设备 | 3 | 30.00% |
| 运输设备 | 4 | 22.50% |
| 电子及其他设备 | 5 | 18.00% |

本公司本年未发生引起固定资产减值的事项，故未计提固定资产减值准备。

13、在建工程核算方法

在建工程按照实际发生的支出确定其工程成本，并单独核算。

在建工程按实际发生的成本计价，期末按账面价值与可收回金额孰低计价，对可收回金额低于账面价值的差额，分别计提在建工程减值准备。每年末，对在建工程进行全面检查，

如果有证据表明在建工程存在下列一项或若干项情况的，按单项资产可收回金额低于在建工程账面价值的差额，提取在建工程减值准备，并计入当期损益：

(1) 长期停建并且预计未来 3 年内不会重新开工的在建工程；

(2) 项目无论在性能上，还是在技术上已经落后，并且给企业带来的经济利益具有很大的不确定性；

(3) 其他足以证明在建工程已经发生减值的情形。

本公司本年未发生引起在建工程减值的事项，故未计提在建工程减值准备。

14、借款费用核算方法

(1) 借款费用确认原则

因购建固定资产借入专门借款而发生的利息、折价或溢价的摊销和汇兑差额，在符合资本化期间和资本化金额的条件下，予以资本化，计入该项资产的成本；其他借款利息、折价或溢价的摊销和汇兑差额，于发生当期确认为费用。因安排专门借款而发生的辅助费用，属于在所购建固定资产达到预定可使用状态之前发生的，在发生时予以资本化；其他辅助费用于发生当期确认为费用。若辅助费用的金额较小，于发生当期确认为费用。

(2) 借款费用资本化期间

a) 当以下三个条件同时具备时，因专门借款而发生的利息、折价或溢价的摊销和汇兑差额开始资本化：资产支出已经发生；借款费用已经发生；为使资产达到预定可使用状态所必要的购建活动已经开始。

b) 若固定资产的购建活动发生非正常中断，并且中断时间连续超过 3 个月，暂停借款费用的资本化，将其确认为当期费用，直至资产的购建活动重新开始。

c) 当所购建的固定资产达到预定可使用状态时，停止其借款费用的资本化。

(3) 借款费用资本化金额

在应予资本化的每一会计期间，利息的资本化金额为至当期末止购建固定资产累计支出加权平均数与资本化率的乘积。

15、无形资产计价和摊销方法

无形资产，是指企业为生产商品或者提供劳务、出租给他人、或为管理目的而持有的、没有实物形态的非货币长期资产。无形资产分为可辨认无形资产和不可辨认无形资产。可辨认无形资产包括专利权、非专利技术、商标权、著作权、土地使用权等；不可辨认无形资产是指商誉。企业自创的商誉，以及未满足无形资产确认条件的其他项目，不能作为无形资产。

38

森科木业（昆山）有限公司 2019 年度财务报表附注

无形资产按取得时的实际成本计价。自取得当月起在预计使用年限内分期平均摊销，计入损益；期末按账面价值与可收回金额孰低计价，对可收回金额低于账面价值的差额，分别计提无形资产减值准备。

自行开发无形资产发生的支出，同时满足下列条件的，才能确认为无形资产：

（1）完成该无形资产以使其能够使用或出售在技术上具有可行性；

（2）具有完成该无形资产并使用或出售的意图；

（3）能够证明运用该无形资产生产的产品存在市场或无形资产自身存在市场，无形资产将在内部使用的，证明其有用性；

（4）有足够的技术、财务资源和其他资源支持，以完成该无形资产的开发，并有能力使用或出售该无形资产；

（5）归属于该无形资产开发阶段的支出能够可靠地计量。

年末，检查各项无形资产，如果预计能给企业带来未来经济利益的，对于预计可收回金额低于其账面价值的，则按单项无形资产计提减值准备计入当期损益；如果预计某项无形资产已经不能给企业带来未来经济利益的，将该项无形资产的账面价值全部转入当期管理费用。

本公司本年未发生引起无形资产减值的事项，故未计提无形资产减值准备。

16、长期待摊费用摊销方法

长期待摊费用，是指企业已经支出，但摊销期限在 1 年以上（不含 1 年）的各项费用，包括固定资产大修理支出、租入固定资产的改良支出等。由本期负担的借款利息、租金等，不得作为长期待摊费用处理。

长期待摊费用采用单独核算，在费用项目的受益期限内分期平均摊销。大修理费用采用待摊方式的，将发生的大修理费用在下一次大修理前平均摊销；租入固定资产改良支出在租赁期限与租赁资产尚可使用年限两者孰短的期限内平均摊销；其他长期待摊费用在受益期内平均摊销。

如果长期待摊的费用项目不能使以后会计期间受益的，将尚未摊销的该项目的摊余价值全部转入当期损益。

17、收入确认原则

（1）商品销售

公司已将商品所有权上的重要风险和报酬转移给买方，公司不再对该商品实施继续管理权和实际控制权，相关的收入已经收到或取得了收款的证据，并且与销售该商品有关的成本

森科木业（昆山)有限公司 2019 年度财务报表附注

能够可靠地计量时确认营业收入的实现。

企业已经确认收入的售出商品发生销售退回的，冲减退回当期的收入；年度资产负债表日及以前售出的商品，在资产负债表日至财务会计报告批准报出日之间发生退回的，作为资产负债表日后调整事项处理，调整资产负债表日编制的会计报表有关收入、费用、资产、负债、所有者权益等项目的数字。

（2）提供劳务

在同一会计年度内开始并完成的劳务，在完成劳务时确认收入。如劳务的开始和完成分属不同的会计年度，在提供劳务交易的结果能够可靠估计的情况下，企业在资产负债表日按完工百分比法确认相关的劳务收入。完工百分比法，是指按照劳务的完成程度确认收入和费用的方法。

当以下条件均能满足时，劳务交易的结果能够可靠地估计：

（a）劳务总收入和总成本能够可靠地计量；

（b）与交易相关的经济利益能够流入企业；

（c）劳务的完成程度能够可靠地确定。

劳务的完成程度应按下列方法确定：

（a）已完工作的测量；

（b）已经提供的劳务占应提供劳务总量的比例；

（c）已经发生的成本占估计总成本的比例。

在提供劳务交易的结果不能可靠估计的情况下，在资产负债表日对收入分别以下情况予以确认和计量：

（a）如果已经发生的劳务成本预计能够得到补偿，应按已经发生的劳务成本金额确认收入，并按相同金额结转成本；

（b）如果已经发生的劳务成本预计不能全部得到补偿，应按能够得到补偿的劳务成本金额确认收入，并按已经发生的劳务成本，作为当期费用，确认的金额小于已经发生的劳务成本的差额，作为当期损失；

（c）如果已经发生的劳务成本全部不能得到补偿，应按已经发生的劳务成本作为当期费用，不确认收入。

（3）让渡资产使用权

让渡无形资产(如商标权、专利权、专营权、软件、版权等)以及其他非现金资产的使用

森科木业（昆山)有限公司 2019 年度财务报表附注

权而形成的使用费收入，按有关合同或协议规定的收费时间和方法计算确定。上述收入的确定并应同时满足：与交易相关的经济利益能够流入公司，收入的金额能够可靠地计量。

18、所得税的会计处理方法：采用应付税款法。

### 三、税项

| 税种 | 计税依据 | 税率 |
|---|---|---|
| 增值税 | 销售货物提供劳务产生的增值额 | 16%/13% |
| 企业所得税 | 应纳税所得额 | 25% |
| 城市维护建设税 | 实际缴纳的流转税额 | 5% |
| 教育费附加 | 实际缴纳的流转税额 | 3% |
| 地方教育附加费 | 实际缴纳的流转税额 | 2% |
| 个人所得税 | 员工个人所得税由公司代扣代缴 | |
| 其他税项 | 按国家的有关具体规定计缴 | |

### 四、会计政策、会计估计变更说明

无。

### 五、会计报表主要项目注释

(一)资产负债表主要项目注释

1、货币资金

| 项目 | 期初余额 | 期末余额 |
|---|---|---|
| 库存现金 | 5,308.69 | 2,678.09 |
| 银行存款 | 3,285,255.31 | 480,887.35 |
| 合 计 | 3,290,564.00 | 483,565.44 |

2、应收账款

| 账龄 | 期初数 | | 期末数 | |
|---|---|---|---|---|
| | 账面余额 | 比例（%） | 账面余额 | 比例（%） |
| 1年以内 | 40,421,475.13 | 99.33% | 29,985,937.80 | 63.76% |
| 1至2年 | 271,732.76 | 0.67% | 16,782,219.00 | 35.69% |
| 2至3年 | 0.00 | 0.00% | 260,460.36 | 0.55% |
| 合 计 | 40,693,207.89 | 100.00% | 47,028,617.16 | 100.00% |

注：期末无应计提坏账准备的情况。

3、其他应收款

| 账龄 | 期末数 | | | |
|---|---|---|---|---|
| | 账面余额 | 比例（%） | 坏账准备 | 账面价值 |
| 1年以内 | 9,829.79 | 0.23% | 0.00 | 9,829.79 |
| 1至2年 | 100,000.00 | 2.31% | 0.00 | 100,000.00 |
| 2至3年 | 20,000.00 | 0.46% | 0.00 | 20,000.00 |
| 3年以上 | 4,208,082.91 | 97.00% | 4,204,082.91 | 4,000.00 |
| 合 计 | 4,337,912.70 | 100.00% | 4,204,082.91 | 133,829.79 |

森科木业（昆山)有限公司 2019 年度财务报表附注

| 账龄 | 期初数 | | | |
|---|---|---|---|---|
| | 账面余额 | 比例（%） | 坏账准备 | 账面价值 |
| 1年以内 | 290,978.99 | 6.44% | 0.00 | 290,978.99 |
| 1至2年 | 20,000.00 | 0.44% | 0.00 | 20,000.00 |
| 2至3年 | 0.00 | 0.00% | 0.00 | 0.00 |
| 3年以上 | 4,208,082.91 | 93.12% | 4,204,082.91 | 4,000.00 |
| 合　计 | 4,519,061.90 | 100.00% | 4,204,082.91 | 314,978.99 |

### 4、预付款项

| 账龄 | 期末数 | | | |
|---|---|---|---|---|
| | 账面余额 | 比例（%） | 坏账准备 | 账面价值 |
| 1年以内 | 291,174.55 | 21.80% | 0.00 | 291,174.55 |
| 1至2年 | 292,655.69 | 21.91% | 0.00 | 292,655.69 |
| 2至3年 | 0.00 | 0.00% | 0.00 | 0.00 |
| 3年以上 | 751,676.00 | 56.29% | 500,000.00 | 251,676.00 |
| 合　计 | 1,335,506.24 | 100.00% | 500,000.00 | 835,506.24 |

| 账龄 | 期初数 | | | |
|---|---|---|---|---|
| | 账面余额 | 比例（%） | 坏账准备 | 账面价值 |
| 1年以内 | 350,011.34 | 25.68% | 0.00 | 350,011.34 |
| 1至2年 | 12,500.00 | 0.92% | 0.00 | 12,500.00 |
| 2至3年 | 248,916.43 | 18.26% | 0.00 | 248,916.43 |
| 3年以上 | 751,676.00 | 55.14% | 500,000.00 | 251,676.00 |
| 合　计 | 1,363,103.77 | 100.00% | 500,000.00 | 863,103.77 |

### 5、存货

| 项目 | 期初数 | | | 期末数 | | |
|---|---|---|---|---|---|---|
| | 账面余额 | 跌价准备 | 账面价值 | 账面余额 | 跌价准备 | 账面价值 |
| 原材料 | 6,012,193.29 | 0.00 | 6,012,193.29 | 6,148,109.04 | 0.00 | 6,148,109.04 |
| 低值易耗品 | 101,910.87 | 0.00 | 101,910.87 | 101,459.72 | 0.00 | 101,459.72 |
| 生产成本 | 4,786,455.84 | 0.00 | 4,786,455.84 | 1,774,428.97 | 0.00 | 1,774,428.97 |
| 合　计 | 10,900,560.00 | 0.00 | 10,900,560.00 | 8,023,997.73 | 0.00 | 8,023,997.73 |

### 6、其他流动资产

| 项目 | 期初余额 | 期末余额 |
|---|---|---|
| 擎天服务费 | 622.64 | 622.64 |
| 雇主责任险 | 14,841.49 | 0.00 |
| 风险评估服务费及安全责任险 | 18,490.59 | 0.00 |
| 垃圾清运费 | 2,290.00 | 2,290.00 |
| 易为软件服务费 | 0.00 | 67,961.16 |
| 消防维护费 | 0.00 | 8,634.92 |
| 合　计 | 36,244.72 | 79,508.72 |

本财务报表附注为财务报表的组成部分

10

42

森科木业（昆山)有限公司 2019 年度财务报表附注

### 7、固定资产及累计折旧

**固定资产原价**

| 项目 | 期初余额 | 本期增加 | 本期减少 | 期末余额 |
|---|---|---|---|---|
| 房屋建筑物 | 40,859,301.39 | 0.00 | 0.00 | 40,859,301.39 |
| 机器设备 | 24,022,241.30 | 0.00 | 0.00 | 24,022,241.30 |
| 工具器具 | 933,903.39 | 0.00 | 0.00 | 933,903.39 |
| 办公设备 | 780,356.41 | 0.00 | 0.00 | 780,356.41 |
| 运输设备 | 494,042.58 | 0.00 | 0.00 | 494,042.58 |
| 其他设备 | 1,447,713.90 | 0.00 | 0.00 | 1,447,713.90 |
| 合  计 | 68,537,558.97 | 0.00 | 0.00 | 68,537,558.97 |

**累计折旧**

| 项目 | 期初余额 | 本期增加 | 本期减少 | 期末余额 |
|---|---|---|---|---|
| 房屋建筑物 | 17,464,218.08 | 2,113,719.95 | 0.00 | 19,577,938.03 |
| 机器设备 | 17,361,299.27 | 861,949.39 | 0.00 | 18,223,248.66 |
| 工具器具 | 819,620.76 | 14,810.90 | 0.00 | 834,431.66 |
| 办公设备 | 688,620.68 | 8,653.41 | 0.00 | 697,274.09 |
| 运输设备 | 440,804.98 | 3,833.34 | 0.00 | 444,638.32 |
| 其他设备 | 1,302,942.51 | 0.00 | 0.00 | 1,302,942.51 |
| 合  计 | 38,077,506.28 | 3,002,966.99 | 0.00 | 41,080,473.27 |

注：期末无应计提固定资产减值准备的情况。

### 8、无形资产

| 项目 | 期初余额 | 本期增加 | 本期摊销 | 期末余额 |
|---|---|---|---|---|
| 土地使用权1 | 1,947,382.30 | 0.00 | 55,375.80 | 1,892,006.50 |
| 土地使用权2 | 1,020,110.48 | 0.00 | 26,846.96 | 993,263.52 |
| 合  计 | 2,967,492.78 | 0.00 | 82,222.76 | 2,885,270.02 |

注：期末无应计提无形资产减值准备的情况。

### 9、长期待摊费用

| 项目 | 期初余额 | 本期增加 | 本期摊销 | 期末余额 |
|---|---|---|---|---|
| 环保咨询服务 | 3,375,786.18 | 50,000.00 | 366,823.71 | 3,058,962.47 |
| 零星工程 | 357,452.79 | 991,379.66 | 230,071.84 | 1,118,760.61 |
| 消防改造工程 | 643,294.99 | 485,436.90 | 150,253.74 | 978,478.15 |
| 车间线路改造 | 592,071.18 | 40,000.00 | 86,984.32 | 545,086.86 |
| 地坪工程 | 534,745.79 | 34,115.05 | 81,338.36 | 487,522.48 |
| 管道安装工程 | 357,780.39 | 0.00 | 35,256.36 | 322,524.03 |
| 厂房维修费 | 338,607.38 | 0.00 | 89,353.36 | 249,254.02 |
| 集尘及废气整改工程 | 53,270.93 | 0.00 | 16,422.24 | 36,848.69 |
| 锅炉维修费 | 46,797.06 | 0.00 | 13,488.34 | 33,308.72 |
| 自动伸缩门 | 327.87 | 0.00 | 327.87 | 0.00 |
| 废水处理改造工程 | 10,825.97 | 0.00 | 10,825.97 | 0.00 |
| 合  计 | 6,310,960.53 | 1,600,931.61 | 1,081,146.11 | 6,830,746.03 |

森科木业（昆山)有限公司 2019 年度财务报表附注

43

### 10、应付账款

| 账龄 | 期初数 | | 期末数 | |
|------|--------|--------|--------|--------|
| | 账面余额 | 比例（%） | 账面余额 | 比例（%） |
| 1年以内 | 5,568,736.34 | 90.04% | 1,307,467.63 | 33.79% |
| 1至2年 | 73,635.52 | 1.19% | 2,015,223.15 | 52.09% |
| 2至3年 | 38,984.54 | 0.63% | 26,720.85 | 0.69% |
| 3年以上 | 503,090.74 | 8.14% | 519,667.37 | 13.43% |
| 合　计 | 6,184,447.14 | 100.00% | 3,869,079.00 | 100.00% |

### 11、应付职工薪酬

| 项目 | 期初余额 | 期末余额 |
|------|----------|----------|
| 中方工资 | 661,693.18 | 43,064.91 |
| 合　计 | 661,693.18 | 43,064.91 |

### 12、应付福利费

| 项目 | 期初余额 | 期末余额 |
|------|----------|----------|
| 工会会费 | 120,154.68 | 136,391.54 |
| 医疗保险 | 23,464.86 | 3,524.66 |
| 工伤保险 | 2,740.44 | -123.48 |
| 生育保险 | 1,566.20 | -141.12 |
| 失业保险 | 2,901.03 | -188.34 |
| 养老保险 | 67,934.02 | -4,424.56 |
| 职工伙食费 | 109,399.48 | 0.00 |
| 合　计 | 328,160.71 | 135,038.70 |

### 13、应交税费

| 项目 | 期初余额 | 期末余额 |
|------|----------|----------|
| 应交房产税 | 102,028.23 | 102,028.19 |
| 应交土地使用税 | 56,646.90 | 42,485.14 |
| 应交个人所得税 | -149.84 | -1,816.48 |
| 应交增值税 | -431,531.15 | -26,020.60 |
| 合　计 | -273,005.86 | 116,676.25 |

### 14、其他应付款

| 账龄 | 期初数 | | 期末数 | |
|------|--------|--------|--------|--------|
| | 账面余额 | 比例（%） | 账面余额 | 比例（%） |
| 1年以内 | 45,770.50 | 0.20% | 6,980,000.00 | 23.01% |
| 1至2年 | 2,280,620.81 | 9.77% | 45,770.50 | 0.15% |
| 2至3年 | 2,251,319.15 | 9.63% | 2,280,620.81 | 7.52% |
| 3年以上 | 18,773,663.38 | 80.40% | 21,024,982.53 | 69.32% |
| 合　计 | 23,351,373.84 | 100.00% | 30,331,373.84 | 100.00% |

### 15、其他流动负债

| 项目 | 期初余额 | 期末余额 |
|------|----------|----------|
| 电费 | 479,112.29 | 0.00 |
| 合　计 | 479,112.29 | 0.00 |

44

森科木业（昆山)有限公司 2019 年度财务报表附注

### 16、实收资本（股本）

| 项目 | 期初余额 | 本期增加 | 本期减少 | 期末余额 |
|---|---|---|---|---|
| Sunco, Inc. | 39,541,413.35 | 0.00 | 0.00 | 39,541,413.35 |
| 江苏奇意投资有限公司 | 42,836,531.13 | 0.00 | 0.00 | 42,836,531.13 |
| 合　计 | 82,377,944.48 | 0.00 | 0.00 | 82,377,944.48 |

注：根据公司的股份受让协议书等资料显示，外方投资者Sunco, Inc.已于2013年将其在贵本公司的100%股份全部转让给了孙琳达（SUN LINDA），未办理相关的工商变更登记手续；外方投资者Sunco, Inc.又于2015年转让了贵公司的52%股份给受让方江苏奇意投资有限公司并办理了相关的工商变更登记手续。

### 17、资本公积

| 项目 | 期初余额 | 本期增加 | 本期减少 | 期末余额 |
|---|---|---|---|---|
| 其他资本公积 | 30.65 | 0.00 | 0.00 | 30.65 |
| 合　计 | 30.65 | 0.00 | 0.00 | 30.65 |

### 18、未分配利润

| 项目 | 金额 | 备注 |
|---|---|---|
| 期初数 | -17,272,591.06 | |
| 追溯调整以前年度损益 | 0.00 | |
| 经追溯调整后年初未分配利润 | -17,272,591.06 | |
| 加：本期增加 | 0.00 | |
| 1、本年净利润 | -5,783,884.32 | |
| 2、其它转入 | -58,605.62 | |
| 减：本期减少 | 0.00 | |
| 1、提取法定盈余公积 | 0.00 | |
| 2、提取法定公益金 | 0.00 | |
| 3、提取职工奖励及福利基金 | 0.00 | |
| 4、提取储备基金 | 0.00 | |
| 5、提取企业发展基金 | 0.00 | |
| 6、利润归还投资 | 0.00 | |
| 7、分配股利 | 0.00 | |
| 期末数 | -23,115,081.00 | |

### (二)利润表主要项目注释

### 1、主营业务收入

| 项目 | 本期数 | 上年同期数 |
|---|---|---|
| 外销 | 27,976,284.76 | 56,322,334.13 |
| 合　计 | 27,976,284.76 | 56,322,334.13 |

### 2、主营业务成本

| 项目 | 本期数 | 上年同期数 |
|---|---|---|
| 外销 | 26,251,334.06 | 50,484,804.32 |
| 合　计 | 26,251,334.06 | 50,484,804.32 |

45

森科木业（昆山)有限公司 2019 年度财务报表附注

### 3、税金及附加

| 项目 | 本期数 | 上年同期数 |
|---|---|---|
| 城建税 | 184,427.49 | 128,773.16 |
| 教育费附加 | 110,656.50 | 77,263.90 |
| 地方教育费附加 | 73,770.99 | 51,509.27 |
| 印花税 | 1,129.80 | 0.00 |
| 合　计 | 369,984.78 | 257,546.33 |

### 4、销售费用

| 项目 | 本期数 | 上年同期数 |
|---|---|---|
| 出口费用 | 667,572.50 | 989,224.75 |
| 运输费 | 258,009.86 | 535,490.42 |
| 办公费 | 19,029.13 | 0.00 |
| 合　计 | 944,611.49 | 1,524,715.17 |

### 5、管理费用

| 项目 | 本期数 | 上年同期数 |
|---|---|---|
| 离职补偿金 | 3,557,138.63 | 0.00 |
| 折旧费 | 1,072,494.56 | 1,074,580.69 |
| 基本工资 | 681,759.43 | 591,927.00 |
| 税金 | 583,836.77 | 648,863.64 |
| 环境保护费 | 457,310.38 | 436,811.16 |
| 水电费 | 163,325.90 | 131,976.41 |
| 办公费 | 99,974.39 | 46,946.71 |
| 土地使用权摊销 | 82,222.76 | 82,220.76 |
| 工会经费 | 76,247.89 | 180,534.37 |
| 保险费 | 68,951.69 | 57,732.09 |
| 社保 | 52,571.15 | 57,436.06 |
| 安全费 | 49,864.14 | 6,841.94 |
| 邮电费 | 44,134.02 | 38,618.36 |
| 律师费 | 20,000.00 | 0.00 |
| 审计费 | 15,094.34 | 15,094.34 |
| 其他费用 | 13,909.95 | 66,897.80 |
| 交通费 | 4,820.10 | 7,714.00 |
| 会费 | 2,000.00 | 2,000.00 |
| 网络服务费 | 1,867.92 | 73,486.69 |
| 交际费 | 1,000.00 | 0.00 |
| 环评咨询费 | 0.02 | 69,182.38 |
| 职工福利费 | 0.00 | 300.00 |
| 人事服务费 | 0.00 | 1,900.00 |
| 培训费 | 0.00 | 920.00 |
| 修理费 | 0.00 | 19,827.59 |
| 伙食费 | -206.33 | 26,990.92 |
| 合　计 | 7,048,317.71 | 3,638,802.91 |

本财务报表附注为财务报表的组成部分

46

森科木业（昆山)有限公司 2019 年度财务报表附注

### 6、财务费用

| 项目 | 本期数 | 上年同期数 |
|---|---|---|
| 手续费 | 4,902.83 | 10,982.93 |
| 利息收入 | -2,521.82 | -2,832.11 |
| 汇兑收益 | -1,439,552.30 | -2,303,988.59 |
| 汇兑损失 | 583,543.30 | 281,627.79 |
| 合　计 | -853,627.99 | -2,014,209.98 |

### 7、营业外收入

| 项目 | 本期数 | 上年同期数 |
|---|---|---|
| 罚款 | 450.97 | 11,757.37 |
| 奖励金 | 0.00 | 10,000.00 |
| 合　计 | 450.97 | 21,757.37 |

### 8、营业外支出

| 项目 | 本期数 | 上年同期数 |
|---|---|---|
| 罚款 | 0.00 | 53,000.00 |
| 合　计 | 0.00 | 53,000.00 |

### (三)现金流量表项目注释

| 项　目 | 本期数 |
|---|---|
| 净利润 | -5,783,884.32 |
| 加：*少数股东权益 | 0.00 |
| 减：未确认的投资损失 | 0.00 |
| 加：计提的资产减值准备 | 0.00 |
| 固定资产折旧 | 3,002,966.99 |
| 无形资产摊销 | 82,222.76 |
| 长期待摊费用摊销 | 1,081,146.11 |
| 待摊费用减少（减：增加） | -43,264.00 |
| 预提费用增加（减：减少） | -479,112.29 |
| 处置固定资产、无形资产和其他长期资产的损失（减：收益） | 0.00 |
| 固定资产报废损失 | 0.00 |
| 财务费用 | 0.00 |
| 投资损失（减：收益） | 0.00 |
| 递延税款贷项（减：借项） | 0.00 |
| 存货的减少（减：增加） | 2,876,562.27 |
| 经营性应收项目的减少（减：增加） | -6,126,662.54 |
| 经营性应付项目的增加（减：减少） | 4,242,563.69 |
| 其他 | -58,605.62 |
| 经营活动产生的现金流量净额 | -1,206,066.95 |

### 七、或有事项:

无此事项。

### 八、关联方及其交易:

---

本财务报表附注为财务报表的组成部分 　　　　　　　　　　15

森科木业（昆山)有限公司 2019 年度财务报表附注

（一）关联方关系

| 企业(个人)名称 | 与本企业的关系 |
|---|---|
| Sunco, Inc. | 投资方 |
| 江苏奇意投资有限公司 | 投资方 |
| 盈枫利责任有限公司 | 受与关键管理人员关系密切的家庭成员直接控制的唯一客户 |
| 孙琳达（SUN LINDA） | 总经理兼董事 |

（二）关联方交易

1. 关联交易情况：

本公司本年及上年度向关联方交易有关明细资料如下（单位：元）：

| 企业(个人)名称 | 交易性质 | 本年度交易额 | 上年度交易额 |
|---|---|---|---|
| 盈枫利责任有限公司 | 销货 | 27,976,284.76 | 56,322,334.13 |
| 合　计 | | 27,976,284.76 | 56,322,334.13 |

（三）关联方往来款项：

| 企业(个人)名称 | 会计科目 | 记账本位币金额 | |
|---|---|---|---|
| | | 年末余额 | 年初余额 |
| 盈枫利责任有限公司 | 应收账款 | 46,730,580.43 | 40,399,998.74 |
| 合　计 | | 46,730,580.43 | 40,399,998.74 |

| 企业(个人)名称 | 会计科目 | 记账本位币金额 | |
|---|---|---|---|
| | | 年末余额 | 年初余额 |
| 孙琳达（SUN LINDA） | 其他应付款 | 20,957,013.74 | 20,957,013.74 |
| 合　计 | | 20,957,013.74 | 20,957,013.74 |

**九、期后事项：**

本公司在报告期内未发生重大的债务重组等其他影响本会计报表使用者阅读和理解的重要事项。

**十、其他重要事项**

1、公司诉原公司总经理陈源康一案，目前已胜诉，尚有 3,204,082.91 元未追回，法院正在执行中。已全额计提坏账损失。

2、公司诉吉林鸣山木业一案，目前已胜诉，尚有 1,000,000.00 元未追回，法院正在执行中。已全额计提坏账损失。

3、公司诉上海兰丰木业有限公司一案，目前已胜诉，应收款项 500,000.00 元未追回，已全额计提坏账损失。

森科木业（昆山)有限公司

二〇二〇年六月二日

48

编 号 320583000201805040802



# 营 业 执 照

## (副 本)

统一社会信用代码 91320583746819717R （1/4）

| | |
|---|---|
| 名　　　称 | 苏州华明联合会计师事务所（普通合伙） |
| 类　　　型 | 普通合伙企业 |
| 主要经营场所 | 开发区伟业路18号1801号房（现代广场） |
| 执行事务合伙人 | 陆华明 |
| 成 立 日 期 | 2003年02月18日 |
| 合 伙 期 限 | 2003年02月18日至2023年02月18日 |
| 经 营 范 围 | 审查企业会计报表，出具审计报告；验证企业资本，出具验资报告；办理企业合并、分立、清算事宜中的审计业务，出具有关的报告；基本建设年度财务决算审计；代理记帐；会计咨询、税务咨询、管理咨询、会计培训；法律、法规规定的其他业务。（依法须经批准的项目，经相关部门批准后方可开展经营活动） |



登 记 机 关



请于每年1月1日至6月30日履行年报公示义务

2016年 0 月 11日

企业信用信息公示系统网址：

**Civil Procedure Law of the People's Republic of China (2023 Amendment)**

| | |
|---|---|
| Area of Law: | Civil Procedure Law |
| Level of Authority: | Laws |
| Issuing Authority: | Standing Committee of the National People's Congress |
| Date Issued: | 09-01-2023 |
| Effective Date: | 01-01-2024 |
| Status: | Effective |

2021-2023 Annotation Version    2017-2021 Annotation Version    2012-2017 Annotation Version

2007-2012 Annotation Version    1991-2007 Annotation Version    1982-1991 Comparison Version

中华人民共和国民事诉讼法

Civil Procedure Law of the People's Republic of China

（1991年4月9日第七届全国人民代表大会第四次会议通过　根据2007年10月28日第十届全国人民代表大会常务委员会第三十次会议《关于修改〈中华人民共和国民事诉讼法〉的决定》第一次修正　根据2012年8月31日第十一届全国人民代表大会常务委员会第二十八次会议《关于修改〈中华人民共和国民事诉讼法〉的决定》第二次修正　根据2017年6月27日第十二届全国人民代表大会常务委员会第二十八次会议《关于修改〈中华人民共和国民事诉讼法〉和〈中华人民共和国行政诉讼法〉的决定》第三次修正 根据2021年12月24日第十三届全国人民代表大会常务委员会第三十二次会议《关于修改〈中华人民共和国民事诉讼法〉的决定》第四次修正 根据2023年9月1日第十四届全国人民代表大会常务委员会第五次会议《关于修改＜中华人民共和国民事诉讼法＞的决定》第五次修正）

(Adopted at the 4th Session of the Seventh National People's Congress on April 9, 1991; amended for the first time in accordance with the Decision on Amending the Civil Procedure Law of the People's Republic of China as adopted at the 30th Session of the Standing Committee of the Tenth National People's Congress on October 28, 2007; amended for the second time in accordance with the Decision on Amending the Civil Procedure Law of the People's Republic of China as adopted at the 28th Session of the Standing Committee of the Eleventh National People's Congress on August 31, 2012; amended for the third time in accordance with the Decision on Amending the Civil Procedure Law of the People's Republic of China and the Administrative Litigation Law of the People's Republic of China as adopted at the 28th Session of the Standing Committee of the Twelfth National People's Congress on June 27, 2017; amended for the forth time in accordance

Saved on: 02/22/2025

[CLI Code]CLI.1.5175519(EN)

with the Decision of the Standing Committee of the National People's Congress to Amend the Civil Procedure Law of the People's Republic of China as adopted at the the 32nd Session of the Standing Committee of the Thirteenth National People's Congress on December 24, 2021; and amended for the fifth time in accordance with the Decision of the Standing Committee of the National People's Congress to Amend the Civil Procedure Law of the People's Republic of China as adopted at the 5th Session of the Standing Committee of the Fourteenth National People's Congress on September 1, 2023)

目录

Table of Contents

第一编　总 则

Part One General Provisions

第一章　任务、适用范围和基本原则

Chapter 1 Purposes, Scope of Application and Basic Principles

第二章　管 辖

Chapter 2 Jurisdiction

第一节　级别管辖

Section 1 Hierarchical Jurisdiction

第二节　地域管辖

Section 2 Territorial Jurisdiction

第三节　移送管辖和指定管辖

Section 3 Jurisdiction Transfer and Specified Jurisdiction

第三章　审判组织

Chapter 3 Trial Organization

第四章　回 避

Chapter 4 Disqualification

第五章　诉讼参加人

Chapter 5 Primary Litigation Participants

第一节　当事人

Section 1 Parties

第二节　诉讼代理人

Section 2 Litigation Representatives

第六章　证 据

Chapter 6 Evidence

第七章　期间、送达

Chapter 7 Periods and Service of Process

第一节　期 间

Section 1 Periods

第二节　送 达

Section 2 Service of Process

第八章　调 解

Chapter 8 Mediation

第九章　保全和先予执行

Chapter 9 Preservation and Advance Enforcement

第十章　对妨害民事诉讼的强制措施

Chapter 10 Compulsory Measures against Obstruction of Civil Procedures

第十一章　诉讼费用

Chapter 11 Litigation Expenses

第二编　审判程序

Part Two Trial Procedure

第十二章　第一审普通程序

Chapter 12 Formal Procedure at First Instance

第一节　起诉和受理

Section 1 Instituting and Accepting an Action

第二节　审理前的准备

Section 2 Pretrial Preparations

第三节　开庭审理

Section 3 Court Trial

第四节　诉讼中止和终结

Section 4 Suspension and Termination of an Action

第五节　判决和裁定

Section 5 Judgments and Rulings

第十三章　简易程序

Chapter 13 Summary Procedure

第十四章　第二审程序

Chapter 14 Procedure at Second Instance

第十五章　特别程序

Chapter 15 Special Procedures

第一节　一般规定

Section 1 General Provisions

第二节　选民资格案件

Section 2 Voter Eligibility Cases

Saved on: 02/22/2025

第三节　宣告失踪、宣告死亡案件

Section 3 Missing Person Declaration and Death Declaration Cases

第四节指定遗产管理人案件

Section 4 Cases on the Designation of the Legacy Administrator

第五节　认定公民无民事行为能力、限制民事行为能力案件

Section 5 Cases of Determining Civil Incompetency or Limited Civil Competency of Citizens

第六节　认定财产无主案件

Section 6 Cases of Determining Unclaimed Property

第七节　确认调解协议案件

Section 7 Cases of Confirming Mediation Agreements

第八节　实现担保物权案件

Section 8 Cases of Security Interest Realization

第十六章　审判监督程序

Chapter 16 Trial Supervision Procedure

第十七章　督促程序

Chapter 17 Procedure for Urging Debt Repayment

第十八章　公示催告程序

Chapter 18 Procedure for Announcement to Urge Declaration of Claims

第三编　执行程序

Part Three Enforcement Procedure

第十九章　一般规定

Chapter 19 General Provisions

Saved on: 02/22/2025

第二十章　执行的申请和移送

Chapter 20 Application and Transfer for Enforcement

第二十一章　执行措施

Chapter 21 Enforcement Measures

第二十二章　执行中止和终结

Chapter 22 Suspension and Termination of Enforcement

第四编　涉外民事诉讼程序的特别规定

Part Four Special Provisions on Foreign-Related Civil Procedures

第二十三章　一般原则

Chapter 23 General Principles

第二十四章　管 辖

Chapter 24 Jurisdiction

第二十五章　送达、调查取证、期间

Chapter 25 Service of Process, Investigation and Evidence Collection, and Periods

第二十六章　仲 裁

Chapter 26 Arbitration

第二十七章　司法协助

Chapter 27 Judicial Assistance

第一编　总　则

Part One General Provisions

第一章　任务、适用范围和基本原则

Chapter 1 Purposes, Scope of Application and Basic Principles

第一条　中华人民共和国民事诉讼法以宪法为根据，结合我国民事审判工作的经验和实际情况制定。

　　　　　　　　　　　　　　　　　　　　　　　Saved on: 02/22/2025

[CLI Code]CLI.1.5175519(EN)

**Article 1** The Civil Procedure Law of the People's Republic of China is formulated in accordance with the Constitution and in consideration of civil trial experience and actual circumstances of civil trials in China.

第二条　中华人民共和国民事诉讼法的任务，是保护当事人行使诉讼权利，保证人民法院查明事实，分清是非，正确适用法律，及时审理民事案件，确认民事权利义务关系，制裁民事违法行为，保护当事人的合法权益，教育公民自觉遵守法律，维护社会秩序、经济秩序，保障社会主义建设事业顺利进行。

**Article 2** The purposes of the Civil Procedure Law of the People's Republic of China are to protect the parties' exercise of procedural rights; ensure that a people's court finds facts, distinguishes right from wrong, applies law correctly and try civil cases in a timely manner; confirm civil rights and obligations; punish violations of civil law; protect the lawful rights and interests of the parties; educate citizens on consciously abiding by law; maintain the social and economic order; and guarantee smooth socialist development.

第三条　人民法院受理公民之间、法人之间、其他组织之间以及他们相互之间因财产关系和人身关系提起的民事诉讼，适用本法的规定。

**Article 3** The provisions of this Law shall apply to civil actions accepted by a people's court regarding property or personal relationships between citizens, between legal persons, between other organizations or between citizens and legal persons, citizens and other organizations or legal persons and other organizations.

第四条　凡在中华人民共和国领域内进行民事诉讼，必须遵守本法。

**Article 4** For all civil actions conducted within the territory of the People's Republic of China, this Law must be complied with.

第五条　外国人、无国籍人、外国企业和组织在人民法院起诉、应诉，同中华人民共和国公民、法人和其他组织有同等的诉讼权利义务。

**Article 5** Foreign nationals, stateless persons and foreign enterprises and organizations which institute or respond to actions in the people's courts shall have equal procedural rights and obligations as citizens, legal persons and other organizations of the People's Republic of China.

外国法院对中华人民共和国公民、法人和其他组织的民事诉讼权利加以限制的，中华人民共和国人民法院对该国公民、企业和组织的民事诉讼权利，实行对等原则。

Saved on: 02/22/2025

[CLI Code]CLI.1.5175519(EN)

Where the courts of a foreign country impose any restrictions on the civil procedural rights of citizens, legal persons and other organizations of the People's Republic of China, the people's courts of the People's Republic of China shall apply the principle of reciprocity to the civil procedural rights of citizens, enterprises and organizations of such a foreign country.

第六条 民事案件的审判权由人民法院行使。

**Article 6** The power to try civil cases shall be exercised by the people's courts.

人民法院依照法律规定对民事案件独立进行审判，不受行政机关、社会团体和个人的干涉。

The people's courts shall try civil cases independently in accordance with law, without interference from any government agency, social group or individual.

第七条 人民法院审理民事案件，必须以事实为根据，以法律为准绳。

**Article 7** When trying civil cases, the people's courts must regard facts as the basis and regard law as the yardstick.

第八条 民事诉讼当事人有平等的诉讼权利。人民法院审理民事案件，应当保障和便利当事人行使诉讼权利，对当事人在适用法律上一律平等。

**Article 8** All parties to a civil action shall have equal procedural rights. When trying civil cases, the people's courts shall provide safeguards and facilitation for all parties to exercise their procedural rights, and apply law equally for all parties.

第九条 人民法院审理民事案件，应当根据自愿和合法的原则进行调解；调解不成的，应当及时判决。

**Article 9** When trying civil cases, the people's courts shall conduct mediation under the principles of free will of the parties and legality; and if mediation fails, shall enter a judgment in a timely manner.

第十条 人民法院审理民事案件，依照法律规定实行合议、回避、公开审判和两审终审制度。

**Article 10** When trying civil cases, the people's courts shall apply the collegial bench, disqualification, open trial and "final after two trials" systems in accordance with law.

第十一条 各民族公民都有用本民族语言、文字进行民事诉讼的权利。

[CLI Code]CLI.1.5175519(EN)

**Article 11** Citizens of all ethnicities shall be entitled to use their native spoken and written languages in civil procedures.

在少数民族聚居或者多民族共同居住的地区，人民法院应当用当地民族通用的语言、文字进行审理和发布法律文书。
In areas where an ethnic minority is concentrated or several ethnicities cohabit, the people's courts shall conduct trial and publish legal instruments in the spoken and written language commonly used by the local ethnicity or ethnicities.

人民法院应当对不通晓当地民族通用的语言、文字的诉讼参与人提供翻译。
The people's courts shall provide interpretation for litigation participants who are not familiar with the spoken or written language commonly used by the local ethnicity or ethnicities.

第十二条　人民法院审理民事案件时，当事人有权进行辩论。
**Article 12** When a people's court tries a civil case, the parties shall have the right to debate.

第十三条　民事诉讼应当遵循诚信原则。
**Article 13** In civil procedures, the principle of good faith shall be adhered to.

当事人有权在法律规定的范围内处分自己的民事权利和诉讼权利。
The parties shall be entitled to dispose of their respective civil rights and procedural rights within the extent as permitted by law.

第十四条　人民检察院有权对民事诉讼实行法律监督。
**Article 14** The people's procuratorates shall have the authority to exercise legal supervision over civil procedures.

第十五条　机关、社会团体、企业事业单位对损害国家、集体或者个人民事权益的行为，可以支持受损害的单位或者个人向人民法院起诉。
**Article 15** For conduct which infringes upon the civil rights and interests of the state, a collective or an individual, a state organ, a social group, an enterprise or a public institution may support the entity or individual which suffers infringement in instituting an action in a people's court.

第十六条　经当事人同意，民事诉讼活动可以通过信息网络平台在线进行。

**Article 16** With the consent of the parties, civil proceedings may be conducted online through an information network platform.

民事诉讼活动通过信息网络平台在线进行的，与线下诉讼活动具有同等法律效力。

Online civil proceedings conducted through an information network platform shall have the same legal force as offline legal proceedings.

第十七条　民族自治地方的人民代表大会根据宪法和本法的原则，结合当地民族的具体情况，可以制定变通或者补充的规定。自治区的规定，报全国人民代表大会常务委员会批准。自治州、自治县的规定，报省或者自治区的人民代表大会常务委员会批准，并报全国人民代表大会常务委员会备案。

**Article 17** The people's congresses of ethnical autonomous areas may formulate provisions with necessary changes or supplementary provisions in accordance with the principles of the Constitution and this Law and in consideration of the specific circumstances of the local ethnicity or ethnicities. Such provisions formulated by an autonomous region shall be subject to the approval of the Standing Committee of the National People's Congress. Such provisions formulated by an autonomous prefecture or autonomous county shall be subject to the approval of the standing committee of the people's congress of the corresponding province or autonomous region and be filed with the Standing Committee of the National People's Congress.

第二章　管　辖

Chapter 2 Jurisdiction

第一节　级别管辖

Section 1 Hierarchical Jurisdiction

第十八条　基层人民法院管辖第一审民事案件，但本法另有规定的除外。

**Article 18** The primary people's courts shall have jurisdiction over civil cases as a court of first instance, except as otherwise provided for in this Law.

第十九条　中级人民法院管辖下列第一审民事案件：

**Article 19** The intermediate people's courts shall have jurisdiction over the following civil cases as

a court of first instance:

（一）重大涉外案件；

(1) Major foreign-related cases.

（二）在本辖区有重大影响的案件；

(2) Cases which have a major impact within their respective jurisdictions.

（三）最高人民法院确定由中级人民法院管辖的案件。

(3) Cases which are under the jurisdiction of the intermediate people's courts as determined by the Supreme People's Court.

第二十条　高级人民法院管辖在本辖区有重大影响的第一审民事案件。

**Article 20** The high people's courts shall have jurisdiction over civil cases which have a major impact within their respective jurisdictions as a court of first instance.

第二十一条　最高人民法院管辖下列第一审民事案件：

**Article 21** The Supreme People's Court shall have jurisdiction over the following civil cases as a court of first instance:

（一）在全国有重大影响的案件；

(1) Cases which have a major impact nationwide.

（二）认为应当由本院审理的案件。

(2) Cases which the Supreme People's Court deems shall be tried by itself.

第二节　地域管辖

Section 2 Territorial Jurisdiction

第二十二条　对公民提起的民事诉讼，由被告住所地人民法院管辖；被告住所地与经常居住地不一致的，由经常居住地人民法院管辖。

**Article 22** A civil action instituted against a citizen shall be under the jurisdiction of the people's court at the place of domicile of the defendant; or if the defendant's place of domicile is different

from his or her place of habitual residence, the civil action shall be under the jurisdiction of the people's court at the place of habitual residence of the defendant.

对法人或者其他组织提起的民事诉讼，由被告住所地人民法院管辖。

A civil action instituted against a legal person or any other organization shall be under the jurisdiction of the people's court at the place of domicile of the defendant.

同一诉讼的几个被告住所地、经常居住地在两个以上人民法院辖区的，各该人民法院都有管辖权。

Where the places of domicile or places of habitual residence of several defendants in the same action are located within the jurisdictions of two or more people's courts, both or all of such people's courts shall have jurisdiction over the action.

第二十三条　下列民事诉讼，由原告住所地人民法院管辖；原告住所地与经常居住地不一致的，由原告经常居住地人民法院管辖：

**Article 23** The following civil actions shall be under the jurisdiction of the people's court at the place of domicile of the plaintiff; or if the plaintiff's place of domicile is different from his or her place of habitual residence, the civil actions shall be under the jurisdiction of the people's court at the place of habitual residence of the plaintiff:

（一）对不在中华人民共和国领域内居住的人提起的有关身份关系的诉讼；

(1) An action regarding a personal relationship instituted against a person who does not reside within the territory of the People's Republic of China.

（二）对下落不明或者宣告失踪的人提起的有关身份关系的诉讼；

(2) An action regarding a personal relationship instituted against a person whose whereabouts is unknown or against a person who has been declared missing.

（三）对被采取强制性教育措施的人提起的诉讼；

(3) An action instituted against a person who is subject to any compulsory correctional measure.

（四）对被监禁的人提起的诉讼。

(4) An action instituted against a person who is incarcerated.

第二十四条　因合同纠纷提起的诉讼，由被告住所地或者合同履行地人民法院管辖。

**Article 24** An action instituted for a contract dispute shall be under the jurisdiction of the people's court at the place of domicile of the defendant or at the place where the contract is performed.

第二十五条　因保险合同纠纷提起的诉讼，由被告住所地或者保险标的物所在地人民法院管辖。

**Article 25** An action instituted for an insurance contract dispute shall be under the jurisdiction of the people's court at the place of domicile of the defendant or at the place where the subject matter insured is located.

第二十六条　因票据纠纷提起的诉讼，由票据支付地或者被告住所地人民法院管辖。

**Article 26** An action instituted for a negotiable instrument dispute shall be under the jurisdiction of the people's court at the place of payment of the negotiable instrument or at the place of domicile of the defendant.

第二十七条　因公司设立、确认股东资格、分配利润、解散等纠纷提起的诉讼，由公司住所地人民法院管辖。

**Article 27** An action instituted for a dispute arising from formation, shareholder eligibility confirmation, profit distribution, dissolution or any other matter of a company shall be under the jurisdiction of the people's court at the place of domicile of the company.

第二十八条　因铁路、公路、水上、航空运输和联合运输合同纠纷提起的诉讼，由运输始发地、目的地或者被告住所地人民法院管辖。

**Article 28** An action instituted for a dispute arising from a railway, road, water, air, or multi-mode transportation contract shall be under the jurisdiction of the people's court at the place of departure or destination of transportation or at the place of domicile of the defendant.

第二十九条　因侵权行为提起的诉讼，由侵权行为地或者被告住所地人民法院管辖。

**Article 29** An action instituted for a tort shall be under the jurisdiction of the people's court at the place where the tort occurs or at the place of domicile of the defendant.

第三十条　因铁路、公路、水上和航空事故请求损害赔偿提起的诉讼，由事故发生地或者车辆、船舶最先到达地、航空器最先降落地或者被告住所地人民法院管辖。

**Article 30** An action instituted for damages for a railway, road, water or air transportation accident shall be under the jurisdiction of the people's court at the place where the accident occurs, where

the vehicle or vessel first arrives or where the aircraft first lands or at the place of domicile of the defendant.

第三十一条　因船舶碰撞或者其他海事损害事故请求损害赔偿提起的诉讼，由碰撞发生地、碰撞船舶最先到达地、加害船舶被扣留地或者被告住所地人民法院管辖。

**Article 31** An action instituted for damages for a vessel collision or any other maritime accident shall be under the jurisdiction of the people's court at the place where the collision occurs, where the colliding vessel first arrives or where the vessel at fault is detained or at the place of domicile of the defendant.

第三十二条　因海难救助费用提起的诉讼，由救助地或者被救助船舶最先到达地人民法院管辖。

**Article 32** An action instituted for maritime salvage shall be under the jurisdiction of the people's court at the place of salvage or at the place where the salvaged vessel first arrives.

第三十三条　因共同海损提起的诉讼，由船舶最先到达地、共同海损理算地或者航程终止地的人民法院管辖。

**Article 33** An action instituted for a general average shall be under the jurisdiction of the people's court at the place where the vessel first arrives, where the general average is adjusted or where the voyage ends.

第三十四条　下列案件，由本条规定的人民法院专属管辖：

**Article 34** The following cases shall be under the exclusive jurisdiction of the people's courts as specified below:

（一）因不动产纠纷提起的诉讼，由不动产所在地人民法院管辖；

(1) An action instituted for a real estate dispute shall be under the jurisdiction of the people's court at the place where the real estate is located.

（二）因港口作业中发生纠纷提起的诉讼，由港口所在地人民法院管辖；

(2) An action instituted for a dispute arising from harbor operations shall be under the jurisdiction of the people's court at the place where the harbor is located.

（三）因继承遗产纠纷提起的诉讼，由被继承人死亡时住所地或者主要遗产所在地人民法院管辖。

(3) An action instituted for an inheritance dispute shall be under the jurisdiction of the people's

Saved on: 02/22/2025

[CLI Code]CLI.1.5175519(EN)

court at the place of domicile of the deceased upon death or at the place where the major part of estate is located.

第三十五条　合同或者其他财产权益纠纷的当事人可以书面协议选择被告住所地、合同履行地、合同签订地、原告住所地、标的物所在地等与争议有实际联系的地点的人民法院管辖，但不得违反本法对级别管辖和专属管辖的规定。

**Article 35** Parties to a dispute over a contract or any other right or interest in property may, by a written agreement, choose the people's court at the place of domicile of the defendant, at the place where the contract is performed or signed, at the place of domicile of the plaintiff, at the place where the subject matter is located or at any other place actually connected to the dispute to have jurisdiction over the dispute, but the provisions of this Law regarding hierarchical jurisdiction and exclusive jurisdiction shall not be violated.

第三十六条　两个以上人民法院都有管辖权的诉讼，原告可以向其中一个人民法院起诉；原告向两个以上有管辖权的人民法院起诉的，由最先立案的人民法院管辖。

**Article 36** When two or more people's courts have jurisdiction over an action, the plaintiff may institute an action in one of such people's courts; and if the plaintiff institutes actions in two or more people's courts that have jurisdiction, the people's court which dockets the case first shall have jurisdiction over the action.

第三节　移送管辖和指定管辖

Section 3 Jurisdiction Transfer and Specified Jurisdiction

第三十七条　人民法院发现受理的案件不属于本院管辖的，应当移送有管辖权的人民法院，受移送的人民法院应当受理。受移送的人民法院认为受移送的案件依照规定不属于本院管辖的，应当报请上级人民法院指定管辖，不得再自行移送。

**Article 37** Where a people's court discovers that a case accepted is not under its jurisdiction, it shall transfer the case to the people's court having jurisdiction, and the people's court to which the case is transferred shall accept the case. If the people's court to which the case is transferred deems that the transferred case is not under its jurisdiction according to the relevant provisions, it shall report the case to its superior for specified jurisdiction and shall not transfer the case without direction.

[CLI Code]CLI.1.5175519(EN)

第三十八条　有管辖权的人民法院由于特殊原因，不能行使管辖权的，由上级人民法院指定管辖。

**Article 38** Where a people's court having jurisdiction is unable to exercise its jurisdiction for any special reasons, its superior shall specify jurisdiction.

人民法院之间因管辖权发生争议，由争议双方协商解决；协商解决不了的，报请它们的共同上级人民法院指定管辖。

Where there is any dispute over jurisdiction between the people's courts, the dispute shall be resolved by the disputing courts through consultations; or if such consultations fail, the disputing courts shall request their common superior to specify jurisdiction.

第三十九条　上级人民法院有权审理下级人民法院管辖的第一审民事案件；确有必要将本院管辖的第一审民事案件交下级人民法院审理的，应当报请其上级人民法院批准。

**Article 39** A people's court at a higher level shall have the power to try a first instance civil case under the jurisdiction of a people's court at a lower level. If it is necessary to transfer a first instance civil case under its jurisdiction to a people's court at a lower level for trial, a people's court at a higher level shall file a report with its superior for approval of the transfer.

下级人民法院对它所管辖的第一审民事案件，认为需要由上级人民法院审理的，可以报请上级人民法院审理。

If a people's court at a lower level deems it necessary for a first instance civil case under its jurisdiction to be tried by a people's court at a higher level, it may request the people's court at a higher level to try the case.

第三章　审判组织

Chapter 3 Trial Organization

第四十条　人民法院审理第一审民事案件，由审判员、人民陪审员共同组成合议庭或者由审判员组成合议庭。合议庭的成员人数，必须是单数。

**Article 40** When a people's court tries a civil case of first instance, a collegial bench consisting of judges and people's jurors or consisting of judges only shall be formed. The members of a collegial bench must be in an odd number.

适用简易程序审理的民事案件，由审判员一人独任审理。基层人民法院审理的基本事实清楚、权利义务关系明确的第一审民事案件，可以由审判员一人适用普通程序独任审理。



[CLI Code]CLI.1.5175519(EN)

A civil case to which the summary procedure applies shall be tried by a single judge. A civil case of first instance tried by the primary people's court with clear basic facts and unambiguous rights and obligations may be tried by a single judge under the ordinary procedure.

人民陪审员在参加审判活动时，除法律另有规定外，与审判员有同等的权利义务。
When participating in trial activities, people's jurors shall have equal rights and obligations as a judge, except as otherwise prescribed by any law.

第四十一条　人民法院审理第二审民事案件，由审判员组成合议庭。合议庭的成员人数，必须是单数。
**Article 41** When a people's court tries a second instance civil case, a collegial bench consisting of judges only shall be formed. The members of a collegial bench must be in an odd number.

中级人民法院对第一审适用简易程序审结或者不服裁定提起上诉的第二审民事案件，事实清楚、权利义务关系明确的，经双方当事人同意，可以由审判员一人独任审理。
With the consent of both parties, an intermediate people's court may try by a single judge a civil case of second instance under which the first instance has been concluded under the summary procedure or an appeal is filed against a ruling, if the facts are clear and the rights and obligations are unambiguous.

发回重审的案件，原审人民法院应当按照第一审程序另行组成合议庭。
For a case remanded for retrial, the original trial people's court shall form a new collegial bench under the procedure at first instance.

审理再审案件，原来是第一审的，按照第一审程序另行组成合议庭；原来是第二审的或者是上级人民法院提审的，按照第二审程序另行组成合议庭。
If a case for retrial was originally tried by a court of first instance, a new collegial bench shall be formed under the procedure at first instance; or if the case for retrial was originally tried by a court of second instance or tried directly by a people's court at a higher level, a new collegial bench shall be formed under the procedure at second instance.

第四十二条　人民法院审理下列民事案件，不得由审判员一人独任审理：
**Article 42** A people's court may not try any of the following civil cases by a single judge:

（一）涉及国家利益、社会公共利益的案件；

[CLI Code]CLI.1.5175519(EN)

(1) Cases involving national interest or public interest.

（二）涉及群体性纠纷，可能影响社会稳定的案件；

(2) Cases involving group disputes, which may affect social stability.

（三）人民群众广泛关注或者其他社会影响较大的案件；

(3) Cases which receive widespread public attention or otherwise have a relatively large social impact.

（四）属于新类型或者疑难复杂的案件；

(4) Cases which are of a new type or difficult and complicated.

（五）法律规定应当组成合议庭审理的案件；

(5) Cases which shall be tried by a collegial panel as provided by law.

（六）其他不宜由审判员一人独任审理的案件。

(6) Other cases the trial of which by a single judge is inappropriate.

第四十三条　人民法院在审理过程中，发现案件不宜由审判员一人独任审理的，应当裁定转由合议庭审理。

**Article 43** Where a people's court discovers during the trial of a case that it is inappropriate for a single judge to try the case, it shall rule that the case shall be tried by a collegial panel.

当事人认为案件由审判员一人独任审理违反法律规定的，可以向人民法院提出异议。人民法院对当事人提出的异议应当审查，异议成立的，裁定转由合议庭审理；异议不成立的，裁定驳回。

Where a party is of the opinion that the trial of the case by a single judge violates the provisions of any law, the party may file an objection with the people's court. The people's court shall examine the objection filed by the party, and rule that the case shall be tried by a collegial panel if the objection is supported, or rule to dismiss the objection if the objection is not supported.

第四十四条　合议庭的审判长由院长或者庭长指定审判员一人担任；院长或者庭长参加审判的，由院长或者庭长担任。

**Article 44** The president of a people's court or a divisional chief of a people's court shall designate a judge as the presiding judge of a collegial bench; and if the president or divisional chief participates in the trial, the president or divisional chief shall be the presiding judge.

[CLI Code]CLI.1.5175519(EN)

第四十五条　合议庭评议案件，实行少数服从多数的原则。评议应当制作笔录，由合议庭成员签名。评议中的不同意见，必须如实记入笔录。

**Article 45** When deliberating a case, a collegial bench shall adhere to the rule of majority. Deliberation transcripts shall be prepared and be signed by the members of the collegial bench. The dissenting opinions during deliberations shall be truthfully included in the transcripts.

第四十六条　审判人员应当依法秉公办案。

**Article 46** Judges shall handle cases impartially in accordance with law.

审判人员不得接受当事人及其诉讼代理人请客送礼。

Judges shall not accept any treats or gifts from the parties or their litigation representatives.

审判人员有贪污受贿，徇私舞弊，枉法裁判行为的，应当追究法律责任；构成犯罪的，依法追究刑事责任。

Judges who commit embezzlement, accept bribes, practice favoritism for personal gains or adjudicate by bending the law shall be subject to legal liability; and those suspected of any crime shall be subject to criminal liability in accordance with law.

第四章　回　避

Chapter 4 Disqualification

第四十七条　审判人员有下列情形之一的，应当自行回避，当事人有权用口头或者书面方式申请他们回避：

**Article 47** Under any of the following circumstances, a judge shall voluntarily disqualify himself or herself, and a party shall be entitled to request disqualification of such a judge verbally or in writing:

（一）是本案当事人或者当事人、诉讼代理人近亲属的；

(1) The judge is a party to a case or is a close relative of a party to a case or a litigation representative thereof.

（二）与本案有利害关系的；

(2) The judge is an interested party to a case.

（三）与本案当事人、诉讼代理人有其他关系，可能影响对案件公正审理的。

(3) The judge has any other relationship with a party to a case or a litigation representative thereof, which may affect the impartial trial of the case.

审判人员接受当事人、诉讼代理人请客送礼，或者违反规定会见当事人、诉讼代理人的，当事人有权要求他们回避。

Where a judge accepts any treat or gift from a party to a case or a litigation representative thereof or meets with a party to a case in violation of legal provisions, a party shall be entitled to require disqualification of such a judge.

审判人员有前款规定的行为的，应当依法追究法律责任。

A judge who commits any conduct in the preceding paragraph shall be subject to legal liability in accordance with law.

前三款规定，适用于法官助理、书记员、司法技术人员、翻译人员、鉴定人、勘验人。

The provisions of the preceding three paragraphs shall apply to judges' assistants, court clerks, judicial technicians, interpreters, identification experts, and surveyors.

第四十八条　当事人提出回避申请，应当说明理由，在案件开始审理时提出；回避事由在案件开始审理后知道的，也可以在法庭辩论终结前提出。

**Article 48** To request disqualification, a party shall state reasons and file a request at the beginning of the trial of a case; and a request may also be filed before the end of court debate if a party becomes aware of a reason for disqualification after the trial of a case begins.

被申请回避的人员在人民法院作出是否回避的决定前，应当暂停参与本案的工作，但案件需要采取紧急措施的除外。

Before the people's court decides whether to grant the request for disqualification, the person whose disqualification is requested shall be suspended from participating in the case, unless the case requires that emergency measures be taken.

第四十九条　院长担任审判长或者独任审判员时的回避，由审判委员会决定；审判人员的回避，由院长决定；其他人员的回避，由审判长或者独任审判员决定。

**Article 49** The disqualification of the presiding judge or single judge who is the president of a people's court shall be decided by the judicial committee of the people's court; the disqualification

Saved on: 02/22/2025

of judges shall be decided by the president of a people's court; and the disqualification of other persons shall be decided by the presiding judge or single judge.

第五十条 人民法院对当事人提出的回避申请，应当在申请提出的三日内，以口头或者书面形式作出决定。申请人对决定不服的，可以在接到决定时申请复议一次。复议期间，被申请回避的人员，不停止参与本案的工作。人民法院对复议申请，应当在三日内作出复议决定，并通知复议申请人。

**Article 50** A people's court shall make a decision verbally or in writing on a party's request for disqualification within three days after the request is filed. Against the decision, a party may apply for reconsideration once when receiving the decision. During the period of reconsideration, the person whose disqualification is requested shall not be suspended from participating in the case. A people's court shall make a decision on an application for reconsideration within three days and notify the reconsideration applicant of the decision.

第五章 诉讼参加人

Chapter 5 Primary Litigation Participants

第一节 当事人

Section 1 Parties

第五十一条 公民、法人和其他组织可以作为民事诉讼的当事人。

**Article 51** Citizens, legal persons and other organizations may act as the parties to civil actions.

法人由其法定代表人进行诉讼。其他组织由其主要负责人进行诉讼。

The legal representative of a legal person shall participate in an action on behalf of the legal person. The primary person in charge of any other organization shall participate in an action on behalf of the organization.

第五十二条 当事人有权委托代理人，提出回避申请，收集、提供证据，进行辩论，请求调解，提起上诉，申请执行。

**Article 52** The parties shall be entitled to retain representatives, file a request for disqualification, collect and provide evidence, debate, file a request for mediation, file an appeal, and apply for enforcement.



[CLI Code]CLI.1.5175519(EN)

当事人可以查阅本案有关材料，并可以复制本案有关材料和法律文书。查阅、复制本案有关材料的范围和办法由最高人民法院规定。

The parties may consult materials related to the case and copy materials and legal instruments related to the case. The scope of and measures for consulting and copying materials related to a case shall be prescribed by the Supreme People's Court.

当事人必须依法行使诉讼权利，遵守诉讼秩序，履行发生法律效力的判决书、裁定书和调解书。

The parties must exercise their procedural rights in accordance with law, observe the order of litigation, and execute effective written judgments, rulings and consent judgments.

第五十三条　双方当事人可以自行和解。

**Article 53** Both sides of a civil action may reach a settlement themselves.

第五十四条　原告可以放弃或者变更诉讼请求。被告可以承认或者反驳诉讼请求，有权提起反诉。

**Article 54** The plaintiff may relinquish or modify its claims. The defendant may admit or repudiate the plaintiff's claims and shall have the right to file a counterclaim.

第五十五条　当事人一方或者双方为二人以上，其诉讼标的是共同的，或者诉讼标的是同一种类、人民法院认为可以合并审理并经当事人同意的，为共同诉讼。

**Article 55** A joint action means that one side or both sides of a civil action consist of two or more persons, the subject matter of action for each party is same or is of the same kind and the people's court deems that the disputes of all the parties may be tried concurrently, to which all the parties agree.

共同诉讼的一方当事人对诉讼标的有共同权利义务的，其中一人的诉讼行为经其他共同诉讼人承认，对其他共同诉讼人发生效力；对诉讼标的没有共同权利义务的，其中一人的诉讼行为对其他共同诉讼人不发生效力。

Where the parties on one side of a joint action have common rights and obligations regarding the subject matter of action, the litigation conduct of any of such parties shall bind the rest of such parties if the conduct is recognized by the rest of such parties; or where the parties on one side of a joint action have no common rights and obligations regarding the subject matter of action, the litigation conduct of any of such parties shall not bind the rest of such parties.

第五十六条　当事人一方人数众多的共同诉讼，可以由当事人推选代表人进行诉讼。代表人的诉讼行为对其所

代表的当事人发生效力，但代表人变更、放弃诉讼请求或者承认对方当事人的诉讼请求，进行和解，必须经被代表的当事人同意。

**Article 56** Where the parties on one side of a joint action is numerous, such parties may recommend a representative or representatives to participate in the action. The litigation conduct of such representatives shall bind all the parties represented; however, to modify or relinquish any claims, admit any claims of the opposing party or reach a settlement, such representatives must obtain a consent from the parties represented.

第五十七条　诉讼标的是同一种类、当事人一方人数众多在起诉时人数尚未确定的，人民法院可以发出公告，说明案件情况和诉讼请求，通知权利人在一定期间向人民法院登记。

**Article 57** Where the subject matter of action for each party is of the same kind, the parties on one side of an action are numerous, but the exact number of such parties is uncertain when the action is instituted, the people's court may publish a notice to describe the case and claims and notify right holders to register with the people's court within a certain period of time.

向人民法院登记的权利人可以推选代表人进行诉讼；推选不出代表人的，人民法院可以与参加登记的权利人商定代表人。

The right holders which have registered with the people's court may recommend a representative or representatives to participate in the litigation; and if no representative is recommended, the people's court may determine a representative or representatives in consultation with the right holders which have registered with the people's court.

代表人的诉讼行为对其所代表的当事人发生效力，但代表人变更、放弃诉讼请求或者承认对方当事人的诉讼请求，进行和解，必须经被代表的当事人同意。

The litigation conduct of such representatives shall bind all the parties represented; however, to modify or relinquish any claims, admit any claims of the opposing party or reach a settlement, such representatives must obtain a consent from the parties represented.

人民法院作出的判决、裁定，对参加登记的全体权利人发生效力。未参加登记的权利人在诉讼时效期间提起诉讼的，适用该判决、裁定。

The judgment or ruling issued by the people's court shall bind all right holders which have registered with the people's court. Such a judgment or ruling shall also apply to actions instituted during the time limitation by rights holders which have not registered with the people's court.

[CLI Code]CLI.1.5175519(EN)

第五十八条　对污染环境、侵害众多消费者合法权益等损害社会公共利益的行为，法律规定的机关和有关组织可以向人民法院提起诉讼。

**Article 58** For conduct that pollutes environment, infringes upon the lawful rights and interests of vast consumers or otherwise damages the public interest, an authority or relevant organization as prescribed by law may institute an action in a people's court.

人民检察院在履行职责中发现破坏生态环境和资源保护、食品药品安全领域侵害众多消费者合法权益等损害社会公共利益的行为，在没有前款规定的机关和组织或者前款规定的机关和组织不提起诉讼的情况下，可以向人民法院提起诉讼。前款规定的机关或者组织提起诉讼的，人民检察院可以支持起诉。

Where the people's procuratorate finds in the performance of functions any conduct that undermines the protection of the ecological environment and resources, infringes upon consumers' lawful rights and interests in the field of food and drug safety or any other conduct that damages social interest, it may file a lawsuit with the people's court if there is no authority or organization prescribed in the preceding paragraph or the authority or organization prescribed in the preceding paragraph does not file a lawsuit. If the authority or organization prescribed in the preceding paragraph files a lawsuit, the people's procuratorate may support the filing of a lawsuit.

第五十九条　对当事人双方的诉讼标的，第三人认为有独立请求权的，有权提起诉讼。

**Article 59** A third party which deems that it has an independent claim regarding the subject matter of an action between two parties shall have the right to institute an action.

对当事人双方的诉讼标的，第三人虽然没有独立请求权，但案件处理结果同他有法律上的利害关系的，可以申请参加诉讼，或者由人民法院通知他参加诉讼。人民法院判决承担民事责任的第三人，有当事人的诉讼权利义务。

Where a third party does not have an independent claim regarding the subject matter of an action between two parties but is an interested party in law to the outcome of the case, the third party may apply to participate in the action or the people's court may notify the third party to participate in the action. If the third party assumes any civil liability according to the judgment entered by the people's court, the third party shall have the procedural rights and obligations as a party to the action.

前两款规定的第三人，因不能归责于本人的事由未参加诉讼，但有证据证明发生法律效力的判决、裁定、调解书的部分或者全部内容错误，损害其民事权益的，可以自知道或者应当知道其民事权益受到损害之日起六个月内，向作出该判决、裁定、调解书的人民法院提起诉讼。人民法院经审理，诉讼请求成立的，应当改变或者撤销原判决、裁定、调解书；诉讼请求不成立的，驳回诉讼请求。

Saved on: 02/22/2025

Where a third party as mentioned in the preceding two paragraphs fails to participate in an action, which is not attributable to the third party's fault, and there is evidence that an effective judgment, ruling or consent judgment is entirely or partially erroneous and causes damage to the third party's civil rights and interests, the third party may, within six months from the day when the third party knows or should have known that the third party's civil rights and interests have been damaged, institute an action in the people's court which entered the judgment, ruling or consent judgment. If, after trial, the third party's claims are supported, the people's court shall modify or revoke the original judgment, ruling or consent judgment; or if the third party's claims are not supported, the claims shall be dismissed.

第二节　诉讼代理人

Section 2 Litigation Representatives

第六十条　无诉讼行为能力人由他的监护人作为法定代理人代为诉讼。法定代理人之间互相推诿代理责任的，由人民法院指定其中一人代为诉讼。

**Article 60** The guardian of a person without competency to participate in an action shall participate in the action on behalf of the person as the person's legal representative. If the legal representatives of a person shift their duty of representation onto each other, the people's court shall specify one of them to participate in the action on behalf of the person.

第六十一条　当事人、法定代理人可以委托一至二人作为诉讼代理人。

**Article 61** A party or a legal representative may retain one or two persons as litigation representatives.

下列人员可以被委托为诉讼代理人：

The following persons may serve as a litigation representative:

（一）律师、基层法律服务工作者；

(1) A lawyer or legal service worker at the basic level.

（二）当事人的近亲属或者工作人员；

(2) A close relative or staff member of a party.

（三）当事人所在社区、单位以及有关社会团体推荐的公民。

(3) A citizen recommended by the community of or the entity employing a party or recommended by a relevant social group.

第六十二条　委托他人代为诉讼，必须向人民法院提交由委托人签名或者盖章的授权委托书。

**Article 62** To participate in an action on behalf of a party or a legal representative, a litigation representative must submit to the people's court a power of attorney, to which the signature or seal of the party or legal representative is affixed.

授权委托书必须记明委托事项和权限。诉讼代理人代为承认、放弃、变更诉讼请求，进行和解，提起反诉或者上诉，必须有委托人的特别授权。

The power of attorney must state the authorized matters and the extent of authority. To admit, relinquish or modify any claims, reach a settlement, or file a counterclaim or an appeal on behalf of a party or a legal representative, a litigation representative must have a special authorization from the party or legal representative.

侨居在国外的中华人民共和国公民从国外寄交或者托交的授权委托书，必须经中华人民共和国驻该国的使领馆证明；没有使领馆的，由与中华人民共和国有外交关系的第三国驻该国的使领馆证明，再转由中华人民共和国驻该第三国使领馆证明，或者由当地的爱国华侨团体证明。

Where a citizen of the People's Republic of China who is residing in a foreign country posts a power of attorney or delivers through another person a power of attorney to China, the power of attorney must be authenticated by the embassy or consulate of the People's Republic of China in that country. If there is no such an embassy or consulate in that country, the power of attorney shall be first authenticated by an embassy or consulate of a third country which has a diplomatic relationship with the People's Republic of China in that country and then be authenticated by the embassy or consulate of the People's Republic of China in the third country or be authenticated by the local patriotic overseas Chinese organization.

第六十三条　诉讼代理人的权限如果变更或者解除，当事人应当书面告知人民法院，并由人民法院通知对方当事人。

**Article 63** Where the authority of a litigation representative of a party has changed or has been revoked, the party shall notify the people's court in writing and the people's court shall notify the opposing party of the change or revocation.

[CLI Code]CLI.1.5175519(EN)

第六十四条　代理诉讼的律师和其他诉讼代理人有权调查收集证据，可以查阅本案有关材料。查阅本案有关材料的范围和办法由最高人民法院规定。

**Article 64** Lawyers serving as litigation representatives and other litigation representatives shall have the right to investigate and collect evidence and may consult materials related to the case. The scope of and measures for consulting materials related to a case shall be prescribed by the Supreme People's Court.

第六十五条　离婚案件有诉讼代理人的，本人除不能表达意思的以外，仍应出庭；确因特殊情况无法出庭的，必须向人民法院提交书面意见。

**Article 65** Where a party to a divorce case has appointed a litigation representative, the party shall still appear in court unless the party is unable to express his or her ideas; and if the party is unable to appear in court under special circumstances, the party must submit a written opinion to the people's court.

第六章　证　据

Chapter 6 Evidence

第六十六条　证据包括：

**Article 66** Evidence includes:

（一）当事人的陈述；

(1) statement of a party;

（二）书证；

(2) documentary evidence;

（三）物证；

(3) physical evidence;

（四）视听资料；

(4) audio-visual recordings;

（五）电子数据；

(5) electronic data;

（六）证人证言；

(6) witness testimony;

（七）鉴定意见；

(7) expert opinion; and

（八）勘验笔录。

(8) transcripts of survey.

证据必须查证属实，才能作为认定事实的根据。

Evidence must be verified before being used as a basis for deciding a fact.

第六十七条　当事人对自己提出的主张，有责任提供证据。

**Article 67** A party shall have the burden to provide evidence for its claims.

当事人及其诉讼代理人因客观原因不能自行收集的证据，或者人民法院认为审理案件需要的证据，人民法院应当调查收集。

A people's court shall investigate and collect evidence which a party and its litigation representative are unable to collect for some objective reasons and evidence which the people's court deems necessary for trying a case.

人民法院应当按照法定程序，全面地、客观地审查核实证据。

A people's court shall, under statutory procedures, verify evidence comprehensively and objectively.

第六十八条　当事人对自己提出的主张应当及时提供证据。

**Article 68** A party shall provide evidence for its claims in a timely manner.

人民法院根据当事人的主张和案件审理情况，确定当事人应当提供的证据及其期限。当事人在该期限内提供证据确有困难的，可以向人民法院申请延长期限，人民法院根据当事人的申请适当延长。当事人逾期提供证据的，人民法院应当责令其说明理由；拒不说明理由或者理由不成立的，人民法院根据不同情形可以不予采纳该证据，或者采纳该证据但予以训诫、罚款。

[CLI Code]CLI.1.5175519(EN)

A people's court shall, according to the claims of a party and the circumstances of trial of a case, determine the evidence to be provided by a party and the time limit for provision of evidence. Where it is difficult for a party to provide evidence within the time limit, the party may apply to the people's court for an extension, and the people's court may appropriately extend the time limit upon application of the party. Where a party provides any evidence beyond the time limit, the people's court shall order the party to provide an explanation; and if the party refuses to explain or the party's explanation is not acceptable, the people's court may, according to different circumstances, deem the evidence inadmissible or adopt the evidence but impose an admonition or a fine on the party.

第六十九条　人民法院收到当事人提交的证据材料，应当出具收据，写明证据名称、页数、份数、原件或者复印件以及收到时间等，并由经办人员签名或者盖章。

**Article 69** A people's court shall issue receipts for evidentiary materials submitted to the court by a party, indicating the name of evidence, number of pages, number of copies, original or photocopy, time of receipt, and other matters, to which the signatures or seals of the court personnel receiving the same shall be affixed.

第七十条　人民法院有权向有关单位和个人调查取证，有关单位和个人不得拒绝。

**Article 70** A people's court shall have the authority to investigate and collect evidence from the relevant entities and individuals, and the relevant entities and individuals shall not refuse such investigation and collection of evidence.

人民法院对有关单位和个人提出的证明文书，应当辨别真伪，审查确定其效力。

A people's court shall identify the authenticity and examine and determine the validity of documentary evidence provided by the relevant entities and individuals.

第七十一条　证据应当在法庭上出示，并由当事人互相质证。对涉及国家秘密、商业秘密和个人隐私的证据应当保密，需要在法庭出示的，不得在公开开庭时出示。

**Article 71** Evidence shall be presented in court and cross-examined by the parties. Evidence which involves any state secret, trade secret or individual privacy shall be kept confidential, and if it is necessary to present such evidence in court, such evidence shall not be presented in open court.

第七十二条　经过法定程序公证证明的法律事实和文书，人民法院应当作为认定事实的根据，但有相反证据足

[CLI Code]CLI.1.5175519(EN)

以推翻公证证明的除外。

**Article 72** A people's court shall regard legal facts and documents notarized under statutory procedures as a basis for deciding facts, unless there is any evidence to the contrary which suffices to overturn the notarization.

第七十三条　书证应当提交原件。物证应当提交原物。提交原件或者原物确有困难的，可以提交复制品、照片、副本、节录本。

**Article 73** The originals as documentary evidence shall be submitted. The originals as physical evidence shall be submitted. If it is difficult to submit the originals, replicas, photographs, copies or extracts may be submitted.

提交外文书证，必须附有中文译本。

Documentary evidence in a foreign language must be submitted with Chinese versions.

第七十四条　人民法院对视听资料，应当辨别真伪，并结合本案的其他证据，审查确定能否作为认定事实的根据。

**Article 74** The people's court shall identify the authenticity of audio-visual recordings and, in consideration of other evidence in the case, examine and determine whether the audio-visual recordings may serve as a basis for deciding facts.

第七十五条　凡是知道案件情况的单位和个人，都有义务出庭作证。有关单位的负责人应当支持证人作证。

**Article 75** Any entity or individual which knows any circumstances of a case shall have the obligation to testify in court. The person in charge of a relevant entity shall support a witness in testifying.

不能正确表达意思的人，不能作证。

A person who is unable to appropriately express his or her ideas shall not testify.

第七十六条　经人民法院通知，证人应当出庭作证。有下列情形之一的，经人民法院许可，可以通过书面证言、视听传输技术或者视听资料等方式作证：

**Article 76** Upon notice by a people's court, a witness shall testify in court. Under any of the following circumstances, a witness may testify by written testimony, audio-visual transmission technology, audio-visual recordings or any other means as permitted by a people's court:

Saved on: 02/22/2025

[CLI Code]CLI.1.5175519(EN)

（一）因健康原因不能出庭的；

(1) The witness is unable to appear in court for health reasons.

（二）因路途遥远，交通不便不能出庭的；

(2) The witness is unable to appear in court for remote residence and travel difficulty.

（三）因自然灾害等不可抗力不能出庭的；

(3) The witness is unable to appear in court for a force majeure such as a natural disaster.

（四）其他有正当理由不能出庭的。

(4) The witness is unable to appear in court for any other justifiable reason.

第七十七条　证人因履行出庭作证义务而支出的交通、住宿、就餐等必要费用以及误工损失，由败诉一方当事人负担。当事人申请证人作证的，由该当事人先行垫付；当事人没有申请，人民法院通知证人作证的，由人民法院先行垫付。

**Article 77** The travel, room and board, and other necessary expenses of a witness for performing his or her obligation of testifying in court, as well as loss of working time, shall be assumed by the losing party. A party which applies for a witness to testify shall advance the same; or if no party applies and the people's court notifies a witness to testify, the people's court shall advance the same.

第七十八条　人民法院对当事人的陈述，应当结合本案的其他证据，审查确定能否作为认定事实的根据。

**Article 78** A people's court shall, in consideration of other evidence in the case, examine and determine whether the statements of a party may serve as a basis for deciding facts.

当事人拒绝陈述的，不影响人民法院根据证据认定案件事实。

The deciding of facts of a case by a people's court based on evidence shall not be affected by a party's refusal to provide a statement.

第七十九条　当事人可以就查明事实的专门性问题向人民法院申请鉴定。当事人申请鉴定的，由双方当事人协商确定具备资格的鉴定人；协商不成的，由人民法院指定。

**Article 79** A party may apply to the people's court for identification regarding a specialized issue

[CLI Code]CLI.1.5175519(EN)

for ascertaining the facts of a case. Where a party applies for identification, the parties on both sides shall determine a qualified identification expert by consultation; or if such consultation fails, the people's court shall specify one for them.

当事人未申请鉴定，人民法院对专门性问题认为需要鉴定的，应当委托具备资格的鉴定人进行鉴定。
Where no party applies for identification but the people's court deems it necessary to conduct identification regarding a specialized issue, the people's court shall employ a qualified identification expert to conduct identification.

第八十条　鉴定人有权了解进行鉴定所需要的案件材料，必要时可以询问当事人、证人。
**Article 80** An identification expert shall have the right to access the case file needed for conducting identification and, when necessary, may interview a party or a witness.

鉴定人应当提出书面鉴定意见，在鉴定书上签名或者盖章。
An identification expert shall issue a written identification opinion and affix his or her signature or seal to the identification document.

第八十一条　当事人对鉴定意见有异议或者人民法院认为鉴定人有必要出庭的，鉴定人应当出庭作证。经人民法院通知，鉴定人拒不出庭作证的，鉴定意见不得作为认定事实的根据；支付鉴定费用的当事人可以要求返还鉴定费用。
**Article 81** Where a party raises any objection to an identification opinion or a people's court deems it necessary to require an identification expert to testify in court, the identification expert shall testify in court. If, upon notice by the people's court, the identification expert refuses to testify in court, the identification opinion shall not be used as a basis for deciding facts; and the party which has paid the identification fees may require that the identification fees be refunded.

第八十二条　当事人可以申请人民法院通知有专门知识的人出庭，就鉴定人作出的鉴定意见或者专业问题提出意见。
**Article 82** A party may apply to the people's court for notifying a person with expertise to appear in court to offer an opinion regarding an identification opinion issued by an identification expert or regarding a specialized issue.

第八十三条　勘验物证或者现场，勘验人必须出示人民法院的证件，并邀请当地基层组织或者当事人所在单位

派人参加。当事人或者当事人的成年家属应当到场，拒不到场的，不影响勘验的进行。

**Article 83** When surveying any physical evidence or a site, the surveyors must produce their credentials issued by a people's court and invite the local grassroots organization or the entity employing a party to send personnel to participate in the survey. The party or an adult family member of the party shall be present; and the survey shall not be affected by the refusal of the party or the adult family member to appear on site.

有关单位和个人根据人民法院的通知，有义务保护现场，协助勘验工作。
Upon notice by the people's court, the relevant entities and individuals shall have the obligations to protect the site and assist in the survey.

勘验人应当将勘验情况和结果制作笔录，由勘验人、当事人和被邀参加人签名或者盖章。
The surveyors shall prepare transcripts of the process and results of survey, to which the surveyors, the party and the invited participants shall affix their signatures or seals.

第八十四条　在证据可能灭失或者以后难以取得的情况下，当事人可以在诉讼过程中向人民法院申请保全证据，人民法院也可以主动采取保全措施。

**Article 84** Where any evidence may be extinguished or may be hard to obtain at a later time, a party may, in the course of an action, apply to the people's court for evidence preservation, and the people's court may also take preservation measures on its own initiative.

因情况紧急，在证据可能灭失或者以后难以取得的情况下，利害关系人可以在提起诉讼或者申请仲裁前向证据所在地、被申请人住所地或者对案件有管辖权的人民法院申请保全证据。
Where any evidence may be extinguished or may be hard to obtain at a later time, if the circumstances are urgent, an interested party may, before instituting an action or applying for arbitration, apply for evidence preservation to a people's court at the place where the evidence is located or at the place of domicile of the respondent or a people's court having jurisdiction over the case.

证据保全的其他程序，参照适用本法第九章保全的有关规定。
Other procedures for evidence preservation shall be executed by reference to the relevant provisions of Chapter 9 of this Law regarding preservation.

第七章　期间、送达

Saved on: 02/22/2025

 
Chapter 7 Periods and Service of Process

第一节　期　间

Section 1 Periods

第八十五条　期间包括法定期间和人民法院指定的期间。

**Article 85** Periods include statutory periods and periods prescribed by a people's court.

期间以时、日、月、年计算。期间开始的时和日，不计算在期间内。

Periods shall be calculated by hour, day, month and year. The beginning hour and day of a period shall not be counted in the period.

期间届满的最后一日是法定休假日的，以法定休假日后的第一日为期间届满的日期。

If the expiration date of a period falls on a legal holiday, the first day after the legal holiday shall be the expiration date of the period.

期间不包括在途时间，诉讼文书在期满前交邮的，不算过期。

A statutory period shall not include the time en route. A litigation document posted before the expiration date of a period shall not be regarded as past due.

第八十六条　当事人因不可抗拒的事由或者其他正当理由耽误期限的，在障碍消除后的十日内，可以申请顺延期限，是否准许，由人民法院决定。

**Article 86** Where a party fails to comply with a period for reasons beyond the party's control or for any other justifiable reasons, the party may apply for an extension of the period within ten days after the impediment is eliminated, and the people's court shall decide whether to permit such an extension.

第二节　送　达

Section 2 Service of Process

第八十七条　送达诉讼文书必须有送达回证，由受送达人在送达回证上记明收到日期，签名或者盖章。

**Article 87** Service of process must be accompanied with a service acknowledgement, to which the person to be served shall affix a date of receipt and his or her signature or seal.

Saved on: 02/22/2025

受送达人在送达回证上的签收日期为送达日期。

The date of receipt affixed to the service acknowledgement by the person to be served shall be the date of service.

第八十八条　送达诉讼文书，应当直接送交受送达人。受送达人是公民的，本人不在交他的同住成年家属签收；受送达人是法人或者其他组织的，应当由法人的法定代表人、其他组织的主要负责人或者该法人、组织负责收件的人签收；受送达人有诉讼代理人的，可以送交其代理人签收；受送达人已向人民法院指定代收人的，送交代收人签收。

**Article 88** Process shall be served directly on the person to be served. If the person to be served, who is a citizen, is absent, a cohabiting adult family member of the person to be served shall sign for the service of process. If the person to be served is a legal person or any other organization, the legal representative of the legal person, the primary person in charge of the organization or the employee of the legal person or organization responsible for receiving process shall sign for the service of process. If the person to be served has a litigation representative, the litigation representative may sign for the service of process. If the person to be served has informed the people's court of a designated person to receive process, the designated person shall sign for the service of process.

受送达人的同住成年家属，法人或者其他组织的负责收件的人，诉讼代理人或者代收人在送达回证上签收的日期为送达日期。

The date of receipt affixed to the service acknowledgment by the cohabiting adult family member of the person to be served, the employee of the legal person or organization responsible for receiving process, the litigation representative or the designated person to receive process shall be the date of service.

第八十九条　受送达人或者他的同住成年家属拒绝接收诉讼文书的，送达人可以邀请有关基层组织或者所在单位的代表到场，说明情况，在送达回证上记明拒收事由和日期，由送达人、见证人签名或者盖章，把诉讼文书留在受送达人的住所；也可以把诉讼文书留在受送达人的住所，并采用拍照、录像等方式记录送达过程，即视为送达。

**Article 89** Where the person to be served refuses to receive or his or her cohabiting adult family member refuses to receive process, the process server may invite the representatives of relevant grassroots organizations or the entity employing the person to be served to be present, provide an explanation on the refusal, record the cause of refusal and date on the service acknowledgement, to which the process server and witnesses shall affix their signatures or seals, and drop process at

the domicile of the person to be served; and may also drop process at the domicile of the person to be served and record the service of process by photograph, video and other means, and process shall be deemed served.

第九十条　经受送达人同意，人民法院可以采用能够确认其收悉的电子方式送达诉讼文书。通过电子方式送达的判决书、裁定书、调解书，受送达人提出需要纸质文书的，人民法院应当提供。

**Article 90** With the consent of the person on whom a litigation document is to be served, a people's court may serve the litigation document by electronic means through which the receipt of the document can be confirmed. With respect to a judgment, ruling or consent judgment served by electronic means, if the person on whom it is served requests a paper document, the people's court shall provide such paper document.

采用前款方式送达的，以送达信息到达受送达人特定系统的日期为送达日期。

Where a litigation document is served in the manner set out in the preceding paragraph, the date when the information to be served reaches the system designated by the person on whom it is served shall be the date of service.

第九十一条　直接送达诉讼文书有困难的，可以委托其他人民法院代为送达，或者邮寄送达。邮寄送达的，以回执上注明的收件日期为送达日期。

**Article 91** Where direct service of process is difficult, service of process may be entrusted to another people's court or be conducted by post. If process is served by post, the date of receipt stated on the service acknowledgement shall be the date of service.

第九十二条　受送达人是军人的，通过其所在部队团以上单位的政治机关转交。

**Article 92** Where the person to be served is in the military service, process shall be served on the person through the political office of the unit at or above the regiment level of the armed force where the person serves.

第九十三条　受送达人被监禁的，通过其所在监所转交。

**Article 93** Where the person to be served is incarcerated, process shall be served on the person through the incarceration facility.

受送达人被采取强制性教育措施的，通过其所在强制性教育机构转交。

Saved on: 02/22/2025

[CLI Code]CLI.1.5175519(EN)

Where the person to be served is subject to any compulsory correctional measure, process shall be served on the person through the compulsory correctional facility.

第九十四条 代为转交的机关、单位收到诉讼文书后，必须立即交受送达人签收，以在送达回证上的签收日期，为送达日期。

**Article 94** The office or entity through which process is served must, immediately after receiving process, deliver the same to the person to be served, the person to be served shall sign for the service of process, and the date of receipt on the service acknowledgement shall be the date of service.

第九十五条 受送达人下落不明，或者用本节规定的其他方式无法送达的，公告送达。自发出公告之日起，经过三十日，即视为送达。

**Article 95** Where the whereabouts of the person on whom a litigation document is to be served are unknown, or if a litigation document cannot be served by any other means set out in this Section, the document shall be served by publication. The document shall be deemed to have been served 30 days after the publication.

公告送达，应当在案卷中记明原因和经过。

The reasons for and the course of service of process by public announcement shall be recorded in the case file.

第八章　调　解

Chapter 8 Mediation

第九十六条 人民法院审理民事案件，根据当事人自愿的原则，在事实清楚的基础上，分清是非，进行调解。

**Article 96** When trying civil cases, a people's court shall, under the principle of free will of the parties, conduct mediation by distinguishing between right and wrong based on clear facts.

第九十七条 人民法院进行调解，可以由审判员一人主持，也可以由合议庭主持，并尽可能就地进行。

**Article 97** When a people's court conducts mediation, mediation may be conducted by one judge or by the collegial bench, and mediation shall be conducted on the spot as much as possible.

人民法院进行调解，可以用简便方式通知当事人、证人到庭。

[CLI Code]CLI.1.5175519(EN)

When a people's court conducts mediation, it may notify by simple means the parties and witnesses to appear in court.

第九十八条 人民法院进行调解，可以邀请有关单位和个人协助。被邀请的单位和个人，应当协助人民法院进行调解。

**Article 98** When a people's court conducts mediation, it may invite relevant entities and individuals to provide assistance. The invited entities and individuals shall assist the people's court in mediation.

第九十九条 调解达成协议，必须双方自愿，不得强迫。调解协议的内容不得违反法律规定。

**Article 99** A mediation agreement must be based on the free will of both sides, and the parties shall not be forced to reach a mediation agreement. The content of a mediation agreement shall not violate any legal provisions.

第一百条 调解达成协议，人民法院应当制作调解书。调解书应当写明诉讼请求、案件的事实和调解结果。

**Article 100** When a mediation agreement is reached, the people's court shall prepare a consent judgment. A consent judgment shall state the claims, facts of the case and results of mediation.

调解书由审判人员、书记员署名，加盖人民法院印章，送达双方当事人。

The judges and court clerk shall affix their signatures and the people's court shall affix its seal to a consent judgment, which shall be served on both sides.

调解书经双方当事人签收后，即具有法律效力。

Once a consent judgment is signed by both sides, it shall become legally binding.

第一百零一条 下列案件调解达成协议，人民法院可以不制作调解书：

**Article 101** A consent judgment of a people's court is not required for mediation agreements reached in the following cases:

（一）调解和好的离婚案件；

(1) Divorce cases where both parties have reconciled through mediation.

（二）调解维持收养关系的案件；

(2) Adoption cases where an adoptive relationship has been maintained through mediation.

（三）能够即时履行的案件；

(3) Cases where performance on the spot is possible.

（四）其他不需要制作调解书的案件。

(4) Other cases where a consent judgment is not required.

对不需要制作调解书的协议，应当记入笔录，由双方当事人、审判人员、书记员签名或者盖章后，即具有法律效力。

A mediation agreement which does not require a consent judgment shall be recorded in the transcripts and become legally binding immediately after both sides and the judges and court clerk affix their signatures or seals to the transcripts.

第一百零二条　调解未达成协议或者调解书送达前一方反悔的，人民法院应当及时判决。

**Article 102** Where no mediation agreement is reached or one party retracts before a mediation agreement is served on the party, the people's court shall enter a judgment in a timely manner.

第九章　保全和先予执行

Chapter 9 Preservation and Advance Enforcement

第一百零三条　人民法院对于可能因当事人一方的行为或者其他原因，使判决难以执行或者造成当事人其他损害的案件，根据对方当事人的申请，可以裁定对其财产进行保全、责令其作出一定行为或者禁止其作出一定行为；当事人没有提出申请的，人民法院在必要时也可以裁定采取保全措施。

**Article 103** For a case where, for the conduct of a party or for other reasons, it may be difficult to execute a judgment or any other damage may be caused to a party, a people's court may, upon application of the opposing party, issue a ruling on preservation of the party's property, order certain conduct of the party or prohibit the party from certain conduct; and if no party applies, the people's court may, when necessary, issue a ruling to take a preservative measure.

人民法院采取保全措施，可以责令申请人提供担保，申请人不提供担保的，裁定驳回申请。

A people's court may order the applicant to provide security for taking a preservative measure and, if the applicant fails to provide security, shall issue a ruling to dismiss the application.

[CLI Code]CLI.1.5175519(EN)

人民法院接受申请后，对情况紧急的，必须在四十八小时内作出裁定；裁定采取保全措施的，应当立即开始执行。

After accepting an application, a people's court must, if the circumstances are urgent, issue a ruling within 48 hours; and if it rules to take a preservative measure, the measure shall be executed immediately.

第一百零四条  利害关系人因情况紧急，不立即申请保全将会使其合法权益受到难以弥补的损害的，可以在提起诉讼或者申请仲裁前向被保全财产所在地、被申请人住所地或者对案件有管辖权的人民法院申请采取保全措施。申请人应当提供担保，不提供担保的，裁定驳回申请。

**Article 104** Where the lawful rights and interests of an interested party will be irreparable damaged if an application for preservation is not filed immediately under urgent circumstances, the interested party may, before instituting an action or applying for arbitration, apply to the people's court at the place where the property to be preserved is located or at the place of domicile of the respondent or a people's court having jurisdiction over the case for taking preservative measures. The applicant shall provide security and, if the applicant fails to provide security, the people's court shall issue a ruling to dismiss the application.

人民法院接受申请后，必须在四十八小时内作出裁定；裁定采取保全措施的，应当立即开始执行。

After accepting an application, a people's court must issue a ruling within 48 hours; and if it rules to take a preservative measure, the measure shall be executed immediately.

申请人在人民法院采取保全措施后三十日内不依法提起诉讼或者申请仲裁的，人民法院应当解除保全。

Where the applicant fails to institute an action or apply for arbitration in accordance with law within 30 days after the people's court takes a preservative measure, the people's court shall remove preservation.

第一百零五条  保全限于请求的范围，或者与本案有关的财物。

**Article 105** Preservation shall be limited to the extent specified in an application or the property in connection with the case.

第一百零六条  财产保全采取查封、扣押、冻结或者法律规定的其他方法。人民法院保全财产后，应当立即通知被保全财产的人。

**Article 106** Property shall be preserved by seizure, impoundment, freezing of account or any other

[CLI Code]CLI.1.5175519(EN)

means prescribed by law. After preserving any property, a people's court shall immediately notify the person whose property is preserved.

财产已被查封、冻结的，不得重复查封、冻结。

Property which has already been seized or frozen shall not be repeatedly seized or frozen.

第一百零七条　财产纠纷案件，被申请人提供担保的，人民法院应当裁定解除保全。

**Article 107** Where, in a property dispute case, the respondent has provided security, the people's court shall issue a ruling to remove preservation.

第一百零八条　申请有错误的，申请人应当赔偿被申请人因保全所遭受的损失。

**Article 108** Where an application is erroneous, the applicant shall compensate the respondent for any loss incurred from preservation.

第一百零九条　人民法院对下列案件，根据当事人的申请，可以裁定先予执行：

**Article 109** A people's court may, upon application of a party, issue a ruling on advance enforcement for the following cases:

（一）追索赡养费、扶养费、抚养费、抚恤金、医疗费用的；

(1) Cases to recover support for elderly parents, support for other adult dependants, child support, consolation money or medical expenses.

（二）追索劳动报酬的；

(2) Cases to recover labor remuneration.

（三）因情况紧急需要先予执行的。

(3) Cases requiring advance enforcement under urgent circumstances.

第一百一十条　人民法院裁定先予执行的，应当符合下列条件：

**Article 110** For a people's court to issue a ruling on advance enforcement, both of the following conditions shall be met:

（一）当事人之间权利义务关系明确，不先予执行将严重影响申请人的生活或者生产经营的；

(1)The rights and obligations between the parties are clear, and a denial of advance enforcement will seriously affect the life or business operation of the applicant.

（二）被申请人有履行能力。

(2)The respondent is capable of performance.

人民法院可以责令申请人提供担保，申请人不提供担保的，驳回申请。申请人败诉的，应当赔偿被申请人因先予执行遭受的财产损失。

The people's court may order the applicant to provide security; and if the applicant fails to provide security, shall dismiss the application. If the applicant loses the action, the applicant shall compensate the respondent for any property loss incurred from advance enforcement.

第一百一十一条　当事人对保全或者先予执行的裁定不服的，可以申请复议一次。复议期间不停止裁定的执行。

Article 111 Against a ruling on preservation or advance enforcement, a party may apply for reconsideration once. The enforcement of the ruling shall not be suspended during the period of reconsideration.

第十章　对妨害民事诉讼的强制措施

Chapter 10 Compulsory Measures against Obstruction of Civil Procedures

第一百一十二条　人民法院对必须到庭的被告，经两次传票传唤，无正当理由拒不到庭的，可以拘传。

Article 112 Where a defendant who must appear in court refuses to appear in court without justifiable reasons after being summonsed twice by a people's court, the people's court may summons the defendant by force.

第一百一十三条　诉讼参与人和其他人应当遵守法庭规则。

Article 113 Litigation participants and other persons shall abide by court rules.

人民法院对违反法庭规则的人，可以予以训诫，责令退出法庭或者予以罚款、拘留。

A people's court may admonish persons who violate court rules, order such persons to leave the court, or impose a fine or detention on such persons.

[CLI Code]CLI.1.5175519(EN)

人民法院对哄闹、冲击法庭，侮辱、诽谤、威胁、殴打审判人员，严重扰乱法庭秩序的人，依法追究刑事责任；情节较轻的，予以罚款、拘留。

For persons who clamor in a courtroom, attack a courtroom, or insult, defame, threaten or assault judges, seriously disrupting the order of the courtroom, the people's court shall investigate their criminal liability in accordance with law; or if the circumstances are not serious, impose a fine or detention on them.

第一百一十四条　诉讼参与人或者其他人有下列行为之一的，人民法院可以根据情节轻重予以罚款、拘留；构成犯罪的，依法追究刑事责任：

**Article 114** Where a litigation participant or any other person commits any of the following conduct, the people's court may impose a fine or detention on the litigation participant or person according to the severity of the circumstances; and if suspected of any crime, the litigation participant or person shall be subject to criminal liability in accordance with law.

（一）伪造、毁灭重要证据，妨碍人民法院审理案件的；

(1) Forging or destroying any material evidence, which obstructs the trial of the case by the people's court.

（二）以暴力、威胁、贿买方法阻止证人作证或者指使、贿买、胁迫他人作伪证的；

(2) Preventing a witness from testifying by violence, threat or bribery or instigating, bribing or coercing any other person to commit perjury.

（三）隐藏、转移、变卖、毁损已被查封、扣押的财产，或者已被清点并责令其保管的财产，转移已被冻结的财产的；

(3) Concealing, transferring, selling or destroying any seized or impounded property or any inventoried property under the custody of the litigation participant or person as ordered or transferring any frozen property.

（四）对司法工作人员、诉讼参加人、证人、翻译人员、鉴定人、勘验人、协助执行的人，进行侮辱、诽谤、诬陷、殴打或者打击报复的；

(4) Insulting, defaming, falsely incriminating, assaulting or retaliating any judge, primary litigation participant, witness, interpreter, identification expert, surveyor or person assisting in enforcement.

（五）以暴力、威胁或者其他方法阻碍司法工作人员执行职务的；

Saved on: 02/22/2025

(5) Obstructing judicial personnel from performing their duties by violence, threat or any other means.

（六）拒不履行人民法院已经发生法律效力的判决、裁定的。

(6) Refusing to execute any effective judgment or ruling of a people's court.

人民法院对有前款规定的行为之一的单位，可以对其主要负责人或者直接责任人员予以罚款、拘留；构成犯罪的，依法追究刑事责任。

Where an entity commits any of the conduct in the preceding paragraph, the people's court may impose a fine or detention on the primary person in charge or directly liable persons of the entity; and if suspected of any crime, such persons shall be subject to criminal liability in accordance with law.

第一百一十五条　当事人之间恶意串通，企图通过诉讼、调解等方式侵害国家利益、社会公共利益或者他人合法权益的，人民法院应当驳回其请求，并根据情节轻重予以罚款、拘留；构成犯罪的，依法追究刑事责任。

**Article 115** Where the parties maliciously collude with each other in an attempt to infringe upon the national interest, public interest, or the lawful rights and interests of others through litigation, mediation, or other means, a people's court shall dismiss their claims and impose a fine or detention on the parties according to the seriousness of the circumstances; and if it is criminally punishable, the offender shall be held criminally liable in accordance with the law.

当事人单方捏造民事案件基本事实，向人民法院提起诉讼，企图侵害国家利益、社会公共利益或者他人合法权益的，适用前款规定。

If a party unilaterally fabricates the basic facts of a civil case and institutes an action in a people's court in an attempt to infringe upon the national interest, public interest, or the lawful rights and interests of others, the provisions of the preceding paragraph shall apply.

第一百一十六条　被执行人与他人恶意串通，通过诉讼、仲裁、调解等方式逃避履行法律文书确定的义务的，人民法院应当根据情节轻重予以罚款、拘留；构成犯罪的，依法追究刑事责任。

**Article 116** Where the party against whom enforcement is sought, maliciously in collusion with other persons, evades performance of obligations determined in a legal instrument by litigation, arbitration, mediation or any other means, a people's court shall impose a fine or detention on them according to the severity of the circumstances; and if suspected of any crime, they shall be subject to criminal liability.

[CLI Code]CLI.1.5175519(EN)

第一百一十七条　有义务协助调查、执行的单位有下列行为之一的，人民法院除责令其履行协助义务外，并可以予以罚款：

**Article 117** Where an entity with an obligation to assist in investigation or enforcement commits any of the following conduct, the people's court may, in addition to ordering the entity to perform the obligation of assistance, impose a fine on the entity:

（一）有关单位拒绝或者妨碍人民法院调查取证的；

(1) The relevant entity refuses or obstructs investigation or collection of evidence by the people's court.

（二）有关单位接到人民法院协助执行通知书后，拒不协助查询、扣押、冻结、划拨、变价财产的；

(2) The relevant entity refuses to assist in property inquiry, seizure, freezing, transfer or sale, after receiving a notice of enforcement assistance from the people's court.

（三）有关单位接到人民法院协助执行通知书后，拒不协助扣留被执行人的收入、办理有关财产权证照转移手续、转交有关票证、证照或者其他财产的；

(3) The relevant entity refuses to assist in withholding the income of the party against whom enforcement is sought, handling the transfer of a relevant property right certificate, or delivering a relevant bill, certificate or license or any other relevant property, after receiving a notice of enforcement assistance from the people's court.

（四）其他拒绝协助执行的。

(4) The relevant entity otherwise refuses to assist in enforcement.

人民法院对有前款规定的行为之一的单位，可以对其主要负责人或者直接责任人员予以罚款；对仍不履行协助义务的，可以予以拘留；并可以向监察机关或者有关机关提出予以纪律处分的司法建议。

Where an entity commits any of the conduct in the preceding paragraph, the people's court may impose a fine on the primary person in charge or directly liable persons of the entity; and if the entity still fails to perform its obligation to provide assistance, may detain such persons and offer judicial recommendations to the oversight authority or other relevant authorities regarding disciplinary actions against such persons.

第一百一十八条　对个人的罚款金额，为人民币十万元以下。对单位的罚款金额，为人民币五万元以上一百万

[CLI Code]CLI.1.5175519(EN)

元以下。

**Article 118** The amount of a fine on an individual shall not be more than 100,000 yuan. The amount of a fine on an entity shall not be less than 50,000 yuan but not be more than 1 million yuan.

拘留的期限，为十五日以下。

The period of detention shall not be longer than 15 days.

被拘留的人，由人民法院交公安机关看管。在拘留期间，被拘留人承认并改正错误的，人民法院可以决定提前解除拘留。

A people's court shall deliver a detainee to a public security authority for custody. If the detainee admits and corrects his or her wrongdoing during the period of detention, the people's court may decide to discharge the detainee early.

第一百一十九条　拘传、罚款、拘留必须经院长批准。

**Article 119** A summons by force, a fine or detention must subject to the approval of the president of a people's court.

拘传应当发拘传票。

A warrant shall be issued for a summons by force.

罚款、拘留应当用决定书。对决定不服的，可以向上一级人民法院申请复议一次。复议期间不停止执行。

A written decision shall be made to impose a fine or detention. Against such a decision, a party may apply to the people's court at the next higher level for reconsideration once. The enforcement of the decision shall not be suspended during the period of reconsideration.

第一百二十条　采取对妨害民事诉讼的强制措施必须由人民法院决定。任何单位和个人采取非法拘禁他人或者非法私自扣押他人财产追索债务的，应当依法追究刑事责任，或者予以拘留、罚款。

**Article 120** Any compulsory measure against obstruction of civil procedures must be taken upon decision of a people's court. Any entity or individual which recovers a debt by illegally withholding another person against the person's will or illegally seizing another person's property shall be subject to criminal liability in accordance with law or subject to detention or a fine.

Saved on: 02/22/2025

第十一章　诉讼费用

Chapter 11 Litigation Expenses

第一百二十一条　当事人进行民事诉讼，应当按照规定交纳案件受理费。财产案件除交纳案件受理费外，并按照规定交纳其他诉讼费用。

**Article 121** A party instituting a civil action shall pay a case acceptance fee according to the relevant provisions. In property cases, a party shall pay other litigation expenses, in addition to a case acceptance fee.

当事人交纳诉讼费用确有困难的，可以按照规定向人民法院申请缓交、减交或者免交。

Where it is difficult for a party to pay any litigation expenses, the party may, according to the relevant provisions, apply to the people's court for payment postponement, reduction or waiver.

收取诉讼费用的办法另行制定。

Procedures for collection of litigation expenses shall be formulated separately.

第二编　审判程序

Part Two Trial Procedure

第十二章　第一审普通程序

Chapter 12 Formal Procedure at First Instance

第一节　起诉和受理

Section 1 Instituting and Accepting an Action

第一百二十二条　起诉必须符合下列条件：

**Article 122** An action to be instituted must meet all of the following conditions:

（一）原告是与本案有直接利害关系的公民、法人和其他组织；

(1) The plaintiff is a citizen, legal person or any other organization with a direct interest in the case.

（二）有明确的被告；

(2) There is a clear defendant.

（三）有具体的诉讼请求和事实、理由；

(3) There are specific claims, facts and reasons.

（四）属于人民法院受理民事诉讼的范围和受诉人民法院管辖。

(4) The case is within the scope of civil actions accepted by the people's courts and under the jurisdiction of the people's court in which the action is instituted.

第一百二十三条　起诉应当向人民法院递交起诉状，并按照被告人数提出副本。

**Article 123** A plaintiff shall submit a written complaint to the people's court and provide copies of it according to the number of defendants.

书写起诉状确有困难的，可以口头起诉，由人民法院记入笔录，并告知对方当事人。

Where it is difficult for a plaintiff to write a complaint, the plaintiff may institute an action verbally, and the people's court shall record it in the transcripts and notify the opposing party.

第一百二十四条　起诉状应当记明下列事项：

**Article 124** A written complaint shall state:

（一）原告的姓名、性别、年龄、民族、职业、工作单位、住所、联系方式，法人或者其他组织的名称、住所和法定代表人或者主要负责人的姓名、职务、联系方式；

(1) the name, gender, age, ethnicity, occupation, employer, domicile and contact methods of the plaintiff; or the name and domicile of a legal person or any other organization and the name, title and contact methods of the legal representative or primary person in charge thereof;

（二）被告的姓名、性别、工作单位、住所等信息，法人或者其他组织的名称、住所等信息；

(2) information on the defendant, including but not limited to name, gender, employer and domicile; and information on a legal person or any other organization, including but not limited to name and domicile;

（三）诉讼请求和所根据的事实与理由；

(2) claims and supporting facts and reasons; and

[CLI Code]CLI.1.5175519(EN)

（四）证据和证据来源，证人姓名和住所。

(3) evidence, sources of evidence, and names and domiciles of witnesses.

第一百二十五条　当事人起诉到人民法院的民事纠纷，适宜调解的，先行调解，但当事人拒绝调解的除外。

**Article 125** Where mediation is appropriate for the civil dispute involved in an action instituted by a party in a people's court, mediation shall be conducted first, unless the parties refuse mediation.

第一百二十六条　人民法院应当保障当事人依照法律规定享有的起诉权利。对符合本法第一百二十二条的起诉，必须受理。符合起诉条件的，应当在七日内立案，并通知当事人；不符合起诉条件的，应当在七日内作出裁定书，不予受理；原告对裁定不服的，可以提起上诉。

**Article 126** A people's court shall protect the right to sue enjoyed by a party in accordance with law. A people's court must accept an action instituted under Article 122 of this Law. A people's court shall, within seven days, docket a case which meets the conditions for instituting an action and notify the party; or issue a ruling within seven days to refuse to accept an action which fails to meet the conditions for instituting an action, and the plaintiff may appeal against the ruling.

第一百二十七条　人民法院对下列起诉，分别情形，予以处理：

**Article 127** A people's court shall handle the following actions according to different circumstances:

（一）依照行政诉讼法的规定，属于行政诉讼受案范围的，告知原告提起行政诉讼；

(1) Notifying the plaintiff to file an administrative lawsuit, if the case is within the scope of administrative lawsuits in accordance with the Administrative Litigation Law.

（二）依照法律规定，双方当事人达成书面仲裁协议申请仲裁、不得向人民法院起诉的，告知原告向仲裁机构申请仲裁；

(2) Notifying the plaintiff to apply to an arbitral institution for arbitration, if, in accordance with law, both parties shall apply for arbitration under a written arbitration agreement reached between them and are prohibited from instituting an action in a people's court.

（三）依照法律规定，应当由其他机关处理的争议，告知原告向有关机关申请解决；

(3) Notifying the plaintiff to apply to a relevant authority for settlement of a dispute, if, in accordance with law, the dispute shall be handled by other authorities.

Saved on: 02/22/2025

[CLI Code]CLI.1.5175519(EN)

（四）对不属于本院管辖的案件，告知原告向有管辖权的人民法院起诉；

(4) Notifying the plaintiff to institute an action in a people's court having jurisdiction, if the case is not within its jurisdiction.

（五）对判决、裁定、调解书已经发生法律效力的案件，当事人又起诉的，告知原告申请再审，但人民法院准许撤诉的裁定除外；

(5) Notifying the plaintiff to petition for retrial, except for a ruling of a people's court which allows withdrawal of an action, if a party institutes an action again for a case for which a judgment, ruling or consent judgment has come into force.

（六）依照法律规定，在一定期限内不得起诉的案件，在不得起诉的期限内起诉的，不予受理；

(6) Refusing to accept an action instituted during a period of prohibition from instituting an action, if, in accordance with law, the action shall not be instituted during a certain period.

（七）判决不准离婚和调解和好的离婚案件，判决、调解维持收养关系的案件，没有新情况、新理由，原告在六个月内又起诉的，不予受理。

(7) Refusing to accept an action instituted by the plaintiff without new developments or new reasons within six months for a divorce case where dissolution of marriage is not granted by a judgment or both parties have reconciled through mediation or for a case where an adoptive relationship is maintained by a judgment or through mediation.

第二节　审理前的准备

Section 2 Pretrial Preparations

第一百二十八条　人民法院应当在立案之日起五日内将起诉状副本发送被告，被告应当在收到之日起十五日内提出答辩状。答辩状应当记明被告的姓名、性别、年龄、民族、职业、工作单位、住所、联系方式；法人或者其他组织的名称、住所和法定代表人或者主要负责人的姓名、职务、联系方式。人民法院应当在收到答辩状之日起五日内将答辩状副本发送原告。

**Article 128** A people's court shall, within five days after docketing a case, serve a copy of the written complaint on the defendant, and the defendant shall submit a written statement of defense within 15 days after receiving the complaint. The written statement of defense shall state the name, gender, age, ethnicity, occupation, employer, domicile and contact methods of the defendant; or the name and domicile of a legal person or any other organization and the name,

Saved on: 02/22/2025


title and contact methods of the legal representative or primary person in charge thereof. The people's court shall, within five days after receiving the written statement of defense, serve a copy of it on the plaintiff.

被告不提出答辩状的，不影响人民法院审理。
The defendant's failure to submit a written statement of defense shall not affect the trial of the case by the people's court.

第一百二十九条　人民法院对决定受理的案件，应当在受理案件通知书和应诉通知书中向当事人告知有关的诉讼权利义务，或者口头告知。
**Article 129** After deciding to accept a case, a people's court shall notify the parties, verbally or in a notice of case acceptance or a notice of response to an action, of their relevant procedural rights and obligations.

第一百三十条　人民法院受理案件后，当事人对管辖权有异议的，应当在提交答辩状期间提出。人民法院对当事人提出的异议，应当审查。异议成立的，裁定将案件移送有管辖权的人民法院；异议不成立的，裁定驳回。
**Article 130** Where a party raises any objection to jurisdiction after a case is accepted by a people's court, the party shall file the objection with the people's court during the period of submitting a written statement of defense. The people's court shall examine the objection. If the objection is supported, the people's court shall issue a ruling to transfer the case to the people's court having jurisdiction; or if the objection is not supported, the people's court shall issue a ruling to dismiss the objection.

当事人未提出管辖异议，并应诉答辩或者提出反诉的，视为受诉人民法院有管辖权，但违反级别管辖和专属管辖规定的除外。
Where a party raises no objection to jurisdiction and responds to the action by submitting a written statement of defense or files a counterclaim, the people's court accepting the action shall be deemed to have jurisdiction, unless the provisions regarding hierarchical jurisdiction and exclusive jurisdiction are violated.

第一百三十一条　审判人员确定后，应当在三日内告知当事人。
**Article 131** The parties shall be notified of the composition of judges within three days after the composition is determined.

Saved on: 02/22/2025

[CLI Code]CLI.1.5175519(EN)

第一百三十二条　审判人员必须认真审核诉讼材料，调查收集必要的证据。

**Article 132** Judges must carefully examine case materials and investigate and collect necessary evidence.

第一百三十三条　人民法院派出人员进行调查时，应当向被调查人出示证件。

**Article 133** The personnel assigned by a people's court to conduct investigation shall produce their credentials to the person under investigation.

调查笔录经被调查人校阅后，由被调查人、调查人签名或者盖章。

The investigation transcripts shall be checked by the person under investigation and be signed or sealed by the person under investigation and the investigators.

第一百三十四条　人民法院在必要时可以委托外地人民法院调查。

**Article 134** A people's court may, when necessary, entrust investigation to a people's court in a different place.

委托调查，必须提出明确的项目和要求。受委托人民法院可以主动补充调查。

The entrusting people's court must specify the investigated matters and the investigation requirements. The entrusted people's court may conduct additional investigation on its own initiative.

受委托人民法院收到委托书后，应当在三十日内完成调查。因故不能完成的，应当在上述期限内函告委托人民法院。

The entrusted people's court shall complete investigation within 30 days after receiving a letter on entrusted investigation. If the entrusted people's court is unable to complete investigation for certain reasons, it shall notify the entrusting people's court in a letter within the aforesaid period.

第一百三十五条　必须共同进行诉讼的当事人没有参加诉讼的，人民法院应当通知其参加诉讼。

**Article 135** Where a party who must participate in a joint action fails to participate in the action, the people's court shall notify the party to participate in the action.

第一百三十六条　人民法院对受理的案件，分别情形，予以处理：

[CLI Code]CLI.1.5175519(EN)

**Article 136** A people's court shall handle accepted cases according to different circumstances:

（一）当事人没有争议，符合督促程序规定条件的，可以转入督促程序；

(1) Initiating the procedure for urging debt repayment at the court's discretion, if the parties are not in dispute and the prescribed conditions are met for initiating the procedure for urging debt repayment.

（二）开庭前可以调解的，采取调解方式及时解决纠纷；

(2) Resolving disputes in a timely manner through mediation, if pre-trial mediation is allowed.

（三）根据案件情况，确定适用简易程序或者普通程序；

(3) Determining the application of summary procedure or formal procedure according to the circumstances of a case.

（四）需要开庭审理的，通过要求当事人交换证据等方式，明确争议焦点。

(4) Clarifying the focus of disputes by requiring the parties to exchange evidence and other means, if it is necessary to hold a court session.

第三节　开庭审理

Section 3 Court Trial

第一百三十七条　人民法院审理民事案件，除涉及国家秘密、个人隐私或者法律另有规定的以外，应当公开进行。

**Article 137** A people's court shall try civil cases openly, except those involving any state secret or individual privacy or as otherwise provided by law.

离婚案件，涉及商业秘密的案件，当事人申请不公开审理的，可以不公开审理。

Divorce cases and cases involving any trade secret may be tried in camera upon application of the parties.

第一百三十八条　人民法院审理民事案件，根据需要进行巡回审理，就地办案。

**Article 138** A people's court may, as needed, try civil cases in a circuit manner and on the spot.

[CLI Code]CLI.1.5175519(EN)

第一百三十九条　人民法院审理民事案件，应当在开庭三日前通知当事人和其他诉讼参与人。公开审理的，应当公告当事人姓名、案由和开庭的时间、地点。

**Article 139** A people's court shall notify the parties and other litigation participants of the trial of a civil case three days before holding a court session. If the case is to be tried openly, the names of parties, cause of action, and time and location of court session shall be published.

第一百四十条　开庭审理前，书记员应当查明当事人和其他诉讼参与人是否到庭，宣布法庭纪律。

**Article 140** Before a court session begins, the court clerk shall check whether the parties and other litigation participants are present and announce court rules.

开庭审理时，由审判长或者独任审判员核对当事人，宣布案由，宣布审判人员、法官助理、书记员等的名单，告知当事人有关的诉讼权利义务，询问当事人是否提出回避申请。

When a court session is held, the presiding judge or single judge shall check the identity of each party, announce the cause of action, announce the names of judges, judges' assistants, and court clerks, among others, inform the parties of their relevant procedural rights and obligations, and ask the parties whether they request the disqualification of any person.

第一百四十一条　法庭调查按照下列顺序进行：

**Article 141** Court investigation shall be conducted in the following order:

（一）当事人陈述；

(1) The parties each present a statement.

（二）告知证人的权利义务，证人作证，宣读未到庭的证人证言；

(2) Witnesses are notified of their rights and obligations, witnesses testify, and the statements of absent witnesses are read.

（三）出示书证、物证、视听资料和电子数据；

(3) Documentary evidence, physical evidence, audio-visual recordings, and electronic data are adduced.

（四）宣读鉴定意见；

(4) Expert opinions are read.

[CLI Code]CLI.1.5175519(EN)

（五）宣读勘验笔录。

(5) Transcripts of survey are read.

第一百四十二条 当事人在法庭上可以提出新的证据。

**Article 142** The parties may adduce new evidence in court.

当事人经法庭许可，可以向证人、鉴定人、勘验人发问。

As permitted by the court, a party may question a witness, identification expert or surveyor.

当事人要求重新进行调查、鉴定或者勘验的，是否准许，由人民法院决定。

A party's request for reinvestigation, re-identification or resurvey shall be subject to the decision of the people's court.

第一百四十三条 原告增加诉讼请求，被告提出反诉，第三人提出与本案有关的诉讼请求，可以合并审理。

**Article 143** The added claims of a plaintiff, the counterclaim of a defendant, and a third party's claims related to the case may be tried concurrently.

第一百四十四条 法庭辩论按照下列顺序进行：

**Article 144** Court debate shall be conducted in the following order:

（一）原告及其诉讼代理人发言；

(1) The plaintiff and the litigation representative thereof present their case.

（二）被告及其诉讼代理人答辩；

(2) The defendant and the litigation representative thereof present their arguments.

（三）第三人及其诉讼代理人发言或者答辩；

(3) A third party and the litigation representative thereof present their case or their arguments.

（四）互相辩论。

(4) Debate among the parties.

法庭辩论终结，由审判长或者独任审判员按照原告、被告、第三人的先后顺序征询各方最后意见。

At the end of court debate, the presiding judge or single judge shall ask each side's final statement in the order of plaintiff, defendant and third party.

**第一百四十五条** 法庭辩论终结，应当依法作出判决。判决前能够调解的，还可以进行调解，调解不成的，应当及时判决。

**Article 145** After the end of court debate, a judgment shall be entered in accordance with law. Where mediation is possible before a judgment is entered, mediation may be conducted; and if mediation fails, a judgment shall be entered in a timely manner.

**第一百四十六条** 原告经传票传唤，无正当理由拒不到庭的，或者未经法庭许可中途退庭的，可以按撤诉处理；被告反诉的，可以缺席判决。

**Article 146** Where a plaintiff refuses to appear in court without justifiable reasons after being summonsed or leaves the courtroom during a court session without permission from the court, the court may deem that the plaintiff has withdrawn the action; and if the defendant has filed a counterclaim, the court may enter a default judgment.

**第一百四十七条** 被告经传票传唤，无正当理由拒不到庭的，或者未经法庭许可中途退庭的，可以缺席判决。

**Article 147** Where a defendant refuses to appear in court without justifiable reasons after being summonsed or leaves the courtroom during a court session without permission from the court, the court may enter a default judgment.

**第一百四十八条** 宣判前，原告申请撤诉的，是否准许，由人民法院裁定。

**Article 148** Where a plaintiff requests withdrawal of the action before a judgment is pronounced, the people's court shall issue a ruling on whether to grant such a request.

人民法院裁定不准许撤诉的，原告经传票传唤，无正当理由拒不到庭的，可以缺席判决。

If the people's court decides not to grant the request and the plaintiff refuses to appear in court without justifiable reasons after being summonsed, the people's court may enter a default judgment.

**第一百四十九条** 有下列情形之一的，可以延期开庭审理：

**Article 149** Under any of the following circumstances, a court session may be postponed:

（一）必须到庭的当事人和其他诉讼参与人有正当理由没有到庭的；

(1) A party or any other litigation participant which must appear in court fails to appear in court for justifiable reasons.

（二）当事人临时提出回避申请的；

(2) A party files an unexpected request for disqualification.

（三）需要通知新的证人到庭，调取新的证据，重新鉴定、勘验，或者需要补充调查的；

(3) It is necessary to notify a new witness to appear in court, collect new evidence, conduct re-identification or resurvey, or conduct further investigation.

（四）其他应当延期的情形。

(4) Other circumstances requiring postponement.

第一百五十条　书记员应当将法庭审理的全部活动记入笔录，由审判人员和书记员签名。

**Article 150** The court clerk shall record all court trial activities in transcripts, to which the judges and court clerk shall affix their signatures.

法庭笔录应当当庭宣读，也可以告知当事人和其他诉讼参与人当庭或者在五日内阅读。当事人和其他诉讼参与人认为对自己的陈述记录有遗漏或者差错的，有权申请补正。如果不予补正，应当将申请记录在案。

The court transcripts shall be read out in court, and the parties and other litigation participants may be notified to read the court transcripts in court or within five days. If the parties and other litigation participants deem that there are any omissions or errors in the court transcripts regarding their respective statements, they shall be entitled to request supplementation or correction. If no supplementation or correction is permitted, their requests shall be on record.

法庭笔录由当事人和其他诉讼参与人签名或者盖章。拒绝签名盖章的，记明情况附卷。

The parties and other litigation participants shall affix their signatures or seals to the court transcripts. The court transcripts shall record any refusals to affix signatures or seals and be attached to the case file.

第一百五十一条　人民法院对公开审理或者不公开审理的案件，一律公开宣告判决。

**Article 151** Whether a case is tried openly or in camera, a people's court shall, without exception,

pronounce its judgment publicly.

当庭宣判的，应当在十日内发送判决书；定期宣判的，宣判后立即发给判决书。

If a judgment is pronounced in court, a written judgment shall be issued within ten days; or if a judgment is pronounced later on a fixed date, a written judgment shall be issued immediately after pronouncement.

宣告判决时，必须告知当事人上诉权利、上诉期限和上诉的法院。

When a judgment is pronounced, the parties must be notified of their right to appeal, the time limit for appeal, and the appellate court.

宣告离婚判决，必须告知当事人在判决发生法律效力前不得另行结婚。

When a divorce judgment is pronounced, the parties must be notified that neither of them may marry another person before the judgment takes effect.

第一百五十二条　人民法院适用普通程序审理的案件，应当在立案之日起六个月内审结。有特殊情况需要延长的，经本院院长批准，可以延长六个月；还需要延长的，报请上级人民法院批准。

**Article 152** A people's court shall complete the trial of a case under formal procedure within six months after the case is docketed. If an extension of the period is necessary under special circumstances, the period may be extended for six months with the approval of the president of the court; and any further extension shall be subject to the approval of the superior of the people's court.

第四节　诉讼中止和终结

Section 4 Suspension and Termination of an Action

第一百五十三条　有下列情形之一的，中止诉讼：

**Article 153** Under any of the following circumstances, an action shall be suspended:

（一）一方当事人死亡，需要等待继承人表明是否参加诉讼的；

(1) A party dies and it is necessary to wait for his or her successors to indicate whether they will participate in the action.

（二）一方当事人丧失诉讼行为能力，尚未确定法定代理人的；

(2) A party loses his or her litigation competency and his or her legal representative has not been determined.

（三）作为一方当事人的法人或者其他组织终止，尚未确定权利义务承受人的；

(3) A party which is a legal person or any other organization is terminated and the successors to the rights and obligations of the party have not been determined.

（四）一方当事人因不可抗拒的事由，不能参加诉讼的；

(4) A party is unable to participate in the action for reasons beyond the party's control.

（五）本案必须以另一案的审理结果为依据，而另一案尚未审结的；

(5) The action must depend on the results of the trial of another case which has not been concluded.

（六）其他应当中止诉讼的情形。

(6) Other circumstances requiring suspension.

中止诉讼的原因消除后，恢复诉讼。

The action shall resume after the cause of suspension is eliminated.

第一百五十四条　有下列情形之一的，终结诉讼：

**Article 154** Under any of the following circumstances, an action shall be terminated:

（一）原告死亡，没有继承人，或者继承人放弃诉讼权利的；

(1)The plaintiff dies without successors or all of his or her successors waive their procedural rights.

（二）被告死亡，没有遗产，也没有应当承担义务的人的；

(2)The defendant dies without estate and without any person which shall assume the defendant's obligations.

（三）离婚案件一方当事人死亡的；

(3) In a divorce case, either party dies.

（四）追索赡养费、扶养费、抚养费以及解除收养关系案件的一方当事人死亡的。

(4) In a case to recover support for elderly parents, support for other adult dependants or child support or to rescind an adoptive relationship, either party dies.

第五节　判决和裁定

Section 5 Judgments and Rulings

第一百五十五条　判决书应当写明判决结果和作出该判决的理由。判决书内容包括：

**Article 155** A written judgment shall state the results of judgment and reasons for entering the judgment. The content of a written judgment includes:

（一）案由、诉讼请求、争议的事实和理由；

(1) the cause of action, claims, facts in dispute, and reasons;

（二）判决认定的事实和理由、适用的法律和理由；

(2) the facts found and reasons and the laws applied and reasons in the judgment;

（三）判决结果和诉讼费用的负担；

(3) the results of judgment and the assumption of litigation expenses; and

（四）上诉期间和上诉的法院。

(4) the time limit for filing an appeal and the appellate court.

判决书由审判人员、书记员署名，加盖人民法院印章。

The judges and court clerk shall affix their signatures and the people's court shall affix its seal to the written judgment.

第一百五十六条　人民法院审理案件，其中一部分事实已经清楚，可以就该部分先行判决。

**Article 156** Where a portion of the facts of a case tried by a people's court has been ascertained, the people's court may first enter a judgment regarding such facts.

第一百五十七条　裁定适用于下列范围：

**Article 157** The scope of application of a ruling shall include:

[CLI Code]CLI.1.5175519(EN)

（一）不予受理；

(1) Refusing to accept an action;

（二）对管辖权有异议的；

(2) Objection to jurisdiction;

（三）驳回起诉；

(3) Dismissing an action;

（四）保全和先予执行；

(4) Preservation and advance enforcement;

（五）准许或者不准许撤诉；

(5) Granting or not granting the withdrawal of an action;

（六）中止或者终结诉讼；

(6) Suspension or termination of an action;

（七）补正判决书中的笔误；

(7) Correcting typos in a written judgment;

（八）中止或者终结执行；

(8) Suspension or termination of enforcement;

（九）撤销或者不予执行仲裁裁决；

(9) revoking or not enforcing an arbitration award;

（十）不予执行公证机关赋予强制执行效力的债权文书；

(10) Refusing to enforce a debt instrument with enforceability legally granted by a notary office; and

（十一）其他需要裁定解决的事项。

(11) Other issues to be resolved by a ruling.

[CLI Code]CLI.1.5175519(EN)

对前款第一项至第三项裁定，可以上诉。

A ruling in items (1) to (3) of the preceding paragraph is appealable.

裁定书应当写明裁定结果和作出该裁定的理由。裁定书由审判人员、书记员署名，加盖人民法院印章。口头裁定的，记入笔录。

A written ruling shall state the results of ruling and reasons for issuing the ruling. The judges and court clerk shall affix their signatures and the people's court shall affix its seal to a written ruling. A verbal ruling shall be recorded in transcripts.

第一百五十八条　最高人民法院的判决、裁定，以及依法不准上诉或者超过上诉期没有上诉的判决、裁定，是发生法律效力的判决、裁定。

**Article 158** The judgments and rulings of the Supreme People's Court and the judgments and rulings not appealable in accordance with law or not appealed during the prescribed time limit shall be effective judgments and rulings.

第一百五十九条　公众可以查阅发生法律效力的判决书、裁定书，但涉及国家秘密、商业秘密和个人隐私的内容除外。

**Article 159** The public may consult effective written judgments and rulings, except content involving any national secret, trade secret or individual privacy.

第十三章　简易程序

Chapter 13 Summary Procedure

第一百六十条　基层人民法院和它派出的法庭审理事实清楚、权利义务关系明确、争议不大的简单的民事案件，适用本章规定。

**Article 160** Where a primary people's court and its detached tribunals try simple civil cases with clear facts, unambiguous rights and obligations and minor disputes, the provisions of this Chapter shall apply.

基层人民法院和它派出的法庭审理前款规定以外的民事案件，当事人双方也可以约定适用简易程序。

Where a primary people's court and its detached tribunals try civil cases other than those in the preceding paragraph, the parties may agree on the application of summary procedure.

[CLI Code]CLI.1.5175519(EN)

第一百六十一条　对简单的民事案件，原告可以口头起诉。

**Article 161** In simple civil cases, the plaintiff may institute an action verbally.

当事人双方可以同时到基层人民法院或者它派出的法庭，请求解决纠纷。基层人民法院或者它派出的法庭可以当即审理，也可以另定日期审理。

Both sides may appear at the same time before a primary people's court or its detached tribunal for resolution of a dispute. The primary people's court or its detached tribunal may try the case immediately or schedule the trial for anther day.

第一百六十二条　基层人民法院和它派出的法庭审理简单的民事案件，可以用简便方式传唤当事人和证人、送达诉讼文书、审理案件，但应当保障当事人陈述意见的权利。

**Article 162** When trying simple civil cases, a primary people's court and its detached tribunals may, in simple manners, summon the parties and witnesses, serve process and try cases but shall protect the parties' right to present a statement.

第一百六十三条　简单的民事案件由审判员一人独任审理，并不受本法第一百三十九条、第一百四十一条、第一百四十四条规定的限制。

**Article 163** Not subject to Articles 139, 141 and 144 of this Law, a simple civil case shall be tried by a sole judge.

第一百六十四条　人民法院适用简易程序审理案件，应当在立案之日起三个月内审结。有特殊情况需要延长的，经本院院长批准，可以延长一个月。

**Article 164** A people's court which tries a case under the summary procedure shall complete the trial of the case within three months after the case is docketed. If an extension is needed under special circumstances, an extension of one month may be granted with the approval of the president of the court.

第一百六十五条　基层人民法院和它派出的法庭审理事实清楚、权利义务关系明确、争议不大的简单金钱给付民事案件，标的额为各省、自治区、直辖市上年度就业人员年平均工资百分之五十以下的，适用小额诉讼的程序审理，实行一审终审。

**Article 165** Where a primary people's court or its detached tribunal tries a simple civil case on

[CLI Code]CLI.1.5175519(EN)

pecuniary payment with clear facts, unambiguous rights and obligations, and a minor dispute, if the amount of subject matter is not more than 50 percent of the average annual wage of workers in the province, autonomous region or municipality directly under the Central Government in the previous year, the case shall be tried under the small claims procedure, and the judgement of the first instance shall be final.

基层人民法院和它派出的法庭审理前款规定的民事案件，标的额超过各省、自治区、直辖市上年度就业人员年平均工资百分之五十但在二倍以下的，当事人双方也可以约定适用小额诉讼的程序。

Where the primary people's court or its detached tribunal tries a civil case prescribed in the preceding paragraph, if the amount of subject matter exceeds 50 percent of but is not more than two times the average annual wage of workers in the province, autonomous region or municipality directly under the Central Government in the previous year, both parties may also agree on the application of the small claims procedure."

第一百六十六条　人民法院审理下列民事案件，不适用小额诉讼的程序：

**Article 166** The small claims procedure shall not apply to the trial of the following civil cases by people's courts:

（一）人身关系、财产确权案件；

(1) Cases on personal relationship and property right confirmation.

（二）涉外案件；

(2) Foreign-related cases.

（三）需要评估、鉴定或者对诉前评估、鉴定结果有异议的案件；

(3) Cases in which appraisal or identification is required or any objection is raised to the pre-action appraisal or identification result.

（四）一方当事人下落不明的案件；

(4) Cases in which the whereabouts of a party are unknown.

（五）当事人提出反诉的案件；

(5) Cases in which a party files a counterclaim.

[CLI Code]CLI.1.5175519(EN)

（六）其他不宜适用小额诉讼的程序审理的案件。

(6) Other cases the trial of which under the small claims procedure is inappropriate.


第一百六十七条　人民法院适用小额诉讼的程序审理案件，可以一次开庭审结并且当庭宣判。

**Article 167** A case tried by a people's court under the small claims procedure may generally be concluded in one court session, and a judgment shall be pronounced in court.


第一百六十八条　人民法院适用小额诉讼的程序审理案件，应当在立案之日起两个月内审结。有特殊情况需要延长的，经本院院长批准，可以延长一个月。

**Article 168** A case tried by a people's court under the small claims procedure shall be concluded within two months after the case is docketed. If an extension is needed under special circumstances, an extension of one month may be granted with the approval of the president of the court.


第一百六十九条　人民法院在审理过程中，发现案件不宜适用小额诉讼的程序的，应当适用简易程序的其他规定审理或者裁定转为普通程序。

**Article 169** A people's court which discovers during the trial of a case that the application of the small claims procedure is inappropriate for the case, it shall try the case under other provisions of the summary procedure or rule to try the case under the ordinary procedure.


当事人认为案件适用小额诉讼的程序审理违反法律规定的，可以向人民法院提出异议。人民法院对当事人提出的异议应当审查，异议成立的，应当适用简易程序的其他规定审理或者裁定转为普通程序；异议不成立的，裁定驳回。

If a party is of the opinion that the trial of the case under the small claims procedure violates the provisions of any law, it may file an objection with the people's court. The people's court shall examine the objection raised by the party, and if the objection is supported, it shall try the case under other provisions of the summary procedure or rule to try the case under the ordinary procedure; or rule to dismiss the objection if the objection is not supported.


第一百七十条　人民法院在审理过程中，发现案件不宜适用简易程序的，裁定转为普通程序。

**Article 170** A people's court which discovers during the trial of a case that the application of summary procedure is not appropriate for the case shall issue a ruling to transfer the case into formal procedure.


Saved on: 02/22/2025

第十四章　第二审程序

Chapter 14 Procedure at Second Instance

第一百七十一条　当事人不服地方人民法院第一审判决的，有权在判决书送达之日起十五日内向上一级人民法院提起上诉。

**Article 171** Against a first instance judgment of a local people's court, a party shall have the right to file an appeal with the people's court at the next higher level within 15 days from the date of service of the written judgment.

当事人不服地方人民法院第一审裁定的，有权在裁定书送达之日起十日内向上一级人民法院提起上诉。

Against a first instance ruling of a local people's court, a party shall have the right to file an appeal with the people's court at the next higher level within 10 days from the date of service of the written ruling.

第一百七十二条　上诉应当递交上诉状。上诉状的内容，应当包括当事人的姓名，法人的名称及其法定代表人的姓名或者其他组织的名称及其主要负责人的姓名；原审人民法院名称、案件的编号和案由；上诉的请求和理由。

**Article 172** An appellant shall submit a written appeal. The written appeal shall include the names of the parties which are natural persons, names of a legal person and its legal representative or names of any other organization and its primary person in charge; the name of the original trial people's court, case number and cause of action; and the claims in appeal and reasons for appeal.

第一百七十三条　上诉状应当通过原审人民法院提出，并按照对方当事人或者代表人的人数提出副本。

**Article 173** An appellant shall submit a written appeal through the original trial people's court and provide copies of it according to the number of the opposing parties or the representatives of the opposing parties.

当事人直接向第二审人民法院上诉的，第二审人民法院应当在五日内将上诉状移交原审人民法院。

Where a party appeals directly to a people's court of second instance, the people's court of second instance shall, within five days, transfer the written appeal to the original trial people's court.

第一百七十四条　原审人民法院收到上诉状，应当在五日内将上诉状副本送达对方当事人，对方当事人在收到之日起十五日内提出答辩状。人民法院应当在收到答辩状之日起五日内将副本送达上诉人。对方当事人不提出答辩状的，不影响人民法院审理。

[CLI Code]CLI.1.5175519(EN)

**Article 174** The original trial people's court shall, within five days after receiving a written appeal, serve the copies of the written appeal on the opposing parties, and the opposing parties shall, within 15 days after receiving the copies, submit their written statements of defense. The original trial people's court shall, within five days after receiving the written statements of defense, serve the copies of the written statements of defense on the appellant. The trial of the case by a people's court shall not be affected by an opposing party's failure to submit a written statement of defense.

原审人民法院收到上诉状、答辩状，应当在五日内连同全部案卷和证据，报送第二审人民法院。
After receiving both the written appeal and the written statements of defense, the original trial people's court shall, within five days, transfer them along with the entire case file and evidence to the people's court of second instance.

第一百七十五条　第二审人民法院应当对上诉请求的有关事实和适用法律进行审查。
**Article 175** The people's court of second instance shall review the facts and application of law in relation to the claims in appeal.

第一百七十六条　第二审人民法院对上诉案件应当开庭审理。经过阅卷、调查和询问当事人，对没有提出新的事实、证据或者理由，人民法院认为不需要开庭审理的，可以不开庭审理。
**Article 176** The people's court of second instance shall try an appeal case in a court session. If, after the consultation of case files, investigation and questioning of the parties, no new fact, evidence or reason is submitted, the people's court may decide not to hold a court session if deeming a court session unnecessary.

第二审人民法院审理上诉案件，可以在本院进行，也可以到案件发生地或者原审人民法院所在地进行。
The people's court of second instance may try an appeal case in its own courtroom or at the place where the case occurred or where the original trial people's court is located.

第一百七十七条　第二审人民法院对上诉案件，经过审理，按照下列情形，分别处理：
**Article 177** After trial, the people's court of second instance shall handle appeal cases according to the following different circumstances:

（一）原判决、裁定认定事实清楚，适用法律正确的，以判决、裁定方式驳回上诉，维持原判决、裁定；
(1) Dismissing an appeal and sustaining the original judgment or ruling in the form of a judgment

or ruling, if the original judgment or ruling is clear in fact finding and correct in application of law.

（二）原判决、裁定认定事实错误或者适用法律错误的，以判决、裁定方式依法改判、撤销或者变更；

(2) Reversing, revoking or modifying the original judgment or ruling in accordance with law in the form of a judgment or ruling, if the original judgment or ruling is erroneous in fact finding or application of law.

（三）原判决认定基本事实不清的，裁定撤销原判决，发回原审人民法院重审，或者查清事实后改判；

(3) Issuing a ruling to revoke the original judgment and remand the case to the original trial people's court for retrial or reversing the original judgment after ascertaining facts, if the original judgment is unclear in finding the basic facts.

（四）原判决遗漏当事人或者违法缺席判决等严重违反法定程序的，裁定撤销原判决，发回原审人民法院重审。

(4) Issuing a ruling to revoke the original judgment and remand the case to the original trial people's court, if the original judgment seriously violates statutory procedures, such as omitting a party or illegally entering a default judgment.

原审人民法院对发回重审的案件作出判决后，当事人提起上诉的，第二审人民法院不得再次发回重审。

Where, after the original trial people's court enters a judgment for a case remanded for retrial, a party appeals the judgment, the people's court of second instance shall not remand the case again for retrial.

第一百七十八条　第二审人民法院对不服第一审人民法院裁定的上诉案件的处理，一律使用裁定。

**Article 178** The people's court of second instance shall, without exception, issue a ruling after trial of an appeal against a ruling of the people's court of first instance.

第一百七十九条　第二审人民法院审理上诉案件，可以进行调解。调解达成协议，应当制作调解书，由审判人员、书记员署名，加盖人民法院印章。调解书送达后，原审人民法院的判决即视为撤销。

**Article 179** When trying an appeal case, the people's court of second instance may conduct mediation. If a mediation agreement is reached, a consent judgment shall be prepared, to which the judges and court clerk shall affix their signatures and the people's court shall affix its seal. Upon service of the consent judgment, the judgment of the original trial people's court shall be deemed revoked.

第一百八十条　第二审人民法院判决宣告前，上诉人申请撤回上诉的，是否准许，由第二审人民法院裁定。

**Article 180** Where an appellant requests withdrawal of its appeal before the people's court of second instance pronounces its judgment, the people's court of second instance shall issue a ruling on whether to grant such a request.

第一百八十一条　第二审人民法院审理上诉案件，除依照本章规定外，适用第一审普通程序。

**Article 181** Subject to the provisions of this Chapter, a people's court of second instance shall try appeal cases under the formal procedure at first instance.

第一百八十二条　第二审人民法院的判决、裁定，是终审的判决、裁定。

**Article 182** The judgments and rulings of a people's court of second instance shall be final.

第一百八十三条　人民法院审理对判决的上诉案件，应当在第二审立案之日起三个月内审结。有特殊情况需要延长的，由本院院长批准。

**Article 183** A people's court shall complete the trial of an appeal case against a judgment within three months after the appeal is docketed. Any extension of the aforesaid period under special circumstances shall be subject to the approval of the president of the people's court.

人民法院审理对裁定的上诉案件，应当在第二审立案之日起三十日内作出终审裁定。

A people's court shall issue a final ruling for an appeal case against a ruling within 30 days after the appeal is docketed.

第十五章　特别程序

## Chapter 15 Special Procedures

第一节　一般规定

### Section 1 General Provisions

第一百八十四条　人民法院审理选民资格案件、宣告失踪或者宣告死亡案件、指定遗产管理人案件、认定公民无民事行为能力或者限制民事行为能力案件、认定财产无主案件、确认调解协议案件和实现担保物权案件，适用本章规定。本章没有规定的，适用本法和其他法律的有关规定。

**Article 184** People's courts shall try voter eligibility cases, missing person declaration or death

Saved on: 02/22/2025

[CLI Code]CLI.1.5175519(EN)

declaration cases, cases of designating the legacy administrator, cases of determining civil incompetency or limited civil competency of citizens, cases of determining unclaimed property, cases of confirming mediation agreements, and cases of security interest realization in accordance with the provisions of this Chapter. The relevant provisions of this Law and other applicable laws shall apply to the matters not prescribed in this Chapter.

第一百八十五条　依照本章程序审理的案件，实行一审终审。选民资格案件或者重大、疑难的案件，由审判员组成合议庭审理；其他案件由审判员一人独任审理。

**Article 185** For cases tried under procedures in this Chapter, the trial results are not appealable. A collegial bench consisting of judges only shall be formed to try a voter eligibility case or a significant or difficult case; and any other case shall be tried by a sole judge.

第一百八十六条　人民法院在依照本章程序审理案件的过程中，发现本案属于民事权益争议的，应当裁定终结特别程序，并告知利害关系人可以另行起诉。

**Article 186** A people's court which discovers during the trial of a case under a procedure in this Chapter that the case involves a dispute over civil rights and interests shall issue a ruling to terminate the special procedure and notify the interested parties that they may institute a separate action.

第一百八十七条　人民法院适用特别程序审理的案件，应当在立案之日起三十日内或者公告期满后三十日内审结。有特殊情况需要延长的，由本院院长批准。但审理选民资格的案件除外。

**Article 187** A people's court shall complete the trial of a case under a special procedure within 30 days after the case is docketed or within 30 days after the period of public announcement expires. Any extension of the aforesaid trial period under special circumstances shall be subject to the approval of the president of the people's court. This article is not applicable to the trial of voter eligibility cases.

第二节　选民资格案件

Section 2 Voter Eligibility Cases

第一百八十八条　公民不服选举委员会对选民资格的申诉所作的处理决定，可以在选举日的五日以前向选区所在地基层人民法院起诉。

**Article 188** Against an election committee's decision on a petition regarding voter eligibility, a

[CLI Code]CLI.1.5175519(EN)

citizen may, five days before the election day, institute an action in the primary people's court at the place where the electoral district is located.

第一百八十九条　人民法院受理选民资格案件后，必须在选举日前审结。

**Article 189** After accepting a voter eligibility case, a people's court must complete the trial of the case before the election day.

审理时，起诉人、选举委员会的代表和有关公民必须参加。

The plaintiff, the representative of the election committee and the relevant citizen must participate in the trial.

人民法院的判决书，应当在选举日前送达选举委员会和起诉人，并通知有关公民。

The written judgment of the people's court shall be served on the election committee and the plaintiff before the election day, and the relevant citizen shall be notified.

第三节　宣告失踪、宣告死亡案件

Section 3 Missing Person Declaration and Death Declaration Cases

第一百九十条　公民下落不明满二年，利害关系人申请宣告其失踪的，向下落不明人住所地基层人民法院提出。

**Article 190** Where the whereabouts of a citizen has been unknown for two years and an interested party applies for declaration of the citizen to be missing, the application shall be filed with the primary people's court at the place of domicile of the citizen whose whereabouts is unknown.

申请书应当写明失踪的事实、时间和请求，并附有公安机关或者其他有关机关关于该公民下落不明的书面证明。

The written application shall state the fact and time of disappearance and claims, to which a written certificate issued by a public security authority or any other relevant authority regarding the fact that citizen's whereabouts is unknown shall be attached.

第一百九十一条　公民下落不明满四年，或者因意外事件下落不明满二年，或者因意外事件下落不明，经有关机关证明该公民不可能生存，利害关系人申请宣告其死亡的，向下落不明人住所地基层人民法院提出。

**Article 191** Where the whereabouts of a citizen has been unknown for four years, has been unknown for involvement in an incident for two years, or has been unknown for involvement in an

Saved on: 02/22/2025

[CLI Code]CLI.1.5175519(EN)

incident which the citizen cannot survive according to a certificate issued by a relevant authority, if an interested party applies for declaration of the citizen to be dead, the application shall be filed with the primary people's court at the place of domicile of the citizen whose whereabouts is unknown.

申请书应当写明下落不明的事实、时间和请求，并附有公安机关或者其他有关机关关于该公民下落不明的书面证明。

The written application shall state the fact and time of the citizen's whereabouts being unknown and claims, to which a written certificate issued by a public security authority or any other relevant authority regarding the fact that the citizen's whereabouts is known shall be attached.

第一百九十二条　人民法院受理宣告失踪、宣告死亡案件后，应当发出寻找下落不明人的公告。宣告失踪的公告期间为三个月，宣告死亡的公告期间为一年。因意外事件下落不明，经有关机关证明该公民不可能生存的，宣告死亡的公告期间为三个月。

**Article 192** After accepting a missing person declaration or death declaration case, a people's court shall issue a public announcement to search for the missing person. The period of public announcement for declaring a person to be missing shall be three months, and the period of public announcement for declaring a person to be dead shall be one year. Where a citizen's whereabouts has been unknown for his or her involvement in an incident which the citizen cannot survive according to a certificate issued by a relevant authority, the period of public announcement for declaring the citizen to be dead shall be three months.

公告期间届满，人民法院应当根据被宣告失踪、宣告死亡的事实是否得到确认，作出宣告失踪、宣告死亡的判决或者驳回申请的判决。

Upon expiration of the aforesaid period of public announcement, the people's court shall, according to whether the missing or death of the citizen to be declared has been confirmed as a fact, enter a judgment to declare that the person is missing or dead or enter a judgment to dismiss the application.

第一百九十三条　被宣告失踪、宣告死亡的公民重新出现，经本人或者利害关系人申请，人民法院应当作出新判决，撤销原判决。

**Article 193** Where a citizen who has been declared to be missing or dead reappears, the people's court shall, upon application of the citizen or an interested party, enter a new judgment to revoke the original one.

[CLI Code]CLI.1.5175519(EN)

第四节  指定遗产管理人案件

Section 4 Cases on the Designation of the Legacy Administrator

第一百九十四条  对遗产管理人的确定有争议，利害关系人申请指定遗产管理人的，向被继承人死亡时住所地或者主要遗产所在地基层人民法院提出。

**Article 194** Where there is any dispute over the determination of the legacy administrator, an interested party applying for the designation of the legacy administrator shall file an application with the primary people's court at the place of domicile of the deceased at the time of his or her death or the place where the principal part of the legacy is located.

申请书应当写明被继承人死亡的时间、申请事由和具体请求，并附有被继承人死亡的相关证据。

The written application shall indicate the time of death of the deceased, reasons for filing the application, and the specific request, and shall be accompanied by the evidence relating to the death of the deceased.

第一百九十五条  人民法院受理申请后，应当审查核实，并按照有利于遗产管理的原则，判决指定遗产管理人。

**Article 195** The people's court shall, after accepting an application, examine and verify it and render a judgment to designate the legacy administrator under the principle of facilitating legacy administration.

第一百九十六条  被指定的遗产管理人死亡、终止、丧失民事行为能力或者存在其他无法继续履行遗产管理职责情形的，人民法院可以根据利害关系人或者本人的申请另行指定遗产管理人。

**Article 196** Where a designated legacy administrator dies, is terminated, loses the capacity for civil conduct, or is otherwise unable to continue to perform the duties of legacy administration, the people's court may designate another legacy administrator upon the application of the interested party or the designated legacy administrator.

第一百九十七条  遗产管理人违反遗产管理职责，严重侵害继承人、受遗赠人或者债权人合法权益的，人民法院可以根据利害关系人的申请，撤销其遗产管理人资格，并依法指定新的遗产管理人。

**Article 197** Where a legacy administrator violates the duties of legacy administration and seriously infringes upon the lawful rights and interests of the inheritor, the legatee, or the creditor, the



people's court may disqualify the legacy administrator and legally designate another legacy administrator upon the application of the interested party.

第五节　认定公民无民事行为能力、限制民事行为能力案件
Section 5 Cases of Determining Civil Incompetency or Limited Civil Competency of Citizens

第一百九十八条　申请认定公民无民事行为能力或者限制民事行为能力，由利害关系人或者有关组织向该公民住所地基层人民法院提出。
**Article 198** For the determination of a citizen's civil incompetency or limited civil competency, an application shall be filed by the interested party or the relevant organization with the primary people's court at the place of domicile of the citizen.

申请书应当写明该公民无民事行为能力或者限制民事行为能力的事实和根据。
The written application shall state the facts and basis regarding the citizen's civil incompetency or limited civil competency.

第一百九十九条　人民法院受理申请后，必要时应当对被请求认定为无民事行为能力或者限制民事行为能力的公民进行鉴定。申请人已提供鉴定意见的，应当对鉴定意见进行审查。
**Article 199** After accepting an application, a people's court shall, when necessary, conduct identification of the citizen's civil incompetency or limited civil competency to be determined upon application. If the applicant has provided an expert opinion, the people's court shall examine the expert opinion.

第二百条　人民法院审理认定公民无民事行为能力或者限制民事行为能力的案件，应当由该公民的近亲属为代理人，但申请人除外。近亲属互相推诿的，由人民法院指定其中一人为代理人。该公民健康情况许可的，还应当询问本人的意见。
**Article 200** Where a people's court tries a case of determining a citizen's civil incompetency or limited civil competency, a close relative, other than the applicant, of the citizen shall serve as the citizen's representative. If the close relatives of the citizen shift their duty of representation onto each other, the people's court shall specify one of them as the representative of the citizen. If the citizen's health status allows, the people's court shall also solicit the opinion of the citizen.

人民法院经审理认定申请有事实根据的，判决该公民为无民事行为能力或者限制民事行为能力人；认定申请没有事

实根据的，应当判决予以驳回。

If, upon trial, the people's court holds that the application is supported by facts, it shall enter a judgment to determine that the citizen is a person without civil competency or with limited civil competency; otherwise, it shall enter a judgment to dismiss the application.

第二百零一条　人民法院根据被认定为无民事行为能力人、限制民事行为能力人本人、利害关系人或者有关组织的申请，证实该公民无民事行为能力或者限制民事行为能力的原因已经消除的，应当作出新判决，撤销原判决。

**Article 201** Upon application of a person who has been determined as a person without civil competency or with limited civil competency or application of him or her, the interested party or the relevant organization, a people's court shall enter a new judgment to revoke the original one if it is evidenced that the cause of the person's civil incompetency or limited civil competency has been eliminated.

第六节　认定财产无主案件

Section 6 Cases of Determining Unclaimed Property

第二百零二条　申请认定财产无主，由公民、法人或者其他组织向财产所在地基层人民法院提出。

**Article 202** For the determination of unclaimed property, a citizen, a legal person or any other organization shall file an application with the primary people's court at the place where the property is located.

申请书应当写明财产的种类、数量以及要求认定财产无主的根据。

The written application shall state the kind and quantity of property and the grounds for requesting determination of unclaimed property.

第二百零三条　人民法院受理申请后，经审查核实，应当发出财产认领公告。公告满一年无人认领的，判决认定财产无主，收归国家或者集体所有。

**Article 203** After accepting an application, the people's court shall conduct examination and verification and issue a public announcement on claiming the property. If no one claims the property upon one year from the date of public announcement, the people's court shall enter a judgment to determine that the property is unclaimed property and therefore owned by the state or a collective.

第二百零四条　判决认定财产无主后，原财产所有人或者继承人出现，在民法典规定的诉讼时效期间可以对财产提出请求，人民法院审查属实后，应当作出新判决，撤销原判决。

**Article 204** Where, after any property is determined as unclaimed property in a judgment, the original owner of the property or the successor thereto appears, the original owner or successor may claim the property within the time limitation prescribed in the Civil Code, the people's court shall, after examination and verification, enter a new judgment to revoke the original one.

第七节　确认调解协议案件

Section 7 Cases of Confirming Mediation Agreements

第二百零五条　经依法设立的调解组织调解达成调解协议，申请司法确认的，由双方当事人自调解协议生效之日起三十日内，共同向下列人民法院提出：

**Article 205** To apply for the judicial confirmation of a mediation agreement reached under the mediation of a legally established mediation organization in accordance with the law, both parties to the mediation agreement shall, within 30 days from the date when the mediation agreement takes effect, jointly file an application with the following people's court:

（一）人民法院邀请调解组织开展先行调解的，向作出邀请的人民法院提出；

(1) If a people's court invites a mediation organization to conduct preliminary mediation, the application shall be filed with the people's court that makes the invitation.

（二）调解组织自行开展调解的，向当事人住所地、标的物所在地、调解组织所在地的基层人民法院提出；调解协议所涉纠纷应当由中级人民法院管辖的，向相应的中级人民法院提出。

(2) If the mediation is conducted by the mediation organization, the application shall be filed with the primary people's court at the place where the party is domiciled or the subject matter or the mediation organization is located. If the dispute involved in the mediation agreement shall be under the jurisdiction of an intermediate people's court, the application shall be filed with the corresponding intermediate people's court.

第二百零六条　人民法院受理申请后，经审查，符合法律规定的，裁定调解协议有效，一方当事人拒绝履行或者未全部履行的，对方当事人可以向人民法院申请执行；不符合法律规定的，裁定驳回申请，当事人可以通过调解方式变更原调解协议或者达成新的调解协议，也可以向人民法院提起诉讼。

**Article 206** After accepting an application, if the application complies with legal provisions upon

examination, the people's court shall issue a ruling to affirm the validity of the mediation agreement, and if one party refuses to perform or fails to fully perform the mediation agreement, the opposing party may apply for enforcement to the people's court; or if the application does not comply with legal provisions upon examination, the people's court shall issue a ruling to dismiss the application, and the parties may, through mediation, modify the mediation agreement or reach a new mediation agreement and may also institute an action in a people's court.

第八节　实现担保物权案件

Section 8 Cases of Security Interest Realization

第二百零七条　申请实现担保物权，由担保物权人以及其他有权请求实现担保物权的人依照民法典等法律，向担保财产所在地或者担保物权登记地基层人民法院提出。

**Article 207** To apply for realization of a security interest, the security interest holder or any other party entitled to request realization of the security interest shall, in accordance with the Civil Code and other laws, file an application with the primary people's court at the place where the property posted as security is located or at the place of registration of the security interest.

第二百零八条　人民法院受理申请后，经审查，符合法律规定的，裁定拍卖、变卖担保财产，当事人依据该裁定可以向人民法院申请执行；不符合法律规定的，裁定驳回申请，当事人可以向人民法院提起诉讼。

**Article 208** After accepting an application, if the application complies with legal provisions upon examination, the people's court shall issue a ruling to auction or sell the property posted as security, and the parties may, based on the ruling, apply for enforcement to the people's court; or if the application does not comply with legal provisions, the people's court shall issue a ruling to dismiss the application, and the party may institute an action in a people's court.

第十六章　审判监督程序

Chapter 16 Trial Supervision Procedure

第二百零九条　各级人民法院院长对本院已经发生法律效力的判决、裁定、调解书，发现确有错误，认为需要再审的，应当提交审判委员会讨论决定。

**Article 209** Where the president of a people's court at any level discovers any error in any effective judgment, ruling or consent judgment of the court and deems a retrial necessary, the president shall submit it to the judicial committee for deliberation and decision.

[CLI Code]CLI.1.5175519(EN)

最高人民法院对地方各级人民法院已经发生法律效力的判决、裁定、调解书，上级人民法院对下级人民法院已经发生法律效力的判决、裁定、调解书，发现确有错误的，有权提审或者指令下级人民法院再审。

Where the Supreme People's Court discovers any error in any effective judgment, ruling or consent judgment of a local people's court at any level or a people's court at a higher level discovers any error in any effective judgment, ruling or consent judgment of a people's court at a lower level, the Supreme People's Court or the court at a higher level shall have the power to directly retry the case or specify a people's court at a lower level to retry the case.

第二百一十条　当事人对已经发生法律效力的判决、裁定，认为有错误的，可以向上一级人民法院申请再审；当事人一方人数众多或者当事人双方为公民的案件，也可以向原审人民法院申请再审。当事人申请再审的，不停止判决、裁定的执行。

**Article 210** A party which deems that an effective judgment or ruling is erroneous may file a petition for retrial with the people's court at the next higher level; and if the parties on one side are numerous or the parties on both sides are citizens, the parties may file a petition for retrial with the original trial people's court. Where a party files a petition for retrial, the execution of the judgment or ruling shall not be discontinued.

第二百一十一条　当事人的申请符合下列情形之一的，人民法院应当再审：

**Article 211** Where a petition for retrial filed by a party falls under any of the following circumstances, the people's court shall conduct a retrial:

（一）有新的证据，足以推翻原判决、裁定的；

(1) There is any new evidence which suffices to overturn the original judgment or ruling.

（二）原判决、裁定认定的基本事实缺乏证据证明的；

(2) The basic facts found in the original judgment or ruling are not evidenced.

（三）原判决、裁定认定事实的主要证据是伪造的；

(3) The primary evidence admitted in the original judgment or ruling for finding facts is forged.

（四）原判决、裁定认定事实的主要证据未经质证的；

(4) The primary evidence admitted in the original judgment or ruling for finding facts has not been cross-examined.

[CLI Code]CLI.1.5175519(EN)

（五）对审理案件需要的主要证据，当事人因客观原因不能自行收集，书面申请人民法院调查收集，人民法院未调查收集的；

(5) For objective reasons, a party is unable to gather any primary evidence necessary for the trial of a case and applies in writing for the people's court to investigate and gather the evidence, but the people's court has not investigated and gathered the evidence.

（六）原判决、裁定适用法律确有错误的；

(6) There is any erroneous application of law in the original judgment or ruling.

（七）审判组织的组成不合法或者依法应当回避的审判人员没有回避的；

(7) The composition of the trial organization is illegal or any judge who shall be disqualified in accordance with law fails to be disqualified.

（八）无诉讼行为能力人未经法定代理人代为诉讼或者应当参加诉讼的当事人，因不能归责于本人或者其诉讼代理人的事由，未参加诉讼的；

(8) The legal representative of a person without competency to participate in the action fails to participate in the action on behalf of the person or a party which shall participate in the action fails to participate in the action, which is not attributable to the fault of the party or the litigation representative thereof.

（九）违反法律规定，剥夺当事人辩论权利的；

(9) A party's right to debate is illegally denied.

（十）未经传票传唤，缺席判决的；

(10) A default judgment is entered against a party which has not been summonsed.

（十一）原判决、裁定遗漏或者超出诉讼请求的；

(11) The original judgment or ruling has omitted any claims or exceeded the claims of the parties.

（十二）据以作出原判决、裁定的法律文书被撤销或者变更的；

(12) The legal instrument on which the original judgment or ruling is based has been revoked or modified.

Saved on: 02/22/2025

[CLI Code]CLI.1.5175519(EN)

（十三）审判人员审理该案件时有贪污受贿，徇私舞弊，枉法裁判行为的。

(13) When trying the case, a judge commits embezzlement, accepts bribes, practices favoritism for personal gains, or adjudicates by bending the law.

第二百一十二条　当事人对已经发生法律效力的调解书，提出证据证明调解违反自愿原则或者调解协议的内容违反法律的，可以申请再审。经人民法院审查属实的，应当再审。

**Article 212** Where, against an effective consent judgment, a party adduces any evidence that the mediation has violated the principle of free will of the parties or any content of the mediation agreement has violated law, the party may petition for retrial. The people's court shall, upon examination and verification, conduct a retrial.

第二百一十三条　当事人对已经发生法律效力的解除婚姻关系的判决、调解书，不得申请再审。

**Article 213** A party shall not file a petition for retrial against an effective judgment or consent judgment which dissolves a marital relationship.

第二百一十四条　当事人申请再审的，应当提交再审申请书等材料。人民法院应当自收到再审申请书之日起五日内将再审申请书副本发送对方当事人。对方当事人应当自收到再审申请书副本之日起十五日内提交书面意见；不提交书面意见的，不影响人民法院审查。人民法院可以要求申请人和对方当事人补充有关材料，询问有关事项。

**Article 214** A party which petitions for retrial shall submit a written retrial petition and other materials. The people's court shall, within five days after receiving the written retrial petition, serve the copies of the written retrial petition on the opposing parties. The opposing parties shall submit their written opinions within 15 days after receiving the copies of the written retrial petition; and any opposing party's failure to submit a written opinion shall not affect the examination of the petition by the people's court. The people's court may require the petitioner and the opposing parties to provide relevant supplements and may question them on relevant matters.

第二百一十五条　人民法院应当自收到再审申请书之日起三个月内审查，符合本法规定的，裁定再审；不符合本法规定的，裁定驳回申请。有特殊情况需要延长的，由本院院长批准。

**Article 215** A people's court shall, within three months after receiving a written retrial petition, examine the petition and, if the petition complies with the provisions of this Law, issue a ruling to retry the case; or if the petition does not comply with the provisions of this Law, issue a ruling to dismiss the petition. Where, under special circumstances, an extension of the aforesaid period is necessary, the extension shall be subject to the approval of the president of the people's court.

因当事人申请裁定再审的案件由中级人民法院以上的人民法院审理，但当事人依照本法第二百一十条的规定选择向基层人民法院申请再审的除外。最高人民法院、高级人民法院裁定再审的案件，由本院再审或者交其他人民法院再审，也可以交原审人民法院再审。

A case to be retried according to a ruling issued upon petition of a party shall be retried by a people's court at or above the level of an intermediate people's court, except a case to be retried by a primary people's court upon petition as chosen by the parties under Article 210 of this Law. A case to be retried according to a ruling issued by the Supreme People's Court or a high people's court shall be retried by the court issuing the ruling, and the court issuing the ruling may transfer the case to any other people's court including the original trial people's court for retrial.

第二百一十六条　当事人申请再审，应当在判决、裁定发生法律效力后六个月内提出；有本法第二百一十一条第一项、第三项、第十二项、第十三项规定情形的，自知道或者应当知道之日起六个月内提出。

**Article 216** A party which petitions for retrial shall file a petition for retrial within six months from the effective date of a judgment or ruling; or under the circumstances of item (1), (3), (12) or (13) of Article 211 of this Law, file a petition for retrial within six months from the day when the party knows or should have known.

第二百一十七条　按照审判监督程序决定再审的案件，裁定中止原判决、裁定、调解书的执行，但追索赡养费、扶养费、抚养费、抚恤金、医疗费用、劳动报酬等案件，可以不中止执行。

**Article 217** For a case retried according to a decision made under the trial supervision procedure, a ruling shall be issued to suspend the execution of the original judgment, ruling or consent judgment, but suspension of execution is not required for cases to recover support for elderly parents, support for other adult dependants, child support, consolation money, medical expenses, and labor remuneration, among others.

第二百一十八条　人民法院按照审判监督程序再审的案件，发生法律效力的判决、裁定是由第一审法院作出的，按照第一审程序审理，所作的判决、裁定，当事人可以上诉；发生法律效力的判决、裁定是由第二审法院作出的，按照第二审程序审理，所作的判决、裁定，是发生法律效力的判决、裁定；上级人民法院按照审判监督程序提审的，按照第二审程序审理，所作的判决、裁定是发生法律效力的判决、裁定。

**Article 218** For a case to be retried by a people's court under the trial supervision procedure, if the effective judgment or ruling was entered by a court of first instance, the people's court shall retry the case under the procedure at first instance, and the judgment or ruling entered by the people's

[CLI Code]CLI.1.5175519(EN)

court is appealable; if the effective judgment or ruling was entered by a court of second instance, the people's court shall retry the case under the procedure at second instance, and the judgment or ruling entered by the people's court shall be immediately effective; or if the case is directly retried by a people's court at a higher level, the people's court at a higher level shall retry the case under the procedure at second instance, and the judgment or ruling entered by the people's court at a higher level shall be immediately effective.

人民法院审理再审案件，应当另行组成合议庭。
A people's court shall form a new collegial bench to retry a case.

第二百一十九条　最高人民检察院对各级人民法院已经发生法律效力的判决、裁定，上级人民检察院对下级人民法院已经发生法律效力的判决、裁定，发现有本法第二百一十一条规定情形之一的，或者发现调解书损害国家利益、社会公共利益的，应当提出抗诉。
**Article 219** Where the Supreme People's Procuratorate discovers that any effective judgment or ruling of a people's court at any level falls under any of the circumstances set out in Article 211 of this Law or any effective consent judgment thereof causes any damage to the national interest or public interest, or a people's procuratorate at a higher level discovers that any effective judgment or ruling of a people's court at a lower level falls under any of the circumstances set out in Article 211 of this Law or any effective consent judgment thereof causes any damage to the national interest or public interest, the Supreme People's Procuratorate or the people's procuratorate at a higher level shall file an appeal.

地方各级人民检察院对同级人民法院已经发生法律效力的判决、裁定，发现有本法第二百一十一条规定情形之一的，或者发现调解书损害国家利益、社会公共利益的，可以向同级人民法院提出检察建议，并报上级人民检察院备案；也可以提请上级人民检察院向同级人民法院提出抗诉。
Where a local people's procuratorate at any level discovers that any effective judgment or ruling of a people's court at the same level falls under any of the circumstances set out in Article 211 of this Law or discovers that any consent judgment thereof causes any damage to the national interest or public interest, the people's procuratorate may offer procuratorial recommendations to the people's court at the same level and file a report with the people's procuratorate at the next higher level; and may also request the people's procuratorate at the next higher level to file an appeal with the people's court at the corresponding level.

各级人民检察院对审判监督程序以外的其他审判程序中审判人员的违法行为，有权向同级人民法院提出检察建议。

[CLI Code]CLI.1.5175519(EN)

A people's procuratorate at any level shall have the authority to offer procuratorial recommendations to the people's court at the same level regarding violations of law by judges in trial procedures other than the trial supervision procedure.

第二百二十条　有下列情形之一的，当事人可以向人民检察院申请检察建议或者抗诉：

**Article 220** Under any of following circumstances, a party may apply to a people's procuratorate for procuratorial recommendations or appeal:

（一）人民法院驳回再审申请的；

(1) A people's court dismisses a petition for retrial.

（二）人民法院逾期未对再审申请作出裁定的；

(2) A people's court fails to issue a ruling regarding a petition for retrial within the prescribed time limit.

（三）再审判决、裁定有明显错误的。

(3) The judgment or ruling entered after retrial is clearly erroneous.

人民检察院对当事人的申请应当在三个月内进行审查，作出提出或者不予提出检察建议或者抗诉的决定。当事人不得再次向人民检察院申请检察建议或者抗诉。

The people's procuratorate shall, within three months, examine the party's application and make a decision to offer or not to offer procuratorial recommendations or a decision to file or not to file an appeal. The party shall not apply again to the people's procuratorate for offering procuratorial recommendations or filing an appeal.

第二百二十一条　人民检察院因履行法律监督职责提出检察建议或者抗诉的需要，可以向当事人或者案外人调查核实有关情况。

**Article 221** A people's procuratorate may, as necessary for offering procuratorial recommendations or filing an appeal to perform its duty of legal supervision, investigate and verify relevant information from the parties or those who are not parties to a case.

第二百二十二条　人民检察院提出抗诉的案件，接受抗诉的人民法院应当自收到抗诉书之日起三十日内作出再审的裁定；有本法第二百一十一条第一项至第五项规定情形之一的，可以交下一级人民法院再审，但经该下一级人

民法院再审的除外。

**Article 222** For a case where a people's procuratorate files an appeal, the people's court accepting the appeal shall issue a ruling on retrial within 30 days after receiving the written appeal; and under any of the circumstances set out in items (1) to (5) of Article 211 of this Law, may transfer the case to the people's court at the next lower level for retrial unless the case has been retried by the people's court at the next lower level.

第二百二十三条　人民检察院决定对人民法院的判决、裁定、调解书提出抗诉的，应当制作抗诉书。

**Article 223** A people's procuratorate which files an appeal against a judgment, ruling or consent judgment of a people's court shall prepare a written appeal.

第二百二十四条　人民检察院提出抗诉的案件，人民法院再审时，应当通知人民检察院派员出席法庭。

**Article 224** When a people's court retries a case upon appeal of a people's procuratorate, the people's court shall notify the people's procuratorate to send personnel to be present in court.

第十七章　督促程序

Chapter 17 Procedure for Urging Debt Repayment

第二百二十五条　债权人请求债务人给付金钱、有价证券，符合下列条件的，可以向有管辖权的基层人民法院申请支付令：

**Article 225** A creditor which requests a debtor to repay money or negotiable securities may apply to the primary people's court having jurisdiction to issue an order for payment if the following conditions are met:

（一）债权人与债务人没有其他债务纠纷的；

(1) There are no other debt disputes between the creditor and the debtor.

（二）支付令能够送达债务人的。

(2) The order for payment can be served on the debtor.

申请书应当写明请求给付金钱或者有价证券的数量和所根据的事实、证据。

The creditor's written application shall state the amount of money or negotiable securities to be repaid and the facts and evidence on which the application is based.

Saved on: 02/22/2025

[CLI Code]CLI.1.5175519(EN)

**第二百二十六条**　债权人提出申请后，人民法院应当在五日内通知债权人是否受理。

**Article 226** After a creditor files an application, the people's court shall, within five days, notify the creditor whether the application is accepted.

**第二百二十七条**　人民法院受理申请后，经审查债权人提供的事实、证据，对债权债务关系明确、合法的，应当在受理之日起十五日内向债务人发出支付令；申请不成立的，裁定予以驳回。

**Article 227** After accepting an application, the people's court shall examine the facts and evidence provided by the creditor and, if the creditor-debtor relationship is clear and legal, issue an order for payment to the debtor within 15 days after accepting the application; or if the application is not supported, issue a ruling to dismiss the application.

债务人应当自收到支付令之日起十五日内清偿债务，或者向人民法院提出书面异议。
The debtor shall, within 15 days after receiving the order for payment, repay the debt or submit a written objection to the people's court.

债务人在前款规定的期间不提出异议又不履行支付令的，债权人可以向人民法院申请执行。
If the debtor has neither submitted an objection nor complied with the order for payment during the period prescribed in the preceding paragraph, the creditor may apply to the people's court for enforcement of the order for payment.

**第二百二十八条**　人民法院收到债务人提出的书面异议后，经审查，异议成立的，应当裁定终结督促程序，支付令自行失效。

**Article 228** After receiving a written objection from a debtor, if the objection is supported upon examination, a people's court shall issue a ruling to terminate the procedure for urging debt repayment, and the order for payment shall be automatically invalidated.

支付令失效的，转入诉讼程序，但申请支付令的一方当事人不同意提起诉讼的除外。
Where an order for payment is invalidated, the litigation procedure shall be initiated, unless the party applying for the order for payment disagrees to institute an action.

第十八章　公示催告程序

Chapter 18 Procedure for Announcement to Urge Declaration of Claims

[CLI Code]CLI.1.5175519(EN)

第二百二十九条 按照规定可以背书转让的票据持有人，因票据被盗、遗失或者灭失，可以向票据支付地的基层人民法院申请公示催告。依照法律规定可以申请公示催告的其他事项，适用本章规定。

**Article 229** The holder of an instrument negotiable by endorsement according to the relevant provisions may, if the instrument is stolen, lost or extinguished, apply to the primary people's court at the place of payment of the instrument for an announcement to urge declaration of claims. The provisions of this Chapter shall also apply to other matters regarding which an announcement to urge declaration of claims may be applied for according to legal provisions.

申请人应当向人民法院递交申请书，写明票面金额、发票人、持票人、背书人等票据主要内容和申请的理由、事实。

The applicant shall file a written application with the people's court, which shall state the main content of the instrument, such as the face value, issuer, holder and endorser, as well as the grounds and facts for the application.

第二百三十条 人民法院决定受理申请，应当同时通知支付人停止支付，并在三日内发出公告，催促利害关系人申报权利。公示催告的期间，由人民法院根据情况决定，但不得少于六十日。

**Article 230** Where a people's court decides to accept an application, the people's court shall, at the same time, notify the drawee to stop payment and, within three days, issue an announcement to urge interested parties to declare their claims. The period of declaration of claims shall be decided by a people's court according to the specific circumstances but shall not be less than sixty days.

第二百三十一条 支付人收到人民法院停止支付的通知，应当停止支付，至公示催告程序终结。

**Article 231** The drawee shall, upon receiving a notice of stopping payment from a people's court, stop payment until the termination of the procedure for announcement to urge declaration of claims.

公示催告期间，转让票据权利的行为无效。

During the period of declaration of claims, any transfer of rights under the instrument shall be void.

第二百三十二条 利害关系人应当在公示催告期间向人民法院申报。

**Article 232** Interested parties shall declare their claims to the people's court during the period of

declaration of claims.

人民法院收到利害关系人的申报后，应当裁定终结公示催告程序，并通知申请人和支付人。

After receiving claims from interested parties, the people's court shall issue a ruling to terminate the procedure for announcement to urge declaration of claims and notify the applicant and the drawee.

申请人或者申报人可以向人民法院起诉。

The applicant or a claimant may institute an action in the people's court.

第二百三十三条　没有人申报的，人民法院应当根据申请人的申请，作出判决，宣告票据无效。判决应当公告，并通知支付人。自判决公告之日起，申请人有权向支付人请求支付。

**Article 233** Where no one declares a claim, the people's court shall enter a judgment according to the application to declare the instrument to be void. The judgment shall be publicly announced, and the drawee shall be notified. From the date of announcement of the judgment, the applicant shall be entitled to require payment from the drawee.

第二百三十四条　利害关系人因正当理由不能在判决前向人民法院申报的，自知道或者应当知道判决公告之日起一年内，可以向作出判决的人民法院起诉。

**Article 234** Where, for any justifiable reasons, any interested party is unable to declare its claims to the people's court before a judgment is entered, the interested party may, within one year from the day when the interested party knows or should have known the public announcement of the judgment, institute an action in the people's court which entered the judgment.

第三编　执行程序

Part Three Enforcement Procedure

第十九章　一般规定

Chapter 19 General Provisions

第二百三十五条　发生法律效力的民事判决、裁定，以及刑事判决、裁定中的财产部分，由第一审人民法院或者与第一审人民法院同级的被执行的财产所在地人民法院执行。

**Article 235** An effective civil judgment or ruling or the property portion of a criminal judgment or

ruling shall be enforced by the people's court of first instance or the people's court at the same level as the people's court of first instance at the place where the property under enforcement is located.

法律规定由人民法院执行的其他法律文书，由被执行人住所地或者被执行的财产所在地人民法院执行。

Other legal instruments enforced by a people's court as prescribed by law shall be enforced by the people's court at the place of domicile of the party against whom enforcement is sought or at the place where the property under enforcement is located.

第二百三十六条　当事人、利害关系人认为执行行为违反法律规定的，可以向负责执行的人民法院提出书面异议。当事人、利害关系人提出书面异议的，人民法院应当自收到书面异议之日起十五日内审查，理由成立的，裁定撤销或者改正；理由不成立的，裁定驳回。当事人、利害关系人对裁定不服的，可以自裁定送达之日起十日内向上一级人民法院申请复议。

Article 236 Where a party or an interested party deems that enforcement has violated any legal provisions, the party or interested party may file a written objection with the people's court in charge of enforcement. Where a party or an interested party files a written objection, the people's court shall examine the written objection within 15 days after receiving it and, if the objection is supported, issue a ruling to revoke or correct enforcement; or if the objection is not supported, issue a ruling to dismiss the objection. Against such a ruling, the party or interested party may apply for reconsideration to the people's court at the next higher level within ten days after the ruling is served.

第二百三十七条　人民法院自收到申请执行书之日起超过六个月未执行的，申请执行人可以向上一级人民法院申请执行。上一级人民法院经审查，可以责令原人民法院在一定期限内执行，也可以决定由本院执行或者指令其他人民法院执行。

Article 237 Where a people's court fails to conduct enforcement within six months after receiving a written application for enforcement, the applicant for enforcement may apply for enforcement to the people's court at the next higher level. Upon examination, the people's court at the next higher level may order the original people's court to conduct enforcement within a certain time limit or decide to conduct enforcement by itself or order another people's court to conduct enforcement.

第二百三十八条　执行过程中，案外人对执行标的提出书面异议的，人民法院应当自收到书面异议之日起十五日内审查，理由成立的，裁定中止对该标的的执行；理由不成立的，裁定驳回。案外人、当事人对裁定不服，认为原判决、裁定错误的，依照审判监督程序办理；与原判决、裁定无关的，可以自裁定送达之日起十五日内向人民法

院提起诉讼。

**Article 238** Where, during enforcement, a person which is not a party to the case files a written objection regarding the subject matter of enforcement, the people's court shall examine the written objection within 15 days after receiving it and, if the objection is supported, issue a ruling to suspend enforcement against the subject matter; or if the objection is not supported, issue a ruling to dismiss the objection. If the person which is not a party to the case or a party disagrees on such a ruling and deems that the original judgment or ruling is erroneous, the trial supervision procedure shall apply; or if such disagreement is irrelevant to the original judgment or ruling, the person or the party may institute an action in a people's court within 15 days after the aforesaid ruling regarding objection is served.

第二百三十九条　执行工作由执行员进行。

**Article 239** Enforcement shall be conducted by enforcement personnel.

采取强制执行措施时，执行员应当出示证件。执行完毕后，应当将执行情况制作笔录，由在场的有关人员签名或者盖章。

When taking enforcement measures, the enforcement personnel shall produce their credentials. After completion of enforcement, the enforcement personnel shall prepare enforcement transcripts, to which the relevant persons on the site shall affix their signatures or seals.

人民法院根据需要可以设立执行机构。

A people's court may, as needed, establish an enforcement department.

第二百四十条　被执行人或者被执行的财产在外地的，可以委托当地人民法院代为执行。受委托人民法院收到委托函件后，必须在十五日内开始执行，不得拒绝。执行完毕后，应当将执行结果及时函复委托人民法院；在三十日内如果还未执行完毕，也应当将执行情况函告委托人民法院。

**Article 240** Where the party against whom enforcement is sought or the property under enforcement is in a different place, enforcement may be entrusted to the people's court in the different place. The entrusted people's court must begin enforcement within 15 days after receiving a letter of entrustment and shall not refuse enforcement. After completion of enforcement, the entrusted people's court shall notify in a letter the entrusting people's court of the results of enforcement; or if enforcement cannot be completed within 30 days, the entrusted people's court shall also notify in a letter the entrusting people's court of the status of

enforcement.

受委托人民法院自收到委托函件之日起十五日内不执行的，委托人民法院可以请求受委托人民法院的上级人民法院指令受委托人民法院执行。

If the entrusted people's court fails to begin enforcement within 15 days after receiving a letter of entrustment, the entrusting people's court may request the superior of the entrusted people's court to order the entrusted people's court to conduct enforcement.

第二百四十一条　在执行中，双方当事人自行和解达成协议的，执行员应当将协议内容记入笔录，由双方当事人签名或者盖章。

**Article 241** Where, during enforcement, both sides reach a settlement agreement, the enforcement personnel shall record the provisions of the settlement agreement in the enforcement transcripts, to which both sides shall affix their signatures or seals.

申请执行人因受欺诈、胁迫与被执行人达成和解协议，或者当事人不履行和解协议的，人民法院可以根据当事人的申请，恢复对原生效法律文书的执行。

Where the applicant for enforcement reaches a settlement agreement as a victim of a fraud or under duress with the party against whom enforcement is sought or a party fails to perform a settlement agreement, the people's court may, upon application of a party, resume the enforcement of the original effective legal instrument.

第二百四十二条　在执行中，被执行人向人民法院提供担保，并经申请执行人同意的，人民法院可以决定暂缓执行及暂缓执行的期限。被执行人逾期仍不履行的，人民法院有权执行被执行人的担保财产或者担保人的财产。

**Article 242** Where, during enforcement, the party against whom enforcement is sought provides security to the people's court, the people's court may, with the consent of the applicant for enforcement, decide to suspend enforcement and decide a period of suspension. If the party against whom enforcement is sought fails to perform its obligations within the aforesaid period, the people's court shall have the power to conduct enforcement against the property posted as security by the party against whom enforcement is sought or the property of any guarantor.

第二百四十三条　作为被执行人的公民死亡的，以其遗产偿还债务。作为被执行人的法人或者其他组织终止的，由其权利义务承受人履行义务。

**Article 243** Where a citizen as the party against whom enforcement is sought dies, his or her debts

shall be repaid with his or her estate. Where a legal person or any other organization as the party against whom enforcement is sought is terminated, the successors to the rights and obligations of the legal person or organization shall perform the obligations of the legal person or organization.

第二百四十四条　执行完毕后，据以执行的判决、裁定和其他法律文书确有错误，被人民法院撤销的，对已被执行的财产，人民法院应当作出裁定，责令取得财产的人返还；拒不返还的，强制执行。

**Article 244** Where, after completion of enforcement, the judgment, ruling or any other legal document on which enforcement is based is revoked by a people's court for any errors, the people's court shall issue a ruling on the property which has undergone enforcement to order the party which has acquired the property to return the property; and if the party refuses to return the property, the people's court shall conduct enforcement.

第二百四十五条　人民法院制作的调解书的执行，适用本编的规定。

**Article 245** The provisions of this Part shall also apply to the enforcement of a consent judgment of a people's court.

第二百四十六条　人民检察院有权对民事执行活动实行法律监督。

**Article 246** The people's procuratorates shall have the authority to conduct legal supervision over civil enforcement.

第二十章　执行的申请和移送

Chapter 20 Application and Transfer for Enforcement

第二百四十七条　发生法律效力的民事判决、裁定，当事人必须履行。一方拒绝履行的，对方当事人可以向人民法院申请执行，也可以由审判员移送执行员执行。

**Article 247** The parties must comply with an effective civil judgment or ruling. If a party refuses to comply, the opposing party may apply to the people's court for enforcement, and the judges may also transfer the case to the enforcement personnel for enforcement.

调解书和其他应当由人民法院执行的法律文书，当事人必须履行。一方拒绝履行的，对方当事人可以向人民法院申请执行。

The parties must comply with a consent judgment and other legal instruments enforced by a people's court. If a party refuses to comply, the opposing party may apply to the people's court for

[CLI Code]CLI.1.5175519(EN)

enforcement.

第二百四十八条　对依法设立的仲裁机构的裁决，一方当事人不履行的，对方当事人可以向有管辖权的人民法院申请执行。受申请的人民法院应当执行。

**Article 248** Where a party refuses to comply with an award rendered by a legally established arbitral institution, the opposing party may apply for enforcement to the people's court having jurisdiction. The people's court accepting the application shall enforce the award.

被申请人提出证据证明仲裁裁决有下列情形之一的，经人民法院组成合议庭审查核实，裁定不予执行：

Where the respondent adduces evidence that the arbitration award falls under any of the following circumstances, the people's court shall, upon examination and verification by a collegial bench, issue a ruling not to enforce the arbitration award:

（一）当事人在合同中没有订有仲裁条款或者事后没有达成书面仲裁协议的；

(1) The contract between the parties does not include an arbitration clause or the parties have not reached any written arbitration agreement after a dispute arose.

（二）裁决的事项不属于仲裁协议的范围或者仲裁机构无权仲裁的；

(2) The matters arbitrated are outside the scope of an arbitration agreement or the arbitral institution has no arbitration power.

（三）仲裁庭的组成或者仲裁的程序违反法定程序的；

(3) The composition of the arbitration tribunal or the arbitration procedure has violated the statutory procedures.

（四）裁决所根据的证据是伪造的；

(4) The evidence for rendering the award is forged.

（五）对方当事人向仲裁机构隐瞒了足以影响公正裁决的证据的；

(5) The opposing party withholds any evidence to the arbitral institution, which suffices to affect an impartial award.

（六）仲裁员在仲裁该案时有贪污受贿，徇私舞弊，枉法裁决行为的。

(6) When arbitrating the case, any arbitrator commits embezzlement, accepts bribes, practices

[CLI Code]CLI.1.5175519(EN)

favoritism for personal gains, or renders the award by bending the law.

人民法院认定执行该裁决违背社会公共利益的，裁定不予执行。
If a people's court holds that the enforcement of an arbitration award is contrary to the public interest, the people's court shall issue a ruling not to enforce the award.

裁定书应当送达双方当事人和仲裁机构。
Such a ruling shall be served on both sides and the arbitral institution.

仲裁裁决被人民法院裁定不予执行的，当事人可以根据双方达成的书面仲裁协议重新申请仲裁，也可以向人民法院起诉。
Where an arbitration award is not enforced according to a ruling of a people's court, the parties may, according to a written arbitration agreement reached by them, apply again to an arbitral institution for arbitration or institute an action in a people's court.

第二百四十九条　对公证机关依法赋予强制执行效力的债权文书，一方当事人不履行的，对方当事人可以向有管辖权的人民法院申请执行，受申请的人民法院应当执行。
**Article 249** Where a party fails to comply with a debt instrument with enforceability legally granted by a notary office, the opposing party may apply to the people's court having jurisdiction for enforcement, and the people's court accepting the application shall conduct enforcement.

公证债权文书确有错误的，人民法院裁定不予执行，并将裁定书送达双方当事人和公证机关。
If the notarized debt instrument is erroneous, the people's court shall issue a ruling not to enforce the debt instrument and serve a written ruling on both sides and the notary office.

第二百五十条　申请执行的期间为二年。申请执行时效的中止、中断，适用法律有关诉讼时效中止、中断的规定。
**Article 250** The period for applying for enforcement shall be two years. The suspension or interruption of the time limitation for applying for enforcement shall be governed by legal provisions regarding the suspension or interruption of the time limitations for instituting an action.

前款规定的期间，从法律文书规定履行期间的最后一日起计算；法律文书规定分期履行的，从最后一期履行期限届满之日起计算；法律文书未规定履行期间的，从法律文书生效之日起计算。
The period in the preceding paragraph shall begin from the last day of the performance period

Saved on: 02/22/2025

specified in a legal instrument; be calculated from the day when the time limit for the last stage of performance expires; or begin from the effective date of a legal instrument if the legal instrument does not specify a period of performance.

第二百五十一条　执行员接到申请执行书或者移交执行书，应当向被执行人发出执行通知，并可以立即采取强制执行措施。

**Article 251** Enforcement personnel receiving a written application for enforcement or a letter of transfer for enforcement shall issue a notice of enforcement to the party against whom enforcement is sought and may immediately take enforcement measures.

第二十一章　执行措施

Chapter 21 Enforcement Measures

第二百五十二条　被执行人未按执行通知履行法律文书确定的义务，应当报告当前以及收到执行通知之日前一年的财产情况。被执行人拒绝报告或者虚假报告的，人民法院可以根据情节轻重对被执行人或者其法定代理人、有关单位的主要负责人或者直接责任人员予以罚款、拘留。

**Article 252** Where the party against whom enforcement is sought fails to perform obligations determined in a legal instrument as required by a notice of enforcement, the party shall report its current property status and its property status for one year before receiving the enforcement notice. If the party refuses to report or submits a false report, the people's court may, according to the severity of the circumstances, impose a fine or detention on the party which is a natural person or her or her legal representative or the primary person in charge or directly liable persons of the relevant entity.

第二百五十三条　被执行人未按执行通知履行法律文书确定的义务，人民法院有权向有关单位查询被执行人的存款、债券、股票、基金份额等财产情况。人民法院有权根据不同情形扣押、冻结、划拨、变价被执行人的财产。人民法院查询、扣押、冻结、划拨、变价的财产不得超出被执行人应当履行义务的范围。

**Article 253** Where the party against whom enforcement is sought fails to perform obligations determined in a legal instrument as required by a notice of enforcement, the people's court shall have the right to inquire the relevant entities about the deposits, bonds, stocks, fund shares and other property of the party against whom enforcement is sought. The people's court shall have the right to seize, freeze, transfer or sell the property of the party against whom enforcement is sought according to different circumstances. The aforesaid property inquiry and seizure, freezing, transfer

Saved on: 02/22/2025

and sale by the people's court shall not exceed the extent of obligations that the party against enforcement is sought shall perform.

人民法院决定扣押、冻结、划拨、变价财产，应当作出裁定，并发出协助执行通知书，有关单位必须办理。
The people's court shall issue a ruling on seizure, freezing, transfer or sale of property, as well as a notice of enforcement assistance, and the relevant entities must assist.

第二百五十四条　被执行人未按执行通知履行法律文书确定的义务，人民法院有权扣留、提取被执行人应当履行义务部分的收入。但应当保留被执行人及其所扶养家属的生活必需费用。
**Article 254** Where the party against whom enforcement is sought fails to perform obligations determined in a legal instrument as required by a notice of enforcement, the people's court shall have the right to withhold or withdraw a portion of the party's income corresponding to the party's obligations to be performed. However, the people's court shall ensure that necessary living expenses for the party and his or her dependent family members are retained by the party.

人民法院扣留、提取收入时，应当作出裁定，并发出协助执行通知书，被执行人所在单位、银行、信用合作社和其他有储蓄业务的单位必须办理。
The people's court shall issue a ruling on withholding or withdrawing income, as well as a notice of enforcement assistance, and the entity employing the party, banks, credit unions and other entities engaged in savings must assist.

第二百五十五条　被执行人未按执行通知履行法律文书确定的义务，人民法院有权查封、扣押、冻结、拍卖、变卖被执行人应当履行义务部分的财产。但应当保留被执行人及其所扶养家属的生活必需品。
**Article 255** Where the party against whom enforcement is sought fails to perform obligations determined in a legal instrument as required by a notice of enforcement, the people's court shall have the right to seize, impound, freeze, auction or sell a portion of the party's property corresponding to the party's obligations to be performed. However, the people's court shall ensure that necessities of life for the party and his or her dependent family members are retained by the party.

采取前款措施，人民法院应当作出裁定。
The people's court shall issue a ruling to take a measure in the preceding paragraph.

第二百五十六条　人民法院查封、扣押财产时，被执行人是公民的，应当通知被执行人或者他的成年家属到

[CLI Code]CLI.1.5175519(EN)

场；被执行人是法人或者其他组织的，应当通知其法定代表人或者主要负责人到场。拒不到场的，不影响执行。被执行人是公民的，其工作单位或者财产所在地的基层组织应当派人参加。

**Article 256** When a people's court seizes or impounds any property, if the party against whom enforcement is sought is a citizen, the people's court shall notify the party or his or her adult family members to appear on the site; or if the party against whom enforcement is sought is a legal person or any other organization, the people's court shall notify its legal representative or primary person in charge to appear on the site. Their refusals to appear on the site shall not affect the enforcement. If the party against whom enforcement is sought is a citizen, the entity employing the citizen or the grassroots organizations at the place where the property is located shall send personnel to the site.

对被查封、扣押的财产，执行员必须造具清单，由在场人签名或者盖章后，交被执行人一份。被执行人是公民的，也可以交他的成年家属一份。

The enforcement personnel must prepare an inventory of the seized or impounded property, to which the persons on the site shall affix their signatures or seals, and a copy of the inventory shall be provided to the party against whom enforcement is sought. If the party against whom enforcement is sought is a citizen, a copy of the inventory may also be provided to his or her adult family members.

第二百五十七条　被查封的财产，执行员可以指定被执行人负责保管。因被执行人的过错造成的损失，由被执行人承担。

**Article 257** The enforcement personnel may specify the party against whom enforcement is sought to be responsible for the safekeeping of the seized property. The party against whom enforcement is sought shall assume any losses incurred for the fault of the party against whom enforcement is sought.

第二百五十八条　财产被查封、扣押后，执行员应当责令被执行人在指定期间履行法律文书确定的义务。被执行人逾期不履行的，人民法院应当拍卖被查封、扣押的财产；不适于拍卖或者当事人双方同意不进行拍卖的，人民法院可以委托有关单位变卖或者自行变卖。国家禁止自由买卖的物品，交有关单位按照国家规定的价格收购。

**Article 258** After any property is seized or impounded, the enforcement personnel shall order the party against whom enforcement is sought to perform obligations determined in a legal instrument during a specified period. If the party against whom enforcement is sought fails to do so within the specified period, the people's court shall auction the seized or impounded property; and if auction

Saved on: 02/22/2025

[CLI Code]CLI.1.5175519(EN)

is not appropriate or both parties disagree on auction, the people's court may authorize a relevant entity to sell or may directly sell the property. Property prohibited by the state from being sold freely shall be delivered to the relevant entities for purchase at a price prescribed by the state.

第二百五十九条　被执行人不履行法律文书确定的义务，并隐匿财产的，人民法院有权发出搜查令，对被执行人及其住所或者财产隐匿地进行搜查。

**Article 259** Where the party against whom enforcement is sought fails to perform obligations determined in a legal instrument and conceals property, the people's court shall have the right to issue a search warrant to search the party, the residence of the party or a place where property may be concealed.

采取前款措施，由院长签发搜查令。

To take the measure in the preceding paragraph, the president of the people's court shall sign and issue a search warrant.

第二百六十条　法律文书指定交付的财物或者票证，由执行员传唤双方当事人当面交付，或者由执行员转交，并由被交付人签收。

**Article 260** The property, bill or certificate to be delivered as specified in a legal instrument shall be delivered in the presence of both sides as summoned by the enforcement personnel or be delivered through the enforcement personnel, and the party accepting delivery shall sign for it.

有关单位持有该项财物或者票证的，应当根据人民法院的协助执行通知书转交，并由被交付人签收。

Where a relevant entity holds the property, bill or certificate, the entity shall deliver it according to the notice of enforcement assistance from the people's court, and the party accepting delivery shall sign for it.

有关公民持有该项财物或者票证的，人民法院通知其交出。拒不交出的，强制执行。

Where a relevant citizen holds the property, bill or certificate, the people's court shall notify the citizen to surrender it. If the citizen refuses to do so, the people's court shall conduct enforcement.

第二百六十一条　强制迁出房屋或者强制退出土地，由院长签发公告，责令被执行人在指定期间履行。被执行人逾期不履行的，由执行员强制执行。

**Article 261** For a compulsory eviction from a building or land, the president of a people's court

[CLI Code]CLI.1.5175519(EN)

shall sign and issue a public announcement to order the party against whom enforcement is sought to perform the obligation within a specified period. If the party against whom enforcement is sought fails to do so within the specified period, the enforcement personnel shall conduct enforcement.

强制执行时，被执行人是公民的，应当通知被执行人或者他的成年家属到场；被执行人是法人或者其他组织的，应当通知其法定代表人或者主要负责人到场。拒不到场的，不影响执行。被执行人是公民的，其工作单位或者房屋、土地所在地的基层组织应当派人参加。执行员应当将强制执行情况记入笔录，由在场人签名或者盖章。

When conducting enforcement, if the party against whom enforcement is sought is a citizen, the people's court shall notify the party or his or her adult family members to appear on the site; or if the party against whom enforcement is sought is a legal person or any other organization, the people's court shall notify its legal representative or primary person in charge to appear on the site. Their refusals to appear on the site shall not affect the enforcement. If the party against whom enforcement is sought is a citizen, the entity employing the citizen or the grassroots organizations at the place where the building or land is located shall send personnel to the site. The enforcement personnel shall include enforcement information in the transcripts, to which the persons on the site shall affix their signatures or seals.

强制迁出房屋被搬出的财物，由人民法院派人运至指定处所，交给被执行人。被执行人是公民的，也可以交给他的成年家属。因拒绝接收而造成的损失，由被执行人承担。

The people's court shall assign personnel to transport the property removed from a building as a result of compulsory eviction to a designated location and deliver the property to the party against whom enforcement is sought. If the party against whom enforcement is sought is a citizen, the property may also be delivered to his or her adult family member. Any losses incurred due to refusal to accept delivery shall be assumed by the party against whom enforcement is sought.

第二百六十二条　在执行中，需要办理有关财产权证照转移手续的，人民法院可以向有关单位发出协助执行通知书，有关单位必须办理。

**Article 262** Where, during enforcement, the formalities for transferring any property right certificate is required, the people's court may issue a notice of enforcement assistance to the relevant entities, and the relevant entities must assist.

第二百六十三条　对判决、裁定和其他法律文书指定的行为，被执行人未按执行通知履行的，人民法院可以强制执行或者委托有关单位或者其他人完成，费用由被执行人承担。

**Article 263** Where the party against whom enforcement is sought fails to perform any conduct specified in a judgment, ruling or any other legal instrument as required by a notice of enforcement, the people's court may conduct enforcement or authorize a relevant unit or any other person to complete the conduct at the expense of the party against whom enforcement is sought.

第二百六十四条　被执行人未按判决、裁定和其他法律文书指定的期间履行给付金钱义务的，应当加倍支付迟延履行期间的债务利息。被执行人未按判决、裁定和其他法律文书指定的期间履行其他义务的，应当支付迟延履行金。

**Article 264** Where the party against whom enforcement is sought fails to perform any obligation of pecuniary payment during a period specified in a judgment, ruling or any other legal instrument, the party against whom enforcement is sought shall pay double interest for the debt for the period of deferred performance. If the party against whom enforcement is sought fails to perform any other obligation during a period specified in a judgment, ruling or any other legal instrument, the party against whom enforcement is sought shall pay a late fee for deferred performance.

第二百六十五条　人民法院采取本法第二百五十三条、第二百五十四条、第二百五十五条规定的执行措施后，被执行人仍不能偿还债务的，应当继续履行义务。债权人发现被执行人有其他财产的，可以随时请求人民法院执行。

**Article 265** Where, after a people's court takes the enforcement measures in Articles 253, 254 and 255 of this Law, the party against whom enforcement is sought is still unable to repay debts, the party against whom enforcement is sought shall continue to perform obligations. Once the creditor discovers that the party against whom enforcement is sought has any other property, the creditor may, at any time, apply to the people's court for enforcement.

第二百六十六条　被执行人不履行法律文书确定的义务的，人民法院可以对其采取或者通知有关单位协助采取限制出境，在征信系统记录、通过媒体公布不履行义务信息以及法律规定的其他措施。

**Article 266** Where the party against whom enforcement is sought fails to perform obligations determined in a legal instrument, the people's court may take or notify a relevant entity to assist in taking the measure of restricting exit from China, the measure of recording the failure in the credit system, the measure of publishing information on the failure on media and other measures prescribed by law.

第二十二章　执行中止和终结

Chapter 22 Suspension and Termination of Enforcement

第二百六十七条　有下列情形之一的，人民法院应当裁定中止执行：

**Article 267** Under any of the following circumstances, the people's court shall issue a ruling to suspend enforcement:

（一）申请人表示可以延期执行的；

(1) The applicant indicates that enforcement may be deferred.

（二）案外人对执行标的提出确有理由的异议的；

(2) A person which is not a party to the case raises any justified objection to the subject matter of enforcement.

（三）作为一方当事人的公民死亡，需要等待继承人继承权利或者承担义务的；

(3) A citizen as one of the parties dies, and it is necessary to wait for his or her successors to succeed to his or her rights or obligations.

（四）作为一方当事人的法人或者其他组织终止，尚未确定权利义务承受人的；

(4) A legal person or any other organization as one of the parties is terminated, and the successors to its rights and obligations have not been determined.

（五）人民法院认为应当中止执行的其他情形。

(5) Other circumstances under which the people's court deems that enforcement shall be suspended.

中止的情形消失后，恢复执行。

Enforcement shall be resumed after the circumstances causing suspension have disappeared.

第二百六十八条　有下列情形之一的，人民法院裁定终结执行：

**Article 268** Under any of the following circumstances, the people's court shall issue a ruling to terminate enforcement:

Saved on: 02/22/2025

[CLI Code]CLI.1.5175519(EN)

（一）申请人撤销申请的；

(1) The applicant withdraws the application for enforcement.

（二）据以执行的法律文书被撤销的；

(2) The legal instrument on which enforcement is based has been revoked.

（三）作为被执行人的公民死亡，无遗产可供执行，又无义务承担人的；

(3) The citizen as the party against whom enforcement is sought dies, without any estate for enforcement, and no one succeeds to his or her obligations.

（四）追索赡养费、扶养费、抚养费案件的权利人死亡的；

(4) The person entitled to recover support for elderly parents, support for other adult dependants or child support dies.

（五）作为被执行人的公民因生活困难无力偿还借款，无收入来源，又丧失劳动能力的；

(5) The citizen as the party against whom enforcement is sought is unable to repay his or her borrowings for living in hardship, has no source of income, and has lost his or her ability to work.

（六）人民法院认为应当终结执行的其他情形。

(6) Other circumstances under which the people's court deems that enforcement shall be terminated.

第二百六十九条　中止和终结执行的裁定，送达当事人后立即生效。

**Article 269** A ruling to suspend or terminate enforcement shall be effective immediately after being served on a party.

第四编　涉外民事诉讼程序的特别规定

Part Four Special Provisions on Foreign-Related Civil Procedures

第二十三章　一般原则

Chapter 23 General Principles

第二百七十条　在中华人民共和国领域内进行涉外民事诉讼，适用本编规定。本编没有规定的，适用本法其他

[CLI Code]CLI.1.5175519(EN)

有关规定。

**Article 270** The provisions of this Part shall apply to foreign-related civil actions within the territory of the People's Republic of China. Where this Part is silent, other relevant provisions of this Law shall apply.

第二百七十一条　中华人民共和国缔结或者参加的国际条约同本法有不同规定的，适用该国际条约的规定，但中华人民共和国声明保留的条款除外。

**Article 271** Where there is any discrepancy between an international treaty concluded or acceded to by the People's Republic of China and this Law, the provisions of the international treaty shall prevail, except clauses to which the People's Republic of China has declared reservations.

第二百七十二条　对享有外交特权与豁免的外国人、外国组织或者国际组织提起的民事诉讼，应当依照中华人民共和国有关法律和中华人民共和国缔结或者参加的国际条约的规定办理。

**Article 272** Civil actions instituted against foreign nationals, foreign organizations or international organizations which enjoy diplomatic privileges or immunities shall be governed by the relevant laws of the People's Republic of China and the international treaties concluded or acceded to by the People's Republic of China.

第二百七十三条　人民法院审理涉外民事案件，应当使用中华人民共和国通用的语言、文字。当事人要求提供翻译的，可以提供，费用由当事人承担。

**Article 273** When trying foreign-related civil cases, a people's court shall use the spoken and written languages commonly used in the People's Republic of China. Upon request of the parties, interpretation may be provided at the expense of the parties.

第二百七十四条　外国人、无国籍人、外国企业和组织在人民法院起诉、应诉，需要委托律师代理诉讼的，必须委托中华人民共和国的律师。

**Article 274** A foreign national, a stateless person or a foreign enterprise or organization which needs to be represented by a lawyer in instituting or responding to an action in a people's court must retain a lawyer of the People's Republic of China.

第二百七十五条　在中华人民共和国领域内没有住所的外国人、无国籍人、外国企业和组织委托中华人民共和国律师或者其他人代理诉讼，从中华人民共和国领域外寄交或者托交的授权委托书，应当经所在国公证机关证明，并经中华人民共和国驻该国使领馆认证，或者履行中华人民共和国与该所在国订立的有关条约中规定的证明手续

[CLI Code]CLI.1.5175519(EN)

后，才具有效力。

**Article 275** Where a foreign national, a stateless person or a foreign enterprise or organization without a domicile within the territory of the People's Republic of China needs to be represented by a lawyer or any other person of the People's Republic of China in an action, the power of attorney posted or forwarded from outside the territory of the People's Republic of China is valid only after it has been legalized by a notary office in the home country and authenticated by the Chinese embassy or consulate stationed in that country or has undergone the legalization formalities prescribed in the relevant treaty concluded by the People's Republic of China and that country.

第二十四章　管　辖

Chapter 24 Jurisdiction

第二百七十六条　因涉外民事纠纷，对在中华人民共和国领域内没有住所的被告提起除身份关系以外的诉讼，如果合同签订地、合同履行地、诉讼标的物所在地、可供扣押财产所在地、侵权行为地、代表机构住所地位于中华人民共和国领域内的，可以由合同签订地、合同履行地、诉讼标的物所在地、可供扣押财产所在地、侵权行为地、代表机构住所地人民法院管辖。

**Article 276** Where an action for a foreign-related civil dispute other than that involving identity relationship is instituted against a defendant that has no domicile within the territory of the People's Republic of China, if the place where the contract is signed or performed, where the subject matter of the action is located, where any impoundable property is located, or where the tort is committed, or the place of domicile of the representative office is within the territory of the People's Republic of China, the people's court at the place where the contract is signed or performed, where the subject matter of the action is located, where the impoundable property is located, where the tort is committed, or where the domicile of the representative office is located may have jurisdiction over the action.

除前款规定外，涉外民事纠纷与中华人民共和国存在其他适当联系的，可以由人民法院管辖。

If a foreign-related civil dispute has other appropriate connections with the People's Republic of China, in addition to those mentioned in the preceding paragraph, the people's court may have jurisdiction.

第二百七十七条　涉外民事纠纷的当事人书面协议选择人民法院管辖的，可以由人民法院管辖。

**Article 277** Where the parties to a foreign-related civil dispute, by a written agreement, choose a

[CLI Code]CLI.1.5175519(EN)

people's court to exercise jurisdiction, the chosen people's court may have jurisdiction.

第二百七十八条    当事人未提出管辖异议，并应诉答辩或者提出反诉的，视为人民法院有管辖权。

**Article 278** Where a party raises no objection to jurisdiction and responds to the action by submitting a written statement of defense or files a counterclaim, the people's court shall be deemed to have jurisdiction.

第二百七十九条    下列民事案件，由人民法院专属管辖：

**Article 279** The people's court shall have exclusive jurisdiction over the following civil cases:

（一）因在中华人民共和国领域内设立的法人或者其他组织的设立、解散、清算，以及该法人或者其他组织作出的决议的效力等纠纷提起的诉讼；

(1) An action instituted for a dispute arising from the formation, dissolution, or liquidation of a legal person or any other organization formed within the territory of the People's Republic of China, or the validity of a resolution made by such a legal person or other organization.

（二）因与在中华人民共和国领域内审查授予的知识产权的有效性有关的纠纷提起的诉讼；

(2) An action instituted for a dispute over the validity of intellectual property rights that have been examined and granted within the territory of the People's Republic of China.

（三）因在中华人民共和国领域内履行中外合资经营企业合同、中外合作经营企业合同、中外合作勘探开发自然资源合同发生纠纷提起的诉讼。

(3) An action instituted for a dispute arising from the performance of a contract for a Chinese-foreign equity joint venture, a contract for a Chinese-foreign contractual joint venture, or a contract for Chinese-foreign cooperative exploration and exploitation of natural resources within the territory of the People's Republic of China.

第二百八十条    当事人之间的同一纠纷，一方当事人向外国法院起诉，另一方当事人向人民法院起诉，或者一方当事人既向外国法院起诉，又向人民法院起诉，人民法院依照本法有管辖权的，可以受理。当事人订立排他性管辖协议选择外国法院管辖且不违反本法对专属管辖的规定，不涉及中华人民共和国主权、安全或者社会公共利益的，人民法院可以裁定不予受理；已经受理的，裁定驳回起诉。

**Article 280** Where the parties are involved in the same dispute, one party institutes an action in a foreign court, while the other party institutes an action in a people's court, or one party institutes

[CLI Code]CLI.1.5175519(EN)

an action in both a foreign court and a people's court, the people's court which has jurisdiction in accordance with this Law may accept the action. If the parties enter into an exclusive jurisdiction agreement and choose a foreign court to exercise jurisdiction, which does not violate the provisions of this Law on exclusive jurisdiction and does not involve the sovereignty, security, or public interest of the People's Republic of China, the people's court may rule not to accept the action or render a ruling to dismiss the action if the action has been accepted.

第二百八十一条　人民法院依据前条规定受理案件后，当事人以外国法院已经先于人民法院受理为由，书面申请人民法院中止诉讼的，人民法院可以裁定中止诉讼，但是存在下列情形之一的除外：

**Article 281** After a people's court accepts a case in accordance with the provisions of the preceding article, if a party applies to the people's court in writing for suspending the proceedings on the ground that the foreign court has accepted the case prior to the people's court, the people's court may render a ruling to suspend the proceedings, except under any of the following circumstances:

（一）当事人协议选择人民法院管辖，或者纠纷属于人民法院专属管辖；

(1) The parties, by an agreement, choose a people's court to exercise jurisdiction, or the dispute is subject to the exclusive jurisdiction of a people's court.

（二）由人民法院审理明显更为方便。

(2) It is evidently more convenient for a people's court to try the case.

外国法院未采取必要措施审理案件，或者未在合理期限内审结的，依当事人的书面申请，人民法院应当恢复诉讼。

If a foreign court fails to take necessary measures to try the case or fails to conclude the case within a reasonable time limit, the people's court shall resume proceedings upon the written application of the party.

外国法院作出的发生法律效力的判决、裁定，已经被人民法院全部或者部分承认，当事人对已经获得承认的部分又向人民法院起诉的，裁定不予受理；已经受理的，裁定驳回起诉。

If an effective judgment or ruling rendered by a foreign court has been recognized, in whole or in part, by a people's court, and the party institutes an action against the recognized part in the people's court, the people's court shall rule not to accept the action, or render a ruling to dismiss the action if the action has been accepted.

[CLI Code]CLI.1.5175519(EN)

第二百八十二条　人民法院受理的涉外民事案件，被告提出管辖异议，且同时有下列情形的，可以裁定驳回起诉，告知原告向更为方便的外国法院提起诉讼：

**Article 282** Where the defendant raises any objection to jurisdiction concerning a foreign-related civil case accepted by a people's court under all the following circumstances, the people's court may rule to dismiss the action and inform the plaintiff to institute an action in a more convenient foreign court:

（一）案件争议的基本事实不是发生在中华人民共和国领域内，人民法院审理案件和当事人参加诉讼均明显不方便；

(1) It is evidently inconvenient for a people's court to try the case and for a party to participate in legal proceedings since basic facts of disputes in the case do not occur within the territory of the People's Republic of China.

（二）当事人之间不存在选择人民法院管辖的协议；

(2) The parties do not have an agreement choosing a people's court to exercise jurisdiction.

（三）案件不属于人民法院专属管辖；

(3) The case does not fall under the exclusive jurisdiction of a people's court.

（四）案件不涉及中华人民共和国主权、安全或者社会公共利益；

(4) The case does not involve the sovereignty, security, or public interest of the People's Republic of China.

（五）外国法院审理案件更为方便。

(5) It is more convenient for a foreign court to try the case.

裁定驳回起诉后，外国法院对纠纷拒绝行使管辖权，或者未采取必要措施审理案件，或者未在合理期限内审结，当事人又向人民法院起诉的，人民法院应当受理。

If a party institutes a new action in a people's court since the foreign court refuses to exercise jurisdiction over the dispute, fails to take necessary measures to try the case, or fails to conclude the case within a reasonable period after a people's court renders a ruling to dismiss the action, the people's court shall accept the action.

第二十五章　送达、调查取证、期间

Saved on: 02/22/2025

Chapter 25 Service of Process, Investigation and Evidence Collection, and Periods

第二百八十三条　人民法院对在中华人民共和国领域内没有住所的当事人送达诉讼文书，可以采用下列方式：

**Article 283** A people's court may serve litigation documents on a party that has no domicile within the territory of the People's Republic of China through the following means:

（一）依照受送达人所在国与中华人民共和国缔结或者共同参加的国际条约中规定的方式送达；

(1) Documents are served in the manners specified in an international treaty concluded or acceded to by the country where the recipient is located and the People's Republic of China.

（二）通过外交途径送达；

(2) Documents are served through diplomatic channels.

（三）对具有中华人民共和国国籍的受送达人，可以委托中华人民共和国驻受送达人所在国的使领馆代为送达；

(3) If the recipient has the nationality of the People's Republic of China, the embassy or consulate of the People's Republic of China in the country where the recipient is located may be entrusted to serve the documents.

（四）向受送达人在本案中委托的诉讼代理人送达；

(4) Documents are served on a litigation representative authorized by the recipient in the case.

（五）向受送达人在中华人民共和国领域内设立的独资企业、代表机构、分支机构或者有权接受送达的业务代办人送达；

(5) Documents are served on a wholly-owned enterprise, a representative office, or a branch office formed by the recipient within the territory of the People's Republic of China or a business agent authorized to receive the service of documents.

（六）受送达人为外国人、无国籍人，其在中华人民共和国领域内设立的法人或者其他组织担任法定代表人或者主要负责人，且与该法人或者其他组织为共同被告的，向该法人或者其他组织送达；

(6) If the recipient who is a foreign natural person or a stateless person serves as the legal representative or principal person in charge of a legal person or any other organization formed within the territory of the People's Republic of China and is a co-defendant with such a legal person or other organization, documents are served on the legal person or other organization.

[CLI Code]CLI.1.5175519(EN)

（七）受送达人为外国法人或者其他组织，其法定代表人或者主要负责人在中华人民共和国领域内的，向其法定代表人或者主要负责人送达；

(7) If the recipient is a foreign legal person or any other organization, and its legal representative or principal person in charge is within the territory of the People's Republic of China, documents are served on its legal representative or principal person in charge.

（八）受送达人所在国的法律允许邮寄送达的，可以邮寄送达，自邮寄之日起满三个月，送达回证没有退回，但根据各种情况足以认定已经送达的，期间届满之日视为送达；

(8) Documents may be served by post if service of documents by post is permitted by the law of the country where the recipient is located, and if, three months after the postmark date, the service acknowledgment is not returned but the documents may be deemed as having been served based on all circumstances, the documents shall be deemed as having been served on the expiration date of the aforesaid period.

（九）采用能够确认受送达人收悉的电子方式送达，但是受送达人所在国法律禁止的除外；

(9) Documents are served by electronic means capable of confirming receipt by the recipient, unless it is prohibited by the law of the country where the recipient is located.

（十）以受送达人同意的其他方式送达，但是受送达人所在国法律禁止的除外。

(10) Documents are served in any other manner agreed upon by the recipient, unless it is prohibited by the law of the country where the recipient is located.

不能用上述方式送达的，公告送达，自发出公告之日起，经过六十日，即视为送达。

If the documents cannot be served through any of the aforesaid means, the documents shall be served by public announcement, and the documents shall be deemed as having been served 60 days after the date of the public announcement.

第二百八十四条　当事人申请人民法院调查收集的证据位于中华人民共和国领域外，人民法院可以依照证据所在国与中华人民共和国缔结或者共同参加的国际条约中规定的方式，或者通过外交途径调查收集。

Article 284 Where any evidence to be collected through the investigation of the people's court upon the application of a party is located outside the territory of the People's Republic of China, the people's court may conduct the investigation and collect such evidence according to the methods specified in the international treaty concluded or acceded to by both the country where the evidence is located and the People's Republic of China, or through diplomatic channels.

在所在国法律不禁止的情况下，人民法院可以采用下列方式调查收集：

A people's court may conduct the investigation and collect evidence in the following manners provided that it is not prohibited by the law of the country where the evidence is located:

（一）对具有中华人民共和国国籍的当事人、证人，可以委托中华人民共和国驻当事人、证人所在国的使领馆代为取证；

(1) If a party or witness has the nationality of the People's Republic of China, the embassy or consulate of the People's Republic of China in the country where the party or witness is located may be entrusted to collect evidence.

（二）经双方当事人同意，通过即时通讯工具取证；

(2) Evidence is obtained via instant messaging tools with the consent of both parties.

（三）以双方当事人同意的其他方式取证。

(3) Evidence is obtained by other means with the consent of both parties.

第二百八十五条　被告在中华人民共和国领域内没有住所的，人民法院应当将起诉状副本送达被告，并通知被告在收到起诉状副本后三十日内提出答辩状。被告申请延期的，是否准许，由人民法院决定。

Article 285 Where a defendant has no domicile within the territory of the People's Republic of China, the people's court shall serve a copy of the written complaint on the defendant and notify the defendant to a written statement of defense within 30 days after receiving the copy of the written complaint. If the defendant applies for an extension of the aforesaid period, the extension shall be subject to the decision of the people's court.

第二百八十六条　在中华人民共和国领域内没有住所的当事人，不服第一审人民法院判决、裁定的，有权在判决书、裁定书送达之日起三十日内提起上诉。被上诉人在收到上诉状副本后，应当在三十日内提出答辩状。当事人不能在法定期间提起上诉或者提出答辩状，申请延期的，是否准许，由人民法院决定。

Article 286 A party which has no domicile within the territory of the People's Republic of China shall have the right to appeal against a judgment or ruling of a people's court of first instance within 30 days from the date of service of the written judgment or ruling. The appellee shall submit a written statement of defense within 30 days after receiving a copy of the written appeal. If a party is unable to file an appeal or submit a written statement of defense within the statutory period and applies for an extension of the period, the application shall be subject to the decision of

[CLI Code]CLI.1.5175519(EN)

the people's court.

第二百八十七条　人民法院审理涉外民事案件的期间，不受本法第一百五十二条、第一百八十三条规定的限制。

**Article 287** The period for a people's court to try a foreign-related civil case shall not be limited by the provisions of Article 152 and 183 of this Law.

第二十六章　仲　裁

Chapter 26 Arbitration

第二百八十八条　涉外经济贸易、运输和海事中发生的纠纷，当事人在合同中订有仲裁条款或者事后达成书面仲裁协议，提交中华人民共和国涉外仲裁机构或者其他仲裁机构仲裁的，当事人不得向人民法院起诉。

**Article 288** Where, for disputes arising from foreign economic and trade activities or international transportation or maritime activities, the parties have included an arbitration clause in the contracts or have reached a written arbitration agreement after a dispute arose to refer such disputes to an international arbitral institution of the People's Republic of China or any other arbitral institution for arbitration, the parties shall not institute an action in a people's court.

当事人在合同中没有订有仲裁条款或者事后没有达成书面仲裁协议的，可以向人民法院起诉。

If the parties have not included any arbitration clauses in the contracts or have not reached a written arbitration agreement after a dispute arose, the parties may institute an action in a people's court.

第二百八十九条　当事人申请采取保全的，中华人民共和国的涉外仲裁机构应当将当事人的申请，提交被申请人住所地或者财产所在地的中级人民法院裁定。

**Article 289** Where a party applies for a preservation measure, the international arbitral institution of the People's Republic of China shall submit the party's application to the intermediate people's court at the place of domicile of the respondent or at the place where the respondent's property is located.

第二百九十条　经中华人民共和国涉外仲裁机构裁决的，当事人不得向人民法院起诉。一方当事人不履行仲裁裁决的，对方当事人可以向被申请人住所地或者财产所在地的中级人民法院申请执行。

**Article 290** Where an international arbitral institution of the People's Republic of China has

Saved on: 02/22/2025

[CLI Code]CLI.1.5175519(EN)

rendered an award for a dispute, the parties shall not institute an action in a people court for the dispute. If a party fails to comply with the arbitration award, the opposing party may apply for enforcement of the award to the intermediate people's court at the place of domicile of the respondent or at the place where the respondent's property is located.

第二百九十一条　对中华人民共和国涉外仲裁机构作出的裁决，被申请人提出证据证明仲裁裁决有下列情形之一的，经人民法院组成合议庭审查核实，裁定不予执行：

**Article 291** Where the respondent adduces evidence that an arbitration award of an international arbitral institution of the People's Republic of China falls under any of the following circumstances, a people's court shall, upon examination and verification by a collegial bench, issue a ruling not to enforce the award:

（一）当事人在合同中没有订有仲裁条款或者事后没有达成书面仲裁协议的；

(1) The contract between the parties does not include an arbitration clause or the parties have not reached any written arbitration agreement after a dispute arose.

（二）被申请人没有得到指定仲裁员或者进行仲裁程序的通知，或者由于其他不属于被申请人负责的原因未能陈述意见的；

(2) The respondent is not notified to appoint an arbitrator or of the conduct of arbitration procedure or fails to present its case, which is not attributable to the fault of the respondent.

（三）仲裁庭的组成或者仲裁的程序与仲裁规则不符的；

(3) The composition of the arbitration tribunal or the arbitration procedure is not in conformity with arbitration rules.

（四）裁决的事项不属于仲裁协议的范围或者仲裁机构无权仲裁的。

(4) The matters arbitrated are outside the scope of an arbitration agreement or the arbitral institution has no arbitration power.

人民法院认定执行该裁决违背社会公共利益的，裁定不予执行。

If a people's court holds that the enforcement of an arbitration award is contrary to the public interest, the people's court shall issue a ruling not to enforce the award.

第二百九十二条　仲裁裁决被人民法院裁定不予执行的，当事人可以根据双方达成的书面仲裁协议重新申请仲

裁，也可以向人民法院起诉。

**Article 292** Where an arbitration award is not enforced according to a ruling of a people's court, the parties may, according to a written arbitration agreement reached by them, apply again for arbitration or institute an action in a people's court.

第二十七章　司法协助

Chapter 27 Judicial Assistance

第二百九十三条　根据中华人民共和国缔结或者参加的国际条约，或者按照互惠原则，人民法院和外国法院可以相互请求，代为送达文书、调查取证以及进行其他诉讼行为。

**Article 293** In accordance with an international treaty concluded or acceded to by the People's Republic of China or under the principle of reciprocity, a people's court and a foreign court may request each other to provide judicial assistance in service of process, investigation and collection of evidence and other litigation activities.

外国法院请求协助的事项有损于中华人民共和国的主权、安全或者社会公共利益的，人民法院不予执行。

If any matter requested by a foreign court for assistance is detrimental to the sovereignty, security or public interest of the People's Republic of China, the people's court shall not grant the request.

第二百九十四条　请求和提供司法协助，应当依照中华人民共和国缔结或者参加的国际条约所规定的途径进行；没有条约关系的，通过外交途径进行。

**Article 294** Judicial assistance shall be requested and provided through the channels prescribed in an international treaty concluded or acceded to by the People's Republic of China; or in the absence of such a treaty, shall be requested and provided through diplomatic channels.

外国驻中华人民共和国的使领馆可以向该国公民送达文书和调查取证，但不得违反中华人民共和国的法律，并不得采取强制措施。

A foreign embassy or consulate to the People's Republic of China may serve process on and investigate and collect evidence from its citizens but shall not violate the laws of the People's Republic of China and shall not take compulsory measures.

除前款规定的情况外，未经中华人民共和国主管机关准许，任何外国机关或者个人不得在中华人民共和国领域内送达文书、调查取证。

Except for the circumstances in the preceding paragraph, no foreign authority or individual shall, without permission from the competent authorities of the People's Republic of China, serve process or conduct investigation and collection of evidence within the territory of the People's Republic of China.

第二百九十五条　外国法院请求人民法院提供司法协助的请求书及其所附文件，应当附有中文译本或者国际条约规定的其他文字文本。

**Article 295** The written request of a foreign court for the provision of judicial assistance by a people's court and the annexes thereto shall be accompanied with Chinese versions or versions in other languages specified in the relevant international treaty.

人民法院请求外国法院提供司法协助的请求书及其所附文件，应当附有该国文字译本或者国际条约规定的其他文字文本。

A letter of request and its annexes submitted to a foreign court by a people's court for judicial assistance shall also be appended with the translations in the language of the country or the texts in the language specified in the relevant international treaty.

第二百九十六条　人民法院提供司法协助，依照中华人民共和国法律规定的程序进行。外国法院请求采用特殊方式的，也可以按照其请求的特殊方式进行，但请求采用的特殊方式不得违反中华人民共和国法律。

**Article 296** The people's courts shall provide judicial assistance under the procedures prescribed by the laws of the People's Republic of China. If a foreign court requests that judicial assistance be provided in a special manner, it may be provided in the special manner requested, but the special manner requested shall not violate the laws of the People's Republic of China.

第二百九十七条　人民法院作出的发生法律效力的判决、裁定，如果被执行人或者其财产不在中华人民共和国领域内，当事人请求执行的，可以由当事人直接向有管辖权的外国法院申请承认和执行，也可以由人民法院依照中华人民共和国缔结或者参加的国际条约的规定，或者按照互惠原则，请求外国法院承认和执行。

**Article 297** Where a party applies for enforcement of an effective judgment or ruling of a people's court, if the party against whom enforcement is sought or the property thereof is not within the territory of the People's Republic of China, the applicant may apply directly to the foreign court having jurisdiction for recognition and enforcement or apply to a people's court for the people's court to request recognition and enforcement by the foreign court in accordance with the provisions of an international treaty concluded or acceded to by the People's Republic of China or

under the principle of reciprocity.

在中华人民共和国领域内依法作出的发生法律效力的仲裁裁决，当事人请求执行的，如果被执行人或者其财产不在中华人民共和国领域内，当事人可以直接向有管辖权的外国法院申请承认和执行。

Where a party applies for the enforcement of an effective arbitration award legally rendered within the territory of the People's Republic of China, if the party subject to enforcement or the property thereof is not within the territory of the People's Republic of China, the party may directly apply to the foreign court having jurisdiction for the recognition and enforcement of the arbitration award.

第二百九十八条　外国法院作出的发生法律效力的判决、裁定，需要人民法院承认和执行的，可以由当事人直接向有管辖权的中级人民法院申请承认和执行，也可以由外国法院依照该国与中华人民共和国缔结或者参加的国际条约的规定，或者按照互惠原则，请求人民法院承认和执行。

**Article 298** Where an effective judgment or ruling rendered by a foreign court requires recognition and enforcement by a people's court, a party may directly apply to the intermediate people's court having jurisdiction for recognition and enforcement or the foreign court may request recognition and enforcement by a people's court in accordance with the provisions of an international treaty concluded or acceded to by the foreign country and the People's Republic of China or under the principle of reciprocity.

第二百九十九条　人民法院对申请或者请求承认和执行的外国法院作出的发生法律效力的判决、裁定，依照中华人民共和国缔结或者参加的国际条约，或者按照互惠原则进行审查后，认为不违反中华人民共和国法律的基本原则且不损害国家主权、安全、社会公共利益的，裁定承认其效力；需要执行的，发出执行令，依照本法的有关规定执行。

**Article 299** After examining an application or request for the recognition and enforcement of an effective judgment or ruling rendered by a foreign court in accordance with an international treaty concluded or acceded to by the People's Republic of China or under the principle of reciprocity, a people's court shall render a ruling to recognize the legal force of the judgment or ruling and issue an order for enforcement as needed to enforce the judgment or ruling according to the relevant provisions of this Law, if the people's court deems that the judgment or ruling neither violates the basic principles of laws of the People's Republic of China nor damages the sovereignty, security, and public interest of the state.

第三百条　对申请或者请求承认和执行的外国法院作出的发生法律效力的判决、裁定，人民法院经审查，有下列情形之一的，裁定不予承认和执行：

[CLI Code]CLI.1.5175519(EN)

**Article 300** A people's court shall, after examining an application or request for the recognition and enforcement of an effective judgment or ruling rendered by a foreign court, render a ruling not to recognize and enforce the judgment or ruling under any of the following circumstances:

（一）依据本法第三百零一条的规定，外国法院对案件无管辖权；

(1) The foreign court has no jurisdiction over the case according to Article 301 of this Law.

（二）被申请人未得到合法传唤或者虽经合法传唤但未获得合理的陈述、辩论机会，或者无诉讼行为能力的当事人未得到适当代理；

(2) The respondent has not been lawfully summoned or has been lawfully summoned but has not been given a reasonable opportunity to make statements or arguments, or the party without the capacity to action is not properly represented.

（三）判决、裁定是通过欺诈方式取得；

(3) The judgment or ruling is obtained by fraud.

（四）人民法院已对同一纠纷作出判决、裁定，或者已经承认第三国法院对同一纠纷作出的判决、裁定；

(4) A people's court has rendered a judgment or ruling on the same dispute or has recognized a judgment or ruling rendered by a court of a third country on the same dispute.

（五）违反中华人民共和国法律的基本原则或者损害国家主权、安全、社会公共利益。

(5) The basic principles of the laws of the People's Republic of China are violated or the sovereignty, security, or public interest of the state is damaged.

第三百零一条　有下列情形之一的，人民法院应当认定该外国法院对案件无管辖权：

**Article 301** A people's court shall determine that a foreign court has no jurisdiction over a case under any of the following circumstances:

（一）外国法院依照其法律对案件没有管辖权，或者虽然依照其法律有管辖权但与案件所涉纠纷无适当联系；

(1) The foreign court has no jurisdiction over the case according to the governing law or has jurisdiction over the case according to the governing law but has no appropriate connection with the dispute involved in the case.

（二）违反本法对专属管辖的规定；

(2) The provisions of this Law on exclusive jurisdiction are violated.

（三）违反当事人排他性选择法院管辖的协议。

(3) The agreement by which the parties exclusively choose the court to exercise jurisdiction is violated.

第三百零二条　当事人向人民法院申请承认和执行外国法院作出的发生法律效力的判决、裁定，该判决、裁定涉及的纠纷与人民法院正在审理的纠纷属于同一纠纷的，人民法院可以裁定中止诉讼。

**Article 302** Where a party applies to a people's court for the recognition and enforcement of an effective judgment or ruling rendered by a foreign court, and the dispute involved in the judgment or ruling is the same as that under trial by a people's court, the people's court may render a ruling to suspend proceedings.

外国法院作出的发生法律效力的判决、裁定不符合本法规定的承认条件的，人民法院裁定不予承认和执行，并恢复已经中止的诉讼；符合本法规定的承认条件的，人民法院裁定承认其效力；需要执行的，发出执行令，依照本法的有关规定执行；对已经中止的诉讼，裁定驳回起诉。

If an effective judgment or ruling rendered by a foreign court does not meet the conditions for recognition specified in this Law, the people's court shall render a ruling not to recognize and enforce the judgment or ruling, and resume the proceedings that have been suspended. If the conditions for recognition specified in this Law are met, the people's court shall render a ruling to recognize the legal force of the judgment or ruling, and issue an order for enforcement as needed to enforce the judgment or ruling according to the relevant provisions of this Law; and shall render a ruling to dismiss the action if the proceedings have been suspended.

第三百零三条　当事人对承认和执行或者不予承认和执行的裁定不服的，可以自裁定送达之日起十日内向上一级人民法院申请复议。

**Article 303** A party may apply for reconsideration against a ruling on recognition and enforcement or non-recognition and non-enforcement to the people's court at the next higher level within ten days after the ruling is served.

第三百零四条　在中华人民共和国领域外作出的发生法律效力的仲裁裁决，需要人民法院承认和执行的，当事人可以直接向被执行人住所地或者其财产所在地的中级人民法院申请。被执行人住所地或者其财产不在中华人民共和国领域内的，当事人可以向申请人住所地或者与裁决的纠纷有适当联系的地点的中级人民法院申请。人民法院应当依照中华人民共和国缔结或者参加的国际条约，或者按照互惠原则办理。

[CLI Code]CLI.1.5175519(EN)

**Article 304** Where an effective arbitration award rendered outside the territory of the People's Republic of China requires recognition and enforcement by a people's court, a party may directly apply to the intermediate people's court at the place of domicile of the party subject to enforcement or at the place where the property thereof is located. If the domicile of the person subject to enforcement or the property thereof is not within the territory of the People's Republic of China, the party may file an application with the intermediate people's court at the place of domicile of the applicant or at the place that has appropriate connections with the dispute involved in the arbitration award. The people's court shall process the application in accordance with an international treaty concluded or acceded to by the People's Republic of China or under the principle of reciprocity.

第三百零五条　涉及外国国家的民事诉讼，适用中华人民共和国有关外国国家豁免的法律规定；有关法律没有规定的，适用本法。

**Article 305** The provisions of the laws of the People's Republic of China on foreign state immunity shall apply to civil actions involving foreign states. If the relevant law is silent, this Law shall apply.

第三百零六条　本法自公布之日起施行，《中华人民共和国民事诉讼法（试行）》同时废止。

**Article 306** This Law comes into force on the date of issuance, and the Civil Procedure Law of the People's Republic of China (for Trial Implementation) shall be repealed simultaneously.

©Pkulaw：(www.pkulaw.com) provides various professional solutions in such fields as legal information, law knowledge and legal software. Pkulaw provides you with abundant reference materials. When you invoke articles of laws and regulations, please check them with the standard texts. You are welcome to view all our products and services.

Pkulaw Express: How to quickly find information you need? What are the new features of Pkulaw V6?

Saved on: 02/22/2025



[CLI Code]CLI.1.5175519(EN)



Scan QR Code for instant access to the original text

Original Link: https://www.pkulaw.com/en_law/55ada7bc4fc9d8ccbdfb.html

Saved on: 02/22/2025

【法宝引证码】CLI.3.5115567

# 最高人民法院关于适用《中华人民共和国民事诉讼法》的解释(2022修正)

| | |
|---|---|
| 制定机关: | 最高人民法院　机构沿革 |
| 发文字号: | 法释〔2022〕11号 |
| 公布日期: | 2022.04.01 |
| 施行日期: | 2022.04.10 |
| 时效性: | 现行有效 |
| 效力位阶: | 司法解释 |
| 法规类别: | 民事诉讼法 |
| 专题分类: | 民法典 |

2020-2022编注　　2015-2020编注

最高人民法院关于适用《中华人民共和国民事诉讼法》的解释

（2014年12月18日最高人民法院审判委员会第1636次会议通过；根据2020年12月23日最高人民法院审判委员会第1823次会议通过的《最高人民法院关于修改〈最高人民法院关于人民法院民事调解工作若干问题的规定〉等十九件民事诉讼类司法解释的决定》第一次修正；根据2022年3月22日最高人民法院审判委员会第1866次会议通过的《最高人民法院关于修改〈最高人民法院关于适用《中华人民共和国民事诉讼法》的解释〉的决定》第二次修正，该修正自2022年4月10日起施行）

目录

一、管辖

二、回避

三、诉讼参加人

四、证据

五、期间和送达

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

六、调解

七、保全和先予执行

八、对妨害民事诉讼的强制措施

九、诉讼费用

十、第一审普通程序

十一、简易程序

十二、简易程序中的小额诉讼

十三、公益诉讼

十四、第三人撤销之诉

十五、执行异议之诉

十六、第二审程序

十七、特别程序

十八、审判监督程序

十九、督促程序

二十、公示催告程序

二十一、执行程序

二十二、涉外民事诉讼程序的特别规定

二十三、附则

2012年8月31日，第十一届全国人民代表大会常务委员会第二十八次会议审议通过了《关于修改〈中华人民共和国民事诉讼法〉的决定》。根据修改后的民事诉讼法，结合人民法院民事审判和执行工作实际，制定本解释。

<h2 style="text-align:center">一、管辖</h2>

**第一条** 民事诉讼法第十九条第一项规定的重大涉外案件，包括争议标的额大的案件、案情复杂的案件，或者一方当事人人数众多等具有重大影响的案件。

法宝联想： 司法案例 1631 篇 期刊 2 篇

【法宝引证码】CLI.3.5115567

**第二条**　专利纠纷案件由知识产权法院、最高人民法院确定的中级人民法院和基层人民法院管辖。

海事、海商案件由海事法院管辖。

法宝联想：　中央法规 1 篇　地方法规 1 篇　司法案例 3420 篇　期刊 1 篇　律所实务 1 篇

**第三条**　公民的住所地是指公民的户籍所在地，法人或者其他组织的住所地是指法人或者其他组织的主要办事机构所在地。

法人或者其他组织的主要办事机构所在地不能确定的，法人或者其他组织的注册地或者登记地为住所地。

法宝联想：　地方法规 4 篇　司法案例 55491 篇　期刊 2 篇　律所实务 4 篇　专题参考 1 篇

**第四条**　公民的经常居住地是指公民离开住所地至起诉时已连续居住一年以上的地方，但公民住院就医的地方除外。

法宝联想：　司法案例 21585 篇　专题参考 2 篇

**第五条**　对没有办事机构的个人合伙、合伙型联营体提起的诉讼，由被告注册登记地人民法院管辖。没有注册登记，几个被告又不在同一辖区的，被告住所地的人民法院都有管辖权。

法宝联想：　司法案例 919 篇　专题参考 2 篇

**第六条**　被告被注销户籍的，依照民事诉讼法第二十三条规定确定管辖；原告、被告均被注销户籍的，由被告居住地人民法院管辖。

法宝联想：　地方法规 1 篇　司法案例 1012 篇　专题参考 2 篇

**第七条**　当事人的户籍迁出后尚未落户，有经常居住地的，由该地人民法院管辖；没有经常居住地的，由其原户籍所在地人民法院管辖。

法宝联想：　地方法规 1 篇　司法案例 678 篇　期刊 1 篇

**第八条**　双方当事人都被监禁或者被采取强制性教育措施的，由被告原住所地人民法院管辖。被告被监禁或者被采取强制性教育措施一年以上的，由被告被监禁地或者被采取强制性教育措施地人民

　　　　　　　　　　　　　　　　　　　　　　　　　　　下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法院管辖。

法宝联想：　司法案例 1214 篇　专题参考 1 篇

　　**第九条**　追索赡养费、扶养费、抚养费案件的几个被告住所地不在同一辖区的，可以由原告住所地人民法院管辖。

法宝联想：　司法案例 1246 篇

　　**第十条**　不服指定监护或者变更监护关系的案件，可以由被监护人住所地人民法院管辖。

法宝联想：　司法案例 447 篇　案例报道 1 篇　专题参考 1 篇

　　**第十一条**　双方当事人均为军人或者军队单位的民事案件由军事法院管辖。

法宝联想：　司法案例 309 篇

　　**第十二条**　夫妻一方离开住所地超过一年，另一方起诉离婚的案件，可以由原告住所地人民法院管辖。

　　夫妻双方离开住所地超过一年，一方起诉离婚的案件，由被告经常居住地人民法院管辖；没有经常居住地的，由原告起诉时被告居住地人民法院管辖。

法宝联想：　中央法规 1 篇　司法案例 2465 篇

　　**第十三条**　在国内结婚并定居国外的华侨，如定居国法院以离婚诉讼须由婚姻缔结地法院管辖为由不予受理，当事人向人民法院提出离婚诉讼的，由婚姻缔结地或者一方在国内的最后居住地人民法院管辖。

法宝联想：　司法案例 333 篇

　　**第十四条**　在国外结婚并定居国外的华侨，如定居国法院以离婚诉讼须由国籍所属国法院管辖为由不予受理，当事人向人民法院提出离婚诉讼的，由一方原住所地或者在国内的最后居住地人民法院管辖。

法宝联想：　司法案例 121 篇

【法宝引证码】CLI.3.5115567

第十五条　中国公民一方居住在国外，一方居住在国内，不论哪一方向人民法院提起离婚诉讼，国内一方住所地人民法院都有权管辖。国外一方在居住国法院起诉，国内一方向人民法院起诉的，受诉人民法院有权管辖。

法宝联想：　司法案例 357 篇　期刊 1 篇

第十六条　中国公民双方在国外但未定居，一方向人民法院起诉离婚的，应由原告或者被告原住所地人民法院管辖。

法宝联想：　司法案例 410 篇　期刊 1 篇　专题参考 1 篇

第十七条　已经离婚的中国公民，双方均定居国外，仅就国内财产分割提起诉讼的，由主要财产所在地人民法院管辖。

法宝联想：　地方法规 1 篇　司法案例 369 篇

第十八条　合同约定履行地点的，以约定的履行地点为合同履行地。

合同对履行地点没有约定或者约定不明确，争议标的为给付货币的，接收货币一方所在地为合同履行地；交付不动产的，不动产所在地为合同履行地；其他标的，履行义务一方所在地为合同履行地。即时结清的合同，交易行为地为合同履行地。

合同没有实际履行，当事人双方住所地都不在合同约定的履行地的，由被告住所地人民法院管辖。

法宝联想：　地方法规 2 篇　司法案例 207871 篇　案例报道 1 篇　期刊 3 篇　律所实务 6 篇　专题参考 11 篇

第十九条　财产租赁合同、融资租赁合同以租赁物使用地为合同履行地。合同对履行地有约定的，从其约定。

法宝联想：　司法案例 8337 篇　律所实务 2 篇

第二十条　以信息网络方式订立的买卖合同，通过信息网络交付标的的，以买受人住所地为合同履行地；通过其他方式交付标的的，收货地为合同履行地。合同对履行地有约定的，从其约定。

法宝联想：　司法案例 12352 篇　案例报道 1 篇　律所实务 2 篇　专题参考 1 篇

　　　　下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

第二十一条　因财产保险合同纠纷提起的诉讼，如果保险标的物是运输工具或者运输中的货物，可以由运输工具登记注册地、运输目的地、保险事故发生地人民法院管辖。

因人身保险合同纠纷提起的诉讼，可以由被保险人住所地人民法院管辖。

法宝联想：　司法案例 4789 篇

第二十二条　因股东名册记载、请求变更公司登记、股东知情权、公司决议、公司合并、公司分立、公司减资、公司增资等纠纷提起的诉讼，依照民事诉讼法第二十七条规定确定管辖。

法宝联想：　地方法规 1 篇　司法案例 4189 篇　期刊 1 篇　律所实务 2 篇　专题参考 1 篇

第二十三条　债权人申请支付令，适用民事诉讼法第二十二条规定，由债务人住所地基层人民法院管辖。

法宝联想：　司法案例 663 篇

第二十四条　民事诉讼法第二十九条规定的侵权行为地，包括侵权行为实施地、侵权结果发生地。

法宝联想：　司法案例 24998 篇　期刊 2 篇　律所实务 8 篇　专题参考 3 篇

第二十五条　信息网络侵权行为实施地包括实施被诉侵权行为的计算机等信息设备所在地，侵权结果发生地包括被侵权人住所地。

法宝联想：　地方法规 1 篇　司法案例 18587 篇　案例报道 1 篇　期刊 2 篇　律所实务 4 篇　专题参考 3 篇

第二十六条　因产品、服务质量不合格造成他人财产、人身损害提起的诉讼，产品制造地、产品销售地、服务提供地、侵权行为地和被告住所地人民法院都有管辖权。

法宝联想：　地方法规 1 篇　司法案例 2796 篇　律所实务 2 篇　专题参考 1 篇

第二十七条　当事人申请诉前保全后没有在法定期间起诉或者申请仲裁，给被申请人、利害关系人造成损失引起的诉讼，由采取保全措施的人民法院管辖。

当事人申请诉前保全后在法定期间内起诉或者申请仲裁，被申请人、利害关系人因保全受到损失提起的诉讼，由受理起诉的人民法院或者采取保全措施的人民法院管辖。

　　　　　　　　　　　　　　　　　　　　　　　　　　　下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想：　司法案例 371 篇　期刊 2 篇　专题参考 1 篇

**第二十八条**　民事诉讼法第三十四条第一项规定的不动产纠纷是指因不动产的权利确认、分割、相邻关系等引起的物权纠纷。

农村土地承包经营合同纠纷、房屋租赁合同纠纷、建设工程施工合同纠纷、政策性房屋买卖合同纠纷，按照不动产纠纷确定管辖。

不动产已登记的，以不动产登记簿记载的所在地为不动产所在地；不动产未登记的，以不动产实际所在地为不动产所在地。

法宝联想：　地方法规 2 篇　司法案例 82546 篇　期刊 2 篇　律所实务 14 篇　专题参考 5 篇

**第二十九条**　民事诉讼法第三十五条规定的书面协议，包括书面合同中的协议管辖条款或者诉讼前以书面形式达成的选择管辖的协议。

法宝联想：　地方法规 1 篇　司法案例 6362 篇　案例报道 1 篇　律所实务 1 篇

**第三十条**　根据管辖协议，起诉时能够确定管辖法院的，从其约定；不能确定的，依照 民事诉讼法的相关规定确定管辖。

管辖协议约定两个以上与争议有实际联系的地点的人民法院管辖，原告可以向其中一个人民法院起诉。

法宝联想：　司法案例 31811 篇　案例报道 1 篇　律所实务 1 篇

**第三十一条**　经营者使用格式条款与消费者订立管辖协议，未采取合理方式提请消费者注意，消费者主张管辖协议无效的，人民法院应予支持。

法宝联想：　法律动态 1 篇　司法案例 2921 篇　期刊 4 篇　律所实务 5 篇

**第三十二条**　管辖协议约定由一方当事人住所地人民法院管辖，协议签订后当事人住所地变更的，由签订管辖协议时的住所地人民法院管辖，但当事人另有约定的除外。

法宝联想：　司法案例 6252 篇　案例报道 2 篇

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

**第三十三条** 合同转让的，合同的管辖协议对合同受让人有效，但转让时受让人不知道有管辖协议，或者转让协议另有约定且原合同相对人同意的除外。

法宝联想：    司法案例 6482 篇   律所实务 3 篇

**第三十四条** 当事人因同居或者在解除婚姻、收养关系后发生财产争议，约定管辖的，可以适用民事诉讼法第三十五条规定确定管辖。

法宝联想：    司法案例 317 篇

**第三十五条** 当事人在答辩期间届满后未应诉答辩，人民法院在一审开庭前，发现案件不属于本院管辖的，应当裁定移送有管辖权的人民法院。

法宝联想：    地方法规 1 篇  司法案例 21608 篇  期刊 2 篇

**第三十六条** 两个以上人民法院都有管辖权的诉讼，先立案的人民法院不得将案件移送给另一个有管辖权的人民法院。人民法院在立案前发现其他有管辖权的人民法院已先立案的，不得重复立案；立案后发现其他有管辖权的人民法院已先立案的，裁定将案件移送给先立案的人民法院。

法宝联想：    司法案例 7955 篇  期刊 1 篇  专题参考 1 篇

**第三十七条** 案件受理后，受诉人民法院的管辖权不受当事人住所地、经常居住地变更的影响。

法宝联想：    司法案例 538 篇

**第三十八条** 有管辖权的人民法院受理案件后，不得以行政区域变更为由，将案件移送给变更后有管辖权的人民法院。判决后的上诉案件和依审判监督程序提审的案件，由原审人民法院的上级人民法院进行审判；上级人民法院指令再审、发回重审的案件，由原审人民法院再审或者重审。

法宝联想：    中央法规 1 篇  司法案例 301 篇

**第三十九条** 人民法院对管辖异议审查后确定有管辖权的，不因当事人提起反诉、增加或者变更诉讼请求等改变管辖，但违反级别管辖、专属管辖规定的除外。

人民法院发回重审或者按第一审程序再审的案件，当事人提出管辖异议的，人民法院不予审查。

法宝联想：    地方法规 1 篇  司法案例 1827 篇  律所实务 4 篇

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

第四十条　依照民事诉讼法第三十八条第二款规定，发生管辖权争议的两个人民法院因协商不成报请它们的共同上级人民法院指定管辖时，双方为同属一个地、市辖区的基层人民法院的，由该地、市的中级人民法院及时指定管辖；同属一个省、自治区、直辖市的两个人民法院的，由该省、自治区、直辖市的高级人民法院及时指定管辖；双方为跨省、自治区、直辖市的人民法院，高级人民法院协商不成的，由最高人民法院及时指定管辖。

依照前款规定报请上级人民法院指定管辖时，应当逐级进行。

法宝联想：　地方法规 2 篇　司法案例 2668 篇　专题参考 1 篇

第四十一条　人民法院依照民事诉讼法第三十八条第二款规定指定管辖的，应当作出裁定。

对报请上级人民法院指定管辖的案件，下级人民法院应当中止审理。指定管辖裁定作出前，下级人民法院对案件作出判决、裁定的，上级人民法院应当在裁定指定管辖的同时，一并撤销下级人民法院的判决、裁定。

法宝联想：　地方法规 1 篇　司法案例 3510 篇

第四十二条　下列第一审民事案件，人民法院依照民事诉讼法第三十九条第一款规定，可以在开庭前交下级人民法院审理：

（一）破产程序中有关债务人的诉讼案件；

（二）当事人人数众多且不方便诉讼的案件；

（三）最高人民法院确定的其他类型案件。

人民法院交下级人民法院审理前，应当报请其上级人民法院批准。上级人民法院批准后，人民法院应当裁定将案件交下级人民法院审理。

法宝联想：　司法案例 9202 篇　律所实务 1 篇

二、回避

第四十三条　审判人员有下列情形之一的，应当自行回避，当事人有权申请其回避：

（一）是本案当事人或者当事人近亲属的；

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

（二）本人或者其近亲属与本案有利害关系的；

（三）担任过本案的证人、鉴定人、辩护人、诉讼代理人、翻译人员的；

（四）是本案诉讼代理人近亲属的；

（五）本人或者其近亲属持有本案非上市公司当事人的股份或者股权的；

（六）与本案当事人或者诉讼代理人有其他利害关系，可能影响公正审理的。

**法宝联想：**　司法案例 1091 篇

**第四十四条**　审判人员有下列情形之一的，当事人有权申请其回避：

（一）接受本案当事人及其受托人宴请，或者参加由其支付费用的活动的；

（二）索取、接受本案当事人及其受托人财物或者其他利益的；

（三）违反规定会见本案当事人、诉讼代理人的；

（四）为本案当事人推荐、介绍诉讼代理人，或者为律师、其他人员介绍代理本案的；

（五）向本案当事人及其受托人借用款物的；

（六）有其他不正当行为，可能影响公正审理的。

**法宝联想：**　司法案例 220 篇

**第四十五条**　在一个审判程序中参与过本案审判工作的审判人员，不得再参与该案其他程序的审判。

发回重审的案件，在一审法院作出裁判后又进入第二审程序的，原第二审程序中审判人员不受前款规定的限制。

**法宝联想：**　司法案例 804 篇

**第四十六条**　审判人员有应当回避的情形，没有自行回避，当事人也没有申请其回避的，由院长或者审判委员会决定其回避。

**法宝联想：**　司法案例 46 篇

**第四十七条**　人民法院应当依法告知当事人对合议庭组成人员、独任审判员和书记员等人员有申请回避的权利。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想：　司法案例 254 篇

**第四十八条**　民事诉讼法第四十七条所称的审判人员，包括参与本案审理的人民法院院长、副院长、审判委员会委员、庭长、副庭长、审判员和人民陪审员。

法宝联想：　司法案例 94 篇　仲裁案例 1 篇　期刊 2 篇　律所实务 1 篇　专题参考 1 篇

**第四十九条**　书记员和执行员适用审判人员回避的有关规定。

法宝联想：　司法案例 48 篇

## 三、诉讼参加人

**第五十条**　法人的法定代表人以依法登记的为准，但法律另有规定的除外。依法不需要办理登记的法人，以其正职负责人为法定代表人；没有正职负责人的，以其主持工作的副职负责人为法定代表人。

法定代表人已经变更，但未完成登记，变更后的法定代表人要求代表法人参加诉讼的，人民法院可以准许。

其他组织，以其主要负责人为代表人。

法宝联想：　地方法规 1 篇　司法案例 939 篇　律所实务 2 篇　专题参考 1 篇

**第五十一条**　在诉讼中，法人的法定代表人变更的，由新的法定代表人继续进行诉讼，并应向人民法院提交新的法定代表人身份证明书。原法定代表人进行的诉讼行为有效。

前款规定，适用于其他组织参加的诉讼。

法宝联想：　司法案例 224 篇　期刊 1 篇

**第五十二条**　民事诉讼法第五十一条规定的其他组织是指合法成立、有一定的组织机构和财产，但又不具备法人资格的组织，包括：

（一）依法登记领取营业执照的个人独资企业；

（二）依法登记领取营业执照的合伙企业；

（三）依法登记领取我国营业执照的中外合作经营企业、外资企业；

【法宝引证码】CLI.3.5115567

（四）依法成立的社会团体的分支机构、代表机构；

（五）依法设立并领取营业执照的法人的分支机构；

（六）依法设立并领取营业执照的商业银行、政策性银行和非银行金融机构的分支机构；

（七）经依法登记领取营业执照的乡镇企业、街道企业；

（八）其他符合本条规定条件的组织。

法宝联想：　地方法规 2 篇　司法案例 12927 篇　仲裁案例 3 篇　期刊 9 篇　律所实务 1 篇　专题参考 2 篇

**第五十三条**　法人非依法设立的分支机构，或者虽依法设立，但没有领取营业执照的分支机构，以设立该分支机构的法人为当事人。

法宝联想：　司法案例 3561 篇　期刊 1 篇

**第五十四条**　以挂靠形式从事民事活动，当事人请求由挂靠人和被挂靠人依法承担民事责任的，该挂靠人和被挂靠人为共同诉讼人。

法宝联想：　司法案例 13933 篇　仲裁案例 1 篇　期刊 4 篇　律所实务 3 篇

**第五十五条**　在诉讼中，一方当事人死亡，需要等待继承人表明是否参加诉讼的，裁定中止诉讼。人民法院应当及时通知继承人作为当事人承担诉讼，被继承人已经进行的诉讼行为对承担诉讼的继承人有效。

法宝联想：　司法案例 2859 篇　期刊 2 篇　律所实务 1 篇　专题参考 1 篇

**第五十六条**　法人或者其他组织的工作人员执行工作任务造成他人损害的，该法人或者其他组织为当事人。

法宝联想：　司法案例 809 篇　期刊 1 篇

**第五十七条**　提供劳务一方因劳务造成他人损害，受害人提起诉讼的，以接受劳务一方为被告。

法宝联想：　司法案例 392 篇

**第五十八条**　在劳务派遣期间，被派遣的工作人员因执行工作任务造成他人损害的，以接受劳务派遣的用工单位为当事人。当事人主张劳务派遣单位承担责任的，该劳务派遣单位为共同被告。

　　　　　　　　　　　　　　　　　　　　　　　　　下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想：   司法案例 74 篇

**第五十九条**   在诉讼中，个体工商户以营业执照上登记的经营者为当事人。有字号的，以营业执照上登记的字号为当事人，但应同时注明该字号经营者的基本信息。

营业执照上登记的经营者与实际经营者不一致的，以登记的经营者和实际经营者为共同诉讼人。

法宝联想：   司法案例 44791 篇  案例报道 2 篇  仲裁案例 2 篇  律所实务 1 篇  专题参考 1 篇

**第六十条**   在诉讼中，未依法登记领取营业执照的个人合伙的全体合伙人为共同诉讼人。个人合伙有依法核准登记的字号的，应在法律文书中注明登记的字号。全体合伙人可以推选代表人；被推选的代表人，应由全体合伙人出具推选书。

法宝联想：   司法案例 2274 篇  期刊 4 篇  律所实务 1 篇

**第六十一条**   当事人之间的纠纷经人民调解委员会或者其他依法设立的调解组织调解达成协议后，一方当事人不履行调解协议，另一方当事人向人民法院提起诉讼的，应以对方当事人为被告。

法宝联想：   司法案例 112 篇

**第六十二条**   下列情形，以行为人为当事人：

（一）法人或者其他组织应登记而未登记，行为人即以该法人或者其他组织名义进行民事活动的；

（二）行为人没有代理权、超越代理权或者代理权终止后以被代理人名义进行民事活动的，但相对人有理由相信行为人有代理权的除外；

（三）法人或者其他组织依法终止后，行为人仍以其名义进行民事活动的。

法宝联想：   司法案例 2507 篇  期刊 1 篇

**第六十三条**   企业法人合并的，因合并前的民事活动发生的纠纷，以合并后的企业为当事人；企业法人分立的，因分立前的民事活动发生的纠纷，以分立后的企业为共同诉讼人。

法宝联想：   司法案例 1089 篇  律所实务 1 篇

【法宝引证码】CLI.3.5115567

**第六十四条**　企业法人解散的，依法清算并注销前，以该企业法人为当事人；未依法清算即被注销的，以该企业法人的股东、发起人或者出资人为当事人。

法宝联想：　司法案例 7293 篇　仲裁案例 4 篇　律所实务 1 篇

**第六十五条**　借用业务介绍信、合同专用章、盖章的空白合同书或者银行账户的，出借单位和借用人为共同诉讼人。

法宝联想：　司法案例 3966 篇　律所实务 2 篇

**第六十六条**　因保证合同纠纷提起的诉讼，债权人向保证人和被保证人一并主张权利的，人民法院应当将保证人和被保证人列为共同被告。保证合同约定为一般保证，债权人仅起诉保证人的，人民法院应当通知被保证人作为共同被告参加诉讼；债权人仅起诉被保证人的，可以只列被保证人为被告。

法宝联想：　司法案例 1519 篇　案例报道 1 篇　期刊 3 篇　律所实务 1 篇　专题参考 2 篇

**第六十七条**　无民事行为能力人、限制民事行为能力人造成他人损害的，无民事行为能力人、限制民事行为能力人和其监护人为共同被告。

法宝联想：　法律动态 1 篇　司法案例 2222 篇　期刊 2 篇

**第六十八条**　居民委员会、村民委员会或者村民小组与他人发生民事纠纷的，居民委员会、村民委员会或者有独立财产的村民小组为当事人。

法宝联想：　司法案例 1874 篇　期刊 1 篇

**第六十九条**　对侵害死者遗体、遗骨以及姓名、肖像、名誉、荣誉、隐私等行为提起诉讼的，死者的近亲属为当事人。

法宝联想：　司法案例 140 篇　案例报道 1 篇　期刊 1 篇

**第七十条**　在继承遗产的诉讼中，部分继承人起诉的，人民法院应通知其他继承人作为共同原告参加诉讼；被通知的继承人不愿意参加诉讼又未明确表示放弃实体权利的，人民法院仍应将其列为共同原告。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想：　司法案例 1373 篇　期刊 1 篇

　　**第七十一条**　原告起诉被代理人和代理人，要求承担连带责任的，被代理人和代理人为共同被告。

　　原告起诉代理人和相对人，要求承担连带责任的，代理人和相对人为共同被告。

法宝联想：　司法案例 200 篇　律所实务 1 篇

　　**第七十二条**　共有财产权受到他人侵害，部分共有权人起诉的，其他共有权人为共同诉讼人。

法宝联想：　司法案例 972 篇　期刊 1 篇　律所实务 1 篇　专题参考 2 篇

　　**第七十三条**　必须共同进行诉讼的当事人没有参加诉讼的，人民法院应当依照民事诉讼法第一百三十五条的规定，通知其参加；当事人也可以向人民法院申请追加。人民法院对当事人提出的申请，应当进行审查，申请理由不成立的，裁定驳回；申请理由成立的，书面通知被追加的当事人参加诉讼。

法宝联想：　地方法规 1 篇　司法案例 12572 篇

　　**第七十四条**　人民法院追加共同诉讼的当事人时，应当通知其他当事人。应当追加的原告，已明确表示放弃实体权利的，可不予追加；既不愿意参加诉讼，又不放弃实体权利的，仍应追加为共同原告，其不参加诉讼，不影响人民法院对案件的审理和依法作出判决。

法宝联想：　司法案例 3459 篇

　　**第七十五条**　民事诉讼法第五十六条、第五十七条和第二百零六条规定的人数众多，一般指十人以上。

法宝联想：　司法案例 670 篇　期刊 4 篇　律所实务 1 篇

　　**第七十六条**　依照民事诉讼法第五十六条规定，当事人一方人数众多在起诉时确定的，可以由全体当事人推选共同的代表人，也可以由部分当事人推选自己的代表人；推选不出代表人的当事人，在必要的共同诉讼中可以自己参加诉讼，在普通的共同诉讼中可以另行起诉。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想：  司法案例 555 篇  律所实务 1 篇

**第七十七条**  根据民事诉讼法第五十七条规定，当事人一方人数众多在起诉时不确定的，由当事人推选代表人。当事人推选不出的，可以由人民法院提出人选与当事人协商；协商不成的，也可以由人民法院在起诉的当事人中指定代表人。

法宝联想：  司法案例 30 篇  期刊 1 篇

**第七十八条**  民事诉讼法第五十六条和第五十七条规定的代表人为二至五人，每位代表人可以委托一至二人作为诉讼代理人。

法宝联想：  司法案例 319 篇

**第七十九条**  依照民事诉讼法第五十七条规定受理的案件，人民法院可以发出公告，通知权利人向人民法院登记。公告期间根据案件的具体情况确定，但不得少于三十日。

法宝联想：  司法案例 50 篇  期刊 2 篇  律所实务 1 篇  专题参考 1 篇

**第八十条**  根据民事诉讼法第五十七条规定向人民法院登记的权利人，应当证明其与对方当事人的法律关系和所受到的损害。证明不了的，不予登记，权利人可以另行起诉。人民法院的裁判在登记的范围内执行。未参加登记的权利人提起诉讼，人民法院认定其请求成立的，裁定适用人民法院已作出的判决、裁定。

法宝联想：  司法案例 1487 篇

**第八十一条**  根据民事诉讼法第五十九条的规定，有独立请求权的第三人有权向人民法院提出诉讼请求和事实、理由，成为当事人；无独立请求权的第三人，可以申请或者由人民法院通知参加诉讼。

第一审程序中未参加诉讼的第三人，申请参加第二审程序的，人民法院可以准许。

法宝联想：  司法案例 1860 篇

**第八十二条**  在一审诉讼中，无独立请求权的第三人无权提出管辖异议，无权放弃、变更诉讼请求或者申请撤诉，被判决承担民事责任的，有权提起上诉。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想：　司法案例 1753 篇

**第八十三条**　在诉讼中，无民事行为能力人、限制民事行为能力人的监护人是他的法定代理人。事先没有确定监护人的，可以由有监护资格的人协商确定；协商不成的，由人民法院在他们之中指定诉讼中的法定代理人。当事人没有民法典第二十七条、第二十八条规定的监护人的，可以指定民法典第三十二条规定的有关组织担任诉讼中的法定代理人。

法宝联想：　地方法规 1 篇　司法案例 405 篇　专题参考 1 篇

**第八十四条**　无民事行为能力人、限制民事行为能力人以及其他依法不能作为诉讼代理人的，当事人不得委托其作为诉讼代理人。

法宝联想：　司法案例 43 篇

**第八十五条**　根据民事诉讼法第六十一条第二款第二项规定，与当事人有夫妻、直系血亲、三代以内旁系血亲、近姻亲关系以及其他有抚养、赡养关系的亲属，可以当事人近亲属的名义作为诉讼代理人。

法宝联想：　司法案例 495 篇

**第八十六条**　根据民事诉讼法第六十一条第二款第二项规定，与当事人有合法劳动人事关系的职工，可以当事人工作人员的名义作为诉讼代理人。

法宝联想：　中央法规 3 篇　司法案例 406 篇

**第八十七条**　根据民事诉讼法第六十一条第二款第三项规定，有关社会团体推荐公民担任诉讼代理人的，应当符合下列条件：

（一）社会团体属于依法登记设立或者依法免予登记设立的非营利性法人组织；

（二）被代理人属于该社会团体的成员，或者当事人一方住所地位于该社会团体的活动地域；

（三）代理事务属于该社会团体章程载明的业务范围；

（四）被推荐的公民是该社会团体的负责人或者与该社会团体有合法劳动人事关系的工作人员。

专利代理人经中华全国专利代理人协会推荐，可以在专利纠纷案件中担任诉讼代理人。

　下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想：　中央法规 1 篇　地方法规 2 篇　司法案例 491 篇

第八十八条　诉讼代理人除根据民事诉讼法第六十二条规定提交授权委托书外，还应当按照下列规定向人民法院提交相关材料：

（一）律师应当提交律师执业证、律师事务所证明材料；

（二）基层法律服务工作者应当提交法律服务工作者执业证、基层法律服务所出具的介绍信以及当事人一方位于本辖区内的证明材料；

（三）当事人的近亲属应当提交身份证件和与委托人有近亲属关系的证明材料；

（四）当事人的工作人员应当提交身份证件和与当事人有合法劳动人事关系的证明材料；

（五）当事人所在社区、单位推荐的公民应当提交身份证件、推荐材料和当事人属于该社区、单位的证明材料；

（六）有关社会团体推荐的公民应当提交身份证件和符合本解释第八十七条规定条件的证明材料。

法宝联想：　中央法规 2 篇　地方法规 5 篇　司法案例 2158 篇

第八十九条　当事人向人民法院提交的授权委托书，应当在开庭审理前送交人民法院。授权委托书仅写"全权代理"而无具体授权的，诉讼代理人无权代为承认、放弃、变更诉讼请求，进行和解，提出反诉或者提起上诉。

适用简易程序审理的案件，双方当事人同时到庭并径行开庭审理的，可以当场口头委托诉讼代理人，由人民法院记入笔录。

法宝联想：　司法案例 579 篇　专题参考 1 篇

## 四、证据

第九十条　当事人对自己提出的诉讼请求所依据的事实或者反驳对方诉讼请求所依据的事实，应当提供证据加以证明，但法律另有规定的除外。

在作出判决前，当事人未能提供证据或者证据不足以证明其事实主张的，由负有举证证明责任的当事人承担不利的后果。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想：　中央法规 2 篇 地方法规 4 篇 法律动态 2 篇 司法案例 3014871 篇 案例报道 13 篇 仲裁案例 13 篇 期刊 12 篇 律所实务 16 篇 专题参考 18 篇

第九十一条　人民法院应当依照下列原则确定举证证明责任的承担，但法律另有规定的除外：

（一）主张法律关系存在的当事人，应当对产生该法律关系的基本事实承担举证证明责任；

（二）主张法律关系变更、消灭或者权利受到妨害的当事人，应当对该法律关系变更、消灭或者权利受到妨害的基本事实承担举证证明责任。

法宝联想：　中央法规 1 篇 地方法规 1 篇 司法案例 146545 篇 案例报道 2 篇 仲裁案例 3 篇 期刊 17 篇 律所实务 4 篇 专题参考 10 篇

第九十二条　一方当事人在法庭审理中，或者在起诉状、答辩状、代理词等书面材料中，对于己不利的事实明确表示承认的，另一方当事人无需举证证明。

对于涉及身份关系、国家利益、社会公共利益等应当由人民法院依职权调查的事实，不适用前款自认的规定。

自认的事实与查明的事实不符的，人民法院不予确认。

法宝联想：　司法案例 78461 篇 仲裁案例 3 篇 期刊 6 篇 律所实务 1 篇 专题参考 5 篇

第九十三条　下列事实，当事人无须举证证明：

（一）自然规律以及定理、定律；

（二）众所周知的事实；

（三）根据法律规定推定的事实；

（四）根据已知的事实和日常生活经验法则推定出的另一事实；

（五）已为人民法院发生法律效力的裁判所确认的事实；

（六）已为仲裁机构生效裁决所确认的事实；

（七）已为有效公证文书所证明的事实。

前款第二项至第四项规定的事实，当事人有相反证据足以反驳的除外；第五项至第七项规定的事实，当事人有相反证据足以推翻的除外。

法宝联想：　中央法规 1 篇 地方法规 1 篇 司法案例 40560 篇 仲裁案例 2 篇 期刊 19 篇 律所实务 4 篇 专题参考 4 篇

【法宝引证码】CLI.3.5115567

**第九十四条**　民事诉讼法第六十七条第二款规定的当事人及其诉讼代理人因客观原因不能自行收集的证据包括：

（一）证据由国家有关部门保存，当事人及其诉讼代理人无权查阅调取的；

（二）涉及国家秘密、商业秘密或者个人隐私的；

（三）当事人及其诉讼代理人因客观原因不能自行收集的其他证据。

当事人及其诉讼代理人因客观原因不能自行收集的证据，可以在举证期限届满前书面申请人民法院调查收集。

法宝联想：　中央法规 1 篇　地方法规 4 篇　司法案例 6880 篇　期刊 1 篇　律所实务 4 篇　专题参考 3 篇

**第九十五条**　当事人申请调查收集的证据，与待证事实无关联、对证明待证事实无意义或者其他无调查收集必要的，人民法院不予准许。

法宝联想：　司法案例 8877 篇　期刊 2 篇　律所实务 2 篇　专题参考 3 篇

**第九十六条**　民事诉讼法第六十七条第二款规定的人民法院认为审理案件需要的证据包括：

（一）涉及可能损害国家利益、社会公共利益的；

（二）涉及身份关系的；

（三）涉及民事诉讼法第五十八条规定诉讼的；

（四）当事人有恶意串通损害他人合法权益可能的；

（五）涉及依职权追加当事人、中止诉讼、终结诉讼、回避等程序性事项的。

除前款规定外，人民法院调查收集证据，应当依照当事人的申请进行。

法宝联想：　中央法规 2 篇　地方法规 1 篇　司法案例 3639 篇　期刊 3 篇　律所实务 6 篇　专题参考 8 篇

**第九十七条**　人民法院调查收集证据，应当由两人以上共同进行。调查材料要由调查人、被调查人、记录人签名、捺印或者盖章。

法宝联想：　司法案例 333 篇　期刊 2 篇

**第九十八条**　当事人根据民事诉讼法第八十四条第一款规定申请证据保全的，可以在举证期限届满前书面提出。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

证据保全可能对他人造成损失的，人民法院应当责令申请人提供相应的担保。

法宝联想：　司法案例 86 篇

**第九十九条**　人民法院应当在审理前的准备阶段确定当事人的举证期限。举证期限可以由当事人协商，并经人民法院准许。

人民法院确定举证期限，第一审普通程序案件不得少于十五日，当事人提供新的证据的第二审案件不得少于十日。

举证期限届满后，当事人对已经提供的证据，申请提供反驳证据或者对证据来源、形式等方面的瑕疵进行补正的，人民法院可以酌情再次确定举证期限，该期限不受前款规定的限制。

法宝联想：　中央法规 2 篇　司法案例 4839 篇　律所实务 2 篇

**第一百条**　当事人申请延长举证期限的，应当在举证期限届满前向人民法院提出书面申请。

申请理由成立的，人民法院应当准许，适当延长举证期限，并通知其他当事人。延长的举证期限适用于其他当事人。

申请理由不成立的，人民法院不予准许，并通知申请人。

法宝联想：　司法案例 1170 篇　律所实务 1 篇

**第一百零一条**　当事人逾期提供证据的，人民法院应当责令其说明理由，必要时可以要求其提供相应的证据。

当事人因客观原因逾期提供证据，或者对方当事人对逾期提供证据未提出异议的，视为未逾期。

法宝联想：　地方法规 2 篇　司法案例 2754 篇　期刊 2 篇　专题参考 2 篇

**第一百零二条**　当事人因故意或者重大过失逾期提供的证据，人民法院不予采纳。但该证据与案件基本事实有关的，人民法院应当采纳，并依照民事诉讼法第六十八条、第一百一十八条第一款的规定予以训诫、罚款。

当事人非因故意或者重大过失逾期提供的证据，人民法院应当采纳，并对当事人予以训诫。

当事人一方要求另一方赔偿因逾期提供证据致使其增加的交通、住宿、就餐、误工、证人出庭作证等必要费用的，人民法院可予支持。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

**法宝联想：**　地方法规 4 篇　法律动态 1 篇　司法案例 8464 篇　案例报道 1 篇　期刊 3 篇　律所实务 2 篇　专题参考 1 篇

　　**第一百零三条**　证据应当在法庭上出示，由当事人互相质证。未经当事人质证的证据，不得作为认定案件事实的根据。

　　当事人在审理前的准备阶段认可的证据，经审判人员在庭审中说明后，视为质证过的证据。

　　涉及国家秘密、商业秘密、个人隐私或者法律规定应当保密的证据，不得公开质证。

**法宝联想：**　司法案例 2934 篇

　　**第一百零四条**　人民法院应当组织当事人围绕证据的真实性、合法性以及与待证事实的关联性进行质证，并针对证据有无证明力和证明力大小进行说明和辩论。

　　能够反映案件真实情况、与待证事实相关联、来源和形式符合法律规定的证据，应当作为认定案件事实的根据。

**法宝联想：**　司法案例 7198 篇　律所实务 1 篇

　　**第一百零五条**　人民法院应当按照法定程序，全面、客观地审核证据，依照法律规定，运用逻辑推理和日常生活经验法则，对证据有无证明力和证明力大小进行判断，并公开判断的理由和结果。

**法宝联想：**　司法案例 30888 篇　案例报道 1 篇　仲裁案例 3 篇　期刊 5 篇　律所实务 1 篇　专题参考 4 篇

　　**第一百零六条**　对以严重侵害他人合法权益、违反法律禁止性规定或者严重违背公序良俗的方法形成或者获取的证据，不得作为认定案件事实的根据。

**法宝联想：**　地方法规 1 篇　司法案例 1514 篇　案例报道 1 篇　仲裁案例 1 篇　期刊 6 篇　律所实务 4 篇　专题参考 2 篇

　　**第一百零七条**　在诉讼中，当事人为达成调解协议或者和解协议作出妥协而认可的事实，不得在后续的诉讼中作为对其不利的根据，但法律另有规定或者当事人均同意的除外。

**法宝联想：**　司法案例 2365 篇　期刊 3 篇

　　**第一百零八条**　对负有举证证明责任的当事人提供的证据，人民法院经审查并结合相关事实，确信待证事实的存在具有高度可能性的，应当认定该事实存在。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

对一方当事人为反驳负有举证证明责任的当事人所主张事实而提供的证据，人民法院经审查并结合相关事实，认为待证事实真伪不明的，应当认定该事实不存在。

法律对于待证事实所应达到的证明标准另有规定的，从其规定。

法宝联想：　地方法规 1 篇　法律动态 1 篇　司法案例 146909 篇　案例报道 4 篇　仲裁案例 8 篇　期刊 21 篇　律所实务 7 篇　专题参考 13 篇

**第一百零九条**　当事人对欺诈、胁迫、恶意串通事实的证明，以及对口头遗嘱或者赠与事实的证明，人民法院确信该待证事实存在的可能性能够排除合理怀疑的，应当认定该事实存在。

法宝联想：　地方法规 1 篇　司法案例 7046 篇　期刊 8 篇　律所实务 6 篇　专题参考 9 篇

**第一百一十条**　人民法院认为有必要的，可以要求当事人本人到庭，就案件有关事实接受询问。在询问当事人之前，可以要求其签署保证书。

保证书应当载明据实陈述、如有虚假陈述愿意接受处罚等内容。当事人应当在保证书上签名或者捺印。

负有举证证明责任的当事人拒绝到庭、拒绝接受询问或者拒绝签署保证书，待证事实又欠缺其他证据证明的，人民法院对其主张的事实不予认定。

法宝联想：　中央法规 2 篇　地方法规 1 篇　司法案例 4776 篇　期刊 1 篇　专题参考 2 篇

**第一百一十一条**　民事诉讼法第七十三条规定的提交书证原件确有困难，包括下列情形：

（一）书证原件遗失、灭失或者毁损的；

（二）原件在对方当事人控制之下，经合法通知提交而拒不提交的；

（三）原件在他人控制之下，而其有权不提交的；

（四）原件因篇幅或者体积过大而不便提交的；

（五）承担举证证明责任的当事人通过申请人民法院调查收集或者其他方式无法获得书证原件的。

前款规定情形，人民法院应当结合其他证据和案件具体情况，审查判断书证复制品等能否作为认定案件事实的根据。

法宝联想：　地方法规 1 篇　法律动态 1 篇　司法案例 3102 篇　仲裁案例 1 篇　期刊 1 篇　专题参考 2 篇

　　　　　　　　　　　　　　　　　　　　　　　下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

**第一百一十二条**　书证在对方当事人控制之下的，承担举证证明责任的当事人可以在举证期限届满前书面申请人民法院责令对方当事人提交。

申请理由成立的，人民法院应当责令对方当事人提交，因提交书证所产生的费用，由申请人负担。对方当事人无正当理由拒不提交的，人民法院可以认定申请人所主张的书证内容为真实。

法宝联想：　中央法规 1 篇　司法案例 3154 篇　仲裁案例 2 篇　期刊 17 篇　律所实务 7 篇　专题参考 5 篇

**第一百一十三条**　持有书证的当事人以妨碍对方当事人使用为目的，毁灭有关书证或者实施其他致使书证不能使用行为的，人民法院可以依照民事诉讼法第一百一十四条规定，对其处以罚款、拘留。

法宝联想：　中央法规 1 篇　司法案例 1190 篇　期刊 2 篇　律所实务 2 篇　专题参考 2 篇

**第一百一十四条**　国家机关或者其他依法具有社会管理职能的组织，在其职权范围内制作的文书所记载的事项推定为真实，但有相反证据足以推翻的除外。必要时，人民法院可以要求制作文书的机关或者组织对文书的真实性予以说明。

法宝联想：　司法案例 4947 篇　期刊 3 篇　律所实务 1 篇　专题参考 3 篇

**第一百一十五条**　单位向人民法院提出的证明材料，应当由单位负责人及制作证明材料的人员签名或者盖章，并加盖单位印章。人民法院就单位出具的证明材料，可以向单位及制作证明材料的人员进行调查核实。必要时，可以要求制作证明材料的人员出庭作证。

单位及制作证明材料的人员拒绝人民法院调查核实，或者制作证明材料的人员无正当理由拒绝出庭作证的，该证明材料不得作为认定案件事实的根据。

法宝联想：　地方法规 1 篇　司法案例 19265 篇　律所实务 2 篇

**第一百一十六条**　视听资料包括录音资料和影像资料。

电子数据是指通过电子邮件、电子数据交换、网上聊天记录、博客、微博客、手机短信、电子签名、域名等形成或者存储在电子介质中的信息。

存储在电子介质中的录音资料和影像资料，适用电子数据的规定。

法宝联想：　地方法规 2 篇　法律动态 1 篇　司法案例 2010 篇　仲裁案例 2 篇　期刊 10 篇　律所实务 2 篇　专题参考 6 篇

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

第一百一十七条　当事人申请证人出庭作证的，应当在举证期限届满前提出。

符合本解释第九十六条第一款规定情形的，人民法院可以依职权通知证人出庭作证。

未经人民法院通知，证人不得出庭作证，但双方当事人同意并经人民法院准许的除外。

法宝联想：　司法案例 1692 篇　案例报道 1 篇

第一百一十八条　民事诉讼法第七十七条规定的证人因履行出庭作证义务而支出的交通、住宿、就餐等必要费用，按照机关事业单位工作人员差旅费用和补贴标准计算；误工损失按照国家上年度职工日平均工资标准计算。

人民法院准许证人出庭作证申请的，应当通知申请人预缴证人出庭作证费用。

法宝联想：　司法案例 309 篇　专题参考 1 篇

第一百一十九条　人民法院在证人出庭作证前应当告知其如实作证的义务以及作伪证的法律后果，并责令其签署保证书，但无民事行为能力人和限制民事行为能力人除外。

证人签署保证书适用本解释关于当事人签署保证书的规定。

法宝联想：　中央法规 3 篇　司法案例 1487 篇　案例报道 3 篇　期刊 1 篇　律所实务 1 篇

第一百二十条　证人拒绝签署保证书的，不得作证，并自行承担相关费用。

法宝联想：　中央法规 1 篇　司法案例 165 篇

第一百二十一条　当事人申请鉴定，可以在举证期限届满前提出。申请鉴定的事项与待证事实无关联，或者对证明待证事实无意义的，人民法院不予准许。

人民法院准许当事人鉴定申请的，应当组织双方当事人协商确定具备相应资格的鉴定人。当事人协商不成的，由人民法院指定。

符合依职权调查收集证据条件的，人民法院应当依职权委托鉴定，在询问当事人的意见后，指定具备相应资格的鉴定人。

法宝联想：　司法案例 10829 篇　仲裁案例 1 篇　律所实务 2 篇　专题参考 1 篇

第一百二十二条　当事人可以依照民事诉讼法第八十二条的规定，在举证期限届满前申请一至二

【法宝引证码】CLI.3.5115567

名具有专门知识的人出庭，代表当事人对鉴定意见进行质证，或者对案件事实所涉及的专业问题提出意见。

具有专门知识的人在法庭上就专业问题提出的意见，视为当事人的陈述。

人民法院准许当事人申请的，相关费用由提出申请的当事人负担。

**法宝联想：**　中央法规 2 篇　法律动态 1 篇　司法案例 604 篇　案例报道 2 篇　期刊 9 篇　律所实务 2 篇　专题参考 2 篇

**第一百二十三条**　人民法院可以对出庭的具有专门知识的人进行询问。经法庭准许，当事人可以对出庭的具有专门知识的人进行询问，当事人各自申请的具有专门知识的人可以就案件中的有关问题进行对质。

具有专门知识的人不得参与专业问题之外的法庭审理活动。

**法宝联想：**　司法案例 373 篇　案例报道 1 篇　期刊 3 篇

**第一百二十四条**　人民法院认为有必要的，可以根据当事人的申请或者依职权对物证或者现场进行勘验。勘验时应当保护他人的隐私和尊严。

人民法院可以要求鉴定人参与勘验。必要时，可以要求鉴定人在勘验中进行鉴定。

**法宝联想：**　司法案例 498 篇　案例报道 1 篇　期刊 1 篇　律所实务 4 篇　专题参考 1 篇

## 五、期间和送达

**第一百二十五条**　依照民事诉讼法第八十五条第二款规定，民事诉讼中以时起算的期间从次时起算；以日、月、年计算的期间从次日起算。

**法宝联想：**　司法案例 375 篇

**第一百二十六条**　民事诉讼法第一百二十六条规定的立案期限，因起诉状内容欠缺通知原告补正的，从补正后交人民法院的次日起算。由上级人民法院转交下级人民法院立案的案件，从受诉人民法院收到起诉状的次日起算。

**法宝联想：**　司法案例 27 篇

**第一百二十七条**　民事诉讼法第五十九条第三款、第二百一十二条以及本解释第三百七十二条、

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

第三百八十二条、第三百九十九条、第四百二十条、第四百二十一条规定的六个月，民事诉讼法第二百三十条规定的一年，为不变期间，不适用诉讼时效中止、中断、延长的规定。

法宝联想：    司法案例 1019 篇    律所实务 1 篇

**第一百二十八条**    再审案件按照第一审程序或者第二审程序审理的，适用民事诉讼法第一百五十二条、第一百八十三条规定的审限。审限自再审立案的次日起算。

法宝联想：    司法案例 26 篇    期刊 1 篇

**第一百二十九条**    对申请再审案件，人民法院应当自受理之日起三个月内审查完毕，但公告期间、当事人和解期间等不计入审查期限。有特殊情况需要延长的，由本院院长批准。

法宝联想：    司法案例 40 篇

**第一百三十条**    向法人或者其他组织送达诉讼文书，应当由法人的法定代表人、该组织的主要负责人或者办公室、收发室、值班室等负责收件的人签收或者盖章，拒绝签收或者盖章的，适用留置送达。

民事诉讼法第八十九条规定的有关基层组织和所在单位的代表，可以是受送达人住所地的居民委员会、村民委员会的工作人员以及受送达人所在单位的工作人员。

法宝联想：    司法案例 889 篇    期刊 1 篇

**第一百三十一条**    人民法院直接送达诉讼文书的，可以通知当事人到人民法院领取。当事人到达人民法院，拒绝签署送达回证的，视为送达。审判人员、书记员应当在送达回证上注明送达情况并签名。

人民法院可以在当事人住所地以外向当事人直接送达诉讼文书。当事人拒绝签署送达回证的，采用拍照、录像等方式记录送达过程即视为送达。审判人员、书记员应当在送达回证上注明送达情况并签名。

法宝联想：    司法案例 463 篇

**第一百三十二条**    受送达人有诉讼代理人的，人民法院既可以向受送达人送达，也可以向其诉讼

【法宝引证码】CLI.3.5115567

代理人送达。受送达人指定诉讼代理人为代收人的，向诉讼代理人送达时，适用留置送达。

法宝联想：　司法案例 288 篇

第一百三十三条　调解书应当直接送达当事人本人，不适用留置送达。当事人本人因故不能签收的，可由其指定的代收人签收。

法宝联想：　司法案例 67 篇

第一百三十四条　依照民事诉讼法第九十一条规定，委托其他人民法院代为送达的，委托法院应当出具委托函，并附需要送达的诉讼文书和送达回证，以受送达人在送达回证上签收的日期为送达日期。

委托送达的，受委托人民法院应当自收到委托函及相关诉讼文书之日起十日内代为送达。

法宝联想：　司法案例 50 篇

第一百三十五条　电子送达可以采用传真、电子邮件、移动通信等即时收悉的特定系统作为送达媒介。

民事诉讼法第九十条第二款规定的到达受送达人特定系统的日期，为人民法院对应系统显示发送成功的日期，但受送达人证明到达其特定系统的日期与人民法院对应系统显示发送成功的日期不一致的，以受送达人证明到达其特定系统的日期为准。

法宝联想：　司法案例 379 篇　期刊 1 篇

第一百三十六条　受送达人同意采用电子方式送达的，应当在送达地址确认书中予以确认。

法宝联想：　法律动态 1 篇　司法案例 675 篇　期刊 1 篇　专题参考 1 篇

第一百三十七条　当事人在提起上诉、申请再审、申请执行时未书面变更送达地址的，其在第一审程序中确认的送达地址可以作为第二审程序、审判监督程序、执行程序的送达地址。

法宝联想：　司法案例 662 篇

第一百三十八条　公告送达可以在法院的公告栏和受送达人住所地张贴公告，也可以在报纸、信息网络等媒体上刊登公告，发出公告日期以最后张贴或者刊登的日期为准。对公告送达方式有特殊要

【法宝引证码】CLI.3.5115567

求的，应当按要求的方式进行。公告期满，即视为送达。

人民法院在受送达人住所地张贴公告的，应当采取拍照、录像等方式记录张贴过程。

法宝联想：　司法案例 1358 篇　期刊 1 篇

第一百三十九条　公告送达应当说明公告送达的原因；公告送达起诉状或者上诉状副本的，应当说明起诉或者上诉要点，受送达人答辩期限及逾期不答辩的法律后果；公告送达传票，应当说明出庭的时间和地点及逾期不出庭的法律后果；公告送达判决书、裁定书的，应当说明裁判主要内容，当事人有权上诉的，还应当说明上诉权利、上诉期限和上诉的人民法院。

法宝联想：　法律动态 1 篇　司法案例 894 篇

第一百四十条　适用简易程序的案件，不适用公告送达。

法宝联想：　中央法规 1 篇　司法案例 4009 篇

第一百四十一条　人民法院在定期宣判时，当事人拒不签收判决书、裁定书的，应视为送达，并在宣判笔录中记明。

法宝联想：　司法案例 80 篇

## 六、调解

第一百四十二条　人民法院受理案件后，经审查，认为法律关系明确、事实清楚，在征得当事人双方同意后，可以径行调解。

法宝联想：　司法案例 307 篇

第一百四十三条　适用特别程序、督促程序、公示催告程序的案件，婚姻等身份关系确认案件以及其他根据案件性质不能进行调解的案件，不得调解。

法宝联想：　司法案例 530 篇

第一百四十四条　人民法院审理民事案件，发现当事人之间恶意串通，企图通过和解、调解方式侵害他人合法权益的，应当依照民事诉讼法第一百一十五条的规定处理。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

**法宝联想：**　司法案例 2259 篇　专题参考 1 篇

**第一百四十五条**　人民法院审理民事案件，应当根据自愿、合法的原则进行调解。当事人一方或者双方坚持不愿调解的，应当及时裁判。

人民法院审理离婚案件，应当进行调解，但不应久调不决。

**法宝联想：**　司法案例 604 篇

**第一百四十六条**　人民法院审理民事案件，调解过程不公开，但当事人同意公开的除外。

调解协议内容不公开，但为保护国家利益、社会公共利益、他人合法权益，人民法院认为确有必要公开的除外。

主持调解以及参与调解的人员，对调解过程以及调解过程中获悉的国家秘密、商业秘密、个人隐私和其他不宜公开的信息，应当保守秘密，但为保护国家利益、社会公共利益、他人合法权益的除外。

**法宝联想：**　司法案例 77 篇　期刊 1 篇

**第一百四十七条**　人民法院调解案件时，当事人不能出庭的，经其特别授权，可由其委托代理人参加调解，达成的调解协议，可由委托代理人签名。

离婚案件当事人确因特殊情况无法出庭参加调解的，除本人不能表达意志的以外，应当出具书面意见。

**法宝联想：**　司法案例 436 篇

**第一百四十八条**　当事人自行和解或者调解达成协议后，请求人民法院按照和解协议或者调解协议的内容制作判决书的，人民法院不予准许。

无民事行为能力人的离婚案件，由其法定代理人进行诉讼。法定代理人与对方达成协议要求发给判决书的，可根据协议内容制作判决书。

**法宝联想：**　司法案例 287 篇　案例报道 1 篇

**第一百四十九条**　调解书需经当事人签收后才发生法律效力的，应当以最后收到调解书的当事人

【法宝引证码】CLI.3.5115567

签收的日期为调解书生效日期。

法宝联想：　司法案例 73 篇

　　**第一百五十条**　人民法院调解民事案件，需由无独立请求权的第三人承担责任的，应当经其同意。该第三人在调解书送达前反悔的，人民法院应当及时裁判。

法宝联想：　司法案例 162 篇

　　**第一百五十一条**　根据民事诉讼法第一百零一条第一款第四项规定，当事人各方同意在调解协议上签名或者盖章后即发生法律效力的，经人民法院审查确认后，应当记入笔录或者将调解协议附卷，并由当事人、审判人员、书记员签名或者盖章后即具有法律效力。

　　前款规定情形，当事人请求制作调解书的，人民法院审查确认后可以制作调解书送交当事人。当事人拒收调解书的，不影响调解协议的效力。

法宝联想：　司法案例 309 篇

## 七、保全和先予执行

　　**第一百五十二条**　人民法院依照民事诉讼法第一百零三条、第一百零四条规定，在采取诉前保全、诉讼保全措施时，责令利害关系人或者当事人提供担保的，应当书面通知。

　　利害关系人申请诉前保全的，应当提供担保。申请诉前财产保全的，应当提供相当于请求保全数额的担保；情况特殊的，人民法院可以酌情处理。申请诉前行为保全的，担保的数额由人民法院根据案件的具体情况决定。

　　在诉讼中，人民法院依申请或者依职权采取保全措施的，应当根据案件的具体情况，决定当事人是否应当提供担保以及担保的数额。

法宝联想：　地方法规 2 篇　司法案例 16533 篇　期刊 3 篇

　　**第一百五十三条**　人民法院对季节性商品、鲜活、易腐烂变质以及其他不宜长期保存的物品采取保全措施时，可以责令当事人及时处理，由人民法院保存价款；必要时，人民法院可予以变卖，保存价款。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

**法宝联想：**　　司法案例 284 篇　期刊 1 篇

　　**第一百五十四条**　　人民法院在财产保全中采取查封、扣押、冻结财产措施时，应当妥善保管被查封、扣押、冻结的财产。不宜由人民法院保管的，人民法院可以指定被保全人负责保管；不宜由被保全人保管的，可以委托他人或者申请保全人保管。

　　查封、扣押、冻结担保物权人占有的担保财产，一般由担保物权人保管；由人民法院保管的，质权、留置权不因采取保全措施而消灭。

**法宝联想：**　　司法案例 5683 篇

　　**第一百五十五条**　　由人民法院指定被保全人保管的财产，如果继续使用对该财产的价值无重大影响，可以允许被保全人继续使用；由人民法院保管或者委托他人、申请保全人保管的财产，人民法院和其他保管人不得使用。

**法宝联想：**　　司法案例 1128 篇　期刊 1 篇

　　**第一百五十六条**　　人民法院采取财产保全的方法和措施，依照执行程序相关规定办理。

**法宝联想：**　　中央法规 1 篇　草案 1 篇　司法案例 54944 篇　案例报道 1 篇　专题参考 1 篇

　　**第一百五十七条**　　人民法院对抵押物、质押物、留置物可以采取财产保全措施，但不影响抵押权人、质权人、留置权人的优先受偿权。

**法宝联想：**　　中央法规 1 篇　法律动态 2 篇　司法案例 2074 篇　案例报道 1 篇　律所实务 1 篇

　　**第一百五十八条**　　人民法院对债务人到期应得的收益，可以采取财产保全措施，限制其支取，通知有关单位协助执行。

**法宝联想：**　　司法案例 2459 篇　律所实务 1 篇　专题参考 2 篇

　　**第一百五十九条**　　债务人的财产不能满足保全请求，但对他人有到期债权的，人民法院可以依债权人的申请裁定该他人不得对本案债务人清偿。该他人要求偿付的，由人民法院提存财物或者价款。

**法宝联想：**　　司法案例 4376 篇　律所实务 2 篇　专题参考 2 篇

【法宝引证码】CLI.3.5115567

**第一百六十条** 当事人向采取诉前保全措施以外的其他有管辖权的人民法院起诉的，采取诉前保全措施的人民法院应当将保全手续移送受理案件的人民法院。诉前保全的裁定视为受移送人民法院作出的裁定。

法宝联想： 中央法规 1 篇 地方法规 1 篇 司法案例 1651 篇 期刊 1 篇

**第一百六十一条** 对当事人不服一审判决提起上诉的案件，在第二审人民法院接到报送的案件之前，当事人有转移、隐匿、出卖或者毁损财产等行为，必须采取保全措施的，由第一审人民法院依当事人申请或者依职权采取。第一审人民法院的保全裁定，应当及时报送第二审人民法院。

法宝联想： 司法案例 1138 篇 律所实务 2 篇

**第一百六十二条** 第二审人民法院裁定对第一审人民法院采取的保全措施予以续保或者采取新的保全措施的，可以自行实施，也可以委托第一审人民法院实施。

再审人民法院裁定对原保全措施予以续保或者采取新的保全措施的，可以自行实施，也可以委托原审人民法院或者执行法院实施。

法宝联想： 司法案例 1041 篇

**第一百六十三条** 法律文书生效后，进入执行程序前，债权人因对方当事人转移财产等紧急情况，不申请保全将可能导致生效法律文书不能执行或者难以执行的，可以向执行法院申请采取保全措施。债权人在法律文书指定的履行期间届满后五日内不申请执行的，人民法院应当解除保全。

法宝联想： 司法案例 31257 篇 专题参考 1 篇

**第一百六十四条** 对申请保全人或者他人提供的担保财产，人民法院应当依法办理查封、扣押、冻结等手续。

法宝联想： 司法案例 173551 篇

**第一百六十五条** 人民法院裁定采取保全措施后，除作出保全裁定的人民法院自行解除或者其上级人民法院决定解除外，在保全期限内，任何单位不得解除保全措施。

法宝联想： 中央法规 2 篇 司法案例 5051 篇 律所实务 3 篇

【法宝引证码】CLI.3.5115567

**第一百六十六条** 裁定采取保全措施后，有下列情形之一的，人民法院应当作出解除保全裁定：

（一）保全错误的；

（二）申请人撤回保全申请的；

（三）申请人的起诉或者诉讼请求被生效裁判驳回的；

（四）人民法院认为应当解除保全的其他情形。

解除以登记方式实施的保全措施的，应当向登记机关发出协助执行通知书。

法宝联想：　中央法规 1 篇　地方法规 3 篇　司法案例 385421 篇　期刊 2 篇　律所实务 1 篇　专题参考 1 篇

**第一百六十七条** 财产保全的被保全人提供其他等值担保财产且有利于执行的，人民法院可以裁定变更保全标的物为被保全人提供的担保财产。

法宝联想：　中央法规 1 篇　司法案例 10265 篇　案例报道 1 篇　期刊 1 篇　律所实务 1 篇

**第一百六十八条** 保全裁定未经人民法院依法撤销或者解除，进入执行程序后，自动转为执行中的查封、扣押、冻结措施，期限连续计算，执行法院无需重新制作裁定书，但查封、扣押、冻结期限届满的除外。

法宝联想：　司法案例 2273 篇

**第一百六十九条** 民事诉讼法规定的先予执行，人民法院应当在受理案件后终审判决作出前采取。先予执行应当限于当事人诉讼请求的范围，并以当事人的生活、生产经营的急需为限。

法宝联想：　司法案例 169 篇　期刊 2 篇

**第一百七十条** 民事诉讼法第一百零九条第三项规定的情况紧急，包括：

（一）需要立即停止侵害、排除妨碍的；

（二）需要立即制止某项行为的；

（三）追索恢复生产、经营急需的保险理赔费的；

（四）需要立即返还社会保险金、社会救助资金的；

（五）不立即返还款项，将严重影响权利人生活和生产经营的。

法宝联想：　中央法规 2 篇　司法案例 663 篇　案例报道 1 篇　期刊 2 篇

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

第一百七十一条　　当事人对保全或者先予执行裁定不服的，可以自收到裁定书之日起五日内向作出裁定的人民法院申请复议。人民法院应当在收到复议申请后十日内审查。裁定正确的，驳回当事人的申请；裁定不当的，变更或者撤销原裁定。

**法宝联想：**　　司法案例 128052 篇　期刊 1 篇

第一百七十二条　　利害关系人对保全或者先予执行的裁定不服申请复议的，由作出裁定的人民法院依照民事诉讼法第一百一十一条规定处理。

**法宝联想：**　　地方法规 2 篇　司法案例 2125 篇

第一百七十三条　　人民法院先予执行后，根据发生法律效力的判决，申请人应当返还因先予执行所取得的利益的，适用民事诉讼法第二百四十条的规定。

**法宝联想：**　　司法案例 83 篇

## 八、对妨害民事诉讼的强制措施

第一百七十四条　　民事诉讼法第一百一十二条规定的必须到庭的被告，是指负有赡养、抚育、扶养义务和不到庭就无法查清案情的被告。

人民法院对必须到庭才能查清案件基本事实的原告，经两次传票传唤，无正当理由拒不到庭的，可以拘传。

**法宝联想：**　　中央法规 4 篇　司法案例 1335 篇　案例报道 1 篇　期刊 2 篇　律所实务 2 篇　专题参考 2 篇

第一百七十五条　　拘传必须用拘传票，并直接送达被拘传人；在拘传前，应当向被拘传人说明拒不到庭的后果，经批评教育仍拒不到庭的，可以拘传其到庭。

**法宝联想：**　　司法案例 60 篇

第一百七十六条　　诉讼参与人或者其他人有下列行为之一的，人民法院可以适用民事诉讼法第一百一十三条规定处理：

（一）未经准许进行录音、录像、摄影的；

（二）未经准许以移动通信等方式现场传播审判活动的；

　　　　　　　　　　　　　　　　　　　　　　　　　　下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

（三）其他扰乱法庭秩序，妨害审判活动进行的。

有前款规定情形的，人民法院可以暂扣诉讼参与人或者其他人进行录音、录像、摄影、传播审判活动的器材，并责令其删除有关内容；拒不删除的，人民法院可以采取必要手段强制删除。

法宝联想：　司法案例 101 篇

**第一百七十七条**　训诫、责令退出法庭由合议庭或者独任审判员决定。训诫的内容、被责令退出法庭者的违法事实应当记入庭审笔录。

法宝联想：　司法案例 27 篇

**第一百七十八条**　人民法院依照民事诉讼法第一百一十三条至第一百一十七条的规定采取拘留措施的，应经院长批准，作出拘留决定书，由司法警察将被拘留人送交当地公安机关看管。

法宝联想：　司法案例 38 篇

**第一百七十九条**　被拘留人不在本辖区的，作出拘留决定的人民法院应当派员到被拘留人所在地的人民法院，请该院协助执行，受委托的人民法院应当及时派员协助执行。被拘留人申请复议或者在拘留期间承认并改正错误，需要提前解除拘留的，受委托人民法院应当向委托人民法院转达或者提出建议，由委托人民法院审查决定。

法宝联想：　司法案例 19 篇

**第一百八十条**　人民法院对被拘留人采取拘留措施后，应当在二十四小时内通知其家属；确实无法按时通知或者通知不到的，应当记录在案。

法宝联想：　司法案例 32 篇

**第一百八十一条**　因哄闹、冲击法庭，用暴力、威胁等方法抗拒执行公务等紧急情况，必须立即采取拘留措施的，可在拘留后，立即报告院长补办批准手续。院长认为拘留不当的，应当解除拘留。

法宝联想：　司法案例 22 篇

**第一百八十二条**　被拘留人在拘留期间认错悔改的，可以责令其具结悔过，提前解除拘留。提前

【法宝引证码】CLI.3.5115567

解除拘留，应报经院长批准，并作出提前解除拘留决定书，交负责看管的公安机关执行。

法宝联想：　司法案例 21 篇

　　第一百八十三条　民事诉讼法第一百一十三条至第一百一十六条规定的罚款、拘留可以单独适用，也可以合并适用。

法宝联想：　地方法规 1 篇　法律动态 2 篇　司法案例 785 篇　案例报道 2 篇

　　第一百八十四条　对同一妨害民事诉讼行为的罚款、拘留不得连续适用。发生新的妨害民事诉讼行为的，人民法院可以重新予以罚款、拘留。

法宝联想：　司法案例 64 篇

　　第一百八十五条　被罚款、拘留的人不服罚款、拘留决定申请复议的，应当自收到决定书之日起三日内提出。上级人民法院应当在收到复议申请后五日内作出决定，并将复议结果通知下级人民法院和当事人。

法宝联想：　中央法规 1 篇　司法案例 62155 篇

　　第一百八十六条　上级人民法院复议时认为强制措施不当的，应当制作决定书，撤销或者变更下级人民法院作出的拘留、罚款决定。情况紧急的，可以在口头通知后三日内发出决定书。

法宝联想：　中央法规 1 篇　司法案例 588 篇

　　第一百八十七条　民事诉讼法第一百一十四条第一款第五项规定的以暴力、威胁或者其他方法阻碍司法工作人员执行职务的行为，包括：

　　（一）在人民法院哄闹、滞留，不听从司法工作人员劝阻的；

　　（二）故意毁损、抢夺人民法院法律文书、查封标志的；

　　（三）哄闹、冲击执行公务现场，围困、扣押执行或者协助执行公务人员的；

　　（四）毁损、抢夺、扣留案件材料、执行公务车辆、其他执行公务器械、执行公务人员服装和执行公务证件的；

　　（五）以暴力、威胁或者其他方法阻碍司法工作人员查询、查封、扣押、冻结、划拨、拍卖、变

【法宝引证码】CLI.3.5115567

卖财产的；

（六）以暴力、威胁或者其他方法阻碍司法工作人员执行职务的其他行为。

法宝联想：　中央法规 1 篇　地方法规 2 篇　司法案例 515 篇　案例报道 3 篇　律所实务 1 篇

第一百八十八条　民事诉讼法第一百一十四条第一款第六项规定的拒不履行人民法院已经发生法律效力的判决、裁定的行为，包括：

（一）在法律文书发生法律效力后隐藏、转移、变卖、毁损财产或者无偿转让财产、以明显不合理的价格交易财产、放弃到期债权、无偿为他人提供担保等，致使人民法院无法执行的；

（二）隐藏、转移、毁损或者未经人民法院允许处分已向人民法院提供担保的财产的；

（三）违反人民法院限制高消费令进行消费的；

（四）有履行能力而拒不按照人民法院执行通知履行生效法律文书确定的义务的；

（五）有义务协助执行的个人接到人民法院协助执行通知书后，拒不协助执行的。

法宝联想：　中央法规 1 篇　地方法规 1 篇　司法案例 1140 篇　案例报道 1 篇　期刊 2 篇　律所实务 1 篇

第一百八十九条　诉讼参与人或者其他人有下列行为之一的，人民法院可以适用民事诉讼法第一百一十四条的规定处理：

（一）冒充他人提起诉讼或者参加诉讼的；

（二）证人签署保证书后作虚假证言，妨碍人民法院审理案件的；

（三）伪造、隐藏、毁灭或者拒绝交出有关被执行人履行能力的重要证据，妨碍人民法院查明被执行人财产状况的；

（四）擅自解冻已被人民法院冻结的财产的；

（五）接到人民法院协助执行通知书后，给当事人通风报信，协助其转移、隐匿财产的。

法宝联想：　中央法规 1 篇　地方法规 1 篇　司法案例 646 篇　案例报道 2 篇　期刊 1 篇

第一百九十条　民事诉讼法第一百一十五条规定的他人合法权益，包括案外人的合法权益、国家利益、社会公共利益。

第三人根据民事诉讼法第五十九条第三款规定提起撤销之诉，经审查，原案当事人之间恶意串通

【法宝引证码】CLI.3.5115567

进行虚假诉讼的，适用民事诉讼法第一百一十五条规定处理。

法宝联想：　中央法规 1 篇　司法案例 561 篇　期刊 2 篇　专题参考 2 篇

　　第一百九十一条　单位有民事诉讼法第一百一十五条或者第一百一十六条规定行为的，人民法院应当对该单位进行罚款，并可以对其主要负责人或者直接责任人员予以罚款、拘留；构成犯罪的，依法追究刑事责任。

法宝联想：　中央法规 3 篇　司法案例 34 篇　专题参考 2 篇

　　第一百九十二条　有关单位接到人民法院协助执行通知书后，有下列行为之一的，人民法院可以适用民事诉讼法第一百一十七条规定处理：

　　（一）允许被执行人高消费的；

　　（二）允许被执行人出境的；

　　（三）拒不停止办理有关财产权证照转移手续、权属变更登记、规划审批等手续的；

　　（四）以需要内部请示、内部审批，有内部规定等为由拖延办理的。

法宝联想：　司法案例 55 篇

　　第一百九十三条　人民法院对个人或者单位采取罚款措施时，应当根据其实施妨害民事诉讼行为的性质、情节、后果，当地的经济发展水平，以及诉讼标的额等因素，在民事诉讼法第一百一十八条第一款规定的限额内确定相应的罚款金额。

法宝联想：　中央法规 1 篇　司法案例 217 篇

## 九、诉讼费用

　　第一百九十四条　依照民事诉讼法第五十七条审理的案件不预交案件受理费，结案后按照诉讼标的额由败诉方交纳。

法宝联想：　司法案例 181 篇

　　第一百九十五条　支付令失效后转入诉讼程序的，债权人应当按照《诉讼费用交纳办法》补交案件受理费。

【法宝号证码】CLI.3.5115567

支付令被撤销后，债权人另行起诉的，按照《诉讼费用交纳办法》交纳诉讼费用。

法宝联想：　司法案例 67 篇

**第一百九十六条**　人民法院改变原判决、裁定、调解结果的，应当在裁判文书中对原审诉讼费用的负担一并作出处理。

法宝联想：　司法案例 311 篇

**第一百九十七条**　诉讼标的物是证券的，按照证券交易规则并根据当事人起诉之日前最后一个交易日的收盘价、当日的市场价或者其载明的金额计算诉讼标的金额。

法宝联想：　司法案例 62 篇

**第一百九十八条**　诉讼标的物是房屋、土地、林木、车辆、船舶、文物等特定物或者知识产权，起诉时价值难以确定的，人民法院应当向原告释明主张过高或者过低的诉讼风险，以原告主张的价值确定诉讼标的金额。

法宝联想：　司法案例 116 篇

**第一百九十九条**　适用简易程序审理的案件转为普通程序的，原告自接到人民法院交纳诉讼费用通知之日起七日内补交案件受理费。

原告无正当理由未按期足额补交的，按撤诉处理，已经收取的诉讼费用退还一半。

法宝联想：　司法案例 83138 篇

**第二百条**　破产程序中有关债务人的民事诉讼案件，按照财产案件标准交纳诉讼费，但劳动争议案件除外。

法宝联想：　司法案例 302 篇　期刊 1 篇　律所实务 1 篇

**第二百零一条**　既有财产性诉讼请求，又有非财产性诉讼请求的，按照财产性诉讼请求的标准交纳诉讼费。

有多个财产性诉讼请求的，合并计算交纳诉讼费；诉讼请求中有多个非财产性诉讼请求的，按一件交纳诉讼费。

【法宝引证码】CLI.3.5115567

**法宝联想:**　地方法规 1 篇　司法案例 479 篇

**第二百零二条**　原告、被告、第三人分别上诉的，按照上诉请求分别预交二审案件受理费。

同一方多人共同上诉的，只预交一份二审案件受理费；分别上诉的，按照上诉请求分别预交二审案件受理费。

**法宝联想:**　司法案例 269 篇

**第二百零三条**　承担连带责任的当事人败诉的，应当共同负担诉讼费用。

**法宝联想:**　司法案例 9199 篇

**第二百零四条**　实现担保物权案件，人民法院裁定拍卖、变卖担保财产的，申请费由债务人、担保人负担；人民法院裁定驳回申请的，申请费由申请人负担。

申请人另行起诉的，其已经交纳的申请费可以从案件受理费中扣除。

**法宝联想:**　司法案例 530 篇　专题参考 1 篇

**第二百零五条**　拍卖、变卖担保财产的裁定作出后，人民法院强制执行的，按照执行金额收取执行申请费。

**法宝联想:**　司法案例 85 篇

**第二百零六条**　人民法院决定减半收取案件受理费的，只能减半一次。

**法宝联想:**　司法案例 4702 篇

**第二百零七条**　判决生效后，胜诉方预交但不应负担的诉讼费用，人民法院应当退还，由败诉方向人民法院交纳，但胜诉方自愿承担或者同意败诉方直接向其支付的除外。

当事人拒不交纳诉讼费用的，人民法院可以强制执行。

**法宝联想:**　地方法规 2 篇　司法案例 5346 篇　期刊 1 篇

## 十、第一审普通程序

　　　　　　　　　　　　　　　　　　　　下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

第二百零八条　人民法院接到当事人提交的民事起诉状时，对符合民事诉讼法第一百二十二条的规定，且不属于第一百二十七条规定情形的，应当登记立案；对当场不能判定是否符合起诉条件的，应当接收起诉材料，并出具注明收到日期的书面凭证。

需要补充必要相关材料的，人民法院应当及时告知当事人。在补齐相关材料后，应当在七日内决定是否立案。

立案后发现不符合起诉条件或者属于民事诉讼法第一百二十七条规定情形的，裁定驳回起诉。

法宝联想：　中央法规 1 篇　司法案例 781287 篇　案例报道 2 篇　期刊 4 篇　律所实务 8 篇　专题参考 7 篇

第二百零九条　原告提供被告的姓名或者名称、住所等信息具体明确，足以使被告与他人相区别的，可以认定为有明确的被告。

起诉状列写被告信息不足以认定明确的被告的，人民法院可以告知原告补正。原告补正后仍不能确定明确的被告的，人民法院裁定不予受理。

法宝联想：　中央法规 1 篇　司法案例 32263 篇　期刊 3 篇　专题参考 1 篇

第二百一十条　原告在起诉状中有谩骂和人身攻击之辞的，人民法院应当告知其修改后提起诉讼。

法宝联想：　地方法规 1 篇　司法案例 391 篇　案例报道 1 篇

第二百一十一条　对本院没有管辖权的案件，告知原告向有管辖权的人民法院起诉；原告坚持起诉的，裁定不予受理；立案后发现本院没有管辖权的，应当将案件移送有管辖权的人民法院。

法宝联想：　地方法规 1 篇　司法案例 25699 篇　专题参考 1 篇

第二百一十二条　裁定不予受理、驳回起诉的案件，原告再次起诉，符合起诉条件且不属于民事诉讼法第一百二十七条规定情形的，人民法院应予受理。

法宝联想：　司法案例 2197 篇　律所实务 1 篇

第二百一十三条　原告应当预交而未预交案件受理费，人民法院应当通知其预交，通知后仍不预交或者申请减、缓、免未获批准而仍不预交的，裁定按撤诉处理。

　　　　　　　　　　　　　　　　　　　　下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想：　司法案例 2297412 篇　期刊 1 篇　专题参考 1 篇

第二百一十四条　原告撤诉或者人民法院按撤诉处理后，原告以同一诉讼请求再次起诉的，人民法院应予受理。

原告撤诉或者按撤诉处理的离婚案件，没有新情况、新理由，六个月内又起诉的，比照 民事诉讼法第一百二十七条第七项的规定不予受理。

法宝联想：　司法案例 3585 篇　专题参考 1 篇

第二百一十五条　依照民事诉讼法第一百二十七条第二项的规定，当事人在书面合同中订有仲裁条款，或者在发生纠纷后达成书面仲裁协议，一方向人民法院起诉的，人民法院应当告知原告向仲裁机构申请仲裁，其坚持起诉的，裁定不予受理，但仲裁条款或者仲裁协议不成立、无效、失效、内容不明确无法执行的除外。

法宝联想：　中央法规 2 篇　司法案例 5845 篇　仲裁案例 1 篇　期刊 1 篇　律所实务 1 篇　专题参考 1 篇

第二百一十六条　在人民法院首次开庭前，被告以有书面仲裁协议为由对受理民事案件提出异议的，人民法院应当进行审查。

经审查符合下列情形之一的，人民法院应当裁定驳回起诉：

（一）仲裁机构或者人民法院已经确认仲裁协议有效的；

（二）当事人没有在仲裁庭首次开庭前对仲裁协议的效力提出异议的；

（三）仲裁协议符合仲裁法第十六条规定且不具有仲裁法第十七条规定情形的。

法宝联想：　中央法规 3 篇　地方法规 1 篇　司法案例 8326 篇　案例报道 1 篇　期刊 1 篇　律所实务 3 篇

第二百一十七条　夫妻一方下落不明，另一方诉至人民法院，只要求离婚，不申请宣告下落不明人失踪或者死亡的案件，人民法院应当受理，对下落不明人公告送达诉讼文书。

法宝联想：　地方法规 1 篇　司法案例 220 篇

第二百一十八条　赡养费、扶养费、抚养费案件，裁判发生法律效力后，因新情况、新理由，一方当事人再行起诉要求增加或者减少费用的，人民法院应作为新案受理。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想：　司法案例 231 篇　期刊 1 篇

第二百一十九条　当事人超过诉讼时效期间起诉的，人民法院应予受理。受理后对方当事人提出诉讼时效抗辩，人民法院经审理认为抗辩事由成立的，判决驳回原告的诉讼请求。

法宝联想：　司法案例 20578 篇　期刊 2 篇　律所实务 1 篇　专题参考 4 篇

第二百二十条　民事诉讼法第七十一条、第一百三十七条、第一百五十九条规定的商业秘密，是指生产工艺、配方、贸易联系、购销渠道等当事人不愿公开的技术秘密、商业情报及信息。

法宝联想：　司法案例 64 篇

第二百二十一条　基于同一事实发生的纠纷，当事人分别向同一人民法院起诉的，人民法院可以合并审理。

法宝联想：　司法案例 68639 篇　专题参考 1 篇

第二百二十二条　原告在起诉状中直接列写第三人的，视为其申请人民法院追加该第三人参加诉讼。是否通知第三人参加诉讼，由人民法院审查决定。

法宝联想：　司法案例 765 篇

第二百二十三条　当事人在提交答辩状期间提出管辖异议，又针对起诉状的内容进行答辩的，人民法院应当依照民事诉讼法第一百三十条第一款的规定，对管辖异议进行审查。

当事人未提出管辖异议，就案件实体内容进行答辩、陈述或者反诉的，可以认定为民事诉讼法第一百三十条第二款规定的应诉答辩。

法宝联想：　司法案例 969 篇　期刊 2 篇

第二百二十四条　依照民事诉讼法第一百三十六条第四项规定，人民法院可以在答辩期届满后，通过组织证据交换、召集庭前会议等方式，作好审理前的准备。

法宝联想：　中央法规 1 篇　地方法规 1 篇　司法案例 114 篇　期刊 3 篇

第二百二十五条　根据案件具体情况，庭前会议可以包括下列内容：

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

（一）明确原告的诉讼请求和被告的答辩意见；

（二）审查处理当事人增加、变更诉讼请求的申请和提出的反诉，以及第三人提出的与本案有关的诉讼请求；

（三）根据当事人的申请决定调查收集证据，委托鉴定，要求当事人提供证据，进行勘验，进行证据保全；

（四）组织交换证据；

（五）归纳争议焦点；

（六）进行调解。

法宝联想：　中央法规 2 篇　地方法规 1 篇　司法案例 1374 篇　期刊 5 篇

　　**第二百二十六条**　人民法院应当根据当事人的诉讼请求、答辩意见以及证据交换的情况，归纳争议焦点，并就归纳的争议焦点征求当事人的意见。

法宝联想：　中央法规 1 篇　法律动态 1 篇　司法案例 344 篇　案例报道 1 篇　期刊 4 篇　专题参考 1 篇

　　**第二百二十七条**　人民法院适用普通程序审理案件，应当在开庭三日前用传票传唤当事人。对诉讼代理人、证人、鉴定人、勘验人、翻译人员应当用通知书通知其到庭。当事人或者其他诉讼参与人在外地的，应当留有必要的在途时间。

法宝联想：　司法案例 356 篇　期刊 1 篇　专题参考 1 篇

　　**第二百二十八条**　法庭审理应当围绕当事人争议的事实、证据和法律适用等焦点问题进行。

法宝联想：　中央法规 1 篇　法律动态 1 篇　司法案例 412 篇　案例报道 1 篇　期刊 2 篇　专题参考 1 篇

　　**第二百二十九条**　当事人在庭审中对其在审理前的准备阶段认可的事实和证据提出不同意见的，人民法院应当责令其说明理由。必要时，可以责令其提供相应证据。人民法院应当结合当事人的诉讼能力、证据和案件的具体情况进行审查。理由成立的，可以列入争议焦点进行审理。

法宝联想：　中央法规 2 篇　司法案例 542 篇　期刊 5 篇　律所实务 1 篇　专题参考 2 篇

　　**第二百三十条**　人民法院根据案件具体情况并征得当事人同意，可以将法庭调查和法庭辩论合并

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

进行。

法宝联想：　法律动态 1 篇　司法案例 255 篇　专题参考 1 篇

**第二百三十一条**　当事人在法庭上提出新的证据的，人民法院应当依照民事诉讼法第六十八条第二款规定和本解释相关规定处理。

法宝联想：　司法案例 418 篇

**第二百三十二条**　在案件受理后，法庭辩论结束前，原告增加诉讼请求，被告提出反诉，第三人提出与本案有关的诉讼请求，可以合并审理的，人民法院应当合并审理。

法宝联想：　司法案例 12894 篇　案例报道 1 篇　期刊 7 篇　专题参考 1 篇

**第二百三十三条**　反诉的当事人应当限于本诉的当事人的范围。

反诉与本诉的诉讼请求基于相同法律关系、诉讼请求之间具有因果关系，或者反诉与本诉的诉讼请求基于相同事实的，人民法院应当合并审理。

反诉应由其他人民法院专属管辖，或者与本诉的诉讼标的及诉讼请求所依据的事实、理由无关联的，裁定不予受理，告知另行起诉。

法宝联想：　地方法规 1 篇　司法案例 11135 篇　期刊 3 篇　律所实务 3 篇　专题参考 1 篇

**第二百三十四条**　无民事行为能力人的离婚诉讼，当事人的法定代理人应当到庭；法定代理人不能到庭的，人民法院应当在查清事实的基础上，依法作出判决。

法宝联想：　司法案例 84 篇

**第二百三十五条**　无民事行为能力的当事人的法定代理人，经传票传唤无正当理由拒不到庭，属于原告方的，比照民事诉讼法第一百四十六条的规定，按撤诉处理；属于被告方的，比照民事诉讼法第一百四十七条的规定，缺席判决。必要时，人民法院可以拘传其到庭。

法宝联想：　司法案例 744 篇

**第二百三十六条**　有独立请求权的第三人经人民法院传票传唤，无正当理由拒不到庭的，或者未经法庭许可中途退庭的，比照民事诉讼法第一百四十六条的规定，按撤诉处理。

　　　　　　　　　　　　　　　　　　　　下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

**法宝联想：**　司法案例 732 篇

第二百三十七条　有独立请求权的第三人参加诉讼后，原告申请撤诉，人民法院在准许原告撤诉后，有独立请求权的第三人作为另案原告，原案原告、被告作为另案被告，诉讼继续进行。

**法宝联想：**　司法案例 188 篇　期刊 1 篇

第二百三十八条　当事人申请撤诉或者依法可以按撤诉处理的案件，如果当事人有违反法律的行为需要依法处理的，人民法院可以不准许撤诉或者不按撤诉处理。

法庭辩论终结后原告申请撤诉，被告不同意的，人民法院可以不予准许。

**法宝联想：**　司法案例 19513 篇　期刊 1 篇　专题参考 1 篇

第二百三十九条　人民法院准许本诉原告撤诉的，应当对反诉继续审理；被告申请撤回反诉的，人民法院应予准许。

**法宝联想：**　司法案例 8889 篇　期刊 1 篇　专题参考 2 篇

第二百四十条　无独立请求权的第三人经人民法院传票传唤，无正当理由拒不到庭，或者未经法庭许可中途退庭的，不影响案件的审理。

**法宝联想：**　地方法规 1 篇　司法案例 29055 篇　案例报道 1 篇

第二百四十一条　被告经传票传唤无正当理由拒不到庭，或者未经法庭许可中途退庭的，人民法院应当按期开庭或者继续开庭审理，对到庭的当事人诉讼请求、双方的诉辩理由以及已经提交的证据及其他诉讼材料进行审理后，可以依法缺席判决。

**法宝联想：**　司法案例 22531 篇　期刊 2 篇

第二百四十二条　一审宣判后，原审人民法院发现判决有错误，当事人在上诉期内提出上诉的，原审人民法院可以提出原判决有错误的意见，报送第二审人民法院，由第二审人民法院按照第二审程序进行审理；当事人不上诉的，按照审判监督程序处理。

**法宝联想：**　法律动态 1 篇　司法案例 1139 篇

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

第二百四十三条　民事诉讼法第一百五十二条规定的审限，是指从立案之日起至裁判宣告、调解书送达之日止的期间，但公告期间、鉴定期间、双方当事人和解期间、审理当事人提出的管辖异议以及处理人民法院之间的管辖争议期间不应计算在内。

法宝联想：　司法案例 1069 篇

第二百四十四条　可以上诉的判决书、裁定书不能同时送达双方当事人的，上诉期从各自收到判决书、裁定书之日计算。

法宝联想：　司法案例 571 篇

第二百四十五条　民事诉讼法第一百五十七条第一款第七项规定的笔误是指法律文书误写、误算，诉讼费用漏写、误算和其他笔误。

法宝联想：　司法案例 80529 篇

第二百四十六条　裁定中止诉讼的原因消除，恢复诉讼程序时，不必撤销原裁定，从人民法院通知或者准许当事人双方继续进行诉讼时起，中止诉讼的裁定即失去效力。

法宝联想：　司法案例 838 篇

第二百四十七条　当事人就已经提起诉讼的事项在诉讼过程中或者裁判生效后再次起诉，同时符合下列条件的，构成重复起诉：

（一）后诉与前诉的当事人相同；

（二）后诉与前诉的诉讼标的相同；

（三）后诉与前诉的诉讼请求相同，或者后诉的诉讼请求实质上否定前诉裁判结果。

当事人重复起诉的，裁定不予受理；已经受理的，裁定驳回起诉，但法律、司法解释另有规定的除外。

法宝联想：　中央法规 2 篇　地方法规 5 篇　法律动态 2 篇　司法案例 106541 篇　案例报道 4 篇　仲裁案例 6 篇　期刊 20 篇　律所实务 8 篇　专题参考 8 篇

第二百四十八条　裁判发生法律效力后，发生新的事实，当事人再次提起诉讼的，人民法院应当依法受理。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

**法宝联想：** 司法案例 6964 篇　仲裁案例 3 篇　期刊 1 篇　律所实务 2 篇　专题参考 2 篇

　　**第二百四十九条**　在诉讼中，争议的民事权利义务转移的，不影响当事人的诉讼主体资格和诉讼地位。人民法院作出的发生法律效力的判决、裁定对受让人具有拘束力。

　　受让人申请以无独立请求权的第三人身份参加诉讼的，人民法院可予准许。受让人申请替代当事人承担诉讼的，人民法院可以根据案件的具体情况决定是否准许；不予准许的，可以追加其为无独立请求权的第三人。

**法宝联想：** 司法案例 2994 篇　仲裁案例 1 篇　期刊 1 篇　律所实务 3 篇　专题参考 2 篇

　　**第二百五十条**　依照本解释第二百四十九条规定，人民法院准许受让人替代当事人承担诉讼的，裁定变更当事人。

　　变更当事人后，诉讼程序以受让人为当事人继续进行，原当事人应当退出诉讼。原当事人已经完成的诉讼行为对受让人具有拘束力。

**法宝联想：** 司法案例 2217 篇　专题参考 1 篇

　　**第二百五十一条**　二审裁定撤销一审判决发回重审的案件，当事人申请变更、增加诉讼请求或者提出反诉，第三人提出与本案有关的诉讼请求的，依照民事诉讼法第一百四十三条规定处理。

**法宝联想：** 司法案例 658 篇

　　**第二百五十二条**　再审裁定撤销原判决、裁定发回重审的案件，当事人申请变更、增加诉讼请求或者提出反诉，符合下列情形之一的，人民法院应当准许：

　　（一）原审未合法传唤缺席判决，影响当事人行使诉讼权利的；

　　（二）追加新的诉讼当事人的；

　　（三）诉讼标的物灭失或者发生变化致使原诉讼请求无法实现的；

　　（四）当事人申请变更、增加的诉讼请求或者提出的反诉，无法通过另诉解决的。

**法宝联想：** 中央法规 1 篇　法规解读 1 篇　法律动态 1 篇　司法案例 655 篇　期刊 1 篇　律所实务 1 篇　专题参考 1 篇

　　**第二百五十三条**　当庭宣判的案件，除当事人当庭要求邮寄发送裁判文书的外，人民法院应当告

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

知当事人或者诉讼代理人领取裁判文书的时间和地点以及逾期不领取的法律后果。上述情况，应当记入笔录。

法宝联想：　司法案例 379 篇

第二百五十四条　公民、法人或者其他组织申请查阅发生法律效力的判决书、裁定书的，应当向作出该生效裁判的人民法院提出。申请应当以书面形式提出，并提供具体的案号或者当事人姓名、名称。

法宝联想：　司法案例 1938 篇

第二百五十五条　对于查阅判决书、裁定书的申请，人民法院根据下列情形分别处理：

（一）判决书、裁定书已经通过信息网络向社会公开的，应当引导申请人自行查阅；

（二）判决书、裁定书未通过信息网络向社会公开，且申请符合要求的，应当及时提供便捷的查阅服务；

（三）判决书、裁定书尚未发生法律效力，或者已失去法律效力的，不提供查阅并告知申请人；

（四）发生法律效力的判决书、裁定书不是本院作出的，应当告知申请人向作出生效裁判的人民法院申请查阅；

（五）申请查阅的内容涉及国家秘密、商业秘密、个人隐私的，不予准许并告知申请人。

法宝联想：　司法案例 7 篇

## 十一、简易程序

第二百五十六条　民事诉讼法第一百六十条规定的简单民事案件中的事实清楚，是指当事人对争议的事实陈述基本一致，并能提供相应的证据，无须人民法院调查收集证据即可查明事实；权利义务关系明确是指能明确区分谁是责任的承担者，谁是权利的享有者；争议不大是指当事人对案件的是非、责任承担以及诉讼标的争执无原则分歧。

法宝联想：　司法案例 2312 篇　专题参考 1 篇

第二百五十七条　下列案件，不适用简易程序：

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

（一）起诉时被告下落不明的；

（二）发回重审的；

（三）当事人一方人数众多的；

（四）适用审判监督程序的；

（五）涉及国家利益、社会公共利益的；

（六）第三人起诉请求改变或者撤销生效判决、裁定、调解书的；

（七）其他不宜适用简易程序的案件。

法宝联想：　司法案例 54431 篇

第二百五十八条　适用简易程序审理的案件，审理期限到期后，有特殊情况需要延长的，经本院院长批准，可以延长审理期限。延长后的审理期限累计不得超过四个月。

人民法院发现案件不宜适用简易程序，需要转为普通程序审理的，应当在审理期限届满前作出裁定并将审判人员及相关事项书面通知双方当事人。

案件转为普通程序审理的，审理期限自人民法院立案之日计算。

法宝联想：　中央法规 1 篇　司法案例 26775 篇

第二百五十九条　当事人双方可就开庭方式向人民法院提出申请，由人民法院决定是否准许。经当事人双方同意，可以采用视听传输技术等方式开庭。

法宝联想：　司法案例 178 篇　律所实务 2 篇

第二百六十条　已经按照普通程序审理的案件，在开庭后不得转为简易程序审理。

法宝联想：　司法案例 81 篇

第二百六十一条　适用简易程序审理案件，人民法院可以依照民事诉讼法第九十条、第一百六十二条的规定采取捎口信、电话、短信、传真、电子邮件等简便方式传唤双方当事人、通知证人和送达诉讼文书。

以简便方式送达的开庭通知，未经当事人确认或者没有其他证据证明当事人已经收到的，人民法院不得缺席判决。

下载日期：2023-08-13

适用简易程序审理案件，由审判员独任审判，书记员担任记录。

法宝联想： 中央法规 1 篇 司法案例 1456 篇 期刊 1 篇

**第二百六十二条** 人民法庭制作的判决书、裁定书、调解书，必须加盖基层人民法院印章，不得用人民法庭的印章代替基层人民法院的印章。

法宝联想： 司法案例 2 篇

**第二百六十三条** 适用简易程序审理案件，卷宗中应当具备以下材料：

（一）起诉状或者口头起诉笔录；

（二）答辩状或者口头答辩笔录；

（三）当事人身份证明材料；

（四）委托他人代理诉讼的授权委托书或者口头委托笔录；

（五）证据；

（六）询问当事人笔录；

（七）审理（包括调解）笔录；

（八）判决书、裁定书、调解书或者调解协议；

（九）送达和宣判笔录；

（十）执行情况；

（十一）诉讼费收据；

（十二）适用民事诉讼法第一百六十五条规定审理的，有关程序适用的书面告知。

法宝联想： 司法案例 111 篇

**第二百六十四条** 当事人双方根据民事诉讼法第一百六十条第二款规定约定适用简易程序的，应当在开庭前提出。口头提出的，记入笔录，由双方当事人签名或者捺印确认。

本解释第二百五十七条规定的案件，当事人约定适用简易程序的，人民法院不予准许。

法宝联想： 司法案例 2312 篇

【法宝引证码】CLI.3.5115567

**第二百六十五条** 原告口头起诉的，人民法院应当将当事人的姓名、性别、工作单位、住所、联系方式等基本信息，诉讼请求，事实及理由等准确记入笔录，由原告核对无误后签名或者捺印。对当事人提交的证据材料，应当出具收据。

法宝联想：    司法案例 26 篇

**第二百六十六条** 适用简易程序案件的举证期限由人民法院确定，也可以由当事人协商一致并经人民法院准许，但不得超过十五日。被告要求书面答辩的，人民法院可在征得其同意的基础上，合理确定答辩期间。

人民法院应当将举证期限和开庭日期告知双方当事人，并向当事人说明逾期举证以及拒不到庭的法律后果，由双方当事人在笔录和开庭传票的送达回证上签名或者捺印。

当事人双方均表示不需要举证期限、答辩期间的，人民法院可以立即开庭审理或者确定开庭日期。

法宝联想：    司法案例 1466 篇

**第二百六十七条** 适用简易程序审理案件，可以简便方式进行审理前的准备。

法宝联想：    司法案例 73 篇

**第二百六十八条** 对没有委托律师、基层法律服务工作者代理诉讼的当事人，人民法院在庭审过程中可以对回避、自认、举证证明责任等相关内容向其作必要的解释或者说明，并在庭审过程中适当提示当事人正确行使诉讼权利、履行诉讼义务。

法宝联想：    司法案例 28 篇

**第二百六十九条** 当事人就案件适用简易程序提出异议，人民法院经审查，异议成立的，裁定转为普通程序；异议不成立的，裁定驳回。裁定以口头方式作出的，应当记入笔录。

转为普通程序的，人民法院应当将审判人员及相关事项以书面形式通知双方当事人。

转为普通程序前，双方当事人已确认的事实，可以不再进行举证、质证。

法宝联想：    司法案例 860 篇  专题参考 1 篇

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

第二百七十条　　适用简易程序审理的案件，有下列情形之一的，人民法院在制作判决书、裁定书、调解书时，对认定事实或者裁判理由部分可以适当简化：

（一）当事人达成调解协议并需要制作民事调解书的；

（二）一方当事人明确表示承认对方全部或者部分诉讼请求的；

（三）涉及商业秘密、个人隐私的案件，当事人一方要求简化裁判文书中的相关内容，人民法院认为理由正当的；

（四）当事人双方同意简化的。

法宝联想： 司法案例 1435 篇

## 十二、简易程序中的小额诉讼

第二百七十一条　　人民法院审理小额诉讼案件，适用民事诉讼法第一百六十五条的规定，实行一审终审。

法宝联想：　司法案例 42440 篇　期刊 1 篇

第二百七十二条　　民事诉讼法第一百六十五条规定的各省、自治区、直辖市上年度就业人员年平均工资，是指已经公布的各省、自治区、直辖市上一年度就业人员年平均工资。在上一年度就业人员年平均工资公布前，以已经公布的最近年度就业人员年平均工资为准。

法宝联想：　司法案例 4725 篇　期刊 1 篇

第二百七十三条　　海事法院可以适用小额诉讼的程序审理海事、海商案件。案件标的额应当以实际受理案件的海事法院或者其派出法庭所在的省、自治区、直辖市上年度就业人员年平均工资为基数计算。

法宝联想：　地方法规 1 篇　司法案例 47 篇

第二百七十四条　　人民法院受理小额诉讼案件，应当向当事人告知该类案件的审判组织、一审终审、审理期限、诉讼费用交纳标准等相关事项。

法宝联想：　法律动态 1 篇　司法案例 18483 篇　期刊 1 篇

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

第二百七十五条　小额诉讼案件的举证期限由人民法院确定，也可以由当事人协商一致并经人民法院准许，但一般不超过七日。

被告要求书面答辩的，人民法院可以在征得其同意的基础上合理确定答辩期间，但最长不得超过十五日。

当事人到庭后表示不需要举证期限和答辩期间的，人民法院可立即开庭审理。

法宝联想：　法律动态 1 篇　司法案例 676 篇　期刊 2 篇

第二百七十六条　当事人对小额诉讼案件提出管辖异议的，人民法院应当作出裁定。裁定一经作出即生效。

法宝联想：　司法案例 622 篇

第二百七十七条　人民法院受理小额诉讼案件后，发现起诉不符合民事诉讼法第一百二十二条规定的起诉条件的，裁定驳回起诉。裁定一经作出即生效。

法宝联想：　司法案例 3049 篇

第二百七十八条　因当事人申请增加或者变更诉讼请求、提出反诉、追加当事人等，致使案件不符合小额诉讼案件条件的，应当适用简易程序的其他规定审理。

前款规定案件，应当适用普通程序审理的，裁定转为普通程序。

适用简易程序的其他规定或者普通程序审理前，双方当事人已确认的事实，可以不再进行举证、质证。

法宝联想：　司法案例 1592 篇

第二百七十九条　当事人对按照小额诉讼案件审理有异议的，应当在开庭前提出。人民法院经审查，异议成立的，适用简易程序的其他规定审理或者裁定转为普通程序；异议不成立的，裁定驳回。裁定以口头方式作出的，应当记入笔录。

法宝联想：　法律文书 1 篇　司法案例 21053 篇

第二百八十条　小额诉讼案件的裁判文书可以简化，主要记载当事人基本信息、诉讼请求、裁判

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

主文等内容。

法宝联想：　司法案例 4128 篇　期刊 2 篇

第二百八十一条　人民法院审理小额诉讼案件，本解释没有规定的，适用简易程序的其他规定。

法宝联想：　司法案例 1444 篇　期刊 2 篇

## 十三、公益诉讼

第二百八十二条　环境保护法、消费者权益保护法等法律规定的机关和有关组织对污染环境、侵害众多消费者合法权益等损害社会公共利益的行为，根据民事诉讼法第五十八条规定提起公益诉讼，符合下列条件的，人民法院应当受理：

（一）有明确的被告；

（二）有具体的诉讼请求；

（三）有社会公共利益受到损害的初步证据；

（四）属于人民法院受理民事诉讼的范围和受诉人民法院管辖。

法宝联想：　司法案例 11520 篇

第二百八十三条　公益诉讼案件由侵权行为地或者被告住所地中级人民法院管辖，但法律、司法解释另有规定的除外。

因污染海洋环境提起的公益诉讼，由污染发生地、损害结果地或者采取预防污染措施地海事法院管辖。

对同一侵权行为分别向两个以上人民法院提起公益诉讼的，由最先立案的人民法院管辖，必要时由它们的共同上级人民法院指定管辖。

法宝联想：　司法案例 1023 篇　期刊 1 篇　律所实务 1 篇

第二百八十四条　人民法院受理公益诉讼案件后，应当在十日内书面告知相关行政主管部门。

法宝联想：　司法案例 137 篇　期刊 4 篇　律所实务 1 篇　专题参考 1 篇

第二百八十五条　人民法院受理公益诉讼案件后，依法可以提起诉讼的其他机关和有关组织，可

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

以在开庭前向人民法院申请参加诉讼。人民法院准许参加诉讼的，列为共同原告。

法宝联想：  中央法规 3 篇  法规解读 1 篇  司法案例 31 篇  期刊 4 篇

第二百八十六条　人民法院受理公益诉讼案件，不影响同一侵权行为的受害人根据 民事诉讼法 第一百二十二条 规定提起诉讼。

法宝联想：  中央法规 1 篇  司法案例 21 篇  期刊 1 篇

第二百八十七条　对公益诉讼案件，当事人可以和解，人民法院可以调解。

当事人达成和解或者调解协议后，人民法院应当将和解或者调解协议进行公告。公告期间不得少于三十日。

公告期满后，人民法院经审查，和解或者调解协议不违反社会公共利益的，应当出具调解书；和解或者调解协议违反社会公共利益的，不予出具调解书，继续对案件进行审理并依法作出裁判。

法宝联想：  中央法规 1 篇  司法案例 250 篇  案例报道 2 篇

第二百八十八条　公益诉讼案件的原告在法庭辩论终结后申请撤诉的，人民法院不予准许。

法宝联想：  司法案例 13 篇  案例报道 1 篇  期刊 5 篇  专题参考 1 篇

第二百八十九条　公益诉讼案件的裁判发生法律效力后，其他依法具有原告资格的机关和有关组织就同一侵权行为另行提起公益诉讼的，人民法院裁定不予受理，但法律、司法解释另有规定的除外。

法宝联想：  中央法规 2 篇  司法案例 11 篇  案例报道 2 篇  期刊 3 篇  专题参考 1 篇

## 十四、第三人撤销之诉

第二百九十条　第三人对已经发生法律效力的判决、裁定、调解书提起撤销之诉的，应当自知道或者应当知道其民事权益受到损害之日起六个月内，向作出生效判决、裁定、调解书的人民法院提出，并应当提供存在下列情形的证据材料：

（一）因不能归责于本人的事由未参加诉讼；

（二）发生法律效力的判决、裁定、调解书的全部或者部分内容错误；

【法宝引证码】CLI.3.5115567

（三）发生法律效力的判决、裁定、调解书内容错误损害其民事权益。

法宝联想：　中央法规 1 篇　司法案例 379 篇

第二百九十一条　人民法院应当在收到起诉状和证据材料之日起五日内送交对方当事人，对方当事人可以自收到起诉状之日起十日内提出书面意见。

人民法院应当对第三人提交的起诉状、证据材料以及对方当事人的书面意见进行审查。必要时，可以询问双方当事人。

经审查，符合起诉条件的，人民法院应当在收到起诉状之日起三十日内立案。不符合起诉条件的，应当在收到起诉状之日起三十日内裁定不予受理。

法宝联想：　中央法规 1 篇　司法案例 91 篇　期刊 2 篇

第二百九十二条　人民法院对第三人撤销之诉案件，应当组成合议庭开庭审理。

法宝联想：　中央法规 1 篇　地方法规 2 篇　法律动态 1 篇　司法案例 10332 篇　案例报道 1 篇　期刊 1 篇　专题参考 2 篇

第二百九十三条　民事诉讼法第五十九条第三款规定的因不能归责于本人的事由未参加诉讼，是指没有被列为生效判决、裁定、调解书当事人，且无过错或者无明显过错的情形。包括：

（一）不知道诉讼而未参加的；

（二）申请参加未获准许的；

（三）知道诉讼，但因客观原因无法参加的；

（四）因其他不能归责于本人的事由未参加诉讼的。

法宝联想：　地方法规 1 篇　司法案例 2670 篇

第二百九十四条　民事诉讼法第五十九条第三款规定的判决、裁定、调解书的部分或者全部内容，是指判决、裁定的主文，调解书中处理当事人民事权利义务的结果。

法宝联想：　地方法规 1 篇　司法案例 961 篇

第二百九十五条　对下列情形提起第三人撤销之诉的，人民法院不予受理：

（一）适用特别程序、督促程序、公示催告程序、破产程序等非讼程序处理的案件；

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

（二）婚姻无效、撤销或者解除婚姻关系等判决、裁定、调解书中涉及身份关系的内容；

（三）民事诉讼法第五十七条规定的未参加登记的权利人对代表人诉讼案件的生效裁判；

（四）民事诉讼法第五十八条规定的损害社会公共利益行为的受害人对公益诉讼案件的生效裁判。

法宝联想：  地方法规 1 篇  司法案例 2465 篇


**第二百九十六条**  第三人提起撤销之诉，人民法院应当将该第三人列为原告，生效判决、裁定、调解书的当事人列为被告，但生效判决、裁定、调解书中没有承担责任的无独立请求权的第三人列为第三人。

法宝联想：  司法案例 2352 篇


**第二百九十七条**  受理第三人撤销之诉案件后，原告提供相应担保，请求中止执行的，人民法院可以准许。

法宝联想：  地方法规 1 篇  司法案例 261 篇


**第二百九十八条**  对第三人撤销或者部分撤销发生法律效力的判决、裁定、调解书内容的请求，人民法院经审理，按下列情形分别处理：

（一）请求成立且确认其民事权利的主张全部或部分成立的，改变原判决、裁定、调解书内容的错误部分；

（二）请求成立，但确认其全部或部分民事权利的主张不成立，或者未提出确认其民事权利请求的，撤销原判决、裁定、调解书内容的错误部分；

（三）请求不成立的，驳回诉讼请求。

对前款规定裁判不服的，当事人可以上诉。

原判决、裁定、调解书的内容未改变或者未撤销的部分继续有效。

法宝联想：  地方法规 1 篇  司法案例 1012 篇


**第二百九十九条**  第三人撤销之诉案件审理期间，人民法院对生效判决、裁定、调解书裁定再审的，受理第三人撤销之诉的人民法院应当裁定将第三人的诉讼请求并入再审程序。但有证据证明原审

【法宝引证码】CLI.3.5115567

当事人之间恶意串通损害第三人合法权益的，人民法院应当先行审理第三人撤销之诉案件，裁定中止再审诉讼。

法宝联想：　司法案例 150 篇

第三百条　第三人诉讼请求并入再审程序审理的，按照下列情形分别处理：

（一）按照第一审程序审理的，人民法院应当对第三人的诉讼请求一并审理，所作的判决可以上诉；

（二）按照第二审程序审理的，人民法院可以调解，调解达不成协议的，应当裁定撤销原判决、裁定、调解书，发回一审法院重审，重审时应当列明第三人。

法宝联想：　地方法规 1 篇　司法案例 7403 篇　案例报道 1 篇　专题参考 1 篇

第三百零一条　第三人提起撤销之诉后，未中止生效判决、裁定、调解书执行的，执行法院对第三人依照民事诉讼法第二百三十四条规定提出的执行异议，应予审查。第三人不服驳回执行异议裁定，申请对原判决、裁定、调解书再审的，人民法院不予受理。

案外人对人民法院驳回其执行异议裁定不服，认为原判决、裁定、调解书内容错误损害其合法权益的，应当根据民事诉讼法第二百三十四条规定申请再审，提起第三人撤销之诉的，人民法院不予受理。

法宝联想：　司法案例 362 篇　专题参考 1 篇

## 十五、执行异议之诉

第三百零二条　根据民事诉讼法第二百三十四条规定，案外人、当事人对执行异议裁定不服，自裁定送达之日起十五日内向人民法院提起执行异议之诉的，由执行法院管辖。

法宝联想：　司法案例 540 篇　律所实务 1 篇

第三百零三条　案外人提起执行异议之诉，除符合民事诉讼法第一百二十二条规定外，还应当具备下列条件：

（一）案外人的执行异议申请已经被人民法院裁定驳回；

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

（二）有明确的排除对执行标的执行的诉讼请求，且诉讼请求与原判决、裁定无关；

（三）自执行异议裁定送达之日起十五日内提起。

人民法院应当在收到起诉状之日起十五日内决定是否立案。

法宝联想：　地方法规 1 篇　司法案例 1748 篇　期刊 2 篇　律所实务 1 篇　专题参考 1 篇

第三百零四条　申请执行人提起执行异议之诉，除符合民事诉讼法第一百二十二条规定外，还应当具备下列条件：

（一）依案外人执行异议申请，人民法院裁定中止执行；

（二）有明确的对执行标的继续执行的诉讼请求，且诉讼请求与原判决、裁定无关；

（三）自执行异议裁定送达之日起十五日内提起。

人民法院应当在收到起诉状之日起十五日内决定是否立案。

法宝联想：　地方法规 2 篇　司法案例 10429 篇

第三百零五条　案外人提起执行异议之诉的，以申请执行人为被告。被执行人反对案外人异议的，被执行人为共同被告；被执行人不反对案外人异议的，可以列被执行人为第三人。

法宝联想：　中央法规 1 篇　地方法规 4 篇　法律动态 1 篇　司法案例 16289 篇　案例报道 1 篇　律所实务 2 篇

第三百零六条　申请执行人提起执行异议之诉的，以案外人为被告。被执行人反对申请执行人主张的，以案外人和被执行人为共同被告；被执行人不反对申请执行人主张的，可以列被执行人为第三人。

法宝联想：　地方法规 4 篇　司法案例 6046 篇

第三百零七条　申请执行人对中止执行裁定未提起执行异议之诉，被执行人提起执行异议之诉的，人民法院告知其另行起诉。

法宝联想：　地方法规 3 篇　司法案例 10713 篇

第三百零八条　人民法院审理执行异议之诉案件，适用普通程序。

法宝联想：　地方法规 1 篇　司法案例 4705 篇

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

**第三百零九条**    案外人或者申请执行人提起执行异议之诉的，案外人应当就其对执行标的享有足以排除强制执行的民事权益承担举证证明责任。

法宝联想：    地方法规 1 篇  司法案例 3280 篇  期刊 1 篇

**第三百一十条**    对案外人提起的执行异议之诉，人民法院经审理，按照下列情形分别处理：

（一）案外人就执行标的享有足以排除强制执行的民事权益的，判决不得执行该执行标的；

（二）案外人就执行标的不享有足以排除强制执行的民事权益的，判决驳回诉讼请求。

案外人同时提出确认其权利的诉讼请求的，人民法院可以在判决中一并作出裁判。

法宝联想：    司法案例 11497 篇  律所实务 1 篇

**第三百一十一条**    对申请执行人提起的执行异议之诉，人民法院经审理，按照下列情形分别处理：

（一）案外人就执行标的不享有足以排除强制执行的民事权益的，判决准许执行该执行标的；

（二）案外人就执行标的享有足以排除强制执行的民事权益的，判决驳回诉讼请求。

法宝联想：    地方法规 1 篇  司法案例 62246 篇  案例报道 2 篇  律所实务 8 篇  专题参考 1 篇

**第三百一十二条**    对案外人执行异议之诉，人民法院判决不得对执行标的执行的，执行异议裁定失效。

对申请执行人执行异议之诉，人民法院判决准许对该执行标的的执行的，执行异议裁定失效，执行法院可以根据申请执行人的申请或者依职权恢复执行。

法宝联想：    中央法规 1 篇  地方法规 4 篇  法律动态 2 篇  司法案例 103382 篇  案例报道 2 篇  期刊 2 篇  律所实务 3 篇  专题参考 3 篇

**第三百一十三条**    案外人执行异议之诉审理期间，人民法院不得对执行标的进行处分。申请执行人请求人民法院继续执行并提供相应担保的，人民法院可以准许。

被执行人与案外人恶意串通，通过执行异议、执行异议之诉妨害执行的，人民法院应当依照 民事诉讼法第一百一十六条规定处理。申请执行人因此受到损害的，可以提起诉讼要求被执行人、案外人赔偿。

                                                        下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想：    地方法规 3 篇  司法案例 34383 篇  案例报道 1 篇  专题参考 1 篇

**第三百一十四条**    人民法院对执行标的裁定中止执行后，申请执行人在法律规定的期间内未提起执行异议之诉的，人民法院应当自起诉期限届满之日起七日内解除对该执行标的采取的执行措施。

法宝联想：    司法案例 6125 篇

## 十六、第二审程序

**第三百一十五条**    双方当事人和第三人都提起上诉的，均列为上诉人。人民法院可以依职权确定第二审程序中当事人的诉讼地位。

法宝联想：    地方法规 1 篇  司法案例 1953 篇  律所实务 1 篇

**第三百一十六条**    民事诉讼法第一百七十三条、第一百七十四条规定的对方当事人包括被上诉人和原审其他当事人。

法宝联想：    司法案例 2626 篇  专题参考 1 篇

**第三百一十七条**    必要共同诉讼人的一人或者部分人提起上诉的，按下列情形分别处理：

（一）上诉仅对与对方当事人之间权利义务分担有意见，不涉及其他共同诉讼人利益的，对方当事人为被上诉人，未上诉的同一方当事人依原审诉讼地位列明；

（二）上诉仅对共同诉讼人之间权利义务分担有意见，不涉及对方当事人利益的，未上诉的同一方当事人为被上诉人，对方当事人依原审诉讼地位列明；

（三）上诉对双方当事人之间以及共同诉讼人之间权利义务承担有意见的，未提起上诉的其他当事人均为被上诉人。

法宝联想：    司法案例 232 篇

**第三百一十八条**    一审宣判时或者判决书、裁定书送达时，当事人口头表示上诉的，人民法院应告知其必须在法定上诉期间内递交上诉状。未在法定上诉期间内递交上诉状的，视为未提起上诉。虽递交上诉状，但未在指定的期限内交纳上诉费的，按自动撤回上诉处理。

法宝联想：    司法案例 23128 篇

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

**第三百一十九条**　无民事行为能力人、限制民事行为能力人的法定代理人，可以代理当事人提起上诉。

法宝联想：　司法案例 129 篇

**第三百二十条**　上诉案件的当事人死亡或者终止的，人民法院依法通知其权利义务承继者参加诉讼。

需要终结诉讼的，适用民事诉讼法第一百五十四条规定。

法宝联想：　司法案例 242677 篇　专题参考 1 篇

**第三百二十一条**　第二审人民法院应当围绕当事人的上诉请求进行审理。

当事人没有提出请求的，不予审理，但一审判决违反法律禁止性规定，或者损害国家利益、社会公共利益、他人合法权益的除外。

法宝联想：　司法案例 14476 篇

**第三百二十二条**　开庭审理的上诉案件，第二审人民法院可以依照民事诉讼法第一百三十六条第四项规定进行审理前的准备。

法宝联想：　司法案例 1003 篇　期刊 1 篇

**第三百二十三条**　下列情形，可以认定为民事诉讼法第一百七十七条第一款第四项规定的严重违反法定程序：

（一）审判组织的组成不合法的；

（二）应当回避的审判人员未回避的；

（三）无诉讼行为能力人未经法定代理人代为诉讼的；

（四）违法剥夺当事人辩论权利的。

法宝联想：　司法案例 115321 篇　案例报道 1 篇　期刊 8 篇　专题参考 2 篇

**第三百二十四条**　对当事人在第一审程序中已经提出的诉讼请求，原审人民法院未作审理、判决的，第二审人民法院可以根据当事人自愿的原则进行调解；调解不成的，发回重审。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想：　　司法案例 222 篇

第三百二十五条　　必须参加诉讼的当事人或者有独立请求权的第三人，在第一审程序中未参加诉讼，第二审人民法院可以根据当事人自愿的原则予以调解；调解不成的，发回重审。

法宝联想：　　司法案例 6518 篇　期刊 1 篇

第三百二十六条　　在第二审程序中，原审原告增加独立的诉讼请求或者原审被告提出反诉的，第二审人民法院可以根据当事人自愿的原则就新增加的诉讼请求或者反诉进行调解；调解不成的，告知当事人另行起诉。

双方当事人同意由第二审人民法院一并审理的，第二审人民法院可以一并裁判。

法宝联想：　　司法案例 3799 篇

第三百二十七条　　一审判决不准离婚的案件，上诉后，第二审人民法院认为应当判决离婚的，可以根据当事人自愿的原则，与子女抚养、财产问题一并调解；调解不成的，发回重审。

双方当事人同意由第二审人民法院一并审理的，第二审人民法院可以一并裁判。

法宝联想：　　司法案例 2326 篇

第三百二十八条　　人民法院依照第二审程序审理案件，认为依法不应由人民法院受理的，可以由第二审人民法院直接裁定撤销原裁判，驳回起诉。

法宝联想：　　中央法规 1 篇　地方法规 1 篇　司法案例 15586 篇　期刊 2 篇　律所实务 3 篇　专题参考 1 篇

第三百二十九条　　人民法院依照第二审程序审理案件，认为第一审人民法院受理案件违反专属管辖规定的，应当裁定撤销原裁判并移送有管辖权的人民法院。

法宝联想：　　司法案例 386 篇

第三百三十条　　第二审人民法院查明第一审人民法院作出的不予受理裁定有错误的，应当在撤销原裁定的同时，指令第一审人民法院立案受理；查明第一审人民法院作出的驳回起诉裁定有错误的，应当在撤销原裁定的同时，指令第一审人民法院审理。

法宝联想：　　地方法规 1 篇　司法案例 36678 篇　案例报道 1 篇　期刊 1 篇　律所实务 2 篇

【法宝引证码】CLI.3.5115567

第三百三十一条　第二审人民法院对下列上诉案件，依照民事诉讼法第一百七十六条规定可以不开庭审理：

（一）不服不予受理、管辖权异议和驳回起诉裁定的；

（二）当事人提出的上诉请求明显不能成立的；

（三）原判决、裁定认定事实清楚，但适用法律错误的；

（四）原判决严重违反法定程序，需要发回重审的。

法宝联想：　司法案例 2053 篇

第三百三十二条　原判决、裁定认定事实或者适用法律虽有瑕疵，但裁判结果正确的，第二审人民法院可以在判决、裁定中纠正瑕疵后，依照民事诉讼法第一百七十七条第一款第一项规定予以维持。

法宝联想：　司法案例 87565 篇　期刊 1 篇　律所实务 1 篇　专题参考 2 篇

第三百三十三条　民事诉讼法第一百七十七条第一款第三项规定的基本事实，是指用以确定当事人主体资格、案件性质、民事权利义务等对原判决、裁定的结果有实质性影响的事实。

法宝联想：　司法案例 22229 篇　案例报道 1 篇　期刊 1 篇　专题参考 2 篇

第三百三十四条　在第二审程序中，作为当事人的法人或者其他组织分立的，人民法院可以直接将分立后的法人或者其他组织列为共同诉讼人；合并的，将合并后的法人或者其他组织列为当事人。

法宝联想：　中央法规 1 篇　司法案例 53750 篇　期刊 2 篇　律所实务 2 篇

第三百三十五条　在第二审程序中，当事人申请撤回上诉，人民法院经审查认为一审判决确有错误，或者当事人之间恶意串通损害国家利益、社会公共利益、他人合法权益的，不应准许。

法宝联想：　司法案例 1452 篇　期刊 1 篇　专题参考 1 篇

第三百三十六条　在第二审程序中，原审原告申请撤回起诉，经其他当事人同意，且不损害国家利益、社会公共利益、他人合法权益的，人民法院可以准许。准许撤诉的，应当一并裁定撤销一审裁判。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

原审原告在第二审程序中撤回起诉后重复起诉的，人民法院不予受理。

法宝联想：    司法案例 4788 篇

第三百三十七条    当事人在第二审程序中达成和解协议的，人民法院可以根据当事人的请求，对双方达成的和解协议进行审查并制作调解书送达当事人；因和解而申请撤诉，经审查符合撤诉条件的，人民法院应予准许。

法宝联想：    司法案例 672 篇  律所实务 1 篇

第三百三十八条    第二审人民法院宣告判决可以自行宣判，也可以委托原审人民法院或者当事人所在地人民法院代行宣判。

法宝联想：    司法案例 59165 篇  案例报道 1 篇

第三百三十九条    人民法院审理对裁定的上诉案件，应当在第二审立案之日起三十日内作出终审裁定。有特殊情况需要延长审限的，由本院院长批准。

法宝联想：    司法案例 3640 篇

第三百四十条    当事人在第一审程序中实施的诉讼行为，在第二审程序中对该当事人仍具有拘束力。

当事人推翻其在第一审程序中实施的诉讼行为时，人民法院应当责令其说明理由。理由不成立的，不予支持。

法宝联想：    司法案例 147 篇

## 十七、特别程序

第三百四十一条    宣告失踪或者宣告死亡案件，人民法院可以根据申请人的请求，清理下落不明人的财产，并指定案件审理期间的财产管理人。公告期满后，人民法院判决宣告失踪的，应当同时依照民法典第四十二条的规定指定失踪人的财产代管人。

法宝联想：    司法案例 104 篇

【法宝引证码】CLI.3.5115567

第三百四十二条　失踪人的财产代管人经人民法院指定后，代管人申请变更代管的，比照民事诉讼法特别程序的有关规定进行审理。申请理由成立的，裁定撤销申请人的代管人身份，同时另行指定财产代管人；申请理由不成立的，裁定驳回申请。

失踪人的其他利害关系人申请变更代管的，人民法院应当告知其以原指定的代管人为被告起诉，并按普通程序进行审理。

法宝联想：　司法案例 2346 篇　期刊 1 篇　律所实务 1 篇

第三百四十三条　人民法院判决宣告公民失踪后，利害关系人向人民法院申请宣告失踪人死亡，自失踪之日起满四年的，人民法院应当受理，宣告失踪的判决即是该公民失踪的证明，审理中仍应依照民事诉讼法第一百九十二条规定进行公告。

法宝联想：　司法案例 5365 篇

第三百四十四条　符合法律规定的多个利害关系人提出宣告失踪、宣告死亡申请的，列为共同申请人。

法宝联想：　司法案例 54 篇

第三百四十五条　寻找下落不明人的公告应当记载下列内容：

（一）被申请人应当在规定期间内向受理法院申报其具体地址及其联系方式。否则，被申请人将被宣告失踪、宣告死亡；

（二）凡知悉被申请人生存现状的人，应当在公告期间内将其所知道情况向受理法院报告。

法宝联想：　司法案例 87 篇

第三百四十六条　人民法院受理宣告失踪、宣告死亡案件后，作出判决前，申请人撤回申请的，人民法院应当裁定终结案件，但其他符合法律规定的利害关系人加入程序要求继续审理的除外。

法宝联想：　司法案例 87 篇

第三百四十七条　在诉讼中，当事人的利害关系人或者有关组织提出该当事人不能辨认或者不能完全辨认自己的行为，要求宣告该当事人无民事行为能力或者限制民事行为能力的，应由利害关系人

或者有关组织向人民法院提出申请，由受诉人民法院按照特别程序立案审理，原诉讼中止。

法宝联想： 司法案例 66 篇

第三百四十八条 认定财产无主案件，公告期间有人对财产提出请求的，人民法院应当裁定终结特别程序，告知申请人另行起诉，适用普通程序审理。

法宝联想： 司法案例 2148 篇

第三百四十九条 被指定的监护人不服居民委员会、村民委员会或者民政部门指定，应当自接到通知之日起三十日内向人民法院提出异议。经审理，认为指定并无不当的，裁定驳回异议；指定不当的，判决撤销指定，同时另行指定监护人。判决书应当送达异议人、原指定单位及判决指定的监护人。

有关当事人依照民法典第三十一条第一款规定直接向人民法院申请指定监护人的，适用特别程序审理，判决指定监护人。判决书应当送达申请人、判决指定的监护人。

法宝联想： 司法案例 228 篇 期刊 1 篇

第三百五十条 申请认定公民无民事行为能力或者限制民事行为能力的案件，被申请人没有近亲属的，人民法院可以指定经被申请人住所地的居民委员会、村民委员会或者民政部门同意，且愿意担任代理人的个人或者组织为代理人。

没有前款规定的代理人的，由被申请人住所地的居民委员会、村民委员会或者民政部门担任代理人。

代理人可以是一人，也可以是同一顺序中的两人。

法宝联想： 司法案例 100 篇

第三百五十一条 申请司法确认调解协议的，双方当事人应当本人或者由符合民事诉讼法第六十一条规定的代理人依照民事诉讼法第二百零一条的规定提出申请。

法宝联想： 司法案例 976 篇

第三百五十二条 调解组织自行开展的调解，有两个以上调解组织参与的，符合民事诉讼法第二

下载日期：2023-08-13

百零一条规定的各调解组织所在地人民法院均有管辖权。

双方当事人可以共同向符合民事诉讼法第二百零一条规定的其中一个有管辖权的人民法院提出申请；双方当事人共同向两个以上有管辖权的人民法院提出申请的，由最先立案的人民法院管辖。

法宝联想： 司法案例 368 篇

**第三百五十三条** 当事人申请司法确认调解协议，可以采用书面形式或者口头形式。当事人口头申请的，人民法院应当记入笔录，并由当事人签名、捺印或者盖章。

法宝联想： 司法案例 85 篇

**第三百五十四条** 当事人申请司法确认调解协议，应当向人民法院提交调解协议、调解组织主持调解的证明，以及与调解协议相关的财产权利证明等材料，并提供双方当事人的身份、住所、联系方式等基本信息。

当事人未提交上述材料的，人民法院应当要求当事人限期补交。

法宝联想： 司法案例 2 篇 期刊 1 篇

**第三百五十五条** 当事人申请司法确认调解协议，有下列情形之一的，人民法院裁定不予受理：

（一）不属于人民法院受理范围的；

（二）不属于收到申请的人民法院管辖的；

（三）申请确认婚姻关系、亲子关系、收养关系等身份关系无效、有效或者解除的；

（四）涉及适用其他特别程序、公示催告程序、破产程序审理的；

（五）调解协议内容涉及物权、知识产权确权的。

人民法院受理申请后，发现有上述不予受理情形的，应当裁定驳回当事人的申请。

法宝联想： 司法案例 14 篇

**第三百五十六条** 人民法院审查相关情况时，应当通知双方当事人共同到场对案件进行核实。

人民法院经审查，认为当事人的陈述或者提供的证明材料不充分、不完备或者有疑义的，可以要求当事人限期补充陈述或者补充证明材料。必要时，人民法院可以向调解组织核实有关情况。

法宝联想： 司法案例 25 篇 期刊 1 篇

【法宝引证码】CLI.3.5115567

**第三百五十七条**　确认调解协议的裁定作出前，当事人撤回申请的，人民法院可以裁定准许。

当事人无正当理由未在限期内补充陈述、补充证明材料或者拒不接受询问的，人民法院可以按撤回申请处理。

法宝联想：　中央法规 1 篇　司法案例 918 篇　期刊 1 篇

**第三百五十八条**　经审查，调解协议有下列情形之一的，人民法院应当裁定驳回申请：

（一）违反法律强制性规定的；

（二）损害国家利益、社会公共利益、他人合法权益的；

（三）违背公序良俗的；

（四）违反自愿原则的；

（五）内容不明确的；

（六）其他不能进行司法确认的情形。

法宝联想：　中央法规 1 篇　司法案例 66 篇　期刊 1 篇

**第三百五十九条**　民事诉讼法第二百零三条规定的担保物权人，包括抵押权人、质权人、留置权人；其他有权请求实现担保物权的人，包括抵押人、出质人、财产被留置的债务人或者所有权人等。

法宝联想：　司法案例 2877 篇　期刊 2 篇

**第三百六十条**　实现票据、仓单、提单等有权利凭证的权利质权案件，可以由权利凭证持有人住所地人民法院管辖；无权利凭证的权利质权，由出质登记地人民法院管辖。

法宝联想：　中央法规 2 篇　司法案例 1133 篇　期刊 1 篇

**第三百六十一条**　实现担保物权案件属于海事法院等专门人民法院管辖的，由专门人民法院管辖。

法宝联想：　司法案例 239 篇　律所实务 1 篇　专题参考 2 篇

**第三百六十二条**　同一债权的担保物有多个且所在地不同，申请人分别向有管辖权的人民法院申请实现担保物权的，人民法院应当依法受理。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想：　司法案例 22 篇　专题参考 1 篇

**第三百六十三条**　依照民法典第三百九十二条的规定，被担保的债权既有物的担保又有人的担保，当事人对实现担保物权的顺序有约定，实现担保物权的申请违反该约定的，人民法院裁定不予受理；没有约定或者约定不明的，人民法院应当受理。

法宝联想：　司法案例 23 篇　专题参考 1 篇

**第三百六十四条**　同一财产上设立多个担保物权，登记在先的担保物权尚未实现的，不影响后顺位的担保物权人向人民法院申请实现担保物权。

法宝联想：　司法案例 13 篇　专题参考 1 篇

**第三百六十五条**　申请实现担保物权，应当提交下列材料：

（一）申请书。申请书应当记明申请人、被申请人的姓名或者名称、联系方式等基本信息，具体的请求和事实、理由；

（二）证明担保物权存在的材料，包括主合同、担保合同、抵押登记证明或者他项权利证书，权利质权的权利凭证或者质权出质登记证明等；

（三）证明实现担保物权条件成就的材料；

（四）担保财产现状的说明；

（五）人民法院认为需要提交的其他材料。

法宝联想：　司法案例 51 篇　专题参考 1 篇

**第三百六十六条**　人民法院受理申请后，应当在五日内向被申请人送达申请书副本、异议权利告知书等文书。

被申请人有异议的，应当在收到人民法院通知后的五日内向人民法院提出，同时说明理由并提供相应的证据材料。

法宝联想：　司法案例 121 篇　专题参考 1 篇

**第三百六十七条**　实现担保物权案件可以由审判员一人独任审查。担保财产标的额超过基层人民

【法宝引证码】CLI.3.5115567

法院管辖范围的，应当组成合议庭进行审查。

**法宝联想：**　司法案例 248 篇　专题参考 1 篇

第三百六十八条　人民法院审查实现担保物权案件，可以询问申请人、被申请人、利害关系人，必要时可以依职权调查相关事实。

**法宝联想：**　司法案例 169 篇

第三百六十九条　人民法院应当就主合同的效力、期限、履行情况，担保物权是否有效设立、担保财产的范围、被担保的债权范围、被担保的债权是否已届清偿期等担保物权实现的条件，以及是否损害他人合法权益等内容进行审查。

被申请人或者利害关系人提出异议的，人民法院应当一并审查。

**法宝联想：**　司法案例 409 篇

第三百七十条　人民法院审查后，按下列情形分别处理：

（一）当事人对实现担保物权无实质性争议且实现担保物权条件成就的，裁定准许拍卖、变卖担保财产；

（二）当事人对实现担保物权有部分实质性争议的，可以就无争议部分裁定准许拍卖、变卖担保财产；

（三）当事人对实现担保物权有实质性争议的，裁定驳回申请，并告知申请人向人民法院提起诉讼。

**法宝联想：**　司法案例 943 篇　期刊 1 篇

第三百七十一条　人民法院受理申请后，申请人对担保财产提出保全申请的，可以按照 民事诉讼法 关于诉讼保全的规定办理。

**法宝联想：**　司法案例 1310 篇　专题参考 1 篇

第三百七十二条　适用特别程序作出的判决、裁定，当事人、利害关系人认为有错误的，可以向作出该判决、裁定的人民法院提出异议。人民法院经审查，异议成立或者部分成立的，作出新的判决

下载日期：2023-08-13

、裁定撤销或者改变原判决、裁定；异议不成立的，裁定驳回。

对人民法院作出的确认调解协议、准许实现担保物权的裁定，当事人有异议的，应当自收到裁定之日起十五日内提出；利害关系人有异议的，自知道或者应当知道其民事权益受到侵害之日起六个月内提出。

法宝联想：　法律动态 1 篇　司法案例 15182 篇　期刊 3 篇　律所实务 1 篇　专题参考 2 篇

## 十八、审判监督程序

**第三百七十三条**　当事人死亡或者终止的，其权利义务承继者可以根据民事诉讼法第二百零六条、第二百零八条的规定申请再审。

判决、调解书生效后，当事人将判决、调解书确认的债权转让，债权受让人对该判决、调解书不服申请再审的，人民法院不予受理。

法宝联想：　司法案例 26 篇　律所实务 1 篇

**第三百七十四条**　民事诉讼法第二百零六条规定的人数众多的一方当事人，包括公民、法人和其他组织。

民事诉讼法第二百零六条规定的当事人双方为公民的案件，是指原告和被告均为公民的案件。

法宝联想：　地方法规 1 篇　司法案例 2121 篇　期刊 3 篇　律所实务 1 篇

**第三百七十五条**　当事人申请再审，应当提交下列材料：

（一）再审申请书，并按照被申请人和原审其他当事人的人数提交副本；

（二）再审申请人是自然人的，应当提交身份证明；再审申请人是法人或者其他组织的，应当提交营业执照、组织机构代码证书、法定代表人或者主要负责人身份证明书。委托他人代为申请的，应当提交授权委托书和代理人身份证明；

（三）原审判决书、裁定书、调解书；

（四）反映案件基本事实的主要证据及其他材料。

前款第二项、第三项、第四项规定的材料可以是与原件核对无异的复印件。

法宝联想：　司法案例 207 篇

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

第三百七十六条　再审申请书应当记明下列事项：

（一）再审申请人与被申请人及原审其他当事人的基本信息；

（二）原审人民法院的名称，原审裁判文书案号；

（三）具体的再审请求；

（四）申请再审的法定情形及具体事实、理由。

再审申请书应当明确申请再审的人民法院，并由再审申请人签名、捺印或者盖章。

法宝联想：　司法案例 85 篇

第三百七十七条　当事人一方人数众多或者当事人双方为公民的案件，当事人分别向原审人民法院和上一级人民法院申请再审且不能协商一致的，由原审人民法院受理。

法宝联想：　司法案例 59 篇

第三百七十八条　适用特别程序、督促程序、公示催告程序、破产程序等非讼程序审理的案件，当事人不得申请再审。

法宝联想：　司法案例 136 篇

第三百七十九条　当事人认为发生法律效力的不予受理、驳回起诉的裁定错误的，可以申请再审。

法宝联想：　司法案例 103 篇　期刊 1 篇

第三百八十条　当事人就离婚案件中的财产分割问题申请再审，如涉及判决中已分割的财产，人民法院应当依照民事诉讼法第二百零七条的规定进行审查，符合再审条件的，应当裁定再审；如涉及判决中未作处理的夫妻共同财产，应当告知当事人另行起诉。

法宝联想：　司法案例 273 篇　专题参考 1 篇

第三百八十一条　当事人申请再审，有下列情形之一的，人民法院不予受理：

（一）再审申请被驳回后再次提出申请的；

（二）对再审判决、裁定提出申请的；

下载日期：2023-08-13

（三）在人民检察院对当事人的申请作出不予提出再审检察建议或者抗诉决定后又提出申请的。

前款第一项、第二项规定情形，人民法院应当告知当事人可以向人民检察院申请再审检察建议或者抗诉，但因人民检察院提出再审检察建议或者抗诉而再审作出的判决、裁定除外。

法宝联想：　中央法规 1 篇　地方法规 1 篇　法规解读 1 篇　司法案例 1227 篇　案例报道 1 篇　期刊 1 篇　律所实务 3 篇　专题参考 1 篇

**第三百八十二条**　当事人对已经发生法律效力的调解书申请再审，应当在调解书发生法律效力后六个月内提出。

法宝联想：　司法案例 471 篇

**第三百八十三条**　人民法院应当自收到符合条件的再审申请书等材料之日起五日内向再审申请人发送受理通知书，并向被申请人及原审其他当事人发送应诉通知书、再审申请书副本等材料。

法宝联想：　司法案例 2476 篇　期刊 1 篇　律所实务 2 篇

**第三百八十四条**　人民法院受理申请再审案件后，应当依照民事诉讼法第二百零七条、第二百零八条、第二百一十一条等规定，对当事人主张的再审事由进行审查。

法宝联想：　司法案例 4230 篇

**第三百八十五条**　再审申请人提供的新的证据，能够证明原判决、裁定认定基本事实或者裁判结果错误的，应当认定为民事诉讼法第二百零七条第一项规定的情形。

对于符合前款规定的证据，人民法院应当责令再审申请人说明其逾期提供该证据的理由；拒不说明理由或者理由不成立的，依照民事诉讼法第六十八条第二款和本解释第一百零二条的规定处理。

法宝联想：　司法案例 306 篇　专题参考 1 篇

**第三百八十六条**　再审申请人证明其提交的新的证据符合下列情形之一的，可以认定逾期提供证据的理由成立：

（一）在原审庭审结束前已经存在，因客观原因于庭审结束后才发现的；

（二）在原审庭审结束前已经发现，但因客观原因无法取得或者在规定的期限内不能提供的；

（三）在原审庭审结束后形成，无法据此另行提起诉讼的。

下载日期：2023-08-13

再审申请人提交的证据在原审中已经提供，原审人民法院未组织质证且未作为裁判根据的，视为逾期提供证据的理由成立，但原审人民法院依照民事诉讼法第六十八条规定不予采纳的除外。

法宝联想：　司法案例 10797 篇　期刊 1 篇

**第三百八十七条**　当事人对原判决、裁定认定事实的主要证据在原审中拒绝发表质证意见或者质证中未对证据发表质证意见的，不属于民事诉讼法第二百零七条第四项规定的未经质证的情形。

法宝联想：　司法案例 4942 篇　期刊 1 篇　专题参考 4 篇

**第三百八十八条**　有下列情形之一，导致判决、裁定结果错误的，应当认定为民事诉讼法第二百零七条第六项规定的原判决、裁定适用法律确有错误：

（一）适用的法律与案件性质明显不符的；

（二）确定民事责任明显违背当事人约定或者法律规定的；

（三）适用已经失效或者尚未施行的法律的；

（四）违反法律溯及力规定的；

（五）违反法律适用规则的；

（六）明显违背立法原意的。

法宝联想：　司法案例 9188 篇　律所实务 1 篇　专题参考 4 篇

**第三百八十九条**　原审开庭过程中有下列情形之一的，应当认定为民事诉讼法第二百零七条第九项规定的剥夺当事人辩论权利：

（一）不允许当事人发表辩论意见的；

（二）应当开庭审理而未开庭审理的；

（三）违反法律规定送达起诉状副本或者上诉状副本，致使当事人无法行使辩论权利的；

（四）违法剥夺当事人辩论权利的其他情形。

法宝联想：　司法案例 231 篇

**第三百九十条**　民事诉讼法第二百零七条第十一项规定的诉讼请求，包括一审诉讼请求、二审上

【法宝引证码】CLI.3.5115567

诉请求，但当事人未对一审判决、裁定遗漏或者超出诉讼请求提起上诉的除外。

法宝联想：   司法案例 8127 篇   专题参考 2 篇

**第三百九十一条**    民事诉讼法第二百零七条第十二项规定的法律文书包括：

（一）发生法律效力的判决书、裁定书、调解书；

（二）发生法律效力的仲裁裁决书；

（三）具有强制执行效力的公证债权文书。

法宝联想：   司法案例 1744 篇   律所实务 2 篇   专题参考 1 篇

**第三百九十二条**    民事诉讼法第二百零七条第十三项规定的审判人员审理该案件时有贪污受贿、徇私舞弊、枉法裁判行为，是指已经由生效刑事法律文书或者纪律处分决定所确认的行为。

法宝联想：   司法案例 677 篇

**第三百九十三条**    当事人主张的再审事由成立，且符合民事诉讼法和本解释规定的申请再审条件的，人民法院应当裁定再审。

当事人主张的再审事由不成立，或者当事人申请再审超过法定申请再审期限、超出法定再审事由范围等不符合民事诉讼法和本解释规定的申请再审条件的，人民法院应当裁定驳回再审申请。

法宝联想：   司法案例 33561 篇   律所实务 1 篇

**第三百九十四条**    人民法院对已经发生法律效力的判决、裁定、调解书依法决定再审，依照 民事诉讼法第二百一十三条规定，需要中止执行的，应当在再审裁定中同时写明中止原判决、裁定、调解书的执行；情况紧急的，可以将中止执行裁定口头通知负责执行的人民法院，并在通知后十日内发出裁定书。

法宝联想：   司法案例 2405 篇   专题参考 1 篇

**第三百九十五条**    人民法院根据审查案件的需要决定是否询问当事人。新的证据可能推翻原判决、裁定的，人民法院应当询问当事人。

法宝联想：   司法案例 702616 篇   律所实务 4 篇   专题参考 4 篇

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

第三百九十六条　审查再审申请期间，被申请人及原审其他当事人依法提出再审申请的，人民法院应当将其列为再审申请人，对其再审事由一并审查，审查期限重新计算。经审查，其中一方再审申请人主张的再审事由成立的，应当裁定再审。各方再审申请人主张的再审事由均不成立的，一并裁定驳回再审申请。

法宝联想：　司法案例 924 篇

第三百九十七条　审查再审申请期间，再审申请人申请人民法院委托鉴定、勘验的，人民法院不予准许。

法宝联想：　司法案例 1751 篇

第三百九十八条　审查再审申请期间，再审申请人撤回再审申请的，是否准许，由人民法院裁定。

再审申请人经传票传唤，无正当理由拒不接受询问的，可以按撤回再审申请处理。

法宝联想：　司法案例 2213 篇　专题参考 1 篇

第三百九十九条　人民法院准许撤回再审申请或者按撤回再审申请处理后，再审申请人再次申请再审的，不予受理，但有民事诉讼法第二百零七条第一项、第三项、第十二项、第十三项规定情形，自知道或者应当知道之日起六个月内提出的除外。

法宝联想：　司法案例 3822 篇　期刊 2 篇　专题参考 1 篇

第四百条　再审申请审查期间，有下列情形之一的，裁定终结审查：

（一）再审申请人死亡或者终止，无权利义务承继者或者权利义务承继者声明放弃再审申请的；

（二）在给付之诉中，负有给付义务的被申请人死亡或者终止，无可供执行的财产，也没有应当承担义务的人的；

（三）当事人达成和解协议且已履行完毕的，但当事人在和解协议中声明不放弃申请再审权利的除外；

（四）他人未经授权以当事人名义申请再审的；

（五）原审或者上一级人民法院已经裁定再审的；

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

（六）有本解释第三百八十一条第一款规定情形的。

法宝联想：　司法案例 46938 篇

**第四百零一条**　人民法院审理再审案件应当组成合议庭开庭审理，但按照第二审程序审理，有特殊情况或者双方当事人已经通过其他方式充分表达意见，且书面同意不开庭审理的除外。

符合缺席判决条件的，可以缺席判决。

法宝联想：　司法案例 509 篇

**第四百零二条**　人民法院开庭审理再审案件，应当按照下列情形分别进行：

（一）因当事人申请再审的，先由再审申请人陈述再审请求及理由，后由被申请人答辩、其他原审当事人发表意见；

（二）因抗诉再审的，先由抗诉机关宣读抗诉书，再由申请抗诉的当事人陈述，后由被申请人答辩、其他原审当事人发表意见；

（三）人民法院依职权再审，有申诉人的，先由申诉人陈述再审请求及理由，后由被申诉人答辩、其他原审当事人发表意见；

（四）人民法院依职权再审，没有申诉人的，先由原审原告或者原审上诉人陈述，后由原审其他当事人发表意见。

对前款第一项至第三项规定的情形，人民法院应当要求当事人明确其再审请求。

法宝联想：　司法案例 5791 篇　律所实务 1 篇　专题参考 2 篇

**第四百零三条**　人民法院审理再审案件应当围绕再审请求进行。当事人的再审请求超出原审诉讼请求的，不予审理；符合另案诉讼条件的，告知当事人可以另行起诉。

被申请人及原审其他当事人在庭审辩论结束前提出的再审请求，符合民事诉讼法第二百一十二条规定的，人民法院应当一并审理。

人民法院经再审，发现已经发生法律效力的判决、裁定损害国家利益、社会公共利益、他人合法权益的，应当一并审理。

法宝联想：　司法案例 1983 篇

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

**第四百零四条**　再审审理期间，有下列情形之一的，可以裁定终结再审程序：

（一）再审申请人在再审期间撤回再审请求，人民法院准许的；

（二）再审申请人经传票传唤，无正当理由拒不到庭的，或者未经法庭许可中途退庭，按撤回再审请求处理的；

（三）人民检察院撤回抗诉的；

（四）有本解释第四百条第一项至第四项规定情形的。

因人民检察院提出抗诉裁定再审的案件，申请抗诉的当事人有前款规定的情形，且不损害国家利益、社会公共利益或者他人合法权益的，人民法院应当裁定终结再审程序。

再审程序终结后，人民法院裁定中止执行的原生效判决自动恢复执行。

法宝联想：　司法案例 336 篇　期刊 2 篇

**第四百零五条**　人民法院经再审审理认为，原判决、裁定认定事实清楚、适用法律正确的，应予维持；原判决、裁定认定事实、适用法律虽有瑕疵，但裁判结果正确的，应当在再审判决、裁定中纠正瑕疵后予以维持。

原判决、裁定认定事实、适用法律错误，导致裁判结果错误的，应当依法改判、撤销或者变更。

法宝联想：　司法案例 6894 篇　期刊 1 篇

**第四百零六条**　按照第二审程序再审的案件，人民法院经审理认为不符合民事诉讼法规定的起诉条件或者符合民事诉讼法第一百二十七条规定不予受理情形的，应当裁定撤销一、二审判决，驳回起诉。

法宝联想：　司法案例 5330 篇　律所实务 1 篇

**第四百零七条**　人民法院对调解书裁定再审后，按照下列情形分别处理：

（一）当事人提出的调解违反自愿原则的事由不成立，且调解书的内容不违反法律强制性规定的，裁定驳回再审申请；

（二）人民检察院抗诉或者再审检察建议所主张的损害国家利益、社会公共利益的理由不成立的，裁定终结再审程序。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

前款规定情形，人民法院裁定中止执行的调解书需要继续执行的，自动恢复执行。

法宝联想：　司法案例 47507 篇　期刊 1 篇　专题参考 2 篇

　　**第四百零八条**　一审原告在再审审理程序中申请撤回起诉，经其他当事人同意，且不损害国家利益、社会公共利益、他人合法权益的，人民法院可以准许。裁定准许撤诉的，应当一并撤销原判决。

　　一审原告在再审审理程序中撤回起诉后重复起诉的，人民法院不予受理。

法宝联想：　中央法规 1 篇　司法案例 2386 篇　律所实务 1 篇

　　**第四百零九条**　当事人提交新的证据致使再审改判，因再审申请人或者申请检察监督当事人的过错未能在原审程序中及时举证，被申请人等当事人请求补偿其增加的交通、住宿、就餐、误工等必要费用的，人民法院应予支持。

法宝联想：　司法案例 1504 篇

　　**第四百一十条**　部分当事人到庭并达成调解协议，其他当事人未作出书面表示的，人民法院应当在判决中对该事实作出表述；调解协议内容不违反法律规定，且不损害其他当事人合法权益的，可以在判决主文中予以确认。

法宝联想：　司法案例 6717 篇

　　**第四百一十一条**　人民检察院依法对损害国家利益、社会公共利益的发生法律效力的判决、裁定、调解书提出抗诉，或者经人民检察院检察委员会讨论决定提出再审检察建议的，人民法院应予受理。

法宝联想：　司法案例 33 篇

　　**第四百一十二条**　人民检察院对已经发生法律效力的判决以及不予受理、驳回起诉的裁定依法提出抗诉的，人民法院应予受理，但适用特别程序、督促程序、公示催告程序、破产程序以及解除婚姻关系的判决、裁定等不适用审判监督程序的判决、裁定除外。

法宝联想：　司法案例 248 篇　律所实务 1 篇

　　**第四百一十三条**　人民检察院依照民事诉讼法第二百一十六条第一款第三项规定对有明显错误的

【法宝引证码】CLI.3.5115567

再审判决、裁定提出抗诉或者再审检察建议的，人民法院应予受理。

法宝联想：　中央法规 1 篇　司法案例 202 篇

　　**第四百一十四条**　地方各级人民检察院依当事人的申请对生效判决、裁定向同级人民法院提出再审检察建议，符合下列条件的，应予受理：

　　（一）再审检察建议书和原审当事人申请书及相关证据材料已经提交；

　　（二）建议再审的对象为依照民事诉讼法和本解释规定可以进行再审的判决、裁定；

　　（三）再审检察建议书列明该判决、裁定有民事诉讼法第二百一十五条第二款规定情形；

　　（四）符合民事诉讼法第二百一十六条第一款第一项、第二项规定情形；

　　（五）再审检察建议经该人民检察院检察委员会讨论决定。

　　不符合前款规定的，人民法院可以建议人民检察院予以补正或者撤回；不予补正或者撤回的，应当函告人民检察院不予受理。

法宝联想：　中央法规 1 篇　法律动态 1 篇　司法案例 52 篇　案例报道 1 篇　期刊 1 篇　律所实务 1 篇　专题参考 2 篇

　　**第四百一十五条**　人民检察院依当事人的申请对生效判决、裁定提出抗诉，符合下列条件的，人民法院应当在三十日内裁定再审：

　　（一）抗诉书和原审当事人申请书及相关证据材料已经提交；

　　（二）抗诉对象为依照民事诉讼法和本解释规定可以进行再审的判决、裁定；

　　（三）抗诉书列明该判决、裁定有民事诉讼法第二百一十五条第一款规定情形；

　　（四）符合民事诉讼法第二百一十六条第一款第一项、第二项规定情形。

　　不符合前款规定的，人民法院可以建议人民检察院予以补正或者撤回；不予补正或者撤回的，人民法院可以裁定不予受理。

法宝联想：　司法案例 49 篇

　　**第四百一十六条**　当事人的再审申请被上级人民法院裁定驳回后，人民检察院对原判决、裁定、调解书提出抗诉，抗诉事由符合民事诉讼法第二百零七条第一项至第五项规定情形之一的，受理抗诉的人民法院可以交由下一级人民法院再审。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想：　司法案例 80 篇

**第四百一十七条**　人民法院收到再审检察建议后，应当组成合议庭，在三个月内进行审查，发现原判决、裁定、调解书确有错误，需要再审的，依照民事诉讼法第二百零五条规定裁定再审，并通知当事人；经审查，决定不予再审的，应当书面回复人民检察院。

法宝联想：　司法案例 263 篇　专题参考 1 篇

**第四百一十八条**　人民法院审理因人民检察院抗诉或者检察建议裁定再审的案件，不受此前已经作出的驳回当事人再审申请裁定的影响。

法宝联想：　司法案例 97 篇

**第四百一十九条**　人民法院开庭审理抗诉案件，应当在开庭三日前通知人民检察院、当事人和其他诉讼参与人。同级人民检察院或者提出抗诉的人民检察院应当派员出庭。

人民检察院因履行法律监督职责向当事人或者案外人调查核实的情况，应当向法庭提交并予以说明，由双方当事人进行质证。

法宝联想：　地方法规 2 篇　司法案例 1117 篇　期刊 2 篇

**第四百二十条**　必须共同进行诉讼的当事人因不能归责于本人或者其诉讼代理人的事由未参加诉讼的，可以根据民事诉讼法第二百零七条第八项规定，自知道或者应当知道之日起六个月内申请再审，但符合本解释第四百二十一条规定情形的除外。

人民法院因前款规定的当事人申请而裁定再审，按照第一审程序再审的，应当追加其为当事人，作出新的判决、裁定；按照第二审程序再审，经调解不能达成协议的，应当撤销原判决、裁定，发回重审，重审时应追加其为当事人。

法宝联想：　地方法规 1 篇　司法案例 85 篇　期刊 2 篇

**第四百二十一条**　根据民事诉讼法第二百三十四条规定，案外人对驳回其执行异议的裁定不服，认为原判决、裁定、调解书内容错误损害其民事权益的，可以自执行异议裁定送达之日起六个月内，向作出原判决、裁定、调解书的人民法院申请再审。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想：　　司法案例 198 篇　期刊 2 篇

**第四百二十二条**　　根据民事诉讼法第二百三十四条规定，人民法院裁定再审后，案外人属于必要的共同诉讼当事人的，依照本解释第四百二十条第二款规定处理。

案外人不是必要的共同诉讼当事人的，人民法院仅审理原判决、裁定、调解书对其民事权益造成损害的内容。经审理，再审请求成立的，撤销或者改变原判决、裁定、调解书；再审请求不成立的，维持原判决、裁定、调解书。

法宝联想：　　中央法规 1 篇　司法案例 550 篇　期刊 1 篇　律所实务 1 篇　专题参考 2 篇

**第四百二十三条**　　本解释第三百三十八条规定适用于审判监督程序。

法宝联想：　　中央法规 1 篇　地方法规 2 篇　司法案例 2880 篇　期刊 1 篇　专题参考 2 篇

**第四百二十四条**　　对小额诉讼案件的判决、裁定，当事人以民事诉讼法第二百零七条规定的事由向原审人民法院申请再审的，人民法院应当受理。申请再审事由成立的，应当裁定再审，组成合议庭进行审理。作出的再审判决、裁定，当事人不得上诉。

当事人以不应按小额诉讼案件审理为由向原审人民法院申请再审的，人民法院应当受理。理由成立的，应当裁定再审，组成合议庭审理。作出的再审判决、裁定，当事人可以上诉。

法宝联想：　　司法案例 694 篇　期刊 1 篇　专题参考 1 篇

## 十九、督促程序

**第四百二十五条**　　两个以上人民法院都有管辖权的，债权人可以向其中一个基层人民法院申请支付令。

债权人向两个以上有管辖权的基层人民法院申请支付令的，由最先立案的人民法院管辖。

法宝联想：　　司法案例 2 篇　专题参考 1 篇

**第四百二十六条**　　人民法院收到债权人的支付令申请书后，认为申请书不符合要求的，可以通知债权人限期补正。人民法院应当自收到补正材料之日起五日内通知债权人是否受理。

法宝联想：　　司法案例 1958 篇　期刊 1 篇

第四百二十七条　债权人申请支付令，符合下列条件的，基层人民法院应当受理，并在收到支付令申请书后五日内通知债权人：

（一）请求给付金钱或者汇票、本票、支票、股票、债券、国库券、可转让的存款单等有价证券；

（二）请求给付的金钱或者有价证券已到期且数额确定，并写明了请求所根据的事实、证据；

（三）债权人没有对待给付义务；

（四）债务人在我国境内且未下落不明；

（五）支付令能够送达债务人；

（六）收到申请书的人民法院有管辖权；

（七）债权人未向人民法院申请诉前保全。

不符合前款规定的，人民法院应当在收到支付令申请书后五日内通知债权人不予受理。

基层人民法院受理申请支付令案件，不受债权金额的限制。

法宝联想：　司法案例 1262 篇

第四百二十八条　人民法院受理申请后，由审判员一人进行审查。经审查，有下列情形之一的，裁定驳回申请：

（一）申请人不具备当事人资格的；

（二）给付金钱或者有价证券的证明文件没有约定逾期给付利息或者违约金、赔偿金，债权人坚持要求给付利息或者违约金、赔偿金的；

（三）要求给付的金钱或者有价证券属于违法所得的；

（四）要求给付的金钱或者有价证券尚未到期或者数额不确定的。

人民法院受理支付令申请后，发现不符合本解释规定的受理条件的，应当在受理之日起十五日内裁定驳回申请。

法宝联想：　司法案例 2758 篇

第四百二十九条　向债务人本人送达支付令，债务人拒绝接收的，人民法院可以留置送达。

法宝联想：　司法案例 5609 篇

【法宝引证码】CLI.3.5115567

第四百三十条　有下列情形之一的，人民法院应当裁定终结督促程序，已发出支付令的，支付令自行失效：

（一）人民法院受理支付令申请后，债权人就同一债权债务关系又提起诉讼的；

（二）人民法院发出支付令之日起三十日内无法送达债务人的；

（三）债务人收到支付令前，债权人撤回申请的。

法宝联想：　司法案例 17364 篇　专题参考 1 篇

第四百三十一条　债务人在收到支付令后，未在法定期间提出书面异议，而向其他人民法院起诉的，不影响支付令的效力。

债务人超过法定期间提出异议的，视为未提出异议。

法宝联想：　司法案例 23 篇

第四百三十二条　债权人基于同一债权债务关系，在同一支付令申请中向债务人提出多项支付请求，债务人仅就其中一项或者几项请求提出异议的，不影响其他各项请求的效力。

法宝联想：　法规解读 1 篇　司法案例 58637 篇

第四百三十三条　债权人基于同一债权债务关系，就可分之债向多个债务人提出支付请求，多个债务人中的一人或者几人提出异议的，不影响其他请求的效力。

法宝联想：　司法案例 16 篇

第四百三十四条　对设有担保的债务的主债务人发出的支付令，对担保人没有拘束力。

债权人就担保关系单独提起诉讼的，支付令自人民法院受理案件之日起失效。

法宝联想：　司法案例 7 篇

第四百三十五条　经形式审查，债务人提出的书面异议有下列情形之一的，应当认定异议成立，裁定终结督促程序，支付令自行失效：

（一）本解释规定的不予受理申请情形的；

（二）本解释规定的裁定驳回申请情形的；

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

（三）本解释规定的应当裁定终结督促程序情形的；

（四）人民法院对是否符合发出支付令条件产生合理怀疑的。

法宝联想：　司法案例 1651 篇

**第四百三十六条**　债务人对债务本身没有异议，只是提出缺乏清偿能力、延缓债务清偿期限、变更债务清偿方式等异议的，不影响支付令的效力。

人民法院经审查认为异议不成立的，裁定驳回。

债务人的口头异议无效。

法宝联想：　司法案例 154 篇

**第四百三十七条**　人民法院作出终结督促程序或者驳回异议裁定前，债务人请求撤回异议的，应当裁定准许。

债务人对撤回异议反悔的，人民法院不予支持。

法宝联想：　司法案例 14528 篇

**第四百三十八条**　支付令失效后，申请支付令的一方当事人不同意提起诉讼的，应当自收到终结督促程序裁定之日起七日内向受理申请的人民法院提出。

申请支付令的一方当事人不同意提起诉讼的，不影响其向其他有管辖权的人民法院提起诉讼。

法宝联想：　司法案例 1187 篇

**第四百三十九条**　支付令失效后，申请支付令的一方当事人自收到终结督促程序裁定之日起七日内未向受理申请的人民法院表明不同意提起诉讼的，视为向受理申请的人民法院起诉。

债权人提出支付令申请的时间，即为向人民法院起诉的时间。

法宝联想：　司法案例 505 篇

**第四百四十条**　债权人向人民法院申请执行支付令的期间，适用民事诉讼法第二百四十六条的规定。

法宝联想：　司法案例 36 篇

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

**第四百四十一条** 人民法院院长发现本院已经发生法律效力的支付令确有错误，认为需要撤销的，应当提交本院审判委员会讨论决定后，裁定撤销支付令，驳回债权人的申请。

法宝联想：　司法案例 45 篇

## 二十、公示催告程序

**第四百四十二条** 民事诉讼法第二百二十五条规定的票据持有人，是指票据被盗、遗失或者灭失前的最后持有人。

法宝联想：　司法案例 32 篇

**第四百四十三条** 人民法院收到公示催告的申请后，应当立即审查，并决定是否受理。经审查认为符合受理条件的，通知予以受理，并同时通知支付人停止支付；认为不符合受理条件的，七日内裁定驳回申请。

法宝联想：　司法案例 501 篇

**第四百四十四条** 因票据丧失，申请公示催告的，人民法院应结合票据存根、丧失票据的复印件、出票人关于签发票据的证明、申请人合法取得票据的证明、银行挂失止付通知书、报案证明等证据，决定是否受理。

法宝联想：　司法案例 293 篇

**第四百四十五条** 人民法院依照民事诉讼法第二百二十六条规定发出的受理申请的公告，应当写明下列内容：

（一）公示催告申请人的姓名或者名称；

（二）票据的种类、号码、票面金额、出票人、背书人、持票人、付款期限等事项以及其他可以申请公示催告的权利凭证的种类、号码、权利范围、权利人、义务人、行权日期等事项；

（三）申报权利的期间；

（四）在公示催告期间转让票据等权利凭证，利害关系人不申报的法律后果。

法宝联想：　司法案例 810 篇

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

**第四百四十六条**　　公告应当在有关报纸或者其他媒体上刊登，并于同日公布于人民法院公告栏内。人民法院所在地有证券交易所的，还应当同日在该交易所公布。

法宝联想：　　司法案例 888 篇

**第四百四十七条**　　公告期间不得少于六十日，且公示催告期间届满日不得早于票据付款日后十五日。

法宝联想：　　司法案例 110 篇

**第四百四十八条**　　在申报期届满后、判决作出之前，利害关系人申报权利的，应当适用 民事诉讼法第二百二十八条第二款、第三款规定处理。

法宝联想：　　中央法规 1 篇　司法案例 82 篇

**第四百四十九条**　　利害关系人申报权利，人民法院应当通知其向法院出示票据，并通知公示催告申请人在指定的期间查看该票据。公示催告申请人申请公示催告的票据与利害关系人出示的票据不一致的，应当裁定驳回利害关系人的申报。

法宝联想：　　司法案例 138 篇　律所实务 1 篇

**第四百五十条**　　在申报权利的期间无人申报权利，或者申报被驳回的，申请人应当自公示催告期间届满之日起一个月内申请作出判决。逾期不申请判决的，终结公示催告程序。

裁定终结公示催告程序的，应当通知申请人和支付人。

法宝联想：　　司法案例 526 篇

**第四百五十一条**　　判决公告之日起，公示催告申请人有权依据判决向付款人请求付款。

付款人拒绝付款，申请人向人民法院起诉，符合 民事诉讼法第一百二十二条规定的起诉条件的，人民法院应予受理。

法宝联想：　　司法案例 95 篇

**第四百五十二条**　　适用公示催告程序审理案件，可由审判员一人独任审理；判决宣告票据无效的，应当组成合议庭审理。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想：　　司法案例 17424 篇

第四百五十三条　　公示催告申请人撤回申请，应在公示催告前提出；公示催告期间申请撤回的，人民法院可以径行裁定终结公示催告程序。

法宝联想：　　司法案例 308 篇

第四百五十四条　　人民法院依照民事诉讼法第二百二十七条规定通知支付人停止支付，应当符合有关财产保全的规定。支付人收到停止支付通知后拒不止付的，除可依照民事诉讼法第一百一十四条、第一百一十七条规定采取强制措施外，在判决后，支付人仍应承担付款义务。

法宝联想：　　司法案例 108 篇

第四百五十五条　　人民法院依照民事诉讼法第二百二十八条规定终结公示催告程序后，公示催告申请人或者申报人向人民法院提起诉讼，因票据权利纠纷提起的，由票据支付地或者被告住所地人民法院管辖；因非票据权利纠纷提起的，由被告住所地人民法院管辖。

法宝联想：　　司法案例 2611 篇

第四百五十六条　　依照民事诉讼法第二百二十八条规定制作的终结公示催告程序的裁定书，由审判员、书记员署名，加盖人民法院印章。

法宝联想：　　司法案例 87 篇

第四百五十七条　　依照民事诉讼法第二百三十条的规定，利害关系人向人民法院起诉的，人民法院可按票据纠纷适用普通程序审理。

法宝联想：　　司法案例 81 篇

第四百五十八条　　民事诉讼法第二百三十条规定的正当理由，包括：

（一）因发生意外事件或者不可抗力致使利害关系人无法知道公告事实的；

（二）利害关系人因被限制人身自由而无法知道公告事实，或者虽然知道公告事实，但无法自己或者委托他人代为申报权利的；

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

（三）不属于法定申请公示催告情形的；

（四）未予公告或者未按法定方式公告的；

（五）其他导致利害关系人在判决作出前未能向人民法院申报权利的客观事由。

法宝联想：　司法案例 49 篇

第四百五十九条　根据民事诉讼法第二百三十条的规定，利害关系人请求人民法院撤销除权判决的，应当将申请人列为被告。

利害关系人仅诉请确认其为合法持票人的，人民法院应当在裁判文书中写明，确认利害关系人为票据权利人的判决作出后，除权判决即被撤销。

法宝联想：　司法案例 67 篇

## 二十一、执行程序

第四百六十条　发生法律效力的实现担保物权裁定、确认调解协议裁定、支付令，由作出裁定、支付令的人民法院或者与其同级的被执行财产所在地的人民法院执行。

认定财产无主的判决，由作出判决的人民法院将无主财产收归国家或者集体所有。

法宝联想：　司法案例 798 篇

第四百六十一条　当事人申请人民法院执行的生效法律文书应当具备下列条件：

（一）权利义务主体明确；

（二）给付内容明确。

法律文书确定继续履行合同的，应当明确继续履行的具体内容。

法宝联想：　司法案例 693 篇　律所实务 2 篇

第四百六十二条　根据民事诉讼法第二百三十四条规定，案外人对执行标的提出异议的，应当在该执行标的的执行程序终结前提出。

法宝联想：　司法案例 419 篇　期刊 1 篇　专题参考 1 篇

第四百六十三条　案外人对执行标的提出的异议，经审查，按照下列情形分别处理：

【法宝引证码】CLI.3.5115567

（一）案外人对执行标的不享有足以排除强制执行的权益的，裁定驳回其异议；

（二）案外人对执行标的享有足以排除强制执行的权益的，裁定中止执行。

驳回案外人执行异议裁定送达案外人之日起十五日内，人民法院不得对执行标的进行处分。

法宝联想：　　中央法规 1 篇  地方法规 2 篇  司法案例 21015 篇  期刊 5 篇  专题参考 1 篇

**第四百六十四条**　申请执行人与被执行人达成和解协议后请求中止执行或者撤回执行申请的，人民法院可以裁定中止执行或者终结执行。

法宝联想：　　地方法规 1 篇  司法案例 49063 篇

**第四百六十五条**　一方当事人不履行或者不完全履行在执行中双方自愿达成的和解协议，对方当事人申请执行原生效法律文书的，人民法院应当恢复执行，但和解协议已履行的部分应当扣除。和解协议已经履行完毕的，人民法院不予恢复执行。

法宝联想：　　司法案例 91662 篇  期刊 1 篇  律所实务 1 篇

**第四百六十六条**　申请恢复执行原生效法律文书，适用民事诉讼法第二百四十六条申请执行期间的规定。申请执行期间因达成执行中的和解协议而中断，其期间自和解协议约定履行期限的最后一日起重新计算。

Art. 250 of the 2024 CPL: 申请执行的期间为二年。申请执行时效的中止、中断，适用法律有关诉讼时效中止、中断的规定。

法宝联想：　　司法案例 534429 篇

**第四百六十七条**　人民法院依照民事诉讼法第二百三十八条规定决定暂缓执行的，如果担保是有期限的，暂缓执行的期限应当与担保期限一致，但最长不得超过一年。被执行人或者担保人对担保的财产在暂缓执行期间有转移、隐藏、变卖、毁损等行为的，人民法院可以恢复强制执行。

法宝联想：　　中央法规 2 篇  司法案例 164505 篇  案例报道 1 篇  期刊 2 篇

**第四百六十八条**　根据民事诉讼法第二百三十八条规定向人民法院提供执行担保的，可以由被执行人或者他人提供财产担保，也可以由他人提供保证。担保人应当具有代为履行或者代为承担赔偿责任的能力。

他人提供执行保证的，应当向执行法院出具保证书，并将保证书副本送交申请执行人。被执行人

【法宝引证码】CLI.3.5115567

或者他人提供财产担保的，应当参照民法典的有关规定办理相应手续。

法宝联想：　司法案例 100011 篇　专题参考 2 篇

第四百六十九条　被执行人在人民法院决定暂缓执行的期限届满后仍不履行义务的，人民法院可以直接执行担保财产，或者裁定执行担保人的财产，但执行担保人的财产以担保人应当履行义务部分的财产为限。

法宝联想：　司法案例 158 篇　期刊 1 篇　专题参考 1 篇

第四百七十条　依照民事诉讼法第二百三十九条规定，执行中作为被执行人的法人或者其他组织分立、合并的，人民法院可以裁定变更后的法人或者其他组织为被执行人；被注销的，如果依照有关实体法的规定有权利义务承受人的，可以裁定该权利义务承受人为被执行人。

法宝联想：　司法案例 1698 篇

第四百七十一条　其他组织在执行中不能履行法律文书确定的义务的，人民法院可以裁定执行对该其他组织依法承担义务的法人或者公民个人的财产。

法宝联想：　地方法规 1 篇　司法案例 3523 篇　期刊 1 篇　专题参考 1 篇

第四百七十二条　在执行中，作为被执行人的法人或者其他组织名称变更的，人民法院可以裁定变更后的法人或者其他组织为被执行人。

法宝联想：　司法案例 1619 篇　期刊 1 篇

第四百七十三条　作为被执行人的公民死亡，其遗产继承人没有放弃继承的，人民法院可以裁定变更被执行人，由该继承人在遗产的范围内偿还债务。继承人放弃继承的，人民法院可以直接执行被执行人的遗产。

法宝联想：　司法案例 5893 篇　期刊 2 篇　律所实务 1 篇

第四百七十四条　法律规定由人民法院执行的其他法律文书执行完毕后，该法律文书被有关机关或者组织依法撤销的，经当事人申请，适用民事诉讼法第二百四十条规定。

法宝联想：　司法案例 1075 篇

【法宝引证码】CLI.3.5115567

**第四百七十五条**　仲裁机构裁决的事项，部分有民事诉讼法第二百四十四条第二款、第三款规定情形的，人民法院应当裁定对该部分不予执行。

应当不予执行部分与其他部分不可分的，人民法院应当裁定不予执行仲裁裁决。

法宝联想：　司法案例 1985 篇　律所实务 1 篇

**第四百七十六条**　依照民事诉讼法第二百四十四条第二款、第三款规定，人民法院裁定不予执行仲裁裁决后，当事人对该裁定提出执行异议或者复议的，人民法院不予受理。当事人可以就该民事纠纷重新达成书面仲裁协议申请仲裁，也可以向人民法院起诉。

法宝联想：　司法案例 375 篇

**第四百七十七条**　在执行中，被执行人通过仲裁程序将人民法院查封、扣押、冻结的财产确权或者分割给案外人的，不影响人民法院执行程序的进行。

案外人不服的，可以根据民事诉讼法第二百三十四条规定提出异议。

法宝联想：　中央法规 1 篇　司法案例 1407 篇　期刊 1 篇　专题参考 1 篇

**第四百七十八条**　有下列情形之一的，可以认定为民事诉讼法第二百四十五条第二款规定的公证债权文书确有错误：

（一）公证债权文书属于不得赋予强制执行效力的债权文书的；

（二）被执行人一方未亲自或者未委托代理人到场公证等严重违反法律规定的公证程序的；

（三）公证债权文书的内容与事实不符或者违反法律强制性规定的；

（四）公证债权文书未载明被执行人不履行义务或者不完全履行义务时同意接受强制执行的。

人民法院认定执行该公证债权文书违背社会公共利益的，裁定不予执行。

公证债权文书被裁定不予执行后，当事人、公证事项的利害关系人可以就债权争议提起诉讼。

法宝联想：　司法案例 1296 篇　期刊 1 篇

**第四百七十九条**　当事人请求不予执行仲裁裁决或者公证债权文书的，应当在执行终结前向执行法院提出。

法宝联想：　司法案例 185 篇

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

**第四百八十条**　人民法院应当在收到申请执行书或者移交执行书后十日内发出执行通知。

执行通知中除应责令被执行人履行法律文书确定的义务外，还应通知其承担 民事诉讼法第二百六十条规定的迟延履行利息或者迟延履行金。

法宝联想：　地方法规 4 篇　司法案例 13919 篇　期刊 1 篇　专题参考 3 篇

**第四百八十一条**　申请执行人超过申请执行时效期间向人民法院申请强制执行的，人民法院应予受理。被执行人对申请执行时效期间提出异议，人民法院经审查异议成立的，裁定不予执行。

被执行人履行全部或者部分义务后，又以不知道申请执行时效期间届满为由请求执行回转的，人民法院不予支持。

法宝联想：　司法案例 908 篇　期刊 1 篇　律所实务 1 篇

**第四百八十二条**　对必须接受调查询问的被执行人、被执行人的法定代表人、负责人或者实际控制人，经依法传唤无正当理由拒不到场的，人民法院可以拘传其到场。

人民法院应当及时对被拘传人进行调查询问，调查询问的时间不得超过八小时；情况复杂，依法可能采取拘留措施的，调查询问的时间不得超过二十四小时。

人民法院在本辖区以外采取拘传措施时，可以将被拘传人拘传到当地人民法院，当地人民法院应予协助。

法宝联想：　中央法规 2 篇　法律动态 1 篇　司法案例 160972 篇　案例报道 2 篇　专题参考 1 篇

**第四百八十三条**　人民法院有权查询被执行人的身份信息与财产信息，掌握相关信息的单位和个人必须按照协助执行通知书办理。

法宝联想：　司法案例 7369 篇　期刊 1 篇　专题参考 3 篇

**第四百八十四条**　对被执行的财产，人民法院非经查封、扣押、冻结不得处分。对银行存款等各类可以直接扣划的财产，人民法院的扣划裁定同时具有冻结的法律效力。

法宝联想：　司法案例 2245 篇　期刊 1 篇

**第四百八十五条**　人民法院冻结被执行人的银行存款的期限不得超过一年，查封、扣押动产的期

【法宝引证码】CLI.3.5115567

限不得超过两年，查封不动产、冻结其他财产权的期限不得超过三年。

申请执行人申请延长期限的，人民法院应当在查封、扣押、冻结期限届满前办理续行查封、扣押、冻结手续，续行期限不得超过前款规定的期限。

人民法院也可以依职权办理续行查封、扣押、冻结手续。

法宝联想：　中央法规 1 篇　司法案例 132556 篇

第四百八十六条　依照民事诉讼法第二百五十四条规定，人民法院在执行中需要拍卖被执行人财产的，可以由人民法院自行组织拍卖，也可以交由具备相应资质的拍卖机构拍卖。

交拍卖机构拍卖的，人民法院应当对拍卖活动进行监督。

法宝联想：　司法案例 247178 篇　期刊 1 篇　专题参考 1 篇

第四百八十七条　拍卖评估需要对现场进行检查、勘验的，人民法院应当责令被执行人、协助义务人予以配合。被执行人、协助义务人不予配合的，人民法院可以强制进行。

法宝联想：　中央法规 4 篇　地方法规 3 篇　草案 1 篇　司法案例 2102162 篇　案例报道 1 篇　期刊 1 篇　律所实务 2 篇　专题参考 1 篇

第四百八十八条　人民法院在执行中需要变卖被执行人财产的，可以交有关单位变卖，也可以由人民法院直接变卖。

对变卖的财产，人民法院或者其工作人员不得买受。

法宝联想：　地方法规 1 篇　司法案例 6909 篇　期刊 2 篇

第四百八十九条　经申请执行人和被执行人同意，且不损害其他债权人合法权益和社会公共利益的，人民法院可以不经拍卖、变卖，直接将被执行人的财产作价交申请执行人抵偿债务。对剩余债务，被执行人应当继续清偿。

法宝联想：　司法案例 284 篇　律所实务 1 篇

第四百九十条　被执行人的财产无法拍卖或者变卖的，经申请执行人同意，且不损害其他债权人合法权益和社会公共利益的，人民法院可以将该项财产作价后交付申请执行人抵偿债务，或者交付申请执行人管理；申请执行人拒绝接收或者管理的，退回被执行人。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想： 司法案例 5799 篇　期刊 1 篇　律所实务 1 篇

**第四百九十一条** 拍卖成交或者依法定程序裁定以物抵债的，标的物所有权自拍卖成交裁定或者抵债裁定送达买受人或者接受抵债物的债权人时转移。

法宝联想： 司法案例 8405 篇　律所实务 1 篇

**第四百九十二条** 执行标的物为特定物的，应当执行原物。原物确已毁损或者灭失的，经双方当事人同意，可以折价赔偿。

双方当事人对折价赔偿不能协商一致的，人民法院应当终结执行程序。申请执行人可以另行起诉。

法宝联想： 司法案例 7535 篇　期刊 2 篇　律所实务 1 篇　专题参考 1 篇

**第四百九十三条** 他人持有法律文书指定交付的财物或者票证，人民法院依照民事诉讼法第二百五十六条第二款、第三款规定发出协助执行通知后，拒不转交的，可以强制执行，并可依照民事诉讼法第一百一十七条、第一百一十八条规定处理。

他人持有期间财物或者票证毁损、灭失的，参照本解释第四百九十二条规定处理。

他人主张合法持有财物或者票证的，可以根据民事诉讼法第二百三十四条规定提出执行异议。

法宝联想： 法规解读 1 篇　司法案例 19165 篇　期刊 5 篇　律所实务 1 篇　专题参考 1 篇

**第四百九十四条** 在执行中，被执行人隐匿财产、会计账簿等资料的，人民法院除可依照民事诉讼法第一百一十四条第一款第六项规定对其处理外，还应责令被执行人交出隐匿的财产、会计账簿等资料。被执行人拒不交出的，人民法院可以采取搜查措施。

法宝联想： 中央法规 1 篇　地方法规 1 篇　法律动态 1 篇　司法案例 4349 篇　期刊 2 篇　专题参考 1 篇

**第四百九十五条** 搜查人员应当按规定着装并出示搜查令和工作证件。

法宝联想： 司法案例 143 篇

**第四百九十六条** 人民法院搜查时禁止无关人员进入搜查现场；搜查对象是公民的，应当通知被执行人或者他的成年家属以及基层组织派员到场；搜查对象是法人或者其他组织的，应当通知法定代

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

表人或者主要负责人到场。拒不到场的，不影响搜查。

搜查妇女身体，应当由女执行人员进行。

法宝联想： 地方法规 1 篇 司法案例 18 篇 案例报道 1 篇

**第四百九十七条** 搜查中发现应当依法采取查封、扣押措施的财产，依照 民事诉讼法 第二百五十二条 第二款和 第二百五十四条 规定办理。

法宝联想： 地方法规 1 篇 司法案例 5 篇 案例报道 1 篇

**第四百九十八条** 搜查应当制作搜查笔录，由搜查人员、被搜查人及其他在场人签名、捺印或者盖章。拒绝签名、捺印或者盖章的，应当记入搜查笔录。

法宝联想： 地方法规 1 篇 司法案例 1 篇 案例报道 1 篇

**第四百九十九条** 人民法院执行被执行人对他人的到期债权，可以作出冻结债权的裁定，并通知该他人向申请执行人履行。

该他人对到期债权有异议，申请执行人请求对异议部分强制执行的，人民法院不予支持。利害关系人对到期债权有异议的，人民法院应当按照 民事诉讼法 第二百三十四条 规定处理。

对生效法律文书确定的到期债权，该他人予以否认的，人民法院不予支持。

法宝联想： 地方法规 1 篇 司法案例 711 篇 案例报道 1 篇 期刊 1 篇 律所实务 2 篇

**第五百条** 人民法院在执行中需要办理房产证、土地证、林权证、专利证书、商标证书、车船执照等有关财产权证照转移手续的，可以依照 民事诉讼法 第二百五十八条 规定办理。

法宝联想： 地方法规 1 篇 司法案例 297 篇 案例报道 1 篇

**第五百零一条** 被执行人不履行生效法律文书确定的行为义务，该义务可由他人完成的，人民法院可以选定代履行人；法律、行政法规对履行该行为义务有资格限制的，应当从有资格的人中选定。必要时，可以通过招标的方式确定代履行人。

申请执行人可以在符合条件的人中推荐代履行人，也可以申请自己代为履行，是否准许，由人民法院决定。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

**法宝联想：**　地方法规 6 篇　司法案例 20182 篇　案例报道 1 篇　期刊 3 篇　律所实务 2 篇　专题参考 3 篇

**第五百零二条**　代履行费用的数额由人民法院根据案件具体情况确定，并由被执行人在指定期限内预先支付。被执行人未预付的，人民法院可以对该费用强制执行。

代履行结束后，被执行人可以查阅、复制费用清单以及主要凭证。

**法宝联想：**　中央法规 1 篇　草案 1 篇　司法案例 4709 篇　案例报道 1 篇　期刊 1 篇

**第五百零三条**　被执行人不履行法律文书指定的行为，且该项行为只能由被执行人完成的，人民法院可以依照民事诉讼法第一百一十四条第一款第六项规定处理。

被执行人在人民法院确定的履行期间内仍不履行的，人民法院可以依照 民事诉讼法第一百一十四条第一款第六项规定再次处理。

**法宝联想：**　司法案例 279 篇　期刊 5 篇　律所实务 1 篇　专题参考 1 篇

**第五百零四条**　被执行人迟延履行的，迟延履行期间的利息或者迟延履行金自判决、裁定和其他法律文书指定的履行期间届满之日起计算。

**法宝联想：**　司法案例 132 篇

**第五百零五条**　被执行人未按判决、裁定和其他法律文书指定的期间履行非金钱给付义务的，无论是否已给申请执行人造成损失，都应当支付迟延履行金。已经造成损失的，双倍补偿申请执行人已经受到的损失；没有造成损失的，迟延履行金可以由人民法院根据具体案件情况决定。

**法宝联想：**　中央法规 1 篇　草案 1 篇　司法案例 220 篇　案例报道 1 篇　律所实务 2 篇

**第五百零六条**　被执行人为公民或者其他组织，在执行程序开始后，被执行人的其他已经取得执行依据的债权人发现被执行人的财产不能清偿所有债权的，可以向人民法院申请参与分配。

对人民法院查封、扣押、冻结的财产有优先权、担保物权的债权人，可以直接申请参与分配，主张优先受偿权。

**法宝联想：**　司法案例 1977 篇　期刊 1 篇　律所实务 4 篇

**第五百零七条**　申请参与分配，申请人应当提交申请书。申请书应当写明参与分配和被执行人不

【法宝引证码】CLI.3.5115567

能清偿所有债权的事实、理由，并附有执行依据。

参与分配申请应当在执行程序开始后，被执行人的财产执行终结前提出。

**法宝联想：** 司法案例 2215 篇

**第五百零八条** 参与分配执行中，执行所得价款扣除执行费用，并清偿应当优先受偿的债权后，对于普通债权，原则上按照其占全部申请参与分配债权数额的比例受偿。清偿后的剩余债务，被执行人应当继续清偿。债权人发现被执行人有其他财产的，可以随时请求人民法院执行。

**法宝联想：** 中央法规 1 篇 地方法规 4 篇 司法案例 8743 篇 期刊 3 篇 律所实务 5 篇 专题参考 1 篇

**第五百零九条** 多个债权人对执行财产申请参与分配的，执行法院应当制作财产分配方案，并送达各债权人和被执行人。债权人或者被执行人对分配方案有异议的，应当自收到分配方案之日起十五日内向执行法院提出书面异议。

**法宝联想：** 地方法规 2 篇 司法案例 3832 篇 律所实务 1 篇

**第五百一十条** 债权人或者被执行人对分配方案提出书面异议的，执行法院应当通知未提出异议的债权人、被执行人。

未提出异议的债权人、被执行人自收到通知之日起十五日内未提出反对意见的，执行法院依异议人的意见对分配方案审查修正后进行分配；提出反对意见的，应当通知异议人。异议人可以自收到通知之日起十五日内，以提出反对意见的债权人、被执行人为被告，向执行法院提起诉讼；异议人逾期未提起诉讼的，执行法院按照原分配方案进行分配。

诉讼期间进行分配的，执行法院应当提存与争议债权数额相应的款项。

**法宝联想：** 中央法规 1 篇 司法案例 4062 篇 期刊 1 篇 律所实务 1 篇

**第五百一十一条** 在执行中，作为被执行人的企业法人符合企业破产法第二条第一款规定情形的，执行法院经申请执行人之一或者被执行人同意，应当裁定中止对该被执行人的执行，将执行案件相关材料移送被执行人住所地人民法院。

**法宝联想：** 地方法规 5 篇 司法案例 3663 篇 律所实务 1 篇 专题参考 1 篇

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

**第五百一十二条**　被执行人住所地人民法院应当自收到执行案件相关材料之日起三十日内，将是否受理破产案件的裁定告知执行法院。不予受理的，应当将相关案件材料退回执行法院。

法宝联想：　地方法规 4 篇　司法案例 5336 篇　律所实务 2 篇

**第五百一十三条**　被执行人住所地人民法院裁定受理破产案件的，执行法院应当解除对被执行人财产的保全措施。被执行人住所地人民法院裁定宣告被执行人破产的，执行法院应当裁定终结对该被执行人的执行。

被执行人住所地人民法院不受理破产案件的，执行法院应当恢复执行。

法宝联想：　中央法规 1 篇　地方法规 4 篇　法律动态 1 篇　司法案例 8264 篇　案例报道 2 篇　期刊 5 篇　专题参考 2 篇

**第五百一十四条**　当事人不同意移送破产或者被执行人住所地人民法院不受理破产案件的，执行法院就执行变价所得财产，在扣除执行费用及清偿优先受偿的债权后，对于普通债权，按照财产保全和执行中查封、扣押、冻结财产的先后顺序清偿。

法宝联想：　地方法规 1 篇　司法案例 691 篇　律所实务 2 篇

**第五百一十五条**　债权人根据民事诉讼法第二百六十一条规定请求人民法院继续执行的，不受民事诉讼法第二百四十六条规定申请执行时效期间的限制。

法宝联想：　司法案例 32857 篇　律所实务 1 篇　专题参考 1 篇

**第五百一十六条**　被执行人不履行法律文书确定的义务的，人民法院除对被执行人予以处罚外，还可以根据情节将其纳入失信被执行人名单，将被执行人不履行或者不完全履行义务的信息向其所在单位、征信机构以及其他相关机构通报。

法宝联想：　地方法规 10 篇　法律动态 1 篇　司法案例 2542 篇　案例报道 1 篇　期刊 6 篇　律所实务 4 篇　专题参考 3 篇

**第五百一十七条**　经过财产调查未发现可供执行的财产，在申请执行人签字确认或者执行法院组成合议庭审查核实并经院长批准后，可以裁定终结本次执行程序。

依照前款规定终结执行后，申请执行人发现被执行人有可供执行财产的，可以再次申请执行。再次申请不受申请执行时效期间的限制。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

法宝联想：　司法案例 812812 篇　期刊 1 篇

　　**第五百一十八条**　因撤销申请而终结执行后，当事人在民事诉讼法第二百四十六条规定的申请执行时效期间内再次申请执行的，人民法院应当受理。

法宝联想：　司法案例 20681 篇

　　**第五百一十九条**　在执行终结六个月内，被执行人或者其他人对已执行的标的有妨害行为的，人民法院可以依申请排除妨害，并可以依照民事诉讼法第一百一十四条规定进行处罚。因妨害行为给执行债权人或者其他人造成损失的，受害人可以另行起诉。

法宝联想：　中央法规 1 篇　地方法规 3 篇　法律动态 1 篇　法律文书 1 篇　司法案例 10132723 篇　案例报道 1 篇　期刊 4 篇　律所实务 1 篇

## 二十二、涉外民事诉讼程序的特别规定

　　**第五百二十条**　有下列情形之一，人民法院可以认定为涉外民事案件：

　　（一）当事人一方或者双方是外国人、无国籍人、外国企业或者组织的；

　　（二）当事人一方或者双方的经常居所地在中华人民共和国领域外的；

　　（三）标的物在中华人民共和国领域外的；

　　（四）产生、变更或者消灭民事关系的法律事实发生在中华人民共和国领域外的；

　　（五）可以认定为涉外民事案件的其他情形。

法宝联想：　司法案例 228333 篇　专题参考 2 篇

　　**第五百二十一条**　外国人参加诉讼，应当向人民法院提交护照等用以证明自己身份的证件。

　　外国企业或者组织参加诉讼，向人民法院提交的身份证明文件，应当经所在国公证机关公证，并经中华人民共和国驻该国使领馆认证，或者履行中华人民共和国与该所在国订立的有关条约中规定的证明手续。

　　代表外国企业或者组织参加诉讼的人，应当向人民法院提交其有权作为代表人参加诉讼的证明，该证明应当经所在国公证机关公证，并经中华人民共和国驻该国使领馆认证，或者履行中华人民共和国与该所在国订立的有关条约中规定的证明手续。

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

本条所称的"所在国"，是指外国企业或者组织的设立登记地国，也可以是办理了营业登记手续的第三国。

法宝联想：　地方法规 1 篇　司法案例 1509 篇

第五百二十二条　依照民事诉讼法第二百七十一条以及本解释第五百二十一条规定，需要办理公证、认证手续，而外国当事人所在国与中华人民共和国没有建立外交关系的，可以经该国公证机关公证，经与中华人民共和国有外交关系的第三国驻该国使领馆认证，再转由中华人民共和国驻该第三国使领馆认证。

法宝联想：　中央法规 2 篇　司法案例 2947 篇　案例报道 1 篇　期刊 2 篇　律所实务 2 篇

第五百二十三条　外国人、外国企业或者组织的代表人在人民法院法官的见证下签署授权委托书，委托代理人进行民事诉讼的，人民法院应予认可。

法宝联想：　中央法规 1 篇　司法案例 344 篇

第五百二十四条　外国人、外国企业或者组织的代表人在中华人民共和国境内签署授权委托书，委托代理人进行民事诉讼，经中华人民共和国公证机构公证的，人民法院应予认可。

法宝联想：　司法案例 82 篇

第五百二十五条　当事人向人民法院提交的书面材料是外文的，应当同时向人民法院提交中文翻译件。

当事人对中文翻译件有异议的，应当共同委托翻译机构提供翻译文本；当事人对翻译机构的选择不能达成一致的，由人民法院确定。

法宝联想：　司法案例 145 篇　案例报道 1 篇

第五百二十六条　涉外民事诉讼中的外籍当事人，可以委托本国人为诉讼代理人，也可以委托本国律师以非律师身份担任诉讼代理人；外国驻华使领馆官员，受本国公民的委托，可以以个人名义担任诉讼代理人，但在诉讼中不享有外交或者领事特权和豁免。

法宝联想：　司法案例 409 篇　律所实务 1 篇

　　　　　　　　　　　　　　　　　　　　　　　下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

**第五百二十七条**　涉外民事诉讼中，外国驻华使领馆授权其本馆官员，在作为当事人的本国国民不在中华人民共和国领域内的情况下，可以以外交代表身份为其本国国民在中华人民共和国聘请中华人民共和国律师或者中华人民共和国公民代理民事诉讼。

法宝联想：　司法案例 209 篇　仲裁案例 1 篇

**第五百二十八条**　涉外民事诉讼中，经调解双方达成协议，应当制发调解书。当事人要求发给判决书的，可以依协议的内容制作判决书送达当事人。

法宝联想：　司法案例 104 篇

**第五百二十九条**　涉外合同或者其他财产权益纠纷的当事人，可以书面协议选择被告住所地、合同履行地、合同签订地、原告住所地、标的物所在地、侵权行为地等与争议有实际联系地点的外国法院管辖。

根据民事诉讼法第三十四条和第二百七十三条规定，属于中华人民共和国法院专属管辖的案件，当事人不得协议选择外国法院管辖，但协议选择仲裁的除外。

法宝联想：　司法案例 106 篇　案例报道 1 篇

**第五百三十条**　涉外民事案件同时符合下列情形的，人民法院可以裁定驳回原告的起诉，告知其向更方便的外国法院提起诉讼：

（一）被告提出案件应由更方便外国法院管辖的请求，或者提出管辖异议；

（二）当事人之间不存在选择中华人民共和国法院管辖的协议；

（三）案件不属于中华人民共和国法院专属管辖；

（四）案件不涉及中华人民共和国国家、公民、法人或者其他组织的利益；

（五）案件争议的主要事实不是发生在中华人民共和国境内，且案件不适用中华人民共和国法律，人民法院审理案件在认定事实和适用法律方面存在重大困难；

（六）外国法院对案件享有管辖权，且审理该案件更加方便。

法宝联想：　司法案例 302 篇　期刊 3 篇

**第五百三十一条**　中华人民共和国法院和外国法院都有管辖权的案件，一方当事人向外国法院起

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

诉，而另一方当事人向中华人民共和国法院起诉的，人民法院可予受理。判决后，外国法院申请或者当事人请求人民法院承认和执行外国法院对本案作出的判决、裁定的，不予准许；但双方共同缔结或者参加的国际条约另有规定的除外。

外国法院判决、裁定已经被人民法院承认，当事人就同一争议向人民法院起诉的，人民法院不予受理。

**法宝联想：** 司法案例 313 篇　期刊 5 篇　律所实务 5 篇

**第五百三十二条**　对在中华人民共和国领域内没有住所的当事人，经用公告方式送达诉讼文书，公告期满不应诉，人民法院缺席判决后，仍应当将裁判文书依照民事诉讼法第二百七十四条第八项规定公告送达。自公告送达裁判文书满三个月之日起，经过三十日的上诉期当事人没有上诉的，一审判决即发生法律效力。

**法宝联想：** 司法案例 360 篇　案例报道 1 篇　期刊 4 篇　律所实务 2 篇

**第五百三十三条**　外国人或者外国企业、组织的代表人、主要负责人在中华人民共和国领域内的，人民法院可以向该自然人或者外国企业、组织的代表人、主要负责人送达。

外国企业、组织的主要负责人包括该企业、组织的董事、监事、高级管理人员等。

**法宝联想：** 司法案例 50 篇　案例报道 1 篇　期刊 2 篇　律所实务 1 篇

**第五百三十四条**　受送达人所在国允许邮寄送达的，人民法院可以邮寄送达。

邮寄送达时应当附有送达回证。受送达人未在送达回证上签收但在邮件回执上签收的，视为送达，签收日期为送达日期。

自邮寄之日起满三个月，如果未收到送达的证明文件，且根据各种情况不足以认定已经送达的，视为不能用邮寄方式送达。

**法宝联想：** 司法案例 20 篇　期刊 1 篇

**第五百三十五条**　人民法院一审时采取公告方式向当事人送达诉讼文书的，二审时可径行采取公告方式向其送达诉讼文书，但人民法院能够采取公告方式之外的其他方式送达的除外。

**法宝联想：** 司法案例 7 篇

　下载日期：2023-08-13

【法宝引证码】CLI.3.5115567

第五百三十六条　不服第一审人民法院判决、裁定的上诉期，对在中华人民共和国领域内有住所的当事人，适用民事诉讼法第一百七十一条规定的期限；对在中华人民共和国领域内没有住所的当事人，适用民事诉讼法第二百七十六条规定的期限。当事人的上诉期均已届满没有上诉的，第一审人民法院的判决、裁定即发生法律效力。

法宝联想：　司法案例 12 篇

第五百三十七条　人民法院对涉外民事案件的当事人申请再审进行审查的期间，不受民事诉讼法第二百一十一条规定的限制。

法宝联想：　司法案例 3 篇　专题参考 1 篇

第五百三十八条　申请人向人民法院申请执行中华人民共和国涉外仲裁机构的裁决，应当提出书面申请，并附裁决书正本。如申请人为外国当事人，其申请书应当用中文文本提出。

法宝联想：　司法案例 156 篇　期刊 1 篇

第五百三十九条　人民法院强制执行涉外仲裁机构的仲裁裁决时，被执行人以有民事诉讼法第二百八十一条第一款规定的情形为由提出抗辩的，人民法院应当对被执行人的抗辩进行审查，并根据审查结果裁定执行或者不予执行。

法宝联想：　司法案例 21 篇

第五百四十条　依照民事诉讼法第二百七十九条规定，中华人民共和国涉外仲裁机构将当事人的保全申请提交人民法院裁定的，人民法院可以进行审查，裁定是否进行保全。裁定保全的，应当责令申请人提供担保，申请人不提供担保的，裁定驳回申请。

当事人申请证据保全，人民法院经审查认为无需提供担保的，申请人可以不提供担保。

法宝联想：　司法案例 6 篇

第五百四十一条　申请人向人民法院申请承认和执行外国法院作出的发生法律效力的判决、裁定，应当提交申请书，并附外国法院作出的发生法律效力的判决、裁定正本或者经证明无误的副本以及

【法宝引证码】CLI.3.5115567

中文译本。外国法院判决、裁定为缺席判决、裁定的，申请人应当同时提交该外国法院已经合法传唤的证明文件，但判决、裁定已经对此予以明确说明的除外。

中华人民共和国缔结或者参加的国际条约对提交文件有规定的，按照规定办理。

法宝联想：　司法案例 18 篇

**第五百四十二条**　当事人向中华人民共和国有管辖权的中级人民法院申请承认和执行外国法院作出的发生法律效力的判决、裁定的，如果该法院所在国与中华人民共和国没有缔结或者共同参加国际条约，也没有互惠关系的，裁定驳回申请，但当事人向人民法院申请承认外国法院作出的发生法律效力的离婚判决的除外。

承认和执行申请被裁定驳回的，当事人可以向人民法院起诉。

法宝联想：　司法案例 8 篇

**第五百四十三条**　对临时仲裁庭在中华人民共和国领域外作出的仲裁裁决，一方当事人向人民法院申请承认和执行的，人民法院应当依照民事诉讼法第二百九十条规定处理。

法宝联想：　司法案例 36 篇　期刊 2 篇

**第五百四十四条**　对外国法院作出的发生法律效力的判决、裁定或者外国仲裁裁决，需要中华人民共和国法院执行的，当事人应当先向人民法院申请承认。人民法院经审查，裁定承认后，再根据民事诉讼法第三编的规定予以执行。

当事人仅申请承认而未同时申请执行的，人民法院仅对应否承认进行审查并作出裁定。

法宝联想：　司法案例 70 篇　期刊 3 篇　律所实务 3 篇

**第五百四十五条**　当事人申请承认和执行外国法院作出的发生法律效力的判决、裁定或者外国仲裁裁决的期间，适用民事诉讼法第二百四十六条的规定。

当事人仅申请承认而未同时申请执行的，申请执行的期间自人民法院对承认申请作出的裁定生效之日起重新计算。

法宝联想：　中央法规 1 篇　司法案例 13 篇　期刊 4 篇　专题参考 1 篇

下载日期：2023-08-13

**第五百四十六条** 承认和执行外国法院作出的发生法律效力的判决、裁定或者外国仲裁裁决的案件，人民法院应当组成合议庭进行审查。

人民法院应当将申请书送达被申请人。被申请人可以陈述意见。

人民法院经审查作出的裁定，一经送达即发生法律效力。

法宝联想：　中央法规 1 篇　司法案例 26 篇　期刊 2 篇　律所实务 1 篇

**第五百四十七条** 与中华人民共和国没有司法协助条约又无互惠关系的国家的法院，未通过外交途径，直接请求人民法院提供司法协助的，人民法院应予退回，并说明理由。

法宝联想：　中央法规 1 篇　法律动态 1 篇　司法案例 10 篇　期刊 1 篇　律所实务 1 篇

**第五百四十八条** 当事人在中华人民共和国领域外使用中华人民共和国法院的判决书、裁定书，要求中华人民共和国法院证明其法律效力的，或者外国法院要求中华人民共和国法院证明判决书、裁定书的法律效力的，作出判决、裁定的中华人民共和国法院，可以本法院的名义出具证明。

法宝联想：　中央法规 1 篇　司法案例 41 篇

**第五百四十九条** 人民法院审理涉及香港、澳门特别行政区和台湾地区的民事诉讼案件，可以参照适用涉外民事诉讼程序的特别规定。

法宝联想：　司法案例 268 篇　期刊 1 篇

## 二十三、附则

**第五百五十条** 本解释公布施行后，最高人民法院于1992年7月14日发布的《关于适用〈中华人民共和国民事诉讼法〉若干问题的意见》同时废止；最高人民法院以前发布的司法解释与本解释不一致的，不再适用。

法宝联想：　司法案例 26 篇

**本篇引用的法规**
　中央法规
　　最高人民法院关于修改《最高人民法院关于适用<中华人民共和国民事诉讼法>的解释》的决定 (2022)
　　全国人民代表大会常务委员会关于修改《中华人民共和国民事诉讼法》的决定 (2021)

【法宝引证码】CLI.3.5115567

中华人民共和国民事诉讼法(2021修正)
最高人民法院关于修改《最高人民法院关于人民法院民事调解工作若干问题的规定》等十九件民事诉讼类司法解释的决定
中华人民共和国民法典
中华人民共和国仲裁法(2017修正)
中华人民共和国环境保护法(2014修订)
中华人民共和国消费者权益保护法(2013修正)
更多

## 引用本篇的法规 案例 论文

### 司法解释
企业法律风险提示——从控申检察办案看企业法律风险预防
最高人民法院对十三届全国人大五次会议第7481号建议的答复
最高人民法院对十三届全国人大五次会议第6912号建议的答复
最高人民法院对十三届全国人大五次会议第2260号建议的答复
最高人民法院对十三届全国人大五次会议第3784号建议的答复

### 部门规章
专利代理师考试委员会办公室关于向社会公众开展2023年专利代理师资格考试征题工作的通知

### 地方法规规章
广州市中级人民法院发布消费者权益保护十大典型案例
四川省高级人民法院、四川省市场监督管理局关于印发《关于开展专利纠纷行政调解协议司法确认的工作办法 (试行)》的通知
贵州省科技厅关于省政协十二届五次会议第1235号提案的答复
淄博市交通运输局关于修改《淄博市交通运输守信联合激励和失信联合惩戒对象名单管理办法 (试行)》的通知(2022)
上海市国有资产监督管理委员会关于印发上海市国资委监管企业合规管理系列指南 (2022版)的通知
上海市高级人民法院关于小额诉讼审判工作的实施细则
重庆市第三中级人民法院发布4起知识产权司法保护典型案例
廊坊市中级人民法院公布六起知识产权典型案例
更多

### 案例与裁判文书
李清刚、向育廷租赁合同纠纷执行实施执行裁定书
何贵勤、新疆巴州博渊汽车维修有限责任公司劳动争议执行实施执行裁定书
张晓燕、袁刚梁等借款合同纠纷执行实施执行裁定书
马婷、梁勇春等劳务合同纠纷执行实施执行裁定书
上海浦东发展银行股份有限公司奉贤支行与徐德清金融借款合同纠纷执行裁定书
程宝群、临沂市罗庄区金一米桥牛肉餐厅民事首次执行执行裁定书
浙江温州洞头农村商业银行股份有限公司、邵鹏鹏借款合同纠纷执行实施类执行裁定书
上海浦东发展银行股份有限公司奉贤支行与段立功金融借款合同纠纷执行裁定书
更多

### 法学期刊
个人信息保护检察公益诉讼程序充实与强化
《中华人民共和国仲裁法》修改背景下虚假仲裁检察监督探析
我国行政诉讼诉判关系的反思与重构
中国式可期待财产的控制：预查封的效力分析
对我国"消费公益"独立构造的反思
民政部门之遗产管理人角色相关疑难问题辨析
论破坏耕地的法律责任
融资性循环贸易纠纷裁判路径实证研究
更多

©北大法宝：（www.pkulaw.com）专业提供法律信息、法学知识和法律软件领域各类解决方案。北大法宝为您提供丰富的参考资料，正式引用法规条文时请与标准文本核对。 欢迎查看所有产品和服务。

法宝快讯： 如何快速找到您需要的检索结果？ 法宝 V6 有何新特色？

下载日期：2023-08-13

【法宝引证码】CLI.3.5115567



扫描二维码阅读原文

原文链接： https://www.pkulaw.com/chl/641e63ec6a640828bdfb.html

下载日期：2023-08-13

**Minutes of the National Symposium on the Foreign-related Commercial and Maritime Trial Work of Courts**

| | |
|---|---|
| Area of Law: | General Provisions on Economic Litigation |
| Level of Authority: | Documents of Judicial Interpretation Nature |
| Issuing Authority: | Supreme People's Court |
| Date Issued: | 2021 |
| Effective Date: | 2021 |
| Status: | Effective |

全国法院涉外商事海事审判工作座谈会会议纪要

Minutes of the National Symposium on the Foreign-related Commercial and Maritime Trial Work of Courts

（最高人民法院　2021年）

(Supreme People's Court, 2021)

目　录

Table of Contents

涉外商事部分

Foreign-related Commercial Trial

一、关于案件管辖

**I**. Jurisdiction over cases

二、关于诉讼当事人

**II**. Parties to legal proceedings

三、关于涉外送达

**III**. Foreign-related service

四、关于涉外诉讼证据

**IV**. Evidence in foreign-related legal proceedings

五、关于涉外民事关系的法律适用

**V**. Application of law to foreign-related civil relations

六、关于域外法查明

**VI**. Ascertainment of foreign laws

七、关于涉公司纠纷案件的审理

**VII**. Trial of cases involving company disputes

八、关于涉金融纠纷案件的审理

**VIII**. Trial of cases involving financial disputes

九、关于申请承认和执行外国法院判决案件的审理

**IX**. Trial of cases involving applications for recognition and enforcement of foreign court decisions

十、关于限制出境

**X**. Exit restrictions

海事部分

Maritime Trial

十一、关于运输合同纠纷案件的审理

**XI**. Trial of cases involving carriage contract disputes

十二、关于保险合同纠纷案件的审理

**XII**. Trial of insurance contract disputes

十三、关于船舶物权纠纷案件的审理

**XIII**. Trial of disputes over real rights in ships

Saved on: 02/22/2025

[CLI Code]CLI.3.5114710(EN)

十四、关于海事侵权纠纷案件的审理

**XIV**. Trial of cases involving maritime tort disputes

十五、关于其他海事案件的审理

**XV**. Trial of other maritime cases

仲裁司法审查部分

Judicial Review of Arbitration

十六、关于申请确认仲裁协议效力案件的审查

**XVI**. Review of cases involving applications for confirmation of the validity of arbitration agreements

十七、关于申请撤销或不予执行仲裁裁决案件的审查

**XVII**. Review of cases involving applications for setting aside or refusing enforcement of arbitral awards

十八、关于申请承认和执行外国仲裁裁决案件的审查

**XVIII**. Review of cases involving applications for recognition and enforcement of foreign arbitral awards

十九、关于仲裁司法审查程序的其他问题

**XIX**. Other issues on the procedures for judicial review of arbitration

二十、关于涉港澳台商事案件的参照适用

**XX**. Application mutatis mutandis to commercial and maritime cases related to Hong Kong, Macao, and Taiwan

涉外商事部分

Foreign-related Commercial Trial

一、关于案件管辖

[CLI Code]CLI.3.5114710(EN)

**I**. Jurisdiction over cases

1.【排他性管辖协议的推定】涉外合同或者其他财产权益纠纷的当事人签订的管辖协议明确约定由一国法院管辖，但未约定该管辖协议为非排他性管辖协议的，应推定该管辖协议为排他性管辖协议。

1. [Presumption of an exclusive jurisdiction agreement] If the jurisdiction agreement signed by the parties to a foreign-related contract or to other property disputes unequivocally stipulates that the court of a country has jurisdiction, without stating that the jurisdiction agreement is a non-exclusive jurisdiction agreement, the jurisdiction agreement shall be presumed to be exclusive.

2.【非对称管辖协议的效力认定】涉外合同或者其他财产权益纠纷的当事人签订的管辖协议明确约定一方当事人可以从一个以上国家的法院中选择某国法院提起诉讼，而另一方当事人仅能向一个特定国家的法院提起诉讼，当事人以显失公平为由主张该管辖协议无效的，人民法院不予支持；但管辖协议涉及消费者、劳动者权益或者违反 民事诉讼法专属管辖规定的除外。

2. [Determination of the validity of an asymmetric jurisdiction agreement] If the jurisdiction agreement signed by the parties to a foreign-related contract or the parties to other property disputes unequivocally stipulates that one party may select a court of a country from the courts of one or more countries involved to file a lawsuit and that the other party may file a lawsuit only with a court of a specific country, and the first party contends that the jurisdiction agreement is invalid on the grounds of unconscionability, the people's court shall not uphold the contention, unless the jurisdiction agreement involves the rights and interests of consumers or laborers, or violates the exclusive jurisdiction provisions of the Civil Procedure Law.

3.【跨境消费者网购合同管辖协议的效力】网络电商平台使用格式条款与消费者订立跨境网购合同，未采取合理方式提示消费者注意合同中包含的管辖条款，消费者根据民法典第四百九十六条的规定主张该管辖条款不成为合同内容的，人民法院应予支持。

3. [Validity of a jurisdiction agreement with respect to a cross-border consumer online purchase contract] Where an online e-commerce platform uses standard terms to conclude a cross-border online purchase contract with a consumer, without reminding the consumer by reasonable means to pay attention to the jurisdiction clause of the contract, and the consumer contends that the jurisdiction clause is not part of the contract according to Article 496 of the Civil Code, the people's court shall uphold the contention.

网络电商平台虽已尽到合理提示消费者注意的义务，但该管辖条款约定在消费者住所地国以外的国家法院诉讼，不合理加重消费者寻求救济的成本，消费者根据民法典第四百九十七条的规定主张该管辖条款无效的，人民法院应予

支持。

If the online e-commerce platform has fulfilled its obligation to reasonably remind the consumer to pay attention to the jurisdiction clause, which will unreasonably increase the consumer's cost of seeking relief by stipulating that a lawsuit shall be filed with a court of a country other than the country of the consumer's domicile, and the consumer contends that the jurisdiction clause is invalid according to Article 497 of the Civil Code, the people's court shall uphold the contention.

4.【主从合同约定不同管辖法院的处理】主合同和担保合同分别约定不同国家或者地区的法院管辖，且约定不违反民事诉讼法专属管辖规定的，应当依据管辖协议的约定分别确定管辖法院。当事人主张根据《最高人民法院关于适用＜中华人民共和国民法典＞有关担保制度的解释》第二十一条第二款的规定，根据主合同确定管辖法院的，人民法院不予支持。

4. [Disposition with respect to different competent courts under principal and accessory contracts] Where the principal contract and the contract on the provision of security respectively stipulate that courts of different countries or regions have jurisdiction, not in violation of the exclusive jurisdiction provisions of the Civil Procedure Law, competent courts shall be determined respectively according to the jurisdiction agreement. If a party contends that the competent court should be determined according to the principal contract in accordance with paragraph 2 of Article 21 of the Interpretation of the Supreme People's Court of the Application of the Relevant Guarantee System of the Civil Code of the People's Republic of China, the people's court shall not uphold the contention.

二、关于诉讼当事人

**II**. Parties to legal proceedings

5.【"有明确被告"的认定】原告对住所地在中华人民共和国领域外的被告提起诉讼，能够提供该被告存在的证明的，即符合民事诉讼法第一百二十二条第二项规定的"有明确的被告"。被告存在的证明可以是处于有效期内的被告商业登记证、身份证明、合同书等文件材料，不应强制要求原告就上述证明办理公证认证手续。

5. [Determination of "there is a clear defendant"] Where the plaintiff sues the defendant whose domicile is outside the territory of the People's Republic of China and provides proof of the existence of the defendant, "there is a clear defendant" provision of paragraph 2 of Article 122 of the Civil Procedure Law is complied with. The proof of the existence of the defendant may be the defendant's valid business registration certificate, identification, contract, or other documents, and the plaintiff shall not be compulsorily required to follow notarization and certification procedures for the foregoing proof.

6.【境外公司的诉讼代表人资格认定】在中华人民共和国领域外登记设立的公司因出现公司僵局、解散、重整、破产等原因，已经由登记地国法院指定司法管理人、清算管理人、破产管理人的，该管理人可以代表该公司参加诉讼。

6. [Qualifications as litigation representatives of overseas companies] Where a court of the country of registration of a company registered and formed outside the territory of the People's Republic of China has appointed a judicial manager, trustee in liquidation, or trustee in bankruptcy on the grounds of the company's corporate deadlock, dissolution, reorganization, or bankruptcy, among others, the judicial manager, trustee in liquidation, or trustee in bankruptcy may represent the company in participating in litigation.

管理人应当提交登记地国法院作出的判决、裁定及其公证认证手续等相关文件证明其诉讼代表资格。人民法院应当对上述证据组织质证，另一方当事人仅以登记地国法院作出的判决、裁定未经我国法院承认为由，否认管理人诉讼代表资格的，人民法院不予支持。

The judicial manager, trustee in liquidation, or trustee in bankruptcy shall submit the relevant documents, such as the decision or ruling made by the court of the country of registration and its notarization and certification procedures, to prove its qualifications as a litigation representative. The people's court shall organize a challenge to the above evidence, and if the opposite party denies the qualifications of the judicial manager, trustee in liquidation, or trustee in bankruptcy as a litigation representative only on the grounds that the decision or ruling made by the court of the country of registration has not been recognized by the Chinese court, the people's court shall not uphold the denial.

7.【外籍当事人委托公民代理的手续审查】根据民事诉讼法司法解释第五百二十八条、第五百二十九条的规定，涉外民事诉讼中的外籍当事人委托本国人为诉讼代理人或者委托本国律师以非律师身份担任诉讼代理人、外国驻华使领馆官员受本国公民委托担任诉讼代理人的，不适用民事诉讼法第六十一条第二款第三项的规定，无须提交当事人所在社区、单位或者有关社会团体的推荐函。

7. [Examination of the procedures for foreign parties to appoint citizens as representatives] Where according to Articles 528 and 529 of the Judicial Interpretation of the Civil Procedure Law, a foreign party to foreign-related civil litigation appoints a person from its country as its litigation representative, or a lawyer from its country to act as its litigation representative rather than in the capacity as a lawyer, or an official of a foreign embassy or consulate in China is appointed by a citizen of his or her country as a litigation representative, paragraph 2(3) of Article 61 of the Civil Procedure Law shall not apply, and a recommendation letter from the community, entity, or

[CLI Code]CLI.3.5114710(EN)

relevant social group where the party resides or works is not required to be submitted.

8.【外国当事人一次性授权的手续审查】外国当事人一次性授权诉讼代理人代理多个案件或者一个案件的多个程序，该授权办理了公证认证或者司法协助协定规定的相关证明手续，诉讼代理人有权在授权委托书的授权范围和有效期内从事诉讼代理行为。对方当事人以该诉讼代理人的授权未就单个案件或者程序办理公证认证或者证明手续为由提出异议的，人民法院不予支持。

8. [Examination of the procedures with respect to general powers of attorney given by foreign parties] Where a foreign party gives a general power of attorney authorizing its litigation representative to represent it in multiple cases, or in multiple proceedings of a case, and has followed notarization and certification procedures, or relevant proof procedures specified in a judicial assistance agreement, with respect to the power of attorney, the litigation representative shall have the power of litigation representation within the scope and validity period of the power of attorney. Where the opposite party raises an objection on the grounds that the notarization and certification procedures, or relevant proof procedures, have not been followed with respect to the power of attorney given to the litigation representative in relation to a single case or proceeding, the people's court shall not uphold the objection.

9.【境外寄交管辖权异议申请的审查】当事人从中华人民共和国领域外寄交或者托交管辖权异议申请的，应当提交其主体资格证明以及有效联系方式；未提交的，人民法院对其提出的管辖权异议不予审查。

9. [Examination of applications for jurisdictional objection communicated from overseas] Where a party communicates an application for jurisdictional objection in person or by agent from outside the territory of the People's Republic of China, the party shall submit proof of its qualifications as a party and valid contact information; if it fails to do so, the people's court shall refuse to examine the jurisdictional objection it has filed.

三、关于涉外送达

### III. Foreign-related service

10.【邮寄送达退件的处理】人民法院向在中华人民共和国领域内没有住所的受送达人邮寄送达司法文书，如邮件被退回，且注明原因为"该地址查无此人""该地址无人居住"等情形的，视为不能用邮寄方式送达。

10. [Disposition with respect to returned documents served by mail] Where the people's court serves by mail a judicial document on the person being served who has no domicile within the territory of the People's Republic of China, and the mail is returned for "addressee not found at the address," "unoccupied address," or any other stated reason, service by mail shall be deemed to be

impossible.

11.【电子送达】人民法院向在中华人民共和国领域内没有住所的受送达人送达司法文书，如受送达人所在国法律未禁止电子送达方式的，人民法院可以依据民事诉讼法第二百七十四条的规定采用电子送达方式，但违反我国缔结或参加的国际条约规定的除外。

11. [Electronic service] Where a people's court serves a judicial document on the person to be served who has no domicile within the territory of the People's Republic of China, and the law of the country of the person to be served does not prohibit electronic service, the people's court may conduct electronic service in accordance with Article 274 of the Civil Procedure Law, unless electronic service contravenes the international treaties concluded or acceded to by China.

受送达人所在国系《海牙送达公约》成员国，并在公约项下声明反对邮寄方式送达的，应推定其不允许电子送达方式，人民法院不能采用电子送达方式。

If the country of the person to be served is a state party to the Hague Service Convention and declares its opposition to service by mail under the Convention, it shall be presumed to disallow electronic service, and the people's court may not conduct electronic service.

12.【外国自然人的境内送达】人民法院对外国自然人采用下列方式送达，能够确认受送达人收悉的，为有效送达：

12. [Domestic service on foreign natural persons] Where a people's court conducts service on a foreign natural person by the following means and can confirm receipt by the person to be served, the service shall be valid:

（一）向其在境内设立的外商独资企业转交送达；

(1) Service through a wholly foreign-owned enterprise formed by him or her within the territory of China.

（二）向其在境内担任法定代表人、公司董事、监事和高级管理人员的企业转交送达；

(2) Service through the enterprise of which he or she is the legal representative, a director, a supervisor, or an officer within the territory of China.

（三）向其同住成年家属转交送达；

(3) Service through an adult family member who lives with him or her.

（四）通过能够确认受送达人收悉的其他方式送达。

[CLI Code]CLI.3.5114710(EN)

(4) Service by any other means capable of confirming receipt by the person to be served.

13.【送达地址的认定】在中华人民共和国领域内没有住所的当事人未填写送达地址确认书，但在诉讼过程中提交的书面材料明确载明地址的，可以认定该地址为送达地址。

13. [Determination of service addresses] If a party without domicile in the territory of the People's Republic of China fails to fill in a written confirmation of service address, but the written materials submitted during the litigation process unequivocally contain the address, the address may be determined as the service address.

14.【管辖权异议文书的送达】对涉外商事案件管辖权异议程序的管辖权异议申请书、答辩书等司法文书，人民法院可以仅在相对方当事人之间进行送达，但管辖权异议裁定书应当列明并送达所有当事人。

14. [Service of jurisdictional objection documents] A people's court may serve judicial documents, such as a challenge to jurisdiction and the statement of defense in the jurisdictional objection proceeding in a foreign-related commercial case, only on the opposing parties, but its ruling on the challenge to jurisdiction shall contain and be served on all parties.

四、关于涉外诉讼证据

IV. Evidence in foreign-related legal proceedings

15.【外国法院判决、仲裁裁决等作为证据的认定】一方当事人将外国法院作出的发生法律效力的判决、裁定或者外国仲裁机构作出的仲裁裁决作为证据提交，人民法院应当组织双方当事人质证后进行审查认定，但该判决、裁定或者仲裁裁决认定的事实，不属于民事诉讼法司法解释第九十三条第一款规定的当事人无须举证证明的事实。一方当事人仅以该判决、裁定或者仲裁裁决未经人民法院承认为由主张不能作为证据使用的，人民法院不予支持。

15. [Recognition of foreign court decisions and arbitral awards, among others, as evidence] Where a party submits an effective decision or ruling made by a foreign court, or an arbitral award made by a foreign arbitration institution, as evidence, the people's court shall conduct an examination and determination after arranging for the parties on both sides to challenge the evidence, provided that any fact found by the decision, ruling, or arbitral award is not the fact specified in paragraph 1 of Article 93 of the Judicial Interpretation of the Civil Procedure Law of which the parties are not required to present evidence. Where a party contends that the decision, ruling, or arbitral award cannot be used in evidence only on the grounds that the decision, ruling, or arbitral award has not been recognized by the people's court, the people's court shall not uphold the contention.

16.【域外公文书证】《最高人民法院关于民事诉讼证据的若干规定》第十六条规定的公文书证包括外国法院作出

的判决、裁定，外国行政机关出具的文件，外国公共机构出具的商事登记、出生及死亡证明、婚姻状况证明等文件，但不包括外国鉴定机构等私人机构出具的文件。

16. [Foreign official documentary evidence] For the purposes of Article 16 of Some Provisions of the Supreme People's Court on Evidence in Civil Procedures, official documentary evidence shall include the decisions and rulings made by foreign courts, documents issued by foreign administrative authorities, and commercial registration, birth and death certificates, marital status certificates, and other documents issued by foreign public authorities, but exclude documents issued by foreign forensic service institutions and other private institutions.

公文书证在中华人民共和国领域外形成的，应当经所在国公证机关证明，或者履行相应的证明手续，但是可以通过互联网方式核查公文书证的真实性或者双方当事人对公文书证的真实性均无异议的除外。

If official documentary evidence originates outside the territory of the People's Republic of China, it shall be proved by a notary office of the country where it originates, or the corresponding proof procedures shall be followed, unless the authenticity of the official documentary evidence can be corroborated on the Internet, or the parties on both sides do not challenge the authenticity of the official documentary evidence.

17.【庭审中翻译费用的承担】诉讼过程中翻译人员出庭产生的翻译费用，根据《诉讼费用交纳办法》第十二条第一款的规定，由主张翻译或者负有翻译义务的一方当事人直接预付给翻译机构，人民法院不得代收代付。

17. [Bearing of translation costs during the court trial] A party who requests translation or has an obligation of translation shall prepay to the translation institution the translation costs incurred in a translator's appearing in court during the litigation process shall, according to paragraph 1 of Article 12 of the Measures for the Payment of Litigation Costs, and the people's court shall not collect on the behalf of the translation institution, or pay on the behalf of the party, such costs.

人民法院应当在裁判文书中载明翻译费用，并根据《诉讼费用交纳办法》第二十九条的规定确定由败诉方负担。部分胜诉、部分败诉的，人民法院根据案件的具体情况决定当事人各自负担的数额。

The people's court shall specify the translation costs in its adjudicative document, and determine that the losing party shall bear the translation costs according to Article 29 of the Measures for the Payment of Litigation Costs. In the case of a partial win and partial loss on both parties, the people's court shall decide the amount to be borne by the parties according to the specific circumstances of the case.

五、关于涉外民事关系的法律适用

V. Application of law to foreign-related civil relations

[CLI Code]CLI.3.5114710(EN)

18.【国际条约未规定事项和保留事项的法律适用】中华人民共和国缔结或者参加的国际条约对涉外民商事案件中的具体争议没有规定，或者案件的具体争议涉及保留事项的，人民法院根据 涉外民事关系法律适用法 等法律的规定确定应当适用的法律。

18. [Application of law to matters not provided for in international treaties and matters reserved thereto] Where the international treaties concluded or acceded to by the People's Republic of China do not provide for the specific disputes in foreign-related civil and commercial cases, or the specific disputes in the cases involve reserved matters, the people's court shall determine the applicable law in accordance with the Law on Choice of Law for Foreign-related Civil Relationships and other laws.

19.【《联合国国际货物销售合同公约》的适用】营业地位于《联合国国际货物销售合同公约》不同缔约国的当事人缔结的国际货物销售合同应当自动适用该公约的规定，但当事人明确约定排除适用该公约的除外。人民法院应当在法庭辩论终结前向当事人询问关于适用该公约的具体意见。

19. [Application of the United Nations Convention on Contracts for the International Sale of Goods] A contract for the international sale of goods concluded between parties whose places of business are in different states, the parties to the United Nations Convention on Contracts for the International Sale of Goods shall automatically be governed by the Convention unless the parties expressly agree to exclude the application of the Convention. The people's court shall request the specific opinions of the parties on the application of the Convention before the conclusion of the court debate.

20.【法律与国际条约的一致解释】人民法院审理涉外商事案件所适用的中华人民共和国法律、行政法规的规定存在两种以上合理解释的，人民法院应当选择与中华人民共和国缔结或者参加的国际条约相一致的解释，但中华人民共和国声明保留的条款除外。

20. [Interpretation of laws consistent with international treaties] Where there are not less than two reasonable interpretations of the laws and administrative regulations of the People's Republic of China applicable to a foreign-related commercial case pending before the people's court, the people's court shall choose the interpretation consistent with the international treaties concluded or acceded to by the People's Republic of China, except those provision to which the People's Republic of China has declared reservations.

六、关于域外法查明

**VI**. Ascertainment of foreign laws

[CLI Code]CLI.3.5114710(EN)

21.【查明域外法的途径】人民法院审理案件应当适用域外法律时，可以通过下列途径查明：

21. [Means of ascertaining foreign laws] When a people's court is to apply foreign law to a case pending before it, it may ascertain the foreign law by the following means:

（1）由当事人提供；

(1) Provision by the parties.

（2）由中外法律专家提供；

(2) Provision by a Chinese and foreign law expert.

（3）由法律查明服务机构提供；

(3) Provision by a law ascertaining service institution.

（4）由最高人民法院国际商事专家委员提供；

(4) Provision by the International Commercial Expert Committee of the Supreme People's Court.

（5）由与我国订立司法协助协定的缔约相对方的中央机关提供；

(5) Provision by the central authority of the party that has concluded a mutual legal assistance agreement with China.

（6）由我国驻该国使领馆提供；

(6) Provision by the Chinese embassy or consulate in the country.

（7）由该国驻我国使领馆提供；

(7) Provision by the embassy and consulate of the country in China.

（8）其他合理途径。

(8) Other reasonable means.

通过上述途径提供的域外法律资料以及专家意见，应当在法庭上出示，并充分听取各方当事人的意见。

The foreign legal materials and expert opinions provided by the above means shall be presented in court, with the opinions of all parties fully listened to.

Saved on: 02/22/2025

[CLI Code]CLI.3.5114710(EN)

22.【委托国际商事专家委员提供咨询意见】人民法院委托最高人民法院国际商事专家委员就审理案件涉及的国际条约、国际商事规则、域外法律的查明和适用等法律问题提供咨询意见的，应当通过高级人民法院向最高人民法院国际商事法庭协调指导办公室办理寄交书面委托函，写明需提供意见的法律所属国别、法律部门、法律争议等内容，并附相关材料。

22. [Commissioning the International Commercial Expert Committee of the Supreme People's Court to provide advisory opinions] A people's court which commissions the International Commercial Expert Committee of the Supreme People's Court to provide advisory opinions on legal issues, such as international treaties, international commercial rules, and ascertainment and application of foreign laws involved in the trial of a case, shall apply via a high people's court to the Coordination and Guidance Office of the International Commercial Court of the Supreme People's Court for communicating a written commission letter, stating the country, fields, disputes, and other contents of the laws on which opinions are sought, with relevant accompanying materials.

23.【域外法专家出庭】当事人可以依据民事诉讼法第八十二条的规定申请域外法专家出庭。

23. [Foreign law expert appears in court] A party may apply for a foreign law expert' appearance in court in accordance with Article 82 of the Civil Procedure Law.

人民法院可以就专家意见书所涉域外法的理解，对出庭的专家进行询问。经法庭准许，当事人可以对出庭的专家进行询问。专家不得参与域外法查明事项之外的法庭审理活动。专家不能现场到庭的，人民法院可以根据案件审理需要采用视频方式询问。

The people's court may question the expert appearing in court about the understanding of the foreign law involved in the expert opinion. With the permission of the court, a party may question the expert appearing in court. The expert may not participate in court trial activities rather than with respect to matters Concerning the ascertainment of foreign law. If the expert is unable to be present in court, the people's court may put questions by means of video teleconferencing as needed by the trial of the case.

24.【域外法内容的确定】双方当事人提交的域外法内容相同或者当事人对相对方提交的域外法内容无异议的，人民法院可以作为域外法依据予以确定。当事人对相对方提交的域外法内容有异议的，人民法院应当结合质证认证情况进行审查认定。人民法院不得仅以当事人对域外法内容存在争议为由认定不能查明域外法。

24. [Determination of the contents of foreign laws] Where the contents of foreign laws submitted by the parties on both sides are identical, or the parties have no objection to the contents of foreign laws submitted by the opposite parties, the people's court may determine the foreign laws as a basis. Where the parties have an objection to the contents of foreign laws submitted by the

opposite parties, the people's court shall conduct an examination and determination based on the challenge to and authentication of evidence. The people's court shall not find it impossible to ascertain the foreign law only on the grounds that the parties are involved in a dispute over the contents of foreign laws.

25.【域外法查明不能的认定】当事人应当提供域外法的，人民法院可以根据案件具体情况指定查明域外法的期限并可依据当事人申请适当延长期限。当事人在延长期限内仍不能提供的，视为域外法查明不能。

25. [Determination of impossibility to ascertain foreign law] Where a party is required to provide foreign laws, the people's court may fix a period for ascertaining the foreign laws according to the specific circumstances of the case, and appropriately extend the period upon the application of the party. If the party remains unable to provide the foreign laws within the extended period, ascertainment of foreign laws shall be deemed to be impossible.

26.【域外法查明费用】对于应当适用的域外法，根据涉外民事关系法律适用法第十条第一款的规定由当事人提供的，查明费用由当事人直接支付给查明方，人民法院不得代收代付。人民法院可以根据当事人的诉讼请求和具体案情，对当事人因查明域外法而发生的合理费用予以支持。

26. [Costs of ascertainment of foreign laws] Where a party is required by paragraph 1 of Article 10 of the Law on Choice of Law for Foreign-related Civil Relationships to provide applicable foreign laws, the party shall directly pay ascertainment costs to the ascertaining party, and the people's court shall not collect on the behalf of the ascertaining party, or pay on the behalf of the party, such costs. The people's court may, according to the parties' claims and specific circumstances of the case, uphold the reasonable expenses incurred by the party in ascertaining foreign laws.

七、关于涉公司纠纷案件的审理

**VII**. Trial of cases involving company disputes

27.【境外公司内部决议效力的法律适用】在中华人民共和国领域外登记设立的公司作出的内部决议的效力，人民法院应当适用登记地国的法律并结合公司章程的相关规定予以审查认定。

27. [Application of law with respect to the validity of resolutions of overseas companies] A people's court shall examine and determine the validity of the resolutions adopted by a company registered and formed outside the territory of the People's Republic of China, according to the laws of the country of registration, in light of the relevant provisions of the company's bylaws.

28.【境外公司意思表示的认定】在中华人民共和国领域外登记设立的公司的董事代表公司在合同书、信件、数据

电文等载体上签字订立合同的行为，可以视为该公司作出的意思表示，未加盖该公司的印章不影响代表行为的效力，但当事人另有约定或者登记地国法律另有规定的除外。

28. [Determination of the declaration of will made by overseas companies] Where the directors of a company registered and formed outside the territory of the People's Republic of China represents the company in signing a written contract, correspondence, a data message, or any other medium to enter into a contract, the company may be deemed to have made a declaration of will, and failure to affix the company's seal shall not affect the validity of the representative act, unless otherwise agreed by the parties or provided by the laws of the country of registration.

公司章程或者公司权力机构对董事代表权的限制，不得对抗善意相对人，但登记地国法律另有规定的除外。

Any restriction imposed by the company's bylaw or the governing body of the company on directors' power of representation shall be without effect against the bona fide another party, unless otherwise provided by the laws of the country of registration.

29.【外商投资企业隐名投资协议纠纷】因外商投资企业隐名投资协议产生的纠纷，实际投资者请求确认其在外商投资企业中的股东身份或者请求变更股东身份，并提供证据证明其已实际投资且名义股东以外的其他股东认可实际投资者的股东身份的，对其诉讼请求按照以下方式处理：

29. [Disputes over agreements for beneficial ownership of foreign-funded enterprises] Where a dispute arises from a beneficial ownership agreement of a foreign-funded enterprise, and the beneficial owner claims a confirmation or modification of its shareholder status in the foreign-funded enterprise and provides evidence that it has made actual investments and that the shareholders other than the registered shareholder recognize the shareholder status of the beneficial owner, disposition shall be made by the following means with respect to its claim:

（1）外商投资企业属于外商投资准入负面清单禁止投资领域的，人民法院不予支持；

(1) If the foreign-funded enterprise operates in a field in which investment is prohibited by the negative list for the access of foreign investment, the people's court shall not uphold the claim.

（2）外商投资企业属于外商投资准入负面清单以外投资领域的，人民法院应当判决由名义股东履行将所持股权转移登记至实际投资者名下的义务，外商投资企业负有协助办理股权转移登记手续的义务；

(2) If the foreign-funded enterprise operates in an investment field not on the negative list for the access of foreign investment, the people's court shall make a decision that the registered shareholder shall perform the obligation to transfer the registration of the equities it holds to the beneficial owner and that the foreign-funded enterprise shall have an obligation to assist in following the procedures for transferring the registration of equity shares.

Saved on: 02/22/2025

[CLI Code]CLI.3.5114710(EN)

（3）外商投资企业属于外商投资准入负面清单限制投资领域的，人民法院应当判决由名义股东履行将所持股权转移登记至实际投资者名下的义务，并协助外商投资企业办理报批手续。判决可以同时载明，不履行报批手续的，实际投资者可自行报批。

(3) If the foreign-funded enterprise operates in a field in which investment is restricted by the negative list for the access of foreign investment, the people's court shall make a decision that the registered shareholder shall perform the obligation to transfer the registered equity shares it holds to the beneficial owner and assist the foreign-funded enterprise in following the approval procedures, and may also state in the decision that if the approval procedures are not followed, the beneficial owner may apply for approval independently.

因相对人已从名义股东处善意取得外商投资企业股权，或者实际投资者依据前款第 3 项报批后未获外商投资企业主管机关批准，导致股权变更事实上无法实现的，实际投资者可就隐名投资协议另行提起合同损害赔偿之诉。

If the other party has acquired the equity shares of the foreign-funded enterprise in good faith from the registered shareholder, or the beneficial owner is denied approval by the authority overseeing the foreign-funded enterprise on an application for approval according to (3) of the preceding paragraph, rendering modification of equity shares practically impossible, the beneficial owner may separately bring an action for contractual damages with respect to the beneficial ownership agreement.

八、关于涉金融纠纷案件的审理

**VIII**. Trial of cases involving financial disputes

30.【独立保函止付申请的初步实体审查】人民法院审理独立保函欺诈纠纷案件时，对当事人提出的独立保函止付申请，应当根据《最高人民法院关于审理独立保函纠纷案件若干问题的规定 》第十四条的规定进行审查，并根据第十二条的规定就是否存在欺诈的止付事由进行初步实体审查；应当根据第 十六条的规定在裁定中列明初步查明的事实和是否准许止付申请的理由。

30. [Prima facie substantive examination of applications for stopping payment of independent guarantees] A people's court in hearing a case involving an independent guarantee fraud dispute shall, on application by a party for stopping payment of the independent guarantee, conduct an examination in accordance with Article 14 of the Provisions of the Supreme People's Court on Several Issues Concerning the Trial of Independent Guarantee Dispute Cases, and conduct a prima facie substantive examination of whether there is a fraudulent stop of payment in accordance with Article 12 of the same; enumerate the facts ascertained prima facie and the grounds for whether or

[CLI Code]CLI.3.5114710(EN)

not to grant the application for stopping payment in accordance with Article 16 of the same.

31.【信用证通知行过错及责任认定】通知行在信用证项下的义务为审核确认信用证的表面真实性并予以准确通知。通知行履行通知义务存在过错并致受益人损失的，应当承担相应的侵权责任，但赔偿数额不应超过信用证项下未付款金额及利息。受益人主张通知行赔偿其在基础合同项下所受损失的，人民法院不予支持。

31. [Determination of the fault and liability of advising banks under a letter of credit] An advising bank shall have an obligation under a letter of credit to examine and confirm the prima facie authenticity of the letter of credit and give accurate advice. If the advising bank causes any loss to the beneficiary caused by its fault in performing the obligation of advice, it shall bear the corresponding tort liability, provided that the amount of compensation shall not exceed the unpaid amount with interest under the letter of credit. If the beneficiary contends that the advising bank should pay compensation for its loss suffered under the underlying contract, the people's court shall not uphold the contention.

32.【外币逾期付款利息】外币逾期付款情形下，当事人就逾期付款主张利息损失时，当事人有约定的，按当事人约定处理；当事人未约定的，可以参照中国银行同期同类外币贷款利率计算。

32. [Interest on overdue payments in foreign currency] In the case of overdue payments in foreign currency, when a party claims loss of interest thereon, disposition shall be made according to the agreement between the parties, if any, or in the absence of such agreement, the loss of interest shall be calculated by referring to the rate of interest on foreign currency loans of the same kind of Chinese banks for the same period.

九、关于申请承认和执行外国法院判决案件的审理

IX. Trial of cases involving applications for recognition and enforcement of foreign court decisions

33.【审查标准及适用范围】人民法院在审理申请承认和执行外国法院判决、裁定案件时，应当根据 民事诉讼法第二百八十九条 以及民事诉讼法司法解释第五百四十四条第一款的规定，首先审查该国与我国是否缔结或者共同参加了国际条约。有国际条约的，依照国际条约办理；没有国际条约，或者虽然有国际条约但国际条约对相关事项未作规定的，具体审查标准可以适用本纪要。

33. [Examination criteria and scope of application] When a people's court hears a case involving an application for recognition and enforcement of a foreign court decision or ruling, it shall first examine whether the country and China have concluded or jointly acceded to an international treaty in accordance with Article 289 of the Civil Procedure Law and paragraph 1 of Article 544 of the Judicial Interpretation of the Civil Procedure Law. Disposition shall be made in accordance with

Saved on: 02/22/2025

[CLI Code]CLI.3.5114710(EN)

the international treaty, if any; or in the absence of such international treaty, or if there is an international treaty which is silent on the relevant matter, the specific examination criteria under these Minutes may apply.

破产案件、知识产权案件、不正当竞争案件以及垄断案件因具有较强的地域性、特殊性，相关判决的承认和执行不适用本纪要。

These Minutes may not apply to the recognition and enforcement of relevant decisions on bankruptcy cases, intellectual property cases, unfair competition cases, and monopoly cases because of their strong regional character and particularity.

34.【申请人住所地法院管辖的情形】申请人申请承认外国法院判决、裁定，但被申请人在我国境内没有住所地，且其财产也不在我国境内的，可以由申请人住所地的中级人民法院管辖。

34. [Circumstances under which the court in the place of domicile of an applicant has jurisdiction] Where an applicant applies for recognition of a decision or ruling of a foreign court, and the respondent has neither domicile nor property in the territory of China, the intermediate people's court in the place of domicile of the applicant may have jurisdiction.

35.【申请材料】申请人申请承认和执行外国法院判决、裁定，应当提交申请书并附下列文件：

35. [Application materials] An applicant applying for recognition and enforcement of a decision or ruling of a foreign court shall submit a written application accompanied by the following documents:

（1）判决书正本或者经证明无误的副本；

(1) The original or certified copy of the decision.

（2）证明判决已经发生法律效力的文件；

(2) A document proving that the decision has taken legal effect.

（3）缺席判决的，证明外国法院合法传唤缺席方的文件。

(3) In the case of a default decision, a document proving that the foreign court has legally summonsed the absent party.

判决、裁定对前款第2项、第3项的情形已经予以说明的，无需提交其他证明文件。

If the decision or ruling contains an explanation of the circumstances in subparagraphs (2) and (3) of the preceding paragraph, the other supporting documents are not required to be submitted.

Saved on: 02/22/2025

[CLI Code]CLI.3.5114710(EN)

申请人提交的判决及其他文件为外文的，应当附有加盖翻译机构印章的中文译本。

The decision and other documents submitted by the applicant, if in a foreign language, shall be accompanied by a Chinese translation bearing the stamp of the translation institution.

申请人提交的文件如果是在我国领域外形成的，应当办理公证认证手续，或者履行中华人民共和国与该所在国订立的有关国际条约规定的证明手续。

If the documents submitted by the applicant originate outside the territory of China, the notarization and certification procedures, or the proof procedures under the relevant international treaties concluded between the People's Republic of China and the country where the documents originate shall be followed.

36.【申请书】申请书应当载明下列事项：

36. [Written application] A written application shall state the following matters:

（1）申请人、被申请人。申请人或者被申请人为自然人的，应当载明其姓名、性别、出生年月、国籍、住所及身份证件号码；为法人或者非法人组织的，应当载明其名称、住所地，以及法定代表人或者代表人的姓名和职务；

(1) The applicant and the respondent. The name, gender, date of birth, nationality, domicile, and identification number, in the case of a natural person; or the name, domicile, and the name and position of the legal representative or representative, in the case of a legal person or an unincorporated organization.

（2）作出判决的外国法院名称、裁判文书案号、诉讼程序开始日期和判决日期；

(2) The name of the foreign court that made the decision, the case number of the adjudicative document, the start date of the proceedings, and the date of the decision.

（3）具体的请求和理由；

(3) Specific claims and grounds.

（4）申请执行判决的，应当提供被申请人的财产状况和财产所在地，并说明该判决在我国领域外的执行情况；

(4) In the case of an application for enforcement of a decision, the status of the respondent's property, the place of property, and an explanation of enforcement of the decision outside the territory of China.

（5）其他需要说明的情况。

(5) Other conditions required to be explained.

37.【送达被申请人】当事人申请承认和执行外国法院判决、裁定，人民法院应当在裁判文书中将对方当事人列为被申请人。双方当事人都提出申请的，均列为申请人。

37. [Service on respondents] When a party applies for recognition and enforcement of a decision or ruling of a foreign court, the people's court shall name each opposite party as the respondent in its adjudicative document. If the parties on both sides apply, they shall be all named as applicants.

人民法院应当将申请书副本送达被申请人。被申请人应当在收到申请书副本之日起十五日内提交意见；被申请人在中华人民共和国领域内没有住所的，应当在收到申请书副本之日起三十日内提交意见。被申请人在上述期限内不提交意见的，不影响人民法院审查。

The people's court shall serve a copy of the application on the respondent. The respondent shall submit an opinion within 15 days of receipt of the copy, or within 30 days of receipt of the copy, if the respondent has no domicile in the territory of the People's Republic of China. Failure of the respondent to do so shall not affect the examination by the people's court.

38.【管辖权异议的处理】人民法院受理申请承认和执行外国法院判决、裁定案件后，被申请人对管辖权有异议的，应当自收到申请书副本之日起十五日内提出；被申请人在中华人民共和国领域内没有住所的，应当自收到申请书副本之日起三十日内提出。

38. [Disposition of a challenge to jurisdiction] After a people's court accepts an application for recognition and enforcement of a decision or ruling of a foreign court, the respondent shall file a challenge to jurisdiction, if any, within 15 days of receipt of a copy of the application, or within 30 days of receipt of the copy, if the respondent has no domicile in the territory of the People's Republic of China.

人民法院对被申请人提出的管辖权异议，应当审查并作出裁定。当事人对管辖权异议裁定不服的，可以提起上诉。

The people's court shall examine and rule on the challenge to jurisdiction filed by the respondent. A party may appeal the ruling on the challenge to jurisdiction.

39.【保全措施】当事人向人民法院申请承认和执行外国法院判决、裁定，人民法院受理申请后，当事人申请财产保全的，人民法院可以参照民事诉讼法及相关司法解释的规定执行。申请人应当提供担保，不提供担保的，裁定驳回申请。

39. [Interim measures] Where a party applies for property attachment after the people's court

[CLI Code]CLI.3.5114710(EN)

accepts its application for recognition and enforcement of a decision or ruling of a foreign court, the people's court may proceed with the attachment according to the Civil Procedure Law and the relevant judicial interpretations, mutatis mutandis. The applicant shall provide security, or if it fails to do so, a ruling shall be made to dismiss its application.

40.【立案审查】申请人的申请不符合立案条件的，人民法院应当裁定不予受理，同时说明不予受理的理由。已经受理的，裁定驳回申请。当事人不服的，可以提起上诉。人民法院裁定不予受理或者驳回申请后，申请人再次申请且符合受理条件的，人民法院应予受理。

40. [Case docketing examination] Where an applicant's application does not meet the requirements for case docketing, the people's court shall refuse the application, with an explanation of the grounds for refusal, or to dismiss the application, if the application has been accepted. The party, if dissatisfied, may appeal the ruling. If the applicant files another application that meets the requirements for acceptance, after the people's court makes the ruling to refuse or dismiss the application, the people's court shall accept its application.

41.【外国法院判决的认定标准】人民法院应当根据外国法院判决、裁定的实质内容，审查认定该判决、裁定是否属于民事诉讼法第二百八十九条规定的"判决、裁定"。

41. [Criteria for the determination of foreign court decisions] A people's court shall, based on the merit of a decision or ruling of a foreign court, examine and determine whether the decision or ruling is a "decision or ruling" under Article 289 of the Civil Procedure Law.

外国法院对民商事案件实体争议作出的判决、裁定、决定、命令等法律文书，以及在刑事案件中就民事损害赔偿作出的法律文书，应认定属于民事诉讼法第二百八十九条规定的"判决、裁定"，但不包括外国法院作出的保全裁定以及其他程序性法律文书。

A court decision, ruling, edict, order, or any other legal document on the dispute over the merits of a civil or commercial case, or a legal document on civil damages in a criminal case, made by a foreign court, other than a ruling on an interim measure or any other procedural legal instrument made by a foreign court, shall be determined as a "decision or ruling" under Article 289 of the Civil Procedure Law.

42.【判决生效的认定】人民法院应当根据判决作出国的法律审查该判决、裁定是否已经发生法律效力。有待上诉或者处于上诉过程中的判决、裁定不属于民事诉讼法第二百八十九条规定的"发生法律效力的判决、裁定"。

42. [Determination of the effectiveness of court decisions] A people's court shall examine whether a decision or ruling has taken effect according to the laws of the country where the decision or ruling is made. A decision or ruling to be appealed, or subject to appeal is not an "effective decision

or ruling" under Article 289 of the Civil Procedure Law.

43.【不能确认判决真实性和终局性的情形】人民法院在审理申请承认和执行外国法院判决、裁定案件时，经审查，不能够确认外国法院判决、裁定的真实性，或者该判决、裁定尚未发生法律效力的，应当裁定驳回申请。驳回申请后，申请人再次申请且符合受理条件的，人民法院应予受理。

43. [Inability to confirm the authenticity and finality of court decisions] Where a people's court is unable to confirm the authenticity of a decision or ruling of a foreign court when hearing a case involving an application for the recognition and enforcement of the decision or ruling, or the decision or ruling has not taken effect, the people's court shall dismiss the application. If the applicant files another application that meets the requirements for acceptance, after the dismissal of the application, the people's court shall accept its application.

44.【互惠关系的认定】人民法院在审理申请承认和执行外国法院判决、裁定案件时，有下列情形之一的，可以认定存在互惠关系：

44. [Determination of reciprocal relationships] When hearing a case involving an application for the recognition and enforcement of a decision or ruling of a foreign court, a people's court may determine that there is a reciprocal relationship under any of the following circumstances:

（1）根据该法院所在国的法律，人民法院作出的民商事判决可以得到该国法院的承认和执行；

(1) According to the laws of the country of the foreign court, the civil and commercial decisions made by people's courts can be recognized or enforced by the courts of the country.

（2）我国与该法院所在国达成了互惠的谅解或者共识；

(2) China has reached an understanding or consensus on reciprocity with the country of the foreign court.

（3）该法院所在国通过外交途径对我国作出互惠承诺或者我国通过外交途径对该法院所在国作出互惠承诺，且没有证据证明该法院所在国曾以不存在互惠关系为由拒绝承认和执行人民法院作出的判决、裁定。

(3) The country of the foreign court gives an undertaking as to reciprocity to China through diplomatic channels, or China gives an undertaking as to reciprocity to the country of the foreign court through diplomatic channels, and there is no evidence that the country of the foreign court refused to recognize and enforce the decisions and rulings of people's courts for want of a reciprocal relationship.

人民法院对于是否存在互惠关系应当逐案审查确定。

The people's court shall examine and determine whether there is a reciprocal relationship on a case-by-case basis.

45.【惩罚性赔偿判决】外国法院判决的判项为损害赔偿金且明显超出实际损失的，人民法院可以对超出部分裁定不予承认和执行。

45. [Court decisions awarding punitive damages] Where a decision of a foreign court awards damages in conspicuous excess of actual loss, the people's court may refuse to recognize and enforce the excess.

46.【不予承认和执行的事由】对外国法院作出的发生法律效力的判决、裁定，人民法院按照互惠原则进行审查后，认定有下列情形之一的，裁定不予承认和执行：

46. [Causes of refusing recognition and enforcement] Where a people's court determines that an effective decision or ruling made by a foreign court falls under any of the following circumstances, after conducting an examination in accordance with the principle of reciprocity, the people's court shall refuse recognition and enforcement:

（一）根据中华人民共和国法律，判决作出国法院对案件无管辖权；

(1) According to the laws of the People's Republic of China, the courts of the country where the decision is made have no jurisdiction over the case.

（二）被申请人未得到合法传唤或者虽经合法传唤但未获得合理的陈述、辩论机会，或者无诉讼能力的当事人未得到适当代理；

(2) The respondent fails to be legally summonsed or is legally summonsed without being given a reasonable opportunity for a statement and argument, or a party incapable of litigation fails to be properly represented.

（三）判决通过欺诈方式取得；

(3) The decision is obtained by fraud.

（四）人民法院已对同一纠纷作出判决，或者已经承认和执行第三国就同一纠纷做出的判决或者仲裁裁决。

(4) The people's court has made a decision on the same dispute or has recognized and enforced a decision or arbitral award made by a third country on the same dispute.

外国法院作出的发生法律效力的判决、裁定违反中华人民共和国法律的基本原则或者国家主权、安全、社会公共利益的，不予承认和执行。

If an effective decision or ruling made by a foreign court violates the basic principles of the laws, national sovereignty or security, or public interest of the People's Republic of China, recognition, and enforcement shall be refused.

47.【违反仲裁协议作出的外国判决的承认】外国法院作出缺席判决后，当事人向人民法院申请承认和执行该判决，人民法院经审查发现纠纷当事人存在有效仲裁协议，且缺席当事人未明示放弃仲裁协议的，应当裁定不予承认和执行该外国法院判决。

47. [Recognition of foreign court decisions made in violation of an arbitration agreement] Where on application by a party for the recognition and enforcement of a default decision made by a foreign court, the people's court discovers upon examination that the parties to the dispute have a valid arbitration agreement and that the absent party has not expressly renounced the arbitration agreement, the people's court shall refuse to recognize and enforce the decision of the foreign court.

48.【对申请人撤回申请的处理】人民法院受理申请承认和执行外国法院判决、裁定案件后，作出裁定前，申请人请求撤回申请的，可以裁定准许。

48. [Disposition of applicants' withdrawal of applications] Where an applicant requests withdrawal of its application for recognition and enforcement of a decision or ruling of a foreign court after the people's court accepts the case involving the application, and before it makes a ruling, the people's court may endorse the request.

人民法院裁定准许撤回申请后，申请人再次申请且符合受理条件的，人民法院应予受理。

If the applicant files another application that meets the requirements for acceptance after the people's court approves the withdrawal of the application, the people's court shall accept the other application.

申请人无正当理由拒不参加询问程序的，按申请人自动撤回申请处理。

If the applicant refuses to participate in questioning proceedings without good reason, disposition shall be made as if the applicant has automatically withdrawn its application.

49.【承认和执行外国法院判决的报备及通报机制】各级人民法院审结当事人申请承认和执行外国法院判决案件的，应当在作出裁定后十五日内逐级报至最高人民法院备案。备案材料包括申请人提交的申请书、外国法院判决及

[CLI Code]CLI.3.5114710(EN)

其中文译本、人民法院作出的裁定。

49. [Recordation and notification mechanism for recognition and enforcement of foreign court decisions] Where people's courts at all levels close cases involving the parties' applications for recognition and enforcement of foreign court decisions, they shall file for recordation with the Supreme People's Court level by level within 15 days after making a ruling. The materials filed for recordation shall include written applications submitted by the applicants, foreign court decisions and their Chinese translation, and the rulings made by the people's courts.

人民法院根据互惠原则进行审查的案件，在作出裁定前，应当将拟处理意见报本辖区所属高级人民法院进行审查；高级人民法院同意拟处理意见的，应将其审查意见报最高人民法院审核。待最高人民法院答复后，方可作出裁定。

For a case examined on the principle of reciprocity, the people's court shall, before making a ruling, file its tentative opinion with the high people's court in the jurisdiction where it is located for examination; if the high people's court approves the tentative opinion, it shall file its examination opinion with the Supreme People's Court for examination. The people's court may make a ruling only after the Supreme People's Court replies.

十、关于限制出境

X. Exit restrictions

50.【限制出境的适用条件】《第二次全国涉外商事海事审判工作会议纪要》第93条规定的"逃避诉讼或者逃避履行法定义务的可能"是指申请人提起的民事诉讼有较高的胜诉可能性，而被申请人存在利用出境逃避诉讼、逃避履行法定义务的可能。申请人提出限制出境申请的，人民法院可以要求申请人提供担保，担保数额一般应当相当于诉讼请求的数额。

50. [Requirements for application of exit restrictions] For the purposes of Article 93 of the Minutes of the Second National Foreign-related Commercial and Maritime Trial Work Conference, "possibility of evading litigation or performance of statutory obligations" means a strong likelihood that the applicant will succeed on the civil action brought by it and the respondent will likely evade litigation and performance of its statutory obligations by means of exit. Where the applicant applies an exit restriction, the people's court may require the applicant to provide security, the amount of which shall generally be equal to the amount of claims.

被申请人在中华人民共和国领域内有足额可供扣押的财产的，不得对其采取限制出境措施。被限制出境的被申请人或其法定代表人、负责人提供有效担保或者履行法定义务的，人民法院应当立即作出解除限制的决定并通知公安机关。

If the respondent has sufficient property available for impoundment in the territory of the People's Republic of China, no exit restriction measures shall be taken against the respondent. If the respondent subject to an exit restriction, or its legal representative or person in charge, provides valid security or performs legal obligations, the people's court shall immediately decide to lift the restriction and notify the public security authorities.

海事部分

Maritime Trial

十一、关于运输合同纠纷案件的审理

**XI**. Trial of cases involving carriage contract disputes

（一）海上货物运输合同

(a) Contracts of carriage of goods by sea

51.【托运人的识别】提单或者其他运输单证记载的托运人与向承运人或其代理人订舱的人不一致的，提单或者其他运输单证的记载对于承托双方仅具有初步的证明效力，人民法院应当结合运输合同的订立及履行情况准确认定托运人；有证据证明订舱人系接受他人委托并以他人名义或者为他人订舱的，人民法院应当根据 海商法第四十二条第三项第1点的规定，认定该"他人"为托运人。

51. [Identification of shippers] If the shipper stated in a bill of lading or any other transport document is not identical with the person who booked the space aboard the ship at the carrier or its agent, the statement in the bill of lading or other transport document is only with a prima facie proof effect as to the carrier and the shipper, and the people's court shall identify the shipper in light of the conclusion and performance of the contract of carriage; if there is evidence that the person who booked space is authorized by someone else to book the space in the name of or for such person, the people's court shall determine the "other person" as the shipper in accordance with Article 42(3)(a) of the Maritime Law.

52.【实际承运人责任的法律适用】海商法是调整海上运输关系的特别法律规定，应当优先于一般法律规定适用。就海上货物运输合同所涉及的货物灭失或者损坏，提单持有人选择仅向实际承运人主张赔偿的，人民法院应当优先适用海商法有关实际承运人的规定；海商法没有规定的，适用其他法律规定。

52. [Application of law to the liability of actual carriers] The Maritime Law as a special law that regulates the relations of carriage by sea prevails over general laws. If the holder of a bill of lading chooses to claim compensation only from the actual carrier for loss of or damage to the goods

involved in the contract of carriage of goods by sea, the people's court shall give priority to applying the provisions on actual carriers of the Maritime Law, or where there is no corresponding provisions in the Maritime Law, apply other laws.

53.【承运人提供集装箱的适货义务】根据海商法第四十七条有关适货义务的规定，承运人提供的集装箱应符合安全收受、载运和保管所装载货物的要求。

53. [Carriers' obligation to provide containers fit for goods] According to the fitness provision of Article 47 of the Maritime Law, a container provided by a carrier shall meet the safety requirements for the reception, carriage, and preservation of the carried goods.

因集装箱存在缺陷造成箱内货物灭失或者损坏的，承运人应当承担相应赔偿责任。承运人的前述义务不因海上货物运输合同中的不同约定而免除。

The carrier shall be liable for compensation for loss of or damage to goods in the container caused by a defect in the container, if any. The aforementioned obligation of the carrier shall not be excluded by different provisions of the contract of carriage of goods by sea.

54.【"货物的自然特性或者固有缺陷"的认定】海商法第五十一条第一款第九项规定的"货物的自然特性或者固有缺陷"是指货物具有的本质的、固有的特性或者缺陷，表现为同类货物在同等正常运输条件下，即使承运人已经尽到海商法第四十八条规定的管货义务，采取了合理的谨慎措施仍无法防止损坏的发生。

54. [Determination of "nature or inherent vice of the goods"] For the purposes of paragraph 1(9) of Article 51 of the Maritime Law, "nature or inherent vice of the goods" means the essential and inherent attributes or vice of goods, manifested in that under the same normal carriage conditions, the carrier is unable to prevent damage to the same kind of goods, even if it has performed the obligation to manage goods under Article 48 of the Maritime Law and taken reasonable measures of care.

55.【货损发生期间的举证】根据海商法第四十六条的规定，承运人对其责任期间发生的货物灭失或者损坏负赔偿责任。请求人在货物交付时没有根据海商法第八十一条的规定提出异议，之后又向承运人主张货损赔偿，如果可能发生货损的原因和区间存在多个，请求人仅举证证明货损可能发生在承运人责任期间，而不能排除货损发生于非承运人责任期间的，人民法院不予支持。

55. [Burden to prove when damage is caused to goods] According to Article 46 of the Maritime Law, a carrier shall be liable for loss of or damage to goods that occurs during its period of responsibility. Where a claimant claims compensation for damage to goods from the carrier without filing an objection in accordance with Article 81 of the Maritime Law at the time of delivery of the goods and presents evidence establishing the possibility that the damage to the goods occurs

during the period of responsibility of the carrier, which is insufficient to exclude the possibility that the damage to the goods occurs not during the period of responsibility of the carrier when there are multiple possible reasons and periods for the occurrence of the damage to the goods, the people's court shall not uphold the claim.

56.【承运人对大宗散装货物短少的责任承担】根据航运实践和航运惯例，大宗散装货物运输过程中，因自然损耗、装卸过程中的散落残漏以及水尺计重等的计量允差等原因，往往会造成合理范围内的短少。如果卸货后货物出现短少，承运人主张免责并举证证明该短少属于合理损耗、计量允差以及相关行业标准或惯例的，人民法院原则上应当予以支持，除非有证据证明承运人对货物短少有不能免责的过失；如果卸货后货物短少超出相关行业标准或惯例，承运人又不能举证区分合理因素与不合理因素各自造成的损失，请求人要求承运人承担全部货物短少赔偿责任的，人民法院原则上应当予以支持。

56. [Carriers' liability for short shipment of bulk goods] According to shipping practices and shipping usage, a short shipment of bulk goods tends to occur during carriage within a reasonable range because of natural loss, dropping, damage, and leakage in the process of loading or discharge, draft survey or any other tolerance. If there is a short shipment of goods after discharge, and the carrier claims exemption from liability and presents evidence that the short shipment arises from reasonable loss or tolerance, or complies with relevant standards or usage of trade, the people's court shall uphold the claim in principle, unless there is evidence of negligence in the short shipment of goods for which the carrier is not entitled to exemption from liability; if the short shipment of goods after discharge exceeds the relevant standards or usage of trade, the carrier fails to present evidence to distinguish between the losses caused by reasonable factors and unreasonable factors, and the claimant requests the carrier to be liable wholly for the short shipment of goods, the people's court shall in principle support the request.

57.【"不知条款"的适用规则】提单是承运人保证据以交付货物的单证，承运人应当在提单上如实记载货物状况，并按照记载向提单持有人交付货物。根据海商法第七十五条的规定，承运人或者代其签发提单的人，在签发已装船提单的情况下没有适当方法核对提单记载的，可以在提单上批注，说明无法核对。运输货物发生损坏，承运人依据提单记载的"不知条款"主张免除赔偿责任的，应当对其批注符合海商法第七十五条规定情形承担举证责任；有证据证明货物损坏原因是承运人违反海商法第四十七、第四十八条规定的义务，承运人援引"不知条款"主张免除其赔偿责任的，人民法院不予支持。

57. [Rules for the application of the "unknown clause"] A bill of lading is a document against which a carrier undertakes to deliver goods, and the carrier shall truthfully include the particulars concerning the goods in the bill of lading and deliver the goods to the holder of the bill of lading according to the particulars in it. According to Article 75 of the Maritime Law, if the carrier or the

person issuing the bill of lading on its behalf has no appropriate means of checking the particulars contained in the bill of lading when a "shipped" bill of lading is issued, the carrier or such other person may insert in the bill of lading an "unknown clause" specifying that it could not possibly make a check. If the goods carried are damaged, and the carrier claims exemption from compensation according to the "unknown clause" in the bill of lading, it shall have the burden of proof that the "unknown clause" complies with Article 75 of the Maritime Law; if there is evidence that the damage to goods results from the carrier's breach of its obligations under Articles 47 and 48 of the Maritime Law, and the carrier claims exemption from compensation by invoking the "unknown clause", the people's court shall not uphold the claim.

58.【承运人交付货物的依据】承运人没有签发正本提单，或者虽签发正本提单但已收回正本提单并约定采用电放交付货物的，承运人应当根据运输合同约定、托运人电放指示或者托运人以其他方式作出的指示交付货物。收货人仅凭提单样稿、提单副本等要求承运人交付货物的，人民法院不予支持。

58. [Basis for carriers' delivery of goods] Where a carrier has not issued an original bill of lading, or has recovered an issued original bill of lading and agreed to deliver the goods by telex release, the carrier shall deliver the goods, according to the contract of carriage, the shipper's telex release instructions, or instructions otherwise given by the shipper. If the consignee requests the carrier to deliver the goods only with a sample bill of lading or duplicate bill of lading, the people's court shall not uphold the request.

59.【承运人凭指示提单交付时应合理谨慎审单】正本指示提单的持有人请求承运人向其交付货物，承运人应当合理谨慎地审查提单。承运人凭背书不连续的正本指示提单交付货物，请求人要求承运人承担因此造成损失的，人民法院应予支持，但承运人举证证明提单持有人通过背书之外其他合法方式取得提单权利的除外。

59. [Carriers shall reasonably and prudentially examine bills of lading at the time of delivery against order bills of lading] When the holder of an original order bill of lading requests the carrier to deliver the goods, the carrier shall reasonably and prudentially examine the bill of lading. If the carrier delivers goods against the original order bill of lading with an interrupted series of endorsements, and the claimant requests the carrier to be liable for the resultant loss, the people's court shall uphold the request, unless the carrier proves that the holder of the bill of lading acquires the right in the bill of lading by lawful means other than an endorsement.

60.【承运人对货物留置权的行使】提单或者运输合同载明"运费预付"或者类似性质说明，承运人以运费尚未支付为由，根据海商法第八十七条对提单持有人的货物主张留置权的，人民法院不予支持，提单持有人与托运人相同的除外。

60. [Carriers' exercise of liens on goods] Where a bill of lading or contract of carriage contains

"freight prepaid" or a description of a similar nature, and the carrier claims a lien on the goods of the holder of the bill of lading in accordance with Article 87 of the Maritime Law on the grounds that the freight has not been paid, the people's court shall not uphold the claim, unless the holder of the bill of lading is the shipper.

61.【目的港无人提货的费用承担】提单持有人在目的港没有向承运人主张提货或者行使其他权利的，因无人提取货物而产生的费用和风险由托运人承担。承运人依据运输合同关系向托运人主张运费、堆存费、集装箱超期使用费或者其他因无人提取货物而产生费用的，人民法院应予支持。

61. [Bearing of expenses arising from failure to take delivery of goods at the port of destination] Where the holder of a bill of lading fails to claim delivery of the goods or exercise other rights to the carrier at the port of destination, the costs and risks arising from the failure to claim delivery of the goods shall be borne by the shipper. If the carrier claims from the shipper freight, storage charges, detention fees, or other expenses arising from failure to claim delivery of the goods in accordance with the contract of carriage, the people's court shall uphold the claim.

62.【无单放货纠纷的举证责任】托运人或者提单持有人向承运人主张无单放货损失赔偿的，应当提供初步证据证明其为合法的正本提单持有人、承运人未凭正本提单交付货物以及因此遭受的损失。承运人抗辩货物并未被交付的，应当举证证明货物仍然在其控制之下。

62. [Burden of proof for disputes over delivery of goods without a bill of lading] Where a shipper or the holder of a bill of lading claims from the carrier compensation for loss caused by the carrier without a bill of lading, the shipper or holder of the bill of lading shall provide prima facie evidence that it is the lawful holder of the original bill of lading, that the carrier fails to deliver the goods against the original bill of lading, and the loss it has suffered as a result. If the carrier makes a defense that the goods have not been delivered, it shall present evidence that the goods remain under its control.

63.【承运人免除无单放货责任的举证】承运人援引《最高人民法院关于审理无正本提单交付货物案件适用法律若干问题的规定》第七条规定，主张不承担无单放货的民事责任的，应当提供该条规定的卸货港所在地法律，并举证证明其按照卸货港所在地法律规定，将承运到港的货物交付给当地海关或者港口当局后已经丧失对货物的控制权。

63. [Proof for carrier's exemption from the liability for delivery of goods without a bill of lading] Where a carrier contends that it has no civil liability for delivering goods without a bill of lading, by invoking Article 7 of the Provisions of the Supreme People's Court on Several Issues Concerning the Application of Law during the Trial of Cases about Delivery of Goods without an Original Bill of Lading, it shall provide the law of the place of the port of discharge specified in the article, and

[CLI Code]CLI.3.5114710(EN)

prove that it has lost control of the goods since delivering the goods carried to the port to the local customs or port authorities in accordance with the law of the place of the port of discharge.

64.【无单放货诉讼时效的起算点】根据《最高人民法院关于审理无正本提单交付货物案件适用法律若干问题的规定》第十四条第一款的规定，正本提单持有人以无单放货为由向承运人提起的诉讼，时效期间为一年，从承运人应当向提单持有人交付之日起计算，即从该航次将货物运抵目的港并具备交付条件的合理日期起算。

64. [Commencement of the statute of limitations for legal actions over delivery of goods without a bill of lading] According to paragraph 1 of Article 14 of the Provisions of the Supreme People's Court on Several Issues Concerning the Application of Law during the Trial of Cases about Delivery of Goods without an Original Bill of Lading, the statute of limitations for the holder of an original bill of lading to sue the carrier on the grounds of delivery of goods without a bill of lading shall be one year, commencing on the date when the carrier should deliver the goods to the holder of the bill of lading, to wit, on a reasonable date when the goods arrives at the port of destination on the voyage and is ready for delivery.

65.【集装箱超期使用费标准的认定】承运人依据海上货物运输合同主张集装箱超期使用费，运输合同对集装箱超期使用费有约定标准的，人民法院可以按照该约定确定费用；没有约定标准，但承运人举证证明集装箱提供者网站公布的标准或者同类集装箱经营者网站公布的同期同地的市场标准的，人民法院可以予以采信。

65. [Determination of detention charges] Where a carrier claims a detention fee according to the contract of carriage of goods by sea, the people's court may determine the fee charge according to the detention charge rate as agreed to in the contact for carriage, if any, or in the absence of such agreement, use the rate published on the website of the container provider, or the market rate published on the website of the same type of container operator for the same period in the same place, if the carrier presents evidence of such rate.

根据民法典第五百八十四条规定的可合理预见规则和第五百九十一条规定的减损规则，承运人应当及时采取措施减少因集装箱超期使用对其造成的损失，故集装箱超期使用费赔偿额应在合理限度之内。人民法院原则上以同类新集装箱市价1倍为基准确定赔偿额，同时可以根据具体案情适当浮动或者调整。

According to the reasonable foreseeing rule established by Article 584 of the Civil Code and the loss reduction rule established by Article 591 of the Civil Code, the carrier shall take measures promptly to reduce the loss caused by the use of containers beyond the last free day, and the amount of compensation for detention charges shall be within a reasonable range. The people's court shall, in principle, determine the amount of compensation based on one times the market price of the same kind of new containers, and may appropriately float or adjust the amount according to the specific circumstances of the case.

Saved on: 02/22/2025

[CLI Code]CLI.3.5114710(EN)

66.【请求集装箱超期使用费的诉讼时效】承运人在履行海上货物运输合同过程中将集装箱作为运输工具提供给货方使用的，应当根据海上货物运输合同法律关系确定诉讼时效；承运人请求集装箱超期使用费的诉讼时效期间为一年，自集装箱免费使用期届满次日起开始计算。

66. [Statute of limitations for claims for detention charges] If a carrier makes a container available for the merchant to use as an article of transport in the process of performing the contract of carriage of goods by sea, the statute of limitations shall be determined according to the legal relations established by the contract of carriage of goods by sea. The statute of limitations for the carrier to make claim for a detention fee shall be one year, commencing on the date after the expiration of the last free day for the container.

67.【港口经营人不能主张承运人的免责或者责任限制抗辩】根据海商法第五十八条、第六十一条的规定，就海上货物运输合同所涉及的货物灭失、损坏或者迟延交付提起的诉讼，有权适用关于承运人的抗辩理由和限制赔偿责任规定的为承运人、实际承运人、承运人和实际承运人的受雇人或者代理人。在现有法律规定下，港口经营人并不属于上述范围，其在港口作业中造成货物损失，托运人或者收货人直接以侵权起诉港口经营人，港口经营人援用 海商法第五十八条、第六十一条的规定主张免责或者限制赔偿责任的，人民法院不予支持。

67. [Port operators not entitled to carriers' exemption from or limitation of liability] According to Articles 58 and 61 of the Maritime Law, the provisions on carriers' exemption and limitation of liability shall apply to carriers, actual carriers, and the servants or agents of carriers and actual carriers with respect to the actions brought for loss of, damage to, or delay in delivery of goods under contracts of carriage of goods by sea. According to current laws, a port operator does not fall into the above categories, and if the port operator causes a loss of goods by port operations, the shipper or consignee directly sues the port operator for tort, and the port operator claims exemption from liability or limitation of compensation liability by invoking Articles 58 and 61 of the Maritime Law, the people's court shall not uphold the claim.

（二）多式联运合同

(b) Multimodal transport contracts

68.【涉外多式联运合同经营人的"网状责任制"】具有涉外因素的多式联运合同，当事人可以协议选择多式联运合同适用的法律；当事人没有选择的，适用最密切联系原则确定适用法律。

68. [Network system of liability for operators under foreign-related multimodal transport contracts] The parties to a multimodal transport contract with foreign-related factors may choose the law applicable to the multimodal transport contract by agreement, or in the absence of such choice,

[CLI Code]CLI.3.5114710(EN)

the applicable law shall be determined according to the principle of the closest nexus.

当事人就多式联运合同协议选择适用或者根据最密切联系原则适用中华人民共和国法律，但货物灭失或者损坏发生在国外某一运输区段的，人民法院应当根据 海商法第一百零五条 的规定，适用该国调整该区段运输方式的有关法律规定，确定多式联运经营人的赔偿责任和责任限额，不能直接根据中华人民共和国有关调整该区段运输方式的法律予以确定；有关诉讼时效的认定，仍应当适用中华人民共和国相关法律规定。

If the law of the People's Republic of China is chosen by the parties by agreement or is determined according to the principle of the closest nexus, to apply to the multimodal transport contract, but the loss of or damage to the goods occurs during a certain stage of transport in a foreign country, the people's court shall, in accordance with Article 105 of the Maritime Law, apply the law regulating the mode of transport during the stage of the foreign country, rather than that of the People's Republic of China, in determining the compensation liability and limitation of liability of the multimodal transport operator, provided that the relevant law of the People's Republic of China shall be applied in determining the statute of limitations.

（三）国内水路货物运输合同

(c) Contracts of carriage of goods by domestic water

69.【收货人的诉权】运输合同当事人约定收货人可直接向承运人请求交付货物，承运人未向收货人交付货物或者交付货物不符合合同约定，收货人请求承运人承担赔偿责任的，人民法院应予受理；承运人对托运人的抗辩，可以向收货人主张。

69. [Consignees' right to sue] Where the parties to a contract of carriage agree that the consignee may directly request the carrier to deliver the goods, while the carrier fails to deliver the goods to the consignee or deliver the goods by contract, and the consignee requests the carrier to make a compensation, the people's court shall accept the request; the carrier may usethe defenses that the carrier uses against the shipper to defend itself from the consignee.

70.【合同无效的后果】没有取得国内水路运输经营资质的承运人签订的国内水路货物运输合同无效，承运人请求托运人或者收货人参照合同约定支付违约金的，人民法院不予支持。

70. [Consequences of nullified contracts] A contract of carriage of goods by domestic water signed by a carrier without qualifications for the operations of carriage of goods by domestic water shall be null and void, and if the carrier claims liquidated damages from the shipper or consignee by contract mutatis mutandis, the people's court shall not uphold the claim.

没有取得国内水路运输经营资质的出租人签订的航次租船合同无效，出租人请求承租人或者收货人参照合同约定支

付滞期费的，人民法院不予支持。

A voyage charter party signed by an owner without qualifications for the operations of carriage of goods by domestic water shall be null and void, and if the owner claims demurrage from the charterer or consignee by contract mutatis mutandis, the people's court shall not uphold the claim.

71.【内河船舶不得享受海事赔偿责任限制】海商法第十一章关于海事赔偿责任限制规定适用的船舶应当为海商法第三条规定的海船，不适用于内河船舶。海船的认定应当根据船舶检验证书记载的航行能力和准予航行航区予以确认，内河船舶的船舶性质及其准予航行航区不因船舶实际航行区域而改变。

71. [Inland vessels not entitled to the limitation of liability for maritime claims] The ships to which the provisions of Chapter XI of the Maritime Law on the limitation of liability for maritime claims are applicable shall be sea-going ships specified in Article 3 of the Maritime Law, rather than inland vessels. The determination of a sea-going ship shall be confirmed according to the navigating capability and permitted area of operation contained in the ship's certificate of inspection, and the nature of an inland vessel and its permitted area of operation shall not be changed because of the actual area of operation of the vessel.

十二、关于保险合同纠纷案件的审理

**XII**. Trial of insurance contract disputes

72.【不定值保险的认定及保险价值的举证责任】海上保险合同仅约定保险金额，未约定保险价值的，为不定值保险。保险事故发生后，应当根据海商法第二百一十九条第二款的规定确定保险价值。

72. [Determination of unvalued insurance and the burden of proof of insurable value] Unvalued insurance is a contract of marine insurance that stipulates the sum insured, without specifying the insurable value. After the occurrence of an insured event, the insurable value shall be determined in accordance with paragraph 2 of Article 219 of the Maritime Law.

海上保险合同没有约定保险价值，被保险人请求保险人按照损失金额或者保险金额承担保险赔偿责任，保险人以保险价值高于保险合同约定的保险金额为由，主张根据海商法第二百三十八条的规定承担比例赔偿责任的，应当就保险价值承担举证责任。保险人举证不能的，人民法院可以认定保险金额与保险价值一致。

Where a contract of marine insurance contains no insurable value, the insured requests the insurer for indemnity according to the amount of loss or the sum insured, and the insurer contends that it is liable for a percentage of indemnity according to Article 238 of the Maritime Law on the grounds that the insurable value is higher than the sum insured as specified by the insurance contract, the insurer shall have the burden of proving the insurable value. If the insurer fails to prove with

[CLI Code]CLI.3.5114710(EN)

evidence, the people's court may determine the sum insured to equal the insurable value.

73.【超额保险的认定及举证责任】海上保险合同明确约定了保险价值，保险事故发生后，保险人以保险合同中约定的保险金额明显高于保险标的的实际价值为由，主张根据 海商法第二百一十九条第二款的规定确定保险价值，就超出该保险价值部分免除赔偿责任的，人民法院不予支持；但保险人提供证据证明，被保险人在签订保险合同时存在故意隐瞒或者虚报保险价值的除外。

73. [Determination and burden of proof of excessive insurance] Where a contract of marine insurance explicitly stipulates the insurable value, and after the insured event occurs, the insurer contends that the insurable value should be determined according to paragraph 2 of Article 219 of the Maritime Law and that it should be exempt from indemnity with respect to the excess over the insurable value on the grounds that the sum insured under the insurance contract is conspicuously higher than the actual value of the subject insured, the people's court shall not uphold the contention, unless the insurer proves with evidence that the insured intentionally concealed or misstated the insurable value when signing the insurance contract.

海上保险合同没有约定保险价值，保险事故发生后，保险人主张根据 海商法第二百一十九条第二款的规定确定保险价值，并以保险合同中约定的保险金额明显高于保险价值为由，主张对超过保险价值部分免除保险赔偿责任的，人民法院应予支持。但被保险人提供证据证明，保险人在签订保险合同时明知保险金额明显超过根据 海商法第二百一十九条第二款确定的保险价值的除外。

Where a contract of marine insurance does not stipulate the insurable value, and after the insured incident occurs, the insurer contends that the insurable value should be determined in accordance with paragraph 2 of Article 219 of the Maritime Law, in addition to the contention that it should be exempt from indemnity with respect to the excess over the insurable value on the grounds that the sum insured under the insurance contract is conspicuously higher than the insurable value, the people's court shall uphold the contentions, unless the insured proves with evidence the insurer's knowledge that the sum insured conspicuously exceeds the insurable value as determined in accordance with paragraph 2 of Article 219 of the Maritime Law when signing the insurance contract.

74.【与共同海损分摊相关的海上保险赔偿请求权的诉讼时效】因分摊共同海损而遭受损失的被保险人依据保险合同向保险人请求赔偿的诉讼时效，应当适用 海商法第二百六十四条的规定，诉讼时效的起算点为保险事故（共同海损事故）发生之日。

74. [Statute of limitations for claims for indemnity on marine insurance related to general average contributions] The statute of limitations for the insured who suffers a loss caused by general average contribution to claim indemnity from the insurer in accordance with the insurance contract

Saved on: 02/22/2025

shall be governed by Article 264 of the Maritime Law, and shall commence on the date when the insured incident occurs (general average event).

涉及海上保险合同的共同海损分摊，被保险人已经申请进行共同海损理算，但是在诉讼时效期间的最后六个月内，因理算报告尚未作出，被保险人无法向保险人主张权利，属于被保险人主观意志不能控制的客观情形，可以认定构成诉讼时效中止。中止时效的原因消除之日，即理算报告作出之日起，时效期间继续计算。

If general average contributions under a marine insurance contract are involved, and the insured who has applied for adjustment of general average is unable to claim against the insurer within the last six months of the statute of limitations because an adjustment report has not been made, the objective circumstance is beyond the control of the insured against its subjective will and may be determined to suspend the statute of limitations. The statute of limitations resumes on the date when the reason for suspending the limitation period disappears, that is, the date when an adjustment report is made.

75.【沿海、内河保险合同保险人代位求偿权诉讼时效起算点】沿海、内河保险合同保险人代位求偿权的诉讼时效起算日应当根据法释（2001）18号《最高人民法院关于如何确定沿海、内河货物运输赔偿请求权时效期间问题的批复》规定的诉讼时效起算时间确定。

75. [Commencement of the statute of limitations for insurers' right of subrogation under short-sea and inland marine insurance contracts] The commencement date of the statute of limitations for insurers' right of subrogation under short-sea and inland marine insurance contracts shall be determined based on the commencement time of the statute of limitations as specified in the Official Reply of the Supreme People's Court on How to Determine the Statute of Limitations for Claims for Compensation for Short-sea and Inland Water Carriage of Goods (No. 18 [2001], SPC Interpretation).

十三、关于船舶物权纠纷案件的审理

XIII. Trial of disputes over real rights in ships

76.【就海上货物运输合同产生的财产损失主张船舶优先权的法律适用】承运人履行海上货物运输合同过程中，造成货物灭失或者损坏的，船载货物权利人对本船提起的财产赔偿请求不具有船舶优先权。碰撞船舶互有过失造成船载货物灭失或者损坏的，船载货物权利人可以根据海商法第二十二条第一款第五项的规定向对方船舶主张船舶优先权。

76. [Application of law for claiming a maritime lien with respect to loss of property arising from contracts of carriage of goods by sea] Where a carrier causes the loss of or damage to the goods in

the process of performing the contract of carriage of goods by sea, the holder of rights in the goods aboard the ship makes does not have first right to place a lien on the ship in respect of the loss of property against the ship. If ships in a collision are both at fault for the loss of or damage to the goods aboard, the holder of rights in the goods aboard may assert a maritime lien on the ship of the opposite party in accordance with paragraph 1(5) of Article 22 of the Maritime Law.

77.【就海上旅客运输合同产生的财产损失主张船舶优先权的法律适用】承运人履行海上旅客运输合同过程中，造成旅客行李灭失或者损坏的，旅客对本船提起的财产赔偿请求不具有船舶优先权。碰撞船舶互有过失造成旅客行李灭失或者损坏的，旅客可以根据海商法第二十二条第一款第五项的规定向对方船舶主张船舶优先权。

77. [Application of law for claiming a maritime lien for loss of property arising from contracts of carriage of passengers by sea] Where a carrier causes loss of or damage to the luggage of a passenger in the process of performing the contract of carriage of goods by sea, the passenger does not have first right to place a lien on the ship for the loss of property. If the ship in a collision is both at fault for the loss of or damage to the luggage of a passenger, the passenger may place a lien on the ship of the opposite party in accordance with paragraph 1(5) of Article 22 of the Maritime Law.

78.【挂靠船舶的扣押】挂靠船舶登记所有人的一般债权人，不属于民法典第二百二十五条规定的"善意第三人"，其债权请求权不能对抗挂靠船舶实际所有人的物权。一般债权人申请扣押挂靠船舶后，挂靠船舶实际所有人主张解除扣押的，人民法院应予支持。

78. [Arrest of affiliated ships] An ordinary creditor of the registered owner of an affiliated ship is not "a bona fide third party" specified in Article 225 of the Civil Code, and its claim for debts shall be without effect against the real rights of the actual owner of the affiliated ship. If the actual owner of the affiliated ship claims release from arrest after the ordinary creditor applies for arrest of the affiliated ship, the people's court shall endorse the claim.

对挂靠船舶享有抵押权、留置权和船舶优先权等担保物权的债权人申请扣押挂靠船舶，挂靠船舶实际所有人主张解除扣押的，人民法院不予支持，有证据证明债权人非善意第三人的除外。

If a creditor secured by a mortgage, lien, maritime lien, or any other security interest on the affiliated ship applies for the arrest of the affiliated ship, and the actual owner of the affiliated ship claims release from arrest, the people's court shall not uphold the claim, unless there is evidence proving that the creditor is not a bona fide third party.

十四、关于海事侵权纠纷案件的审理

XIV. Trial of cases involving maritime tort disputes

[CLI Code]CLI.3.5114710(EN)

79.【同一事故中当事船舶适用同一赔偿限额】同一事故中的当事船舶的海事赔偿限额，有适用 海商法第二百一十条第一款规定的，无论其是否申请设立海事赔偿责任限制基金或者主张海事赔偿责任限制，其他从事中华人民共和国港口之间货物运输或者沿海作业的当事船舶的海事赔偿责任限额也应适用该条规定。

79. [Application of the same limitation of liability for maritime claims to ships involved in the same accident] Where a limitation of liability for maritime claims specified in paragraph 1 of Article 210 of the Maritime Law applies to any ship involved in an accident, regardless of whether the ship applies for the formation of a fund of limitation of liability for maritime claims, or asserts the limitation of liability for maritime claims, the limitation of liability for maritime claims shall apply to any other ship involved in the accident which is engaged in the carriage of goods between ports of the People's Republic of China or short-sea operations.

80.【单一责任限制制度的适用规则】海商法第二百一十五条关于"先抵销，后限制"的规定适用于同类海事请求。若双方存在非人身伤亡和人身伤亡的两类赔偿请求，不同性质的赔偿请求应当分别抵销，分别限制。

80. [Rules for the application of the single limitation of liability system] The "set-off first, then limit" doctrine of Article 215 of the Maritime Law shall apply to the same kind of maritime claims. If there are two kinds of claims: those not in respect of loss of life or personal injury and those in respect of loss of life or personal injury, the claims of different natures shall be set off and limited separately.

81.【养殖损害赔偿的责任承担】因船舶碰撞或者触碰、环境污染造成海上及通海可航水域养殖设施、养殖物受到损害的，被侵权人可以请求侵权人赔偿其由此造成的养殖设施损失、养殖物损失、恢复生产期间减少的收入损失，以及为排除妨害、消除危险、确定损失支出的合理费用。养殖设施损失和收入损失的计算标准可以依照或者参照《最高人民法院关于审理船舶油污损害赔偿纠纷案件若干问题的规定 》的相关规定。

81. [Liability for aquaculture damages] Where a collision or contact between ships or environmental pollution results in damage to any aquaculture facility or farmed aquatic species at sea or in navigable waters, the victim may file a claim against the tortfeasor for loss of the aquaculture facility, loss of farmed aquatic species, loss of income reduced for the period of restoration of production, and reasonable expenses incurred in removing the interference, eliminating danger, and determining the loss. The provisions on calculation in the Provisions of the Supreme People's Court on Several Issues Concerning the Trial of Cases of Disputes over Compensation for Vessel-induced Oil Pollution Damage may apply, or apply mutatis mutandis, to the loss of the aquaculture facility and loss of income.

被侵权人就养殖损害主张赔偿时，应当提交证据证明其在事故发生时已经依法取得海域使用权证和养殖许可证；养

殖未经相关行政主管部门许可的，人民法院对收入损失请求不予支持，但被侵权人举证证明其无需取得使用权及养殖许可的除外。

When the victim files a claim for aquaculture damage, it shall submit evidence that it holds a certificate of a right to use sea areas and a farming permit according to the law at the time of the accident; if the farming has not been permitted by the appropriate administrative authorities, the people's court shall not uphold its claim for loss of income, unless the victim proves with evidence that it is not required to obtain the right to use and a farming permit.

被侵权人擅自在港区、航道进行养殖，或者未依法采取安全措施，对养殖损害的发生有过错的，可以减轻或者免除侵权人的赔偿责任。

If the victim engages in aquaculture in a port area or waterway without authorization, or fails to take safety measures in accordance with the law, and is at fault for the occurrence of the aquaculture damage, the tortfeasor may be subject to reduced or exempt from liability for compensation.

十五、关于其他海事案件的审理

**XV**. Trial of other maritime cases

82.【清污单位就清污费用提起民事诉讼的诉权】清污单位受海事行政机关指派完成清污作业后，清污单位就清污费用直接向污染责任人提起民事诉讼的，人民法院应予受理。

82. [The right of pollution cleanup entities to bring civil actions for pollution cleanup fees] Where a pollution cleanup entity directly brings a civil action against the person liable for pollution for a pollution cleanup fee after completing pollution cleanup operations as assigned by the maritime administrative authorities, the people's court shall accept the civil action.

83.【用人单位为船员购买工伤保险的法定义务】与船员具有劳动合同关系的用人单位为船员购买商业保险的，并不因此免除其为船员购买工伤保险的法定义务。船员获得用人单位为其购买的商业保险赔付后，仍然可以依法请求工伤保险待遇。

83. [The statutory obligation of employers to purchase work-related injury insurance for seafarers] If an employer who has entered into a labor contract with a seafarer purchases commercial insurance for the seafarer, it shall not be discharged thereby from its statutory obligation to purchase work-related injury insurance for the seafarer. The seafarer may apply for work-related injury insurance benefits in accordance with the law after receiving payments of claim on the commercial insurance purchased by his or her employer.

84.【同一船舶所有人的船舶相互救助情况下的救助款项请求权】同一船舶所有人的船舶之间进行救助，救助方的救助款项不应被取消或者减少，除非其存在海商法第一百八十七条规定的情形。

84. [Claims for salvage in the case of salvage operations between ships of a same shipowner] For salvage operations between the ships of a same shipowner, the salvage payable to the salvor shall not be canceled or reduced, except under the circumstance as specified in Article 187 of the Maritime Law.

85.【船员劳务纠纷的举证责任】船员因劳务受到损害，向船舶所有人主张赔偿责任，船舶所有人不能举证证明船员自身存在过错，人民法院对船员关于损害赔偿责任的诉讼请求应予支持；船舶所有人举证证明船员自身存在过错，并请求判令船员自担相应责任的，人民法院对船舶所有人的抗辩予以支持。

85. [Burden of proof for seafarer labor disputes] When a seafarer claims liability for compensation against the shipowner for damage sustained in labor service, the people's court shall uphold the seafarer's claim for damages, if the shipowner fails to prove with evidence the fault on the part of the seafarer, or uphold the defenses of the shipowner if the shipowner proves with evidence the fault on the part of the seafarer and requests a decision that the seafarer should bear the corresponding liability.

86.【基金设立程序中的管辖权异议】利害关系人对受理设立海事赔偿责任限制基金申请法院的管辖权有异议的，应当适用海事诉讼特别程序法第一百零六条有关期间的规定。

86. [Jurisdictional challenge in fund formation proceedings] Where an interested party challenges the jurisdiction of the court that accepts an application for the formation of a fund of limitation of liability for maritime claims, the provisions on periods in Article 106 of the Special Maritime Procedure Law shall apply.

87.【光船承租人因经营光租船舶产生债务在光船承租人或者船舶所有人破产时的受偿问题】因光船承租人而非船舶所有人应负责任的海事请求，对光租船舶申请扣押、拍卖，如果光船承租人进入破产程序，虽然该海事请求属于破产债权，但光租船舶并非光船承租人的财产，不属于破产财产，债权人可以通过海事诉讼程序而非破产程序清偿债务。

87. [Issues on the payment of debts incurred by bareboat charterers in operating ships hired on bareboat charters when the bareboat charterers or shipowners go bankrupt] When an application is filed for arrest or auction of a ship hired on a bareboat charterer because of a maritime claim for which the bareboat charterer, instead of the shipowner, shall be liable if the bareboat charterer is subjected to a bankruptcy proceeding, the maritime claim is a bankruptcy claim, but as the ship

[CLI Code]CLI.3.5114710(EN)

hired on the bareboat charter is neither the property of the bareboat charterer nor the property of the estate, the creditor may cause the debts to be paid by a maritime proceeding rather than by the bankruptcy proceeding.

因光船承租人应负责任的海事请求而对光租船舶申请扣押、拍卖，且该海事请求具有船舶优先权、抵押权、留置权时，如果船舶所有人进入破产程序，请求人在破产程序开始后可直接向破产管理人请求从船舶价款中行使优先受偿权，并在无担保的破产债权人按照破产财产方案受偿之前进行清偿。

When an application is filed for arrest or auction of a ship hired on a bareboat charterer because of a maritime claim for which the bareboat charterer shall be liable, which maritime claim is secured by a maritime lien, mortgage, and lien, if the shipowner is subjected to a bankruptcy proceeding, the claimant may, after commencement of the bankruptcy proceeding, directly file with the trustee in bankruptcy such a claim as to exercise first right to payment from the proceeds of the ship, and be paid before any unsecured bankruptcy creditor is paid according to the estate plan.

88.【船舶所有人破产程序对船舶扣押与拍卖的影响】海事法院无论基于海事请求保全还是执行生效裁判文书等原因扣押、拍卖船舶，均应当在知悉针对船舶所有人的破产申请被受理后及时解除扣押、中止拍卖程序。

88. [Impact of bankruptcy proceedings against shipowners on the arrest and auction of ships] A maritime court, in arresting or auctioning a ship, whether by reason of an interim measure for a maritime claim or enforcement of an effective adjudicative document, among others, shall grant release from arrest or suspend the auction proceeding promptly after acquiring knowledge that a bankruptcy petition against the shipowner has been accepted.

破产程序之前当事人已经申请扣押船舶，后又基于破产程序而解除扣押的，有关船舶优先权已经行使的法律效果不受影响。船舶所有人进入破产程序后，当事人不能申请扣押船舶，属于法定不能通过扣押行使船舶优先权的情形，该类期间可以不计入法定行使船舶优先权的一年期间内。船舶优先权人在船舶所有人进入破产程序后直接申报要求从产生优先权船舶的拍卖价款中优先受偿，且该申报没有超过法定行使船舶优先权一年期间的，该船舶优先权所担保的债权应当在一般破产债权之前优先清偿。

If a ship that has been arrested on application by a party before a bankruptcy proceeding is released from arrest based on the bankruptcy proceeding, the legal effect of the exercise of the relevant maritime lien will not be affected. The inability of a party to apply for the arrest of a ship after the shipowner is subjected to a bankruptcy proceeding is a statutory circumstance where the maritime lien is incapable of exercise by arrest, and the period of such statutory circumstance is not required to be included in the one-year period for the statutory exercise of the maritime lien. If a maritime lien holder directly files a claim, claiming first payment from the proceeds of the auction of the ship that gives rise to the lien after the shipowner is subjected to a bankruptcy

proceeding, and the filing is made within the one-year period for the statutory exercise of the maritime lien, the claim secured by the maritime lien shall be given priority in payment over ordinary bankruptcy claims.

因扣押、拍卖船舶产生的评估、看管费用等支出，根据法发 [2017]2 号《最高人民法院关于执行案件移送破产审查若干问题的指导意见》第15条的规定，可以从债务人财产中随时清偿。

The appraisal, safekeeping, and other expenses incurred in the arrest and auction of a ship may be paid from the debtor's property at any time, according to Article 15 of the Guiding Opinions of the Supreme People's Court on Several Issues Concerning the Transfer of Enforcement Cases for Bankruptcy Examination (No. 2 [2017], SPC).

89.【海上交通事故责任认定书的不可诉性】根据《中华人民共和国海上交通安全法》第八十五条第二款"海事管理机构应当自收到海上交通事故调查报告之日起十五个工作日内作出事故责任认定书，作为处理海上交通事故的证据"的规定，海上交通事故责任认定行为不属于行政行为，海上交通事故责任认定书不宜纳入行政诉讼受案范围。海上交通事故责任认定书可以作为船舶碰撞纠纷等海事案件的证据，人民法院通过举证、质证程序对该责任认定书的证明力进行认定。

89. [Non-actionability of written maritime traffic accident liability confirmations] According to paragraph 2 of Article 85 of the Maritime Traffic Safety Law of the People's Republic of China: "The maritime safety administration shall, within 15 working days from the date of receiving a maritime traffic accident investigation report, issue a written accident liability confirmation as evidence for handling the maritime traffic accident," the action of confirming liability for a marine traffic accident is not an administrative action, and it is inappropriate to include written maritime traffic accident liability confirmations in the scope of acceptable administrative litigation cases. Written maritime traffic accident liability confirmations may be used as evidence for handling maritime cases involving disputes over a collision between ships, among others, and the people's courts shall determine the probative value of the written maritime traffic accident liability confirmations through evidence presentation, evidence challenging, and other proceedings.

仲裁司法审查部分

Judicial Review of Arbitration

十六、关于申请确认仲裁协议效力案件的审查

**XVI**. Review of cases involving applications for confirmation of the validity of arbitration agreements

[CLI Code]CLI.3.5114710(EN)

90.【申请确认仲裁协议效力之诉案件的范围】当事人之间就仲裁协议是否成立、生效、失效以及是否约束特定当事人等产生争议，当事人申请人民法院予以确认，人民法院应当作为申请确认仲裁协议效力案件予以受理，并针对当事人的请求作出裁定。

90. [Scope of cases involving application for confirmation of the validity of arbitration agreements] Where a dispute arises between the parties over whether an arbitration agreement is formed, has taken effect, or has lapsed or whether it binds a specific party, and the parties apply for confirmation by the people's court, the people's court shall accept the application as a case involving an application for confirmation of the validity of an arbitration agreement, and rule on the claims of the parties.

91.【申请确认仲裁协议效力之诉与仲裁管辖权决定的冲突】根据《最高人民法院关于确认仲裁协议效力几个问题的批复》第三条的规定，仲裁机构先于人民法院受理当事人请求确认仲裁协议效力的申请并已经作出决定，当事人向人民法院提起申请确认仲裁协议效力之诉的，人民法院不予受理。

91. [Conflicts between actions to apply for confirmation of the validity of arbitration agreements and decisions on arbitral jurisdiction] According to Article 3 of the Official Reply of the Supreme People's Court on Several Issues Concerning the Confirmation of the Validity of Arbitration Agreements, where a party brings an action to apply for confirmation of the validity of an arbitration agreement in the people's court after an arbitral institution accepts and makes a decision on the party's application for confirmation of the validity of the arbitration agreement, the people's court shall refuse to accept the action.

92.【放弃仲裁协议的认定】原告向人民法院起诉时未声明有仲裁协议，被告在首次开庭前未以存在仲裁协议为由提出异议的，视为其放弃仲裁协议。原告其后撤回起诉，不影响人民法院认定双方当事人已经通过诉讼行为放弃了仲裁协议。

92. [Determination of waivers of arbitration agreements] Where the plaintiff fails to state the existence of an arbitration agreement when bringing an action in the people's court, and the defendant fails to raise any objection on the grounds of the existence of the arbitration agreement before the first hearing, they shall be deemed to have waived the arbitration agreement. The plaintiff's subsequent voluntary dismissal of the action will not affect the people's court's determination that both parties have waived the arbitration agreement through litigation.

被告未应诉答辩且缺席审理的，不应视为其放弃仲裁协议。人民法院在审理过程中发现存在有效仲裁协议的，应当裁定驳回原告起诉。

 

[CLI Code]CLI.3.5114710(EN)

If the defendant fails to appear and make a statement of defense and is absent from the hearing, it shall not be deemed to have waived the arbitration agreement. If the people's court discovers the existence of a valid arbitration agreement during the hearing, it shall dismiss the plaintiff's claim.

93.【仲裁协议效力的认定】根据仲裁法司法解释第三条的规定，人民法院在审查仲裁协议是否约定了明确的仲裁机构时，应当按照有利于仲裁协议有效的原则予以认定。

93. [Determination of the validity of arbitration agreements] According to Article 3 of the Judicial Interpretation of the Arbitration Law, when a people's court reviews whether an arbitration agreement stipulates a determinate arbitration institution, it shall make a determination in accordance with the principle of facilitating the validity of the arbitration agreement.

94.【"先裁后诉"争议解决条款的效力认定】当事人在仲裁协议中约定争议发生后"先仲裁、后诉讼"的，不属于仲裁法司法解释第七条规定的仲裁协议无效的情形。根据仲裁法第九条第一款关于仲裁裁决作出后当事人不得就同一纠纷向人民法院起诉的规定，"先仲裁、后诉讼"关于诉讼的约定无效，但不影响仲裁协议的效力。

94. [Determination of the validity of "arbitration first, then litigation" dispute resolution clauses] That the parties agree in the arbitration agreement that a dispute will be "referred to arbitration first, and then litigated" is not a circumstance as specified in Article 7 of the Judicial Interpretation of the Arbitration Law under which the arbitration agreement shall be invalidated. According to paragraph 1 of Article 9 of the Arbitration Law, which bar a party from bringing an action in a people's court for a dispute in respect of which an arbitral award has been made, the litigation part of "arbitration first, then litigation" shall be invalidated, and the validity of the arbitration agreement shall not be affected.

95.【仅约定仲裁规则时仲裁协议效力的认定】当事人在仲裁协议中未约定明确的仲裁机构，但约定了适用某仲裁机构的仲裁规则，视为当事人约定该仲裁机构仲裁，但仲裁规则有相反规定的除外。

95. [Determination of the validity of arbitration agreements that only stipulate arbitration rules] Where the parties fail to agree on a determinate arbitration institution in an arbitration agreement, but agree on the application of the arbitration rules of a certain arbitration institution, the parties shall be deemed to have agreed to arbitration by the arbitration institution, unless otherwise provided for by the arbitration rules.

96.【约定的仲裁机构和仲裁规则不一致时的仲裁协议效力认定】当事人在仲裁协议中约定内地仲裁机构适用《联合国国际贸易法委员会仲裁规则》仲裁的，一方当事人以该约定系关于临时仲裁的约定为由主张仲裁协议无效的，人民法院不予支持。

96. [Determination of the validity of arbitration agreements when the arbitration institution as agreed to is inconsistent with the agreed arbitration rules] Where the parties agree in an arbitration agreement that a Chinese mainland arbitration institution shall administer the arbitration under the United Nations Commission on International Trade Law Arbitration Rules, and either party contends that the arbitration agreement is invalid on the grounds that the agreement is about ad hoc arbitration, the people's court shall not endorse the contention.

97.【主合同与从合同争议解决方式的认定】当事人在主合同和从合同中分别约定诉讼和仲裁两种不同的争议解决方式，应当分别按照主从合同的约定确定争议解决方式。

97. [Determination of dispute resolution methods under principal contracts and accessory contracts] Where the parties agree on two dispute resolution methods, litigation, and arbitration, respectively, in the principal contract and the accessory contract, the dispute resolution methods shall be determined according to the principal contract and the accessory contract respectively.

当事人在主合同中约定争议解决方式为仲裁，从合同未约定争议解决方式的，主合同中的仲裁协议不能约束从合同的当事人，但主从合同当事人相同的除外。

If the parties agree in the principal contract on arbitration as the dispute resolution method, and the accessory contract fails to stipulate a dispute resolution method, the arbitration agreement under the principal contract is not binding on the parties to the accessory contract, unless the parties to the principal contract and the accessory contract are the same.

十七、关于申请撤销或不予执行仲裁裁决案件的审查

XVII. Review of cases involving applications for setting aside or non-enforcement of arbitral awards

98.【申请执行仲裁裁决案件的审查依据】人民法院对申请执行我国内地仲裁机构作出的非涉外仲裁裁决案件的审查，适用民事诉讼法第二百四十四条的规定。人民法院对申请执行我国内地仲裁机构作出的涉外仲裁裁决案件的审查，适用民事诉讼法第二百八十一条的规定。

98. [Bases for reviewing cases involving applications for enforcement of arbitral awards] Where a people's court reviews cases involving applications for enforcement of non-foreign-related arbitral awards made by arbitral institutions in the Chinese mainland, Article 244 of the Civil Procedure Law shall apply. If the people's court reviews cases involving applications for enforcement of foreign-related arbitral awards made by arbitration institutions in the Chinese mainland, Article 281 of the Civil Procedure Law shall apply.

[CLI Code]CLI.3.5114710(EN)

人民法院根据前款规定，对被申请人主张的不予执行仲裁裁决事由进行审查。对被申请人未主张的事由或其主张事由超出民事诉讼法第二百四十四条第二款、第二百八十一条第一款规定的法定事由范围的，人民法院不予审查。

The people's court shall, in accordance with the preceding paragraph, review the causes of non-enforcement of arbitral awards alleged by respondents. The people's court shall not review the grounds not alleged by respondents or grounds beyond the scope of statutory causes specified in paragraph 2 of Article 244 and paragraph 1 of Article 281 of the Civil Procedure Law.

人民法院应当根据民事诉讼法第二百四十四条第三款、第二百八十一条第二款的规定，依职权审查执行裁决是否违反社会公共利益。

The people's court shall review whether enforcement of arbitral awards will be against the public interest, on its own motion, in accordance with paragraph 3 of Article 244 and paragraph 2 of Article 281 of the Civil Procedure Law.

99.【申请撤销仲裁调解书】仲裁调解书与仲裁裁决书具有同等法律效力。当事人申请撤销仲裁调解书的，人民法院应予受理。人民法院应当根据仲裁法第五十八条的规定，对当事人提出的撤销仲裁调解书的申请进行审查。当事人申请撤销涉外仲裁调解书的，根据仲裁法第七十条的规定进行审查。

99. [Applications for setting aside of arbitral awards on agreed terms] An arbitral award on agreed terms shall have the same legal effect as an arbitral award. Where a party applies for setting aside of an arbitral award on agreed terms, the people's court shall accept the application. The people's court shall, in accordance with the provisions of Article 58 of the Arbitration Law, review the party's application for setting aside the arbitral award on agreed terms. A party's application for setting aside an arbitral award on agreed terms shall be reviewed in accordance with the provisions of Article 70 of the Arbitration Law.

100.【境外仲裁机构在我国内地作出的裁决的执行】境外仲裁机构以我国内地为仲裁地作出的仲裁裁决，应当视为我国内地的涉外仲裁裁决。当事人向仲裁地中级人民法院申请撤销仲裁裁决的，人民法院应当根据仲裁法第七十条的规定进行审查；当事人申请执行的，根据民事诉讼法第二百八十一条的规定进行审查。

100. [Enforcement of awards made by overseas arbitration institutions on the Chinese mainland] An arbitral award made by an overseas arbitration institution on the Chinese mainland as the place of arbitration shall be deemed as a foreign-related arbitral award on the Chinese mainland. If a party applies to an intermediate people's court at the place of arbitration for setting aside the arbitral award, the people's court shall conduct a review in accordance with Article 70 of the Arbitration Law; if the party applies for its enforcement, a review shall be conducted in accordance with the provisions of Article 281 of the Civil Procedure Law.

[CLI Code]CLI.3.5114710(EN)

101.【违反法定程序的认定】违反仲裁法规定的仲裁程序、当事人选择的仲裁规则或者当事人对仲裁程序的特别约定，可能影响案件公正裁决，经人民法院审查属实的，应当认定为仲裁法第五十八条第一款第三项规定的情形。

101. [Determination of violation of statutory procedures] A violation of the arbitration procedures specified in the Arbitration Law, the arbitration rules chosen by the parties, or the parties' special agreement on the arbitration procedures, which may affect the impartiality of the arbitration of the case, as established by a people's court upon review, shall be determined as a circumstance specified in paragraph 1(3) of Article 58 of the Arbitration Law.

102.【超裁的认定】仲裁裁决的事项超出当事人仲裁请求或者仲裁协议约定的范围，经人民法院审查属实的，应当认定构成仲裁法第五十八条第一款第二项、民事诉讼法第二百四十四条第二款第二项规定的"裁决的事项不属于仲裁协议的范围"的情形。

102. [Determination of arbitration beyond scope] If the matters decided in an arbitral award are beyond the scope as stipulated in the parties' claims or arbitration agreement, the people's court shall, after confirmation by review, determine that there is a circumstance that "the matters arbitrated are outside the scope of an arbitration agreement" as specified in paragraph 1(2) of Article 58 of the Arbitration Law and paragraph 2(2) of Article 244 of the Procedure Law.

仲裁裁决在查明事实和说理部分涉及仲裁请求或者仲裁协议约定的仲裁事项范围以外的内容，但裁决项未超出仲裁请求或者仲裁协议约定的仲裁事项范围，当事人以构成仲裁法第五十八条第一款第二项、民事诉讼法第二百四十四条第二款第二项规定的情形为由，请求撤销或者不予执行仲裁裁决的，人民法院不予支持。

If an arbitral award contains fact finding and reasoning about, but no decisions on, matters beyond the scope of the submission to arbitration as stipulated in the claims or the arbitration agreement, and a party requests setting aside or non-enforcement of the arbitral award on the grounds a circumstance specified in paragraph 1(2) of Article 58 of the Arbitration Law and paragraph 2(2) of Article 244 of the Procedure Law, the people's court shall not endorse the request.

103.【无权仲裁的认定】作出仲裁裁决的仲裁机构非仲裁协议约定的仲裁机构、裁决事项系法律规定或者当事人选择的仲裁规则规定的不可仲裁事项，经人民法院审查属实的，应当认定构成仲裁法第五十八条第一款第二项、民事诉讼法第二百四十四条第二款第二项规定的"仲裁机构无权仲裁"的情形。

103. [Determination of the absence of arbitration authority] If an arbitration institution that makes an arbitral award is not the arbitration institution stipulated in the arbitration agreement, and the matters decided in the arbitral award are matters not arbitrable as stipulated by law or the arbitration rules chosen by the parties, the people's court shall, after confirmation by review,

determine that there is a circumstance that "the arbitral institution has no arbitration authority" as specified in paragraph 1(2) of Article 58 of the Arbitration Law and paragraph 2(2) of Article 244 of the Procedure Law.

104.【重新仲裁的适用】申请人申请撤销仲裁裁决，人民法院经审查认为存在应予撤销的情形，但可以通过重新仲裁予以弥补的，人民法院可以通知仲裁庭重新仲裁。

104. [Application of re-arbitration] If on application by an applicant for setting aside an arbitral award, the people's court holds upon review that there is a circumstance under the award shall be set aside, which may be remedied by re-arbitration, the people's court may so notify as to enable the arbitral tribunal to re-arbitrate the dispute.

人民法院决定由仲裁庭重新仲裁的，通知仲裁庭在一定期限内重新仲裁并在通知中说明要求重新仲裁的具体理由，同时裁定中止撤销程序。仲裁庭在人民法院指定的期限内开始重新仲裁的，人民法院应当裁定终结撤销程序。

If the people's court decides that the arbitral tribunal shall re-arbitrate the dispute, it shall so notify the arbitral tribunal so as to enable it to re-arbitrate the dispute within a certain period, with an explanation of the specific grounds for the re-arbitration in the notice, and rule to suspend the setting aside proceedings. If the arbitral tribunal commences re-arbitration within the period specified by the people's court, the people's court shall rule to terminate the setting aside proceedings.

仲裁庭拒绝重新仲裁或者在人民法院指定期限内未开始重新仲裁的，人民法院应当裁定恢复撤销程序。

If the arbitral tribunal refuses re-arbitration or fails to commence re-arbitration within the period specified by the people's court, the people's court shall rule to resume the setting aside proceedings.

十八、关于申请承认和执行外国仲裁裁决案件的审查

**XVIII**. Review of cases involving applications for recognition and enforcement of foreign arbitral awards

105.【《纽约公约》第四条的理解】申请人向人民法院申请承认和执行外国仲裁裁决，应当根据《纽约公约》第四条的规定提交相应的材料，提交的材料不符合《纽约公约》第四条规定的，人民法院应当认定其申请不符合受理条件，裁定不予受理。已经受理的，裁定驳回申请。

105. [Understanding Article IV of the New York Convention] An applicant applying to a people's court for recognition and enforcement of a foreign arbitral award shall submit relevant materials in

accordance with Article IV of the New York Convention, and if the submitted materials do not comply with the requirements of the New York Convention, the people's court shall determine that its application does not meet the requirements for acceptance and shall refuse to accept the application or dismiss the application if the application has been accepted.

106.【《纽约公约》第五条的理解】人民法院适用《纽约公约》审理申请承认和执行外国仲裁裁决案件时，应当根据《纽约公约》第五条的规定，对被申请人主张的不予承认和执行仲裁裁决事由进行审查。对被申请人未主张的事由或者其主张事由超出《纽约公约》第五条第一款规定的法定事由范围的，人民法院不予审查。

106. [Understanding Article V of the New York Convention] A people's court in applying the New York Convention a case involving an application for recognition and enforcement of a foreign arbitral award shall, in accordance with Article V of the New York Convention, review the grounds of refusal of recognition and enforcement of the arbitral award alleged by the respondent. The people's court shall refuse to review the grounds not alleged by the respondent, or not falling within the scope of statutory grounds specified in Article V1 of the New York Convention.

人民法院应当根据《纽约公约》第五条第二款的规定，依职权审查仲裁裁决是否存在裁决事项依我国法律不可仲裁，以及承认和执行仲裁裁决是否违反我国公共政策。

The people's court shall, in accordance with the provisions of Article V(2) of the New York Convention, review on its own initiative whether the arbitral award deals with a matter not arbitrable under Chinese law and whether recognition and enforcement of the arbitral award will be against China's public policy.

107.【未履行协商前置程序不违反约定程序】人民法院适用《纽约公约》审理申请承认和执行外国仲裁裁决案件时，当事人在仲裁协议中约定"先协商解决，协商不成再提请仲裁"的，一方当事人未经协商即申请仲裁，另一方当事人以对方违反协商前置程序的行为构成《纽约公约》第五条第一款丁项规定的仲裁程序与各方之间的协议不符为由主张不予承认和执行仲裁裁决的，人民法院不予支持。

107. [Failure to follow the prerequisite negotiation procedure is not a violation of the agreed procedure] When the people's court applies the New York Convention to a case involving an application for recognition and enforcement of a foreign arbitral award, in which a party has applied for arbitration without negotiation though the parties agreed in the arbitration agreement that "a settlement shall be reached first by negotiation, or if the negotiation fails, a submission shall be made to arbitration," the opposite party contends that recognition and enforcement of the arbitral award should be refused on the grounds that the party's violation of the prerequisite negotiation procedure constitutes failure of the arbitration procedure to be in accordance with the agreement of the parties as specified in Article V(1)(d) of the New York Convention, the people's

Saved on: 02/22/2025

[CLI Code]CLI.3.5114710(EN)

court shall not endorse the contention.

108.【违反公共政策的情形】人民法院根据《纽约公约》审理承认和执行外国仲裁裁决案件时，如人民法院生效裁定已经认定当事人之间的仲裁协议不成立、无效、失效或者不可执行，承认和执行该裁决将与人民法院生效裁定相冲突的，应当认定构成《纽约公约》第五条第二款乙项规定的违反我国公共政策的情形。

108. [Violations of the public policy] When a people's court hears a case for recognition and enforcement of a foreign arbitral award in accordance with the New York Convention, if recognition and enforcement of the award will conflict with an effective people's court ruling finding that the arbitration agreement between the parties is not formed, is invalid, has lapsed in time, or is unenforceable, the people's court shall determine that it constitutes a violation of the public policy of China as specified in Article V(2)(b) of the New York Convention.

109.【承认和执行程序中的仲裁保全】当事人向人民法院申请承认和执行外国仲裁裁决，人民法院受理申请后，当事人申请财产保全的，人民法院可以参照民事诉讼法及相关司法解释的规定执行。申请人应当提供担保，不提供担保的，裁定驳回申请。

109. [Interim measures in relation to arbitral awards during recognition and enforcement proceedings] Where a party applies for property attachment after the people's court accepts its application for recognition and enforcement of a foreign arbitral award, the people's court may proceed according to the Civil Procedure Law and relevant judicial interpretations, mutatis mutandis. The applicant shall provide security, or if it fails to do so, a ruling shall be made to dismiss its application.

十九、仲裁司法审查程序的其他问题

**XIX**. Other issues on the procedures for judicial review of an arbitration

110.【仲裁司法审查裁定的上诉和再审申请】人民法院根据《最高人民法院关于仲裁司法审查若干问题的规定》第七条、第八条、第十条的规定，因申请人的申请不符合受理条件作出的不予受理裁定、立案后发现不符合受理条件作出的驳回申请裁定、对管辖权异议作出的裁定，当事人不服的，可以提出上诉。对不予受理、驳回起诉的裁定，当事人可以依法申请再审。

110. [Appeals and retrial petitions against rulings upon judicial review of arbitration] According to Articles 7, 8, and 10 of the Provisions of the Supreme People's Court on Several Issues Concerning Judicial Review of Arbitration, a party may appeal a ruling to refuse to accept its application made on the grounds of its failure to meet the requirements for acceptance, a ruling to dismiss its application made after the discovery of its failure to meet the requirements for acceptance or a

Saved on: 02/22/2025

ruling on a jurisdictional challenge. A party may file a retrial petition in accordance with the law against a ruling to refuse to accept, or a ruling dismisses an action.

除上述三类裁定外，人民法院在审理仲裁司法审查案件中作出的其他裁定，一经送达即发生法律效力。当事人申请复议、提出上诉或者申请再审的，人民法院不予受理，但法律、司法解释另有规定的除外。

A ruling made by a people's court in the trial of a case involving judicial review of arbitration, other than the above three types of rulings, shall take effect upon service. If a party applies for reconsideration, appeals, or petitions for retrial, the people's court shall refuse acceptance, unless otherwise provided by any law or judicial interpretation.

二十、关于涉港澳台商事海事案件的参照适用

**XX**. Application mutatis mutandis to commercial and maritime cases related to Hong Kong, Macao, and Taiwan

111.【涉港澳台案件参照适用本纪要】涉及香港特别行政区、澳门特别行政区和台湾地区的商事海事纠纷案件，相关司法解释未作规定的，参照本纪要关于涉外商事海事纠纷案件的规定处理。

111. [These Minutes apply mutatis mutandis to cases related to Hong Kong, Macao, and Taiwan] Where the relevant judicial interpretations are silent on cases involving commercial and maritime disputes related to the Hong Kong Special Administrative Region, the Macao Special Administrative Region, and the Taiwan region, the provisions of these Minutes on cases involving foreign-related commercial and maritime disputes shall apply mutatis mutandis.

凡例：

Explanatory notes:

1.法律文件名称中的"中华人民共和国"省略，如《中华人民共和国民法典》简称民法典；

1. The People's Republic of China in the title of the law is omitted, for example, the Civil Code of the People's Republic of China is cited as the Civil Code.

2.《中华人民共和国仲裁法》，简称仲裁法；

2. The Arbitration Law of the People's Republic of China, cited as the Arbitration Law.

3.《中华人民共和国海商法》，简称海商法；

3. The Maritime Law of the People's Republic of China, cited as the Maritime Law.

Saved on: 02/22/2025

[CLI Code]CLI.3.5114710(EN)

4.《中华人民共和国涉外民事关系法律适用法》，简称涉外民事关系法律适用法；

4. The Law of the People's Republic of China on Choice of Law for Foreign-related Civil Relationships, cited as the Law on Choice of Law for Foreign-related Civil Relationships.

5.《关于向国外送达民事或商事诉讼文书和非诉讼文书海牙公约》，简称《海牙送达公约》；

5. The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, cited as the Hague Service Convention.

6.《承认及执行外国仲裁裁决公约》，简称《纽约公约》；

6. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, cited as the New York Convention.

7.《中华人民共和国民事诉讼法》（2021修正），简称民事诉讼法；

7. The Civil Procedure Law of the People's Republic of China (2021 Amendment), cited as the Civil Procedure Law.

8.《中华人民共和国海事诉讼特别程序法》，简称海事诉讼特别程序法；

8. The Special Maritime Procedure Law of the People's Republic of China, cited as the Special Maritime Procedure Law.

9.《最高人民法院关于适用＜中华人民共和国民事诉讼法＞的解释》，简称民事诉讼法司法解释；

9. The Interpretation of the Supreme People's Court on the Application of the Civil Procedure Law of the People's Republic of China, cited as the Judicial Interpretation of the Civil Procedure Law.

10.《最高人民法院关于适用＜中华人民共和国仲裁法＞若干问题的解释》，简称仲裁法司法解释。

10. Interpretation of the Supreme People's Court Concerning Some Issues on Application of the Arbitration Law of the People's Republic of China, cited as the Judicial Interpretation of the Arbitration Law.

©Pkulaw：(www.pkulaw.com) provides various professional solutions in such fields as legal information, law knowledge a

Saved on: 02/22/2025

[CLI Code]CLI.3.5114710(EN)

nd legal software. Pkulaw provides you with abundant reference materials. When you invoke articles of laws and regulations, please check them with the standard texts. You are welcome to view all our products and services.

Pkulaw Express: How to quickly find information you need? What are the new features of Pkulaw V6?



Scan QR Code for instant access to the original text

Original Link: https://www.pkulaw.com/en_law/bffd20e9aee35db2bdfb.html

Annexure 3 Item 4



## OXFORD JOURNALS
### OXFORD UNIVERSITY PRESS

The Hague Choice of Court Convention: A Chinese Perspective

Author(s): Guangjian Tu

Source: *The American Journal of Comparative Law*, Spring, 2007, Vol. 55, No. 2 (Spring, 2007), pp. 347–365

Published by: Oxford University Press

Stable URL: https://www.jstor.org/stable/20454577

JSTOR is a not-for-profit service that helps scholars, researchers, and students discover, use, and build upon a wide range of content in a trusted digital archive. We use information technology and tools to increase productivity and facilitate new forms of scholarship. For more information about JSTOR, please contact support@jstor.org.

Your use of the JSTOR archive indicates your acceptance of the Terms & Conditions of Use, available at https://about.jstor.org/terms



*Oxford University Press* is collaborating with JSTOR to digitize, preserve and extend access to *The American Journal of Comparative Law*

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

© The Author(s) 2020. Published by Oxford University Press. All rights reserved.
doi:10.1093/chinesejil/jmaa019; Advance Access publication 18 December 2020

# The Hague Judgments Convention and How We Negotiated It

SUN Jin* and WU Qiong**

## Abstract

In July 2019, the Hague Conference on Private International Law adopted the Convention on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters. As an outcome of the Judgments Project, this Convention will exert a great influence on the global circulation of foreign judgments. China attached great importance to the Judgments Project and participated in the full negotiation process. This paper is a reflection of some of the Chinese negotiators' approaches in handling certain very difficult but important issues in the process, with the hope that it may shed some light on China's negotiation practice and the principles it adheres to in the international law arena, which are fully in line with the principles of equity and justice, mutual benefit, and win-win outcome.

---

\*    Doctor of Law, Wuhan University; Council Member, Wuhan University Institute of International Law (email: sunjinsjsj@sina.com). He participated in the negotiations of the 2019 Hague Judgments Convention and the 2005 Choice of Court Convention. This article is purely written in the authors' personal capacity and does not necessarily reflect any governmental position. This article intends to cover only some important aspects of the 2019 Hague Judgments Convention. This article was completed on 30 June 2020 and the websites cited were current as of this date unless otherwise noted.

\*\*   Master of Law, China University of Political Science and Law (email: fishseason@ 163.com). He participated in the negotiations of the 2019 Hague Judgments Convention.

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

## I. Introduction

### I.A. The Hague Conference on Private International Law

1. The Hague Conference on Private International Law is "the world organisation for Cross-border Co-operation in Civil and Commercial Matters".[1] Normally referred to as HCCH, it is an inter-governmental organisation with 85 members representing all continents, with the purpose "to work for the progressive unification of the rules of private international law".[2] The HCCH held its first meeting in 1893, and was founded as an independent permanent inter-governmental organisation in 1955, with its membership enlarged from continental European countries to the United Kingdom and Japan. From the 1960s, with the United States, Canada, Australia and other common law countries joining, accommodating the divided legal systems of civil law and common law became a focus of its work. With more States like China, Russia, Saudi Arabia and Israel joining the organisation, the HCCH faced the most compelling challenges of legal diversity. Impressively, as the description of the HCCH on its website says, the organisation acts as "a melting pot of different legal traditions",[3] and it has developed many multilateral legal instruments, by "finding internationally-agreed approaches to issues such as jurisdiction of the courts, applicable law, and the recognition and enforcement of judgments in a wide range of areas".[4] Up to now, the HCCH has adopted 40 international conventions, some of which are widely acceded to with an universal influence. The Conventions on service of process, taking of evidence abroad, inter-country adoption and international child abduction are several of the examples.

### I.B. The Judgments Project

2. The "Judgments Project" refers to the work undertaken by the HCCH since 1992 on two key aspects of private international law in cross-border litigation in civil and commercial matters: the international jurisdiction of courts and the recognition and enforcement of their judgments abroad. The project is an ongoing negotiation process in viewing the complex nature of the issue and the sensitivity of the judicial sovereignty of the States involved. The

---

1    www.hcch.net.
2    Statute of the Hague Conference on Private International Law, art. 1.
3    www.hcch.net/en/about.
4    Ibid.

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

original scope of the Judgments Project was a very broad one covering both the exercise of jurisdiction and recognition and enforcement of judgments from foreign courts. However, as the negotiation proceeded, the mission seemed more and more beyond the agreement that could be reached by the delegations. With an unsuccessful diplomatic session, the HCCH moved to focus on international cases involving choice of court agreements on which according to the negotiation history consensus might be more attainable and this could also serve as a first step to the future Judgments Project. This led to the adoption of the Hague Convention of 30 June 2005 on Choice of Court Agreements ("the 2005 Choice of Court Convention").

3. On 30 June 2005, the 2005 Choice of Court Convention was adopted by the Twentieth Session of the Hague Conference on Private International Law and was open for signature on the same date. The Convention came into force on 1 October 2015 between the European Union with all its members except Denmark[5] and Mexico. To date, Singapore and Montenegro have also ratified the Convention, and the United States of America, China, Ukraine and the Republic of North Macedonia have signed but not yet ratified it.[6] This convention is said to aim at levelling the playing field between the most commonly used dispute settlement modes, which are arbitration and civil litigation. For the former one, the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the 1958 New York Convention") has been widely ratified, which ensures the free movement of the arbitral awards to be recognized and enforced by the requested court in a State party to the New York Convention. Yet the latter one seems to put more pressure on the sovereignty concern of the States, and it has only become available after the 2005 Choice of Court Convention which exclusively bases its jurisdiction on the party autonomy of the litigants who have made a choice of their litigation court.

4. The 2005 Choice of Court Convention has three basic rules, which are: Firstly, if the parties made a valid choice of court agreement, the chosen court must, in principle, hear the case when the proceedings are brought before it. Secondly, if a party of the said choice of court agreement approaches a court other than the chosen court, this court must, in principle, refuse to hear the case by suspending or dismissing the proceedings. Thirdly, the judgments

---

5    Denmark acceded to the 2005 Choice of Court Convention later on 30 May 2018.

6    Status Table of Convention of 30 June 2005 on Choice of Court Agreements (www.hcch.net/en/instruments/conventions/status-table/?cid=98).

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

rendered by the chosen court must, in principle, be recognised and enforced by all contracting States. Exceptions to these three rules are very limited.

## I.C. The Judgments Convention

5. In 2011, the HCCH decided to resume the Judgments Project. It established a Working Group to prepare proposals on the recognition and enforcement of judgments, including jurisdictional filters. After several years of work, in 2016, the Working Group on the Judgments Project presented a Proposed Draft Text, and the HCCH decided to set up a Special Commission to prepare a draft Convention. From 1 to 9 June 2016, 16 to 24 February 2017, 13 to 17 November 2017, and 24 to 29 May 2018, the Special Commission took four sessions to produce the 2018 draft Convention. Finally, from 18 June to 2 July, 2019, the HCCH convened the 22nd Session of its Diplomatic Conference, and adopted the Convention on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters. It is said that this convention is "a much-wanted and long-awaited global multilateral treaty on the free circulation of judgments on civil or commercial matters across borders, a fundamental tool to promote international access to justice".[7] It is the first time that a global framework according to which judgments can circulate from one State to another has been established, and according to this framework, a successful cross-border litigant can protect his or her rights in a predictable, effective and efficient way. It will also facilitate rule-based multilateral trade and investment. It will promote the better management of transactions and litigation risks, as well as enable weaker parties to gain better, cheaper and effective access to justice. It is a true game changer in international dispute resolution. The Secretary General of the HCCH stressed that, by adopting this Convention, "an important gap in the landscape of private international law has finally been filled by the HCCH".[8]

6. The Judgments Convention has a preamble and four chapters with a total of 32 articles. Chapter one lays down the scope of the Convention, as well as the most difficult Article concerning the exclusions from the scope of the Convention. Chapter two is the main body of the Convention, which provides for the rules in relation to jurisdictional bases for recognition and

---

7    Gamechanger for cross-border litigation in civil and commercial matters to be finalised in the Hague (www.hcch.net/en/news-archive/details/?varevent=683).

8    It's done: the 2019 HCCH Judgments Convention has been adopted! (www.hcch.net/en/news-archive/details/?varevent=687).

enforcement, grounds for refusal of recognition and enforcement, and damages, etc. Chapter 3 is about general clauses, which deal with provisions such as declarations with respect to specific matters to be not applied by a State party, or declarations with respect to judgments pertaining to a State, and Non-unified legal system clause, etc. Chapter 4 contains final clauses, covering provisions concerning the future ratification/entry into force, and establishment of treaty relations.

7. China attached great importance to the Judgments Project and participated in the full negotiation process. The delegation of China was headed by Department of Treaty and Law of Ministry of Foreign Affairs, with members composed of senior judges of the Supreme People's Court, law professors, senior lawyers, as well as officials from HKSAR and Macau SAR. China was also one of the vice Chairs of all the Special Commissions and the Diplomatic Session. In the negotiation, the Chinese delegation, being among the most active and constructive delegations, not only endeavoured to bridge the gaps in the process, but also led the way forward to make the Convention a success. This paper is a reflection of some of the Chinese negotiators' approaches to handling certain very difficult but important issues in the process, with the hope that it could shed some lights on China's negotiation practice and principles it adheres to in the international law arena, which are fully in line with the principle of equity and justice, mutual benefit and win-win outcome.

## II. Upholding the principle concerning multilateralism and sovereign equality

### II.A. Multilateralism

8. The first sentence of the preamble of the Judgments Convention reads:

> The Contracting Parties to the present Convention,
>
>   Desiring to promote effective access to justice for all and to facilitate rule-based multilateral trade and investment, and mobility, through judicial co-operation [. . ..]

9. Although the 2005 Choice of Court Convention is the model from which many of the provisions of the Judgments Convention originated, this sentence could not be found in that convention. It was introduced to the preamble at the last moment. The Permanent Bureau of the HCCH proposed "desiring to promote effective access to justice and to facilitate rule-based

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

international trade, investment and mobility, through judicial cooperation"[9]; the EU agreed with it, but proposed to amend some wording in it.[10] The Chinese delegation was the one that proposed using "the rule-based multilateral trade and investment", instead of "international trade and investment".[11] This proposal was generally well-received by other delegations and became part of the preamble. It is the first time for the Hague convention to expressly support multilateralism. This is a very significant gesture when everybody understands that this is a time when unilateralism and protectionism are becoming a challenge to all the members of the international society.

10. The reason for China to propose this text is very simple. China stands firmly for multilateralism. The Chinese government has made it very clear that they believe multi-polarization is an inevitable trend and multi-polarization needs to be achieved through multilateralism. Multilateralism represents the future while unilateralism is unsustainable. It is the interest of China as well as the international society to build the strong consensus on multilateralism. Chinese leaders have made numerous speeches on this matter, and the Chinese government has issued joint statements with foreign governments on the same point. In the negotiation, the Chinese delegates referred to EU colleagues the most recent joint statement by China and EU at their 21st summit in April 2019. The statement clearly articulates "China and the EU reaffirm [. . .] their commitment to multilateralism, and respect for international law and for fundamental norms governing international relations, with the United Nations (UN) at its core. [. . .] China and the EU firmly support the rules-based multilateral trading system with the WTO at its core, fight against unilateralism and protectionism".[12]

## II.B. Sovereign equality

11. During the negotiation process, the issue of the so-called "bilateralisation clause" was heatedly debated by the delegations. The bilateralisation clause is a very old-style Hague Convention provision, and it allows the actual establishment of the treaty relationship between the parties to a Convention subject to the formal acceptance of the prior acceding States, or without negative

---

9    HCCH Twenty-Second Session, Work. Doc. No.2.

10    HCCH Twenty-Second Session, Work. Doc. No.65.

11    HCCH Twenty-Second Session, Work. Doc. No.78.

12    Full text of China-EU summit joint statement, Xinhua News, 9 April 2019 (www.xinhuanet.com/english/2019-04/09/c_137963348.htm).

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

objections from those States. It gives an advantage to those States which participated in the relevant special commissions or diplomatic conference of the HCCH. The clause could be found in various forms.

12. Article 39 of the Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters provides: "Any State not represented at the Eleventh Session of the Hague Conference on Private International Law which is a member of this Conference or of the United Nations or of a specialized agency of that organization, or a Party to the Statute of the International Court of Justice may accede to the present Convention, [. . .]. The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession".[13]

13. Article 43 of the Convention of 29 May 1993 on Protection of Children and Co-operation in Respect of Intercountry Adoption provides: "The Convention shall be open for signature by the States which were Members of the Hague Conference on Private International Law at the time of its Seventeenth Session and by the other States which participated in that Session". Article 44 stipulates: "(1) Any other State may accede to the Convention after it has entered into force in accordance with Article 46, paragraph 1. [. . .] (3) Such accession shall have effect only as regards the relations between the acceding State and those Contracting States which have not raised an objection to its accession in the six months after the receipt of the notification referred to in sub-paragraph b of Article 48. Such an objection may also be raised by States at the time when they ratify, accept or approve the Convention after an accession".[14]

14. It needs to be emphasized that recent conventions such as the 2005 Choice of Court Convention do not contain such a clause. China is of the view that sovereign equality is a fundamental principle of international law, which is enshrined in the UN Charter, and the new Hague conventions should not follow its outdated tradition of differentiating countries by their membership or participation in the HCCH meetings. In particular, in the area of civil or commercial judicial co-operation, the widest participation and application of the conventions is a key to achieving the purpose of the

---

13    Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, art. 39.

14    Convention of 29 May 1993 on Protection of Children and Co-operation in Respect of Intercountry Adoption, arts. 43(1) and 44.

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

conventions. Any kind of bilateralisation clause would only jeopardize the effectiveness and success of relevant conventions.

15. However, in the negotiation of the Judgments Convention, the issue of the bilateralisation clause was raised again and again by several delegations. Although such clause was not included in the 2018 draft text, those delegations presented it again in the diplomatic session.[15] The arguments were that according to the Judgments Convention, recognition or enforcement of a foreign judgment may be refused only on the very limited grounds specified in the Convention. Contracting parties have no role in determining which other countries can join, and this is a huge change to their established practice in this area that requires reciprocal agreements. For these countries, the convention should at least provide some sort of "entry-control mechanism", which means the State should have a role in determining which foreign States' judgments as a whole could be recognized and enforced, and a mechanism that allows for the objection to establishment of treaty relations with other Parties to the Convention is a necessity for them to join the convention. The bilateralisation clause, either by accepting or by objecting to establishing treaty relations with another State, was a good solution for these delegations. They even went further to propose that, "A Contracting State may at any time notify the depositary of its objection to the continuation of treaty relations with another Contracting State."[16] This actually means a State could terminate the treaty relationship with another State without any restriction, and in reality it would be impossible for the convention to function effectively and efficiently, a devastating outcome contrary to the purpose and value of the convention, which is legal certainty and predictability.

16. The proposal of course was not welcomed by many delegations, and was severely criticized by the Chinese delegation. The Chinese representative made a long speech explaining the reasons why this proposal was not suitable for the current time, as it violated the sovereign equality principle, and the non-discrimination principle; it contradicted the right approach of the 2005 Choice of Court Convention and all other major conventions on civil or commercial judicial cooperation, such as the 1958 New York Convention as well as the United Nations Convention on International Settlement Agreements Resulting from Mediation ("the Singapore Convention") that was adopted recently, none of which contains such a clause. In order to address the concerns of those proponents of this proposal, the Chinese delegation proposed to add

---

15   HCCH Twenty-Second Session, Work. Doc. No.24.
16   HCCH Twenty-Second Session, Work. Doc. No.24.REV.

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

an article on reservation, enabling parties to make reservations under this convention.[17] The conference spent a very long time finding a way out on this very sensitive issue. As for those proponents, the necessity for this kind of provision is a must-have. They said that would be the only way for them to be a party to this future convention. For China, there is no intention of excluding any negotiating partner from this convention. But the sovereign equality is a fundamental principle China adheres to, and it is also very important to make sure that the future convention shall not give any country political motivation to judge the legal system of another country. To address the concerns of both sides, the conference reached the middle ground to allow a mechanism of "one-time entry control", giving the States one-time sovereign rights to notify their intention of not establishing treaty relations with another contracting State. This is reflected in Article 29, which reads as follows:

*Article 29*
Establishment of relations pursuant to the Convention

(1) This Convention shall have effect between two Contracting States only if neither of them has notified the depositary regarding the other in accordance with paragraph 2 or 3. In the absence of such a notification, the Convention has effect between two Contracting States from the first day of the month following the expiration of the period during which notifications may be made.

(2) A Contracting State may notify the depositary, within 12 months after the date of the notification by the depositary referred to in Article 32(a), that the ratification, acceptance, approval or accession of another State shall not have the effect of establishing relations between the two States pursuant to this Convention.

(3) A State may notify the depositary, upon the deposit of its instrument pursuant to Article 24(4), that its ratification, acceptance, approval or accession shall not have the effect of establishing relations with a Contracting State pursuant to this Convention.

(4) A Contracting State may at any time withdraw a notification that it has made under paragraph 2 or 3. Such a withdrawal shall take effect on the first day of the month following the expiration of three months following the date of notification.

---

17    HCCH Twenty-Second Session, Work. Doc. No.81.

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

## III. Adhering to the principle of "One Country, Two Systems"

17. "One Country, Two Systems" is a great pioneering initiative of China.[18] Since China resumed the exercise of sovereignty over Hong Kong and Macao, the practice of "one country, two systems" in both regions has been a resounding success. According to the Constitution of the People's Republic of China (the "PRC"), the Basic Law of the Hong Kong Special Administrative Region and the Basic Law of the Macao Special Administrative Region, the two SARs are local administrative regions of the PRC and come directly under the Central People's Government, with the National People's Congress of the PRC authorizing the two SARs to exercise a high degree of autonomy in accordance with the Constitution and the provisions of the two Basic Laws.[19] According to the Basic Laws, the SARs may practice social and legal systems different from those of the mainland. Although an SAR shall not on its own participate in any treaty that is limited to sovereign States only, it could conclude agreements in areas explicitly authorized by the Central Government under the Basic Law. According to Basic Laws, with the assistance or authorization of the Central People's Government, the Government of the two SARs may make appropriate arrangements with foreign States for reciprocal judicial assistance.[20] In deciding whether an international treaty, which is concluded by China and does not involve foreign affairs or defense, should apply to the SARs, the Central Government will first consider relevant SAR's circumstances and needs, and seek views of the relevant SAR Government.[21] When conducting the negotiation of the Judgments Project, it is also a necessity to accommodate the policy and implementation of "one country, two systems".

18. In the Convention, there are two articles addressing this very important issue. It is the outcome of the efforts by the Chinese delegation, together with

---

18    Full text of Chinese President Xi Jinping's speech at meeting marking HK's 20th return anniversary and the inaugural ceremony of 5th-term HKSAR gov't, Xinhua News, 1 July 2017 (www.xinhuanet.com//english/2017-07/01/c_136409940.htm).

19    Article 31 of the Constitution of the PRC provides as follows: The State may establish special administrative regions when necessary. The systems to be instituted in special administrative regions shall be prescribed by law enacted by the National People's Congress in the light of specific conditions.

20    The Basic Law of the Hong Kong Special Administrative Region of the PRC, art. 96; The Basic Law of the Macao Special Administrative Region of the PRC, art. 94.

21    The Basic Law of the Hong Kong Special Administrative Region of the PRC, art. 153; The Basic Law of the Macao Special Administrative Region of the PRC, art. 138.

certain delegations that have similar concerns, to reflect the unique situation of their legal systems and to tailor-make the provisions only for these countries. These two articles are:

*Article 22*
Non-unified legal systems

(1) In relation to a Contracting State in which two or more systems of law apply in different territorial units with regard to any matter dealt with in this Convention –
  (a) any reference to the law or procedure of a State shall be construed as referring, where appropriate, to the law or procedure in force in the relevant territorial unit;
  (b) any reference to the court or courts of a State shall be construed as referring, where appropriate, to the court or courts in the relevant territorial unit;
  (c) any reference to a connection with a State shall be construed as referring, where appropriate, to a connection with the relevant territorial unit;
  (d) any reference to a connecting factor in relation to a State shall be construed as referring, where appropriate, to that connecting factor in relation to the relevant territorial unit.
(2) Notwithstanding paragraph 1, a Contracting State with two or more territorial units in which different systems of law apply shall not be bound to apply this Convention to situations which involve solely such different territorial units.
(3) A court in a territorial unit of a Contracting State with two or more territorial units in which different systems of law apply shall not be bound to recognise or enforce a judgment from another Contracting State solely because the judgment has been recognised or enforced in another territorial unit of the same Contracting State under this Convention.
(4) This Article shall not apply to Regional Economic Integration Organisations.

*Article 25*
Declarations with respect to non-unified legal systems

(1) If a State has two or more territorial units in which different systems of law apply in relation to matters dealt with in this Convention, it may

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

declare that the Convention shall extend to all its territorial units or only to one or more of them. Such a declaration shall state expressly the territorial units to which the Convention applies.

(2) If a State makes no declaration under this Article, the Convention shall extend to all territorial units of that State.

(3) This Article shall not apply to Regional Economic Integration Organisations.

19. This kind of clause was known as a "federal clause" in the early days, as it occurs most often in the case of federations, such as Canada or the United States of America. States later realized that not only federal countries, but also some non-federal countries could be composed of two or more territorial units, each with its own legal system, courts and civil procedure, such as the United Kingdom and China. In these countries, the reference to "courts of State A" or "law of State A" is not precise, as the country as a whole has a "non-unified" nature, and further interpretive and operative rules are required to resolve these potential difficulties.

20. Article 22(1) is purely interpretive. Its main focus is to find the most appropriate territorial or geographical location as the relevant connecting factor to be applied according to the Convention, in particular in the application of the jurisdictional filters in Articles 5 and 6. Paragraphs 2 and 3 of Article 22 need to be discussed in more detail. Paragraph 2 is about the rules on the recognition and enforcement of judgments between territorial units inside the same country. This rule is first based on the fact that the Convention is on the recognition and enforcement of foreign judgments in the international arena. According to Article 1(2), this Convention shall apply to the recognition and enforcement in one Contracting State of a judgment given by a court of another Contracting State. A judgment from the court of another territorial unit within the same State is not a foreign judgment according to this Convention. The State concerned has the freedom to regulate the internal recognition and enforcement of judgments between different territorial units. Paragraph 3 is about the rules on the recognition and enforcement of judgments across territorial units. This rule emphasizes that a judgment recognized or enforced in one particular territorial unit of the non-unified legal system does not have the automatic circulation effects to other territorial units of the same country. The reasons are simple and understandable: since the Convention does not apply to situations inside one country, a foreign judgment recognized and enforced in one territorial unit only has effect in that territorial unit, and

whether and how it could circulate to another territorial unit of that country is totally dependent on the internal law of that country, and the Convention does not intend to regulate that situation.

21. The above paragraphs also confirm to the situation of China's "one country, two systems". According to the Basic Laws, the SARs may, through consultations and in accordance with law, maintain judicial relations with the judicial organs of other parts of the country, and they may render assistance to each other.[22] As recognition and enforcement of civil or commercial judgments is an important area of judicial assistance, the circulation of judgments from central judicial organs of China and judicial organs of the SARs are to be decided by consultations and laws. After China's resumption of exercise of sovereignty over the two SARs, judicial assistance between the different parts of the country only developed step by step. The first steps only covered areas in service of documents, taking of evidence, etc. In 2006, the Supreme People's Court reached the Arrangement between the Mainland and the Macao Special Administrative Region on the Mutual Recognition and Enforcement of Civil and Commercial Judgments with the Macao Special Administrative Region upon consultation, and signed the Arrangement on 28 February 2006 and it came into force as of 1 April 2006. In 2008, upon negotiations, the Supreme People's Court and the Hong Kong SAR reached the Arrangement between the Mainland and the HKSAR on Reciprocal Recognition and Enforcement of the Decisions of Civil and Commercial Cases under Consensual Jurisdiction, which was signed on 14 July 2006 and came into force as of 1 August 2008. The latter is very narrow in scope. It applies to those judgments requiring payment of money in a civil or commercial case pursuant to a choice of court agreement in writing, a scope even narrower than the 2005 Choice of Court Convention. Almost 10 years later, the Supreme People's Court and the HKSAR Government reached the second arrangement on reciprocal recognition and enforcement of civil judgments in matrimonial and family cases, on 20 June 2017. It aims to ensure that parties in the Mainland and the HKSAR can enforce relevant civil judgments in matrimonial and family cases. Most recently, the Supreme People's Court and the HKSAR Government reached the third Arrangement on Reciprocal Recognition and Enforcement of Judgments in Civil and Commercial Matters on 18 January 2019. It is the sixth arrangement between Mainland

---

22   The Basic Law of the Hong Kong Special Administrative Region of the PRC, art. 95; The Basic Law of the Macao Special Administrative Region of the PRC, art. 93.

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

and HKSAR on mutual legal assistance in civil and commercial matters and the third arrangement providing for recognition and enforcement of judgments between the Mainland and HKSAR in civil and commercial matters. It seeks to establish a bilateral legal mechanism with greater clarity and certainty for recognition and enforcement of judgments in a wider range of civil and commercial matters between them. That's why it is very important to have Article 22 in the Judgments Convention.

22. Article 25 of the Judgments Convention concerns the territorial application of the Convention to the non-unified legal systems. It allows the State that has non-unified legal systems to declare the Convention extends to all its territorial units or only to one or more of them. If the State makes no such declaration, then the Convention will extend to all territorial units of that State. This rule in general confirms to the traditional position as reflected in the Vienna Convention on the Law of Treaties, of which Article 29 states: "Unless a different intention appears from the treaty or is otherwise established, a treaty is binding upon each party in respect of its entire territory".[23] Article 25 of the Judgments Convention is important to China, as the Chinese Government had made it very clear well before China's resumption of exercise of sovereignty over Hong Kong, and that in the case of treaties relating to foreign affairs or defence to which China is a party and/or other treaties which apply to the entire territory of a contracting State, they shall also apply to the SARs. Since Hong Kong's return to China, the Central Government has followed the same principle in handling matters relating to the application of such treaties in the HKSAR. As to another category of international treaties which is concluded by China and does not involve foreign affairs or defence, the Central Government will first consider each SAR's circumstances and needs, and seek the views of the respective SAR Government, then make the decision on whether to apply it to the SAR or SARs. As for international treaties to which China is a party and which are applicable to the HKSAR, the Central Government may make reservations and declarations on behalf of the HKSAR in light of its special circumstances. These reservations or declarations may be different from those in respect of the mainland.

23. The application of the bilateral treaties concluded by China to SARs is different from the traditional rule:

---

23    Vienna Convention on the Law of Treaties, art. 29.

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

The practice in Hong Kong since its return to China shows that in the appropriate fields where the HKSAR may conclude treaties or agreements with foreign States, be it within its autonomy or upon authorization by the Central Government, bilateral treaties concluded by the Central Government will not be applicable to Hong Kong in principle. Moreover, with very few exceptions, a bilateral treaty or agreement that the Central Government concludes with a foreign State generally does not contain a specific provision on non-application to the HKSAR. In other words, our approach vis-a-vis the HKSAR is different from the traditional rules of international law: i.e. a treaty or agreement of the above-mentioned kind should be construed as not applicable to the HKSAR, unless it provides otherwise. This practice of China is widely acknowledged and accepted by the international community and has become a new practice that could be seen as "otherwise established" as provided for in Article 29 of the Convention.[24]

24. It is important to point out that Article 22 and Article 25 both state clearly that it does not apply to Regional Economic Integration Organisations (REIOs). The reason is very simple, as the REIOs are constituted by two or more sovereign States, and the rules applied to REIOs are different from those non-unified legal systems which belong to a single sovereign State.

## IV. Balancing the interests and striving for a win-win solution

25. The scope of the Judgments Convention is one of the articles on which the conference spent a lot of time reaching agreement. According to Article 1 (1), this Convention shall apply to the recognition and enforcement of judgments relating to civil or commercial matters. It shall not extend in particular to revenue, customs or administrative matters. In addition to this general application and limitation on civil or commercial nature, Article 2 further excludes certain matters from the scope.[25] The excluded matters are in general considered to be matters already governed by other international conventions, or deemed by many States to be matters of particular sensitivity and better left outside of the current Convention to reach broad support for its adoption. In

---

24  XU Hong, The Successful Implementation of "One Country, Two Systems" Policy in Hong Kong is a Contribution to the Development of International Law, in AAIL 2017 Colloquium on International Law: Common Future in Asia, 52.

25  Convention of 2 July 2019 on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters, art. 2.

496    *Chinese JIL (2020)*

the negotiation, which matter should be excluded or included was always the top priority of the delegations. Intellectual property, for example, was an issue involving the most heated debates throughout the entire Judgments Project, and was removed totally from the scope of this Convention at the Diplomatic Session even though IP is included to some extent in the 2005 Choice of Court Convention.[26]

26. Another very difficult matter in the negotiation was to decide whether and how to exclude or include anti-trust (competition) matters in the Convention. It is a common view that anti-trust (competition) matters have a strong local public policy character, and are usually in relation to the exercise of the governmental or sovereign powers that are not enjoyed by ordinary persons which do not fall into the civil and commercial scope. Since not all the countries have the same legal systems and name it as anti-trust law, competition law is the term used to describe the similar contents of law in some States. To accommodate various legal systems, the Convention uses the phrase anti-trust (competition). On the other hand, the phrase does not cover the matters called "unfair competition", such as misleading advertising or passing one's goods off as those of a competitor.[27]

27. The original exclusion of anti-trust (competition) matters appeared in the 2005 Choice of Court Convention, and it encompasses claims brought by governmental authorities and claims brought by private individuals. In the negotiating process on the Judgments Convention, the question was whether private claims should be excluded. The arguments for not excluding the anti-trust matter as a whole emphasized that the anti-trust contract actions and anti-trust tort actions are actually traditional actions in contract and tort, which is purely civil and commercial in nature. In addition, a State could refuse to recognize or enforce a judgment in accordance with the public policy exception, or declare that it shall not apply the Convention to anti-trust matters. So there is no reason to exclude it from the scope.[28] The arguments opposing any inclusion pointed out that anti-trust is an area where consideration of economic policy and public regulations of a State will be dominant factors. In the anti-trust area, the private right of action is rather a side effect of public regulation. The recognition and enforcement of a foreign judgment relating

---

26    Explanatory Report of the Convention of 30 June 2005 on Choice of Court Agreements, paras.33-35,71-81.

27    Ibid., para.60.

28    HCCH Twenty-Second Session, Work. Doc. No.4.

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

to a private anti-trust remedy would require the receiving State to accept the extraterritorial effect of foreign anti-trust law. However, even more than Intellectual Property laws, anti-trust law is territorial in nature and each State has its own national law in this regard, and the right time for unified treaty rules and practice is far from now.[29]

28. The two sides had their strong preference, and with the negotiation moving forward, the idea of an exclusion in general but allowing for a very limited range of cases emerged at the last stage of the Diplomatic Session. A proposed text was put forward, which reads: "Anti-trust (competition) matters, except where the judgment is based on conduct that constitutes an anti-competitive agreement or concerted practice among competitors to fix prices, make rigged bids, establish output restrictions or quotas, or divide markets by allocating customers, suppliers, territories or lines of commerce".[30] The text still met strong objections, as it did not resolve the concern that the so-called "private judgment" is a tool to introduce foreign anti-trust laws and practice into the domestic legal system of the requested State and interfere with its domestic anti-trust regulatory authority and power. The issue became the last mountain to be climbed.

29. The Chinese delegation was the one standing in the middle, with full appreciation of the positions of both sides. Although it had no difficulty excluding the anti-trust matter as a whole, the interest of setting a rule in this very sensitive area became one of the most compelling factors for it to consider. The situation was that some countries had already been ready to receive the limited category of anti-trust judgments coming from abroad, with or without a rule in the Convention. For those countries which preferred to safeguard the integrity of their national anti-trust law and practice, the territorial nature of the anti-trust law could not be found anywhere if the text of the Convention did not make it clear. Bearing this in mind and aiming to make the conference a real happy ending, the Chinese delegation assumed the responsibility to find a solution that would allow the circulation of a limited number of anti-trust judgments with the condition that they conform to the principle of territoriality. It was not an easy job. The Chinese representative tried numerous formulations of the text, and finally decided to insert "and where such conduct and its effect both occurred in the State of origin" to the last part of the original proposal. This new connection with the State of origin

---

29  HCCH Twenty-Second Session, Work. Doc. No.38.
30  HCCH Twenty-Second Session, Work. Doc. No.85.

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

requires the conduct must have taken place in the State of origin and must have affected the market of this State, no matter whether it may have also affected other markets, which could help address the extraterritoriality risk. China's proposal was warmly received by both sides, and presented as a joint proposal by a substantial number of States including most of the major negotiating partners.[31] A consensus was reached quickly and success was in sight.

## V. Conforming to national law: situations involving infringements of security or sovereignty of State

30. Article 7(1)(c) of the Convention sets out the public policy exception to recognition and enforcement of foreign judgments. Although such exception is widely admitted across legal systems, the content of public policy is rather difficult to define. With continuous efforts of the Chinese delegation from the first Special Commission to the third, "infringements of security or sovereignty of a State" has been made explicit as a public policy exception in the Convention, ensuring conformity with the national law of China.

31. At the first Special Commission, the draft Convention provided recognition or enforcement could be refused if "recognition or enforcement would be manifestly incompatible with the public policy of the requested State, including situations where the specific proceedings leading to the judgment were incompatible with fundamental principles of procedural fairness of that State". Such wording was taken from the 2005 Choice of Court Convention.[32]

32. But for China, these words were not clear enough to capture situations concerning infringements of security or sovereignty of a State. Article 282 of Civil Procedural Law of the PRC stipulates:

> In the case of an application or request for recognition and enforcement of a legally effective judgment or written order of a foreign court, the people's court shall, after examining it in accordance with the international treaties concluded or acceded to by the People's Republic of China or with the principle of reciprocity and arriving at the conclusion that it does not contradict the primary principles of the law of the People's Republic of China nor violates State sovereignty, security and social and public interest of the country, recognize the validity of the

---

31    HCCH Twenty-Second Session, Work. Doc. No.85.REV.

32    Convention of 30 June 2005 on Choice of Court Agreements, art. 9(e).

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

judgment or written order, and, if required, issue a writ of execution to execute it in accordance with the relevant provisions of this Law; if the application or request contradicts the primary principles of the law of the People's Republic of China or violates State sovereignty, security and social and public interest of the country, the people's court shall not recognize and enforce it.[33]

Since recognition or enforcement may be refused only on the grounds specified in the Convention, infringements of security or sovereignty might not be invoked to refuse recognition or enforcement under the Convention if it were not reflected explicitly therein.

33. Subject to this position, the Chinese delegation together with Russia and Israel who shared similar concerns proposed adding the words "and situations involving infringements of security or sovereignty of that State" into the Convention as early as the first Special Commission. But some other delegations preferred to put this only into the Explanatory Report rather than include the language in the Convention. They indicated that it would be better to follow the same wording as the 2005 Choice of Court Convention to avoid confusion by the added words. Since in most States such matters would be at the heart of the concept of public policy, it was unnecessary to make special reference to "infringement of security or sovereignty" in the Convention, and a clarification in the Explanatory Report would be helpful and sufficient.

34. The Chinese delegation was in favour of addressing the issue expressly in the Convention, and put forward the following reasons. Firstly, public policy is characterized differently in different States and in some States infringements of sovereignty and security are not considered as being encompassed within public policy. Secondly, compared to the 2005 Choice of Court Convention which is based primarily on the agreement between the parties, this Convention could involve litigation on non-contractual obligations that are not based on party consent. Thirdly, it is inadequate to refer to sovereignty and security only in the Explanatory Report, and the lack of an express reference in the Convention would lead to ambiguity. In addition, there are similar phrases in the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters and the Convention of 18 March 1970 on the Taking Evidence Abroad in Civil or Commercial Matters.

---

33    Civil Procedure Law of the People's Republic of China (Revised in 2017), art. 282.

35. At the third Special Commission in November 2017, discussions showed clearly that there was consensus on policy that infringements of security or sovereignty would fall within the scope of public policy and the main question was whether to make that explicit in the Convention or put it in the Explanatory Report. The Chinese delegation pointed out that inclusion of this language should not be a significant issue for those States that only wanted to see it expressed in the Explanatory Report, while such inclusion would give necessary comfort to those States with legitimate concerns regarding infringements of security or sovereignty. The argument was convincing, and it was decided that the language "and situations involving infringements of security or sovereignty of that State" be included in the Convention. In order to address the concerns of some delegations, it was also decided that the Explanatory Report should emphasize that "the scope of this provision is no different from the scope of the equivalent provision in the 2005 Choice of Court Convention. The addition simply reflects the greater potential for issues involving infringements of security or sovereignty of the State to arise in the context of this draft Convention than under the 2005 Choice of Court Convention".[34]

## VI. Consistency with the logic: State-owned Enterprises

36. Article 19 of the Judgments Convention provides for a declaration mechanism with respect to judgments pertaining to a State. It permits a State to make a declaration excluding the application of the Convention to judgments which arose from proceedings to which that State, a government agency of that State, or a natural person acting for either of them was a party. During the negotiations, the Chinese delegation made great efforts and succeeded in making this provision consistent with the logic that State-owned enterprises ("SOEs") should be equally treated with other kinds of legal persons.

37. The declaration mechanism was first proposed by some delegations to be included into the Convention at the third Special Commission in November 2017. The Convention does not exclude judgments from its scope merely because a State was a party to the proceedings (Article 2(4)), but these delegations did not want to include judgments involving States parties within the scope of the Convention. With the further concern that the preservation

---

34    Preliminary Document No. 10 of May 2018 Judgments Convention: Revised Preliminary Explanatory Report, para.294.

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

of immunities in Article 2(5) is insufficient to protect State interests, they proposed introducing a declaration mechanism in relation to judgments arising out of proceedings to which a State, governmental agency or any person acting on behalf of a State was a party. They explained that the proposal was made on the basis that it was not intended to provide for declarations in respect of SOEs engaged in commercial activities and requested that the Explanatory Report clarify this point. Some delegations however suggested including such clarifications on SOEs in the text of the Convention rather than in the Explanatory Report. After some initial discussions, the meeting decided to proceed on the basis that this declaration mechanism would be included in square brackets in the November 2017 draft Convention to facilitate further discussion, and further work regarding SOEs would be needed to ensure that an appropriate line be drawn. This draft Article provided: "A State may declare that it shall not apply this Convention to judgments which arose from a proceeding to which it is a party, or to which any of its governmental agencies or any person acting on behalf of such governmental agency is a party, only to the extent specified in the declaration [. . .]".[35]

38. At the fourth Special Commission in May 2018, those delegations made a revised proposal providing that: "A State may declare that it shall not apply this Convention to judgments arising from a proceeding to which it is a party, or to which any of its governmental agencies, or any person acting on its behalf or on behalf of such governmental agency is a party, to the extent specified in the declaration. However, the declaration shall not exclude from the application of this Convention judgments arising from proceedings to which an enterprise owned by a State is a party". The Chinese delegation immediately sought clarifications as to whether "person" in the first sentence referred to a natural or legal person. While a few delegations presumed that it was understood to mean natural persons, most delegations believed that "person" could cover both natural and legal persons. The Chinese delegation pointed out that if "person" in the first sentence could cover both natural and legal persons, then as one kind of legal persons, SOEs should be covered by the first sentence. But the second sentence could be read as though a State could not include in the declaration those SOEs which were acting on behalf of the State or government agency of the State. The Chinese delegation

---

35   HCCH Special Commission on the Recognition and Enforcement of Foreign Judgments, November 2017 Draft Convention, art. 20.

therefore stressed that more refinement of the second sentence of the proposal was needed.

39. On the other hand, some delegations believed that Articles 1, 2(4) and 2(5) were sufficient to protect State interests so that they would rather not have such a declaration mechanism at all. But if the declaration mechanism were to be included in the Convention, these delegations were worried that SOEs which were primarily engaging in commercial activities could exclude their civil and commercial activities by means of a declaration. They insisted keeping the second sentence in the provision as a safeguard. After some discussions and with some textual amendments to the proposal, the Special Commission decided to proceed on the basis that the proposal be included in square brackets in the 2018 draft Convention, which were composed with three paragraphs. Paragraph 1 read: "A State may declare that it shall not apply this Convention to judgments arising from proceedings to which any of the following is a party – (a) that State, or a person acting on behalf of that State, or (b) a government agency of that State, or a person acting on behalf of such a government agency [. . .]". Paragraph 2 read: "A declaration pursuant to paragraph 1 shall not exclude from the application of this Convention judgments arising from proceedings to which an enterprise owned by a State is a party".[36] The meeting also noted the need to continue work on this Article, in particular the need to give further consideration to Paragraph 2. It was envisaged that an informal working group would continue to develop and refine the proposed text.

40. The discussions continued in the informal working group with email exchanges and face-to-face meetings, on whichever occasion the Chinese side explained and tried to solve the conflict between Paragraphs 1 and 2. According to Paragraph 1, a person acting on behalf of the State includes a natural or a legal person, and a legal person includes an SOE. However, Paragraph 2 substantially excludes SOEs from "legal persons". Like other legal persons, an SOE is an independent legal person and could also act on behalf of a State. There was no reason to exclude SOEs from Paragraph 1 and therefore the Chinese delegation proposed to delete Paragraph 2 as a solution. Worried about other States abusing this declaration mechanism for SOEs engaging in civil or commercial activities, some delegations did not agree. As a result, no consensus on the text was achieved in the informal working group.

---

36    HCCH Twenty-Second Session, Work. Doc. No.1.

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

41. To be constructive, the Chinese delegation made a joint proposal together with another delegation which had great concern with including the declaration mechanism at the Diplomatic Session. The joint proposal provided two options. In the preferred option it was reiterated that Paragraph 2 should be deleted, and in the second option Paragraph 2 was changed to: "A declaration pursuant to paragraph 1 shall not exclude from the application of this Convention judgments arising from proceedings to which an enterprise owned by a State is a party, where such enterprise is not acting in the name of the State or in the name of a government agency of that State in accordance with paragraph 1". However, some delegations still disagreed and voiced once again their worries that if SOEs engaging in civil or commercial activities could benefit from the declaration mechanism, this could lead to an economically unbalanced situation in the relationship between different Contracting States.

42. As the debate went on, one delegation put forward a new thought to solve the concerns of the Chinese delegation by not allowing any legal persons, who are not the State itself or a government agency, to benefit from a declaration. The Chinese delegation gave very positive response to this idea immediately and reiterated that what is important is that a logical and legal consistency needs to apply to legal persons. The SOE is a purely commercial entity and should be treated as a commercial entity equally with other legal persons, which is the only reason the Chinese delegation did not agree with the original paragraph which excluded SOEs from this kind of declaration. As to leaving all legal persons out of such a declaration as suggested, since it would produce equal treatment between SOEs and other kinds of legal persons, it would be acceptable to the Chinese delegation. The subsequent discussions moved very smoothly and the Diplomatic Session finally decided that the declaration mechanism will apply only to a State, a governmental agency or a natural person acting for either of them.[37]

## VII. Consensus

43. China holds the view that multilateral treaty negotiation is a process of consensus building, in particular for those governmental organizations which adopt the principle of consensus as the decision-making rule. It is commonly

---

37   Convention of 2 July 2019 on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters, art. 19.

understood that if an international instrument, whether it is a legally-binding one such as a convention or a treaty, or a non-legally binding one like a declaration or principle, is adopted not by consensus but by voting, the way it was adopted by voting itself usually indicated the different views of the States on that instrument and even the difficulty in the future implementation of that instrument. That's why almost all of the multilateral negotiation process emphasizes the approach of consensus. Although there are always very interesting debates about the exact meaning of consensus and how we actually apply this rule, the general practice in the real world is just to avoid major concerns or disagreements of the States participating in the negotiation process. In this regard, when negotiating in the international law arena, it is necessary not only to have the knowledge of a nation's own national law, but also to understand the legal systems of the other sides. Consensus plays an indispensable role of bridging different legal systems to talk to each other and to seek common understandings of a relevant proposed normative framework, in order to mobilize enough practical and balanced support for the proposal as acceptable for everybody to move forward.

44. It needs to point out that the current working method of the HCCH is consensus. Article 8 of the Statute of the Hague conference on Private International Law reads "the Sessions, Council and Special Commissions shall, to the furthest extent possible, operate on the basis of consensus". However, historically, the HCCH followed the old traditional rule of voting, and it only changed to consensus around the beginning of the new millennium, under the strong advocacy of China and many other like-minded countries. As the membership of the HCCH has a clear European countries majority, if the decision method is voting, a convention could be easily adopted by voting but could never achieve ratification and success beyond the European region. In the Judgments Project negotiation process, the consensus rule is generally respected and observed; although on the one hand sometimes it seems to make the process of achieving a text a little longer than expected, on the other hand it makes the final text the widest possible acceptable one, indicating future ratification and success.

45. The significance of consensus could be best exemplified by the adoption of the Damages Clause in the Judgments Convention. Article 10 in this Convention on damages is a replica of Article 11 of the 2005 Choice of Court Convention, which provides "recognition and enforcement of a judgment may be refused if, and to the extent that, the judgment awards damages, including exemplary or punitive damages, that do not compensate a party for

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

actual loss or harm suffered". Paragraph 2 of the article provides "the court addressed shall take into account whether and to what extent the damages awarded by the court of origin serve to cover costs and expenses relating to the proceedings".

46. How to regulate judgments awarding punitive damages was one of the most challenging items in the negotiation process. Addressing this issue, Article 11 of the 2005 Choice of Court Convention is the outcome of a very long debate and efforts to accommodate the differences of the different legal systems towards civil damages awarded by the courts. The origin of the discussion actually went back to a more ambitious project which aimed at negotiating a convention on both jurisdiction and recognition and enforcement of foreign judgments in civil and commercial matters in the 1994 Special Commission.[38] Many delegates, not only from civil law jurisdictions but also from common law jurisdictions, expressed great concerns about the "nightmare" of enforcing awards for excessive and punitive damages, especially those rendered by US civil juries. At that session, the general view was that one of the crucial issues in the field of recognition and enforcement was damages awarded by courts in excess of compensation for the actual losses suffered by the plaintiff, and the suggestions for resolving this problem was to formulate a ground for total or partial refusal of enforcement of the judgment awarding damages of a punitive nature or of an excessive amount, rather than on the ground of public policy. In this regard, China, as well as Australia, Canada, the United Kingdom, the United States of America, Germany, Switzerland, and Japan, all presented information notes or materials concerning their respective domestic approach to this issue.[39]

47. The United States delegation presented papers on civil jury systems in their system, and emphasized that, "Despite continued criticism of the civil jury, it remains an institution in the United States. It has strong roots in the constitutional frameworks of the federal government and of the states. Additionally—and perhaps more importantly—it has become a fixture in the American concept of a democratic and free society". It also stated that US

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

---

38  Preliminary Document No. 4 of May 1996 for the attention of the Special Commission of June 1996 on the question of the recognition and enforcement of foreign judgments in civil and commercial matters.

39  Preliminary Document No.11 of August 2000 for the attention of the Nineteenth Session of June 2001, 117.

Supreme Court decision held that "federal common law does not allow a court to interfere with the jury's punitive damages award".[40] It reflects the facts that the civil jury played a significant role in the United States and use of multiple damages as a deterrent and a punishment to correct and influence the conduct of the defendant and others in a similar position. The other side of the picture was presented by other delegations, even from the same common law tradition, describing a very different attitude. The Canadian paper concluded "it is possible to suggest that enforcement of foreign judgments awarding punitive damages in Canada would be measured against the relevant common and civil law principles. The prevailing view among learned commentators, practitioners and academics is that Canadian courts might exercise their discretion and limit the amount of damages awarded that would exceed the amount of punitive damages considered acceptable in Canada. The courts' decision would be based on the public policy exception which is on defence to enforcement recognized in both the common and civil law systems."[41] The United Kingdom delegation held a similar position, and it stated that although "there are, however, circumstances in which the courts can award aggravated or exemplary damages", "the English courts do not recognise, either as a matter of common law or under statute, any general class of cases where punitive damages can be awarded, either on the basis of a jury award or on the basis of some formula such as triple damages". It reiterated "the general basis of tort damages in English law is that the damages should compensate the plaintiff for the harm that he suffered".[42]

48. In 2005, fortunately, the delegations fully understood the situation and context, and had a strong willingness to find a practical way of enabling consensus building, conducted intense consultations with a view to reaching a balanced and all-could-live-with-it resolution to this problem. This consensus building process was very long and different formulations were made and replaced. The final text of Article 11 of the Choice of Court Convention was only agreed upon, together with a very detailed statement, at the last minute in the 2005 Diplomatic Session in a working group.[43]

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

---

40   Above n.38, Annex I and IV.
41   Above n.38, Annex III.
42   Above n.38, Annex V.
43   See R. Brand and P. Herrup, The 2005 Hague Convention on Choice of Court Agreements (2008), 126-127.

49. Article 11 of the Choice of Court Convention and the accompanying 2005 statement are up to now the most delicate bridge ever built by delegations in a very diversified legal and social regime in the civil damages area. Firstly, they built a bridge between countries using different legal terms denoting exemplary and punitive damages, and these two terms mean the same thing, referring to damages that are intended to punish the defendant and to deter that person or others from doing something similar in the future. They draw the line between exemplary and punitive damages and compensatory damages, which are intended to compensate the plaintiff for the loss or harm he has suffered with the object of putting the plaintiff in the position he was in before the wrongful act was committed. Secondly, they built a bridge between public policy exceptions and punitive damage exceptions, as they allow the court addressed to deny recognition of non-compensatory damages on the basis of public policy, which is the practice of many States, and the Convention is not intended to change that practice. At the same time, they could be used by those States who considered that the public policy ground was not enough to deny the recognition and enforcement of a punitive damages award as their notion of public policy has a very limited and special content. Thirdly, they built a bridge between recognition and refusal, because it is very clear that compensatory elements of damage judgments could be recognized and enforced, and only allows for the refusal to recognize or enforce non-compensatory elements. Fourthly, they built a bridge between punitive and compensatory damages by looking into the elements of the damages. The non-compensatory elements are limited to damages that go beyond compensation for actual loss or harm suffered by a party, and the standard to determine what is compensatory relies on the famous "autonomous" concept of the Hague Conventions which means the requested State is not to only apply its own rules of compensation without looking into what would be considered as compensation in the court of origin. Fifthly, they built a bridge between the actual damages and costs and expenses. Even if a portion of the judgment awards damages which do not compensate for actual loss or harms suffered, the court shall take into account the damages awarded to cover costs and expenses related to the proceeding.

50. So great was Article 11 of the 2005 Choice of Court Convention that a clear consensus was reached by the delegates in the Judgments Convention negotiation that its text was acceptable for the new Convention. As a result, the damages clause was still important, but not challenging anymore.

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

Although adopted in 2005, the text was still the best achievable outcome up to the last minute for the 2019 Judgments Convention. Although in 2019 there were suggestions to modify some wordings of the article for the pure purpose of improving the language, but these proposals met strong reservations, as most delegations did not want to reopen any discussion of the original text and wanted to keep the text as it is. Accordingly, one of the most difficult items was agreed upon fairly easily and quickly in 2019, and the 2005 text on damages was directly copied into the 2019 Judgments Convention.

Downloaded from https://academic.oup.com/chinesejil/article/19/3/481/6041188 by University of Sydney user on 01 November 2022

GUANGJIAN TU*

# The Hague Choice of Court Convention—
# A Chinese Perspective

*The Hague Choice of Court Convention was concluded on June 30, 2005. It is now open for signature and ratification. Will China sign and ratify it? The question is important and interesting not only to the Chinese business community but also to outsiders. A survey of Chinese law pertaining to the key issues presented by the Convention demonstrates that the Convention is acceptable to China. China can and should ratify it.*

### INTRODUCTION

In 1992, upon the initiative of the United States, the Hague Conference on Private International Law began to negotiate a convention on jurisdiction and the recognition of judgments.[1] The project suffered a series of setbacks and was eventually abandoned in favor of a less ambitious undertaking, a Convention on Choice of Court Agreements. This Convention was eventually concluded on June 30, 2005 at the Twentieth Diplomatic Session of the Hague Conference.[2] While

---

* Ph.D., L.L.M. (U.K.); Dip. of Law, BSc (China); Qualifications of lawyer and judge (China). The author would like to express his sincere thanks to a great scholar, who has read the draft of this article and made highly valuable suggestions for improvement but who prefers to remain anonymous.

1. The proposal was initially made in May 1992 in a letter from the Legal Adviser of the Department of State to the then Secretary General of the Hague Conference, then submitted again June 1992 by the U.S. delegation to the Meeting of the Special Commission on General Affairs and Policy of the Hague Conference on Private International Law. The U.S. proposed that "the Hague Conference resume work in the field of recognition and enforcement of judicial decisions with a view to preparing a single convention to which Hague Conference Member States and other countries might become Parties . . . "; *see* Permanent Bureau, *Some Reflections of the Permanent Bureau on a General Convention on Enforcement of Judgments Preliminary Document No. 17 of May 1992, in* ACTS & PROCEEDINGS OF THE SEVENTEENTH SESSION, I, 231 at 231 (Hague Conference on Private International Law, The Hague, SDU Publishers, 1995) (hereinafter *Some Reflections*); Peter H. Pfund, *The Project of the Hague Conference on Private International Law to Prepare a Convention on Jurisdiction and the Recognition / Enforcement of Judgments in Civil and Commercial Matters*, 24 BROOKLYN J. INT'L L. 7, 8 (1998); Arthur T. von Mehren, *Recognition and Enforcement of Foreign Judgments: A New Approach For the Hague Conference?*, 57 LAW & CONTEMP. PROBS. 271 (1994).

2. After the U.S. made the proposal, first, an *ad hoc* Working Group was appointed to explore the appropriateness of such a convention. Based on the positive

347

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

it is a "double convention" addressing both issues of jurisdiction and of judgment recognition, its scope is rather limited because it deals only with forum selection clauses and their consequences.[3] It is now open for signature and ratification (or accession).[4] Informal consultations have already taken place in several interested States. They will be followed by formal consultations with a view to the signature and ratification once the Explanatory Report is finalized.[5] As a member of the Hague Conference, the People's Republic of China[6] has participated in the negotiations for this Convention. Will China sign and ratify it? This is an important question since China is now not only a member of the World Trade Organization (WTO), its economy is also growing rapidly, comprising a market of over a billion people, and playing an increasingly important role in the world.[7] As a result, Chi-

---

conclusion of the Working Group, the Seventeenth Session of the Hague Conference decided to put the proposed convention on the agenda for its future work. Thereafter, there followed two exploratory meetings of a Special Commission and five meetings of the Special Commission for drafting such a convention. In Oct. 1999, a broad preliminary draft convention was spelled out with an Explanatory Report, but the U.S. was very unhappy with the draft convention. The first part of the Nineteenth Diplomatic Session of the Hague Conference in 2001 demonstrated that it was too ambitious to reach a broad convention at present. Thus, it was decided to narrow down the scope of the convention and start from the exclusive choice of court clauses in business-to-business cases in 2002. After another three meetings of an informal Working Group and two meetings of the Special Commission, the Hague Choice of Court Convention was eventually concluded in the Twentieth Diplomatic Session of the Hague Conference on June 30, 2005. This process can be seen from the preliminary documents of this Convention. So far, there have been 32 preliminary documents regarding this Convention. All these documents and the 2005 Choice of Court Convention are *available at* http://www.hcch.net/index_en.php?act=conventions.publications&dtid=35&cid =98 (last visited Sept. 13, 2006). For the history of the Hague negotiations for this Convention, also see Trevor C. Hartley, *The Hague Choice of Court Convention*, 31 E. L. REV. 414, 414-15 (2006); Andrea Schulz, *The 2005 Hague Convention on Choice of Court Clauses*, 12 ILSA J. INT'L & COMP. L. 433, 433-35 (2006); Louise Ellen Teitz, *The Hague Choice of Court Convention: Validating Party Autonomy and Providing an Alternative to Arbitration*, 53 AM. J. COMP. L. 543, 543-46 (2005).

3. *See* arts. 1 & 2. For the terms of "single," "double" and "mixed" convention, see von Mehren, *supra* note 1, at 282-83. The 1971 Judgments Convention is at a global level but it is a "single" one, and it was generally thought to be unsuccessful; *see* Convention of Feb. 1, 1971, on the Recognition and Enforcement of Foreign Judgments in Civil and Commercial Matters. The Brussels (Lugano) Convention is a "double" one but it only applies among the Member States of the European Union (European Free Trade Association); *see* 1968 Brussels Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters (consolidated version) (98/C27/01); Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters, written at Lugano on Sept. 16, 1988 (O.J. 1988 L319/9).

4. *See* art. 27.

5. The final Explanatory Report is now being prepared by Trevor C. Hartley (from the U.K.) and Masato Dogauchi (from Japan); *see* Schulz, *supra* note 2, at 441. There were two Draft Reports previously done by Hartley & Dogauchi respectively in Mar. and Dec. 2004; *see* Preliminary Document No. 25 & 26.

6. Hereinafter China.

7. For general knowledge of the Chinese economy, see Special Report, *China and the World Economy—from T-Shirts to T-Bonds*, THE ECONOMIST (July 28, 2005). This

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

nese and foreign businesses interact in an increasing number of cases and contexts.[8]

This essay discusses the Hague Choice of Court Convention from the perspective of Chinese law to explore whether China can sign and ratify the Convention. It does not analyze its articles one by one but focuses only on the key issues. Part I explains the sources of Chinese law regarding international jurisdiction as well as recognition and enforcement of foreign judgments. Part II will examine the key issues of the Convention in light of the pertinent domestic law of China, analyze how these key issues are dealt with, and, in particular, whether there are conflicts between the Convention and Chinese law and how any such conflicts can be resolved. Part III will conclude that the Convention is acceptable to China and that China should ratify it.

## I.   THE SOURCES OF CHINESE LAW

Although China has twenty-three provinces, five "autonomous regions," four "municipalities" and two "special administrative regions,"[9] it is a country with a unified legal system, except for Hong Kong, Macao, and Taiwan.[10] In other words, the Mainland of China is a single "legal unit."[11] However, due to its long history of feudalism, the traditionally self sufficient economy, and the Confucian culture—law, especially civil and commercial law, was not fully developed in China for a long time.[12] Contemporary civil and commercial laws have been created mainly after 1949 and especially after 1979 when

---

article can be found at http://www.economist.com/displaystory.cfm?story_id=4221685 (last visited Sept. 13, 2006).

8.   Research done by the International Chamber of Commerce (ICC) had the following findings (based on 103 replies received in Mar. 2003): arbitration was generally preferred to litigation; if there was no arbitration clause, most international contracts had a choice of court clause; quite a big proportion of companies replied that the uncertainty with jurisdictional issues determined their significant business decisions. ICC research results are *available at* http://www.iccwbo.org/law/jurisdiction (last visited Sept. 13, 2006). *Also see, Jurisdictional Certainty Is Essential in International Contracts*, Paris, Apr. 2, 2003, *available at* http://www.iccwbo.org/policy/law/iccef/index.html (last visited Sept. 13, 2006).

9.   *See* http://www.xzqh.org/quhua/index.hem (last visited Sept. 14, 2006).

10.   Due to historic reasons, the laws in Hong Kong, Taiwan and Macao are different from those in Mainland China. This essay does not intend to cover the laws in Hong Kong, Taiwan and Macao. Therefore, in the following discussions, China only refers to the Mainland and Chinese law only refers to the law applicable in the Mainland unless otherwise specified. *Also see* Zhenmin Wang, *The Roman Law Tradition and Its Future Development in China*, 1 FRONTIERS OF LAW IN CHINA 72, 78 (2006).

11.   In Mainland China, the provinces, "autonomous regions" and "municipalities" may legislate but their power is quite limited, compared with the state or province in a federal system such as in America or in Canada; *see* Sections V & VI, Chapter III of the Constitution of the People's Republic of China (hereinafter, the Constitution). All Chinese legal instruments mentioned in this essay can be found at http://law.chinalawinfo.com.

12.   *See* Wang, *supra* note 10, at 73.

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

the open-door policy advocated by the late Communist leader, Deng Xiaoping, was adopted.[13]

China is a country which has inherited the civil law tradition.[14] Thus, its law comes essentially from the legislature; judges cannot make law.[15] International jurisdiction as well as recognition and enforcement of foreign judgments fall within the scope of basic laws which are enacted by the National People's Congress.[16] Yet, because of the belated development of law, there is no specific statute on private international law made by the National People's Congress in China.[17] Choice of law is mainly addressed in the General Principles of Civil Law which came into force in 1987.[18] Questions of international jurisdiction and recognition and enforcement of foreign judgments are mainly left to the 1991 Civil Procedure Law.[19] Its Title IV contains "Special Provisions for Civil Proceedings Involving Foreigners." Here, there are four articles dealing with international jurisdiction[20] and three articles pertaining to the recognition and enforcement of foreign judgments.[21] In addition, Article 237, the first Article of Title IV, states:

> Provisions in this Title apply to civil proceedings involving foreigners within the territory of the People's Republic of China. Where no provisions are applicable in this Title, other relevant provisions of this law may apply.

Accordingly, articles of the Civil Procedure Law regarding jurisdiction and recognition and enforcements of judgments not contained in Title IV may also apply to international cases.[22]

The articles of the Civil Procedure Law are formulated in fairly abstract and general terms and cannot, in and of themselves, meet the needs of practice.[23] Since China is, as mentioned, a civil law coun-

---

13. *See* Wang, *supra* note 10, at 76-77.

14. *See* Wang, *supra* note 10, at 72-78.

15. *See* art. 58 of the Constitution. However, the Supreme Court can fulfill the function of quasi-legislation, *see infra*, notes 25-27 and accompanying text.

16. "The National People's Congress exercises the following functions and powers: . . . (3) to enact and amend basic laws governing criminal offences, civil affairs . . . "; *see* art. 62 of the Constitution.

17. *See* Jin Huang, *The Structure of China's Conflicts Law: New Developments of the Rules on Special Commercial Law*, 45 NETHERLANDS INTERNATIONAL LAW REVIEW 188, 189-91, 207 (1998); Zhenjie Hu, *International Jurisdiction of Chinese Courts in Contractual Matters: Rules, Interpretation and Practice*, 46 NETHERLANDS INTERNATIONAL LAW REVIEW 204, 205 (1999).

18. *See* ch. VIII, "Applicable Law for Civil Relations Involving Foreign Elements." *Also see*, Huang, *supra* note 17, at 188-207.

19. There was the 1982 Civil Procedural Law, which has been repealed now, but in this statute, no special provisions regarding international jurisdiction were given.

20. *See* arts. 243-46.

21. *See* arts. 266-68.

22. These articles can be found in Title I, Chapter II and Title III.

23. *See* Huang, *supra* note 17, at 200; Hu, *supra* note 17, at 206.

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

try, cases, even those of the Supreme Court, do not have binding legal effect although they may be treated as persuasive authority.[24] To bridge the gap between abstract legislation and the needs of legal practice, the Supreme Court has the authority to interpret the laws enacted by the People's Congress.[25] This "juridical interpretation"[26] does not consist of deciding cases but of publishing implementing instruments. Their purpose is to concretize the contents of the legislation and to provide practical guidance for lower courts. Thus, their nature is essentially legislative. No wonder some scholars called it *quasi-legislation*, although the Supreme Court is, strictly speaking, not empowered to make law.[27] Still, the interpretations issued by the Supreme Court are legally binding and must be complied with by the lower courts.[28] They may even go beyond the original text of the statutes and lay down new rules.[29] As a result, the relevant interpretations given by the Supreme Court are an important source of law. So far, the Supreme Court has issued only a few interpretations of the Civil Procedure Law which are relevant to our discussion here. They are the 1992 Opinions of the Supreme Court on the Implementation of the Civil Procedure Law,[30] the 1998 Regulations of the Supreme Court Regarding Some Questions on the Enforcement of Judgments[31], and the 2002 Regulations of the Supreme Court Regarding Some Questions on International Jurisdiction in Civil and Commercial Matters.[32] However, 1998 Regulations were concerned mainly with the enforcement of domestic judgments and the 2002 Regulations did not contain rules dealing with choice of court clauses although they provided specific guidance for lower courts when to exercise jurisdiction in international cases.[33] On the whole, these two Supreme Court instruments are scarcely relevant in the present context. The only really relevant provisions are contained in the 1992 Opinions, in which some paragraphs interpret the pertinent provi-

---

24. *See* Huang, *supra* note 17, at 201.

25. "Interpretation of questions involving the specific application of laws and decrees in the practice of court trials shall be provided by the Supreme Court . . ."; *see* art. 2 of the Resolution of the Standing Committee of the National People's Congress Providing an Improved Interpretation of the Law, adopted by the 19th Session of the Standing Committee of the 5th National People's Congress on June 10, 1981. The Supreme Public Prosecution Service may also give interpretation for the application of laws, but it is mainly concerned with criminal law. Private international law is only related to the interpretation of laws by the Supreme Court; *see* Huang, *supra* note 17, at 199-200.

26. *See* Huang, *supra* note 17, at 199.

27. *See* Hu, *supra* note 17, at 206, n.3.

28. *See* Huang, *supra* note 17, at 200; Hu, *supra* note 17, at 206.

29. *Id.*

30. This instrument came into force July 14, 1992 (hereinafter, 1992 Opinions).

31. This instrument came into force July 18, 1998 (hereinafter, 1998 Regulations).

32. This instrument came into force Mar. 1, 2002 (hereinafter, 2002 Regulations).

33. *See supra* notes 31 and 32.

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

sions of the Civil Procedure Law. As a result, the following discussion will focus on the 1991 Civil Procedure Law and the 1992 Opinions.[34]

## II. Key Issues

The motivation of the Hague Conference for launching the project of a global jurisdiction and judgments convention was to provide a mechanism through which jurisdictional rules could be harmonized and recognition and enforcement of foreign judgments could be secured at a global level. The purpose was, *inter alia*, to promote international trade.[35] Due to the many difficulties inherent in concluding such a broad convention, the undertaking ran into ultimately insurmountable difficulties and the scope of the original project had to be narrowed down to choice of court agreements only.[36] Despite this more limited ambition, the goal remained more or less the same. As stated in the preamble of the Choice of Court Convention,

> The States Parties to the present Convention,
> Desiring to promote international trade and investment through enhanced judicial co-operation,
> Believing that such co-operation can be enhanced by uniform rules on jurisdiction and on recognition and enforcement of foreign judgments in civil and commercial matters,
> Believing that such enhanced co-operation requires in particular an international legal regime that provides certainty and ensures the effectiveness of exclusive choice of court agreements between parties to commercial transactions and that governs the recognition and enforcement of judgments resulting from proceedings based on such agreements,
> Have resolved to conclude this Convention . . . .[37]

The fundamental issues presented by this Convention are the determination of its scope, the definition of an exclusive choice of court

---

34. So far, China has not concluded or ratified any "double" convention although China has concluded many bilateral "single" conventions regarding recognition and enforcement of judgments. The situations in these bilateral conventions are quite various; *see* Hu, *supra* note 17, at 206, n.4; Zhenjie Hu, *Recognition and Enforcement of Foreign Judgments in China: Rules, Interpretation and Practice*, 46 Netherlands International Law Review 291, 293-95 (1999) (hereinafter, Hu, *Recognition*). These bilateral conventions are "single" ones, i.e., they do not deal with international jurisdiction directly. The question of whether China will ratify the Choice of Court Convention is not prejudiced by them although looking at them can provide useful information. The following discussion will not deal with these bilateral agreements.

35. *See supra* note 1, *Some Reflections*, at 231.

36. *See supra* note 2; Preliminary Document No. 16, pp. 4-5; Peter D. Trooboff, *Ten (and Probably More) Difficulties in Negotiating a Worldwide Convention on International Jurisdiction and Enforcement of Judgments: Some Initial Lessons, in* A Global Law of Jurisdiction and Judgments: Lessons from the Hague 263 (John J. Barcelo III & Kevin M. Clermont eds., 2002).

37. *See* the Preamble of the Convention, *supra* note 2.

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

2007]  CHOICE OF COURT CONVENTION—CHINESE PERSPECTIVE  353

agreement, the obligations of the court(s) chosen, the obligations of the courts not chosen, and the duties of the court(s) in which recognition and enforcement of a judgment based on an exclusive choice of court agreement is sought.[38]

## A. The Scope of the Convention

When exactly does the Convention apply? It is primarily designed to cover exclusive choice of court agreements concluded in international business-to-business cases in civil and commercial matters.[39] However, Article 2(2) excludes a variety of subject matters, either because they have been dealt with in special international instruments or because they belong to areas in which States like to claim exclusive jurisdiction.[40] Although the list in Article 2(2) is rather long, it only covers the *common denominator* of Contracting States.[41] If a specific subject matter is excluded in Article 2(2) but a Contracting State's domestic law nonetheless permits private parties to enter into a choice of forum agreement in the respective context, this State would not have any difficulty to ratify the Convention. Conversely, however, if there is no exclusion of a specific matter in Article 2(2) but a State's internal law refuses to leave it to party autonomy, this can present a problem for ratification.

Under Chinese law, while Articles 25 and 244 of the 1991 Civil Procedure Law recognize choice of court agreements, both these provisions state that party autonomy cannot override provisions regarding exclusive jurisdiction; this was confirmed in the 1992 Supreme Court Opinions.[42] There are two Articles stipulating exclusive jurisdiction. Article 246 explicitly says:

> The courts of the People's Republic of China shall have exclusive jurisdiction over disputes arising out of performance in China of contracts of Sino-foreign equity joint ventures, Sino-foreign contractual joint ventures and Sino-foreign co-

---

38. Thalia Kruger, *The 20th Session of the Hague Conference: A New Choice of Court Convention and the Issue of EC Membership*, 55 INT'L & COMP. L. Q. 447, 448-52 (2006).

39. *See* art. 1. Contracting States may make declarations to expand the convention to cover non-exclusive choice of court agreements; *see* art. 22. Employment contracts and consumer contracts are excluded; *see* art. 2(1).

40. Arts. 2(2)(f)(g) are examples of the former while arts. 2(2)(e) & (l)(m)(n) are examples of the latter; Schulz, *supra* note 2, at 435-36; Preliminary Document No. 26 of Dec. 2004, Preliminary Draft Convention on Exclusive Choice of Court Agreements, Draft Report drawn up by Trevor C. Hartley & Masato Dogauchi (hereinafter, Hartley & Dogauchi Report) pp. 9-13. However, if these matters arise merely as a preliminary question and not as an object of the proceedings, proceedings are not excluded from the scope of this Convention; *see* art. 2(3).

41. *See* Schulz, *supra* note 2, at 436.

42. *See* para. 305.

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

operative exploration and development of natural resources.[43]

Moreover, Article 34 provides:

The court specified in this Article shall have exclusive jurisdiction over the relevant proceedings: (1) the court for the place where the real estate is located shall have exclusive jurisdiction over disputes arising out of the real estate; (2) the court for the place where the harbor is located shall have exclusive jurisdiction over disputes arising out of harbor operations; (3) the court for the place where the deceased was domiciled upon his death or where the principal part of his assets is located shall have exclusive jurisdiction over disputes arising out of succession.[44]

Jurisdiction pertaining to immovable property (Article 34(1)) and jurisdiction in matters of succession (Article 34(3)) are excluded from the scope of the Convention anyway and thus present no problem from a Chinese perspective.[45] The exclusive jurisdiction claimed in Articles 246 and 34(2), however, are not excluded from the scope of the Convention and are therefore problematic. In other words, it would be difficult for China to ratify the Convention with regard to the matters covered by Articles 246 and 34(2).

Fortunately, the drafters of the Convention foresaw this problem. They realized that beyond the list in Article 2(2), there may be some specific matters that States may not want to leave to party autonomy.[46] Therefore, Article 21 allows a State to make a declaration that it does not wish the Convention to apply in certain regards.[47]Of course, once a State makes such a declaration, the Convention would not apply between the State making the declaration and other Contracting States with respect to the named subject matter. It follows from the principle of reciprocity that other Contracting States would not thus recognize an exclusive choice of court agreement designating the court(s) of the declaring State with regard to the respective context.[48] As some commentators have noticed, this could discourage States from making such declarations without good reasons.[49]

---

43. *See* art. 246 of the 1991 Civil Procedure Law.
44. *See* art. 34.
45. *See* arts. 2(2)(d) & (l). However, according to art. 2(2)(l), only the matters of rights in rem in immovable property, and tenancies of immovable property are excluded. The scope of art. 34(1) of the 1991 Civil Procedure Law is still unclear. According to the wording, it should be broader than art. 2(2)(l). If it is broader, there would be a problem regarding this matter as well.
46. *See* Schulz, *supra* note 2, at 436.
47. *See* art. 21(1).
48. *See* art. 21(2).
49. *See* Hartley, *supra* note 2, at 420; Teitz, *supra* note 2, at 553.

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

Thus, as far as the subject matter covered by the Convention is concerned, China can sign and ratify the Convention, although it may want to make declarations regarding the specific matters included in Articles 246 and 34(2) of the 1991 Civil Procedure Law.[50]

### B.  Choice of Court Agreements

#### 1.  Exclusive or Non-exclusive?

In international business transactions, there are two kinds of choice of court agreements: exclusive and non-exclusive.[51] The former designates a forum (or several fora) and, at the same time, excludes the jurisdiction of any other court whereas the latter confers jurisdiction upon the chosen court(s) but does not exclude the authority of other courts which may have jurisdiction.[52] Article 1 of the Convention states that it applies, in principle, only to exclusive choice of court agreements. Yet, Article 22 allows Contracting States to make reciprocal declarations for the recognition and enforcement of judgments resulting from non-exclusive choice of court agreements as well.[53] Furthermore, the Convention provides that if the parties do not expressly stipulate that a choice of court agreement is non-exclusive, it will be deemed to be exclusive; this will broaden the applicability of the Convention in practice because it will be deemed to cover all agreements which are either expressly exclusive or at least ambiguous.[54] Moreover, under the Convention, exclusivity of a choice of court agreement means that jurisdiction is conferred upon the courts of one Contracting State (or upon one or more specific courts of one Contracting State) and that jurisdiction of any other courts is excluded.[55] In the international context in which this Convention operates, this definition is appropriate.

The Chinese Civil Procedure Law is silent regarding a distinction between exclusive and non-exclusive choice of court agreements;

---

50.  According to the Convention, Contracting States can make declarations only if necessary, the matters in the declarations must be clearly and precisely defined, and the declarations must be publicized because of the principle of transparency; *see* arts. 21 & 32; Hartley, *supra* note 2, at 420.

51.  James Fawcett, *Non-Exclusive Jurisdiction Agreements in Private International Law*, LLOYD'S MAR. & COM. L. Q. 234, 234-35 (2001); Edwin Peel, *Exclusive Jurisdiction Agreements: Purity and Pragmatism in the Conflicts of Laws,* LLOYD'S MAR. & COM. L. Q. 182, 182-83 (1998).

52.  *Id.*

53.  *See* arts. 1 & 22.

54.  *See* art. 3(b). *Cf.* in the E.U., under the Brussels I Regulation, the situation is the same, *see* art. 23 of Council Regulation (EC) No 44/2001 of Dec. 22, 2000 on Jurisdiction and the Recognition and Enforcement of Judgments in Civil and Commercial Matters. However, in the U.S., if the parties do not say explicitly that a choice of court agreement is exclusive, it will be regarded as non-exclusive; *see* Kruger, *supra* note 38, at 449. In English law, the situation is unclear; *see* Peel, *supra* note 51, at 183-84; Fawcett, *supra* note 51, at 240.

55.  *See* art. 3(a); Kruger, *supra* note 38, at 449.

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

it also does not say whether under Chinese law, both of them will be recognized, nor whether an ambiguous choice of court agreement should be viewed as exclusive or non-exclusive.[56] So far, the Supreme Court of China has not elaborated on this point either. Yet, Paragraph 24 of the 1992 Opinions says:

> Where there is a choice of court agreement between the contractual parties, if the agreement does not clearly designate a court or designates more than one court referred to in Article 25 of the Civil Procedure Law, the choice of court agreement should be held invalid . . . .[57]

According to this paragraph, it appears that Chinese law intends to insist on the *exclusivity* of a choice of court agreement. Indeed in practice, if there is a choice of court agreement designating a court of a foreign country, Chinese courts will normally dismiss the case even if Chinese courts would have jurisdiction in the absence of such an agreement; if the parties have chosen a Chinese forum, a Chinese court will not decline jurisdiction by the doctrine of *forum non conveniens*.

One commentator has argued that in the future, "the exclusivity of the [a choice of court] agreement may be recognised [by the Supreme Court]."[58]

### 2. Formal Validity of a Choice of Court Agreement

Due to the difficulties in harmonizing substantive contract rules at a global level, the question of substantive validity of a choice of court agreement had to be left to the respective national laws.[59] The question of formal validity, however, is addressed in Article 3 (c) of the Convention which states:

> an exclusive choice of court agreement must be concluded or documented
> i)    in writing; or
> ii)   by any other means of communication which renders information accessible so as to be usable for subsequent reference.[60]

In the 1991 Civil Procedure Law, both Article 25 and Article 244 stipulate that a choice of court agreement should be made in *shu mian* (an expression in Mandarin which defines the required form).

---

56. *See* Hu, *supra* note 17, at 216.
57. Art. 25 of the 1991 Civil Procedure Law confines the choices of the parties to a few options. This Article will be discussed more in the following text, *see infra*, notes 77-78 and accompanying text.
58. *See* Hu, *supra* note 17, at 216.
59. *See* Teitz, *supra* note 2, at 552; art. 5(1) of the Convention.
60. *See* art. 3(c).

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

In the 1992 Opinions, the same words, *shu mian*, are used.[61] What exactly does that mean? Clearly, a choice of court agreement meets the requirements of *shu mian* if it is made in writing. At the time when the 1991 Civil Procedure Law was enacted, it seems that *shu mian* referred only to "writing" because electronic means of documentation such as telegrams and email were not yet widely used.[62] Yet, it is the purpose of this form requirement to ensure that there is accessible evidence to determine the real intention of the parties. If one assumes that the legislature was conscious of making law for the future, one would also assume that it wanted to encompass forms other than writing if they serve the same purpose.[63] This conclusion finds support in the more recent Contract Law; Article 11 provides:

> The term "shu mian" refers to a form which is capable of tangibly representing its content, such as written instruments, letters and electronically transmitted documents (including telegrams, telexes, facsimiles, electronic data interchange and email), etc.[64]

As a result, the formal requirements of an exclusive choice of court agreement in the Convention are compatible with Chinese law and should be acceptable to China.

## C.   The Obligations of the Court(s) Chosen

To ensure the legal certainty and effectiveness of an exclusive choice of court agreement, it is of primary importance that the chosen court(s) accept the case.[65] Article 5(1) of the Convention requires the chosen court(s) of a Contracting State to hear the dispute unless the choice of court agreement is null and void under the law of that State including the law designated by its choice of law rules.[66] Article 5(2) reinforces these obligations, stipulating that the chosen court(s) must not decline jurisdiction in favor of the courts of another State by invoking *forum non conveniens-type* principles.[67] However, to reconcile the Convention with national laws, Article 5(3) expressly states that it does not affect domestic jurisdiction rules pertaining to the subject matter, or to the value of the claim nor the internal allocation of jurisdiction among the courts of a Contracting State. It reiterates, however, that if the chosen court has discretion as to whether to transfer

---

61. *See* paras. 23 and 305.
62. *See* Hu, *supra* note 17, at 213.
63. *Id.*
64. The Contract Law of the People's Republic of China was promulgated on Mar. 15, 1999, and came into force on Oct. 1, 1999.
65. *See* Hartley, *supra* note 2, at 415.
66. *See* Kruger, *supra* note 38, at 451; Teitz, *supra* note 2, at 550.
67. *See* Teitz, *supra* note 2, at 550-51; Kruger, *supra* note 38, at 451; Hartley, *supra* note 2, at 416.

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

a case to another court within the same Contracting State, the choice of the parties should be respected as much as possible.[68] Moreover, the obligation of the chosen court(s) to accept the case is not absolute[69]—a Contracting State may not want to burden its judicial system with cases having no connections with it other than through the parties' choice.[70] Although Article 1(2) already excludes purely domestic cases from the scope of the Convention, it still remains possible that the parties in a purely *foreign* case choose the court(s) of a Contracting State.[71] Thus, Article 19 of the Convention allows a Contracting State to make a declaration that its court(s) will not hear purely foreign cases.[72]

Under Chinese law, if there is a valid choice of court agreement, the chosen court should take jurisdiction.[73] The doctrine of *forum non conveniens* is not recognized.[74] Nor are there similar devices giving judges discretion to decline jurisdiction.[75] To be sure, both Article 25 and Article 244 of the 1991 Civil Procedure Law state that the choice made by the parties cannot alter "jurisdiction by forum level." Articles relevant to "jurisdiction by forum level" can be found in Chapter I of Title II of the 1991 Civil Procedure Law which are, in turn, interpreted in paragraphs 1-3 of the 1992 Supreme Court Opinions. But these provisions are essentially those regulating the allocation of adjudicatory business among Chinese courts which depends on the subject matter of the dispute or the value of the claim. Since the Convention stays clear of these matters, the proviso in Chinese law concerning "jurisdiction by forum level" does not cause any difficulty.[76]

---

68.  *See* art. 5(3); Kruger, *supra* note 38, at 451.
69.  *See* Hartley, *supra* note 2, at 415.
70.  *See* Hartley & Dogauchi Report *supra* note 40, at 47.
71.  *See* art. 1(2) of the Convention.
72.  *See* art. 19; Hartley & Dogauchi Report, *supra* note 40, at 47.
73.  *See* arts. 25 & 244 of the 1991 Civil Procedure Law; Hu, *supra* note 17, at 216. In China, so far there has been no authority about which law should apply to the substantive validity of a choice of court agreement in an international case.
74.  As stated above, China is a "civil law" country, it did not accept this "common law" doctrine; *see* Hu, *supra* note 17, at 223. However, one author argued that this doctrine has gained limited recognition in China; *see* Mo Zhang, *International Civil Jurisdiction in China: A Practical Analysis of the Chinese Judicial System*, 25 B. C. INT'L & COMP. L. REV. 59, 72-73 (2002). It is submitted that the situation is still unsettled.
75.  *See* Hu, *supra* note 17, at 223.
76.  *See* Kruger, *supra* note 38, at 451. In China, an intermediate court, a high court at the province level and the Supreme Court can take jurisdiction over a case if that case has strong impact in its territory. Due to this, some may argue that "jurisdiction by forum level" in China cannot fit into "subject matter jurisdiction and jurisdiction related to the value of the claim" comfortably. However, in practice, the value of the claim has been regarded as determinant in measuring the impact of a case in the territory. In the same vein, some may argue that "jurisdiction by forum level" is a question of internal allocation of jurisdiction among Chinese courts, which has been left with Chinese law by art. 5(3)(b) of the Convention rather than by art. 5(3)(a). However, it is this author's view that both arts. 5(3)(a) & (b) may be applicable as far

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

In addition, Article 25 of the Civil Procedure Law, which is mainly applicable in domestic cases,[77] limits the parties' choice to the place where the defendant is domiciled, the place where the contract is performed, the place of contracting, the place where the plaintiff is domiciled, and the place where the subject matter of the contract is located, i.e., to places having substantial connections with the case.[78] Moreover, Article 244 of the Civil Procedure Law, which is particularly designed to apply to international cases, requires that the court(s) designated by the parties have substantial connections with the dispute although unlike Article 25, it does not specify the available options.[79] As a result, if China wants to ratify the Convention, it may want to use Article 19 to make a declaration that Chinese courts will not decide cases lacking a connection with China even, in the teeth of an exclusive choice of court agreement.

It is a separate question whether China will recognize and respect an exclusive choice of court agreement which designates a court of a foreign State having no connection with the case. This question, however, pertains to the obligations of the courts not chosen.

## D.  The Obligations of the Courts not Chosen

To ensure the legal certainty and effectiveness of an exclusive choice of court agreement, the courts not chosen must refrain from exercising jurisdiction which they might have had in the absence of such an agreement.[80] Yet, such an obligation cannot be absolute either.[81] Thus, Article 6 of the Convention provides the basic rule that courts other than the chosen court(s) must stay or dismiss the proceedings but it also permits the courts not chosen to take jurisdiction in exceptional situations.[82] The first exception is the situation in which the choice of court agreement is null and void;[83] if there is no valid choice of court agreement, there are no obligations of the courts not chosen either. However, according to the Convention, the courts not chosen must decide the substantive validity of a choice of court agreement under the law of the State of the chosen court including its choice of law rules rather than their own law;[84] this is meant to ensure that both, the courts chosen and those not chosen, decide the

---

as "jurisdiction by forum level" in China is concerned. Whether art. 5(3)(a) or (b) is applicable, "jurisdiction by forum level" in China will not prohibit China from ratifying the Convention.

77.  It might be applicable in international cases; *see supra* note 22 and accompanying text.

78.  *See* art. 25 of the 1991 Civil Procedure Law.

79.  *See* art. 244 of the 1991 Civil Procedure Law.

80.  *See* Kruger, *supra* note 38, at 451.

81.  *See* Hartley, *supra* note 2, 415-16; *supra* note 69 and accompanying text.

82.  *See* art. 6(a)-(e).

83.  *See* art. 6(a).

84.  *Id.*

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

issue under the same law so that conflicting outcomes are avoided.[85] To be sure, such conflicts may still occur because even under the same law the two courts may still reach different results but such occurrences should be rare.

Further exceptions to the basic rule are provided in Article 6(b)-(e). There is an undeniable tension between the obligations of the courts not chosen to apply the law of the chosen court(s)' State for consistency's sake, and the wish of Contracting States to insist on applying their own notions of public policy and their mandatory rules. Consequently, the exceptions in Article 6(b) and (c) have been included in the Convention.[86] While Article 6(b) permits the courts not chosen to apply their own rules in determining the parties' capacity of concluding the choice of court agreement, Article 6(c) permits the courts not chosen to apply their own concepts of "manifest injustice" and "public policy" in deciding whether an exclusive choice of court agreement should be given effect. If a party lacked the capacity to conclude a choice of court agreement or if giving effect to the agreement would lead to a manifest injustice or be manifestly contrary to the public policy according to the law of the State of the court not chosen but seized, the choice of court agreement can be put aside. Technically, the exception in Article 6(d) is laid down because an exclusive choice of court agreement may have been *frustrated*, in other words, an exclusive choice of court agreement cannot reasonably be performed, e.g., the chosen court is not functioning because of war. The exception in Article 6(e) is also provided because the chosen court might have decided not to hear the case although it has been chosen by the parties.[87]

It is implicit in Chinese law that courts will respect an exclusive choice of court agreement designating foreign courts and that they will stay or dismiss the proceedings for lack of jurisdiction in such a case.[88] Since the 1991 Civil Procedure Law contains no provisions concerning mandatory rules or public policy pertaining to a foreign choice of court agreement, it has been argued that the respective Articles of the General Principles of Civil Law and Contract Law should apply; these articles could limit the effectiveness of a choice of court agreement pointing to foreign courts.[89] Here we encounter the question raised above: will China recognize an exclusive choice of court

---

85. *See* Schulz, *supra* note 2, at 437-38; Kruger, *supra* note 38, at 451.

86. *See* Teitz, *supra* note 2, at 551-54.

87. *E.g.*, this could happen when a case is transferred from the chosen court to another court in the same Contracting State by a domestic venue transfer rule, which is permitted by art. 5(3)(b) of the Convention. *See* art. 6(b)-(e); Hartley & Dogauchi Report, *supra* note 40, at 25-6, 28-9; Kruger, *supra* note 38, at 452.

88. *See* art. 244 of the 1991 Civil Procedure Law; Hu, *supra* note 17, at 216.

89. *See* arts. 4, 55 & 58 of the General Principles of Civil Law; arts. 5 & 9 of the Contract Law; Hu, *supra* note 17, at 215. In the future, China may introduce mandatory rules or public policy in this aspect, which can be mirrored by the relevant

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

agreement designating foreign courts having no connection with the dispute? Remember that the Convention deals only with the issue whether the chosen court must take jurisdiction if it has no connection with the case but it does not address the question whether the courts not chosen should recognize the jurisdiction of the chosen court if the latter has no connection with the dispute.[90] In the latter situation, a choice of court agreement should still be respected and the court chosen should still have jurisdiction under the Convention.[91] Here, however, the wording of Article 244 of the 1991 Civil Procedure Law creates problems: according to this article, it seems that Chinese law requires the chosen court to have connections with the dispute, regardless whether it is a foreign or Chinese court.[92] Yet, one must consider the purpose of the connection requirement.

If, as discussed above, its purpose is to avoid the situation where a Contracting State has to burden its courts with a totally foreign case, there should be no concern in the mirror-image situation. In other words, China should have no difficulties to recognize an exclusive choice of court agreement pointing to foreign courts having no connections with the dispute. In such a case, the burden falls on the foreign court and is not China's business.[93]

## E.   The Obligations of the Court(s) Addressed

To render an exclusive choice of court agreement designating the court(s) of a Contracting State fully effective, the ultimate judgment resulting from the choice of court agreement must be recognized and enforced by the court(s) in other Contracting States. Article 8(1) of the Convention lays down this basic rule.[94] A review of the judgment on the merits is excluded.[95] Moreover, other Contracting States' courts are bound by the findings of fact on which the jurisdiction of the court of origin was based, except in case of a default judgment.[96]

---

provisions regarding recognition and enforcement of foreign judgments, *see infra* notes 105-06 and accompanying text.

90.  *See supra* notes 70-72 and accompanying text.

91.  This understanding can find support in article 3 which defines "exclusive choice of court agreements" for this Convention but which does not mention the requirement of any connection between the dispute and the forum. Moreover, article 19 of the Convention permits a Contracting State to make a declaration that its courts will not hear cases having no connection with it, i.e., purely foreign cases. Suppose if a Contracting State does not make such a declaration, which should be the rule under the Convention, its courts should hear the cases having no connections with it according to the Convention.

92.  The wording of art. 244 is: "The parties to a foreign legal relationship related to a contract or property rights may conclude a choice of court agreement designating a forum having connections with the dispute for the purpose of deciding their dispute. If a Chinese court is chosen . . . ."

93.  *See supra* notes 70-72 and accompanying text.

94.  *See* art. 8(1).

95.  *See* art. 8(2).

96.  *See id.*

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

Yet, there are exceptions to this basic rule as well.[97] The exceptions enumerated in Article 9(a), (b) and (e) pertaining to the refusal of recognition or enforcement mirror those in Article 6(a), (b) and (c) governing when the courts not chosen can put aside an exclusive choice of court agreement.[98] Especially, the exception in Article 9(c) (i) is a common one in a convention of this kind.[99] Its purpose is to ensure that the defendant's basic right to defend is sufficiently protected.[100] In addition, there are exceptions for judgments obtained by fraud and for conflicting judgments.[101] A particular exception, which deserves to be mentioned here, is that recognition of a judgment may be refused to the extent that it awards damages other than those which compensate a party for actual loss or harm suffered.[102] Finally, due to the different definitions of the concept of an international case for Chapter II (jurisdiction) and Chapter III (recognition and enforcement),[103] Article 20 was added which allows a Contracting State to make a declaration that its courts will not recognize or enforce a judgment rendered by a court of another Contracting State if the underlying case is purely domestic to the requested State.[104]

Article 267 of the 1991 Chinese Civil Procedure Law states that the creditor of a foreign judgment or the court rendering a foreign judgment may request an appropriate Chinese court to recognize and enforce the judgment. Yet, Article 268 then provides that a foreign judgment can be recognized and enforced only under certain conditions. There must be either a treaty requiring Chinese courts to recognize the foreign judgment or reciprocity between China and the respective foreign country in practice. In addition, recognition and enforcement of the foreign judgment must not offend the basic principles of law, sovereignty and security, or public interests of China.[105] Thus, if China ratifies the Choice of Court Convention, China can recognize and enforce a foreign judgment resulting from an exclusive choice of court agreement as long as its public policy, mentioned in

---

97. *See* art. 9, 11 & 20.

98. *See* arts. 9(a), (b) & (e); arts. 6(a), (b) & (c).

99. *See* art. 27(2) of the Brussels (Lugano) Convention, *supra* note 3.

100. Art. (9)(c)(ii) could be regarded as a consideration of public policy; *see* Hartley & Dogauchi Report, *supra* note 40, at 31-32.

101. *See* art. 9(d)(f)(g).

102. *See* art. 11 of the Convention. The problem of excessive damages almost destroyed the Convention; *see* Hartley, *supra* note 2, at 415.

103. In the Convention, as far as jurisdiction is concerned, "a case is international unless the parties are resident in the same Contracting State and the relationship of the parties and all other elements relevant to the dispute, regardless of the location of the chosen court, are connected only with that State"; for the purposes of recognition and enforcement of judgments, "a case is international where recognition or enforcement of a foreign judgment is sought"; *see* arts. 1(2) & (3).

104. *See* art. 20; Hartley & Dogauchi Report, *supra* note 40, at 47-48.

105. *See* arts. 267 & 268. China has concluded some "single" conventions regarding recognition and enforcement of judgments; *see supra* note 34.

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

Article 268 of the Civil Procedure Law, is not offended[106] Chinese courts normally do not review the merits of foreign judgments; their examination of foreign judgments is usually limited to formalities.[107] The protection of the defendant's right of defense is provided in Article 7 of the 1991 Civil Procedure Law which states that the parties to a civil action shall have equal procedural rights, and in Article 12 which requires that the parties shall have the right to be heard.[108] One commentator has argued that Articles 7 and 12 are basic principles of the 1991 Civil Procedure Law so that the public policy reservation in Article 268 already incorporates them.[109] Although there is no express provision saying so, a foreign judgment tainted by fraud should not be recognized in China; this follows from several other Articles of the 1991 Civil Procedure Law.[110] In a similar fashion, while no provision in the 1991 Civil Procedure Law deals with conflicting judgments, paragraph 306 of the 1992 Opinions stipulates that if there is a domestic judgment, a foreign judgment in the same case shall not be recognized unless a treaty binding China indicates otherwise.[111] As far as exemplary or punitive damages are concerned, there is neither a provision in the 1991 Civil Procedure Law nor in the 1992 Opinions. Yet, it follows from both Chapter Six of the General Principles of Civil Law and from Chapter Seven of the Contract Law that Chinese Courts will recognize only compensatory damages.[112] Finally, for purely domestic cases, China will very probably make a declaration that its courts will not recognize or enforce the judgment rendered by a court of another Contracting State selected by an exclusive choice of court agreement; such a declaration would correspond to Article 244 of the 1991 Civil Procedure Law.[113]

## III. Conclusion

After more than a decade, the efforts of the Hague Conference on Private International Law have resulted in the Convention on Choice of Court Agreements.[114] Compared with the original project of a

---

106. For some cases regarding "public policy," see Hu, *Recognition, supra* note 34, at 300.

107. *See* Zhang, *supra* note 74, at 88.

108. *See* arts. 7 & 12; Hu, *Recognition, supra* note 34, at 301.

109. *See* Hu, *Recognition, supra* note 34, at 301; Zhang, *supra* note 74, at 88.

110. According to art. 179(5) of the 1991 Civil Procedure Law, if a judgment is "tainted," the case should be re-tried; according to art. 217, if a verdict reached by arbitrators is "tainted," it should be refused recognition or enforcement.

111. There are provisions dealing with conflicting judgments in the single conventions China concluded or acceded to; *see* Hu, *Recognition, supra* note 34, at 304; *also see* Zhang, *supra* note 74, at 88.

112. Chapter Six of the General Principles of Civil Law contains provisions with respect to "civil responsibilities" while Chapter Seven of Contract Law contains provisions with respect to "responsibilities" for breach of contract.

113. *See supra* notes 103-04 and accompanying text.

114. *See supra* notes 1-2 and accompanying text.

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

364        THE AMERICAN JOURNAL OF COMPARATIVE LAW        [Vol. 55

worldwide jurisdiction and judgments agreement, this Convention is rather limited. If one looks at it purely from an academic point of view, one can easily find shortcomings and thus grounds for criticism.[115] Yet, in light of the political realities and of the difficulties inherent in negotiating such a Convention, the drafters' endeavor to accommodate the different interests of States and the Special Commission's careful considerations of the legal problems, which have emerged or are going to emerge, deserve credit and suggest that the Convention is actually a valuable product of considerable quality.[116] Working alongside the U.N. (New York) Convention on the Recognition and Enforcement of Foreign Arbitral Awards,[117] it can enhance predictability and certainty in commercial litigation and thus establish a balance between litigation and arbitration in the international arena.[118] Research by the International Chamber of Commerce (ICC) and the American Bar Association (ABA) has demonstrated that this Convention, if widely ratified, could be of great significance in practice and, in particular, improve the confidence of businesses in the predictability of litigation venues.[119] In order to ensure such predictability, and in order to validate party autonomy, the Convention lays down three basic rules: 1) the court(s) of a Contracting State chosen by an exclusive choice of court agreement must exercise jurisdiction, 2) the courts of Contracting States not chosen must not exercise jurisdiction, and 3) a judgment rendered by the chosen court must be recognized and enforced by the court(s) of other Contracting States. To be sure, there are exceptions to each of the three basic rules. While some observers are optimistic and believe that the Convention will promote certainty for businesses,[120] others fear that the various es-

---

115. *See* Teitz, *supra* note 2, at 556.

116. *Id*; Kruger, *supra* note 38, at 455.

117. *See* the New York Convention of June 10, 1958 on the Recognition and Enforcement of Foreign Arbitral Awards (hereinafter, New York Convention). Now the New York Convention has 137 parties; *see* http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html (last visited Sept. 23, 2006).

118. *See* Kruger, *supra* note 38, at 447; Teitz, *supra* note 2, at 548; Ronald A. Brand, *The New Hague Convention on Choice of Court Agreements*, ASIL INSIGHT (Washington, July 26, 2005); Ronald A. Brand, *Introductory Note to the 2005 Hague Convention on Choice of Court Agreements*, 44 I. L. M. 1291 (2005); Schulz, *supra* note 2, at 433.

119. For the results of the research done by the ICC, *see supra* note 8. The research done by the ABA showed that "over 98% of those responding indicated that a convention on choice of court agreements would be useful for their practice. Over 70% indicated that a convention would make them 'more willing to designate litigation instead of arbitration' in their contracts," *see* Louise Ellen Teitz, *Both Sides of the Coin: A Decade of Parallel Proceedings and Enforcement of Foreign Judgments in Transnational Litigation*, 10 ROGER WILLIAMS U. L. REV. 1, 63 (2004). *Also see* Hartley, *supra* note 2, at 414, 424.

120. Teitz, *supra* note 2, at 544, 556-57; Antonin I. Pribetic, *The Hague Convention on Choice of Court Agreements*, *in* Vol. 10, No. 1, THE GLOBETROTTER, 2 (Sept., 2005); Harvard Law Review Association, *Private International Law - Civil Procedure - Hague Conference Approves Uniform Rules of Enforcement for International Forum*

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

cape clauses will trigger a flood of litigation and thus undermine the certainty promised by the three basic rules.[121] Only time will tell which side is right.

It is my belief that the Convention will promote order and predictability in international business transactions and litigation. Yet, its success depends on whether the big economic players of the world such as the United States, the European Union, and China will sign and ratify it.[122] Several voices in the United States and the European Union have already urged its ratification.[123] A survey of Chinese law pertaining to the key issues raised by the Convention has demonstrated that there are no unresolvable conflicts between Chinese law and the Convention although China may make some declarations in order to preserve features of its domestic law. China can and should ratify this Convention.[124] It would benefit both Chinese enterprises in China and abroad, because they can make business decisions with greater certainty as to the venue of potential litigation. It would also benefit the Chinese market more generally because foreign enterprises may be more willing to do business in China if they are more confident about how issues of jurisdiction and the recognition and enforcement of judgments will be resolved.

---

*Selection Clauses - Convention on Choice of Court Agreements, concluded June 30, 2005,* 119 HARV. L. REV. 931 (2006).

121. *See* remarks by Catherine Kessedjian in *Litigation Convention Needs Private Backing,* IBA DAILY NEWS 13 (Sept. 28, 2005), *available at* http://www.ibanet.org/images/downloads/prague/Wednesday.pdf (last visited Mar. 16, 2007).

122. *See* Kruger, *supra* note 38, at 455.

123. *See* Harvard Law Review Association, *supra* note 120, at 938; Hartley, *supra* note 2, at 425; Andrew C. Schneider, *New Treaty Will Help Firms Operate Abroad,* Kiplingerforecasts.com (Oct. 10, 2005).

124. As stated previously, this essay's intent is only to cover the laws in Mainland China. According to the Convention, a Contracting State can make a declaration that the Convention is applicable to a specific legal unit of its territory only or its whole territory where it has more than one legal unit. Therefore, even if other legal units of China, such as Hong Kong or Macao, cannot accept this Convention, China can ratify it for the Mainland only; *see* arts. 28 & 25.

This content downloaded from
121.223.162.26 on Mon, 03 Feb 2025 04:59:52 UTC
All use subject to https://about.jstor.org/terms

Annexure 3 Item 6

© The Author(s) 2021. Published by Oxford University Press. All rights reserved.
doi:10.1093/chinesejil/jmab009; Advance Access publication 13 June 2021

# The Hague Judgments Convention and Mainland China-Hong Kong SAR Judgments Arrangement: Comparison and Prospects for Implementation

Wenliang Zhang* and Guangjian Tu**

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

## Abstract

The year 2019 saw the arrival of the Hague Judgments Convention and Mainland China-Hong Kong SAR Judgments Arrangement, which is not a coincidence. Both instruments mark a historical culmination and constitute a milestone, at the global level and the at the level of territorial units within a country respectively. With novelties created to avoid the failures shadowing the past Hague Judgments Project, the 2019 Convention reflects the global trend and maximizes the common grounds countries could agree to, though it still falls short of some longstanding expectations. Similarly, the 2019 Arrangement advances judgment circulation between territorial units within China despite that room for further collaboration is still large. In significant respects, the 2019 Arrangement is heavily modelled on the 2019 Convention, while the Arrangement also addresses special concerns of the two regions. Undeniably, it may be another success

---

\*    Wenliang Zhang, Associate Professor, Renmin University of China Law School.

\*\*   Guangjian Tu, Professor, Macau University Law School, gjtu@um.edu.mo. Our thanks go to William S. Dodge and anonymous reviewers for comments on earlier drafts. This research is supported by National Social Science Foundation of China (Grant No. 15CFX069). This paper was completed on 25 March 2021. All websites are current as of this date.

---

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

for the Convention to be able to influence judgments recognition instruments targeting territorial units within a country and show its model effect. Recent years have witnessed Mainland China's efforts to promote transboundary movement of judgments and its contribution to the arrival of both the 2019 Convention and Arrangement. As an important global player with increasing ambition of claiming more international presence, China will welcome both instruments and the instruments are expected to fare well as desired.

## I. Introduction

1. It has long been recognized as an obstacle to close economic relations that the enforcement of private legal claims is unduly complicated, time-consuming and expensive.[1] With deeper economic integration and globalization, the topic of recognition and enforcement of foreign judgments has been repeatedly brought up and the values attached thereto are emphasized at various levels. Internationally, 2019 saw the arrival of the long-anticipated Convention of 2 July 2019 on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters ("the 2019 Convention"),[2] which serves as the newest updated instrument in The Hague. Inter-regionally, efforts are also intensifying to promote recognition and enforcement of foreign judgments, with the EU as the pioneer having set up the most efficient regime for decades.[3] For individual countries without a unified legal system such as China, efforts to promote transboundary judgments recognition have been advancing

---

1    Peter Hay, The Common Market Preliminary Draft Convention on the Recognition and Enforcement of Judgments—Some Considerations of Policy and Interpretation, 16 Am. J. Comp. L. (1968), 149.

2    All legal instruments of the Hague Conference on Private International Law (HCCH) (www.hcch.net/en/instruments, visited on 25 March 2021). This website will not be cited again in the following text.

3    Starting with the 1968 Brussels Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters ("1968 Brussels Convention"), EU has been unifying the rules on jurisdiction and judgments recognition in an efficient manner. With the arrival of Regulation (EU) No 1215/2012 of the European Parliament and of the Council of 12 December 2012 on Jurisdiction and the Recognition and Enforcement of Judgments in Civil and Commercial Matters ("Brussels I Regelation Recast"), EU has been leading the practice of cross-border judgments recognition and enforcement in terms of simplifying and deepening the cooperation in this field.

over the years, seeing the emergence of successful practice in this field.[4] Against this background, also in 2019, Mainland China and the Hong Kong SAR concluded with each other the Arrangement on Reciprocal Recognition and Enforcement of Judgments in Civil and Commercial Matters by the Courts of the Mainland and of the Hong Kong Special Administrative Region ("the 2019 Arrangement").[5] The arrival in the same year of the two instruments should not be read merely as a coincidence. In spite of noticeable differences, there are a lot more similarities and commonalities, since the 2019 Arrangement is believed to have been inspired and actually heavily modelled on the 2019 HCCH Judgments Convention.[6]

2. In the context of the seemingly flourishing cross-border judgments circulation, it is time to evaluate how the work in this area at a global level has advanced and if the 2019 Convention is well designed and may fare well as desired. It is also meaningful to see whether the 2019 Arrangement, a follower to the 2019 Convention, could meet its goal. Mainly from the Chinese perspective, this article is meant to explore the core issues through the lens of how the 2019 Arrangement is compared with the 2019 Convention and what interactions there are between them, in the sense of two models for promoting recognition and enforcement of judgments at different levels. This paper also investigates the possible viable path for the 2019 Convention to be accepted by a country, with China's practice as a salient example. Based on the

4    In this regard, Mainland China Justice Observer presented updated statistics on recognition and enforcement of judgments between Mainland China and other countries.China Justice Observer is a platform run by some Chinese scholars and practitioners committed to presenting the Chinese judicial system. It publishes regularly on international disputes resolution in Mainland China, which includes recognition and enforcement of judgments between Mainland China and foreign countries. For the statistics on the recognition and enforcement of judgments, it documents the data between the Mainland China and 20 foreign States or regions over the period from 1994 until 15 April 2020. See Guodong Xu and Meng Yu, List of China's Cases on Recognition of Foreign Judgments (www.chinajusticeob server.com/a/update-list-of-chinas-cases-on-recognition-of-foreign-judgments), visited on 25 March 2021.

5    A courtesy English translation of the Arrangement can be found on the official website of Department of Justice of Hong Kong (https://www.doj.gov.hk/en/main land_and_macao/pdf/Doc6_481354e.pdf), visited on 25 March 2021.

6    See below II. The 2019 Judgments Arrangement versus the 2019 Judgments Convention. It needs to be pointed out that the 2019 Arrangement came earlier in time than the 2019 Convention; to be exact, the Arrangement actually models the drafts of the Hague Judgments Convention, especially the 2018 Draft Convention, of which the rules remain mostly the same in the final 2019 Convention.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

foregoing discussion, this paper further considers the question of how Mainland China would probably respond to these two instruments. The second part of this paper examines the correlations between the 2019 Convention and the 2019 Arrangement, trying to explain what similarities and differences exist between the two, how the Convention has affected the Arrangement and what improvements have been made by the latter for judgments recognition between territorial units within a country. The third part investigates the possible response to the two instruments from Mainland China. The fourth part comes to the conclusion that the 2019 Convention is modest but promising and can influence judgments recognition agreements targeting territorial units within a country such as the 2019 Arrangement, possibly with local elements added. Mainland China may accept the 2019 Convention and Arrangement, since the two instruments can well fit into its current legal regime on foreign judgments recognition and its intensifying desire to go global.[7]

## II. The 2019 Judgments Arrangement versus the 2019 Judgments Convention

3. A little bit earlier than the 2019 Convention was concluded at The Hague on 2[n] July 2019, Mainland China and the Hong Kong SAR signed the 2019 Arrangement on 18 January 2019.[8] Replacing the 2006 "narrow" Judgments Recognition Arrangement focusing on the judgments arising out of exclusive choice of court agreements,[9] the 2019 Arrangement, a milestone for the two territorial units within China, seeks to extend the coverage of mutual recognition and enforcement of judgments to the entire civil and commercial field. By establishing a bilateral mechanism with greater clarity and certainty, the

---

7   See below III.B. Mainland China's acceptance of the 2019 Convention and Arrangement.

8   Arrangement Signed between the Mainland and Hong Kong on Recognition and Enforcement of Civil and Commercial Judgments ("the 2019 Arrangement")(www.gov.cn/xinwen/2019-01/18/content_5359053.htm), visited on 25 March 2021. As the 6th Arrangement between the two sides, the Arrangement is regarded as the most significant one to date(www.gov.cn/xinwen/2019-01/18/content_5359053.htm), visited on 25 March 2021.

9   Arrangement on Reciprocal Recognition and Enforcement of Judgments in Civil and Commercial Matters by the Courts of the Mainland and of the Hong Kong Special Administrative Region Pursuant to Choice of Court Agreements between Parties Concerned ("the 2006 Arrangement") , arts. 1 and 2 (www.doj.gov.hk/eng/mainland/pdf/mainlandrej20060719e.pdf), visited on 25 March 2021.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

2019 Arrangement significantly updates the current practice on recognition and enforcement of judgments and is intended to further promote free movement of judgments between Mainland China and the Hong Kong SAR, whereby the development of Guangdong-Hong Kong-Macao Greater Bay Area can be facilitated. The year 2019 saw the arrival of both the 2019 Arrangement and the 2019 Convention, which was not just a coincidence. Although the two instruments are aimed to target recognition and enforcement of judgments on different planes, a lot of similarities and commonalities are actually shared. It is thus of value to investigate the commonalities and similarities between the two, while the differences are equally worth exploring, to see what interfaces or interactions there are in between. To this end, this part selects several significant issues for comparison.

## II.A. Significant issues

### II.A.i. The scope and general structure

4. Both instruments regulate recognition and enforcement of judgments in all the civil and commercial matters, only with several specified exceptions. In particular, family and succession matters are excluded under both instruments, but the prior 2017 Mainland China-Hong Kong SAR Arrangement complements the 2019 Arrangement in relation to recognition and enforcement of the judgments in family matters.[10] As with the 2019 Convention which covers both monetary and non-monetary rulings,[11] the 2019 Arrangement does the same,[12] which is regarded as a significant breakthrough in comparison with the past practice between Mainland China and the Hong

---

10    Arrangement on Reciprocal Recognition and Enforcement of Civil Judgments in Matrimonial and Family Cases ("the 2017 Arrangement", not yet in force)( www. doj.gov.hk/eng/public/pdf/2017/family_arrangement.pdf), visited on 25 March 2021. Supplemented by and together with the 2017 Arrangement, it is estimated that 90% of the civil and commercial judgments from the Mainland and Hong Kong would be covered. See Arrangement Signed between the Mainland and Hong Kong on Recognition and Enforcement of Civil and Commercial Judgments (www. gov.cn/xinwen/2019-01/18/content_5359053.htm), visited on 25 March 2021.

11    The 2019 Convention, art. 3(1)(b). For the 2019 Convention, coverage of non-monetary judgments is regarded a significant overdue reform, see Michael Douglas, Mary Keyes, Sarah McKibbin and Reid Mortensen, The Hague Judgments Convention in Australian Law, 47 Fed. L. Rev. (2019), 427.

12    The 2019 Arrangement, art. 16(1).

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

Kong SAR.[13] Under the 2019 Arrangement, a wide range of important legal issues are regulated, ranging from the definition of judgments, to indirect jurisdiction, to refusal grounds for recognition and enforcement, which are also regulated under the 2019 Convention.

5. Without any doubt, the reduced number of parties could save the Arrangement from the many structural problems. However, the 2019 Arrangement has not made essential changes and fundamental progress, compared with the 2019 Convention on whose 2018 Draft it was modelled.[14] In terms of which model to follow, *double*, *simple* or *mixed*,[15] both instruments are *simple*. *Double* conventions address both international jurisdiction and recognition and enforcement of judgments, while *simple* conventions only cover recognition and enforcement of judgments. Although concluded between two territorial units within China, the 2019 Arrangement does not achieve unifying direct jurisdiction either, but refers to a list of indirect jurisdiction,[16] just as the 2019 Convention has done. Indirect jurisdiction only provides a jurisdictional standard to judge if exercise of jurisdiction by the rendering court is acceptable, while direct jurisdiction unifies the grounds for exercise of jurisdiction, which is more desired but also hard to achieve for the negotiating parties. To improve structural efficiency, the 2019 Convention does not adopt the *bilateralization* mechanism in the Convention of 1 February 1971 on the Recognition and Enforcement of Foreign Judgments in Civil and Commercial Matters ("the 1971 Convention"), which is widely regarded as one key reason derailing the 1971 Convention. Under the *bilateralization* mechanism, a supplementary bilateral treaty must be concluded to have the convention effective between the concluding parties.[17] However, the

---

13  Qibo Jiang, et.al, Understanding and Applying the 2019 Arrangement, 7 Renmin Sifa [People's Judicature] (2019), 33-4. Under the 2006 Arrangement, only the "final monetary judgments in a civil and commercial case pursuant to a choice of court agreement" are recognizable and enforceable between two regions. Exceptionally, the 2017 Arrangement also covers monetary and non-monetary judgments in family matters.

14  The 2019 Convention largely follows the 2018 Draft Convention. See Hans Van Loon, Towards a Global Hague Convention on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters, 1 Nederlands Internationaal Privaatrecht (2020), 5.

15  For clarification of double, simple and mix conventions, see Arthur T. von Mehren, Recognition and Enforcement of Foreign Judgments: A New Approach for the Hague Conference, 57 Law & Contemp. Probs. (1994), 275.

16  See below n.70 and text thereto.

17  1971 Convention, art. 21. It provides that, "Decisions rendered in a Contracting State shall not be recognised or enforced in another Contracting State in accordance

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

2019 Convention permits the declaration that, "A State may notify the depositary [. . .] that its ratification, acceptance, approval or accession shall not have the effect of establishing relations with a Contracting State [. . .]."[18] This "opt out" mechanism allows Contracting States to exclude treaty relations with one or more other Contracting States. It is thus tagged by some scholars as the "opt out" *bilateralism*[19] or the *inverse-bilateralization* structure.[20] By reference to this unique mechanism, it is possible to block the automatic effect of the Convention, but this must be done by prior explicit notifications to the contrary effect. Further, such notifications may be withdrawn at any time.[21] This is progress, but still reminiscent of the *bilateralization* mechanism in the 1971 Convention.[22]

6. As only two parties are involved, the 2019 Arrangement cannot refer to the *bilateralization* or so-called *inverse-bilateralization* mechanism; however, the Arrangement is not meant to be directly operable: it needs to be further formulated into local legislations. In Mainland China, this Arrangement is to be turned into effective judicial interpretations with no anticipated barriers whereas in the Hong Kong SAR, it should be transformed into a local ordinance.[23] Although past experience tells that problems might be encountered when such an arrangement is to be transformed in the Hong Kong SAR, this extra procedure is distinct from *bilateralization* or *inverse-bilateralization*, and in no way endangers the ultimate fate of the Arrangement.[24] Once implemented, the 2019 Arrangement will supersede all prior Arrangements for which it can cover, including the 2006 Arrangement, and then serve as the sole document facilitating judgments recognition between the two sides,

---

with the provisions of the preceding Articles unless the two States, being Parties to this Convention, have concluded a Supplementary Agreement to this effect."

18    The 2019 Convention, art. 29(3).

19    David P. Stewart, The Hague Conference Adopts a New Convention on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters, 113 AJIL (2019), 780-1.

20    David P. Stewart, ibid, 780-1; Michael Douglas, The Culmination of the Judgments Project: The HCCH Judgments Convention (www.law.ox.ac.uk/business-law-blog/blog/2019/08/culmination-judgments-project-hcch-judgments-convention), visited on 25 March 2021.

21    The 2019 Convention, art. 29(4).

22    Wenliang Zhang and Guangjian Tu, The 1971 and 2019 Hague Judgments Conventions: Compared and Whether China Would Change Its Attitude Towards The Hague, 11 Journal of IDS (2020), 617-18.

23    See below n.152 and text thereto.

24    See below n.153 and text thereto.

alongside the 2017 Arrangement. In contrast, the 2019 Convention will operate in parallel with, rather than replace, Convention of 30 June 2005 on Choice of Court Agreements ("the 2005 Convention").[25]

### II.A.ii. IP issues

7. Due to its strict territorial nature and extensive commercial interests, intellectual property ("IP") is a sensitive issue and drew a lot of discussion in the course of the Hague negotiations.[26] To avoid the divergences in IP rights, the HCCH conventions, including the 2019 Convention, exclude IP from the scope. In particular, the 2019 Convention entirely excludes from its scope of application IP matters,[27] including copyright and related rights that are already covered under the 2005 Convention.[28] Generally, IP is also excluded from the scope of the 2019 Arrangement.[29] However, the 2019 Arrangement addresses IP in some respects. The Arrangement sets forth the indirect jurisdiction in the context of IP infringement and provides for recognition and enforcement of certain IP judgments, which is not seen under the 2019 Convention due to the strong disagreement among the negotiating parties.[30]

8. According to the 2019 Arrangement, in relation to *tortious* claims for infringement of an IP right, jurisdiction goes to the court where the act of infringement was committed and under which law the IP right or interest concerned is claimed for protection.[31] This accords with the principle of *lex loci protectionis*, i.e., the law of the State for which protection is sought, to de-

---

25  The 2019 Convention, para.4 of Preamble.

26  Back to early 2000s in the 2001 Interim Text, intellectual property was among the difficult issues unresolved. See Hans Van Loon, above n.14, 9.

27  2019 Convention, art. 2(1)(m). However, it is meant to apply to the *contracts* that are related to or based on IP rights such as licensing agreements, distribution agreements, joint venture agreements or agreements for the development of IP rights. See Francisco Garcimartín and Geneviève Saumier, Convention of 2 July 2019 on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters: Explanatory Report ("Garcimartín/Saumier Report"), para.65.

28  The 2005 Convention, art. 2(2)(n)-(o).

29  The Arrangement, art. 3(3).

30  Xiaofei Sun and Qiong Wu, Comments on and Outlook for Convention on Recognition and Enforcement of Foreign Civil and Commercial Judgments, 1 Guojifa Xuekan [Journal of International Law] (2019), 157.

31  The 2019 Arrangement, art. 11(3).

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

termine the existence, content and infringement of IP rights, and an IP right can only be infringed in the State where it exists and is protected.[32] For *contractual* claims relating to IP rights, the list of indirect jurisdiction that is set forth for the general civil and commercial matters still applies.[33] At the stage of recognition and enforcement, as regards the *tortious* claims for IP infringement, recognition and enforcement may be granted, but only to the resulting monetary damages, including punitive damages.[34] For trade secrets infringement, recognition and enforcement may extend to both monetary and non-monetary damages, including punitive damages.[35] Although the Arrangement generally precludes punitive damages just as the 2019 Convention does,[36] partial recognition of punitive damages in some IP cases reflects Mainland China's changing attitudes in this regard[37] and marks an improvement.[38]

9. Truly, where IP (and or anti-trust matters) is excluded, the 2019 Convention may end up as a rather modest instrument.[39] Considering that the 2005 Convention partially covers IP, the complete exclusion of IP from the 2019 Convention is a step backward and proves the limit and conservative side of the Convention. Although the 2019 Arrangement also excludes IP in general, it takes a positive step in bringing in certain rules on IP jurisdiction and judgments recognition, which was anticipated but was not achieved in the 2019 Convention. The same rules under the 2019 Arrangement would be accepted by Mainland China if they could be written into the 2019 Convention.[40] No matter how trivial this step is, the partial regulation of IP under the 2019 Arrangement is a more open and positive move,[41] and thus marks a meaningful progress. Now one can see that

---

32   The principle of *lex loci protectionis* is also established in the relevant law of Mainland China, namely article 50 of Law of the People's Republic of China on Choice of Law for Foreign-related Civil Relationships.

33   Key features of the 2019 Arrangement, para.21.

34   The Arrangement, arts. 17(1) and 15.

35   The Arrangement, arts. 17(2) and 15.

36   The Arrangement, art. 16(2); the 2019 Convention, art. 10(1).

37   Qibo Jiang, et.al, above n.13, 34.

38   Despite the above rules, recognition and enforcement cannot extend to the judgments ruling on the license fee rate of standard essential patents in both Mainland China and Hong Kong and those on IP rights which are not within the definition of "IP rights" in the sense of the Arrangement and those on the validity, establishment or subsistence of IP rights are also excluded. See Department of Justice, the Government of the Hong Kong SAR, Key features of the 2019 Arrangement (para.9)(www.doj.gov.hk/eng/public/pdf/2019/Doc6_481354e.pdf), visited on May 31, 2020.

39   Hans Van Loon, above n.14, 18.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

with the arrival of the 2019 Arrangement, the common interests for the protection of IP rights between Mainland China and the Hong Kong SAR surpass their many differences.

### II.A.iii. Interface with arbitration

10. International arbitration is well supported by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the 1958 New York Convention").[42] Due to the reality that the interface between international arbitration and litigation is generally unsettled, it is an established practice to exclude international arbitration-related issues from conventions dealing with international litigation altogether. For instance, as a pioneer in promoting free movement of judgments in the EU, Brussels I Regulation Recast has generally excluded arbitration without prejudice to the competence of the courts of the EU Member States to comply with the 1958 New York Convention.[43] In this context, the 2019 Convention does not apply to arbitration and related proceedings,[44] of which the purpose is to ensure that the Convention does not interfere with arbitration, in particular the 1958 New York Convention.[45] Although there is no delimitation, this general exclusion should be widely interpreted to cover both arbitral awards and court decisions relating to arbitration and it also covers the effects that an arbitration agreement or an arbitral award may have on the provisions of the 2019 Convention, especially in relation to the obligation to recognize and enforce judgments given in another State.[46] The Convention is also believed to exclude the recognition and enforcement of the court decisions giving assistance to the arbitral process.[47] This is a broad exclusion, indeed. However, an

---

40  In the course of negotiation of the 2019 Convention, Mainland China voiced a similar stance embodied in the 2019 Arrangement. See Xiaofei Sun and Qiong Wu, above n.30, 160.

41  Qibo Jiang, et.al, above n.13, 31.

42  Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 1958 (https://uncitral.un.org/sites/uncitral.un.org/files/media-documents/uncitral/en/new-york-convention-e.pdf) , visited on 25 March 2021.

43  Brussels I Regulation Recast, preamble (12).

44  The 2019 Convention, art. 2(3).

45  Garcimartín/Saumier Report, para.78.

46  Garcimartín/Saumier Report, paras.78-80.

47  Such issues include, e.g., deciding whether the arbitration clause is valid or not, inoperative or incapable of being performed; ordering parties to proceed to arbitration or to discontinue arbitration proceedings; revoking or amending arbitral awards;

absolute exclusion of arbitration is impossible. Despite an arbitration agreement, if the court of origin did decide on the merits because the defendant appeared and defended the case on the merits without pleading the existence of the arbitration agreement, the resulting judgment may circulate under the 2019 Convention.[48]

11. Under the 2019 Arrangement, exclusion of arbitration is explicitly confined to three scenarios: court decisions regarding the validity of arbitration agreements, revocation of arbitral awards[49] and recognition of arbitral awards.[50] This strikes a clear contrast to the more general wording under the 2019 Convention, i.e., "This Convention shall not apply to *arbitration* and *related* proceedings [emphasis added]."[51] By enumerating only three scenarios, the 2019 Arrangement seemingly suggests that not all arbitration-related issues are excluded from the Arrangement and the specific wording appears to hint that the Arrangement does not seem to exclude other court decisions giving assistance to the arbitral process. Whether this is true is to be tested in the future practice of both sides. Anyway, the exclusion of arbitration is far less comprehensive under the 2019 Arrangement, at least according to the wording of the Arrangement.

### II.A.iv. Choice of court agreements

12. With the increasingly prominent role of party autonomy in international dispute resolution, choice of court agreements has received greater recognition from by national laws. Due to this broad consensus, the Hague judgments project first begot the 2005 Convention with the scope of application being limited only to choice of court agreements.[52] Having a much broader scope of application, the 2019 Convention could have subsumed the 2005 Convention. However, the *double* convention nature of the 2005 Convention distinguishes itself from the later Convention. Since the 2005 Convention is

---

    appointing or dismissing arbitrators; fixing the place of arbitration; or extending the time-limit for making awards. Garcimartín/Saumier Report, para.78.

48    Catherine Kessedjian, Comment on the Hague Convention of 2 July 2019 on the Recognition and Enforcement of Foreign Judgments in Civil or Commercial Matters. Is the Hague Convention of 2 July 2019 a useful tool for companies who are conducting international activities?, 1 Nederlands Internationaal Privaatrecht (2020), 21.

49    The 2019 Arrangement, art. 3(7).

50    The 2019 Arrangement, art. 3(8).

51    The 2019 Convention, art. 2(3).

52    Preface, Hartley/Dogauchi Report.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

set to cover exclusive choice of court agreements,[53] the judgments based on non-exclusive choice of court agreements cannot necessarily benefit from it.[54] Accordingly, the 2019 Convention thus provides for the recognition and enforcement of judgments based on non-exclusive choice of court agreements.[55] By complementing the 2005 Convention, the 2019 Convention marks a further step forward and the two conventions may well coordinate with each other. Though an overlap was to be avoided between the two Conventions and a complete "package" was supposed to be agreed on, the gap nevertheless remains in addressing choice of court agreements involving weaker parties.[56] The *simple* Convention nature of the 2019 Convention also renders it impossible to unify the direct jurisdiction regarding non-exclusive choice of court agreements. So, while the 2019 and 2005 Conventions may generally complement each other and operate in parallel, the gap is merely partially filled in.

13. Similarly, the 2019 Arrangement was preceded by the 2006 Arrangement, which was modelled on the 2005 Convention in many ways.[57] Different from the 2005 Convention, the 2006 Arrangement is of a *simple* nature and covers exclusive choice of court agreements only.[58] The 2019 Arrangement came as a further advancement for this field following the 2006 Arrangement mainly because the 2019 Arrangement is meant to cover all civil and commercial matters. Using broad wording,[59] the 2019 Arrangement does

---

53   The 2005 Convention, art. 1(1).

54   Art. 22 of the 2005 Convention allows for reciprocal declarations on non-exclusive choice of court agreements, which may enlarge the scope of the convention. However, this demands further action from concluding states and is thus not guaranteed. Thus far, there is no single declaration in this respect among the 32 concluding parties to the Convention, hinting that this article is not yet operable. See Status Table of the 2005 Convention (www.hcch.net/en/instruments/conventions/status-table/?cid=98) , visited on 25 March 2021.

55   The 2019 Convention, art. 5(1)(m).

56   The 2019 Convention, art. 5(2)(b).

57   See Xianchu Zhang and Philip Smart, Development of Regional Conflict of Laws: On the Arrangement of Mutual Recognition and Enforcement of Judgments in Civil and Commercial Matters between Mainland China and the Hong Kong SAR, 36 Hong Kong L.J. (2006), 570.

58   Guangjian Tu, Recognition and enforcement of mainland China's civil and commercial judgments in Hong Kong—an update, 25 Asia Pac. L. Rev. (2017), 194.

59   Art. 11(1)(5) of the 2019 Arrangement states that "Parties may agree to the jurisdiction of court of origin in writing [. . .]", which is broad enough to cover both *exclusive* and *non-exclusive* choice of court agreements.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

not distinguish between exclusive and non-exclusive choice of courts agreements, which is in sharp contrast to the 2006 Arrangement and the 2019 Convention.[60] Therefore, with a comprehensive scope, the 2019 Arrangement can replace the 2006 Arrangement and it rightly does so by stating that "Upon commencement of this Arrangement, the 2006 Arrangement shall be terminated", while the 2019 Convention has to run in parallel with the 2005 Convention.[61]

14. The replacement of the 2006 Arrangement by the 2019 Arrangement has several further implications. With one whole instrument of the 2019 Arrangement, uniformity and clarity can be better promoted. Moreover, since the 2006 Arrangement only covers recognition and enforcement of monetary judgments[62] but the 2019 Arrangement extends to cover both monetary and non-monetary judgments,[63] the scope of recognition and enforcement is thus enlarged as regards the judgments rendered pursuant to exclusive choice of court agreements, which actually promotes the movement of judgments.

### II.A.v. Indirect jurisdiction

15. International jurisdiction of the court that rendered the judgment is broadly considered as one main concern for the recognition and enforcement of foreign judgments. If the jurisdictional requirement is satisfied, cross-border judgments recognition could presumably be quite straightforward. For the purpose of recognition and enforcement of foreign judgments in a treaty, unification of the jurisdictional requirement can be achieved by direct, indirect or mid-way jurisdictional rules, which lead to Conventions *double*, *simple* or *mixed* by reference to a trichotomy standard.[64] As a "*simple*" convention would fall short of the present-day needs,[65] the 2019 Convention had long been anticipated to be a convention *double*.[66] However, the attempts in this

---

60    Cf. Art. 3(1) of the 2006 Arrangement, which explicitly prescribes that "Parties may, in writing, agree to a Chinese or Hong Kong court as the court with sole jurisdiction [. . .]"

61    The 2006 Arrangement, art. 30.

62    The 2006 Arrangement, art. 1.

63    See above n.12 and text thereto.

64    See above n.15 and text thereto.

65    Fausto Pocar and Costanza Honorati (eds.,), The Hague Preliminary Draft Convention on Jurisdiction and Judgments, Wolters Kluwer Italia (2005), 213.

66    See, e.g., Arthur T. von Mehren, above n.15, 285; Peter Arnt Nielsen: The Hague 2019 Judgments Convention—from failure to success?, 16 Journal of Private International Law (2020), 207.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

direction floundered as the negotiating countries were unable to come to agreement.[67] Eventually, the 2019 Convention came out as a convention *simple* once again.[68] For the 2019 Arrangement, it is also of a *simple* nature,[69] reflecting the limits of the cooperation between Mainland China and the Hong Kong SAR.

16. To design the requirements for indirect jurisdiction, the 2019 Convention and Arrangement both adopt a list enumerating and detailing the grounds which are acceptable for the purpose of mutual recognition and enforcement of judgments. In the Arrangement, six bases of indirect jurisdiction are laid down as compared with thirteen heads of indirect jurisdiction in the 2019 Convention.[70] Generally, three traditional categories of jurisdiction are allowed under both instruments: jurisdiction based on connections with the defendant, jurisdiction based on connections between the claim and the State of origin and jurisdiction based on consent. All the grounds under the 2019 Arrangement can find their counterparts in the 2019 Convention,[71] only with minor differences at most. Therefore, the 2019 Arrangement was strongly influenced by the 2019 Convention and its preceding documents in designing the connecting factors.

17. Despite the commonalities or similarities, differences exist between the two instruments. Besides the enumerated heads of indirect jurisdiction, the 2019 Arrangement goes on to state that jurisdiction exercised by the court of origin that is justifiable in accordance with the law of the requested State is also accept-

---

67  Garcimartín/Saumier Report, para.3; Sarah E. Coco, The Value of a New Judgments Convention for U.S. Litigants, 94 New York LR (2019), 1234-5.

68  As the sole exception, the convention *double* comes true in the 2005 Convention, but this Convention applies rather narrowly.

69  See above n.15 and text thereto.

70  In any case, the longer list in the 2019 Convention simply indicates that it touches on more scenarios and in no way means that the jurisdictional requirement is easier to be satisfied under the Convention.

71  The 2019 Arrangement refers to the jurisdiction based on connections with the defendant (i.e. defendant's domicile, defendant's representative office, branch, office, place of business or such other establishment without separate legal personality), the jurisdiction based on connections between the claim and the state of origin (i.e. place of performance of contract, place of the tortious act) and the jurisdiction based on consent (i.e. choice of court agreement in writing and arguing on the merits without objecting to jurisdiction ("submission")). These grounds of indirect jurisdiction closely correspond to those set forth in the 2019 Convention. Cf. Art. 5, the 2019 Convention.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

able.[72] This practice reflects the "mirror-image" rule seen in some countries measuring the jurisdiction of foreign States by internal standards.[73] By projecting into the foreign legal system all of the recognition State's jurisdictional assertions, however extravagant they may be, the rule could indeed be too broad,[74] especially considering that Mainland China still exercises exorbitant grounds of jurisdiction.[75] In comparison, this is not the case in the 2019 Convention, which generally only recognizes the jurisdictional bases that are explicitly laid down.[76] Although the list of indirect jurisdiction in the 2019 Convention is non-exhaustive either, in the sense that a party to the treaty could still recognize the judgment of another party even if the other party rendering the judgment has exercised jurisdiction on a basis not included therein, such recognition and enforcement would not be automatic under the treaty and would only be at the discretion of the requested party in accordance with its domestic law.[77]

18. In addition, unlike the 2019 Convention, the 2019 Arrangement does not adopt the connecting factor of counterclaims, since it is considered logically reasonable for the court of origin to hear counterclaims and thus unnecessary to have this connecting factor enumerated.[78] In formulating the connecting factors, the 2019 Arrangement also follows the 2019 Convention for how the connecting factors should be substantiated to some extent. For example, in terms of choice of court agreements, no "connection" requirement between the chosen forum and the dispute is imposed in either instruments. Although in the Hong Kong SAR law there is no such requirement of connection between the dispute and the chosen forum, Mainland China law does demand it clearly.[79] As regards the connecting factor of the place of the tortious act, the 2019 Arrangement confines it within the place where the infringing act was committed irrespective of where that harm occurred, just as the 2019

---

72    The 2019 Arrangement, art. 5(4).

73    See, e.g., Andreas F. Lowenfeld, International Litigation and Arbitration (3rd edn.), Thomson/West (2006), 531.

74    Friedrich K. Juenger, The Recognition of Money Judgments in Civil and Commercial Matters, 36 Am. J. Comp. L. (1988), 15.

75    See, e.g., Art. 265, Civil Procedural Law ("CPL"), which provides for international jurisdiction based on the assets seized in contractual or other property related issues, irrespective of the values or connections between the claims and the assets.

76    The 2019 Convention, art. 5(1).

77    Sarah E. Coco, above n.67, 1236-7.

78    Qibo Jiang, et.al, above n.13, 33.

79    The CPL, art. 33.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

Convention does.[80] This is a narrow basis for indirect jurisdiction and it differs from other legal systems that also recognize jurisdiction exercised by the court in the State where the harm occurred,[81] including both Mainland China and the Hong Kong SAR.[82] Therefore, it appears that there is no need for the 2019 Arrangement to narrowly define the place of the tortious act as the 2019 Convention does.

19. Further, the 2019 Arrangement has integrated some elements that do not exist under the 2019 Convention into its jurisdictional scheme. In framing the connecting factors of choice of court agreements[83] and submission, although both instruments do not require the "connection" requirement as a general rule,[84] the 2019 Arrangement demands an "actual connection" when both parties involved are domiciled in the requested side,[85] which is obviously made in part to look after Mainland China's concern.[86] This path reflects a compromise between Mainland China and the Hong Kong SAR.[87] The two instruments also differ in treating exclusive jurisdiction. The 2019 Arrangement does not prescribe any exclusive jurisdiction; instead, it only mandates that the jurisdiction of the court of origin must not run counter to the exclusive jurisdiction of the requested State.[88] In contrast, the 2019 Convention states that "a judgment that ruled on *rights in rem* [emphasis added] in immovable property shall be recognized and enforced *if and only* [emphasis added] if the property is situated in the State of origin."[89] This is the sole exclusive jurisdiction, and it shall involve only the rights *in rem* in immovables, rather than any other issues relating to the immovables which might arise out of contractual or tortious relationships. In the 2019 Convention, the scope of the immovables-based exclusive jurisdiction is there-

---

80   The 2019 Convention, art. 5(1)(j).

81   Garcimartín/Saumier Report, para.197.

82   Supreme People's Court's 2015 Interpretation on the Application of the CPL and Section 11(1)(f), art. 24, The Rules of The High Court of Hong Kong.

83   The 2019 Arrangement, art. 11(1)(5).

84   Cf., the 2019 Convention, art. 5(1)(m) and the 2019 Arrangement, art. 11(1)(5).

85   The 2019 Arrangement, art. 11(1)(6).

86   In the Mainland China, the CPL requires the connection requirement for choice of court agreements. See the CPL, art. 34.

87   Qibo Jiang, et.al, above n.13, 32-3.

88   The 2019 Arrangement, art. 5(1).

89   The 2019 Convention, art. 6.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

fore strictly confined.[90] Absent any limitation imposed by the 2019 Arrangement, the fact that local exclusive jurisdiction of each side prevails may easily result in conflicts of jurisdiction. This is especially true since Mainland China still claims a wide scope of exclusive jurisdiction.[91] For example, if a Hong Kong court claims jurisdiction based on parties' choice of court agreement in a harbor operations case, this exercise of jurisdiction may be qualified according to Article 11(1)(5) of the 2019 Arrangement. However, since it intrudes into the realm of exclusive jurisdiction claimed by Mainland China law,[92] the jurisdiction of the Hong Kong court cannot be recognized under the Arrangement. What's more, the 2019 Arrangement differs from the 2019 Convention in respect of the jurisdiction over consumer and employment contracts. A cautious approach is taken by the 2019 Convention to treat separately the jurisdictional issues over consumers and employees,[93] normally considered as weaker parties. In contrast, such special concerns over so-called weaker parties do not exist under the 2019 Arrangement.

### II.A.vi. Refusal grounds

20. Besides the jurisdictional requirements, refusal grounds constitute further key parameters shaping the landscape of the recognition and enforcement of foreign judgments for judgments conventions (or instruments). For instruments *simple*, the success largely depends on how refusal grounds are designed. Generally speaking, the fewer refusal grounds there are with stricter conditions for recourse, the more chances there will be for successful recognitions. To design the list of refusal grounds, both the 2019 Convention and the 2019 Arrangement have adopted such popular refusal grounds as public policy, due process, fraud, conflicting judgments and *lis pendens*.[94] All the 2019 Arrangement defenses can be found under the 2019 Convention in the

---

90    Cf. the 1971 Convention, art. 10(3); and Brussels I Regelation Recast, art. 6(1).

91    In this respect, see the CPL, arts. 33 and 260; Supreme People's Court's 2015 Interpretation on the Application of the CPL, art. 531. For the possible interactions between the Convention and Mainland China's exclusive jurisdiction, as regards the discussion between the 2005 Convention and Mainland China's law, see Guangjian Tu, The Hague Choice of Court Convention—A Chinese Perspective, 55 Am. J. Comp. L. (2007), 353-5.

92    The CPL, art. 33(2).

93    The 2019 Convention, art. 5(2).

94    Cf., the 2019 Arrangement, arts. 12 and 13; the 2019 Convention, art. 7.

same or very similar form.[95] Beyond the very similar categories of refusal grounds, further similarities or commonalities are seen. Just like in the 2019 Convention, the list of refusal grounds under the Arrangement is meant to be *exhaustive*,[96] which means a non-local judgment can be refused *only* on one of these grounds. Consequently, certainty is promoted for mutual recognition and enforcement of judgments. In particular, fraud exists under both instruments as a refusal ground *verbatim*.[97] Similarities can be further observed in substantiating the defenses. For public policy to apply, a *manifest* infringement is required and violation of the basic legal principles of the requested court is commonly set forth as a sub-branch of this defense. In the case of conflicting judgments, priority is both given to the already-existing judgment of the requested State (region) and the earlier-recognized third State judgment by the requested State (region).[98] For parallel proceedings, it is required both that the proceedings be initiated earlier in the requested State (region) and that the *same* dispute is involved between the *same* parties. Thus put, so far as refusal grounds are concerned, the 2019 Arrangement duplicates the 2019 Convention to a great extent, in terms of both the refusal grounds and the conditions for recourse thereof.

21. Despite the aforesaid similarities or commonalities, a few differences distinguish the 2019 Arrangement from the 2019 Convention. First, the defenses under the 2019 Arrangement are *mandatory* in nature, which means that if any of the defenses exists, the requested court *shall* deny recognition and no leeway is left to the requested court to refer to local rules of more *favor recognitionis*. There is only one exception for this rule: if the respondent could prove that the action in the original court was contrary to a valid arbitration agreement or a valid jurisdiction agreement entered into by parties on the same dispute, the court *may*, rather than *shall*, refuse to recognize.[99] In contrast, the 2019 Convention frames all of its refusal grounds with permissive language,[100] and courts of concluding States *may* recognize judgments on a

---

95  Cf., the 2019 Arrangement, arts. 12 and 13; the 2019 Convention, art. 7.

96  Cf., the 2019 Convention, art. 4(1); the 2019 Arrangement, arts. 12 and 13.

97  Just like the 2019 Convention, the 2019 Arrangement draws no distinction between procedural and substantive fraud and no further limits are imposed either.

98  Cf., the 2019 Arrangement, art. 12(1)(5); the 2019 Convention, art. 7(1)(e)-(f).

99  The 2019 Arrangement, art. 13.

100  Art. 7(1) of the 2019 Convention states that "Recognition or enforcement *may* be refused if [...]" (emphasis added). See also Michael Douglas, Mary Keyes, Sarah McKibbin and Reid Mortensen, above n.11, 429.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

more *favor recognitionis* domestic basis.[101] Second, the burden of proof for the defenses is explicitly stated under the 2019 Arrangement. Except for the defense of public policy, the onus rests squarely on the judgement debtor to prove the defenses in the 2019 Arrangement, while the 2019 Convention does not explicitly state where the burden of proof lies. This approach under the Arrangement is actually pro-recognition and enforcement. Third, the 2019 Arrangement adds new elements in detailing the defenses. For the defense of due process, it is defined under the 2019 Arrangement as absence of legal notification according to the law of the *court of origin* or legal notification without enough guarantee for the defendant to represent or defend itself.[102] Though both instruments embrace sufficient notification as a neutral sub-benchmark, reference to the law of the *court of origin* to test due process under the 2019 Arrangement is not seen under the 2019 Convention, which instead turns to fundamental principles of the requested State.[103] Clearly, the approach taken by the 2019 Arrangement is, once again, more *favor recognitionis* while the 2019 Convention provides for better supervision of due process. In detailing public policy, the 2019 Convention lists the scenario of infringing security or sovereignty of the requested State,[104] which is not seen in the 2019 Arrangement but appears in the local recognition rules of Mainland China.[105] Due to the fact Mainland China and the Hong Kong SAR are within the same country, the problem of national security or sovereignty is much less of a concern, which is probably why this is not written in the Arrangement.

22. For the defense of conflicting judgments, the 2019 Arrangement mandates that the conflicting judgment of the requested region be on the *same* dispute between the *same* parties. Under the 2019 Convention, the conflicting judgment of the requested State should involve a dispute between the *same* parties and it need not have been rendered prior to the competing judgment

---

101  Garcimartín/Saumier Report, para.326.

102  The 2019 Arrangement, art. 12(2).

103  The 2019 Convention, art. 7(1)(a).

104  The 2019 Convention, art. 7(1)(c).

105  The CPL, art. 282. The inclusion of the scenario of infringing security or sovereignty of the requested State as a branch of public policy largely resulted from the continuous efforts of the Chinese delegation in this regard. Jin Sun and Qiong Wu, The Hague Judgments Convention and How We Negotiated It, 19 Chinese JIL (2020), 498.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

or have been based on the same *cause of action*.[106] Because it is not confined to the *same* dispute or cause of action, this defense could be wider under the Convention than in the Arrangement. For a conflicting third-State judgment to successfully block a newly-addressed judgment from the other region, the 2019 Arrangement *only* requires that the third State's judgment on the same dispute has been recognized. In contrast, the 2019 Convention imposes stricter conditions: the third State judgment must have been rendered earlier, it must be between the same parties on the same subject matter, and the judgment must fulfil the conditions for the judgments recognition in the requested State.[107] So, priority is accorded to the first-in-time judgment under the 2019 Convention,[108] which is not the case in the 2019 Arrangement. As it would be too demanding in an international instrument to require that the two judgments involve exactly the same "cause of action", it is only required under the Convention that the "central or essential issue" be the same.[109] Although ambiguous, the wording same "dispute" in the Arrangement should not be very different from the *same* "subject matter" in the Convention. So, practice should not be quite different under the two instruments although the requirements are framed differently. While the 2019 Arrangement requires that the third-State judgment be recognized, the 2019 Convention nevertheless mandates that the earlier judgment fulfil the conditions for its recognition or enforcement in the requested State, whether or not any procedure to that end has been instituted in the requested State.[110] In this sense, the 2019 Convention supports the first-in-time judgment, while this is not a concern in the 2019 Arrangement.

23. In addition, the 2019 Arrangement sets forth conflict with a local arbitral award or a locally recognized third-State arbitral award on the same dispute between the same parties as a refusal ground,[111] which is not the case under the 2019 Convention. However, the requested State may refuse, under its national law or other international instruments, to recognize or enforce a judgment given in another State if the judgment is irreconcilable with an

---

106  Garcimartín/Saumier Report, para.270.

107  The 2019 Convention, art. 7(1)(f).

108  Garcimartín/Saumier Report, para.272.

109  Ibid.

110  Garcimartín/Saumier Report, para.272.

111  The 2019 Arrangement, art. 12(1)(6).

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

arbitral award.[112] For the defense of parallel proceedings, the 2019 Convention requires a close *connection* between the dispute and the requested State,[113] and further narrows this defense by adding that any refusal under this defense does not prevent a subsequent application for recognition or enforcement of the judgment.[114] This could discourage countries to take unnecessary jurisdiction. In contrast, the 2019 Arrangement imposes no such requirements and makes no exceptions.

24. Jurisdictional incompetence of the court of origin is laid down under both instruments as a defense. The 2019 Convention makes deviation from a forum selection agreement or designation in a trust as a *discretionary* defense.[115] Recourse to this defense under the Convention would only be necessary where the court of origin was considered to have met one of the bases for recognition or enforcement in the 2019 Convention.[116] It applies irrespective of the nature of the choice of court agreement, be it exclusive or non-exclusive, insofar as the agreement has validly excluded the jurisdiction of the court of origin. It also applies irrespective of whether the court chosen by the parties or designated in the trust instrument was the court of a Contracting State or a third State. The validity and effectiveness of the agreement or the designation is governed by the law of the requested State, including its private international law rules.[117] This is clearly done to emphasize and respect party autonomy. In contrast, the 2019 Arrangement generally prescribes that dissatisfaction of the indirect jurisdiction of the Arrangement *shall* be an effective defense.[118] Furthermore, it provides for a *discretionary* defense: if the proceedings in the court of origin were contrary to a valid arbitration or jurisdiction agreement, refusal *may* be made.[119] If the court of origin decides to exercise jurisdiction to hear a dispute after declaring the invalidity or unenforceability of an arbitration agreement or forum selection agreement, the requested court is not bound by the preliminary ruling and has the discretion to refuse.[120] The discretionary classification here is contrasted with the Hong

---

112  Garcimartín/Saumier Report, para.80.
113  The 2019 Convention, art. 7(2)(b).
114  The 2019 Convention, art. 7(2)(1)(b).
115  The 2019 Convention, art. 7(1)(d).
116  Garcimartín/Saumier Report, para.267.
117  Garcimartín/Saumier Report, para.269.
118  The 2019 Arrangement, art. 12(1)(1).
119  The 2019 Arrangement, art. 13.
120  Qibo Jiang, et.al, above n.13, 33.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

Kong rule regarding this defense, which stipulates it as *mandatory*.[121] Thus seen, this defense was adopted in the Arrangement to uphold the party autonomy to the fullest extent. However, violation of an arbitration agreement is not prescribed as a defense under the 2019 Convention. Since legitimate international jurisdiction is usually taken as a natural condition for judgments recognition and already dealt with in the part of indirect jurisdiction, it appears superfluous for it to be repeated in the list as a mandatory defense under the 2019 Arrangement.

25. On the whole, while these two instruments share a lot of similarities and even commonalities in designing refusal grounds, in terms of both categories and conditions, the two instruments differ in detailing and confining the refusal grounds. The differences range from the nature of the defenses, to the burden of proof, and to how the defenses are conditioned. In essence, the differences reveal the different paths or aims the two instruments follow or emphasize. By adopting stricter conditions for defenses and discretionary classification of defenses, the 2019 Convention is clearly more *favor recognitionis*.

## II.B. Some reflections

26. As already mentioned, the year 2019 saw the arrival of both the 2019 Arrangement and the 2019 Convention, which is not just a coincidence. Historically, they were both born out of the long endeavors to work out the rules on judgments recognition at different levels and thus represent a marked progress in this field, at the international level and the level of territorial units within a country, respectively. The two instruments show that the international community may work cooperatively at different levels. As illustrated above, the 2019 Arrangement closely resembles the 2019 Convention, especially in relation to the key issues of general structure, indirect jurisdiction and refusal grounds. China's active participation in and contribution to the Hague Judgments Projects[122] in recent years is believed to have heavily influenced the 2019 Arrangement, which may explain the clear resemblance between the two instruments. Admittedly, both instruments reflect compromises. Under both instruments, the scope of application is restricted and the recognition rules are framed in a cautious way. Overall, the two instruments share some

---

121  Foreign Judgments (Restriction on Recognition and Enforcement) Ordinance, art. 3 (www.elegislation.gov.hk/hk/cap46) , visited on 25 March 2021.

122  Sarah E. Coco, above n.67, 1242; Xiaofei Sun and Qiong Wu, above n.30, 159-63.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

unprecedented features and are very similar despite some differences. In this way, the 2019 Arrangement can be said to be a localized version of the 2019 Convention to a great extent and in many respects.

27. Despite the great resemblance, the 2019 Arrangement was reached between two regions of China, which warrants special considerations and thus distinguishes the Arrangement from the 2019 Convention in a broad context. Since it has only two parties, the 2019 Arrangement is certainly less complicated in terms of entry into force. Notably, various reservations[123] that are allowed under the 2019 Convention are not a concern in the 2019 Arrangement. In addition, unique jurisdictional concerns are fully reflected under the Arrangement and in particular, "exclusive jurisdiction" is designed to fully protect the integrity of each other's exclusive jurisdiction. Consensus is reached on some of the IP-related issues, which has been long expected but not yet reached in the 2019 Convention. Based on the ever-closer ties between Mainland China and the Hong Kong SAR in the field of recognition and enforcement of judgments, the two sides may expect further new areas to plough,[124] which is not true at The Hague. These special features may better accommodate to the two regions' unique concerns. Such an ameliorating environment contributes to both the uptake of the 2019 Arrangement and further future collaborations.

28. In fact, the HCCH experience has long been recognized as a useful guide and model in promoting reciprocal recognition and enforcement of judgments between the Hong Kong SAR and Mainland China.[125] The arrival of the 2019 Arrangement is but a further case of learning from the HCCH. Before the 2019 Arrangement, the 2006 Arrangement was modelled on the

---

123  Far more declarations appear in a few provisions of the 2019 Convention that allow Contracting States to deviate from, such as Art. 14 (costs of proceedings), Art. 17 (declarations limiting recognition and enforcement), Art. 18 (declarations with respect to specific matters), Art. 19 (declarations with respect to judgments pertaining to a State), and Art. 25 (declarations with respect to non-unified legal systems).

124  For example, the two regions have considered reaching an arrangement on circulation of the judgments on trans-boundary insolvency(www.hk-lawyer.org/content/review-new-mainland-hksar-judgment-recognition-arrangement), visited on 25 March 2021.

125  See, e.g., Legislative Council of Hong Kong, LC Paper No. CB(2)722/01-02(04)(legco.gov.hk/yr01-02/english/panels/ajls/papers/aj1220-cb2-722-4e.pdf), visited on 25 March 2021.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

2005 Choice of Court Convention in many ways.[126] The experience of the 2019 Convention as well as the preceding negotiating process benefits greatly the 2019 Arrangement. Compared with the differences, there are apparently more commonalities or similarities between the two. To put it another way, the 2019 Arrangement was inspired by and actually largely borrowed from the experience of the 2019 Convention.[127] In this vein, the 2019 Arrangement exemplifies one side of the possible successes of the 2019 Convention: setting a model for the recognition and enforcement of judgments between territorial units within a country. For the 2019 Convention itself, how it unfolds is still to be tested, but its success may lie not just in attracting a good number of countries to ratify, but also in being an example for countries to follow regionally, bilaterally or in its domestic recognition laws. If this could be furthered, the 2019 Convention may even influence individual countries' practice, such as China's, which should obviously be much commended.

## III. Possible response from Mainland China

29. According to the statistics of China Justice Observer, there were 57 reported cases regarding the recognition and enforcement of judgments between Mainland China and foreign States, including US, Japan, Germany, UK, Australia, Netherland and Singapore.[128] Among these cases, 15 out of 38 applications for recognition and enforcement of foreign judgments in Mainland China were upheld, while 14 out of 19 Chinese judgments were successfully recognized and enforced in other countries.[129] Since Sino-foreign judgments mutual recognition was rare not long ago, this is encouraging and illustrative of the deepening and seemingly flourishing picture of Sino-foreign judgments mutual recognition.[130] Against this broad picture came the 2019 Arrangement and the 2019 Convention, which could further shape Mainland China's recognition landscape in the future and probably push Mainland China to a new stage in this field. Now, how the picture may unfold depends to a large extent on whether these two instruments can be successfully put

---

126 See Xianchu Zhang, Preliminary Remarks on the 2006 Arrangement, 8 Fazhi Luntan [Nomocracy Forum] (2007), 61-2.

127 Qibo Jiang, et.al, above n.13, 32-4.

128 See Guodong Xu and Meng Yu, above n.4.

129 Ibid.

130 Wenliang Zhang and Guangjian Tu, above n.22, 630.

into force in Mainland China. The prospect of the two instruments in Mainland China must be evaluated on a broad context, bearing in mind Mainland China's recent developments in this respect.

### III.A. Recent developments in Mainland China

30. The improvement of Mainland China's practice on recognition and enforcement of foreign judgments over the years has facilitated the arrival of the 2019 Arrangement and its active participation in the HCCH Judgments Project. Recent years have seen cases of reciprocally recognizing and enforcing foreign judgments in Mainland China after foreign countries had taken the initiative to recognize Chinese judgments. As of today, several countries have taken the first step to recognize Chinese judgments and they include, Australia, Germany, New Zealand, Israel, Singapore, South Korea, the United Kingdom and the United States.[131] In response, Chinese courts reciprocated in several landmark cases, having recognized judgments from the United States, Germany, Singapore and South Korea.[132] Truly, the emergence of this "follow-suit" recognition is mainly triggered by the initiative recognition of Chinese judgments by foreign countries.[133] However, the "Belt & Road" political background and China's ambition of claiming more global presence in recent years might have urged Chinese courts to be more liberal towards foreign judgments in their interpretation of reciprocity although foreign courts' initiative recognition should be read as already satisfying the strict *de facto* reciprocity that has been long required in Chinese judicial practice. Anyhow, the positive interaction between Chinese and foreign courts is illustrative of a viable way to solve the longstanding judgments recognition dilemmas between Mainland China and the outside world. This way is nevertheless not always guaranteed and it is replete with uncertainties. Despite the mainstream practice of reciprocating foreign courts' initiative recognition of Chinese judgments, not all Chinese courts have followed suit; indeed, in some cases, Chinese courts did not reciprocate even though Chinese judgments had been recognized and enforced abroad.[134] But this opposite picture

---

131   See Guodong Xu and Meng Yu, above n.4.

132   Ibid.

133   Wenliang Zhang, Sino-Foreign Recognition and Enforcement of Judgments: A Promising Follow-Suit Model?, 16 Chinese JIL (2017), 522-39.

134   For more information of the case, see Qisheng He, Chronology of Practice: Chinese Practice in Private International Law in 2017, 17 Chinese JIL (2018), 1101–1146;

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

is not the mainstream. Beyond any doubt, a bilateral arrangement such as the 2019 Arrangement or a multilateral convention such as the 2019 Convention can certainly add another layer of effective mechanism for Sino-foreign judgments recognition.

31. Faced with a lasting stalemate in foreign judgments recognition, Chinese courts, especially the Supreme People's Court ("SPC"), have had to adjust to the generality or rigidity in the CPL, according to which recognition and enforcement of foreign judgments cannot be achieved in Mainland China unless there is a treaty agreement or reciprocity in practice.[135] The arrival of the 2019 Arrangement is but a salient example of advancing judgments recognition by the SPC. In addition, the SPC has taken various other opportunities to address the issue of reciprocity-based recognition of foreign judgments in Mainland China.[136] By the 1994 *Gomi Akira* case, a strict *de facto* reciprocity was established by following and strictly interpreting the law at the time. Under the *de facto* reciprocity requirement, Chinese courts deem the establishment of the reciprocal relationship by foreign courts' initiative of recognizing Chinese judgments. This is narrow-minded and indeed easily leads to a vicious circle.[137] In recent years, the SPC has been working on improving the recognition rules, and the traditional *de facto* reciprocity has started to erode. However, it is still to be seen when these more favorable rules can be worked out. The SPC once worked on a proposed interpretation in this field,[138] but the Standing Committee of the National People's Congress ("NPCSC") ultimately rejected this proposal on the ground that it would encroach upon the legislative power of National People's Congress ("NPC"). To counter the serious problems surrounding the *de facto* reciprocity, *de jure* reciprocity is proposed by the SPC in its proposed regulation on the recognition

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

---

William S. Dodge and Wenliang Zhang, Reciprocity in China-U.S. Judgments Recognition, 53 Vanderbilt JTL (2020), 1552.

135  CPL, art. 282; Over the years, the SPC has issued several interpretations on recognition and enforcement of foreign judgments in Mainland China, which are aimed to clarify some of the requirements for foreign judgments recognition in Mainland China.

136  See, e.g., Wenliang Zhang, Recognition and Enforcement of Foreign Judgments in China: A Call for Special Attention to Both the "Due Service Requirement" and the "Principle of Reciprocity", 12 Chinese JIL (2013), 153-154.

137  Wenliang Zhang, ibid, 170-2.

138  Regulation of the SPC on Several Issues Relating to Recognition and Enforcement of Foreign Judgments (Sixth Draft) [SPC Regulation on Judgments Recognition] (on file with the authors).

of foreign judgments in Mainland China.[139] Under *de jure* reciprocity, no requirement is imposed of prior recognition of Chinese judgments by foreign courts, but rather it suffices that Chinese judgments may be recognized in the requested State under the equivalent conditions.[140] An even softer approach to reciprocity exists under SPC Regulation on Judgments Recognition that reciprocity may be considered to exist based on the mutual understanding between foreign and Chinese courts.[141]

32. On several occasions, the aforesaid softer approach to reciprocity has been repeatedly touched upon in the context of the Belt and Road Initiative. In 2015, the SPC issued *Several Opinions of the Supreme People's Court on the Provision of Judicial Services and Safeguards by People's Courts for the Belt and Road Initiative*.[142] By this document, the SPC places high importance on foreign judgments recognition and directly addresses the *reciprocity* requirement. This document dictates that, "If a country along the 'Belt & Road' has not signed an agreement on judicial assistance with China, Chinese courts may *take the initiative* to provide judicial assistance [including the recognition and enforcement of foreign judgments] to the litigant from that country *in advance*, actively promoting a mutually *reciprocal* relationship and enlarging the scope of judicial assistance [. . .]".[143] It is officially recognized as the first time when the *reciprocity* requirement deviates from the *de facto* reciprocity understanding and is given a softened interpretation with the aim of promoting reciprocal relationship.[144] This makes a clear contrast with SPC's conservative approach in interpreting the reciprocity requirement in the past, as evidenced in the *Gomi Akira* case and 1994 Reply.[145] What is more, the 2017 Nanning Declaration was reached at the 2nd China-ASEAN Justice Forum under the auspices of the SPC, which states that "as regards the countries that have not yet concluded international treaties on recognition and enforcement of

---

139  SPC Regulation on Judgments Recognition, art. 17.

140  SPC Regulation on Judgments Recognition, art. 17(2).

141  SPC Regulation on Judgments Recognition, art. 17(3).

142  Several Opinions of the SPC on the Provision of Judicial Services and Safeguards to the Establishment of One Belt and One Road, Fa fa [2015], No. 9, 2015.

143  Several Opinions of the SPC on the Provision of Judicial Services and Safeguards to the Establishment of One Belt and One Road, art. 6.

144  SPC Report on Judicial Assistance to Belt & Road (www.court.gov.cn/zixun-xiangqing-14899.html), visited on 25 March 2021.

145  Reply of the Supreme People's Court on whether the People's Courts of the PRC should Recognize and Enforce Japanese Judgments Concerning Claims and Obligations, (1995) Min Tazi No. 17.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

foreign civil and commercial judgments, if there is no precedent for refusing to recognize and enforce civil and commercial judgments on the grounds of *reciprocity*, within the scope permitted by the law in [Mainland] China, it can be presumed that there is a reciprocal relationship between each other."[146] These moves indicate a very positive interpretation of *reciprocity* by the SPC which is in direct opposition to its past conservative interpretation. Recently, the SPC has also sought to ameliorate the Sino-foreign recognition environment by recourse to other means, by, for example, signing recognition memorandums with its counterparts and adopting updated recognition policies.[147] Remarkably, SPC and Singapore Supreme Court have established a China-Singapore legal and judicial roundtable mechanism. The two sides reached a non-binding recognition memorandum.[148] The mechanism and the resulting memorandum are set to promote mutual understanding and help create a platform for judicial communication. In contrast to the moves of the SPC in addressing reciprocity, the basic recognition rules in the CPL have remained the same over the past three decades. Thus, how Mainland China's recognition rules and practice will unfold depends largely upon whether the SPC can work out effective rules that are to be upheld by China's legislature.

33. Undoubtedly, the active role played by the SPC may contribute greatly to mutual recognition and enforcement of judgments between China and foreign countries in the coming years. All the above-mentioned SPC moves were made based on the authority of the SPC to interpret broad recognition rules in the CPL and were intended to ameliorate the environment for Sino-foreign judgments recognition. The piecemeal approach taken by the SPC is praiseworthy since it gradually puts mutual recognition and enforcement of judgments between Mainland China and foreign countries on the right track. However, this is mostly a makeshift plan. As the failure of the proposed SPC Regulation on Judgments Recognition demonstrates, the SPC, *alone*, cannot overhaul Mainland China's recognition system; rather, future rewriting of the

---

146 Nanning Declaration at the 2nd China-ASEAN Justice Forum, art. 7(cicc.court.-gov.cn/html/1/219/208/209/800.html), visited on 25 March 2021.

147 These endeavors are believed to also aim at improving the legal environment for Mainland China's newly introduced international commercial courts.

148 Memorandum of Guidance between the Supreme People's Court of the People's Republic of China and the Supreme Court of Singapore on Recognition and Enforcement of Money Judgments in Commercial Cases (www.supremecourt.gov.sg/docs/default-source/default-document-library/spc-mog-english-version---signed.pdf), visited on 25 March 2021.

recognition rules by the NPC is indispensable. All in all, the current broad picture depicted above may strongly affect how Mainland China will respond to the 2019 Arrangement and the 2019 Convention, especially considering the increasingly prominent role of the SPC in pushing for recasting Mainland China's recognition rules.

## III.B. Mainland China's acceptance of the 2019 Convention and Arrangement

### III.B.i. Future of the two instruments in Mainland China

34. The 2019 Arrangement is the most striking step between Mainland China and the Hong Kong SAR to deepen bilateral judgments recognition. The Arrangement represents a new high point in the two sides' judicial cooperation after many years' endeavors although some difficulties may persist in the 2019 Arrangement, such as the possible inconsistency of interpretation between the Mainland and the Hong Kong SAR, doubts about the quality of the adjudication in some Mainland courts and lack of any rules regulating insolvency judgments recognition.[149] It well fits into the lasting efforts of Mainland China to put the arrangement into practice in order to strengthen the relationship of judgments recognition with other territorial units of China. Presently, this Arrangement has been approved by the Trial Commission of the SPC[150] and it will directly be transformed into a piece of judicial interpretation *verbatim*. As usual, Mainland China's approach to effect the Arrangement by way of the SPC interpretation in an instant manner is quite straightforward, with little clarification and further detail. Over the past decades, Mainland China has been actively seeking to promote judicial cooperation in the same way with other regions.[151] The desire to further judicial cooperation with the Hong Kong SAR has been intensifying at a fast pace in recent years. Without doubt, the 2019 Arrangement involves no special barriers and may fare well in practice in Mainland China. To the current authors, the issue of whether this Arrangement can be successfully

---

149 Weixia Gu, A Conflict of Laws Study in Hong Kong–China Judgment Regionalism: Legal Challenges and Renewed Momentum, 52 Cornell ILJ (2020), 633-5.

150 Qibo Jiang, et.al, above n.13, 34.

151 In particular, a series of bilateral arrangements were also reached in this regard with Macao, which include the one for recognition and enforcement of judgments (www.io.gov.mo/pt/legis/int/rec/612), visited on 25 March 2021.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

implemented in Mainland China mainly depends on political will, rather than legal techniques.

35. From the Hong Kong SAR's side, it will be much more complicated to have the Arrangement implemented and probably new rules or even some derogations may be seen in the future ordinance to effect the Arrangement.[152] However, it is generally believed that the 2019 Arrangement will be put into effect before long although there is currently no timeline for the process.[153]

36. China has been enthusiastic in the HCCH Judgments Project and played an active role in the negotiation of recent judgments conventions.[154] This reflects China's desire for and need of HCCH judgments conventions and thus contributes to its uptake of the 2019 Convention. As of today, it has signed the 2005 Convention and the ratification is in process. It is also very likely that China will sign the 2019 Convention in the future. Bearing in mind that the 2019 Arrangement heavily borrows from the 2019 Convention, the recognition regime that is established by the 2019 Convention would pose no serious barriers for its acceptance by China. Moreover, the jurisdictional grounds under the 2019 Convention are largely acceptable in present Mainland China laws[155] and the refusal grounds under the Convention actually comport with the existing Sino-foreign bilateral treaties containing the rules on recognition and enforcement of judgments.[156] In the broad context, the SPC has attached great significance to the recognition

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

---

152 Xianchu Zhang, A New Stage of Regional Judicial Assistance in Civil and Commercial Matters: Implementation of the Mainland Judgments Ordinance and Certain Issues Beyond, 39 Hong Kong L.J. (2009), 8-11 (stating that the legislation in Hong Kong includes public consultation, extensive professional participation and deliberation with a careful and rigorous approach to make the rules working in practice).

153 Jame Y. P. Wong, Hong Kong, in: Anselmo Reyes (ed.), Recognition and Enforcement of Judgments in Civil and Commercial Matters (Hart Publishing, Oxford, 2019), 79.

154 Hans Van Loon, above n.14, 11.

155 With minor differences, the jurisdictional grounds under the 2019 Convention can largely coordinate with the jurisdictional rules in the CPL. Cf., the CPL, arts. 17-35, 265 and 266.

156 The list of refusal grounds under the bilateral treaties reflects popular defenses just as that of the 2019 Convention does. With some variations, the refusal grounds in the bilateral treaties are very similar to or the same as those under the 2019 Convention. See, e.g., Wenliang Zhang, Recognition and Enforcement of Foreign Judgments in China: Rules, Practice and Strategies, Kluwer Law International (2014), 223-7.

and enforcement of foreign judgments and by adopting a few documents,[157] has ameliorated the judgments recognition environment in Mainland China to a great extent, which creates incentives and actually paves the way for the accession to any international judgments conventions like the 2019 Convention. Notably, the mechanism of reservations that are widely available in the 2019 Convention also allows China to join the Convention without serious doubts or hesitation,[158] and therefore, confidence is promoted. In the context of the advancing Belt & Road Initiative, the necessity is actually increased for a global judgments convention. These positive moves of the SPC also pave the way for the acceptance and possible implementation of the 2019 Convention in Mainland China. What is more, its establishment of international commercial courts calls for the signing and ratification of international judgments conventions like the 2019 Convention, in order for Chinese judgments to be freely circulated abroad and to elevate the popularity of its international commercial courts.

37. To conclude, it accords with China's desire and improving recognition environment to sign and ratify the 2019 Convention. Hopefully, China will join the 2019 Convention, although probably not in the short term. As a country with several territorial units, China's possible acceptance of the 2019 Convention may extend to all the territorial units, including the Hong Kong SAR, which is allowed by the 2019 Convention[159] and may facilitate the circulation of Hong Kong judgments in a broader context. The 2019 Convention is meant to apply to the recognition and enforcement in one Contracting State of a judgment given by a court of another Contracting State and thus, a judgment from the court of another territorial unit within the same State is not a foreign judgment according to this Convention.[160] In this vein, even if the 2019 Convention applies in China, it cannot be a legal basis for judgments recognition between Mainland China and the Hong Kong SAR. Therefore, the arrival and future implementation of the 2019 Arrangement is of absolute necessity.

---

157  See above nn.130-142 and the accompanying text.

158  See above n.123 and the accompanying text. In particular, that declarations may be made with respect to judgments pertaining to a State saves China from sacrificing its stance of absolute immunity.

159  The 2019 Convention, art. 25.

160  Jin Sun and Qiong Wu, above n.105, 492.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

### III.B.ii. The path Mainland China may take

38. In the context of China's pro-globalization policy, the Belt & Road Initiative incentivizes China to update its rules and policies to safeguard this process. In the field of recognition and enforcement of foreign judgments, without any efforts from the legislature, the only way forward lies in the efforts of the SPC to bring in new rules or interpret the general recognition rules of the CPL in line with the worldwide mainstream. Recent years indeed have seen a few positive moves from the SPC to modernize Mainland China's recognition rules[161] and Chinese courts' follow-suit recognition appears promising. The establishment of international commercial courts adds another dimension for Mainland China to further judicial cooperation with other countries. China attached great importance to the HCCH Judgments Project and participated in the full negotiation process,[162] which illustrates its desire and need to participate in the global governance of law. Thus, China is on the right track to open doors to treat foreign judgments. All the steps and endeavors shall be taken to facilitate, rather than obstruct, the recognition and enforcement of judgments between Mainland China and foreign countries.

39. There are many ways for China to improve transboundary judgments recognition. In terms of efficiency, the best way is to join multilateral conventions, such as the 2005 and 2019 Conventions. In fact, China is currently doing or considering doing so. China signed the 2005 Convention in 2017[163] and ratification is expected to follow. Moreover, there appears no special barrier for China to ratify the 2019 Convention, which has essentially been transformed into the internal, *bilateralized* 2019 Arrangement. The HCCH judgments conventions furnish a solid platform for the cross-border judgment circulation and may well promote circulation of foreign judgments in Mainland China and *vice versa*. The ameliorating recognition environment in Chinese practice tips for the acceptance of the two instruments in China.

40. China may also seek to conclude bilateral treaties in the field of recognition and enforcement of judgments. As the *status quo* reveals, bilateral treaties may furnish a reliable approach to Sino-foreign judgments recognition. As of today, China has concluded thirty-nine bilateral treaties on judicial assistance in civil and commercial matters, thirty-five of which provide for recognition

---

161  See above nn.142-148 and text thereto.

162  Jin Sun and Qiong Wu, above n.105, 485.

163  For more, refer to the status table of the 2005 Convention(www.hcch.net/en/instru ments/conventions/status-table/?cid=98), visited on 25 March 2021.

and enforcement of judgments.[164] The number of such bilateral treaties is expected to rise. These treaties have played a positive role in promoting Sino-foreign recognition and enforcement of judgments.[165] It would be beneficial and desirable to conclude more of such treaties, but it is far from likely to see such treaties to be reached between China and its major trading partners, such as the United States, Japan, Germany, the United Kingdom and Australia. Treaties of the abovementioned kind should be construed as not applicable to the Hong Kong SAR either.[166] Overall, the bilateral treaties path can be pursued but the future for this is gloomy. In this context, it is submitted that China should pursue the multilateral way by joining the 2019 Convention, in particular. Last but not least, since the SPC has shown its desire and resolution to modernize and advance the cause of recognition and enforcement of foreign judgments, it could be very promising and beneficial to have the recognition rules of Mainland China updated in line with the world mainstream practice as is evidenced in the 2019 Convention.

## IV. Conclusion

41. The arrival of the 2019 Convention and the 2019 Arrangement is an important step in promoting the recognition and enforcement of judgments at different levels. These two instruments were reached based on prior recognition regimes and stand for new high grounds, respectively. Just as the past Hague Conventions and negotiations inspired or interacted with other judgments conventions such as the UK-US Convention and the 1968 Brussels Convention,[167] the 2019 Convention and the 2019 Arrangement were also influenced by a lot of preceding and contemporaneous factors. The 2019 Convention reflects progress in several salient respects, though not really overhauled in essential terms, and is aimed to achieve more common rules and wide acceptance. Admittedly, this convention was reached through a series of compromises, reflecting the long-lasting differences and lack of sufficient mutual trust among countries. The realistic approach taken by the 2019 Convention was intended to ensure its success to greatest extent possible. As a

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

---

164  William S. Dodge and Wenliang Zhang, above n.134, 1546.

165  The early years' few successful recognitions of foreign judgments in Mainland China were basically due to these bilateral treaties. See Wenliang Zhang, above n.136, 160-3.

166  Jin Sun and Qiong Wu, above n.105, 495.

167  Hans Van Loon, above n.14, 7.

melting pot of different legal traditions, the HCCH is now more and more of a global character, in contrast to the past which was dominated mostly by the transatlantic voices. China and other (formerly) "emerging" States have become more actively involved.[168] This shifted landscape and changed dynamics benefit the future of the HCCH conventions like the 2019 Convention, ambitious or modest. Above all, presently there is a much more pressing need for such a global convention and the updated rules in the Convention are largely acceptable. To conclude, the historical momentum tilts towards possible acceptance of the convention by countries, including China.

42. As a judgments recognition instrument targeting territorial units within a country, the 2019 Arrangement is structured and modeled on the 2019 Convention in respect of key issues and to a significant degree. This exemplifies the acceptance of the 2019 Convention or explains a new dimension of the possible success thereof. Truly, the ambition or success of the 2019 Convention should not only lie in furnishing model rules on judgments recognition. If global judgments recognition can be promoted under the influence of the 2019 Convention, directly or indirectly, that would be commendable. For the time being, sufficient mutual trust still lacks among countries. In this context, all possible channels may be explored to promote recognition and enforcement of foreign judgments and popularity of the 2019 Convention. As was illustrated by the arrival of the 2019 Arrangement, the 2019 Convention may influence judgments recognition arrangements between territorial units within a country, which is also a historical experience.[169] To put it differently, the success of the 2019 Convention may not only bring together countries to adhere to the convention rules, but also furnish a model for the cooperation between territorial units within a country, or even for domestic recognition rules, just in the way UNCITRAL Model Law on International Commercial Arbitration does.[170] Supposedly, the

---

168  Hans Van Loon, ibid, 11.

169  Notably, the 1968 Brussels Convention drew inspiration from both the 1971 Convention and its Protocol (excluding exorbitant grounds of jurisdiction). In addition, the 2005 Convention had a substantial impact on the Brussels I recast. Hans Van Loon, above n.14, 7, 10.

170  The Model Law is designed to assist States in reforming and modernizing their laws on arbitral procedure so as to take into account the particular features and needs of international commercial arbitration. Presently, legislation based on the Model Law has been adopted in 85 States in a total of 118 jurisdictions, which is a great success. More information:(uncitral.un.org/en/texts/arbitration/modellaw/commercial_arbitration/status), visited on 25 March 2021.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

Convention rules on the recognition and enforcement of foreign judgments are more favorable to recognition than most countries', and therefore, it is also of value to modernize individual countries' recognition rules based on the 2019 Convention. Undoubtedly, localization of the 2019 Convention may also contribute to the acceptance of this Convention globally. This may prove another form of the acceptance and success of the 2019 Convention.

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

Downloaded from https://academic.oup.com/chinesejil/article/20/1/101/6297807 by University of Sydney user on 01 November 2022

Annexure 3 Item 7

**附：申请人刘利与被申请人陶莉、童武申请承认和执行外国法院民事判决一案**

中华人民共和国

湖北省武汉市中级人民法院

民事裁定书

（2015）鄂武汉中民商外初字第00026号

申请人：刘利，女，汉族，1979年6月15日出生，住湖南省岳阳市岳阳楼区湖滨农垦集团公司一分场宿舍90号。

委托诉讼代理人：陈观林，湖南金球律师事务所律师。

被申请人：陶莉，女，汉族，1986年11月6日出生，住湖北省武汉市江汉区唐家墩路15号武汉菱角湖万达广场B.C区7栋4层A室。

委托诉讼代理人：陈航，湖北山河律师事务律师。

被申请人：童武，男，汉族，1977年9月12日出生，住湖北省武汉市江汉区唐家墩路15号武汉菱角湖万达广场B.C区7栋4层A室。

委托诉讼代理人：陈航，湖北山河律师事务律师。

申请人刘利与被申请人陶莉、童武申请承认和执行外国法院民事判决一案，本院于2015年10月19日受理后，依法组成合议庭，于2015年12月25日、2016年3月15日组织听证会对该申请进行了审查。申请人刘利和其委托诉讼代理人陈观林，被申请人陶莉、童武的共同委托诉讼代理人陈航到庭参加听证会。本案现已审查终结。

申请人刘利申请称：申请人与被申请人于2013年09年22日签订股权转让协议，被申请人以150000美元的价格将其在美国JIAJIAMANAGEMENTINC50%股权转让给申请人。在申请人依约支付125000美元后，被申请人携款潜逃。申请人在当地报警未果后依法向美国加利福尼亚州洛杉矶县高等法院提起诉讼，该院于2015年7月24日作出第EC062608号判决，判令被申请人返还申请人125000美元及审判前（2013年9月25日至2015年5月25日）利息20818美元和审判成本1674美元，总共147492美元。该判决已经生效，被申请人未按判决履行。被申请人现居住在湖北省武汉市江汉区唐家墩路15号武汉菱角湖万达广场B.C区7栋4层A室并有可供执行的财产。美国法院作出的EC062608号判决不违反我国法律的基本原则和国家主权、安全、社会利益，为维护申请人的合法权益，特请求裁定：1、承认美国加利福尼亚州洛杉矶县高等法院第EC062608号判决在中华人民共和国境内具有法律效力；2、依美国加利福尼亚州洛杉矶县高等法院第EC062608号判决内容强制被申请人给付申请人125000美元及审判前（2013年9月25日至2015年5月25日）利息20818美元和审判成本1674美元，总共147492美元，计人民币940040.26元（以2015年9月12日汇率）和2015年5月25日至执行终结前的逾期利息；3、由被申请人承担本案执行费用。

被申请人陶莉和童武陈述意见称，1、美国加利福尼亚州洛杉矶县高等法院第EC062608号判决在中华人民共和国境内不具有法律效力，被申请人在美国法院诉讼时并未接到参加诉讼的通知；2、申

请人与被申请人所签订的《股权转让协议》真实、合法、有效，被申请人不应当向申请人返还股权转让价款。为此，请求驳回申请人的申请。

经审查认定：被申请人陶莉与申请人刘利于2013年9月22日在美国签订《股权转让协议》一份，约定陶莉将其持有的在美国加利福尼亚州注册登记的JIAJIAMANAGEMENTINC50%股权转让给刘利。刘利先后在2013年9月22日、9月25日向被申请人付款12.5万美元。被申请人童武系被申请人陶莉的丈夫，申请人刘利提交的童武银行账户信息显示其银行账户在2013年9月14日至10月16日期间有12.5万美元的进账。后申请人刘利以两被申请人利用虚假股权转让事由获取其12.5万美元钱款为由，在2014年7月17日向美国加利福尼亚州洛杉矶县高等法院提起诉讼，案件编号EC062608。2014年10月7日，美国Rolan送达公司就被申请人陶莉、童武在美国境内的个人信息、联系地址等出具调查报告。申请人刘利在美国的委托律师按调查报告所载两被申请人地址邮寄送达诉讼资料未果。2015年1月8日，美国加利福尼亚州洛杉矶县高等法院法官WilliamD.Stewart作出公告命令，决定该案相关传票、通知通过在《圣盖博谷论坛》（SANGABRIELVALLEYTRIBUNE）上刊登公告方式送达。该送达公告随后于2015年1月15日、1月22日、1月29日和2月5日连续四次在《圣盖博谷论坛》上刊登。2015年7月24日，加利福尼亚州洛杉矶县高等法院法官WilliamD.Stewart作出缺席判决，该法庭认为两被申请人已按程序收到传票，而未出庭回应申请人之起诉，构成缺席。因此，法庭就本案所涉事项判决被申请人陶莉和童武连带偿还申请人刘利12.5万美元并承担判决前利息20818美元（自2013年9月25日至2015年5月25日，按日息34.24美元计算），且应支付费用1674美元，判决金额共计147492美元。申请人刘利在美国的委托律师在判决当日就上述判决办理了判决登记通知手续。申请人提交的《首例中国法院判决在美国得到承认与执行案》（载《中国法律期刊》2010年1月）报道记载，湖北省高级人民法院作出的湖北葛洲坝三联实业股份有限公司、湖北平湖旅游船有限公司诉美国罗宾逊直升机有限公司产品侵权纠纷案民事判决，已获美国法院承认与执行。

本院认为：

本案系申请承认和执行外国法院判决纠纷案件。《中华人民共和国民事诉讼法》第二百八十一条规定，外国法院作出的发生法律效力的判决、裁定，需要中华人民共和国人民法院承认和执行的，可以由当事人直接向中华人民共和国有管辖权的中级人民法院申请承认和执行，也可以由外国法院依照该国与中华人民共和国缔结或者参加的国际条约的规定，或者按照互惠原则，请求人民法院承认和执行。第二百八十二条规定，人民法院对申请或者请求承认和执行的外国法院作出的发生法律效力的判决、裁定，依照中华人民共和国缔结或者参加的国际条约，或者按照互惠原则进行审查后，认为不违反中华人民共和国法律的基本原则或者国家主权、安全、社会公共利益的，裁定承认其效力，需要执行的，发出执行令，依照本法的有关规定执行。违反中华人民共和国法律的基本原则或者国家主权、安全、社会公共利益的，不予承认和执行。本案中，被申请人陶莉、童武在湖北省武汉市内拥有房产，本院作为被申请人财产所在地和经常居住地法院，对本案依法享有管辖权。

申请人刘利在向本院递交申请承认和执行申请书时，已向本院提交经证明无误的美国加利福尼亚州洛杉矶县高等法院作出的编号EC062608判决副本及中文译本，符合申请承认和执行外国法院判决的形式要件。因美国同我国之间并未缔结也未共同参加相互承认和执行民事判决的国际条约，申请人的申请应否予以支持应依据互惠关系原则进行审查。经审查，申请人提交的证据已证实美国有承认和执行我国法院民事判决的先例存在，可以认定双方之间存在相互承认和执行民事判决的互惠关系。同时，上述美国加利福尼亚州洛杉矶县高等法院判决系对申请人与被申请人之间有关股权转让的合

同关系作出，承认该民事判决并不违反我国法律的基本原则或者国家主权、安全、社会公共利益。对两被申请人辩称的未接到美国法院参加诉讼通知的辩称理由，经审查，上述判决中已明确记载该案判决系缺席判决，且申请人已向本院提交了对被申请人进行调查、法院准许公告送达命令、报纸刊登的送达公告等证明文件，可以确定美国加利福尼亚州洛杉矶县高等法院已对两被申请人进行了合法传唤，对两被申请人的该项辩称理由不予支持。对两被申请人主张的有关《股权转让协议》真实、合法、有效，不应当向申请人返还股权转让价款的辩称主张，因本案属于司法协助案件，并不涉及对双方实体权利义务关系的审查，在相关美国法院已就此作出判决的情况下，对被申请人的该项辩称主张本院亦不予以支持。因此，对申请人提出承认和执行美国法院判决的请求，本院予以支持。对申请人主张的2015年5月25日美国法院判决日至执行终结前的逾期利息，不属于申请承认和执行外国法院判决的范畴，本案中不予支持。

经合议庭评议，依照《中华人民共和国民事诉讼法》第一百五十四条第一款第（十一）项、第二百八十一条、第二百八十二条，《最高人民法院关于适用<中华人民共和国民事诉讼法〉的解释》第五百四十三条第一款、第五百四十六条第一款的规定，裁定如下：

一、承认并执行美国加利福尼亚州洛杉矶县高等法院第EC062608号判决；

二、驳回申请人刘利的其他请求。

本案申请费人民币100元，由被申请人陶莉、童武负担。

审判长赵千喜

审判员余杰

审判员熊艳红

二○一七年六月三十日

书记员徐蕾

# 王安勤、曾芳申请承认与执行法院判决、仲裁裁决案件承认与执行申请审查国际司法协助裁定书

案　　由　　　　　　案　　号（2019）粤01协外认3号

发布日期2022-03-22　　浏览次数358

中华人民共和国

广东省广州市中级人民法院

民 事 裁 定 书

(2019)粤01协外认3号

申请人：王安勤（英文名：ANQINWANG），男，汉族，1968年8月15日出生，住云南省曲靖市麒麟区。

委托诉讼代理人：吕翔、吴鹏，均系云南德范律师事务所律师。

被申请人:曾芳（英文名：FANGZENG）,女,汉族,1968年8月11日出生,住广东省广州市越秀区。

委托诉讼代理人:申武潮,广东威戈律师事务所律师。

申请人王安勤与被申请人曾芳申请承认和执行美国加利福尼亚州中区美国地区法院（UNITEDSTATESDISTRICTCOURTFORTHECENTRALDISTRICTOFCALIFORNIA）编号：CaseNo.CV-17-08936-MWF（RAOx）民事判决一案，本院于2019年1月2日立案。本院依法组成合议庭进行了审查，组织当事人进行了询问，现已审查终结。

申请人王安勤申请称：王安勤是美国CIIF案（5000万美元诈骗案）的部分受害人。在该案中，曾芳以想出国的中国人为目标，通过EB5项目为他们提供到美国的机会，策划诱导王安勤（美国民事判决原告）投资50万美元、4万美元的"管理费"和2万美元律师费到所谓的洛杉矶EB5房地产投资项目中，但是，这些项目实际上都是虚假的，投资资金则被CIIF、曾芳等窃走。申请人王安勤作为原告向美国加利福尼亚州中区美国地区法院提起了对包括被申请人曾芳在内的多名涉案被告的诉讼，该法院于2018年7月30日作出的编号：CaseNo.CV-17-08936-MWF(RAOX)的民事判决，判令曾芳等众被告承担180万美元的共同和连带责任，该判决已生效，但王安勤未获得180万美元赔偿。曾芳是美国民事判决被告之一，现居住在广州市越秀区建设大马路8号之一3001房，并有可供执行的财产。美国法院作出的编号：CaseNo.CV-17-08936-MWF(RAOX)民事判决不违反我国法律的基本原则和国家主权、领土完整、安全及社会利益，并且根据美国与我国相互承认和执行民事判决的互惠原则，为维护申请人的权益，根据我国《民事诉讼法》等有关法律规定，特申请承认与执行该民事判决。

申请请求：1.请求承认美国加利福尼亚州中区美国地区法院民事判决编号：CaseNo.CV-17-08936-MWF(RAOX)；2.请求根据第1项的民事判决内容，强制曾芳给付王安勤180万美元赔偿及自2018年2月27日起至赔偿款全部执行完毕的逾期利息；3.判令曾芳承担本案保全费、保全保险费和执行费用。

被申请人曾芳答辩称：一、美国法院民事判决不应予以承认和执行。1.该民事判决违反我国法律的基本原则和社会公共利益。本案是利用合同进行民事欺诈的案件，根据我国合同法，该合同为无效合同。王安勤除要求曾芳返还财产外，有权请求赔偿损失，但损失应以直接损失和间接损失为限。美国民事判决曾芳除赔偿王安勤投资款56万美元外，还需赔偿数额接近3倍的124万美元惩罚性赔偿，明显违背了我国法律规定的基本原则。2.王安勤没有先向主要财产所在地、主要责任人所在地的判决作出地美国加利福尼亚州中区美国地区法院申请执行的情况下，直接向我国法院申请承认判决和执行，违背我国社会公共利益。3.美国法院对在美国没有居所的中国公民曾芳没有司法管辖权。4.美国法院民事判决是在没有经过开庭审理不符合缺席审理的情况下作出的，违反我国民事诉讼制度。5.美国法院的民事判决书在没有依法送达的情况下违法采用缺席审理的方式判决，侵犯曾芳作为外国公民参加诉讼的各种民事法律权利。6.美国法院判决书没有告知作为当事人的曾芳的上诉权利。7.美国法院没有向作为外国人曾芳依法送达判决书。8.美国法院判决没有将真正的涉案收款人列为案件被告。二、申请人提供的证据存在诸多问题，不能证明申请人与被申请人是否是同一个人的问题。1.申请人王安勤未能证明其与判决书原告AnqinWang是否是同一个人。2.王安勤也未能证明曾芳系该判决被告FANGZENG。3.王安勤不能提供美国法院民事判决书原件。4.翻译人员张彦龙不能代表云南省翻译工作者协会，其个人翻译不能作为法院认可的翻译文本。5.《民事审判记录–概要》及其在美国法院民事案件的起诉状未经我国使领馆的公证认证，不能作为证据适用。6.美国加州中区美国地区法院承认和执行"原告湖北葛洲坝三联实业股份有限公司、湖北平湖旅游船有限公司诉被告美国罗宾逊直升机有限公司"案不能作为认定互惠原则的依据。7.湖北省武汉市中级人民法院（2015）鄂武汉中民商外初字第00026号裁定书承认和执行美国法院判决的案例不能作为本案考虑问题。

经审理查明：美国加利福尼亚州中区美国地区法院（UNITEDSTATESDISTRICTCOURTFORTHECENTRALDISTRICTOFCALIFORNIA）作出编号：CaseNo.CV–17–08936–MWF（RAOx）民事判决。该民事判决于2018年7月30日生效。该民事判决原告（Plaintiffs:ANQINWANG）、被告加州投资移民基金有限公司、陈莹莹、美国夏利士律师集团有限公司、陈达、ZHENGCHANG曾芳、夏利士集团有限合伙（Defendants:CALIFORNIAINVESTMENTIMMIGRATIONFUND,LLC、VICTORIACHAN、HARRISLAWGROUP,USALLC、TATCHAN、ZHENGCHANG、FANGZENG、HARRISGROUPLP）。该民事判决记载，修订的针对所有被告的修改缺席判决和禁令。上述事宜根据原告要求缺席判决的申请，提交给上述法院5A审判庭的美国地区法官迈克尔.W.菲茨杰拉德阁下（第31号、第45号案件进程报告）。被告陈莹莹、陈达、曾芳、加州投资移民基金有限公司、美国夏利士律师集团有限公司已经按常规方式被送达了文书，但没有委托律师并在本诉讼中答辩。他们的缺席庭审已于2018年12月12日、2018年6月20日和2018年6月26日记录在案，原告现要求对缺席被告作出缺席判决；已考虑过原告的动议及支持文件，显示了良好因由，根据《联邦民事诉讼规则》第54（a）、第55(b)(2)款、第58(a)款及第65(b)款

规则，特此命令、判决并裁定作出如下判决：1．被告就总额为1，800，000．00美元金额，含560,000美元特别损害赔偿金及1，240，000美元惩罚性损害赔偿金，承担连带责任。2.收到了亲手或其它方式送达的实际通知的被告及其代理人被禁止：(a)处置任何收入、资产或不动产；(b)从不动产剥离资产净值；(c)除非被告和他们的代理已取得法庭命令授权这种交易或处置，从他们控制的任何银行账户转出任何资金。日期：2018年7月30日。

在本案审理过程中，经申请人王安勤申请，本院于2019年3月27日作出(2019)粤01协外认3号民事裁定书，冻结曾芳名下价值人民币12312000元的银行存款或查封、扣押其他等值财产。申请人王安勤预交财产保全费5000元。

本院认为：本案为申请承认和执行外国民商事判决。本案涉及当事人向我国法院申请承认和执行美国加利福尼亚州中区美国地区法院（UNITEDSTATESDISTRICTCOURTFORTHECENTRALDISTRICTOFCALIFORNIA）作出编号：CaseNo.CV–17–08936–MWF（RAOx）民事判决。《中华人民共和国民事诉讼法》第二百八十九条（自2022年1月1日起施行）规定："人民法院对申请或者请求承认和执行的外国法院作出的发生法律效力的判决、裁定，依照中华人民共和国缔结或者参加的国际条约,或者按照互惠原则进行审查后，认为不违反中华人民共和国法律的基本原则或者国家主权、安全、社会公共利益的，裁定承认其效力。"我国与美国没有缔结或者共同参加关于相互承认和执行民商事判决的国际条约，因此，应当按照互惠原则进行审查。经审查，本案当事人已提交美国法院承认和执行我国法院民商事判决的有效案例，承认本案所涉美国法院判决不违反我国法律的基本原则，也不会损害我国国家主权、安全、社会公共利益，因此，本案可以根据互惠原则承认和执行案涉美国法院民事判决，但对其中明显超出实际损失的惩罚性赔偿金部分，不予承认和执行。即部分承认和执行美国加利福尼亚州中区美国地区法院（UNITEDSTATESDISTRICTCOURTFORTHECENTRALDISTRICTOFCALIFORNIA）编号：CaseNo.CV–17–08936–MWF（RAOx）民事判决，承认和执行该民事判决部分主文：被告加州投资移民基金有限公司、陈莹莹、美国夏利士律师集团有限公司、陈达、ZHENGCHANG、曾芳、夏利士集团有限合伙就560,000.00美元特别损害赔偿金承担连带责任。

至于申请人王安勤主张的保全保险费、执行费应由曾芳负担的问题，因保全保险费并非本案必然发生的费用，且执行上述美国民事判决产生的执行费用尚未发生，当事人可在执行阶段另行计付和处理，故本院对申请人王安勤的该项主张不予支持。

综上所述，申请人王安勤申请承认和执行符合《中华人民共和国民事诉讼法》第二百八十九条（自2022年1月1日起施行）的规定，案涉美国民商事判决应予部分承认和执行。依照《中华人民共和国民事诉讼法》第二百八十九条（自2022年1月1日起施行）的规定，经报请广东省高级人民法院、最高人民法院批复，裁定如下：

对美国加利福尼亚州中区美国地区法院（UNITEDSTATESDISTRICTCOURTFORTHECENTRALDISTRICTOFCALIFORNIA）编号：

CaseNo.CV–17–08936–MWF（RAOx）民事判决予以部分承认和执行。承认和执行该民事判决部分主文：被告加州投资移民基金有限公司、陈莹莹、美国夏利士律师集团有限公司、陈达、ZHENGCHANG、曾芳、夏利士集团有限合伙就560,000.00美元特别损害赔偿金承担连带责任。

本案申请费人民币500元，财产保全费人民币5000元，均由被申请人曾芳负担。

审判长　罗　　毅

审判员　张　　宾

审判员　陈晓红

二〇二二年三月四日

书记员　黄绍朗

伍静怡

陈蕴琦

夏叶青、曾芳申请承认和执行外国法院民事判决、裁定承认与执行申请审查国际司法协助裁定书

案　　由　　　　　　案　　号粤01协外认22号">（2019）粤01协外认22号
发布日期2022–03–22　　　浏览次数632

中华人民共和国
广东省广州市中级人民法院
民 事 裁 定 书

（2019）粤01协外认22号

申请人：夏叶青（英文名：YEQINGXIA），男，1955年12月23日出生，汉族，住云南省昆明市五华区。

委托代理人：吕翔，云南德范律师事务所律师。

委托代理人：吴鹏，云南德范律师事务所律师。

被申请人：曾芳（英文名：FANGZENG），女，1968年8月11日出生，汉族，住广东省广州市越秀区。

委托代理人：申武潮，广东威戈律师事务所律师。

申请人夏叶青（英文名：YEQINGXIA）与被申请人曾芳（英文名：FANGZENG）申请承认和执行美国加利福尼亚州洛杉矶县高等法院（SUPERIORCOURTOFCALIFORNIA,COUNTYOFLOSANGELES）作出的案件号为BC661793民事判决纠纷一案，本院受理后依法组成合议庭进行了审查，组织当事人进行了询问，现已审查终结。

申请人夏叶青申请称，1.请求承认和执行美国加利福尼亚州洛杉矶县高等法院于2018年5月15日作出的案件号为BC661793的民事判决；2.请求依据美国加利福尼亚州洛杉矶县高等法院于2018年5月15日作出的案件号为BC661793的民事判决内容，强制曾芳给付夏叶青2**.017375万美元赔偿（按2019年4月1日美元兑人民币汇率6.7057，折合人民币1381.5万元）和自2018年5月15日起至赔偿款全部清偿完毕的逾期利息；3.判令曾芳承担本案的诉讼费、保全费、保全保险费和执行费。事实和理由：夏叶青系美国CIIF移民诈骗案件的受害人之一，曾芳策划诱导夏叶青及其他人每人投资50万美元到所谓的洛杉矶EB–5房地产投资项目中，该些项目实际是假的，投资资金则被加利福尼亚投资移民基金公司（简称CIIF）和曾芳等人窃取、占为己有。2017年5月19日，包括夏叶青在内的多名原告向美国加利福尼亚州洛杉矶县高等法院提起了对包括曾芳在内的多名涉案被告的诉讼，案号为BC661793，美国加利福尼亚州洛杉矶县高等法院对包括曾芳在内的多名被告进行了传唤，于2018年5月15日作出民事判决，判令全部被告向夏叶青承担共同赔偿206.017375万美元的责任。该判决已进行了备案登记，因曾芳及其他被告未在美国相关法律规定的期限内提出上诉或申请撤销，现BC661793号判决已发生法律效力，但夏叶青至今未获得任何赔偿。曾芳宣称其在CIIF担任董事长职务，参与、策划和实施了整个EB-5项目的欺诈行为，且在美国加利福尼亚州拥有大量的不动产，根据美国相关法律规定，美国加利福尼亚州洛杉矶县高等法院对曾芳享有管辖权，该法院作出的BC661793号判决未违反我国法律的基本原则和国家主权、领土完整、安全及社会利益。综上，根据美国与我国相互承认和执行民事判决的互惠原则及《中华人民共和国民事诉讼法》等有关法律的规定，曾芳作为BC661793号判决的被告之一，现居住在广州市越秀区建设大道8号之一3001房，在中国有可供执行的财产，广州市中级人民法院具备管辖本案的法定条件。现夏叶青申请承认和执行美国加利福尼亚州洛杉矶县高等法院作出的案件号为BC661793的民事判决，请求法院予以支持。

被申请人曾芳答辩称：其不同意夏叶青的申请，夏叶青的申请缺乏足够的事实和依据，也不符合我国法律的规定。第一，承认和执行外国法院民事判决、裁定是两个主体，只有先承认以后才能执行，夏叶青在本案中同时提出，这不符合常理，也没有法律依据。第二，夏叶青在本案中要求曾芳承担保全费缺乏依据。第三，夏叶青所提交的BC661793民事判决书，只有认证的复印件，没有提供原件，这不符合常理：因作为案件的一方当事人没有提供原件，其认为，这说明夏叶青不是该美国案件的当事人，要不就是夏叶青有可能就该案已在美国申请执行，相关判决书原件作为主张权利的原始法律凭证被美国收取。BC661793民事判决虽然经过认证，但所有的领事馆认证只对境外形成材料中签字、印章进行认证，对文件的内容不进行认证，其不认可该份判决书。第四，涉案美国法院判决书没有明确的原、被告主体信息资料，不符合我国民诉法关于诉讼案件要有明确的被告（当然包括身份信息）的规定。从BC661793民事判决看，完全无法证实该案的原、被告的基本信息，因此无法确定本案的申请人夏叶青与被申请人曾芳就是BC661793民事判决书中的原、被告。BC661793民事判决没有原告的诉讼请求的内容，也没有美国法院所查明的事实、理由、法律依据，故其对BC661793判决书的结果不予认可。BC661793民事判决也没有有关当事人的上诉权利、期限的告知事项，也没有该判决是否生效的证明。第五，关于涉案美国判决书的翻译问题。翻译牵强地把原、被告的中文名字强行与美国法院判决书的英文对应，这不是唯一的。BC661793民事判决原文中原告英文名称是YeqingXia，而申请人护照上的名字是XIAYEQING;被申请人中文名字是曾芳，与判决书上的FangZeng也无法确定是同一人；翻译件中将VICTORIACHAN直接译为陈莹莹毫无依据。根据BC661793民事判决书的中文翻译件，原告为夏叶青等，被告为加州移民公司等，均显示单一个体；而该份判决书的附件却又反映出来原告为多人、被告为包括陈莹莹、陈达、曾芳等个主体。该美国法院判决书共两页，尾部又有附件，且载明"此附件可能同其他任何司法委员会表格一同使用"，其据此认为该份判决书不符合我国法律的基本原则，不能反映以事实为依据，以法律为准绳。该判决书反映出是缺席审理判决，但在该判决书中的被告曾芳被认同为本案的被申请人曾芳，而从该判决书的内容中没有任何反映是否符合缺席审理及依法送达外国人的任何表述。第六，夏叶青申请的事实理由完全与客观事实相违背。事实上，据曾芳了解，夏叶青已取得美国绿卡。夏叶青与昆明劳伦斯中介公司签订中介合约时，双方有约定如果移民不成，夏叶青是可以向昆明劳伦斯公司主张退款。即便夏叶青投资移民不成功，其也是能找劳伦斯公司提出退款要求，而不应在美国法院主张其权利。第七，其认为，中美之间没有签订互惠协议，也没有互惠原则。从现有的个案看，双方之间有承认对方法院的判决，也有不承认对方法院的判决，不能因单个案件就确认存在互惠原则。最后，中美关系的现状，双方的国家利益、安全多方面显示国家都在保护自己，涉案美国法院判决如果被广州市中级人民法院予以认可，其认为，这不符合现阶段的国家利益和社会公共利益。综上，请求裁决不予承认该份判决。

经审查认定：美国加利福尼亚州洛杉矶县高等法院（SUPERIORCOURTOFCALIFORNIA,COUNTYOFLOSANGELES）作出案件号为BC661793关于原告夏叶青等人诉被告加州投资移民基金公司等一案的民事判决。该民事判决于2018年5月15日生效。该民事判决载明：JingWang律师代理原告夏叶青等人。原告为夏叶青等人（Plaintiffs:YEQINGXIA,anindividual。）、被告为加州投资移民基金公司、陈莹莹、陈达、曾芳等（Defendants:CaliforniaInvestmentImmigrationFund,LLC,aCaliforniaLimitedLiabilityCompany;VICTORIACHAN,ESQ,anindividual;TATCHAN,anindividual;FANGZENG,anindividual…）。该法院经缺席审判、考虑了原告的书面说明作出如下生效判决：附录5a中所提及被告必须偿付原告夏叶青：赔偿金1060000美元、诉讼费173.75美元、惩罚性损害赔偿1000000美元，总计2060173.75美元。附录5a载明：此附件可能同其他任何司法委员会表格一同使用。加州投资移民基金公司，一家加利福尼亚州的有限责任公司；陈莹莹律师；陈达，个人；曾芳，个人。[ATTACHMENT（Number）:5aCALIFORNIAINVESTMENTIMMIGRATIONFUND,LLC,aCaliforniaLimitedLiabilltyCompany;VICTORIACHAN,ESQ,anindivi（如果本附录相关条目是承担伪证罪风险做出的，则本附件中的所有说明都是承担伪证罪风险做出的。）该民事判决由司法官丹尼尔S.墨菲签署。

在本案审查过程中，经申请人夏叶青提出财产保全申请，本院作出（2019）粤01协外认22号民事裁定书，冻结被申请人曾芳所有的银行存款或查封，扣押其他等值财产。夏叶青向本院预交财产保全费人民币5000元。

本院认为：本案为申请承认和执行外国民商事判决纠纷。申请人夏叶青向本院申请承认和执行美国加利福利亚州洛杉矶县高等法院作出的案件号为BC661793民事判决。《中华人民共和国民事诉讼法》第二百八十九条（自2022年1月1日起施行）规定："人民法院对申请或者请求承认和执行的外国法院作出的发生法律效力的判决、裁定，依照中华人民共和国缔结或者参加的国际条约,或者按照互惠原则进行审查后，认为不违反中华人民共和国法律的基本原则或者国家主权、安全、社会公共利益的，裁定承认其效力……"我国与美国没有缔结或者共同参加关于相互承认和执行民商事判决的国际条约，因此，应当按照互惠原则进行审查。经审查，本案当事人已提交美国法院承认和执行我国法院民商事判决的有效案例，承认本案所涉美国法院民商事判决不违反我国法律的基本原则，也不会损害我国国家主权、安全、社会公共利益，因此，本案可以根据互惠原则承认和执行涉案美国法院民事判决，但对其中明显超出实际损失的惩罚性赔偿金部分，不予承认和执行。本院针对夏叶青的申请，对美国加利福亚州洛杉矶县高等法院（SUPERIORCOURTOFCALIFORNIA,COUNTYOFLOSANGELES）BC661793民事判决中有关损害赔偿金和诉讼费的部分主文予以承认和执行：即被告（加州投资移民基金公司、陈莹莹、陈达、曾芳）必须偿付原告夏叶青损害赔偿金1060000美元、诉讼费173.75美元。

至于夏叶青关于保全保险费、执行费应由曾芳负担的主张，因保全保险费并非本案必然发生的费用，且执行涉案BC661793民事判决产生的执行费用尚未发生，当事人可在执行阶段另行计付和处理，故本院对夏叶青的该项主张不予支持。

综上所述，申请人夏叶青申请承认和执行符合《中华人民共和国民事诉讼法》第二百八十九条（自2022年1月1日起施行）的规定，本院对涉案美国加利福亚州洛杉矶县高等法院BC661793民事判决中关于损害赔偿金、诉讼费的部分主文予以承认和执行。依照《中华人民共和国民事诉讼法》第二百八十九条（自2022年1月1日起施行）的规定，经报请广东省高级人民法院、最高人民法院批复，裁定如下：

对美国加利福亚州洛杉矶县高等法院（SUPERIORCOURTOFCALIFORNIA,COUNTYOFLOSANGELES）作出的案件号为BC661793民事判决予以部分承认和执行，承认和执行该民事判决部分主文：附录5a中所提及被告（加州投资移民基金公司、陈莹莹、陈达、曾芳）必须偿付原告夏叶青：损害赔偿金1060000美元、诉讼费173.75美元。

本案申请费人民币500元、财产保全费人民币5000元，均由被申请人曾芳负担。

审判长　罗　毅

审判员　张　宾

审判员　陈晓红

二〇二二年三月七日

书记员　伍静怡

黄绍朗

陈蕴琦

Case 1:22-cv-10833-MJJ　　Document 232-4　　Filed 05/27/26　　Page 620 of 629



司法解释理解与适用丛书

# 最高人民法院
# 新民事诉讼法司法解释
# 理解与适用

〔上〕

最高人民法院民法典贯彻实施工作领导小组办公室　编著

人 民 法 院 出 版 社

PEOPLE'S COURT PRESS

最高人民法院新民事诉讼法司法解释理解与适用 ■    十 ■

## 【条文】

### 第二百四十七条

当事人就已经提起诉讼的事项在诉讼过程中或者裁判生效后再次起诉，同时符合下列条件的，构成重复起诉：

（一）后诉与前诉的当事人相同；

（二）后诉与前诉的诉讼标的相同；

（三）后诉与前诉的诉讼请求相同，或者后诉的诉讼请求实质上否定前诉裁判结果。

当事人重复起诉的，裁定不予受理；已经受理的，裁定驳回起诉，但法律、司法解释另有规定的除外。

## 【条文主旨】

本条是关于民事诉讼中一事不再理原则及判断标准的规定。

## 【条文理解】

### 1. 本条的制定背景

一般认为，现代诉讼法上的一事不再理原则起源于罗马法上的"一案不二讼"制度。"根据当时人们的观点，所谓诉权消耗，是指所有诉权都会因诉讼系属而消耗，对同一诉权或请求权，不允许二次诉讼系属。一旦限制同一诉权或请求权只能有一次诉讼系属，那么即使允许当事人对同一案件提出诉讼请求，被告也可以实施既决案件的抗辩或者诉讼系属的抗辩，使当事人的诉讼请求不至于诉讼系属。"[1] 罗马法上的一事不再理的观念和制度对后世法律的发展产生了深远的影响。在大陆法系国家，民事诉讼法学者在对判决效力理论进行研究的基础上，逐步创造出了以既判力为核心的一事不再理原则的理论体系。大陆法系的法国、德国、日本，均在民事诉讼法上明确规定了一事不再理原则的实质内容。在普通法系国家，源于罗马法"一案不二讼"原则的既决事项作为一项诉讼的原则与先例判决、禁反言规则相配合，逐步形成了普通法系国家富有特色的一事不再理原则及规则。

无论大陆法系国家还是普通法系国家，一事不再理原则都包括两个方面的内容：其一是在诉讼系属中，阻止相同当事人再行提起后诉；其二是在判决确定后，禁止相同当事人对相同诉讼对象的再次讼争。只是由于法律传统

---

[1] 张卫平：《程序公正实现中的冲突与衡平》，成都出版社 1993 年版，第 350 页。

着裁判生效后再次起诉，

诉讼请求实质上否定前

，裁定驳回起诉，但法

准的规定。

2015 ·

于罗马法上的"一案不

，是指所有诉权都会因

诉讼系属。一旦限制同

当事人对同一案件提出

系属的抗辩，使当事人

再理的观念和制度对后世

事诉讼法学者在对判决

为核心的一事不再理原

民事诉讼法上明确规定

源于罗马法"一案不二

决、禁反言规则相配合，

及规则。

理原则都包括两个方面

提起后诉；其二是在判

争。只是由于法律传统

年版，第350页。

和思维方式的差异，普通法系国家以既决事项规则和滥用程序规则来实践一事不再理原则的内容，而大陆法系国家则通过诉讼系属效力和既判力的消极效力承担起一事不再理原则的功能。

一般认为，民事诉讼法第一百二十七条第五项"对判决、裁定、调解书已经发生法律效力的案件，当事人又起诉的，告知原告申请再审"的规定，是我国关于一事不再理原则的法律渊源。我国虽非大陆法系国家，但受大陆法系影响较深，一事不再理原则在民事诉讼实践中是不言自明的观念和普遍适用的规则。但由于关于一事不再理原则的内涵和判断标准不明确，审判实践中一事不再理原则的适用，大多凭审判人员的朴素的理解，适用的状况和效果比较混乱，实有加以规范的必要。

2. 本条内容的理解

本条借鉴大陆法系国家的理论，对一事不再理原则的适用标准作出规定。大陆法系国家遵循从主观和客观两个方面来判断一事不再理原则的构成。主观方面，即考察当事人的同一性；客观方面，即考察审理对象（诉讼对象）是否相同。这也是本条的基本思路。

（1）一事不再理原则的主观方面：当事人相同。一般而言，形式当事人和正当当事人（实质当事人、适格当事人）的区分对于一事不再理原则下确定同一当事人的范围没有意义。无论当事人在诉讼中仅为形式当事人，还是正当当事人，都要承受作为诉讼结果的判决的既判力约束，不能就相同的诉讼标的或审理对象再次提起诉讼。具有同一性的当事人包括以下六种。

一是通常当事人。通常当事人是判决效力所及的最直接的主体，因此，其受一事不再理原则的约束，自不待言。

二是诉讼担当人。诉讼担当人，是指就他人的诉讼标的的权利义务有当事人的诉讼实施权，从而为他人担当诉讼的人。① 以诉讼实施权行使的依据为标准，诉讼担当可分为法定诉讼担当和任意诉讼担当两种情形。前者是指有法律特别明文规定的诉讼担当，后者是指在法律规定的范围内，通过约定的方式产生的诉讼担当。我国企业破产法规定的破产管理人、民法典合同编中的代位权人即属于法定诉讼担当人，民事诉讼法第五十六条、第五十七条规定的代表人诉讼中的诉讼代表人属于任意诉讼担当人。诉讼担当人的诉讼结果对被担当人具有约束力，在判断一事不再理的构成时，诉讼担当人与被担当人具有同一性。

---

① 参见骆永家：《既判力之研究》，我国台湾地区三民书局1999年版，第138页。

最高人民法院新民事诉讼法司法解释理解与适用 ■

三是诉讼参加人。一个诉讼提起后，原、被告双方之外的第三人参与到诉讼之中的情形，称为诉讼参加。该参加到他人诉讼中的人为诉讼参加人。我国民事诉讼法中规定的有独立请求权第三人相当于大陆法系国家的主参加人，因其以独立诉讼的方式参加到他人的诉讼之中，在诉讼中具有当事人的地位，当然受一事不再理原则的约束。我国的无独立请求权第三人在实践中则存在辅助当事人诉讼和独立诉讼两种情况。前者相当于大陆法系的从参加人，在诉讼中仅仅处于辅助地位，故不受一事不再理原则的约束；后者因其独立参加诉讼，实质上具有当事人的地位，应当受一事不再理原则的约束。

四是当事人的继受人。当事人的继受人，是指通过继受而承受诉讼标的权利义务关系，从而承受当事人地位的人。包括因自然人当事人死亡或者法人、设有代表人或管理人的非法人组织当事人合并，而发生的继受情形；也包括因法律行为或者法律规定或法院拍卖等国家公法行为而受让诉讼标的的权利义务的人。

五是为当事人或者其继受人占有请求的标的物的人。其是指在诉讼标的为以给付特定物为目的的请求权时，如该特定物被诉讼外的他人为当事人或其继受人占有而非为自己占有的情形。

六是既判力效力所及的一般第三人。其主要指在有关身份关系的人事诉讼和公司关系的诉讼中所作出的具有形成效力的判决，具有对世效力，在原告胜诉时任何人均不得再次起诉。

（2）一事不再理原则的客观方面：诉讼对象的同一性。一事不再理原则的客观方面，即所谓一事不再理中"一事"的问题，是一事不再理原则的核心问题。它是一事不再理原则中最为核心和本质的内容。诉讼对象又称诉讼标的或诉讼物，是指法院在民事诉讼中审理和判断的对象。关于诉讼标的，存在多种理论上的学说，概括起来大致有实体法诉讼标的理论（旧实体法说）、新诉讼标的理论（诉讼法说，包括二分肢说、一分肢说等）、新实体法说、诉讼标的相对论等观点。不同的诉讼标的理论决定着对诉讼内容不同的理解，也决定着一事不再理原则的作用范围。我们认为，依实体法诉讼标的的理论来理解，比较符合我国民事诉讼的实际状况。实体法诉讼标的的理论（旧实体法说）从实体法上的请求权出发来界定诉讼标的，认为诉讼标的乃是原告在诉讼上所为一定具体实体法之权利主张。原告起诉时，在诉状中必须具体表明其所主张之实体权利或法律关系。这与我国民事诉讼实践中长期以来对审判对象的理解是一致的。将诉讼标的理解为当事人在实体法上的权利义务或者法律关系，简便易行，法院审理范围十分明确，诉讼程序秩序稳

定，当事人攻击防御目标集中。至于旧实体法说中遭到批判的请求权竞合情况下出现复数诉讼标的的问题，可以结合实体法的规定，通过诉讼法上的特别处理加以解决。至于当事人一次纠纷不能一次性解决的问题，则可以通过扩展法官释明义务，在一定程度上予以缓解。旧实体法说所具有的这种优势及其与我国民事诉讼实践需求的契合度，是其他诉讼标的理论所无法比拟的。

诉讼请求是建立在诉讼标的的基础上的具体声明，在采旧实体法说理解诉讼标的的前提下，具体的请求内容对于诉讼中识别诉讼标的及厘清其范围具有实际意义。因此，本条将诉讼请求的同一性也作为一事不再理原则适用的判断标准。本条第一款第三项中的"后诉的诉讼请求实质上否定前诉裁判结果"主要是指后诉提起相反请求的情况。

**【审判实践中应当注意的问题】**

第一，当事人相同，不受当事人在前诉与后诉中的诉讼地位的影响，即使前后诉原告和被告地位完全相反，仍然应当认定当事人为同一。[1] 例如，甲起诉乙要求确认房屋所有权，乙又起诉甲同样要求就房屋使用权进行确认，两诉之间的当事人是相同的。

第二，在前诉与后诉当事人相同、诉讼标的同一的情形下，后诉提起与前诉相反的诉讼请求的，如甲起诉乙请求确认法律关系有效，乙又起诉甲请求确认法律关系无效的，构成一事不再理。

第三，一般而言，给付之诉中隐含确认之诉的内容，如果甲起诉乙请求依法律关系进行给付，乙又起诉甲请求确认法律关系无效的，属于后诉的请求实质上否定前诉裁判结果的情形。

**【条文】**

**第二百四十八条**

裁判发生法律效力后，发生新的事实，当事人再次提起诉讼的，人民法院应当依法受理。

**【条文主旨】**

本条是关于不适用一事不再理原则的情况的规定。

---

[1] 参见陈荣宗、林庆苗：《民事诉讼法》，我国台湾地区三民书局 1996 年版，第 388 页。

## 【条文理解】

一事不再理原则是民事诉讼的基本原则，其基本要求是裁判发生法律效力后，当事人不得对争议事实再次提起诉讼。我国民事诉讼法对一事不再理原则并未明确规定。一般认为，民事诉讼法第一百二十七条第五项"对判决、裁定、调解书已经发生法律效力的案件，当事人又起诉的，告知原告申请再审"的规定，是一事不再理原则在我国法律上的渊源。然而，理论和经验表明，任何法律制度设计的原则通常都存在例外，一事不再理原则也应当如此。因此，应允许不适用一事不再理原则的情况存在。从法律及司法解释的相关规定看，民事诉讼法第一百二十七条规定："人民法院对下列起诉，分别情形，予以处理：……（七）判决不准离婚和调解和好的离婚案件，判决、调解维持收养关系的案件，没有新情况、新理由，原告在六个月内又起诉的，不予受理。"上述规定体现了不适用一事不再理原则的内容。故裁判发生法律效力后，发生新的事实，应当允许当事人再次提起诉讼解决争议，而对于当事人基于新的事实而提起的诉讼，人民法院应当依法受理。

本条是关于不适用一事不再理原则的情况的规定。当事人再次提起诉讼的条件为发生新的事实。从民事诉讼法理论上看，判决生效后，当事人不得就已经判决的同一案件再行起诉，即判决具有既判力。而从既判力的效力范围看，既判力具有主观范围、客观范围和时间范围。既判力的时间范围，即既判力的基准时或标准时，是法院确定终局判决所判断的当事人之间诉争事实状态或权利状态存在的特定时间点。既判力基准时所针对的是确定判决对所判断事项产生既判力的时间点问题。从大陆法系的理论主张看，通说认为，"发生既判力的判决只确认特定时刻的权利状态，而不是确认所有未来的权利状态……涉及实质既判力的时刻与双方当事人在诉讼进行中能提起新的事实主张的截止时刻相同"①。也就是说，既判力的基准时为"事实审言词辩论终结时"。因确定判决是对特定时点上当事人之间的实体法律关系状态的判断，故确定判决仅对基准时之前发生的事项具有既判力，对基准时之后的事项没有既判力。基准时后发生新的事实，不受既判力的拘束，当事人可再次提起诉讼。

从我国民事诉讼法的规定看，在"有错必纠"司法观念的影响下，既判力制度在民事诉讼法上未有明确规定。因既判力决定着一事不再理原则作用的范围，在既判力制度缺位的情况下，一事不再理原则的效力范围较难以明

---

① ［德］奥特马·尧厄尼希：《民事诉讼法》，周翠译，法律出版社2003年版，第332页。

确，亦导致审判实践中对一事不再理原则适用的不一致。在此情况下，结合司法实践，并借鉴域外既判力基准时的相关理论，本条对不适用一事不再理原则的情况进行了规定。本条明确了裁判发生法律效力后，发生新的事实，当事人再次提起诉讼的，不适用一事不再理原则，人民法院应当依法受理。因确定判决仅对基准时之前发生的事项具有既判力，对基准时之后的事项没有既判力。裁判发生法律效力后发生新的事实，为既判力基准时之后发生，并未被生效判决所确认，不在诉讼系属中，亦不应受既判力的拘束。因发生了新的事实，从而使确定判决所认定的权利发生变动，当事人基于该事实再次提起的诉讼，不适用一事不再理原则，法院对此应予以受理。

需注意的是，新的事实为生效裁判发生法律效力后发生的事实，而不是原生效裁判未查明或涉及的事实，亦不是当事人在原审中未提出的事实。应当指出的是，原审结束前就已经存在的事实，当事人应当主张而未主张的事实，也不属于新的事实。

### 【审判实践中应当注意的问题】

实务中，在裁判发生法律效力后，当事人以发生新的事实为由，再次向法院提起诉讼的，人民法院对原告的起诉应当依法受理。但当事人的起诉应符合民事诉讼法规定的起诉和受理的条件，人民法院对此也应当依法进行审查。人民法院的审查仅是一种形式审查，仅审查"新的事实"是否有证据，至于该"新的事实"是否属实，在起诉的受理阶段无须审查，而有待受理后进行审查处理。当事人主张的新的事实不成立的，人民法院应裁定驳回起诉。

### 【条文】

#### 第二百四十九条

在诉讼中，争议的民事权利义务转移的，不影响当事人的诉讼主体资格和诉讼地位。人民法院作出的发生法律效力的判决、裁定对受让人具有拘束力。

受让人申请以无独立请求权的第三人身份参加诉讼的，人民法院可予准许。受让人申请替代当事人承担诉讼的，人民法院可以根据案件的具体情况决定是否准许；不予准许的，可以追加其为无独立请求权的第三人。

### 【条文主旨】

本条是关于当事人恒定和诉讼承继原则的规定。

图书在版编目（CIP）数据

最高人民法院新民事诉讼法司法解释理解与适用 /
最高人民法院民法典贯彻实施工作领导小组办公室编著
. -- 北京：人民法院出版社，2022.6
（司法解释理解与适用丛书）
ISBN 978-7-5109-3511-4

Ⅰ. ①最… Ⅱ. ①最… Ⅲ. ①民事诉讼法—法律解释
—中国②民事诉讼法—法律适用—中国 Ⅳ.
①D925. 105

中国版本图书馆 CIP 数据核字（2022）第 085111 号

**最高人民法院新民事诉讼法司法解释理解与适用**
最高人民法院民法典贯彻实施工作领导小组办公室　编著

| | |
|---|---|
| 策划编辑 | 陈建德　兰丽专 |
| 责任编辑 | 丁丽娜　路建华　张　奎　丁寨峨　李　倩 |
| 执行编辑 | 郭　粹　杨晓燕　杨　洁　赵杰琼 |
| 出版发行 | 人民法院出版社 |
| 地　址 | 北京市东城区东交民巷 27 号（100745） |
| 电　话 | （010）67550608（责任编辑）　67550558（发行部查询）<br>65223677（读者服务部） |
| 客服 QQ | 2092078039 |
| 网　址 | http://www.courtbook.com.cn |
| E - mail | courtbook@sina.com |
| 印　刷 | 三河市国英印务有限公司 |
| 经　销 | 新华书店 |

| | |
|---|---|
| 开　本 | 787 毫米×1092 毫米　1/16 |
| 字　数 | 1520 千字 |
| 印　张 | 82.25 |
| 版　次 | 2022 年 6 月第 1 版　2022 年 10 月第 3 次印刷 |
| 书　号 | ISBN 978-7-5109-3511-4 |
| 定　价 | 278.00 元（上下册） |

版权所有　侵权必究

## 最高人民法院

### 民法典贯彻实施工作领导小组

| 组　　　长 | 周　强 |
|---|---|
| 常务副组长 | 贺　荣 |

副　组　长　陶凯元　杨万明　杨临萍　贺小荣　刘贵祥

成　　　员　（按机构排序）

郭竞坤　董文濮　钱晓晨　郑学林　林文学

林广海　王淑梅　刘竹梅　于厚森　韩维中

孔　玲　何东宁　郭　锋　赵晋山　李广宇

胡仕浩　祝二军　马　岩　陈宜芳　郝银钟

高晓力　邬中林　孙晓勇

### 办公室

| 主　　任 | 杨万明　刘贵祥 |
|---|---|
| 副主任 | 郭　锋　杨永清 |

成　　　员　丁广宇　周伦军　陈龙业

### 《最高人民法院新民事诉讼法
### 司法解释理解与适用》

执行编委　郭　锋　陈龙业　贾玉慧　牛晓煜



"法信"书享账号邀请码



### 最高人民法院
# 新民事诉讼法司法解释
## 理解与适用

本书主要有以下特点：一是准确对标民事诉讼法最新规定。紧紧围绕修改后民事诉讼法立法精神以及人民法院繁简分流改革工作最新成果对《民事诉讼法解释》有关内容进行阐释，准确分析新形势下相关司法解释条文的具体内涵和适用要点，确保民事诉讼法得到正确贯彻实施。二是全面融入立法、司法最新成果。对所引用法律、司法解释进行全面更新，同时将近年来审判实践中所取得的最新成果编入其中，增强本书的精准性、指导性和权威性。三是保留司法解释条文的起草背景和具体考量。在注重更新的同时，也非常重视对原有成果的承继，确保对司法解释条文进行全方位解读，增强本书的理论性和实用性。


人民法院出版社


懂法.更懂法律人


中国审判杂志


东方法律



ISBN 978-7-5109-3511-4

9 787510 935114 >

定价：278.00元（上下册）

策划编辑：陈建德　兰丽专
责任编辑：丁丽娜　路建华　张　奎　丁塞峨　李　倩
执行编辑：郭　粹　杨晓燕　杨　洁　赵杰琼

天平文创视觉设计　——　封面设计 Cover Design