**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SUNCO TIMBER (KUNSHAN) CO., LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 1:22-cv-10833-MJJ |
| | ) |
| LINDA SUN, individually, DAVID SUN, individually | ) |
| SHILLOCK YUAN-SUN, individually, and INFINITY | ) **MEMORANDUM OF LAW (1) IN** |
| WOOD PRODUCTS, LLC., | ) **OPPOSITION TO PLAINTIFF'S** |
| | ) **MOTION FOR SUMMARY** |
| Defendants, | ) **JUDGMENT AND (2)** |
| | ) **IN SUPPORT OF DEFENDANTS** |
| SUNCO, INC., EASTMAN ST. DISTRIBUTORS LLC, | ) **DAVID SUN, SHILLOCK YUAN-SUN,** |
| EASTMAN ST. WOODWORKS, INC., | ) **INFINITY WOOD PRODUCTS, LLC,** |
| INFINITY REALTY COMPANY LLC, and | ) **SUNCO, INC., EASTMAN ST.** |
| NEW SUN LIMITED PARTNERSHIP | ) **DISTRIBUTORS LLC, EASTMAN ST.** |
| | ) **WOODWORKS, INC., AND INFINITY** |
| Reach and Apply Defendants, and | ) **REALTY COMPANY'S MOTION FOR** |
| Fraudulent Conveyance Defendants | ) **SUMMARY JUDGMENT** |
| | ) |
| | ) |
| Linda Sun | ) |
| | ) |
| Counterclaim Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Sunco Timber (Kunshan) Co., Ltd. | ) |
| | ) |
| Counterclaim Defendant. | ) |
| | ) |
| Sunco, Inc. | ) |
| | ) |
| Counterclaim Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Sunco Timber (Kunshan) Co., Ltd. | ) |
| | ) |
| Counterclaim Defendant. | ) |
| | ) |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................3

    I.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
        CONTRACT, and quasi-contract claims ...............................................................3

        A.   Plaintiff's Veil-Piercing Claim Presents No Genuine Dispute of Material
             Fact.....................................................................................................................3

            1.   Legal Standard ..........................................................................................3

            2.   Plaintiff's Veil-Piercing Claims Against David and Shillock Must Be
                Dismissed Because David and Shillock Are Not Owners of IWP..........................5

            3.   Plaintiff is Precluded by the Court's Sanctions Order from Relying upon
                Facts it did not Disclose at its Deposition...............................................................6

            4.   Plaintiff's Veil-Piercing Claim is Unsupported by Facts ......................................7

        B.   Plaintiff's Fraudulent-Transfer and Reach-and-Apply Claims Must be
             Dismissed .........................................................................................................18

            1.   Legal Standard ........................................................................................18

            2.   Plaintiff's Fraudulent-Transfer and Reach-and-Apply Claims Fail
                Because Plaintiff Disclosed No Alleged Factual Basis for Such Claims
                at Deposition ................................................................................................19

            3.   Plaintiff's Fraudulent-Transfer and Reach-and-Apply Claims Fail as a
                Matter of Law ...........................................................................................19

        C.   IWP is Entitled to Summary Judgment on Plaintiff's Breach-of-Contract
             Claim...............................................................................................................21

            1.   Applicable Law ........................................................................................21

            2.   IWP is Entitled to Summary Judgment on its Affirmative Defense to
                Plaintiff's Breach-of-Contract Claim.................................................................22

            3.   Even Were Plaintiff Not Precluded from Relying on Evidence it Failed
                to Disclose at its Rule 30(b)(6) Deposition, at a Minimum, There Exists
                a Triable Issue of Fact.................................................................................23

        D.   Plaintiff's Promissory-Estoppel, Quantum-Meruit, and Money-Had-and-
             Received Claims Fail as a Matter of Law............................................................25

    II.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON SUNCO US'S
        COUNTERCLAIMS MUST BE DENIED.........................................................25

    CONCLUSION................................................................................................................30

**TABLE OF AUTHORITIES**

Cases

*After Dark, Inc. v. United States*, No. 67-272-CIV-T, 1969 WL 179 (M.D. Fla. Dec. 4, 1969) ..................................................................................................................... 11

*Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516 (S.D.N.Y. 2014) ..................................................................................................................... 16

*Am. Well Corp. v. Indegene Ltd.*, 761 F. Supp. 3d 249 (D. Mass. 2024) ...................................... 4, 15

*Asante Techs., Inc. v. PMC-Sierra, Inc.*, 164 F. Supp. 2d 1142 (N.D. Cal. 2001) ............................ 21

*Birbara v. Locke,* 99 F.3d 1233 (1st Cir.1996) ................................................................. 3, 5

*Delta MB LLC v. 271 S. Broadway, LLC*, 2024 WL 3826113 (D.N.H. Aug. 15, 2024) ................... 17

*Edwards Co. v. Monogram Indus., Inc.*, 730 F.2d 977 (5th Cir. 1984) ............................................. 11

*Egan v. Tenet Health Care*, 193 F. Supp. 3d 73 (D. Mass. 2016) ...................................................... 15

*Evans v. Multicon Const. Corp.*, 30 Mass. App. Ct. 728 (1991) ....................................................... 3, 4

*George Hyman Const. Co. v. Gateman*, 16 F. Supp. 2d 129 (D. Mass. 1998) ....................... 12, 16, 17

*Hiller Cranberry Prods., Inc. v. Koplovsky*, 165 F.3d 1 (1st Cir. 1999) ............................................... 4

*Kraft Power Corp. v. Merrill*, 464 Mass. 145 (2013) ........................................................................... 6

*Miller v. Honda Motor Co.*, 779 F.2d 769 (1st Cir. 1985) .................................................................... 5

*Motorsport Eng'g, Inc. v. Maserati SPA*, 316 F.3d 26 (1st Cir. 2002) ................................................. 5

*Motorsport Eng'g, Inc. v. Maserati, S.p.A.*, 183 F. Supp. 2d 209 (D. Mass. 2001) ............................ 5

*My Bread Baking Co. v. Cumberland Farms, Inc.,* 353 Mass. 614 (1968) ................................... 3, 12

*New World Trading Co. v. 2 Feet Prods., Inc.*, No. 11 CIV. 6219 SAS, 2014 WL 2039138 (S.D.N.Y. May 16, 2014) ...................................................................... 21

*New World Trading v. 2 Feet Prods.*, 652 F. App'x 65 (2d Cir. 2016) .............................................. 21

*Norfolk S. Ry. Co. v. Power Source Supply, Inc.*, No. CIV.A. 06-58 J, 2008 WL 2884102 (W.D. Pa. July 25, 2008) ........................................................................ 22

*Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986 (N.D. Ill. 2017) (quoting CISG Art. 8(1) .............................................................................................. 22

*Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*, 754 F.2d 10 (1st Cir. 1985) ................................. 4

*Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118 (1st Cir. 2006). .................................. 4, 11, 15

*Rosen v. Stumpo*, No. CV 06-12191-GAO, 2010 WL 11937174 (D. Mass. Jan. 29, 2010) .............. 27

*Scott v. Harris*, 550 U.S. 372 (2007) ................................................................................................ 11

*Scott v. NG U.S. 1, Inc.*, 450 Mass. 760 (2008) ............................................................................ 5, 11

*Tax-Free Fixed Income Fund for Puerto Rico Residents, Inc. v. Ocean Cap. LLC*, 137 F.4th 6 (1st Cir. 2025) .................................................................................. 18

*Trenwick Am. Reinsurance Corp. v. IRC, Inc.*, 764 F. Supp. 2d 274 (D. Mass. 2011) ........................ 4

*Watts v. Liberty Mut. Pers. Ins. Co.*, No. CV 23-12845-BEM, 2025 WL 2576800 (D. Mass. Sept. 5, 2025) ....................................................................................................... 17

Statutes

Mass. Gen. Laws c. 109A, § 5 ............................................................................................... 19
Mass. Gen. Laws c. 260, § 13 ............................................................................................... 27

**INTRODUCTION**

Four years into this litigation, it is clear that Plaintiff has no case for any of its claims against the Moving Defendants.[1]  Accordingly, Plaintiff's motion for summary judgment on those claims should be denied and Moving Defendants' cross-motion for summary judgment on those claims should be granted.

The counterclaims of Defendant Sunco, Inc. ("Sunco US"), which arise from Plaintiff's failure to repay a loan, raise disputed issues of fact and, accordingly, Plaintiff's motion for summary judgment on those counterclaims should be denied, and those claims should be tried.

