**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SUNCO TIMBER (KUNSHAN) CO., LTD., | ) |
| | ) |
| Plaintiff, | ) C.A. No. 1:22-cv-10833-MJJ |
| | ) |
| v. | ) **MEMORANDUM OF LAW** |
| | ) **IN SUPPORT OF THE** |
| LINDA SUN, individually, DAVID SUN, individually | ) **MOTION OF DEFENDANTS DAVID** |
| SHILLOCK YUAN-SUN, individually, and INFINITY | ) **SUN, SHILLOCK YUAN-SUN,** |
| WOOD PRODUCTS, LLC., | ) **INFINITY WOOD PRODUCTS, LLC,** |
| | ) **SUNCO, INC., EASTMAN STREET** |
| Defendants, | ) **DISTRIBUTORS LLC, EASTMAN** |
| SUNCO, INC., EASTMAN ST. DISTRIBUTORS LLC, | ) **STREET WOODWORKS, INC., AND** |
| EASTMAN ST. WOODWORKS, INC., | ) **INFINITY REALTY COMPANY LLC** |
| INFINITY REALTY COMPANY LLC, and | ) **TO STRIKE DOC. NO. 223-17** |
| NEW SUN LIMITED PARTNERSHIP | ) **(PLAINTIFF'S EXHIBIT 15) AND DOC** |
| | ) **NO. 223-18 (PLAINTIFF'S EXHIBIT 16)** |
| Reach and Apply Defendants, and | ) **FROM THE RECORD** |
| Fraudulent Conveyance Defendants | ) |
| | ) |
| Linda Sun | ) |
| | ) |
| Counterclaim Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Sunco Timber (Kunshan) Co., Ltd. | ) |
| | ) |
| Counterclaim Defendant. | ) |
| | ) |
| Sunco, Inc. | ) |
| | ) |
| Counterclaim Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Sunco Timber (Kunshan) Co., Ltd. | ) |
| | ) |
| Counterclaim Defendant. | ) |

**INTRODUCTION**

The Moving Defendants[1] submit this Memorandum in support of their motion pursuant to Fed.R.Civ.P. 56(c)(2) for an Order striking two exhibits submitted by Plaintiff Sunco Timber (Kunshan) Co., Ltd. ("Sunco China") in support of their Motion for Summary Judgment. Specifically, the Moving Defendants seek to have the Court strike Exhibit 15 (Doc. No. 223-17), entitled "Shanghai International Economic and Trade Arbitration Commission (Shanghai International Arbitration Center) Arbitration Result" (hereinafter "2021 Arbitral Award"), and Exhibit 16 (Doc. No. 223-18), entitled "Notice of Case Conclusion" from the record, and thereby give the documents no weight in assessing the parties' summary judgment motions.

There are four independent grounds on which the Court should grant the Motion to Strike:

(1) Plaintiff's reliance on the 2021 Arbitral Award is precluded by the Court's ruling on Defendants' Motion for Sanctions;

(2) Plaintiff failed to confirm the 2021 Arbitration Award under the New York Convention and Federal Arbitration Act;

(3) the 2021 Arbitration Award is inadmissible hearsay and/or more prejudicial than probative; and

(4) equity precludes the 2021 Arbitral Award's admission as the Award resulted from significant procedural and other irregularities that call into doubt whether Sunco US was afforded adequate due process in the Arbitration.

**FACTS RELEVANT TO THE MOTION TO STRIKE**

The instant case relates to a long-running dispute between a Chinese-based company – Jiangsu QiYi ("QiYi") and a U.S.-based company – Sunco Inc. ("Sunco US"), concerning QiYi's purchase of, and failure to pay for, shares in Plaintiff ("Sunco China") from Sunco US.

---

[1] The Moving Defendants are David Sun ("David"), Shillock Yuan-Sun ("Shillock"), Infinity Wood Products, LLC ("IWP"), Sunco, Inc. ("Sunco US"), Eastman Street Distributors LLC ("ESD"), Eastman Street Woodworks, Inc. ("ESW"), and Infinity Realty Company LLC ("IRC").

