**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SUNCO TIMBER (KUNSHAN) CO., LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 1:22-cv-10833 |
| v. | ) |
| | ) |
| LINDA SUN, individually, DAVID SUN, individually | ) |
| SHILLOCK YUAN-SUN, individually, and INFINITY | ) |
| WOOD PRODUCTS, LLC., | ) |
| | ) |
| Defendants, | ) |
| | ) |
| SUNCO, INC., EASTMAN ST. DISTRIBUTORS LLC, | ) **DECLARATION OF** |
| EASTMAN ST. WOODWORKS, INC., | ) **DONALD J. LEWIS, J.D., L.L.M.** |
| INFINITY REALTY COMPANY LLC, and | ) |
| NEW SUN LIMITED PARTNERSHIP | ) |
| | ) |
| Reach and Apply Defendants, and | ) |
| Fraudulent Conveyance Defendants | ) |
| | ) |
| Linda Sun | ) |
| | ) |
| Counterclaim Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Sunco Timber (Kunshan) Co., Ltd. | ) |
| | ) |
| Counterclaim Defendant. | ) |
| | ) |
| Sunco, Inc. | ) |
| | ) |
| Counterclaim Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Sunco Timber (Kunshan) Co., Ltd. | ) |
| | ) |
| Counterclaim Defendant. | ) |

I, Donald J. Lewis, J.D., L.L.M., do hereby depose and state as follows:

1.      I completed my J.D. at Emory University School of Law, and completed my LL.M. from the University of London, School of Oriental and African Studies (SOAS).

2.      I have been an academic focused on Chinese and Hong Kong law with appointments as a visiting and affiliated faculty member at law schools in the United States, including Stanford Law School and Harvard Law School, as well as having been a tenured Associate Professor of Law at the University of Hong Kong Faculty of Law for 23 years.

3.      I have also taught at law schools in Mainland China, including as a Fulbright Law Professor at Nankai University (Tianjin) and Zhongshan University (Guangzhou), as a Visiting Professor at Peking University School of Law, and, as a Visiting Professor and Foreign Law Expert/Lecturer at the China University of Political Science and Law (CUPL) in Beijing and as Visiting Professor at the University of International Business and Economics (UIBE) School of Law also in Beijing.

4.      I have also acted as a Chinese and Hong Kong law expert in the federal courts for over 34 years - including federal district courts in California, New York, Washington, D.C., and Texas, as well as courts in Australia, South Africa, Hong Kong, and Canada.

5.      In addition to my work as a professor and expert, I have more than 35 publications focused in the area of Chinese law. I am also the co-founder of the China Law section of the Hong Kong Law Journal. My full *curriculum vitae* is attached hereto as **Exhibit 1**.

6.      I have been engaged by counsel for Defendants David Sun ("David"), Shillock Yuan-Sun, Infinity Wood Products, LLC, Sunco, Inc., Eastman St. Distributors LLC, Eastman St.

Woodworks, Inc., and Infinity Realty Company LLC (all these defendants are collectively "Defendants"[1]) in the above-captioned matter (the "Litigation").

7.      My engagement is to review the arbitral proceedings of an arbitral tribunal ("SHIAC Tribunal") of the Shanghai International Economic and Trade Arbitration Commission (Shanghai International Arbitration Center), ("SHIAC"), as well as the circumstances surrounding the arbitration ("SHIAC Arbitration") and the underlying dispute between Sunco, Inc. ("Sunco US"), a U.S. corporation ("the Applicant" in the SHIAC Arbitration), and Jiangsu Qiyi Investment Co. Ltd. ("Qiyi"), a Mainland China company ("the Respondent" in the SHIAC Arbitration), relating to the ownership of shares in Sunco Timber (Kunshan) Co., Ltd. ("Sunco China").

