# Exhibit 2

# Arbitral Award

**Shanghai International Economic and Trade Arbitration Commission (Shanghai International Arbitration Center)**

# Shanghai International Economic and Trade Arbitration Commission (Shanghai International Arbitration Center)

# Arbitral Award

Applicant: Sunco, Inc.

Address: No. 35, Eastman Street, South Easton, Massachusetts, USA

Contact address: Room 303, Jiading international, No. 818 Tianzhu Road, Jiading District, Shanghai, China

Agent: Huang Jian, Li Xiaodong, lawyers of Shanghai Wenxue Law Firm

Respondent: Jiangsu Qiyi Investment Co., Ltd

Domicile: Room 1801, Building 666, Changjiang South Road, Kunshan Development Zone, Jiangsu Province, China

Legal representative: Wu Guoqing

Agent: Wu Jinggui, lawyer of Shanghai ZhengYuan (Kunshan) Law Firm

Shanghai

April 29, 2021

# Arbitral Award

(2021) HMZC Zi No.0349

Shanghai International Economic and Trade Arbitration Commission (also known as "Shanghai International Arbitration Center", hereinafter referred to as "the Commission") shall accept the dispute arbitration case under the *Equity Transfer Agreement* (hereinafter referred to as the "*Transfer Agreement*") submitted by the applicant Sunco, Inc. (hereinafter referred to as the "applicant") on July 3, 2019, taking Jiangsu Qiyi Investment Co., Ltd. as the respondent (hereinafter referred to as the "respondent") after the applicant has gone through the relevant procedures such as prepayment of arbitration fee. The case No. is ST2019036.

The arbitration procedure of this case is applicable to the *Arbitration Rules of Shanghai International Economic and Trade Arbitration Commission (Shanghai International Arbitration Center)* (hereinafter referred to as the "*Arbitration Rules*") which came into effect on January 1, 2015.

After the case is accepted by the Commission, the Secretariat of the Commission (hereinafter referred to as the "Secretariat") issued the *Notice of Acceptance* and *Notice of Arbitration* to the applicant and the respondent on July 9, 2019, together with the *Arbitration Rules* and the *List of Arbitrators*. The arbitration application and attachments submitted by the applicant are attached to the materials sent to the respondent.

The Secretariat of the Commission received the statement of arbitration defense and evidence materials submitted by the respondent and sent them to the applicant on August 23, 2019.

In accordance with the provisions of Article 20 of the *Arbitration Rules*, three arbitrators shall constitute an arbitration court to hear the case. The respondent selected Ms. Ma Beiyi as the arbitrator; If the applicant fails to select an arbitrator, the chairman of the Commission shall appoint Mr. Jiang Suping as the arbitrator; In view of the failure of both parties to reach an agreement on the selection of the chief arbitrator in this case within the time limit, the Chairman of the Commission appointed Mr. Fang Jian as the Chief Arbitrator in this case in accordance with the provisions of Article 22 of the *Arbitration Rules*. The above three arbitrators signed the *Statement of Arbitrators* and formed an arbitration court on October 30, 2019 to jointly hear the case. On the same day, the Secretariat of the arbitration court is scheduled to hear the case on November 25, 2019. The Secretariat sent the *Notice of the Formation of the Arbitration Court* and the *Notice of the Hearing* to the applicant and the respondent, and transferred the case files to the arbitration court.

The arbitration court will hold a court hearing in the location of the Commission on November 25, 2019 after reviewing all the written materials submitted by the applicant and the respondent. Both the applicant and the respondent appointed their agents to attend the court hearing. During the court hearing, the agent of the applicant stated his arbitration request and the facts and reasons on which it was based, and the respondent defense; The

applicant submitted supplementary evidence in court, the applicant and the respondent explained their respective evidences, failed to provide the original of relevant evidences, and issued cross-examination opinions; In view of the applicant's on-the-spot application for witness Sun Linda to testify in court and a written application submitted, the arbitration court agreed to this; The applicant's witness gave testimony and answered the inquiry of the arbitration court and the parties; Both parties answered the questions raised by the arbitration court, debated, expressed their opinions on agency and made final statements. Before the end of the court hearing, the arbitration court carried on the arrangement for the procedures after the court hearing.

After the court hearing, the applicant submitted the application for confirmation of arbitration request, interest calculation table and agency opinion, while the respondent submitted supplementary opinions and agent words. In view of the fact that the applicant has specified the arbitration request in his application for confirmation of arbitration request, and considering the actual situation of this case, the arbitration court agreed to this and entrusted the Secretariat to notify the applicant to go through the relevant acceptance procedures in accordance with the provisions of *Arbitration Rules*. After the applicant has gone through the relevant procedures, its application for specifying arbitration request has been accepted, and the Secretariat has informed both parties of the above situation in writing.

Upon request of the arbitration court, the Secretary General of the Commission agreed to extend the time limit for the award of this case to April 30, 2021 in accordance with the provisions of Article 44 of the *Arbitration Rules*.

All legal documents, notices and materials concerning this case have been effectively served by the Secretariat to both parties and the arbitration court in accordance with the provisions of Article 61 of the *Arbitration Rules*.

The acceptance and hearing of this case had been concluded. This award is made by the arbitration court according to the facts and legal provisions.

The details of this case, arbitration court opinion and the award are as follows:

## I.    The Facts of this Case

(I)    According to the main contents of the applicant's *Arbitration Application* and the arbitration request, it was stated by the applicant in its Arbitration Application that:

Sunco (Kunshan) Co., Ltd. (hereinafter referred to as "Kunshan Sunco" or "Sunco") was established on April 8, 2003. The applicant originally held 100% of the equity of Kunshan Sunco. On September 8, 2014, the respondent and the applicant signed a disputed *Transfer Agreement*, specifying that the applicant would transfer 52% of the equity of Kunshan Sunco to the respondent at a price of RMB 20 million (unless otherwise specified,

the currency in this case refers to RMB, as noted by the arbitration court). Article 2 of the *Transfer Agreement* stipulates the time limit and manner of performance of the equity transfer fund. The respondent shall pay a deposit of RMB 3 million of the equity transfer fund on July 8, 2014, RMB 2 million of equity transfer fund before December 31, 2014, RMB 7 million of equity transfer fund before December 31, 2015, and RMB 8 million of equity transfer fund before December 31, 2016. However, as of May 20, 2019, the respondent only paid RMB 5 million of the equity transfer fund for the applicant. *Transfer Agreement* stipulated to pay RMB 2 million equity transfer fund before December 31, 2014, and the respondent delayed in the payment. The total amount of equity transfer fund RMB 7 million would be paid before December 31, 2015 and RMB 8 million would be paid before December 31, 2016, RMB 15 million in total, but the respondent had not paid. The respondent had been delaying the payment after being urged for many times. On June 24, 2019, the applicant sent a lawyer's letter to the respondent through a lawyer entrusted, informing the respondent to pay the overdue equity transfer fund within five days after receiving the lawyer's letter, and informing the respondent of the consequences of the non-payment, but the respondent had not paid.

The applicant believed that the *Transfer Agreement* between the applicant and the respondent is true and effective, and the respondent shall pay the equity transfer fund in full and timely according to the agreement after signing the *Transfer Agreement*. At present, the respondent only paid RMB 5 million of the agreed price RMB 20 million, and the payment for the rest had been delayed for several years. The main obligations of the contract had only been fulfilled by 25%, which belonged to the behavior of non-fulfillment of the main obligations of the contract. The applicant still refused to pay after being urged for several times, which had seriously breached the contract.

