**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SUNCO TIMBER (KUNSHAN) CO., LTD.<br>    Plaintiff,<br><br>    v.<br><br>LINDA SUN, et al.,<br>    Defendants. | **Civil Action No. 1:22-cv-10833** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT LINDA SUN'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO DEFENDANT LINDA SUN'S OPPOSITION**

**PRELIMINARY STATEMENT**

Defendant Linda Sun ("Linda")'s opposition and cross-motion fails on several grounds. Facing undisputed evidence, Linda's arguments rest primarily on a Chinese judgment that she contends bars Plaintiff's fiduciary-duty claim. That argument fails because the judgment was rendered on a materially different factual record and addressed a different stage of the parties' dispute. At the time, the Chinese court concluded only that Sunco China had not yet established that the debt had become uncollectible. Following years of discovery in this action, the record now demonstrates that the factual premise underlying that decision no longer exists.

Linda also asks this Court to blindly follow corporate formalities and ignore economic reality by accepting that an individual who directed the nonpayment of Sunco China's debt, exercised control over the enterprise, and personally benefited from the resulting transfers may escape liability because her name does not appear on a membership certificate. Linda does not dispute those transactions nor can she explain them in her own deposition; instead, she offers her daughter-in-law's affidavit, which was never disclosed prior to this summary judgment, to try to

1

justify them. None of her arguments create a genuine dispute of material fact. Her cross-motion should be denied in its entirety, and summary judgment should enter in Sunco China's favor.

**ARGUMENTS**

**I.    THE CHINESE JUDGMENT DOES NOT BAR SUNCO CHINA'S FIDUCIARY DUTY CLAIMS**

Linda argues that the November 2021 judgment of the Suzhou Intermediate People's Court bars Sunco China's breach of fiduciary duty claims (Counts 6 and 7) under the doctrine of res judicata. This argument fails for three reasons.

**A.    The Chinese Court's Decision Rested On A Factual Premise That No Longer Exists And Did Not Reach The Merit Of The Case**

Res judicata only bars claims that were or could have been raised based on facts existing at the time of the prior judgment. The First Circuit has definitively held that res judicata does not bar claims based on "new conduct occurring after" the prior judgment, even if the new conduct is "of the same nature" as the original conduct. *González-Piña v. Rodríguez*, 407 F.3d 425, 428, 430 (1st Cir. 2005); *see also Walsh v. Int'l Longshoremen's Ass'n*, 630 F.2d 864, 873 (1st Cir. 1980) (subsequent broader conduct not barred). Furthermore, claim preclusion may not apply if a plaintiff could not have known the full dimensions of their claim when the prior action was brought. *See Monagas v. de Arellano*, 674 F.3d 45, 55 (1st Cir. 2012); *In re Belmont Realty Corp.*, 11 F.3d 1092, 1100 (1st Cir. 1993).

The Chinese court's judgment rested on a factual premise that no longer exists. The court's core reasoning was that Sunco China's "accounts receivable have been demanded but not yet collected," and that this "cannot be directly characterized as conduct that harms the company's interests." (Ex. 34 at 16). The court explicitly stated it could not confirm the debt was uncollectible because Sunco China had "not taken remedial measures beyond sending a demand letter." (*Id.*).

2

The court even explicitly pointed out the debt confirmation letter, using it as a rationale to support that Infinity confirmed the debt. (*Id.*) Translated into practical terms, the court said: "come back when you can prove the money is actually lost." That is an express reservation of the ultimate question, not a decision on the merits of it.

That day has arrived. During the discovery of this case, Infinity and the defendants have confirmed that they are not going to pay for the cabinets. Infinity admitted that it transferred all the cabinets to Sunco, Inc. ("Sunco Inc."), and Sunco Inc. resold those cabinets and distributed the proceeds to other defendants. Infinity is undisputedly insolvent, has ceased all operations, and will never pay the $6.7 million. Defendants even raised a defense for their nonpayment (the setoff theory), which they never mentioned in the Chinese lawsuit.[1]

Linda's own expert, Dr. Jie (Jeanne) Huang, acknowledges that Chinese law recognizes an exception to res judicata when "new facts" occur after a judgment becomes legally effective. (Huang Decl. ¶ 50). While Dr. Huang conclusorily asserts this exception does not apply here, the continued refusal to pay, the confirmed insolvency, and the post-judgment asset transfers constitute textbook new facts that demolish the factual foundation of the Chinese judgment. Plaintiff's expert on Chinese civil procedure, Attorney Shisong Chen, confirms this conclusion under Chinese law: based on the new facts that have emerged since the Suzhou Intermediate Court's judgment, this action falls within the exception provided under Article 248 of the Interpretation on the Civil Procedure Law (2022 Amendment), and a Chinese court would accept the case if filed there today. (*See* Ex. 88, Chen Expert Report at § V.)

