UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUNCO TIMBER (KUNSHAN) CO., LTD.<br>    Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>LINDA SUN, individually,<br>Defendant/Counterclaimant,<br><br>DAVID SUN, individually, SHILLOCK YUAN-SUN, individually, and INFINITY WOOD PRODUCTS, LLC,<br>    Defendants,<br><br>SUNCO, INC.,<br>    Reach and Apply Defendant, and<br>    Fraudulent Conveyance Defendant<br>    Counterclaimant<br><br>EASTMAN ST. DISTRIBUTORS LLC, EASTMAN ST. WOODWORKS, INC., INFINITY REALTY COMPANY LLC, and NEW SUN LIMITED PARTNERSHIP,<br>    Reach and Apply Defendants, and<br>    Fraudulent Conveyance Defendants. | **Civil Action No. 1:22-cv-10833** |

**COMBINED STATEMENT OF MATERIAL FACTS**

1

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS AND
THE DEFENDANTS' RESPONSES**

Pursuant to L.R. 56.1, the defendants submit the following responses to the plaintiff
Sunco Timber (Kunshan) Co., LTD's Statement of Material Facts:

## I.    Main Parties and Corporate Structure

### A.    Sunco Inc.

1. In the 1980s, Defendant Linda Sun ("L. Sun") founded Sunco Inc. (also a Defendant in this case) with her ex-husband. The company initially operated in the gardening tools business and later transitioned, in the 1990s, to importing wooden kitchen cabinets from China for sale in the United States.  [L. Sun Dep. Vol. I (Ex. 1) at 20:11–24; 21:1–7; 33:3–5].

   **Non-Linda/New Sun Limited Partnership ("NLNS") Defendants'[1] Response:** Undisputed for purposes of summary judgment.

   **Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment. (*See also* Ex. 1 (L. Sun Dep. Vol. I) at 30:4-8, 33:1-5).

2. From 2005 to 2010, L. Sun was the sole manager of Sunco Inc. and all the managers reported to her. [D. Sun Dep. Vol. I (Ex. 3) at 50:1-15].

   **NLNS Defendants' Response:** Undisputed that Linda Sun was a manager of Sunco, Inc. (also referred to as "Sunco US" to avoid confusing Sunco, Inc. with Plaintiff, which also has "Sunco" in its name and which is referred to herein as "Sunco China") during the 2005 to 2010 time period.  Disputed that Linda Sun was the only manager during that time

---

[1]  For avoidance of doubt, the NLNS Defendants are: (1) David Sun; (2) Shillock Yuan-Sun; (3) Infinity Wood Products, LLC; (4) Sunco, Inc.; (5) Eastman St. Distributors  LLC; (6) Eastman St. Woodworks, Inc.; and (7) Infinity Realty Company LLC.

5084389_1

period, as David Sun began taking over.  (*See* Ex. 3 (D. Sun Dep. Vol. I) at 49:48:10-49:22.)

**Linda's and New Sun's Response**: Disputed concerning the time period. The cited testimony does not support the time period. David Sun testified that after Linda Sun and William Sun's divorce, he learned more about what she did as the manager of Sunco Inc. and not concerning her role from 2005 to 2010. (*See* Ex. 3 (D. Sun Dep. Vol. I) at 50:1-15). Undisputed as to the remaining for the purposes of summary judgment.

3.  David Sun ("D. Sun"), L. Sun's son, began his employment with Sunco Inc. in the late 1990s and ultimately became the sole owner of Sunco Inc. by around 2011. [D. Sun Dep. Vol. I (Ex. 3) at 43:11–44:2; 70:1-6].

    **NLNS Defendants' Response:** Undisputed for purposes of summary judgment.

    **Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

4.  D. Sun is the president, treasurer, secretary, and director of Sunco Inc.  [*See* Massachusetts Secretary of the Commonwealth Business Entity Summary for Sunco Inc. (Ex. 8)].

    **NLNS Defendants' Response:** Undisputed for purposes of summary judgment.

    **Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

### B.     Sunco China

5.  In 2003, Plaintiff Sunco Timber (Kunshan) Co., Ltd. ("Sunco China") was established in Kunshan, China, by Sunco Inc. for the manufacturing of cabinets. [L. Sun Dep. Vol. I (Ex. 1) at 34:24–37:5].

3

**NLNS Defendants' Response:** Undisputed for purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

6. From 2003 through approximately 2009, Sunco China was wholly owned by Sunco Inc. During this time, L. Sun was the president and sole owner of Sunco Inc. [L. Sun Dep. Vol. I (Ex. 1) at 37:17–24; 38:1–2, 23–24; 39:1].

   **NLNS Defendants' Response:** Undisputed that Sunco China was wholly owned by Sunco, Inc. (i.e., Sunco US) from 2003 through 2009 and that Linda Sun was the president and sole owner of Sunco, Inc. during that time.  Disputed as to the implication that ownership over Sunco China changed immediately after 2009.  Ex. 3 (D. Sun Dep. Vol. I) at 70:1-11; 74:10-24

   **Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

7. From 2003 through 2009, Sunco China's primary customer was Sunco Inc. From 2012 through 2015, Sunco China's sole customer was Sunco Inc. (through Defendant Infinity Wood Products LLC) and Sunco Inc.'s only supplier was Sunco China. [L. Sun Dep. Vol. I (Ex. 1) at 37:12–16; D. Sun Dep. Vol. I (Ex. 3) at 104:2-19; 220:23-24; C. Li Dep. (Ex. 6) at 43:5-7].

   **NLNS Defendants' Response:** Disputed. As Plaintiff itself claimed in its Amended Complaint, "Until July 2019, [IWP] had been Sunco [US]'s sole customer."  Doc. No. 61 ¶ 33.[2] Further, this statement of material fact from Plaintiff is flatly inconsistent with

---

[2] "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co.*, 976 F.2d 58, 61 (1st Cir. 1992) (quoting *Bellefonte Re Insurance Co. v. Argonaut Insurance Co.,* 757 F.2d 523, 528 (2d Cir.1985)).

4

Plaintiff's claim in its Amended Complaint that it had no idea that it was manufacturing cabinets for a company with which Linda or her family was affiliated (see Doc. No. 61 ¶ 73), in light of the fact that Plaintiff's own Rule 30(b)(6) witness – as well as Mr. Wu – testified that Plaintiff was well aware that Linda was or had been affiliated with Sunco US (Doc. No. 119-6 (B. Zhao Dep. Vol. I) at 96:7-99:12 ; Doc. No. 119-11 (G. Wu Dep. Vol. I) at 78:1-7).  It is also flatly inconsistent with Plaintiff's representation to the Court in seeking leave to amend its complaint to add Sunco US as a defendant that it was only through discovery that Plaintiff learned of the existence of, inter alia, Sunco US.  See Doc. No. 52 at 2.  Plaintiff falsely reiterated to the Court in seeking leave to amend its complaint that "Plaintiff did not become aware of the five entities" of which Sunco US was one[3] "until it sought to respond to Linda Sun's written discovery requests."  Doc. No. 59 at 2.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

8. From 2009 to 2019, L. Sun lived at Sunco China's factory because the company was losing money. [L. Sun Dep. Vol. I (Ex. 1) at 35:21–36:7].

**NLNS Defendants' Response:** Undisputed for purposes of summary judgment except as to the reason Linda lived at the factory.  She cited the company's financial status as one reason, but she also identified "quality issue[s]" as another.  (See Ex. 1 (L. Sun. Dep.) 36:2-6.)

**Linda's and New Sun's Response**: Disputed as to the time period: the testimony was that Linda Sun lived at the factory until 2018 or 2019. (See Ex. 1 (L. Sun. Dep.)  35:24-36:1). Disputed as to the reasons why Linda Sun lived at the factory: the company's financial

---

[3]  The other entities that Plaintiff was referring to are: (1) Eastman St. Distributors LLC; (2) Eastman St. Woodworks, Inc.; (3) Infinity Realty Company LLC; and (4) New Sun Limited Partnership.

performance was one reason, but there were also "quality issue[s]." (*Id.* 36:2-6). Otherwise undisputed for the purposes of summary judgment.

9. Since then, L. Sun controlled and managed Sunco China until her departure in 2019. [*See* Shillock Dep. (Ex. 5) at 256, where Shillock testified that she "always refer Sunco China as Linda" because Linda "handled things for Sunco China" and "owned the company for many, many years."].

> **NLNS Defendants' Response:** Undisputed for purposes of summary judgment. Disputed that the referenced testimony supports the assertion that Linda Sun controlled and managed Sunco China until her departure in 2019.

> **Linda's and New Sun's Response**: Disputed. The cited testimony does not support the assertion that Linda Sun controlled and managed Sunco China until her departure in 2019. Mr. Wu testified that he was "handling the environmental protection issue" for Sunco China. (Doc No. 199-12 (Wu Dep. Vol. 2) at 258:24-259:3). He also was in possession of Sunco China's company stamp for years prior to 2019 and thus was in control of the company. (See Ex. 1 (Linda Dep.) at 54:22-55:1).

10. L. Sun was president and chairman of the board of directors of Sunco China from 2009 to at least 2019. [L. Sun Dep. Vol. II (Ex. 2) at 46:7-16. *See* also Linda s Power of Attorney documents (Ex. 9 and 10)].

> **NLNS Defendants' Response:** Undisputed that Linda Sun was president of Sunco China from 2009 to part of 2019. Disputed that Linda Sun was chairman of the board of directors during that time. Wu Guoqing was appointed "Chairman of the company" on September

5084389_1

18, 2014." (*See* Ex. 41 (Defendants' Ex. 28, SUNCO Wood Industry (Kunshan) Co., Ltd. Resolution of Board of Directors).)

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment except as to the assertion that Linda was the chairman throughout the stated time period. (*See* Ex. 41).

11. A few days before L. Sun's flee from Sunco China on June 14th, 2019, she shredded voluminous documents and packed them into trash bags. For two to three evenings, she asked an employee Wu Shaohua to drive to her place and pick these trash bags. L. Sun further instructed this employee to throw th/ese bags away in separate garbage bins. [Bin Zhao Dep. Vol. II (Ex. 7) at 197:14-22; 282:4-22].

   **NLNS Defendants' Response:** Disputed. The cited testimony is inadmissible hearsay, as Bin Zhao testified as to what another individual told him. Linda disputes the testimony [Aff. of Linda Sun at ¶ 7].

   **Linda's and New Sun's Response**: Disputed. The cited testimony of Bin Zhao is inadmissible hearsay. Mr. Zhao testified that he heard what Linda Sun had done from Wu Shaohua, another employee of Sunco China. (Ex. 7 (Zhao Dep. Vol. II) at 283:9-10). In fact, Linda Sun did not shred documents or order anyone to dispose of them. (Declaration of Linda Sun ¶ 12).

   **C.    Infinity Wood Products**

5084389_1

12. Defendant Infinity Wood Products, LLC ("Infinity") was founded in 2008 by D. Sun and his wife, defendant Shillock Yuan-Sun ("Shillock"), who held approximately 60% and 40% ownership interests, respectively. [D. Sun Dep. Vol. I (Ex. 3) at 65:21–66:15].

> **NLNS Defendants' Response:** Undisputed that Infinity was established in 2008. Disputed that David and Shillock have ownership interests in Infinity. Infinity's members are two trusts, not David and Shillock. (*See* Ex. 3 (D. Sun Dep. Vol. I) at 73:6-14; Ex. 5 (S. Sun Dep.) at 76:22-77:2.)

> **Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment that Infinity was founded in 2008. Disputed that David and Shillock, individually, hold membership interests in Infinity as Infinity's members are two trusts. *See* Ex. 3 (D. Sun Dep. Vol. I) at 73:6-14; Ex. 5 (S. Sun Dep.) at 76:22-77:2.)

13. Infinity functioned as an intermediary entity through which cabinetry products were ordered from Sunco China by Infinity who would then transfer the product to Sunco Inc. [D. Sun Dep. Vol. I (Ex. 3) at 66:16–67:13].

> **NLNS Defendants' Response:** Undisputed that Infinity ordered cabinets from Sunco China. Disputed that Infinity was an "intermediary" and that it would simply "transfer the product to Sunco, Inc." Infinity was an importer that then sold cabinets to Sunco, Inc. (See Ex. 1 (L. Sun Dep. Vol. I) at 130:2-12; Ex. 3 (D. Sun Dep. Vol. I) at 1.4:20-105:23.)

> **Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment except as to the characterization that Infinity Wood's role was simply to transfer product. In the cited testimony, David testified that Infinity's role was importing the cabinets from Sunco China into the United States because Sunco Inc. never imported the cabinets itself

5084389_1

and previously relied on another company called Shanghai Silk. (See Ex. 3 (D. Sun Dep. Vol. I) at 66:16–67:13).

14. Infinity would place orders with Sunco China, and Sunco China would then ship the product (wooden cabinetry) to the U.S. Following the order fulfillment, Sunco China would invoice Infinity for the products. [D. Sun Dep. Vol. I (Ex. 3) at 104:20–105:7].

    **NLNS Defendants' Response:** Undisputed for purposes of summary judgment.

    **Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

15. Historically, Infinity would pay Sunco China for the cabinetry it ordered, although payments were sometimes delayed and made on a rolling basis. Despite such delays, Infinity consistently paid outstanding invoices in the ordinary course of business prior to the events at issue here. [D. Sun Dep. Vol. I (Ex. 3) at 107:12–22; 115:3-7; C. Li Dep. (Ex. 6) at 80:12-81:10].

    **NLNS Defendants' Response:** Undisputed for purposes of summary judgment except to the claim that payments were "delayed." (*See* Ex. 6 (C. Li. Dep.) at 80:12-81:16; Ex. 3 (D. Sun. Dep. Vol. I) at 107:12-18.)

    **Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment except as to the characterization that the payments were "delayed". David Sun and Catherine Li testified that "there was no set time period" and "it's a normal process." (*See* Ex. 3 (D. Sun Dep. Vol. I) at 107:12–22; Ex. 6 (C. Li Dep.) at 80:12-81:10).

## II.    The Transactions at Issue and Infinity's Nonpayment

9

16. Between July 2, 2018 and July 7, 2019, pursuing to Infinity's purchase orders, Sunco China shipped cabinetry products to Infinity with a total value of approximately $6,712,182.11, and issued corresponding invoices for those shipments. [D. Sun Dep. Vol. II (Ex. 4) at 40:23-41:6; C. Li Dep. (Ex. 6) at 31:23–32:2; Shillock Dep. (Ex. 5) at 258:15-259:2].

**NLNS Defendants' Response:** Undisputed for purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

17. Infinity accepted delivery of the cabinets in the ordinary course of business and received the corresponding invoices. [C. Li Dep. (Ex. 6) at 31:23–33:7; Invoices from Sunco China (Ex. 28)].

**NLNS Defendants' Response:** Undisputed for purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

18. Neither Infinity nor Sunco Inc. paid for those cabinets, and Sunco China was never informed that the invoices would not be paid. [D. Sun Dep. Vol. I (Ex. 3) at 192:11-24; 193:21-194:2; D. Sun Dep. Vol. II (Ex. 4) at 40:23-41: 20; Shillock Dep. (Ex. 5) at 263:14-264:11].

**NLNS Defendants' Response:** Disputed that the invoices were not paid.  While Infinity did not send cash to Sunco China for the at-issue invoices, no balance remained on those invoices as Sunco China had agreed to forgive the balance on those invoices in order to satisfy the outstanding debt Sunco China's majority shareholder, QiYi, owed to Sunco, Inc. as a result of QiYi's purchase of 52 percent of Sunco China's shares from Sunco, Inc. (the "Share Transfer"). *See* Ex. 42 (D. Sun Aff.) ¶¶ 17, 18.  Infinity would then forgive the balance Sunco, Inc. owed Infinity for those same cabinets.  *See* Ex. 42 (D. Sun Aff.) ¶ 18.

5084389_1

**Linda's and New Sun's Response**: Disputed. (Linda Decl. ¶ 11).

19. Infinity admits that upon receiving the cabinets, they were transferred to Sunco Inc. to be sold. Infinity received no proceeds from the sale or transfer of the cabinets. [Infinity Defs. Ans. to Interrog. No. 9 and No. 11(Doc No. 116-8); Infinity Defs. Suppl Ans. to Interrog. No. 19 (Ex. 11) at (c)].

**NLNS Defendants' Response:** Undisputed that the cabinets were transferred to Sunco, Inc. Undisputed that Sunco, Inc. did not transfer cash to Infinity for the cabinets. Disputed that Infinity received nothing of value for the transfer of the cabinets. Sunco, Inc. and QiYi had agreed that Sunco China would forgive the outstanding invoice balance owed by Infinity to Sunco China, and Infinity would forgive the outstanding invoice balance owed by Sunco, Inc. to Infinity, as payment by QiYi to Sunco, Inc. for the outstanding balance on the Share Transfer. See Ex. 42 (D. Sun Aff.) ¶¶ 17, 18.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment that the cabinets were transferred to Sunco Inc. Disputed that money is owed for the cabinets at issue. (*See* Linda Decl. ¶ 11).

20. Sunco Inc. received those cabinets through Infinity without consideration, and subsequently, sold the cabinets to various vendors and/or customers for approximately $8 million. [Infinity Defs. Suppl Ans. to Interrog. No. 20 (Ex. 11) at (c)].

**NLNS Defendants' Response:** Undisputed that Sunco, Inc. received the cabinets and sold them for approximately $8 million. Disputed that Sunco, Inc. provided no consideration. The

5084389_1

consideration paid was Sunco, Inc. securing Sunco China's forgiveness of the invoice balance owed by Infinity to Sunco China on those cabinets.  *See* Ex. 42 (D. Sun Aff.) ¶¶ 17, 18.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment except as to the assertion that Sunco Inc. received the cabinets through Infinity without consideration. The cited Supplemental to Interrogatory states that Sunco Inc. received the cabinets "as compensation for the 2014 purchase by QiYi Investments China of 52 percent of the shares of Sunco China from Sunco US which had not been paid as of 2018.' (See Ex. 11 (Infinity Defs. Suppl Ans. to Interrog. No. 20) at (c).)

21. On April 29, 2019, D. Sun executed an "account confirmation letter" admitting that Infinity owes Sunco China $5,886,466.77 as of December 31, 2018. [See "Account Confirmation Letter." (Ex. 12)].

**NLNS Defendants' Response:** Disputed that the evidence cited supports the assertion in paragraph 21.  The document cited is an untranslated Chinese document.  David Sun did sign a document for Sunco China's auditors stating that as of December 31, 2018, the balance of the unforgiven accounts receivable from Infinity to Sunco China was $5,886,466.77.

**Linda's and New Sun's Response**: Disputed. Exhibit 12 is an untranslated document in Chinese. David Sun was asked about this document in his deposition and confirmed that his signature was on the document, but that he could not verify the document without proper translation. (See Ex. 3 (D. Sun Dep. Vol. I) at 159:8-162:19.) Indeed, he confirmed that he does not know whether it says "Infinity" on the document itself. (*Id*. 162:15-16.)

5084389_1

22. The 2021 email record between Shillock and Scott Olssen, the former accountant of Infinity, shows that Infinity has account payable to Sunco China which reflects the total amount of $6,712,182.11 worth of cabinets in issue. [Shillock Dep. (Ex. 5) at 188-191; *See* E-mail dated February 18, 2021 with attachment (Ex. 13)].

**NLNS Defendants' Response:** Undisputed that Scott Olssen sent an email to Shillock in 2021 with an attached account payable listing that totaled $6,712,182.11. Disputed that Infinity owed Sunco China payment on that outstanding balance because Sunco China had agreed to forgive that balance. *See* Ex. 42 (D. Sun Aff.) ¶¶ 17, 18.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment except as to the assertion that money is owed for the cabinets at issue. (*See* Linda Decl. ¶ 11).

23. Catherine Li, as an employee of Sunco Inc and/or Infinity, was heavily involved in the business transactions between Sunco China and Infinity, and her duties included daily communication with Sunco China about purchase order processing, shipping, and delivery, as well as other purchasing duties. [C. Li Dep. (Ex. 6) at 78:7-18; Infinity Defs. Ans. to Interrog. No. 12 (Doc No. 116-8)].

