**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| SUNCO TIMBER (KUNSHAN) CO., LTD.<br>    Plaintiff,<br><br>v.<br><br>LINDA SUN, et. al.,<br>    Defendants. | **Civil Action No. 1:22-cv-10833 MJJ** |

**MOTION TO STRIKE/EXCLUDE**

Plaintiff Sunco Timber (Kunshan) Co., Ltd. ("Plaintiff" or "Sunco China") respectfully submits this Motion to Strike.

**INTRODUCTION**

Faced with deposition testimony that forecloses their only defense, Defendants have responded at the summary judgment stage with a coordinated set of late-breaking submissions designed to manufacture the factual disputes their own sworn testimony could not support. Linda Sun, David Sun, and Shillock Yuan-Sun each submitted post-discovery affidavits that contradict their own deposition testimony or supply, for the first time, detailed explanations they professed not to know during discovery. Defendants also disclosed an expert, Mr. Lewis, on a subject and for a purpose they never identified during the expert discovery period, and now seek to introduce a 2026 Chinese arbitral award that is irrelevant to the claims before this Court, inadmissible hearsay, and the subject of a pending appeal. Each of these submissions violates a distinct and well-established rule of procedure or evidence, and each should be stricken for the reasons set forth below.

Specifically, Plaintiff moves to strike or exclude: (1) the post-discovery affidavits of Linda Sun (Doc. No. 231), David Sun (Doc. No. 238-2), and Shillock Yuan-Sun (Doc. No. 238-4), each

of which contradicts the affiant's prior sworn deposition testimony and/or supplies information that was never disclosed during discovery; (2) the Declaration of Donald J. Lewis (Doc. No. 243), which was never disclosed under Rule 26(a)(2), addresses a subject Defendants never identified during the expert discovery period, and was filed solely to attack evidence — the 2021 SHIAC Arbitration Award — that Defendants have known about for years; and (3) the 2026 Arbitration Award submitted by Defendants in support of their motion to strike, which is irrelevant to the claims and defenses in this case, is not a final award, carries prejudicial effect that far outweighs any probative value, and — under the very hearsay theory Defendants advance in their own motion to strike — is inadmissible for the same reasons Defendants claim the 2021 Award is inadmissible.

## LEGAL STANDARD FOR MOTION TO STRIKE

Rule 56(c)(2) permits a party to object that material cited to support or dispute a fact "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Rule 56(c)(4) further provides that an affidavit or declaration used to support or oppose a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id*. at 56(c)(4). Accordingly, evidence that would be inadmissible at trial, including hearsay statements, assertions not based on personal knowledge, or statements that do not show the declarant's competence to testify to the matters asserted, may not be considered in determining the evidentiary record before the Court. See *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49–50 (1st Cir. 1990) (holding that summary judgment materials must be based on personal knowledge, set forth admissible facts, and show competence to testify, and that inadmissible hearsay cannot be considered on summary judgment).

A motion to strike is the appropriate means of objecting to the use of affidavit evidence submitted in connection with a motion for summary judgment. *Facey v. Dickhaut*, 91 F. Supp. 3d

12, 19 (D. Mass. 2014) (citing *Casas Off. Machs., Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 682 (1st Cir. 1994)). "The moving party must specify the objectionable portions of the affidavit and the specific grounds for objection. Furthermore, a court will disregard only those portions of an affidavit that are inadmissible and consider the rest of it." *Id*. at 19-20 (quoting *Casas*, 42 F.3d at 682).

**ARGUMENT**

I.     **LINDA, DAVID, AND SHILLOCK YUAN-SUN'S AFFIDAVITS SHOULD BE STRICKEN/EXCLUDED**

A.     **<u>Legal Standard</u>**

The "sham-affidavit" doctrine prevents a party from manufacturing a factual dispute at summary judgment by submitting an affidavit that clearly contradicts prior sworn testimony. *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir. 1994). "When an interested witness has given clear answers to unambiguous questions," the witness "cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Id.* at 4. The First Circuit applies this rule to prevent parties from "manufactur[ing] a dispute of fact by contradicting [their] earlier sworn testimony without a satisfactory explanation of why the testimony is changed." *Escribano-Reyes v. Prof'l Hepa Certificate Corp.*, 817 F.3d 380, 386 (1st Cir. 2016).

