UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SUNCO TIMBER (KUNSHAN) CO., LTD., | |
| Plaintiff, | Civ. A. No. 1:22-cv-10833-MJJ |
| vs. | |
| LINDA SUN, et al., | |
| Defendants. | |

**REPLY IN SUPPORT OF LINDA SUN AND NEW SUN LIMITED PARTNERSHIP'S
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Theodore J. Folkman (BBO No. 647642)
Elizabeth L. Gardon (BBO No. 711867)
RUBIN AND RUDMAN LLP
53 State St.
Boston, Mass. 02109
(617) 330-7000
tfolkman@rubinrudman.com
egardon@rubinrudman.com

Dated: July 15, 2026

5173437_1

**A.      The Chinese judgment bars the fiduciary duty claim.**

Recognition of a foreign money judgment is not discretionary. Unless a statutory exception applies, "any foreign judgment that is final and conclusive and enforceable where rendered … **shall** be conclusive between the parties" and "**shall** be enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit." G.L. c. 235, § 23A (emphasis supplied). Because Section 23A "revises and supersedes" the common law of foreign judgment recognition, no common law rules can override the statute's mandatory language. *See Chase Manhattan Bank, N.A. v. Hoffman,* 665 F. Supp. 73, 76-77 (D. Mass. 1987). Sunco China cites no authority for its position other than the statute itself and has nothing to say about why the Court should read "shall" as "may." If no statutory exception to recognition applies, the Court must recognize the judgment. *See, e.g., Williams v. Fed. Gov't of Nigeria,* 2024 U.S. Dist. LEXIS 143830, at *51 (S.D.N.Y. Aug. 12, 2024) (only the statutory grounds "allow a court to withhold recognition of a foreign judgment").

Differences between Chinese and American pretrial procedure are irrelevant to recognition. Probably no country in the world has a pretrial discovery system as broad as ours. "It is well known that the scope of American discovery is often significantly broader than is permitted in other jurisdictions[.]" *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct.,* 482 U.S. 522, 542 (1987). But – to frame the issue in the language of the UFMJRA as Sunco China never does – that does not mean that the judiciary in every other country in the world "does not provide impartial tribunals or procedures compatible with the requirements of due process of law." G.L. c. 235, § 23A. There is no general constitutional right to pretrial discovery in US domestic litigation, *see Chmielinski v. Mass. Off. of the Comm'r of Probation,* 513 F.3d 309, 317 (1st Cir. 2008) ("parties 'are not entitled to pretrial discovery as a constitutional right'") (citation omitted). Thus, Sunco China cannot argue that foreign systems that do not provide

1

much pretrial discovery deny due process to litigants, let alone that differences in the scope of discovery justify refusing recognition. *See, e.g., Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.,* 874 F.3d 604, 617 (9th Cir. 2017); *Soc'y of Lloyd's v. Ashenden,* 233 F.3d 473, 480 (7th Cir. 2000). If the Chinese system is as deficient as Sunco China says, it is hard to see why Sunco China chose to sue there first, or why it did not at least apply to the Chinese court to gather evidence, as Chinese law allowed. (Ex. 91, Second Huang Report ¶ 31).

The UFMJRA has a public policy exception. Sunco China should not be permitted to raise it in light of the Court's sanctions order, as it did not identify public policy as one of the grounds for opposing recognition in its interrogatory answers and did not disclose it in the 30(b)(6) testimony. *See Reyes-Orta v. P.R. Hwy. & Transp. Auth.,* 811 F.3d 67, 74 n.4 (1st Cir. 2016). But in any event, the exception applies only when "**the cause of action on which the judgment is based** is repugnant to the public policy of this state." G.L. c. 235, § 23A (emphasis supplied). Sunco China was the plaintiff in China and chose the cause of action. It cannot argue that its own cause of action is repugnant to public policy. What matters is whether the cause of action, not the outcome or the judgment, is contrary to public policy. *See, e.g., Southwest Livestock & Trucking Co. v. Ramon,* 169 F.3d 317, 321-23 (5th Cir. 1999) (foreign judgment on a promissory note with 48% interest not within exception, because the cause of action, for enforcement of a note, is not contrary to public policy). In 2005, when the Uniform Law Commission drafted the UFCMJRA, it broadened the exception so that it applies whenever "**the judgment or the cause of action**" is repugnant to public policy. *See* UFCMJRA § 4(b)(3), 13 U.L.A. pt. 2, 21 (Supp. 2011) (emphasis supplied). But Massachusetts has not enacted the new statute. A cause of action for breach of fiduciary duty is, of course, not repugnant to Massachusetts public policy.

2

Sunco China makes a case-specific objection to the procedure followed in the Chinese court. It claims the Chinese court should have investigated supposed collusion between Linda and David *sua sponte.* Its argument rests on a misreading of Chinese law. Under Article 96 of the Judicial Interpretations of the Civil Procedure Law, the Chinese court has a duty to obtain evidence about collusion between "the parties," i.e., between parties to the lawsuit before it, to avoid prejudice to "the legitimate rights and interests of non-parties." (Ex. 91 ¶¶ 27-29). That rule is a sensible response to the problem of collusive litigation. But it has nothing to do with this case: neither David nor Infinity, the parties with whom Linda supposedly colluded, was a party to the Chinese case, and Sunco China was. So Article 96 does not apply.[1] Sunco China is, therefore, simply wrong to argue that the Chinese court failed to do what Chinese law required it to do. (Ex. 91 ¶ 30). If Sunco China felt it could not gather the evidence it needed on its own, it could have applied to the Chinese court for assistance. (*Id*. ¶ 31). It could also have applied for a retrial. It did none of these things, and the time to seek a retrial has expired. (*Id*. ¶ 32). The waiver and sanctions arguments that defeat the public policy argument defeat this one too.