\* \* \*

Plaintiff argues that Defendants rely upon a "confusing web of interconnected entities that they operated as one single enterprise."  Mem. at 3.  It is Plaintiff, however, that attempts to create a confusing web by assiduously avoiding specific allegations supported by specific facts relating to specific entities and instead relying upon the use of adjectives, not facts, to attempt to paint a picture of nefariousness.  When one looks at the actual facts, however, one observes a common, legitimate use of corporate law in the creation of different entities to perform different functions, entities that, with a single exception, were created – and continued in operation – long before the alleged malfeasance in this case.  Plaintiff is counting on inflammatory language in the hopes that it will generate enough smoke to obscure the fact that it has no evidence to support its claims.  That smoke may have sufficed at the motion-to-dismiss stage.  It is deficient on summary judgement.

Throughout the course of discovery in this matter, Defendants attempted to obtain from Plaintiff the *factual bases* for its allegations, and Defendants were stymied at every turn through

---

[1]  This Memorandum supports the Motion for Summary Judgment of all defendants other than New Sun Limited Partnership ("NST") and Linda Sun, who are separately represented by Rubin and Rudman.

threadbare allegations in the Amended Complaint, vague and non-specific answers in response to those interrogatories from the Defendants that Plaintiff did answer, and a complete failure to respond at all to the interrogatories served by Eastman St. Distributors, LLC ("ESD"), Eastman St. Woodworks, Inc. ("ESW"), and Infinity Realty Company, LLC ("IRC").  At Plaintiff's deposition, its witnesses deflected, filibustered, and asserted the attorney-client privilege in order to avoid answering the most-basic questions concerning the *factual bases* for Plaintiff's claims. [2]

Now that fact discovery is closed and Plaintiff has filed its motion for summary judgment ("Plaintiff's Motion for Summary Judgment" or "PMSJ"), the reason is clear: Plaintiff's non-contract claims lack any factual or evidentiary basis.  It is Plaintiff, not Defendants, that ignores the corporate form, claiming fraudulent transfers from non-debtor entities to other non-debtor entities, and seeking to assert reach-and-apply claims to entities without ever even *attempting* to show that such entities are in possession of assets belonging to the alleged debtor, i.e., Infinity Wood Products LLC ("IWP").  Plaintiff seeks to have the corporate veil of IWP pierced to reach the individual defendants – none of whom actually has an ownership interest in IWP – by pointing to alleged activities of other Defendants, not IWP.  Plaintiff has played hide-and-seek long enough.  The time has come for Plaintiff to show evidence of *actual facts* that support its claims.  It cannot do so.

Additionally, because Plaintiff is precluded from introducing any evidence that rebuts IWP's defense to Plaintiff's breach-of-contract claim that it failed to disclose in its Fed.R.Civ.P. Rule 30(b)(6) deposition and because Plaintiff failed to disclose any evidence rebutting such

---

[2] Notably, and surprisingly, absent from Plaintiff's Memorandum and its Statement of Material Facts is any reference to Plaintiff's accounting expert, Zijing Chang.  When Defendants asked Plaintiff's witness about the factual bases for, *inter alia*, its veil-piercing, fraudulent-transfer, and reach-and-apply claims, Plaintiff's counsel argued that Plaintiff's invocation of the attorney-client privilege over such facts was appropriate because Plaintiff would provide the factual bases for its claims in Ms. Chang's report.  In opposing Defendants' Motion for Sanctions, Plaintiff argued, "[t]he detailed facts and analysis can only and will be provided an expert CPA."  Doc. No. 204 at 9-10.

defense at its deposition, IWP's defense is uncontested. Accordingly, summary judgment on all Plaintiff's claims should be granted in the Moving Defendants favor and Plaintiff's Amended Complaint against the Moving Defendants must be dismissed.

In addition, Plaintiff's motion for summary judgment on Sunco US's counterclaims must be denied because genuine disputes of material fact exist concerning those claims.

## ARGUMENT

### I. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S VEIL-PIERCING, FRAUDULENT-TRANSFER, REACH-AND-APPLY, BREACH-OF-CONTRACT, AND QUASI-CONTRACT CLAIMS

#### A. Plaintiff's Veil-Piercing Claim Presents No Genuine Dispute of Material Fact

Plaintiff asserts a claim for piercing the corporate veil of IWP against IWP, David Sun ("David"), Shillock Yuan-Sun ("Shillock"), and Linda Sun ("Linda"). Defendants IWP, David, and Shillock are entitled to summary judgment in their favor for the reasons set forth below.

##### 1. Legal Standard

"[U]nder Massachusetts law, the corporate veil will only be pierced in rare situations." *Birbara v. Locke,* 99 F.3d 1233, 1239 (1st Cir.1996). "Occasion for doing so arises when (1) there is active and pervasive control of related business entities by the same controlling persons *and* there is a fraudulent or injurious consequence by reason of the relationship among those business entities; or (2) there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." *Evans v. Multicon Const. Corp.*, 30 Mass. App. Ct. 728, 732–33 (1991) (emphasis in original) (internal citations and quotations omitted). "Massachusetts has been somewhat more 'strict' than other jurisdictions in respecting the separate entities of different corporations." *Birbara*, 99 F.3d at 1238 (1st Cir. 1996) (quoting *My Bread Baking Co. v.*

3

*Cumberland Farms, Inc.,* 353 Mass. 614 (1968)). "In order for a court to disregard separate corporate entities, a plaintiff must meet a very high standard." *Hiller Cranberry Prods., Inc. v. Koplovsky*, 165 F.3d 1, 9 (1st Cir. 1999).

In determining whether to disregard the corporate form, the Court must consider the so-called *Pepsi-Cola* factors, which the First Circuit has set forth as:

> (1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud.

*Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 128 (1st Cir. 2006). "No one factor or combination of factors is determinative and there is a very high burden for Plaintiff to meet for the Court to ignore corporate form." *Am. Well Corp. v. Indegene Ltd.*, 761 F. Supp. 3d 249, 257 (D. Mass. 2024). "[T]he exercise is, of course, not one in counting. One examines the twelve factors to form an opinion whether the over-all structure and operation misleads… such that corporate identities are confused and third parties cannot be quite certain with what they are dealing." *Evans v. Multicon Const. Corp.*, 30 Mass. App. Ct. 728, 736 (1991).

A necessary factor in assessing a veil-piercing claim is whether the plaintiff itself was confused or misled by the alleged improper corporate management. Without such a showing, a veil-piercing claim fails. *See, e.g.*, *Platten.*, 437 F.3d at 129 (finding that where "plaintiffs have never alleged that *they* were confused about the identity of the legal entity with which they were contracting" and "Plaintiffs were never misled about which corporate entity ... was obligated to them or was dealing with them," a veil-piercing claim was not made." (emphasis in original)) *See also Trenwick Am. Reinsurance Corp. v. IRC, Inc.*, 764 F. Supp. 2d 274, 304 (D. Mass. 2011)

4

(Gertner, J.) ("a lack of confusion on the part of the other contracting parties precludes veil-piercing").

Further, as the Massachusetts SJC has explained, "the injured party must show some connection between its injury and the [defendant]'s improper manner of doing business—without that connection, even when the parent exercises domination and control over the subsidiary, corporate separateness will be recognized." *Scott v. NG U.S. 1, Inc.*, 450 Mass. 760, 767 (2008).[3] Undoubtedly because of that focus on whether a plaintiff was confused concerning with which entity it was dealing, "[s]everal courts and commentators have suggested that it should be more difficult to pierce the veil in a contract case than in a tort case." *Birbara*, 99 F.3d at 1238.

The First Circuit has made clear that "there is nothing fraudulent or against public policy in limiting one's liability by the appropriate use of corporate insulation." *Miller v. Honda Motor Co.*, 779 F.2d 769, 773 (1st Cir. 1985). That applies with even more force when the shareholder to whom a plaintiff seeks to pierce the corporate veil is an individual. *See, e.g.*, *Birbara*, 99 F.3d at 1237 n.3 ("courts have evinced a greater willingness to reach the assets of corporate as opposed to personal shareholders." (quotations omitted)).

**2. Plaintiff's Veil-Piercing Claims Against David and Shillock Must Be Dismissed Because David and Shillock Are Not Owners of IWP**

Before even getting to the merits of Plaintiff's claims, Defendants David and Shillock are entitled to summary judgment on Plaintiff's veil-piercing claim because they are not members of IWP, and Plaintiff has adduced no evidence to demonstrate that they are.

---

[3] *See also Motorsport Eng'g, Inc. v. Maserati, S.p.A.*, 183 F. Supp. 2d 209, 217 (D. Mass. 2001), *aff'd sub nom. Motorsport Eng'g, Inc. v. Maserati SPA*, 316 F.3d 26 (1st Cir. 2002) ("[plaintiff] may well have been injured by the withdrawal of [defendant] from North America, but it was not injured as a result of [one corporation] intermingling its relations with [another corporation], nor has there been any showing of fraudulent behavior.").