As the Court is aware, the instant action relates to the shipment of cabinets ("Cabinets") from Sunco China to Infinity Wood Products, LLC ("IWP") – an entity affiliated with Sunco US – with an invoice amount of approximately $6.7 million. Doc. No. 61 (Am. Compl.) ¶ 52.  Plaintiff claims that IWP was obligated, and failed, to pay for those cabinets.  Moving Defendants contend that Plaintiff, Sunco US, and QiYi all reached an agreement whereby Plaintiff agreed to forgive payables for cabinets shipped by Plaintiff to IWP (and in turn IWP would forgive payables from Sunco US for those same cabinets) as payment for the outstanding purchase price QiYi had yet to pay for its acquisition of its 52 percent share of Plaintiff from Sunco US.  As the Moving Defendants asserted in their answer to the original complaint, in April 2023, Sunco China was not owed payment for the Cabinets as the Cabinets "would be treated as payment by Sunco's majority shareholder for the purchase of its shares." Doc. No. 35 at p. 17 (Nineteenth Affirmative Defense); Doc. No. 104 at p. 18 (Twentieth Affirmative Defense).

Plaintiff now attempts, for the first time, to assert that payment for QiYi's acquisition of shares in Sunco China has already been adjudicated. Doc. No. 223 at p. 7; Doc. No. 224 at p. 5-8. In support of this assertion, Plaintiff relies upon (1) the 2021 Arbitral Award; and (2) the Notice of Case Conclusion.

Despite Defendants' assertions throughout this litigation that the Cabinets were payment for QiYi's purchase of the majority shares in Sunco China, Plaintiff has never sought to confirm the 2021 Arbitral Award and has refused discovery into the arbitration (the "2021 Arbitration") underlying the award.  Plaintiff's claim that the 2021 Arbitral Award was enforced by the Chinese courts relies on the Notice of Case Conclusion.

Plaintiff's reliance upon this court document is surprising, given that Plaintiff has asserted *under oath* in this case that Chinese court documents are "not recognizable in this Court," and that

"Chinese courts do not serve as impartial tribunals and do not provide the same level of rigorous application of the law to facts as do American courts.  Historically, the Chinese government is selective in what decisions it will enforce."  Ex. A (Plaintiff's First Supplemental Response to Linda Sun's First Sets of Interrogatories #7 and #8) at p. 2.  Plaintiff also asserted *under oath* that "Chinese courts do not provide impartial tribunals or procedures compatible with the requirements of due process of law."  Ex. B  (Plaintiff's Second Supplemental Response to Linda Sun's First Sets of Interrogatories #7 and #8) at p. 2-3.  Finally, Plaintiff refused to acknowledge the legitimacy of the ruling in Linda's favor that is the subject of Linda's counterclaim by arguing that "the judgment cannot be recognized due to a lack of reciprocity" and further criticizing the judgment from a Chinese court provided by Linda by arguing that "Defendant has only provided a Notarial Certificate of the Chinese Judgment, but has not identified any other documents, facts, witnesses or evidence supporting or suggesting that the purported Chinese judgment can be recognized."  Ex. A (Plaintiff's First Supplemental Response to Linda Sun's First Sets of Interrogatories #7 and #8) at p. 2.[2]

For the reasons set forth below, Exhibits 15 and 16 (Doc. Nos. 223-17 and 223-18) should be stricken from the record and the Court should give no weight to those exhibits or the arguments that rely upon them in considering the parties' motions for summary judgment.

---

[2] Plaintiff, on the other hand, has not even provided a "Notarial Certificate of the Chinese Judgment" with respect to the enforcement upon which it now asks the Court to rely, and has failed to comply with Fed. R. Civ. P. 44(a)(2)(A)(ii).

3

## LEGAL ARGUMENT

### A. The Court's Sanctions Order Precludes Plaintiff from Relying on the Arbitration Award

As a result of Plaintiff's conduct at depositions conducted in Bangkok, Thailand, Defendants filed a Motion for Sanctions. The Court has granted that motion in part, taken the remainder under advisement, and has issued an order that "Plaintiff is precluded from introducing any evidence that Plaintiff failed to disclose in its Rule 30(b)(6) testimony." Doc. No. 218 (the "Sanctions Order"). In addition, the Court ruled that "Plaintiff is precluded from relying on any document not produced before 9/28/25." *Id*.

Defendants sought discovery into, *inter alia*, any amendments to the share transfer agreement between Sunco US and QiYi as well as any arbitrations between any of the parties in this case or their shareholders. Doc. No. 199-57 (Plaintiff's Responses to Infinity Defendants Requests for Production of Documents) at p. 18. In response to document requests seeking documents relating to arbitrations between the parties or their shareholders, Plaintiff refused to produce any documents related to the 2021 Arbitration. *Id*. at p. 18-19. For example, in response to the requests that Plaintiff produce any documents concerning litigation and/or arbitration involving Plaintiff and Linda, David, or Sunco US as well as any litigation or arbitration between Plaintiff and any of its shareholders, Plaintiff refused to produce any documents other than with respect to the court case Plaintiff brought against Linda in China that is the basis for Linda's counterclaim in this action. *Id*.