8.      In the SHIAC Arbitration, Sunco US brought claims against Qiyi alleging that Qiyi failed to pay Sunco US the share transfer price of CNY 15 million for the 52% of shares in Sunco China purchased by Qiyi from Sunco US.  Sunco US requested that Qiyi be required to pay (1) the balance on the share transfer payment, approximately 15 million CNY; (2)  interest on the delayed payment of the share transfer price; (3) liquidated damages of CNY 3 million; and (4) the costs of the arbitration.

9.      The SHIAC Arbitration was initiated by Sunco US on July 3, 2019. On July 9, 2019, SHIAC issued a notice of acceptance of arbitration. On August 23, 2019, Respondent submitted its written defense and evidentiary materials.  The SHIAC Tribunal was constituted on October 30, 2019. The merits hearing took place on November 25, 2019. The arbitration award was rendered on April 29, 2021 ("2021 Arbitral Award").

---

[1] I understand there are two additional defendants in this case, Linda Sun and New Sun Limited Partnership, that are represented by a different law firm.  I was not engaged by them in this matter.

10.    In connection with this engagement, I have reviewed:

     a.    The 2021 Arbitral Award issued by SHIAC Tribunal on April 29, 2021 (attached as Exhibit 2);

     b.    an arbitral award, dated January 19, 2026, issued by a SHIAC Tribunal in a separate arbitration commenced by Qiyi against Sunco US and Linda Sun on December 30, 2021 (attached as Exhibit 3); and

     c.    A copy of the SHIAC Arbitration Rules (2015) (attached as Exhibit 4).

     d.    Laws of the People's Republic of China (hereafter "PRC"), including the PRC Arbitration Law (1995); PRC Civil Procedure Law (2017); PRC Lawyers Law (2017); and the UN Convention on the Recognition and Enforcement of Foreign Arbitral Awards (1958) (New York Convention)

11.    In addition, I had several conversations with David Sun regarding the SHIAC Arbitration and I note herein when I am relying upon those conversations.

12.    Based upon my review of 2021 Arbitral Award, there were many irregularities associated with this Chinese arbitration, its surrounding circumstances, and the eventual 2021 Arbitral Award.  As a result, in my opinion, Sunco US was denied due process in this arbitration.

13.    The procedural irregularities and due process defects were in contravention of the SHIAC Arbitration Rules (2015) (the operative rules for the arbitration), the PRC Arbitration Law (1995), the PRC Civil Procedure Law (2017), and the UN Convention of the Recognition and Enforcement of Foreign Arbitral Awards (New York, 1958) (the "New York Convention").

14.    The first procedural irregularity is that Sunco US, the U.S. party, as Applicant, did not appoint any arbitrator to the tribunal, contrary to the normal practice pursuant to the SHIAC Arbitration Rules (2015) which governed this arbitration. *See* Ex. 4 (Article 22(1), SHIAC

Arbitration Rules (2015). This is highly irregular. In China, it is the standard practice for a party-appointed arbitrator to adopt a sympathetic, or at least an open, attitude to the appointing party's claims and defenses and help explain the appointing party's positions to other members of the Chinese (and Chinese-speaking) tribunal.

15.     Additionally, foreign parties will often select English-speaking or foreign arbitrators to the panel, to counteract the often seen local bias of Mainland Chinese arbitrators. Frequently in international arbitrations (and some international arbitration organizations mandate), parties will purposely select arbitrators of nationalities different than those of the parties to the proceedings, to counteract any national biases on the panel. Here, that did not occur. Instead, SHIAC appointed a Chinese arbitrator on behalf of Sunco US.

16.     Sunco US, as an American party in a foreign Chinese proceeding, during a time of high political and economic tensions between the United States and China, was deprived of this critical piece of due process that is meant to ensure that all parties, regardless of nationality or country of origin, will be treated fairly and without bias.

17.     Qiyi, in contrast, selected and appointed its own arbitrator, Ms. Ma Beiyi, to the tribunal. Ms. Ma Beiyi was Chinese. This lopsided appointment procedure was contrary to standard and customary practice.