The applicant made the following arbitration request:

1.    The respondent paid the applicant Sunco RMB15 million of the equity transfer fund of the company;

2.    The respondent paid the interest on the equity transfer fund delayed (calculation standard: 1.    Taking RMB 7 million as the principal, it was calculated according to the loan interest of the People's Bank of China in the same period from January 1, 2016 to December 31, 2016; 2. Taking RMB 15 million as the principal, it was calculated according to the loan interest of the People's Bank of China in the same period from January 1, 2017 to the date of actual payment;

3.    The respondent paid the applicant a penalty of RMB 3 million;

4.    The arbitration fee of this case was borne by the respondent.

After the court hearing, the applicant submitted a written application for confirmation of arbitration request and changed his second item of arbitration request to: The respondent was requested to pay RMB 1,545,441.70 of

interest on the delayed equity transfer fund. The calculating method was as follows:

Interest calculation standard: 1. Taking RMB 7 million as the principal, it was calculated according to the loan interest 4.35% of the People's Bank of China in the same period from January 1, 2016 to December 31, 2016; 2. Taking RMB 15 million as the principal, it was calculated according to the loan interest 4.35% of the People's Bank of China in the same period from January 1, 2017 to November 25, 2019 (the date of the hearing of the arbitration court)

Interest calculation method: 1. Taking RMB 7 million as the principal, the calculated amount was 7,000,000*4.35/100= RMB 304,500 from January 1, 2016 to December 31, 2016. 2. Taking RMB 15 million as the principal, the calculated amount was 15,000,000* (12+10)/12*4.35/100=RMB 1,196,250 from January 1, 2017 to October 31, 2019 to the date of actual payment. 3. Taking RMB 15 million as the principal, the amount of interest calculated from November 1, 2019 to November 25, 2019 was 15,000,000*25/365*4.35/100=RMB 44,691.70. The total sum was: RMB 304,500 +RMB 1,196,250+RMB 44,691.70=RMB 1,545,441.70.

(II)  Main contents of the respondent's defense opinions

In response to the applicant's arbitration request, the respondent stated the following main defense opinions in the *Statement of Arbitration Defense*:

1.    The applicant subject was not qualified. When the respondent changed the equity, the actual shareholder of Sunco was Sun Linda, not the applicant, and the applicant had no right to claim the payment of equity transfer fund.

Matters and process of equity change of Kunshan Sunco were as follows: (1) The applicant invested 100% in Kunshan Sunco, a typical wholly foreign-owned enterprise, in April 2003. The legal representative of the applicant was Sun Linda, but also the original legal representative of Kunshan Sunco. (2) In April 2013, the applicant sold 100% of its equity in Kunshan Sunco to Sun Linda, certified by the Consulate General of the People's Republic of China in New York. This evidence proved that the actual owner of Kunshan Sunco was Sun Linda, but Sun Linda and the applicant did not register the change of equity in order to evade the tax in China. Sun Fujun and the buyer, Sun Linda, were mother and son. (3) Since 2013, due to the tightening of various policies in China, such as corporate income tax, environmental protection policies, especially the tightening of environmental protection policies, Kunshan Sunco has major problems in environmental protection: Administrative Treatment Notice of Kunshan Environmental Protection Bureau (No. KSHJ2013-06-0059, KSHJ2013-06-0780, KSHJ2014-06-1742, KSHJ2014-06-2571); Notice of punishment decision of environmental protection bureau [KHF (2014) No. 56] stated that Kunshan Sunco had only one production line and faced shutdown, and different components of different specifications actually constituting Kunshan Sunco cabinet

product, including bucket panel, side panel, door panel, face frame, partition, mirror frame, splint, line, top cover primer and topcoat finishing, etc., required multiple different production lines, otherwise, the complete cabinet products cannot be produced. Therefore, Sun Linda was in urgent need of seeking Chinese partners, so on July 6, 2014, Sun Linda and Wu Guoqing reached an agreement to transfer 52% equity of Kunshan Sunco to Wu Guoqing. In order to prove that Sun Linda owned the equity at that time, Sun Linda presented Wu Guoqing with the certificate of the Consulate General of the People's Republic of China in New York. On July 6, 2014, Sun Linda and Wu Guoqing signed the *Equity Transfer Agreement*. According to the provisions of Article 2 of the agreement, Wu Guoqing paid the first deposit of equity transfer to Sun Linda on July 8, 2014, and the subsequent RMB 2 million was transferred by Wu Guoqing to the respondent, and then paid by the respondent to Sun Linda on February 11, 2015, which was enough to prove that the subjects were Sun Linda and Wu Guoqing. (4) According to the *Equity Transfer Agreement* (dated July 6, 2014) signed by Sun Linda and Wu Guoqing, both parties began to carry out equity change. In the process of equity change, it was found through inquiry that Kunshan Sunco was originally a wholly foreign-owned enterprise and would become a Sino-foreign joint venture after the equity transfer. According to the provisions of Article 1 of the *Joint Venture Law*, the Chinese side of a Sino-foreign joint venture should be "a joint venture jointly established by Chinese companies, enterprises or other economic organizations (Chinese partners)", not a natural person in China, so Wu Guoqing cannot be the transferee of equity. Therefore, an economic organization other than a natural person must be set up as the transferee of equity to transfer the equity according to the agreement on behalf of Wu Guoqing, and register the equity change. Therefore, Wu Guoqing started to set up the company, i.e. the respondent of this case. The shareholders were Wu Guoqing and Xiao Qiong, who were husband and wife, and the legal representative was Wu Guoqing. The company was established on August 29, 2014. The fundamental purpose of setting up the respondent was to hold 52% equity of Kunshan Sunco on behalf of Wu Guoqing according to law. There has been no declaration and no business operation since the establishment of the respondent, which was sufficient to illustrate this point.

Both parties registered the change of equity after the establishment of the respondent. However, in order to save taxes and fees, Sun Linda gave the instruction that the applicant at that time, namely Sunco, Inc., holding shares on behalf of Sun Linda, directly changed and transferred the 52% equity involved in the case to the respondent of this case designated by Wu Guoqing, instead of changing the applicant of this case, i.e. shareholder of Kunshan Sunco, to Sun Linda first, then changing Sun Linda to the respondent. In order to transfer the ownership, the respondent and Sun Linda signed the *Equity Transfer Agreement* (signed on September 8, 2014, i.e. the disputed "*Transfer Agreement*"). *Equity Transfer Agreement*s on July 6 and September 8, 2014 are highly

consistent.

According to the procedure of equity change at that time, the tax registration change can be handled only after the industry and commerce department handled the equity change registration. Therefore, Wu Guoqing transferred the tax of RMB 140,000 to his spouse Xiao Qiong on September 28, 2015. Xiao Qiong transferred the above amount to Huang Chencheng on September 29, 2015, and Huang Chencheng handled the equity tax telegram and tax payment. So far, for the equity transfer of Kunshan Sunco between Wu Guoqing and Sun Linda, the ownership transfer has been completed successfully.

From the above transfer process, the following points can be made clear: (1) The actual shareholder of Kunshan Sunco was already Sun Linda at the time of equity transfer with Wu Guoqing; (2) The establishment of the respondent of this case and the signing of the *Equity Transfer Agreement* on September 8, 2014 were completed for the purpose of fulfilling the *Equity Transfer Agreement* between Wu Guoqing and Sun Linda on July 6, 2014. Therefore, the applicant has no right to claim payment from the respondent.

2.    The existing evidence and facts were sufficient to prove that the actual shareholder of Kunshan Sunco was Sun Linda, not the applicant Sunco, Inc. The evidence of the respondent can prove that the shareholder of Kunshan Sunco was Sun Linda, not the applicant Sunco, Inc.

From the perspective of payment time, the *Equity Transfer Agreement* signed on July 6, 2014 or September 8, 2014 specified that the time for the third and fourth payment was the same, that is, to pay RMB 7 million and RMB 8 million respectively before December 31, 2014 and December 31, 2015. However, the applicant of this case had never paid the respondent and Sun Linda had not claimed payment either since the signing of the agreement, which was because Sun Linda had signed the *Agreement*, that is to say, Sun Linda had recognized that the equity transfer fund had been settled, and it also proved that the applicant was not the actual owner of the equity and had no right to claim the equity transfer fund.

3.    52% of the equity transfer fund involved in the case has been paid. (1) RMB 3 million deposit was paid on July 8, 2014; (2) RMB 2 million was paid on February 11, 2015; (3) The agreement was signed on March 10, 2016, and the equity transfer fund was deducted by RMB 15 million. The total amount above was RMB 20 million.

In addition, the respondent also believes that no matter which *Equity Transfer Agreement*, the third and fourth payments are consistent, of which RMB 7 million has exceeded the limitation of action; moreover, to say the least, even if Sun Linda was not the actual shareholder of Kunshan Sunco, she was also the representative with the right to sign. The *Agreement* signed by her was also binding on the applicant who had no right to claim the equity transfer fund.