---

[1] Unless otherwise noted, the facts cited herein are set forth in detail in Plaintiff's Statement of Facts in Support of Its Motion for Summary Judgment (Doc. No. 224) and are supported by the exhibits cited therein, which are incorporated by reference.

**B.**     **The Chinese Court's "No Evidence" Findings Were A Product Of Procedural Limitations**

Chinese and U.S. courts do not share the same discovery procedures—a distinction that is critical here. In the Chinese proceeding, Sunco China submitted 20 pieces of evidence; Linda submitted nothing. (Ex. 34 at 5-8). Unlike in the U.S., Sunco China had no mechanism to compel Linda to disclose the financial records of the U.S. entities she controlled.

Attorney Chen's expert report provides a detailed comparative analysis of the structural differences between Chinese civil procedure and U.S. federal discovery, confirming that Chinese litigants have no right to compel adverse parties to disclose relevant evidence, no system of written interrogatories, and no equivalent to Rule 26 initial disclosures—and that whether a Chinese court investigates evidence on its own motion is entirely discretionary. (*See* Ex. 88, Chen Expert Report at § VI.).

All the critical evidence was in the United States, under Linda's family's control—evidence that Infinity transferred all the cabinets to Sunco Inc. for zero consideration and then became insolvent, that Defendants never planned to pay for the cabinets, the purported offset defense, the checks to the Sun Family Trust that Linda could not explain, the "Advance to Linda" accounts, or the other extensive intercompany transfers. The Chinese court found "no evidence" of concealment, but Sunco China literally could not obtain that evidence in China—it was entirely outside the reach of Chinese civil procedure. U.S. discovery revealed what China's procedural limitations concealed. A judgment should not have preclusive effect where the losing party was denied a meaningful opportunity to develop its case due to the procedural limitations of the forum.

**C.**     **The Chinese Judgment Should Not Be Recognized**

Recognition of a foreign judgment under the Uniform Foreign-Country Money Judgments Recognition Act (UFMJRA) is discretionary, not automatic. G.L. c. 235, § 23A. The Court should

decline to recognize the judgment based on the case-specific procedural concerns detailed above, which denied Sunco China a meaningful opportunity to present its evidence.

Furthermore, Linda's reliance on Dr. Huang's expert report is unavailing. Plaintiff has submitted the expert declaration of Attorney Chen, an equity partner at a top-100 Chinese law firm with a J.D. from Boston University School of Law and extensive experience in Chinese-U.S. cross-border litigation, which directly contradicts Dr. Huang's analysis. (*See* Ex. 88, Chen Expert Report at § I.).

Finally, public policy strongly favors non-recognition here: the defendants are all U.S. residents with U.S. assets. The Chinese court had no ability to provide meaningful relief against the U.S.-based enterprise. Recognizing the judgment would reward the defendants for structuring their fraud across jurisdictions to evade accountability.

## II.    LINDA SUN IS LIABLE FOR BREACH OF FIDUCIARY DUTY ON THE MERITS

Setting aside the res judicata defense, Linda's cross-motion on the merits of Counts 6 and 7 fails. Under Massachusetts law, corporate directors owe a strict duty of loyalty and must not divert corporate assets for personal benefit. *Demoulas v. Demoulas Super Markets, Inc.*, 424 Mass. 501, 528-529 (1997).

The undisputed facts now establish exactly what the Chinese court said was missing: the debt is uncollectible, and Linda did direct the nonpayment. She told David Sun ("David") that Infinity did not owe the money, demonstrating her active participation in the breach. She then received the proceeds of the scheme through distributions from Sunco Inc. and NST. As a director of Sunco China, she owed fiduciary duties and breached them by orchestrating the nonpayment and benefiting from the diverted assets.