**NLNS Defendants' Response:** Undisputed that Catherine Li was an employee of Sunco, Inc. and that she communicated with Sunco China regarding cabinet purchasing. Disputed that Catherine Li was an employee of Infinity. Sunco, Inc. provided management services for Infinity for which it charged Infinity a fee. (*See, e.g.*, Ex. 43 (Citrin_0066309 (Excerpts) at 6525). Disputed that Catherine Li was "heavily involved in the business transactions" between Sunco China and Infinity. As Catherine Li repeated testified, she was "just an employee." (*See* Ex. 6 (C. Li Dep.) at 18:9-19, 35:11-15, 41:21-42:4, 71:4-14.)

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment except as to the assertion that Catherine Li was an employee of Infinity or that she was heavily involved in business transactions between Sunco China and Infinity. (*See, e.g.*, Ex. 43 (Citrin_0066309 (Excerpts) at 6525; *See* Ex. 6 (C. Li Dep.) at 18:9-19, 35:11-15, 41:21-42:4, 71:4-14).

24. Facing Sunco China's requests of the payment, Ms. Li testified that, despite repeated inquiries to D. Sun and others regarding unpaid invoices from Sunco China, no explanation was ever provided for the nonpayment, and she did not know why the invoices were not paid, invoices she believed should have been paid. [C. Li Dep. (Ex. 6) at 60:6-18; 61:7-62:15; Email from Sunco China to Infinity requesting payments (Ex. 29)].

**NLNS Defendants' Response:** Disputed that Ms. Li testified that she made "repeated inquiries to D. Sun and others regarding unpaid invoices." The cited testimony does not support the assertion. Ms. Li testified that she asked David Sun about invoice payments in response to a general question about whether she had ever discussed an unpaid invoice with David Sun and he did not provide an answer, and that Ms. Li was not curious about the answer because "it's not my problem." (Ex. 6 (C. Li Dep.) at 60:6-23.) Disputed that Ms. Li testified that the invoices should have been paid. The cited testimony does not support the assertion as it is taken out of context. Ms. Li's testimony was "I don't know why it was not paid. I thought it should be paid. But I don't know why it was not paid." (*Id*. at 61:10-12.)

**Linda's and New Sun's Response**: Disputed as to the assertion that "no explanation was ever provided for the nonpayment." The evidence was merely that Ms. Li herself was not provided

5084389_1

with an explanation, not that no one was provided with an explanation. (*See* Ex. 6 (C. Li Dep.) at 60:6-18). Otherwise undisputed for the purposes of summary judgment.

### III.    The 2014 Share Transfer Related to Defendants' Affirmative Defense

25. In or around September 2014, an agreement was executed for the transfer of a 52% ownership interest in Sunco China to Jiangsu Qiyi, for a total purchase price of RMB 20 million.  [*See* 2014 share transfer agreement (both original Chinese version and the translated English version) (Ex. 14)].

    **NLNS Defendants' Response:** Undisputed for purposes of summary judgment.

    **Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

26. The transferor under the agreement was Sunco Inc. and Linda Sun, and both Linda Sun and David Sun executed the agreement. [Id (Ex. 14). at Page 1 and 4].

    **NLNS Defendants' Response:** Undisputed for purposes of summary judgment.[4]

    **Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

27. The purchase price for the shares was to be paid to Sunco Inc., but in reality, the first payment of RMB 5 million was deposited to L. Sun's personal bank account. [L. Sun Dep. Vol. II (Ex. 2) at 33:16-21; 40:12-41:16; See also Ex. 14 at Page 1].

---

[4] It bears noting that Plaintiff's statement of fact 26 is inconsistent with positions it has taken elsewhere in this litigation.  For example, Plaintiff's Fed. R. Civ. P. Rule 30(b)(6) witness on the topic of this agreement testified that he could say one way or another whether David Sun signed the agreement.  (*See* Doc. No. 199-7 (B. Zhao Dep. Vol. II) at 218:23-219:17, 222:11-225:3.)  Guoqing Wu, QiYi's shareholder, testified that David Sun did not sign the share transfer agreement.  (*See* Doc. No. 199-11 (G. Wu Dep. Vol. I) at 110:22-113:22.)

5084389_1

**NLNS Defendants' Response:** Disputed.  Linda testified that although the account was in her name, the account was used for company purposes.  (L. Sun Dep. Vol. II (Ex. 2) at 40:12-41:16; see also id. at 42:5-43:7.)

**Linda's and New Sun's Response**: Disputed. Linda Sun's testimony is that the bank account number listed on Exhibit 14 "was at the financial director's hand…[i]t is my personal account, but it's being used by the company." (L. Sun Dep. Vol. II (Ex. 2) at 40:12-41:16; *see also id.* at 42:5-43:7.)

28. In the spring of 2015, Qiyi discovered that Sunco China had been engaging in illegal manufacturing without a permit from the governmental environment department since 2003.[5] [Wu Dep. Vol. II (Doc No. 199-12) at 250:3–6; 251:4–253:3; 130:9–24; 131:1–3, 16–23; 153:10–154:1; 168:16–169:11; 283:2–11].

**NLNS Defendants' Response:** Undisputed for purposes of summary judgment.  Plaintiff cites no evidence to support the statements in its footnote 4.

**Linda's and New Sun's Response**: Disputed. The cited testimony does not support the assertions.

29. On March 18, 2015, Mr. Wu, L. Sun, and Qiyi signed an agreement providing that if Mr. Wu would bring Sunco China to environmental compliance for six (6) production lines prior to December 31, 2016, then Qiyi could offset the payment of RMB 10 million against its purchase

---

[5] Sunco China did not have any external environmental protection equipment to treat the 340 tons of paint, which was directly discharged into the surrounding neighborhood causing toxic gas production, air pollution, and noise.

16

price for Sunco China's equity. [*See* Ex. 15, Arbitration Decision translated English version at P33; P38, 4-7; P. 39].

**NLNS Defendants' Response:** Disputed.  Reliance on the referenced document is precluded by the Court's ruling on Defendants' Motion for Sanctions.  *See* Motion to Strike Memorandum.[6]  The referenced document is inadmissible hearsay.  *Id*. It is inadmissible as more prejudicial than probative.  *Id*. It is inadmissible as Plaintiff never sought enforcement of the arbitration award, which was riddled with procedural defects and bias.  *Id*. It is further inadmissible as a result of the Court's order on Defendants' Motion for Sanctions as it was not disclosed in Plaintiff's Rule 30(b)(6) testimony.  *Id*. In addition, as set forth in the very exhibit Plaintiff cites (Exhibit 15), Linda testified at the arbitration hearing that she did not sign the agreement referenced by Plaintiff in its statement of fact 29. *See* Ex. 15 at 13.

**Linda's and New Sun's Response**: Disputed. The arbitration decision has not been confirmed by a US court, and the Chinese judgment confirming the award has not been recognized by this Court. Therefore, the arbitrators' findings of fact cannot be given effect. See Restatement of the U.S. Law of International Commercial and Investor-State Arbitration § 4.36 cmt. d (2023) ("Before inquiring into the issue-preclusive effect of an arbitral award, a court generally determines whether the award itself is entitled to recognition under this Chapter. This same predicate is required for claim preclusion."); *Restatement (Fourth) of the Foreign Relations Law of the U.S.* § 481 cmt. b (2019) (recognition is a prerequisite to "resolve an issue of law or fact addressed in the foreign proceeding").

---

[6] "Motion to Strike Memorandum" refers to the Memorandum in Support of Defendants David Sun, Shillock Yuan-Sun, Infinity Wood Products LLC, Sunco, Inc., Eastman St. Distributors LLC, Eastman St. Woodworks, Inc., and Infinity Realty Company LLC filed contemporaneously herewith.

5084389_1

30. On March 10, 2016, Mr. Wu, L. Sun, and Qiyi signed another agreement providing that if Mr. Wu would bring Sunco China to environmental compliance for eight (8) production lines prior to December 31, 2016, then Qiyi could offset the payment of RMB 15 million against its purchase price for Sunco China's equity. [Id. at P33 second last paragraph, and P38: 4-15].

**NLNS Defendants' Response:** Disputed.  Reliance on the referenced document is precluded by the Court's ruling on Defendants' Motion for Sanctions.  *See* Motion to Strike Memorandum.  The referenced document is inadmissible hearsay.  *Id*.  It is inadmissible as more prejudicial than probative.  *Id*.  It is inadmissible as Plaintiff never sought enforcement of the arbitration award, which was riddled with procedural defects and bias.  *Id*.  It is further inadmissible as a result of the Court's order on Defendants' Motion for Sanctions as it was not disclosed in Plaintiff's Rule 30(b)(6) testimony.  *Id*.  In addition, as set forth in the very exhibit Plaintiff cites (Exhibit 15), Linda testified at the arbitration hearing that she did not sign the agreement referenced by Plaintiff in its statement of fact 29. *See* Ex. 15 at 13.

**Linda's and New Sun's Response**: Disputed. The arbitration decision has not been confirmed by a US court, and the Chinese judgment confirming the award has not been recognized by this Court. Therefore, the arbitrators' findings of fact cannot be given effect. *See Restatement of the U.S. Law of International Commercial and Investor-State Arbitration* § 4.36 cmt. d (2023) ("Before inquiring into the issue-preclusive effect of an arbitral award, a court generally determines whether the award itself is entitled to recognition under this Chapter. This same predicate is required for claim preclusion."); *Restatement (Fourth) of the Foreign Relations Law of the U.S.* § 481 cmt. b (2019) (recognition is a prerequisite to "resolve an issue of law or fact addressed in the foreign proceeding").

31. During 2015 through 2016, Mr. Wu successfully resolved Sunco China's environmental violations, and in July of 2016, Sunco China received an environmental permit to use eight production lines.[7] [Wu Dep. Vol. II (Doc No. 199-12) at 258:24–259:11; *See* also Arbitration Decision (Ex. 15) at P38-39].

**NLNS Defendants' Response:** Disputed.  Reliance on the referenced document is precluded by the Court's ruling on Defendants' Motion for Sanctions.  *See* Motion to Strike Memorandum.  The referenced document is inadmissible hearsay.  *Id*.  It is inadmissible as more prejudicial than probative.  *Id*.  It is inadmissible as Plaintiff never sought enforcement of the arbitration award, which was riddled with procedural defects and bias.  *Id*.  It is further inadmissible as a result of the Court's order on Defendants' Motion for Sanctions as it was not disclosed in Plaintiff's Rule 30(b)(6) testimony.  *Id*.  Plaintiff cites no evidence to support the statements in its footnote 5.

**Linda's and New Sun's Response**: Disputed. The arbitration decision has not been confirmed by a US court, and the Chinese judgment confirming the award has not been recognized by this Court. Therefore, the arbitrators' findings of fact cannot be given effect. *See Restatement of the U.S. Law of International Commercial and Investor-State Arbitration* § 4.36 cmt. d (2023) ("Before inquiring into the issue-preclusive effect of an arbitral award, a court generally determines whether the award itself is entitled to recognition under this Chapter. This same predicate is required for claim preclusion."); *Restatement (Fourth) of the Foreign Relations Law of the U.S.* § 481 cmt. b (2019) (recognition is a prerequisite to "resolve an issue of law or fact addressed in the foreign proceeding"). Mr. Wu testified only that he was "handling the

---

[7] On July 30, 2016, Kunshan Municipal Environmental Protection Bureau approved a total "annual production of 2.5 million wood mouldings and pieces, and 1,184,000 sets of furniture" and approved commencement of production; and the relevant application registration from recorded main raw and auxiliary materials including paint 340 tons/year"

environmental protection issue," not that he had resolved it. (Doc No. 199-12 (Wu Dep. Vol. 2) at 258:24-259:3).

32. Accordingly, the conditions for the two offset agreements have been fulfilled, and Mr. Wu or Qiyi no longer has a payment obligation to L. Sun or Sunco Inc. for the share transfer price of RMB 15 million. [Arbitration Decision (Ex. 15) at P. 39-40].

**NLNS Defendants' Response:** Disputed.  Reliance on the referenced document is precluded by the Court's ruling on Defendants' Motion for Sanctions.  *See* Motion to Strike Memorandum.  The referenced document is inadmissible hearsay.  *Id*.  It is inadmissible as more prejudicial than probative.  *Id*.  It is inadmissible as Plaintiff never sought enforcement of the arbitration award, which was riddled with procedural defects and bias.  *Id*.  It is further inadmissible as a result of the Court's order on Defendants' Motion for Sanctions as it was not disclosed in Plaintiff's Rule 30(b)(6) testimony.  *Id*.  In addition, as set forth in the very exhibit Plaintiff cites (Exhibit 15), Linda testified at the arbitration hearing that she did not sign the agreement referenced by Plaintiff in its statement of fact 29. *See* Ex. 15 at 13.

**Linda's and New Sun's Response**: Disputed. The arbitration decision has not been confirmed by a US court, and the Chinese judgment confirming the award has not been recognized by this Court. Therefore, the arbitrators' findings of fact cannot be given effect. *See Restatement of the U.S. Law of International Commercial and Investor-State Arbitration* § 4.36 cmt. d (2023) ("Before inquiring into the issue-preclusive effect of an arbitral award, a court generally determines whether the award itself is entitled to recognition under this Chapter. This same predicate is required for claim preclusion."); *Restatement (Fourth) of the Foreign Relations*

*Law of the U.S.* § 481 cmt. b (2019) (recognition is a prerequisite to "resolve an issue of law or fact addressed in the foreign proceeding").

33. Despite this, Sunco Inc. later asserted that Qiyi had paid only RMB 5 million and failed to make the remaining payments. In or around July 2019, Sunco Inc. initiated arbitration proceedings requesting that Qiyi pay the remaining purchase proceeds before the Shanghai Arbitration Commission. [Id. at Page 5-6].

**NLNS Defendants' Response:** Undisputed that Sunco, Inc. asserts that QiYi failed to make payments on its purchase of 52 percent of Sunco China's shares. Disputed as to the remainder. Reliance on the referenced document is precluded by the Court's ruling on Defendants' Motion for Sanctions. *See* Motion to Strike Memorandum. The referenced document is inadmissible hearsay. *Id*. It is inadmissible as more prejudicial than probative. *Id*. It is inadmissible as Plaintiff never sought enforcement of the arbitration award, which was riddled with procedural defects and bias. *Id*. It is further inadmissible as a result of the Court's order on Defendants' Motion for Sanctions as it was not disclosed in Plaintiff's Rule 30(b)(6) testimony. *Id*.

**Linda's and New Sun's Response**: Disputed. The arbitration decision has not been confirmed by a US court, and the Chinese judgment confirming the award has not been recognized by this Court. Therefore, the arbitrators' findings of fact cannot be given effect. *See Restatement of the U.S. Law of International Commercial and Investor-State Arbitration* § 4.36 cmt. d (2023) ("Before inquiring into the issue-preclusive effect of an arbitral award, a court generally determines whether the award itself is entitled to recognition under this Chapter. This same predicate is required for claim preclusion."); *Restatement (Fourth) of the Foreign Relations*

21

*Law of the U.S.* § 481 cmt. b (2019) (recognition is a prerequisite to "resolve an issue of law or fact addressed in the foreign proceeding").

34. On April 29, 2021, after substantial evidentiary hearing, the arbitral tribunal ruled that the RMB 15 million obligation was extinguished through the binding offset agreements.[8] [*See* the Arbitration Decision (Ex. 15), Page 24-46].

**NLNS Defendants' Response:** Disputed. Reliance on the referenced document is precluded by the Court's ruling on Defendants' Motion for Sanctions. *See* Motion to Strike Memorandu]. The referenced document is inadmissible hearsay. *Id.* It is inadmissible as more prejudicial than probative. *Id.* It is inadmissible as Plaintiff never sought enforcement of the arbitration award, which was riddled with procedural defects and bias. *Id.* It is further inadmissible as a result of the Court's order on Defendants' Motion for Sanctions as it was not disclosed in Plaintiff's Rule 30(b)(6) testimony. *Id.* In addition, as set forth in the very exhibit Plaintiff cites (Exhibit 15), Linda testified at the arbitration hearing that she did not sign the agreement referenced by Plaintiff in its statement of fact 29. *See* Ex. 15 at 13. Plaintiff cites no support for the assertions in its footnote.

**Linda's and New Sun's Response**: Disputed. The arbitration decision has not been confirmed by a US court, and the Chinese judgment confirming the award has not been recognized by this Court. Therefore, the arbitrators' findings of fact cannot be given effect. *See Restatement of the U.S. Law of International Commercial and Investor-State Arbitration* § 4.36 cmt. d

---

[8] The arbitral tribunal determined that the RMB 15 million obligation was extinguished through binding written offset agreements under which Linda Sun's payment obligation to Mr. Wu—arising from his work in enabling the project to obtain environmental acceptance and commence production—would be set off against the share transfer price. The tribunal found that these conditions had been satisfied and that the offset was completed by July 30, 2016, thereby eliminating any remaining payment obligation. Accordingly, the tribunal rejected the claim for the RMB 15 million as already discharged

5084389_1

(2023) ("Before inquiring into the issue-preclusive effect of an arbitral award, a court generally determines whether the award itself is entitled to recognition under this Chapter. This same predicate is required for claim preclusion."); *Restatement (Fourth) of the Foreign Relations Law of the U.S.* § 481 cmt. b (2019) (recognition is a prerequisite to "resolve an issue of law or fact addressed in the foreign proceeding").

35. The tribunal, however, ruled that Qiyi should pay Sunco Inc RMB 3 million as the penalty for the late payment of the first installment for the purchase price.[9] [Id. at Page 40-46].

**NLNS Defendants' Response:** Disputed.  Reliance on the referenced document is precluded by the Court's ruling on Defendants' Motion for Sanctions.  *See* Motion to Strike Memorandum.  The referenced document is inadmissible hearsay.  *Id.*  It is inadmissible as more prejudicial than probative.  *Id.*  It is inadmissible as Plaintiff never sought enforcement of the arbitration award, which was riddled with procedural defects and bias.  *Id.*  It is further inadmissible as a result of the Court's order on Defendants' Motion for Sanctions as it was not disclosed in Plaintiff's Rule 30(b)(6) testimony.  *Id.*  Plaintiff cites no support for the assertions in its footnote.

**Linda's and New Sun's Response**: Disputed. The arbitration decision has not been confirmed by a US court, and the Chinese judgment confirming the award has not been recognized by this Court. Therefore, the arbitrators' findings of fact cannot be given effect. *See Restatement of the U.S. Law of International Commercial and Investor-State Arbitration* § 4.36 cmt. d

---

[9] The tribunal awarded RMB 3 million in liquidated damages because the Respondent failed to timely pay the earlier installment(s) due under the agreement—specifically, the payment due by December 31, 2015—constituting a breach before the subsequent offset was completed. Although the later offset agreements extinguished the remaining RMB 15 million obligation, they did not cure the prior delay, and the tribunal therefore enforced the contractual penalty (as adjusted) for that breach

5084389_1

(2023) ("Before inquiring into the issue-preclusive effect of an arbitral award, a court generally determines whether the award itself is entitled to recognition under this Chapter. This same predicate is required for claim preclusion."); *Restatement (Fourth) of the Foreign Relations Law of the U.S.* § 481 cmt. b (2019) (recognition is a prerequisite to "resolve an issue of law or fact addressed in the foreign proceeding").

36. Both L. Sun and D. Sun acknowledged the existence of that arbitral decision. [L. Sun Dep. Vol. I (Ex. 1) at 99:10-100:14; D. Sun Dep. Vol. I (Ex. 3) at 157:5-158:10].