In determining whether a later affidavit should be disregarded, the Court may consider the timing of the affidavit, whether the affidavit was executed after summary judgment was filed, and whether the affiant provides a satisfactory explanation for the change in testimony. *Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc.*, 447 F.3d 105, 110–11 (1st Cir. 2006).

Apart from the sham-affidavit doctrine, Rule 56(c)(4) requires an affidavit or declaration used to support or oppose summary judgment to be based on personal knowledge, set out facts that

3

would be admissible in evidence, and show that the affiant or declarant is competent to testify. Fed. R. Civ. P. 56(c)(4). Affidavit statements based on speculation, conclusory assertions, information and belief, or matters outside the affiant's personal knowledge are not competent summary judgment evidence. *Perez v. Volvo Car Corp.*, 247 F.3d 303, 315–17 (1st Cir. 2001).

To the extent a party seeks to use an affidavit to supply information or identify a witness that was required to be disclosed under Rule 26(a) or supplemented under Rule 26(e), Rule 37(c)(1) bars the party from using that information or witness to supply evidence on a motion, unless the failure was substantially justified or harmless. Fed. R. Civ. P. 26(e); Fed. R. Civ. P. 37(c)(1).

### B.    Linda Sun's Affidavit ¶¶ 10 And 11 Should Be Stricken

Linda Sun's affidavit [**Docket 231**] is a classic sham affidavit designed to manufacture factual disputes that she expressly disclaimed during her deposition. It should be stricken under both the sham affidavit doctrine and Rule 56(c)(4).

First, Linda's affidavit directly contradicts her deposition testimony regarding her knowledge of and involvement in the nonpayment of the invoices at issue. In her affidavit, Linda claims:

> "I had a conversation at some point with David at which I expressed my view, based on a discussion I had had with Wu Guoqing, that because Mr. Wu and I had agreed that money owed for acquisition of Sunco Inc.'s 52% interest in Sunco China could be set off against money owed to Sunco China for the purchase of cabinets, the invoice for cabinets at issue in this case could be applied to that agreement." (Linda Aff. ¶11, **Docket 231**).

This detailed narrative cannot be reconciled with her sworn deposition testimony. When asked unequivocally whether she ever had discussions with David about why Infinity had not paid for the cabinets, Linda answered: "No." (Linda Depo. Vol I. 98:10–19, **Docket 233-3**). When pressed further on when the decision was made not to pay for the cabinets, Linda testified: "I don't know, because no one was looking for me. No one look for me to say it or talk about it. I thought

everything was normal. I did not know." (Linda Depo. Vol II. 53:4–54:14, **Docket 233-4**). Linda cannot transform her sworn ignorance ("I did not know") into an affirmative, detailed account of an offset agreement simply because summary judgment is pending. *Colantuoni*, 44 F.3d at 4–5.

Furthermore, the timing of Linda's affidavit compounds the problem. Linda submitted this new narrative as an exhibit at the summary-judgment stage and provided no explanation for why her affidavit now supplies details that she disclaimed under oath during her deposition; timing and lack of a satisfactory explanation are factors a court may consider in determining whether a later-submitted affidavit should be disregarded. *Orta-Castro v. Merck, Sharp & Dohme Química P.R., Inc.*, 447 F.3d 105, 110–11 (1st Cir. 2006)

Second, Linda's affidavit attempts to recast the nature of the purported 21 million RMB (around $3 million) intercompany "loan" in a manner that contradicts her prior testimony. Her affidavit states:

> "In 2011, I told David that Sunco China needed a loan to cover its expenses. I understand that because Sunco China needed the loan, Sunco, Inc. decided to lend money to Sunco China." (Linda Aff. ¶10, **Docket 231**).