Sunco China's "new facts" argument also fails. The main "new fact"—that Infinity will never pay for the cabinets—is not new. In fact, Infinity's refusal to pay was the basis of the Chinese lawsuit: Sunco China pleaded, in its complaint there, that it had demanded payment and that Infinity had not paid. (Ex. 91 ¶ 25; *see also* Chinese Complaint, Doc. 231-1 at 53).[2] If part of the basis for the Chinese lawsuit was "Infinity hasn't paid," simply saying that now Infinity *really* hasn't paid, or that it has *declared* it will not pay, is hardly a new fact. Sunco China claims that Infinity's insolvency is a new fact, but Sunco China's theory is that Infinity "was not a

---

[1] Disagreements between Mr. Chen and Professor Huang on this and other matters do not create disputes of material *fact;* they are disputes of *law*. *See* Fed. R. Civ. P. 44.1.

[2] In fact, as the table attached to Linda's main memorandum (Doc. No. 230 at 34-35) shows, Sunco China has alleged all the material facts in this case that it alleged in the Chinese case.

functioning, independent entity, but a mere shell company." (Doc. No. 223 at 12). The transactions Sunco China challenges—Infinity transferring the cabinets to Sunco Inc., the Sunco Inc. checks, and Infinity Realty's installment payment to New Sun LP—all happened before the Chinese court's judgment in November 2021.[3] Again, there is nothing new. Sunco China complains that the defense of set-off was not raised in the Chinese case (Mem. at 3), but there is no legal reason it had to be; Linda prevailed by showing that Sunco China had failed to prove its claim, rather than by raising any affirmative defenses. In any case, "setoff" is a legal argument, not a new fact. Sunco China is wrong to say that the Chinese court's decision turned on the notion that Sunco China's claim was not ripe. Rather, the court asked whether the consideration for the transaction—Infinity's promise to pay—was fair, and whether all Chinese procedures and regulations had been complied with. (Ex. 91 ¶¶ 20-21). And the court held that Sunco China had failed to prove that the transaction was unreasonable, failed to prove that Linda had concealed anything, and failed to prove any violation of Sunco China's governing documents. (*Id.*¶ 22; *see also* Chinese judgment, Doc. No. 36-2 at 15). In any event, even if Sunco China had grounds for a retrial in China, that fact would not affect the res judicata effect of the existing Chinese judgment. (Ex. 91 ¶ 19). That rule—the pendency of a motion or some other effort to set aside a judgment does not affect the finality of the judgment—is the same as the rule in the United States. *See* Fed. R. Civ. P. 60(c)(2) (a motion to set aside a judgment "[d]oes not affect the judgment's finality or suspend its operation"); 18 *Moore's Federal Practice* § 131.30[2][C][ii] ("A final judgment … can be the basis for claim preclusion despite the fact that an appeal is pending, or that the judgment may be subject to appeal in the future"); *Perez v. Volvo Car Corp.,*

---

[3] Doc. No. 249 at ¶¶ 16, 19 (Transfer of cabinets from Infinity to Sunco, Inc. between July 2, 2018, and July 7, 2019); Doc. No. 223-29 (Checks dated from September 12, 2018, to July 9, 2021); Doc. No. 249 at ¶ 115 (Infinity Realty payment to New Sun LP in September 2021).

5173437_1

247 F.3d 303, 309-10 n.4 (1st Cir. 2001) (same rule for post-judgment motions). Nor, under Chinese law, would a new Chinese lawsuit based on the supposed new facts about an uncollectable account disturb the Chinese court's judgment that the transaction was reasonable and that Linda had concealed nothing. (Ex. 91 ¶¶ 17, 26).

**B.      Linda is not liable for fraudulent transfers or veil piercing.**

Linda and New Sun LP join in the arguments the other defendants make in their reply concerning fraudulent transfer and veil piercing. Sunco China cannot decide who to claim controlled Infinity. In its first memo, it wrote that David "controlled everything," and that he "owned and controlled Infinity." (Doc. No. 223 at 4). Now it claims, without evidence, that Linda controlled David and controlled Infinity. (Doc. No. 247 at 6-7). There is evidence that David controlled Infinity: he was its majority member and manager. There is no evidence that Linda owned, managed, or controlled the company.

Sunco China's hyperbolic claim (Doc. No. 247 at 10) that unless the corporate veil is pierced, "Linda will have successfully stolen $6.7 million" is unsupported by anything in the record. Sunco China has identified $353,926 in checks from Sunco Inc.—not from Infinity—that it claims were paid to Linda or for her benefit, all of which are explained in detail in Linda's main brief. It also identified a distribution of more than $2 million that Linda received from New Sun LP because she was a limited partner, though it has not made any arguments about that transaction in its memoranda. The debt Infinity Realty owed to New Sun LP was for the purchase of a beneficial interest in real estate, and repayment of part of that debt, which preceded the distribution to Linda, was not a fraudulent transfer. Thus any downstream payments, including the distribution to Linda, were not fraudulent, either.

5

5173437_1

Respectfully submitted,

LINDA SUN and NEW SUN LIMITED
PARTNERSHIP

By their attorneys:

*/s/ Theodore J. Folkman*

Theodore J. Folkman (BBO No. 647642)
Elizabeth L. Gardon (BBO No. 711867)
RUBIN AND RUDMAN LLP
53 State St.
Boston, Mass. 02109
(617) 330-7000
tfolkman@rubinrudman.com
egardon@rubinrudman.com

Dated: July 15, 2026

6

5173437_1