It is axiomatic that "the corporate veil can be pierced…to impose liability on individual *principals*." *Kraft Power Corp. v. Merrill*, 464 Mass. 145, 148 (2013) (emphasis added). The *Pepsi-Cola* factors discuss actions by the defendant corporation's *shareholders*. *Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 16 (1st Cir. 1985). The membership interests in IWP are owned *not* by David and Shillock, but by two *trusts* for which David and Shillock are each the respective trustees and among the beneficiaries. Statement of Material Facts ("SOF") ¶ 121. Plaintiff has not named the Trusts as defendants nor has it adduced any evidence or made any argument that the trust form should be disregarded to reach David and Shillock individually.

### 3. Plaintiff is Precluded by the Court's Sanctions Order from Relying upon Facts it did not Disclose at its Deposition

Moreover, Plaintiff is precluded from relying upon facts it did not disclose at its deposition and, accordingly, Plaintiff's veil-piercing claim must be dismissed for lack of evidence. Plaintiff's Rule 30(b)(6) witness did not disclose any facts when asked whether David, Shillock, or their trusts ever intermingled any funds with IWP; whether IWP kept separate and accurate corporate records; whether IWP's owners ever exercised pervasive control; whether IWP failed to observe corporate formalities; and whether Plaintiff claimed that David and Shillock ever disbursed funds from the sale of the cabinets at issue in this litigation to themselves. *Id*. ¶ 125. In addition, counsel for Plaintiff asserted the attorney-client privilege over the entirety of the factual basis for Plaintiff's veil-piercing claims, (*Id*. ¶ 126),[4] thereby depriving Defendants of the opportunity to seek the *factual* bases for those claims. When it granted portions of Defendants' Motion for Sanctions (and took the remainder under advisement), the Court ordered that "Plaintiff is precluded from

---

[4] To make completely sure that there was no misunderstanding of the assertion of privilege, undersigned counsel asked counsel for Plaintiff, "[s]o you're asserting the attorney-client privilege over the facts that form the basis for these claims?" Counsel for Plaintiff responded: "Yes." *Id*. ¶ 126.

introducing any evidence that Plaintiff failed to disclose in its Rule 30(b)(6) testimony." Because Plaintiff failed to disclose *any* factual basis for its veil-piercing claim, Plaintiff cannot introduce any such evidence at trial or summary judgment and, accordingly, its veil-piercing claim must be dismissed.

### 4. Plaintiff's Veil-Piercing Claim is Unsupported by Facts

#### a) Plaintiff Cannot Demonstrate that IWP Was Used to Promote Fraud

Even if Plaintiff had named the correct parties and was not subject to sanctions, Plaintiff's veil-piercing claim would *still* fail because Plaintiff cannot meet the high bar described above for a veil-piercing claim. To start, Sunco China cannot show that it was deceived by the corporate form, a necessary element of a veil-piercing claim.

##### (1) Plaintiff cannot articulate which individuals at Plaintiff should have been informed of the relationship between David, Shillock, and IWP

Plaintiff insists that "before 2019, Linda Sun was the only person controlling the company. She would know about" David's relationship to IWP and to Sunco US. SOF ¶ 127. When Plaintiff's Rule 30(b)(6) witness was asked who Plaintiff believed owned IWP prior to 2018, he answered "you need to ask the person in charge of Plaintiff at the time, which is Linda Sun." *Id*. ¶ 128. He testified that prior to 2018, what Linda Sun knew, Plaintiff knew (*id*. ¶ 129); that prior to 2018, Plaintiff would have known that Linda was David's mother, would have known about the relationship between David and IWP, and that Plaintiff would have known about the relationship between David and Sunco US (*id*. ¶ 130); and IWP was established for importing purposes. *Id*. ¶ 137.

Guoqing Wu, described by Plaintiff as its "principal," (*id*. F ¶ 131) testified he was aware David was Linda's son at least as early as 2014. *Id*. ¶ 131. Indeed, Mr. Wu requested David sign the share transfer agreement, transferring 52 percent of the shares of Sunco China from Sunco US to

Mr. Wu's company, a request that only makes sense if Mr. Wu knew David had a relationship with Sunco US. *Id*. ¶ 132. Mr. Wu further testified: "I don't want to gain an understanding [of David's relationship to IWP] because I have many matters of my own I need to take care of." *Id*. ¶ 133. Whether Mr. Wu's testimony that he had no idea of the entity or entities with which David was affiliated is credible, Mr. Wu and Plaintiff cannot complain that information was allegedly kept from them if they intentionally avoided such information. Similarly, Plaintiff's Rule 30(b)(6) witness on the topic of the management of Sunco China – Ruihua Xiao – testified it would have been "impossible" for Linda to inform Qiong Xiao – Ruihua's daughter and one of two other "top managers" of Sunco China – about the relationship between David, Shillock, and IWP, because Qiong Xiao was "not so important about this" and "did not work at the factory at all." *Id*. ¶ 134. Thus, Plaintiff cannot answer the fundamental question of from whom the relationship was purportedly withheld.

### (2) **IWP was established years before the alleged deception occurred**

IWP was established in *2011*, years before the alleged deception occurred, and, critically, at a time when Sunco US still owned 100 percent of Sunco China. *Id*. ¶ 135. IWP cannot, as Plaintiff claims, have been established by Sunco US in order to defraud Sunco China when Sunco US owned Sunco China. Prior to the establishment of IWP, Sunco US and Sunco China had been using a Chinese company to export cabinets from China. *Id*. ¶ 136. When issues arose with that exporter, Sunco US decided to take the import/export process in-house, but was advised that Sunco China could run into regulatory difficulties in China if it was exporting to its foreign shareholder. *Id*. ¶ 137. Accordingly, IWP was established to act as Sunco US's importer, which it did for years without incident, paying millions of dollars to Sunco China for the purchase of Sunco China cabinets. *Id*. ¶ 138.

### (3) Sunco China knew what IWP and its purpose was

There is ample evidence demonstrating that Sunco China knew exactly what IWP and its purpose was, and no evidence aside from Mr. Wu's self-serving testimony demonstrating a lack of knowledge. While the Amended Complaint claims that "[u]ntil July 2019, IWP had been Sunco [China]'s sole customer" (Doc. No. 61 ¶ 33), and disclaims any knowledge of the relationship between and among David, Linda, Shillock, IWP, and Sunco US prior to the summer of 2019, the documents tell a different story. In March 2019, Plaintiff's finance supervisor in 2018 and 2019, Gao Yueyun, sent an email to Mr. Wu[5] attaching a "Foreign Producers'/Exporters' Questionnaire"[6] from the United States International Trade Commission in which Sunco China was asked to identify "the five largest U.S. importers of your firm's wooden cabinet and vanities in 2018." SOF ¶ 139. It listed *two* entities: Infinity Wood Products, LLC and Sunco, Inc. (i.e., Sunco US) – and listed David as the contact person for both, with the same email address and phone number. *Id*. ¶ 140.

In April of 2019, Ms. Gao sent an email to an attorney named Frank Zhang, noting "the submitted materials are attached." *Id*. ¶ 141. Included among the email's attachments was a document describing "Basic Information for the Company," i.e., Sunco China, that included the following: "We export to a U.S. affiliated company, and then sell products to the U.S. market through the U.S. affiliated company." *Id*. ¶ 141. The email attached a "Company Certification" certifying that the form referenced above was prepared by Sunco China "pursuant to the COUNTERVAILING Duty Investigation of Wooden Cabinets and Vanities from the People's

---

[5] Mr. Wu implausibly claims that he has never seen this email address before. However, the email address domain is for an IT company owned by Mr. Wu, although Mr. Wu, again implausibly, claimed that he was unaware of the internet domain and had never seen the company website before, even though he acknowledged after being shown the website, with his own company's logo and name, that "it seems to be the website of our company." SOF ¶ 139 n. 12

[6] Though this email was sent from a Sunco China email address to Mr. Wu, Plaintiff never produced this document in this litigation.

9

Republic of China." *Id*. ¶ 142.  In other words, Sunco China told Chinese authorities it was exporting products to "U.S. affiliated compan[ies]," notwithstanding (1) its claim in this litigation that Linda breached her duty of loyalty by purportedly concealing the interest she and/or her family had in IWP (*see* Doc. No. 61 ¶ 153), and (2) its testimony here that it believed Linda owned Sunco US, i.e., one of the two "U.S. affiliated company" customers Plaintiff identified in the above form (SOF ¶¶ 139-141).  Plaintiff knew Linda and/or her family had an interest in Sunco US and knew that IWP was an affiliated entity.