In addition to seeking documents, Defendants sought deposition testimony from Plaintiff relating to, *inter alia*, IWP's affirmative defense to Plaintiff's breach-of-contract claim. Defendants served a Rule 30(b)(6) notice on Plaintiff that contained a list of topics including, among others, "QiYi's acquisition of shares in Sunco China, including…any alleged amendments to such agreement…and any amendments to the terms of acquisition." Doc. No. 199-5 (Rule 30(b)(6)

4

Notice of Deposition of Plaintiff) at p. 7.  Defendants also included the topic of "Litigation or arbitration concerning the Share Acquisition" and "litigation or arbitration concerning any of the…affirmative defenses in this case."  Doc. No. 199-5 (Rule 30(b)(6) Notice of Deposition of Plaintiff) at p. 9.

Plaintiff designated Bing Zhao as its Rule 30(b)(6) designee on the foregoing topics.  When asked about arbitration, he testified as follows:

Q Do you know what an arbitration is?

**A Regarding arbitration, I don't have a clear understanding of it.**

Q Do you know that you were designated by Plaintiff to testify about Plaintiff's knowledge about certain arbitrations in this case?

**A I don't know.**

Doc. No. 199-7 (B. Zhao Dep. (Vol. II)) at 301:17-23.

Similarly, when Mr. Zhao was asked about any amendments to the share acquisition agreement, he testified as follows:

Q Are you prepared to testify about any amendments to the share transfer agreement that occurred after October of 2014?

ATTORNEY DAI: Objection.

**A I think you should ask the parties for the share transfer.**

Q Are you aware of whether there were any amendments to the share transfer agreement after October of 2014?

**A Regarding October, I don't recall the specific date. If you were asking me about sometime after October of 2014, I would say that there are three stages to these agreements. One was in July of 2014, and also September of 2014, and also October of 2014. Based on what I know, all these three agreements are valid.**

Q Do you know whether there were any amendments to the agreement after October of 2014?

ATTORNEY DAI: Objection. Asked and answered.

**A I'm not sure about that.**

Doc. No. 199-7 (B. Zhao Dep. (Vol. II)) at 300:17-301:12.

Now, however, Plaintiff seeks to introduce the 2021 Arbitral Award, despite not having disclosed such award as the basis for any of its claims or defenses in this case, and notwithstanding that the 2021 Arbitration Award is based on purported amendments to the share transfer agreement that QiYi claims – falsely, as discussed below – that Linda signed. Moreover, Plaintiff seeks to rely on this Award as evidence to try to rebut the existence of the amendment to the share transfer agreement that resulted in the payables on the cabinets at-issue being forgiven. Plaintiff failed to disclose this evidence at its Rule 30(b)(6) deposition and, pursuant to the Court's order, "Plaintiff is precluded from introducing any evidence that Plaintiff failed to disclose in its Rule 30(b)(6) testimony." Doc. No. 218. Accordingly, the 2021 Arbitration Award should be stricken. In addition, Plaintiff attempts to use the Arbitral Award as an end-run around the Court's Sanctions Order prohibiting Plaintiff from relying on any document not produced before September 28, 2025 by trying to rely on the Arbitral Award's references to the same two documents – purported agreements – that the Court ruled Plaintiff could not use as evidence because they were produced too late. *See* Doc. No. 201 at 23.

### B. Plaintiff's Failure to Confirm the Arbitration Award under the New York Convention and the Federal Arbitration Act Bars any Preclusive Effect

In its Motion for Summary Judgment, Plaintiff contends that the 2021 Arbitral Award, attached as Exhibit 15, demonstrates that IWP's defense to Plaintiff's breach-of-contract claim is "absurd." Nowhere, however, does Plaintiff argue that the Award should be given preclusive effect, presumably because Plaintiff cannot satisfy the standard for doing so. "Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties from relitigating claims that were or could have been raised in the prior action. . . . In Massachusetts, res judicata requires

6

three elements: (1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." *Jones v. Experian Info. Sols., Inc.*, No. CIV.A. 14-10218-GAO, 2015 WL 4095432, at *2 (D. Mass. July 7, 2015)(O'Toole, J.) (internal citations omitted).