18.     The second procedural irregularity is that it appears that Sunco US was never informed (1) that it had a legal right, under the SHIAC Arbitration Rules (2015) (Article 21.1) , to appoint an English-speaking or bilingual arbitrator or (2) that SHIAC has a Panel of Foreign Arbitrators, composed of able, internationally known arbitration lawyers and commercial judges, including from Hong Kong and foreign countries, from which non-Chinese parties frequently select arbitrators. David Sun confirmed that he was not provided either piece of information.

4

19.     Sunco US also apparently was never informed by the tribunal or Chinese counsel that, under Article 60 of the SHIAC Arbitration Rules, the SHIAC arbitration could have been conducted in English, although such option could only be exercised by agreement of the parties.

20.     The third procedural irregularity is that the presiding arbitrator was not appointed in compliance with SHIAC arbitral procedures. Under SHIAC Arbitration Rules Articles 22.2 and 22.3, Sunco US should have been afforded the opportunity to participate in the selection of the Chief Arbitrator.  *See* Ex. 4 Art. 22.2, 22.3. SHIAC itself appointed the presiding arbitrator, without consultation with Sunco US, as confirmed by Mr. Sun.

21.     The presiding arbitrator was, like the other two arbitrators, a Chinese national. Sunco US, a U.S.-based party, was therefore facing an entirely Mainland Chinese tribunal adjudicating claims against a Mainland Chinese company. Other than Sunco US, there was no international aspect to this arbitration – all other parties and arbitral entities were Chinese, none of whom had been selected by Sunco US.

22.     Fundamental to international arbitration is its independent character and high degree of party autonomy. These fundamental attributes were markedly undermined in this arbitration as it was a Chinese institutional organization, SHIAC, that dictated the composition of the arbitral tribunal and denied Sunco US, the only foreign party in the proceedings, its due process rights to be heard and its claims adjudicated by a tribunal Sunco US participated in appointing.

23.     These procedural irregularities indicate a potential bias by a Mainland Chinese arbitral institution and tribunal against a U.S. based company, owned by Asian-Americans of Taiwanese ancestry, during a time, from 2019 to 2021, of intense economic and political tensions between the United States and China. Local bias and protectionist practices in favor of Chinese-parties and against foreign parties is a long-running concern for foreign companies doing business

in China, and the key reason foreign-related arbitration awards are given special scrutiny when reviewed by Chinese courts.

24.    In addition to the procedural irregularities in the appointment of the arbitral panel (the "Panel"), there were also due process concerns during the arbitral hearing itself.

25.    Unlike in most domestic arbitrations in the United States, SHIAC arbitrators are empowered, and often expected, to perform not just an adjudicatory role, but also an investigatory role as well. That is particularly applicable when a party raises concerns about the authenticity of evidence. During the arbitral proceedings here, however, the Panel does not appear to have exercised any of its investigatory powers.

26.    During the hearing, Sunco US raised significant issues about key documents on which Qiyi relied, and specifically alleged that two key documents had been forged by Qiyi. The Panel did not investigate those allegations nor did they appoint a forensic expert to analyze the authenticity of the documents. This was highly unusual for a Chinese arbitration as it is well-known for being conducted in an inquisitorial, rather than in a lawyer/party-led adversarial, manner.

27.    Article 38 of the SHIAC Rules emphasizes that the tribunal has broad powers and "may, on its own initiative, undertake investigations and collect evidence it considers necessary." Here, where Linda Sun, Sunco US's key witness, in both her testimony at the arbitral hearing and in post-hearing submissions, stated that she had not signed two specific agreements on which Qiyi relied, and testified that they were fabricated by Guoqing Wu, the Panel's failure to exercise its investigatory powers under SHIAC Rules Article 38 or to request expert determinations under SHIAC Rules Article 39 raise significant concerns regarding the impartiality of the Panel, and deprived Sunco US of due process, a deprivation compounded by the fact that, in reaching the 2021 Arbitral Award, the Panel relied heavily on those documents that Sunco US alleged were forged.