4.    Kunshan Sunco's cabinet product tariff had reached 25% since the Sino-US trade war. Especially on March 6, 2019, the US Cabinet Alliance filed anti-dumping and countervailing trade protection measures against imported Chinese cabinets with the US government, on behalf of the US cabinet industry. Kunshan Sunco also paid RMB 20,000 for responding to the lawsuit. Kunshan Sunco once again faced the closure of its factory. On August 8, 2019, the United States issued a notice on the preliminary judgment results of the "anti-dumping and countervailing" against Chinese cabinets by US. The national average tax rate of the preliminary judgment on countervailing measures was 16.41%. Considering the arrival time of the products in the United States, Sun Linda, the actual controller of Kunshan Sunco, decided to suspend production on July 1, 2019, and lost contact after leaving Kunshan on June 14, 2019. Sun Linda controlled the purchase, production, shipment, capital and finance of Kunshan Sunco, and Sun Linda delivered the products to INF INITY WOOD PRODUCTS, LLC in the United States. The accounts receivable amounted to more than RMB 46 million, which was still unpaid. Kunshan Sunco was faced with more than 100 employees' wages and compensation, payment for goods from suppliers, accounts receivable, disposal of environmental hazardous wastes, operation of environmental protection facilities, construction in progress and so on after the loss of Sun Linda contact. On August 9, 2019, the employees filed a collective petition. Sun Linda was extremely irresponsible to the employees, suppliers and society. Now, only respondent was engaged in the maintenance of stability and borne the responsibility. Moreover, it also increased the trouble for the government departments. After learning about the US anti-dumping and countervailing measures against China, Sun Linda had already planned to empty Kunshan Sunco before she left Kunshan, and wanted to take the opportunity to let the respondent pay for the equity transfer fund at the same time. In fact, both the applicant and Sun Linda were very clear that the equity transfer funds had been deducted and settled. Since the equity transfer, Wu Guoqing had devoted himself to Kunshan Sunco and had never obtained any profit.

(III) The main points of the post court opinions of the applicant's agent

1.    The authenticity of the two agreements is disputed.

(1)    During the court hearing, Sun Linda made it clear many times that although the handwriting was Sun Linda's signature, she never signed such an agreement. Sun Linda stated to the arbitration court that Wu Guoqing had repeatedly covered up the contents of the signature and asked him to sign at the designated place. Therefore, the applicant believed that Wu Guoqing had asked Sun Linda to sign at the designated place of the two agreements first, and then Wu Guoqing had to print and handwrite the two agreements.

(2)    In addition to Sun Linda's signature, there was no handwritten signature by Sun Linda in the two agreements. The signature on 77-page agreement was printed, and the signature on 78-page agreement was written by Wu Guoqing himself, which was also consistent with Sun Linda's statement.

(3) Combined with the situation of this case, these two agreements were designed and fabricated by scheming Wu Guoqing in order to avoid the subsequent need to pay RMB 15 million for equity transfer funds.

2. The applicant is not a party to the two agreements, and the two agreements are not binding on the applicant.

(1) The subjects of the two agreements are Party A: Sun Linda, Party B: Wu Guoqing, Party C: Jiangsu Qiyi Investment Co., Ltd. However, the content of the agreement only involves Party A: Sun Linda and Party B: Wu Guoqing, without mentioning the applicant.

(2) There is no mention of the applicant in the two agreements. Sun Linda has never been authorized by the applicant and has never mentioned the existence of this agreement to the applicant, and the applicant has never seen this agreement before.

(3) During the defense, the respondent also confirmed that Sun Linda only represents herself and has nothing to do with the applicant in the two agreements. To say the least, even if Sun Linda signed the equity transfer agreement on behalf of the applicant before, the subject of the previous agreement was the applicant. The subject of the two agreements is Sun Linda, and Sun Linda and the applicant are also two completely different civil subjects, which cannot be confused as one civil subject. The identity of the subject who signed the two agreements, including the signing subject, is Sun Linda, and even the words of the applicant "Sunco, Inc." never appear. Therefore, the applicant thinks that the two agreements have no binding force on the applicant.

3. The compensation and the equity transfer fund cannot be offset.

It is mentioned in the agreement that "Party A (Sun Linda) shall give Party B (Wu Guoqing) RMB 10 million only as remuneration, which shall be deducted from the equity transfer funds paid by Party C (Jiangsu Qiyi Investment Co., Ltd.) to Party A, which shall be confirmed by all parties", "Party A (Sun Linda) shall pay Party B (Wu Guoqing) RMB 15 million as remuneration, which shall be deducted from the equity transfer funds paid by Party A to Party B or Party C (Jiangsu Qiyi Investment Co., Ltd.) to party A"

(1) The remuneration shall not be borne by the applicant. Since the money paid to Wu Guoqing in the agreement is clearly remuneration, according to common sense, certainly, the remuneration shall be paid by Kunshan Sunco, Wu Guoqing's work unit. Firstly, the applicant is not a party to the two agreements, and Sun Linda has no right to represent the applicant; Secondly, Wu Guoqing works for Kunshan Sunco and is also the actual controller. The environmental protection acceptance is the value of Wu Guoqing's work in Kunshan Sunco, which is also in line with Wu Guoqing's interests as the actual controller. Moreover, Kunshan Sunco, the beneficiary, is the subject of environmental protection acceptance, so the remuneration paid to Wu Guoqing should be Kunshan Sunco, as a shareholder of Kunshan Sunco, the applicant has no obligation to pay Wu Guoqing.

Finally, from the basic common sense, when the two agreements were signed, Wu Guoqing was already the chairman of Kunshan Sunco, and Kunshan Sunco had also completed the equity change, the respondent was the major shareholder (holding 52%), Wu Guoqing was the chairman and actual controller of the respondent, and the applicant was the minority shareholder (holding 48%). Wu Guoqing works for Kunshan Sunco, the remuneration shall be borne by Kunshan Sunco without doubt. There is no basis for Wu Guoqing's remuneration to be paid by the applicant.

(2) In addition, the remuneration in the two agreements is not binding on Kunshan Sunco. Firstly, Sun Linda only represents herself in the two agreements, not as a director of Kunshan Sunco. Secondly, even if Sun Linda is a director of the company, the two agreements cannot be binding on Kunshan Sunco on behalf of the resolution of the board of directors. The directors of Kunshan Sunco not only have the parties in the agreement.

(3) Even if the remuneration is binding on Kunshan Sunco, there is no legal basis for offsetting the remuneration paid to Wu Guoqing and the equity transfer funds that the respondent shall pay to the applicant. First, the subjects of the offsetting parties are not consistent. The compensation is the credit and debt between Kunshan Sunco and Wu Guoqing, and the equity transfer fund is the credit and debt between the applicant and the respondent, not the mutual debt between the two parties. Thus, it cannot be offset. Second, the nature of the debt is completely different. Third, it is illegal to offset. The applicant's equity transfer funds shall be paid by the respondent in foreign exchange after obtaining the external payment certificate, while the direct offset violates the provisions of the state's foreign exchange management. Meanwhile, the applicant should pay the corresponding taxes when receiving the equity transfer funds, while direct offset means tax evasion. In addition, Wu Guoqing shall also pay individual income tax when getting remuneration from Kunshan Sunco, direct offset is also tax evasion, so it is illegal.

(4) The two agreements are not in line with the most basic business practices. Firstly, the annual net profit of Kunshan Sunco is only RMB 2-3 million, and the payment of RMB 15 million to Wu Guoqing for environmental protection acceptance is obviously not in line with the most basic common sense. Secondly, Kunshan Sunco was fined only RMB 180,000 for environmental protection problems, while Wu Guoqing's personal remuneration was as high as RMB 15 million for completing the environmental protection acceptance, which is obviously unreasonable. Kunshan Sunco paid all the expenses for environmental protection acceptance, but Wu Guoqing or the respondent did not make any payments. Thirdly, the respondent and Wu Guoqing did not provide any evidence about the cost composition of RMB 15 million, which is also unreasonable. What's more, Wu Guoqing avoided making any reply to the composition of RMB 15 million and the cost process during the court hearing. Fourthly, the price of 52% of the shares transferred by the applicant has been seriously undervalued.