**III.    LINDA SUN IS LIABLE UNDER THE VEIL-PIERCING DOCTRINE**

Linda asks this Court to elevate corporate formalities over economic reality, arguing that she cannot be held liable because she was never a formal "shareholder, director, officer, or member" of Infinity. This formalistic defense misapprehends Massachusetts law and ignores the undisputed factual record of pervasive intermingling and control across the Sun family enterprise.

**A.    Formal Titles Are Irrelevant; De Facto Control And Enterprise Intermingling Is The Standard**

Massachusetts law does not require formal ownership or corporate titles to pierce the corporate veil. The Supreme Judicial Court has established that veil piercing is appropriate when there is "confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities", and where there is "serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." *My Bread Baking Co. v. Cumberland Farms, Inc.*, 353 Mass. 614, 619 (1968). When family members operate a web of entities as a single economic unit, a court "need not consider with nicety which of them ought to be held liable." *Id*. The First Circuit, interpreting Massachusetts law, has distilled this standard into twelve factors, focusing on actual control, nonobservance of corporate formalities, siphoning of assets, and use of the corporate form to promote fraud. *Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc.*, 754 F.2d 10, 15 (1st Cir. 1985). Linda's defense therefore fails because it rests on the mistaken premise that she cannot be held liable simply because she lacked formal ownership or an official role in Infinity.

**B.    Linda Exercised Pervasive De Facto Control Over The Enterprise**

Linda was the decision-maker for the Sun family enterprise. She did not need her name on a membership certificate because she controlled, at least in this instance, the person whose name was on every certificate: her son, David.

Linda directed the key business decisions. David testified that Linda told him Infinity did not need to pay Sunco China's invoices. This was not a suggestion—it was a directive from the person who ran the family business. Linda did not merely advise; she determined the enterprise's course of action on its single most consequential decision: whether to pay a $6.7 million debt.

Linda negotiated on behalf of the entities. Linda herself claims she negotiated the purported "setoff" agreement with Mr. Wu on behalf of Infinity and Sunco Inc.—entities she supposedly had no connection to. If Linda truly had no role in these entities, she would have no authority or reason to negotiate their commercial disputes. Her own version of events confirms she acted as the principal of the enterprise.

Linda served as a director of both sides of the transaction. She was the founder and a director of Sunco Inc.—the entity that actually operated the cabinet business, received all of Infinity's assets, resold the cabinets, and held the cash. She was not a stranger to the enterprise, she built it. She had the power to control the ownership of Sunco Inc. because she "negotiated the sale of the 52 percent shares to QiYi on Sunco US's behalf" in 2014." (*See* Ex. 42, David Aff. ¶10). She also considered herself as Sunco Inc.'s designated representative on Sunco China's board of directors, and testified that she was "the board member assigned to the factory by SUNCO USA." (*See* Ex.1, Linda Depo. Vol. 83:5–11). And because Infinity is Sunco Inc.'s alter ego, Linda's control over Sunco Inc. is control over Infinity. She was simultaneously a director of Sunco China (the creditor) and the de facto controller of the debtor side. She sat on Sunco China's board while directing David not to pay Sunco China. This is not a passive family relationship—it is the architecture of the fraud itself.

C.      **The Entities Had No Independent Existence Apart From Linda And The Family**

The corporate entities in this case were not independent businesses making arm's-length decisions. They were shells and conduits that existed solely to execute Linda's directives and serve the family's collective interests.

Infinity was merely a hollow shell. Infinity had no employees, no independent operations, and no bank accounts it independently controlled. It did not make business decisions. It did not negotiate contracts. It existed on paper to receive cabinets from Sunco China and pass them to Sunco Inc. It had no "separate mind, will, or existence"—the hallmark of an entity that should be disregarded under *My Bread Baking*.

David was the owner, but not an independent actor. Defendants' ownership chart shows David's name on virtually every entity—as 100% owner of Sunco Inc., 100% owner of Infinity Realty Company, LLC ("Infinity Realty"), and trustee of the trust that owns 60% of Infinity. He also manages all these entities. But David did not exercise independent judgment. He did what Linda told him to do. When Linda said "don't pay," David didn't pay. When Linda purportedly negotiated the setoff, David implemented it. David's formal ownership is the mechanism through which Linda exercised control—not evidence of his independence.