**NLNS Defendants' Response:** Disputed.  Reliance on the referenced document is precluded by the Court's ruling on Defendants' Motion for Sanctions.  *See* Motion to Strike Memorandum\  The referenced document is inadmissible hearsay.  *Id*.  It is inadmissible as more prejudicial than probative.  *Id*.  It is inadmissible as Plaintiff never sought enforcement of the arbitration award, which was riddled with procedural defects and bias.  *Id*.  It is further inadmissible as a result of the Court's order on Defendants' Motion for Sanctions as it was not disclosed in Plaintiff's Rule 30(b)(6) testimony.  *Id*.

**Linda's and New Sun's Response**: Undisputed that Linda Sun and David Sun acknowledged existence of the arbitration decision. However, the arbitral award has no legal effect. It has not been confirmed by a US court, and the Chinese judgment confirming the award has not been recognized by this Court. Therefore, the arbitrators' findings of fact cannot be given effect. *See Restatement of the U.S. Law of International Commercial and Investor-State Arbitration* § 4.36 cmt. d (2023) ("Before inquiring into the issue-preclusive effect of an arbitral award, a court generally determines whether the award itself is entitled to recognition under this Chapter. This same predicate is required for claim preclusion."); *Restatement (Fourth) of the Foreign*

24

*Relations Law of the U.S.* § 481 cmt. b (2019) (recognition is a prerequisite to "resolve an issue of law or fact addressed in the foreign proceeding").

37. The arbitral award was subsequently enforced by the Kunshan City People's Court, which confirmed that the award had been fully executed and the matter closed. As a result, no outstanding payment remains unpaid by Qiyi with respect to the 2014 share transfer. [*See* Kunshan City People's Court's Notice of Case Conclusion (Ex. 16); Wu Dep. Vol. II (Doc No. 199-12) at 289:11-290:1].

**NLNS Defendants' Response:** Disputed. Reliance on the referenced document is precluded by the Court's ruling on Defendants' Motion for Sanctions. *See* Motion to Strike Memorandum. The referenced document is inadmissible hearsay. *Id*. It is inadmissible as more prejudicial than probative. *Id*. It is inadmissible as Plaintiff never sought enforcement of the arbitration award, which was riddled with procedural defects and bias. *Id*. It is further inadmissible as a result of the Court's order on Defendants' Motion for Sanctions as it was not disclosed in Plaintiff's Rule 30(b)(6) testimony. *Id*.

**Linda's and New Sun's Response**: Disputed. Plaintiff has not sought recognition of the Chinese judgment. Therefore, Plaintiff is unable to rely on it in support of its assertions. *Restatement (Fourth) of the Foreign Relations Law of the U.S.* § 481 cmt. b (2019) (recognition is a prerequisite to "resolve an issue of law or fact addressed in the foreign proceeding")

## IV.   Defendants' Alleged Offset

38. Despite the aforementioned events and arbitration judgment, Defendants contend that the nonpayment of the cabinets in question was based solely on an alleged offset agreement made

25

5084389_1

by L. Sun and Mr. Wu/Jiangsu Qiyi in connection with the 2014 share transfer. [D. Sun Dep. Vol. I (Ex. 3) at 157:5-11; 221:13-222:1; D. Sun Dep. Vol. II (Ex. 4) at 43:1-17].

**NLNS Defendants' Response:** Undisputed that Defendants contend that the at-issue invoices were forgiven by agreement between Sunco, Inc., Sunco China, and QiYi. Otherwise disputed. Reliance on the referenced document is precluded by the Court's ruling on Defendants' Motion for Sanctions. *See* Motion to Strike Memorandum. The referenced document is inadmissible hearsay. *Id.* It is inadmissible as more prejudicial than probative. *Id.* It is inadmissible as Plaintiff never sought enforcement of the arbitration award, which was riddled with procedural defects and bias. *Id.* It is further inadmissible as a result of the Court's order on Defendants' Motion for Sanctions as it was not disclosed in Plaintiff's Rule 30(b)(6) testimony. *Id.*

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

39. Particularly, D. Sun testified that in 2016 or 17, L. Sun and Mr. Wu agreed that Infinity's payables would be used to offset Mr. Wu's unpaid obligation for the 52% share purchase. [D. Sun Dep.Vol. I (Ex. 3) at 157:5-11; D. Sun Dep. Vol. II (Ex. 4) at 41-43].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

40. D. Sun, as the owner of Infinity and Sunco Inc., testified that he only heard about such alleged offset agreement from Linda, and never confirmed with Mr. Wu or anyone at Sunco China about the existence of this agreement. [D. Sun Dep. Vol. II (Ex. 4) at 41:23-42:20].

5084389_1

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment, except disputed that David Sun is the owner of Infinity, which in fact is owned by two trusts. *See* Ex. 42 (D. Sun Aff.) ¶ 4.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment except as to the assertion that David Sun is the owner of Infinity Wood Products. *See* Ex. 42 (D. Sun Aff.) ¶ 4.

41. D. Sun further testified that the alleged offset agreement was not tied to any specific cabinets, did not identify the cabinets at issue, and could purportedly apply to "any cabinets" ordered at any time. He further admitted that the agreement did not reference the cabinets at issue in this case and could have been applied arbitrarily to cabinets ordered in 2017, 2018, or later. [D. Sun Dep. Vol. II (Ex. 4) at 42-47].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment, except that David did not testify that the forgiveness agreement would be "arbitrary."

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment except as to the assertion that David testified that the cabinets could have been applied "arbitrarily" to cabinets ordered. (*See* Ex. 4 (D. Sun Dep. Vol. II) at 42-47).

42. There is no documentation of such alleged offset agreement between Mr. Wu/Jiangsu Qiyi and L. Sun. Nor is there any offset agreement between Infinity and Sunco China. [D. Sun Dep. Vol. I (Ex. 3) at 158:11-17].

**NLNS Defendants' Response:** Disputed that there is no documentation for such agreement. Mr. Wu approached Linda Sun with a pile of files that Mr. Wu claimed he needed to file with

5084389_1

the Chinese government's foreign affairs administration for approval to use forgiveness of the cabinet invoices as payment for the share transfer agreement.  (*See* Ex. 1 (L. Sun Dep. Vol. I) at 97:22-98:7; Ex. 2 (L. Sun Dep. Vol. II) at 50:5-24.)  When Plaintiff's Fed.R.Civ.P. Rule 30(b)(6) witness on the topic of, *inter alia*, communications with the Chinese government concerning the share acquisition or exportation of cabinets to the United States, was asked about any communications with the Chinese government concerning those topics, he testified that he was "not that familiar with it" and that Linda Sun would be the one with information. (*See* Doc. No. 199-7 (B. Zhao Dep. Vol. II at 302:19-303:10.)  Accordingly, Plaintiff is prohibited by the Court's sanctions order from now contesting that such conversations occurred or that Sunco China submitted such requests to the Chinese government.  In addition, NLNS Defendants requested that Plaintiff produce "All documents concerning communications with Chinese government officials concerning the Cabinets," Plaintiff agreed to produce such documents, but Plaintiff's Rule 30(b)(6) witness on the topic of Plaintiff's document production efforts testified that he searched only for the relevant purchase orders in this case and then through the email outbox of an individual from Plaintiff's finance department – Gao Yueyun – and did not identify any other efforts made by Plaintiff to find any other documents requested by Defendants and, in fact, appeared surprised to learn that Defendants had requested documents.  (*See* Doc. No. 199-7 (B. Zhao Vol. II) at 306:16-309:5, 312:1-17.)

**Linda's and New Sun's Response**: Disputed.  Mr. Wu approached Linda Sun with files that Mr. Wu claimed he needed to file with the Chinese government's foreign affairs administration for approval to use forgiveness of the cabinet invoices as payment for the share transfer

agreement. (*See* Ex. 1 (L. Sun Dep. Vol. I) at 97:22-98:7; Ex. 2 (L. Sun Dep. Vol. II) at 50:5-24).

43. L. Sun couldn't explain or describe details about this alleged offset agreement at her deposition. [L. Sun Dep. Vol. I (Ex. 1) at 95:5-99:4; 137:15-139:19; L. Sun Dep. Vol. II (Ex. 2) at 53-60].

**NLNS Defendants' Response:** Disputed that the cited testimony supports the assertion that Linda was asked about details of the agreement and could not provide them.

**Linda's and New Sun's Response**: Disputed. When asked "Did you ever talk to David Sun about Infinity not paying for the cabinets?", Linda Sun answered "I don't remember. It has been very long time." (*See* Ex. 2 (L. Sun Dep. Vol II) at 60:13-16).

44. She testified that she has no knowledge or understanding of the "financial arrangement" between Infinity and Sunco China with regard to the cabinets. [L. Sun Dep. Vol. I (Ex. 1) at 137:15-139:19].

**NLNS Defendants' Response:** Disputed that the cited testimony supports that assertion that Linda was asked about the forgiveness of the at-issue cabinets and had "no knowledge or understanding of the 'financial arrangement' between Infinity and Sunco China" with regard to the invoice forgiveness. Rather, Linda was asked several vague and confusing questions about general "financial arrangements between those two entities." Linda did testify that Mr. Wu approached her seeking to use forgiveness of cabinet payments as payment for QiYi's outstanding balance on the share transfer agreement. (*See* Ex. 1 (L. Sun Dep. Vol. I) at 97:22-98:7; Ex. 2 (L. Sun Dep. Vol. II) at 50:5-24.)

**Linda's and New Sun's Response**: Disputed. At her deposition, Linda Sun was generally asked about financial arrangement between Infinity Wood Products and Sunco China with regard to the cabinets without a specific time period, to which she answered "I don't know." (L. Sun Dep. Vol. I (Ex. 1) at 138:8-14).

45. L. Sun never had any ownership interests in Infinity. [L. Sun Dep. Vol. I (Ex. 1) at 130:13-16].

    **NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

    **Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

46. D. Sun never authorized Linda to enter such alleged offset agreement. [D. Sun Dep. Vol. II (Ex. 4) at 43: 12-15].

    **NLNS Defendants' Response:** Undisputed that David did not provide prior authorization for Linda to enter into an agreement with Mr. Wu and QiYi. Disputed that David did not accept the agreement. *See* Ex. 42 (D. Sun Aff.) ¶¶ 13-18.

    **Linda's and New Sun's Response**: Undisputed for the purposes to summary judgment that David Sun testified that he did not provide prior authorization to Linda to negotiate an agreement with Mr. Wu regarding offsetting payment of the share transfer with payment of cabinets. (*See* Linda Decl. ¶ 11).

47. After D. Sun's acquisition of 100% ownership of Sunco, Inc., L. Sun had no role in the company and was not authorized to act on behalf of it. [D. Sun Dep. Vol. I (Ex. 3) at 78:6–9; 78:23-79:6].

5084389_1

**NLNS Defendants' Response:** Disputed.  Among other things, Plaintiff and QiYi negotiated the transfer of 52 percent of the shares of Plaintiff to QiYi from Sunco US with Linda and had Linda Sun sign the share transfer agreement on Sunco US's behalf.  (Doc. No. 199-11 (G. Wu Dep. Vol. I) at 107:20-108:10).  If Plaintiff believed that Linda was not authorized to act on Sunco US's behalf, then the sale of 52 percent of Plaintiff's shares to QiYi was invalid and Sunco US would remain Plaintiff's sole owner, meaning that Plaintiff is controlled by Sunco US and did not file this lawsuit with appropriate authority.

**Linda's and New Sun's Response**: Disputed. (*See* Linda Decl. ¶ 11).

## V.     Affiliated Entities and Interrelationships

### A.  Common Ownership and Management

48. Defendant Eastman St. Distributors, LLC ("Eastman Distributors") is a Delaware limited liability company formed on February 17, 2012, and registered to do business in Massachusetts on March 9, 2012.  [*See* Ex. 17: Massachusetts Secretary of the Commonwealth, Business Entity Summary for Eastman St. Distributors, LLC; Application for Registration dated March 9, 2012; Annual report for 2021].

    **NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

    **Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

49. From 2012 to 2021 Eastman Distributors principal place of business was located at 35 Eastman Street, S. Easton, MA. [Id.]

    **NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

    **Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

31

50. Eastman Distributors filed its Certificate of Withdrawal in 2023 and updated its principal office location to 163 Highland Avenue, #1052, Needham, Massachusetts, and listed as "care of Sunco, Inc." [Id.].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment. Noting, however, that the cited document (Exhibit 17) does not include a Certificate of Withdrawal.

51. D. Sun serves as Eastman Distributors' resident agent and is authorized to execute instruments affecting real property on its behalf, while Shillock is identified as manager. [Id.].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment that prior to Eastman St. Distributors' withdrawal of registration in Massachusetts in 2023, David was its Massachusetts resident agent authorized to executed instruments affecting real property on its behalf, while Shillock was identified as manager.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

52. Defendant Eastman St. Woodworks, Inc. ("Eastman Woodworks") is a Nevada corporation formed on August 6, 2021, and registered to do business in Massachusetts on March 10, 2022. From 2022 to March of 2025, Eastman Woodworks principal place of business was located at 93 Goulding Street West Sherborn, MA, which was the personal residence of defendants D. Sun and Shillock. [*See* Ex. 18: Massachusetts Secretary of the Commonwealth, Business Entity

32

5084389_1

Summary for Eastman St. Woodworks, Inc; Foreign Corp. Certificate of Registration; also, Statement of Change of Registered Agent/Registered Office].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment, except that David and Shillock no longer resided at 93 Goulding Street after the spring of 2024. Ex. 42 (D. Sun Aff.) ¶ 2.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

53. In March of 2025, Eastman Woodworks updated its principal office is located at 675 S. Green Valley Parkway, #1068, Henderson, Nevada. [Id.].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment. Noting, however, that the cited document (Exhibit 18) does not support when Eastman Woodworks updated its principal office.

54. D. Sun serves as President, Treasurer, Secretary, and Director of Eastman Woodworks. [Id.].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

55. Defendant Infinity Realty Company, LLC ("Infinity Realty") is a Massachusetts limited liability company organized on June 24, 2013. From its inception until 2022 its principal place of business was located at 35 Eastman Street, S. Easton, MA. [*See* Ex. 19: Massachusetts Secretary of the Commonwealth, Business Entity Summary for Infinity Realty Company, LLC; Certificate of Organization; also, Annual Report of 2021].

5084389_1

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment except that the cited document (Exhibit 19) does not support until when Infinity Realty had its principal place of business located at 35 Eastman Street, S. Easton, MA.

56. In 2022, Infinity Realty updated its principal place of business to Sunco, Inc. 163 Highland Avenue, #1062, Needham, Massachusetts, where its records are maintained. D. Sun is Infinity Realty's resident agent and manager, using both the Needham business address and an address at 35 Eastman Street, South Easton, Massachusetts. [Id.].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment that in 2022 and 2023, Infinity Realty's address was listed as Sunco, Inc. 163 Highland Avenue, #1062, Needham, Massachusetts.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment except the cited document (Exhibit 19) does not support until when Infinity Realty updated its principal place of business.

57. D. Sun is also Infinity Realty's sole owner. [*See* D. Sun Dep. Vol. I (Ex. 3) at 166:1-9].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

58. Defendant New Sun Limited Partnership ("NST") is a Massachusetts limited partnership organized on December 31, 2002. Its business address is located at 275 Washington Street, Suite 400, Newton, Massachusetts, where its records are maintained. Sunco, Inc. is identified

34

as NST's general partner, and L. Sun is limited partner. [*See* Ex. 20: Massachusetts Secretary of the Commonwealth, Business Entity Summary for New Sun Limited Partnership; *See* also Shillock Dep (Ex. 5) at 219:13-20].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment except for the implication that Linda Sun is the sole limited partner.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

59. All affiliated entities are in common ownership and under common management. [Shillock Dep. (Ex. 5) at 169:12–170:2].

**NLNS Defendants' Response:** Disputed. The testimony cited does not support that "all affiliated entities are in common ownership and under common management." The cited testimony is Shillock's answer to the question of the accounting definition for an affiliate. Further disputed as to the characterization of the entities as having "common ownership," a term Plaintiff does not define, as different individuals and entities have ownership interests in the different entities. Ex. 42 (D. Sun Aff.) ¶¶ 3-7.

**Linda's and New Sun's Response**: Disputed. The cited testimony does not support the assertions. Shillock was asked "[w]hat is your understanding of *an* affiliate?" and she responded, "[i]n terms of accounting definition, it is an entity that holds a common – common ownership." (Ex. 5 (Shillock Dep.) at 169:12–170:2 (emphasis added)). Shillock was not asked about any whether certain entities shared common ownership. *Id*.

**B.  Lack of Corporate Separateness in Operations**

35

60. Both Infinity, Sunco Inc., Eastman Distributors, and Eastman Woodworks' revenues came from the sale of cabinets that manufactured by Sunco China. [D. Sun Dep. Vol. I (Ex. 3) at 112; 155; 212].

**NLNS Defendants' Response:** Disputed. The testimony cited does not support Plaintiff's claim. David was asked on page 112 and 155 from which entity Infinity Wood Products received its revenues and he responded that the revenues came from Sunco, Inc. On page 212, David testified that Eastman Street Distributors' and Eastman St. Woodworks' revenues came from the sale of cabinets, not cabinets manufactured by Sunco China. The cabinets sold by Eastman Street Distributors were cabinets manufactured by Sunco, Inc. Ex. 42 (D. Sun Aff.) ¶ 20. The cabinets sold by Eastman St. Woodworks were manufactured primarily in Vietnam. *Id*. ¶ 21. Neither Eastman Street Distributors nor Eastman St. Woodworks sold any cabinets manufactured by Sunco China. *Id*. ¶¶ 19-21.

**Linda's and New Sun's Response**: Disputed. Infinity Wood Products received revenue from SunCo Inc. (D. Sun Dep. Vol. I (Ex. 3) 112:11-112:13, 155:2-A). Eastman Distributors's revenues came from the sale of cabinets to retail customers. (*Id.* at 212:7-13). And Eastman Woodworks's revenues came from sale of cabinets and consulting fees. (*Id*. at 212:15-17).

61. Infinity Realty's revenues came from renting the warehouse to Sunco Inc. [Shillock Dep. (Ex. 5) at 125–127].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

62. Sunco Inc., as the general manager of NST, would receive management fee each month. [Shillock Dep. (Ex. 5) at 220].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment that Sunco, Inc. would receive a management fee each month from NST in exchange for the management services Sunco, Inc. provided NST.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

63. Sunco Inc. and its affiliated entities—including NST, Infinity, Eastman Distributors, and Infinity Realty—are under common ownership and their financials are consolidated. [D. Sun Dep. Vol. I (Ex. 3) at 174:18-176:11; *See* also Sunco, Inc. and Affiliates Consolidated Financial Statements and Supplementary Information Years Ended December 21, 2019 and 2018 (Ex. 21); Sunco, Inc. and Affiliates Consolidated Financial Statements and Supplementary Information Year Ended December 31, 2018 (Ex. 22); Sunco, Inc. and Affiliates Consolidates Financial Statements and Supplementary Information Years Ended December 31, 2020 and 2019 (Ex. 23); Sunco, Inc. Consolidated Financial Statements and Supplemental Schedules December 31, 2012 and 2011 (Ex. 24)].

**NLNS Defendants' Response:** Undisputed that for certain years, certain entities prepared consolidated financial statements.  Disputed in that Plaintiff mischaracterizes Exhibit 24, which is Sunco, Inc.'s consolidated financial statements and includes Sunco, Inc., NST, Infinity Wood Products, and Eastman Street Distributors.  It does <u>not</u> include Infinity Realty.  Sunco, Inc. did not provide or prepare consolidated financial statements since 2020.  Ex. 44 (S. Yuan-Sun Aff.) ¶¶ 55-57.  Further disputed as to the characterization of the entities as

37

having "common ownership," a term Plaintiff does not define, as different individuals and entities have ownership interests in the different entities.  Ex. 42 (D. Sun Aff.) ¶¶ 3-7.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment that at times, consolidated financial statements were prepared for certain entities. Disputed as to the assertion that the consolidated financial statements in Exhibit 24 includes Infinity Realty. Disputed that Sunco Inc. prepared consolidated financial statements outside the years of 2011-2012. (*See* Ex. 44 (S. Yuan-Sun Aff.) ¶¶ 55-57).