However, at her deposition, Linda described a fundamentally different scenario—a pattern of continuous fund injections starting in 2009 because the factory "was being in the loss," rather than a discrete 2011 loan decision. (Linda Depo. Vol I. 140:17–24, **Docket 233-3**). When asked about documentation for this purported 21 million RMB debt, she admitted she had no personal knowledge: "I never read any of those because I was in the factory," and stated she only knew about it because "[t]hey told me so." (Id. 141:14–17). Linda's affidavit testimony on this topic thus also fails the personal knowledge requirement of Rule 56(c)(4) and contradicts her deposition admissions.

### C.    <u>David Sun's Affidavit ¶¶ 10, 16, And 17 Should Be Stricken</u>

David Sun's affidavit [**Docket 238-2**] is equally problematic, as it strategically alters critical timelines and facts to cure logical impossibilities exposed during his deposition.

First, David's affidavit presents a sham contradiction regarding the timeline of the purported offset agreement. During his deposition, David testified that the offset agreement was reached "[a]round 2016, '17." (David Depo. Vol II. 43:16–17, **Docket 223-6**). When confronted with the fact that it was impossible to agree in 2016 or 2017 to offset specific cabinets that were not ordered until 2018 or 2019, David admitted, "The agreement from 2016 or '17 didn't specify any cabinets." (Id. 45:22–24). He further testified that Infinity paid for the cabinets it ordered up to 2018, and that regarding the unpaid invoices after 2018, Infinity "didn't decide not to pay," but rather the invoices were simply "not owed" because of "this deal." (Id. 45:8–11; 46:14–23).

Realizing that a vague 2016 agreement cannot logically justify the targeted nonpayment of specific 2018–2019 invoices, David's affidavit shifts the timeline by three years. The affidavit now claims that Linda met with Mr. Wu in the "spring of 2019," and that "[a]fter that meeting, Linda informed me that IWP did not have to pay the invoices at issue in this case." (David Aff. ¶¶16–17, **Docket 238-2**). This timeline shift is a transparent attempt to manufacture a defense that his deposition testimony foreclosed.

Accordingly, David's affidavit suffers from the same timing defect as Linda's. Similarly, he did not provide any explanation for why his testimony changed, which the Court may consider when deciding whether to disregard his affidavit. *Orta-Castro,* 447 F.3d at 110–11.

Second, David's affidavit contradicts his prior testimony regarding Linda's authority to act on behalf of Sunco US. The affidavit asserts,

> "My mother, Linda, is the one who negotiated the sale of the 52 percent shares to QiYi on Sunco US's behalf. It was also Linda who negotiated with Mr. Wu when QiYi missed its payment deadlines." (David Aff. ¶10, **Docket 238-2**).

6

Yet at his deposition, David explicitly testified that after he acquired 100 percent interest in Sunco Inc., Linda "had no role in SUNCO, Inc." and was not authorized to act in any fashion on behalf of the company. (David Depo. Vol I. 78:6–9; 78:23–79:6, **Docket 223-5**). When asked specifically whether she negotiated the contract on behalf of Sunco Inc., he explicitly answered: "No." (Id. 100:20–101:1). David cannot now submit an affidavit claiming Linda acted on Sunco US's behalf when he unequivocally testified otherwise under oath.

**D.        Shillock's Affidavit Should Be Stricken**

Shillock's 17-page affidavit [**Docket 238-4**] should be stricken in its entirety under Rule 37(c)(1), and specific portions should be stricken under the sham affidavit doctrine and Rule 56(c)(4).