In addition, emails sent to Sunco China by employees of Sunco US made clear that IWP was acting as importer for Sunco US.  For example, in an email exchange beginning in September of 2016, an employee of Sunco US – Catherine Li – emailed Mr. Wu to discuss David's upcoming trip to China and the baby formula David would be bringing to Mr. Wu.  *Id*. ¶ 143.  Ms. Li's signature block in that email exchange reads:  "Catherine Li IWP/Sunco Inc. Imports/Purchasing Dept." *Id*. ¶ 144.  Likewise, in an email exchange from January 2018 discussing another trip by David to China, Ms. Li (whose signature block had not changed) explained to Mr. Wu that David would be visiting China again, and would "get there earlier on December 18th to go to the factory to discuss work matters." *Id*. ¶¶ 145-146.  Dozens of emails from IWP to Sunco China from Ms. Li and another employee, Leon Mo, contained "IWP/Sunco Inc." in the signature block.  *Id*. ¶¶ 149-150.  Sunco US was not hiding from Sunco China the fact that IWP was acting as Sunco US's importer.

With the exception of the self-serving testimony of Mr. Wu – who was *not* Plaintiff's 30(b)(6) witness – disclaiming any knowledge of David's relationship to Sunco US, Plaintiff has no evidence that it was in any way deceived by IWP's relationship with David and Shillock.  Even if Mr. Wu's purported knowledge could substitute for that of Sunco China, the Court should not credit it on summary judgment in light of the overwhelming undisputed evidence to the contrary.  *See*

*Scott v. Harris*, 550 U.S. 372, 372 (2007) ("Where, as here, the record blatantly contradicts the plaintiff's version of events so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a summary judgment motion.")

The lack of evidence that Sunco China was deceived by IWP's relationship with David and Shillock, by itself, causes Plaintiff's veil-piercing claim to fail. *See, e.g.*, *Platten*, 437 F.3d at 129 (finding that where "[d]espite their allegations of intermingling, plaintiffs have never alleged that *they* were confused about the identity of the legal entity with which they were contracting" and "Plaintiffs were never misled about which corporate entity ... was obligated to them or was dealing with them," a veil-piercing claim was not made (emphasis in original)).

### (4) Plaintiff Suffered No Injury as a Result of the Purported Lack of Corporate Separateness

As set forth above, a plaintiff must show the (alleged) lack of corporate separateness actually caused Plaintiff's alleged injury. Plaintiff cannot make that showing here. Plaintiff itself claims that Linda Sun was running Sunco China when the at-issue cabinets were ordered and shipped. SOF ¶ 127. Plaintiff cannot therefore claim that Linda would not have continued to ship cabinets if only Plaintiff had known of the relationship between David and Shillock on the one hand and IWP on the other. Nor can Plaintiff complain that such information was material to other "top managers" at Sunco China when its own purported top managers had no interest in such facts or were completely unavailable to be apprised of such facts. *Id*. ¶¶ 133-134.

Even if IWP had been created solely for the purpose of limiting liability – and it had not – that would not be improper, so long as IWP did not use its corporate form to deceive Plaintiff, and it did not. Indeed, "the avoidance of personal liability is one of the primary purposes of the corporate form of doing business. *Edwards Co. v. Monogram Indus., Inc.*, 730 F.2d 977, 981 (5th Cir. 1984); *see also*, *After Dark, Inc. v. United States*, No. 67-272-CIV-T, 1969 WL 179, at *3 (M.D. Fla. Dec.

11

4, 1969) ("The incorporation of a business to insulate its assets, or stated another way, to limit liability, is, under the law, a legitimate business purpose.")

In short, Plaintiff was not in any way misled by IWP's corporate form. Plaintiff did not think it was contracting with one entity when in reality it was contracting with another. IWP did not hold itself out as having no relationship with David or Shillock. Plaintiff knew exactly what IWP was and was not. Plaintiff is simply trying to bootstrap a claim it believed it had against Linda for breach of fiduciary duty that Plaintiff, as set forth in the memorandum in support of Linda's Motion for Summary Judgment, brought and lost. It does not get a do-over by claiming it had no idea that David and Shillock had any relationship with IWP.

### b) Plaintiff Cannot Satisfy the Remaining Veil-Piercing Factors

Plaintiff does not fare better with the remaining veil-piercing factors. The caselaw is clear that "common ownership…together with common management, standing alone, will not give rise to" veil-piercing liability. *My Bread Baking Co.*, 353 Mass. at 619. Plaintiff has not shown any confused intermingling of assets between David and Shillock on the one hand and IWP on the other.[7] For purposes of veil-piercing analysis, capitalization is assessed at inception. *George Hyman Const. Co. v. Gateman*, 16 F. Supp. 2d 129, 152 (D. Mass. 1998) ("The legal touchstone for adequacy of capital in a veil-piercing case is directed at whether a corporate entity was or was not set up for financial failure. . . . the focus of capitalization inquiry is on the adequacy of *initial* funding."). Plaintiff can cite no evidence of thin capitalization when IWP was established

---

[7] Again, Plaintiff attempts to throw enough adjectives around to obfuscate the fact that its allegations all concern entities *other than IWP*. But it is the relationship between IWP and its ownership that the Court must consider when deciding whether to pierce IWP's veil, not any interactions between other individuals or entities.

in 2011 and, indeed, the test of time shows that IWP was adequately capitalized to operate for years. SOF ¶ 135.

With respect to corporate formalities and corporate records, IWP made yearly filings with the Massachusetts Secretary of the Commonwealth, kept a separate bank account, separate accounting records, had an operating agreement, and prepared necessary tax documents. *Id*. ¶ 152. That it engaged the services of Sunco US to provide management and administrative support is no reason to pierce the corporate veil.

First, such engagement is evidence of observing formalities, as Sunco US charged IWP a fee for the use of Sunco US's employees, a fee that was accurately reflected in both Sunco US's and IWP's records. *Id*. ¶ 153. Plaintiff claims there were "no financial boundaries between the defendant entities" (Doc. No. 223 at 4), but that allegation is contradicted by the very evidence Plaintiff cites. Plaintiff finds fault that the entities were "offsetting amounts back and forth," referring to the fact that all intercompany transactions were accounted for in each company's own separate general ledger; but that is exactly how corporate separateness is maintained. SOF ¶ 154.

For example, Sunco US leased property from IRC and, accordingly, owed IRC a rental fee. Sunco US had been leasing that property from one of the Affiliated Entities[8] since the 1990s. *Id*. ¶ 155. Originally, the beneficial interest was held by New Sun Limited Partnership ("NST").[9] In 2013, IRC purchased the beneficial interest in the property from NST in exchange for a promissory note on which IRC owed NST payments. *Id*. ¶ 159. When Sunco US paid rent, it was recorded in Sunco US's book as a decrease in the "rent payable" liability to IRC and a corresponding decrease

---

[8] The "Affiliated Entities" are the reach-and-apply and fraudulent conveyance defendants.

[9] In its Memorandum in support of its Motion for Summary Judgment, Plaintiff refers to New Sun Limited Partnership as "NST" and that abbreviation is maintained here, for clarity.

in cash, per accounting rules. *Id*. ¶ 161. IRC would use those rental payments to make payments on the promissory note to NST and would accurately record the transaction as a decrease in its rent receivable asset and a corresponding decrease in its promissory note payable liability, balancing assets and liabilities. *Id*. ¶ 162. NST would also accurately record the transaction on its books, recording an increase in its cash asset and a decrease in its promissory note receivable asset, ensuring balance sheet balance and accuracy. *Id*. ¶ 163. Plaintiff seems to fault Defendants for this, claiming such practice as "offsetting," when it was merely standard accounting practice. Plaintiff appears to take particular issue that Defendants did not take unnecessary and wasteful steps by transferring cash in between each entity, instead opting to send actual cash it to its ultimate destination such that if Company A owed Company B $10 and Company B owed Company C $10, Company A would send the cash directly to Company C without requiring the cash to pass through Company B's bank account first. All the transactions complained of are legitimate transactions *Id*. ¶ 167, and Plaintiff cannot show *with facts* that such transactions were somehow illegitimate; Plaintiff cannot merely rely on phrases such as "funnel[ing] money," "an internal recharacterization of funds," and "funds were scattered."[10]

Critically, however, all of the allegedly wrongful conduct Plaintiff claims constitutes a lack of corporate separateness *excludes* IWP, the only entity against which Plaintiff has asserted a veil-