The test for collateral estoppel is similar: "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication is identical to the issue in the current adjudication; and (4) the issue decided in the prior adjudication was essential to the earlier judgment." *Kersey v. Avery Dennison Corp.*, 456 F. Supp. 3d 288, 293 (D. Mass. 2020)(Gorton, J.).

Plaintiff cannot assert either res judicata or collateral estoppel[3] as there is no final judgment on the merits – rather, there is an unconfirmed arbitration award. "Arbitral awards are not judgments[.]" *Wolf v. Gruntal & Co.*, 45 F.3d 524, 528 (1st Cir. 1995). It is only once an arbitral award has been confirmed by a court of competent jurisdiction, and judgment has been entered confirming the arbitral award, that the award can have preclusive effect. *See* 9 U.S.C. § 13 ("The judgment [confirming the arbitral award] so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered."); *see also In re McCoy*, No. 2:25-AP-02008-BPH, 2026 WL 816234, at *11-12 (Bankr. D. Mont. Mar. 24, 2026) ("An unconfirmed arbitration award is not synonymous with a final judgment, and a final judgment is required for issue preclusion to apply.")

---

[3] Plaintiff's res judicata and collateral estoppel claims would also fail as there is no identity of the parties between parties to the 2021 Arbitral Award and the instant case. The parties to the 2021 Arbitral Award were Sunco US and QiYi. QiYi is not a party in the instant litigation, nor was Sunco China, the party now claiming res judicata and collateral estoppel, a party in the 2021 Arbitral Award.

In this case, Plaintiff has not even attempted to have the 2021 Arbitral Award recognized and enforced in this Court, and it cannot seek to do so now. The 2021 Arbitral Award relates to an arbitration between Sunco US, a United States-based company, and QiYi, a Chinese company, which took place between Sunco US and QiYi in Shanghai, China. As such, the Arbitration Award is a foreign arbitral award subject to the Convention of the Recognition and Enforcement of Foreign Arbitral Awards (New York, 1958) (the "New York Convention"). *See Convention on the Recognition and Enforcement of Foreign Arbitral Awards*, June 10, 1958, 21 U.S.T. 2517 Article I; 9 U.S.C. § 202. Both the United States and China have ratified the New York Convention. *See* 9 U.S.C. § 201; *see also* https://uncitral.un.org/en/texts/arbitration/conventions/foreign_arbitral_awards/status2 (last visited May 19, 2026). The United States has codified the procedures for recognition of foreign arbitral awards under the New York Convention in Chapter 2 of the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. §201 et seq.

The FAA provides a three-year limitations period on seeking confirmation of a foreign arbitral award. 9 U.S.C. § 207. Thus, Plaintiff had until April 29, 2021 – three years from the issuance of the Arbitral Award – to seek confirmation in a court of competent jurisdiction. 9 U.S.C. § 207. The three-year limitations period has lapsed and Plaintiff cannot seek enforcement now. *See Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 581 (2d Cir. 1993), *as amended* (May 25, 1993) (reversing and remanding grant of summary judgment with instructions to dismiss, as time-barred, cause of action seeking enforcement of the arbitral award pursuant to the New York Convention); *see also Sistem Muhendislik Insaat Sanayi Ve Ticaret, A.S. v. Kyrgyz Republic*, No. 12CIV4502ALCRWL, 2019 WL 8437454, at *6 (S.D.N.Y. Oct. 1, 2019), report and

8

recommendation adopted, No. 12-CV-4502 (ALC), 2020 WL 898215 (S.D.N.Y. Feb. 25, 2020)

("The Kyrgyz Award, however, issued in 2011, more than eight years ago. Neither the Republic nor

SKMP Ak-Keme sought to confirm the Kyrgyz Award in this Court (or any other U.S. Court) at any

point before the limitations period expired in 2014, and they could not do so now. . . . If the

[Kyrgyz] Republic wanted to assert the Kyrgyz Award against Sistem, the time to do so was more

than five years ago.").[4]

### C.  The Arbitration Award is Inadmissible Hearsay and/or Is More Prejudicial than Probative

Perhaps recognizing this insurmountable hurdle, Plaintiff does not explicitly seek to have the

Court give the Award preclusive effect.  Instead, Plaintiff appears to be relying upon the Award as

evidence to argue that no agreement was reached forgiving the payable on the cabinets at issue,

which is itself improper.  The Award is hearsay.  It also is more prejudicial than probative.