6

28.    The consequences of the Panel's failure to invoke its investigatory powers or demand expert determinations is highlighted by the conduct of a different arbitral tribunal in a subsequent arbitration between Qiyi and Sunco US, in which the panel used its investigatory and expert-appointment authority to investigate the authenticity of a document Sunco US claimed was fabricated by Qiyi and concluded that the document was not authentic.

29.    In December 2021, Qiyi initiated a second arbitration against Linda Sun and Sunco US ("Second SHIAC Arbitration"), alleging that Sunco US was in breach of the share transfer agreement. While in the 2021 Arbitration, the parties agreed that the operative share transfer agreement was dated in September of 2014, in the Second SHIAC Arbitration, Qiyi claimed that there had been an amendment to the agreement in October of 2014, and brought its claims based on that alleged agreement.

30.    The alleged October 2014 share transfer agreement included terms giving Qiyi the remaining 48% of shares in Sunco China if receivables exceeded RMB20,000,000 by the end of 2019.  In the course of the Second SHIAC Arbitration, as in the 2021 Arbitration, Linda and Sunco US again alleged that Mr. Wu forged the agreement on which he relied.  Unlike in the 2021 Arbitration, however, the panel in the Second SHIAC Arbitration properly exercised its investigatory powers and its authority under SHIAC Rule Article 39 to request expert evaluations from the parties, which resulted in years of briefing, examination and analysis of the October 2014 share transfer agreement.

31.    On January 19, 2026, the panel in the Second SHIAC Arbitration issued its ruling on the authenticity of the alleged October 2014 share transfer agreement and, largely on the basis of an analysis performed by a neutral forensic analysis, concluded that the alleged October 2014 agreement was not authentic.

7

32.     Because the Panel in the 2021 Arbitration never investigated and never appointed a forensic expert to analyze the two agreements that were purportedly signed by Linda Sun but that Linda Sun testified she never signed, it is not possible to know with certainty whether such documents were authentic. Accordingly, Sunco US was deprived of its due process rights to have its allegations that the documents were inauthentic investigated and reviewed by an expert.

33.     A further example of potential bias against Sunco US is that the Panel apparently never undertook, or even suggested, a frequently-used, well-known Chinese form of dispute resolution, Arb-Med, i.e. the combination of arbitration with mediation, despite this being highlighted in Article 41 of the SHIAC Rules and emphasized in Articles 51 and 52 of the PRC Arbitration Law (1995). This distinctive form of consensual, informal dispute resolution stresses compromise in order to preserve the business and personal relationships of the parties.

34.     Notably, this Arb-Med procedure is typically undertaken with "friendly" parties, where there are "contradictions among the people," not "contradictions with the enemy." The absence of Arb-Med suggests that Sunco and the Suns may have been viewed by the tribunal as the "enemy" 敌人  – as capitalists, Asian-Americans, and of Taiwanese ancestry towards whom one-sided bias was justified.

35.     A fourth procedural irregularity with the arbitration itself is that there is no indication a mandatory review of the tribunal's draft award by the SHIAC Commission was conducted, as set forth in Article 48 of the SHIAC Rules. This rule was introduced several years ago to ensure that Chinese foreign-related arbitral awards were more professional and in line with international "best practices," following the model of the ICC International Court of Arbitration Rules. The purpose of such review was to add an additional layer of expertise and protection for parties, giving them confidence in the determinations of the tribunal after internal institutional review. Typically, when

8

such review has taken place, a statement or acknowledgement to that effect would be expected in the arbitral award – none exists here. If no such review was conducted, notwithstanding that it is mandatory, that would constitute a further denial of Sunco US's due process rights.