That is to say, considering that Wu Guoqing is engaged in the software and computer industry, neither in the environmental protection industry, nor in the furniture production industry, and Wu Guoqing declared that he could use social relations to complete the environmental protection acceptance quickly, but he failed to fulfill his commitment to complete the acceptance in a short time. The final completion of EIA acceptance has nothing to do with him, and it is not determined by Wu Guoqing's personal social relationship. The completion of environmental protection acceptance is the administrative function of EIA department in strict accordance with laws and regulations, besides, the completion of environmental protection acceptance of Kunshan Sunco is also achieved through its own expenses and corresponding conditions, and it is not achieved by Wu Guoqing's personal social relations. Fifthly, it is illegal for Wu Guoqing to ask for remuneration by means of so-called social relations. At the same time, according to the public data, the remuneration of the chairman of A-share listed companies is generally a hundred million yuan per year. It is obviously unreasonable for Wu Guoqing to charge RMB 15 million as the chairman of Kunshan Sunco just for only two years. Sixthly, there are only two pieces of paper for the outsized trade of RMB 15 million. Wu Guoqing's claim for a huge reward was not supported by any labor contract, resolution of the board of directors and other documents. Hiring a manager for two years will cost Kunshan Sunco nearly seven or eight years of net profits, which is obviously not in line with basic common sense. Finally, with regard to the prescription of the case, the applicant thinks that the prescription has not passed. During the court hearing, Sun Linda repeatedly said that she had urged Wu Guoqing for the equity transfer funds in this case for many times, but considering that both parties still have to do business together, she did not file a lawsuit. Meanwhile, according to the agreement, the time for the respondent to pay the equity transfer funds is December 31, 2016, and the applicant has filed a lawsuit within the prescription.

To sum up, the applicant believes that according to the facts and legal provisions of this case, the respondent should pay the principal, interest and liquidated damages of the equity transfer funds to the respondent in accordance with the contract.

(IV) The main points of the respondent agency opinions after court

After the court, the agent of the respondent added the following main opinions:

1.    The applicant sold 100% of its equity in Kunshan Sunco to Sun Linda in April 2013. The *Agreement for Share Sales and Transfer* certified by the Consulate General of the people's Republic of China in New York is sufficient to prove this view for the following reasons:

Firstly, the applicant has confirmed the authenticity of the document in the cross-examination opinions of the court hearing. From the first paragraph of the *Agreement for Share Sales and Transfer*, the second paragraph of the "whereas clause" and the second, fourth, sixth and seventh clauses of the main body, it is sufficient to prove

that the *Agreement for Share Sales and Transfer* has come into effect, and the applicant has sold all the shares of Kunshan Sunco to Sun Linda.

Secondly, the applicant claims that the *Agreement for Share Sales and Transfer* does not take effect on the ground that Sun Linda has not signed, which has no factual and legal basis. (1) The first paragraph of page 1 of the *Agreement for Share Sales and Transfer* certified by the Consulate General of the People's Republic of China in New York states "this agreement was reached on April 9, 2013..." and the fourth page states "witness the execution of the above agreement on the date of signing", which is sufficient to prove that this agreement has come into force. Sunco, Inc has not provided evidence to date that the agreement does not take effect under the laws of Massachusetts, USA; (2) As for the source of the evidence, Wu Guoqing did not know Sun Fujun before, so it can be ruled out that he obtained the document from Sun Fujun. Wu Guoqing is not a party to the *Agreement for Share Sales and Transfer*, and it is impossible to obtain the document from the Consulate General in New York. The only way is for Sun Linda to give it to Wu Guoqing (although Sun Linda tried to deny it when she appeared in court, this fact cannot be changed). According to the *General Principles of Civil Law*, the *General Provisions of Civil Law* and the *Contract Law*, Sun Linda's delivery of the document to Wu Guoqing is sufficient to prove that she recognizes the agreement, which is binding on her.

Thirdly, the applicant's *Agreement for Share Sales and Transfer* has not been approved by the examination and approval authority, the contract has not come into effect, and there is no factual and legal basis. Article 3 of the *Provisions on the Change of Equity of Investors in Foreign-Funded Enterprises* (hereinafter referred to as the "provisions") stipulates that "the change of equity of enterprise investors shall be in line with the relevant laws and regulations of China, and shall be approved by the examination and approval authority and registered by the registration authority in accordance with these provisions. Without the approval of the examination and approval authority, the change of equity is invalid", from the perspective of the above legal terms, the article tells about the effectiveness of the change of equity, not the validity of the contract. Therefore, the applicant believes that the contract is not effective without legal basis. The applicant is a US-funded enterprise, and Sun Linda is an American. It does not violate China's laws and regulations for the applicant to transfer all equities in Kunshan Sunco to Sun Linda. At the same time, these provisions do not require compulsory approval for similar transfers. To say the least, even if it is not submitted for approval, it just does not produce the legal effect of publicity and public trust, However, it cannot be denied that the real owner of the equity has been changed to Sun Linda.

2.    From the perspective of the whole process of equity transaction, it is enough to prove that the equity belongs to Sun Linda in 2013.

(1)    On July 6, 2014, Sun Linda and Wu Guoqing signed the *Equity Transfer Agreement*. Both the

respondent who established the case and the Equity Transfer Agreement signed on September 8, 2014 are for the purpose of fulfilling the *Equity Transfer Agreement* on July 6, 2014 between Wu Guoqing and Sun Linda.

(2)  The payee of the two receipts (dated on September 8, 2014 and February 14, 2015) is "Sun Linda" instead of the applicant, which is sufficient to prove that the real owner of the equity is Sun Linda, not the applicant.

(3)  Party A of both agreements is Sun Linda, not the applicant, and from the content of the agreement, the deduction is the equity transfer fund, which is sufficient to prove that the actual owner of equity is Sun Linda.

(4)  According to Sun Linda's statement in the court hearing, after receiving RMB 3 million of equity transfer funds, she lent it to Kunshan Sunco in the form of loan, and Kunshan Sunco's account showed the debt owed to Sun Linda, which is sufficient to prove that the owner of equity is Sun Linda, not the applicant.

In a word, the list of evidence provided by the respondent is sufficient to prove that the actual owner of Kunshan Sunco is Sun Linda, however, in order to evade Chinese tax, she and the applicant did not register the change of equity. In order to save taxes and fees, the shareholder of Kunshan Sunco did not change from the applicant to Sun Linda, and then from Sun Linda to the respondent. Instead, the applicant who held the shares on behalf of sun Linda at that time changed the 52% equity involved in the case to the respondent designated by Wu Guoqing according to sun Linda's instructions.

3.    To say the least, even if Sun Linda is not the actual shareholder of Kunshan Sunco, she has the right to sign. Firstly, during the court hearing, the applicant has made it clear that Sun Linda can represent the applicant; Secondly, evidence 1 of the respondent states that the legal representative of the applicant is Sun Linda, which is sufficient to prove that Sun Linda can represent the applicant. According to the *General Principles of Civil Law*, the *General Provisions of Civil Law* and the contract law, the legal consequences of the acts of the legal representative shall be borne by the company. To sum up, whether Sun Linda is the actual owner of the equity or the applicant representative, she has the right to sign and dispose of the equity involved. Sun Linda, Wu Guoqing and the respondent in this case have signed the *Agreement* twice to offset the equity transfer funds, and the conditions agreed in the agreement have been realized (eight production lines have passed the acceptance). The applicant has no right to claim payment from the respondent.

4.    Regarding the validity and realization conditions of the two *Agreements*

From the above analysis, it can be seen that Sun Linda is the authorized signatory of equity transfer. Sun Linda, Wu Guoqing and the respondent signed two offset agreements on equity transfer funds on March 18, 2015 and February 16, 2016 respectively. According to the *Contract Law* and its judicial interpretation, the contract takes effect after being signed and sealed by all parties, and has binding force on all parties.

The two agreements mentioned above are not invalid as stipulated in Article 52 of the *Contract Law*. With regard to the revocable situation as stipulated in Article 54 of the *Contract Law*, the respondent holds that this case is not revocable for the following reasons: The agreement on March 18, 2015 was to offset RMB 10 million of equity transfer funds, and the agreement on March 10, 2016 was to offset RMB 15 million of equity transfer funds. There is a gap of one year between the two agreements, and the first agreement offset RMB 10 million on the condition of six production lines, while the second agreement offset RMB 15 million on the condition of eight production lines. The above differences fully prove that all parties have fully negotiated, and there are no major misunderstandings, fraud, obvious unfairness and other revocable circumstances, let alone the fact that Wu Guoqing printed or deliberately covered up the documents afterwards. To say the least, even if there are revocable cases, according to Article 55 of the *Contract Law*, Sun Linda also lost the right of revocation.

In addition, according to the offset agreement, Wu Guoqing has reached the conditions agreed in the offset agreement. Of course, the respondent does not need to pay. Simultaneously, from the change of the amount before and after the two offset agreements, we cannot simply understand the consideration, nor can we simply see how Wu Guoqing spent RMB 15 million, because it has nothing to do with the equity transfer.