The entities were treated as a single unit because they prepared consolidated financial statements for bank. Consolidated financial reporting means the entities were presented to the outside world as a single economic unit. The bank evaluating the family's creditworthiness did not look at Infinity, Sunco Inc., Infinity Realty, and NST as separate businesses—it looked at one enterprise. The family treated them as one, and so should this Court.

8

### D.    The Corporate Form Was Pervasively Disregarded

The Sun family did not observe the corporate separateness of these entities in practice. The record is replete with evidence of intermingling and disregard of formalities.

Shillock Yuan-Sun ("Shillock")'s affidavit—even though inadmissible for reasons detailed in Plaintiff's motion to strike—admits that cash routinely moved between entities without following the formal corporate structure. Rather than Sunco Inc. paying rent to Infinity Realty, Infinity Realty paying a promissory note to NST, and NST making a distribution to Linda, Sunco Inc. maintained an "Advance to Linda" account through which it paid Linda's personal obligations—including her federal and state income taxes—directly from corporate funds. (*See* Ex. 44, Shillock Aff. ¶¶ 27–41). Shillock calls these "efficient", but the law calls them nonobservance of corporate formalities. This is not how separate corporations operate. This is how a family treats a business as its personal bank account. When the people running the entities do not themselves respect the corporate boundaries, the Court has no reason to enforce those boundaries against a creditor.

Further, there is no evidence in the record of board meetings, shareholder votes, or independent decision-making at Infinity or Sunco Inc. No evidence that Infinity's "owners" (the trusts) ever deliberated about whether to transfer cabinets to Sunco Inc. No evidence that anyone other than Linda and David made strategic decisions for the enterprise. The entities existed on paper; in reality, one family ran everything.

### E.    The Corporate Structure Was Designed To Perpetrate A Fraud

The final element of the veil-piercing analysis asks whether the corporate form was used to promote fraud or injustice. Here, the structure was deliberately designed to allow Linda to extract millions while evading liability for the enterprise's debts.

Defendants' own ownership chart reveals the design: Linda's name appears on only one entity—NST, where she is a limited partner. NST is the entity that receives distributions. Linda's name does not appear on Infinity (the entity that owes the debt) or Sunco Inc. (the entity that holds the assets). This is not a coincidence. It is a deliberate architecture: control the enterprise through or together with David, extract the profits through NST, and leave the liabilities stranded in a shell (Infinity) that has no assets to satisfy them.

The undisputed record shows that while Infinity's $6.7 million debt to Sunco China went unpaid, Linda received: distributions through NST as the largest limited partner; direct payments of her personal taxes from Sunco Inc.; and approximately $3 million in proceeds from the sale of the warehouse. She directed the nonpayment, controlled the entities, and collected the proceeds—all while maintaining the fiction that she was unconnected to the debtor.

If the corporate veil is not pierced, Linda will have successfully stolen $6.7 million through a structure she designed specifically to avoid accountability. That is precisely the injustice the veil-piercing doctrine exists to prevent.

## IV.    LINDA SUN AND NEW SUN ARE LIABLE FOR FRAUDULENT TRANSFER

Linda's defense to the fraudulent transfer claim rests on two contentions: first, that the payments from Sunco Inc. to Linda and NST cannot be reached because Sunco Inc.—not Infinity—made them, and Sunco Inc. is not the "debtor" under MUFTA; and second, that even if the funds are traceable through the § 9 downstream-transferee chain, she and NST took them in good faith and for value—specifically, as payment of rent and a preexisting promissory note debt. (*See* Doc No. 230, Def. Opp. at 29-31). Both contentions fail.

10

**A.**        <u>**The Funds Are Traceable Through The § 9 Downstream-Transferee Chain**</u>

Linda acknowledges that G.L. c. 109A, § 9 permits recovery against downstream transferees of a fraudulent transfer, but argues that Sunco China cannot trace the funds from Infinity through Sunco Inc. to Linda and NST. (*Id*. at 30). That concession forecloses her first line of defense, and her tracing challenge fails on the facts.