64. Infinity has no employees and no assets of its own, and its role was limited to serving as an intermediary for transactions between Sunco China and Sunco Inc. [D. Sun Dep. Vol. I (Ex. 3) at 33: 13-16; 112:3-19; 107:12–22].

**NLNS Defendants' Response:** Undisputed that Infinity has no employees of its own. Disputed that Infinity has no assets.  As the documents cited by Plaintiff in the immediately preceding paragraphs show, Infinity has had various assets throughout the years.  (*See e.g.*, Ex. 21 at 13 (showing cash, accounts receivable, and due from related party assets); Ex. 22 at 11 (same); Ex. 23 at 15 (same); Ex. 24 at 8 (showing "current assets" of $1,766,156 for Infinity).

**Linda's and New Sun's Response**: Undisputed that Infinity Wood Products has no employees. Disputed that Infinity did not have assets of its own. (*See* Ex. 3 (D. Sun Dep. Vol. I) at 112:3-5). David Sun testified that Infinity Wood Products had money to pay for cabinets, which came from its revenue from Sunco Inc. (*Id*. at 112:14-19). Disputed as to the characterization of Infinity's role. The cited testimony does not support that assertion. David testified that Infinity's role was importing the cabinets from Sunco China into the United States

5084389_1

because Sunco Inc. never imported the cabinets itself and previously relied on another company called Shanghai Silk. (*See* Ex. 3 (D. Sun Dep. Vol. I) at 66:16–67:13).

65. Prior to the event in dispute, Infinity would pay for Sunco China's invoices through receiving money from Sunco Inc. since Infinity on its own doesn't have money. [D. Sun Dep. Vol. I (Ex. 3) at 112:3-19].

**NLNS Defendants' Response:** Undisputed that Infinity's revenues came from Sunco, Inc. Disputed that "Infinity on its own doesn't have any money" to the extent that Plaintiff is suggesting that funds that are paid to Infinity are funds that do not belong to Infinity or that it is unusual for an entity to rely on its revenue stream for funds to pay its payables.

**Linda's and New Sun's Response**: Disputed as to the assertion that Infinity on its own does not have money. In the cited testimony, David testified that Infinity Wood Products had money to pay for cabinets, which came from its revenue from Sunco Inc. (*See* (Ex. 3) D. Sun Dep. Vol. I at 112:3-19).

66. Infinity and Sunco Inc. operated out of the same office and shared the same business address at 35 Eastman Street. [C. Li Dep. (Ex. 6) at 56:4–22; 67:9-15].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

67. Eastman Street Distributors, LLC did not maintain its own employees. Instead, all services for Eastman—including accounting, customer service, and warehouse functions—were performed by employees of Sunco, Inc. [Shillock Dep. (Ex. 5) at 64:22-65:15].

39

**NLNS Defendants' Response:** Undisputed that Eastman Street Distributors did not have employees. Disputed as to the characterization of Sunco, Inc.'s role. Sunco, Inc. provided management services to ESD in return for a fee paid by ESD. Ex. 45 (Citrin_0032229 (excerpts) at 2327.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

68. Employees did not distinguish between these entities in practice. [C. Li Dep. (Ex. 6) at 56:23–57:12].

**NLNS Defendants' Response:** Disputed. The testimony cited does not support the assertion. Ms. Li did not testify about other employees, only herself, and the testimony cited does not concern ESD. Rather, Ms. Li was asked about a sign on the building at which she worked that read "Infinity Wood Products" and Ms. Li testified that she was not an expert on the company. (*See* Ex. 6 (C. Li Dep.) at 56:23-57:12.)

**Linda's and New Sun's Response**: Disputed. The cited testimony does not support the assertion. Ms. Li testified that that: she works at Eastman Woodworks Inc (*see* Ex. 6 (C. Li Dep) at 7:20-23); she previously worked for Sunco Inc. (*id*. at 8:3-8); and she has never been employed by Infinity Wood Products (*id*. at 7:24-8:4). She also disagreed with Plaintiff's counsel's characterization that Eastman Woodworks, Inc. and Sunco, Inc. were the "same employer." (*Id*. at 8:3-9:1). She did not testify that she worked for Eastman Street Distributors, LLC.

5084389_1

69. Catherine Li testified that she works for Sunco Inc. and then the company changed the name to Eastman Woodworks, Inc., but D. Sun testified that Sunco Inc. and Eastman are different entities. [C. Li Dep. (Ex. 6) at 7:20-8:20; D. Sun Dep. Vol. I (Ex. 3) at 20:18-21:8].

**NLNS Defendants' Response:** Undisputed that Ms. Li testified that she worked initially for Sunco, Inc. and then the company name changed. Disputed as to the characterization that Sunco, Inc. became Eastman St. Woodworks. Immediately following the cited testimony, Ms. Li was asked whether she was "with the same employer right now," and she responded that she did not know what the question meant because her employer had a different name than her prior employer. (*See* Ex. 6 (C. Li Dep.) at 8:21-9:1.) Undisputed that David accurately testified that Sunco, Inc. and ESW are different entities. In addition, ESW was established as a separate entity, with both Sunco, Inc. and ESW maintaining separate corporate registrations. *See* Ex. 8 (Sunco US Massachusetts Secretary of the Commonwealth Business Entity Summary) and Ex. 18 (ESW Massachusetts Secretary of the Commonwealth Business Entity Summary.

**Linda's and New Sun's Response**: Disputed as to Ms. Li's testimony. Ms. Li testified that she disagreed with Plaintiff's counsel's characterization that Eastman Woodworks, Inc. and Sunco, Inc. were the "same employer." (*See* Ex. 6 (C. Li Dep) at 8:3-9:1). When asked whether it is correct that she does not know if Sunco Inc just changed its name to Eastman St. Woodworks, Inc., Ms. Li testified "I don't know how in law these companies are set up, because I'm not a professional to make a judgment." (*Id*. at 90:1-15). Undisputed as to David Sun's testimony.

70. Shillock's email signature indicates that Eastman St. Woodworks is Sunco Inc's DBA. [See E-mail dated June 25, 2018 (Ex. 25)].

**NLNS Defendants' Response:** Disputed that the signature cited refers to Eastman St. Woodworks, Inc. "Eastman St. Woodworks" was a particular line of products that Sunco, Inc. itself manufactured, as opposed to the cabinets imported by Infinity from Sunco China. Eastman St. Woodworks, Inc. was a separate company that did not do business as Sunco, Inc. Ex. 42 (D. Sun Aff.) ¶¶ 21-23.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

71. Catherine Li testified that although she understood herself to work for Sunco Inc., she worked in an office prominently labeled "Infinity Wood Products, LLC." [C. Li Dep. (Ex. 6) at 56:4–57:12].

**NLNS Defendants' Response:** Disputed.  The testimony cited does not support the assertion. Ms. Li did not "underst[an]d herself to work for Sunco, Inc.," Ms. Li in fact worked for Sunco, Inc.  (*See* Ex. 6 (C. Li Dep.) at 8:3-4.).  Ms. Li did not testify that the "office was prominently labeled 'Infinity Wood Products, LLC,'" but rather that one glass door, dedicated to deliveries, had a sign that read "Infinity Wood Products."  (*See id*. at 56:15-22.)

**Linda's and New Sun's Response**: Disputed as to the characterization of Ms. Li's testimony. Ms. Li testified that she worked for Sunco Inc. (s*ee* Ex. 6 (C. Li Dep.) at 8:3-4), and that the office she had worked had a sign that read "Infinity Wood Products" (*id*. at 56:15-22).

72. She further testified that invoicing, communications, and operational work were handled without distinction between Sunco Inc. and Infinity. [C. Li Dep. (Ex. 6) at 31:3–33:2]

42

**NLNS Defendants' Response:** Disputed.  The testimony cited does not support the assertion. Ms. Li merely testified that she placed orders on Infinity Wood Products' behalf at the instruction of David.  (*See* Ex. 6 (C. Li Dep.) at 31:3-22.)  As Shillock testified, Sunco, Inc. employees performed services for related entities for which related entities were charged a fee. (*See* Ex. 5 (S. Yuan-Sun Dep.) at 63:17-64:21, 219:22-220:9, 276:16-277:20, 280:19-281:20.) Those fees are reflected in the companies' general ledgers. (*See, e.g.*, Ex. 46 (Citrin_0031253, NST General Ledger) at 3 (showing "Monthly MGMT Fee" to Sunco [US] of $3,000); Ex. 47 (Citrin_0031847, IRC General Ledger) at 6 (showing "Monthly Management Fee" to Sunco [US] of $3,000); Ex. 45 (Citrin_0032229, excerpts from ESD General Ledger) at 2327 (showing "Monthly ESD MGMG Fee"); Ex. 48 (Citrin_0049063, excerpts from IWP General Ledger) at 9170 (showing "Mnly [sic] IWP MGMT Fee")·)

**Linda's and New Sun's Response**: Disputed. Ms. Li's testimony is that she placed orders for Infinity Wood Products to Sunco China from July 2018-2019, and invoices during that time period were sent to "the company", though she was not sure which one. (See Ex. 6 (C. Li Dep.) at 31:3–33:2.)

73. Catherine Li also testified that she reported directly to David Sun. [C. Li Dep. (Ex. 6) at 39:23–24].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

74. Infinity and Sunco Inc. were both under the ownership and control of David Sun. [D. Sun Dep. Vol. I (Ex. 3) at 70:1-6; 66:16–67:13; C. Li Dep. (Ex. 6) at 49:3–14; Infinity Defs. Ans. to Interrog. No. 12 and 13 (Doc No. 116-8)].

**NLNS Defendants' Response:** Undisputed that David owned and controlled Sunco, Inc. Disputed that David owned and controlled Infinity Wood Products. Infinity's members are two trusts, not David. (*See* Ex. 3 (D. Sun Dep. Vol. I) at 73:6-14; Ex. 5 (S. Sun Dep.) at 76:22-77:2.).

**Linda's and New Sun's Response**: Disputed. David Sun testified that: he became 100% owner of Sunco Inc. in 2011/2012 (Ex. 3 (D. Sun Dep. Vol. I) at 70:1-6) and that he formed Infinity Wood Products around 2008 (*id.* at 66:16-67:13). Ms. Li testified about how she usually worked with David Sun. (*See* Ex. 6 (C. Li Dep.) at 49:3–14.). They did not testify that David Sun controlled either of the entities. Further, Infinity's members are two trusts, not David. (*See* Ex. 3 (D. Sun Dep. Vol. I) at 73:6-14; Ex. 5 (S. Sun Dep.) at 76:22-77:2.).

75. L. Sun considered herself as a representative of the board member of Sunco Inc. [L. Sun Dep. Vol. I (Ex. 3) at 82:14-83:6].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

76. Through at least 2020, all affiliated entities—Sunco Inc., Infinity, Eastman Distributors, NST, and Infinity Realty—used the same accountant and the same attorney. [Shillock Dep. (Ex. 5) at 58:19–60:11].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

44

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

77. Through at least 2022, Eastman Distributors, Sunco Inc., Infinity, and Infinity Realty all maintained the same offices at 35 Eastman St. S. Easton, MA. [*See* Ex. 8, 17, and 19; *See* also C. Li Dep. (Ex. 5) at 56:4–22; 67:9-15].

**NLNS Defendants' Response:** Disputed.  ESD's address is listed on the documents Plaintiff relies on as 35 Eastman St. *#1052*, in Easton Massachusetts, IRC's address is listed on the documents Plaintiff relies on as 35 Eastman St. *#1062*, in Easton, Massachusetts.  (*See* Ex. 17 at 1, Ex. 21 at 1.)  In 2022, IWP's annual filing with the Massachusetts Secretary of the Commonwealth lists IWP's address as 163 Highland Ave. 1052, in Needham, Massachusetts. (*See* Ex. 49)

**Linda's and New Sun's Response**: Disputed. (*See* Ex. 17 at 1; Ex. 21 at 1; Ex. 49; Ex. 5 (Shillock Dep.) at 94:24-4.)

**C.  Commingling of Funds and Intercompany Transfers**

78. Infinity Realty leased warehouse space to Sunco, Inc., which paid approximately $28,000 in monthly rent. [Shillock Dep. (Ex. 5) at 124:10-23].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

79. Although a written lease agreement existed (entered into around 2011 or 2012), Sunco Inc. did not consistently deposit rent payments into Infinity Realty's accounts. Instead, the entities' finances were centrally managed by a shared accountant, who would offset amounts "back and

forth" among affiliated entities and issue only a net payment each month reflecting intercompany balances, rather than separate, discrete payments between entities. [Shillock Dep. (Ex. 5) at 125–127].

**NLNS Defendants' Response:** Undisputed that Sunco, Inc. had a written lease agreement. Disputed that rental amounts would be "offset [] 'back and forth' among affiliated entities" as the testimony cited does not support that assertion. Shillock testified that "*instead of*…going back and forth," net payments would be made. (*See* Ex. 5 (S. Yuan-Sun Dep.) at 126:5-127:4.) Shillock explained that where Sunco, Inc. owed a rental payment to IRC, IRC owed a payment on a promissory note to NST, and NST would make a distribution to its limited partners (of which Linda was one), rather than Sunco, Inc. writing a check to IRC, IRC writing a check to NST, and NST writing a check to its limited partners, sometimes Sunco, Inc. would make the check directly to NST's limited partner(s) and accurately record each entry in each entity's books. (*See* Ex. 5 (S. Yuan-Sun Dep.) at 126:5-133:6.)

**Linda's and New Sun's Response**: Undisputed that Sunco Inc. had a written lease agreement. Disputed as to the characterizations of how rent was paid. Net payments were made instead of money going back and forth between entities. (*See* Ex. 5 (S. Yuan-Sun Dep.) at 126:5-133:6.)

80. Sunco, Inc. routinely made payments on behalf of Infinity Realty to third parties, including directly paying Infinity Realty's mortgage lender and making payments to the New Sun Limited Partnership for obligations owed by Infinity Realty. [Shillock Dep. (Ex. 5) at 130–131].

**NLNS Defendants' Response:** Disputed to the extent "third parties" refers to an individual or entity that is not a defendant in this case. The "mortgage" to which Shillock's testimony refers

46

5084389_1

was the promissory note IRC gave NST when IRC obtained the beneficial interest in the real estate on which Sunco, Inc. leased land from NST.  Ex. 50 (Citrin_0002111) at 2111-2117, 2132-2134.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

81. Following Infinity Realty sold the warehouse (nominally owned by the Sun Family Trust, whose beneficiary was Infinity Realty) in 2021, the sale proceeds ($17 millions) were not retained by Infinity Realty or distributed in accordance with any formal corporate structure. Instead, proceeds were used to satisfy obligations of multiple affiliated entities, including paying severance to SUNCO, Inc.'s employees and other liabilities reflected on SUNCO, Inc.'s books. [Shillock Dep. (Ex. 5) at 154–156; D. Sun Dep. Vol. I (Ex. 3) at 163-166].

**NLNS Defendants' Response:** Disputed.  The testimony cited does not support the assertion. Shillock testified that funds were distributed to IRC's sole owner, David, and that David used his distribution to, among other things, inject funds into Sunco, Inc.  (*See* Ex. 5 (S. Yuan-Sun Dep.) at 153:23-154:155:11.)  The testimony cited from David's deposition does not reference any distribution.

**Linda's and New Sun's Response**: Disputed. In the cited testimony, Shillock testified that Infinity Realty distributed some of the proceeds to David Sun, the owner of Infinity Realty, who reinvested the money into Sunco, Inc. to pay off Sunco Inc's payables. (*See* Ex. 5 (Shillock Dep.) at 154:22-158:7).

82. D. Sun and Shillock's condominium in Huntington Ave was purchased using the distributions that D. Sun received from Infinity Realty, after Infinity Realty sold the warehouse. [Shillock Dep. (Ex. 5) at 187:10-188:9].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

83. L. Sun, as NST's limited partner, would make contributions to NST. [*See* E-mail dated August 13, 2018(Ex. 26)].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

**L. Sun and New Sun LP's Response**: Undisputed for the purposes of summary judgment.

84. Sunco Inc, acting as general partner of NST, used NST funds to pay personal expenses on behalf of L. Sun. Although such payments were recorded as distributions to L. Sun, they were simultaneously treated on Sunco Inc's books as offsets against a purported "management fee receivable," reflecting the internal recharacterization of funds across entities rather than discrete, arm's-length transactions.  [Shillock Dep. at (Ex. 5) 277: 1-11].

**NLNS Defendants' Response:** Disputed as to the characterization that distributions to Linda from NST could not come from payments made by Sunco, Inc. in exchange for equal value from NST and that accurate accounting could constitute "recharacterization of funds."  As explained above, where one company made a payment to another company – such as when Sunco, Inc. paid rent to IRC, or when IRC made a payment on the promissory note it granted NST – and then that company made a distribution from those funds, that distribution does not change the fact that the funds were owed to NST as a result of IRC's payment obligation on

48

5084389_1

the promissory note, nor does it change the fact that funds were owed to IRC by Sunco, Inc. as a result of a rental obligation. Where Sunco, Inc. owes rent to IRC, IRC owes a payment on the promissory note to NST, and NST makes a distribution to Linda, NST's books accurately report a decrease in its note payable asset, an increase in its cash asset, then a decrease in its cash asset and a corresponding decrease in [liability]. Nor does it change the fact that the transaction was accurately recorded on IRC's books as a decrease in the rent receivable asset from Sunco, Inc. and a corresponding decrease in the promissory note payable liability. Nor does is it change the fact that the transaction was accurately recorded on Sunco, Inc.'s books as a decrease in a cash asset and a corresponding decrease in the rent-payable liability. Each transaction is accurately reflected. Ex. 44 (S. Yuan-Sun Aff.) ¶¶ 11-54, 58-64.

**Linda's and New Sun's Response**: Disputed. Shillock Yuan-Sun testified that Sunco Inc. paid rent to Infinity Realty, and Infinity Realty made payment to New Sun LP for its promissory note, then New Sun LP made distributions to Linda. She further testified that the cash did not go through all of those entities. Instead, money went directly from Sunco to Linda. *See* Shillock Dep. (Ex. 5) at 341-344. Her affidavit explains in detail the accounting entries made at the time of the transactions, which show that the economic substance of the transactions was that Sunco, Inc. paid rent to Infinity Realty, which made payments to New Sun LP on the note payable from the 2013 sale of the beneficial interest in the trust that owned the warehouse; and New Sun LP made distributions to Linda Sun, its limited partner. (See Ex. 44 (Shillock Aff.) ¶¶ 10-34).

85. Sunco, Inc. wrote numerous checks totaling hundreds of thousands of dollars to L. Sun personally, the Sun Family Trust, and to tax authorities (IRS and Massachusetts DOR) on her

behalf — all between roughly 2018 and 2021. The checks include large lump-sum payments to the Sun Family Trust ($50,000, $30,000, $20,000, $15,000, and multiple $10,000 payments), a direct $10,000 payment to Linda Sun, and several tax payments using her Social Security number. [L. Sun Dep. Vol. I (Ex. 1) at 106-127; *See* also various checks written to L. Sun (Ex. 27)].

**NLNS Defendants' Response:** Undisputed that Sunco, Inc. wrote several checks directly to Linda or on Linda's behalf. Disputed to the extent that Plaintiff claims this practice was improper or not accurately accounted for. Ex. 44 (S. Yuan-Sun Aff.) ¶¶ 11-54, 58-64.