As an initial matter, Rule 37(c)(1) bars Defendants from using Shillock's affidavit to supply the detailed accounting explanations that neither Shillock nor the witness with the most direct knowledge—Linda, the actual recipient of the funds—provided during discovery. At Linda's own deposition, she was shown check after check issued by Sunco Inc. or the Sun Family Trust for her benefit, including specific check numbers and dollar amounts, and asked directly what she understood about why those payments were made. Her answers were uniform: "I have never seen those checks"; "I have no idea"; "I don't know." (Linda Depo. Vol.I at 108:12, 109:6, 109:9, 109:17, 109:24, 110:9, 110:14, 111:1–2, 112:3, 112:11, 112:21, **Docket 223-3**). When asked what she did to investigate the source of these payments after being asked to identify them in interrogatories, Linda testified that she could not reach out to the accountant or the law firm handling the trust because of a "language barrier" and that she "wasn't aware of this issue, so why would I reach out to them?" (Id at 111:7–8, 112:3–4). Shillock, as the financial 30(b)(6) designee, was separately asked about other intercompany transactions and likewise repeatedly answered that she did not

7

know or could not answer without reviewing documents. Defendants never supplemented either witness's testimony under Rule 26(e).

Defendants cannot now use a post-discovery affidavit from Shillock to supply, transaction by transaction, the very explanations that the person who actually received the money could not provide under oath. Shillock's affidavit does not purport to be based on her own contemporaneous knowledge of why each payment was made to Linda; it is a reconstruction, built from books and records after the fact, of a narrative that Linda herself disclaimed any knowledge of at her deposition. To the extent Shillock's affidavit explains the purpose, character, or propriety of specific payments to Linda, Shillock lacks the personal knowledge required by Rule 56(c)(4) to supply that explanation—she is not Linda, and nothing in her affidavit establishes that she had contemporaneous knowledge, as opposed to after-the-fact access to records, of why those particular payments were made. Fed. R. Civ. P. 56(c)(4). If Linda, the actual recipient, could not explain these transactions when asked directly and under oath, the Court should not credit a different witness's litigation-driven effort, submitted only after summary judgment briefing began, to retroactively supply the explanation Linda did not have. That is not harmless. Plaintiff lost the opportunity to examine this accounting narrative at deposition, test the underlying records, seek follow-up discovery, or obtain responsive expert analysis on a narrative that surfaces for the first time after the close of discovery. Rule 37(c)(1) exists to prevent exactly this kind of post-discovery ambush.

Furthermore, Shillock's affidavit contains a direct sham contradiction regarding her own role in managing the entities' bank accounts. At her deposition, she was asked directly: "You managed the bank accounts of SUNCO, Inc.? Correct?" She answered: "No." (Shillock Depo. 113, **Docket 223-7**). Yet her affidavit presents her as the central figure who managed a complex system

of intercompany transfers, directing payments between Sunco Inc., Infinity Realty Company, NST, and Linda.

Finally, the Court's existing sanctions order underscores why Shillock's affidavit cannot be used to supply, after the fact, the explanation that discovery should have produced. On September 28, 2025, this Court sanctioned Plaintiff for its 30(b)(6) designee's failures to adequately testify on noticed topics. The same principle applies with equal force here. Neither Linda, who was asked directly about these specific transactions and disclaimed any knowledge of them, nor Shillock, Defendants' designated witness on financial matters, supplied this accounting narrative during discovery despite having every opportunity to do so. Defendants never supplemented either witness's testimony. They cannot now submit a 17-page post-discovery affidavit, attributed to whichever witness is most convenient, to supply the explanation that the actual recipient of the funds could not give under oath. If Plaintiff's 30(b)(6) failures warranted sanctions, Defendants' parallel conduct—eliciting sworn ignorance from the witness with the most direct knowledge, then producing a comprehensive affidavit from a different witness after discovery closed—warrants exclusion of the offending submission in its entirety.