---

[10] The Defendants other than NST and Linda engaged an expert accountant, Ross Yogel, to provide an opinion on aspects of Defendants' accounting practices. Plaintiff has informed Defendants that it intends to move to strike Mr. Yogel's report on the grounds that it was untimely served. Although Defendants expect to show Plaintiff's anticipated Motion to Strike is without merit, in an abundance of caution, Defendants do not rely on Mr. Yogel's report here, even though it demonstrates just how baseless Plaintiff's claims are. Defendants believe their Opposition to Plaintiff's Motion for Summary Judgment and Defendants' Motion for Summary Judgment stand on their own, without reference to Mr. Yogel's expert report. Should the Court wish to review Mr. Yogel's opinion, however, it is attached as Exhibit 87. Defendants direct the Court's attention in particular to pages 7-14 and 18-25.

piercing claim.[11]  How IRC and NST structured their transactions is irrelevant to Plaintiff's veil-piercing claim against *IWP*.  Plaintiff's claim to pierce the corporate veil of *IWP* fails unless Plaintiff can adduce evidence *relating to IWP* that supports the veil-piercing factors.  All of the purportedly inappropriate financial transactions about which Plaintiff complains relate to entities *other than IWP*.  Plaintiff argues in purposefully vague terms that David had "complete ownership and direct involvement in the siphoning of funds" without ever identifying from which entity he was purportedly siphoning funds, and that Shillock's "management of all bank accounts across the entities" somehow supports veil-piercing without identifying any *IWP*-related activity, demonstrating that Plaintiff cannot show any reason to pierce *IWP's* corporate veil.  Plaintiff cannot make out a case for piercing IWP's corporate veil without ever making mention of anything IWP has purportedly done to justify veil-piercing.  Doc. No. 223 at 4.

Second, that employees "sometimes acted on behalf of [one entity] and other times on behalf of [another] is to be expected" when there is common ownership. *Platten*, 437 F.3d at 129; *see also, Egan v. Tenet Health Care*, 193 F. Supp. 3d 73, 83 (D. Mass. 2016) (Saylor, J.) ("although there is some evidence that [defendant] handles human resource and compliance issues for [related company], there is no evidence that one corporation controlled or used the other corporation other than for the mutual benefit of both." (internal quotations omitted)); *Am. Well Corp. v. Indegene Ltd.*, 761 F. Supp. 3d 249, 258 (D. Mass. 2024) (Kelley, J.) ("The overlap of employees…is not enough to indicate an alter ego relationship").  Plaintiff has no evidence that David or Shillock – or the trusts, which are the actual owners of IWP – siphoned away the company's funds, nor does it have any evidence that IWP was used for David's and Shillock's personal transactions.  With respect to

---

[11] Plaintiff belatedly – to put it mildly – attempts to add new Defendants and a new claim to its veil-piercing allegations.  That belated attempt should be rejected for the reasons set forth *infra* at 17-18.

15

dividends, although none was ever paid, "a business can have a legitimate purpose even if it is not designed to make dividend payments or profit distributions." *George Hyman Const. Co. v. Gateman*, 16 F. Supp. 2d 129, 154 (D. Mass. 1998) (Saris, J.).

Plaintiff's complaint about the foregoing factors boils down to Plaintiff's apparent misapprehension that in order to avoid veil-piercing, a corporation must operate the way a Fortune 100 company might operate, with an in-house accounting department, finance department, and a host of full-time employees, and that it can never enter into contracts with related entities. That is not the law. Single-purpose entities, or SPEs, like IWP, are common, and "there is nothing unique or in any way nefarious about using single-purpose entities" in business. *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 39 F. Supp. 3d 516, 527 (S.D.N.Y. 2014) (internal quotation marks omitted).[12]

The final factor, insolvency at the time of the litigated transactions, also does not favor veil piercing. IWP was not insolvent. Its liabilities did not exceed its assets. The Infinity Defendants contend that Plaintiff agreed to forgive the outstanding accounts receivable that Plaintiff claims IWP owes – and IWP in turn agreed to forgive its outstanding accounts receivable from Sunco US – as payment for the remaining amounts due to Sunco US for Mr. Wu's company's purchase of 52 percent of Sunco China from Sunco US. Accordingly, IWP had (and has) no account payable to Sunco China. If, however, a jury were to find that Plaintiff had not forgiven that payment owed

---

[12] Case law is rife with references to the use of SPEs. *See, e.g.*, *Fronk v. Fowler*, 71 Mass. App. Ct. 502, 508, 883 N.E.2d 972, 977 (2008) ("the partnership agreement was "a standard type of investment vehicle for investing in a particular commercial real estate property or project."); *Blue Hills Off. Park LLC v. J.P. Morgan Chase Bank*, 477 F. Supp. 2d 366, 370 (D. Mass. 2007) (discussing real-estate SPE); *Rared Manchester NH, LLC v. Rite Aid of New Hampshire, Inc.*, 693 F.3d 48, 50 (1st Cir. 2012) (SPE established to lease property); *DSF Invs., LLC v. Lyme Timber Co.*, No. 024042BLS2, 2004 WL 3414427, at *2 (Mass. Super. Dec. 22, 2004), *aff'd,* 67 Mass. App. Ct. 1110, 854 N.E.2d 1267 (2006) (SPE established to hold title); *Boulder Santa Rosa, LLC v. Henry*, No. CIVA 07-10846-RWZ, 2008 WL 687413, at *2 (D. Mass. Mar. 7, 2008) (SPE established to serve as a lender); *Pecoy v. Hanson*, 96 Mass. App. Ct. 1103, 134 N.E.3d 1151 (2019) (SPE established to raise investment funds).

16

from IWP, then the receivables IWP was owed by Sunco US also were not forgiven, and thus IWP was not insolvent. Even if IWP were deemed to be insolvent, however, that factor alone does not support veil-piercing. First, where a company becomes insolvent only late in its relationship to a plaintiff, as is the (alleged) case here, that weighs against veil piercing. *See, e.g.*, *George Hyman Const. Co. v. Gateman*, 16 F. Supp. 2d 129, 157 (D. Mass. 1998) (Saris, J.) ("It only became insolvent late in the relationship with Hyman, and was not operated to perpetuate a fraud."). More importantly, however, insolvency alone cannot form the basis for a veil-piercing claim, "[o]therwise every penniless closely-held corporation would be subject to routine veil piercing, and an exception that broad would undermine the presumption of corporate separateness." *Watts v. Liberty Mut. Pers. Ins. Co.*, No. CV 23-12845-BEM, 2025 WL 2576800, at *9 (D. Mass. Sept. 5, 2025) (Murphy, J.) (quoting *Delta MB LLC v. 271 S. Broadway, LLC*, 2024 WL 3826113, at *5 (D.N.H. Aug. 15, 2024)).

### c) Plaintiff's Belated Attempt to Add New Defendants and a New Theory to Its Veil-Piercing Claim should be Denied

Plaintiff seeks to add via its SJ Memorandum an unpled and untimely "alter ego" claim against Sunco US, which the Court should summarily reject. In the middle of its Memorandum, Plaintiff veers off course and argues – without any basis – that "facts establish that [IWP] and Sunco [US] did not operate as genuinely distinct entities, but rather as components of a single, centrally controlled enterprise." Doc. No. 223 at 13. There is no claim against Sunco US for alter-ego liability. The only count in the Amended Complaint related to corporate separateness is Plaintiff's veil-piercing claim against IWP, David, Shillock, and Linda. The time for adding new causes of action has long passed. Four years into this litigation, Plaintiff should not be allowed to ambush Sunco US at the summary judgment stage by asserting a brand-new, unpled claim for alter-ego liability.

17

What's more, in its "Request for Relief" section, Plaintiff asks for summary judgment in its favor "on its claim to pierce the corporate veil, holding Defendants David [], Shillock [], Linda [], Sunco, Inc., [ESD], [ESW], [IRC], and [NST] jointly and severally liable for Infinity's debt."  MSJ at 19.  Plaintiff cites no authority for this request and makes no argument in its Memorandum to support such requested relief.  Accordingly, even if the time for adding new counts against Defendants were not long past, the Court should not consider requested relief that is unsupported even by argument, let alone facts.  *See, e.g.*, *Tax-Free Fixed Income Fund for Puerto Rico Residents, Inc. v. Ocean Cap. LLC*, 137 F.4th 6, 24 (1st Cir. 2025) ("We have repeatedly held that arguments raised only in a footnote or in a perfunctory manner are waived.").

**B.    Plaintiff's Fraudulent-Transfer and Reach-and-Apply Claims Must be Dismissed**

While Plaintiff's Amended Complaint names ESD, ESW, David, and Shillock as Defendants in its fraudulent-transfer claim, Plaintiff has adduced no evidence that any fraudulent transfer was made by or to any of those Defendants, and the claims against them must be dismissed.