Plaintiff seeks to rely upon the 2021 Arbitral Award to support its claim that purchase price

for QiYi's acquisition of shares in Sunco China was fully satisfied, i.e., it seeks to rely on the

Award for the truth of the assertions in the Award.  As such, it is classic hearsay and does not meet

any of the exceptions to the hearsay rule.  Courts have excluded arbitration awards for exactly that

reason.  See, e.g., *Lobster 207, LLC v. Pettegrow*, No. 1:19-CV-00552-LEW, 2023 WL 4882808, at

*2 (D. Me. Aug. 1, 2023) ("As a general rule, an arbitrator's award, like the decision of a judge, is

inadmissible hearsay when offered to prove the truth of the findings found therein unless an

exception to the hearsay rule applies . . . An arbitration award does not fit within the public record

---

[4] If Plaintiff were instead to seek to enforce a Chinese court's confirmation of the 2021 Arbitral Award – which Plaintiff claims exists but of which it has provided no proof – Plaintiff would be faced with taking directly contradictory positions in this case, claiming in response to Linda's counterclaim that judgments from Chinese courts *should not* be enforced because Chinese courts do not follow due process and that Chinese judgments are, as a blanket rule, unenforceable in the United States (*supra* at p. 2-3), while simultaneously claiming in response to IWP's affirmative defense to Plaintiff's breach-of-contract claim that the alleged Chinese judgment confirming the 2021 Arbitration Award *should* be enforced in this case.

exception of Rule 803(8) for reasons articulated by the Tenth Circuit in *Herrick*, 298 F.3d at 1192"); *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 329 (S.D.N.Y. 2009) ("The Court agrees with Defendants that the Arbitration Decision should be excluded as hearsay."); *LoCurto v. AT&T Mobility Servs. LLC*, No. 13CIV4303ATKNF, 2018 WL 11604501, at *4 (S.D.N.Y. Sept. 26, 2018) ("The Court also concludes that the Arbitrator Opinion is inadmissible because it is hearsay."); *Morris v. BNSF Ry. Co.*, 429 F. Supp. 3d 545, 565 (N.D. Ill. 2019), aff'd, 969 F.3d 753 (7th Cir. 2020) (finding "no error in the Court's conclusion that the arbitration order is inadmissible hearsay."); *cf. Kirouac v. Donahoe*, No. 2:11-CV-00423-NT, 2013 WL 5952055, at *8 (D. Me. Nov. 6, 2013) ("the Court notes the strong possibility that the arbitrator's decision might also constitute inadmissible hearsay," though declining to decide the admissibility of the decision because the plaintiff may open the door).

Even assuming, *arguendo*, Plaintiff had successfully sought to have the 2021 Arbitral Award confirmed, the Award would still be inadmissible hearsay, as court judgments do not fall in the Rule 803(8) exception to hearsay. *See*, *e.g.*, *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007) ("A court judgment is hearsay 'to the extent that it is offered to prove the truth of the matters asserted in the judgment.'"); *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993) (finding that court orders are inadmissible hearsay); *United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994) (same). As the Tenth Circuit explained in *Herrick v. Garvey*:

> "Federal Rule of Evidence 803(8) allows for the admission of "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... factual findings resulting from an investigation made pursuant to authority granted by law." Rule 803(8) was not intended to allow the admission of findings of fact by courts. Rule 803(8) is limited to investigations: "A judge in a civil trial is not an investigator, rather a judge." *Nipper v. Snipes,* 7 F.3d 415, 417 (4th Cir. 1993).

298 F.3d 1184, 1192 (10th Cir. 2002).

Some courts that have analyzed the admissibility of arbitration awards have discussed the matter in terms of balancing the prejudicial and probative value of the award, rather than in terms of hearsay, and have excluded arbitral awards on that basis. *See*, *e.g.*, *Hayes v. Town of Dalton*, No. 3:21-CV-30055-KAR, 2025 WL 918684, at *6 (D. Mass. Mar. 25, 2025) (Robertson, M.J.) ("While there is some authority for treating an arbitrator's decision as hearsay, the court's decision to exclude the arbitrator's decision rests on other grounds…The arbitrator's decision addresses questions that are at the core of this case and there is a risk that a jury would afford the arbitrator's decision undue weight. That risk 'substantially outweigh[s]' the opinion's probative value." (internal citations omitted); *Moore v. Sequeira*, No. 3:21-CV-00787 (VAB), 2024 WL 1013301, at *5 (D. Conn. Mar. 8, 2024) (excluding arbitration award because "the 'allure of a prior expert adjudication [may] be strong for a jury,' and therefore its potential prejudicial effect outweighs any alleged probative value." (citations omitted)); *cf. Green v. Kanazawa*, No. CV 16-00054LEK-KSC, 2018 WL 6628935, at *2 (D. Haw. Apr. 17, 2018) ("Even if these arbitration decisions are admissible under exceptions to the hearsay rule under Fed.R.Evid. 801 and 803(6), this Court still has a duty to weigh the probative value of the evidence against potential for prejudice or confusion under Fed. R. Evid. 803.")[5]