36.    A fifth, and significant, irregularity is that at the request of the Panel, for unknown reasons, the SHIAC Secretary General apparently agreed to substantially extend the time limit for rendering the award in this case from April 30, 2020 to April 30, 2021, an entire year later.  This was a year longer than usual – under Article 44.1 of the SHIAC Rules, for cases involving foreign parties, awards are to be within rendered six (6) months of the date the tribunal is constituted. There is no indication that the SHIAC Secretary General enunciated "justifiable reasons" for this very long delay, as he/she was required to do, under Article 44.3 of the SHIAC Rules.  No reasons for this year long delay are given in the 2021 Arbitral Award.

37.    A sixth irregularity is that the Panel awarded Qiyi relief that Qiyi never requested, requiring Sunco US to pay 80% of the costs of the arbitration and arbitrator fees. The Panel failed to explain its justification for apportioning costs in the manner it did, given that Sunco US prevailed on its claims for late payment.

38.    There is no suggestion in the Arbitral Award, or otherwise, that the tribunal informed the Applicant, Sunco US, of its legal rights to seek judicial review of this arbitral award, as is clearly set forth in Chinese law, especially in the 1995 PRC Arbitration Law and the 2017 PRC Civil Procedure Law. Article 274 of the Civil Procedure Law (2017), in particular, sets forth familiar grounds for refusal of enforcement of a "foreign-related arbitral award" made by a Chinese arbitral institution, which is closely modeled on Article V(1) and Article V(2) of the New York Convention.  Language in the SHIAC Arbitration Rules is misleading, in that it asserts that "the

arbitration award is final and binding on the parties." This in no way precludes judicial review of "foreign-related" awards by the appropriate PRC Intermediate People's Court.

39.     Grounds for setting aside or non-recognition of PRC foreign-related arbitral awards (derived from Articles 70 and 71 of the PRC Arbitration Law (1995) and from Article 274 of the PRC Civil Procedure Law (2017) when read together) were operative in the SHIAC arbitration and evidenced in the 2021 Arbitral Award discussed above. These grounds include:

    a.  the person against whom the application is made was not requested to appoint an arbitrator or take part in the arbitration proceedings or the person was unable to state his opinions due to reasons for which he is not responsible;

    b.  the composition of the arbitration tribunal or the arbitration procedure was not in conformity with the rules of arbitration;

    c.  Additionally, if the people's court determines that the execution of the said award would be against the "social public interest" (i.e. against the public policy) of the PRC, it shall rule to deny execution.

40.     According to Mr. Sun, there was a change in Sunco US's Chinese counsel after the SHIAC award was rendered as a result of Sunco US's Chinese counsel's refusal to communicate with representatives from Sunco US. Mr. Sun reports that by the time Sunco US was able to secure successor counsel, the time for pursuing judicial review of the 2021 Arbitral Award had lapsed.

41.     As with lawyers in the United States, lawyers in China are bound by a duty to their clients and even their former clients to ensure their clients' interests are protected.  Under Article 32 of the PRC Lawyers Law (2017), lawyers are strictly prohibited from refusing to represent a client without a valid reason after accepting authorization. Such unjustified refusal of representation can lead to range of sanctions, and, in Mainland China, is not infrequently associated with political pressures being applied to the law firm to abandon the case.

42.     Unfortunately, corruption is an all-too-common aspect of the legal system in China. The conduct of Sunco US's Chinese lawyers in the 2021 Arbitration raises questions about whether

such corruption may have been present. Chinese counsel's actions in failing to ensure the protections SHIAC's rules provide to non-Chinese parties to arbitrations as set forth above and its subsequent refusal to communicate with Sunco US after the Award was rendered suggests that corruption may have been present here.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 27, 2026.

_____
Donald J. Lewis, J.D., L.L.M.

11

## **Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 27, 2026.

*/s/ Malgorzata A. Mrozek*
Malgorzata A. Mrozek

12