5.   Opinions on Sun Linda's testifying in court

Sun Linda's statement in court is not objective at all, confusing right and wrong and entirely groundless. The reasons are as follows: (1)    On the one hand, Sun Linda admitted that she had received an advance equity transfer funds of RMB 3 million. On the other hand, she denied the equity transfer agreement signed on July 6. If there is no equity transfer agreement signed, why did Wu Guoqing pay the equity transfer funds of RMB 3 million; (2)   Sun Linda repeatedly stressed in court that Wu Guoqing threatened her over and over again and described him as a gangdom. It took more than five years from 2014 to the applicant's prosecution. Why didn't she call the police? In fact, Wu Guoqing also appeared in court, not a fiendish man. (3)Judging from Sun Linda's appearance in court, the arbitration court and the questions raised by the applicant, she only admits the facts that are beneficial to her own interests, but denies all the facts that are unfavorable to her or the applicant, even the most basic facts. For example, she denies that she signed the equity transfer agreement on July 6. Besides, she stated that the embassy documents provided by the applicant are Wu Guoqing's theft of her printed copies (in fact, the documents provided by the respondent are original, with steel seal and anti-counterfeiting mark).

To sum up, the applicant has no right to claim the equity transfer funds, please reject it according to law.

## II.  Opinions of the Arbitration Court

After reviewing the relevant materials of the case and hearing the case, the arbitration court expressed its

opinions on the dispute between the applicant and the respondent as follows:

(I)    Regarding the applicable law in this case

In this case, the arbitration court noted that the applicant was a company registered in the United States of America and the respondent was a company registered in the People's Republic of China.

In Article 6.4 of the disputed *Transfer Agreement*, both parties agree on the application of law as follows: "The establishment, validity, interpretation, performance of this Agreement and the settlement of disputes arising therefrom shall be governed by the laws of the People's Republic of China." What's more, during the court hearing, both parties did not express any objection to the application of the People's Republic of China, and both parties applied for arbitration or expressed their opinions of defense in accordance with the laws of the People's Republic of China. The arbitration court respected this and applied the laws of the People's Republic of China to hear the case.

According to the *Provisions of the Supreme People's Court on the Application of the Time Validity of the 'Civil Code of the People's Republic of China'*, civil disputes arising from legal facts before the implementation of *the Civil Code of the People's Republic of China* (hereinafter referred to as the "*Civil Code*") shall be governed by the provisions of the laws and judicial interpretations at that time, unless otherwise provided by the laws and judicial interpretations. Since the legal facts in this case occurred before the implementation of the *Civil Code*, that is, before January 1, 2021, and there was no other provision in the law and judicial interpretation, the arbitration court could still quote invalid laws such as the *Contract Law of the People's Republic of China* (hereinafter referred to as the "*Contract Law*") and the *General Provisions of the Civil Law of the People's Republic of China* (hereinafter referred to as "*General Provisions of Civil Law*"), the validity of relevant laws and regulations such as the *Contract Law* and the *General Provisions of Civil Law* will no longer be emphasized separately in the following rulings. For matters governed by the *Civil Code*, the arbitration court will give special descriptions.

(II)   Hearing scope of the case

The case involves the disputes on equity transfer contract based on the Transfer Agreement signed by Sun Linda of the applicant Sunco, Inc and respondent on September 8, 2014, so the arbitration court has the right to hear the dispute on the implementation of the disputed Transfer Agreement.

The arbitration court notes that Sun Linda signed the *Equity Transfer Agreement* with the respondent shareholder Wu Guoqing on July 6, 2014, where they agreed the Sunco equity transfer. Though the Equity Transfer Agreement has many same contents with the disputed *Transfer Agreement*, both parties don't make claims or defenses in accordance with the *Equity Transfer Agreement*, and acknowledge the dispute is related to

the implementation of the *Transfer Agreement*. Therefore, the arbitration court will not comment on the validity and content of the *Equity Transfer Agreement* signed between Sun Linda and Wu Guoqing.

The arbitration court held that the dispute in this case mainly concentrates on the implementation of *Transfer Agreement* and the validity of offset agreements, but the applicant and respondent are divided on the subject of the agreement, so the arbitration court will mainly discuss whether the applicant is qualified, the claim by the applicant exceeds the arbitration prescription, and validity and entry-into-force conditions of the offset agreements, etc.

(III) About the qualification of the applicant in this case

The arbitration court notes that Sunco, the target company of the disputed *Transfer Agreement* in this case, registered the applicant as its shareholder in the industrial and commercial authorities before equity transfer; The equity transferor of *Transfer Agreement* is Sunco, Inc Sun Linda, including two subjects of Sunco, Inc and Sun Linda; Meanwhile, the respondent proposed in his defense the actual shareholder of Sunco was Sun Linda, not the applicant Sunco, Inc. The parties in this case are divided on the actual shareholder of Sunco, and the qualification of the applicant.

The arbitration court rules the facts as follows on the disputes in this case, based on existing evidence and materials:

1.    About the shareholder of Sunco at the time of signature of the disputed *Transfer Agreement*

The respondent said in his defense that the actual shareholder of Sunco was Sun Linda not the applicant when he participated in the transfer of equity, and provided the *Agreement for Share Sales and Transfer* signed between the applicant and Sun Linda on April 29, 2013 and related notarization and certification documents where it was agreed the applicant sold to Sun Linda all its equity held in Sunco.

However, the related agreement for equity transfer does not mean the transferee can become the shareholder immediately after the signature of the agreement. The shareholder identity needs to be judged based on whether it is recognized by the public in a certain form, the effectiveness of the related equity transfer agreement, etc. The details are as follows:

First, the shareholder of the target company Sunco registered in the industrial and commercial authorities before the case related equity transfer is the applicant in this case. As for the shareholder qualification, the articles of association, shareholder register, records of industrial and commercial authorities, capital contribution certificate and other formal documents are the external expression of the shareholder qualification by making disclosure to the public, and are important for the determination of shareholder qualification. It is specified in Articles 31 and 32 of *Company Law of the People's Republic of China* that the limited liability company shall

issue the capital contribution certificate to the shareholder and prepare a shareholder register; Shareholders recorded in the shareholder register may claim to exercise their rights in such capacity on the basis of the register; And above matters shall be registered with the company registration department for social publicity. Second, the Article 5 of the *Agreement for Share Sales and Transfer* signed between the applicant and Sun Linda specifies the conditions for share delivery that "the seller shall deliver to the buyer the share certificate representing the subject share", and the respondent fails to prove that the applicant has delivered to Sun Linda such certificate (such as the capital contribution certificate under Chinese law). Therefore, in this case, Sun Linda does not meet the external expression requirement of shareholder agreed in related agreement.

At last, the *Agreement for Share Sales and Transfer* was signed on April 29, 2013. It is specified in Article 22 of *Rules for the Implementation of the Law of the Peoples Republic of China on Foreign-funded Enterprises* (revised in 2001) that "the increase and transfer of the registered capital of the foreign-funded enterprises shall be approved by the approval authority and go through the change registration formalities with the industrial and commercial authorities". Therefore, on the signature of the *Agreement for Share Sales and Transfer*, Sunco, as a foreign-funded enterprise, shall obtain the approval of related authorities for its equity transfer. According to the related supporting materials provided by the party to the arbitration court, the *Agreement for Share Sales and Transfer* was not approved, so Sun Linda cannot obtain equity based on the *Agreement for Share Sales and Transfer*.

The arbitration court held that, based on the above fact, Sun Linda does not have the shareholder qualification according to *Agreement for Share Sales and Transfer*, and the shareholder of Sunco was the applicant Sunco, Inc. when the disputed *Transfer Agreement* was signed.

2.    About the applicant qualification of Sunco, Inc.

Both the applicant and the respondent have no doubt about the signature intention and effectiveness of the *Transfer Agreement*, and the arbitration court does not find other typical severability of the contract.