The tracing is straightforward. Infinity received $6.7 million in custom cabinets from Sunco China and transferred all of them to Sunco Inc. for zero consideration—a fraudulent transfer by the debtor (Infinity) to the first transferee (Sunco Inc.). Sunco Inc. then resold those cabinets to its customers for approximately $8 million. The proceeds of that sale then flowed to Linda and NST: Sunco Inc. wrote checks to Linda and paid her personal tax obligations directly, and Infinity Realty—itself funded by Sunco Inc.—made the $3 million installment payment to NST. All parties admit these transfers occurred. (*Id*. at 27-28). The § 9 chain is complete: Infinity (debtor) to Sunco Inc. (first transferee) then to Linda and NST (subsequent transferees).

Linda's argument that the Sunco Inc. payments cannot be traced to Infinity because Sunco Inc. is not itself the "debtor" proves too much. Under that logic, a fraudster could always immunize downstream recipients by routing assets through a single intermediary. Section 9 exists precisely to prevent that result. Moreover, Infinity and Sunco Inc. operated as a single enterprise under common ownership and control, with no independent employees, finances, or operations separating them. As established in Section III, the enterprise-unity evidence is overwhelming. In this context, treating Sunco Inc. as an independent actor breaking the chain of traceability would reward the Defendants for the very commingling that the veil-piercing doctrine condemns.

## B.    The Transfers Were Not Made In Good Faith Or For Value

Linda's good-faith defense rests entirely on Shillock's post-discovery affidavit, which characterizes the transfers as rent payments and installment payments on a legitimate preexisting promissory note. (*Id*. at 9-12). That defense fails for three independent reasons, each of which is sufficient on its own.

First, Shillock's post-discovery affidavit should be excluded under Fed.R.Civ.P. 37(c)(1), and for the reasons set forth in Plaintiff's simultaneously filed motion to strike. The core problem is straightforward: the specific payments Shillock now purports to explain check-by-check were asked about at Linda's own deposition—the deposition of the person who actually received the money, and Linda's answers were uniform: "I have never seen those checks"; "I have no idea"; "I don't know."[2] Defendants never supplemented Linda's testimony under Rule 26(e). A post-discovery affidavit from a different witness cannot now supply, transaction by transaction, the explanations that the actual recipient disclaimed under oath.

Second, even if the Court considers Shillock's affidavit, her "for value" characterization does not withstand scrutiny. Linda argues the transfers were legitimate payments of rent and installments on a preexisting promissory note owed by Infinity Realty to NST. But this defense has multiple problems. The "rent" and "note" payments were never made directly between the entities that were parties to those purported obligations. Instead, Sunco Inc. wrote checks directly to Linda or paid her personal tax obligations outright—collapsing a chain of supposed arm's-length transactions into direct personal payments that bypassed the intervening entities entirely. Shillock calls this "efficient." (Ex. 44, Shillock Aff. ¶¶ 11–21). But collapsing corporate formalities for convenience is not observing them—it is disregarding them, which is precisely what MUFTA

---

[2] See Ex. 1, Linda Depo. Vol I at 108:12, 109:6, 109:9, 109:17, 109:24, 110:9, 110:14, 111:1–2, 112:3, 112:11, 112:21).

targets when evaluating whether a transfer was truly "for value" at arm's length. Also, the entire rent-and-note structure was itself a product of the same integrated family enterprise that stripped Infinity of its assets. A preexisting enterprise obligation cannot serve as a legitimate "value" defense when the obligor, obligee, and ultimate beneficiary are all controlled by the same family and operating without meaningful financial separation. Further, Shillock explicitly admits she could not determine how the $24,000 payment to Linda's irrevocable trust was accounted. (*Id*. ¶ 53). That concession—in the very affidavit offered to prove that every dollar was properly accounted for and made for value—defeats the defense on its own terms.

Third, and most fundamentally, Linda cannot establish good faith because she orchestrated the very nonpayment that created the insolvency from which the transfers arose. Under MUFTA, the burden falls on the transferee to prove good faith. G.L. c. 109A, § 9(a). A transferee who actively participated in the scheme that rendered the debtor insolvent cannot, as a matter of law, claim she received the resulting transfers in good faith. See *In re Black Elk Energy Offshore Operations, LLC*, 114 F.4th 343, 353–56 (5th Cir. 2024) (good-faith defense fails where transferee's agent participated in the fraudulent scheme; knowledge of the fraud is imputed to the transferee). The undisputed record establishes that Linda was simultaneously a director of Sunco China—the creditor to whom the $6.7 million was owed—and the person who told David not to pay the invoices. She knew the debt existed; she knew Infinity had no assets of its own to pay it; and she directed the nonpayment that ensured Infinity would remain insolvent. Having designed the insolvency, she cannot claim surprise or good faith when she received the proceeds of the resulting asset strip. Summary judgment should enter against her and NST on Count 12.