**Linda's and New Sun's Response**: Disputed. Exhibit 27 only includes one check written out to "Linda Sun". It also includes 14 checks written out to the "Sun Family Trust"; 9 checks written out to the US taxing authorities with Linda's TIN/SSN written on the checks; and 2 checks to the "Linda Sun Irrevocable Trust-2006". The checks to Sun Family Trust were not made out to Linda Sun personally or for her benefit. *See* Ex. 44 (Shillock Aff.) at ¶¶ 10-27. The economic substance of those 14 checks was that Sunco Inc. paid rent to Infinity Realty, which made payments to New Sun LP on the note payable from the 2013 sale of the beneficial interest in the trust that owned the warehouse. (*Id*.). Meanwhile 2 checks (692321 and 62320) payable to the order of taxing authorities on Linda's behalf. (*Id*. ¶¶ 28-34). Those checks followed the same transactions as above, but there was an additional step where New Sun LP made distributions to one of its limited partners, Linda. (See *id*.). Then 7 other checks (60485, 60486, 61064, 61065, 61174, 61175, 63678) payable to the order of taxing authorities on Linda's behalf, were advances to Linda, which she paid back. (*Id*. ¶¶ 35-51). The 1 check (63472) written out to Linda was a reimbursement to Linda of $10,000 David Sun had

50

mistakenly distributed to Joyce Sun (New Sun's other limited partner) by a check drawn on Linda's personal bank account rather than Sunco, Inc.'s account. (*Id*. ¶ 52).

86. In the deposition, L. Sun's blanket response to every single check was that she had "never seen" it, had "no idea" why the payment was made, and claimed this was the "first time" she had ever laid eyes on any of them. She offered no legitimate business purpose, salary arrangement, or consideration for any of these transfers. [L. Sun Dep. Vol. I (Ex. 1) at 106-127].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed that Linda Sun testified that that she was unaware of the checks and her deposition was the first time she saw the checks. (*See* (Ex. 1) (L. Sun. Dep. Vol. 1) at 106-127). Disputed that there was no legitimate purpose, arrangement, or consideration of any of these transfers. (*See* Linda and New Sun's Response to paragraph 85 above).

87. Sunco Inc maintained five checking accounts and one savings account at North Easton Savings Bank, and additional checking accounts at Bank of America. Eastman Woodworks maintained four checking accounts at Bank of America. Shillock managed all of these accounts across entities. [Shillock Dep. (Ex. 5) at 313:9–316:6].

**NLNS Defendants' Response:** Undisputed that Sunco, Inc. maintained five checking accounts and one savings, except that NLNS Defendants do not know what Plaintiff means by "Shillock managed all of these accounts across entities."   Shillock managed the Affiliated

Entities' bank accounts after the entities' prior accountant, Scott Olsson, departed Sunco, Inc. Ex. 6 (S. Yuan-Sun Dep.) at 93:17-94:6.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

88. Between 2021 and 2022, Sunco Inc and Eastman Woodworks engaged in a series of large intercompany transfers, including transfers of $84,388.39, $169,734.13, $155,000, and $88,000 from Sunco Inc to Eastman Woodworks, purportedly for attorneys' fees. Eastman Woodworks in turn transferred approximately $316,000 and $250,000 back to Sunco Inc in September 2022. When asked about a million-dollar transfer from Eastman Woodworks to Sunco Inc, Shillock testified: "I don't know what it is for." [Shillock Dep. (Ex. 5) at 301:17–312:13].

**NLNS Defendants' Response:** Disputed.  As counsel for Plaintiff recognized at Shillock's deposition, when he explained "I am sorry – I have got this reversed,"  Sunco, Inc. did not transfer $169,734.13 to ESW, but instead ESW transferred that amount to Sunco, Inc.  (See Ex. 5 (S. Yuan-Sun Dep.) at 305:2-6.)  Notwithstanding that Plaintiff represented to Shillock at her deposition that Sunco, Inc. transferred $84,388.39 and $155,000 to ESW, and refused to let Shillock see the underlying documents, the transfers were, in fact, from ESW to Sunco, Inc. (See Ex. 5 (S. Yuan-Sun Dep.) at 302:6-306:6.)  Sunco, Inc.'s bank statements from May of 2022 show that the amounts of $84,388.39 and $169,734.13 were transferred into Sunco, Inc.'s account.  (See Ex. 51 (INFINITY_069262)  Likewise, the June 2022 statement for Sunco US's bank account shows that the $155,000 that Plaintiff continues wrongly to claim was transferred from Sunco US to ESW in fact was transferred by ESW to Sunco, Inc.  (See Ex. 51 (INFINITY_069266)).

5084389_1

Plaintiff is correct that in September of 2022, ESW transferred approximately $250,000 and $316,000 to Sunco, Inc., with the actual amounts being $260,315.43 and $323,195.75, both amounts that were from customers who had paid ESW when they were supposed to have paid Sunco, Inc.. (See Ex. 5 (S. Yuan-Sun Dep.) at 309:21-310:20.)

With respect to the purported $1 million transaction, Plaintiff has presented no evidence of such transaction, but instead only the deposition testimony where Plaintiff's counsel represented that a transfer of $1 million from Sunco US to ESW occurred on June 14, 2022, but Defendants have not seen evidence of such a transaction. There was a transfer from Sunco, Inc.to ESW on that date, but it was for $100,000, not $1 million, and it was not transferred from Sunco US to ESW, but from one Sunco US bank account to another Sunco, Inc. bank account. (See Ex. 51 (INFINITY_068842 at 69266.) This is why Shillock asked to see the underlying documents at her deposition, so that she could speak intelligently to specific transactions, but Plaintiff took the position that because Shillock was Defendants' Rule 30(b)(6) designee on most of the financial topics, she should effectively have every transaction for each of the entities entered into years prior memorized. (See Ex. 5 (S. Yuan-Sun Dep.) at 304:4-306:6, and in particular, Plaintiff's position that "I have no obligation to give [Shillock] the checks" in response to an objection that the documents were not being provided to Shillock to review in responding to questions about what they were for.)

**Linda's and New Sun's Response**: Undisputed that Eastman Street Woodworks transferred approximately $250,000 and $316,000 to Sunco Inc. (See Ex. 5 (S. Yuan-Sun Dep.) at 309:21-310:20). Disputed that the $84,388.39, $169,734.13, $155,000, $88,000 and $1,000,000 transfers occurred as the cited testimony does not support those assertions. (*See also* See Ex. 51 at INFINITY_069262 and INFINITY_069266).

## VI.    Sunco Inc.'s Alleged Loan

89. Defendants failed to disclose about Sunco Inc's substantial involvement in this case, and after Plaintiff counsel discovered about Sunco Inc., Defendants refused to answer questions about it in the interrogatories. [*See* Doc No. 116-8].

**NLNS Defendants' Response:** Disputed.  A motion to dismiss the Affiliated Entities from the case and so Defendants objected to interrogatories about them as premature.  Once the motions to dismiss were resolved, Defendants submitted supplemental interrogatory responses that answered the questions.  *See* Doc. No. 223-13.

**Linda's and New Sun's Response**: Disputed as to the characterizations of Defendants' Answers to Interrogatories, which included various objections including that Interrogatories were premature due to a forthcoming motion to dismiss.

90. After Plaintiff successfully amended the complaint to add Sunco Inc. and other affiliated entities as fraudulent conveyance and reach & apply defendants, Defendants filed a Motion to Dismiss attempting to dismiss Sunco Inc. from this case. [See Doc No. 52, 61, 63, and 64].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

91. After Defendants' Motion to Dismiss failed, Sunco Inc. finally responded to the complaint and raised counterclaims based on an alleged loan to Sunco China, more than two years after the initial pleading of this case. [See Doc No. 93 and 104].

5084389_1

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment except to the implication that Sunco, Inc. had been a party to this case for more than two years at the time it filed its counterclaim. Sunco, Inc. timely filed its counterclaim along with its answer to the Amended Complaint after Sunco, Inc.'s Motion to Dismiss the Amended Complaint had been denied.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

92. There is no loan agreement or any specific terms for the purported loan from Sunco Inc. to Sunco China in 2011. [Shillock Dep. (Ex. 5) at 99:12-22].

**NLNS Defendants' Response:** Disputed. The cited testimony does not support the assertion. Shillock testified that she had not seen a written agreement and was unfamiliar with the terms of the loan.

**Linda's and New Sun's Response**: Disputed. In the cited testimony, Shillock Yuan-Sun testified that she did not see a written loan agreement and does not know the terms of the loan agreement. She did not testify that a loan agreement and terms did not exist. (Shillock Dep. (Ex. 5) at 99:12-22).

93. There is no specific terms on when and how the loan should be repaid or what was the interest rate, and it was never reflected on the tax returns. [Shillock Dep. (Ex. 5) at 101:9-22].

**NLNS Defendants' Response:** Undisputed for the purposes of summary judgment.

**Linda's and New Sun's Response**: Undisputed for the purposes of summary judgment.

5084389_1

94. No demand was made for the repayment of the purported loan. [Shillock Dep. (Ex. 5) at 185:20-21].

**NLNS Defendants' Response:** Disputed.  The filing of the counterclaim constitutes a demand for repayment.  *See* Doc. No. 104.

**Linda's and New Sun's Response**: Disputed. *See* Doc. No. 104.

95. Under the 2014 Share Transfer Agreement, the transferor (Sunco Inc. and/or Linda) expressly agreed to bear responsibility for all liabilities arising prior to the completion of the share transfer, including any undisclosed debts, taxes, or obligations, and to indemnify transferee (Qiyi) for any resulting losses. [*See* 2014 Share transfer agreement (Ex. 14) at section 3.07].

**NLNS Defendants' Response:** Disputed.  The referenced agreement provides that Sunco, Inc. would be responsible for any "hidden debts or unpaid taxes or fees," not that Sunco, Inc. would be responsible for all liabilities in existence at the time of the execution of the agreement.  (*See* Ex. 14 at § 3.07, providing that "[Sunco, Inc.] guarantees that…there are no other *hidden debts* or unpaid taxes and fees.  If, after the completion…of the share transfer, any outstanding debts or unpaid taxes and fees *are discovered*, [Sunco, Inc.] shall bear the corresponding repayment responsibility…"[10] (emphasis added).)

**Linda's and New Sun's Response**: Disputed. The assertions mischaracterize the terms of the referenced agreement.

96. The agreement further provides that all pre-transfer liabilities remain solely with the transferor (Sunco Inc. and/or Linda) and must be satisfied by transferor, regardless of whether third

---

[10] NLNS Defendants do not concede that Plaintiff's English translation is fair or accurate, but accepts the translation of § 3.07 for purposes of summary judgment only.

parties later seek payment from the company (Sunco China) or transferee (Qiyi). [Id. at section 3.12].

**NLNS Defendants' Response:** Disputed.   Section 3.12 of the agreement does not obligate Sunco, Inc. to fully satisfy all outstanding liabilities prior to the share transfer, but rather obligates Sunco, Inc. to ensure that prior to the share transfer, payments on liabilities are "made in a timely manner."  That is, periodic payments must be made when due.  Read in conjunction with Section 3.7, which provides that until the share transfer is complete, Sunco, Inc. shall "enjoy" all "creditor's rights" of Sunco China and be responsible for all "existing debts" of Sunco China, it is clear that the agreement is referring to timely payments and collections and is not saying that Sunco, Inc. is responsible for full satisfaction of all liabilities on Sunco China's books, as that would also necessarily mean that Sunco, Inc. would get to retain all assets on Sunco China's books after the share transfer.

**Linda's and New Sun's Response**: Disputed. The assertions mischaracterize the terms of the referenced agreement.

57

**DATED:  April 17, 2026**

PLAINTIFF
Sunco Timber (Kunshan) Co., Ltd.
By its attorneys,

*/s/Yun Cheng*
Connie C. Dai (BBO#683330)
Yun Cheng (BBO# 707028)
Lion's Law, P.C.
154 Wells Ave
Newton, Massachusetts 02459
(617) 232-7503 Telephone
(781) 207-8574 Fax
connie@lionslawgroup.com
yun@lionslawgroup.com

*/s/Timothy K. Cutler*
Timothy K. Cutler (BBO#636124)
CUTLER & WILENSKY LLP
20 Walnut Street, Suite 1
Wellesley, Massachusetts 02481
(617) 232-7500 Telephone
tim@cutlerlegal.com

58

5084389_1

DAVID SUN, SHILLOCK YUAN-SUN, INFINITY WOOD PRODUCTS, LLC, SUNCO, INC., EASTMAN ST. DISTRIBUTORS LLC, EASTMAN ST. WOODWORKS, INC., and INFINITY REALTY COMPANY LLC

By their attorneys:

*/s/ Michele E. Connolly*

Peter E. Ball (BBO No. 546031)
Michele E. Connolly (BBO No. 680946)
Malgorzata A. Mrózek (BBO No. 699035)
FITCH LAW PARTNERS LLP
84 State St.
Boston, MA 02109
(617) 542-5542
peb@fitchlp.com
mec@fitchlp.com
mam@fitchlp.com

Dated: May 27, 2026

LINDA SUN and NEW SUN LIMITED PARTNERSHIP

By her attorneys:

*/s/ Theodore J. Folkman*

Theodore J. Folkman (BBO No. 647642)
Elizabeth L. Gardon (BBO No. 711867)
RUBIN AND RUDMAN, LLP
53 State St.
Boston, Mass. 02109
(617) 330-7135
tfolkman@rubinrudman.com
egardon@rubinrudman.com

Dated: May 27, 2026

59

5084389_1

**LINDA SUN'S AND NEW SUN LIMITED PARTNERSHIP'S**
**STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS**

Pursuant to L.R. 56.1 and the Standing Order Regarding Motion Practice, Linda Sun and New Sun Limited Partnership submit the following undisputed material facts in support of their Cross-Motion for Summary Judgment.

*Facts Relevant to Counts 6 and 7 (Breach of Fiduciary Duty against Linda)*

97.    Sunco China sued Linda in a Chinese court in 2020. (*See* Linda Decl. ¶ 2). Exhibit 31 is the civil complaint and Exhibit 32 and Exhibit 33 are notices sent to Linda by the Chinese court. (Linda Decl. ¶ 2).

**Plaintiff's Response:** Undisputed for the purposes of summary judgment.

98.    In the Chinese action, the parties were notified of their right to ask witnesses to testify and provide evidence. (*See* Ex. 33; Linda Decl. ¶ 2). No party asked the Chinese court to allow witnesses to testify or for the court to investigate or gather evidence. (Linda Decl. ¶ 3). Both parties were represented by counsel. (*See* Ex. 34).

**Plaintiff's Response:** Undisputed for the purposes of summary judgment.

99.    The trial for the Chinese lawsuit took place before a panel of three judges on October 28, 2021, and the Chinese court issued its judgment on November 29, 2021. (*See* Linda Decl. ¶ 4; Ex. 34). Exhibit 34 is a copy of the Chinese court judgment. (*See* Linda Decl. ¶ 4).

**Plaintiff's Response:** Undisputed for the purposes of summary judgment.

100.    The parties argued their cases on documentary evidence, which is common in Chinese litigation. (*See* Ex. 34; Linda Decl. ¶ 3).

5084389_1

**Plaintiff's Response:** Undisputed for the purposes of summary judgment.

101.    In the Chinese judgment, the Chinese court found that Linda, along with Xiao Ruihua and Xiao Qiong, was a director of Sunco China, though she had never been a shareholder; that Sunco China was a long-term supplier for Infinity; that David and Shillock were the managers of Infinity; and that David was Linda's son. (*See* Ex. 34).

**Plaintiff's Response:** Disputed. The court merely said "Sun Linda has never been a shareholder of [Sunco] Wood Company registered with the administration for industry and commerce…", and dismissed the claim that "Sun Linda obtained all share of [Sunco] Wood Company in 2013 based on the Agreement on Selling and Transferring Shares." (Ex. 34 at 15)

102.    The Chinese court found that while Linda, as a director, had a duty to the company, she was not liable for breach of her duty, because there was no evidence that there was anything unreasonable in the transaction between Sunco China and Infinity. (Ex. 34). It also found that there was no evidence that Linda had concealed anything. (*Id.*). And it found that there was no evidence that anything in the transaction between Sunco China and Infinity violated Chinese law or Sunco China's articles of association. (*Id.*).

**Plaintiff's Response:** Disputed. The court's core reasoning was that Sunco China's "accounts receivable have been demanded but not yet collected," and that this "cannot be directly characterized as conduct that harms the company's interests." (Ex. 34 at 16). The court explicitly stated it could not confirm the debt was uncollectible because Sunco China had "not taken remedial measures beyond sending a demand letter." (Id.). The court even explicitly pointed out the debt confirmation letter, using it as a rationale to support that Infinity confirmed the debt.(Id.) Plaintiff

61

further dispute the accuracy and fairness of the English translation of Ex. 34 that Defendants provided: for example, the Chinese judgment never used the word "impossible", but such word has been repeatedly used in Defendants' English translation. (Id at 29).

103.   No party appealed from the Chinese judgment or asked for a retrial. (See Ex. 35; Linda Decl. ¶ 5).

**Plaintiff's Response:** Undisputed for the purposes of summary judgment.

104.   Exhibit 35 is a copy of the certificate of enforceability of the judgment, along with an unofficial translated copy provided by Chinese authorities. (*See* Linda Decl. ¶ 6).[11]

**Plaintiff's Response:** Undisputed for the purposes of summary judgment.

*Facts Relevant to Count 11 (Piercing the Corporate Veil of Infinity)*

105.   Linda has never been a member of Infinity Wood Products, LLC. *See* Ex. 36 (Linda's Answers to Sunco China's Interrogatories) at Ans. Nos. 3, 4; Linda Decl. ¶ 7).

**Plaintiff's Response:** Undisputed for the purposes of summary judgment.

106.   Linda does not now have, and never has had, a beneficial interest in Infinity. (*See* Ex. 36 (Linda's Answers to Sunco China's Interrogatories) at Ans. Nos. 2, 16).

---

[11] Because the certificate is certified by an apostille, it is self-authenticating, and thus there is no evidence other than the document itself to cite in support of the assertion of this paragraph. *See* 28 U.S.C. § 1741; Fed. R. Civ. P. 44(a)(2)(A)(ii); Convention Abolishing the Requirement of Legalization for Foreign Public Documents, Oct. 5, 1961, TIAS 10072, 527 UNTS 189, arts. 3, 5.

5084389_1

**Plaintiff's Response:** Disputed. Linda Sun has been indirectly receiving beneficial interest from Infinity, through Sunco Inc and other affiliates, as Plaintiff repeatedly explained in its piercing corporate veil and fraudulent transfer arguments. (*See* Doc. No. 223).

107. Linda is not now, and has never been, a director of Infinity Wood Products LLC. (*See* Ex. 36 (Linda's Answers to Sunco China's Interrogatories) at Ans. No. 4).

**Plaintiff's Response:** Undisputed for the purposes of summary judgment.

108. Linda is not now, and has never been, an officer of Infinity Wood Products LLC. (*See* Ex. 36 (Linda's Answers to Sunco China's Interrogatories) at Ans. No. 5; Linda Decl. ¶ 7).

**Plaintiff's Response:** Undisputed for the purposes of summary judgment.

109. Linda has never been a manager of Infinity Wood Products LLC or otherwise had any management authority over the company. (*See* Linda Decl. ¶ 7).

**Plaintiff's Response:** Disputed. Linda testified that she negotiated the purported offset agreement on behalf of Infinity and without David's authorization. (*See* Ex. 3 and 4.)

110. Linda never received any payments from Infinity. (*See* Ex. 36 (Linda's Answers to Sunco China's Interrogatories) at Ans. No. 2).

**Plaintiff's Response:** Undisputed for the purposes of summary judgment. However, Linda Sun has been indirectly receiving beneficial interest from Infinity, through Sunco Inc and other affiliates, as Plaintiff repeatedly explained in its piercing corporate veil and fraudulent transfer arguments.

5084389_1

111.    Linda never directed or ordered Infinity Wood Products LLC not to pay for the cabinets. (*See* Ex. 36 (Linda's Answers to Sunco China's Interrogatories) at Ans. No. 8).

**Plaintiff's Response:** Disputed. It's undisputed that Linda told David, the manager and actual owner of Infinity, to not pay for the cabinets. (*See* Ex.1 and 3)

*Facts Relevant to Count 12 (Fraudulent Transfer)*

112.    Until 2021, the Sun Family Trust owned real estate, which included a warehouse. (See Ex. 44 (Shillock Aff.) ¶ 5). Until 2013, New Sun LP was the beneficiary of the Sun Family Trust, which effectively made New Sun LP the owner of the property. (*Id.*; Sun Decl. ¶ 8). Sunco, Inc. used and rented the warehouse on the property from New Sun LP until New Sun LP sold its interest in the property in 2013. (See Ex. 44 (Shillock Aff.) ¶ 5).