## II.    DEFENDANTS' EXPERT DECLARATION SHOULD BE STRICKEN/EXCLUDED

### A.    <u>Legal Standard</u>

Rule 26(a)(2) requires a party to disclose the identity of any witness it may use to present expert testimony. Fed. R. Civ. P. 26(a)(2)(A). For a witness retained or specially employed to provide expert testimony, the disclosure must be accompanied by a written report prepared and signed by the witness, containing a complete statement of all opinions the witness will express and the basis and reasons for them, the facts or data considered, any exhibits that will be used, the witness's qualifications, prior expert testimony, and compensation. Fed. R. Civ. P. 26(a)(2)(B).

Expert disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

Expert testimony must also satisfy Rule 702, including that the testimony is based on sufficient facts or data, is the product of reliable principles and methods, and reflects a reliable application of those principles and methods to the facts of the case. Fed. R. Evid. 702. Although an expert may rely on facts or data that are not themselves admissible if experts in the field would reasonably rely on them, those otherwise inadmissible facts or data may be disclosed only if their probative value in helping evaluate the expert's opinion substantially outweighs their prejudicial effect. Fed. R. Evid. 703. Relevant evidence may also be excluded where its probative value is substantially outweighed by unfair prejudice, confusing the issues, misleading the factfinder, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

If a party fails to provide information or identify a witness as required by Rule 26(a) or Rule 26(e), the party "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). When a party fails to comply with Rule 26(a)(2)'s expert-disclosure requirements and cannot show that the failure was substantially justified or harmless under Rule 37(c)(1), preclusion is the baseline sanction. *Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este*, 456 F.3d 272, 276 (1st Cir. 2006) ("the baseline rule is that the required sanction in the ordinary case is mandatory preclusion.").

**B.    The Lewis Declaration Should Be Excluded Because Defendants Never Disclosed Mr. Lewis As An Expert Witness On The Opinions He Now Offers**

The Lewis Declaration [**Docket 243**] should be excluded under Rule 37(c)(1) because Defendants never disclosed, in any form, that they would offer an expert to challenge the validity of the 2021 SHIAC Arbitration Award — evidence Plaintiff relies on in support of its motion for

10

summary judgment, and which Defendants now seek to strike in a separately filed motion to strike. On October 23, 2025, Linda Sun's counsel, Ted Folkman, emailed Plaintiff's counsel to disclose that Defendants intended to rely on one or more experts in Chinese law to support summary judgment on res judicata and claim preclusion based on the 2021 Chinese judgment entered by the Jiangsu court. See **Exhibit 2** attached hereto. Counsel proposed that, consistent with the practice for foreign-law experts, the parties forgo Rule 26(a)(2)(B) expert reports and instead exchange expert declarations limited to that subject. Plaintiff agreed to that narrow, mutually limited arrangement for foreign-law declarations addressing res judicata and the preclusive effect of the Chinese judgment.[1] That disclosure and agreement said nothing about Mr. Lewis or about challenging the validity of the SHIAC's 2021 arbitration. The expert discovery deadline in this case expired months before Defendants submitted the Lewis Declaration.

Mr. Lewis is not the Chinese-law expert Defendants disclosed, and his opinions have nothing to do with the subject Defendants disclosed. He does not identify Chinese law relevant to preclusion or opine on the legal effect of a Chinese arbitral award. Instead, he opines that Sunco US "was denied due process," that the arbitration suffered from multiple "procedural irregularities," that those alleged irregularities indicate "potential bias" by a Mainland Chinese arbitral institution and tribunal against a U.S.-based company, and that the conduct of Sunco US's Chinese counsel "suggests that corruption may have been present." Lewis Declaration ¶¶12–13, 23, 42, **Docket 243**. He also offers baseless assertions about various aspects of the arbitration proceedings, including, among other things: procedural details that "it appears" Sunco US was not informed of, whether SHIAC consulted Sunco US before appointing a Chief Arbitrator (as "confirmed" by David Sun), what occurred during the arbitration hearing, whether the tribunal should have exercised

---

[1] **Exhibit 2**.

its investigatory powers, and why Sunco US allegedly lost the opportunity to seek judicial review. *Id*. ¶¶18–20, 26–28, 35–36, 38, 40.