Similarly, with respect to Plaintiff's reach-and-apply claim, Plaintiff named ESD, ESW, IRC, David, and Shillock as Defendants, but Plaintiff does not even claim that any of those Defendants is in possession of any asset belonging to IWP.  Accordingly, the reach-and-apply claims against those individuals must be dismissed.

All that remains are Plaintiff's reach-and-apply claim against Sunco US and its fraudulent-transfer claim against IWP, Sunco US, and IRC, each of which fails for the reasons set forth below.

**1.  Legal Standard**

Under Massachusetts law, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual

18

intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation…." Mass. Gen. Laws c. 109A, § 5.

### 2. Plaintiff's Fraudulent-Transfer and Reach-and-Apply Claims Fail Because Plaintiff Disclosed No Alleged Factual Basis for Such Claims at Deposition

Pursuant to the Court's Sanctions Order, Plaintiff is precluded from relying on any factual bases for its claims that it did not disclose in response to questioning at Plaintiff's Rule 30(b)(6) deposition. At that deposition, Plaintiff could not or would not answer, among other questions: (1) whether IWP transferred any assets to any entity other than Sunco US (SOF ¶ 168); (2) whether Plaintiff was alleging that Sunco US transferred any cabinets to any other entity (*id*. ¶ 169); (3) whether Plaintiff was alleging any fraudulent transfer of any asset other than cabinets (*id*.¶ 171); and (4) any questions about the factual basis for its fraudulent-transfer claims other than to make a generalized claim that Sunco US sold cabinets to "other small companies beneath it" (*id*.¶ 170). Now, however, Plaintiff argues multiple alleged factual bases for its fraudulent-transfer claims. All such undisclosed factual bases should be stricken, as Plaintiff is precluded from relying upon them.

### 3. Plaintiff's Fraudulent-Transfer and Reach-and-Apply Claims Fail as a Matter of Law

To make out a case for fraudulent transfer, Plaintiff must show transfers *by IWP*, the entity that it is the alleged debtor in this case. With one exception – IWP's transfer of the at-issue cabinets to Sunco US, consistent with IWP's role as importer – every transfer about which Plaintiff complains does not involve IWP. Plaintiff, for example, complains about the 2021 sale of property that was owned by a trust called the Sun Trust, of which IRC was the sole beneficiary. That real estate had been in Sun Trust's possession since 1992, long before any of the issues in this case, and cannot therefore have been acquired as a result of a fraudulent transfer. *Id*. ¶ 172. Sun Trust, as a non-debtor, was free to dispose of the real estate however it saw fit. And in any event, the property was sold to a *bona fide* third-party purchaser for reasonable value. *Id*. ¶ 173. Plaintiff does not

19

claim otherwise.[13]  Plaintiff also complains about checks written by Sunco US either directly to Linda or on Linda's behalf.  Those checks were distributions to Linda as the largest limited partner in NST, and were taken out of NST's funds, not Sunco US's.[14]  SOF ¶ 174.  NST is not a debtor to Plaintiff and, so, its distributions to its limited partners are not relevant to the fraudulent transfer analysis.  Plaintiff identifies no other allegedly fraudulent transfer.[15]

With respect to the transfer of cabinets from IWP to Sunco US, Plaintiff mischaracterizes that transaction.  Defendants contend that Plaintiff agreed to forgive the invoices on the at-issue cabinets in lieu of cash payment on the debt remaining from QiYi's purchase of 52 percent of Sunco China from Sunco US.  As IWP had done for years prior to the events at issue here, IWP transferred cabinets to Sunco US in exchange for a promise to pay, reflected on IWP's books as accounts receivable.  SOF ¶ 175.  When Sunco China, QiYi, and Sunco US reached agreement on the alternative payment structure for QiYi's purchase of Sunco China shares, the payable IWP owed Sunco China was forgiven in exchange for IWP's forgiveness of the payable Sunco US owed IWP. *Id*. ¶ 176.  That Sunco China is now attempting – in contravention of the Court's Sanctions Order –

---

[13] Plaintiff seems to find fault with IRC's decision to distribute the profits from the sale of the property to its member, David, even though IRC was established as a single-purpose entity to hold the beneficial interest in the real estate that had been sold and, so, had no reason to retain profits in-house.  Moreover, that distribution to David resulted in David injecting approximately $1.2 million into Sunco US [(Ex. 42 (D. Sun Aff.) at ¶ 31), the entity that received the at-issue cabinets from IWP, to enable Sunco US to meet its obligations, a practice wholly inconsistent with a fraudulent transfer.  If David had intended to keep the proceeds from the sale of the real estate out of the hands of creditors, he would not have injected cash back into Sunco US, which was operating at a loss.

[14] Sunco US was NST's general partner and therefore administrated the partnership.  As set forth above, as is typical in related-party transactions, cash would often move directly to its end recipient rather than be sent through multiple entities' bank accounts, but the proper accounting was done for each transaction, and the funds disbursed to Linda were debited to her account as a limited partner in NST.  SOF ¶¶ 161-167.

[15] In its Statement of Material Facts, Plaintiff includes (erroneous) factual allegations concerning intercompany transfers between Sunco US and ESW.  Because Plaintiff does not address those transfers in its brief, Defendants do not address them here.

to disclaim that agreement does not suddenly render the transfer fraudulent.  Doc. No. 218. (*See also* discussion in Section C immediately below.)

Like its veil-piercing claim, Plaintiff's claim for fraudulent transfer relies upon adjectives rather than facts.  Plaintiff makes assertions such as "[t]ransfers between insiders operating under centralized control is the ultimate indicator of a 'badge of fraud'" Doc. No. 223 at 15, without providing a single citation to law, treatise, or any other authority other than Plaintiff's say-so. Related-party transactions are commonplace in business, not a badge of fraud.  As to Plaintiff's reach-and-apply claim, Plaintiff argues it is entitled "to reach and apply the assets transferred from [IWP] to Sunco [US] to satisfy the judgment in this action."  Doc. No. 223 at 16.  The "assets" to which Plaintiff refers are the cabinets, none of which is in Sunco US's possession.  SOF ¶ 177. Plaintiff cannot "reach" an asset that does not exist.

    **C.**    **IWP is Entitled to Summary Judgment on Plaintiff's Breach-of-Contract Claim**

        **1.**    **Applicable Law**

Plaintiff incorrectly assumes the application of Massachusetts law to its breach-of-contract claim.  The United Nations Convention on Contracts for the International Sale of Goods (the "CISG") applies because the contract at issue is for the sale of goods between parties whose places of business are in different contracting states, as both the United States and China are signatories to the CISG.  Apr. 11, 1980, 1489 U.N.T.S. 3; *see also*, *Asante Techs., Inc. v. PMC-Sierra, Inc.*, 164 F. Supp. 2d 1142, 1147 (N.D. Cal. 2001).

There are key differences between Massachusetts law and the CISG.  For example, "[u]nder the CISG, a contract modification may be reached by the mere agreement of the parties without additional consideration." *New World Trading Co. v. 2 Feet Prods., Inc.*, No. 11 CIV. 6219 SAS, 2014 WL 2039138, at *7 (S.D.N.Y. May 16, 2014), *aff'd in part, remanded in part sub nom. New World Trading v. 2 Feet Prods.*, 652 F. App'x 65 (2d Cir. 2016) (citing CISG art. 29(1)); *see also*,

21

*Norfolk S. Ry. Co. v. Power Source Supply, Inc.*, No. CIV.A. 06-58 J, 2008 WL 2884102, at \*3 (W.D. Pa. July 25, 2008) ("Although not required by the CISG, *see* CISG art. 29(1), each of these changes was supported by consideration").  Under the CISG, courts are obligated to consider "one party's subjective intent when forming a contract 'where the other party knew or could not have been unaware what that intent was.'"  *Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 991 (N.D. Ill. 2017) (quoting CISG Art. 8(1)).

### 2. IWP is Entitled to Summary Judgment on its Affirmative Defense to Plaintiff's Breach-of-Contract Claim

As set forth in sworn testimony, the payables that are the subject of this litigation were forgiven by Sunco China as a result of Mr. Wu's company's failure to pay the outstanding balance on its purchase of 52 percent of Sunco China's shares from Sunco US.  SOF ¶ 178.  Mr. Wu's company, QiYi, purchased 52 percent of the shares of Sunco China from Sunco US, with installment payments due over the subsequent years.  *Id.* ¶ 179.  QiYi failed to make any of those payments.  *Id.* ¶ 180.  After Linda repeatedly attempted to get QiYi to pay the amounts due, it was Mr. Wu who approached Linda – not the other way around -- with a proposal that forgiveness of payables for cabinets would be used as payment because Mr. Wu claimed he did not have the liquidity to make the cash payments he was obligated to make.  *Id.* ¶ 181.  Because Sunco US continued to own 48 percent of Sunco China, payable forgiveness would have to take that ownership into account and there would not be a dollar-for-dollar – or, in this case, an RMB-for-RMB – forgiveness, but the amounts were clear.  Mr. Wu informed Linda that he would need to apply for government permission to do so, and Linda awaited such approval, but an agreement had been reached.  *Id.* ¶ 182.