### D. The 2021 Arbitration Award Resulted from Procedural Defects and Other Irregularities that Make it Unenforceable

---

[5] Even if the Award were not hearsay or more prejudicial than probative, the Award fails to satisfy other requirements of the Federal Rules. Fed.R.Evid. 902(3) requires that documents "offered in a U.S. court must be attested to by a person authorized by a foreign country's laws and be accompanied by a final certification by a U.S. diplomatic person attesting to the genuineness of that person's signature and his or her official position. Failure to comply with the Rule 902(3) renders the document inadmissible." *Robinson v. Raytheon Tech. Servs. Co.*, No. 13-CV-12705-RGS, 2014 WL 1784863, at *4 (D. Mass. May 2, 2014) (Stearns, J.). In addition, the records do not meet Fed.R.Civ.P. 44(a)(2)(A)'s requirements that they either be an "official publication of the record" or be apostilled.

Because Plaintiff has not sought to confirm that 2021 Arbitral Award, but rather merely seeks to rely on it as evidence, Defendants have not had the opportunity to challenge the basis for the award.  This is no mere procedural nicety.  There are significant issues with the award and the procedure the arbitral tribunal followed that call into doubt the enforceability of the award.

1.    Sunco US Was Denied Due Process in the 2021 Arbitration

Article V(1)(b) of the New York Convention provides that enforcement of an arbitral award can be refused if "[t]he party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case." Additionally, Article V(1)(d) establishes that enforcement can be refused if "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties".

There were several procedural irregularities with the appointment of the arbitrators in the 2021 Arbitration that ultimately resulted in a denial of due process for Sunco US.  First, Sunco US did not appoint an arbitrator in the 2021 Arbitration. Accompanying this Motion is an Affidavit from Donald J. Lewis, Esq. (the "Lewis Affidavit"), filed contemporaneously herewith, an expert in Chinese law who has taught at law schools in the United States as well as mainland China, including Harvard Law School, Stanford Law School, Nankai University – where he was a Fulbright Law Professor – Zhongshan University, Peking University, and others.

As set forth in the Lewis Affidavit, rather than Sunco US being able to appoint one of the three arbitrators itself, as is the common and expected practice, the institution administering the 2021 Arbitration – the Shanghai International Economic and Trade Arbitration Commission ("SHIAC") – appointed an arbitrator from China on Sunco US's behalf. (Lewis Aff.) ¶ 14. In Chinese arbitrations, in practice, party-appointed arbitrators typically take a sympathetic view towards the party who appointed them, and may even take on an advocacy role, explaining the

12

appointing party's position to the other tribunal members in the course of proceedings. *Id.* At the very least, an arbitrator from a country other than China would likely not have the same bias in favor of a Chinese company or Chinese resident that a Chinese arbitrator would be more apt to have. *Id.* ¶ 15. In recognition of this possibility for bias, SHIAC has a "Panel of Foreign Arbitrators" list it maintains specifically for use in international arbitrations, a list that inexplicably was not provided to Sunco US, thereby depriving Sunco US of the opportunity to select an arbitrator less likely to be biased against it. *Id.* ¶ 18. In contrast, Qiyi was able to appoint its own arbitrator. *Id.* ¶ 17. QiYi, unsurprisingly, selected an arbitrator from China. *Id.*

The third arbitrator – the presiding arbitrator – was also appointed without Sunco US's input, contrary to the standard procedure. *Id.* ¶¶ 19-21. Instead, SHIAC appointed the presiding arbitrator, who, like the other two tribunal members, was from Mainland China. *Id.* Thus Sunco US, a U.S. company owned by a Taiwanese-born American, was facing an entirely Mainland China-based tribunal with all proceedings occurring only in Chinese. Id. ¶¶ 18; 19-22. It is exceedingly rare that in an international arbitration such as the 2021 Arbitration, the tribunal is composed of panelists of the same nationality. *Id.* ¶ 19. That irregularity is particularly troublesome where the nationality of the panelists is the same as the nationality of only one of the parties. *Id.* ¶ 21. One of the most salient benefits of international arbitration is that parties can counteract national biases by selecting arbitrators of various nationalities, yet here Sunco US was not afforded that protection. *Id.* ¶¶ 19, 21, 22.