The arbitration court notes that *Rules for the Implementation of the Law of the Peoples Republic of China on Foreign-funded Enterprises* (revised in 2001) specifies that any foreign-funded enterprise shall obtain the approval of related authorities for its registered capital transfer, and complete the change registration formalities with the industrial and commercial authorities. The arbitration court held that, in this case, the validity of the contract shall not be affected by whether the *Transfer Agreement* has been approved. Laws related to foreign-funded enterprises require the transfer of registered capital shall be approved, but do not involve its validity. According to *Interpretations of Certain Issues Concerning the Application of the Contract Law of the People's Republic of China (Part One) by the Supreme People's Court*, "the relevant law or administration

regulation provides that the effectiveness of a certain contract is subject to completion of the relevant approval procedure, or the relevant approval and registration procedures, if before completion of court debate by the parties in the trial of first instance, the parties still fail to carry out the relevant approval procedure, or approval and registration procedures, as the case may be, the People's Court shall rule that the contract has not yet taken effect; if the relevant law or administration regulation requires that a certain contract be registered without subjecting its effectiveness to such registration, then failure to effect registration shall not impair the effectiveness of the contract, provided that such failure constitutes an impediment to the conveyance of title to, or such other real right in, the subject matter of the contract." Therefore, if the equity transfer contract of a foreign-funded enterprise is still not be approved, it is usually ruled that the contract has not taken effect, that is, its validity has not been determined, rather than from the beginning is invalid. In this case, if the approval is necessary, the disputed Transfer Agreement applies to the law provisions of "has been entered but not taken effect". Since the execution of the *Interim Measures for the Archival Filing Administration of the Incorporation and Modification of Foreign-Funded Enterprises* in 2016, only when the change matter involves special admission management measures set out by the state, the change shall go through the approval procedures according laws and regulations related to the foreign-funded enterprises, or else only filing is needed. From the intention and content of the *Transfer Agreement* signed by both parties, the agreement is about the transfer of equity from the foreign investor to the investor in China, and the business carried out by Sunco does not belong to those limited to the foreign investors by the state. Therefore, the signature and execution of the *Transfer Agreement* are irrelevant to the matters subject to special admission management measures required by the state. Since the execution of the *Interim Measures for the Archival Filing Administration of the Incorporation and Modification of Foreign-Funded Enterprises* in 2016, no approval is required for the *Transfer Agreement*, so naturally the effectiveness of *Transfer Agreement* is not subject to approval, but come from the entry.

The applicant is the shareholder at the time of the signature of the disputed *Transfer Agreement*. The case involves the disputes on equity transfer contract based on the valid *Transfer Agreement*, but the applicant and Sun Linda are together referred to as "Party A" in the *Transfer Agreement*, and its main body does not again clarify "Party A" includes both parties. The arbitration court held that the applicant and Sun Linda constitute the co-owner of the seller's rights under the *Transfer Agreement*, and either party or both parties are entitled to claim the rights under the *Transfer Agreement* against the respondent. The arbitration court notes that the Applicant and Sun Linda, as the joint sellers, have not agreed their shares of contractual rights in the *Transfer Agreement*, but the division of rights is the issue between them, and there is no legal basis for the respondent, the other party of the contract, to demur at the right claim of the applicant against him because of this. In fact, in this case, Sun Linda,

as the joint seller, also participated in the entire arbitration, and she is fully aware of the arbitration and related requirements of the applicant on the *Transfer Agreement*, without any objection to them. This represents that Sun Linda has acknowledged the claims of the applicant. As a result, the arbitration court rules the applicant is the qualified for this case. In addition, the arbitration court clarifies here that whether the applicant is the shareholder of Sunco does not affect the participation of the applicant in the signature of the disputed *Transfer Agreement*. Because the conclusion of the contractual relationship (creditor's rights act) is not under the premise of applicant's equity (real right disposition right), the arbitration court does not support the respondent's demurrer that the applicant is not qualified.

3.    Sun Linda's status in the *Transfer Agreement*

The arbitration court notes that although Sun Linda is not a shareholder of Sunco, she is frequently mentioned in the evidence submitted by both parties, and she signed the disputed *Transfer Agreement* with the applicant. Therefore, the arbitration court shall consider the relationship between Sun Linda and the applicant.

As mentioned above, whether Sun Linda has the shareholder status of Sunco does not affect the effectiveness of Sun Linda's participation in the signature of the *Transfer Agreement*. That is, from the perspective of the *Contract Law*, Sun Linda and the applicant have the right to sign, as joint sellers, the disputed *Transfer Agreement* with the respondent. In this case, the applicant and Sun Linda signed the disputed *Transfer Agreement* as one party, showing applicant's recognition of Sun Linda as one of joint sellers. Meanwhile, based on the performance of the disputed *Transfer Agreement*, Sun Linda received a total of RMB 5 million of equity transfer fees paid by the respondent separately in 2014 and 2015, and these payments were directly paid to Sun Linda's personal account. Both the applicant and the respondent recognized it. In addition, Sun Linda said in the court hearing that she had claimed the disputed equity transfer funds in this case from Wu Guoqing. Based on the above aspects, the arbitration court held that as joint sellers, Sun Linda and the Applicant shared the seller's creditor's rights under the *Transfer Agreement* in the disputed *Transfer Agreement* in this case.

In addition, the arbitration court held that a representative relationship has been constituted by Sun Linda and the Applicant: First, Sun Linda is the legal representative of the Applicant Sunco, Inc. according to the remarks in the industrial and commercial information inquiry registration form provided by the Respondent; neither the applicant nor the respondent raised objections to the authenticity of this evidence; Second, It is confirmed by the applicant that Sun Linda was authorized by the Applicant to sign the *disputed Transfer Agreement*; Third, Sun Linda also proved in the court hearing that the    transfer fund of RMB 5 million paid by the respondent under the *Transfer Agreement* was collected by her on behalf. The applicant claims: The applicant only authorized Sun Linda to sign the disputed *Transfer Agreement*, and did not authorize Sun Linda to sign other agreements related

to Sunco, and the applicant has no relationship with Sun Linda "at the moment". However, the industrial and commercial information inquiry registration form of Sunco showed that Sun Linda was the legal representative of the applicant in this case, and only Sun Linda had appeared as the representative of the applicant. There is no evidence provided by the applicant to prove that Sun Linda has terminated the agency relationship with the applicant when signing the *Transfer Agreement*; and it also failed to prove that the applicant has sent other representatives to negotiate and communicate with the respondent. Therefore, the arbitration court held that the respondent had a basis for trust in Sun Linda's representative identity.

(IV) Regarding whether the offset agreements are binding on the applicant

In the defense, the respondent provided the offset agreements signed by Sun Linda, the outsider Wu Guoqing and the respondent on March 18, 2015 and March 10, 2016, stipulating that Sun Linda shall pay RMB 15 million to Wu Guoqing or deduct it from the "equity transfer fund" that the payable of the applicant to Sun Linda if Wu Guoqing can make Sunco pass the EIA acceptance and put into production.

The applicant raised an objection to this and stated: First of all, It has been agreed upon that Wu Guoqing shall make Sunco pass the EIA acceptance during the equity transfer of both parties, and the price agreed in *the Transfer Agreement* has taken these factors into consideration; Secondly, The offset agreements provided by the respondent was forged unilaterally by Wu Guoqing, and it was proposed that Sun Linda knew nothing about the offset because Wu Guoqing has repeatedly covered the contents and asked Sun Linda to sign at the designated locations; Thirdly, The applicant stated that the disputed *Transfer Agreement* was not explicitly mentioned in the offset agreements, so they are not related; Finally, the applicant believes that these offset agreements don't make commercial sense

However, the applicant did not provide sufficient support for the above objection. First of all, the fact that the equity transfer price is lower than the net asset price cannot prove the considerations and true intentions of the parties when entering into the contract, and the arbitration court found no agreement related to the EIA after reviewing the contents of the *Transfer Agreement* and the applicant also did not provide any evidence that both parties had communicated on the EIA in the past; Secondly, regarding the authenticity of the offset agreements, the applicant neither provided the technical appraisal result of the agreements, nor provided other evidence that Wu Guoqing forged the agreements, or even failed to confirm that the signatures were indeed Sun Linda's handwriting; Third, Sun Linda shall be aware of the risks involved in such signatures and shall bear such risks on her own even if she had signed without knowing the content according to Wu Guoqing's request; Thirdly, the applicant did not provide any evidence (such as offset agreements and other evidence related to equity transfer) for claiming that the offset agreements had nothing to do with the *Transfer Agreement*, and it is not unreasonable

that Sun Linda signed an offset agreement as a joint seller of the *Transfer Agreement*; Finally, the applicant did not provide evidence on commercial rationality, and the arbitration court held that commercial rationality is an overall consideration. For mature commercial entities, there are more factors that shall be considered for commercial rationality, not just based on the amount. The evidence submitted by the applicant is insufficient to prove that the offset agreements don't make commercial sense.