13

## V.    THE REACH-AND-APPLY CLAIM IS PROPERLY BROUGHT

Linda and NST argue that the reach and apply claim under G.L. c. 214, § 3(6) fails because (1) they hold no property of Infinity; (2) reach and apply is unavailable where MUFTA provides an adequate remedy; and (3) § 3(8) is coextensive with MUFTA and fails for the same reasons. None of these arguments are valid.

Linda's first argument rests on the same formalistic premise rejected in Sections III and IV: that the Sun family entities are truly separate. If the Court pierces the veil (Section III), the distinction between Infinity's property and Linda/NST's property collapses—assets held by Linda and NST are assets of the single enterprise that includes Infinity, and § 3(6) is satisfied.

Even without piercing, Linda and NST hold the traceable proceeds of Infinity's fraudulently transferred assets. As established in Section IV, Infinity transferred $6.7 million in cabinets to Sunco Inc. for zero consideration; Sunco Inc. distributed the proceeds downstream to NST and directly to Linda. When a fraudulent transfer is avoided, the transferred assets are deemed never to have left the debtor's estate. The funds in Linda and NST's hands are not theirs free and clear—they are Infinity's assets held subject to Sunco China's equitable claim. That is precisely the "interest, legal or equitable, of a debtor" that § 3(6) reaches.

Linda's attempt to recharacterize these proceeds as payments on a "preexisting debt"—Infinity Realty's promissory note to NST—fails for the reasons stated in Section IV: intercompany "debts" among family entities controlled by the same person are not arm's-length obligations that constitute "value" under the statute.

Linda further argues § 3(6) is unavailable because MUFTA provides an adequate remedy through ordinary execution. But she simultaneously argues MUFTA fails. She cannot have it both ways. If MUFTA fails—as she urges—then ordinary execution is unavailable, and § 3(6) is the

14

only equitable path to assets that belong to Infinity's creditors. Moreover, a plaintiff is entitled to plead alternative theories. Reach and apply serves as the independent equitable mechanism if the Court finds some technical element of MUFTA unsatisfied. The availability of one remedy does not extinguish another.

Finally, Linda argues § 3(8) is "coextensive" with MUFTA and fails for the same reasons, citing *De Prins v. Michaeles*, 236 F. Supp. 3d 482, 490–91 (D. Mass. 2017). But "coextensive" means the two statutes rise and fall together—and they rise together here. As demonstrated in Section IV, the undisputed facts satisfy MUFTA. If MUFTA is satisfied, § 3(8) is necessarily satisfied as well. De Prins supports Sunco China, not Linda.

## CONCLUSION

Linda's cross-motion should be denied in its entirety. Her res judicata defense rests on a judgment whose factual premises have been destroyed and whose "no evidence" findings were the product of a system that gave Sunco China no tools to uncover the fraud. Her remaining defenses ask this Court to ignore economic reality in favor of corporate formalities. The undisputed facts establish that she directed the nonpayment, controlled the enterprise, and received the proceeds. Summary judgment should enter in Sunco China's favor on all counts against her.

**DATED: July 1, 2026**

**PLAINTIFF,**
Sunco Timber (Kunshan) Co., Ltd.
By its attorneys,


*/s/ Yun Cheng*
Connie C. Dai (BBO #683330)
Yun Cheng (BBO #707028)
Lion's Law, P.C.
154 Wells Ave
Newton, Massachusetts 02459
(617) 682-7111 Telephone
connie@lionslawgroup.com
yun@lionslawgroup.com

*/s/Timothy K. Cutler*
Timothy K. Cutler (BBO #636124)
CUTLER & WILENSKY LLP
20 Walnut Street, Suite 1
Wellesley, Massachusetts 02481
(617) 232-7500 Telephone
tim@cutlerlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF/CM system and will be sent electronically to all the registered participants as identified on the Notice of Electronic Filing (NEF) on July 1, 2026.


*/s/Yun Cheng*
Yun Cheng

16