**Plaintiff's Response:** Undisputed for the purposes of summary judgment. However, such fact was never disclosed until this summary judgment.

113.    In 2013, New Sun LP sold its beneficial interest in the Sun Family Trust to Infinity Realty Co., LLC for $6,665,885. (See Ex. 44 (Shillock Aff.) ¶ 6; Ex. 39 (Chang Report) at p. 9). Infinity Realty's purchase was financed by New Sun LP in exchange for a promissory note. (See Ex. 44 (Shillock Aff.) ¶ 6).

**Plaintiff's Response:** Undisputed for the purposes of summary judgment. However, such fact was never disclosed prior to this summary judgment.

114.    In 2021, the Sun Family Trust sold the real estate to an unrelated third party for approximately $17 million. (*See* Ex. 3 (David Dep. Vol I) at 163:1-166:12). Infinity Realty received the proceeds from the sale. (*See* Ex. 5 (Shillock Dep.) at 154:22-155:17).

**Plaintiff's Response:** Undisputed for the purposes of summary judgment.

115.    In September 2021, Infinity Realty made a partial payment to New Sun LP of $3 million towards the note payable. (*See* Ex. 5 (Shillock Dep.) at 154:1-4, 157:3-12).

**Plaintiff's Response:** Undisputed for the purposes of summary judgment.

116.    In 2022, New Sun LP transferred approximately $2.88 million to Linda as a distribution based on her ownership interest in New Sun LP. (*See* Ex. 39 (Chang Report) at p. 9).

**Plaintiff's Response:** Disputed the record does not reflect this statement.

117.    The fourteen checks payable to Sun Family Trust contained in Exhibit 27 did not go to Linda Sun personally or for her benefit. (*See* Ex. 44 (Shillock Aff.) at ¶¶ 10-27). In substance, through these checks, Sunco Inc. paid rent to Infinity Realty, and Infinity Realty made payments to New Sun LP on the note payable from the 2013 sale of the beneficial interest in the trust that owned the warehouse. Each entity properly accounted for these transactions in its books. (*Id.*).

**Plaintiff's Response:** Disputed. This is a new explanation for these transactions and it was never disclosed prior to this summary judgment, including in Linda, David, or Shillock's depositions.

118.    The two checks (692321 and 62320) payable to the order of taxing authorities were payments made on Linda's behalf. In substance, through these checks, Sunco, Inc. paid rent to Infinity Realty, and Infinity Realty made payment to New Sun LP on the note payable from the 2013 sale of the beneficial interest in the trust that owned the warehouse. New Sun LP then made a distribution to Linda in the amount of the taxes

paid on her behalf. Each entity properly accounted for these transactions in its books. (See Ex. 44 (Shillock Aff) ¶¶ 28-34).

**Plaintiff's Response:** Disputed. This is a new explanation for these transactions and it was never disclosed prior to this summary judgment, including in Linda, David, or Shillock's depositions.

118.    Plaintiff's Response: Disputed. This is a new explanation for these transactions and it was never disclosed prior to this summary judgment, including in Linda, David, or Shillock's depositions.

119.    Seven additional checks (60485, 60486, 61064, 61065, 61174, 61175, 63678) payable to the order of taxing authorities on Linda's behalf were advances to Linda. Sunco Inc. maintained an "Advance to Linda Sun" account on its books. At times, Linda repaid these advances in cash. At other times, Infinity Realty and New Sun LP made accounting entries that had the effect of recording a distribution to Linda, reducing the balance Infinity Realty owed to New Sun LP on its promissory note, and reducing the rent Sunco, Inc. owed to Infinity Realty. (*See* Ex. 44 (Shillock Aff) ¶¶ 35-51).

**Plaintiff's Response:** Disputed. This is a new explanation for these transactions and it was never disclosed prior to this summary judgment, including in Linda, David, or Shillock's depositions.

120.    One check payable to the order of Linda was a reimbursement to correct a mistake. David Sun had mistakenly distributed $10,000 from New Sun LP to its other limited partner Joyce Sun (his sister and Linda's daughter), using a check drawn on Linda's personal bank account rather than Sunco Inc.'s account. As set forth above, New Sun limited partners received distributions via checks from Sunco Inc., but Sunco Inc., Infinity Realty, and New Sun all recorded the proper accounting entries, so that in

66

5084389_1

substance, the transaction was a payment of rent to Infinity Realty, a partial payment on the promissory note by Infinity Realty to New Sun, and a distribution from New Sun to its limited partners. To fix his mistake, David gave Linda a check from Sunco Inc. in the amount of the check he had erroneously written using her personal bank account. And the amount was booked as a distribution to Joyce. (*See* Ex. 44 (Shillock Aff) ¶ 52).

**Plaintiff's Response:** Disputed. This is a new explanation for these transactions and it was never disclosed prior to this summary judgment, including in Linda, David, or Shillock's depositions.

Respectfully submitted,

LINDA SUN and NEW SUN LIMITED PARTNERSHIP

By her attorneys:

*/s/ Theodore J. Folkman*

Theodore J. Folkman (BBO No. 647642)
Elizabeth L. Gardon (BBO No. 711867)
RUBIN AND RUDMAN, LLP
53 State St.
Boston, Mass. 02109
(617) 330-7135
tfolkman@rubinrudman.com
egardon@rubinrudman.com

Dated: May 27, 2026

5084389_1

**DATED:  July 1, 2026**

PLAINTIFF
Sunco Timber (Kunshan) Co., Ltd.
By its attorneys,

*/s/Yun Cheng*
Connie C. Dai (BBO#683330)
Yun Cheng (BBO# 707028)
Lion's Law, P.C.
154 Wells Ave
Newton, Massachusetts 02459
(617) 232-7503 Telephone
(781) 207-8574 Fax
connie@lionslawgroup.com
yun@lionslawgroup.com

*/s/Timothy K. Cutler*
Timothy K. Cutler (BBO#636124)
CUTLER & WILENSKY LLP
20 Walnut Street, Suite 1
Wellesley, Massachusetts 02481
(617) 232-7500 Telephone
tim@cutlerlegal.com

68

5084389_1

**STATEMENT OF ADDITIONAL MATERIAL FACTS BY DEFENDANTS DAVID SUN, SHILLOCK YUAN-SUN, INFINITY WOOD PRODUCTS, LLP, SUNCO, INC., EASTMAN ST. DISTRIBUTORS, LLC, EASTMAN ST. WOODWORKS, INC., and INFINITY REALTY COMPANY**

Pursuant to L.R. 56.1 and the Standing Order Regarding Motion Practice, David Sun, Shillock Yuan-Sun, Infinity Wood Products, LLP, Sunco, Inc., Eastman St. Distributors, LLC, Eastman St. Woodworks, Inc., and Infinity Realty Company submit the following undisputed material facts in support of their Cross-Motion for Summary Judgment.

121.    Infinity Wood Product LLC's members are not David Sun or Shillock Yuan-Sun, but rather the David Sun Trust Agreement of 2008 and the Shillock Yuan-Sun Trust Agreement of 2008.  Ex. 52 (INFINITY_004336 at 46).

**Plaintiff's Response:** Undisputed for the purposes of summary judgment. Plaintiff further states that David Sun and Shillock Yuan-Sun are the primary lifetime beneficiaries of their respective trusts, and Zoe Amelie Sun (their daughter) is the primary remainder beneficiary in both trusts. *See* Ex. 89, the David Sun Trust Agreement (INFINITY_070406) and Ex. 90, the Shillock Yuan-Sun Trust Agreement (INFINITY_070439).

122.    Defendants served a Fed. R. Civ. P. Rule 30(b)(6) deposition notice on Plaintiff identifying a list of topics on which Defendants sought testimony.  Doc. No. 199-5 at p. 5-10.

**Plaintiff's Response:** Undisputed for the purposes of summary judgment.

123.    Among the Rule 30(b)(6) topics was topic 8, which was:

"Sunco China's allegations concerning piercing the corporate veil of Infinity Wood Products, including:

   a.   Sunco China's claims that David and Shillock, as individuals, own equity interests in Infinity Wood Products;

69

5084389_1

b.  Sunco China's claim that Linda owns an equity interest in Infinity Wood Products;

c.  Any claim by Sunco China that Infinity Wood Products' members exercised pervasive control over the company;

d.  Sunco China's claim that Infinity Wood Products was "believed to be thinly capitalized" as alleged in paragraph 38 of the Amended Complaint;

e.  Any claim by Sunco China that Infinity Wood Products failed to observe corporate formalities;

f.  Any claim by Sunco China that Infinity Wood Products does not have corporate records;

g.  Any claim by Sunco China that Infinity Wood Products did not pay dividends;

h.  Any claim by Sunco China that Infinity Wood Products was insolvent at the time periods relevant to the instant action;

i.  Any claim by Sunco China that David – either individually or in his capacity as Trustee for the David Sun Trust Agreement of 2008 – or Shillock – either individually or in her capacity as Trustee for The Shillock Yuan-Sun Trust Agreement of 2008 – or any other person or entity that Sunco China claims is or was a member of Infinity Wood Products, siphoned away corporate funds of Infinity Wood Products, including without limitation Sunco China's claim that Linda, David, and Shillock "have ceased operations of Infinity [Wood Products] and siphoned off all of its capital" as alleged in paragraph 81 of the Amended Complaint;

j.  Any claim by Sunco China that Infinity Wood Products' officers or directors were nonfunctioning;

k.  Any claim by Sunco China that David – either individually or in his capacity as Trustee for the David Sun Trust Agreement of 2008 – or Shillock – either individually or in her capacity as Trustee for The Shillock Yuan-Sun Trust Agreement of 2008 – or any other person or entity that Sunco China claims is or was a member of Infinity Wood Products, used Infinity Wood Products for their own transactions; and

l.  Any claim by Sunco China that Infinity Wood Products was used to promote fraud." *Id.*

**Plaintiff's Response:** Undisputed for the purposes of summary judgment.

124.    Plaintiff's designee on this topic, Bing Zhao, was unable to answer any questions regarding this topic, however.  When asked "Do you know whether Infinity Wood Products

70

has any company bylaws or an operating agreement?"  Mr. Zhao answered "I don't know about that."  (Doc. No. 199-6 (B. Zhao Dep. Vol. I) at 146:21-23.)

**Plaintiff's Response:** Disputed. Plaintiff counsel correctly deferred this topic to expert. FRCP 56(c)(1)(A) permits a party to "cite to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials", it does not require a party witness to personally testify every fact. Furthermore, Plaintiff counsel objected at Mr. Zhao's depo and Motion to Sanction hearing that the document produced by Defendants that are relevant to pierce corporate veil and fraudulent claims are voluminous consisting of majority are financial and accounting documents and that plaintiff's expert would analyze and provide an opinion, which was provided to Defendants in December, 2025, and it is unrealistic and unfair and the law does not require a witness to verbalize the specific such facts, which would be explained and analyzed by the expert.

125.    The following questioning and answers constitute Plaintiff's Rule 30(b)(6)'s designee's testimony on the topic of Plaintiff's veil piercing claim:

Q Did Infinity Wood Products have a separate bank account from Sunco US?

**A I'm not sure.**

Q Did David Sun ever comingle personal funds with Infinity Wood Products?

ATTORNEY DAI: Objection.

(Reporter clarification.)

**A I don't know.**

Q Did the David Sun Trust ever comingle funds with Infinity Wood Products?

**A I'm not sure.**

Q Did the Shillock Yuan-Sun Trust ever comingle funds with Infinity Wood Products?

71

**A I'm not sure.**

Q Did Infinity Wood Products ever comingle funds with Sunco US?

ATTORNEY DAI: Objection.

**A I'm not sure.**

Q Did Infinity make required filings with the government authorities in Massachusetts?

**A I don't know.**

Q Did Infinity track its own financial transactions?

ATTORNEY DAI: Objection.

**A I don't understand what you mean by that.**

Q Did Infinity keep track of its financial transactions?

ATTORNEY DAI: Objection.

**A I don't know.**

Q Did Infinity keep accurate records?

**A I don't know.**

Q Did Infinity Wood Products' owners exercise pervasive control over Infinity?

…

THE WITNESS: Can you specify who from Infinity? I'm going to ask the interpreter to repeat the question again.  I don't have an understanding of it.

…

Is Plaintiff claiming that Infinity Wood Products failed to observe corporate formalities?

**A Yes.**

Q In what way?

**A It did not pay on time for the goods.**

Q Is Plaintiff claiming that Infinity Wood Products failed to observe corporate formalities in any other way?

ATTORNEY DAI: Objection.

72

**A Can you be more specific with this question? I don't understand what you mean by corporate formalities.**

Q Well, when you received the list of topics you were supposed to testify about, did you tell your counsel that you didn't understand this topic?

**A Since the list we received was the one that was being translated into Chinese, maybe the translation of the Chinese version, its meaning is different from what you just asked. Maybe it's different from the question you just asked. Can you ask it in another way?**

Q Well, I asked earlier if Plaintiff was claiming that Infinity Wood Products failed to

observe corporate formalities, and you answered: Yes. And then I asked: In what way, and you answered: It did not pay on time for the goods. Is that accurate?

**A Yes.**

Q So other than failure to pay for the goods, does Plaintiff claim that Infinity Wood Products failed to observe corporate formalities in any other ways?

**A Right now, not paying for the goods is only one of the aspects. As I mentioned earlier, in the email dated April 17th, 2019 from Ms. Li, she clearly stated that they would pay half a million US dollars each month for the payments of the goods, but it was still not paid. So there was a promise there. So it's not just about not paying for the goods, but they also said that they would pay, but still, they did not pay. That was another matter.**

Q Anything else?

**A I think that for breaching the payment of goods, that is already very serious.**

Q Does Plaintiff claim that David Sun used Infinity Wood Products for his own personal transactions?

…

**A I'm not sure.**

Q Does Plaintiff claim that the David Sun Trust used Infinity Wood Products for Trust transactions?

ATTORNEY DAI: Objection.

**A The trans -- the transactions you're referring to, what kind of transactions are you talking about?**

Q Any transactions.

73

ATTORNEY DAI: Objection.

**A I'm not sure about that.**

Q Does Plaintiff claim that Shillock Yuan-Sun used Infinity Wood Products for her personal transactions?

ATTORNEY DAI: Objection.

**A I'm not very sure.**

Q Does Plaintiff claim that the Shillock Yuan-Sun Trust used Infinity Wood Products for Trust-related transactions?

**A I'm not very sure.**

Q In the amended complaint, Plaintiff claimed that Linda, David and Shillock dispersed all monies received by Infinity from the sale of the cabinets. What evidence does Plaintiff have to support that claim?

**A All these monies were being dispersed to whom?**

Q So in the amended complaint, the Plaintiff claimed that Linda, David and Shillock dispersed all the monies received by Infinity from the sale of the cabinets to themselves. What evidence does Plaintiff have to support that claim?

ATTORNEY DAI: Objection.

**A For that, can you communicate with our counsels?**

…

Q So is that because you don't know what evidence Plaintiff has?

ATTORNEY DAI: Objection.

**A I'm not very sure about that. Regarding to that, you can just communicate with our counsel.**

Q Do you know what evidence Plaintiff has to support that claim?

**A What claim are you referring to? What do you mean by that?**

Q The claim that Linda, David and Shillock dispersed all the monies received by Infinity from the sale of the cabinets to themselves?

**A You can just communicate with our counsels about that.**

74

Q Do you know whether Plaintiff has any evidence to support that claim?

ATTORNEY DAI: Objection.

**A For that, you can just communicate directly with our counsel.**

Q And I'm asking you whether you know whether Plaintiff has any evidence to support that claim?

**A For this questions, I cannot say I know or not know about that. For the question, it would be best for you to communicate with our counsel.**

Q I understand that it's your position that you would prefer us to speak to your lawyers, but I'm asking you as a representative of Plaintiff whether Plaintiff has any evidence to support the claim that Linda, David and Shillock dispersed all the money from the sale of the cabinets to themselves?

**A I understand that you want to know whether I know about this matter or not, but I think for this matter, it would be best for you to communicate with our counsel. It would be more convenient.**

Q I understand that that's your preference, but I'm entitled to an answer to this question. Do you know whether Plaintiff has any evidence to support its claim that Linda, David

and Shillock dispersed all the money from the sale of the cabinets to themselves?

**A First of all, you cannot say that this is my preference. For being factual and truthful,**

**with regard to my attitude, I cannot just answer saying that I know or I don't know. Regarding this matter, it would be more convenient and direct for you to speak to our counsel.**

Q Why can't you say you don't know, if you don't know the answer to a question?

ATTORNEY DAI: Objection.

**A Regarding this question, you can get a better answer from speaking directly to our counsel. If I were to answer, I know or I don't know, that may not be the final meaning in that case.**

Q Do you know whether the Plaintiff has any evidence to support its claim that Linda, David and Shillock dispersed all the money from the sale of the cabinets to themselves?

ATTORNEY DAI: Objection.

**A Excuse me. You're going to get the same answer regarding this question. I cannot say I know or I don't know. Specifically, you should directly communicate with our counsel.**

75

Q Your counsel is not a witness here today. You are here to testify about Plaintiff's knowledge of the allegations in the complaint. I am asking you, as a representative of the Plaintiff, to testify about Plaintiff's knowledge of the allegations of the complaint. Are you refusing to do that?

ATTORNEY DAI: Objection.

**A That's not what I meant. That's not what I meant. I feel that I cannot be certain of the answer, and I hope that you can get a more certain answer from my counsel.**

Q And I am asking for your best understanding. To your best understanding, does Plaintiff have any evidence to support its claim that Linda, David and Shillock dispersed all the monies from the sale of the cabinets to themselves?

**A Can you just ask it in another way?**

Q What don't you understand about my question?

**A So what are you trying to ask me?**

Q What don't you understand about my question? What's confusing?

**A The middle part of your question, you're saying that through Infinity, they transfer the money for the goods for what?**

Q Plaintiff claims that Linda, David and Shillock dispersed all the money from the sale of the cabinets to themselves. Does Plaintiff have any evidence to support that claim?

ATTORNEY DAI: Objection.

**A For this question -- for this question, I'm still not sure. I think it would be best for you to communicate with our counsel.**

Doc. No. 199-6 (B. Zhao Dep. Vol. I) at 146:24-158:3)

**Plaintiff's Response:** Undisputed for the verbatim copy of Mr. Zhao's deposition transcript. Plaintiff further states that its counsel correctly deferred this topic to expert. FRCP 56(c)(1)(A) permits a party to "cite to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials", it does not require a party witness to personally testify every fact. Furthermore, Plaintiff counsel objected at Mr. Zhao's depo and Motion to Sanction hearing that the document produced

76

by Defendants that are relevant to pierce corporate veil and fraudulent claims are voluminous consisting of majority are financial and accounting documents and that plaintiff's expert would analyze and provide an opinion, which was provided to Defendants in December, 2025, and it is unrealistic and unfair and the law does not require a witness to verbalize the specific such facts, which would be explained and analyzed by the expert.

126.    The following day, counsel for Plaintiff asserted the attorney-client privilege over answers to questions about Plaintiff's factual bases for certain claims, also asserting the privilege retroactively to the prior day's answers.  Plaintiff's counsel explained that Plaintiff's knowledge of facts could only be obtained through discovery and was therefore privileged.  Doc. No. 199-7 (B. Zhao Dep. Vol. II) at 168:6-169:17.  Plaintiff's counsel explained "in terms of the facts that support each claim, I'm asserting attorney-client privilege because it's only going [to come] from our office."  *Id*. at 171:10-13. When asked "So you're asserting the attorney-client privilege over the facts that form the basis for these claims?" counsel for Plaintiff responded "Yes."  *Id*. at 171:14-17.