This is not a late disclosure of a new issue — it is a calculated attempt to discredit evidence Defendants have known about for years. Plaintiff produced the 2021 SHIAC Arbitration Award as evidence years ago, and its existence has never been a secret: Defendants themselves have acknowledged it, and Plaintiff questioned both Linda Sun and David Sun about the Award at their depositions. (*See* L. Sun Dep. Vol. I (Ex. 1) at 99:10-100:14, **Docket 223-3**; D. Sun Dep. Vol. I (Ex. 3) at 157:5-158:10, **Docket 223-5**). For years, Defendants raised no challenge to the Award's validity and disclosed no expert to attack it. Only after Plaintiff moved for summary judgment, and recognizing how damaging the Award is to their only affirmative defense, Defendants suddenly retain Mr. Lewis to manufacture a belated challenge to it. Plaintiff had no notice of this strategy and was deprived of the opportunity to depose Mr. Lewis, test his reliance on David Sun's account, or develop responsive expert evidence during the discovery period when the Award's validity could have been properly litigated. Defendants offer no justification for years of silence followed by a last-minute attack, and the resulting prejudice to Plaintiff is not harmless. Fed. R. Civ. P. 37(c)(1); *Santiago-Díaz v. Laboratorio Clínico y de Referencia del Este*, 456 F.3d 272, 276 (1st Cir. 2006); *Esposito v. Home Depot U.S.A., Inc.*, 590 F.3d 72, 78 (1st Cir. 2009).

Accordingly, the Lewis Declaration should be excluded in its entirety.

C.      **Mr. Lewis' Declaration Improperly Offers Factual Testimony Not Based On His Personal Knowledge**

Mr. Lewis' Declaration should also be excluded or disregarded to the extent it is not based on Mr. Lewis' personal knowledge. A declaration used at summary judgment must be based on personal knowledge, set out facts that would be admissible in evidence, and show that the declarant is competent to testify to the matters stated. Fed. R. Civ. P. 56(c)(4). Although an expert may rely on certain facts or data in forming an opinion, an expert declaration cannot be used as a substitute for admissible testimony from witnesses with personal knowledge.

Here, Mr. Lewis does not identify that he participated in the 2021 arbitration or personally observed the events he describes. Instead, he states that he reviewed the arbitral awards, SHIAC rules, certain PRC laws, and that he had "several conversations with David Sun regarding the SHIAC Arbitration." Lewis Decl. ¶¶ 10–11, **Docket 243**. Based on that review and those conversations, he then assumes facts about: procedural details that "it appears" Sunco US was not informed of, whether SHIAC consulted Sunco US before appointing a Chief Arbitrator (as "confirmed" by David Sun), what occurred during the arbitration hearing, whether the tribunal should have exercised its investigatory powers, and why Sunco US allegedly lost the opportunity to seek judicial review. *Id*. ¶¶18–20, 26–28, 35–36, 38, 40.

David Sun never submitted an affidavit testifying to these "facts", so to the extent those assertions come from David Sun, they are hearsay recited through an expert declaration. To the extent they are inferences from the arbitral award or SHIAC rules, they are not admissible factual testimony about what actually occurred.

13

III.    **THE 2026 ARBITRATION AWARD SHOULD BE STRICKEN/EXCLUDED**

A.    <u>**Legal Standard**</u>

Evidence is relevant only if it has a tendency to make a fact of consequence more or less probable, and irrelevant evidence is inadmissible. Fed. R. Evid. 401, 402. Even relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted, and is inadmissible unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 801(c), 802.