Under the Court's Sanctions Order, Plaintiff cannot adduce any admissible evidence rebutting the existence of this agreement.  Among the topics for Plaintiff's Rule 30(b)(6) deposition

22

was the topic of "QiYi's acquisition of shares in Sunco China, including…the payment of the acquisition price and any amendments to the terms of acquisition." *Id.* ¶ 123.  Sunco China's Rule 30(b)(6) designee, however, was unprepared and/or refused to testify concerning such topic, first claiming that he was not the right person to ask about it and then stating that he "was not sure about" whether the parties amended the terms. *Id.* ¶ 189.  Another Rule 30(b)(6) topic was "Litigation or arbitration between Sunco China and any defendant in this case, including…litigation or arbitration concerning the Share Acquisition," i.e., QiYi's acquisition of shares in Sunco China. *Id.* ¶ 188.[16]  Plaintiff's Rule 30(b)(6) designee on this topic was not even aware he had been so designated and testified that "[r]egarding arbitration, I don't have a clear understanding of it." *Id.* Plaintiff is nonetheless attempting now to rely on an arbitration concerning the "share acquisition" to defeat IWP's affirmative defense to Plaintiff's breach-of-contract claim.  Doc. No. 223 at 10, 11. As a result of the Court's ruling, however, that evidence is inadmissible.

### 3. Even Were Plaintiff Not Precluded from Relying on Evidence it Failed to Disclose at its Rule 30(b)(6) Deposition, at a Minimum, There Exists a Triable Issue of Fact

Even if Plaintiff were not precluded from introducing evidence disputing the existence of the agreement to forgive the at-issue payables, Plaintiff would not be entitled to summary judgment on its breach-of-contract claim because IWP's defense creates a triable issue of fact.  While Plaintiff claims IWP's defense is "absurd" for five different reasons (*id.* at 7), each argument fails.  First, Plaintiff argues that there was no written record of this agreement.  There is, of course, no requirement under the CISG (or Massachusetts law, for that matter) that such agreement be in

---

[16] There can be no question that Plaintiff was on notice of the relevance of any amendments to the share transfer agreement at issue, nor can there be any question that Plaintiff was on notice of the relevance of arbitrations between various entities concerning that share transfer agreement, because IWP was explicit about its affirmative defense at least as early as April 2023.  Doc. No. 35.

writing, and Plaintiff cites none.

Second, Plaintiff claims there were "no specific details" about the agreement. That is untrue. Plaintiff pulls David Sun's testimony out of context. The agreement between the parties was that Sunco China would forgive payables in an amount reflecting approximately what Sunco US was owed. SOF ¶ 181. Like cash, the cabinets were fungible in this respect. It did not matter which specific cabinets or purchase orders were forgiven; what mattered was the total value forgiven.

Third, Plaintiff claims that Linda had "no authority" to act on IWP's behalf and no ownership interest in IWP, nor any authority to act on Sunco US's behalf.[17] That is not a decision for Plaintiff to make. Linda does not have to be employed by IWP or have an ownership interest in IWP to act on its behalf. NLNS Defendants' Resp. to Plaintiff's SOF ¶ 46.

Fourth, Plaintiff faults IWP for allegedly not confirming such agreement "with Mr. Wu or anyone at Sunco China," while its own Rule 30(b)(6) designees were testifying that Linda had absolute authority to act on behalf of Sunco China. SOF ¶ 127. Plaintiff cannot on the one hand argue that Linda alone was in charge and running everything at Sunco China, with the knowledge of Mr. Wu, Mr. Ruihua Xiao, and Ms. Qiong Xiao's – i.e., Plaintiffs "top managers" –and, on the other hand, claim that David did not speak to anyone at Sunco China.

Finally, Plaintiff claims that the matter of IWP's defense was already adjudicated in an arbitration in China. That arbitration is inadmissible, however, because (1) it is hearsay; (2) Plaintiff should be equitably estopped from making any such argument because it has steadfastly

---

[17] This is a particularly bold argument for Plaintiff to make given that Plaintiff continues to seek to pierce the corporate veil of IWP to reach Linda, which requires that Linda be a member of IWP. It is also bold for Plaintiff – which is, in this case, driven by Mr. Wu's company, QiYi, Sunco China's 52 percent owner, and not Sunco US, which is Sunco China's 48 percent owner – to argue that Linda had no authority to act for Sunco US when QiYi purchased its 52 percent share in Sunco China from Sunco US via negotiations and a signed contract with Linda.

refused to produce any discovery in this case relating to that arbitration based on *Plaintiff's* claim

that the arbitration was irrelevant; and (3) because there are serious errors with the arbitration,

calling into question its validity, all as set forth in the accompanying motion to strike references to

the arbitration.

### D.    Plaintiff's Promissory-Estoppel, Quantum-Meruit, and Money-Had-and-Received Claims Fail as a Matter of Law

As this Court has already held, "[p]romissory estoppel, quantum meruit, and moneys had

and received are all quasi-contract equitable claims," and "recovery for breach of contract and such

quasi-contract claims are mutually exclusive." Doc. No. 32 at 6 (Burroughs, J.)  Judge Burroughs

declined to dismiss the quasi-contract claims, however, because "it is accepted practice to pursue

both theories *at the pleading stage*."  *Id*. (emphasis added)  But this case is no longer at the pleading

stage, and Plaintiff's quasi-contract claims are without basis.  Accordingly, they must be dismissed.

## II.  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON SUNCO US'S COUNTERCLAIMS MUST BE DENIED

Sunco US has asserted a counterclaim against Plaintiff for a loan made by Sunco US to

Plaintiff.  Plaintiff's arguments for summary judgment amount to no more than that Plaintiff

disagrees with Sunco US's factual assertions.[18]  Plaintiff argues that there is no evidence of such

loan – completely ignoring the evidence it withheld from discovery and about which it made

repeated misrepresentations to the Court – and (1) further argues that the counterclaim is barred by

---

[18] Plaintiff bizarrely faults Sunco US for not asserting its counterclaim against Sunco China until Plaintiff added Sunco US as a defendant.  Doc. No. 223 at p. 8.  Sunco US could not, of course, have asserted counterclaims in a litigation in which it was not a party.  Also odd is Plaintiff's allegation of bad faith against Sunco US for Sunco US's decision to file a motion to dismiss.  Sunco US was only brought into this litigation via an amended complaint, the leave to file of which was obtained by Plaintiff as a result of blatant misrepresentations by Plaintiff.  Plaintiff claimed that it "did not become aware of [Sunco US] until it sought to respond to defendant Linda Sun's written discovery requests."  Doc. No. 59 at 2.  That is, of course, false, as Sunco US was and is Plaintiff's shareholder, among many other facts that prove that Plaintiff was well aware of Sunco US long before it brought the instant litigation.

the statute of limitations (an argument that fails as a matter of law) and (2) conclusorily (and wrongly) claims that the share purchase agreement among Sunco US, Sunco China, and QiYi prevents the assertion of such a counterclaim.

First, there is evidence of the loan from Sunco US to Sunco China, *in Sunco China's own financial records*.  As Sunco US suspected – and expressed to both the Court (Doc. No. 113 at p. 12-15) and Plaintiff (Doc. No. 114-5 at p. 3) – the loan is inaccurately reflected on Plaintiff's books as a payable owed to Linda, but it is nevertheless reflected on Plaintiff's books.  When Defendants sought discovery into the counterclaim loan, Plaintiff repeatedly insisted that it had no documents evidencing any loan either from Sunco US or Linda[19] notwithstanding that it, in fact, had recently filed documents in its litigation against Linda in China that made explicit reference to amounts owed to Linda and notwithstanding that Plaintiff's Rule 30(b)(6) witness testified that the line item for the loan reflected as being from Linda to Plaintiff would be on every single financial statement going back to at least 2015.  SOF ¶ 183.