There is strong evidence that these procedural irregularities worked to Sunco US's detriment. Among other things, breaking with the typical procedure, the panel of arbitrators decided *not* to utilize powers explicitly bestowed by the SHIAC Rules to investigate and adjudicate evidentiary issues. *Id.* ¶ 13. SHIAC arbitrations, and international arbitrations in China generally,

13

differ significantly from traditional domestic U.S. arbitrations in that it is not only permissible, but customary for the arbitrators themselves to engage in investigation, particularly where, as with the 2021 Arbitration, there are allegations that documents were not authentic and may have been forgeries. *Id.* ¶¶ 25, 26. As part of the Arbitration, QiYi introduced alleged agreements signed by Linda Sun that purported to bestow a windfall upon QiYi. *Id.* ¶ 27. Sunco US contested the validity of those alleged agreements, asserting that QiYi forged Linda Sun's signatures on the share transfer agreements and offset agreements. *Id.* SHIAC could have investigated under SHIAC Rule 38, which provides that panels "may, on its own initiative, undertake investigations and collect evidence it considers necessary." *Id.* But it declined to do so here, notwithstanding that such investigations are customary and expected in cases like these. *Id.* ¶ 28. The arbitrators ultimately relied upon those agreements in issuing the 2021 Arbitral Award. *Id.* ¶ 27.

The significance of the arbitrators' decision to refuse to investigate the authenticity of the purported agreements introduced by QiYi in the Arbitration or to appoint an expert to examine the documents is demonstrated by what happened when an arbitration panel *did* follow customary and expected procedure in a separate arbitration proceeding brought by QiYi against Sunco US and Linda (the "Second Arbitration"), also at SHIAC. *Id.* ¶¶ 29, 30. In the Second Arbitration, QiYi sought to introduce a purported agreement signed by Linda and Sunco US, and Linda contested the authenticity of the document. *Id.* The panel of arbitrators in the Second Arbitration appropriately exercised its powers, examining the authenticity of the document in question and appointing an expert to do a forensic analysis. *Id.* ¶ 30. That forensic analysis concluded that the purported agreement introduced by QiYi was, in fact, a sham. *Id.* ¶ 31. The panel in the Second Arbitration reviewed the expert's forensic analysis and also concluded that the purported agreement was a sham. *Id.*

According to both the neutral forensic expert and the Second Arbitration panel's ruling on the authenticity of the document, the purported agreement introduced by QiYi was not authentic. *Id.* QiYi had taken a six-page agreement dated September of 2014, changed provisions contained in the first three pages of the agreement in a way that benefitted QiYi to the tune of millions of dollars, left in place page 4, on which Linda's signature was found, printed out those new, altered first three pages and put them in front of the last three pages of the original agreement, then submitted the six pages together, with Linda's original signature on page 4. *See Id.*, Ex. 3. The forensic expert concluded that the first three pages of the purported agreement were *not* printed at the same time as the signature page and the two pages that followed it. *Id.*

The purported agreements at issue in the 2021 Arbitration also involved documents QiYi claimed that Linda signed that Linda insisted she had not signed.  *Id.*, Ex. 2 at 10. Because the tribunal in the 2021 Arbitration did not follow customary and expected procedures and failed to investigate the authenticity of the documents as well as failed to appoint an expert to analyze the documents, we cannot know what such investigation or expert analysis might have found. *Id.* ¶ 32. What we do know is that at least one forensic expert and at least one arbitration tribunal found sufficient evidence to determine that QiYi was willing to present a sham agreement to a SHIAC arbitration panel. *Id.* ¶¶ 30, 31.

In addition to the procedural irregularities in the appointment of two of the three arbitrators and the irregularity of the arbitrators in the 2021 Arbitration failing to investigate or to appoint a forensic expert, the arbitration was further irregular in that the tribunal failed to utilize the frequently used Arb-Med procedure, which encourages the resolution of cases. *Id.* ¶¶ 33-34.