In summary, based on the evidence and information currently provided by both parties, the arbitration court cannot support the Applicant's objection and will adopt the offset agreements provided by the respondent because the Applicant failed to complete the testification. As mentioned above, as the joint seller of the disputed *Transfer Agreement*, Sun Linda and the applicant shall share the relevant creditor's rights, and she is also the authorized representative of the applicant. The respondent can perform its payment obligations under the disputed *Transfer Agreement* to Sun Linda, which was approved by Sun Linda through signing the offset agreements. Therefore, the offset agreements are also binding on the applicant.

(V)  Regarding the arbitration prescription in this case

The payment arrangement for the equity transfer fund was agreed by the applicant and the respondent in Article 2 of the *Transfer Agreement*, among which: before December 31, 2014, the respondent shall pay RMB Two Million Only; before December 31, 2015, the respondent shall pay RMB Seven Million Only; and before December 31, 2016, the respondent shall pay RMB Eight Million Only.

Based on this, the respondent argued in the defense that the amount due and payable of RMB Seven Million on December 31, 2015 has exceeded the limitation of action, and the arbitration court will not recognize this.

First of all, this case is a dispute over an equity transfer contract. For such cases, since Chinese laws and regulations do not provide a special arbitration prescription, the arbitration prescription in this case applies to the limitation of action in accordance with Article 74 of *the Arbitration Law of the People's Republic of China.*

Secondly, there is only one creditor's rights arising from an equity transfer, and both parties have also confirmed in Article 1.2 of the *Transfer Agreement* that: "The transfer price is RMB Twenty Million only", that is, in this case, there is only one creditor's rights under the *Transfer Agreement* regardless of the law and agreement. The time limit and method of performance of the equity transfer fund stipulated in Article 2 of the *Transfer Agreement* belong to the installment arrangement of the same creditor's rights. It is stipulated in Article 5 of *the Provisions of the Supreme People's Court on Several Issues Concerning the Application of the Limitation of Action System in the Trial of Civil Cases* that: "the limitation of action period shall be calculated from the date of expiry of the last period of performance if the parties agree to perform the same debt in installments." That means the limitation of action in this case shall be calculated from December 31, 2016.

Finally, the limitation of action in this case is three years according to *the General Provisions of the Civil Law of the People's Republic of China*. It is stipulated in Article 2 of *the Interpretation of the Supreme People's Court on Several Issues concerning the Application of the Limitation of Action System of " General Provisions of the Civil Law of the People's Republic of China"* that: "On the day when the General Provisions of Civil Law comes into effect, if the period of limitation of action has not yet reached the two years or one year stipulated in the General Principles of Civil Law, and the parties claim to apply the provisions of the General Provisions of Civil Law regarding the three-year limitation of action, the people's court shall support it." In this case, the expiration date of performance of the last period of creditor's rights is December 31, 2016, which it has not yet expired one year after the effective date of *the General Provisions of the Civil Law of the People's Republic of China* (namely, October 1, 2017). Therefore, the limitation of action applicable to this case is three years. The arbitration was initiated by the applicant on July 3, 2019, and the three-year limitation of action has not yet expired until December 31, 2016.

Therefore, based on the above facts, the arbitration court ruled that all payment disputes under the disputed *Transfer Agreement* are within the arbitration prescription. The respondent's proposal to separate the arbitration prescription for the installment of equity transfer fund has no legal basis.

(VI) Regarding the arbitration request of the Applicant

1.    Regarding the arbitration request that the respondent shall pay equity transfer fund of RMB 15 million to the Applicant

The equity transfer price stipulated in the *Transfer Agreement* is RMB 20 million. Up to now, RMB 5 million was actually paid by the respondent, and both parties had no objection to this, and the arbitration court recognized it. Whether the respondent in this case has the obligation to continue to pay the remaining equity transfer fund of RMB 15 million depends on whether the offset agreements are effectively binding on the applicant and the payment conditions under the offset agreements have been met. As determined in Part (IV) of the above opinion, the arbitration court held that the offset agreements shall be binding on the applicant.

The conditions under which the offset takes effect in the offset agreements are: "to make Sunco's 2004 environmental protection projects pass the EIA acceptance, to possess 6 production lines and to maintain the annual paint usage at the original 340 tons before December 31, 2016" and "to make Sunco's 2004 environmental protection projects KHJ [2004] 2604 and KHJ [2004] 2906 pass the EIA acceptance, and to possess 8 production lines" before December 31, 2016. According to the evidence provided by the respondent, the production output stipulated by KHJ [2004] 2604 is "an annual output of 1 million wood moldings and pieces, and 384,000 sets of furniture (cabinets)", and the production output stipulated by KHJ [2004] 2906 is an annual output of "1.5 million

wood moldings and pieces, and 800,000 sets of furniture". At the same time, the Kunshan Environmental Protection Bureau issued KHY [2016] No. 0247 on July 30, 2016, and approved the "annual production of 2.5 million wood moldings and pieces and 1.184 million sets of furniture" according to the above two documents. Moreover, the relevant application registration form recorded that the main raw and auxiliary materials including "paint of 340 tons/year", and "8 production lines", of which, neither party provided written evidence, while neither party denied these facts and the arbitration court respected this.   The applicant recognized the conditional civil juristic act in the cross-examination, but claimed that the conditional civil juristic act has nothing to do with Wu Guoqing. Although the offset agreement did mention that "if Party B (i.e. Wu Guoqing) can make Sunco... before December 31, 2016", based on general understanding, the arbitration court held that the effective/enforcement conditions of such offset are based on the fact that EIA acceptance is passed, rather than whether the act is completed by Wu Guoqing. In addition, neither the Applicant nor the respondent provided evidence on the reasons for the successful EIA acceptance. Therefore, the arbitration court can only rule that the effective/enforcement conditions of the offset have been met based on the evidence of the acceptance result, that is, the offset plan has been implemented. In summary, the arbitration court ruled that the offset conditions agreed in the offset agreement have been met.

It is stipulated in the offset agreement that Sun Linda shall pay Wu Guoqing RMB 15 million when the offset conditions are met, and this amount shall be paid directly by Sun Linda to Wu Guoqing, or be deducted from the "equity transfer fund" payable by the applicant to Sun Linda. And Sun Linda shall pay Wu Guoqing RMB 10 million, which shall be deducted from the "equity transfer fund" payable by the respondent to Sun Linda. We need to pay attention to the relationship between the respondent and Wu Guoqing here. The applicant also recognizes Wu Guoqing's control and representation of the respondent since Wu Guoqing is the respondent's shareholder and legal representative; in addition, both the respondent and Wu Guoqing participated in the signing of the offset agreement; Therefore, it shall be ruled that both the respondent and Wu Guoqing have made an expression of intent to approve the offset agreement, and the contents specified in the offset agreement apply to both the respondent and Wu Guoqing.

Regarding the nature of the offset agreement, the arbitration court held that it was a credit and debt relationship between Sun Linda, the Applicant and the respondent represented by Wu Guoqing. The so-called "deduction from the equity transfer fund" is the debt offset agreed by Sun Linda, Wu Guoqing and the respondent. It is stipulated in Article 100 of *the Contract Law of the People's Republic of China* that: "Where each party owes performance to the other party that is due, and the subject matters of the subject matter are not identical in type and quality, the parties may offset by mutual agreement." In this case, the respondent owed RMB 15 million to the

Applicant due to the *Transfer Agreement*, and Sun Linda's debt to Wu Guoqing due to the offset agreement was sufficient to cover the aforementioned RMB 15 million debts. Since Linda Sun was the joint seller of the *Transfer Agreement* and constituted a representative relationship with the applicant, both the respondent and Wu Guoqing participated in the signing of the offset agreement, the deduction method agreed in the offset agreement belongs to the debt offset agreed between the parties, and the effect of debt offsetting occurs when the conditions agreed by the parties are met. Therefore, the essence of the deduction agreed in the offset agreement is the agreed offset of debts, and the offset will be completed when the agreed conditions are met (July 30, 2016).

In summary, in this case, the offset agreements were binding on both parties, and the deduction conditions agreed in the offset agreements have been met. Therefore, the arbitration court ruled that the offset agreements had the effect of debt offsetting, and the respondent completed the debt offsetting on July 30, 2016. Since then, it no longer had the obligation to pay to Sun Linda, nor did it be obliged to pay RMB 15 million of equity transfer fund to the applicant. The arbitration court did not support the applicant's first arbitration request.