**Plaintiff's Response:** Undisputed as for the specific quotes of plaintiff counsel's statements, but these statements are not material facts related to the case, thus shall not be considered by for summary judgment purposes. Plaintiff counsel further provided that all the facts related to piercing corporate veil and fraudulent transfer are provided by the documents that defendants provided, and plaintiff's expert would analyze these documents to provide an expert report. (Doc. No. 199-6, B. Zhao Dep. Vol. II, 172:11-14). FRCP 56(c)(1)(A) permits a party to "cite to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials", it does not require a party witness to

77

personally testify every fact. Furthermore, Plaintiff counsel objected at Mr. Zhao's depo and Motion to Sanction hearing that the document produced by Defendants that are relevant to pierce corporate veil and fraudulent claims are voluminous consisting of majority are financial and accounting documents and that plaintiff's expert would analyze and provide an opinion, which was provided to Defendants in December, 2025, and the law does not require a witness to verbalize the specific facts which are represented by numbers and financial transactions.

127. Plaintiff's Rule 30(b)(6) witness also testified that "before 2019, Linda Sun was the only person controlling the company. She would know about" David's relationship to IWP and to Sunco US. Doc. No. 199-6 (B. Zhao Dep. Vol. I) at 88:12-14.

**Plaintiff's Response:** Undisputed for the purposes of summary judgment.

128. When Plaintiff's Rule 30(b)(6) witness was asked who Plaintiff believed owned IWP prior to 2018, he answered "you need to ask the person in charge of Plaintiff at the time, which is Linda Sun." *Id*. at 95:4-8.

**Plaintiff's Response:** Undisputed for the purposes of summary judgment.

129. He testified that prior to 2018, what Linda Sun knew, Plaintiff knew. *Id*. at 96:7-10.

**Plaintiff's Response:** Undisputed for the purposes of summary judgment.

130. He also testified that prior to 2018, Plaintiff would have known that Linda was David's mother, would have known about the relationship between David and IWP, and that Plaintiff would have known about the relationship between David and Sunco US. *Id*. at 96:11-99:12.

**Plaintiff's Response:** Disputed. The statement is a distorted implication of Mr. Zhao's deposition answers, not the exact quotes of his statements. Mr. Zhao testified that Linda knew she and David

78

are mother and son prior to 2018 and did not state Plaintiff knew or would have known about the relationship between Linda and David.

**Plaintiff Knew Infinity Wood Products LLC was Sunco US's Importer**

131.    Guoqing Wu, who has been described by Plaintiff as its "principal" (Doc. No. 135 at p. 2; Doc. No. 135-1 at p. 1), testified that he was aware that David was Linda's son at least as early as 2014. Doc. No. 199-11 (G. Wu Dep. Vol. I) at 115:10-23.

**Plaintiff's Response:** Disputed, to be specific, Mr. Wu answered that he was aware that David is Linda's son about December of 2024. Doc. No. 199-11 (G. Wu Dep. Vol. I) at 115:10-23.

132.    Mr. Wu requested that David sign the share transfer agreement, transferring 52 percent of the shares of Sunco China from Sunco US to Mr. Wu's company, a request that makes no sense unless Mr. Wu knew that David had a relationship with Sunco US.  Doc. No. 199-11 (G. Wu Dep. Vol. I) at 110:22-112:7.

**Plaintiff's Response:** Disputed. Mr. Wu testified that David Sun signed this September, 2014 share transfer agreement on January 11, 2015. He did not testify that he requested David to sign the share transfer agreement, or he knew David had a relationship with Sunco US. Doc. No. 199-11 (G. Wu Dep. Vol. I) at 110:22-112:7.

133.    Mr. Wu further testified that "I don't want to gain an understanding [of David's relationship to IWP] because I have many matters of my own I need to take care of."  Doc. No. 199-12 (G. Wu Dep. Vol. II) at 224:21-225:1.

**Plaintiff's Response:** Disputed. Mr. Wu testified that "I don't know which organization Mr. Sun worked for, or about his work situation. I did not have much understanding, and I don't want to gain an understanding, because I have many matters of my own that I need to take care of." (Doc. No. 199-11 Mr. Wu depo, II, at 110:22-112:7).

134.    Plaintiff's Rule 30(b)(6) witness on the topic of the management of Sunco China – Ruihua Xiao – testified that it would have been "impossible" for Linda to inform Qiong Xiao – one of two other "top managers" of Sunco China – about the relationship between David, Shillock, and IWP, because Qiong Xiao was "not so important about this" and "did not work at the factory at all." Doc. No. 199-9 (R. Xiao Dep. Vol. II) at 201:4-202:16.

**Plaintiff's Response:** Disputed. Mr. Xiao testified that it would have been impossible for Linda to tell Qiong Xiao about the purchaser of the cabinet, because Linda was in control of the entire factory and Qiong was not involved in management. Doc. No. 199-9 (R. Xiao Dep. II at 201:4-202:16).

135.    IWP was established in *2011*, years before the alleged deception occurred, and, critically, at a time when Sunco US still owned 100 percent of Sunco China. Ex. 53 (Massachusetts Secretary of the Commonwealth Business Entity Summary).

**Plaintiff's Response:** Disputed. Plaintiff does not understand what the "alleged deception" refers to.

136.    Prior to the establishment of IWP, Sunco US and Sunco China had been using a Chinese company to export cabinets from China. Ex. 3 (D. Sun Dep. Vol. I) at 66:16-67:10.

**Plaintiff's Response:** Undisputed for the purposes of summary judgment.

137.    When issues arose with that exporter, Sunco US decided to take the import/export process in-house, but was advised that Sunco China could run into regulatory difficulties in China if it was exporting to its foreign shareholder. Ex. 3 (D. Sun Dep. Vol. I) at 66:16-67:10.

80

**Plaintiff's Response:** Disputed. David testified that there were problems with timely payment and delays with Shanghai Silk, Linda suggested that an intermediary be created. David did not testify that the reason to suggest a new intermediary is that Sunco China could run into regulatory difficulties in China if it was exporting to its foreign shareholder. Ex. 3 (D. Sun Dep. Vol. I) at 66:16-67:10.

138.    Accordingly, IWP was established to act as Sunco US's importer, a role that IWP performed for years without incident, paying millions of dollars to Sunco China for the purchase of Sunco China cabinets. Doc. No. 61 at ¶¶ 33; 117.

**Plaintiff's Response:** Disputed. Plaintiff states that IWP as an importer is not "without incident", it would regularly delay payments. *See* Para 15; *See* also Ex. 34 at 16. Plaintiff further states that IWP defaulted $6.7 million payment for the cabinets to Sunco China, which is what has given rise to this lawsuit.

139.    In March of 2019, Plaintiff's finance supervisor in 2018 and 2019, Gao Yueyun, sent an email to Mr. Wu,[12] attaching a "Foreign Producers'/Exporters' Questionnaire"[13] from the United States International Trade Commission in which Sunco China was asked to identify "the five largest U.S. importers of your firm's wooden cabinet and vanities in 2018." Ex. 54 (Exhibit 35 to Deposition of Guoqing Wu, email from Goa Yueyun to Guoqing Wu dated March 19, 2019)

**Plaintiff's Response:** Undisputed for purposes of summary judgment.

---

[12] Mr. Wu implausibly claims that he has never seen this email address before.  However, the email address domain is for an IT company owned by Mr. Wu, although Mr. Wu, again implausibly, claimed that he was unaware of the internet domain and had never seen the company website before, even though he acknowledged after being shown the website, with his own company's logo and name, that "it seems to be the website of our company." Doc. No. 199-12 (G. Wu Dep. Vol. II) at 228:3-24.
[13] Though this email was sent from a Sunco China email address to Mr. Wu, Plaintiff never produced this document in this litigation.

5084389_1

140.    It listed *two* entities:  Infinity Wood Products, LLC and Sunco, Inc.  It listed David as the contact person for both entities, with the same email address and the same telephone number. Ex. 54 (Exhibit 35 to Deposition of Guoqing Wu, email from Goa Yueyun to Guoqing Wu dated March 19, 2019).

**Plaintiff's Response:** Undisputed for purposes of summary judgment.

141.    In April of 2019, Ms. Gao sent an email to an attorney named Frank Zhang, noting "the submitted materials are attached."  Included among the attachments to the email was a document describing "Basic Information for the Company," i.e., Sunco China, that included the following description:  "We export to a U.S. affiliated company, and then sell products to the U.S. market through the U.S. affiliated company."  Ex. 55 (Sunco_006711-Sunco_006712).

**Plaintiff's Response:** Undisputed for purposes of summary judgment.

142.    The email also contained attached to it a document entitled "Company Certification," certifying that the form referenced above was prepared by Sunco China "pursuant to the COUNTERVAILING Duty Investigation of Wooden Cabinets and Vanities from the People's Republic of China."  Ex. 56 (Sunco_006739).

**Plaintiff's Response:** Undisputed for purposes of summary judgment.

143.    In an email exchange beginning in September of 2016, an employee of Sunco US – Catherine Li – was emailing Mr. Wu to discuss David's upcoming trip to China and the baby formula David would be bringing to give to Mr. Wu.  Ex. 57 (INFINITY_072223-INFINITY_072230).

**Plaintiff's Response:** Undisputed for purposes of summary judgment.

144.   Ms. Li's signature block in that email exchange reads: "Catherine Li IWP/Sunco Inc. Imports/Purchasing Dept." Ex. 57 (INFINITY_072223- INFINITY_072230).

**Plaintiff's Response:** Undisputed for purposes of summary judgment.

145.   Likewise, an email exchange from January of 2018 discussing yet another trip by David to China, Ms. Li's signature block shows her as representing "IWP/Sunco Inc. Imports/Purchasing Dept." Ex. 58 (INFINITY_072231- INFINITY_072235).

**Plaintiff's Response:** Undisputed for purposes of summary judgment.

146.   In that email exchange, Ms. Li explained to Mr. Wu that David would be visiting China again, and would "get there earlier on December 18th to go to the factory to discuss work matters." Ex. 58 (INFINITY_072231- INFINITY_072235).

**Plaintiff's Response:** Undisputed for purposes of summary judgment.

147.   Mr. Wu claims he did not know "what kind of matters" would be discussed. Doc. No. 199-12 (G. Wu Dep. Vol. II) at 216:2-12.

**Plaintiff's Response:** Undisputed for purposes of summary judgment.

148.   Catherine Li was not the only employee with the signature block "IWP/Sunco Inc. Imports/Purchasing Dept." Ex. 59 (INFINITY_017157; Ex. 60 (INFINITY_019384).

**Plaintiff's Response:** Undisputed for purposes of summary judgment.

149.   Employee Leon Mo also had the same signature, including in emails with Sunco China. Ex. 59 (INFINITY_017157; Ex. 60 (INFINITY_019384).

**Plaintiff's Response:** Undisputed for purposes of summary judgment.

150.   Dozens of emails from IWP to Sunco China contained this signature block. Ex. 60 (INFINITY_019384); Ex. 61 (INFINITY_020445); Ex. 62 (INFINITY_019657); Ex. 63

5084389_1

(INFINITY_019383); Ex. 64 (INFINITY_020932); Ex. 65 (INFINITY_020257); Ex. 66 (INFINITY_020317).

**Plaintiff's Response:** Undisputed for purposes of summary judgment.

151.    Plaintiff can cite no evidence of thin capitalization in 2011 and, indeed, the test of time shows that IWP was adequately capitalized to operate for years.

**Plaintiff's Response:** Disputed. Plaintiff's expert report opines, on P6/para 1 addresses this issue. It reads,

"1. Inadequate Capitalization. The financial records indicate that IWP was thinly capitalized and did not possess sufficient capital to operate independently.

- In Paid-in capital recorded was only $20,722.36, and cash balance was approximately $19,785.61, demonstrating severe undercapitalization from inception. (F0102)

- There are no material fixed assets or long-term liabilities shown on the financial statements, suggesting IWP did not maintain operating infrastructure, inventory, or separate business assets that a genuine manufacturing or distribution company would require." (*See* Ex. 39, Plaintiff Expert Report and attachment to report).

152.    IWP made yearly filings with the Massachusetts Secretary of the Commonwealth, kept a separate bank account, separate accounting records, had an operating agreement, and prepared necessary tax documents,. *See, e.g.,* Ex. 3 (D. Sun Dep. Vol. I) at 156:16-67:10; Ex. 6 (S. Yuan-Sun Dep.) at 118:16-20, 121:2-9; Ex. 22-25 (Sunco and Affiliates Consolidated Financial Statements); Ex. 44 (S. Yuan-Sun Aff.); Ex. 49 (IWP Annual Report); Ex. 52 (IWP Operating Agreement); Ex. 53 (Massachusetts Secretary of the

5084389_1

Commonwealth Business Entity Summary); Ex. 75 (IWP General Ledger Report excerpts); Ex. 86 (IWP Schedule C).

**Plaintiff's Response:** Disputed. Object to David Sun's depo I, 156:16-67:10, neither 156:16 nor 67:10 supports the conclusion.

**<u>Sunco US's Lease of Warehouse Space</u>**

153.    Sunco US charged IWP a fee for the use of Sunco US's employees, a fee that was accurately reflected in both Sunco US's and IWP's records.  Ex. 3 (D. Sun Dep. Vol. I) at 155:5-18.

**Plaintiff's Response:** Disputed. The record cited by Defendants does not support the fact.

154.    Plaintiff finds fault that the entities were "offsetting amounts back and forth," by which Plaintiff is referring to the fact that all intercompany transactions were accounted for in each company's own separate general ledger, which is exactly how corporate separateness is maintained.  Ex. 44 Shillock AFF at ¶¶ 14-21.

**Plaintiff's Response:** Disputed. Plaintiff states that the sole support of this statement is Shillock Yuan-Sun's post-discovery affidavit, which Plaintiff has moved to strike contemporaneously. If the Motion to Strike is granted, this statement has no evidentiary support.

Plaintiff further states that the statement misrepresents Plaintiff's position. Plaintiff's expert noted "significant intercompany balances without supporting operational substance, for example, the trial balance from 2019 to 2023 shows: accounts receivable of $6,745,744.11 from Sunco Inc. related to SUNCO TIMBER (KUNSHAN) SK invoices. And the corresponding liability entry labeled "IWP Balance (Closed AP)" of $6,712,182.11 that the plaintiff has not yet received. (F0103), there was no other operational business activity for these significant

intercompany outstanding balance after 5 years. She further noted that "from an accounting perspective, the preparation of consolidated financial statements reflects that Sunco Inc., and its affiliates were presented as a single economic entity for financial reporting purposes. The elimination of intercompany transactions and balances indicates that, in substance, the affiliated entities were treated as components of one combined reporting group rather than as fully independent stand-alone businesses." (*See* Ex. 39, plaintiff's expert report, page 7, para 4, and page 8 third last para.)

155.    Sunco US leased the warehouse (the "Property") where it operated its business. That property was owned by the Sun Family Trust. Ex. 44 Shillock AFF at ¶ 5.

**Plaintiff's Response:** Disputed. Plaintiff states that the sole support of this statement is Shillock Yuan-Sun's post-discovery affidavit, which Plaintiff has moved to strike contemporaneously. If the Motion to Strike is granted, this statement has no evidentiary support.

156.    Initially, the primary beneficiary of the Sun Family Trust was New Sun Limited Partnership, which I refer to as "NST."  Ex. 44 Shillock AFF at ¶ 5.

**Plaintiff's Response:** Disputed. Plaintiff states that the sole support of this statement is Shillock Yuan-Sun's post-discovery affidavit, which Plaintiff has moved to strike contemporaneously. If the Motion to Strike is granted, this statement has no evidentiary support. Plaintiff further states that the beneficiary of the Sun Family Trust is Infinity Realty Company. Ex. 5, Shillock Depo, 153:13-15.

157.    Sunco US leased the warehouse from NST. Ex. 44 Shillock AFF at ¶ 5.

**Plaintiff's Response:** Disputed. Plaintiff states that the sole support of this statement is Shillock Yuan-Sun's post-discovery affidavit, which Plaintiff has moved to strike contemporaneously. If the Motion to Strike is granted, this statement has no evidentiary support.

86

Plaintiff further states that Defendant testified that Sunco Inc. paid the rent to Infinity Realty Realty Company LLC. (IRC). Ex. 5, Shillock Depo, 128:2-8; 124:10-17.

158.    Sunco US owed monthly rent, calculated based on the per square footage price NST charged an unrelated third party that occupied a portion of the property. Ex. 44 Shillock AFF at ¶ 5; Ex. 67 Citrin_0014122- Citrin_0014152.

**Plaintiff's Response:** Undisputed for purposes of summary judgment.

159.    IRC obtained the interest in the Property from NST in 2013, and in return, IRC granted NST a promissory note. *See* Ex. 44 Shillock AFF at ¶ 5; Ex. 50 at Citrin_0002132- Citrin_0002134.

**Plaintiff's Response:** Disputed. The record cited does not support this statement.

160.    IRC's purchase of its interest in the property occurred years before any of the cabinets at issue in this litigation were manufactured and shipped by Plaintiff. *See* Ex. 44 Shillock AFF at ¶ 5; Ex. 50 at Citrin_0002132.

**Plaintiff's Response:** Disputed. The record cited does not support this statement.

161.    When Sunco US paid rent, it was recorded in Sunco US's book as a decrease in the "rent payable" liability to IRC and a corresponding decrease in cash, per accounting rules. Ex. 44 Shillock AFF at ¶¶ 14-20.

**Plaintiff's Response:** Disputed. Plaintiff states that the sole support of this statement is Shillock Yuan-Sun's post-discovery affidavit, which Plaintiff has moved to strike contemporaneously. If the Motion to Strike is granted, this statement has no evidentiary support. If the affidavit is not stricken, Plaintiff reserves the right to supplement its response, as Shillock's complex accounting analysis requires review by Plaintiff's own accounting expert.

162.    IRC would use those rental payments to make payments on the promissory note to NST and would accurately record the transaction as a decrease in its rent receivable asset and a corresponding decrease in its promissory note payable liability, balancing assets and liabilities.  Ex. 44 Shillock AFF at ¶¶12-27.

**Plaintiff's Response:** Disputed. Plaintiff states that the sole support of this statement is Shillock Yuan-Sun's post-discovery affidavit, which Plaintiff has moved to strike contemporaneously. If the Motion to Strike is granted, this statement has no evidentiary support. If the affidavit is not stricken, Plaintiff reserves the right to supplement its response, as Shillock's complex accounting analysis requires review by Plaintiff's own accounting expert.

163.    NST would also accurately record the transaction on its books, recording an increase in its cash asset and a decrease in its promissory note receivable asset, ensuring balance sheet balance and accuracy. Ex. 44 Shillock AFF at ¶¶12-27.

**Plaintiff's Response:** Disputed. Plaintiff states that the sole support of this statement is Shillock Yuan-Sun's post-discovery affidavit, which Plaintiff has moved to strike contemporaneously. If the Motion to Strike is granted, this statement has no evidentiary support. If the affidavit is not stricken, Plaintiff reserves the right to supplement its response, as Shillock's complex accounting analysis requires review by Plaintiff's own accounting expert.

164.    Shillock's affidavit explains in detail the accounting entries made at the time of the transactions, which show that the economic substance of the transactions was that Sunco, Inc. paid rent to Infinity Realty, which made payments to New Sun LP on the note payable from the 2013 sale of the beneficial interest in the trust that owned the warehouse; and New Sun LP made distributions to Linda Sun, its limited partner.  *See* Ex. 44 (S. Yuan-Sun Aff.) ¶¶ 10-34.

5084389_1

**Plaintiff's Response:** Disputed. Plaintiff states that the sole support of this statement is Shillock Yuan-Sun's post-discovery affidavit, which Plaintiff has moved to strike contemporaneously. If the Motion to Strike is granted, this statement has no evidentiary support. If the affidavit is not stricken, Plaintiff reserves the right to supplement its response, as Shillock's complex accounting analysis requires review by Plaintiff's own accounting expert.