Courts have held that an arbitration award offered to prove the truth of the factual findings contained in the award may constitute inadmissible hearsay. *Lobster 207, LLC v. Pettegrow*, No. 1:19-cv-00552-LEW, slip op. at 3–4 (D. Me. Aug. 1, 2023). Defendants themselves invoke this principle in their motion to strike Plaintiff's evidence. Doc. No. 242 at 9–10. At summary judgment, inadmissible hearsay cannot be considered. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990).

B.    <u>**The 2026 Award Is Irrelevant To The Claims And Defenses In This Case**</u>

The 2026 Arbitration Award should be stricken because it is irrelevant to the claims and defenses before this Court. The 2026 Award arose from a separate arbitration concerning different claims and an alleged October 18, 2014 Equity Transfer Agreement. It did not decide whether Sunco China is owed approximately $6.7 million for cabinets sold to Infinity, whether Defendants are liable for that debt, whether Defendants asserted offset defense is valid, or whether any fraudulent transfer or reach-and-apply liability exists in this action. Accordingly, the 2026 Award does not make any fact of consequence in this case more or less probable. Fed. R. Evid. 401, 402.

14

C.    <u>**The Probative Value Of The 2026 Award Is Substantially Outweighed By Un-**</u>
<u>**fair Prejudice**</u>

Even if the 2026 Award had any probative value, that value is substantially outweighed by the danger of unfair prejudice and confusion of the issues. Fed. R. Evid. 403. Defendants appear to offer the 2026 Award to undermine Mr. Wu's credibility and cast doubt on the 2021 SHIAC Arbitral Award by relying on findings from a later, separate arbitration involving a different alleged agreement. That use would invite a collateral mini-trial concerning the later arbitration, the authenticity of the October 18, 2014 agreement, the conduct of Qiyi and Mr. Wu, and the procedures followed by a different arbitral tribunal. Those issues would distract from the actual questions before this Court and risk unfairly prejudicing Plaintiff based on findings made in a proceeding that does not resolve any of the claims or defenses in this case. In all events, Defendants should not be permitted to use the 2026 Award as substantive evidence against Sunco China or as a vehicle to attack Mr. Wu's credibility, the 2021 SHIAC Award, or the merits of this action.

D.  <u>**The 2026 Award Is Not Final**</u>

This arbitration award is not final. It was issued on 1/19/2026 and on 3/23/2026, Jiangsu Qiyi filed Application to Set Aside the Arbitral Award timely.[2]  Even if this award is admitted, Jiangsu Qiyi's application to set aside the award on the grounds of numerous violations by the tribunal warrants it with little to no weight. Jiangsu Qiyi argued the tribunal's violation of public policy and arbitration rules by, among other things, (1) refusing to accept/admit the shareholder agreement of 2014/10/18 is a direct disregard of and contradiction to a judgment issued by Suzhou Intermediate People's Court for a separate case between Sunco China and Linda Sun, confirming

---

[2] See **Exhs. 4 and 5** to Plaintiff's Opposition to Defendants 'Motion to Strike the 2021 Arbitration Award and Notice of Closure.

15

the validity of the same agreement [3], (2) despite the expiration of investigation and neither party's

challenging authenticity of the share transfer agreement, the tribunal at its own volition advised

Sunco Inc. to request an appraiser to examine the authenticity, (3) inappropriate and unnecessary

appointment of appraiser by the tribunal despite five appraisers' rejection to take the case, (4)

unjustifiable permission to allow Sunco Inc. to extend over a year to answer the complaint, (5)

taking over a year and half for the tribunal to render the award without extension notice to the

parties.[4]

Furthermore, on March 28, 2025, Linda Sun appeared in front of the tribunal to provide her

signature sample, and it is concluded by the appraiser/tribunal that she signed the agreement. The

appraiser report also opines that Linda Sun's signature on the agreement is hers.[5] Most strikingly,

Mr. Lewis 'declaration, para 31, mischaracterizes the opinion of the appraiser as for the authentic-

ity of the agreement. The appraiser opined that he is not able to determine the sequence of time

formation among the signature and date handwritten, and the seal impression, and left no conclu-

sion one way or another on the authenticity of the agreement.[6]