The only reason there is not more documentary evidence of the loan is because, as Plaintiff's Rule 30(b)(6) witness testified, Plaintiff unilaterally decided – contrary to its repeated, emphatic representations to the Court to the contrary – that it did not search for and produce any documents relating to the loan because Plaintiff did not, in its unilateral opinion, need to pay such loan and it was therefore not "relevant."  *Id*. ¶ 184.  When Defendants complained that such documents were not produced, Plaintiff claimed that Linda Sun had purportedly destroyed all such documents (Doc. No. 204 at 17), omitting the fact that Plaintiff filed a *2019* audited financial statement – a document

---

[19] Plaintiff represented to the Court that "Plaintiff has looked for any unidentified and undocumented loans by Linda Sun to Plaintiff and have found that no such loans existed and that there are no documents referring to any such loans."  Doc. No. 132 at 3.  Accordingly, the Court denied that portion of Defendants' motion to compel "as Plaintiff has represented that it conducted a thorough search for any loans by Linda Sun and have not found any."  Doc. No. 136.

26

that necessarily was created long after Plaintiff claims Linda left Sunco China in the summer of 2019 – in court in China in its legal action against Linda that explicitly makes reference to the loan. SOF ¶ 185.  Plaintiff never produced that 2019 audited financial statement in this case and Sunco US is aware of it only because of its use by Plaintiff against Linda in China.  *Id*. ¶ 186.  There is also a "Request for Confirmation of Balances" sent by Plaintiff's independent auditor to Linda asking Linda to confirm that Plaintiff had an outstanding payable to Linda of nearly 21 million RMB.  *Id*. ¶ 187.

Thus, supporting Sunco US's counterclaim, there are at least three of Plaintiff's own documents making explicit reference to the loan, Plaintiff's Rule 30(b)(6) witness's testimony that such references could be found in every financial statement of Plaintiff's for more than a decade, the wire transfers for the funds that were loaned, David's testimony regarding the existence of the loan, Linda's testimony regarding the existence of the loan, and Shillock's testimony regarding existence of the loan.  For Plaintiff now to claim that there is no evidence of such loan is not consistent with reality.

Plaintiff also claims that the counterclaim is barred by the statute of limitations.  However, the statute of limitations on a demand loan, which this loan was, begins to run when demand is made.  *See, e.g.*, *Rosen v. Stumpo*, No. CV 06-12191-GAO, 2010 WL 11937174, at *1 (D. Mass. Jan. 29, 2010) (O'Toole, J.) ("the limitations period for a demand loan would begin to run from the date of demand").  The filing of the counterclaim by Sunco US was the demand and, accordingly, cannot have been untimely.  Furthermore, where a written acknowledgement of the debt has been made – as it was in Plaintiff's Request for Confirmation of Balances and in Plaintiff's own financial statements, including the financial statements Plaintiff impermissibly withheld from production – the statute of limitations restarts.  Mass. Gen. Laws c. 260, § 13.

Finally, Plaintiff claims that the share transfer agreement among Sunco US, Sunco China, and QiYi precludes the counterclaim loan, arguing that "the Share Transfer Agreement explicitly required Sunco [US] and [Linda] to bear responsibility for all pre-transfer liabilities."  Doc. No. 223 at 8.  That is a fundamental mischaracterization of the share transfer agreement.  That agreement provides that "there are no other hidden debts" and requires that if any debts "are discovered," i.e., if *undisclosed* debts are discovered, then Sunco US will bear responsibility for them.  That is standard share-purchase language.  It clearly does not mean that Sunco US alone would bear responsibility for any and all liabilities that Plaintiff had after QiYi purchased 52 percent of Plaintiff.  Plaintiff has adduced no facts showing that this loan was not disclosed and, accordingly, this defense fails.

Moreover, Plaintiff's reliance on the specific share transfer agreement it attaches to its summary judgment papers demonstrates yet another example of the lack of good faith and candor on Plaintiff's part.  Plaintiff attaches a share transfer agreement dated September 8, 2014 (the "September Agreement").  According to Plaintiff's Rule 30(b)(6) witness, however, the September Agreement was superseded by an agreement dated October 18, 2014 (the "Purported October Agreement").  The reason Plaintiff relies upon the September Agreement rather than the Purported October Agreement is presumably because the Purported October Agreement is, as discussed below, an obvious sham, as found by an arbitration panel in an arbitration brought by Mr. Wu's company, QiYi, against Sunco US, in which Plaintiff was a party.  (This is a different arbitration than the one on which Plaintiff attempts to rely in arguing against IWP's defense to Plaintiff's breach of contract claim.)

According to Plaintiff in that arbitration in China, Sunco US, Plaintiff, and QiYi signed the Purported October Agreement less than a month and a half after the parties signed the September

28

Agreement in *2014*, in order to purportedly change the terms of the agreement to include an implausible provision, one that just so happens to (1) predict the future by purporting to make Sunco US liable for accounts payable that IWP would not incur until 2018 and 2019, and (2) forfeit to QiYi – Mr. Wu's company – Sunco US's 48 percent share in Plaintiff as a result of Sunco China having a receivable due from IWP for the cabinets at issue in this litigation, and (3) make Sunco US responsible for the payment of those receivables even after Sunco US's forfeiture of its 48 percent share.  In order to fabricate this commercially unreasonable document, Plaintiff and Mr. Wu needed to rely upon Linda's signature on a copy of the September Agreement and so needed to ensure that the introduction of the several additional lines for this fabricated share-forfeiture provision did not push any lines of the agreement onto the final page.  To accomplish this, Plaintiff and Mr. Wu deleted text from another provision found on the same page in a blatant display of manipulation. Sunco US argued in the arbitration in China that the October Agreement was inauthentic, and Sunco US won.

According to the arbitral award[20] issued by a panel of arbitrators from the Shanghai International Economic and Trade Arbitration Commission, issued in part on the basis of the expert opinion of a neutral forensic expert appointed by the panel, the Purported October Agreement had serious flaws – including proof that the first three pages of the agreement, on which the changed provisions are found, were printed at a different time than the page on which Linda's signature is found[21] – and therefore did "not meet[] the requirements for the integrity and consistency of the

---

[20] This award was not issued until January 19, 2026 and thus could not have been produced prior to September 28, 2025, the cut-off date set by the Court for the production of admissible documents. Accordingly, good cause exists to allow for the consideration of this document.

[21]  The expert reached this conclusion because the black-ink print on the first 3 pages of the Purported October Agreement was made by combining different colored inks while the black ink print on the last 3 pages of the Purported October Agreement was made using true black ink.  *See* Memorandum of Law in Support of Moving Defendants' Motion to Strike, filed contemporaneously herewith.  Thus, it appears that Plaintiff created the Purported October Agreement by removing the first 3 pages of the September

contract," and, therefore, the arbitral tribunal rejected the Purported October Agreement. The tribunal, therefore, found in Sunco US's (and Linda's) favor, rejecting Plaintiff's and QiYi's attempt to seize Sunco US's 48 percent interest in Plaintiff and make Sunco US responsible for the invoices at issue in this case. Plaintiff has chosen to appeal that award, thereby continuing to assert in China that the September Agreement which they rely on here is not the operative agreement, but rather the Purported October Agreement is.

As the foregoing demonstrates, Plaintiff continues to fail in its obligation of candor with this Court. Accordingly, even if the provision in the September Agreement on which Plaintiff relies did, in fact, preclude the counterclaim – and it does not – Plaintiff should be estopped from asserting that argument.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment should be denied in full and Defendants' Motion for Summary Judgment should be granted in full. For the Court's convenience, attached hereto at **Appendix A** is a chart setting out each count of the Amended Complaint and Sunco US's counterclaim, with the relief requested by Plaintiff and by the Defendants as a result of the summary judgment cross-motions, and with the Defendants' position as to how the Court should dispose of those claims.

---

Agreement and replacing it with 3 sham pages such that it appeared that Linda signed the Purported October Agreement when, in fact, she had not done so and had, in fact, signed only the September Agreement.

Respectfully submitted,


DAVID SUN, SHILLOCK YUAN-SUN,
INFINITY WOOD PRODUCTS, LLC,
SUNCO, INC., EASTMAN ST.
DISTRIBUTORS, LLC, EASTMAN ST.
WOODWORKS, INC., and INFINITY
REALTY CO. LLC,

By their attorneys:

 _/s/ Michele Connolly_____
Peter E. Ball (BBO No. 546031)
Michele E. Connolly (BBO No. 680946)
Malgorzata Mrózek (BBO No. 699035)
FITCH LAW PARTNERS LLP
84 State St.
Boston, MA 02109
(617) 542-5542
peb@fitchlp.com
mec@fitchlp.com
mam@fitchlp.com

Dated:  May 27, 2026


### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 27, 2026.


_/s/Malgorzata A. Mrozek_____
Malgorzata A. Mrozek

31