There are potentially two additional procedural irregularities with the 2021 Arbitral Award itself.  First, there is a SHIAC rule requiring that all arbitration awards undergo a mandatory review

by the SHIACH Commission, and there is no indication that the 2021 Award underwent such review. *Id.* ¶ 35. This review is a protective measure to ensure the quality of the arbitral awards. *Id.* Typically, when arbitrators issue awards after having complied with the mandatory review process, the award indicates in some fashion that such review has been conducted, yet nothing to that effect can be found in the 2021 Arbitral Award. *Id.*  The absence of an indication that the mandatory review was conducted is not definitive proof that no such review occurred, but it raises significant questions as to whether the proper procedure was followed.  The second irregularity is the award was rendered more than a year after it was required to be rendered under the SHIAC Rules, with no explanation given for this very long delay. *Id.* ¶ 36.

One final irregularity is that the Panel awarded QiYi relief it never requested, requiring Sunco US to pay 80 percent of the costs of the arbitration and arbitrator fees without providing a justification. *Id.* ¶ 37.

Any one of these procedural irregularities alone would raise serious concerns about the fairness of the 2021 Arbitration.  When put together, they cast significant doubt regarding whether Sunco US was afforded due process. As Mr. Lewis explains, corruption is, unfortunately, an all-too-common aspect of the legal system in China. *Id.* ¶ 42.  The conduct of Sunco US's Chinese lawyers in the 2021 Arbitration raises questions about whether such corruption may have been present.  In addition to failing to ensure the protections SHIAC's rules provide to non-Chinese parties to arbitrations, Sunco US's counsel abruptly ceased all communications with Sunco US after the 2021 Arbitral Award was rendered, necessitating the retention of new counsel. *Id.* ¶¶ 40, 41. As with lawyers in the United States, lawyers in China are bound by a duty to their clients and even their former clients, and Sunco US's Chinese counsel's refusal even to respond to communications is a

breach of that duty. *Id.* ¶ 41. While such behavior is not definitive proof of corruption, it does raise concerns about whether corruption occurred.

For all these reasons, equity demands that the 2021 Arbitral Award be stricken from the record, and not be given any preclusive effect.

### 2. Allowing Introduction of the 2021 Arbitral Award Would Necessitate a Trial within Trial

If the Court were to allow Plaintiff to introduce the 2021 Arbitral Award at trial, then fairness would dictate that Defendants be given an opportunity to attack the fairness of the arbitration, as set forth above.  Fairness would also dictate that Defendants be permitted to introduce evidence from the Second Arbitration showing that QiYi has been found to have relied upon sham documentation when arbitrating.  Plaintiff cannot be allowed to introduce evidence of the 2021 Arbitration Award while seeking to keep out all evidence calling into question its validity, and what would result would effectively be a mini-trial on the Award's validity.  *See, e.g.*, *Lobster 207*, 2024 WL 4826885, at *2 (D. Me. Nov. 19, 2024) ("instructing a jury…about how to weigh the probative value of an arbitration award would result in a trial within a trial concerning the qualities of the arbitration process, etc., a potentially serious diversion that would result in not only unfair prejudice but also confusion and a waste of time."); *Kirouac*, 2013 WL 5952055, at *7 (D. Me. Nov. 6, 2013) (noting that concerns about the admissibility of an arbitration award "would be compounded by the confusion and waste of time that admitting evidence regarding the arbitration would entail. If the Court allowed the arbitration decision to reach the jury, even in redacted form, the Court would be obliged to allow the Plaintiff to attack the decision's basis and present evidence...").

### CONCLUSION

WHEREFORE, the Moving Defendants respectfully move that this Court strike Plaintiff's Exhibit 15 and Exhibit 16 from the record and afford the exhibits no preclusive effect.

Dated: May 27, 2026                    Respectfully submitted,


                                       DEFENDANTS DAVID SUN,
                                       SHILLOCK YUAN-SUN, INFINITY
                                       WOOD PRODUCTS, LLC, SUNCO,
                                       INC., EASTMAN ST. DISTRIBUTORS,
                                       LLC, EASTMAN ST. WOODWORKS,
                                       INC., and INFINITY REALTY CO. LLC

                                       By their attorneys:

                                       */s/ Malgorzata A. Mrozek*
                                       Peter E. Ball (BBO No. 546031)
                                       Michele E. Connolly (BBO No. 680946)
                                       Malgorzata Mrózek (BBO No. 699035)
                                       FITCH LAW PARTNERS LLP
                                       84 State St.
                                       Boston, MA 02109
                                       (617) 542-5542
                                       peb@fitchlp.com
                                       mec@fitchlp.com
                                       mam@fitchlp.com


### Certificate of Service

        I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 27, 2026.


                                       */s/ Malgorzata A. Mrozek*
                                       Malgorzata A. Mrozek


18