2.    The second arbitration request regarding the Applicant's requesting the respondent to pay the interest on the delayed equity transfer fund and the third arbitration request requesting the respondent to pay liquidated damages of RMB 3 million to the Applicant (the basis of calculation is: 1. with RMB 7 million as the principal, calculated according to the loan interest of the People's Bank of China during the same period from January 1, 2016 to December 31, 2016; with RMB 15 million as the principal, calculated according to the loan interest of the People's Bank of China during the same period from January 1, 2017 to the actual payment date)

Since the Applicant's second arbitration request and the third arbitration request are both requests for the respondent's breach of contract, which are highly related, the arbitration court hereby combined comments as follows:

(1)  Determination of the default fact

The arbitration court reviewed the evidence provided by both parties and sorted out the facts of the respondent's payment after the signing of the *Transfer Agreement* as follows in response to the Applicant's alleged default by the respondent:

①   It is agreed that before December 31, 2014, the respondent shall pay RMB Two Million Only; In fact, the respondent paid Sun Linda through the Industrial and Commercial Bank of China in February 2015 (the date on the business receipt is February 6 and the date on the deposit receipt is February 11). Sun Linda issued a receipt on February 14 of the same year, which stated that "this payment was agreed in the equity transfer agreement to be paid before December 31, 2014, and has been delayed due to the request of the payee Sun Linda."

②   Before December 31, 2015, the respondent shall pay RMB Seven Million Only; the debt offsetting was

completed in accordance with the offset agreement on July 30, 2016.

③    Before December 31, 2016, the respondent shall pay RMB Eight Million Only; The debt offsetting was completed in accordance with the offset agreement on July 30, 2016.

The arbitration court noted that the offset agreements were signed in March 2015 and March 2016 respectively; however, there was no exemption for interest/liquidated damages arising from payments that were overdue at the end of 2015 even if the agreements were signed in March 2016; In addition, it was only stated in the defense by the respondent that it was not liable for payment. However, claims such as "there is no overdue behavior" or "the applicant/Sun Linda is exempted from overdue liabilities" have not been put forward or the corresponding evidence has not been provided. Based on the above facts, the arbitration court ruled that the respondent had a breach of contract for its payment obligations under the *Transfer Agreement* (RMB Seven Million due and payable on December 31, 2015), with a total of 212 days overdue.

(2)    The essence of the applicant's request for delay in payment of interest on equity transfer fund

It is stipulated in Article 114 of *the Contract Law of the People's Republic of China* that: "The parties may agree that one party should pay a certain amount of liquidated damages to the other party based on the circumstances of the breach of contract, and may also agree on the calculation method for the amount of compensation for losses caused by the breach of contract.⋯ If the parties agree on liquidated damages for delay in performance, the defaulting party shall still perform the debts after paying the liquidated damages". It is stipulated in Article 196 that: "A loan contract is a contract in which the borrower borrows from the lender, repays the loan and interest upon expiry." It is stipulated in Article 205 that: "The borrower shall pay the interest within the agreed time limit." It is stipulated in Paragraph IV of Article 24 of *Interpretation of the Supreme People's Court on Applicable Legal Issues in Trial of Cases of Dispute over Sales Contract* that: "If the sales contract does not stipulate the liquidated damages for overdue payment or the calculation method of liquidated damages, and the seller claims compensation for the losses of overdue payment based on the buyer's breach of contract, the people's court may refer to the overdue penalty interest rate standard for calculation on the basis of the benchmark interest rate of similar RMB loans of the People's Bank of China in the same period." It can be seen from the above stipulations that liquidated damages and interest are concepts with different meanings: Liquidated damages refer to a certain amount of money agreed by both parties to the contract that shall be paid to the other party if one party breaches the contract; while interest generally applies to relationships such as lending, deposits and savings.

The so-called "interest on the delayed equity transfer fund" has not been agreed by both parties under the *Transfer Agreement*, and the essence of the "interest" requested by the applicant is "the liquidated damages for late payment" claimed based on Paragraph IV of Article 24 of *Interpretation of the Supreme People's Court on*

*Applicable Legal Issues in Trial of Cases of Dispute over Sales Contract.* The calculation method of the liquidated damages that the applicant can request for late payment in combination with the determination of the facts of breach of contract and the aforementioned legal provisions is: The principal is RMB 7 million. From December 31, 2015 to July 30, 2016, the amount is 212/360*4.35%*7,000,000= RMB 179,316 calculated according to the loan interest of the People's Bank of China in the same period (short-term loan interest rate of 4.35%).

(3)   The amount of liquidated damages stipulated in the *Transfer Agreement*

It is stipulated in Article 4.1 of the *Transfer Agreement* that: "the defaulting party shall pay the observant party liquidated damages equal to 20% of the registered capital of Sunco if either party fails to perform all or part of the terms of this agreement after the signing of this agreement." According to the business license of Sunco submitted by the parties, the registered capital of Sunco is USD 10.8 million, 20% of which shall be USD 2.16 million.

In the arbitration request, the Applicant voluntarily reduced the liquidated damages to RMB 3 million, while the respondent did not claim to adjust the amount of the liquidated damages. Therefore, the respondent shall pay liquidated damages of RMB 3 million according to the intention of both parties.

(4)   Whether the liquidated damages for overdue payment and the liquidated damages specified in the *Transfer Agreement* can be applied at the same time

Based on the above analysis, the arbitration court held that the second arbitration request and the third arbitration request of the Applicant in this case are essentially liquidated damages claimed against the respondent for overdue payments. There are no clear regulations in current laws and regulations on whether the two types of liquidated damages can be applied to the same object and the same cause of action at the same time. It only applies to liquidated damages for different objects at the same time according to the relevant judgment of the Supreme People's Court [for example (2013) MT Zi No. 202]. Combined with practice and based on the principle of fairness and reasonableness, the arbitration court held that the two types of liquidated damages agreed upon for the same breach of contract by the same object generally cannot be applied at the same time, unless an adjustment of liquidated damages is requested in accordance with Article 114 of the *Contract Law.* In this case, the arbitration court can only rule one of the liquidated damages since both the second arbitration request and the third arbitration request are two liquidated damages repeatedly requested for the respondent's breach of contract of "failing to make timely payment". The arbitration court respects the intentions of both parties where the parties have agreed in the *Transfer Agreement.* Taking into account the compensation and punitiveness of liquidated damages, the liquidated damages agreed by both parties are selected to apply, that is, the liquidated damages of RMB 3 million requested by the applicant in the third arbitration request.

In summary, only one of the second and third arbitration requests of the Applicant can be supported. The arbitration court supports the third arbitration request based on the prior stipulations of both parties and rules that the respondent shall pay liquidated damages of RMB 3 million to the applicant for its breach of the payment of the equity transfer fund.

3.    Regarding the fourth arbitration request that the arbitration fee proposed by the Applicant shall be borne by the respondent

The arbitration court held that the arbitration fee in this case shall be borne by both parties together according to the division of responsibilities in this case and the extent to which the applicant's arbitration request is supported, according to Paragraph (I) of Article 47 of *the Arbitration Rules*, of which the applicant shall bear 80% % and the respondent shall bear 20%.

## III. Adjudication

The arbitration court made the following ruling:

(I)    The liquidated damages of RMB 3 million shall be paid by the respondent to the applicant;

(II)   The applicant's other arbitration requests are not supported;

(III) The arbitration fee in this case is RMB 315,454, 80% of which shall be borne by the Applicant, totaling RMB 252,363.20, and 20% of which shall be borne by the respondent, totaling RMB 63,090.80. The respondent shall pay RMB 63,090.80 to the Applicant since the Applicant has already paid the full amount of the arbitration fee in this case;

The amount mentioned in the above Paragraph (I) and Paragraph (III) of the ruling totals RMB 3,063,090.80, which shall be paid by the respondent to the applicant within 15 days from the date of this ruling.

This ruling is final and effective as of the date when this Arbitral Award is made.

(No text below)

(No text in this page)

Chief arbitrator:

Arbitrator:

Arbitrator: <mark>Ma Beiyi</mark>

Shanghai, April 29, 2021

Shanghai International Economic and Trade Arbitration Commission (Shanghai International Arbitration Center)

(sealed)