165.    The "Advance to Linda" account existed on Sunco US's books long before the cabinet orders at issue in this case. *See, e.g.*, Ex. 68 (Citrin_0015291 at 6172).

**Plaintiff's Response:** Disputed. Record does not show the account is "Advance to Linda", nor does it indicate these are all advances to Linda from all relative times, including before and after 2019.

166.    Likewise, the monthly management fees entities paid to Sunco US were in place long before the cabinet orders at issue in this case. *See, e.g.*, Ex. 69 (Citrin_0031883 at Citrin_0031884); Ex. 70 (Citrin_0031689 at Citrin_0031693).

**Plaintiff's Response:** Undisputed for purposes of summary judgment.

167.    All the transactions complained of are legitimate transactions. *See* Ex. 44 (S. Yuan-Sun Aff.).

**Plaintiff's Response:** Disputed. Plaintiff hereby incorporate its previous disputes and objections from paragraph 153 to 166. Plaintiff states that the sole support of this statement is Shillock Yuan-Sun's post-discovery affidavit, which Plaintiff has moved to strike contemporaneously. If the Motion to Strike is granted, this statement has no evidentiary support. Plaintiff further states that the record cannot support this conclusory statement.

**Plaintiff's (Non)Testimony Regarding Factual Bases for Fraudulent-Transfer and Reach-and-Apply Claims**

89

168.    When asked if IWP transferred any assets to any entity other than Sunco US, Plaintiff could not or would not answer. Doc. No. 199-6 (B. Zhao Dep. Vol. I) at 133:10-134:3; 141:10-16).

**Plaintiff's Response:** Disputed. Mr. Zhao responded that Infinity sold the cabinets to Sunco US who then sold the cabinets to a few other defendants, as the depo transcript shows. Doc. No. 199-6 (B. Zhao Dep. Vol. I) at 133:10-134:3). FRCP 56(c)(1)(A) permits a party to "cite to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials", it does not require a party witness to personally testify every fact. Furthermore, Plaintiff counsel objected at Mr. Zhao's depo and Motion to Sanction hearing that the document produced by Defendants that are relevant to pierce corporate veil and fraudulent claims are voluminous consisting of majority are financial and accounting documents and that plaintiff's expert would analyze and provide an opinion, which was provided to Defendants in December, 2025, and it is unrealistic and unfair to require a witness to verbalize the specific facts which are represented by numbers and financial transactions (Doc. No. 199-6, Zhao, Depo, II, 169:8-17; Sanction Hearing dated March 4, 2026, 43:9-44:7)

169.    When asked if Plaintiff was alleging that Sunco US transferred any cabinets to any other entity, Plaintiff could not or would not answer.  Doc. No. 199-6 (B. Zhao Dep. Vol. I) at 134:4-144:11.

**Plaintiff's Response:** Disputed. Mr. Zhao responded that Infinity sold the cabinets to Sunco US who then sold the cabinets to a few other defendants, as the depo transcript shows. Doc. No. 199-6 (B. Zhao Dep. Vol. I) at 133:10-134:3). FRCP 56(c)(1)(A) permits a party to "cite to particular parts of materials in the record, including depositions, documents, electronically stored

5084389_1

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials", it does not require a party witness to personally testify every fact. Furthermore, Plaintiff counsel objected at Mr. Zhao's depo and Motion to Sanction hearing that the document produced by Defendants that are relevant to pierce corporate veil and fraudulent claims are voluminous consisting of majority are financial and accounting documents and that plaintiff's expert would analyze and provide an opinion, which was provided to Defendants in December, 2025, and it is unrealistic and unfair, or the law does not require a witness to verbalize the specific facts which are represented by numbers and financial transactions that would be analyzed by an expert (Doc. No. 199-6, B. Zhao, Depo, II, 169:8-17; Sanction Hearing dated March 4, 2026, 43:9-44:7)

> 170.    Plaintiff either refused to prepare to answer or simply refused to answer outright any questions about the factual basis for its fraudulent transfer claims other than to make a generalized claim that Sunco US sold cabinets to "other small companies beneath it." Doc. No. 199-6 (B. Zhao Dep. Vol. I) at 134:4-12.

**Plaintiff's Response:** Disputed. FRCP 56(c)(1)(A) permits a party to "cite to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials", it does not require a party witness to personally testify every fact. Furthermore, Plaintiff counsel objected at Mr. Zhao's depo and Motion to Sanction hearing that the document produced by Defendants that are relevant to pierce corporate veil and fraudulent claims are voluminous consisting of majority are financial and accounting documents and that plaintiff's expert would analyze and provide an opinion, which was provided to Defendants in December, 2025, and it is unrealistic and unfair to require a witness

to verbalize the specific facts which are represented by numbers and financial transactions (Doc. No. 199-6, Zhao, Depo, II, 169:8-17; Sanction Hearing dated March 4, 2026, 43:9-44:7)

171.    When Plaintiff was asked if it alleged any fraudulent transfer of any asset other than cabinets, Plaintiff again could not or would not answer.  Doc. No. 199-6 (B. Zhao Dep. Vol. I) at 134:4-144:11.

**Plaintiff's Response:** Disputed. FRCP 56(c)(1)(A) permits a party to "cite to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials", it does not require a party witness to personally testify every fact. Furthermore, Plaintiff counsel objected at Mr. Zhao's depo and Motion to Sanction hearing that the document produced by Defendants that are relevant to pierce corporate veil and fraudulent claims are voluminous consisting of majority are financial and accounting documents and that plaintiff's expert would analyze and provide an opinion, which was provided to Defendants in December, 2025, and the law does not require a witness to verbalize the specific facts which are represented by numbers and financial transactions analyzed by an expert (Doc. No. 199-6, B. Zhao, Depo, II, 169:8-17; Sanction Hearing dated March 4, 2026, 43:9-44:7)

172.    That real estate had been in Sun Trust's possession since 1992, long before any of the issues in this case, and cannot therefore have been acquired as a result of a fraudulent transfer.  Ex. 71 (Citrin_0002148).

**Plaintiff's Response:** Disputed. Plaintiff's expert opines that Sunco Inc.'s inappropriate conduct in disposing assets and accounting practices may have enhanced value of the real property and

contributed to its capital gain on the sale. Ex. 39, Plaintiff Expert Report, P7, para 1 and attachment marked F0201.

173.   The property was sold to a bona fide third-party purchaser, for reasonable value. Ex. 72 (First Amendment to Purchase and Sale Agreement).

**Plaintiff's Response:** Undisputed for purposes of summary judgment.

174.   Plaintiff also complains about checks written by Sunco US either directly to Linda or on Linda's behalf.  Those checks were distributions to Linda as the largest limited partner in NST, and were taken out of NST's funds, not Sunco US's.[14] *See* Ex. 44 (S. Yuan-Sun Aff.).

**Plaintiff's Response:** Disputed. As Yuan-Sun's affidavit and screenshots of financial transactions indicate that monies were advanced to Linda from Sunco Inc. and NST. Defendants have not produced complete records to show that Linda returned the advances. In addition, the alleged return of the advances was usually processed through different financial transactions with multiple entities including Sunco Inc. IRC, NST, all of which are controlled and/or managed by David and/or Linda. This is a classical intermingling of corporate assets, which is one of the key elements for piercing corporate veil. Ex. 44 (S. Yuan-Sun Aff., para 44).

175.   As IWP had done for years prior to the events at issue here, IWP transferred cabinets to Sunco US in exchange for a promise to pay, reflected on IWP's books as accounts receivable. Ex. 73 (Citrin_0049165-69); Ex. 43 (Citrin_0066421-424); Ex. 75 (From Citrin_0065517-20).

---

[14] Sunco US was NST's general partner and therefore administrated the partnership.  As set forth above, as is typical in related-party transactions, cash would often move directly to its end recipient rather than be sent through multiple entities' bank accounts, but the proper accounting was done for each transaction, and the funds disbursed to Linda were debited to her account as a limited partner in NST.  *See* Ex. 44 (S. Yuan-Sun Aff.).

**Plaintiff's Response:** Disputed. Defendants only referenced three pieces of evidence to support a position for alleged financial transaction patterns extended for years. It cannot be said that IWP always transferred cabinets to Sunco Inc. in exchange for a promise to pay. For this $6.7 million worth of cabinets at issue, there is no exchanged promise to pay.

176.    When Sunco China, QiYi, and Sunco US reached agreement on the alternative payment structure for QiYi's purchase of Sunco China shares, the payable IWP owed Sunco China was forgiven in exchange for IWP's forgiveness of the payable Sunco US owed IWP.  Ex. 42 (D. Sun Aff.)  at ¶¶ 13-17.

**Plaintiff's Response:** Disputed. During David's deposition, David testified that the offset agreement was reached "[a]round 2016, '17." (*See* Ex. 3.D. Sun Depo. Vol I at 43:16–17). When confronted with the fact that it was impossible to agree in 2016 or 2017 to offset specific cabinets that were not ordered until 2018 or 2019, David admitted: "The agreement from 2016 or '17 didn't specify any cabinets." (*Id*. at 45:22–24). He further testified that Infinity paid for the cabinets it ordered up to 2018, and that regarding the unpaid invoices after 2018, Infinity "didn't decide not to pay," but rather the invoices were simply "not owed" because of "this deal." (*Id*. at 45:8–11; 46:14–23). David's affidavit shifts the timeline by three years. The affidavit now claims that Linda met with Mr. Wu in the "spring of 2019," and that "[a]fter that meeting, Linda informed me that IWP did not have to pay the invoices at issue in this case."

Furthermore, Mr. Wu testified that he and Linda entered into offset agreements to use his tremendous effort to make the change for Sunco China's environment compliance to offset Jiangsu Qiyi's outstanding payment of CNY 15 million for share transfer in Sunco China. Doc. No. 199-12 (Wu Depo. Vol. II at 289:2-24: 290:1). In addition, the 2021 Arbitral Award form Shanghai International Arbitration Center found that the offset agreements are valid and ruled that Jiangsu

94

Qiyi did not owe Sunco Inc./Linda Sun any share payment. Doc. No. 223-17 (Ex. 15, page 79, 2nd para, page 66, 4 – page 67, Page 81, VI, 1 – Page 84, 2nd last sentence).

Therefore, plaintiff has sufficient evidence to support that the consideration for the outstanding CNY 15 million payment for Jiangsu Qiyi's share purchase is, indeed, Mr. Wu's tremendous effort in obtaining environment permits or alternatively bringing Sunco China back to environmental compliance.

177.    The "assets" to which Plaintiff refers are the cabinets, none of which is in Sunco US's possession.  Ex. 74 at 11.

**Plaintiff's Response:** Disputed. Plaintiff does not find the word "assets" on Ex 74, at 11.

178.    The payables that are the subject of this litigation were forgiven by Sunco China as a result of Mr. Wu's company's failure to pay the outstanding balance on its purchase of 52 percent of Sunco China's shares from Sunco US.  Ex. 42 (D. Sun Aff.) at ¶¶ 13-17.

**Plaintiffs Response:** Disputed. See Plaintiff's response to 176.

179.    Mr. Wu's company, QiYi, purchased 52 percent of the shares of Sunco China from Sunco US, with installment payments due over the subsequent years.  Doc. No 223-16 (Plaintiff's Exhibit 14) at p. 9.

**Plaintiff's Response:** Undisputed for purposes of summary judgment.

180.    QiYi failed to make any of those payments.  Doc. No. 223-3 (Plaintiff's Exhibit 1) (L. Sun Dep. Vol. I) at 77:11-23

**Plaintiff's Response:** Disputed. Jiangsu Qiyi made the first payment in June of 2014. Doc. No. 199-12 (Wu Depo. Vol. II,147:22-23). In addition, the 2021 Arbitral Award from Shanghai International Arbitration Center found that Jiangsu Qiyi paid the first CNY 5 million to Sunco

95

Inc./Linda Sun and that Linda issued the notice acknowledging Qiyi's payment. Doc. No. 223-17 (Doc. No. 223-17, P85/92, second last paragraph).

181. After Linda repeatedly attempted to get QiYi to pay the amounts due, it was *Mr. Wu* who approached Linda with a proposal that forgiveness of payables for cabinets would be used as payment because Mr. Wu claimed he did not have the liquidity to make the cash payments he was obligated to make. Ex. 42 (D. Sun Aff.) at ¶ 13; Doc. No. 223-4 (Plaintiff's Exhibit 2) (L. Sun Dep. Vol. II) at 47:9-50:22.

**Plaintiff's Response:** Disputed. See plaintiff's response to 176.

182. Mr. Wu informed Linda that he would need to apply for government permission to do so, and Linda awaited such approval, but an agreement had been reached. Doc. No. 223-3 (Plaintiff's Exhibit 1) (L. Sun Dep. Vol. I) at 96:22-98:7; Doc. No. 223-4 (Plaintiff's Exhibit 2) (L. Sun Dep. Vol. II) at 50:5-22.

**Plaintiff's Response:** Disputed. The record cited does not support that "an agreement had been reached". Furthermore, see Plaintiff's response to 176.

183. When Defendants sought discovery into the counterclaim loan, Plaintiff insisted, repeatedly, that it had no documents evidencing any loan either from Sunco US or Linda[15] notwithstanding that it, in fact, had recently filed documents in its litigation against Linda in China that made explicit reference to amounts owed to Linda and notwithstanding that Plaintiff's Rule 30(b)(6) witness testified that the line item for the loan reflected as being

---

[15] Plaintiff represented to the Court that "Plaintiff has looked for any unidentified and undocumented loans by Linda Sun to Plaintiff and have found that no such loans existed and that there are no documents referring to any such loans." Doc. No. 132 at 3. Accordingly, the Court denied that portion of Defendants' motion to compel "as Plaintiff has represented that it conducted a thorough search for any loans by Linda Sun and have not found any." Doc. No. 136.

from Linda to Plaintiff would be on every single financial statement going back to at least 2015.  Doc. No. 199-17 at p. 12-13; Doc No. 199-57 at p. 5.

**Plaintiff's Response:** Disputed. Plaintiff objects to the statement "in fact, had recently filed documents in its litigation against Linda in China that made explicit reference to amount owed to Linda", because it is not supported by the records cited. Furthermore, Plaintiff 30(b)(6) witness Mr. Zhao testified that the 2014 share transfer agreement, section 3.7 and 3.12 set forth that Sunco Inc/Linda Sun shall be liable for any liabilities to Sunco China when they occurred before the transfer. (Doc. No. 199-7, Zhao Depo, Vol. II, 173:7-16, 178 – 180:1; 289:5-10. Doc. No. 223-16, Ex 14, section 3.7 and 3.12).

184.    The only reason there is not more documentary evidence of the loan is because Plaintiff unilaterally decided, notwithstanding its repeated, emphatic representations to the Court to the contrary, that it would not search and produce any documents relating to the loan because Plaintiff did not, in its unilateral opinion, need to pay such loan and it was therefore not "relevant."  Doc No. 199-57 at p. 5.

**Plaintiff's Response:** Disputed. Plaintiff disputed the existence of the alleged loan extended by Sunco Inc. to Sunco China, as pled by the defendants.

185.    Adding insult to injury, when Defendants complained that such documents were not produced, Plaintiff claimed that Linda Sun had purportedly destroyed all such documents (Doc. No. 204 at 17), omitting the fact that Plaintiff filed a *2019* audited financial statement – a document that necessarily was created long after Plaintiff claims Linda left Sunco China in the summer of 2019 – in court in China in its legal action against Linda that explicitly makes reference to such loan.  Doc. No. 199-7 (B. Zhao Dep. Vol. II) at 287:24-292:4.

5084389_1

**Plaintiff's Response:** Disputed in part and undisputed in part. Plaintiff witness Mr. Zhao testified that Linda Sun destroyed documents before her eventful flee back to the U.S. (Doc. No. 199-7, Zhao Depo. Vol. II, 197:9-24 – 198:8.) Remaining undisputed for the purposes of summary judgment.

186.    Plaintiff never produced that 2019 audited financial statement in this case and Sunco US is only aware of it because of its use by Plaintiff against Linda in China.  Doc. No. 199-7 (B. Zhao Dep. Vol. II) at 289:16-296:19.

**Plaintiff's Response:** Disputed. The record does not support that Sunco US is "only aware of it" because Plaintiff used it against Linda in China. Plaintiff further states that the meaning of "against Linda in China" is vague and ambiguous.

187.    There is also a "Request for Confirmation of Balances" sent by Plaintiff's independent auditor to Linda asking Linda to confirm that Plaintiff had an outstanding payable to Linda of nearly 21 million RMB.  Ex. 76 (LS000048).

**Plaintiff's Response:** Undisputed for purposes of summary judgment.

188.    Plaintiff's Rule 30(b)(6) witness testified regarding QiYi's acquisition of shares in Sunco China and whether there was any litigation or arbitration concerning it, and he testified that that "[r]egarding arbitration, I don't have a clear understanding of it," notwithstanding that one of the Rule 30(b)(6) topics for which he was the designated witness was "Litigation or arbitration between Sunco China and any defendant in this case, including…litigation or arbitration concerning the Share Acquisition," i.e., QiYi's acquisition of shares in Sunco China.  Doc. No. 199-7 (B. Zhao Dep. Vol. II) at 301:17-302:18; Doc. No. 199-5 at p. 5-10.

5084389_1

**Plaintiff's Response:** Undisputed for purposes of summary judgment. However, Mr. Zhao answered at one point that it makes more sense to ask parties of the share transfer agreement to testify on certain subjects of the share transfer, and Defendants counsel agreed by stating, "fair enough". (Doc. No. 199-6, Zhao Depo, II, 299:24). Plaintiff further stated that Mr. Wu testified not only the existence of the 2019-2021 arbitration and that the arbitration award found that the two offset agreements between him and Linda are valid and binding, and Jiangsu Qiyi did not owe share transfer money to Sunco Inc./Linda (No. 199-12, Wu Depo. Vol. II, at164:17-165:7, 289:2-24: 290:1).

189.    Regarding any amendments to the share transfer agreement, Plaintiff's Rule 30(b)96) witness testified that he was "not sure about" whether any occurred and that he was not the right person to ask.  Doc. No. 199-7 (B. Zhao Dep. Vol. II) at 300:15-301:16.

**Plaintiff's Response:** Disputed because Defendants omitted "October of 2014" in Mr. Zhao's testimony. Defendants asked if there is any amendment to the share transfer agreement after the one dated October of 2014, defendants' response was he was not sure and directed defendants counsel to ask the parties [to the share transfer agreement].

99

5084389_1

Dated: May 27, 2026

DAVID SUN, SHILLOCK YUAN-SUN, INFINITY WOOD PRODUCTS, LLC, SUNCO, INC., EASTMAN ST. DISTRIBUTORS LLC, EASTMAN ST. WOODWORKS, INC., and INFINITY REALTY COMPANY LLC

By their attorneys:

*/s/ Michele E. Connolly*

Peter E. Ball (BBO No. 546031)
Michele E. Connolly (BBO No. 680946)
Malgorzata A. Mrózek (BBO No. 699035)
FITCH LAW PARTNERS LLP
84 State St.
Boston, MA 02109
(617) 542-5542
peb@fitchlp.com
mec@fitchlp.com
mam@fitchlp.com

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 27, 2026.

*/s/ Malgorzata A. Mrozek*
Malgorzata A. Mrozek

100

5084389_1

**DATED:  July 1, 2026**

PLAINTIFF
Sunco Timber (Kunshan) Co., Ltd.
By its attorneys,

*/s/Yun Cheng*
Connie C. Dai (BBO#683330)
Yun Cheng (BBO# 707028)
Lion's Law, P.C.
154 Wells Ave
Newton, Massachusetts 02459
(617) 232-7503 Telephone
(781) 207-8574 Fax
connie@lionslawgroup.com
yun@lionslawgroup.com

*/s/Timothy K. Cutler*
Timothy K. Cutler (BBO#636124)
CUTLER & WILENSKY LLP
20 Walnut Street, Suite 1
Wellesley, Massachusetts 02481
(617) 232-7500 Telephone
tim@cutlerlegal.com

5084389_1