### E.    Under Defendants' Own Theory, The 2026 Award Is Hearsay And Must Be Excluded

Plaintiff does not concede that foreign arbitration awards are categorically inadmissible

hearsay. But Defendants do. In their own motion to strike (Doc. No. 242), Defendants argue at

---

[3] **Exhibit 3** attached hereto, is a 2024 Judgment from Suzhou Intermediate People's Court of Jiangsu Province in Chinese. *See also* **Exhibit 4** attached hereto which is the translation of the Chinese document in English, second last paragraph on page 4.
[4] See **Exhs. 4 and 5** to Plaintiff's Opposition to Defendants' Motion to Strike the 2021 Arbitration Award and Notice of Closure.
[5] **Exhibit 5** attached hereto is Forensic Appraisal Opinion of Academy of Forensic Science in Chinese, Opinion Para 1. *See also* **Exhibit 6** attached hereto which is the translation of the Chinese document in English.
[6] **Exhibit 5**, Opinion Para 4-5 reads, "It is unable to determine the sequence of the time of formation among the signature and date handwriting appearing in the signature block on page 4 of the questioned Share Transfer Agreement, the seal impression of "Sunco Timber (Kunshan) Co., Ltd." appearing in the signature block, and the printed text. It is unable to determine the sequence of the time of formation between the seal impression of "Sunco Timber (Kunshan) Co., Ltd." appearing at the right-side cross-page seal position of the questioned Share Transfer Agreement and the printed text on pages 1 to 5."

length that the 2021 SHIAC Arbitration Award — offered by Plaintiff — is inadmissible hearsay because it is "offered for the truth of the assertions in the Award" and does not meet any hearsay exception. Doc. No. 242 at 10-12. Defendants cite multiple cases for the proposition that "an arbitrator's award, like the decision of a judge, is inadmissible hearsay when offered to prove the truth of the findings found therein." Id. at 10 (citing *Lobster 207, LLC v. Pettegrow, No. 1:19-CV-00552-LEW, 2023 WL 4882808, at\*2 (D. Me. Aug. 1, 2023)*).

Defendants' own theory requires exclusion of the 2026 Award. Defendants offer the 2026 Award for the truth of its factual findings: that the alleged October 18, 2014 Equity Transfer Agreement is fabricated by Jiangsu Qiyi. These are out-of-court statements offered for the truth of the matters asserted — which is precisely the theory Defendants advanced to argue that the 2021 Award is hearsay. Defendants cannot invoke a hearsay rule to block Plaintiff's evidence while simultaneously relying on a different arbitration award for its factual findings. The 2026 Award must be excluded on hearsay grounds under Defendants' own theory. Fed. R. Evid. 801(c), 802; *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court strike or exclude: (1) the affidavits of Linda Sun, David Sun, and Shillock Yuan-Sun, in whole or in part as set forth above; (2) the Declaration of Mr. Lewis, in whole or in part as set forth above; and (3) the 2026 Arbitration Award, in whole or, at minimum, accord it no evidentiary weight.

17

DATED:  July 1, 2026

PLAINTIFF
Sunco Timber (Kunshan) Co., Ltd.
By its attorneys,

*/s/Yun Cheng*
Connie C. Dai (BBO#683330)
Yun Cheng (BBO# 707028)
Lion's Law, P.C.
154 Wells Ave
Newton, Massachusetts 02459
(617) 232-7503 Telephone
(781) 207-8574 Fax
connie@lionslawgroup.com
yun@lionslawgroup.com

*/s/Timothy K. Cutler*
Timothy K. Cutler (BBO#636124)
CUTLER & WILENSKY LLP
20 Walnut Street, Suite 1
Wellesley, Massachusetts 02481
(617) 232-7500 Telephone
tim@cutlerlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 1, 2026.

*/s/Yun Cheng*
Yun Cheng

18